# Exhibit E

Richard J. Doren<br>
Direct: +1 213.229.7038<br>
RDoren@gibsondunn.com

September 10, 2020

<u>VIA ELECTRONIC MAIL</u>

Yonatan Even
Cravath, Swaine & Moore LLP
825 Eighth Ave.
New York, NY 10019

Re:   *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR

Yonatan,

We are in receipt of your email of September 8. I will reiterate that the difficulties you complain of are entirely of Epic's own making. Epic chose to violate its agreements with Apple, knowing that this would lead to the termination of its developer account, and chose to do nothing to accommodate its users with respect to Sign in With Apple ("SIWA"). The Court denied your request for a temporary restraining order against the termination of Epic Games, Inc., which occurred on August 28. Nonetheless, as indicated in my letter to Katherine Forrest on that date, Apple voluntarily allowed an extra two weeks before it terminates Epic Games, Inc.'s access to SIWA. Nothing in the Court's decision required Apple to do this.

I understand that, as I suggested in my August 28 letter, Epic personnel contacted Apple's engineers with regard to this issue. One week ago today, Apple's engineers responded by proposing a solution—that Epic build a custom flow to migrate users off SIWA by collecting email addresses or asking users to select a different login method. I further understand that (despite having had all the guidance necessary to do so for the prior six days) it was not until yesterday that Epic implemented the solution that Apple recommended. Epic's unexplained delays notwithstanding, Apple will leave SIWA in place for the time being. Again, Apple does this voluntarily and while reserving all rights.

It should also be noted that we are surprised and puzzled by your assertion that terminating SIWA for the Epic Games, Inc. account will affect users of the *Unreal Engine*. Your client has repeatedly and consistently represented to the Court that the *Unreal Engine* is run by "a different company. It's in Switzerland. It's a totally different set of circumstances." (Aug. 19, 2020 Hearing Tr. 10:25-11:2.) Your client's briefs have assured the Court that the game production business of Epic Games, Inc. is distinct from "the separate *Unreal Engine* business" (Epic TRO Br. at 1), and that "the developer tools" that are "necessary to

Yonatan Even
September 10, 2020
Page 2

support . . . *Unreal Engine* . . . are covered by *separate* integrated agreements." (Epic PI Br. at 30 (emphasis in original).)  It is indeed true that the Developer Program account of Epic Games International, S.à.r.l. gives it the ability to use SIWA.  If Epic has set up its *Unreal Engine* business to use this functionality through the Epic Games, Inc. account, that is Epic's own doing.  Further, it would again reflect the spuriousness of your client's claim that *Unreal Engine* is a separate business from Epic Games, Inc. and an innocent, collateral victim of the crisis that Epic Games, Inc. has created.

Epic is fully aware of what it needs to do to remedy the problems that Epic has created for itself.

Sincerely,


/s/ Richard J. Doren

Richard J. Doren

RJD/eml