Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
    LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-Defendant
Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>                              Plaintiff,<br><br>             v.<br><br>APPLE INC.,<br><br>                              Defendant. | CASE NO. 4:20-cv-05640-YGR<br>**EPIC GAMES, INC.'S ANSWER TO APPLE INC.'S COUNTERCLAIMS** |
| APPLE INC.,<br><br>                              Counterclaimant,<br><br>             v.<br><br>EPIC GAMES, INC.,<br><br>                              Counter-Defendant. | |

Counter-Defendant Epic Games, Inc. ("Epic"), by and through its undersigned counsel, hereby answers Apple Inc.'s ("Apple") Counterclaims, filed on September 8, 2020 (Dkt. 66), and asserts affirmative and other defenses.

## **PRELIMINARY STATEMENT**

On August 13, 2020, Epic provided *Fortnite* users on iOS with the choice of an alternative payment processing solution called Epic Direct Pay, which offered consumers lower prices and better customer service than Apple's payment processor, IAP. Epic does not dispute that this competing payment solution was prohibited by contractual provisions that Apple has unlawfully forced on developers like Epic who sell in-app digital content, even though Apple allows numerous other app developers to use competing solutions. Epic also does not dispute that, if Apple's contracts were lawful, all in-app purchases made by *Fortnite* users on iOS would be subject to Apple's 30% tax, even though Apple has exempted numerous other developers from this tax. But Epic denies that its refusal to abide by Apple's anti-competitive scheme was in any way wrongful. Epic looks forward to proving at trial that the agreements on which Apple bases its counterclaims are illegal and unenforceable.

Apple has asserted repeatedly that "Epic's lawsuit is nothing more than a basic disagreement over money". This is not correct. Epic has not sought and will not seek money damages from Apple. Instead, Apple is now the party that has sued seeking payment from Epic on multiple different theories. Indeed, Apple's counterclaims do more than merely seek to force Epic to pay Apple's supra-competitive 30% tax on in-app purchases. Apple's broad counterclaims are designed to punish Epic for its defiance and send a message to other developers who might dare rebel against Apple. Apple asserts meritless claims, such as "conversion", that lack any basis in law or fact. These claims are designed to paint Epic as a bad actor—Apple hyperbolically describes Epic as a thief—for seeking to deal directly with Epic's own customers, which Apple's anti-competitive rules prohibit for the sale of in-app digital content. Apple also seeks "punitive damages" to punish Epic and further deter other app developers who might stand up to Apple's oppressive and illegal conduct.

To avoid any possible delay in the resolution of Epic's antitrust claims against Apple, Epic answers and denies Apple's legally deficient counterclaims herein. And because the ultimate resolution of this case should focus on Apple's conduct and Apple's anti-competitive restrictions, Epic

will soon move the Court (pursuant to Federal Rule of Civil Procedure 12(c)) for judgment on Apple's tort claims and on Apple's claim based on the implied covenant of good faith and fair dealing, which fail as a matter of law.

## ANSWER

Except as otherwise expressly set forth below, Epic denies each and every allegation contained in the Counterclaims, including, without limitation, headings, sub-headings, and footnotes contained in the Counterclaims. With respect to the footnotes, Epic denies the allegations contained in each, and, for those containing citations, refers to the content of the citations. Epic expressly reserves the right to amend and/or supplement its answer and defenses. For the avoidance of doubt, Epic is not responding to Apple's Answer, nor to the introductory materials contained in the unnumbered paragraphs preceding Apple's Answer.

1. Epic states that the allegations in Paragraph 1 state a legal conclusion to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 1, except admits that there is diversity of citizenship between Epic and Apple, that the amount-in-controversy exceeds $75,000, and that Apple purports to invoke the jurisdiction of this Court pursuant to the statutes cited therein.

2. Epic states that the allegations in Paragraph 2 state a legal conclusion to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 2, except admits that it filed a Complaint against Apple in this District, admits that Epic Games, Inc. entered into a standard, click-through Apple Developer Program License Agreement drafted by Apple (the "'84 License Agreement"), and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.[1]

---

[1] Apple's counterclaims are based on the "Apple Developer Program License Agreement ('License Agreement') between the parties"—that is the '84 License Agreement between Epic Games, Inc. and Apple Inc., which relates to the Apple Developer Program Account previously held by Epic Games, Inc. with a Team ID ending in '84 (the "'84 Developer Account"). Apple further alleges that Epic Games, Inc. has entered into an Apple Developer Program Agreement relating to the '84 account (the "'84 Developer Agreement"). Other entities that Apple has deemed to be affiliated with Epic Games, Inc. have executed separate Apple Developer Program Agreements and Developer Program License Agreements and maintain separate Apple Developer Program accounts. Epic Games, Inc., other affiliated entities, and individual programmers also have entered into Xcode and Apple SDKs

3.      Epic states that the allegations in Paragraph 3 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations in Paragraph 3, except admits that it brought an action against Apple in this Court, admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

4.      Epic admits, on information and belief, the allegations in Paragraph 4.

5.      Epic admits the allegations in Paragraph 5.

6.      Epic states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6, except that Epic admits, on information and belief, that Apple released the iPhone in 2007 and launched its App Store in 2008, and that Apple invites third-party app developers to develop a wide array of apps for the iOS ecosystem.

7.      Epic denies the allegations in Paragraph 7 except admits that the App Store can be used to download iOS apps.  In particular, Epic denies Apple's description of the typical distribution options available to software developers prior to the App Store, which included digital software stores and other distribution channels.

8.      Epic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, except Epic admits that the distribution of iOS apps and in-app purchases of digital content comprise substantial volumes of interstate and foreign commerce and Epic denies that Apple conceived of the idea of a digital or mobile app store.

9.      Epic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9, except Epic denies Apple's stated reasons for the success of the App Store; denies that Apple offers Test Flight to all developers; and admits that third-party apps add value to the iPhone and that the App Store is dependent on apps created by third-party developers.

---

Agreements drafted by Apple.  References to the '84 License Agreement and '84 Developer Agreement in this Answer are solely to the agreements executed by Epic Games, Inc.

10.     Epic denies the allegations in Paragraph 10, except states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning sales "facilitated" by the App Store in 2019 or the fraction thereof distributed to developers; and admits (i) that the App Store is a business, (ii) that the App Store is currently the only platform by which developers can reach the approximately one billion iOS users, (iii) that Apple's anti-competitive restraints require developers to allow Apple to manage many aspects of transactions between app developers and their customers on iOS, (iv) that developers are required to pay Apple a $99 annual fee in order to distribute apps through the App Store, and (v) that Apple charges a commission on the sale of apps and on certain in-app transactions for digital goods and services.  Epic denies in particular that Apple receives nothing except a nominal annual fee with respect to developers who offer only free apps, as Apple has other ways in which it is compensated for its investment in iOS and obtains value from the distribution of such apps.

11.     Epic denies the allegations in Paragraph 11, except admits that, through anti-competitive contracts of adhesion, Apple requires certain developers to use only IAP to process certain in-app purchases (but allows certain app developers not to use IAP), and that Apple further requires developers pay a commission on those transactions.

12.     Epic denies the allegations in Paragraph 12, except states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the features Apple may introduce at the end of the year.  Epic further states that Apple exempts certain app developers and certain in-app purchases from its IAP requirements.

13.     Epic denies the allegations in Paragraph 13, except admits that it has developed iOS games and distributed iOS games through the App Store, as it was compelled to do by Apple's anti-competitive restraints.

14.     Epic denies the allegations in Paragraph 14, except admits that Epic Games, Inc. entered into the '84 Developer Agreement—a standard, click-through agreement drafted by Apple— and the '84 License Agreement, and refers to the '84 Developer Agreement and to the '84 License Agreement for their contents.  By referring to the '84 Developer Agreement and to the '84 License

Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in either Agreement is lawful and/or enforceable against Epic.

15. Epic denies the allegations in Paragraph 15, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

16. Epic denies the allegations in Paragraph 16, except states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning (i) the number of APIs Apple makes available or (ii) the role and function of Apple's engineers.

17. Epic denies the allegations in Paragraph 17, except admits (i) that Epic was able to distribute its apps, including *Fortnite*, through the App Store only upon Apple's approval, and (ii) that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

18. Epic denies the allegations in Paragraph 18, except admits (i) that *Fortnite* was previously available for download on the App Store, (ii) that, pursuant to its anti-competitive restrictions, Apple required Epic to allow Apple to manage certain aspects of Epic's transactions with Epic's own customers, (iii) that, pursuant to Apple's requirements that developers use IAP, Apple collected payments from *Fortnite* users for in-app purchases, and (iv) that Apple transmitted certain sales and financial information concerning transactions between Epic and Epic's own customers to Epic.

19. Epic denies the allegations in Paragraph 19, except admits (i) that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents; and (ii) when *Fortnite* launched on the App Store in 2018, it was and has since remained a global phenomenon, and Epic refers to the referenced statements for their full context and contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and

unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

20.     Epic denies the allegations in Paragraph 20, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

21.     Epic denies the allegations in Paragraph 21, except states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the percentage of apps in the App Store that pay no commission to Apple, and admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.  Epic in particular denies that Apple does not earn any money through the App Store until a consumer makes a purchase, including because the availability of third-party iOS apps increases the value of Apple's hardware products, including the premium-priced iPhone, because Apple collects annual Developer Program fees, and because Apple obtains valuable information and is compensated in other ways when iOS apps are distributed through the App Store.

22.     Epic denies the allegations in Paragraph 22, except states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the function of the "App Store team"; and admits (i) that Apple requires developers to agree to a standard, click-through contract of adhesion—the License Agreement—and a set of guidelines—the App Store Review Guidelines ("Guidelines")—as a condition of distributing iOS apps to iOS consumers, and refers to the License Agreement and to the Guidelines for their contents; and (ii) that Apple purports to review third-party apps before permitting them to be distributed through the App Store.  By referring to the License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, and the Guidelines, Epic does not admit that any term in either is lawful and/or enforceable against Epic.  Epic particularly denies that it is uncommon for app developers to enable or make available new

features or functionalities "outside of the iOS ecosystem", as for years Apple has been aware of and consented to such changes as part of the routine hotfix process used by many iOS apps, including *Fortnite*. Epic also particularly denies Apple's implication that the App Store, rather than iOS itself, is primarily responsible for maintaining the safety and security of apps running on iOS.

23. Epic denies the allegations in Paragraph 23, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

24. Epic denies the allegations in Paragraph 24, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

25. Epic denies the allegations in Paragraph 25, except admits that Apple publishes Guidelines, and refers to those Guidelines for their contents. By referring to the Guidelines, Epic does not admit that any term in the Guidelines is lawful and/or enforceable against Epic.

26. Epic denies the allegations in Paragraph 26, except admits that Epic Games, Inc. entered into the '84 Developer Agreement, the '84 License Agreement, and that Apple publishes Guidelines, and refers to the '84 Developer Agreement, to the '84 License Agreement, and to the Guidelines for their contents. By referring to the '84 Developer Agreement, '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, and to the Guidelines, Epic does not admit that any term in these Agreements or Guidelines is lawful and/or enforceable against Epic.

27. Epic denies the allegations in Paragraph 27, except admits that app developers, including Epic, are required to enter into standard, click-through contracts of adhesion as a pre-condition to reaching iOS users, that Epic Games, Inc. entered into the '84 License Agreement, and that Apple publishes Guidelines, and refers to the '84 License Agreement and to the Guidelines for their contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-

competitive and unfair terms, and to the Guidelines, Epic does not admit that any term in either is lawful and/or enforceable against Epic.

28. Epic denies the allegations in Paragraph 28, except admits (i) that Timothy Sweeney sent an email to Apple dated June 30, 2020, and refers to that email for its contents, and (ii) that Timothy Sweeney posted a tweet at 9:25 PM ET on April 1, 2020, and refers to the tweet for its contents. In particular, Epic states that Apple's claim that Mr. Sweeney sought "a special arrangement for Epic and no other developer" is flatly contradicted by Mr. Sweeney's June 30 email, which states in relevant part that Epic "hope[s] that Apple will also make these options equally available to all iOS developers".

29. Epic denies the allegations in Paragraph 29, except admits that Apple sent Epic a letter dated July 10, 2020, and refers to that letter for its contents.

30. Epic denies the allegations in Paragraph 30, except admits that Apple sent Epic a letter dated July 10, 2020, and refers to that letter for its contents and admits that Epic maintains a Fan Content Policy and refers to that Policy for its contents. Epic specifically states that the Fan Content Policy relates to "fan art (such as artwork, photographs, videos, and other materials) that is based on the Epic IP" and "Epic IP-related personal, non-commercial websites and apps that are freely accessible to the public."[2] Epic denies that the Fan Content Policy relates to the distribution of software, including through the Epic Games Store (which lacks market power in any relevant market). Epic denies that the Fan Content Policy for fan art and fan websites is a valid comparison to any of Apple's anti-competitive conduct relating to the App Store, IAP, or the tools that creators of operating systems provide to third parties to allow them to create applications for those operating systems.

31. Epic denies the allegations in Paragraph 31, except admits that Epic has sought to compete with Apple for the distribution of iOS apps and that Apple sent Epic a letter dated July 10, 2020, and refers to that letter for its contents.

32. Epic denies the allegations in Paragraph 32, except admits, upon information and belief, that (i) it was possible to access a website with the URL

---

[2] *See* https://www.epicgames.com/site/en-US/fan-art-policy.

"https://www.wired.com/story/imposter-fortnite-android-apps-already-spreading-malware/" on or around September 8, 2020, and refers to that website for its contents; (ii) it was possible to access a website with the URL "https://bgr.com/2020/08/14/fortnite-ban-iphone-android-apple-google-right-vs-epic/" on or around September 8, 2020, and refers to that website for its contents; and (iii) it was possible to access a website with the URL "https://www.cbsnews.com/news/fortnite-security-flaw-exposed-millions-of-users-to-being-hacked/" on or around September 8, 2020, and refers to that website for its contents.

33. Epic denies the allegations in Paragraph 33, except admits that Epic sent Apple an email dated July 17, 2020, and refers to that email for its contents. In particular, Epic denies Apple's implication that permitting Epic to distribute iOS apps directly to consumers would expose *Fortnite* users to malware and security threats.

34. Epic denies the allegations in Paragraph 34, except admits (i) that on August 3, 2020, Epic submitted for Apple's review Version 13.40 of *Fortnite*, which included a payment process interface for processing in-app payments, and (ii) that Apple approved this submission to be made available on the App Store. Epic states that it is not uncommon for app developers to enable or make available new features or functionalities other than through the App Store, as for years Apple has been aware of and consented to such changes as part of the routine hotfix process used by many iOS apps, including Fortnite.

35. Epic denies the allegations in Paragraph 35, except admits that Timothy Sweeney sent Apple an email dated August 13, 2020, 2:08 AM PT, and refers to that email for its contents.

36. Epic denies the allegations in Paragraph 36, except admits that on August 3, 2020, Epic submitted for Apple's review Version 13.40 of *Fortnite*, which included a payment process interface for processing in-app payments, and that beginning the morning of August 13, 2020, when the *Fortnite* app on iOS devices queried Epic's servers as to how many payment processing options were available, the servers informed the app that there were two options, including Epic Direct Pay. Epic states that it is not uncommon for app developers to enable or make available new features or

functionalities other than through the App Store, as for years Apple has been aware of and consented to such changes as part of the routine hotfix process used by many iOS apps, including Fortnite.

37. Epic denies the allegations in Paragraph 37, except admits that certain unlawful provisions of the '84 License Agreement and Guidelines purport to prohibit app developers like Epic from providing iOS users the choice of a competing payment processing solution.

38. Epic denies the allegations in Paragraph 38, except admits that Apple sent Epic a notice dated August 13, 2020 to Epic's '84 Developer Account, and refers to that notice for its contents.

39. Epic denies the allegations in Paragraph 39, except admits that after Apple's August 13, 2020 notice to Epic's '84 Developer Account, iOS *Fortnite* users who had updated to Version 13.40 continued to have a choice between Apple's IAP and Epic Direct Pay until Apple terminated Epic's '84 Developer Account on August 28, 2020, at which point Apple blocked Apple's IAP from *Fortnite*.

40. Epic denies the allegations in Paragraph 40, except admits that Apple sent Epic a notice dated August 14, 2020 to Epic's '84 Developer Account, and refers to that notice for its contents.

41. Epic denies the allegations in Paragraph 41, except admits (i) that Apple terminated Epic's '84 Developer Account on August 28, 2020, (ii) that after Apple's August 13, 2020 notice to Epic's '84 Developer Account, iOS *Fortnite* users continued to have a choice between IAP and Epic Direct Pay until Apple terminated Epic's '84 Developer Account on August 28, 2020, at which point Apple blocked IAP from *Fortnite*, and (iii) that Epic has processed in-app purchases through its Epic Direct Pay processing solution.

42. Epic denies the allegations in Paragraph 42, except admits that certain unlawful provisions of the '84 License Agreement and Guidelines purport to prohibit app developers like Epic from providing iOS users the choice of a competing payment processing solution.

43. Epic denies the allegations in Paragraph 43, except admits (i) that it filed a Complaint against Apple on August 13, 2020, (ii) that it released an animated video titled *Nineteen Eighty-Fortnite*, and refers to the video for its contents, (iii) that it filed an emergency motion for a

temporary restraining order against Apple, and (iv) that it hosted an event titled "#FreeFortniteCup" on August 23, 2020, which invited *Fortnite* players to participate in one last chance for cross-platform play.

44. Epic denies the allegations in Paragraph 44, except admits that it filed a motion for a temporary restraining order against Apple, including exhibits displaying customer complaints and refers to those exhibits for their contents.

45. Epic denies the allegations in Paragraph 45, except admits that it filed a motion for a temporary restraining order against Apple, including exhibits displaying customer complaints, and refers to those exhibits for their contents.

46. Epic denies the allegations in Paragraph 46.

47. Epic restates and incorporates by reference each of its responses to Apple's allegations that Apple purports to reallege and incorporate in Paragraph 47.

48. Epic denies the allegations in Paragraph 48, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

49. Epic denies the allegations in Paragraph 49.

50. Epic denies the allegations in Paragraph 50, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

51. Epic denies the allegations in Paragraph 51, except admits that certain unlawful provisions of the '84 License Agreement purport to prohibit app developers like Epic from providing iOS users the choice of a competing payment processing solution. Epic states that it is not uncommon for app developers to enable or make available new features or functionalities other than through the

App Store, as for years Apple has been aware of and consented to such changes as part of the routine hotfix process used by many iOS apps, including Fortnite.

52. Epic denies the allegations in Paragraph 52, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

53. Epic states that the allegations in the first sentence of Paragraph 53 state a legal conclusion to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 53, except admits that on August 3, 2020, Epic submitted for Apple's review Version 13.40 of *Fortnite*, which included a payment process interface for processing in-app payments, and that beginning the morning of August 13, 2020, when the *Fortnite* app on iOS devices queried Epic's servers as to how many payment processing options were available, the servers informed the app that there were two options, including Epic Direct Pay.

54. Epic denies the allegations in Paragraph 54, except admits that certain unlawful provisions of the '84 License Agreement purport to prohibit app developers like Epic from providing iOS users the choice of a competing payment processing solution.

55. Epic denies the allegations in Paragraph 55.

56. Epic denies the allegations in Paragraph 56, except admits (i) that Apple purports to seek injunctive relief from this Court; (ii) that after Apple's August 13, 2020 notice to Epic's '84 Developer Account, iOS *Fortnite* users continued to have a choice between IAP and Epic Direct Pay until Apple terminated Epic's '84 Developer Account on August 28, 2020, at which point Apple blocked IAP from *Fortnite*; (iii) that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents; and (iv) that certain unlawful provisions of the '84 License Agreement purport to prohibit certain app developers like Epic from providing iOS users the choice of a competing payment processing solution for the purchase of in-app digital content. By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and

1  unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against

2  Epic.

3     57. Epic restates and incorporates by reference each of its responses to Apple's

4  allegations that Apple purports to reallege and incorporate in Paragraph 57.

5     58. Epic denies the allegations in Paragraph 58, except admits that Epic Games, Inc.

6  entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By

7  referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and

8  unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against

9  Epic.

10     59. Epic denies the allegations in Paragraph 59, except admits that Epic Games, Inc.

11  entered into the '84 License Agreement and that Apple publishes Guidelines, and refers to the '84

12  License Agreement and to the Guidelines for their contents.  By referring to the '84 License

13  Agreement, a contract of adhesion that contains anti-competitive and unfair terms, and to the

14  Guidelines, Epic does not admit that any term in either is lawful and/or enforceable against Epic.

15     60. Epic denies the allegations in Paragraph 60, except admits that Epic Games, Inc.

16  entered into the '84 License Agreement, and that Apple publishes Guidelines, and refers to the '84

17  License Agreement and to the Guidelines for their contents.  By referring to the '84 License

18  Agreement, a contract of adhesion that contains anti-competitive and unfair terms, and to the

19  Guidelines, Epic does not admit that any term in either is lawful and/or enforceable against Epic.

20     61. Epic denies the allegations in Paragraph 61.

21     62. Epic restates and incorporates by reference each of its responses to Apple's

22  allegations that Apple purports to reallege and incorporate in Paragraph 62.

23     63. Epic denies the allegations in Paragraph 63.

24     64. Epic denies the allegations in Paragraph 64.

25     65. Epic states that Paragraph 65 does not contain an allegation and does not require

26  a response.  To the extent a response is required, Epic denies the allegations in Paragraph 65.

27     66. Epic restates and incorporates by reference each of its responses to Apple's

28  allegations that Apple purports to reallege and incorporate in Paragraph 66.

1    67.    Epic states that the allegations in Paragraph 67 state a legal conclusion to which

2 no response is required.  To the extent a response is required, Epic denies the allegations in Paragraph

3 67.

4    68.    Epic denies the allegations in Paragraph 68, except admits that Epic Games, Inc.

5 entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By

6 referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and

7 unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against

8 Epic.

9    69.    Epic denies the allegations in Paragraph 69.

10    70.    Epic denies the allegations in Paragraph 70.

11    71.    Epic denies the allegations in Paragraph 71.

12    72.    Epic denies the allegations in Paragraph 72, except admits that Timothy

13 Sweeney sent Apple an email dated August 13, 2020, and refers to that email for its contents.

14    73.    Epic denies the allegations in Paragraph 73, except admits that Apple purports to

15 seek injunctive relief from this Court.

16    74.    Epic restates and incorporates by reference each of its responses to Apple's

17 allegations that Apple purports to reallege and incorporate in Paragraph 74.

18    75.    Epic denies the allegations in Paragraph 75, except admits that Epic Games, Inc.

19 entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By

20 referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and

21 unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against

22 Epic.

23    76.    Epic denies the allegations in Paragraph 76, except admits that Epic Games, Inc.

24 entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By

25 referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and

26 unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against

27 Epic.

28    77.    Epic denies the allegations in Paragraph 77.

78. Epic denies the allegations in Paragraph 78.

79. Epic denies the allegations in Paragraph 79, except admits that Timothy Sweeney sent Apple an email dated August 13, 2020, 2:08 AM PT, and refers to that email for its contents.

80. Epic restates and incorporates by reference each of its responses to Apple's allegations that Apple purports to reallege and incorporate in Paragraph 80.

81. Epic states that the allegations in Paragraph 81 state a legal conclusion to which no response is required. To the extent a response is required, Epic denies the allegations in Paragraph 81, except admits that there is an ongoing controversy with respect to the legality and enforceability of the '84 License Agreement.

82. Epic denies the allegations in Paragraph 82, except admits that Epic Games, Inc. entered into the '84 License Agreement and the '84 Developer Agreement, and refers to the '84 License Agreement and to the '84 Developer Agreement for their contents. By referring to the Agreements, Epic does not admit that any term in the Agreements is lawful and/or enforceable against Epic.

83. Epic denies the allegations in Paragraph 83, except admits (i) that Timothy Sweeney sent Apple an email dated August 13, 2020, 2:08 AM PT, and refers to that email for its contents; and (ii) that Apple sent a notice dated August 14, 2020 to Epic's '84 Developer Account, and refers to that notice for its contents.

84. Epic denies the allegations in Paragraph 84, except admits (i) that on August 17, 2020, it filed in this Court a Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, and refers to that Motion for its contents; and (ii) that on August 24, 2020, this Court issued an Order Granting in Part and Denying in Part Motion for Temporary Restraining Order, and refers to that Order for its contents.

85. Epic denies the allegations in Paragraph 85, except admits (i) that on August 24, 2020, the Court issued an Order Granting in Part and Denying in Part Motion for Temporary Restraining Order, and refers to that Order for its contents; and (ii) that Apple terminated Epic's '84 Developer Account on August 28, 2020.

86.     Epic denies the allegations in Paragraph 86, except admits (i) that on September 4, 2020, it filed in this Court a Motion for a Preliminary Injunction, and refers to that Motion for its contents; and (ii) that, pursuant to the September 4, 2020 Motion, Epic seeks relief on behalf of itself and for the benefit of certain of its affiliates, each of which is a party to a distinct agreement with Apple.

87.     Epic states that the allegations in Paragraph 87 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations in Paragraph 87.

88.     Epic denies the allegations in Paragraph 88.

89.     Epic restates and incorporates by reference each of its responses to Apple's allegations that Apple purports to reallege and incorporate in Paragraph 89.

90.     Epic denies the allegations in Paragraph 90, except admits that Epic Games, Inc. entered into the '84 License Agreement, and refers to the '84 License Agreement for its contents.  By referring to the '84 License Agreement, a contract of adhesion that contains anti-competitive and unfair terms, Epic does not admit that any term in the Agreement is lawful and/or enforceable against Epic.

91.     Epic denies the allegations in Paragraph 91.

Epic states that the unnumbered wherefore clause and the paragraphs following Paragraph 91 of the Counterclaims are a request for jury trial and a prayer for relief to which no response is required.  To the extent a response is required, Epic denies that Apple is entitled to a jury trial, to the relief sought in the counterclaims, or to any relief whatsoever.

## EPIC'S DEFENSES

Epic asserts the following defenses.  In asserting these defenses, Epic does not assume the burden of proof with respect to any issue as to which applicable law places the burden of proof on Apple.

**First Defense**

**(Apple's Violations of the Antitrust Laws)**

Apple's claims are barred, in whole or in part, because the contracts on which Apple's counterclaims are based are illegal and unenforceable on the basis that they violate the antitrust and unfair competition laws, including the Sherman Act, 15 U.S.C. §§ 1, 2, the Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.*, and the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, as Epic respectfully requests the Court to determine on the basis of Epic's claims against Apple (Complaint for Equitable Relief, Dkt. No. 1), which are hereby incorporated into and restated in this First Defense as if set forth fully herein.

**Second Defense**

**(Apple's Contracts Are Illegal and Unenforceable)**

Apple's claims are barred, in whole or in part, by the doctrine of illegality because the contracts on which Apple's counterclaims are based are illegal and unenforceable pursuant to the antitrust and unfair competition laws, as Epic respectfully requests the Court to determine on the basis of Epic's claims against Apple (Complaint for Equitable Relief, Dkt. No. 1), which are hereby incorporated into and restated in this Second Defense as if set forth fully herein.

**Third Defense**

**(Apple's Contracts Are Void as Against Public Policy)**

Apple's claims are barred, in whole or in part, because the contracts on which Apple's counterclaims are based are void as against public policy pursuant to the antitrust laws and unfair competition laws, as Epic respectfully requests this Court to determine on the basis of Epic's claims against Apple (Complaint for Equitable Relief, Dkt. No. 1), which are hereby incorporated into and restated in this Third Defense as if set forth fully herein.

**Fourth Defense**

**(Apple's Contracts Are Unconscionable)**

Apple's claims are barred, in whole or in part, because the contracts on which Apple's counterclaims are based are unconscionable on the basis that they are contrary to the antitrust laws and unfair competition laws, as Epic respectfully requests this Court to determine on the basis of Epic's

claims against Apple (Complaint for Equitable Relief, Dkt. No. 1), which are hereby incorporated into and restated in this Fourth Defense as if set forth fully herein.

### Fifth Defense

### (Epic's Actions Are Justified and Privileged by the Antitrust Laws)

Apple's claims are barred, in whole or in part, because Epic's actions were justified or privileged pursuant to the antitrust and unfair competition laws, as Epic respectfully requests this Court to determine on the basis of Epic's claims against Apple (Complaint for Equitable Relief, Dkt. No. 1), which are hereby incorporated into and restated in this Fifth Defense as if set forth fully herein.

### Sixth Defense

### (Apple's Contracts Are Part-and-Parcel of an Anti-Competitive Scheme)

Apple's claims are barred, in whole or in part, because the contracts on which Apple's claims are based are part-and-parcel of its scheme to unreasonably restrain trade and maintain its monopoly, as Epic respectfully requests this Court to determine on the basis of Epic's claims against Apple (Complaint for Equitable Relief, Dkt. No. 1), which are hereby incorporated into and restated in this Sixth Defense as if set forth fully herein.

### Seventh Defense

### (Unlawful Duress)

Apple's claims are barred, in whole or in part, because the License Agreement on which Apple seeks to rely is unenforceable by reason of duress. Epic did not act freely and voluntarily in executing the Agreement, but instead under the duress and compulsion wrongfully and illegally created by Apple, as Epic respectfully requests this Court to determine on the basis of Epic's claims against Apple (Complaint for Equitable Relief, Dkt. No. 1), which are hereby incorporated into and restated in this Seventh Defense as if set forth fully herein.

### Eighth Defense

### (Failure To State a Claim)

Apple fails to state a claim on which relief can be granted.

## Ninth Defense

### (Apple's Ratification, Agreement, Acquiescence, or Consent)

Apple's claims are barred, in whole or in part, because of Apple's ratification of, agreement to, acquiescence in, or consent to Epic's alleged conduct, including based on, without limitation, Apple's approval of mobile app submissions submitted by Epic, Apple's distribution of Epic's mobile app submissions through the App Store, Apple's longstanding acceptance of the hotfix process, and Apple's election to provide Epic an opportunity to cure the alleged actions of which Apple complains.

## Tenth Defense

### (Estoppel)

Apple's claims are barred, in whole or in part, by the doctrine of estoppel, including based on, without limitation, Apple's approval of mobile app submissions submitted by Epic, Apple's distribution of Epic's mobile app submissions through the App Store, Apple's longstanding acceptance of the hotfix process, and Apple's election to provide Epic an opportunity to cure the alleged Epic actions of which Apple complains.

## Eleventh Defense

### (Waiver)

Apple's claims are barred, in whole or in part, by the doctrine of waiver, including based on, without limitation, Apple's approval of mobile app submissions submitted by Epic, Apple's distribution of Epic's mobile app submissions through the App Store, Apple's longstanding acceptance of the hotfix process, and Apple's election to provide Epic an opportunity to cure the alleged Epic actions of which Apple complains.

## Twelfth Defense

### (Apple's Unclean Hands)

Apple's claims are barred, in whole or in part, by the doctrine of unclean hands.

## Thirteenth Defense

### (Apple Is *In Pari Delicto*)

Apple's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

**Fourteenth Defense**

**(Lack of Injury-in-Fact)**

Apple's claims are barred, in whole or in part, because it has sustained no injury in fact by any act or omission of Epic.

**Fifteenth Defense**

**(Unjust Enrichment)**

Apple's claims are barred, in whole or in part, because any recovery would result in unjust enrichment to Apple.

**Sixteenth Defense**

**(Lack of Causation)**

Apple's claims are barred, in whole or in part, because of a lack of causation, including, without limitation, because any injuries or damages that may have been suffered were not caused solely or proximately by any act or omission of Epic.

**Seventeenth Defense**

**(No Independent Wrongdoing by Epic)**

Apple's tort claims are barred because Apple alleges no independently tortious act by Epic that is separate from Epic's breach of Apple's anti-competitive restrictions.

**Eighteenth Defense**

**(Competition Privilege)**

Apple's tort claims are barred because Epic's actions are protected by the competition privilege pursuant to California law.

**Nineteenth Defense**

**(Speculative Damages)**

Apple's claims are barred, in whole or in part, because any damages that Apple purports to have suffered are too remote or speculative to allow recovery, and it is impossible to ascertain and allocate such alleged damages with reasonable certainty.

## Twentieth Defense

### (Apple's Failure To Mitigate)

Apple has failed to mitigate or to attempt to mitigate damages, if in fact any damages have or will be sustained, and any recovery by Apple must be diminished or barred by reason thereof.

## Twenty-first Defense

### (Economic Loss Doctrine)

Apple's claims are barred because California law does not permit tort claims that are based on the same alleged facts and damages as a breach of contract claim.

## Twenty-second Defense

### (Adequate Remedy at Law)

Apple is not entitled to seek equitable relief because the injury or damage Apple alleges and would be entitled to recover following resolution of Epic's antitrust claims, if there is any, would be adequately compensated pursuant to Epic's conditional admission of liability for breach of contract if the contract is lawful and enforceable or would otherwise be recoverable in an action at law for damages.

## Twenty-third Defense

### (Good Faith)

Apple's claims are barred, in whole or in part, because Epic's acts and conduct complained of in the Counterclaims were taken in good faith.

## Twenty-fourth Defense

### (Acts of Claimant)

Apple is not entitled to recover damages from Epic because Apple's damages, if any, were caused by Apple's own conduct, for which Epic has no liability.

## Twenty-fifth Defense

### (Acts of Third Parties)

Without conceding that any act of Epic's caused damage to Apple, Epic alleges that Apple's damages, if any, were caused by the conduct of third parties, for which Epic has no liability.

**Twenty-sixth Defense**

**(Due Process)**

Apple's claims for punitive damages are barred because they would violate the United States Constitution to the extent the imposition of punitive damages may constitute a deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

**Twenty-seventh Defense**

**(No Punitive Damages)**

Apple's claims for punitive damages are barred because Epic did not commit any cognizable tort with malice or fraud. Further, Apple fails to plead a cognizable basis for punitive damages with the particularity required by Federal Rule of Civil Procedure 9(b).

**Twenty-eighth Defense**

**(Judicial Admission)**

Apple's claims are barred, in whole or in part, insofar as Apple is bound by its admissions in prior court actions, and cannot take contrary positions in this litigation.

**PRAYER FOR RELIEF**

WHEREFORE, Epic prays for judgment as follows:

1.      Entering judgment in favor of Epic and against Apple on Apple's Counterclaims;

2.      Denying the monetary, injunctive, equitable, declaratory, and other relief Apple requests; and

3.      Granting such other and further relief to Epic as the Court deems just and proper.

Dated:  September 29, 2020

Respectfully submitted,

By /s/ Gary Bornstein

Gary A. Bornstein

**FAEGRE DRINKER BIDDLE & REATH LLP**
Paul J. Riehle
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111 Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**
Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

**Attorneys for Plaintiff and Counter-Defendant**
**EPIC GAMES, INC.**