Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Christine A. Varney (pro hac vice)
cvarney@cravath.com
Katherine B. Forrest (pro hac vice)
kforrest@cravath.com
Gary A. Bornstein (pro hac vice)
gbornstein@cravath.com
Yonatan Even (pro hac vice)
yeven@cravath.com
Lauren A. Moskowitz (pro hac vice)
lmoskowitz@cravath.com
M. Brent Byars (pro hac vice)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-Defendant Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 4:20-CV-05640-YGR<br><br>**COUNTER-DEFENDANT EPIC GAMES, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: November 10, 2020 at 2:00 p.m.<br>Courtroom: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |
| APPLE INC.,<br><br>    Counterclaimant,<br><br>vs.<br><br>EPIC GAMES, INC.,<br><br>    Counter-Defendant. | |

## NOTICE OF MOTION AND MOTION

## TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 10, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, before the Honorable Yvonne Gonzalez Rogers, Counter-Defendant Epic Games, Inc. ("Epic") will move this Court pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on certain Counterclaims of Counterclaimant Apple Inc. ("Apple") and its requests for punitive damages. Specifically, Epic moves to dismiss the following counterclaims: (1) Count IV: Intentional Interference with Prospective Economic Advantage; and (2) Count V: Conversion.

This motion is made on the grounds that Apple's counterclaims alleging intentional interference with prospective economic advantage and conversion each fails to state a claim for relief.

This motion is based upon the pleadings in this action, this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Proposed Order Granting Counter-Defendant's Motion for Judgment on the Pleadings, all matters with respect to which this Court may take judicial notice, and such oral and documentary evidence as may be presented to the Court.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ iii

PRELIMINARY STATEMENT .......................................................................................................... 1

LEGAL STANDARD ........................................................................................................................... 3

ARGUMENT ........................................................................................................................................ 4

I.    THE ECONOMIC LOSS RULE BARS BOTH TORT CLAIMS. ..................................... 4

II.   APPLE'S COUNTERCLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (COUNT IV) FAILS. ............................... 5

    A.    Apple Fails to Allege an Independently Wrongful Act. .......................................... 6

    B.    Apple's Claim Is Not Against a Stranger to the Relationships. ............................... 7

III.  APPLE'S CONVERSION COUNTERCLAIM (COUNT V) FAILS. ............................... 9

    A.    Apple Fails to Allege Any Ownership or Possessory Interest in a Specific Sum of Money as Required to State a Claim for Conversion. ................................. 9

    B.    Apple Fails to Allege a Specific, Identifiable, and Traceable Sum of Money. ................................................................................................................... 12

IV.  PUNITIVE DAMAGES ARE NOT AVAILABLE. ......................................................... 13

CONCLUSION ................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aas v. Superior Court*, 24 Cal. 4th 627 (2000), *superseded by statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003) ................................................................................................................................. 4

*Aimsley Enters. Inc. v. Merryman*, No. C 19-02101-YGR, 2020 WL 1677330 (N.D. Cal. Apr. 6, 2020) ........................................................................................................ 12

*Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019) .................................................................................. 9

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994) .................................. 5

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal.App. 4th 464 (1996) ................................................................................................................................. 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................. 4

*Batts v. Bankers Life & Cas. Co.*, No. C 13-04394-SI, 2014 WL 296925 (N.D. Cal. Jan. 27, 2014) ............................................................................................................................. 7

*Baxter v. King*, 81 Cal.App. 192 (1927) ........................................................................................ 12

*Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002) ...................................................................... 13

*Block v. eBay, Inc.*, No. C 11-06718-CRB, 2012 WL 1601471 (N.D. Cal. May 7, 2012), *aff'd*, 747 F.3d 1135 (9th Cir. 2014) ............................................................................... 7

*Bus. Integration Tech. v. MuleSoft Inc.*, No. C 11-04782-EDL, 2012 WL 13041534 (N.D. Cal. Mar. 23, 2012) ..................................................................................................... 7

*California State Employees Ass'n v. Bogart*, No. C 14-02494-JAM, 2015 WL 461646 (E.D. Cal. Feb. 3, 2015) ............................................................................... 11, 12, 13

*Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2018 WL 2971058 (N.D. Cal. June 13, 2018) ........................................................................................................ 5, 13

*Dallas and Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F.Supp.3d 1048 (C.D. Cal. 2015) ......................... 10

*Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008) ............................................................... 6

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, No. C 07-2424-SC, 2007 WL 2572191 (N.D. Cal. Sept. 5, 2007) ................................................................ 7

*Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017) ................................................. 3

*Haigler v. Donnelly*, 18 Cal.2d 674 (1941) ................................................................................... 12

*Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135 (9th Cir. 2003) ......................................... 4

*In re Bailey*, 197 F.3d 997 (9th Cir. 1999) ................................................................................. 9, 11

*JRS Products, Inc. v. Matsushita Electr. Corp. of Am.*, 115 Cal.App. 4th 168 (2004) ................................................................................................................................... 6, 13

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ............................................ 6

*Lee v. Hanley*, 61 Cal.4th 1225 (2015) ............................................................................................ 9

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir. 2001) ................. 7, 8

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C 09-00537-MHP, 2009 WL 2084154 (N.D. Cal. July 13, 2009) ............................................................................................ 4

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384 (2007) ........................................................................................................... 12

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004) ..................................................... 4

*Summit Estate, Inc. v. United Healthcare Ins. Co.*, No. 4:19-CV-06724-YGR, 2020 WL 5436655 (N.D. Cal. Sept. 10, 2020) ...................................................................................... 3

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ................................................................ 4, 8

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................................ 13, 14

*Voris v. Lampert*, 7 Cal.5th 1141 (2019) ........................................................................... 10, 11, 12

*Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229 (1997) .............................................. 12

*Weiss v. Marcus*, 51 Cal.App.3d 590 (1975) ................................................................................. 11

**Statutes & Rules**

Cal. Civ. Code § 3294(a) ................................................................................................................ 13

Fed. R. Civ. P. 9(b) ..................................................................................................................... 3, 13

Fed. R. Civ. P. 12(b)(6) .................................................................................................................... 4

Fed. R. Civ. P. 12(c) ......................................................................................................................... 3

Fed. R. Civ. P. 12(d) ......................................................................................................................... 4

Fed. R. Civ. P. 56 ............................................................................................................................. 4

**PRELIMINARY STATEMENT**

This case is about Apple's unlawful tying and monopoly maintenance. Apple has maintained its monopoly through a web of anti-competitive provisions in the Apple Developer Program License Agreement (the "License Agreement"), a contract that Apple requires developers to sign as a condition of allowing access to the billion users of iOS devices. Apple counterclaims that Epic breached the License Agreement by offering iOS users the choice of an alternative payment processing solution in *Fortnite*. Epic has admitted that it gave users such a choice (Answer ¶ 41) and that offering this competing solution, together with the lower prices and better customer service it provides to users, was prohibited by express provisions of the License Agreement. (Answer ¶ 37.) Epic therefore is not moving here on Apple's breach of contract counterclaim. (Count I.) That claim will rise or fall based on the Court's decision on Epic's antitrust claims. If Epic prevails on its antitrust claims, then the License Agreement provisions at issue are unlawful and cannot be enforced, and judgment should be entered in Epic's favor on Apple's breach of contract counterclaim. If Epic does not prevail on its antitrust claims, then Epic would be liable for breach.

This motion is about Apple's tort counterclaims (Counts IV and V), which improperly try to bootstrap the conduct underlying Epic's alleged breach of contract into separate and independent causes of action. With this motion, Epic seeks to eliminate these duplicative and improperly pled counterclaims: Intentional Interference with Prospective Economic Advantage (Count IV, Counterclaims ¶¶ 66-73) and Conversion (Count V, Counterclaims ¶¶ 74-79). California law does not permit Apple to plead an alleged breach of contract as a tort. A judgment dismissing these claims will ensure that the case stays focused on the validity of Apple's agreements and practices. These are the issues on which Epic's claims *and* Apple's contract-based counterclaim depend. The Motion is summarized as follows.

*First*, both of Apple's tort counterclaims (Counts IV and V) should be dismissed based on the economic loss rule. Under California law, that well-established rule prohibits all tort causes of action, like Apple's, that are premised on nothing more than the breach of a contractual duty. Apple's intentional interference and conversion claims merely restate Epic's contractual

obligations and attempt to use the breach of those obligations to create liability sounding in tort. That is impermissible. Both tort claims should be dismissed on this basis alone. (Part I, *infra*.)

*Second*, Apple's claim for intentional interference with prospective economic advantage (Count IV) also fails because Apple has not alleged the required elements of that tort under California law. Apple's theory is that, when *Fortnite* users chose to use the Epic Direct Pay payment option instead of Apple's In-App Purchase ("IAP") payment option, Epic wrongfully interfered with Apple's ability to do business with those *Fortnite* users. (Counterclaims ¶ 69.) This claim fails for a number of reasons. As an initial matter, it is undisputed that Epic did not in any way prevent iOS users from dealing with Apple through IAP, but instead offered iOS users the *choice* of dealing directly with Epic or continuing to use Apple's IAP. (Counterclaims ¶ 36.) In any event, a basic element of intentional interference requires a plaintiff to allege an independently wrongful act by the defendant *separate from* the defendant's alleged breach of contract. Apple does not do so here and cannot plead such an act separate from the breach of contract. (Part II.A, *infra*.)

In addition, as an independent basis for dismissal, it is black-letter California law that intentional interference with prospective economic advantage claims may be asserted only against "third-party strangers" to the relationships allegedly interfered with. Here, Epic plainly is no stranger to *Fortnite* users: Epic is the creator and supplier of *Fortnite* and of the in-app content being purchased in the allegedly interfered-with transaction; Epic is also entitled to at least 70% of the proceeds of that transaction, even according to Apple (Counterclaims ¶¶ 20-21); and Apple's own Counterclaims allege that the License Agreement merely designates Apple as Epic's "agent for the marketing and delivery" of *Fortnite* content created by Epic (Counterclaims ¶ 17). Thus, as a matter of law, Epic is not a third-party stranger to transactions conducted by *Fortnite* users, and Epic therefore cannot be liable for intentional interference with prospective economic advantage. (Part II.B, *infra*.)

*Third*, in addition to running afoul of the economic loss rule discussed above, Apple's conversion claim (Count V) also fails because Apple has not alleged the elements of such a claim. Apple does not allege that it *owned* or had a *possessory interest* in a specific, traceable

sum of money alleged to have been converted by Epic.  (Part III, *infra*.)  Instead, Apple asserts that it "has a contractual right to the possession of property in the form of commissions that it is entitled to under the License Agreement" and that Apple is "contractually entitled" to a 30% commission on past or future sales of *Fortnite* content.  (Counterclaims ¶¶ 75, 77.)  By pleading only a "contractual right" or "contractual[] entitle[ment]", Apple's claim is fatally flawed.  California law is clear that a conversion claim must be based on something more than a mere contractual right to collect payments.  Because a contractual right is all that Apple alleges (or plausibly could allege), the conversion claim fails as a matter of law.  Separately, Apple has not pled the conversion of money that it owned or had an immediate right to possess at the time of the alleged conversion, as is also required to sustain a conversion claim.

*Fourth*, Apple's attempt to turn a breach of contract into a tort and obtain punitive damages by alleging that Epic's actions were fraudulent and/or performed with malice (Counterclaims ¶¶ 72, 79) also fails as a matter of law.  California law unequivocally holds that, regardless of the defendant's alleged motive, punitive damages are not available in a breach of contract action or for legally deficient tort claims that actually arise only from a breach of contract.  Further, Apple pleads no actual act of fraud, much less with the particularity required by Federal Rule of Civil Procedure 9(b).  Apple's requests for punitive damages should therefore be dismissed.  (Part IV, *infra*.)

The Court should grant Epic's motion for judgment on the pleadings on Apple's counterclaims for Intentional Interference with Prospective Economic Advantage (Count IV) and for Conversion (Count V), together with Apple's requests for punitive damages.

## **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A court may grant judgment on the pleadings where there are no issues of material fact and the moving party is entitled to judgment as a matter of law when taking the allegations in the pleadings as true."  *Summit Estate, Inc. v. United Healthcare Ins. Co.*, No. 4:19-CV-06724-YGR, 2020 WL 5436655, at *2 (N.D. Cal. Sept. 10, 2020) (citing *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017)).

"This standard is 'functionally identical' to the standard for determining a motion to dismiss under Rule 12(b)(6)." *Id.* (citation omitted). "Accordingly, a court need not accept as true factual allegations that are conclusory or conclusions of law." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss [or motion for judgment on the pleadings] into a motion for summary judgment". *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-05665-YGR, 2015 WL 1254681, at *3 (N.D. Cal. Mar. 18, 2015) ("In ruling on a motion for judgment on the pleadings, the Court may consider documents incorporated by reference in the pleadings".).[1]

## ARGUMENT

### I. THE ECONOMIC LOSS RULE BARS BOTH TORT CLAIMS.

Apple's counterclaims for intentional interference with prospective economic advantage and conversion are duplicative of its breach of contract claim and therefore violate the economic loss rule. The economic loss rule under California law mandates "that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement". *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C 09-00537-MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009). Under this rule, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations". *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000), *superseded by statute on other grounds as recognized in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070 (2003). Courts carefully observe this distinction, which prevents "the law of contract and the law of tort from

---

[1] Apple's Counterclaims do not identify the state law Apple intends to govern those claims. By default, California federal courts sitting in diversity apply California law. *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003). Epic thus assumes for the purpose of this Motion only that California law governs Apple's Counterclaims.

1  dissolving one into the other". *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988
2  (2004).
3        Both of Apple's tort claims are premised entirely on the breach of duties created by the
4  License Agreement.  The foundation of the intentional interference claim is Apple's alleged
5  contractual right under the "License Agreement [to act] as Epic's agent for the marketing and
6  delivery of *Fortnite* and all associated in-app purchases" and its right to receive its "contractually
7  agreed commission for serving as Epic's agent". (Counterclaims ¶¶ 68-69.)  And the basis for
8  the conversion claim is Apple's alleged "contractual right to the possession of property in the
9  form of the commissions that it is entitled to under the License Agreement". (Counterclaims
10 ¶¶ 75, 77-78.)  Apple admits repeatedly throughout its Counterclaims that the duties Epic
11 supposedly violated are created by the License Agreement. (*See, e.g.*, Counterclaims ¶¶ 20-21,
12 23-24, 26-27, 50, 52.)
13       Under the economic loss rule, those allegations do not give rise to tort liability because
14 "[c]onduct amounting to a breach of contract becomes tortious only when it *also violates* an
15 independent duty arising from principles of tort law". *See Applied Equip. Corp. v. Litton Saudi*
16 *Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) (emphasis added).  In other words, "[a]n omission to
17 perform a contract obligation is never a tort, unless that omission is also an omission to perform
18 a legal duty". *Id.* (quotations and citation omitted).  Neither Epic's alleged refusal to permit
19 Apple to act as its agent nor its failure to pay Apple a 30% commission can support tort liability
20 against Epic.  Both tort claims should be dismissed on that basis alone. *See, e.g.*, *Congdon v.*
21 *Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2018 WL 2971058, at *3-4 (N.D. Cal. June 13,
22 2018) ("[T]he general rule is that tort recovery is precluded for non-insurance breach of contract
23 cases unless the breach also violates a duty independent of the contract arising from principles of
24 tort law." (quotations and citation omitted)).

25 **II.  APPLE'S COUNTERCLAIM FOR INTENTIONAL INTERFERENCE WITH
26      PROSPECTIVE ECONOMIC ADVANTAGE (COUNT IV) FAILS.**
27       To state a claim for intentional interference with prospective economic advantage under
28 California law, a party must plausibly allege "(1) an economic relationship between plaintiff and

a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party". *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 944 (2008).

Aside from the economic loss rule, Apple's claim for intentional interference with prospective economic advantage fails for two other independent reasons. *First*, Apple fails to plead a basic element of the claim, which requires an "independently wrongful act" by the defendant—that is, one that is wrongful separate and apart from an alleged breach of contract. *Second*, California law permits interference claims only against "third-party strangers" to the economic relationships allegedly interfered with. Epic is hardly a stranger to a transaction in which iOS users buy *Fortnite* content created and supplied by Epic itself.

### A.   Apple Fails to Allege an Independently Wrongful Act.

Apple's intentional interference counterclaim fails to plead the third element. The "intentional act" required by the third element must be "independently wrongful". *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1158-59 (2003). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

A breach of contract cannot constitute the "wrongful" conduct required for the tort of intentional interference. *See JRS Products, Inc. v. Matsushita Electr. Corp. of Am.*, 115 Cal.App. 4th 168, 183 (2004) ("[W]rongful or not, the termination [of the contract] is not 'independent' of [defendant's] interference with [plaintiff's] interest. . . . [A] breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business."); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal.App. 4th 464, 479 (1996) ("[F]undamentally, [plaintiff] complains that [defendant] terminated the parties' bonding relationship without good cause. Such a complaint sounds in contract, not tort. A contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted

1  into tort liability by claiming that the breach detrimentally affected the promisee's business.").

2  Courts in this district routinely dismiss claims on the basis that "a breach of contract cannot constitute the 'wrongful' conduct required for the tort of intentional interference with prospective economic advantage". *Batts v. Bankers Life & Cas. Co.*, No. C 13-04394-SI, 2014 WL 296925, at *4 (N.D. Cal. Jan. 27, 2014); *see also Block v. eBay, Inc.*, No. C 11-06718-CRB, 2012 WL 1601471, at *5 (N.D. Cal. May 7, 2012), *aff'd*, 747 F.3d 1135 (9th Cir. 2014) (same); *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, No. C 07-2424-SC, 2007 WL 2572191, at *2 (N.D. Cal. Sept. 5, 2007) (same).

Apple's breach of contract counterclaim and its intentional interference counterclaim are based on the same conduct, and that conduct is alleged to be wrongful for the same reason: Epic breached the License Agreement. In the breach of contract counterclaim, Count I, Apple alleges that Epic breached the License Agreement by "publishing a new external payment mechanism in *Fortnite* via hotfix", by "failing to submit to Apple and intentionally concealing from Apple these changes to the *Fortnite* app", and by "failing to pay Apple agreed-to commissions on its in-app sales through *Fortnite*". (Counterclaims ¶¶ 51, 54.) These allegations are mirrored in Count IV, in which Apple alleges that Epic intentionally interfered with its economic relationship with iOS consumers "by refusing to pay Apple's contractually agreed commission for serving as Epic's agent in the marketing and delivery of *Fortnite*". (Counterclaims ¶ 69.) Because Apple alleges no basis for concluding Epic's conduct was wrongful other than because it breached the License Agreement, Apple's interference claim fails as a matter of law.

### B. Apple's Claim Is Not Against a Stranger to the Relationships.

"California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001) (emphasis in original). California law accordingly permits interference claims only against "third-party stranger[s]" to the economic relationship allegedly interfered with. *Id.*

1    In *Marin Tug*, for example, Shell refused to supply a barge operator with oil from its refinery. *Id.* at 828. Shell's refusal allegedly prevented the operator from doing business with third-party fuel brokers and consumers who otherwise would have hired it to transport Shell oil. *Id.* The Ninth Circuit affirmed summary judgment for Shell on the interference claim because Shell was not a "third-party stranger" to the oil supply relationships it allegedly interfered with, but rather was "active[ly] involve[d]" in the supply of oil to the affected brokers and consumers, even when there was no direct contract between Shell and those entities. *Id.* at 834-35. "Because the economic relationship between [the barge operator] and the buyer of any Shell oil shipped on [the operator's] barges depends on Shell's cooperation, Shell is not easily characterized as a stranger to that relationship." *Id.* at 834. Accordingly, liability for interference was not possible.

Apple's intentional interference counterclaim fails because Epic is not a stranger to the relationship it allegedly interfered with. To the contrary, Epic's involvement in Apple's alleged "economic relationship with iOS users who make purchases through the App Store, in particular those who have downloaded the *Fortnite* app", is much greater than Shell's involvement was in the relationships at issue in *Marin Tug*. (Counterclaims ¶ 67.) Epic is the creator and supplier of *Fortnite* and its in-app content, and consumers purchase that content using an Epic app. It is therefore no stranger to the affected iOS consumers, whether or not Epic sells that content directly to consumers or uses Apple's IAP to complete the transaction. (*See* Schedule 2 ¶ 4.1 ("The parties acknowledge and agree that Apple shall not acquire any ownership interest in or to any of the Licensed Applications or Licensed Application Information").)[2] Further, Apple's Counterclaims describe Apple "as Epic's agent for the marketing and delivery of *Fortnite* and all associated in-app purchases", which actions Apple performs only "on [Epic's] behalf". (Counterclaims ¶¶ 17, 68.) Epic thus has a "direct interest" in selling *Fortnite* content to iOS users; it is "active[ly] involve[d]" in such sales; and Apple's ability to process such sales "depends on [Epic's] cooperation". *See Marin Tug*, 271 F.3d at 832, 834. Indeed, under Apple's

---

[2] Because Apple attaches Schedule 2 as "Exhibit A" to its Answer and Counterclaims (Apple Answer ¶ 32), the Court may consider Schedule 2 in deciding this Motion. *See Ritchie*, 342 F.3d at 908.

own agreement, Epic is the principal actor in the transaction, with Apple being a mere "agent". Because Apple's own allegations and License Agreement show that Epic is anything but a "third-party stranger" to any relationship between Apple and *Fortnite* users on iOS, Apple's interference claim fails as a matter of law.[3]

### III.   APPLE'S CONVERSION COUNTERCLAIM (COUNT V) FAILS.

To state a claim for conversion under California law, a plaintiff must plausibly allege "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages". *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015) (quotations and citation omitted). In addition to being barred by the economic loss rule, Apple's claim for conversion also fails to state a claim for relief under California law for two independent reasons. *First*, Apple's conversion claim fails because Apple does not allege that it *owned* or had a *possessory interest* in a specific, traceable sum of money alleged to have been converted. Apple's counterclaims plead no interest apart from a *contractual* right to collect money *in the future*. That does not create a *property* interest that can form the basis for a conversion claim. *Second*, contrary to California law, Apple does not allege conversion of a specific, traceable sum of money at all. That Apple requests "at least" the commissions that have been paid to Epic, as well as an undefined quantum of damages such as "reasonable compensation" (Counterclaims ¶ 78), also demonstrates that a conversion claim is unavailable on the alleged facts.

#### A.   Apple Fails to Allege Any Ownership or Possessory Interest in a Specific Sum of Money as Required to State a Claim for Conversion.

To allege a conversion claim, Apple must assert its "ownership or right to possession" of the allegedly converted property, *Lee*, 61 Cal.4th at 1240; however, "a mere contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to

---

[3] The Supreme Court's decision in *Apple, Inc. v. Pepper*, 139 S. Ct. 1514, 1519 (2019), is not to the contrary. That opinion addressed whether consumers who purchase apps from Apple's App Store are "direct purchasers" from Apple with standing under the federal antitrust laws. *Id*. at 1521. The Court did not (and did not need to) address the separate state-law question at issue here of whether developers are complete "strangers" to a transaction in which a consumer uses the developer's app to purchase in-app content created by that developer. For the reasons stated above, developers are clearly not strangers to those transactions.

1  establish a cause of action for the tort of conversion". *In re Bailey*, 197 F.3d 997, 1000 (9th Cir.
2  1999). Apple fails to allege that it *owns* or has a *possessory* interest that would entitle it to
3  possession of the money alleged to have been converted, but rather rests its conversion claim on
4  a mere contractual right, and so its claim falters at the first element.

5  California law "has been careful to distinguish proper claims for the conversion of money
6  from other types of monetary claims more appropriately dealt with under other theories of
7  recovery", such as breach of contract. *Voris v. Lampert*, 7 Cal.5th 1141, 1151 (2019). It does so
8  by requiring that the plaintiff plead "a right of ownership or possession" in the property it seeks,
9  separate from any contractual right of payment. *Id.* "[A] cause of action for conversion of
10 money can be stated only where a defendant interferes with the plaintiff's *possessory* interest in a
11 specific, identifiable sum", as "the simple failure to pay money owed does not constitute
12 conversion". *Id.* (emphasis in original, quotations and citation omitted); *see also Dallas and
13 Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F.Supp.3d 1048, 1060 (C.D. Cal. 2015) (dismissing
14 conversion claim without leave to amend because "it is clear that Plaintiffs' sought after remedy
15 for Defendant's alleged conversion is compensation per the parties' oral contract"). "Were it
16 otherwise, the tort of conversion would swallow the significant category of contract claims that
17 are based on the failure to satisfy mere contractual rights of payment." *Voris*, 7 Cal.5th at
18 1151-52 (quotations and citation omitted).

19 Apple's alleged right to collect commissions under the License Agreement is at most a
20 contractual right of payment that cannot sustain a conversion claim. Apple alleges in its
21 conversion counterclaim that Apple "has *a contractual right* to the possession of property in the
22 form of the commissions that it is entitled to under the License Agreement, including at
23 Schedule 2, ¶ 3.4(a)". (Counterclaims ¶ 75 (emphasis added).) Apple also alleges that the
24 License Agreement requires that "all payments from consumers would be delivered to Apple's
25 possession via IAP". (Counterclaims ¶ 76.) But even assuming that Epic received money that is
26 allegedly owed to Apple, these allegations do not show, as required to support a claim of
27 conversion, that Epic "misappropriated, commingled, or misapplied specific funds held for the
28 benefit of others". *Voris*, 7 Cal.5th at 1152 (quotations and citation omitted). This may occur,

1  for example, when a business partner collects money "on behalf of" another partner, but then
2  refuses to give that partner his share of the money. *Id.*  It may also occur when a sales agent sells
3  goods on behalf of another, but then fails to remit the sales proceeds to the principal seller. *Id.*
4  But Apple does not allege, nor could it allege, that Epic ever collected any money *on Apple's*
5  *behalf*.  Indeed, the Counterclaims and License Agreement assert precisely the opposite:  that
6  Apple had a contractual right to act as sales agent and collect money *on Epic's behalf*.
7  (Counterclaims ¶¶ 17, 49, 68-69.)  Apple also cannot point to any property interest, such as a
8  lien, in any funds collected by Epic.  *Compare Weiss v. Marcus*, 51 Cal.App.3d 590, 599 (1975).
9  Epic therefore cannot be liable to Apple for conversion.

10  Relatedly, Apple's claim fails also because Apple's alleged contractual rights did not
11  provide Apple with an interest that existed *at the time of the alleged conversion.  See Bailey*, 197
12  F.3d at 1000 (plaintiff alleging conversion "must show that she was entitled to immediate
13  possession at the time of conversion").  Apple alleges that Epic committed conversion "[b]y
14  incorporating into its *Fortnite* app an external payment system that circumvented the IAP
15  system", which is when Epic allegedly "misappropriated, took possession of, and interfered with
16  Apple's possessory interest in Apple's property".  (Counterclaims ¶ 77.)  But at the time of this
17  alleged act of conversion—the act of making the direct payment option available to *Fortnite*
18  users via hotfix on the morning of August 13, 2020 (Counterclaims ¶¶ 35-36, 53)—no money
19  had yet been collected.  Rather, Apple's conversion claim seeks to enforce alleged contractual
20  rights with respect to money Epic directly collected from *Fortnite* users *after* this alleged act of
21  conversion.  In other words, Apple is claiming that Epic converted a contractual right to collect
22  *future* payments, not property that Apple owned at the time of the conversion.  That is not
23  permitted under well-established California law.
24  In *Bogart*, for example, the district court considered a conversion claim asserted by a
25  sales broker seeking commissions owed pursuant to a marketing agreement.  *California State*
26  *Employees Ass'n v. Bogart*, No. C 14-02494-JAM, 2015 WL 461646, at *2-3 (E.D. Cal. Feb. 3,
27  2015).  The broker's marketing agreement with a non-party company entitled him to a
28  commission each time a member of the defendant association made a purchase from the

1  company. *Id.* at *1. On March 27, 2014, the defendant association sent a letter to the company
2  that resulted in the company's refusal to pay the broker his commissions on their future sales
3  beginning the next month—in April 2014. *Id.* at *2. The court granted the association's motion
4  to dismiss the broker's conversion claim with respect to those future sales commissions because
5  the broker had not alleged an ownership or possessory interest at the time of the alleged
6  conversion: "At the time of the alleged conversion—March 27, 2014—Bogart claims he was
7  contractually entitled to continue receiving future commission payments from Purchasing Power.
8  As noted above, however, a mere contractual right of payment, without more, does not entitle the
9  obligee to the immediate possession necessary to state a claim for conversion." *Id.* at *2-3.
10 Here, Apple too is claiming a mere contractual right of payment.
11        Apple's conversion claim should be dismissed for failing to allege a possessory interest.
12        **B.**     **Apple Fails to Allege a Specific, Identifiable, and Traceable Sum of Money.**
13        Apple's conversion claims also fails because Apple does not plead a "specific,
14 identifiable sum" that it seeks to recover. *See Voris*, 7 Cal.5th at 1151. Apple seeks recovery of
15 an ongoing and increasing sum of "at least" the commissions that would have been paid to Apple
16 if the transactions were completed through Apple's IAP, as well as an undefined quantum of
17 damages such as "reasonable compensation". (Counterclaims ¶ 78). But because money is
18 fungible, "money can only be treated as specific property subject to being converted when it is
19 'identified as a specific thing.'" *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &*
20 *Shapiro, LLP*, 150 Cal.App.4th 384, 395 (2007) (quoting *Baxter v. King*, 81 Cal.App. 192, 194
21 (1927)). Although "'it is not necessary that each coin or bill be earmarked'", the "specific
22 funds" sought to be recovered must be identified. *Id.* at 396 (quoting *Haigler v. Donnelly*, 18
23 Cal.2d 674, 681 (1941)). "[A]ctions for the conversion of money have not been permitted when
24 the amount of money involved is not a definite sum." *Id.*
25        Seeking "at least" its commissions in addition to "reasonable compensation" is precisely
26 the type of generalized claim that is insufficient. *See, e.g.*, *Vu v. California Commerce Club,*
27 *Inc.*, 58 Cal.App.4th 229, 231-32, 235 (1997) (affirming summary judgment for the defendant on
28 a conversion claim brought by two gamblers who lost "approximately $1.4 million" and

EPIC'S MOTION FOR JUDGMENT ON THE PLEADINGS       12        CASE NO. 4:20-CV-05640-YGR

1  "approximately $120,000", respectively, at a specific card club during specified periods of time,
2  due to alleged cheating); *Aimsley Enters. Inc. v. Merryman*, No. C 19-02101-YGR, 2020 WL
3  1677330, at *9 n.21 (N.D. Cal. Apr. 6, 2020) (recognizing "that a cause of action for conversion
4  requires identification of a specific sum owned by plaintiff rather than a generalized claim for
5  money lost or owed"); *Bogart*, 2015 WL 461646, at *2-3.  Thus, Apple's conversion claim also
6  fails for this reason.

### IV. PUNITIVE DAMAGES ARE NOT AVAILABLE.

Punitive damages are available only "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice". Cal. Civ. Code § 3294(a). Apple bases its requests for punitive damages on the allegation that Epic "undertook its tortious conduct with malice and/or fraud". (Counterclaims ¶¶ 72, 79.) But because punitive damages are available only "in an action for the breach of an obligation not arising from contract", dismissal of Apple's tort claims should result in dismissal of its punitive damages requests as well. Cal. Civ. Code § 3294(a); *see also Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) ("[P]unitive damages, which are designed to punish and deter wrongful conduct, are not available in breach of contract actions." (citing *Applied Equipment Corp.*, 7 Cal.4th at 516)). This Court has recognized that, "by its own terms, section 3294 applies neither" to breach of contract claims nor tort claims "arising from contract". *Congdon*, 2018 WL 2971058, at *2.

Apple cannot evade this rule by recasting its breach of contract claims as a tort involving "malice and/or fraud". In *JRS Products*, a California appellate court held that "motive, regardless of how malevolent, remains irrelevant to a breach of contract claim and does not convert a contract action into a tort claim exposing the breaching party to liability for punitive damages". 115 Cal.App. 4th at 182; *see also Congdon*, 2018 WL 2971058, at *3 ("plaintiffs in the instant action are not entitled to an award of punitive damages for a conversion claim *entirely dependent upon* their breach of contract claim." (emphasis in original)).

Further, Apple does not even allege an act of fraud, much less with the particularity required by Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir.

1 2003) (holding that "allegations of fraud are subject to Rule 9(b)'s heightened pleading

2 requirements", irrespective of whether an independent cause of action for fraud is asserted).

3 Among other deficiencies, Apple's counterclaims do not allege any misstatement or omission by

4 Epic in support of its allegations of fraud.  (*See, e.g.*, Counterclaims ¶¶ 72, 79 (alleging a "willful

5 and knowing" decision to introduce Epic Direct Pay but failing to identify any alleged

6 misstatements or omissions); *Vess*, 317 F.3d at 1106 (plaintiff alleging fraud "must set forth what

7 is false or misleading about a statement, and why it is false").)

8        Accordingly, Apple's requests for punitive damages should be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Epic's motion for judgment on the pleadings on Apple's counterclaims for intentional interference with prospective economic advantage and conversion, dismissing those claims as well as Apple's requests for punitive damages.

Dated: October 2, 2020

Respectfully submitted,

By:   */s/ Gary Bornstein*

Gary A. Bornstein

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-Defendant*
**EPIC GAMES, INC.**