THEODORE J. BOUTROUS JR. (SBN 132099)
tboutrous@gibsondunn.com
RICHARD J. DOREN (SBN 124666)
rdoren@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
JAY P. SRINIVASAN (SBN 181471)
jsrinivasan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. LEWIS (*pro hac vice*)
vlewis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

CYNTHIA E. RICHMAN (*pro hac vice*)
crichman@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

E. JOSHUA ROSENKRANZ (*pro hac vice*)
jrosenkranz@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: 212.506.5000
Facsimile: 212.506.5151

WILLIAM F. STUTE
(*pro hac vice*)
wstute@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: 202.339.8400
Facsimile: 202.339.8500

*Attorneys for Defendant Apple Inc.*

PAUL R. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
KATHERINE B. FORREST (*pro hac vice*)
kforrest@cravath.com
GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>                                          *Plaintiff,*<br><br>                    vs.<br><br>APPLE INC.,<br><br>                                          *Defendant.* | No. 4:20-CV-05640-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  October 19, 2020<br>Time:  9:30 a.m.<br>Courtroom:  1, 4th Floor (via Zoom)<br>Judge:  Hon. Yvonne Gonzalez Rogers |
| APPLE INC.,<br><br>                                          *Counterclaimant,*<br><br>vs.<br><br>EPIC GAMES, INC.,<br><br>                                          *Counter-defendant.* | |

Pursuant to the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, and the Court's Order of September 29, 2020 (ECF No. 103), Plaintiff and Counter-defendant Epic Games, Inc. ("Epic"), and Defendant and Counterclaimant Apple Inc. ("Apple"), together, the "Parties", individually, a "Party", by and through their undersigned counsel, hereby submit this Joint Case Management Statement in advance of the October 19, 2020 Case Management Conference.

**1.      JURISDICTION & SERVICE**

The Parties agree that the Court has subject matter jurisdiction pursuant to the Clayton Antitrust Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331, 1337 for Epic's claims.  The Parties further agree that the Court has supplemental jurisdiction over Epic's state law claims

1  pursuant to 28 U.S.C. § 1367, and also has subject matter jurisdiction over the state law claims

2  pursuant to 28 U.S.C. § 1332 based on diversity of citizenship of Epic and Apple.  Although Epic

3  does not seek monetary damages, the amount in controversy exceeds $75,000.

4  The Parties agree that the Court has subject matter jurisdiction over Apple's

5  counterclaims pursuant to 28 U.S.C. § 1332.  The Parties further agree that the Court has

6  supplemental jurisdiction over Apple's counterclaims pursuant to 28 U.S.C. § 1367, and also has

7  subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332 based on

8  diversity of citizenship of Epic and Apple.  The amount in controversy exceeds $75,000.

9  The Parties agree that no issues exist regarding personal jurisdiction or venue, and

10  that no Party remains to be served.

11  **2.**  **FACTS**

12  **EPIC'S STATEMENT**:  Epic's recitation of the facts will be brief given the

13  Court's familiarity with this case after having heard Epic's motions for a temporary restraining

14  order and preliminary injunction.  Apple has a complete monopoly in two relevant markets:

15  (1) the market for the distribution of apps compatible with the iOS to users of iOS devices (the

16  "iOS App Distribution Market"); and (2) the market for the processing of payments for the

17  purchase of digital content, including in-game content, that is consumed within iOS apps (the

18  "iOS In-App Payment Processing Market").  Apple requires all app developers to agree that

19  Apple's own App Store be the sole mechanism to distribute consumer apps on iOS and that its

20  own payment processing tool, In-App Purchase ("IAP"), be the sole mechanism to process in-app

21  purchases of digital content on iOS.  This anti-competitive conduct harms app developers,

22  consumers, and would-be competing app distributors and payment processing providers.

23  Apple's claims that the restrictions it imposes on developers are pro-competitive

24  will not bear scrutiny.  For example, if Apple is correct that the App Store is a "vital driver" of the

25  "consumer appeal" of Apple's mobile devices, then the App Store could succeed in a competitive

26  market; consumers and developers that valued the App Store's offering would choose to transact

27  through the App Store.  Apple's actions that *force* consumers and developers to use the App Store,

28  and make it the *only* software distribution method on iOS, expressly prevent competition that

1   would spur further innovation and lower prices for app distribution.  Likewise, if Apple is correct

2   that IAP "provides extensive benefits to iPhone users", then IAP could succeed in a competitive

3   market too.  Instead, Apple *requires* developers and consumers to use IAP for the in-app purchase

4   of digital content, again expressly preventing competition on various dimensions including

5   payment processing, customer service, parental controls, privacy protection, and more.

6            Epic anticipates that the following factual issues, among others, will be disputed:

7   (1) whether iOS App Distribution and iOS In-App Payment Processing constitute relevant

8   antitrust markets, including in particular whether a monopolist in iOS App Distribution or in iOS

9   In-App Payment Processing could profitably impose a small but significant non-transitory increase

10  in price; (2) whether Apple has market power in either of those markets; (3) whether Apple's

11  conduct has anticompetitive effects on app developers, consumers, and would-be competing app

12  distributors and payment processing providers; and (4) whether Apple's justifications for its

13  conduct are pretextual and/or can be achieved through less restrictive alternatives.

14          **APPLE'S STATEMENT**: Epic's Complaint and allegations are fatally flawed on the

15  facts and law. Apple is not a monopolist in any relevant market. Competition is fierce at every

16  level: for devices, platforms, and individual apps, and—as Epic's own experience shows—a

17  market limited to "iOS apps" lacks any basis in reality. Epic distributes *Fortnite* on numerous

18  mobile, PC, and game-console platforms. And to quote one of Epic's own employees, when it

19  comes to *Fortnite*, iOS is "the smallest piece of the pie."[1]

20          The challenged policies are also demonstrably procompetitive. Apple's App Store

21  maintenance and curation efforts—through which, among many other valuable services, it reviews

22  every app and update—are a vital driver of the consumer appeal and business success of Apple's

23  mobile devices and iOS apps. Employing hundreds of human experts covering 81 languages,

24  Apple reviews around 100,000 apps per week to ensure they meet Apple's high standards for

25  privacy, security, content, and quality. Apple's decision not to outsource the safety and privacy to

26

27          [1]      *See* Declaration of Mike Schmid in Support of Apple's Opposition to a Preliminary
     Injunction ¶ 18, Dkt. 79 (Sept. 15, 2020).
28

third parties is legitimate and has helped make iOS the safest and most trusted mobile platform. The App Store and IAP are key features of this integrated iOS infrastructure that provides tremendous value to consumers and offers competitive advantages over alternative platforms because of its integrated nature, which has been a part of Apple's business model from the outset.

Epic also seeks to prevent Apple from collecting commissions on in-app purchases. Under Apple's business model—which has remained unchanged—developers like Epic contractually agree to pay a commission to Apple on digital purchases. This commission revenue allows Apple to continue providing developer tools, app review, marketing support, and a host of other valuable products and services to both app developers and end users. Apple's collection of a 30% commission does not turn it into a "payment processor" within some fictional market for "in-app payment processing." Apple's IAP is simply an efficient, practical, consumer-friendly way for Apple to collect the fees developers have agreed to pay. Moreover, IAP provides extensive benefits to iPhone users, including a secure and centralized billing method, while also relieving developers of potentially crushing administrative burdens.

Although *Fortnite* has been removed from the App Store, the app remains installed on millions of iOS devices worldwide. Epic has reaped and continues to receive millions of dollars in in-app purchases through the unauthorized external payment mechanism that it deceptively smuggled onto the App Store, allowing Epic to divert to itself sales commissions that rightfully belong to Apple. Apple has therefore served Epic with Counterclaims to hold Epic accountable, in both contract and tort, for its malicious and injurious practices.

**3.      LEGAL ISSUES**

This case raises the following legal issues, among others:

Whether Apple's conduct in respect of the iOS App Distribution Market violates Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

Whether Apple's conduct in respect of the iOS In-App Payment Processing Market violates Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

Whether Apple's conduct violates California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

1    Whether the contracts between Apple and Epic are valid and lawful.

2    Whether Epic breached the implied duty of good faith and fair dealing.

3    Whether Epic is liable in quasi-contract for unjust enrichment at Apple's expense.

4    Whether Epic is liable in tort for intentionally interfering with Apple's economic

5    relationships with iOS consumers.

6    Whether Epic is liable in tort for conversion for misappropriation of Apple's

7    possessory interest in specific sums of money.

8    **4.    MOTIONS**

9    On August 24, 2020, the Court granted in part and denied in part Epic's motion for

10   a temporary restraining order.  (ECF No. 48.)

11   On October 9, 2020, the Court granted in part and denied in part Epic's motion for

12   a preliminary injunction (ECF No. 118).

13   On October 2, 2020, Epic filed a motion for judgment on the pleadings.  (ECF

14   No. 113.)  On October 5, 2020, pursuant to the Court's order (ECF No. 103), the Parties met and

15   conferred regarding this motion but did not reach resolution.  The Parties intend to complete

16   briefing of the motion pursuant to Civil Local Rule 7.

17   **5.    AMENDMENT OF PLEADINGS**

18   On September 29, 2020, the Court ordered that "[t]here shall be no amendments to

19   pleadings without good cause and only upon motion to the Court in accordance with Rule 16".

20   (ECF No. 104 ¶ 4.)  At this time, the Parties do not anticipate seeking leave to amend their

21   respective pleadings.  Both Parties reserve the right to seek leave to amend for good cause and in

22   accordance with Rule 16.

23   **6.    EVIDENCE PRESERVATION**

24   The Parties confirm that they have reviewed the Guidelines Relating to the

25   Discovery of Electronically Stored Information ("ESI Guidelines") and that they have met and

26   conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to

27   preserve evidence relevant to the issues reasonably evident in this Action.

28

**7.   DISCLOSURES**

The Parties will serve or have served their respective initial disclosures today, October 12, 2020.

**8.   DISCOVERY**

**A.   Discovery to Date and Coordination**

**EPIC'S STATEMENT**:  Given Apple's accusations below, Epic sets forth here the facts relevant to (i) Epic's response to the third-party subpoenas served on it by Apple and the *Cameron* Plaintiffs, and (ii) Epic's efforts to advance discovery in this Action, including Epic's first production even before receiving Rule 34 requests from Apple.

i.   *Cameron* Discovery

In March and April of this year, Apple and the *Cameron* Plaintiffs served third-party subpoenas on Epic.  Epic served its Responses and Objections in May and June, and in June and July engaged in several meet-and-confer calls with each of Apple and Plaintiffs.  Throughout this process, Epic explained that (i) it would require a supplemental Protective Order to protect certain of its most sensitive confidential information, (ii) it would not conduct custodial searches of ESI, but rather conduct a reasonable search for documents it had agreed to produce by asking individuals with relevant knowledge to identify such responsive documents, and (iii) it would conduct this search only after it had reached agreement with both Apple and Plaintiffs, so that it would not have to go back and do multiple collections and reviews.  To move the process forward, on July 17, 2020, Epic provided Apple with a proposed supplemental Protective Order.  Apple never responded to accept or counter Epic's proposal until after the September 28, 2020 preliminary injunction hearing.  In the correspondence between Epic and Apple since the September 28 hearing, Epic has made clear that it would continue standing on its objections, but expects that its production in response to the *Cameron* subpoenas would be subsumed in its production in this Action, where Epic is a party.[2]

---

[2] Contrary to Apple's assertions below, *infra* at 14, Epic never "unilaterally suspend[ed] negotiations with Apple" or "told Apple to just wait a bit".  Instead, Epic sought to engage with

1          Apple argues that "Epic has not 'completed its production of documents in

2    response to the third-party' subpoena served by Apple in the *Cameron* action".  This is wrong.

3    Epic completed its production by the Court-ordered deadline of October 7, 2020.  Apple's real

4    complaint concerns the Responses and Objections served by Epic over four months ago.  Pursuant

5    to Fed. R. Civ. P. 45(b)(2)(B), Epic's Responses and Objections narrowed the scope of its

6    production obligation in response to Apple's subpoena.  Epic and Apple subsequently met and

7    conferred, and Epic agreed to produce certain additional documents as to which it had originally

8    objected.  But Epic never waived its objections, and Apple never took any steps to challenge them.

9    On October 7, 2020, Epic completed its production of documents it had previously agreed to

10   produce.  Epic never agreed in *Cameron* to forensically collect and review thousands or millions

11   of ESI documents in response to Apple's subpoena, as Apple suggests below.  Notably, Apple

12   does not assert that Epic failed to produce documents within the scope of its Responses and

13   Objections, as modified through subsequent meet-and-confer discussions.  That is because Epic

14   satisfied all such requests, and Apple never raised any dispute with respect to those objections.  In

15   short, Epic has complied with its obligations in *Cameron* and *Pepper*.

16          In any event, Epic has explained to Apple that its past objections in *Cameron* were

17   made in its capacity as a third party.  Epic is in the process of a new collection and production in

18   this Action, and Epic has committed to making all documents produced in this Action available

19   also to the parties in *Cameron* and *Pepper*.  Epic is thus moving forward with all haste with party

20   discovery in this Action that will dwarf the third-party discovery it had agreed to in *Cameron*.

21   That should moot any claim Apple may have about the sufficiency of that third-party discovery.

22               ii.    *Epic v. Apple* Discovery

23          On August 29, 2020, as Epic sought to begin discussions with Apple about

24   discovery in this Action, Epic asked Apple for a "better understanding of the existing discovery in

25   [*Cameron* and *Pepper*], such as the scope of Apple's document production and any scheduled or

26

27   ───────────────────
     counsel for both Apple and the *Cameron* Plaintiffs in parallel, in an effort to coordinate the scope
     of its production and limit duplicative requests.

28

1    completed depositions" so Epic could review the current state of the discovery in *Cameron* and

2    *Pepper* and use it to streamline its discovery requests to Apple.  Apple did not respond.   On

3    September 17, 2020, Epic again asked Apple about discovery in *Cameron* and *Pepper*, specifically

4    to provide "all document requests directed to Apple and Apple's responses thereto, interrogatories

5    directed to Apple and Apple's responses thereto, any third party subpoenas that have been served

6    and responses thereto, and any correspondence regarding the foregoing".  Again, Apple did not

7    respond.

8            On September 22, 2020, Epic and Apple met to confer about discovery in this

9    Action.  During that meeting, Epic proposed that the Parties exchange proposed custodian lists and

10   asked again that as a first step, Apple provide Epic with the list of custodians Apple had agreed to

11   in *Cameron* and *Pepper*.  Apple again refused to disclose to Epic the list of custodians from whose

12   files documents were produced in *Cameron* and *Pepper*, the document requests pursuant to which

13   Apple's documents were produced in *Cameron* and *Pepper*, and other information about the scope

14   of Apple's document production in *Cameron* and *Pepper*.  Apple claimed that information about

15   *Cameron* and *Pepper* discovery was irrelevant to discovery in this Action.  It was not until

16   October 7, 2020, that Apple changed course and finally agreed to produce to Epic all written

17   discovery requests and responses from *Cameron* and *Pepper*, and committed to "provide Epic

18   with all documents produced so far in *Cameron* and *Pepper*".[3]

19           Apple's suggestion below that it previously withheld these productions because the

20   Court had not yet entered a protective order in this Action is inconsistent with its prior statements.

21   Apple previously said it was withholding the information based on the argument that it was

22   irrelevant to this case, not because of the lack of a protective order, and Apple did not raise the

23

24

25       [3] Apple now denies that it previously claimed the information about *Cameron* and *Pepper*
         discovery was irrelevant (*infra* at 11 n. 4), and asserts as proof its agreement, just last week, to
26       produce that information.  That proves nothing—other than that Apple has finally dropped its
         untenable position and now provided information it had long resisted providing.  Notably, Apple
27       does not deny that until October 7, it refused to produce these documents to Epic, despite Epic's
         repeated requests.
28

1  protective order issue at any time prior to yesterday (October 11, 2020), after Apple read Epic's

2  portion of this Joint Case Management Statement.

3        Also on October 11, 2020, Apple announced that it was unilaterally imposing a

4  condition on its re-production to Epic of the documents it had previously produced in *Cameron*

5  and *Pepper*.  Apple said it was re-producing those documents "with the understanding that Epic

6  Games may not litigate the decisions made in [*Cameron* and *Pepper*] that led to these productions,

7  including but not limited to scope of responsiveness, confidentiality determinations, and privilege

8  assertions".  There was no such understanding between Epic and Apple.  Epic could not—and did

9  not—agree to this condition, as it has no information about these unspecified "decisions", given

10 Apple's repeated refusals to discuss the course of discovery in *Cameron* and *Pepper*.  Epic will

11 promptly review the material Apple has now produced and remains hopeful that the documents

12 produced by Apple and third parties in *Cameron* and *Pepper* will allow for a more streamlined

13 document discovery process in *Epic v. Apple*, potentially limiting the need for certain discovery

14 from Apple and minimizing discovery disputes, thereby reducing the burden on the Parties, third

15 parties, and the Court.

16        However, Apple has not yet produced any discovery specific to this Action.  On

17 September 24, 2020, Apple proposed a limited list of six custodians for this Action, four of whom

18 Apple represented were not custodians in *Pepper* or *Cameron*.  Apple has not yet produced any

19 documents from the files of these individuals.  Apple's list of six custodians is also facially

20 deficient, as it does not include individuals on whom Apple repeatedly relied during the temporary

21 restraining order and preliminary injunction motions, such as Steve Jobs, Apple's former CEO, or

22 Tim Cook, Apple's current CEO.  (*See* Dkt. No. 36 at 3, 4, 6; Dkt. No. 72 at 3, 4, 22.)

23        By contrast, on that same day (September 24, 2020), Epic proposed to produce

24 documents from the files of 15 custodians.  Epic is in the process of collecting and reviewing

25 documents from the files of these custodians, and has already made an initial production of more

26 than 16,000 pages from the files of Timothy Sweeney, Epic's CEO.  Apple asserts, without basis,

27 that Mr. Sweeney's "documents were cherry-picked"; they were not.  Mr. Sweeney's documents

28 were forensically collected, culled through search terms, and reviewed for relevance and privilege.

1  Just as it had provided Apple with a complete list of proposed custodians, Epic will provide Apple

2  with full disclosure about the search terms it applies to the files of these custodians, and would

3  expect Apple to do the same when it collects and reviews documents specifically for this Action.

4  Moreover, in addition to the production Epic already made *prior to* any request by Apple, Epic

5  anticipates making another meaningful production from the files of its proposed custodians by the

6  end of this week, and fully expects to complete its document production by the deadline imposed

7  by the Court.

8                     **APPLE'S STATEMENT**:

9                     i.      Apple Already Has Provided Substantial Discovery

10                     Apple has already made substantial progress on discovery. After the Court entered

11  a stipulated Protective Order on October 2 (Dkt. 112), Apple provided Epic with the 3.6 million

12  documents produced by Apple in *Cameron* and *Pepper*, as well as all written discovery requests

13  and responses in those cases.[4] Apple produced these documents in good faith without waiting for a

14  discovery request from Epic, partly in reliance on Epic's repeated representations to the Court that

15  it would use discovery from the class action cases "efficiently," Aug. 24, 2020 Hr'g Tr. at 5, and

16  "documents produced by Apple and third parties in *Cameron* and *Pepper* will allow for a more

17  streamlined document discovery process," *see ante* at 8. Yet Epic's statement suggests that it

18  already intends to relitigate the "responsiveness, confidentiality determinations, and privilege

19  assertions" in the *Cameron* production, *see ante* at 10.  Epic cannot have it both ways.  To the

20  extent that Epic attempts to use this case to relitigate discovery in the *Cameron* matter, the Court's

21  expedited discovery schedule could be thrown into jeopardy.

22                     In addition to producing to Epic all documents already produced in *Cameron*,

23  Apple has also identified six custodians likely to have discoverable information specific to this

24  case—two of whom are custodians in *Cameron* and *Pepper*, and for whom Epic has already

25  

26  ————————————
    [4]     Epic's statement alleges that "Apple claimed that information about *Cameron* and

27  *Pepper* discovery was irrelevant to discovery in this Action."  That is false, as evidenced by the
    fact that Apple has *already produced* all of the documents and discovery responses from those

28  cases.

1    received custodial documents.[5] Apple has begun collecting documents from the four new

2    custodians and refreshing its collection of documents from the two *Cameron* custodians so it will

3    be in a position to produce documents when it receives Epic's document requests.

4                    ii.      Epic Has Produced Virtually No Discovery to Date

5              In contrast, Epic has taken an unserious and unproductive approach to discovery so far. Of

6    most pressing concern, Epic has not "completed its production of documents in response to the

7    third-party" subpoena served by Apple in the *Cameron* action months ago. *See ante* at 10. In fact,

8    Epic has produced only a few hundred documents (most of which appear to be variations of the

9    same form agreement), and has expressly refused to produce the vast majority of documents

10   responsive to that subpoena, which comprised just nine requests that seek documents directly

11   relevant to this case. Despite Epic's unreserved commitment to the Court that it would "make

12   production with alacrity on *the materials that have been requested of us*," (PI Hrg Tr. 6:25-7:1),

13   and the Court's September 29 Order that Epic "complete this production" by October 7 (Dkt. 104),

14   Epic's production fell far short of Epic's promises and the Court's Order.  Notably, Epic withheld

15   documents responsive to all but two requests, and refused to produce ***any*** documents in response

16   to Apple's request for documents about malware in games distributed through Epic's app

17   marketplace, the security and privacy risks associated with Epic's direct distribution of *Fortnite* to

18   users of Android mobile devices, and Epic's decision to make *Fortnite* available through Google

19   Play.

20

21

22            [5]      Epic's alleges that Apple's proposed custodian list is "facially deficient" because it
     includes neither Steve Jobs nor Tim Cook, "whom Apple repeatedly relied on during the
23   temporary restraining order and preliminary injunction motions."  Epic's statement
     mischaracterizes the facts.  Apple's temporary restraining order and preliminary injunction briefs
24   cite exactly two references with respect to its current and former CEO—Tim Cook's Statement
     before the U.S. House of Representatives Judiciary Committee, and an AppleInsider article
25   quoting Steve Jobs.  Both are publicly available to Epic, and neither supports the need for a
     custodial collection from Apple's highest executives.  To the contrary, Apple's proposed
26   custodian list includes all fact witnesses who submitted declarations in support of Apple's
     temporary restraining order and preliminary injunction briefs—including Philip Schiller, current
27   Apple Fellow and former Senior Vice President of Worldwide Marketing, who is the executive
     most likely to have information relevant to this case.

28

1    Moreover, Epic's search for documents was utterly insufficient.  Epic admits that its

2    responsive production includes no ESI and instead that Epic "manually identified" a cherry-picked

3    set of documents rather than doing an exhaustive search and production.  This particularly

4    unacceptable because Epic claims that it has been collecting documents, presumably including

5    ESI, from 15 of its custodians.

6    Epic has tried to distract from these deficiencies by "voluntarily" producing electronically

7    stored information from one custodian, Tim Sweeney. Epic has provided no information about this

8    production, how it was created or what it contains, suggesting that these documents were cherry-

9    picked and omit a significant amount of relevant materials.

10    There are no excuses for Epic's intransigence.  Epic's objections to producing plainly

11    relevant documents under Apple's subpoena were unfounded when it was a third party, and they

12    are even more meritless now that Epic has chosen to engage Apple in expedited litigation on the

13    very same issues presented in *Cameron* and *Pepper*.  Epic's attempt to justify its plainly deficient

14    production based on its unilateral objections as a third party in *Cameron* ignores that: (1) the Court

15    has already entered a protective order in this case (Dkt. 112), and Epic has withdrawn the

16    supplemental protective order terms it sought in *Cameron*; and, (2) the Court has already ordered

17    Epic to produce documents responsive to Apple's subpoena (Dkt. 104).

18    Epic also misrepresents the history of the parties' meet-and-confers with respect to Apple's

19    subpoena on Epic in the *Cameron* case.  After Epic served its objections and responses to the

20    subpoena,  Apple immediately engaged Epic to meet and confer on Epic's objections, which were

21    not acceptable to Apple.  In the course of the parties' negotiations, Epic indicated that it would

22    stand on objections to certain requests and provide limited responses to other requests, subject to

23    objections, using a document search process that was plainly inadequate.  Apple did not agree to

24    either of these proposals and expressly said so to Epic in these discussions.  But Epic indicated

25    that it was unilaterally suspending negotiations with Apple until it could reach agreement with

26    *Cameron* plaintiffs on the scope of Epic's responses to their subpoena.  Apple repeatedly

27    attempted to hasten the process by seeking to join Epic's discussions with *Cameron* plaintiffs,

28    consistent with the Court's Order on Discovery Coordination.  Epic rebuffed these efforts and told

1   Apple to just wait a bit—only to file suit against Apple before providing any responses to Apple's

2   subpoena.  Epic's claim that Apple never challenged or disputed the adequacy of Epic's response

3   to Apple's subpoena is frivolous in light of the Parties' active negotiations over Epic's objections.

4          Epic's improper approach to the *Cameron* subpoena is not an encouraging sign that Epic

5   will discharge its discovery obligations in good faith or that the parties will be able to meet the

6   aggressive schedule sought by Epic.  As the Court observed in its September 29 Order, Epic's

7   failure to comply with its outstanding discovery obligations "could have an impact on the

8   expeditious resolution of" this case.  Apple continues to urge Epic to take its discovery obligations

9   seriously and honor its representations to the Court by making the promised, complete production

10  in response to Apple's subpoena.  If Epic continues to refuse to do so, Apple will raise the issue

11  with the Court.

12          **B.        Scope of Anticipated Discovery**

13          <u>**EPIC'S STATEMENT**</u>:  At this time, and subject to its intent to leverage

14  discovery already taken in *Cameron* and *Pepper*, Epic expects to seek documentary and

15  testimonial discovery from Apple regarding, among other things:  (1) Apple's decision to adopt,

16  not to adopt, modify or cancel any technical and contractual restrictions concerning iOS app

17  distribution and in-app purchases (including payment processing) for digital content; (2) historical

18  and projected revenues, costs and profitability for the App Store and in-app purchasing; (3) the

19  relevant markets described in the Complaint and Apple's power in those markets, including any

20  barriers to entry; (4) internal analyses of competition between iOS and other OSs and between

21  iPhone/iPad and other devices; (5) historical and current policies, practices and pricing for the App

22  Store and IAP, including all exceptions thereto; (6) security measures, threats or past breaches

23  concerning iPhones/iPads, Macs, iOS, macOS, the App Store, IAP, or third party payment

24  processing; (7) Apple's investment in the development of APIs, SDKs, any other developer tools,

25  the App Store and IAP; (8) information about all prior instances where either a developer included

26  or requested to include a payment method other than IAP in an app and Apple's response thereto;

27  (9) Apple's practices and policies on the termination of developer accounts; (10) Epic or its

28  products, including Apple's actual or contemplated response to the introduction of Epic direct pay

1   on iOS; (10) Apple's productions in governmental investigations and inquiries regarding App

2   Store practices; (11) the effects of Apple's policies and practices on competition, innovation, app

3   developers, consumers, app distributors and payment processing providers; and (12) any purported

4   procompetitive justifications for Apple's conduct.

5   At this time, Epic also intends to seek documentary and testimonial discovery from

6   non-parties, including developers who have dealt with Apple to distribute their app(s) through the

7   App Store and distributors of software.

8   **APPLE'S STATEMENT**: Apple expects to serve Requests for Production,

9   Interrogatories, and Requests for Admission on Epic in this case, seeking documentary and

10   testimonial discovery from Epic regarding, among other things: (1)  Epic's distribution of apps

11   through the App Store and other platforms; (2) competition among app marketplaces, game

12   platforms, games/apps, and game/app developers; (3) Epic's distribution of its products on

13   platforms other than iOS; (4) the various tools, services, and benefits that Epic has received from

14   Apple to help it develop apps for iOS and achieve success on Apple's platform; (5) Epic's

15   business model, revenues, costs and profits; (6) Epic's development and implementation of its

16   direct payment mechanism; (7) Epic's relationships with developers who distribute their products

17   through Epic; and (8) Epic's allegations in this case.

18   Apple also intends to seek documentary and testimonial discovery from third

19   parties, including, potentially, third-party game/app distributors and game/app developers.  Apple

20   also anticipates that third-party discovery will include Tencent Holdings, Ltd. and potentially

21   other non-U.S. entities, which might take more time to complete.

22   **C.**       **Proposed Limitations or Modifications to the Discovery Rules**

23   *Depositions.*  Epic believes that relief from the limitation on the number of

24   depositions set forth in Fed. R. Civ. P. 30(a)(2) is necessary and appropriate, but believes it is

25   premature to set a precise limit on the number of depositions at this time.  Apple believes that it is

26   too early to tell if any relief from Rule 30(a)(2) is necessary.

27   The Parties agree to engage in reasonable efforts to coordinate discovery, including

28   stipulating to the Court's January 2, 2020 Order Regarding Coordination of Discovery, subject to

1  reasonable modifications or adjustments necessary to ensure such procedures do not unfairly

2  prejudice either Party.

3          The Parties agree that they should seek to achieve the maximum coordination of

4  document and other discovery among the related cases where reasonably practical.  To that end,

5  Epic intends to produce all document it produces in any of the related cases in all the cases.  In

6  addition, the Parties agree that:

7          *Document Subpoenas to Non-Parties*.  The Parties agree as follows with respect to

8  non-parties producing materials in response to Fed. R. Civ. P. 45 document subpoenas in this

9  Action.  The issuing Party shall request that non-parties simultaneously produce materials to both

10  Epic and Apple.  If, notwithstanding such request, the non-party does not produce the materials to

11  both sides, the issuing Party shall provide a copy of all materials to the other side within three

12  calendar days after receipt of the materials from the non-party.

13          *Authenticity Presumptions*.  The Parties agree that all documents produced by

14  either Party or by non-parties from the non-parties' files shall be presumed to be authentic within

15  the meaning of Fed. R. Evid. 901.  If a party serves a specific good faith written objection to the

16  authenticity of a particular document, the presumption of authenticity will no longer apply to that

17  document.  Any objection to a document's authenticity must be provided with (or prior to) the

18  exchange of objections to trial exhibits.  The parties will promptly meet and confer to attempt to

19  resolve any such objection.

20          *Service*.  Service of any documents not filed via ECF, including pleadings,

21  discovery requests, subpoenas for testimony or documents, and expert disclosure shall be by email

22  to all attorneys for the receiving Party then appearing on the ECF docket, at the email addresses

23  listed thereon.  In the event the volume of served materials is too large for email and requires

24  electronic data transfer by file transfer protocol or a similar technology, or overnight delivery, the

25  serving Party will telephone or email the other side when the materials are sent to provide notice

26  that the materials are being served.  For purposes of calculating discovery response times under

27  the Federal Rules of Civil Procedure, electronic delivery shall be treated the same as hand

28  delivery.

### D.    Report of Planned Stipulated E-Discovery Order

The Parties will file a Stipulated Electronically Stored Information (ESI) [Proposed] Order by October 26, 2020.

### E.    Current Discovery Disputes

There are no current discovery disputes that require relief from the Court.  Apple states that if Epic does not immediately cure the substantial deficiencies in its production in response to Apple's *Cameron* subpoena, Apple will bring this dispute to the Court in the very near term.  Epic refers to its statement in 8.a, above.

## 9.    RELATED CASES

The Court has two related cases to this litigation: *Cameron et al. v. Apple Inc.*, Case No. 19-cv-03074-YGR (filed June 4, 2019), and *In re Apple iPhone Antitrust Litigation*, Case No. 11-cv-06714-YGR (filed December 29, 2011). *See* Related Case Order, *Cameron* Dkt. 107 (Aug. 19, 2020).  In its October 6, 2020 order, the Court indicated that it was "interested in the potential overlap with the Related Matters" and instructed the Parties to meet and confer with counsel in *Pepper* and *Cameron*. Dkt. 116 at 3.  The Parties in the related matters continue to meet and confer to explore coordination between the cases.

In addition, two new class action lawsuits have been filed against Apple: (1) *Pistacchio v. Apple, Inc.*, No. 3:20-cv-07034, filed in this Court on October 8, 2020, and (2) *Beverage, et al. v. Apple, Inc.*, No. 20-cv-370535, filed in the Superior Court of California on September 17, 2020. The Parties reserve their rights with respect to any potential motion to relate these actions to the above-captioned action.

## 10.    RELIEF

**EPIC'S STATEMENT**:  Epic seeks all appropriate injunctive and equitable relief, including that the Court:  (1) issue an injunction prohibiting Apple's anti-competitive conduct and mandating that Apple take all necessary steps to cease unlawful conduct and to restore competition; (2) award a declaration that the restraints complained of in the Complaint are unlawful and unenforceable; (3) award any other equitable relief necessary to prevent and remedy

1  Apple's anti-competitive conduct; and (4) grant such other and further relief as the Court deems

2  just and proper.  (*See* Compl. at pp. 61-62 (Prayer for Relief).)  Epic does not seek monetary relief

3  in this litigation.

4        With respect to each of Apple's counterclaims, Epic requests that the Court:

5  (1) enter judgment in favor of Epic and against Apple, and (2) deny the relief Apple requests.

6        **APPLE'S STATEMENT**: With respect to Epic's antitrust claims, Apple requests that the

7  Court: (1) enter judgment in favor of Apple and against Epic, and (2) deny the relief Epic requests.

8        With respect to Apple's Counterclaims, Apple seeks all appropriate injunctive,

9  equitable and monetary relief, including that the Court: (1) decree that Apple's contracts are

10 enforceable and that, pursuant to those contracts, Apple has the right to terminate breaching

11 developers and their affiliates; (2) decree that Epic is liable for breach of contract and the implied

12 covenant of good faith and fair dealing and its tortious conduct, and that Apple can enforce

13 contractual termination provisions against breaching developers and their affiliates; (3) award

14 Apple compensatory and punitive damages, attorneys' fees, and interest; (4) order restitution and

15 disgorgement of Epic's earnings, profits, compensation, benefits, and other ill-gotten gains; (5)

16 enter a permanent injunction enjoining Epic and all acting in concert or participation with Epic

17 from facilitating, assisting, or participating in the operation of an external payment mechanism in

18 Epic's apps (including *Fortnite*), introducing further unauthorized external payment mechanisms

19 into iOS apps, and/or  removing IAP as an available payment mechanism for in-app purchases

20 through any iOS apps; and (6) award any further relief the Court deems just and proper. (*See*

21 Apple's Answer and Counterclaims, ECF No. 66 at 56-65 (Claims and Prayer for Relief).)

22 **11.    SETTLEMENT & ADR**

23        At this time, the Parties do not believe that settlement is likely.  The Parties have

24 met and conferred regarding ADR, and determined that ADR would not assist in resolving the

25 case at this time.  The Parties, however, intend to stipulate to an ADR process in due course.

26        On October 12, 2020, the Parties filed their respective ADR Certifications.

27 **12.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

28

1    The Parties respectfully decline assignment to a magistrate judge for all further
2    proceedings in this Action.

3    **13.    OTHER REFERENCES**

4    The Parties agree that this case is not suitable for reference to binding arbitration, a
5    special master, or the Judicial Panel on Multidistrict Litigation.

6    **14.    NARROWING OF ISSUES**

7    On September 28, 2020, the Court stated that it did not intend to bifurcate the trial.
8    (Hr'g Tr. 100:19.)

9    On October 2, 2020, Epic filed a motion for judgment on the pleadings with respect
10   to certain of Apple's counterclaims.  (ECF No. 113.)  Apple disputes the merits of Epic's motion
11   and intends to file a response by the October 16, 2020 deadline.

12   In its October 6, 2020 Order, the Court said the Parties "should meet and confer
13   and formulate recommendations to streamline trial issues and briefing, including whether briefing
14   on certain legal issues should be staged in advance of the trial".  (ECF No. 116 at 2.)  As
15   suggested by the Court, the Parties are amenable to pretrial briefing on certain legal issues.  The
16   Parties are continuing to meet and confer regarding this issue in advance of the October 19, 2020
17   conference.

18   **15.    EXPEDITED TRIAL PROCEDURE**

19   The Parties agree that this case is not suitable for handling under the Expedited
20   Trial Procedure of General Order No. 64.

21   **16.    SCHEDULING**

22   On September 29, 2020 and October 6, 2020, the Court ordered dates for a
23   schedule for this Action.  (ECF Nos. 103, 104, 116.)

24   **17.    TRIAL**

25   The Parties agree and the Court ordered that this case (including any claims and
26   counterclaims) should proceed to a bench trial.  (ECF Nos. 105, 116.)  At this time, the Parties are
27   unable to estimate the length of trial.

28   **18.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

1    Pursuant to Civil Local Rule 3-15, Epic filed its Certification of Interested Entities

2 or Persons (ECF No. 3), which discloses that as of the date of filing, Tencent Holdings Limited

3 owns more than 10% of Epic's stock, and that, other than the named parties, Tencent Holdings

4 Limited, and Timothy Sweeney, there is no other person, firm, partnership, corporation, or other

5 entity known by Epic to have either:  (i) a financial interest in the subject matter in controversy or

6 in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by

7 the outcome of the proceeding.

8    Pursuant to Civil Local Rule 3-15, Apple has filed its Certification of Interested

9 Entities or Persons (EC No. 117), which discloses that as of the date of filing, Apple has no parent

10 corporation, and no publicly held corporation owns 10% or more of its stock, and certifies that,

11 other than the named parties, there is no other person, firm, partnership, corporation, or other

12 entity known by Apple to have either: (i) a financial interest in the subject matter in controversy or

13 in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by

14 the outcome of the proceeding.

15 **19.    PROFESSIONAL CONDUCT**

16    The Parties confirm that all attorneys of record for the Parties have reviewed the

17 Guidelines for Professional Conduct for the Northern District of California.

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 12, 2020            CRAVATH, SWAINE & MOORE LLP

                                    Respectfully submitted,

                                    By:    /s/  Gary A. Bornstein
                                           Gary A. Bornstein

                                        *Attorneys for Plaintiff Epic Games, Inc.*


Dated:  October 12, 2020            GIBSON, DUNN & CRUTCHER LLP

                                    By:  /s/ Cynthia Richman
                                         Cynthia Richman

                                        *Attorneys for Defendant Apple Inc.*