**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | |
|---|---|
| EPIC GAMES, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| VS. ) | **NO. CV 20-05640-YGR** |
| ) | |
| APPLE INC., ) | |
| ) | |
| Defendant/Counter-Claimant. ) | |
| ) | |

Oakland, California
Tuesday, November 10, 2020

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff/Counter-Defendant:
    CRAVATH SWAINE MOORE LLP
    825 Eighth Avenue
    New York, NY 10019
**BY: JOHN I. KARIN, ESQUIRE**

For Defendant/Counter-Claimant:
    GIBSON, DUNN & CRUTCHER LLP
    1050 Connecticut Avenue NW
    Washington, DC 20036
**BY: ANNA L. CASEY, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
    Official Reporter

```
 1   Tuesday - November 10, 2020                           4:13 p.m.
 2                          P R O C E E D I N G S
 3                                ---o0o---
 4        THE CLERK:  Calling CV 20-5640, Epic Games, Inc. vs.
 5   Apple Inc.
 6        Counsel, please state your appearances.
 7        MR. KARIN:  John Karin on behalf of
 8   Plaintiff/Counter-Defendant Epic.
 9        MS. CASEY:  Anna Casey of Gibson Dunn for Apple.
10        THE COURT:  All right.  Good afternoon.
11        It's never the best time to have to argue after the judge
12   has been on calendar for two-and-a-quarter hours, but here we
13   go.
14        Mr. Karin, you said you're for Epic?
15        MR. KARIN:  Yes, Your Honor.
16        THE COURT:  All right.  And, Ms. Casey, you're on the
17   losing side of this, so we'll start with you.
18        Let's start with the economic loss rule.  So as I
19   mentioned, as I'm sure you heard, I don't believe that we've
20   got a tort action here.  I said that long ago.  I still believe
21   it today.  Conversion is a tort act, and the economic loss rule
22   relates to tort acts or tortious acts, and that's in part why
23   you are on the losing side because both the conversion claim
24   and the interference claim all arise out of tort.
25        This is a high-stakes breach of contract case and an
```

1   antitrust case, and that's really all it is, in my view.
2        Go ahead.
3            **MS. CASEY:** Thank you, Your Honor.
4            **THE COURT:** You're welcome.
5            **MS. CASEY:** I think what might be helpful to think
6   about as we -- as we contemplate the economic loss rule and how
7   it applies in this case is it's Apple's position that Epic's
8   conduct here is not anything materially different from any
9   other hacker.  If another hacker had gotten into Apple's IAP
10  system and had siphoned funds just as end users submitted those
11  funds towards Apple and they had siphoned funds and taken them
12  as their own, I think that it is pretty clear that that would
13  be a conversion claim.
14       So the fact that Epic is particularly efficient at
15  converting, that they can convert instantaneous with --
16  instantaneously as the consumers submit their payments I think
17  shows -- it doesn't mean that they get a get-out-of-jail-free
18  card for conversion.
19           **THE COURT:** No.  But you can't ignore that they have a
20  license agreement and there is a working relationship, and
21  that's why this is a contractual dispute as opposed to one
22  that's with some unknown third party referenced in the case law
23  as a stranger.  That doesn't exist here.
24           **MS. CASEY:** I guess I would say that I think *Robinson*
25  is instructive on this, but *Robinson*, while the facts might be

different, it lays out the common rule across California courts which is that there are tortious breaches of contract, and those involve conduct that involves deceit.

I also think, as Your Honor said -- you know, you said this is a high-stakes case. I also think the facts of this are unusual. This isn't your common, you know, negligent breach of contract where it just happened that they didn't have the supplies they needed to fulfill their contract. This was a malicious campaign. This was intentional conduct all the way through, and as Your Honor has recognized in the Preliminary Injunction Order, there is a lot of deceit that is going on here, and I think *Robinson* and *Erlich* -- all of these cases recognize that conduct that involves deceit can lift commonplace breaches of contract into the realm of torts.

**THE COURT:** All right.

Mr. Karin, *Robinson*.

You're muted.

**MR. KARIN:** Thank you, Your Honor.

*Robinson Helicopter* is entirely different. In that case, the defendant sold almost a thousand defective helicopter parts to the plaintiff, who then incorporated them into their helicopters. Then the defendant submitted false certifications certifying that the parts were compliant, and they weren't. They were defective. Of course that defendant was liable for punitive damages. They knowingly risked hundreds, if not

1  thousands, of lives and then lied about it.

2      Epic's conduct is entirely different.  Here there are no
3  affirmative misrepresentations about the hotfix.  Apple does
4  not allege otherwise.  Epic's conduct did not expose Apple to
5  liability for personal damages from third parties.  Apple does
6  not allege otherwise.  Apple has not pleaded a fraud claim
7  here, and there would be no independent basis for it.  In
8  *Robinson Helicopter*, the defendant submitted false statements,
9  and that gave rise to a fraud claim, but there is no analogous
10 conduct here.

11         **THE COURT:**  What else do you have to say about
12 Ms. Casey's argument?

13         **MS. CASEY:**  I guess the other --

14         **THE COURT:**  Hold on.  Hold on.

15     Mr. Karin.

16         **MR. KARIN:**  Well, more generally, Your Honor, in order
17 to state a tort, you need an independent duty when you also
18 have a contract here.  In this case, Epic's duty to pay
19 commissions is solely contractual.  It arises from the license
20 agreement.  There is no statute, there is no common law
21 principle that requires an app developer to pay 30 percent of
22 in-app purchases to an app distributor, and Apple's
23 counterclaims are littered -- especially in the count
24 section -- they are littered with references to the license
25 agreement and the contractually-agreed-upon rate in both the

1  conversion and the interference counterclaim.
2  So I think Your Honor has it exactly right.  This is a
3  contract case.
4  **THE COURT:**  Ms. Casey, it's interesting, you know,
5  your reference to a "hacker."  The funds belong to Epic less
6  the 30 percent.  It's hard for a hacker to be able to argue,
7  given your analogy, that any of those funds belong to them.
8  Remember, Apple was just the intermediary; right?  Those funds
9  were theirs, Epic's, less the 30 percent.
10  So, again, I don't know that you can make that same
11  argument.  And clearly in *Robinson* there was really different
12  facts upon which the tort claim could be based.  Here there are
13  no separate facts.  All of the facts are the same with respect
14  to the contract claim and the alleged tort claim.
15  Let's look at the intentional interference claim more
16  specifically.  The act that needs to be alleged there, the
17  independent act, under the *Korea Supply Company vs. Lockheed*
18  *Martin* case -- that's 29 Cal.4th 1134 at 1158 and 59 -- "an act
19  is independently wrongful if it is unlawful, that is, if it is
20  prescribed by some constitutional, statutory, regulatory,
21  common law, or other determinable legal standard."
22  Well, here I don't see that anything is alleged -- and
23  this is the third out of five elements that's required to state
24  a claim -- other than, again, the allegations with respect to
25  the actual breach of contract.  What else is it that you have?

1    **MS. CASEY:**  Your Honor, I think the way to understand
2    "independently wrongful conduct" as interpreted through
3    California law, including *Korea Supply*, is that it -- the
4    conduct is wrongful independent of the contractual
5    relationship; not that there has to be two different sets of
6    conduct but rather the conduct, even setting aside the
7    contract, it would have been wrongful.  So I think *Buckaloo* is
8    helpful there.
9         I think *Buckaloo* -- in *Buckaloo* the contract was void for
10   a statute of frauds, and so it was unenforceable, but even
11   then, the court went to on to say that that conduct, which was
12   taking advantage of all of the broker's efforts in stock and
13   trade and inducing the seller to accept a lower price -- all of
14   that, that still constituted a wrongful act because it was
15   interfering with the prospective economic advantage of another.
16        **THE COURT:**  Okay.
17       A response on *Buckaloo*.
18        **MR. KARIN:**  *Buckaloo* is a 45-year-old case, and it is
19   no longer good law.  It was expressly disapproved of in the
20   *Della Penna* case 20 years later where the California Supreme
21   Court, quote, "expressly reconstructed the third element by
22   adding that the intentional acts be wrongful."
23        That requirement did not exist when the *Buckaloo* case was
24   decided, so that case cannot support Apple's argument that
25   Epic's acts were independently wrongful.  And tellingly,

1   Epic's -- Apple cites no post *Della Penna* case in support on
2   this argument.
3       **THE COURT:**  So Epic made that argument in its
4   briefing.  Do you have a response?  And are they correct in
5   terms of the history of the cases?
6       **MS. CASEY:**  Your Honor, taking both those questions,
7   first I think *Della Penna* itself is helpful for the
8   understanding that *Buckaloo* remains good law.  *Della Penna*
9   clarified the allocation of burdens between the parties for an
10  intentional interference claim.
11      *Korea Supply Company* -- switching around, a California
12  Supreme Court case -- specifically disagreed with the
13  conclusion that the elements first articulated in *Buckaloo* do
14  not still apply.
15      So I think the best way to understand the relationship
16  between these, like, trio California Supreme Court cases is the
17  idea that in *Buckaloo*, the issue was that the pleading -- in
18  *Buckaloo* they did not require that the plaintiff plead
19  independent wrongful conduct; instead, it was an affirmative
20  defense that could come in later.  And so when the court found
21  that there was no contractual relationship and still found that
22  the tort claims stand, then obviously there must have been
23  independent wrongful conduct or the tort claim would have
24  failed as well.  So I don't understand.  I don't think that
25  *Buckaloo* helps Epic's case here.

1       **THE COURT:** Mr. Karin.

2       **MR. KARIN:** Your Honor, I don't believe that that's a
3   correct interpretation of either of those three cases.

4       The *Korea Supply* case did not involve facts that were
5   similar to the *Buckaloo* case, so there would have been no
6   reason for the *Korea Supply* case to say that *Buckaloo* was right
7   on the facts.  The *Della Penna* case expressly said that it was
8   reconstructing the third element, which is the relevant element
9   here.  It's not just changing the proof requirements of the
10  burden of proof.  And, furthermore, I don't think *Buckaloo*
11  hinged on the existence of an affirmative defense.

12      So I don't think any of that is correct, Your Honor.

13      **THE COURT:** I think he's right.

14      A response.

15      **MS. CASEY:** On the, like, relationship between what is
16  current law or on what *Buckaloo* stands for?

17      **THE COURT:** On the reconstruction of the third
18  element.

19      **MS. CASEY:** Yes.

20      So, Your Honor, I think the idea is in *Buckaloo*, at that
21  time, the plaintiff didn't have to plead independent wrongful
22  conduct, which I think everyone would agree was like the state
23  of the law at that time.  Here we've pled that we think the
24  conduct that Epic engaged in is independently wrongful.  So --

25      **THE COURT:** You can't just say it's independently

1  wrongful.  If you were listening to lots of the other arguments
2  earlier today, that's what we call a bald conclusory statement.
3  You can't just say it.  You actually have to have facts to
4  support it, and here you don't.  You have to allege facts that
5  support it, and here you don't.
6      So, again, this goes back to, you know, what's the
7  gravamen of the action between the parties, and I don't see
8  anything alleged that is something different than the
9  contractual relationship's gone south.
10     Let's move on to conversion.  So with respect to
11 conversion, Apple has to assert, "Ownership or right of
12 possession of the alleged converted property.  A mere
13 contractual right to payment without more does not entitle the
14 obligee to the immediate possession necessary to establish a
15 cause of action for the tort of conversion."  It's *In re*
16 *Bailey*, 197 F.3d 997, Ninth Circuit case, 1999.
17     There is actually lots of law on the topic of conversion.
18 There is also *Lee vs. Hanley*, 61 Cal.4th 1225 at 1240.  That's
19 a 2015 case.
20     And what all these cases have in common is that you need
21 to have a specific identifiable property or in the case of
22 money, a specific or identifiable sum of money.  We aren't
23 talking about an accounting.  We aren't talking about failure
24 to turn over commissions or something like that.  It has to be
25 more than that because this is a tort.  It is not a breach of

1  contract.
2      So, again, you're on the losing side of this one,
3  Ms. Casey.  I hope they like you at your firm.  That's why they
4  let you argue this case knowing that I had already said you
5  were on the losing side, but go ahead.
6      **MS. CASEY:**  Your Honor, I think cases like *Sanowicz*
7  are very instructive.  As the Court recognizes, there is a lot
8  of California law on conversion claims.  I would point to the
9  *Voris* opinion that says, "Contractual provisions may, of
10  course, determine whether the plaintiff has a possessory right
11  to funds in the defendant's hands."
12      Here, Your Honor, as you're well aware with this very
13  involved case, the agreement has been terminated, and still to
14  this day on information and belief Epic is taking in funds that
15  rightfully should be in Apple's possession.  In the *Sanowicz*
16  case that involved commissions, the plaintiffs didn't actually
17  touch the money either; right?  The commissions were being
18  withheld.  So I think the same is true here.
19      Here the fact that Epic has used technology to divert
20  funds that but for their conduct would be sitting in Apple's
21  hands doesn't mean that they don't have a possessory interest,
22  even though they are not holding the funds at this time.
23      **THE COURT:**  But Apple doesn't own the funds; that is,
24  they belong to Epic, and Apple gets 30 percent as a commission.
25  That's different.

1   **MS. CASEY:** Your Honor, I would suggest -- I would put
2   forward the idea here that, first, as you've acknowledged, the
3   30 percent is in dispute, and I would propose that that is
4   going to be a damages issue if the Court were to find that this
5   contract is unenforceable, which, I mean, Epic has strongly
6   argued throughout this litigation.
7       Second, Apple has a contractual right to all of the
8   payments --
9       **THE COURT:** Well, that's the point.  Ms. Casey, you
10  have a contractual right.  That's my point.  That's my point.
11      Mr. Karin.
12      **MR. KARIN:** Your Honor, I think Your Honor has it
13  exactly right, and I have nothing further to add.
14      **THE COURT:** So, you know, I once argued a summary
15  judgment motion, and that's usually the right way to go when
16  you're winning, is to not say something that might accidentally
17  get you into a position where you're losing.
18      Are you familiar with the term "CACI," Ms. Casey?
19      **MS. CASEY:** The term "CACI"?
20      **THE COURT:** As in CACI instructions.  Have you ever
21  looked at CACI instructions?
22      **MS. CASEY:** No, Your Honor.
23      **THE COURT:** Well, if you practice in California, you
24  should buy the book -- or I guess you guys don't buy books
25  anymore.  Look at the book online.

1        I find CACI to be very instructive.  These are the
2   California jury instructions, and they are written by judges.
3   They're used by judges every day in trials, and this is where
4   we look -- it's the first place we look for elements.  It's the
5   most simple place to go.  It gives you all the law you need,
6   and it identifies effectively what we need to ask jurors to
7   decide.
8        So you should look at that, too, in addition to all of
9   this other case law, but it's -- you know, again, just because
10  you're in a contractual dispute doesn't mean we cross over to
11  tortious conduct.
12       If you can't sustain either of your tort acts, it doesn't
13  seem to me there is a basis for punitive damages, which aren't
14  available in a breach of contract.  Everybody agree with that
15  basic proposition?
16           **MS. CASEY:**  Yes, Your Honor.
17           **MR. KARIN:**  Yes, Your Honor.
18           **THE COURT:**  Okay.  All right.
19       Anything else you want to argue?  I will start with you,
20  Ms. Casey.
21           **MS. CASEY:**  No, Your Honor.
22           **THE COURT:**  Mr. Karin?
23           **MR. KARIN:**  No, Your Honor.
24           **THE COURT:**  Okay.
25       The motion is granted as to the two claims and the

1     punitive damages.
2         If you had butterflies, I hope next time you have fewer
3     butterflies.
4         Anything else?  No?  No?  Okay.  Stay safe.  We're
5     adjourned.  Thank you.
6             **MR. KARIN:**  Thank you, Your Honor.
7             **MS. CASEY:**  Thank you.
8                 (Proceedings adjourned at 4:33 p.m.)

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Thursday, November 12, 2020

*Pamela Batalo Hebel*
_____
Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
U.S. Court Reporter