<p style="color:red"><b>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</b></p>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>*Plaintiff, Counter-defendant,*<br>v.<br>APPLE INC.,<br><br>*Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR-TSH |
| DONALD R. CAMERON, *et al.*,<br><br>*Plaintiffs,*<br>v.<br>APPLE INC.,<br><br>*Defendant.* | Case No. 4:19-cv-03074-YGR-TSH<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING ADDITIONAL APPLE DOCUMENT CUSTODIANS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Pursuant to the Court's Discovery Standing Order, the parties in the above-captioned actions respectfully submit this joint letter brief regarding additional Apple document custodians.

Counsel for Epic Games, Inc. ("Epic"), plaintiffs ("Class Plaintiffs", together with Epic, "Plaintiffs") in *Cameron v. Apple* and *In re Apple iPhone Antitrust Litigation* (the "Class Actions") and Apple Inc. ("Apple", together with Plaintiffs, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter. The Parties can make additional exhibits—including the documents identified in this submission— available to the Court upon request.

The Parties agree that the issues in this joint letter brief are ripe for either of the hearings previously scheduled in the above-captioned actions for December 9, 2020 or December 15, 2020, if the Court would like to add these issues to the agenda for either of those hearings.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP | HAGENS BERMAN SOBOL SHAPIRO LLP |
| By: /s/ *Lauren A. Moskowitz*<br>Lauren A. Moskowitz<br>*Counsel for Epic Games, Inc.* | By: /s/ *Benjamin J. Siegel*<br>Benjamin J. Siegel<br>*Counsel for Developer Plaintiffs* |
| WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP | GIBSON DUNN & CRUTCHER LLP |
| By: /s/ *Rachele R. Byrd*<br>Rachele R. Byrd<br>*Counsel for Consumer Plaintiffs* | By: /s/ *Jay P. Srinivasan*<br>Jay P. Srinivasan<br>*Counsel for Apple Inc.* |

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

**Plaintiffs' Position:** Plaintiffs jointly move to compel Apple to search Tim Cook's files without preconditions concerning his yet-to-be-scheduled deposition, and to search Craig Federighi's files.

**Relevant Background:** Plaintiffs identified Cook and Federighi as highly relevant custodians months ago. (*See, e.g.*, Ex. 2 at 4; Ex. 5 at 3.) Apple asserts that "Class Plaintiffs did nothing for six months", but it was Apple that refused to consider additional custodians until Class Plaintiffs "identif[ied] any deficiency . . . in [Apple's] discovery", forcing Class Plaintiffs to await Apple's production. (Ex. 3 at 3-4.) Following review of what Apple represented was its substantially complete production, Class Plaintiffs renewed their custodian request on October 19, 2020. (Ex. 6.) A week and a half later, on October 30, 2020, instead of responding on the merits, Apple stated it would consider additional custodians "only if" all Plaintiffs "submit[ted] a joint request"—even though Epic had just received Apple's production. (Ex. 7 at 3.) After Epic rushed to review the documents, on November 10, 2020, Plaintiffs jointly requested 10 additional custodians, including Cook and Federighi. (Ex. 8 at 2.) The Parties met and conferred multiple times. (*See also* Ex. 9; Ex. 10.) Ultimately, Plaintiffs cut in half their request, to 5 additional custodians. Apple agreed to add 3 of them. Apple is willing to add Cook, but only if "Plaintiffs can depose him for only 4 hours". (Ex. 11.) Apple refuses to add Federighi, and offers instead Erik Neuenschwander. (*Id.*)[1]

**Argument:** Cook's and Federighi's files are highly relevant and unlikely to be duplicative. *See, e.g., Williams v. Apple, Inc.*, 2020 WL 5107639, at *2 (N.D. Cal. Aug. 31, 2020) (compelling Apple to add additional custodians). Discussion of the duration of Cook's deposition is premature. And there is no bar against searching the files of "apex" custodians. *See Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (compelling search of CEO's files); *Vasudevan Software, Inc. v. Microstrategy Inc.*, 2012 WL 5637611, at *6 (N.D. Cal. Nov. 15, 2012) (same).

<u>Tim Cook, CEO (2011 – Present)</u>. These cases challenge a core aspect of Apple's current business model. Cook is personally involved as the ultimate decision-maker on issues critical to Plaintiffs' cases. Indeed, he recently testified before Congress on many of these issues (*see, e.g.*, Investigation of Competition in Digital Markets: Report, https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf at 342 & n.2156 (Apple's commission structure); 355 & n.2247 (in-app payment system); 361 & n.2297 (app review); 363 & n.2311 (competition); 372 & nn.2376-77 (App Store guideline enforcement)), and Apple has relied on his testimony in opposing Epic's motions for preliminary relief (*Epic*, Dkt. 36 at 3, 4, 6; Dkt. 73 at 3, 22). Cook's files also are a unique repository of developer complaints. (*See, e.g.*, APL-APPSTORE_04662543 ( ); APL-APPSTORE_02024834 ( .) Notably, Epic is searching its CEO's files and Apple agreed to search its former CEO's files.

Apple does not seriously dispute relevance. Instead, Apple attempts to tether production to truncating Cook's deposition. That is inappropriate. The Parties are negotiating document custodians—not deposition limits. It would be premature to limit Cook's deposition when Apple has not produced his documents. The Parties can discuss limits on Cook's deposition (and on the deposition of Epic's CEO) as part of a comprehensive discussion of the deposition program,

---

[1] Apple claims it cannot complete production before Jan. 6, 2021. Apple's failure to meet the Jan. 6 document completion deadline in *Epic v. Apple* is the result of Apple's own delay in agreeing to plainly relevant additional custodians, and is yet another reason to grant Class Plaintiffs' motion to modify their class certification deadline. (*Cameron*, Dkt. 172; *Pepper*, Dkt. 294.)

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

including any deviation from the limits in the Coordination Order (*Cameron*, Dkt. 80) that Apple contends applies in all three cases (Ex. 7 at 3). Apple's demand is premature and unreasonable.[2]

<u>Craig Federighi, Senior Vice President, iOS & macOS Software Engineering (2012 – Present)</u>. Federighi presides over iOS and is a key witness with key documents. His subordinate, Neuenschwander, a User Privacy Manager, is no substitute. *First*, Federighi has unique information about Apple's defense that "[i]n the iPhone business model, the commission is the return on Apple's investment in the App Store and the full suite of IP, tools, and services Apple offers to developers." (*Epic*, Dkt. 73 at 19.) Plaintiffs respond that "Apple does three separate things: it develops and maintains the iOS operating system; it distributes apps through the App Store; and it processes in-app payments for digital content through IAP". (*Epic*, Dkt. 61 at 21.) Apple would still have a strong incentive to make its developer tools widely available, even if Apple did not control all app distribution and in-app payment processing on iOS, because widely available developer tools make iPhones more attractive to consumers. (*Id.*) As head of iOS, Federighi decides which tools Apple should create; his reasons are thus highly relevant to Apple's defense. Apple argues that "[w]hereas Craig is responsible for all of iOS, Eri[k] is in charge of the App Store". (Ex. 11.) But that is why Plaintiffs need Federighi. Neuenschwander cannot authoritatively explain why Apple widely distributes its tools—nor can any other custodian.

*Second*, Federighi has unique information about Apple's defense that only by "curating its own App Store—rather than outsourc[ing] the safety and security of Apple's users to Epic (or other third parties)", can Apple "ensure[] that iOS apps meet Apple's high standards for privacy, security, content, and quality". (*Epic*, Dkt. 66 at 4.) Plaintiffs argue "[t]here are many methods to secure a platform aside from controlling all consumer app distribution. Indeed, Apple already has implemented many of those methods on iOS through the OS design, not through App Store control." (*Epic*, Dkt. 90 at 6.) By Apple's admission "Craig is responsible for all of iOS" (Ex. 11); he is the authority at Apple on operating system-level security. "Eri[k] is in charge of the App Store" (Ex. 11); he cannot speak authoritatively on the operating system-level security. Neuenschwander is a data privacy specialist, managing "the technical aspects of designing Apple's privacy features". (Statement of Erik Neuenschwander (December 10, 2019), https://www.judiciary.senate.gov/imo/media/doc/Neuenschwander%20Testimony.pdf.) Federighi oversees a far broader spectrum of security issues, including issues that impact the functioning of mobile devices. (*See* APL-APPSTORE 03078828 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) If you want to know about stopping malware that breaks your phone, you ask the person in charge of preventing it. You don't ask the person whose focus is how much data is collected from users. (*See* APL-APPSTORE 00299001 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); APL-APPSTORE 02985142 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

*Third*, Federighi has unique information about Apple's defense that "Apple's integration of its StoreKit APIs into the App Store software platform (and indeed, the integration of the App Store with the iPhone) . . . offers numerous benefits to consumers and developers". (*Epic*, Dkt. 73 at 21.)

---

[2] Plaintiffs will not agree to limit Cook's deposition to 4 hours; there are 3 sets of plaintiffs who will have to share Cook's time and he is critical to key topics in these actions.

As the head of iOS, Federighi's documents will likely speak to whether Apple's reasons for integrating iOS, IAP, the App Store, and/or StoreKit, are technical, as Apple suggests, or commercial, as Plaintiffs contend. That is not Neuenschwander's specialty.

*Fourth*, Federighi has unique information about Apple's strategic decision-making. Simply put, he was in the room where it happened. For example, Federighi wrote, ███████████████████████████████████████████████████████████████ (APL-APPSTORE_02005453.) This logic directly contradicts Apple's argument that it is not a monopolist because consumers can choose between Android and iOS mobile devices, as "[p]eople switch all the time". (*Epic*, Dkt. 50 at 50:13-4.) Although Apple contends that Neuenschwander is "a strategic decision-maker" (Ex. 11), Epic's review suggests that he generally executes strategic decisions made by others like Federighi. (*See, e.g.*, APL-APPSTORE_06334100 (███████████████████████████████████████████████))

At bottom, Apple does not provide any legitimate reason to prefer Neuenschwander. "Apple's judgment" must yield to the facts. There is no burden argument, as substituting one for the other should not affect Apple. Nor is there a bar against searching "apex" custodians' files. That "Federighi appears on a relative handful of the millions of [Apple] documents" proves the point— he is likely to have many unique documents. And in any event, Neuenschwander is no more prevalent in Apple's production. Apple should not be permitted to "cherry pick" custodians.[3]

---

[3] Apple also points to Phil Schiller and Adam Hammer as potential substitutes. Schiller is a marketing person and no substitute for Apple's technical authority on iOS. Apple does not explain how Hammer (described as "Threat Intelligence Manager 2") covers the same topics as Federighi.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

**Apple's position**:  Apple respectfully submits that Plaintiffs have provided no basis for the Court to second-guess Apple's custodial designations.

**Relevant Background**:  Apple initially proposed 14 custodians, and added a 15th at Class Plaintiffs' request.  Ex. 1.  On February 25, 2020, Class Plaintiffs requested an additional 9 custodians.  Ex. 2.  On March 5, 2020, Apple declined this request, explaining that Class Plaintiffs had not shown that the additional individuals were likely to have unique relevant information, or be proportionate to the needs of the litigation.  Ex. 3.  Class Plaintiffs did nothing for six months.

Apple proceeded to diligently collect, review, and produce documents from the 15 custodians.  By the substantial completion date of July 31, 2020, Apple had produced 64 volumes totaling 3,585,471 documents and 7,181,345 pages.  *See* Ex. 4.  Apple has continued to collect and produce documents since then, using a technology-assisted review ("TAR") protocol in conjunction with manual review by hundreds of contract attorneys.  Through the end of November 2020, Apple has spent tens of thousands of hours, and millions of dollars, on producing documents in this litigation.

Epic filed its complaint in August 2020.  Apple agreed to give Epic the millions of documents produced in the Class Actions, update its collection and production from 2 custodians most relevant to the *Epic* litigation, and collect and produce documents from 4 additional *Epic*-specific custodians.  *See* Ex. 9.  Epic, for its part, agreed that it would "use . . . efficiently" the extant productions and seek only "limited targeted additional discovery" from Apple.  08/24/20 Tr. 5:19-22.  Based on those representations and others, and at Epic's request, the Court set an expedited discovery and trial schedule for the Epic case.  09/28/20 Tr. 100:17-18.

After months of inaction, Class Plaintiffs then renewed their request for additional custodians.  Ex. 6.  Given the limited time for document discovery, the Discovery Coordination Order, and the Court's repeated admonitions that the Plaintiffs be "focused and efficient," Apple insisted that Plaintiffs coordinate on a joint list.  10/19/20 Tr. 20:17-18; Ex. 7.  It was not until November 10, 2020 that Plaintiffs provided Apple a joint request for 10 additional custodians.  Ex. 8.

Apple promptly investigated the feasibility of adding more custodians.  Because its existing protocols would not allow the timely production of documents from any additional custodians, Apple made a significant change to its document review protocol so that its vendors could complete productions from a review project totaling approximately 2.5 million additional documents before January 6, 2021.  Based on the document counts for the requested custodians (each of which number in the hundreds of thousands or millions), this change would allow for approximately 2 additional custodians within the then-existing production deadline.  Ex. 10.

In light of the realities of collecting, reviewing, and producing millions of additional documents in a matter of weeks, Apple has made multiple proposals to Plaintiffs regarding additional custodians.  The parties agreed that Steve Jobs would be a custodian, bringing Apple's total to 20 document custodians.  Plaintiffs dropped their request for Ann Thai, and requested instead 4 more custodians:  Tim Cook, Craig Federighi, Scott Forstall, and Shaan Pruden.  In a final effort to resolve this issue among the parties, Apple agreed to make Mr. Forstall and Ms. Pruden custodians; designated Erik Neuenschwander a custodian in the place of Mr. Federighi; and offered to make Mr. Cook a custodian subject to a 4-hour limit on any deposition.  Ex. 11.  Even though Plaintiffs are getting essentially everything they requested, they insisted on bringing two disputes to the Court for resolution.

4

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

**Argument**: It is Apple's responsibility and prerogative to identify the custodians most likely to have relevant and non-duplicative information. *See* The Sedona Principles, 3d Ed., Cmt. 6a., at 120 ("The responding party must make decisions on what is required to meet its preservation and production obligations based on direct input from [knowledgeable individuals] inside the organization . . . ."); *see also In re EpiPen* (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig., 2018 WL 1440923 (D. Kan. March 15, 2018) ("Absent agreement among the parties, the party who will be responding to discovery requests is entitled to select the custodians it deems most likely to possess responsive information and to search the files of those individuals." (internal citation and quotation marks omitted)).

Plaintiffs collectively have propounded 225 requests for production of documents to Apple—142 from the class plaintiffs and 83 from Epic. Apple has diligently reviewed those requests and identified the group of custodians who collectively are most likely to have relevant and non-duplicative documents responsive to those requests. In consultation with Plaintiffs, Apple has identified 24 custodians. In Apple's judgment, the documents in those individuals' collections will be more than sufficient to satisfy Plaintiffs' requests. Yet Plaintiffs still want more.

Plaintiffs ask this Court to order Apple to make Craig Federighi a document custodian, yet they do not cite any of their own document requests in support. Instead, they refer to various arguments made by the parties to establish that security and privacy engineering issues are at issue. Existing custodians, including Phil Schiller and Adam Hammer, are likely to have responsive documents on such issues. Apple has also offered to make Erik Neuenschwander an additional custodian.

Mr. Federighi is in charge of engineering for all iOS; Mr. Neuenschwander (who reports to Mr. Federighi) oversees privacy across Apple's platforms. Apple has assessed the roles and responsibilities of Mr. Federighi and Mr. Neuenschwander in light of the document requests made by Plaintiffs and the other custodians from whom documents are being produced, and it is Apple's judgment that Mr. Neuenschwander along with the other designated custodians are more likely to have relevant, non-duplicative documents regarding the security and privacy issues in this case.

Mr. Federighi appears on a relative handful of the millions of documents that Apple has already produced. To the extent that engineering concerns had broader implications for iOS security and privacy, those documents are likely to be captured by other existing custodians, including Messrs. Schiller and Hammer, as well as Mr. Neuenschwander. Plaintiffs provide no explanation as to why their documents would be insufficient or why Mr. Federighi should be thrust into this lawsuit instead. Despite having received millions of Apple documents many months ago, Plaintiffs fail to point to compelling evidence that Mr. Federighi has unique knowledge. In addition, Mr. Federighi's documents are also likely to contain particularly sensitive business information, requiring more extensive individual review, further burdening Apple's ability to expeditiously produce documents.

After assessing Plaintiffs' claims and discovery requests, Apple has determined that Mr. Neuenschwander is an appropriate custodian in addition to the others. Mr. Neuenschwander has been a software engineer at Apple for 13 years, reports directly to Mr. Federighi, and oversees user privacy across all of Apple's products and services. This includes performing reviews of the privacy impact of various features in, and data collected by, Apple products and services, coordinating with Apple's global privacy policy organization, and working with counsel in coordinating outreach and communications with regulators and standards bodies. While Mr. Neuenschwander founded Apple's privacy engineering team, he is far more than "a privacy

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

specialist." In addition to being responsible for managing the privacy features on iOS, he also oversees a "broad[] spectrum of security issues" that Plaintiffs claim are necessary to the case. With Messrs. Neuenschwander, Schiller, and Hammer as document custodians (as well as the other 21 custodians Apple has agreed to), there is no need to search another Apple executive's documents. Plaintiffs certainly cannot make the case that Mr. Neuenschwander's documents are inadequate without reviewing them first.

Apple has determined that the 24 custodians to which it has agreed are most likely to have relevant, non-duplicative documents in response to Plaintiffs' requests—including the topics they list in their portion of this letter. They have no basis to argue that Mr. Federighi, uniquely within Apple, is likely to have other documents—particularly since Tim Cook and Phil Schiller are (very) senior executives involved in many of the same decisions and discussions. Once the production is complete, if they identify any gaps, Apple is happy to meet and confer with Plaintiffs at that time.

*Tim Cook*: Plaintiffs sought to make Apple's CEO, Mr. Cook, a custodian despite the fact that his responsibilities extend far beyond the issues in this case. Apple has already designated Phil Schiller as the lead witness on App Store issues and he is a custodian. (Mr. Schiller is also the equivalent to Mr. Sweeney of Epic for purposes of the issues in this case.) Nevertheless, Apple agreed to make Mr. Cook a document custodian as a significant concession to Plaintiffs even though Apple does not believe that he is likely to possess unique, non-duplicative information unavailable from Apple's other custodians. In exchange, Apple asked only that Plaintiffs meet them halfway with a concession of their own—one that would accommodate Mr. Cook's busy schedule—by limiting their deposition of Mr. Cook to four hours. Plaintiffs have refused to agree to this reasonable condition, and so the Court should impose this limitation as a condition of access to Mr. Cook's documents.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

| | |
|---|---|
| Dated: December 7, 2020 | CRAVATH, SWAINE & MOORE LLP<br>   Christine Varney<br>   Katherine B. Forrest<br>   Gary A. Bornstein<br>   Yonatan Even<br>   Lauren A. Moskowitz<br>   M. Brent Byars<br><br>Respectfully submitted,<br><br>By:    /s/ *Lauren A. Moskowitz*<br>        Lauren A. Moskowitz<br>        *Attorneys for Plaintiff Epic Games, Inc.* |
| Dated: December 7, 2020 | WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP<br>   Mark C. Rifkin<br>   Rachele R. Byrd<br>   Matthew M. Guiney<br>   Brittany N. DeJong<br><br>Respectfully submitted,<br><br>By:    /s/ *Rachele R. Byrd*<br>        Rachele R. Byrd<br>        *Interim Class Counsel for Consumer Plaintiffs* |
| Dated: December 7, 2020 | HAGENS BERMAN SOBOL SHAPIRO LLP<br>   Steve W. Berman<br>   Robert F. Lopez<br>   Shana E. Scarlett<br>   Benjamin J. Siegel<br><br>Respectfully submitted,<br><br>By:    /s/ *Benjamin J. Siegel*<br>        Benjamin J. Siegel<br>        *Interim Class Counsel for Developer Plaintiffs* |

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

Dated: December 7, 2020

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Mark A. Perry
Veronica S. Lewis
Cynthia E. Richman
Jay P. Srinivasan
Ethan D. Dettmer
Eli M. Lazarus
Harry Phillips

Respectfully submitted,

By: /s/ *Jay P. Srinivasan*

Jay P. Srinivasan
*Attorneys for Defendant Apple Inc.*

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

## **E-FILING ATTESTATION**

    I, Lauren A. Moskowitz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

<div style="text-align: right;">

/s/ *Lauren A. Moskowitz*
Lauren A. Moskowitz

</div>

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY