1   RACHELE R. BYRD (190634)
    BRITTANY N. DEJONG (258766)
2   **WOLF HALDENSTEIN ADLER**
    **FREEMAN & HERZ LLP**
3   750 B Street, Suite 1820
    San Diego, CA 92101
4   Telephone: 619/239-4599
    Facsimile: 619/234-4599
5   byrd@whafh.com
    dejong@whafh.com
6
    MARK C. RIFKIN (*pro hac vice*)
7   MATTHEW M. GUINEY (*pro hac vice*)
    **WOLF HALDENSTEIN ADLER**
8   **FREEMAN & HERZ LLP**
    270 Madison Avenue
9   New York, NY 10016
    Telephone: 212/545-4600
10  Facsimile: 212/545-4677
    rifkin@whafh.com
11  guiney@whafh.com

12  *Interim Class Counsel for the*
    *Consumer Plaintiffs*
13
    STEVE W. BERMAN (*pro hac vice*)
14  ROBERT F. LOPEZ (*pro hac vice*)
    **HAGENS BERMAN SOBOL**
15  **SHAPIRO LLP**
    1301 Second Ave., Suite 2000
16  Seattle, WA 98101
    Telephone: (206) 623-7292
17  Facsimile: (206) 623-0594
    steve@hbsslaw.com
18  robl@hbsslaw.com

19  SHANA E. SCARLETT (SBN 217895)
    BENJAMIN J. SIEGEL (SBN 256260)
20  **HAGENS BERMAN SOBOL**
    **SHAPIRO LLP**
21  715 Hearst Avenue, Suite 202C
    Berkeley, CA 94710
22  Telephone: (510) 725-3000
    Facsimile: (510) 725-3001
23  shanas@hbsslaw.com
    bens@hbsslaw.com
24
    *Interim Class Counsel for the*
25  *Developer Plaintiffs*

26  [Additional counsel appear on signature pages]

27

28

    PAUL J. RIEHLE (SBN 115199)
    paul.riehle@faegredrinker.com
    **FAEGRE DRINKER BIDDLE &**
    **REATH LLP**
    Four Embarcadero Center, 27th Floor
    San Francisco, CA 94111
    Telephone: (415) 591-7500
    Facsimile: (415) 591-7510

    CHRISTINE A. VARNEY (*pro hac vice*)
    cvarney@cravath.com
    KATHERINE B. FORREST (*pro hac*
    *vice*)
    kforrest@cravarth.com
    GARY A. BORNSTEIN (*pro hac vice*)
    gbornstein@cravarth.com
    YONATAN EVEN (*pro hac vice*)
    yeven@cravath.com
    LAUREN A. MOSKOWITZ (*pro hac*
    *vice*)
    lmoskowitz@cravath.com
    M. BRENT BYARS (*pro hac vice*)
    mbyars@cravath.com
    **CRAVATH, SWAINE & MOORE LLP**
    825 Eighth Avenue
    New York, New York 10019
    Telephone: (212) 474-1000
    Facsimile: (212) 474-3700

    *Attorneys for Plaintiff Epic Games, Inc.*

    THEODORE J. BOUTROUS JR. (SBN
    132099)
    tboutrous@gibsondunn.com
    RICHARD J. DOREN (SBN 124666)
    rdoren@gibsondunn.com
    DANIEL G. SWANSON (SBN 116556)
    dswanson@gibsondunn.com
    JAY P. SRINIVASAN (SBN 181471)
    jsrinivasan@gibsondunn.com
    **GIBSON, DUNN & CRUTCHER LLP**
    333 South Grand Avenue
    Los Angeles, CA 90071-3197
    Telephone: 213.229.7000
    Facsimile: 213.229.7520

    *Attorneys for Defendant Apple Inc.*

FILED Case 4:20-cv-05640-YGR   Document 189   Filed 12/15/20   Page 2 of 9

Dec 15 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR |
| *Plaintiff, Counter-defendant,* | |
| v. | |
| APPLE INC., | |
| *Defendant, Counterclaimant.* | |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR |
| DONALD R. CAMERON, *et al.*, | Case No. 4:19-cv-03074-YGR |
| *Plaintiffs,* | |
| v. | **JOINT STIPULATION AND [PROPOSED] ORDER RE: VALIDATION PROTOCOL** |
| APPLE INC., | Judge: Hon. Yvonne Gonzalez Rogers; Hon. Thomas S. Hixson |
| *Defendant.* | |

Plaintiff Epic Games, Inc. ("Epic"), the Developer Plaintiffs, the Consumer Plaintiffs and Defendant Apple Inc. ("Apple") (collectively, "the Parties," and individually, a "Party") submit the following protocol to govern the use and validation of the Parties' respective document culling and review efforts.

Validation of Apple's TAR Process

1.  Apple is using Technology Assisted Review ("TAR") to select the documents that will be subject to human review or produced without human review.  The steps described in the following paragraphs 2 through 7 shall be completed separately for the following document populations (a) and (b): (a) Apple's total TAR population comprised of (i) the documents collected by Apple for the custodians and time periods identified initially in the class action cases ("Apple's Class Action Collection") and (ii) the documents collected by Apple for the custodians added following the filing of the *Epic* litigation, as well as the documents collected by Apple for additional time periods for certain class action custodians ("Apple's *Epic* Collection"); and (b) Apple's *Epic* Collection alone.

2.  At the substantial completion of its TAR process, Apple shall disclose the number of documents to which the TAR process has been applied, the number of documents either reviewed or produced without human review as a result of its TAR process, and the number of documents excluded from human review and production based on its TAR process.

3.  Apple shall gather: (1) a random sample of 500 documents from those produced or withheld as privileged (the "Reviewed Responsive/Produced Documents"); (2) a random sample of 500 documents from those unproduced documents identified as non-responsive during the course of the review (the "Unproduced Reviewed Nonresponsive Documents"); and (3) a random sample of 500 documents from those unproduced documents that were unreviewed at the time of validation (the "Unreviewed Documents") (collectively, these samples are the "TAR Validation Samples").

4. The TAR Validation Samples shall be coded by an SME, *i.e.*, an attorney employee of outside counsel, who is knowledgeable about the subject matter of the litigation and assigned to work on the above-captioned cases.  For purposes of the SME's validation review, the SME will not be provided with any information regarding how any document in the TAR Validation Samples was initially categorized during the course of the review.

5. The estimated recall of the review will then be calculated as follows: the total number of documents produced or withheld as privileged that were correctly identified as responsive, divided by the sum of: (1) the total number of documents produced or withheld as privileged that were correctly identified as responsive; (2) the number of unproduced reviewed documents incorrectly marked nonresponsive; and (3) the number of unproduced unreviewed but responsive documents.  For purposes of the foregoing recall calculation: (1) the total number of documents produced or withheld as privileged that were correctly identified as responsive will be calculated by multiplying the number of documents produced or withheld as privileged by the percentage of the 500 Reviewed Responsive/Produced Documents that were responsive (as determined by the SME); (2) the unproduced reviewed documents incorrectly marked nonresponsive will be calculated by multiplying the total number of documents marked as nonresponsive by the percentage of the 500 Unproduced Reviewed Nonresponsive Documents that were incorrectly marked as nonresponsive (as determined by the SME); and (3) the unproduced unreviewed but responsive documents will be calculated by multiplying the total number of unproduced unreviewed documents by the percentage of the 500 Unreviewed Documents subsequently coded responsive by the SME.

6. In calculating recall, Apple shall not consider in its calculation any set of documents it reasonably expects to constitute 2% or more of documents produced from the universe of documents to which TAR was applied that comprises (a) duplicates or near duplicates of one another; (b) documents automatically generated by the same or similar

-3-

source; (c) documents automatically sent from the same or similar sender; or (d) any other category of documents identified as responsive on a categorical basis.

7. Apple shall provide the other Parties with the recall calculations based on its TAR Validation Samples.  For Apple, a recall rate of 70% (75% with respect to Apple's *Epic* Collection), as confirmed by an SME shall be considered presumptively acceptable, and if another Party believes that additional documents should be produced after a 70% recall rate (75% with respect to Apple's *Epic* Collection) is achieved and confirmed by an SME, that Party must make a detailed showing as to how the probative value outweighs the burden of further document review.  If a recall rate of 70% (75% with respect to Apple's *Epic* Collection) is not achieved by Apple, Apple shall continue to produce documents until a further validation test adhering to the above requirements confirms that 70% (75% with respect to Apple's *Epic* Collection) recall has been achieved, unless otherwise agreed to by the Parties.

8. If Apple has previously validated a document production as described above and achieved the designated recall objective, Apple need not repeat validation of that production unless any changed circumstances (such as the additional collection of documents) are mathematically significant enough potentially to cause Apple to fail to reach the designated recall objective with respect to that document production.

Validation of Epic's Linear Review Process

9. Epic is using linear review of documents that hit on agreed upon search terms to identify documents responsive to requests for production served on it.  At the substantial completion of its linear review process, Epic shall disclose the number of documents that hit on the agreed search terms, the number of documents produced or withheld as privileged, and the number of documents identified as non-responsive during the course of the review.

10. Epic shall gather: (1) a random sample of 500 documents from those produced or withheld as privileged (the "Reviewed Responsive/Produced Documents"); and (2) a

random sample of 500 documents from those unproduced documents identified as non-responsive during the course of the review (the "Unproduced Reviewed Nonresponsive Documents") (collectively, these samples are the "Epic Validation Samples").

11. The Epic Validation Samples shall be coded by an SME, *i.e.*, an attorney employee of outside counsel, who is knowledgeable about the subject matter of the litigation and assigned to work on the above-captioned cases.  For purposes of the SME's validation review, the SME will not be provided with any information regarding how any document in the Epic Validation Samples was initially categorized during the course of the review.

12. The estimated recall of the review will then be calculated as follows: the total number of documents produced or withheld as privileged that were correctly identified as responsive, divided by the sum of: (1) the total number of documents produced or withheld as privileged that were correctly identified as responsive; and (2) the number of unproduced reviewed documents incorrectly marked nonresponsive.  For purposes of the foregoing recall calculation: (1) the total number of documents produced or withheld as privileged that were correctly identified as responsive will be calculated by multiplying the number of documents produced or withheld as privileged by the percentage of the 500 Reviewed Responsive/Produced Documents that were responsive (as determined by the SME); and (2) the unproduced reviewed documents incorrectly marked nonresponsive will be calculated by multiplying the total number of documents marked as nonresponsive by the percentage of the 500 Unproduced Reviewed Nonresponsive Documents that were incorrectly marked as nonresponsive (as determined by the SME).

13. In calculating recall, Epic shall not consider in its calculation any set of documents it reasonably expects to constitute 2% or more of documents produced that comprises (a) duplicates or near duplicates of one another; (b) documents automatically generated by the same or similar source; (c) documents automatically sent from the same or similar

sender; or (d) any other category of documents identified as responsive on a categorical basis.

14. Epic shall provide the other Parties with the recall calculations based on the Epic Validation Samples.  A recall rate of 75% as confirmed by an SME shall be considered presumptively acceptable, and if another Party believes that additional documents should be produced after a 75% recall rate is achieved and confirmed by an SME, that Party must make a detailed showing as to how the probative value outweighs the burden of further document review.  If a recall rate of 75% is not achieved, Epic shall produce documents until a further validation test adhering to the above requirements confirms that 75% recall has been achieved, unless otherwise agreed to by the Parties.

Parties Exempted from Validation

15. A Party is not obligated to conduct validation if it has conducted exhaustive linear review of every document in its document collection, which does not exceed 2500 documents.

**IT IS SO STIPULATED THROUGH COUNSEL OF RECORD.**

JOINT STIPULATION AND [PROPOSED] ORDER RE:  VALIDATION PROTOCOL
CASE NOs. 4:11-cv-06714-YGR-TSH; 4:19-cv-03074-YGR-TSH; 4:20-cv-05640-YGR-TSH

1  Dated: December 14, 2020                  CRAVATH, SWAINE & MOORE LLP
2                                                Christine Varney
                                                 Katherine B. Forrest
                                                 Gary A. Bornstein
3                                                Yonatan Even
                                                 Lauren A. Moskowitz
4                                                M. Brent Byars

5

6                                             Respectfully submitted,

7                                             By:   */s/ Yonatan Even*
                                                      Yonatan Even
8
                                                   *Attorneys for Plaintiff Epic Games, Inc.*
9

10 Dated: December 14, 2020                  WOLF HALDENSTEIN ADLER FREEMAN &
                                              HERZ LLP
                                                 Mark C. Rifkin
11                                               Rachele R. Byrd
                                                 Matthew M. Guiney
12                                               Brittany N. DeJong

13

14                                            Respectfully submitted,

15                                            By:   */s/ Rachele R. Byrd*
                                                      Rachele R. Byrd
16
                                                   *Interim Class Counsel for Consumer*
17                                                 *Plaintiffs*

18 Dated: December 14, 2020                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                                 Steve W. Berman
19                                               Robert F. Lopez
                                                 Shana E. Scarlett
20                                               Benjamin J. Siegel

21

22                                            Respectfully submitted,

23                                            By:   */s/ Robert F. Lopez*
                                                      Robert F. Lopez
24
                                                   *Interim Class Counsel for Developer*
25                                                 *Plaintiffs*

26

27

28

1   Dated: December 14, 2020

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Mark A. Perry
Veronica S. Lewis
Cynthia E. Richman
Jay P. Srinivasan
Ethan D. Dettmer
Eli M. Lazarus

Respectfully submitted,

By:   */s/ Jay P. Srinivasan*
        Jay P. Srinivasan

*Attorneys for Defendant Apple Inc.*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED:   December 15, 2020

THE HONORABLE UNITED STATES
MAGISTRATE JUDGE THOMAS S. HIXSON

**E-FILING ATTESTATION**

I, Jay Srinivasan, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Jay P. Srinivasan*
Jay P. Srinivasan

JOINT STIPULATION AND [PROPOSED] ORDER RE:  VALIDATION PROTOCOL
CASE NOs. 4:11-cv-06714-YGR-TSH; 4:19-cv-03074-YGR-TSH; 4:20-cv-05640-YGR-TSH