**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., *Plaintiff, Counter-defendant,* v. APPLE INC., *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR-TSH |
| DONALD R. CAMERON, *et al.*, *Plaintiffs,* v. APPLE INC., *Defendant.* | Case No. 4:19-cv-03074-YGR-TSH  **JOINT DISCOVERY LETTER BRIEF REGARDING APPLE DEPOSITIONS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Pursuant to the Court's order (Minute Entry (Dkt. 178)); Transcript (Dkt. 182) at 30:12-31:6), the parties in the above-captioned actions respectfully submit this joint letter brief regarding depositions of current or former Apple employees.

Counsel for Epic Games, Inc. ("Epic"), plaintiffs ("Class Plaintiffs", together with Epic, "Plaintiffs") in *Cameron v. Apple* and *In re Apple iPhone Antitrust Litigation*, and Apple Inc. ("Apple", together with Plaintiffs, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter. The Parties can make additional exhibits—including the documents identified in this submission—available to the Court upon request.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP | HAGENS BERMAN<br>SOBOL SHAPIRO LLP |
| By: /s/ *Yonatan Even*<br>   Yonatan Even<br>   *Counsel for Epic Games,*<br>   *Inc.* | By: /s/ *Robert F. Lopez*<br>   Robert F. Lopez<br>   *Counsel for Developer*<br>   *Plaintiffs* |
| WOLF HALDENSTEIN<br>ADLER FREEMAN<br>& HERZ LLP | GIBSON DUNN & CRUTCHER LLP |
| By: /s/ *Rachele R. Byrd*<br>   Rachele R. Byrd<br>   *Counsel for*<br>   *Consumer Plaintiffs* | By: /s/<br>   Jay P. Srinivasan<br>   *Counsel for Apple Inc.* |

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Plaintiffs' Position:**  Plaintiffs request that the Court order that Plaintiffs may depose these 16 current and former Apple employees:  Tim Cook, Eddy Cue, Craig Federighi, Matthew Fischer, Scott Forstall, Eric Freidman, Eric Gray, Mark Grimm, C.K. Haun, Trystan Kosmynka, Ron Okamoto, Carson Oliver, Shaan Pruden, Philip Schiller, Mike Schmid, and Phillip Shoemaker.

**Relevant Background:**  To maximize efficiencies and minimize burdens, Plaintiffs coordinated to provide Apple on November 25, 2020 with a list of 18 current and former Apple employees whom Plaintiffs intended to depose in their individual capacities. (Ex. 1 at 1.)  On December 7, 2020, Apple responded that "[a]t this time, Apple is not willing to waive the 10-deposition limit provided for in the Federal Rules". (Ex. 2 at 1.)  During a meet and confer on December 8, 2020, Apple gave no ground, demanding individualized explanations for each witness.

On December 9, 2020, the Court ordered the Parties to meet and confer further and to submit a joint letter brief. (Hr'g Tr. 39:7-40:23; Dkt. 178.)  The Court explained that "to make [their portion of the joint letter brief] persuasive, I think the plaintiffs are going to want to . . . explain to me *who* you want to depose and *why*, the very thing that Apple is really asking you as well.  If you just say 18 and Apple says 10, and I don't really have information more than that, it's difficult for me to make an informed decision". (*Id.* at 39:10-15 (emphasis added).)  The Court then noted that the Parties are "going to need to talk a lot about witnesses", and therefore suggested expanding the page limit to five pages per side to allow for that discussion. (*Id.* at 39:21-25.)  The Parties agreed, with Apple noting the expanded briefing "probably makes sense". (*Id.* at 40:1-17.)

On December 11, 2020, Apple reiterated its request that Plaintiffs "explain why the depositions of each of these 18 people is necessary and non-cumulative". (Ex. 3 at 1.)  Later that day, in an effort to compromise, Plaintiffs withdrew their request for two witnesses (without prejudice to facts or circumstances developing that render their depositions necessary), and provided detailed explanations for each of the remaining 16 witnesses. (Ex. 4 at 2-7.)  During a meet and confer on December 12, 2020, Apple agreed that Plaintiffs could depose 14 of the 16 witnesses on their list[1]—all but Eddy Cue and Craig Federighi, whom Apple objected to as "apex" witnesses.  Apple, however, took the position that the Parties must *not* brief their respective positions with respect to the depositions of Messrs. Cue and Federighi, but rather limit their briefing to abstract numerical "deposition limits".  That position—and Apple's statement below, which claims that "[t]he sole issue before the Court is the *number* of party deponents, not their identity"—represents a complete about face and ignores the Court's explicit direction *not* to "just say 18 and Apple says 10" but rather to explain "who you want to depose and why". (Hr'g Tr. 39:10-15, 40:20-23.)

On December 12, 2020, Plaintiffs provided their half of the joint letter brief, explaining why they wish to depose Messrs. Cue and Federighi.  Later that night, Apple responded that it was "surprised" by this (Ex. 5 at 1)—even though Plaintiffs had told Apple at the meet and confer the day before that this would be the focus of their portion.  Apple then reneged on its agreement to

---

[1] Class Plaintiffs and Apple have agreed that fact depositions of other current and former Apple witnesses might be necessary, for example if class certification briefing indicates the need to depose additional witnesses.  Class Plaintiffs also reserve their rights not to notice the deposition of all sixteen of the above-named Apple witnesses at this time.  All Plaintiffs reserve their respective rights to seek depositions of additional Apple witnesses if additional material information comes to light concerning, or if Apple relies on, such witnesses.  All Plaintiffs also reserve their rights to serve Rule 30(b)(6) topics on Apple and to depose third parties.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

allow depositions of 14 witnesses on Plaintiffs' list. (Ex. 6 at 1.) As a result, Plaintiffs are briefing herein all 16 of the witnesses Plaintiffs seek to depose. Contrary to Apple's assertion, Plaintiffs have not added any new argument not previously disclosed to Apple in their latest iteration of this filing and the changes to Plaintiffs' position were made only to address Apple's prior withdrawal of its agreement to 14 of the 16 proposed deponents.[2]

**Argument:**

**I.     Plaintiffs Are Entitled to Each of the 16 Apple Witnesses.**

In these three cases, Plaintiffs are presumptively entitled to 30 depositions. "[T]he Rule 30 limit at ten is per case". (Hr'g Tr. at 39:2-3.) Rather than seeking 30 separate depositions of Apple witnesses, Plaintiffs have sought to reduce the burden on the Parties and on witnesses by proposing a coordinated list of 16 Apple witnesses to be jointly noticed. Plaintiffs did not reflexively seek to depose all nine witnesses on Apple's initial disclosures to Class Plaintiffs, all 13 witnesses on Apple's initial disclosures to Epic, all 18 custodians proposed by Apple, or all 23 custodians whose files Apple to-date has agreed to search. Instead, Plaintiffs considered whether each deponent would have unique information, taking into account factors such as the individual's level of seniority, scope of authority, day-to-day purview, and tenure with Apple. Importantly, these cases "challenge[] the fundamental operation of digital platforms affecting millions of users". (Dkt. 118 at 1.) Apple's platforms gained dominance through over a decade of collective decision-making at all levels of Apple; many witnesses are responsible for only a portion of that decision-making (*e.g.*, app review or developer relations) or held their positions for only part of the relevant time period. Accordingly, each witness has unique information by virtue of his or her role and/or tenure. Plaintiffs have divided their presently requested deponents into five groups, as Plaintiffs did in their letter to Apple. (Ex. 4.) Apple asserts that "Plaintiffs can amply explore each of these areas with two deponents", but as noted above, Apple had already conceded that 14 of these depositions are justified and Apple does not grapple with any of the specific justifications Plaintiffs provided to Apple days ago and reiterate below.

*First*, Tim Cook, Phil Schiller and Eddy Cue: high-level executives deciding policies "critical to the health of the iOS ecosystem". (Dkt. 74 ¶ 23.) Tim Cook (CEO, 2011 to present) possesses highly relevant, unique information for the reasons previously explained. (Joint Discovery Letter Brief Regarding Additional Apple Document Custodians, filed Dec. 7, 2020 (Dkt. 173-3) at 1-2.) Phil Schiller (SVP of Worldwide Marketing for many years) is Apple's "lead witness on App Store issues" (*id.* at 6), has provided two declarations in *Epic* (Dkt. 37, 74), appears on Apple's initial disclosures to all Plaintiffs, and is one of "the six custodians most relevant to the Epic lawsuit" according to Apple (Ex. 7 at 1.). Eddy Cue (SVP, Internet Software and Services, 2011 to present) "was instrumental in creating . . . the App Store", according to Apple. (https://www.apple.com/leadership/eddy-cue/.) Indeed, Apple's internal documents show that Mr. Cue helped establish many foundational App Store policies and decides when to agree to exceptions to those policies. (Ex. 4 at 3-4.)

Apple opposes Mr. Cue's deposition because he is an "apex" custodian. But "it is very unusual for a court to prohibit the taking of a deposition [of an apex witness] altogether absent

---

[2] Apple provided its revision at 12 a.m., and Plaintiffs responded at 12:27 that they intended to add the foregoing sentence. Plaintiffs followed up at 12:42. Apple did not respond. Ex. 12.

-4-

extraordinary circumstances". *Moyle v. Liberty Mut. Ret. Ben. Plan*, 2012 WL 5373421, at *3 (S.D. Cal. Oct. 30, 2012) (internal quotation marks and citation omitted). "When determining whether to allow an apex deposition, courts often consider: (1) whether or not the high-level deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods". *Id.* "[T]he burden remains on the party seeking to avoid the deposition". *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (internal quotation marks omitted). Mr. Cue has personal knowledge of critical issues for the reasons explained above, and Plaintiffs have no time to exhaust less intrusive discovery methods for the reasons explained in Section II below. *See id.* ("Formal exhaustion of other requirements is not an absolute requirement".). In support of its "apex" argument, Apple contends that Mr. Cue is of "attenuated relevance to the issues in the lawsuit". (*See* Ex. 2 at 1.) But *Apple* listed Mr. Cue on its initial disclosures to all Plaintiffs. Apple also argues that Mr. Cue would be duplicative of Tim Cook (whose deposition Apple has attempted inappropriately to limit to 4 hours across three Plaintiff groups) and Phil Schiller. But Plaintiffs "need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed". *See Finisar*, 2015 WL 3988132, at *2. Although the three witnesses have no doubt made some decisions relating to the App Store together, their positions and views are not the same. (*See, e.g.*, APL-APPSTORE_03111824 [REDACTED].)

*Second*, Craig Federighi, Scott Forstall and Eric Friedman: engineering knowledge of Apple's defenses based on "secur[ity]", the "tools, software, and Apple support services available to app developers", and/or the "integrated" nature of iOS, the App Store, and IAP. (Dkt. 36 at 4, 6 20.) Craig Federighi (SVP, iOS & macOS Software Engineering, 2012 to present) possesses unique information relevant for reasons previously explained in the Joint Discovery Letter Brief Regarding Additional Apple Document Custodians, filed Dec. 7, 2020 (Dkt. 173-3) at 1-3. That filing contains the "citation[s] to evidence" that Apple accuses Plaintiffs of omitting. Apple also opposes Mr. Federighi's deposition on the ground that he is an "apex" witness. Plaintiffs are entitled to depose him because he has highly relevant, unique personal knowledge on key issues (*see id.*), and because Plaintiffs have no time to exhaust less intrusive discovery methods (*see* Section II). Scott Forstall (former SVP, iOS Software, 2007 to 2012) is relevant for similar reasons as Mr. Federighi; indeed, Mr. Forstall previously held Mr. Federighi's position. Mr. Forstall designed iOS as a closed system, developed the tools that allow third-party developers to create apps on iOS, was the face Apple chose to present that development in the very event announcing the App Store, designed IAP, and helped enforce Apple's IAP monopoly. (Ex. 4 at 4.) Messrs. Federighi and Forstall are not duplicative of each other, as they held the same position for different timeframes. Eric Friedman (Senior Engineering Leader, 2012 to present) knows many of the App Store's security flaws, frequently addresses the shortcomings of App Review, and has a direct role in eliminating competing app distributors on iOS. (Ex. 4 at 4-5.) Mr. Friedman's testimony of these day-to-day engineering operations is unlikely to duplicate the testimony of Messrs. Forstall or Federighi, who held or hold much higher positions with far broader areas of authority.

*Third*, Phillip Shoemaker, Trystan Kosmynka and C.K. Haun: extensive knowledge of Apple's App Review. Apple argues that "app review . . . is the best way to safeguard its users, and . . .

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

what keeps [Apple] competitive in a very competitive marketplace". (9/28/20 Hr'g Tr. at 41:15-18.) Phillip Shoemaker was the App Store Review Chief from 2009 to 2016 and has publicly criticized Apple's App Review process since leaving Apple; Apple itself intends to depose him. (Ex. 4 at 5.) Trystan Kosmynka (Marketing Senior Director, 2016 to present) took over as head of App Review after 2016, appears on Apple's initial disclosures, and is one of "the six custodians most relevant to the Epic lawsuit" according to Apple (Ex. 7 at 1.). C.K. Haun (Senior Director of Developer Technical Services, 1998 to present) is a prominent App Store policymaker, oversaw App Review until 2009, is sought by Apple employees for advice and guidance regarding Apple policies, receives developer complaints on important issues, and has personally approved policy exceptions. Mr. Haun, too, appears on Apple's initial disclosures to all Plaintiffs. (Ex. 4 at 5-6.) Each witness has unique information covering the time periods for which they led App Review.

*Fourth*, Ron Okamoto, Shaan Pruden, Mike Schmid and Mark Grimm: extensive interactions with developers who have been harmed by Apple's anti-competitive actions. Mr. Okamoto (Vice President, Worldwide Developer Relations, 2001 to present) is relevant because his long tenure as the top developer relations officer at Apple has afforded him a unique window into developers' experiences with Apple's anti-competitive practices. Apple identified Mr. Okamoto in its initial disclosures to all Plaintiffs, and has already agreed to his deposition on December 16 and 17, 2020. (Ex. 8 at 5; Ex. 9 at 4.) Ms. Pruden (Senior Director of Worldwide Developer Relations, 1989 to present) is Apple's direct point of contact for Epic, routinely discusses Epic-related issues, is far more senior than the other "Epic-specific" custodians proposed by Apple, and has received many developer complaints about Apple's commission model. (Ex. 4 at 6.) Messrs. Schmid (Head of Games Business Development, App Store, Aug. 2017 to present) and Grimm (Game Development Manager, Mar. 2016 to present) each submitted a declaration in *Epic* (Dkt. 79, 76), appear on Apple's initial disclosures, and are two of "the six custodians most relevant to the Epic lawsuit" (Ex. 7 at 1). Each witness has different seniority and substantive areas of responsibility.

*Fifth*, Matt Fischer, Carson Oliver and Eric Gray: particular roles in the App Store, the central business unit at the heart of the claims at issue in this case. Matt Fischer (Vice President, App Store) has been head of the App Store since 2010 and appears on Apple's initial disclosures to all Plaintiffs. Apple has already agreed to begin his deposition on December 18, 2020. Carson Oliver (affiliated with the App Store since 2012, including most recently as Director of Business Management) has a significant role in App Store strategy and financial management, which includes analyzing the financial impact of IAP on Apple and significant developers. (Ex. 4 at 7.) Eric Gray (Director, Commerce & Payments) has a prominent role in payment processing, including IAP pricing, refunds, and related policies, and appears on Apple's initial disclosures. (*Id*.) Once again, each witness has different seniority and substantive areas of responsibility.[3]

---

[3] Apple argues below that "Epic has not yet produced a substantial number of documents" and "has resisted efforts to provide Apple details about its outstanding document production". This is false. Epic has produced over 218,000 documents, and intends to complete production by the deadline of January 6, 2021—long before Apple will complete its production. Epic has also provided far more detailed information than Apple has about the number of documents that it will review per custodian. (Ex. 10 at 3.) And this argument is irrelevant: Epic's document production has no connection to the number of depositions that *all* Plaintiffs need with respect to their cases.

## II.     The Dispute over Apple Depositions Is Ripe.

Apple argues "it is premature to grant Plaintiffs leave to take more than 10 collective depositions". Not so. Without clarity on the limit, Plaintiffs are unable to plan their deposition program. Where, as here, "the complexity clearly warrants more than ten depositions", "it would be prejudicial to require Plaintiffs to choose the . . . ten depositions to take before they know whether they will be granted more". *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007). Depositions of Apple witnesses start *this week*, and the deposition period is short. There will not be time to schedule depositions, "exhaust the[] allotted depositions", move for more depositions, schedule more depositions, and then take more depositions. Thus, contrary to Apple's argument, the "limited days in the calendar" weighs *in favor* of resolving Plaintiffs' request now. Indeed, courts have lifted the deposition limit for similar reasons. *See, e.g.*, *Mintz v. Mark Bartelstein & Assocs., Inc.*, 2012 WL 12886492, at *2 (C.D. Cal. Sept. 14, 2012) ("Priority Sports does not have time to complete the ten initial depositions prior to requesting additional depositions."); *Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*, 2018 WL 5993585, at *1-2 (E.D. Cal. Nov. 6, 2018) ("there is no reason to conclude that if the need for additional depositions is clear from the outset the court must engage in arbitrary delay"). Apple's cited cases are distinguishable because they involved much simpler cases and/or much longer discovery phases.[4]

Apple also argues that whether Messrs. Cue and Federighi should be deposed is not "ripe". This too is wrong. In the time available, Plaintiffs cannot develop an extensive factual record through other depositions, evaluate that record, and only then move for these critical depositions. Courts regularly order depositions of apex witnesses in similar circumstances. *See, e.g.*, *Medimmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2640473, at *2 (N.D. Cal. June 30, 2010) (permitting CEO deposition as "discovery [was] set to close in less than a month"); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *4 (S.D. Cal. Apr. 6, 2007) (similar); *Chevron Corp. v. Donziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (similar). Plaintiffs' inability to stagger their efforts is particularly pronounced for these depositions. Apple asserts that Mr. Cue's deposition would duplicate Messrs. Cook's and Schiller's. But given their apex positions, Plaintiffs are not likely to depose them until late in the deposition period. With respect to Mr. Federighi, Apple has not produced documents from his files—and likely will not produce them until well into January. (Ex. 11.) Plaintiffs do not have time to depose Messrs. Cook and Schiller, or to start reviewing Mr. Federighi's documents in late January, decide based on those depositions and that review which additional discovery methods to exhaust, and then move to compel, take, and use Messrs. Cue's and Federighi's depositions. Finally, as a fallback, "Apple requests an opportunity to fully brief the nuanced and complex issues attendant to the apex inquiry". Apple had its chance to brief these issues, and it chose not to. The Court should not reward Apple with further delay for its refusal to follow the Court's order.

---

[4] Apple argues that Epic "should be held to its representations" regarding the "limited targeted additional discovery . . . and depositions" necessary for *Epic*. Epic never represented that it would need only 10 depositions, and 16 depositions is very targeted given the fact that these complex cases involve more than a decade of collective decision-making and "challenge[] the fundamental operation of digital platforms affecting millions of users". (Dkt. 118 at 1.) Epic has coordinated with Class Plaintiffs to be as targeted as possible. Moreover, Apple's argument is no basis to deny depositions to Class Plaintiffs.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Apple's position**:  As an initial matter, Apple did not have a fair opportunity to respond to Plaintiffs' arguments in this joint submission.  Plaintiffs sent Apple their portion of the letter brief on Sunday (Dec. 13) at approximately 2:00 pm PT.  Apple provided its responsive portion to Plaintiffs the following day (Dec. 14) at 12:00 pm PT.  Plaintiffs waited until 9:00 pm, just three hours before the filing deadline, to provide their revisions. The reason why it took Plaintiffs nine hours to make what should have been minor changes to adjust for Apple's arguments became clear: Plaintiffs completely re-wrote their submission, making entirely new arguments, citing new cases, and leaving Apple just a few hours before the midnight deadline to write a new brief of its own. Plaintiffs provided Apple with a redline of their revisions, which is attached hereto as Ex. A.  Apple is in no position to even read all of Plaintiffs' new cases in less than three hours, let alone find responsive authority and meaningfully respond to what is effectively an entirely new brief.  Apple would be substantially prejudiced were the Court to assess the merits of any aspect of this dispute given this circumstance.  *For this reason, Apple requests that the Court not consider this issue at its December 15 hearing and continue it instead.  As this joint brief indicates, the parties have a fundamental disagreement on even the issue to be briefed and they would benefit from further guidance from the Court on this matter.*

During the Court's December 9 hearing, it ordered "the parties to meet and confer about deposition limits," and if the parties could not agree on a number, it ordered the parties "to file a joint discovery letter brief . . . concerning deposition limits."  12/9/20 Hr'g Tr. 40; *see also id.* at 33 (confirming from Epic's counsel that, barring agreement, the parties would submit a "joint discovery letter brief regarding *the number of depositions* in . . . all three cases").[5]  The Court noted that the "Rule 30 limit at ten is per case."  12/9/20 Hr'g Tr. 39:3.  Plaintiffs agreed during the parties' subsequent meet and confer that a single deposition in which all three Plaintiff groups (in *Cameron*, *Pepper*, and *Epic*) or some combination of those groups  participate would count toward the allotted ten for *each* Plaintiff group participating.  In other words, if each Plaintiff group elects (as they indicated they will) to attend each deposition and question the witness, the Federal Rules provide for only ten such depositions in total.  And pursuant to Judge Gonzalez Rogers' order coordinating discovery—which likewise contemplates a single deposition of each witness—those depositions will last ten hours each instead of the standard seven.  *See* Dkt. 19 CV 3074, Dkt. No. 80 ¶ 3.  Thus, the Apple depositions in this case, to the extent they are taken jointly as Plaintiffs plan to do, are already almost twice the length of a standard deposition.

**Relevant Background:**  Plaintiffs' initial demand was that they each would be permitted to depose eighteen current and former Apple witnesses—almost twice the presumptive limit in the Federal Rules (which amounts to 180 hours of deposition testimony, nearly triple the 70 hours that is available to a typical litigant).  *See* Ex. B.  After the December 9 hearing, when the Court indicated that each party was entitled to only ten depositions, Plaintiffs dropped their collective number to sixteen, and identified documents associated with particular Apple employees as if that was a

---

[5]  Plaintiffs claim that the relevant issue to be briefed is *who should be deposed* cannot be construed in good faith considering the Court's repeated acknowledgement that "the "substantive issue"  in dispute is "how many depositions there should be."  12/9/20 Hr'g Tr. 34:6-10; *id.* 39:3-6; *id.* 40:18-23.  It was clear at the time of the hearing that Plaintiffs themselves fully understood "[t]he main issue [wa]s deposition limits" (*id.* 32:9) and specifically "what the limit should be for Apple witnesses" (*id.* 33:4; *see also id.* 32:24, 34:2-5; *id.* 36:5-7; *id.* 38:1-7).

-8-

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

justification for why they each needed so many depositions. *See* Ex. C. But Plaintiffs' own proposal makes clear that they have not shown a need for sixteen depositions. Plaintiffs' letter divides the Apple employees into five substantive areas with an expressed desire to take 3-4 depositions in each area. This is not the right approach; Plaintiffs can amply explore each of these areas with two deponents for a total of ten, and seek more only if they can show that relevant gaps remain.

When the parties then met and conferred on December 12, Apple noted that sixteen depositions still far exceeded the ten to which a party is entitled under the Rules, explained that a number of witnesses on Plaintiffs' list were unnecessary, and that it was simply too early to tell if relief from the ten-deposition limit was warranted at this early juncture. Nevertheless, in an effort to accommodate Plaintiffs and afford them the certainty they desired, Apple offered to compromise on fourteen party depositions—which would amount to *140 hours* of deposition testimony; double what a typical litigant would receive—in an effort to resolve this dispute and avoid litigation.[6] Apple made this offer even though no depositions have yet taken place, document production is still ongoing, and Plaintiffs have not made any "particularized showing" for why they should be permitted to take more than ten depositions each.

Plaintiffs did not respond to Apple's generous proposal. Instead, on December 13, Plaintiffs provided Apple with their portion of this letter brief. Incredibly, Plaintiffs took no position on the deposition limit—the only dispute that the Court instructed the parties to resolve at this juncture—and instead briefed an entirely different issue—whether it is appropriate to depose two Apple apex executives—that is neither ripe nor the subject of the Court's order. Apple immediately wrote back to Plaintiffs the same day, stating that Plaintiffs had briefed the wrong issue, that the Court had directed the parties to resolve the deposition limit issue (that the parties met and conferred on the day before), and whether Plaintiffs would agree to Apple's proposal of fourteen depositions per party. *See* Ex. D. Apple further noted that if Plaintiffs were going to refuse to negotiate or compromise on the deposition limit issue, Apple would revert to its position that it was too early to determine that any party should be allowed more than ten depositions when not a single deposition had yet been taken and numerous documents remained to be produced. (*Id.*) Plaintiffs ignored Apple's final attempt to resolve this dispute, which frankly should have been resolved given Apple's meaningful offer of compromise.

**Argument:** The sole issue before the Court is the *number* of party deponents, not their identity, and certainly not whether the requirements of the apex-witness doctrine—a separate inquiry with unique elements distinct from those for permitting depositions in excess of the presumptive limit of ten—have been satisfied. The law is clear that it is not appropriate to seek additional depositions at this early stage. "A party seeking to exceed the presumptive limit bears the burden of making a particularized showing of the need for additional depositions." *Vasquez v. Leprino Foods Co.*, No. 17-CV-796, 2019 WL 4670871, at *2 (E.D. Cal. Sept. 25, 2019) (quotation marks omitted); *see*

---

[6] Apple further clarified that its proposal—which reflects Apple's judgment of the appropriate scope of discovery in light of the nature of the case and the timeframe for discovery—does not limit Plaintiffs' ability to depose 30(b)(6) witnesses or outside third parties (other than former Apple employees). Apple has separately requested that Plaintiffs identify their 30(b)(6) topics in advance of individual depositions so Apple can ensure coordination with the 30(b)(1) depositions.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

*also Authentec, Inc. v. Atrua Techs., Inc.*, No. 08-CV-1423, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008) (same).  For that reason, "[m]ost courts hold that in order to make a 'particularized showing,' moving parties must, at a minimum, 'ordinarily exhaust their allowed number of depositions before making a request for additional' depositions." *Acosta v. Sw. Fuel Mgmt., Inc.*, No. 16-CV-4547, 2017 WL 8941165, at *7 (C.D. Cal. Sept. 19, 2017) (quoting *Thykkuttathil v. Keese*, 294 F.R.D. 597, 600 (W.D. Wash. 2013); *see also Authentec*, 2008 WL 5120767, at *1 ("Rule 30(a)(2) contemplates that a party has already taken at least some of its ten depositions before a motion is filed seeking leave of court for a proposed deposition that would result in more than ten depositions being taken under this rule."); *Natural Res. Def. Council, Inc. v. Winter*, No. 05-CV-7513, 2008 WL 11338647, at *2 (C.D. Cal. July 11, 2008) ("Courts generally do not grant leave to take additional depositions until the moving party has exhausted the ten depositions being taken under this rule." (quotation marks omitted)).

Plaintiffs have not made any showing, let alone one sufficient to warrant judicial lifting of the presumptive ten-deposition limit.  Not a single deposition has been taken by Plaintiffs, and document production is still incomplete.[7]  Although the case is moving on an expedited schedule, that does not excuse the commonsense principle that a party should obtain the discovery to which it is entitled before demanding more.  Apple concurs with the Court that the presumptive limit of ten depositions per case—measured by *each* deposition at which *each* Plaintiff groups attend and asks questions—applies.  That limit should continue to apply unless and until Plaintiffs have exhausted their allotted depositions and demonstrated a particularized need for additional depositions in accordance with the law.  Apple offered a compromise position of fourteen depositions in the hopes of avoiding judicial intervention, but having rejected that offer, Plaintiffs cannot twist that good-faith effort into a concession that fourteen depositions should be ordered immediately.  Apple therefore maintains its position that ten depositions attended by each of the Plaintiff groups is the appropriate number at this time.  If, after discovery has progressed, Plaintiffs adduce evidence of a particularized need to depose additional witnesses, the Court can address those applications on a case-by-case basis.

Even beyond the general legal rule that an expansion of deposition limits is inappropriate at such an early stage, the circumstances of this case demonstrate that there is no need at this time to order more than ten party depositions per case.  When a case is on an expedited time schedule, as these are, expansion of the presumptive ten-deposition limit is even less appropriate than in an ordinary case, where discovery deadlines remain flexible.  The *Epic* case, for example, is slated to complete all non-expert fact discovery (including depositions) by February 15, 2021.  *See* Dkt. 20-CV-5640, Dkt. No. 116.  Depositions have not even yet *begun*, and when accounting for the upcoming holiday season, that leaves little more than six weeks to finish all document production and take all fact witness depositions.  Even if additional depositions were warranted by the merits (they are not), there are limited days in the calendar to prepare for and conduct additional depositions.

---

[7] For its part, Apple is unable to make an informed decision on how many party depositions it needs because—unlike Apple—Epic has not yet produced a substantial number of documents, further undercutting Plaintiffs' claim that the issue is ripe for determination.  To make matters worse, Epic has resisted efforts to provide Apple details about its outstanding document production, which Apple suspects is substantially incomplete.

Plaintiffs' conclusion that the complexity of this case warrants more than ten collective depositions is just that – a conclusory statement.  This case centers around a single set of policies relating to Apple's App Store.  And, although Plaintiffs exhaust nearly three pages attempting to detail the "different" areas of inquiries relevant to each witness Plaintiffs seek to depose, most of those "different" areas are just variations on the same theme.  For example, Plaintiffs seek a witness who can explain Apple's app store review policies.  But rather than take a single witness on this subject, Plaintiffs say they need multiple people even though their titles describe the same thing: "a prominent App Store policymaker," "head of App Review after 2016," "App Store Review Chief from 2009 to 2016," and "head of the App Store since 2010."  For a number of witnesses, Plaintiffs do not even describe the witness's relevance other than to note that Apple "has already agreed to his deposition" or the individual "appears on Apple's initial disclosures."  By saying that these depositions should be permitted on the *sole* basis that Apple does not dispute the relevance of these witnesses, Plaintiffs avoid the critical issue of whether they overlap with other witnesses sought by Plaintiffs.

Because a single set of policies are at issue, and because those policies are well known to Plaintiffs (after all, they allege to have been victimized by those policies over a period of years), this case presents none of the complexities that plagued the cases to which Plaintiffs cite.  *See Del Campo* at *5 (noting that the case raised typicality and commonality problems "among plaintiffs in between ten and thirty different counties in which [defendant] has contracts"); *Aerojet Rocketdyne* at *2 (litigation involving a settlement agreement required discovery into "prior contract disputes and agreements between Orbital and Aerojet").

This Court will further recall that Epic put itself at the front of the line of a years' long litigation with the representation that it needed only "some limited targeted additional discovery and some depositions."  Hr'g Tr. 5 (Aug. 24, 2020).  It is inappropriate for Epic to insist on expanding the number of party deponents allowed by the Rules when it told the Court that its discovery demands would be limited in order to secure its May trial date.  Epic asked for—and received—an aggressive discovery schedule on the basis of that promise, and the Court obliged.  It should be held to its representations.

In lieu of a discussion about the appropriate number of depositions, Plaintiffs have focused instead on whether two high-level Apple executives (Eddy Cue and Craig Federighi) may be deposed pursuant to the "apex" witness doctrine.  That singular focus is surprising:  As the correspondence record confirms, *see* Ex. D, the parties have never met and conferred regarding the law or facts surrounding depositions of apex witnesses, and Plaintiffs' letter preceding the meet-and-confer on December 12 did not mention the apex witness doctrine at all, much less cite any of the cases on which they now rely, *see* Ex. C.  There has been no "meet-and-confer" regarding apex witnesses nor can the Court's direction to brief the "number of depositions" be twisted to mean that it sought a cursory and truncated brief on premature apex issues.

*The Apex Issue Is Premature*.  Moreover, as Plaintiffs admit in their letter, it is inappropriate to seek to depose apex witnesses before lower-level employees have testified, and before document discovery is even complete, except for rare exceptions not relevant here.  The apex doctrine provides that "parties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of

-11-

other employees, *have been exhausted without success*." *Affinity Labs of Tex. v. Apple, Inc.*, No. 09-CV-4436, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (emphasis added). "Courts generally refuse to allow the immediate deposition of a high level executive . . . before the testimony of lower level employees with more intimate knowledge of the case has been secured." *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. 03-CV-5340, 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006).

Plaintiffs cannot meet their heavy burden to secure a Court order requiring the deposition of two high-level Apple executives without having the necessary factual record to support the request. In fact, Plaintiffs admit they do not even have the documents yet for one of the two executives discussed in their brief—they offer only a bulleted list of general facts about Mr. Federighi, with no citation to evidence in the record, to support their request for a deposition of him. Whatever exceptions there may be for the general rule that apex witnesses should not be deposed early in discovery, they cannot apply where, as here, Plaintiffs do not even have the factual materials to make the required showing of "unique, non-repetitive, firsthand knowledge of the facts at issue." *Affinity Labs*, 2011 WL 1573982, at *15. It is therefore entirely premature for Plaintiffs to seek to resolve the question of whether Apple's high-level executives should be required to sit for a deposition before Plaintiffs have made any effort to take the "testimony of lower level employees with more intimate knowledge of the case."

Plaintiffs argue that there simply is not enough time to "develop an extensive factual record through other depositions, evaluate that record, and only then move for these critical [apex] depositions." But Plaintiffs have not even tried to work with Apple to schedule the depositions of the lower-ranking witnesses in an expedient manner. None of the cases Plaintiffs cite support the notion that a party can deliberately refuse to attempt less intrusive discovery methods, and then use that obstinance to justify the taking of apex depositions. *See Medimmune* at *2 (the party moving for the apex deposition had been stymied in its efforts to take the depositions of lower-ranking employees in lieu of the Chief Executive officer); *WebSideStory* at *4 ("The Court finds WebSideStory's argument that NetRatings should be required to exhaust other avenues of discovery prior to deposing Mr. Lunsford to be disingenuous light of the fact that NetRatings states that it served a Rule 30(b)(6) deposition notice on WebSideStory in November of 2006 and WebSideStory has yet to provide a witness responsive to this request.").

To the extent the Court is inclined to conduct a hearing into the dispute regarding Messrs. Cue and Federighi at this early juncture, Apple requests an opportunity to fully brief the nuanced and complex issues attendant to the apex inquiry. A short, five-page letter brief is not enough space to meaningfully address the relevant issues for a single apex executive, much less multiple ones. Plaintiffs' terse and demonstrably insufficient effort to justify their deposition of these high-level executives is evidence enough of that.

Judge Gonzalez Rogers ordered the parties to coordinate discovery "to minimize expenses and facilitate the orderly and efficient progress of the Related App Store Actions." Dkt. 19-CV-3074, Dkt. No. 80 ¶ 1. Apple endeavored to honor the letter and spirit of that direction by offering a substantial compromise on the number of permitted depositions per party. Plaintiffs rejected that offer, and instead have turned this routine (and premature) exercise into a free-for-all on complex and fact-intensive issues that have not even yet ripened.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated: December 15, 2020         CRAVATH, SWAINE & MOORE LLP
  Christine Varney
  Katherine B. Forrest
  Gary A. Bornstein
  Yonatan Even
  Lauren A. Moskowitz
  M. Brent Byars

  Respectfully submitted,

  By:  */s/ Yonatan Even*

    Yonatan Even
    *Attorneys for Plaintiff Epic Games, Inc.*

Dated: December 15, 2020

  WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
    Mark C. Rifkin
    Rachele R. Byrd
    Matthew M. Guiney
    Brittany N. DeJong

  Respectfully submitted,

  By:  */s/ Rachele R. Byrd*
    Rachele R. Byrd
    *Interim Class Counsel for Consumer Plaintiffs*

Dated: December 15, 2020         HAGENS BERMAN SOBOL SHAPIRO LLP
  Steve W. Berman
  Robert F. Lopez
  Shana E. Scarlett
  Benjamin J. Siegel

  Respectfully submitted,

  By:  */s/ Robert F. Lopez*

    Robert F. Lopez
    *Interim Class Counsel for Developer Plaintiffs*

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated: December 15, 2020

GIBSON, DUNN & CRUTCHER LLP
    Theodore J. Boutrous Jr.
    Richard J. Doren
    Daniel G. Swanson
    Mark A. Perry
    Veronica S. Lewis
    Cynthia E. Richman
    Jay P. Srinivasan
    Ethan D. Dettmer
    Eli M. Lazarus
    Harry Phillips

Respectfully submitted,

By:      */s/*
        Jay P. Srinivasan
        *Attorneys for Defendant Apple Inc.*

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## **E-FILING ATTESTATION**

        I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                          */s/ Yonatan Even*
                                            Yonatan Even

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY