**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# Exhibit C

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1648

WRITER'S EMAIL ADDRESS
lmoskowitz@cravath.com

December 11, 2020

*Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR-TSH (N.D. Cal);
*Cameron v. Apple Inc.*, No. 4:19-cv-03074-YGR-TSH (N.D. Cal);
*In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR-TSH (N.D. Cal)

Dear Jay:

I write on behalf of all Plaintiffs in the above-referenced matters ("Plaintiffs") to follow up on Plaintiffs' November 25, 2020 letter, in response to Apple Inc.'s ("Apple") December 7, 2020 and December 11, 2020 letters, and in light of the Court's order to meet and confer (Minute Entry (Dkt. 178); Transcript (Dkt. 182) at 30:12-31:6), regarding depositions of current and former Apple employees.

In an effort to maximize efficiencies and minimize burdens, Plaintiff coordinated to provide Apple on November 25, 2020 with a list of 18 current and former Apple employees whom Plaintiffs intended to depose in their individual capacities. On December 7, 2020, Apple responded that "[a]t this time, Apple is not willing to waive the 10-deposition limit provided for in the Federal Rules", and that it "do[es] not believe 18 party depositions . . . is warranted or necessary". (Apple's 12/7/20 Letter at 1.) During a meet and confer on December 8, 2020, Apple asked Plaintiffs to explain in writing why each of the 18 witnesses is necessary. Plaintiffs' rationale follows.[1]

---

[1] Apple also asks that "Epic provide additional information about its document production efforts, including when it intends to complete production from each custodian". (Apple's 12/11/20 Letter at 2.) Epic intends to complete its document production for all custodians by the Court-ordered deadline of January 6, 2021—long before Apple will complete its own production. Epic has also provided far more detailed information than Apple has about the number of documents that it will review per custodian. (*See* Epic's 12/9/20 Letter at 3.) In any event, Epic's document production has no connection to the number of depositions that Plaintiffs need

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

As a threshold matter, as the Court has already acknowledged, Plaintiffs seek to conduct these depositions across three separate (though coordinated) cases, so there is no reason to apply here the 10-deposition presumptive limit; "the Rule 30 limit at ten is per case". (*See* Transcript (Dkt. 182) at 39:2-3.) Moreover, these are not run of the mill cases. The Court has already acknowledged "the novelty and the magnitude of the issues" at stake, "as well as the [attendant] debate in both the academic community and society at large". (Order Granting in Part and Denying in Part Mot. for Preliminary Injunction (Dkt. 118) at 1.) Apple itself identified 9 witnesses in its initial disclosures to class plaintiffs and 13 witnesses in its initial disclosures to Epic as "individual[s] likely to have discoverable information", and upon whom Apple may rely "to support its claims or defenses", per Federal Rule of Civil Procedure 26(a)(1)(A)(iii). And Apple has agreed to search the files of 23 custodians—18 of whom Apple put forward unilaterally. Plaintiffs have not reflexively requested to depose everyone on Apple's initial disclosures or custodian list. Instead, Plaintiffs have carefully considered each of these individuals to determine which depositions would be needed because the deponent would have unique information, taking into account factors such as the individual's level of seniority, scope of authority, day-to-day purview, and tenure with Apple. These cases have a broad scope and a long timeframe, as Plaintiffs challenge practices at the core of Apple's business, including practices resulting from over a decade of collective decision-making. Many witnesses are responsible for only a portion of that decision-making (*e.g.*, app review or developer relations) or have held their positions for only a portion of the relevant time period. Accordingly, each of the proposed deponents has unique information by virtue of his or her role and/or tenure.

In an effort to avoid bringing this dispute to the Court, Plaintiffs are willing to forgo depositions of Mary Ann Brunson (Marketing Manager) and Tanya Washburn (Director of Operations at the App Store), both of whom were on Plaintiffs' November 25, 2020 list.[2] Thus, Plaintiffs seek at this time[3] to depose 16 current or former Apple witnesses in their individual capacities. This is far fewer than the minimum of 30 depositions to which Plaintiffs collectively

---

to prove their cases, and should not affect Apple's willingness to agree to the depositions sought by Plaintiffs.

[2] Because Apple has not completed document production and no depositions of Apple witnesses have taken place, all Plaintiffs must reserve the right to depose Ms. Brunson or Ms. Washburn if additional material information about their respective roles comes to light or if Apple relies on them.

[3] But please note that while this proposal is made with respect to Plaintiffs' near-term needs, class plaintiffs reserve their right to proceed with other depositions (including but not limited to those of Ms. Brunson and Ms. Washburn) as their matters proceed. Among other considerations, class certification proceedings could surface the need for additional depositions. So could further review and analysis as those cases head towards trial, with discovery cutoffs that are far beyond the currently scheduled May 2021 *Epic v. Apple* trial date. Thus, class plaintiffs reserve all their rights, including as to the presumptive 10-deposition *per case* limit, as well as the right to seek more depositions by agreement or order of the Court as they deem necessary.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

are entitled under the Federal Rules in these three related but separate actions. (*See* Transcript (Dkt. 182) at 38:25-39:3.)

Plaintiffs have divided their presently requested deponents into five groups for clarity.

*First*, Plaintiffs seek to depose three Apple witnesses primarily because they are high-level policymakers on issues critical to these cases.

- Tim Cook (CEO, 2011 to present) – Plaintiffs recently explained to the Court why Mr. Cook possesses highly relevant, unique information. (Joint Discovery Letter Brief Regarding Additional Apple Document Custodians, filed Dec. 7, 2020 (Dkt. 173-3) at 1-2.)

- Phil Schiller (SVP of Worldwide Marketing for many years) – Apple cannot be surprised that Plaintiffs seek to depose Mr. Schiller, given that "Apple has already designated Phil Schiller as the lead witness on App Store issues" (*id.* at 6), he has provided two declarations in *Epic v. Apple* (Dkt. 37, 74), he appears on Apple's initial disclosures, and he is one of "the six custodians most relevant to the Epic lawsuit" according to Apple (Apple's 11/30/20 email at 2:09 p.m. PT).

- Eddy Cue (SVP, Internet Software & Services, 2011 to present) – Plaintiffs seek to depose Mr. Cue because he has played a critical role in the design of Apple's policies and exceptions thereto, since the launch of the App Store to the present. (*See, e.g.*, APL-APPSTORE_02828808 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).) Mr. Cue also determines whether to grant exceptions to Apple's policies (APL-APPSTORE_00443677 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), and helps decide overall business model and competitive strategy (*see, e.g.*, APL-APPSTORE_03111824 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

Apple has written that it "disagrees that Eddy Cue . . . [is an] appropriate deponent[] given [his] attenuated relevance to the issues in the lawsuit". (Apple's 12/7/20 Letter at 1.) This is a strange position for Apple to take, given that it was *Apple* that listed Mr. Cue on its initial disclosures: "Mr. Cue has information relating to the development and launch of the App Store. He also has information relating to App Store policies and guidelines; the App

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

Store business model; App Store commission; and app distribution. Mr. Cue also has information relating to the iOS operating system for Apple mobile devices and competition among device manufacturers and mobile operating system software." Of course, Plaintiffs are entitled to depose him.

*Second*, Plaintiffs seek to depose three Apple witnesses primarily because they have engineering knowledge on issues important to these cases.

- Craig Federighi (SVP, iOS & macOS Software Engineering, 2012 to present) – Plaintiffs recently explained to Apple, and then to the Court, why Mr. Federighi possesses highly relevant, unique information. (Joint Discovery Letter Brief Regarding Additional Apple Document Custodians, filed Dec. 7, 2020 (Dkt. 173-3) at 1-3.)

- Scott Forstall (former SVP, iOS Software, 2007 to 2012) – Mr. Forstall is relevant for similar reasons as Mr. Federighi, given that Mr. Forstall previously held Mr. Federighi's position. Indeed, Apple has known since at least February 2020 why Plaintiffs believe Mr. Forstall is relevant. More recently, in a November 29, 2020 draft of the Joint Discovery Letter Brief Regarding Additional Apple Document Custodians, Plaintiffs explained: "[Mr. Forstall] made engineering decisions foundational to iOS, the App Store and IAP. He designed iOS as a closed system. He developed the tools that allow third-party developers to create apps on iOS, and was the face Apple chose to present that development in the very event announcing the App Store. (Steve Jobs introduces App Store – iPhone Software Roadmap Event (2008), https://www.youtube.com/watch?v=MfQtnQHLNcs.) He designed IAP. (Scott Forstall Unveils "In-app Purchases" at iPhone OS 3.0 Preview Event, https://www.youtube.com/watch?v=8-nG2SapLBw.) Mr. Forstall himself reported to other Apple executives that ▮▮▮▮▮▮▮▮▮▮ and explained the relevant software. (APL-APPSTORE_03178435.) Mr. Forstall also helped enforce the IAP monopoly when challenged by third-party developers. (See, e.g., APL-APPSTORE_00046432 ▮▮▮▮▮▮▮▮▮▮)"

- Eric Friedman (Senior Engineering Leader, 2012 to present) – Plaintiffs seek to depose Mr. Friedman because he knows many of the App Store's security flaws, and is frequently involved in addressing the shortcomings and limitations of App Review. (See, e.g., APL-APPSTORE_02849857 ▮▮▮▮▮▮▮▮▮▮ Further, according to Mr. Federighi, ▮▮▮▮▮▮ a system used by Apple to eliminate "▮▮▮▮▮▮". (APL-APPSTORE_09568715.) In other words, Mr. Friedman has a direct role

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

in eliminating competing app distributors on iOS. Mr. Friedman's testimony of these day-to-day engineering operations is unlikely to duplicate the testimony of Messrs. Forstall or Federighi, who held or hold much higher positions with far broader areas of authorities.

*Third*, Plaintiffs seek to depose three Apple witnesses primarily because they have extensive knowledge of Apple's App Review.

- Phillip Shoemaker (App Store Review Chief, 2009 to 2016) – Apple does not require any explanation for why Plaintiffs intend to depose Phillip Shoemaker, as Apple too intends to depose him. (Apple's 12/10/20 email at 9:01 a.m. PT). Suffice it to say that Mr. Shoemaker was in charge of App Store Review for seven years and has publicly criticized Apple's App Review process since leaving Apple.[4]

- Trystan Kosmynka (former Software Engineering Manager, Aug. 2014 to Aug. 2016; Marketing Senior Director, Sept. 2016 to present) – Mr. Kosmynka is an important witness, given that he took over as head of App Review after Mr. Shoemaker's departure, appears on Apple's initial disclosures, and is one of "the six custodians most relevant to the Epic lawsuit" according to Apple (Apple's 11/30/20 email at 2:09 p.m. PT).

- C.K. Haun (Senior Director of Developer Technical Services, 1998 to present) – Plaintiffs seek to depose Mr. Haun because he is a prominent App Store policymaker. He oversaw App Review until Mr. Shoemaker took over in 2009. (APL-APPSTORE_09655455.) Mr. Haun is sought by Apple employees for advice and guidance regarding Apple policies. As one Apple employee explained, ██████████████████████████████ ██████████████████████████████ (APL-APPSTORE_02130843; *see also* APL-APPSTORE_02781888 (Mr. Haun weighs in on a "██████████████").) Moreover, Mr. Haun receives developer complaints on important issues, and is frequently consulted for details about specific situations or problems (*see* APL-

---

[4] *See, e.g.,* Amber Neely, *Justice Department Reportedly Launching Apple App Store Antitrust Probe,* AppleInsider (June 24, 2020), https://appleinsider.com/articles/20/06/24/justice-department-reportedly-apple-app-store-antitrust-probe ("'In-app purchase is broken,' Phillip Shoemaker . . . told *Politico.*"); Ben Gilbert, *Apple Arcade Violates the Same App Store Policies That Are Keeping Xbox Game Pass and Google Stadia off of iOS, Says Former App Store Leader,* Business Insider (Oct. 7, 2020), https://www.businessinsider.com/apple-arcade-xbox-stadia-blocked-gaming-services-iphone-app-store-2020-10 ("Shoemaker said the company implements 'arbitrary' and 'arguable' App Store approval guidelines, and uses its control of the App Store 'as a weapon against competitors.'"); William Gallagher, *Ex-App Store Head Says Apple Arcade Violates Apple's Own Policies,* AppleInsider (Oct. 8, 2020), https://appleinsider.com/articles/20/10/08/ex-app-store-head-says-apple-arcade-violates-apples-own-policies.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

APPSTORE_03174910 (question from Ron Okamoto); APL-APPSTORE_06490949 (question from Craig Federighi)), and has also personally approved policy exceptions (*see* APL-APPSTORE_00294149 ▮▮▮); APL-APPSTORE_02110922 (▮▮▮). Mr. Haun, too, appears on Apple's initial disclosures.

*Fourth*, Plaintiffs seek to depose four Apple witnesses primarily because of their interactions with developers who have been harmed by Apple's anti-competitive actions.

- Ron Okamoto (Vice President, Worldwide Developer Relations, 2001 to present) – Mr. Okamoto is highly relevant because his long tenure as the top developer relations officer at Apple has afforded him a unique window into developers' experiences with Apple's anti-competitive practices. Okamoto is singularly well positioned within Apple to speak to the manner by which Apple responds, or does not respond, to the market feedback it regularly receives from developers through the developer relations office. In this role, Okamoto personally handled difficult discussions with developers (APL-APPSTORE_00201521 ▮▮▮), and oversaw the resolution of developer-related questions and issues. Further, as you know, Apple identified Mr. Okamoto in its initial disclosures.

- Shaan Pruden (Senior Director of Worldwide Developer Relations, 1989 to present) – Apple has known since at least the November 29, 2020 draft of the Joint Discovery Letter Brief Regarding Additional Apple Document Custodians why Ms. Pruden is highly relevant: "▮▮▮. (*See, e.g.*, APL-APPSTORE_00207591 (responding to an email from Epic's CEO).) As '[o]ne of the most senior women at Apple', she is far more senior than the other 'Epic-specific' custodians proposed by Apple. (APL-APPSTORE_05222194.) Moreover, because she has long occupied a developer-facing role, her files likely cover crucial topics, including developer complaints about Apple's commission model (APL-APPSTORE_02907227 ▮▮▮")."

- Mike Schmid (Head of Games Business Development, App Store, Aug. 2017 to present) and Mark Grimm (Game Development Manager, Mar. 2016 to present) – Mr. Schmid and Mr. Grimm each submitted a declaration in *Epic v. Apple* (Dkt. 79, 76), appear on Apple's initial disclosures, and are two of "the six custodians most relevant to the Epic lawsuit" according to Apple (Apple's 11/30/20 Email at 2:09 p.m. PT).

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

*Fifth*, Plaintiffs seek to depose three Apple witnesses primarily based on their particular roles in the App Store.

- Matt Fischer (Vice President, App Store) – Plaintiffs' reasons for seeking to depose Matt Fischer are obvious, as he has been head of the App Store since 2010 and appears on Apple's initial disclosures.

- Carson Oliver (affiliated with the App Store since 2012, including most recently as Director of Business Management) – Plaintiffs seek to depose Mr. Oliver because he has a significant role in App Store strategy and financial management. He frequently analyzes the financial impact of IAP with significant developers. (*See, e.g.*, APL-APPSTORE_02027040 ▮▮▮; APL-APPSTORE_06210106 ▮▮▮ Mr. Oliver was one of the two individuals "driving" an effort to ▮▮▮" because ▮▮▮ (APL-APPSTORE_06167301.) He has sent draft emails to himself questioning the logic behind Apple's commission structure for subscriptions. (APL-APPSTORE_06158174.)

- Eric Gray (Director, Commerce & Payments) – Plaintiffs seek to depose Mr. Gray because of his role in payment processing, including IAP pricing, refunds, and related policies. In its preliminary injunction order, the Court explained that "Epic Games' strongest argument . . . lies with competition on *other* features provided by IAP, such as customer service, parental controls, and security". (Dkt. 118 at 25; *see also id.* at 26 n.28.) Plaintiffs are entitled to explore these topics with Mr. Gray. According to Apple's initial disclosures, Mr. Gray "has knowledge about Apple's policies relating to iOS app sales, including developer price selection, App Store commission levels, subscriptions, and in-app purchasing". His documents also show him to be involved in these issues. (*See, e.g.*, APL-APPSTORE_04762435 (▮▮▮))

\* \* \*

As before, Plaintiffs reserve their rights to supplement or modify their revised list of 16 Apple deponents as these cases progress. Plaintiffs still intend to serve Rule 30(b)(6) topics on Apple. Plaintiffs also seek to depose third parties and are open to meeting and conferring on reasonable limits for third party depositions in a separate dialogue.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

    Plaintiffs agree to add the issues discussed herein to the agenda for tomorrow's meet and confer at 10:00 a.m. PT.  If we are unable to reach agreement, then Plaintiffs must present this dispute to the Court with alacrity given the Epic case schedule.  Absent an agreed resolution, Plaintiffs will provide Apple with our half of the joint letter brief by 9 p.m. PT on Saturday, December 12, 2020, and request that Apple provide its half by 9 p.m. PT on Sunday, December 13, 2020.  Apple should be able to meet this schedule because it knew days ago that the parties were to file this letter brief on Monday (*see* Transcript (Dkt. 182) at 39:7-40:23, 46:3-6), and Plaintiffs' half will strongly resemble the substance in this letter.  Please confirm that Apple agrees with this schedule.

               Sincerely,

               s/ Lauren A. Moskowitz

Jay P. Srinivasan
GIBSON, DUNN & CRUTCHER LLP
jsrinivasan@gibsondunn.com
AppleAppStoreDiscovery@gibsondunn.com

E. Joshua Rosenkranz
William F. Stute
ORRICK, HERRINGTON & SUTCLIFFE LLP
jrosenkranz@orrick.com
  wstute@orrick.com

Steve W. Berman
Robert F. Lopez
Shana E. Scarlett
Ben Siegel
Ted Wojcik
HAGENS BERMAN SOBOL SHAPIRO LLP
steve@hbsslaw.com
  robl@hbsslaw.com
    shanas@hbsslaw.com
      bens@hbsslaw.com
        tedw@hbsslaw.com

Mark C. Rifkin
Rachele R. Byrd
Matthew M. Guiney
Brittany N. DeJong
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
rifkin@whafh.com


CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY

byrd@whafh.com
guiney@whafh.com
dejong@whafh.com

BY EMAIL

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY