| | |
|---|---|
| THEODORE J. BOUTROUS JR., SBN 132099<br>  tboutrous@gibsondunn.com<br>RICHARD J. DOREN, SBN 124666<br>  rdoren@gibsondunn.com<br>DANIEL G. SWANSON, SBN 116556<br>  dswanson@gibsondunn.com<br>JAY P. SRINIVASAN, SBN 181471<br>  jsrinivasan@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>VERONICA S. LEWIS (Texas Bar No. 24000092; *pro hac vice*)<br>  vlewis@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue, Suite 1100<br>Dallas, TX 75201<br>Telephone: 214.698.3100<br>Facsimile: 214.571.2900 | MARK A. PERRY, SBN 212532<br>  mperry@gibsondunn.com<br>CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)<br>  crichman@gibsondunn.com<br>HARRY R. S. PHILLIPS (D.C. Bar No. 1617356; *pro hac vice*)<br>  hphillips2@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br><br>ETHAN D. DETTMER, SBN 196046<br>  edettmer@gibsondunn.com<br>ELI M. LAZARUS, SBN 284082<br>  elazarus@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street<br>San Francisco, CA 94105<br>Telephone: 415.393.8200<br>Facsimile: 415.393.8306 |

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br>    Plaintiff, Counter-defendant<br>v.<br>APPLE INC.,<br>    Defendant, Counterclaimant<br><br>IN RE APPLE IPHONE ANTITRUST LITIGATION<br><br>DONALD R. CAMERON, *et al.*,<br>    Plaintiffs<br>    v.<br>APPLE INC.,<br>    Defendant. | Case No. 4:20-cv-05640-YGR<br>Case No. 4:11-cv-06714-YGR<br>Case No. 4:19-cv-03074-YGR<br><br>**DEFENDANT APPLE INC.'S STATEMENT IN RESPONSE TO ORDER TENTATIVELY DENYING ADMINISTRATIVE MOTION TO MODIFY CASE SCHEDULE [DKT. 330]**<br><br>Hon. Yvonne Gonzalez Rogers |

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S RESPONSE TO DECEMBER 18 ORDER

Defendant Apple Inc. respectfully submits this notice in response to the Court's December 18 Order Tentatively Denying Administrative Motion to Modify Case Schedule, which states:

> [I]f Apple produces the transactional data ordered by Magistrate Judge Hixson by **December 31, 2020**, the briefing on the motion for class certification shall remain as ordered. If not, the Court will grant the [class plaintiffs'] request and reset a briefing schedule. Apple shall file a notice by Monday, **January 4, 2021** confirming whether the production was made. If not, Apple shall provide the Court with a date certain for the production.

Dkt. 330 at 3.[1]

For the reasons set forth below, it is not possible for Apple to produce the transactional data by December 31. Apple will produce the data no later than **January 22, 2021**. Apple recognizes the Court's preference to have the class certification briefs on file before the *Epic* trial begins. See Dkt. 330 at 3. The Court can achieve that objective by extending all the deadlines (including the *Epic* trial date) by approximately eight weeks—subject, of course, to the Court's other obligations.[2] If the *Epic* trial schedule remains unchanged, then Apple respectfully submits that the Court should adopt class plaintiffs' proposal to defer <u>all</u> class certification briefing until after the *Epic* trial has concluded.

**Production of transactional data.** As the Court knows, the parties have engaged in lengthy meet-and-confer discussions and correspondence regarding the production of transactional data. *See*, *e.g.*, Dkt. 147-3, Ex. C (Apple's letter summarizing the parties' meet-and-confer discussions). The developer plaintiffs propounded their requests for production on October 17, 2019. Dkt. 147-3, Ex. A. Apple negotiated with both sets of class plaintiffs to ensure that it would produce *only one time* the enormous amount of responsive data—ultimately comprising terabytes of data, including dozens of attributes of roughly **65 billion** transactions. However, this data does not reside in one source; it must be compiled by engineers from different repositories. Dkt. 147-3 at 4 & n.6. To this end, Apple

---

[1] Docket citations throughout refer to the Consumer case, *In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR.

[2] As discussed further below, Epic is already seeking discovery that far exceeds proportionality to the needs of the case, and even with the proposed adjustment of the schedule, discovery completion will be challenging. Apple's proposal of this extension should not be viewed as agreement to any expansion of the discovery that any party is entitled to. Apple reserves all objections to the discovery plaintiffs seek.

originally prepared a dataset in a "flat" table format—the most straightforward method for compiling this information (and consistent with the ESI protocol's provision for the production of data in "static" format). *Id.* at 4; Dkt. 147-3, Ex. C at 002.

On July 9, 2020, class plaintiffs informed Apple that they preferred a "relational" table format. Dkt. 147-3, Ex. C at 002. While class plaintiffs could have made this preference clear from the start, their demand came eight months after propounding their discovery requests and nearly five months since the parties had begun discussing a production timeline. Dkt. 147-3, Ex. C at 002. Nevertheless, Apple agreed and subsequently produced two large samples—a sample of 100,000 transactions in July and a second 100 million transaction sample in September—and agreed to make over fifteen changes to the data set at class plaintiffs' request. Dkt. 147-3, Ex. C at 001-004.[1] Throughout this time, Apple stood ready to produce the full transactional data set on the reasonable condition that it would only produce the set once (unless class plaintiffs agreed to pay for a supplemental production). Dkt. 147-3 at 4-5; *see also* Dkt. 201-1, Ex. A at 91:5-15 (Magistrate Judge Hixson observing, "I'm very sympathetic to Apple's position that they should only have to produce this data once. So you need to understand that . . . ."). Class plaintiffs refused to so stipulate, insisting among other things that Apple add an additional field called "proceeds_reason." Dkt. 147-3 at 5.

The parties submitted this dispute to Magistrate Judge Hixson on November 13, 2020. *See* Dkt.

---

[1] Apple repeatedly informed class plaintiffs that, due to the volume and nature of the transactional records at issue, it would take significant effort and at least two weeks to complete production once the production process was started, and that each additional request by plaintiff would increase the burden on Apple and further delay production. *See* Dkt. 147-3, Ex. C at 005; *see also* Dettmer Decl. Ex. 1 (August 4, 2020 email explaining that while Apple is able to produce the materials in relational tables "the processing and analysis time will likely be greater"); *id.* Ex. 2 (August 4, 2020 email recognizing the additional challenges posed by the pandemic); *id.* ¶ 5 (August 7, 2020 call where Apple explained it would take at least two weeks to produce the data as a relational table); *id.* Ex. 3 (August 14, 2020 email expressing the same); *id.* Ex. 4 (August 24, 2020 email explaining the burden of extracting the large volume of data); *id.* Ex. 5 (September 10, 2020 email explaining plaintiffs' additional requests increase the time to complete the full production); *id.* Ex. 6 (accord); *id* Ex. 7 (accord); *id.* Ex. 8 (October 27, 2020 correspondence explaining Apple is prepared to produce the material but that the production is a significant undertaking); *id.* Ex. 9 (November 2, 2020 correspondence again explaining that each of plaintiffs' additional demands increase the time to complete the full production); *id.* Ex. 10 (November 6, 2020 correspondence highlighting that plaintiffs' expectation ignores the necessary effort required by Apple to make the production); *id.* Ex. 11 (December 10, 2020 email stating that "[b]ecause Apple [] agreed to certain of plaintiffs' demands to include additional fields, assembling the final data set will require some additional time").

*(Cont'd on next page)*

147-3. The "proceeds_reason" field is a binary value indicating whether or not the transaction was associated with a 15% commission due to a subscription lasting more than one year. Dkt. 201-1, Ex. A at 81:21-25; Rollins Decl. ¶ 2. This field is duplicative of other information Apple had already agreed to include in the production. Dkt. 201-1, Ex. A at 74:20-79:1; Rollins Decl. ¶ 2. That is because the larger data set already shows whether a consumer has subscribed for over a year, *id.*, and the App Store's commission falls from 30% to 15% for subscriptions after their first year, Dkt. 147-3 at 5 & n.7. Class plaintiffs can determine whether the commission was 15% or 30% by looking at other fields of information specifying the amount paid by the customer and the royalties provided to the developer; including "proceeds_reason" merely makes that inquiry marginally quicker. *See id.*; Dkt. 201-1, Ex. A at 75:15-19.[2]

At a hearing on December 15, Apple explained to Magistrate Judge Hixson that producing the data on 65 billion transactions in the format requested by class plaintiffs would take significant additional effort to complete. *See* Dkt. 201-1, Ex. A at 76:22-77:18. Including "proceeds_reason" further increases the burden, because this information has to be reverse-engineered to map to the data set that Apple has already collected. Rollins Decl. ¶ 2. Because of the complicated engineering issues involved, the various steps of this process cannot be completed simultaneously—data engineers must first gather the data from multiple sources, then stitch the data together, then subject it to quality control and validation, then encrypt it, then upload it to hard drives for sending to the plaintiffs, and then quality control test it again. *Id.* ¶ 3. This process requires many hours of engineering work and many hours of raw processing and computing time by machines. This is not work that Apple can do quickly or that it should have to do more than once. What is more, this process requires engineers to physically access a unique physical space in Apple's data labs, which is complicated by access limitations necessitated by the COVID-19 pandemic. *Id.* ¶¶ 3-4. The unavoidable result is that including the "proceeds_reason" field will delay the already labor-intensive production of transactional data. *Id.* ¶ 3 (explaining that the production will take about 130 additional hours without "proceeds_reason" and a further 50 hours on

---

[2] Because the "proceeds_reasons" at most verifies information found elsewhere in the transactional data, it can hardly be "crucial" to class plaintiffs' "experts' class certification analysis." Dkt. 327-1 at 1-2.

top of that with its inclusion).

In light of all this, Judge Hixson ordered Apple to produce the data including the "proceeds reason" field but rejected class plaintiffs' request that Apple "produce the transactional data . . . by the end of December." Dkt. 201-1, Ex. A at 90:19-91:4. He explained, "I'm not going to do that" because "the January time frame [Apple] outlined"—production by January 22, 2021—"under the circumstances and considering when this issue was surfaced to me to resolve, is fine." *Id.* at 90:19-91:1-4. In his written order issued on December 18, Judge Hixson reiterated his "sympath[y] to Apple" about the burden of producing the voluminous transactional data and noted that "[t]he parties discussed the anticipated time frame for this production at the hearing." Dkt. 192 at 8.

Upon receiving this Court's order of December 18, Apple instructed its engineers to determine whether the transactional data ordered by Magistrate Judge Hixson could be produced by December 31, 2020.[3] Rollins Decl. ¶ 5. Unfortunately, it is not possible for Apple to do so—the engineering, raw processing, and other computing time required to process this massive request imposes a physical constraint on Apple's ability to complete it.

Accordingly, Apple will produce the data by **January 22, 2021**. Rollins Decl. ¶ 5. As noted, Magistrate Judge Hixson has already recognized this date as reasonable under the circumstances. Dkt. 201-1, Ex. A at 90:19-91:4.

**Resetting the class certification schedule.**  Class plaintiffs have asserted that they will not have time to complete their class certification briefs by the current deadline (of February 3, 2021) if they receive the transactional data on January 22, 2021. However, the Court has made clear that it would benefit from receiving the class certification briefing before the *Epic* trial begins. Dkt. 330 at 3; *see also* Oct. 19, 2020 Hr'g Tr. at 31:14-17, 31:24-32:1) ("THE COURT: . . . I can tell you that when I put the schedule in place, I had your [class certification briefing] schedule in mind, and I thought it would behoove the Court to have all of that briefing in . . . I anticipated it being done so that when I went into trial on this particular [*Epic*] piece, I would have the full scope of your class certifications in

---

[3] And since the processing work to create the production is underway, removing proceeds_reason at this point would not allow Apple to complete the production any sooner but would instead require additional work by Apple's engineers.

mind").

Accordingly, Apple respectfully suggests that the Court consider moving the class certification briefing schedule, the *Epic* trial, and other corresponding dates back by approximately eight weeks (subject of course to the Court's availability).[3] In addition to allowing the parties to brief class certification before the Epic trial begins, this would provide a greater likelihood of an in-person trial in light of the current public health situation in California.

Moreover, adjusting the schedule would allow for discovery to be completed in a more orderly way—which is particularly important given the ever-expanding scope of Epic's discovery demands. Again, the discovery Epic has sought is overbroad and disproportionate to the needs of the case, and Apple reserves all of its objections. But as the Court will recall, Apple suggested at the outset that trial should be set in August 2021, with a fact discovery cutoff in March 2021. Epic pushed for a May trial date, seeking a fact discovery cutoff in February, and representing to the Court that "[the discovery] we are going to need, Your Honor, is certain of the discovery that's already been produced, frankly, in the *Cameron* case relating to the App Store," and "some limited targeted additional discovery" regarding "in-app payment processing" and market definition," and "some depositions." Aug. 24, 2020 Hr'g Tr. at 4:21-24, 5:13-23. The Court set a trial date of May 3, 2021, and a fact discovery cutoff of February 15, 2021; but as Apple pointed out at the time, meeting a "compressed schedule" in this case would "present challenges for both parties," and would only be achievable "if Epic stay[ed] true to its representation to the Court that it [would] . . . confine any new requests to 'in-app payment processing' and 'limited targeted additional discovery and some depositions.'" Dkt. 91 at 5.

Since the Court set the current schedule, Epic has abandoned any pretense of seeking only "limited targeted additional discovery," seeking instead extensive discovery that cannot be completed within the compressed schedule that Epic itself requested.[4] As a result of the expansion of discovery

---

[3] If the Court is inclined to adjust the deadlines, Apple suggests that all parties meet and confer regarding specific dates to propose to the Court.

[4] For example, Epic has served 83 broad requests for production on wide-ranging topics, and has demanded that Apple more than double the number of new custodians added since Epic filed its case—bringing the total number of Apple custodians to 24—with essentially no date restrictions on the time period from which documents from most of those custodians should be produced. Epic
*(Cont'd on next page)*

sought by Epic (and class plaintiffs), Apple will be producing documents well after the January 6, 2021 cutoff for document discovery—a change to the schedule that Epic and the other plaintiffs have acknowledged is required by their expansive requests and already agreed to. In light of these demands, the parties are likely to be double- and triple-tracking depositions in January and February. This is not the incremental discovery that Epic represented it would take, what Apple committed to complete, or what the Court relied on in imposing what it acknowledged to be an "aggressive schedule." Oct. 19, 2020 Hr'g Tr. at 5:19.

Adjusting all deadlines by about eight weeks would give the parties time to complete the already onerous document productions for additional custodians, prepare for all of the depositions, and complete third party discovery in an orderly fashion, while the class certification briefing runs in parallel and allows the Court to have the benefit of that briefing before the *Epic* trial begins. If, however, the Court does not move the *Epic* trial date, then it should adopt class plaintiffs' request to defer all class certification briefing until after the conclusion of the *Epic* trial.

Respectfully submitted,

Dated: December 30, 2020        GIBSON, DUNN & CRUTCHER LLP

By:    /s/ Mark A. Perry
                    Mark A. Perry

Attorneys for Defendant APPLE INC.

---

is currently pushing for additional documents from Apple going back to 2006 or even earlier and for documents that relate solely to issues outside the United States and not related to Epic, which implicates literally millions of additional documents, and which Class Plaintiffs did not insist on. Indeed, Apple is already processing nearly 8 million custodial documents due to Epic's requests (in addition to the over 12 million more processed for potential production in the class cases), and Epic's new demands added approximately 5 million new custodial documents to the universe of what Apple has to process. This is in addition to onerous new demands for non-custodial review and production. Epic has also sought depositions of at least 16 Apple witnesses (including demanding apex depositions without making the requisite showing) in addition to third party discovery and depositions under Rule 30(b)(6).