**REDACTED VERSION
OF DOCUMENT
SOUGHT TO BE SEALED.**

# EXHIBIT 2

| | |
|---|---|
| **From:** | Lazarus, Eli M. |
| **Sent:** | Wednesday, August 5, 2020 2:46 PM |
| **To:** | 'Ted Wojcik' |
| **Cc:** | bens@hbsslaw.com; byrd@whafh.com; Dettmer, Ethan; Richman, Cynthia; Swanson, Daniel G.; Srinivasan, Jay P.; Phillips, Harry; Craig, Dana Lynn; Dansey, Lauren; robl@hbsslaw.com; shanas@hbsslaw.com; rifkin@whafh.com; guiney@whafh.com; dejong@whafh.com; warren@whafh.com; steve@hbsslaw.com |
| **Subject:** | RE: Apple App Store Antitrust |

Ted: we received your email from last night reiterating, again, that Developer Plaintiffs would like Apple to produce transactional data in relational tables.  We appreciate the specific examples of particular technical issues that you have provided.  As my past emails have made clear, we have had our technical team looking at the specific assertions you have made in your recent correspondence.

Now that our technical team has had the chance to examine these issues closely, we can share the following.  Apple is able to produce the transactional data to you in relational tables or in a single flat file.  Our understanding has been and continues to be that a single flat file will be easier for you and your consultants to work with as each line is a unique transactional record.  If we produce relational tables, it is true that the data size of the primary file would be somewhat smaller (though our team sees no basis for believing that the total amount of data would decrease by anything like the "five to fifteen times" you suggest).  However, relational tables will require your team to do significant work to join the tables for analysis, and the processing and analysis time will likely be greater.  It would also take some time for our team to switch to producing relational tables.  But Apple will produce in a single flat table or in relational tables as you choose.  You are on notice, however, that whichever production format you decide on, Apple will produce the data only once and will not make a second production because Plaintiffs come to regret not having asked for any different format.

In that regard, your email from last night states that "following Apple's full production of transactional data, the parties will of course continue to meet and confer about the adequacy of this data, including the fields, based on plaintiffs' detailed review (plaintiffs reserve their right to raise further issues in this regard)."  This is unacceptable.  Apple has produced 100,000 rows of data to developers—substantially more than you demanded.  As we have said before, without objection from Plaintiffs, the reason Apple has produced such a robust sample data set is so that we can identify and resolve any issues before production, and avoid any need to repeat production.  Indeed, this is the very purpose of a sample production.  Production of this data is extremely burdensome and technically challenging, and Apple will not agree to do it a second time.  We need to resolve issues with the production now—which we are working hard to do—so Plaintiffs need to identify any issues that you see with the sample set now.

Separately, when we spoke with Rob Lopez on July 31, he asked whether the transactional data production could be made via physical hard drives rather than a cloud-based transfer.  We can confirm that Apple is willing and able to send the production on hard drives.

Once you are prepared to respond to the points above, we are happy to speak with you by phone.  Your email of 7 p.m. yesterday insisted on a 10 a.m. call today.  That is unreasonable for several reasons.  We had made ourselves available yesterday for a call, but you apparently could not make that happen, instead sending a lengthy email.  In the past, phone calls between the parties in this case have been effective in moving things forward and resolving issues—and we certainly believe that should continue to be the case.  However, we feel constrained to respond to the many points you raise in your email.  You also say that you would like discuss topics other than the relational-table issue—our call will definitely be more productive if you let us know what topics are on your agenda.

In response to some of the other points in your email:

First, you say "we are surprised to learn that you have not yet discussed our concerns with your experts." This comment seems like an unnecessary effort to suggest Apple has been dilatory, which is not the case. As you well know, we have been in constant discussions with our technical team. It has been clear to your side since the beginning of our discussions on these topics, starting in February, that we are working closely with our technical team on these difficult technical issues. As stated in my July 31 letter, our understanding has been that a single-file production would be readily usable by both sides. It was only on July 31 that Developer Plaintiffs provided more specific information as to why you believe relational tables should be used. As discussed above, consistent with our responsibilities, we have been examining those specific concerns with our technical team to determine whether it would be appropriate to produce the data to you in a different format than the sample data.

Second, we appreciate Developer Plaintiffs' sensitivity to the effects of the current pandemic on Apple and our team. As our teams have discussed on many occasions, all of us have had to address these concerns, and we have agreed to a substantial extension of the schedule at your request, based in part on these reasons. We expect that both sides will continue to be understanding of the challenges posed by these circumstances.

Third, your email notes two "errors" in the sample production, but these are not in fact errors. You point out that the ███████████████ column in the sample data lists "999999999" for every observation. Ben Siegel's email of July 17 states, "the sample's purpose is to aid in the meet-and-confer process. Thus, even though it is wholly unnecessary, sensitive data (such as developer or consumer names) *in this sample only* could be anonymized before production." In light of this statement, Apple produced the ███████████████ as "999999999" for every observation. This was not an error. Next you note that our sample transactional data does not include fields that we had mentioned in our June 25 letter in relation to the $99 fees paid by developers. The database housing Apple's transactional data does not contain data relating to the $99 fees. We would remind you that Apple's response to Developer Plaintiffs' RFP 32 concerning the $99 annual fees stated that Apple would "produce non-privileged documents sufficient to respond to this Request, to the extent such documents exist, are within Apple's possession, custody, or control, and can be located after conducting a reasonably diligent search of Apple's agreed-upon custodians' documents pursuant to the final ESI protocol." We are exploring what other data may be available to share with you in this regard. I also note that neither of these purported "errors" has to do with the relational table issue that you are raising.

Fourth, after reciting new specific reasons that you are requesting relational tables, you say that you have "repeatedly identified precisely these potential problems with size and access." But that is not so. As we have stated before, you first made your request for relational tables on July 9. On July 31, August 3, and August 4, you provided specific reasons that you say support your request. Plaintiffs' earlier general statements about efficiency in a production did not communicate any desire for relational tables or any specific reasons why such a desire might be justified. It is more helpful and illuminating to the meet-and-confer process to raise specific examples of these technical issues. Your general assertion of "efficiency" may not be accurate in all circumstances or for all systems or approaches to working with the data. Discussing specific concerns and technical issues is almost certain to be a more productive way of dealing with these highly technical issues.

We are additionally able to provide the following responses to points and questions raised in Ben's email from this past Friday, July 31. That email notes that the sample data does not include:
- a field explaining why a 15% commission is charged instead of a 30% commission on some subscriptions. We are working to determine whether such a field is available.
- fields showing the charge and receipt of the $99 annual developer fee. As noted above, the database housing App Store transactional data does not contain data relating to the $99 fee because this is an annual fee, not a transactional fee, and we are exploring other possible sources of this data.
- fields stating the end-user's method of payment. We are working to determine whether such a field is available.
- the ███████████ field and the ███████████████ Both of these fields relate to ███████████████████ and are not necessary here because this production is limited to data from the U.S. storefront.

2

- the ████████ field. This field relates to ████████████████████████. This information is not relevant to plaintiffs' claims or responsive to plaintiffs' discovery requests.
- the ████████ field. ██████████████████████████████████████. This information is not relevant to plaintiffs' claims or responsive to plaintiffs' discovery requests.

Ben's July 31 email also asked whether Apple maintains a data dictionary that describes all the fields relating to App Store transactional data. Our investigation has not located any such data dictionary, but as you know, we recently sent you a list of definitions for values in the sample production fields.

We look forward to speaking with you further so that Apple can complete its production of transactional data.

Best regards,
Eli


**Eli Lazarus**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8340 • Fax +1 415.374.8496
ELazarus@gibsondunn.com • www.gibsondunn.com

---

**From:** Ted Wojcik <tedw@hbsslaw.com>
**Sent:** Tuesday, August 4, 2020 7:01 PM
**To:** Lazarus, Eli M. <ELazarus@gibsondunn.com>
**Cc:** bens@hbsslaw.com; byrd@whafh.com; Dettmer, Ethan <EDettmer@gibsondunn.com>; Richman, Cynthia <CRichman@gibsondunn.com>; Swanson, Daniel G. <DSwanson@gibsondunn.com>; Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Phillips, Harry <HPhillips2@gibsondunn.com>; Craig, Dana Lynn <DCraig@gibsondunn.com>; Dansey, Lauren <LDansey@gibsondunn.com>; robl@hbsslaw.com; shanas@hbsslaw.com; rifkin@whafh.com; guiney@whafh.com; dejong@whafh.com; warren@whafh.com; steve@hbsslaw.com
**Subject:** RE: Apple App Store Antitrust

[External Email]
Hi Eli,

Thanks for agreeing to raise this matter with your technical team, and for your willingness to explore producing this data in a different format. Though we recognize that you would like to consult with this team now in order to better assess your response to our position, we still believe that a call is necessary as soon as possible. We propose 10 am (Pacific) tomorrow, or later in the day, as your availability permits. There is not simply the matter of the size of the single-file production to consider, but other problems as well. Please let us know if you can make a 10 am call.

As discussed further below, we are surprised to learn that you have not yet discussed our concerns with your experts. We raised them in our July 9 letter, but your July 31 letter does not address them. Also, as indicated in our email last night, we have raised pertinent questions for many months now. Now, given the current case schedule, and the fact that we are beyond July 31, this matter is particularly time sensitive. As for your comments about the COVID pandemic, the developers have always been sensitive to its effects on your client and all of you, and we have said this repeatedly. If you wanted or needed more time to do your work, you could have told us, and we could have worked together to propose changes to the schedule to accommodate any issues on your end.

The following are some additional, specific points in response to your email:

First, you note that we have "not asserted that the format of production [plaintiffs] have proposed will result in any responsive data becoming inaccessible or otherwise missing."  Our email of last night was not meant to be exhaustive; as the email indicated, the load-time issue is just one example of the problems plaintiffs have encountered.  More importantly, we have in fact alerted Apple to other problems that would arise if production were to occur as Apple presently intends.  Our July 9 letter sets forth some of these.

Consistent with this, to date, we have identified a number of errors in the sample production that (1) appear to be attributable to Apple's conversion of its data; and (2) would be avoided were that data produced in relational form, as long requested.  We offer two examples that highlight this problem.

> (A)  In the sample of transactional data provided to plaintiffs, the ▮▮▮▮ variable is equal to "999999999" for every observation.  However, in your June 25 email, you indicated that this code corresponds to ▮▮▮▮  Based on your representation that this field should have had ▮▮▮▮ this is an obvious example of Apple altering the native data when creating the "flat file" in a manner that leads to errors.  This type of error is glaringly obvious, but many other errors will be undetectable if Apple only send plaintiffs a flat file.  It will be burdensome and difficult to locate and address all such errors.

> (B)  A related type of error is omission.  For example, despite promising ▮▮▮▮ and ▮▮▮▮ as fields in your June 25 letter, Apple did not include these fields in the sample production (as an aside, plaintiffs do need to know every payment made by developers, so this information, even had it been adequately provided, is insufficient).

These examples underscore why, as a general matter, ultimate production of a single file is not acceptable to plaintiffs: as noted in example A above, many errors will simply be undetectable, and plaintiffs will be forced to locate and correct errors that – were Apple to produce its data in relational tables – would not occur.  A related problem is that, if Apple must produce an entirely new, single flat file (of 35+ TB in size) every time an error is identified (e.g., if it needs to add or correct even one column in the database), this will impose significant burden on plaintiffs and create considerable delay.  In contrast, if Apple produces native relational tables, those relational tables will have unique identifiers for each transaction, customer, etc.  Consequently, if Apple needs to produce an additional variable related to each transaction, then it most likely can produce a supplementary table that includes only the new data.

As for the size of the production, the broader underlying problem here is that, by combining different types of observations into a single file, Apple creates extraordinary redundancies, which in turn create burden by heightening the risk of error and inflating the file size.  A fundamental feature of relational databases is that they eliminate data redundancy.  As a further illustration from the sample data provided to plaintiffs: ▮▮▮▮ appears on 1959 different rows, along with its corresponding "content provider id" entry.  If the data were instead structured as relational tables, the primary data table would only need to include the "content provider id" for every row, and would not include the content provider name.  A separate data table would then allow one to use a single row of data to match ▮▮▮▮ in the data.  When such redundancies are considered across the entire data production, it is our belief that the size of this production will be significantly reduced if Apple's transactional data is instead produced as relational tables.

Second, you note that we do not estimate how the time necessary to read data from relational tables would compare to the time necessary to read it from a single file.  Based on our review of the sample, we estimate that Apple's data production would be anywhere from *five to fifteen* times smaller were transactional data produced as relational tables.  Consequently, though we are unable provide a precise estimate in response to your question, we believe this has dramatic implications for the time it will take to both load and search the data using statistical software.   These

implications are sufficiently significant that, as explained in my previous email, we are confident that Apple's production of transactional data as a single file would run afoul of Rule 34. This dispute is plainly about usability, among other considerations.

Though Apple appears to claim surprise at these points, we note again here that plaintiffs have repeatedly identified precisely these potential problems with size and access before; it is for this reason that they have repeatedly sought, since February, more details about the nature of Apple's data storage and its intended production. As we stated more than three weeks ago, in our July 9 letter:

> We also request that Apple's ultimate transaction data production be in the format as described in the previous paragraph. Specifically, it would much more efficient and "user friendly" for data analysis if Apple produces data in separate "main" transactional table(s) . . . and "lookup tables" . . . . Production in this manner will ensure both that Apple's data are saved in a space-efficient manner and not incorrectly disturbed, which can occur accidentally even if Apple attempts to reformat the data in good faith (which we presume). By contrast, producing all of the raw data and lookup ids in a single table (instead of leaving them split as separate tables) would very likely inflate the size of the data by many times. Please confirm that Apple will produce the data in the manner requested.

*See* July 9 letter at 3. Most recently, in our July 31 email, we reiterated these concerns.

Finally, you state that Apple is "still awaiting [plaintiffs'] full feedback on the sample data set in order to be able to finalize the production of this data." In our July 31 email, we identified a number of additional deficiencies with the data fields included by Apple in its sample; Apple has yet to respond, and we ask again here that it do so. Furthermore, and more importantly, following Apple's full production of transactional data, the parties will of course continue to meet and confer about the adequacy of this data, including the fields, based on plaintiffs' detailed review (plaintiffs reserve their right to raise further issues in this regard). In the meantime, however, Apple cannot simply withhold production of the data, as this only serves to delay and risks substantial prejudice to plaintiffs. Nor at this point can Apple simply produce a large flat file, for the reasons described herein. Hence, the urgent need for a call, and, if necessary, taking up the matter with Magistrate Judge Hixson.

Best,
Ted

Ted Wojcik | **Hagens Berman Sobol Shapiro LLP** | Direct: (206) 268-9329

---

**From:** Lazarus, Eli M. <elazarus@gibsondunn.com>
**Sent:** Tuesday, August 4, 2020 9:43 AM
**To:** Ted Wojcik <TedW@hbsslaw.com>
**Cc:** Ben Siegel <bens@hbsslaw.com>; byrd@whafh.com; edettmer@gibsondunn.com; crichman@gibsondunn.com; dswanson@gibsondunn.com; jsrinivasan@gibsondunn.com; hphillips2@gibsondunn.com; dcraig@gibsondunn.com; ldansey@gibsondunn.com; Rob Lopez <robl@hbsslaw.com>; Shana Scarlett <shanas@hbsslaw.com>; rifkin@whafh.com; guiney@whafh.com; dejong@whafh.com; warren@whafh.com; Steve Berman <Steve@hbsslaw.com>
**Subject:** RE: Apple App Store Antitrust

Dear Ted: thanks for your email. We are surprised at your insistence that we are "at an impasse." We are still awaiting your full feedback on the sample data set in order to be able to finalize the production of this data. We are also talking with the technical people on our team about your assertion that a single file production will be significantly more difficult to work with than a relational file production (and the further information you provided last night should be helpful in those inquiries). Apple may be willing to produce the data in a different format, <u>if in fact</u> the data is significantly easier to work with in that other format. We are confirming with our technical team whether that is true with respect to this data, and expect to have an answer within the next couple of days.

To be clear, you have not asserted that the format of production we have proposed will result in any responsive data becoming inaccessible or otherwise missing.  At bottom, your claim that this data format renders the data not "reasonably usable" appears to be limited to your assertion that "each read of [the produced structured] data could require a significant amount of time – potentially in excess of sixteen hours."  You do not say how this "potential" amount of time would compare to similar reads of data from relational tables, and thus it is hard to compare how much more or less reasonably usable this format is, but (as noted) we are asking our technical people about this and expect to have an answer within the next couple of days.

I am not going to go point by point and respond to your other assertions, as it does not seem fruitful to multiply our disagreements.  But let me respond to your core complaint.  Your central concern appears to be that, in your view, Apple has taken too long to produce the documents and data that it has produced and is producing.  Our teams have discussed this at length, but let me repeat the essence of our position:  Apple has produced a huge amount of custodial data, and has done an enormous amount of work to locate and prepare to produce structured data.  It has done both of these things under the very challenging conditions created by the pandemic for the past five months – challenging conditions that you have acknowledged and said that your teams shared.  Indeed, Apple has also agreed to the plaintiffs' request for a *four month* extension of the schedule in part due to those conditions.

We now appear to be very close to be ready for production of the structured data, as there seem to be only a few more issues for our teams to discuss to make that production possible.  It seems to us that going to the Court now will only slow this process down, and we do not think this is productive.  We are happy to talk with you today, if you insist, but we do not think that such a call will be productive until after we have heard back from our technical people about the issue you highlighted yesterday and last night.

Best,
Eli


**Eli Lazarus**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8340 • Fax +1 415.374.8496
ELazarus@gibsondunn.com • www.gibsondunn.com

---

**From:** Ted Wojcik <tedw@hbsslaw.com>
**Sent:** Monday, August 3, 2020 11:40 PM
**To:** Lazarus, Eli M. <ELazarus@gibsondunn.com>
**Cc:** bens@hbsslaw.com; byrd@whafh.com; Dettmer, Ethan <EDettmer@gibsondunn.com>; Richman, Cynthia <CRichman@gibsondunn.com>; Swanson, Daniel G. <DSwanson@gibsondunn.com>; Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Phillips, Harry <HPhillips2@gibsondunn.com>; Craig, Dana Lynn <DCraig@gibsondunn.com>; Dansey, Lauren <LDansey@gibsondunn.com>; robl@hbsslaw.com; shanas@hbsslaw.com; rifkin@whafh.com; guiney@whafh.com; dejong@whafh.com; warren@whafh.com; steve@hbsslaw.com
**Subject:** RE: Apple App Store Antitrust

[External Email]
Dear Eli,

Thanks for your response.  Below is some additional detail about our position that should adequately explain why the developer plaintiffs have concluded that the parties are at an impasse.  We also reiterate below our request for a phone call tomorrow at your earliest convenience, consistent with Magistrate Judge Hixson's standing order.

You ask whether it is plaintiffs' position that the single-file production Apple proposes will not be "reasonably usable."  As we have explained on several occasions, yes.  Most recently, in our July 9 letter – as well as in Ben Siegel's subsequent July 17, July 28, and July 31 emails – we explained, in detail, (1) why production in separate tables would "significantly alleviate the burden for both sides" and "ensure both that Apple's data are saved in a space-efficient manner and not incorrectly disturbed," and (2) that production in a single table would, by contrast, "very likely inflate the size of the data by many times."  *See, e.g.*, July 9 letter at 2-4.  Our July 31 email identifies relevant legal authorities, including the Advisory Committee Notes to Rule 34, which explain that "the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation."  Fed. R. Civ. P. 34(b) Advisory Comm. Notes to 2006 Amendment.  It also explains why, pursuant to those rules, Apple's data should be produced in relational tables, which "would be far less burdensome and less difficult to use efficiently in this case than a single, flat file."

Apple did not respond to our July 9 letter and subsequent emails until your July 31 letter.  In that letter, Apple rejects plaintiffs' arguments and request for production in relational tables, and has taken the position that it will produce the data in a single table.  This means the parties are at an impasse on this time-sensitive issue, which now requires resolution.

To elaborate on the developer plaintiffs' position, we have concluded after careful consideration, including on the basis of the sample finally provided to us on July 23, that the single-file format proposed by Apple is not "reasonably usable" within the meaning of the relevant authorities.  For example, Apple's conversion of data from relational tables to a single file inflates the size of the data so significantly that efficient access to and analysis of the data will be far more difficult and burdensome.  Assuming local storage and access, a hard disk with a generous bandwidth might average 600 MB per second.  If Apple produces 35 terabytes of data, each read of that data could require a significant amount of time – potentially in excess of sixteen hours.  Furthermore, developer plaintiffs contend that they are due production of data relating to distribution transactions corresponding to retail sales from foreign App Store storefronts, which, according to you, will amplify the size of the total production, and thus further degrade the usability of the data, significantly.

This is at odds with the requirements of Rule 34.  Further, in an attempt to avoid this situation, the developer plaintiffs have consistently asked for information regarding Apple's data and proposed plans for collection and production of data and documents.  Yet repeatedly, Apple's answer has been that the developer plaintiffs aren't entitled to this helpful information, and that their requests for information are attempts at impermissible discovery on discovery.  *Cf.* N.D. Cal. Checklist For Rule 26(F) Meet And Confer Regarding Electronically Stored Information (under the "Production" heading as a topic to be discussed: "The formats in which structured ESI (database, collaboration sites, etc.) will be produced."); N.D. Cal. Guidelines for the Discovery of Electronically Stored Information, Guideline 1.02 ("*The Court expects cooperation on issues relating to the preservation, collection, search, review, and production of ESI. . . .  The Court emphasizes the particular importance of cooperative exchanges of information at the earliest possible stage of discovery*, including during the parties' Fed. R. Civ. P. 26(f) conference.") (emphasis added); Guideline 2.02 ("In order to be meaningful, the meet and confer should be as sufficiently detailed on these topics as is appropriate in light of the specific claims and defenses at issue in the case. Some or all of the following details may be useful to discuss, especially in cases where the discovery of ESI is likely to be a significant cost or burden: . . .  Search and production of ESI, such as any planned methods to identify discoverable ESI and filter out ESI that is not subject to discovery, or whether ESI stored in a database can be produced by querying the database and producing discoverable information in a report or an exportable electronic file . . . .") (emphasis added).

Notwithstanding the foregoing, you state that "[p]laintiffs did not make any request that the data be produced in relational tables until July 9, after Apple had completed significant and burdensome work toward production of this

7

data." Again, this is not consistent with the record of communication between the parties. Since February, plaintiffs have repeatedly – and without substantive response – requested that Apple more clearly specify the manner in which its data is stored, as well as the manner in which it intends to produce that data. For example, by letter dated February 24, 2020, plaintiffs requested that Apple (i) identify its databases, "particularly those databases with structured data"; (ii) generate a sample of that data for review by plaintiffs; and (iii) more clearly describe the features of its relational databases. *See* February 24 letter at 4. The purpose of this was to enable plaintiffs to make "reasonable requests for additional information from Apple to explain the database[,]" and thus to further the parties' ability to meet and confer on this issue "*prior* to final production of data from a database[.]" *Id.* at 4-5 (emphasis added). Plaintiffs also requested that "[t]he parties . . . meet and confer prior to final production of data from a database, regarding the substance of the production, as well as the format of production to ensure that data is produced in a usable format." *Id.* at 5.

Apple cannot for months refuse plaintiffs' requests to describe its databases, the proposed form of production, and related request for a sample, and then assert credibly that plaintiffs' objection to the proposed form of production is untimely. Had Apple, prior to July 31, answered questions regarding the form in which it stores its data and how it proposed to produce its data, the parties would not find themselves on August 3 in the instant situation (assuming that Apple has actually already readied the production in flat form, without conferring with us first). Indeed, it was only on July 23, 2020, that Apple produced the long-sought sample of transactional data for plaintiffs' review, thus preventing them from adequately assessing (and objecting to) what you now have confirmed, as of this past Friday, is the intended format of Apple's forthcoming production.

Finally, and in any event, Apple is obligated to produce its data in a manner that complies with Rule 34 and the relevant case law. Plaintiffs believe these authorities require production here in relational tables.

We requested in my prior email that Apple make itself available for a telephone call today to discuss this issue. Apple has yet to respond to this request. We again ask for a phone call for tomorrow (Tuesday) at your earliest convenience, which we believe is consistent with Magistrate Judge Hixson's standing order. Please identify a time tomorrow that works. We further ask that Apple respond to plaintiffs' proposed briefing schedule, as previously requested.

Best,
Ted

Ted Wojcik | **Hagens Berman Sobol Shapiro LLP** | Direct: (206) 268-9329

**From:** Lazarus, Eli M. <elazarus@gibsondunn.com>
**Sent:** Monday, August 3, 2020 5:32 PM
**To:** Ted Wojcik <TedW@hbsslaw.com>
**Cc:** Ben Siegel <bens@hbsslaw.com>; byrd@whafh.com; edettmer@gibsondunn.com; crichman@gibsondunn.com; dswanson@gibsondunn.com; jsrinivasan@gibsondunn.com; hphillips2@gibsondunn.com; dcraig@gibsondunn.com; ldansey@gibsondunn.com; Rob Lopez <robl@hbsslaw.com>; Shana Scarlett <shanas@hbsslaw.com>; rifkin@whafh.com; guiney@whafh.com; dejong@whafh.com; warren@whafh.com; Steve Berman <Steve@hbsslaw.com>
**Subject:** RE: Apple App Store Antitrust

Ted, we do not agree that we are at impasse on the issue of whether the transactional data will be produced as a single table or as multiple relational tables. We are certainly willing to discuss this with you further, and we want to understand your position with respect to this issue.

We note that plaintiffs' RFPs requested that "[t]o the extent responsive DOCUMENTS reside on databases and other such systems and files, [Apple] produce the relevant database in useable form and/or permit access for inspection, review and extraction of responsive information." And as you note, "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or *in a reasonably usable form* or forms." Fed. R. Civ. P. 34(E)(ii). Apple has worked diligently to prepare transactional data for

production in a usable form that will allow plaintiffs to access and search the data.  Plaintiffs did not make any request that the data be produced in relational tables until July 9, after Apple had completed significant and burdensome work toward production of this data.

You now argue that data produced in relational tables "would [be] much more efficient and 'user-friendly.'"  But "more efficient and user-friendly" is not the standard.  Apple is obligated to produce the data in a reasonably usable form and is prepared to do so.  Your correspondence does not clearly take the position that a single-file production will not be reasonably usable.  Do you mean to take that position, and if so, can you please explain how a single, searchable table containing all of the produced data would not be reasonably usable?  Do you believe that there is any responsive and relevant information that will be missing or inaccessible because of this production format?  If so, please provide the specifics of your position.

As noted, we are certainly willing to explore this issue further with you.  We are available to speak with you, but we believe our discussion would benefit from further clarification of plaintiffs' position as requested above.  We also look forward to hearing other feedback that you may have on our sample data production.


**Eli Lazarus**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8340 • Fax +1 415.374.8496
ELazarus@gibsondunn.com • www.gibsondunn.com

---

**From:** Ted Wojcik <tedw@hbsslaw.com>
**Sent:** Monday, August 3, 2020 10:32 AM
**To:** Lazarus, Eli M. <ELazarus@gibsondunn.com>
**Cc:** bens@hbsslaw.com; byrd@whafh.com; Dettmer, Ethan <EDettmer@gibsondunn.com>; Richman, Cynthia <CRichman@gibsondunn.com>; Swanson, Daniel G. <DSwanson@gibsondunn.com>; Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Phillips, Harry <HPhillips2@gibsondunn.com>; Craig, Dana Lynn <DCraig@gibsondunn.com>; Dansey, Lauren <LDansey@gibsondunn.com>; robl@hbsslaw.com; shanas@hbsslaw.com; rifkin@whafh.com; guiney@whafh.com; dejong@whafh.com; warren@whafh.com; steve@hbsslaw.com
**Subject:** RE: Apple App Store Antitrust

[External Email]
Dear Eli and Apple Counsel:

Thank you for your letter on July 31 responding to some of this issue raised in plaintiffs' July 9 data letter and follow up emails.  Though we believe Apple's responses are incomplete and require further follow up, it appears that we have reached an impasse on the critical issue of how Apple proposes to produce the data.  This issue is time-sensitive.  Thus, we need to proceed to the five page joint letter briefing under Magistrate Judge Hixson's standing order now.

Below, we describe the issue for dispute and plaintiffs' proposed briefing schedule.  We ask for Apple's agreement or any proposed modification by close of business today.  To confirm the parties' positions, and consistent with Judge Hixson's requirements, we also ask that you make yourself available today for a phone call on this issue.

**Issue for resolution**: Plaintiffs move for Apple's ultimate production of responsive and relevant data in multiple relational tables - i.e., the relational tables in which Apple itself stores the data.  Apple declines to do so, and plans to take the relevant and responsive data from those multiple tables and convert it into a single table for production.

**Proposed briefing schedule** (in accordance with https://www.cand.uscourts.gov/wp-content/uploads/judges/hixson-tsh/TSH-Discovery-Standing-Order.pdf, under point (2)):  (1) The parties exchange each side's 2.5 page portion of the joint statement and any exhibits on Monday, August 10, 2020 at 5 pm PST (plaintiffs will also send the proposed cover page at that time); (2) the parties exchange final versions of their 2.5 page portion and exhibits, incorporating responses to the other side's initial draft, on Wednesday, August 12, 2020 at 12 pm PST; and (3) after each side's portion with exhibits and with the cover page are combined into a final version by plaintiffs' counsel's staff, and circulated, each side gives final approval and plaintiffs will file.

Again, plaintiffs request Apple's agreement or any proposed modification to this schedule by close of business today.  While we will consider any such proposed modification, we believe that our proposed briefing schedule for a single-issue, 2.5 page joint discovery letter is sufficient.  Moreover, plaintiffs have sought resolution of this issue for some time; given the need for timely production of data, it is time-sensitive.  Thus, plaintiffs will be hesitant to agree to any extension to the briefing schedule, which we believe would be prejudicial.

Best,
Ted

Ted Wojcik | **Hagens Berman Sobol Shapiro LLP** | Direct: (206) 268-9329

---

From: Lazarus, Eli M. <elazarus@gibsondunn.com>
Sent: Friday, July 31, 2020 9:28 PM
To: byrd@whafh.com; dejong@whafh.com; Rob Lopez <robl@hbsslaw.com>; Ben Siegel <bens@hbsslaw.com>; Ted Wojcik <TedW@hbsslaw.com>
Cc: crichman@gibsondunn.com; dswanson@gibsondunn.com; vlewis@gibsondunn.com; edettmer@gibsondunn.com; dcraig@gibsondunn.com; ldansey@gibsondunn.com
Subject: Apple App Store Antitrust

Counsel,

Please see the attached correspondence.

Very best,
Eli


**Eli Lazarus**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8340 • Fax +1 415.374.8496
ELazarus@gibsondunn.com • www.gibsondunn.com

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.