# EXHIBIT 8

GIBSON DUNN

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Ethan Dettmer
Direct: +1 415.393.8292
Fax: +1 415.374.8444
EDettmer@gibsondunn.com

Client: 03290-00123

October 27, 2020

VIA ELECTRONIC MAIL

Robert F. Lopez
Hagens Berman Sobol Shapiro LLP
1301 2nd Ave. #2000
Seattle, WA 98101

Rachele Byrd
Wolf Haldenstein Adler Freeman & Herz LLP
750 B St., Ste. 1820
San Diego, CA 92101

Re: *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR; *Cameron v. Apple Inc.*, No. 4:19-cv-03074-YGR

Dear Rob and Rachele:

I am writing in response to your October 22, 2020 letter. While the purpose of your letter is ostensibly to propose deposition dates for three witnesses, you misstate the history and current status of discovery, and misread the Coordination Order that has already been entered, in these cases. *See* N.D. Cal. Guidelines for Professional Conduct, 8.a. ("A lawyer should not draft letters (i) assigning a position to an opposing party that the opposing party has not taken, or (ii) to create a 'record' of events that have not occurred.").

**A. Apple Has Satisfied Its Discovery Obligations And Continues To Do So**

**1. Apple extensively and responsively engaged with Plaintiffs, producing millions of documents by July 31, 2020**

Plaintiffs claim that, in responding to discovery, Apple has "essentially" said "that it will fulfill its obligations in manners of its choosing, and that plaintiffs have very little to say about it." Nothing could be further from the truth. As you are well aware, and as the record amply demonstrates, Apple has (i) consistently informed Plaintiffs what it intends to do; (ii) negotiated extensively with Plaintiffs about those plans; (iii) made changes to its production plans at Plaintiffs' request; (iv) investigated Plaintiffs' questions and provided answers and further documents in response; and (v) produced huge data samples to Plaintiffs to facilitate negotiations and more efficient productions. Where the parties reached agreement regarding

how to proceed, Apple produced documents accordingly, expending enormous resources to do so. Where the parties have not agreed and Plaintiffs have gone silent, Apple has produced millions of documents in accordance with its last-discussed position (*e.g.*, relying on the most recent version of the ESI protocol to determine which metadata fields to include). In light of the over 200 printed pages of meet and confer correspondence between the parties, for you to now claim that "plaintiffs have had very little to say about" Apple's discovery efforts is, frankly, disingenuous; and in light of all of these facts, your assertion that Apple has conducted discovery "in manners of its choosing" has no basis in the record.

Briefly recapping the relevant history: Consumer Plaintiffs propounded 30 Requests for Production on October 10, 2019. Developer Plaintiffs followed shortly thereafter, propounding 89 Requests for Production on October 17, 2019.[1] Apple served responses on November 12, 2019 and November 18, 2019, respectively. On December 20, 2019, Apple proposed 14 custodians.

The parties began negotiating a draft ESI protocol in October 2019. After many rounds of redlines, Apple sent Plaintiffs the most recent version on February 19, 2020. The parties then exchanged three emails regarding specific points in the protocol, but Plaintiffs never responded with their own redlines to the draft. As such, Apple relied on the February 19 version of the ESI protocol to begin custodial document productions on February 27.[2] Over the course of the next five months, Apple produced 63 volumes, reaching substantial completion on July 31, 2020.[3] The total number of documents produced as of that date is 3,585,471, which amounts to 7,181,345 pages. Apple has since made several clean-up productions and intends to make a few more; however, these amount to a fraction of the overall total documents produced and have no impact on whether Apple met the substantial completion deadline. *See* Section B.3.

Throughout this process, Apple has engaged with Plaintiffs on many issues. These efforts can be summarized as follows:

- **<u>Custodians</u>:** On February 21, 2020, and at Plaintiffs' request, Apple agreed to add its fifteenth custodian, Matt Fischer. On February 25, 2020, Plaintiffs

---

[1] Consumer Plaintiffs propounded an additional 23 Requests for Production on September 1, 2020, which Apple responded to on October 1, 2020.

[2] Apple previously made one production on January 14, 2020, consisting of 232 media files and non-custodial documents.

[3] *See* **Exhibit A: Apple's Document Production Volume Table**. Apple has produced a privilege log 45 days after each of these custodial productions.

requested the addition of nine others, including Tim Cook, Steve Jobs, and Apple's CFO Luca Maestri. Ten days later, Apple responded and explained why the addition of these individuals as custodians would be inappropriate. On September 14, 2020—over *six months later* and a month and a half after Apple reached substantial completion of its document productions—Plaintiffs again raised the issue of additional custodians and indicated that they may seek to add more. Apple remains willing to meet-and-confer with Plaintiffs on the subject of additional custodians, but only if the class plaintiffs coordinate with Epic; any delay in this respect is attributable entirely to Plaintiffs.

- **Cost Documents:** On July 9, 2020, Plaintiffs sent a letter alerting Apple that some of the documents Apple had produced contained links to what appeared to be budget and cost documents that had not been produced as attachments. Apple told Plaintiffs that it was investigating these questions, which involved complicated technical issues. Plaintiffs sent several emails with more detailed questions throughout August, to which Apple provided answers on September 10, 2020. Apple continued to share information with Plaintiffs as its investigation progressed, looking into particular questions Plaintiffs raised. *See* E. Lazarus emails dated September 18 and September 22 and letters dated October 9 and October 25. As a result of this investigation, Apple produced additional cost-related documents on September 20, 2020 and October 9, 2020.[4] The parties continue to meet and confer regarding this narrow subset of documents—indeed, Apple responded to Plaintiffs' October 20 letter on this subject on October 25, and will respond to Plaintiffs' October 23 letter regarding questions about "cost databases." Apple aims to conclude its investigation into these issues by November. *See* E. Lazarus email dated October 22.[5]

---

[4] Meanwhile, on August 14, 2020, Apple wrote to Plaintiffs stating that its "review of Developer Plaintiffs' productions has identified certain documents that contain embedded links to documents that were not included in the productions and appear directly relevant to the litigation" and listed those documents by Bates number. E. Lazarus email dated August 14, 2020. Developer Plaintiffs responded, "We are investigating these documents now and are working to respond in more detail as soon as possible." T. Wojcik email dated August 18, 2020. But Plaintiffs have never responded in more detail or produced the linked documents that Apple identified.

[5] Plaintiffs take issue with Apple's proposed target of November without specifying what prejudice such a completion date would impose. As has been conveyed over and over throughout the parties' discussions and correspondence on the cost documents, the issue is complicated and has taken time and effort to investigate. Apple is thoroughly investigating the many questions Plaintiffs have raised and continue to raise.

- **<u>Documents Produced to Governments</u>:** Among the documents Plaintiffs sought were *all* documents produced by Apple to governmental bodies, including the House Judiciary Committee ("HJC"). In responding to Plaintiffs' document requests on November 12, 2019, Apple agreed to and did produce all relevant documents that it had produced to the HJC, as Plaintiffs are not entitled to documents that have no relevance to this litigation, including those related to foreign transactions or foreign governments' investigations relating to those foreign transactions. Apple informed Plaintiffs on June 11, 2020 of the categories of documents requested by HJC that Apple considers relevant to the claims and defenses in this litigation. *See* E. Lazarus email dated June 11, 2020. Plaintiffs let this issue lie until more than four months later, when they sent Apple a letter over the weekend on October 24. Apple will promptly respond, but once again the delay here is entirely attributable to Plaintiffs.

**2. Apple stands ready to produce its transactional data**

From the outset, Apple's production of requested transactional data has been the subject of extensive negotiations between the parties. This was necessary given the enormous scope of the project, both as to the volume of data and the amount of work required to collect and produce it in a useable format. Indeed, Apple made clear from the beginning that Plaintiffs were requesting a vast amount of data; the final production is likely to be in the range of approximately 65 ***billion*** rows of data. The parties began these discussions in February 2020 with an eye toward determining what data fields were relevant to the analysis needed for this case, what those data fields mean, and how those data fields were best produced.

The parties conducted months of extensive back-and-forth in writing and over the phone. To facilitate further discussions and make the ultimate production of massive amounts of data as efficient and usable as possible, on July 23, 2020, Apple produced a sample of 100,000 rows of transactional data, including 28 different data fields in each row. At Plaintiffs' request, Apple investigated Plaintiffs' questions and provided a document created especially for Plaintiffs that explained the meaning of values in certain data fields (rather than insisting that Plaintiffs ask these questions at deposition, as would ordinarily be required).

On August 7, 2020, Plaintiffs asked Apple for a larger second sample of 100 million records in a different production format ("relational tables" as opposed to "flat tables"). Though producing data in relational tables required significant engineering work to assemble the tables, conduct quality control, and otherwise prepare the data for production in this format, Apple agreed to produce this sample in relational tables, and did so on September 6, 2020. Over three weeks later, Plaintiffs sent Apple a 12-page letter with questions on the second

sample, many of which Apple had already answered in prior correspondence. Further, Plaintiffs' letter raised over a dozen brand-new requests for additional data that was not previously sought by their Requests for Production, propounded nearly one year earlier.

Apple's October 12, 2020 and October 23, 2020 responses to Plaintiffs' letter made this clear: Apple has answered all of Plaintiffs' questions and is ready to produce the full data set of 65 billion records. It is up to Plaintiffs to pull the trigger, recognizing that this production will be made only once given the size and engineering resources required to do so.

**B. Plaintiffs' Discovery "Concerns" Have No Merit**

Plaintiffs raise various purported "concerns" about Apple's discovery efforts. None of these "concerns" withstand any degree of scrutiny.

**1. Validation under TAR 2.0 occurs upon completion of document review**

Plaintiffs claim they now "question the comprehensiveness of Apple's responses to plaintiffs' discovery requests" on the grounds that Apple has not yet conducted validation under TAR 2.0. But an ongoing validation is not contemplated by the parties' negotiated ESI protocol, which provides that validation will take place when Apple's document review is complete. *See* February 19, 2020 [Draft] ESI Protocol at Section B ("Once a recall rate of 75% is achieved and confirmed by an SME the review will cease.").

Plaintiffs appear to conflate validation with quality control. As we have previously explained, while Apple has been conducting various robust quality control processes throughout the course of the review and production, validation is a distinct exercise that does not commence until the review is complete. While Apple complied with the parties' stipulated July 31, 2020 substantial completion deadline, it continues to wrap-up discrete quality control and review and expeditiously make those related productions. *See* Section B.3. As such, it is not yet time for validation, and Plaintiffs have no grounds to question Apple's discovery responses on this (or any other) issue.

**2. Apple's document productions adequately respond to Plaintiffs' requests**

Plaintiffs next allege that they have "evidence" that "Apple's productions in response to plaintiffs' requests have not been adequate under the standards of the civil rules," though they do not specify what that evidence is. As detailed above, Apple has responded to Plaintiffs' "copiously detailed letters and emails" with equally detailed correspondence and lengthy telephone discussions. Whenever Plaintiffs have raised a concern, Apple has responded with an explanation as to why it believed its production was appropriate and often

agreed to investigate further, provide more information, or produce documents in different ways. Thus, Plaintiffs' vague and unsupported accusations about the adequacy of Apple's document productions have no basis in the record, and certainly never have been conveyed to Apple.

For example, when Plaintiffs took issue with Apple's production of slip sheets in place of a certain group of documents, Apple undertook extensive efforts to resolve the issue and re-produced approximately 5,000 documents to alleviate Plaintiffs' concerns. Further, and as noted above, Apple responded to Plaintiffs' requests for documents produced to governments by producing all relevant documents that Apple produced to the HJC. At Plaintiffs' request, Apple informed Plaintiffs on June 11, 2020 of the categories of documents requested by HJC that Apple considers relevant to the claims and defenses in this litigation.[6] *See* E. Lazarus email dated June 11, 2020.

The *single* issue specifically identified in your October 22 letter is the parties' ongoing discussion regarding cost-related data and documents. *See* E. Lazarus Letter dated October 25 (responding to Plaintiffs' October 20 Letter regarding purported deficiencies in Apple's production of cost documents that details information learned through Apple's investigation and additional documents produced as a result of same). The reason for this is plain—no other disputes exist.[7] Apple expects that the parties can work through this issue, as they have all the others, without involving the Magistrate Judge. And your letter does not identify any other issue that even remotely warrants motion practice.

**3. Apple met the July 31, 2020 substantial completion deadline**

Your letter is rife with accusations of delay, and claims that "Apple has undeniably breached the agreed and ordered July 31, 2020 substantial completion deadline for production" resulting in prejudice to Plaintiffs. Plaintiffs are wrong. As a threshold matter, Plaintiffs' characterization of the substantial completion deadline as an "order" is not accurate; rather, Apple represented that it expected to reach substantial completion by July 31, 2020, in a

---

[6] As also noted above, Plaintiffs dropped this issue for over four months until they sent Apple a letter on Saturday, October 24 seeking to revive it.

[7] As discussed in Section A.2., the parties continue to negotiate Apple's production of transactional data, which is a separate, time- and labor- intensive process that has been the subject of extensive negotiation from the start. To the extent Plaintiffs claim there is still a dispute regarding Apple's documents produced to governments, Plaintiffs' failure to pursue this issue for over four months only to revive it this weekend does not make it "live." On May 7, 2020, Apple began producing relevant documents that it had produced to HJC, and Plaintiffs said nothing. Their decision to revisit this issue at the eleventh hour is merely a tactic to create production "deficiencies" that do not exist.

"whereas" clause of the parties' May 27, 2020 stipulation regarding an extension of the litigation schedule. The fact that Apple stated this goal—which it has met—in a stipulation entered by the Court, does not turn that goal into a Court-ordered deadline. Consumer ECF Nos. 208, 209; Developers ECF Nos. 92, 93.

And Apple did substantially complete its production by July 31, 2020. By that date, Apple produced 3,585,471 documents, consisting of 7,181,345 pages. The details regarding the dates and volume of the productions amounting to these totals is summarized in the chart attached. *See* **Exhibit A**. And—while Apple continues to wrap up quality control review to produce remaining responsive documents—these "clean-up" productions amount to only a small percentage of the total volume of Apple's document productions in this case. Since July 31, Apple has produced only 107,785 documents,[8] a mere 3% of its total productions. These contained, in part, documents produced in response to Plaintiffs' own later-stated concerns. Indeed, Apple re-produced approximately 5,000 documents containing source code in response to Plaintiffs' questions, so these documents were not actually "new." Additionally, Apple produced numerous documents in connection with its ongoing investigation regarding cost and expense documents, which the parties did not begin meeting and conferring about until *September*. *See* E. Lazarus letter dated October 25. Thus, to the extent Plaintiffs have received so-called "critical material" since July, it has been the result of Apple's diligence in responding to Plaintiffs' own inquiries and Apple's prioritization of responding to Plaintiffs' many demands, over the clean-up review and quality control work that would lead to actual completion of its productions.

**4. Plaintiffs—not Apple—have held up production of transactional data**

As Plaintiffs are well aware, based on the parties' many in-depth discussions, Apple's production of 65 billion rows of requested transactional data is a complicated, expensive, and time-intensive endeavor. Apple already provided Plaintiffs two samples of such data—one of 100,000 rows and then one of 100 million rows—at Plaintiffs' request and in order to make the ultimate production more efficient and useful. The many data fields and various manners in which this data can be compiled and presented necessarily have involved extensive negotiations concerning what data would be included and exactly how it would be produced. This has required a tremendous amount of work within Apple by inside and outside counsel, working in concert with Apple engineering and other teams to gather and

[8] As Apple has repeatedly explained to Plaintiffs, its September 20 production of 73,818 documents had a higher page count due to the HTML formatting in roughly 23,000 documents containing relatively small amounts of responsive information, which accounts for some 1.5 million pages of the 1,751,859 total pages in the production.

process this data for production, and respond to Plaintiffs' many questions and demands. In short, the production of transactional data is as far as can be from just "pushing a button."

In response to the sample data sets of 100,000 records and 100 million records (on July 23, 2020 and September 6, 2020, respectively), Plaintiffs sent lengthy correspondence weeks later, re-asking questions already answered, re-hashing issues already discussed, and making *entirely new* requests for additional data that Plaintiffs could have asked for months earlier. *See* Section A.2. In light of this history, Plaintiffs cannot blame Apple for delays in producing this information.

In any event, Apple responded to Plaintiffs' September 29 letter on October 12 and October 23, stating that it has now answered all of Plaintiffs' questions and is ready to produce 65 billion records. Apple is awaiting Plaintiffs' response.

**C. Plaintiffs Fail To Demonstrate Any Prejudice Under The Court-Ordered Schedule**

Plaintiffs' implication that Apple's "pace of productions" has resulted in delays impacting Plaintiffs' ability to meet the February 3, 2021 deadline for the filing of class certification motions is false. As already explained, Apple met the agreed-upon substantial completion target of July 31, 2020, and the facts do not support Plaintiffs' manufactured alternative story.[9] To the extent Plaintiffs have not begun taking depositions, this is Plaintiffs' own choice. Despite having nearly 3.6 million Apple documents for almost three months—and

[9] Plaintiffs state that some of the "delays" they identify "may be due in part to COVID" and claim that they have "had the pandemic in mind as [they] weighed at various turns whether to give Apple more time to respond to various communications, to schedule calls, or produce responsive materials." Apple shares Plaintiffs' concerns, and has been accommodating to Plaintiffs in this regard, including agreeing to the delay in the class certification briefing schedule that led to the current deadline. And Plaintiffs have hardly given Apple reasonable deadlines in which to respond to their numerous demands. *See, e.g.*, T. Wojcik and R. Byrd letter dated September 29, 2020 (a twelve-page letter of detailed questions on transactional data stating, "We ask that Apple respond no later than … one week from today."); T. Wojcik email dated September 10, 2020 ("Below, we describe the issues for resolution and Plaintiffs' proposed briefing schedule for a motion to compel. We ask for Apple's agreement or any proposed modification by tomorrow at noon."); T. Wojcik email dated August 18, 2020 (demanding that Apple provide a sample of *100 million* records of transactional data one week later); T. Wojcik email dated August 10, 2020 ("we ask that you respond to the questions in Sections I and II by tomorrow, if possible.").

*(Cont'd on next page)*

many of those documents for months longer—Plaintiffs have not taken a single deposition.[10] The blame for this lies with Plaintiffs.[11]

Thus, Plaintiffs' assertion that they have been prejudiced by Apple's "delayed" document productions and "squeezed" for time in preparing for depositions holds no weight. Not only have Apple's post-July 31 productions amounted to a small percentage of the total number of documents produced to date, but many of the documents being produced are a result of Plaintiffs' own requests (*e.g.*, Apple's re-production of documents containing source code, and additional productions of cost-related documents). Plaintiffs appear to take the position that *all* document discovery must be completed before they can begin taking depositions; however, that is neither standard practice, nor is it the law. *See Eclipse Grp. LLP v. Target Corp*., No. 15CV1411-JLS (BLM), 2017 WL 2231316, at *13 (S.D. Cal. May 19, 2017) (rejecting argument that movant was unable to timely notice depositions because defendants had not completed their document production).

Instead, Plaintiffs must show that they will be prejudiced in some tangible way by not having certain documents prior to taking a particular deposition. While Plaintiffs say that they "reserve the right to seek to take further testimony from deposed witnesses, should later productions give rise to needs for further testimony" they have to show a specific reason why a later production would warrant re-deposing a witness, a bar they have not even tried to meet. *See Love v. Permanente Med. Grp*., C–12–05679 WHO (DMR), 2014 WL 491257, at *2 (N.D. Cal. Feb. 4, 2014) (party seeking to reopen deposition must obtain leave of court and show good reason); *Williams v. Fire Sprinkler Assocs. Inc*., No. 15 Civ. 3147, 2017 WL 1156012, at *2 (E.D.N.Y. Mar. 27, 2017) (similar); *Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, No. 8:10CV187, 2015 WL 1004359, at *2 (D. Neb. Mar. 5, 2015) (similar).

---

[10] Apple, on the other hand, has already taken two depositions in this matter, even though its deadline for a class certification opposition is not due until after Plaintiffs' moving brief.

[11] Plaintiffs are similarly to blame for any delay in Apple's production of transactional data, which Apple stands ready to produce. *See* Section B.4. But Plaintiffs say that this data is necessary for "calculations Plaintiffs' experts make using this data." *See* T. Wojcik and R. Byrd letter dated September 29, 2020 ("Information about which transactions were included or excluded is relevant to whether calculations Plaintiffs' experts make using this data are based on a complete and/or 'representative' sample."). Accordingly, the timing of this production should have no effect on Plaintiffs' depositions of fact witnesses. And indeed, it is hard to imagine how a fact witness could possibly be deposed on a 65 billion record database. Nor do Plaintiffs establish how the production of transactional data will prejudice them under the current class certification deadline more than three months from now, should they respond to Apple's most recent correspondence and approve the production of this data.

Most critically, Plaintiffs provide no explanation as to how these depositions are relevant to their class certification motion. The discovery cutoff date in the class cases is not until sometime in Q3 2021, at the earliest. Absent a showing from Plaintiffs that they are prejudiced as to *class certification*, a delay in the current schedule is not warranted. The Court recognized this point during the October 19 Case Management Conference ("CMC"), noting that discovery for the purposes of class certification is "not the be all and end all." October 19, 2020 CMC Tr. at 32:2-3. Plaintiffs' neglect in pursuing class certification depositions until now is wholly of their own making.

Nevertheless, Apple has worked with Plaintiffs to be responsive to their discovery needs. In addition to undertaking a diligent investigation on the cost documents issue, Apple has explained that, to the extent documents remain to be produced, it will prioritize productions for certain custodians that Plaintiffs have identified for depositions in the coming months and is already re-prioritizing its review and production to do so.[12]

Apple continues to cooperate in an effort to get discovery done as quickly and effectively as possible. These efforts are borne out by the facts—millions of documents and pages produced in a relatively short amount of time, and extensive and complicated negotiations completed (or nearly completed) over the production of 65 billion rows of transactional data, without a single discovery dispute brought before the Magistrate Judge.

Apple's willingness to abide by the schedule previously entered by the Court—including a previous extension requested by Plaintiffs—can hardly be characterized as "gamesmanship." Rather, Apple's commitment to the current schedule is based on fundamental fairness—not requiring Apple's experts to complete their work of opposing class certification while they are working on trial in the Epic matter. *See* October 19, 2020 CMC Tr. at 31:4-9 ("MR. PERRY: We do oppose the extension because what the class plaintiffs are proposing would put class certification motions right before trial, essentially making the experts who would be appearing at the Epic trial have to oppose a class certification motion simultaneously and basically throwing havoc into the schedule that is already there.").

[12] Apple intends to produce more documents in the coming weeks and has already begun prioritizing the remaining custodial productions from Matt Fischer, Ron Okamoto, and Phillip Shoemaker, the three individuals whom Plaintiffs have sought to depose first. This is in line with Apple's representation that it "will also prioritize the production of documents for particular witnesses as feasible, and to the extent plaintiffs give sufficient notice of their depositions." J. Srinavasan letter dated October 22, 2020. Rather than welcome this effort to cooperate and make discovery more efficient, Plaintiffs characterize this offer as "underscor[ing] the points we are making regarding delay and its unfortunate consequences" without specifying what "delay" they are referring to or its "consequences."

More importantly, the Court made clear to Plaintiffs during the CMC on October 19, 2020 that it would prefer to have the class certification motion fully briefed before the Epic trial commences:

> "THE COURT: So, Mr. Lopez, I can tell you that when I put the [Epic] schedule in place I had [the class] schedule in mind, and I thought it would behoove the Court to have all of [the class certification] briefing in [by the current deadline]. . . . I anticipated it being done so that when I went into trial [in Epic] on this particular piece, I would have the full scope for class certifications in mind . . . ."

October 19, 2020 CMC Tr. at 31:14-32:1. Indeed, when Apple and Epic presented their proposed schedules to the Court, the class plaintiffs didn't say anything about getting "jammed" or request an extension or other relief. It is thus hardly surprising that the Court structured the Epic schedule around the extant class schedule; and it is unfair to both the Court and Apple for the class plaintiffs now to seek to upend this carefully synchronized set of events.

**D. The Coordination Order Governs Discovery As To Both Plaintiffs And Epic**

Turning at last to depositions, Plaintiffs contend that, under paragraph 3 of the Coordination Order in this case, "consumers and developers are entitled to 10 hours to conduct jointly-noticed depositions—without factoring in the time that Epic will need to depose those same deponents when it is ready to do so." T. Wojcik letter dated October 22, 2020 at 3. But this is not what the Coordination Order says. Instead, it says that, as a default, "[w]itnesses should only be deposed *once*" and "*[a]ll parties* in the Related App Store Actions who wish to question a witness should participate in a single deposition." Consumer ECF No. 194 and Developers ECF No. 80 at ¶ 3 (emphasis added). Paragraph 7 removes any doubt that "all parties" means exactly that: "Any cases that are subsequently related to the Related App Store Actions are to be bound by these protocols governing the coordination of discovery, as well as the stipulations regarding ESI and expert discovery." *Id.* at ¶ 7. Thus, Epic became subject to the deposition limitations set out in paragraph 3 of the Coordination Order when the Epic litigation was related to the App Store Actions (and notably, Plaintiffs did not oppose that relation). Plaintiffs cannot now complain about an Order already entered in the related cases.[13]

---

[13] This was explicitly discussed and decided during the October 7, 2019 CMC:

*(Cont'd on next page)*

GIBSON DUNN



While Plaintiffs contend that this reading of the Coordination Order is "unreasonable" and at odds with the Court's statements at the October 19, 2020 CMC, the opposite is true. Indeed, when Apple stated that the Coordination Order applies during the October 19, 2020 CMC, none of the Plaintiffs objected. Nor could they. Indeed, Developer Plaintiffs' counsel indicated his agreement that this is the case.

> MS. RICHMAN: To Mr. Siegel's concern about staying in the loop on the Epic discussions, that's provided for in the coordination order. There is a specific provision of that that deals with, you know, coordination of discovery among the related cases of which Epic is now one.
>
> * * * * *
>
> MR. LOPEZ: But as the Court observed, yes, of course, there are certain instances where the consumers have said we'll stand down for now, but really because we have been so embroiled, all the parties, in discovery, there are very many open issues, I'd say, and I think Epic is probably going to want to get involved in the resolution of those. As Ms. Richman has said, she believes that's indicated by the coordination order, and you know, I think that's probably what will have to happen, is we try to resolve some of these issues to the extent that they overlap with Epic's claims.

October 19, 2020 CMC Tr. at 24:5-24:18 and 25:18-26:2 (emphasis added).

And, while the Court directed the parties to meet and confer on whether certain witnesses should be deposed more than once, the Court never stated—as your letter seems to suggest—

---

> "MR. BERMAN: The issue with paragraph 3 is the following: Although we are willing to coordinate, these are two separate cases. Under the federal rules, we would get seven hours for deposition, these guys would get seven hours for deposition.
>
> THE COURT: Correct.
>
> MR. BERMAN: Apple wants to say one dep, seven hours both cases, and we're not ready to live with that yet.
>
> THE COURT: All right. Ten.
>
> MR. BERMAN: Ten?
>
> THE COURT: Ten.
>
> MR. BERMAN: Fine. Done."

October 7, 2019 CMC Tr. at 10:5-16. *See* Consumer ECF No. 194 and Developers ECF No. 80 at ¶ 3.

that the other provisions of the Coordination Order no longer apply, that plaintiffs are no longer bound by the 10-hour deposition limit set forth in the Coordination Order, or that class plaintiffs can unilaterally decree that they will use all 10 hours without the agreement of Epic or Apple. Quite the contrary, the Court was explicit that the "aggressive schedule" in this case requires all of the parties to "work not only cooperatively, but . . . *efficiently*." *Id.* at 5:19-23 (emphasis added). Apple expressly commented at the same hearing that "there is a coordination order that we believe governs the Epic case, and it has already been entered by Your Honor, which requires the exact sort of efficiency that you have described." *Id.* at 22:5-8. Neither the class plaintiffs nor Epic objected to this statement when we were all before the Court. In short, Plaintiffs agreed to the Coordination Order in October 2019, and agreed to it again a year later in October 2020. To the extent Plaintiffs seek to challenge its applicability now, they must take that up with the Court.

Consistent with the Court's direction, Apple attempted to work cooperatively with plaintiffs and offer a compromise. Apple told Plaintiffs and Epic that it would agree to the re-deposition of up to 5 witnesses and offered to discuss extending the 10-hour limitation as to particular witnesses during an October 21, 2020 meet and confer with Plaintiffs. J. Srinivasan letter dated October 22, 2020. Not only did Plaintiffs reject this compromise, but they had no counterproposal of their own, other than that Apple agree to push back the class certification briefing schedule—a proposal that Apple had already rejected. *See id.*; E. Dettmer email dated October 16, 2020.

Again, Apple takes the Court's mandate to coordinate seriously and is more than willing to continue conferring with Plaintiffs. To the extent Plaintiffs' position is that modifications to the Coordination Order are necessary for any specific witnesses now that Epic is a party to the related actions, Apple will consider any joint proposal by Plaintiffs and Epic as to how a given deposition should proceed that is presented to Apple sufficiently in advance of the deposition. Consumer ECF No. 194 and Developers ECF No. 80 at ¶¶ 3, 7. In the absence of an agreement by Epic and Plaintiffs, which Apple also assents to, or an order from the Court before the witness is first sworn for deposition, the Coordination Order dictating one day of deposition for 10 hours governs. Apple has expressed no view as to how Plaintiffs and Epic should split their time and, indeed, has none. It is up to Plaintiffs and Epic to determine how they will use the 10 hours among themselves or approach Apple with an alternate proposal should they decide that is necessary.[14] This is the process contemplated by

[14] Apple notes that, by the late-November deposition dates proposed by Plaintiffs, Epic will have already had access to the *Cameron* production for more than six weeks, with only four weeks remaining for document discovery in *Epic*. Although six weeks is ample time to prepare for a deposition, Apple remains ready to make the Apple witnesses requested by Plaintiffs (up to five total) available for re-deposition by Epic. But

*(Cont'd on next page)*

the Coordination Order agreed-to by Plaintiffs and entered by the Court as an order. They are required to follow it.

**E. Plaintiffs' Requested Depositions**

We are looking into available dates for the depositions of Matt Fischer and Ron Okamoto, and will be in touch very shortly regarding scheduling these depositions. Should Plaintiffs proceed with a given deposition *without* Epic's participation if no compromise is reached, they may only do so after obtaining Epic's affirmative consent that Epic will not seek to re-depose the witness. If Plaintiffs wish to depose Phillip Shoemaker, they will need to serve him with a subpoena.

Sincerely,

Ethan Dettmer

EDD/eml

104188227.10

again, coordinating on which witnesses will need to be re-deposed and how to allocate examination time (before any deposition goes forward) is the responsibility of Plaintiffs and Epic, not Apple.

**Exhibit A: Apple's Document Production Volume Table**

| Date Produced | Volume | ProdRange | Doc Count | Page Count |
|---|---|---|---|---|
| 1/14/2020 | APL-APPSTR_001 | APL-APPSTORE_00000001 - APL-APPSTORE_00029682 | 232 | 29,682 |
| 2/28/2020 | APL-APPSTR_002 | APL-APPSTORE_00029683 - APL-APPSTORE_00062930 | 13,616 | 33,248 |
| 4/3/2020 | APL-APPSTR_003 | APL-APPSTORE_00062931 - APL-APPSTORE_00218307 | 31,455 | 155,377 |
| 5/7/2020 | APL-APPSTR_004 | APL-APPSTORE_00218308 - APL-APPSTORE_00351115 | 50,164 | 132,808 |
| 6/2/2020 | APL-APPSTR_005 | APL-APPSTORE_00351116 - APL-APPSTORE_00433111 | 44,668 | 81,996 |
| 6/2/2020 | APL-APPSTR_006 | APL-APPSTORE_00433112 - APL-APPSTORE_00493873 | 28,317 | 60,762 |
| 6/2/2020 | APL-APPSTR_007 | APL-APPSTORE_00493874 - APL-APPSTORE_00562637 | 68,764 | 68,764 |
| 6/2/2020 | APL-APPSTR_008 | APL-APPSTORE_00562638 - APL-APPSTORE_00632373 | 69,736 | 69,736 |
| 6/2/2020 | APL-APPSTR_009 | APL-APPSTORE_00632374 - APL-APPSTORE_00701665 | 69,292 | 69,292 |
| 6/2/2020 | APL-APPSTR_010 | APL-APPSTORE_00701666 - APL-APPSTORE_00771993 | 70,328 | 70,328 |
| 6/17/2020 | APL-APPSTR_011 | APL-APPSTORE_00771994 - APL-APPSTORE_00841950 | 69,957 | 69,957 |
| 6/17/2020 | APL-APPSTR_012 | APL-APPSTORE_00841951 - APL-APPSTORE_00916249 | 74,299 | 74,299 |
| 6/17/2020 | APL-APPSTR_013 | APL-APPSTORE_00916250 - APL-APPSTORE_00987055 | 70,806 | 70,806 |
| 6/17/2020 | APL-APPSTR_014 | APL-APPSTORE_00987056 - APL-APPSTORE_01045377 | 58,322 | 58,322 |
| 6/17/2020 | APL-APPSTR_015 | APL-APPSTORE_01045378 - APL-APPSTORE_01087200 | 41,823 | 41,823 |
| 6/17/2020 | APL-APPSTR_016 | APL-APPSTORE_01087201 - APL-APPSTORE_01156511 | 69,311 | 69,311 |
| 6/17/2020 | APL-APPSTR_017 | APL-APPSTORE_01156512 - APL-APPSTORE_01228564 | 72,053 | 72,053 |
| 6/17/2020 | APL-APPSTR_018 | APL-APPSTORE_01228565 - APL-APPSTORE_01293569 | 65,005 | 65,005 |
| 6/17/2020 | APL-APPSTR_019 | APL-APPSTORE_01293570 - APL-APPSTORE_01361312 | 67,743 | 67,743 |
| 6/17/2020 | APL-APPSTR_020 | APL-APPSTORE_01361313 - APL-APPSTORE_01433088 | 71,776 | 71,776 |
| 6/17/2020 | APL-APPSTR_021 | APL-APPSTORE_01433089 - APL-APPSTORE_01503309 | 70,221 | 70,221 |
| 6/17/2020 | APL-APPSTR_022 | APL-APPSTORE_01503310 - APL-APPSTORE_01573029 | 69,720 | 69,720 |
| 6/17/2020 | APL-APPSTR_023 | APL-APPSTORE_01573030 - APL-APPSTORE_01631381 | 58,352 | 58,352 |
| 6/17/2020 | APL-APPSTR_024 | APL-APPSTORE_01631382 - APL-APPSTORE_01698610 | 67,229 | 67,229 |

| Date Produced | Volume | ProdRange | Doc Count | Page Count |
|---|---|---|---|---|
| 6/17/2020 | APL-APPSTR_025 | APL-APPSTORE_01698611 - APL-APPSTORE_01768238 | 69,628 | 69,628 |
| 6/17/2020 | APL-APPSTR_026 | APL-APPSTORE_01768239 - APL-APPSTORE_01838579 | 70,341 | 70,341 |
| 6/17/2020 | APL-APPSTR_027 | APL-APPSTORE_01838580 - APL-APPSTORE_01860293 | 21,714 | 21,714 |
| 6/17/2020 | APL-APPSTR_028 | APL-APPSTORE_01860294 - APL-APPSTORE_01860428 | 10 | 135 |
| 6/17/2020 | APL-APPSTR_029 | APL-APPSTORE_01860429 - APL-APPSTORE_02000140 | 68,518 | 139,712 |
| 6/17/2020 | APL-APPSTR_030 | APL-APPSTORE_02000141 - APL-APPSTORE_02156984 | 69,348 | 156,844 |
| 7/6/2020 | APL-APPSTR_031 | APL-APPSTORE_02156985 - APL-APPSTORE_02228732 | 71,748 | 71,748 |
| 7/6/2020 | APL-APPSTR_032 | APL-APPSTORE_02228733 - APL-APPSTORE_02301573 | 72,841 | 72,841 |
| 7/6/2020 | APL-APPSTR_033 | APL-APPSTORE_02301574 - APL-APPSTORE_02372817 | 71,242 | 71,244 |
| 7/6/2020 | APL-APPSTR_034 | APL-APPSTORE_02372818 - APL-APPSTORE_02444144 | 71,327 | 71,327 |
| 7/6/2020 | APL-APPSTR_035 | APL-APPSTORE_02444145 - APL-APPSTORE_02516135 | 71,991 | 71,991 |
| 7/6/2020 | APL-APPSTR_036 | APL-APPSTORE_02516136 - APL-APPSTORE_02587454 | 71,319 | 71,319 |
| 7/6/2020 | APL-APPSTR_037 | APL-APPSTORE_02587455 - APL-APPSTORE_02659508 | 72,054 | 72,054 |
| 7/6/2020 | APL-APPSTR_038 | APL-APPSTORE_02659509 - APL-APPSTORE_02732071 | 72,563 | 72,563 |
| 7/6/2020 | APL-APPSTR_039 | APL-APPSTORE_02732072 - APL-APPSTORE_02739428 | 7,357 | 7,357 |
| 7/6/2020 | APL-APPSTR_040 | APL-APPSTORE_02739429 - APL-APPSTORE_02812390 | 36,712 | 72,962 |
| 7/6/2020 | APL-APPSTR_041 | APL-APPSTORE_02812391 - APL-APPSTORE_02943699 | 55,374 | 131,309 |
| 7/6/2020 | APL-APPSTR_042 | APL-APPSTORE_02943700 - APL-APPSTORE_03087410 | 57,374 | 143,711 |
| 7/6/2020 | APL-APPSTR_043 | APL-APPSTORE_03087411 - APL-APPSTORE_03248463 | 71,436 | 161,053 |
| 7/6/2020 | APL-APPSTR_044 | APL-APPSTORE_03248464 - APL-APPSTORE_03490759 | 73,556 | 242,296 |
| 7/6/2020 | APL-APPSTR_045 | APL-APPSTORE_03490760 - APL-APPSTORE_03777539 | 69,189 | 286,780 |
| 7/6/2020 | APL-APPSTR_046 | APL-APPSTORE_03777540 - APL-APPSTORE_04070111 | 68,077 | 292,572 |
| 7/6/2020 | APL-APPSTR_047 | APL-APPSTORE_04070112 - APL-APPSTORE_04438112 | 64,488 | 368,001 |
| 7/6/2020 | APL-APPSTR_048 | APL-APPSTORE_04438113 - APL-APPSTORE_04670031 | 57,648 | 231,919 |
| 7/17/2020 | APL-APPSTR_049 | APL-APPSTORE_04670032 - APL-APPSTORE_05290314 | 72,717 | 620,283 |
| 7/17/2020 | APL-APPSTR_050 | APL-APPSTORE_05290315 - APL-APPSTORE_05440137 | 74,017 | 149,823 |
| 7/17/2020 | APL-APPSTR_051 | APL-APPSTORE_05440138 - APL-APPSTORE_05565548 | 62,596 | 125,411 |

| Date Produced | Volume | ProdRange | Doc Count | Page Count |
|---|---|---|---|---|
| 7/17/2020 | APL-APPSTR_052 | APL-APPSTORE_05565549 - APL-APPSTORE_05635478 | 36,472 | 69,930 |
| 7/17/2020 | APL-APPSTR_053 | APL-APPSTORE_05635479 - APL-APPSTORE_05733241 | 58,761 | 97,763 |
| 7/17/2020 | APL-APPSTR_054 | APL-APPSTORE_05733242 - APL-APPSTORE_05883204 | 56,532 | 149,963 |
| 7/17/2020 | APL-APPSTR_055 | APL-APPSTORE_05883205 - APL-APPSTORE_05987618 | 44,315 | 104,414 |
| 7/27/2020 | APL-APPSTR_056 | APL-APPSTORE_05987619 - APL-APPSTORE_06059024 | 29,140 | 71,406 |
| 7/27/2020 | APL-APPSTR_057 | APL-APPSTORE_06059025 - APL-APPSTORE_06220060 | 70,647 | 161,036 |
| 7/27/2020 | APL-APPSTR_058 | APL-APPSTORE_06220061 - APL-APPSTORE_06379029 | 70,918 | 158,969 |
| 7/27/2020 | APL-APPSTR_059 | APL-APPSTORE_06379030 - APL-APPSTORE_06556090 | 49,947 | 177,061 |
| 7/27/2020 | APL-APPSTR_060 | APL-APPSTORE_06556091 - APL-APPSTORE_06581314 | 24,980 | 25,224 |
| 7/31/2020 | APL-APPSTR_061 | APL-APPSTORE_06581315 - APL-APPSTORE_06722959 | 38,932 | 141,645 |
| 7/31/2020 | APL-APPSTR_062 | APL-APPSTORE_06722960 - APL-APPSTORE_06928904 | 57,646 | 205,945 |
| 7/31/2020 | APL-APPSTR_063 | APL-APPSTORE_06928905 - APL-APPSTORE_07092921 | 23,921 | 164,017 |
| 7/31/2020 | APL-APPSTR_064 | APL-APPSTORE_07092922 - APL-APPSTORE_07181345 | 4,886 | 88,424 |
| **TOTALS AT SUBSTANTIAL COMPLETION** | | | **3,585,471** | **7,181,345** |
| **Clean-up Productions** | | | | |
| 9/20/2020 | APL-APPSTR_065 | APL-APPSTORE_07181346 - APL-APPSTORE_08819432 | 42,722 | 1,638,087 |
| 9/20/2020 | APL-APPSTR_066 | APL-APPSTORE_08819433 - APL-APPSTORE_08847740 | 7,540 | 28,308 |
| 9/20/2020 | APL-APPSTR_067 | APL-APPSTORE_08847741 - APL-APPSTORE_08933204 | 23,556 | 85,464 |
| 10/9/2020 | APL-APPSTR_068 | APL-APPSTORE_08933205 - APL-APPSTORE_09100216 | 33,967 | 167,012 |
| **TOTALS POST-SUBSTANTIAL COMPLETION** | | | **107,785** | **1,918,871** |
| **GRAND TOTALS** | | | **3,693,256** | **9,100,216** |