| | |
|---|---|
| MARK A. PERRY, SBN 212532<br>mperry@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: 202.955.8500<br>Facsimile:  202.467.0539 | GARY A. BORNSTEIN (*pro hac vice*)<br>gbornstein@cravarth.com<br>CRAVATH, SWAINE & MOORE LLP<br>825 Eighth Avenue<br>New York, New York 10019<br>Telephone: (212) 474-1000<br>Facsimile: (212) 474-3700 |
| **Attorney for Defendant, APPLE INC.** | **Attorney for EPIC GAMES, INC.** |

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　　　Defendant. | CASE NO. 4:20-CV-05640-YGR<br><br>**JOINT REQUEST FOR CLARIFICATION REGARDING TRIAL ELEMENTS, LEGAL FRAMEWORK AND REMEDIES SUBMISSION**<br><br>Hon. Yvonne Gonzalez Rogers |

The Court's October 21, 2020 Order Re: Case Management Conference instructed, "by January 22, 2021, the parties in the *Epic Games* matter [to] file a joint document entitled 'Trial Elements, Legal Framework and Remedies.'" Dkt. 132 at 1 (boldface omitted); *see also* Oct. 19, 2020 Hrg. Tr. at 4-7. The parties have had a series of meetings regarding the implementation of the Court's order, and have exchanged multiple inserts and drafts in an effort to reach agreement on the format and content of the joint submission. After meeting and conferring, it has become clear that the parties have different interpretations of what the Court is expecting to receive. Accordingly, the parties seek further guidance so that they can prepare a joint submission that will be responsive to the Court's request.

For example, a legal issue the Court has specifically identified for inclusion in the January 22 filing is Epic's tying claim. *See* Oct. 19, 2020 Hrg. Tr. at 6-7 ("In pages 21 to 23 [of the Order Granting in Part and Denying in Part Motion for Preliminary Injunction (Dkt. 118)], I discuss the legal framework for the tying claims. If you don't agree with the framework, I want to know."). Accordingly, the parties exchanged sample "modules" on the tying claim. Epic's sample tying module is attached hereto as Exhibit A; Apple's sample tying module is attached hereto as Exhibit B.* This exercise, as well as other modules the parties have exchanged and the ensuing discussions among counsel, demonstrated that the parties have different understandings of what the Court is expecting in the January 22 submission, leading to this joint request for clarification.

The sample tying modules are generally scalable to the rest of this project. That is, if the Court prefers Epic's approach to this module, the parties will endeavor to implement that approach for all issues; conversely, if the Court prefers Apple's approach to this module, the parties will endeavor to implement that approach for all issues. (Or, if the Court would prefer a third approach, the parties will endeavor to implement that as well.)

The parties' perspectives on the two different approaches are set forth below:

**Epic states**: Epic understands the Court to be seeking an "identif[ication of] the elements and/or legal framework", Dkt. 132 at 1, or an "outline of the elements", Oct. 19, 2020 Hrg. Tr. at 7:11, to

---

* Because these submissions are preliminary, both parties agree that the substance of their proposed "modules" are not binding on them in this or any other case and are submitted here without prejudice to any revisions, modifications, or additions either party later deems appropriate.

1   ensure that the parties and the Court are "on the same page" with respect to what each party will need
2   to prove at trial, *id.* at 7:16. At the October 19, 2020 hearing, the Court introduced the concept of the
3   joint submission by explaining that the Court had outlined the legal framework for Sherman Act § 2
4   monopoly maintenance claims and Sherman Act § 1 tying claims in its October 9, 2020 Order Granting
5   in Part and Denying in Part Motion for Preliminary Injunction ("PI Order") and that the Court wanted
6   to know whether the parties agree with that framework. *Id.* at 6:21-7:1. Epic has therefore calibrated
7   its approach for the joint submission to the level of detail found in the "Legal Framework" sections of
8   the PI Order. Dkt. 118 at 11-15, 21-23.

9   Epic further understands that one purpose of the joint submission is to identify areas of
10  agreement between the parties. *See* Oct. 19, 2020 Hrg. Tr. at 7:10-14. Epic has therefore attempted to
11  apply a level of detail at which it believes the parties have a reasonable prospect of agreeing, at least
12  on many issues. By comparison, Apple's proposed modules are so detailed and argumentative that
13  there will be little chance of meaningful agreement. For example, Apple's sample tying module at
14  Exhibit B reads more like a defendant's trial brief than a neutral articulation of the legal framework,
15  and Epic strongly disagrees with much of what Apple has written. Epic therefore believes that Apple's
16  approach would inevitably lead to lengthy dueling submissions as to virtually every significant legal
17  issue. Given that the parties are addressing each of their claims and counterclaims, as well as key
18  affirmative defenses, these submission would span hundreds of pages of legal argument, rather than
19  the "jury instructions" approach that Epic understands the Court to have requested. *Id.* at 7:10, 12:7-
20  11; Dkt. 132 at 1. In addition, while Apple does not expressly argue the facts, its approach is premised
21  on the factual assertions it will present. The parties, especially the plaintiff in a case, cannot effectively
22  prepare the "trial briefs" that Apple envisions when fact discovery is ongoing and expert discovery has
23  not yet begun.

24  ***Apple states***: The Court instructed the parties to set forth the "elements and/or legal
25  framework," Dkt. 132 at 1, applicable to the parties' claims and counterclaims. The literal elements of
26  Epic's claims could be found in any treatise. Accordingly, Apple has started with the jury instruction
27  template and then included additional authorities that explicate and illustrate the legal framework
28  applicable to each element in circumstances analogous to those presented here. Deciding whether the

2
JOINT REQUEST FOR CLARIFICATION – CASE NO. 4:20-CV-05640-YGR

burden of proving each element has been met on the facts of this case—which "concern[s] novel and innovative business practices" and "presents questions at the frontier edges of antitrust law in the United States"—will require consideration of this broader legal framework. Dkt. 118 at 10. To that end, Apple's sample module does not argue the facts but rather sets forth the important legal principles that, in Apple's estimation, provide nuance and context that will aid the Court when it hears the parties' evidence and deliberates on this case. Although Epic complains that Apple's "approach is premised on the factual assertions [both parties] will present," we are far enough along in this litigation to know what the central disputes are likely to be. Indeed, the Court specifically requested a "trial brief," Oct. 19, 2020 Hrg. Tr. at 7:7, 16:1; while there will be further factual development, it is not too early to tailor the pertinent legal framework to the parties' actual and anticipated disputes.

Epic's generic and bare-bones approach, in contrast, does not provide meaningful guidance on the central issues in the case. Any legal claim can be abstracted to its literal elements, but antitrust claims in practice require reference to precedent and authority—the common-law method—because the statutory text and top-level elements do not capture the complexities of the various theories and constructs. For example, Epic's generic one-paragraph treatment of its rule of reason tying theory ignores the framework that specifically applies to that theory, including binding Supreme Court and Ninth Circuit authority. *See* Dkt. 118 at 21 (recognizing that "[t]ying arrangements under section 1 of the Sherman Act may be evaluated under either per se or rule of reason analysis" (internal footnote omitted)). Indeed, the Court's preliminary injunction order, which both parties have used as an exemplar, already includes more detail on the legal framework for the tying claim (for example) than Epic's sample module does. *See id.* at 21-22. And while Apple will work in good faith to agree with Epic on undisputed propositions, the Court has also recognized that the parties may not agree on every aspect of the legal framework. Oct. 19, 2020 Hrg. Tr. at 7:11-14 ("If you agree, you tell me you agree. They're joint submissions. If you don't agree, then you give me your various perspectives and the legal authority for the perspectives."). Indeed, early identification of the points of disagreement may be particularly useful to the Court as the case proceeds to trial. *See id.* at 7:21-25 ("Now, if we have disagreements about the legal framework, we can have a discussion about that in January and February. . . and that way we're ahead of the game, and so once we get to trial, we're really talking about how

the facts get applied across those elements."). A more detailed submission will better identify the issues that require resolution.

\*   \*   \*

Both parties wish to reiterate that their goal is to provide a document that will be most useful to the Court. Neither party wants to give the Court information it does not need; at the same time, both parties want to give the Court the information it does need. If the Court were to indicate its preference for one or the other sample tying modules (or a third path), that would provide the parties with meaningful guidance for completing the joint submission.

Respectfully submitted.

Dated: January 4, 2021

By: /s/ Mark A. Perry
           Mark A. Perry

**GIBSON, DUNN & CRUTCHER LLP**

THEODORE J. BOUTROUS JR., SBN 132099
tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
jsrinivasan@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

VERONICA S. LEWIS (*pro hac vice*)
vlewis@gibsondunn.com
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile:  214.571.2900

MARK A. PERRY, SBN 212532
mperry@gibsondunn.com
CYNTHIA E. RICHMAN (*pro hac vice*)
crichman@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile:  202.467.0539

4
JOINT REQUEST FOR CLARIFICATION – CASE NO. 4:20-CV-05640-YGR

ETHAN DETTMER, SBN 196046
edettmer@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Apple Inc.*


By: /s/ Gary A. Bornstein
        Gary A. Bornstein

**CRAVATH, SWAINE & MOORE LLP**
Christine A. Varney (*pro hac vice*) cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*) kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*) gbornstein@cravath.com
Yonatan Even (*pro hac vice*) yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*) mbyars@cravath.com
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

**FAEGRE DRINKER BIDDLE & REATH LLP**
PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*Attorneys for Plaintiff Epic Games, Inc.*