**APPLE SAMPLE TYING MODULE**

## 1.1    Count 6: Alleged Sherman Act Tying

Epic alleges that Apple unlawfully ties iOS App Distribution services (the alleged tying product market) to iOS In-App Payment Processing services (the alleged tied product market). Compl. ¶¶ 233-45. Epic alleges in the alternative that the relevant tied product market is the sub-market for processing purchases of virtual gaming products within mobile iOS games. *Id.* ¶ 239.

Epic claims that the alleged tying arrangement should be condemned under both the *per se* rule and the rule of reason. Apple disagrees that application of the *per se* rule is appropriate in this case, and asserts it cannot be held liable for tying under either framework.

Undisputed Principles

Tying involves the linking of two separate products from two separate product markets. *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984). In a tying arrangement, a party "conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product)." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008); *accord Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Par.*, 466 U.S. at 12; *see also Cascade Health Sols.*, 515 F.3d at 914 ("[C]oercion is often the touchstone in assessing a claim of illegal tying.").

As courts recognize, "tying may have procompetitive justifications." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 n.24 (1984); *see also Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199-200 (9th Cir. 2012) ("Like other vertical restraints, tying arrangements may promote rather than injure competition."). An alleged tying

arrangement can therefore be analyzed under the *per se* rule or the rule of reason.  *See*, *e.g.*, *Cascade Health Sols.*, 515 F.3d at 913.

Disputed Principles

**1.**  Epic states: _____.

**2.**  Apple states: A *per se* analysis is inapplicable as a matter of law.  The categories of conduct condemned *per se* are "narrow."  *Texaco Inc. v. Dagher*, 547 U.S. 1, 8 (2006).  Such treatment is reserved for restraints that "considerable experience," *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9 (1979), shows "always or almost always tend to restrict competition and decrease output," *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018); *see also*, *e.g.*, *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972) (noting "horizontal territorial limitations" as "[o]ne of the classic examples of per se violations"—an exception from the "'rule of reason' analysis" used "for determining whether most business combinations or contracts violate the prohibitions of the Sherman Act naked").  As a result, "the rule of reason, rather than per se analysis, should govern" in tying cases "involv[ing] software that serves as a platform for third-party applications." *United States v. Microsoft*, 253 F.3d 34, 89 (D.C. Cir. 2001).

Indeed, the rule of reason is particularly appropriate in cases that examine business models and arrangements without "close parallel[s] in prior antitrust cases," and "simplistic application of per se tying rules carries a serious risk of harm."  *Microsoft*, 253 F.3d at 59; *see also FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 458-459 (1986) ("[W]e have been slow . . . to extend per se analysis to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious"); *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990–91 (9th Cir. 2020) ("Novel business practices—especially in technology markets—should not be 'conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the

precise harm they have caused or the business excuse for their use.'"). This Court has already recognized that Epic's lawsuit "challenges the fundamental operation of digital platforms affecting millions of users" and "presents questions at the frontier edges of antitrust law." *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR, 2020 WL 5993222, at *1, 6 (N.D. Cal. Oct. 9, 2020). Moreover, applying a *per se* rule could chill technological innovation. *See Microsoft*, 253 F.3d at 94-95 (cautioning that "wooden application of per se rules" to "bundling in platform software markets" could "cast a cloud over platform innovation").

The *per se* rule also should be rejected in light of the procompetitive effects of the challenged conduct. *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 894 (2007) (rule of reason applies where arrangement "can have either procompetitive or anticompetitive effects"); *see also* P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1703g (4th ed. 2020 supp.) (recognizing "[m]ajor beneficial possibilities" of tying arrangements, including "protecting quality, lowering costs or increasing value, increasing price competition, aiding entry, or rewarding a valuable patent").

### 1.1.1   Sherman Act Tying Claims under the Rule of Reason

Undisputed Principles

To "prevail on the merits" of an antitrust claim subject to the rule of reason, the plaintiff must "prove, on the basis of a more thorough examination of the purposes and effects of the practices involved, that the general standards of the Sherman Act have been violated." *Fortner Enterps. v. U.S. Steel*, 394 U.S. 495, 500 (1969).  To carry this burden under a tying theory:

> ➢ ***First***, Epic must prove that "two separate product markets have been linked" through the alleged tying of two separate and distinct products.  *Jefferson Parish Hosp.*, 466 U.S. at 21.

> ➢ ***Second***, Epic must prove "the existence of a tie" by showing that Apple "explicitly or implicitly imposes conditions linking the sale of a tying product with the sale of the tied product."  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016).

> ➢ ***Third***, Epic must prove that Apple possessed market power in the relevant tying product market and that as a result Epic "was 'coerced' into buying the tied products from [Apple]," *Cascade Health Sols.*, 515 F.3d at 900; *see also Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006) ("[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."); P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1728b (4th ed. 2020) ("Without power in the market for the tying product, a tie-in cannot be a vehicle for distorting competition in a second market. . . .  [P]roving an unreasonable tie when the defendant lacks any significant tying-product power will be very difficult if not impossible."); *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir.

2003) ("Essential to . . . a tying claim is proof that the seller coerced a buyer to purchase the tied product.").

➢ **Fourth**, Epic must prove that the arrangement "has a substantial and anticompetitive effect that harms consumers" in the relevant tied product market. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020); *see also Jefferson Parish Hosp.*, 466 U.S. at 29-31 (no violation of rule of reason due to tying arrangement where no "showing that the [tied] market as a whole has been affected"); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) (plaintiff must show "an 'actual adverse effect on competition' caused by the tying arrangement" in the tied market); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991); *Apple iPod iTunes Antitrust Litig.*, No. C 05-00037 JW, 2009 WL 10678940, at *3 (N.D. Cal. Oct. 30, 2009) (in rule of reason cases, "a plaintiff cannot rely on a presumption of unreasonable anticompetitive effect, but instead must 'provide a basis for finding that the [tying arrangement], as it actually operates in the market, has unreasonably restrained competition'").

If Epic "carries its burden, then the burden shifts to [Apple] to show a procompetitive rationale for the restraint." *Qualcomm*, 969 F.3d at 991 (quoting *Amex*, 138 S. Ct. at 2284); *accord Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1159 (9th Cir. 2001). If Apple makes this showing, "[t]he burden then shifts back" to Epic to "show that an alternative is substantially less restrictive *and* is virtually as effective in serving the legitimate objective *without significantly increased cost*." *Cty. of Tuolumne*, 236 F.3d at 1159 (emphasis in original; internal quotation marks omitted).

#### 1.1.1.1 Rule of Reason Tying, Element 1: Existence of Separate Products

Undisputed Principles

Epic first must prove that the alleged tying product and the alleged tied product are "separate and distinct" products, *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 974 (9th Cir. 2008), that, if tied, would link "two separate product markets." *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984); *see also United States v. Microsoft Corp.*, 253 F.3d 34, 85 (D.C. Cir. 2001) ("[U]nless products are separate, one cannot be 'tied' to the other."). "The existence of distinct products depends upon 'the character of the demand for the two items.'" *Rick-Mik Enters.*, 532 F.3d at 975 (quoting *Jefferson Par. Hosp.*, 466 U.S. at 19).

In determining whether iOS App Distribution services and iOS In-App Payment Processing services are separate products, the Court must consider whether both are part of a "two-sided platform." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2280 (2018). A "two-sided platform offers different products or services to two different groups," Amex at 2280, but from the standpoint of market definition transactional platforms are not viewed as "supplying two separate products, one to each side of the platform." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 57 (2d Cir. 2019); *see also Amex*, 138 S. Ct. at 2286 n.8 (services offered to each platform side "are not complements"). App platform "companies are best understood as supplying only one product—transactions—which is jointly consumed by a [developer] and a [consumer]. [Developer] services and [consumer] services are both inputs to this single product." *Amex*, 138 S. Ct. at 2286 n.8; *see also Sabre Corp.*, 452 F. Supp. 3d at 137. Thus, "only one market should be defined" for two-sided platforms. *Amex*, 138 S. Ct. at 2287; *see also id.* at 2280 (a product market is defined to constitute a single transactional product even when the platform "allows [members on one platform side] to avoid the cost of processing transactions and offers them quick,

guaranteed payment").  And if iOS App Distribution services and iOS In-App Payment Processing services are part of a single market, no "tying arrangement can[] exist" as "two separate product markets [cannot] be[] linked," *Jefferson Par. Hosp.*, 466 U.S. at 21; *see also Kaufman v. Time Warner*, 836 F.3d 137, 141 (2d Cir. 2016) ("The 'separate product' element requires that the alleged tying product and tied product be separate, *i.e.*, they must exist in separate and distinct product markets.").

Two additional principles are relevant in this case: Consumer demand and technological integration.

#### 1.1.1.1.1 Existence of Separate Products—Consumer Demand Test

Undisputed Principles

To determine whether the two allegedly separate items—here, iOS App Distribution services and iOS In-App Payment Processing services—are separate and distinct products, the Court must assess consumer demand for the tied product separate from the tying product.  *Rick-Mik Enterprises*, 532 F.3d at 975; *accord Microsoft*, 253 F.3d at 86.  In other words, Epic must prove that some customers want the two items separated and that separating the two is technologically and economically possible.  Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1743 (4th ed. 2020).  Epic must adduce evidence of "sufficient consumer demand" for the allegedly tied product "so that it is efficient for a firm to provide [the tied product] separately from [the tying product]."  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462 (1992).

Epic may prove consumer demand with direct or indirect evidence.  Direct evidence "addresses the question whether, when given a choice, consumers purchase the tied good from the tying good maker, or from other firms."  *Rick-Mik Enterprises*, 532 F.3d at 975.  Indirect evidence addresses "the behavior of firms without market power in the tying good market" and whether "competitive firms always bundle the tying and tied goods" (in which case they are a single product).  *Id.*  This includes evidence about "the history of the products being, or not being, sold separately" as well as "the sale of the products separately in similar markets."  *Kaufman*, 836 F.3d at 142.

### 1.1.1.1.2       Existence of Separate Products—Integrated Products

Undisputed Principles

Even if the plaintiff demonstrates independent consumer demand for two items, they are "a single product" if they are (or are part of) "an 'integrated service.'"  *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR, 2020 WL 5993222, at *16 (N.D. Cal. Oct. 9, 2020).   Because "[a]lmost every product can be viewed as a package of component products—"a pair of shoes, for example, as a package consisting of a left shoe and a right shoe; a man's three-piece suit as a package consisting of a jacket, vest, and pants; a belt as a package consisting of a buckle and a strap"—courts must ensure that the alleged products are not merely "a package of components" that provide a single service to the customer.  *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 703 (7th Cir. 1984); *see also Jefferson Par.*, 466 U.S. at 39 ("[T]here must be a coherent economic basis for treating the tying and tied products as distinct" because "[a]ll but the simplest products can be broken down into two or more components that are 'tied together' in the final sale.").   Consequently, the Court must determine whether iOS App Distribution services and iOS In-App Payment Processing services are integrated components of a single product or an overall "method of business."  *Rick-Mik Enters.*, 532 F.3d at 974 (quoting *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 670 n.1 (7th Cir 1985)).

Apple has the initial burden of producing evidence of integration.  Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1743c (4th Ed. 2020)).  "At that point, [Epic] must produce contrary evidence."  *Id.*  And if that burden is met, "[Epic] has the burden of persuading the tribunal that two products exist under all the single-product rationale[] put in issue by the defendant."  *Id.*

### 1.1.1.2 Rule of Reason Tying, Element 2: The Tie

<u>Undisputed Principles</u>

The "most fundamental requirement" of a tying claim is "the existence of a tie." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). Epic must prove that the "sale of the desired ('tying') product [was] conditioned on purchase of another ('tied') product." *Id.*; *see also* Areeda & Hovenkamp ¶ 1752b (defining a tie as the improper imposition of "conditions that explicitly or practically require buyers to take the second product if they want the first one"). This condition must "require[] customers to take the defendant's product B in order to get its A—thereby foreclosing, to that extent, rival B suppliers from access to those customers." Areeda & Hovenkamp ¶ 1752c; *see also Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 615 (9th Cir. 1990) (similar).

While a tying condition "need not be spelled out in express contractual terms," it is not enough for a plaintiff to show the defendant's conduct amounted to a "'de facto' condition." *Aerotec*, 836 F.3d at 1178-79. Consequently, "technological interrelationship among complementary products" is insufficient to establish a tie. *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 542 (9th Cir. 1983); *see also Apple iPod iTunes Antitrust Litig.*, No. C 05-00037 JW, 2009 WL 10678940, at *5 (N.D. Cal. Oct. 30, 2009) (that technological products are developed, and are optimally used, in conjunction with one another does not establish a tie).

### 1.1.2   Rule of Reason Tying, Element 3: Market Power and Coercion

<u>Undisputed Principles</u>

To prove coercion, Epic must prove by a preponderance of the evidence that Apple exploited its alleged control over the tying product to force Epic into the purchase of the tied product.  *See* ABA Model Civil Jury Instrns. Ch. 2.E.7 (2016).  This requirement is twofold.  First, Epic must prove the defendant exercised market power in the tying product.  *See Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006) ("[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.").  Second, Epic "must present evidence that the defendant went beyond persuasion" and in fact "coerced or forced its customer to buy the tied product in order to obtain the tying product."  *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003); *see also It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 684 (4th Cir. 2016) (rejecting argument that "tying occurs any time a seller who has market power over product A *offers* it for sale together with product B").  In short, Epic must prove by a preponderance of the evidence that Apple exploited its alleged market power over iOS App Distribution services to force Epic into the purchase of iOS In-App Payment Processing services.

***Market Power.***  To prove market power, Epic must show the defendant had "the power to control prices or exclude competition" in the tying product market.  *Paladin Assocs.*, 328 F.3d at 1158; *see also Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008) ("If [the defendant] lacks market power in the [tying product] market, there can be no cognizable tying claim.").  "The best way to show" sufficient market power "is to establish directly that the price of the tied package is higher than the price of components sold in competitive markets."  *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 826 F.2d 712, 720 n.7 (7th Cir. 1987).  Aside

from such direct evidence, Epic may prove market power by showing Apple had a sufficiently high market share such that purchasers do not have alternative sources of the tying product or a reasonably interchangeable substitute.[1]

  **_Coercion._**  Proving "power over the tying product creates only a _potential_ for injury to competition in the tied market."  Areeda & Hovenkamp ¶ 1734.  Epic therefore must prove that Apple exercised such market power by going beyond "acceptable persuasion" and instead illegally coercing the plaintiff to purchase the tied product.  _Paladin Assocs._, 328 F.3d at 1160.

---

[1]  The parties' discussion of market power is _supra_ pp. ▮▮.

### 1.1.2.1 Rule of Reason Tying, Element 4: Anticompetitive Effects

<u>Undisputed Principles</u>

If the plaintiff establishes the first three prerequisites to a tying claim (separate products, a tie, and coercion and market power), the Court employs a burden-shifting framework to assess whether the arrangement was unreasonable. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA (MDD), 2018 WL 3032552, at \*17 (S.D. Cal. June 19, 2018). The plaintiff first must prove "the activity is the type that restrains trade and that the restraint is likely to be of significant magnitude." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991). If the plaintiff meets this "initial burden, the defendant must offer evidence of pro-competitive effects." *Id.* If the defendant makes this showing, "[t]he burden then shifts back" to the plaintiff to "show that an alternative is substantially less restrictive *and* is virtually as effective in serving the legitimate objective *without significantly increased cost.*" *Cty. of Tuolumne*, 236 F.3d at 1159 (emphasis in original; internal quotation marks omitted). Because few tying claims are litigated under the rule of reason, case law interpreting these requirements "is amazingly sparse." *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 482 (3d Cir. 1992).

### 1.1.2.1.1    Anticompetitive Effects—Proof of Anticompetitive Effects in the Relevant Market

<u>Undisputed Principles</u>

To "show that the activity is the type that restrains trade and that the restraint is likely to be of significant magnitude," Epic first must define and prove the existence of the alleged iOS In-App Payment Processing market.  *See Bhan*, 929 F.2d at 1413 (plaintiff must prove market for tied product); *United States v. Microsoft Corp.*, 253 F.3d 34, 95 (D.C. Cir. 2001) (plaintiff must provide a "careful definition of the tied good market").[2]

If Epic satisfies this burden, then it either "must delineate a relevant market and show that [Apple] plays enough of a role in that market to impair competition significantly" or show the challenged restraint "actually produced significant anti-competitive effects in the relevant market." *Bhan*, 929 F.2d at 1413 (citing *Jefferson Par.*, 466 U.S. at 29); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1097 (N.D. Cal. 2019) (a plaintiff may meet their burden "by showing that 'the defendant plays enough of a role' in the relevant market 'to impair competition significantly,' or by showing that the challenged restraint 'has actually produced significant anti-competitive effects'").   Direct evidence of significant anticompetitive effects includes proof of reduced output or increased prices.  *Bhan*, 929 F.2d at 1413.  While this does not require "[a] full-blown market analysis" in every case, *id.*, it does require proof that the alleged tying arrangement restrained trade in the tied market to impair competition, *nSight, Inc. v. PeopleSoft, Inc.*, 296 F. App'x 555, 558 (9th Cir. 2008).  Typically, this in turn requires Epic to prove substantial "harm to existing competitors or [the] creat[ion] [of new] barriers to entry."  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012).

---

[2]  The parties' discussion of market definition, including the alleged iOS In-App Payment Processing Market, is *supra* pp. ▮.

Proof of only "insignificant restrictions on competition," however, is insufficient.  *Grimmelmann v. Pulte Home Corp.*, No. CV-08-1878-PHX-FJM, 2009 WL 1211771, at *4 (D. Ariz. May 1, 2009).

### 1.1.2.1.2    Anticompetitive Effects—Production of Evidence of Procompetitive Effects

<u>Undisputed Principles</u>

If the plaintiff satisfies its initial burden, "the defendant must offer evidence of pro-competitive effects." *Bhan*, 929 F.2d at 1413.  This may include evidence of maintaining or lowering prices, reducing costs, increasing output, or improving the quality of the product or service, among other things.  *See* Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1717a (4th Ed. 2020).

### 1.1.2.1.3      Anticompetitive Effects—Less Restrictive Means

<u>Undisputed Principles</u>

If a defendant offers evidence of the tying arrangement's pro-competitive effects, the plaintiff must "show that any legitimate objectives can be achieved in a substantially less restrictive manner." *Bhan*, 929 F.2d at 1413.  To do so, the plaintiff must show that the tying arrangement was not "reasonably necessary" to achieve the legitimate interests identified by the defendant.  *Id.* at 1410 n.4 (quoting 7 P. Areeda, Antitrust Law ¶ 1502, at 371 (1986)).  This requires the plaintiff to prove there "were other and better ways—so-called less-restrictive alternatives—by which the [defendant] can achieve [its] legitimate objectives with fewer harms to competition." *Id.*

### 1.1.3   Sherman Act Tying Claims under the *Per Se* Rule

Undisputed Principles

A "unique per se rule" applies to certain tying claims. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008).  If the Court were to conclude that the tying claim here could be subject to *per se* analysis, Epic would have to prove the following elements:

➤ ***First***, Epic must prove that "two separate product markets have been linked" through the alleged tying of two separate and distinct products.  *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984).

➤ ***Second***, Epic must prove "the existence of a tie" by showing that Apple "explicitly or implicitly imposes conditions linking the sale of a tying product with the sale of the tied product."  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016).

➤ ***Third***, Epic must prove Apple possessed market power in the tying product market, *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006), and that as a result Epic "was 'coerced' into buying the tied products from [Apple]," *Cascade Health Sols.*, 515 F.3d at 900; *see also Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) ("Essential to . . . a tying claim is proof that the seller coerced a buyer to purchase the tied product.").

➤ ***Fourth***, Epic must prove that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market."  *Cascade Health Sols.*, 515 F.3d at 913.

➤ ***Fifth***, Epic must prove that the tying arrangement had a "pernicious effect on competition" in the tied product market.  *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1034 (N.D. Cal. 2008); *see also In re Webkinz Antitrust Litig.*, No. C 08-1987 RS, 2010 WL

4168845, at *2 (N.D. Cal. Oct. 20, 2010) (plaintiff must "prove facts showing a significant

negative impact on competition in the tied product market.").

If Epic establishes each of these elements, Apple "may defend itself by an affirmative showing of

business justification."  *United States v. Mercedes-Benz of N. Am., Inc.*, 517 F. Supp. 1369, 1378

(N.D. Cal. 1981).

### 1.1.3.1 *Per Se* Tying, Elements 1-3: Separate Products, the Tie, and Market Power and Coercion

Because the first three elements of this analysis mirror those in the rule of reason analysis,

the parties do not repeat their discussions here.[3]

---

[3]   The parties' discussions of these elements are *supra* pp. ▮.

### 1.1.3.2 *Per Se* Tying, Element 4: Foreclosure of a Not Insubstantial Volume of Commerce

<u>Undisputed Principles</u>

A tying arrangement must foreclose a "substantial amount of interstate commerce." *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984). This test focuses on the absolute dollar amount of the commerce affected—specifically including the total volume of sales tied in the sales policy under challenge, not the portion of this total accounted for by the particular plaintiff who brings suit. ABA Antitrust Section, *Antitrust Law Developments* 195 (8th ed. 2016); *see also DataGate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1424 (9th Cir. 1995) (sales of $100,000 per year deemed to be not insubstantial volume of commerce). There is no foreclosure where "the tied product is completely unwanted by the buyer," *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1090 (9th Cir. 2009), or alternative channels permit consumers to purchase the tied goods or services separately, *Roy B. Taylor Sales, Inc.*, 28 F.3d at 1383.

### 1.1.3.3 *Per Se* Tying, Element 5: Pernicious Effect and Lack of Any Redeeming Value

<u>Undisputed Principles</u>

In addition, "[t]he Ninth Circuit has adopted the pernicious effect requirement." *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1034 (N.D. Cal. 2008) (citing *Siegel v. Chicken Delight*, 448 F.2d 43, 47 (9th Cir. 1971)); *see also In re Webkinz Antitrust Litig.*, 695 F.Supp.2d 987, 995 (N.D. Cal. 2010) ("Plaintiffs must plead a 'pernicious effect on competition and lack of . . . any redeeming value.'"); *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1178 (N.D. Cal. 2013) (same); *Smith v. eBay Corp.*, No. C 10-03825 JSW, 2012 WL 27718, at *6 (N.D. Cal. Jan. 5, 2012) (same).  This requires the plaintiff to "prove facts showing a significant negative impact on competition in the tied product market." *In re Webkinz Antitrust Litig.*, No. C 08-1987 RS, 2010 WL 4168845, at *2 (N.D. Cal. Oct. 20, 2010).

### 1.1.3.4 *Per Se* Tying: Business Justification Defense

<u>Undisputed Principles</u>

In a *per se* tying case, a defendant may establish a business justification defense by producing evidence that the tie-in was "implemented for a legitimate purpose" and "no less restrictive alternative is available." *Betaseed, Inc. v. U & I Inc.*, 681 F.2d 1203, 1215 (9th Cir. 1982); *see also Fortner Enterps., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 506 (1969) (recognizing that a plaintiff may not prevail at trial if a tying arrangement "serves legitimate business purposes"); *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1352 (9th Cir. 1987) ("Courts permit a business justification defense to tying claims because of a frank recognition that a package transaction with substantial justifications and few harmful effects should not be condemned."); *Moore v. James H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977) (similar).

A procompetitive business justification is "a nonpretextual claim that [defendant's] conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal." *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001). To that end, a defendant may justify a tying arrangement with evidence that it was designed to assure quality control, protect goodwill, maintain product quality, or reduce costs, among other things. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 484 (1992) (reducing costs); *Mozart Co.*, 833 F.2d at 1349 (quality control and goodwill); *Carpa, Inc. v. Ward Foods, Inc.*, 536 F.2d 39, 47 (5th Cir. 1976) (product quality).

The tying arrangement also must be "reasonably necessary to achieve that interest." ABA Model Civil Jury Instrns. Ch. 2.E.11 (2016). So even if alternatives existed, a tying arrangement is justified if it was the least expensive and most effective means to achieving the defendant's

legitimate aim.  *Mozart Co.*, 833 F.2d at 1349-51.  The Court has "substantial latitude" in "evaluating business justifications."  ABA Model Civil Jury Instrns. Ch. 2.E.11, notes (2016).