**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>*Plaintiff, Counter-defendant,*<br><br>v.<br><br>APPLE INC.,<br><br>*Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING EPIC'S REQUESTS FOR PRODUCTION OF DOCUMENTS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Pursuant to the Court's order (Dkt. 190; 12/15/20 Hr'g Tr. at 120:2-22), Epic Games, Inc. ("Epic") and Apple Inc. ("Apple", together with Epic, the "Parties") respectfully submit this joint letter brief regarding Epic's request for production of documents from Apple.

Counsel for the Parties have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter. The Parties can make additional exhibits—including the documents identified in this submission—available to the Court upon request.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP | GIBSON DUNN & CRUTCHER LLP |
| By: /s/ *Lauren A. Moskowitz*<br>    Lauren A. Moskowitz<br>    *Counsel for Epic Games, Inc.* | By: /s/ *Jay P. Srinivasan*<br>    Jay P. Srinivasan<br>    *Counsel for Apple Inc.* |

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Epic's Position**:  Epic requests that the Court order Apple (1) not to withhold non-U.S. documents in response to any Requests for Production ("RFPs"); (2) to produce data pursuant to Epic's RFP No. 3; and (3) to produce data pursuant to Epic's RFP Nos. 5 and 30.[1]

**(1) Non-U.S. Documents**:  On October 23, 2020, Epic served its first set of RFPs. (Ex. 1.) Given the global markets it had alleged, Epic made clear that "[t]he geographic scope of the Requests is worldwide."  (*Id.*, Instruction B.)  On November 23, 2020, Apple served its Objections and Responses. (Ex. 3.)  Apple generally objected to the global reach of the requests, primarily on the ground that Epic's requests reach "outside the proper scope of discovery in accordance with the Foreign Trade Antitrust Improvement Act [('FTAIA')]".  (*Id.*, General Objection No. 10; *see also id.*, RFPs Nos. 3, 12, 18, 30-31, 56-58 and 60-63.)  The Parties met and conferred on December 14 and 22, 2020.  Both times, Epic invited Apple to provide case law supporting its position.  In multiple letters exchanged between the Parties, Apple did not provide any cases discussing discovery in the context of the FTAIA. (Ex. 2 at 1-2; Ex. 4 at 2-3; Ex. 5 at 1; Ex. 6 at 2-3; Ex. 7 at 1.)  But Apple stood on this objection, and further stated that it is withholding non-U.S. documents even from its custodial review. (Ex. 8 at 5-6)

Apple's objection to producing non-U.S. documents is unfounded.  As an initial matter, "the FTAIA does not prohibit the discovery of information that is otherwise discoverable".  *In re Aspartame Antitrust Litig.,* 2008 WL 2275531, at *2 (E.D. Pa. May 13, 2008) (citation and quotation marks omitted); *see also, e.g.*, *In re eBay Seller Antitrust Litig.*, 2008 WL 3925350, at *1 (N.D. Cal. Aug. 22, 2008) (the FTAIA does "not [govern] the discoverability of evidence" "as relevance does not necessarily stop at the shores of the United States").  Apple attempts to distinguish these cases, but still cites no authority supporting its contrary position.

Non-U.S. documents are clearly relevant here.  Epic has alleged that the relevant markets are worldwide. (Dkt. 1 ¶¶ 57, 118; *see also* Dr. David Evans Decl., Dkt. 62 at 10 n.37.)  Apple now calls these allegations "conclusory" (Ex. 8 at 5), but Apple has not challenged them by Rule 12 motion as insufficient.  Nor did it challenge the geographic scope of the markets in its TRO or PI papers. (Dkt. 36; Dkt. 73)  Apple may ultimately dispute the geographic scope, but that is only further reason for Epic to have discovery into this issue.  Further, Apple has repeatedly relied on evidence from outside of the U.S. (*See, e.g.*, Counterclaims, Dkt. 66, Background ¶ 12 ("Because of IAP . . . developers are saved the hassle of setting up payment infrastructure to handle transactions in 175 different countries across 45 different local currencies"."); PI Opposition, Dkt. 73 at 4 (Apple pointing to its "share of the global market for smartphone sales"); *id.* at 12 ("'[A] rogue application affecting the operation of a significant fraction of the world's iPhones could substantially disrupt local or even worldwide telephony systems, as well as broad segments of the Internet".).)  Apple cannot withhold documents directly relevant to its own defenses.  Further, Apple is moving to stay an action initiated by Epic in Australia based in part on the pendency of the above-captioned case.  Apple cannot have its cake and eat it too by attempting to stay that foreign action while also opposing foreign discovery here.

---

[1] The Parties continue to negotiate over Epic's other RFPs.  Apple complains that "Epic has reneged on its representations" regarding discovery.  This is false, and has become a tagline used by Apple to resist much discovery.  Apple also complains "[t]here is no time".  Apple has only itself to blame.  Epic served its first set of RFPs over two months ago, and requested to meet and confer "as soon as practicable". (Ex. 1 at 1.)  Apple ignored this request for months

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Finally, any burden objection likewise fails. With respect to custodial searches, there is no additional burden to producing non-U.S. documents; Apple merely has to mark these documents responsive, rather than non-responsive, to the extent they appear in Apple's searches. And Epic does not seek to have Apple "re-review" documents for this issue. With respect to non-custodial searches, Apple has not supported its burden argument. Apple argues that pulling transactional-level data from 175 different storefronts would be burdensome, but Epic does not seek that kind of data. Epic generally seeks high-level aggregated data that are likely to be stored in central repositories and used for internal reporting to Apple's management in Cupertino, such as P&Ls showing aggregate revenue and cost data. In the ordinary course, Apple clearly tracks and aggregates data from the different countries and regions in which it does business. (*See, e.g.*, APL-APPSTORE_08883133 at '3282 ▮▮▮▮▮; APL-APPSTORE_00227526 ▮▮▮▮▮).) Apple has not explained why it would be difficult to produce such non-U.S. data in this case.

**(2) RFP No. 3**: This RFP seeks documents sufficient to show revenue, costs, expenses and profits, by country and year, for iPhone, iPad, iPod touch, Apple Watch and Apple AirPods.[2] These data are highly relevant. Epic argues that Apple has market power in the market for mobile operating systems, and that this market power in turn supports Apple's market power in aftermarkets for app distribution and in-app payment processing on iOS. (*See* Dr. Evans Decl., Dkt. 62 ¶¶ 31-50; Compl., Dkt. 1 ¶¶ 58-63, 119-127.) Sustained, high profit margins evidence market power. Apple's revenue from iOS comes primarily from selling devices that run iOS (iPhone, iPad and iPod touch) and accessories that depend on ownership of iOS devices (Apple Watch and Apple AirPods). (*Id.* ¶ 19 & n.28.) Thus, Epic is entitled to data on these devices and accessories to assess market power.

Apple refuses to search for any data in response to RFP No. 3 on burden and relevance grounds. (Ex. 8 at 1.)[3] But these data are clearly relevant as explained above. Apple's cited cases did not deny *discovery* of data relevant to proving high margins. To the contrary, *Bailey* recognizes that "the consistent extraction of supracompetitive profits may be an indication of anticompetitive market power". 284 F.3d 1237, 1252 (11th Cir. 2002). The question before the Court is whether the data are relevant to Epic's claims—not whether the data dispositively prove Epic's claims.

Moreover, Apple has not supported its burden argument. RFP No. 3 seeks high-level revenue and cost data for only five major Apple products. Apple reported in its 2020 10-K net sales for iPhone of more than $137 billion; for iPad of more than $23 billion; and for "Wearables, Home and Accessories" (which "include . . . AirPods, . . . Apple Watch, . . . [and] iPod touch") of more than $30 billion. (Apple, 2020 10-K at 21, https://www.sec.gov/ix?doc=/Archives/edgar/data/320193/000032019320000096/aapl-20200926.htm.) It is implausible that Apple would struggle to pull high-level revenue and cost data for the major products requested by RFP No. 3. The "burden" cited by Apple is nothing but the ordinary course of producing data in antitrust cases.

**(3) RFP Nos. 5, 30**: RFP No. 5 seeks documents sufficient to show Apple's revenue, costs, expenses, investments and profits by year for IAP. (Ex. 1.) RFP No. 30 seeks documents sufficient

---

[2] Epic is not requesting at this time the same data for accessory products. (Ex. 1, RFP No. 4).

[3] Apple produced some data for iPhone, iPad and iPod touch in *Pepper/Cameron*. These data are insufficient: they are U.S.-only, extend only through 2019 and may not include all relevant costs.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

to show customer spending through IAP and Apple's commissions by app, in-app purchase, app category, country, year and commission percentage. (*Id.*)

Epic is entitled to data reflecting revenue generated by IAP. Apple clearly tracks these data. (*See, e.g.*, APL-APPSTORE_00227526 ███████████████████████████████████) Apple's offer to produce only "transactional data that captures the revenue for the iOS App Store for the U.S. storefront" (Ex. 8 at 2) is insufficient because Epic requires worldwide data by country, or at least by region, for the reasons explained above.

Epic is also entitled to data reflecting costs attributed to IAP. Apple appears to track at least clearing costs. (*See* Ex. 7 at 3; Fischer Dep. 159:15-20 ████████████████████████████████████)

These data are highly relevant. Epic expects that cost data for IAP will show that Apple earns extraordinary margins from IAP, which may evidence market power. High profit margins would also support Epic's argument that prices would decline but remain profitable in the but-for world in which there were competition in the iOS In-App Payment Processing Market.

Further, Epic is entitled to data reflecting Apple's investments in IAP to the extent Apple has them. Investment data may show that Apple does not continue to invest in IAP, which supports Epic's argument that Apple "has no incentive to compete on quality". (TRO Motion, Dkt. 17 at 21.) And if Apple does not even track its investments in IAP, that too is meaningful, in showing that Apple cannot seriously justify its commission based on its purported need to cover its investment in IAP.

Finally, Apple argues these RFPs "yield[] no responsive documents as written because IAP is a functionality of the App Store and not a product that 'earn[s]' or is 'attributed' any costs or revenue". (Ex. 8 at 1-2, 4.) This argument is meritless as explained above and because it is clear what these RFPs seek. Apple either has the data or it does not, and it must produce the data it has.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Apple's Position**:  Epic sought and obtained an expedited schedule based on its representations to the Court that "[w]hat we are going to need [in terms of discovery], Your Honor, is certain of the discovery that's *already been produced*" and "some *limited targeted* additional discovery" regarding "in-app payment processing" and "market definition."  Aug. 24, 2020 Hr'g Tr. at 4:7-12, 4:21-24, 5:13-23 (emphasis added).  Epic has reneged on its representations.  Notwithstanding the Court's admonishment that Epic be "focused and efficient" in discovery and not "re-litigate issues where [Epic has] received the benefit of what has happened in the related actions," Oct. 19, 2020 Hr'g Tr. at 20:17-18, Epic served Apple with 83 RFPs spanning all aspects of Apple's business and demanding that Apple nearly double the number of custodians and also conduct burdensome non-custodial collections on dozens of additional subjects.

Apple has bent over backwards to accommodate Epic's ever-expanding demands—agreeing to increase the number of Apple custodians from 15 to 24 and to search for and produce many more categories of documents and data from non-custodial sources.  This expansion of the scope of discovery that Apple has *already* agreed to will require production well after the Court-ordered cutoff of January 6, 2021.  There is no time for Apple to chase down Epic's non-custodial requests that are the subject of this letter brief—which Epic did not raise until Dec. 9 and which would expand the scope of discovery even further—particularly given how much Epic already has overreached from the "limited targeted additional discovery" that Epic promised the Court.

(1) Documents Relating to Non-U.S. Activities: The Court should reject Epic's argument that Apple must produce documents for App Store storefronts serving 175 countries from Argentina to Zimbabwe based on Epic's bare allegation of a "worldwide" market.  Epic's causes of action in this case are limited *by statute* to Apple's activities in the U.S., and Apple has *already agreed* to produce and has produced *many* documents responsive to Epic's requests, including: (1) documents that reference Apple's activities both within and outside of the U.S.; and (2) documents relating to Epic's own dealings with Apple outside of the U.S.  Other documents about, for example, sales by Chinese developers to Chinese consumers in Chinese currency, are irrelevant and disproportional to the claims asserted by Epic in this case.

The "proper scope of discovery" is determined by "what claims may proceed."  *Jimenez v. Liberty Nw. Ins. Corp.*, No. CV 14-253-M-JCL, 2015 WL 2062708, at *2 (D. Mont. May 4, 2015); *see* Fed. R. Civ. P. 26 (permitting discovery "relevant to *any party's claim* or defense") (emphasis added).  The Foreign Trade Antitrust Improvements Act (FTAIA) explicitly "removes from the reach of the antitrust laws" commercial activities abroad, subject to a few exceptions inapplicable here.  *United States v. Hui Hsiung*, 778 F.3d 738, 751 (9th Cir. 2015).  Thus Apple's activities outside of the U.S. cannot form the basis for liability in this case.  *See id.*; *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 988 (9th Cir. 2008).  As such, documents relating to such activities are neither relevant nor proportional to the needs of the case.  *See Wu v. City of Redwood* City, 11 Fed.Appx. 914, 916 (9th Cir. 2001) (affirming preclusion of discovery "because there was no basis for . . . liability as a matter of law").

In the cases Epic cites, domestic antitrust plaintiffs sought international discovery targeted to support their substantive claims.  In *In re Aspartame Antitrust Litig.*, the court found documents relating to "sale and distribution" outside of the U.S. potentially relevant to "the existence of a *global conspiracy to allocate the market*."  *See* 2008 WL 2275531, at *2 (E.D. Pa. May 13, 2008) (emphasis added).  The court thus declined to bar discovery into international activities wholesale, instead ordering the parties "to meet and discuss *reasonable limits* that can be placed on Plaintiffs' discovery requests."  *See id.* (emphasis added).  Likewise, in *In re eBay Seller*

*Antitrust Litig.*, the defendant allegedly "engaged in a strategy to remove competitors from the marketplace." *See* 2008 WL 3925350, at *1 (N.D. Cal. Aug. 22, 2008).  Under the pre-2016 Rule 26 standard, the court required defendant to produce a handful of international agreements that were assertedly relevant to that claim.  *Id.*

In contrast, Epic does not allege a "global conspiracy to allocate the market" or otherwise claim that Apple's non-U.S. activities prove domestic antitrust liability.  Rather, Epic seeks broad non-U.S. discovery based on its bare allegation that "[t]he geographic scope of" the alleged "iOS App Distribution Market" and "iOS In-App Payment Processing Market" is "worldwide," Dkt. 1, ¶¶ 57, 118—offering no analysis of how such a "worldwide" market bears on the scope of its claims or available relief in view of the FTAIA.  If Epic is entitled to worldwide discovery here, then every plaintiff claiming a worldwide market would be entitled to such discovery.  That cannot be and is not the law.  Nor does this result change because the parties are litigating a case on related issues in Australia.  In fact, the motion to stay the Australian action is based, in large measure, on the parties' agreement that all actions would be brought in state or federal court in the Northern District of California.

Epic's reliance on Apple's passing references to non-U.S. activities is similarly misplaced.  The fact that Apple provides to developers a payment infrastructure that is generally capable of handling transactions worldwide, *see* Dkt. 66 ¶ 12, in no way means that the specific identity of each "third party settlement provider" (RFP No. 18) is relevant and proportional.  Likewise, it is unreasonable to suggest that, because the App Store model offers a secure platform to customers worldwide, *id.* at 12, Epic should be entitled to take discovery on security measures in Algeria (RFP Nos. 61-63) that can neither form the basis of liability nor serve as a defense in this case.

Finally, Epic is simply wrong that there is little burden associated with producing the broad categories of documents it requests.  Apple has already reviewed millions of documents on the (correct) basis that those documents relating solely to non-U.S. App Store storefronts are not relevant in this case unless they involve Epic.  *See* Oct. 19, 2020 Hr'g Tr. at 20:18-20.  Apple should not be forced to re-review them, especially given Epic's representations upon which the Court relied in setting the schedule demanded by Epic.

(2) Documents Relating to Apple Accessories and Ancillary Products: The Court should also reject Epic's request to expand the scope of discovery to Apple products that are not at issue in this case.  Epic's RFP Nos. 3 and 4 request "actual and projected revenue, costs, expenses, and profits, by country, by year, incurred by, earned by and/or attributed to sales" for a host of Apple products and accessories—including Apple Watches, AirPods, cases, chargers, speakers, and watch bands.  The irrelevance of such products is clear—none of them is mentioned in Epic's Complaint—and Epic now moves to compel this data only as to Apple Watch and AirPods.

Epic argues that such products may have "[s]ustained, high profit margins [that] evidence market power."  But Epic's own complaint alleges only two product markets (for app distribution and in-app payment processing); this lawsuit does not concern markets for Watches or AirPods.  As the Court has recognized, "what I have in front of me now, it is this game market."  Sept. 28, 2020 Hr'g Tr. at 36:13-14.  And in any case, "rates of return are more a reflection of various accounting conventions than true economic profit" and reveal "very little about market power."  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1252 (11th Cir. 2002).  Unsurprisingly, use of such measures to ascertain market power "has yet to be accepted by any circuit."  *Id.* at 1253; *see also Fed. Trade Comm'n v. Qualcomm Inc.,* 969 F.3d 974, 994 (9th Cir. 2020) ("[T]he goal of antitrust law is not to force businesses to forego profits or even the opportunity to charge

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

monopoly prices, which is what attracts business acumen in the first place." (quotation marks and citations omitted)).

Not content to receive a mountain of discovery on the App Store and on the devices that access the App Store, Epic seeks to expand discovery to *accessories to those devices*. This does not come close to justifying the burden of collecting this data, which would require interviewing percipient witnesses, investigating non-custodial repositories, and conducting an independent collection and production effort separate from Apple's ongoing custodial document review.

(3) Documents Relating to Non-Existent Finances Attributed to IAP: Epic also seeks documents and data about cost and revenues "earned" by or attributable to IAP. Apple has repeatedly explained that IAP is a *functionality* of the App Store, and not a separate product that "earns" or is "attributed" any costs or revenue. It makes no sense to assign "revenues" from App Store purchases to IAP, or to think of costs of marketing or app reviewer compensation as costs "attributable" to IAP.

In any event, pursuant to the Court's December 16, 2020 order, Apple is working to produce data underlying App Store P&L calculations. This will include data on the expenses and revenues associated with the App Store generally. The documents Epic cites show only that Apple tracks revenues from the App Store. But Apple is already producing transactional data that shows revenues for the App Store's U.S. storefront, which includes revenue from the sale of in-app purchases, and Epic has no doubt engaged experts to evaluate that data. Similarly, Apple has agreed to produce data regarding some of its costs, such as what it pays its app reviewers. All Apple is saying in response to this request is that it cannot provide non-existent financial data ascribed to the technological functionality called "IAP." Accordingly, the Court should dismiss this dispute.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated: December 28, 2020            CRAVATH, SWAINE & MOORE LLP
    Christine Varney
    Katherine B. Forrest
    Gary A. Bornstein
    Yonatan Even
    Lauren A. Moskowitz
    M. Brent Byars

Respectfully submitted,

By:  */s/Lauren A. Moskowitz*

    Lauren A. Moskowitz
    *Attorneys for Plaintiff Epic Games, Inc.*

Dated: December 28, 2020            GIBSON, DUNN & CRUTCHER LLP
    Theodore J. Boutrous Jr.
    Richard J. Doren
    Daniel G. Swanson
    Mark A. Perry
    Veronica S. Lewis
    Cynthia E. Richman
    Jay P. Srinivasan
    Ethan D. Dettmer
    Eli M. Lazarus
    Harry Phillips

Respectfully submitted,

By:  */s/ Jay P. Srinivasan*
    Jay P. Srinivasan
    *Attorneys for Defendant Apple Inc.*

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## E-FILING ATTESTATION

I, Lauren A. Moskowitz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Lauren A. Moskowitz*
Lauren A. Moskowitz

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY