REDACTED VERSION OF
DOCUMENT SOUGHT TO
BE SEALED

# Exhibit 6

# CRAVATH, SWAINE & MOORE LLP

JOHN W. WHITE
EVAN R. CHESLER
RICHARD W. CLARY
STEPHEN L. GORDON
ROBERT H. BARON
DAVID MERCADO
CHRISTINE A. VARNEY
PETER T. BARBUR
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
PHILIP J. BOECKMAN
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO

KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART
AARON M. GRUBER
O. KEITH HALLAM, III
OMID H. NASAB
DAMARIS HERNÁNDEZ
JONATHAN J. KATZ
RORY A. LERARIS
KARA L. MUNGOVAN
MARGARET T. SEGALL

NICHOLAS A. DORSEY
ANDREW C. ELKEN
JENNY HOCHENBERG
VANESSA A. LAVELY
G.J. LIGELIS JR.
MICHAEL E. MARIANI
LAUREN R. KENNEDY
SASHA ROSENTHAL-LARREA
ALLISON M. WEIN
MICHAEL P. ADDIS
JUSTIN C. CLARKE
SHARONMOYEE GOSWAMI
C. DANIEL HAAREN
EVAN MEHRAN NORRIS
LAUREN M. ROSENBERG

—————

SPECIAL COUNSEL
SAMUEL C. BUTLER

—————

OF COUNSEL
MICHAEL L. SCHLER
CHRISTOPHER J. KELLY

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

—————

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1648

WRITER'S EMAIL ADDRESS
lmoskowitz@cravath.com

December 15, 2020

*Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR-TSH (N.D. Cal.)

Dear Jay:

I write to follow up on Epic Games, Inc.'s ("Epic") November 9, 2020 letter and in response to Apple Inc.'s ("Apple") November 23, 2020 Objections and Responses to Epic's First Set of Requests for Production of Documents ("Responses") and Apple's December 1, 2020 letter concerning certain objections by Apple to requests for production in *Cameron* and *Pepper*.[1]

I. **Apple must produce documents responsive to Epic's RFPs to the extent such documents are found during Apple's review of the files of the custodians from *Cameron* and *Pepper*.**

In General Objection No. 2 of its Responses, Apple states that it "will produce non-privileged documents responsive to these requests, to the extent in existence and locatable after a reasonable search of the documents of the individuals who have been designated as custodians in the above-captioned action ('Designated Custodians')". It is unclear what Apple means by its definition of Designated Custodians. There are many custodians originally designated in *Cameron* and *Pepper* for whom document production is ongoing. Those documents are being produced in all actions. There is no basis to withhold documents responsive to Epic's requests from those custodians' files simply because they are not "designated as custodians" in *Epic v. Apple*. Please confirm that, for all document review that has been or will be taking place on any custodian since the date of Epic's first set of document requests, Apple will not be standing on this objection.

—————

[1] Epic's December 9, 2020 letter concerned its requests for certain data. (*See* Request Nos. 3-14, 19, 25-31, 52-53 and 79.) Therefore, those requests are omitted from our discussion herein.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

II.     **Apple must produce documents concerning "consumers, transactions, and activities taking place outside of the United States".**

In its December 1, 2020 letter, Apple restated its objection to producing documents responsive to certain *Pepper* and *Cameron* requests to the extent such documents concern "consumers, transactions, and activities taking place outside of the United States" because such requests are "not relevant to the claims or defenses in this action or otherwise outside the proper scope of discovery". (Apple's Letter at 3.)  In its Responses, Apple similarly objected to producing information about sales outside of the United States for certain Epic requests.

These objections are improper.  In support of its objections, Apple cited the Foreign Trade Antitrust Improvement Act ("FTAIA").  (Apple's 12/1/20 Letter at 2.)  But "the FTAIA does not prohibit the discovery of information that is otherwise discoverable".  *In re Aspartame Antitrust Litig.*, 2008 WL 2275531, at *2 (E.D. Pa. May 13, 2008) (citation omitted); *see also, e.g.*, *In re eBay Seller Antitrust Litig.*, 2008 WL 3925350, at *1 (N.D. Cal. Aug. 22, 2008) (the FTAIA does "not [govern] the discoverability of evidence" "as relevance does not necessarily stop at the shores of the United States").  None of Apple's cited cases even discusses discovery in the context of FTAIA.

Epic has alleged that the relevant markets are worldwide.  (Epic's Complaint, Dkt. 1, ¶ 57 ("The geographic scope of the iOS App Distribution Market is worldwide, as consumers and developers can access iOS worldwide"); ¶ 118 ("The geographic scope of the iOS In-App Payment Processing Market is worldwide, as consumers and developers can access iOS worldwide."); *see also* Evans Decl., Dkt. 62, at 10 n.37.)  Thus, there is no justification for Apple to withhold from Epic documents that are otherwise responsive to the *Pepper* and *Cameron* requests on the basis that such documents concern consumers, transactions, and activities taking place outside of the United States.

The same is true with respect to each Epic request to which Apple asserted this objection:

Epic's Request No. 18 (third-party settlement providers):  Apple has defended IAP on the ground that "[b]ecause of IAP . . . developers are saved the hassle of setting up payment infrastructure to handle transactions in 175 different countries across 45 different local currencies".  (Apple's Answer and Counterclaims, Dkt. 66, at ¶ 12.)  Of course Epic is entitled to discovery on Apple's payment processing practices in those 175 different countries.  Apple cannot assert that IAP is procompetitive on the ground that it facilitates seamless foreign transactions while withholding discovery on those same transactions.

Epic's Request Nos. 56-58, 60 (competition and consumer demand related studies, analyses, and surveys):  As noted, Epic has alleged that the relevant markets are worldwide.  Even Apple has argued that its market power should be assessed based in part on its "share of the global market for smartphone sales".  (Apple's Opp'n to Epic's Mot. For

Preliminary Injunction, Dkt. 73, at 10.)  Apple cannot withhold discovery into competition or lack of competition in this "global market".

        <u>Epic's Request Nos. 61-63 (security and privacy studies, analyses, and surveys)</u>: Apple has argued that "'[i]t is easy to see that a rogue application affecting the operation of a significant fraction of the world's iPhones could substantially disrupt local or even worldwide telephony systems, as well as broad segments of the Internet itself'".  (Apple's Opp'n to Epic's Mot. For Preliminary Injunction, Dkt. 73 at 12.)  There can be no doubt that Apple's security practices—at home or abroad—are highly relevant to Apple's procompetitive justifications.

        To be clear, Epic is not requesting that Apple search the files of additional custodians specifically to find documents concerning sales outside of the United States.  Rather, Epic is asking that Apple not withhold from its production documents on the basis that such documents concern consumers, transactions, and activity outside of the U.S.

        Please confirm that Apple will not withhold such documents on the basis of these objections.[2]

## III.  Apple must search non-custodial sources in response to certain of Epic's RFPs.

        In its Responses, Apple states that it would conduct "a reasonable search of Apple's Designated Custodians' documents" in response to Epic's Request Nos. 15-18, 54.  By their nature, these requests require targeted searches of non-custodial sources.  In refusing to search non-custodial sources in response to these requests, Apple is essentially refusing to produce.

        Request Nos. 15-17 seek certain agreements, and Request No. 18 seeks documents sufficient to show Apple's third-party payment providers.  Although a custodian may have some of these documents, the custodian is unlikely to have all of the documents necessary to satisfy this request.  For example, ███████████████████████████████████████████████ (APL-APPSTORE_09195610.)  Although Apple happened to produce this document from the files of Eric Gray, it was executed by Pete Distad (Apple's VP, Product Marketing), who is not a custodian.  Epic has no way of knowing which other agreements exist or in whose files.  Apple's production in response to these requests—which seek discrete, easily identifiable categories of documents likely to be stored in centralized locations—must be complete, not haphazard.

        Request No. 54 seeks business and strategic plans or presentations concerning competition.  To the extent Apple maintains these discrete, easily identifiable categories of

---

[2] Although Apple's deadline to respond to Epic's Second Set of Requests for Production has not passed yet, for reasons similar to the above, Apple should not withhold documents otherwise responsive to such requests on the ground that such documents concern consumers, transactions, and activities taking place outside of the United States.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

documents in centralized locations, Apple must search for them there. Once again, Epic is entitled to the complete set.

Please confirm that Apple will conduct reasonable searches of non-custodial sources and produce non-privileged documents responsive to these requests.[3]

## IV.   Apple must produce documents from beyond the time period January 1, 2017 through August 13, 2020, for certain requests.

In General Objection No. 15 of its Responses, Apple states that it "will collect and produce documents for the time period January 1, 2017 through August 13, 2020". Although Epic is generally amenable to this limitation, General Objection No. 15 is unreasonable as to certain categories of requests.[4]

*First*, Apple should not apply this limit to non-custodial searches for Request Nos. 15-18, 54. As explained in Section III above, the complete sets for these requests are relevant, even if some of the documents were created outside of the time period January 1, 2017 through August 13, 2020.

*Second*, Epic's "Requests Concerning Apple's Retaliation Against Epic" (Request Nos. 65-70) require searching on and after August 13, 2020 because Apple's retaliation only began on that date. In the interests of compromise, Epic requests that Apple search the files of Trystan Kosmynka, Philip Schiller, Josh Doss, Mark Grimm, Robert Partington, and Mike Schmid through August 20, 2020, as these are the "custodians most likely to have Epic-specific documents" according to Apple (*see* Apple's November 23, 2020 Letter to Epic).

*Third*, Apple should not apply General Objection No. 15 to Epic's Request Nos. 32-38, 43-44, 65-66. These requests concern App Store Review Guidelines created or modified after August 13, 2020. As such, Apple should determine the appropriate custodians whose files should be searched for these requests after August 13, 2020.

Please confirm that Apple will perform these requested searches and will not apply General Objection No. 15 to the above requests. Please also confirm that Apple will not withhold any documents in response to any requests on the basis that the documents fall outside

---

[3] Although Apple's deadline to respond to Epic's Second Set of Requests for Production has not passed yet, for reasons similar to the above, Apple should conduct reasonable searches of non-custodial sources for Request Nos. 82-83 (studies concerning web apps).

[4] We assume that Apple will not apply General Objection No. 15 to Epic's Request Nos. 1-2 (concerning discovery in *Pepper* and *Cameron*) or 64 (documents Apple intends to use in this Action), but please tell us if we are mistaken.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

of the time period January 1, 2017 through August 13, 2020, to the extent such documents appear in Apple's searches.[5]

### V.   Apple should not construe "Apple" to refer to only "Apple Inc. and its employees".

In General Objection No. 14 of its Responses, Apple states that it "will construe the terms 'Apple,' 'You,' and/or 'Your' to refer to Apple Inc. and its employees" and objected to including Apple's "predecessors, successors, subsidiaries . . . affiliates . . . consultants and representatives".

This objection is unreasonable.  Epic lacks sufficient information about Apple's corporate affairs to tailor its requests to particular Apple entities, and it would be inefficient for Epic to separately subpoena every Apple entity.  For example, Request Nos. 15-17 seek certain developer agreements.  Epic does not know whether Apple Inc.—or some Apple subsidiary—is a party to these agreements.  To the extent that any of the agreements responsive to Request Nos. 15-17 are with Apple entities other than Apple Inc., Epic expects that Apple will not withhold such agreements based on General Objection No. 14.

Please confirm that Apple will not withhold any documents based on General Objection No. 14.

### VI.   Apple should not withhold documents concerning hotfixes by developers other than Epic.

Epic's Request No. 67 seeks "All Documents Concerning Hotfixes in Apps distributed through the iOS App Store or the macOS App Store".  Apple states that it will limit its production to "Epic's use of Hotfixes".

This limitation is unreasonable.  In Epic's November 20, 2020 letter to Apple, Epic explained why documents relating to hotfixes by other developers are relevant to Epic's claims and Apple's counterclaims and defenses.  Epic has alleged that Apple retaliated against Epic to maintain its monopolies and foreclose competition, not because of any objection to hotfixes *per se*.  Thus, documents showing Apple's response or lack of response against other developers for similar conduct are clearly relevant.  Epic assumes that Apple has withdrawn this objection, given Apple's November 24, 2020 letter to Epic, stating that "to the extent our review

---

[5] With respect to Epic's Second Set of Requests for Production of Documents, Apple should not apply General Objection No. 15 to Request Nos. 71-78, 80, which concern the App Store Small Business Program that was announced on November 18, 2020—over three months after the cutoff in General Objection No. 15.  Nor should Apple apply General Objection No. 15 to Epic's Request No. 81, which concerns a hotfix by Amazon that appears to have been discovered by Apple in January 2016—almost a year before the starting date of General Objection No. 15.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

encounters additional responsive and non-privileged documents relating to [Amazon's hotfix], they will be produced".

Please confirm that Apple has withdrawn the objection to Epic's Request No. 67, and will produce all non-privileged documents responsive to this request.

* * *

Epic is available to meet and confer with Apple on any of the above-referenced requests, including Request No. 51 (Apple ID), for which Apple specifically stated it is available to meet and confer.  Please advise as to Apple's availability to meet and confer on Friday, December 18, 2020.

Epic reserves all rights, including the right to respond to additional objections in Apple's Responses.

Sincerely,


s/ Lauren A. Moskowitz

Jay P. Srinivasan
GIBSON, DUNN & CRUTCHER LLP
jsrinivasan@gibsondunn.com
AppleAppStoreDiscovery@gibsondunn.com

E. Joshua Rosenkranz
William F. Stute
ORRICK, HERRINGTON & SUTCLIFFE LLP
jrosenkranz@orrick.com
    wstute@orrick.com

Steve W. Berman
Robert F. Lopez
Shana E. Scarlett
Ben Siegel
Ted Wojcik
HAGENS BERMAN SOBOL SHAPIRO LLP
steve@hbsslaw.com
    robl@hbsslaw.com
        shanas@hbsslaw.com
            bens@hbsslaw.com
                tedw@hbsslaw.com

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Mark C. Rifkin
Rachele R. Byrd
Matthew M. Guiney
Brittany N. DeJong
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
rifkin@whafh.com
    byrd@whafh.com
        guiney@whafh.com
            dejong@whafh.com

BY EMAIL

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS'
EYES ONLY