UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>   *Plaintiff, Counter-defendant,*<br><br> v.<br><br>APPLE INC.,<br><br>   *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING APPLE'S REQUEST FOR ADDITIONAL EPIC CUSTODIANS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

 Apple Inc. ("Apple") and Epic Games, Inc. ("Epic" and, together with Apple, the "Parties") respectfully submit this joint letter brief regarding Apple's request that Epic add 3 new custodians to its document collection in this matter.

 Counsel for the Parties have exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter. The Parties can make additional exhibits—including the documents identified in this submission—available to the Court upon request.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP | GIBSON DUNN & CRUTCHER LLP |
| By: */s/ Lauren A. Moskowitz*<br> Lauren A. Moskowitz<br> *Counsel for Epic Games,*<br> *Inc.* | By: */s/ Jay P. Srinivasan*<br> Jay P. Srinivasan<br> *Counsel for Apple Inc.* |

**Apple's Position:** Epic refuses to add three additional custodians requested by Apple who are likely to have unique custodial documents relevant to key issues in the case.[1]  Epic provides no reasonable explanation why adding these custodians is disproportionately burdensome.

        1.        **Joseph Babcock (former Chief Financial Officer)**

Epic's current list of custodians does not include any individual with a key role in Epic's financial operations.  Yet Epic's own Complaint contains a number of allegations regarding the "financial resources it takes [Epic] to develop an app" (Compl. ¶¶ 97 and 148), Epic's "direct financial interest in the iOS In-App Payment Processing Market" (Compl. ¶ 243), as well as the alleged "financial harm" Apple has caused to Epic (Compl. ¶ 21).  Moreover, documents relating to Epic's finances are relevant to Apple's defenses, including that the App Store puts more money into developers' pockets than other software distribution methods.

Having served as Epic's Chief Financial Officer for 13 years prior to his retirement earlier last year,[2] Mr. Babcock possesses documents relating to Epic's financial operations, including discussions of expenses relating to game development, distribution on various platforms, and the economics of the Epic Games Store ("EGS").  From the documents Epic has produced, it is evident that Mr. Babcock played a central role in approving costs relating to distribution of Epic apps, *see, e.g.*, EPIC_00010118 (approving expenses for anti-tampering services for Fortnite on iOS and Android); discussions regarding EGS clawbacks due to payment fraud, *see, e.g.*, EPIC_00009955 (discussing clawback and noting that "[p]ayment fraud is an EXISTENTIAL threat to our store"), EPIC_00009923 (discussing Epic's confirmation of the developer's deactivated security keys for the incident discussed in EPIC_00009955); and Epic's efforts to combat end-user fraud, *see, e.g.*, EPIC_00657014 (discussing Mr. Babcock's role in staffing Epic's fraud support team).  These documents are responsive to at least Apple's RFP Nos. 11, 55, and 47 and relevant both to Epic's claims and to Apple's defenses.

        2.        **Arjan Brussee (Project Lead on Fortnite Mobile and Switch)**

Mr. Brussee likewise appears to occupy a unique position at Epic, particularly relating to the roll out, development, and success of Epic's games on various non-iOS platforms.  Epic contends that the many procompetitive justifications for Apple's challenged conduct—the technological, safety, and ease of development advantages the iOS platform offers—are "pretextual."  Thus, documents relating to Epic's experience with other platforms are clearly relevant, as the Court

---

[1] During the meet and confer process, Apple agreed to remove one individual (David Shaw) from its list of requests, and Epic agreed to add two custodians, Thomas Ko and Ray Park.  If the Court does not require Epic to add more custodians, Apple requests that it be permitted to choose the two additional custodians.  Otherwise, this brief addresses only the custodians still in dispute.

[2] Epic argues that Apple is not entitled to Babcock's documents because Epic decided not to pursue Apple's CFO, Luca Maestri, as a custodian in the case.  Epic does not explain how its own strategic decision to drop Maestri in favor of other Apple custodians—including Apple's current and former CEOs—has any bearing on the Epic custodians to whom Apple is entitled.  In any event, Maestri and Babcock are very differently situated in that Maestri is a current executive to whom apex protections apply, whereas Babcock is a retired former employee.

has already recognized. *See, e.g.*, Sept. 28, 2020 Hr'g Tr. at 47-48 ("Nintendo has had a walled garden. Sony has had a walled garden. Microsoft has had a walled garden. And so in this particular industry, what Apple's doing is not much different.").

Mr. Brussee's LinkedIn bio identifies him as the "project lead on *Fortnite* Mobile and Switch." And documents in Epic's production confirm that Mr. Brussee was a key player in managing Epic's business on non-iOS platforms, including addressing platform oversights and security lapses. *See, e.g.*, EPIC_00028875 (Brussee posing potential explanations for low monetization rates on Android); EPIC_00000743 (Nvidia's GE Force allowed all Epic games to be played without a fee); EPIC_00012579 (leaked Android application package allowed users to download apps pre-release); EPIC_01220217 (Brussee discussed security fixes relating to inadvertently disclosed login tokens). Such documents are key to understanding how other platforms differ from Apple's carefully curated app environment in terms of security, user-friendliness, and cost / expenses to developers, and directly undermine Epic's repeated claim that Apple's concern for "privacy and security safeguards" is but a mere "pretext" and that "less restrictive" mechanisms are "available to ensure the security of third-party applications." (Compl. ¶¶ 83-84.) These documents are responsive to at least Apple RFP Nos. 21, 39, 55, 56, 67, and 94.

### 3. Joe Kreiner (VP of Business Development)

Likewise, Mr. Kreiner appears to play an analogous role with respect to gaming consoles, including serving as Epic's key contact with major gaming companies, including Microsoft, Sony, and Nintendo, regarding business development and policy. *See* EPIC_00126728.

Mr. Kreiner was also involved in efforts to assess cross-platform use among Epic's users. Such documents are directly relevant to fierce competition among platforms, and app marketplaces, which is relevant to market definition and undermines Epic's allegation that the App Store is an "essential facility." *See e.g.*, EPIC_00002199 (discussing Sony's cross platform policy for PlayStation users); EPIC_00194047 (discussing payment options across Microsoft, Sony, Nintendo, PC); EPIC_00585894 (reflecting Mr. Kreiner's role in getting Microsoft on board with a cross-progression). Mr. Kreiner likely has other documents relating to the extent to which *Fortnite* players can choose among a variety of platforms to play and/or make purchases—a key issue in this case. *See* Epic Dkt. 118 ("PI Order") at 18 (observing that *Fortnite*'s "multiplatform nature" suggests other digital distribution channels "may be economic substitutes" for Apple's App Store). Such documents are responsive to at least Apple's RFP Nos. 118, 119, and 130.

* * * *

Epic argues that it should not have to produce relevant documents because Apple's request is "untimely" and the custodians are duplicative. Neither of these arguments withstands scrutiny. Putting aside the fact that Apple's motion is *per se* timely under Local Rule 37-3, Apple made its request for additional Epic custodians promptly after receiving significant document productions from Epic—and within the same time period in which Epic made its parallel requests to Apple.[3]

---

[3] Epic's claim that the "the Parties reached agreement on the Epic custodians" is wrong. On October 20, Apple noted the most obvious omissions from Epic's custodian list—Mark Rein, Epic's co-founder, and Marc Hutcheson, a primary contact with Apple—but at no point did the

Epic received the substantial majority of Apple's production, well more than 3 million documents, on Oct. 12, 2020 (Ex. 1), and did not submit requests for additional custodians until Nov. 10, 2020, nearly a month later. (Ex. 2) In contrast, it was not until the week of Christmas that Epic produced a meaningful amount of documents—accounting for *over 87%* of Epic's entire production to date. (Exs. 3-4) Yet Apple requested custodian additions by Dec. 23, 2020, *before* it had a chance to review this production, relying on the relatively few documents Epic had produced before this time. (Ex. 5) Any "problems" with timing are problems of Epic's own making because Epic's manner of producing documents has deprived (and continues to deprive) Apple of the vital information it needed to make critical assessments about likely custodians. Even today, Apple has not had an opportunity to adequately review Epic's recent productions to make the best assessment possible as to additional custodians; however, given the impending deadlines, Apple has no choice but to request these additional custodians at this juncture to fill the most obvious gaps in Epic's document production based on the limited documents it has reviewed.[4]

Each of the custodians requested by Apple serves a unique and critical role in the case, as described above. The fact that the example documents cited by Apple also reference other Epic custodians is irrelevant—were it not so, Apple would never have seen the documents in the first place. But the roles and sample documents for the requested custodians collectively establish that they certainly possess additional unique information that should be produced.

---

parties reach any final agreement, and Apple always reserved rights to seek additional custodians as more information became available. Nor has Epic produced any evidence of an agreement; to the contrary; Epic's willingness to add two more custodians belies their claim of an agreement that precludes the addition of further custodians.

[4] Apple is willing to meet and confer regarding an appropriate document production schedule for the new Epic custodians. But Epic's comment that it cannot produce documents because it should be focusing on depositions is outrageous when, at the same time, Epic's new custodian requests require Apple to review millions of documents for production after the Jan. 6 deadline from nine custodians, dwarfing Apple's request of Epic, which based on current deduplication and search term hit rates, would require Epic to review a total of around 300,000 documents for all three custodians. If it is now Epic's view that any production after Jan. 6 is inappropriate or unfairly burdensome, then Apple should also be allowed to cease its production after that date.

**Epic's Position:**   Apple raised its request for six additional custodians for the first time on December 23, 2020.  Since then, Apple agreed to drop one of those (David Shaw), and, as a compromise, Epic agreed to add two of the custodians that Apple sought (Thomas Ko and Ray Park).  Apple's eleventh hour request that Epic add three more custodians to the 17 already agreed upon months ago—and the two additions Epic agreed to—should be denied.

Epic provided Apple a preliminary list of potential custodians on September 24, 2020.  Epic began producing documents on October 7, 2020.  On October 16, 2020, Epic sent Apple a letter describing in detail the search protocol it intended to utilize, including an updated list of the 15 custodians whom it believed possess documents most relevant to the issues in this case.  Apple requested that Epic add two individuals—Marc Hutcheson and Mark Rein—as custodians.  On November 3, 2020, Epic agreed to add those two custodians.  Since then, Epic has diligently collected, reviewed and produced documents for the 17 agreed upon custodians.  At no point prior to December 23, 2020 did Apple indicate that it needed additional Epic custodians, even as the Parties negotiated, briefed and argued a dispute regarding additional Apple custodians.  Apple waited nearly two months since the Parties reached agreement on Epic's custodians, requesting six new custodians for the first time less than two weeks before the deadline for completion of document discovery, on the eve of Christmas.

Apple blames the untimeliness of its request on the purported pace of Epic's production, but Epic already refuted this argument in its December 26, 2020 letter (*see* Ex. 6).  Simply put, Apple has provided no meaningful explanation why it could not have raised this request for new custodians weeks or even months ago.  Indeed, to justify its request, Apple initially relied almost exclusively on LinkedIn pages and similar public information available to Apple since the beginning of this case. (Ex. 7.)  Even now, as Apple purports to premise its request on non-public documents from Epic's production, at least half of the documents on which Apple relies in this joint statement were included in Epic's first production on October 7, 2020.  By November 24, 2020, Apple had *thousands* of documents sent by, received by, authored by or mentioning the individuals it now seeks to add:  Babcock, 3,902; Brussee, 13,211; Kreiner, 5,276.[5]

Even if Apple's request could be viewed as reasonable back in September (which Epic disputes), it is unduly burdensome and  disproportionate to the needs of the case *now*, as Epic is transitioning its resources from document discovery to depositions and expert discovery.  Due to the holidays, any new collection of documents could not even have *begun* until this week, coinciding with the deadline to *complete* document production.[6]  Moreover, unlike Thomas Ko and Ray Park, whom Epic agreed to add because it already had partially collected their files for another matter, the files

---

[5] Indeed, those numbers have grown significantly since then, underscoring that the requested custodians are cumulative of existing custodians, as discussed further below.  Specifically, the document counts now are as follows:  Babcock, 10,084; Brussee, 33,967; Kreiner, 29,405.

[6] Apple's attempt to analogize this situation to its own production of certain custodians' documents after January 6, 2021 fails.  Those custodians were requested months ago, and it was *Apple's* representation that it was incapable of producing the documents sooner—not the timing of the request itself—that led Epic to accept such production on a rolling basis after January 6.

of Babcock, Brussee and Kreiner would need to be collected entirely anew. A preliminary analysis indicates that each possesses hundreds of thousands of emails from the requested time period: Babcock, 424,848; Brussee, 253,083; and Kreiner, 260,391 emails. And each likely has tens of thousands of additional non-email files from other sources like Google Drive and instant messages.

Moreover, lateness aside, Apple has not justified the addition of the 3 custodians it now seeks.

**Joseph Babcock.** Mr. Babcock is Epic's former Chief Financial Officer. Apple argues that Epic's existing custodians do not "include any individual with a key role in Epic's financial operations". But that is simply not true, as Epic's custodians already include Epic's CEO, COO, President and two directors. Moreover, Epic has agreed to produce various forms of financial data in response to Apple's RFPs and interrogatories, wherein Apple presumably identified the financial data it believed it needed, so it is unclear what Apple believes Mr. Babcock's presence as a custodian would add to that. As CFO, Mr. Babcock was responsible for Epic's financial accounting and reporting, cash flow, etc.—not for its strategic operational decisions. These issues play no part in this dispute. For this very reason, earlier in the discovery period, Epic dropped at Apple's insistence its own request that Apple designate its CFO, Luca Maestri, as a custodian, given Apple's representation that financial data would be produced from financial databases.[7] Further, the documents Apple cites (three out of four of which were produced to Apple on October 7, 2020) do not support its arguments that Mr. Babcock is in possession of unique documents critical to its case. EPIC_00010118 is an email chain regarding a routine expense approval in which existing custodians Daniel Vogel and Andrew Grant are involved throughout the chain, and the sum total of Mr. Babcock's contribution is to state "This is approved". EPIC_00009955 and EPIC_00009923 are versions of a single email chain regarding chargebacks, and Apple omits that the language it quotes from EPIC_00009955 is a statement by existing custodian Mr. Vogel, not by Mr. Babcock, who is a purely passive copyee of the emails in the chain. Finally, Mr. Babcock's involvement in EPIC_00657014 (the only document of the four produced after October 7) is focused on granting account access to certain customer service representatives to allow them to process refunds, hardly an issue germane to this case, and, in any event, the document was produced from the files of existing custodian Mr. Vogel (Epic's COO).

**Arjan Brussee.** Apple argues that Mr. Brussee "appears to occupy a unique position at Epic" based on his work "relating to the roll out, development, and success of Epic's games" on various platforms. But the same broad statement could be made about virtually any one of Epic's existing custodians. Indeed, to the extent Apple is targeting information about Epic's mobile distribution strategy for *Fortnite* and other games, Mr. Brussee is duplicative of existing custodians Messrs. Malik, Hutcheson, Stolfus and Shobin (the main contacts with Apple and Google); Mr. Grant (as concerns programming for mobile); and Messrs. Sweeney, Vogel, Sussman, Zobrist and Weissinger (Epic's CEO, COO, President, Head of Publishing and Head of Marketing, respectively, as concerns decision-making for Epic's mobile strategy). Apple further states that Epic's productions "contain multiple documents confirming that Mr. Brussee was a key player in managing Epic's business on various non-iOS platforms", but fails to cite any such document. Instead, it cites Mr. Brussee's involvement in emails about isolated security and access-related issues that include existing custodians. It also cites EPIC_00028875, an email chain initiated by

---

[7] During the parties' meet and confer, the only response Apple could muster to its clear goose/gander problem was that Apple and Epic are "different companies".

existing custodian Mr. Hutcheson discussing data about *Fortnite* usage on Android of the same nature as Epic is producing at Apple's request. Indeed, at least two and sometimes three existing custodians (including Messrs. Sweeney, Allison, Rein, Vogel, Grant, Sargent, Hutcheson and Chang) are involved in each of the four email chains Apple cites (two of which were produced to Apple on October 7 and one on October 16, 2020). Thus, far from establishing Mr. Brussee's "unique" position at Epic, the documents Apple cites reinforce that these issues are more than adequately covered by existing custodians and that Apple knew of Mr. Brussee's role months ago.

**Joseph Kreiner.** Apple claims it needs Mr. Kreiner's documents because of his "key" role with respect to the gaming console companies, Sony, Microsoft and Nintendo. But, as evidence of the relevance of gaming consoles, Apple points to its September 8, 2020 Answer (Dkt. 66) and the Court's October 9, 2020 Preliminary Injunction Order (Dkt. 118), which begs the question why Apple first raised the need for a custodian related to consoles in late December. Indeed, Apple had a version of the same slide deck it cites identifying Mr. Kreiner as a contact of the console companies (along with existing custodian Matt Weissinger) on October 7, 2020. *See* EPIC_00018261. In any event, the emails that Apple cites—which were produced to Apple on October 7, November 6 and November 24, respectively—do not support its contention that Mr. Kreiner is likely to possess unique documents. EPIC_00002199 is an email exchange between Mr. Sweeney and Mr. Kreiner that underscores the extent to which Mr. Sweeney himself was closely involved in discussions with Sony regarding cross-play. EPIC_00194047 is an email exchange between Mr. Kreiner and custodian Mr. Zobrist (copying custodian Mr. Stolfus) about the gaming consoles' pricing policies. And EPIC_00585894 indicates that current custodian Mr. Vogel (Epic's COO) was in fact one of the individuals at Epic who was driving the business conversations with Microsoft about cross-progression. In addition, Epic has agreed to produce its agreements with the gaming console companies, as well as data about the extent of cross-play by *Fortnite* users. Apple has not justified why it needs Mr. Kreiner in addition to Epic's current custodians and production commitments, particularly given the untimely nature of its request.

Dated: January 6, 2021                CRAVATH, SWAINE & MOORE LLP
    Christine Varney
    Katherine B. Forrest
    Gary A. Bornstein
    Yonatan Even
    Lauren A. Moskowitz
    M. Brent Byars

Respectfully submitted,

By:     */s/ Lauren A. Moskowitz*

    Lauren A. Moskowitz
    *Attorneys for Plaintiff Epic Games, Inc.*

Dated: January 6, 2021                GIBSON, DUNN & CRUTCHER LLP
    Theodore J. Boutrous Jr.
    Richard J. Doren
    Daniel G. Swanson
    Mark A. Perry
    Veronica S. Lewis
    Cynthia E. Richman
    Jay P. Srinivasan
    Ethan D. Dettmer
    Eli M. Lazarus
    Harry Phillips

Respectfully submitted,

By:     */s/Jay P. Srinivasan*
    Jay P. Srinivasan
    *Attorneys for Defendant Apple Inc.*

## **E-FILING ATTESTATION**

I, Jay Srinivasan, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Jay P. Srinivasan*
Jay P. Srinivasan
