**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br>        *Plaintiff, Counter-defendant,*<br>    v.<br>APPLE INC.,<br>        *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No. 4:11-cv-06714-YGR-TSH |
| DONALD R. CAMERON, *et al.*,<br>        *Plaintiffs,*<br>    v.<br>APPLE INC.,<br>        *Defendant.* | Case No. 4:19-cv-03074-YGR-TSH<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING CUE AND FEDERIGHI DEPOSITIONS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Pursuant to the Court's order (*Epic Games, Inc. v. Apple Inc.* ("*Epic*"), Dkt. 190), the parties in the above-captioned actions respectfully submit this joint letter brief regarding depositions of Eddy Cue and Craig Federighi, two current Apple employees.

    Counsel for Epic Games, Inc. ("Epic"), plaintiffs ("Class Plaintiffs", together with Epic, "Plaintiffs") in *Cameron v. Apple* and *In re Apple iPhone Antitrust Litigation* (the "Class Actions") and Apple Inc. ("Apple", together with Plaintiffs, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve the outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter. The Parties can make additional exhibits—including the documents and testimony identified in this submission—available to the Court upon request.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP | HAGENS BERMAN SOBOL SHAPIRO LLP |
| By: */s/ Lauren A. Moskowitz* <br> Lauren A. Moskowitz <br> *Counsel for Epic Games, Inc.* | By: */s/ Robert F. Lopez* <br> Robert F. Lopez <br> *Counsel for Developer Plaintiffs* |
| WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP | GIBSON DUNN & CRUTCHER LLP |
| By: */s/ Rachele R. Byrd* <br> Rachele R. Byrd <br> *Counsel for Consumer Plaintiffs* | By: */s/ Jay P. Srinivasan* <br> Jay P. Srinivasan <br> *Counsel for Apple Inc.* |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**Plaintiffs' Position:**  The Court should deny Apple's request to block the depositions of current Apple employees Eddy Cue and Craig Federighi.

**Relevant Background:**   On November 25, 2020, Plaintiffs informed Apple of their intent to depose Messrs. Cue and Federighi.  (*Epic*, Dkt. 187-4.)  On December 7, 2020, Apple refused because they are apex witnesses.  (*Epic*, Dkt. 187-5.)  During a meet and confer on December 12, 2020, the Parties remained at impasse.  On December 15, 2020, the Parties submitted a joint letter brief regarding Apple deponents, including Messrs. Cue and Federighi.  (*Epic*, Dkt. 187-3.)  At Apple's request, the Court then deferred the hearing on Messrs. Cue and Federighi until January 21, 2021.  (*Epic*, Dkt. 190.)  Plaintiffs have since proposed to resolve this issue in the context of the Parties' negotiations of Apple's deposition of Epic employees, but Apple declined.

**Argument:**  These cases are about Apple's control of a software platform—the iOS operating system—that gives it substantial market power over app developers and a billion consumers.  Apple designed a set of restrictions that enabled it to acquire and maintain monopolies in two downstream markets where competition can and should thrive:  app distribution and in-app payment processing.  In other words, these cases are about the legality of Apple's "closed garden" business, challenging "the fundamental operation of digital platforms affecting millions of users".  (Dkt. 118 at 1.)  The decision-makers who determine and implement the strategies behind the design and operation of Apple's model are the critical witnesses in these cases.  This is not the type of case where apex witnesses get a pass on depositions, such as a run of the mill business dispute where one side wants to depose a barely-relevant executive to annoy or harass their opponent.  Plaintiffs here seek to depose Messrs. Cue and Federighi because they are the people most knowledgeable about issues that are central to these cases, and are therefore key witnesses.

"[I]t is very unusual for a court to prohibit the taking of a deposition [of an apex witness] altogether absent extraordinary circumstances."  *Moyle v. Liberty Mut. Ret. Ben. Plan*, 2012 WL 5373421, at *3 (S.D. Cal. Oct. 30, 2012) (quotation omitted).  In addressing efforts to block depositions of apex witnesses "courts often consider:  (1) whether or not the high-level deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods".  *Id*.  "With respect to the first consideration, the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed".  *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) (quotation omitted).  With respect to the second consideration, "[f]ormal exhaustion of other requirements is not an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion."  *Id.* (quotation omitted).  Contrary to Apple's cited cases, generally "cases in this district make clear that the burden remains on the party seeking a protective order when the 'apex doctrine' is asserted".  *Hunt v. Cont'l Casualty Company*, 2015 WL 1518067, at *1 n.1 (N.D. Cal. 2015); *see also Finisar*, 2015 WL 3988132, at *2 (same); *Medimmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2640473, at *1 (N.D. Cal. June 30, 2010) (same); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007) (same).  Apple cannot establish extraordinary circumstances that justify precluding the depositions of Messrs. Cue and Federighi.

Eddy Cue (SVP, Internet Software and Services, 2011 to present):  Mr. Cue is personally involved in high-level policymaking on issues critical to these cases.  He is one of two people with "█████ ████████████████████████████.  (Shoemaker Dep. 113:10-115:2.)  According to Apple,

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

"Eddy was instrumental in creating . . . the App Store". (https://www.apple.com/leadership/eddy-cue/.) Apple's internal documents likewise show that Mr. Cue helped establish many foundational policies regarding the App Store and, in particular, the compelled use of Apple's In-App Purchase ("IAP") payment processing service. (*See, e.g.*, APL-APPSTORE_02828808 ▌

▌).) Even where he is not the sole decision-maker, Mr. Cue has expressed unique perspectives on key strategic questions, sometimes at odds with other decision-makers like Phil Schiller. (*See, e.g.*, APL-APPSTORE_09702122 (▌

▌"); *id.* (▌

▌; *id.*

▌; APL-APPSTORE_02005453 (▌

▌); APL-APPSTORE_02827861 (Mr. Cue: "For recurring subscriptions, we should ask for 40% of the first year only but we need to work a few deals to see what is right.").) Mr. Cue appears also to play a key role in stifling competition. (*See, e.g.*, APL-APPSTORE_07087422 (▌

▌APL-APPSTORE_00440552

▌

Apple has argued that Mr. Cue is of "attenuated relevance to the issues in the lawsuit". (*Epic*, Dkt. 187-5.) But *Apple* itself listed him on its initial disclosures. (Dkt. 187-12 at 2.) And Apple's own witnesses repeatedly have deferred to Mr. Cue, which by itself demonstrates he has unique, firsthand knowledge. (*See, e.g.*, Matt Fischer, head of App Store, Dep. 45:7-9 (▌

▌*id.* at 187:1-188:13

▌; *id.* at 334:17-335:6

▌); Phillip Shoemaker, former head of App Review, Dep. 24:23-25:5 (▌

▌Shoemaker Dep. 379:8-17

▌

Apple argues that nine witness on Plaintiffs' list would duplicate some aspect of Mr. Cue's knowledge. This just goes to show how central Mr. Cue is. Plaintiffs need only show that Mr. Cue "may have any first-hand knowledge of relevant facts"—not that he is the *only* one with knowledge. *See Finisar*, 2015 WL 3988132, at *2 ("the party seeking to take the deposition need not prove conclusively that the [apex] deponent certainly has unique non-repetitive information" (quotation omitted)); *id.* at *3 (allowing deposition where CEO could "testify as to his personal opinion about and motives regarding competition with [the potential target]"). Apple's other witnesses—whether testifying pursuant to Rule 30(b)(1) or Rule 30(b)(6)—cannot say what Mr. Cue was thinking when he made crucial decisions. By Apple's own admission, Ron Okamoto and Matt Fischer are "more day-to-day" witnesses who cannot substitute for a key decision-maker like

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Mr. Cue.  Eric Friedman, Trystan Kosmynka, Carson Oliver and Shaan Pruden are more of the same.  As to Scott Forstall, he left Apple almost a decade ago.  Mr. Cook was not involved in nearly as many of the decisions relating to the App Store as Mr. Cue.  As for Phil Schiller, as discussed above, his opinions appear to have diverged from Mr. Cue's on key issues.  Apple does not get to pick who its spokesperson will be and stifle discovery into other individuals who may have contrary views or information.  In any event, Apple has delayed Mr. Schiller's deposition.  After three and a half weeks and multiple follow up requests by Plaintiffs (*see, e.g.*, Ex. 6), Apple offered him on the last day of fact discovery in *Epic* (which is unacceptable and will be the subject of further discussion).[1]  (*See* Ex. 7.)  Apple cannot drag its feet to run out the clock on these key depositions.  *See, e.g.*, *Medimmune*, 2010 WL 2640473, at *2 (permitting deposition of CEO as "discovery [was] set to close in less than a month"); *WebSideStory*, 2007 WL 1120567, at *4 (similar); *Chevron Corp. v. Donziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (similar).

Craig Federighi (SVP, iOS & macOS Software Engineering, 2012 to present):  As the Court is well aware, Apple has fought tooth and nail to keep Mr. Federighi out of these cases.  Apple vehemently opposed and forced Plaintiffs to brief their request to add him as a document custodian (which the Court granted).  (*Epic*, Dkt. 192 at 9.)  And this is not the first time Apple has tried to block a deposition of Mr. Federighi, which Apple lost.  *See Apple Inc. v. Corellium, LLC*, 2020 WL 1849404, at *3-4 (S.D. Fla. Apr. 13, 2020) (ordering Mr. Federighi's deposition).  Mr. Federighi "oversees the development of iOS" along with "the software at the heart of Apple's innovative products, including the user interface, applications and frameworks". (https://www.apple.com/leadership/craig-federighi/.)  He is a highly relevant deponent for the same reasons he is a highly relevant document custodian.

*First*, Mr. Federighi has unique information about Apple's defense that "[i]n the iPhone business model, the commission is the return on Apple's investment in the App Store and the full suite of IP, tools, and services Apple offers to developers." (*Epic*, Dkt. 73 at 19.)  Plaintiffs respond that "Apple does three separate things: it develops and maintains the iOS operating system; it distributes apps through the App Store; and it processes in-app payments for digital content through IAP". (*Epic*, Dkt. 61 at 21.)  Apple still would have a strong incentive to make its developer tools widely available, even if Apple did not control all app distribution and in-app payment processing on iOS, because widely available developer tools make iPhones more attractive to consumers.  (*Id.*)  As head of iOS, Mr. Federighi decides which tools Apple should create; his reasons are thus highly relevant to Apple's defense.

*Second*, Mr. Federighi has unique information about Apple's defense that only by "curating its own App Store—rather than outsourc[ing] the safety and security of Apple's users to Epic (or other third parties)"—can Apple "ensure[] that iOS apps meet Apple's high standards for privacy, security, content, and quality". (*Epic*, Dkt. 66 at 4.)  Plaintiffs argue "[t]here are many methods to secure a platform aside from controlling all consumer app distribution.  Indeed, Apple already has implemented many of those methods on iOS through the OS design, not through App Store

---

[1] Apple's complaint that "Plaintiffs have taken only four [depositions] thus far" is due to Apple's delay.  On December 20, 2020, Plaintiffs sought deposition dates for eight of the remaining 13 witnesses, seeking nine or more depositions to take place before this hearing.  (Ex. 2 at 2.)  But Apple ignored the request.  Contrary to Apple's assertion, Plaintiffs do not argue that "discovery is simply moving too fast", it is that *Apple* is moving too *slow*.  That the *Epic* schedule was ordered "over Apple's objection" does not excuse Apple from complying.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

control." (*Epic*, Dkt. 90 at 6.) The few documents produced from Mr. Federighi's files to date prove he has personal knowledge about this topic, and suggest his views are favorable to Plaintiffs' position. (*See, e.g.*, APL-APPSTORE_09301298 ( ▮▮▮▮▮ ; APL-APPSTORE_09426671 at '6672 ▮▮▮▮▮ ) When Epic served interrogatories on this topic, Apple provided useless non-responses. (*See, e.g.*, Ex. 1 at 25-28 (refusing to answer Interrogatory No. 7 seeking "all synergies . . . that Apple contends result from having the iOS App Store be the only Software Store on iOS", and identifying no tools in response to Interrogatory No. 8, which seeks "all tools utilized by Apple" in app review); Ex. 5 at 5.) Apple argues that C.K. Haun and Philip Shoemaker "spoke fully and effectively to the engineering aspects *of the App Store*" (emphasis added), and that Trystan Kosmynka will testify "on this same subject". But Plaintiffs' argument is that Apple's security measures at the App Store-level add little to Apple's security measures at the operating system-level, which is the level Mr. Federighi is qualified to discuss and Messrs. Shoemaker and Kosmynka are not. As for Mr. Haun, he could not even speak to all of Apple's tools for App Review, much less about iOS. (*See* Haun Dep. 140:20-24 ▮▮▮▮▮ Mr. Haun is not responsible for iOS. (*See id.* at 13:19-25.)

*Third*, Mr. Federighi has unique information about Apple's defense that "Apple's integration of its StoreKit APIs into the App Store software platform (and indeed, the integration of the App Store with the iPhone) . . . offers numerous benefits to consumers and developers". (*Epic*, Dkt. 73 at 21.) As head of iOS, Mr. Federighi should know whether Apple's reasons for integrating iOS, IAP, the App Store, and/or StoreKit, are technical, as Apple suggests, or commercial, as Plaintiffs contend. Contrary to Apple's argument that "Plaintiffs propounded no written discovery asking about how Apple's iOS or App Store is engineered", Plaintiffs did try to get at this information through other means, including by serving RFPs and an interrogatory about this specific issue. But these efforts have gone nowhere. (*See* Ex. 1 at 17-19; Ex. 5 at 4-5.)

*Fourth*, Mr. Federighi has unique information about Apple's strategic decision-making. Simply put, he was in the room where it happened. For example, Mr. Federighi wrote, " ▮▮▮▮▮ " (APL-APPSTORE_09702122.) This logic directly contradicts Apple's argument that it is not a monopolist because consumers can choose between Android and iOS devices, as "[p]eople switch all the time". (8/24/20 Hr'g Tr. 50:13-4.) Plaintiffs have tried to elicit testimony about switching costs during depositions. ▮▮▮▮▮ (Fischer Dep. 289:3-11 (emphasis added).) Mr. Federighi leads the iOS team. Apple ▮▮▮▮▮ but this misses the point. A main reason he is so relevant is precisely because he is *not* another App Store witness.

Apple also argues that Mr. Federighi would duplicate Scott Forstall and Eric Friedman. Mr. Forstall is not a substitute for Mr. Federighi. They held the same position for different time periods.[2] Mr. Forstall left Apple in 2012, and Apple's witnesses claim that Apple has made significant technological progress since then. (*See, e.g.*, Haun Dep. 139:24-140:2 ████████████████████████████████████████████████████████████████ As for Mr. Friedman, his testimony of day-to-day engineering operations is not duplicative of Mr. Federighi, who holds a much higher position with far broader areas of authority. Moreover, Apple has prevented Plaintiffs from testing that argument. Plaintiffs requested dates for Mr. Friedman between December 30, 2020 and January 16, 2021 (Ex. 2 at 2), but Apple gave January 21, 2021 (Ex. 4) (and then moved it back even further to February 1, 2021 (Ex. 6)). Plaintiffs also requested a date for Mr. Forstall over three weeks ago, but Apple still has not provided one. (Exs. 2, 6.)

Apple also argues (again) that Erik Neuenschwander (User Privacy Manager) "can speak equally" on these topics. But the Court has already rejected Apple's attempt to substitute Mr. Neuenschwander for Mr. Federighi. (*Epic*, Dkt. 192 at 9; *see also* Dkt. 173-3 at 2-3.)[3]

Back in December, Apple argued that Plaintiffs should "exhaust the documents" on these topics. (12/15/20 Hr'g Tr. 18:20.) But to date, Apple has produced fewer than 1,000 documents from Mr. Federighi's custodial files. Apple should not be permitted to benefit from its own delay on document production. Further, when Plaintiffs have sought documents specifically relevant to these topics, Apple has denied their existence. (*See* Ex. 3 at 2 ("[Apple] has not identified documents in existence that track specifically and separately Apple's financial investments in [developer tools]").)

It is important that Plaintiffs be permitted to depose Mr. Federighi and that the deposition occur promptly. Opening expert reports are due in *Epic v. Apple* by February 15, 2021. There is no time to put off his deposition further. *See Medimmune*, 2010 WL 2640473, at *2; *WebSideStory*, 2007 WL 1120567, at *4; *Chevron*, 2013 WL 1896932, at *1.

---

[2] Apple has insisted on deposing Epic witnesses with the same role over different time periods.

[3] Nor can Mr. Schiller or Mr. Cook substitute for Mr. Federighi, who has engineering knowledge that the other two lack.

**Apple's position**: Plaintiffs have failed to show that depositions of apex witnesses Eddy Cue and Craig Federighi are necessary. To depose an apex witness, Plaintiffs must show (1) that the witness has unique, firsthand knowledge of relevant facts, and (2) other avenues of discovery have been exhausted without success. Glossing over the rigorous standard for taking an apex deposition, Plaintiffs cite a handful of documents in which Messrs. Cue or Federighi are mentioned or are involved broadly in a particular issue. That may be sufficient to show *relevance*, but it is not enough to show that these individuals have *unique* knowledge such that a deposition is necessary.

Further, Plaintiffs have not yet exhausted the numerous other discovery opportunities to obtain the same information they claim they need from Messrs. Cue and Federighi. Of their sixteen allotted depositions, Plaintiffs have taken only four thus far. They have outstanding requests for over 70 30(b)(6) topics for deposition that will cover many of the topics on which they claim Messrs. Cue and Federighi will speak. As Plaintiffs see it, none of that is material because *they* demanded and, over Apple's objection, received an expedited discovery schedule, and therefore should be relieved of their obligations under the apex-witness doctrine. But having obtained their desired schedule, Plaintiffs cannot be now heard to complain that discovery is simply moving too fast for them to be held to the standard requirements to take apex depositions.

**Legal Standard:** "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Affinity Labs of Tex. v. Apple, Inc.*, No. 09-CV-4436, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (quotation marks omitted). For that reason, "[n]umerous courts have concluded that so-called 'apex depositions' should be carefully scrutinized to avoid the potential for abuse." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-CV-1827, 2011 WL 10967617, at *1 (N.D. Cal. Aug. 1, 2011).

In the context of apex depositions, courts use a burden-shifting framework: once the party seeking to avoid the deposition "first show[s] that [the deponent] is sufficiently high-ranking to merit protection," *Ramirez v. Zimmerman*, No. 17-CV-1230, 2019 WL 2106594, at *6 (S.D. Cal. May 14, 2019), *objections overruled*, 2019 WL 3072307, at *4, "the burden is shifted to the party seeking the deposition to show that it is warranted." *City of Sterling Heights Gen. Empls.' Ret. Sys. v. Prudential Fin., Inc.*, No. 15-MC-146, 2015 WL 9434782, at *2 (E.D. Cal. Dec. 24, 2015); *see also Ramirez*, 2019 WL 2106594, at *6 ("[T]he burden shifts to Plaintiff to show need for [the] deposition."); *Affinity Labs*, 2011 WL 1753982, at *16 (denying apex deposition where the plaintiff had failed to "meet its burden to show that" the deposition was necessary); *Abarca v. Merck & Co.*, No. 07-CCV-388, 2009 WL 2390583, at *4 (E.D. Cal. Aug. 3, 2009) ("[T]he burden-shifting approach provides guidance to this Court.").[4]

The deposing party must then "establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery,

---

[4] To be sure, not all courts adopt the burden-shifting framework. But those decisions that do not are inconsistent with the common formulation that the deposing party must "establish" the elements of the apex-witness doctrine. *Groupion, LLC v. Groupon, Inc.*, No. 11-CV-870, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012). Moreover, regardless of who bears the burden in ordinary circumstances, here, where Plaintiffs have already received an exception to the presumptive ten-deposition limit, the burden should not be on Apple to disprove Plaintiffs' entitlement to specific witnesses within that expanded group of deponents.

such as interrogatories and depositions of other employees, have been exhausted without success." *Groupion, LLC*, 2012 WL 359699, at *2 (quotation marks omitted). The party seeking the deposition must make "a solid, detailed showing" as to each factor. *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. 09-CV-1201, 2011 WL 811731, at *1 (N.D. Cal. Mar. 2, 2011).

"[W]hen a high-ranking official is removed from the daily subject of the litigation," and therefore lacks "first-hand knowledge of the specific" focus of the litigation, an apex deposition is improper. *K.C.R. v. County of Los Angeles*, No. 13-CV-3806, 2014 WL 3434257, at *4, *7 (C.D. Cal. July 11, 2014) (quotation marks omitted). "[T]opics of general application," such as the company's "policies and practices," cannot support a request for an apex deposition. *Anderson v. County of Contra Costa*, No. 15-CV-1673, 2017 WL 930315, at *4 (N.D. Cal. Mar. 9, 2017). Courts "regularly require" that the moving party first pursue "interrogatories, requests for admission, and depositions of lower level employees"—and show that they have failed to produce the needed information—"before allowing the deposition of an apex witness." *Affinity Labs*, 2011 WL 1753982, at *6.

**Discussion:** Plaintiffs cannot make the required showing for deposing apex witnesses Eddy Cue and Craig Federighi. Mr. Cue is the Senior Vice President for Apple's Internet Software and Services. His focus is on the iTunes Store and Apple Music, not the App Store. https://www.apple.com/leadership/eddy-cue/. Mr. Federighi is the Senior Vice President of Software Engineering. He is not, as Plaintiffs claim, the sole "head of iOS," but rather is focused on the engineering side, overseeing software development for all Apple products and supervising multiple engineering teams. There is no dispute that Messrs. Cue and Federighi are sufficiently high-level executives such that Plaintiffs' request to depose them must be assessed under the apex-witness doctrine. The burden therefore shifts to Plaintiffs to demonstrate that Messrs. Cue and Federighi possess unique, non-repetitive knowledge necessary to Plaintiffs' case, and that other discovery efforts have been unsuccessful. They have failed to establish either.

*Exhaustion of Less Intrusive Means:* As a threshold and dispositive matter, Plaintiffs have made essentially no effort to exhaust other avenues of discovery. They ask the Court to excuse their failure on the ground that the discovery schedule is simply too truncated to permit exhaustion of other witnesses and discovery tools. Yet, as noted, Plaintiffs ignore that the compressed discovery schedule is a circumstance entirely *of their own doing*, over Apple's objections. Plaintiffs cannot now protest that the ordinary standard for taking apex depositions does not apply to them because there is no time to exhaust lesser discovery—if this were the rule, movants could routinely avoid the requirements of the apex-witness doctrine by insisting on short discovery schedules.

Plaintiffs cannot show that they have exhausted less intrusive and burdensome means of discovery. They have not propounded any written discovery that would address the issues on which they seek to depose Messrs. Cue and Federighi. For example, Mr. Federighi is head of Apple's software engineering, but Plaintiffs propounded no written discovery asking how Apple's iOS or App Store is engineered at either the software or hardware level. The failure to even attempt to obtain the evidence Plaintiffs say they need from Messrs. Cue and Federighi through written discovery or through narrow 30(b)(6) topics precludes their ability to argue that these means were insufficient.

Plaintiffs also ignore that they have not yet taken the depositions of several key Apple witnesses who work in the same areas as Messrs. Cue and Federighi. For example, Apple has repeatedly explained that Erik Neuenschwander is another high-level executive who can speak equally to the safety provided by the App Store business model and other topics for which Plaintiffs seek to

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

depose Mr. Federighi.  *See Epic*, Dkt. 173-3.  Yet Plaintiffs have declined to depose Mr. Neuenschwander.  Plaintiffs are free to prioritize who they want to depose, but having chosen to forgo deposing the witness Apple identified in early December as the person with desired information, Plaintiffs cannot now claim that Mr. Federighi is a necessary deponent.

Two of the four Apple witnesses who Plaintiffs have deposed so far—C.K. Haun and Phillip Shoemaker—spoke fully and effectively to the engineering aspects of the App Store and, contrary to Plaintiffs' assertion, iOS in general (Haun Dep. 64:4–65:19, 177:5–178:24 (discussing engineering of Apple's private APIs in the App Store), 292:5–293:16 (discussing engineering efforts to confront security threat); 302:2–303:19 (discussing use of developer tools); 112:2-114:17 (highly "technical" discussion of app recognition by iOS); 196:2-197:10 (technical discussion of iOS and APIs)), and app review (Shoemaker Dep. 396:20–412:25).  Plaintiffs are additionally scheduled to depose Trystan Kosmynka, Mr. Shoemaker's successor, on this same subject on January 27.  Plaintiffs offer no explanation for why the testimony of these individuals is insufficient, except to say that Mr. Federighi will speak to security measures "at the operating system-level."  They do not cite any document or testimony to support this assertion.  Notably, both Mr. Shoemaker and Ron Okamoto testified that Mr. Federighi has no involvement with the Executive Review Board, the key committee responsible for the App Store.  (Shoemaker Dep. 114:24–115:2; Okamoto Dep. 107:18–22.)  Plaintiffs' contention that Mr. Federighi's absence from the Executive Review Board makes him a *better* witness in this case strains credulity.

Plaintiffs fare no better with Mr. Cue.  They have already taken the depositions of Mr. Okamoto, who was Vice President of Worldwide Developer relations, and Mr. Fischer, who is the Vice President for the App Store, both of whom have more day-to-day responsibilities for the App Store than Mr. Cue.  Plaintiffs also are scheduled to take the depositions of Scott Forstall, Eric Friedman, Carson Oliver, and Trystan Kosmynka, all of whom are expected to testify regarding the subjects on which Plaintiffs want to depose Mr. Cue, including app marketplaces, competition among those app marketplaces, and the intricacies of the business of the App Store and App Review.  Moreover, Shaan Pruden (also set to be deposed) can testify specifically regarding developer relations.

Most importantly, Plaintiffs are set to depose Phil Schiller, who is *the* apex witness on the App Store.  From the inception of the App Store to the present, Mr. Schiller is the executive most closely associated with the App Store, and has been in charge of it for several years now.  He has submitted multiple detailed declarations in this lawsuit, is expected to be the 30(b)(6) deponent on numerous subjects, and will be deposed for at least ten hours.  Plaintiffs cannot credibly dispute that Mr. Schiller is the primary decision-maker regarding the App Store.  To the extent Plaintiffs are interested in someone else "in the room" where decisions were made, Apple also is making its CEO, Tim Cook, available for a limited deposition.  Plaintiffs protest that Apple is not making Messrs. Cook and Schiller available until February 12 and 15 respectively.  But Plaintiffs did not even request dates for these witnesses until after this hearing was set, indicating that Plaintiffs never had any intention to take these depositions before deciding if Mr. Cue's deposition and Mr. Federighi's deposition were actually necessary, which is antithetical to how the apex-doctrine is supposed to work.[5]

---

[5] Plaintiffs' contention that they sought to schedule the depositions of eight Apple witnesses before this hearing, relying on a letter they sent on December 20, is disingenuous. (*See* Ex. 2.)  Plaintiffs conditioned these depositions on the caveat that "Apple complete production from the files of those deponents at least 14 days prior to their depositions." (*See id.*)  Considering that Apple's document

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

***Unique, Non-Repetitive, Firsthand Knowledge:*** Plaintiffs also fail to carry their burden of showing how each of Messrs. Cue and Federighi possesses "unique, non-repetitive, firsthand knowledge" germane to the issues in the case. Plaintiffs cannot settle on how this prong is even established—for Mr. Cue, they say his deposition is necessary because too many other witnesses overlap with him while, for Mr. Federighi, they say he is necessary because too few do.

<u>Eddy Cue</u>: While Mr. Cue may speak generally to the operation and design of the App Store, he possesses no "unique" or "firsthand" knowledge that requires him to be deposed. To be sure, Mr. Cue, as a high-level executive, has expressed his views regarding the design of the App Store. But the test for an apex deposition is not whether an executive knows information *relevant* to the issues in the case, but rather whether his knowledge is *unique* and *non-repetitive* such that it is appropriate to depose him notwithstanding the potential for abuse. Plaintiffs fail to explain how Mr. Cue's knowledge or experience is unique from other Apple witnesses, including Mr. Schiller.

Instead, Plaintiffs try to change the standard. They argue that the existence of witnesses who "would duplicate some aspect of Mr. Cue's knowledge . . . just goes to show how central Mr. Cue is," contending that the requirement of "unique" and "non-repetitive" knowledge—the standard uniformly set by courts for taking an apex deposition—does not actually mean "unique" and "non-repetitive." But the case they cite, *Finisar*, correctly sets forth that the deponent must have "unique first-hand, non-repetitive knowledge of the facts at issue in the case." *Finisar*, 2015 WL 3988132, at *1. By definition, if, as Plaintiffs concede, other witnesses can adequately speak to the same topic, Mr. Cue's testimony is neither "unique" nor "non-repetitive."

The documents and testimony Plaintiffs cite do nothing to alter this conclusion. Plaintiffs argue that Mr. Cue is "personally involved in high-level policymaking on issues critical to these cases" because, they say, he is currently one of two people with the veto power to reject or approve an app. (Shoemaker Dep. 113:10–115:2.) The other person, of course, is Mr. Schiller, confirming that Mr. Schiller is at least equally capable (if not more so) of testifying to this issue. Other testimony makes clear that Mr. Schiller is the key decisionmaker on the issues germane to this suit, including the prohibition against allowing out-of-app purchases and the termination of Epic from the Apple Developer Program. (Okamoto Dep. 369:3–19, 404:24–405:12.) Plaintiffs further urge that Mr. Cue "helped establish many foundational policies" regarding the App Store, yet the document they cite shows only that Mr. Cue was "looking forward to discussing" Apple's In-App Purchase payment processing service. (APL-APPSTORE_02828808.) It certainly does not speak to any "unique" knowledge on the part of Mr. Cue exclusive of other witnesses.

Elsewhere, Plaintiffs argue that deposition of Mr. Cue is needed because he "expressed unique perspectives on key strategic questions." Yet out of the millions of documents produced, Plaintiffs point to only two such examples—one involving iMessage, a product that has nothing to do with this case (APL-APPSTORE-02005453), and the other addressing AppleTV, a product not at issue in this case (APL-APPSTORE-02827861). That hardly shows that Mr. Cue's knowledge is so unique that he must be deposed.

Plaintiffs seek refuge in soundbites from the recent depositions of Matt Fischer and Phillip Shoemaker. ██████████████████████████████████████████████ (Fischer Dep. 45:7-9.) That is unsurprising—Mr. Cue is a

production was due on January 6, there was no chance that all of these depositions would go forward as requested, and Plaintiffs knew that.

high-level executive; one would expect that an executive sitting on the same committee as a lower level employee would exert more influence. But more germane is that Mr. Fischer testified that [redacted]." (Fischer Dep. 45:2-6.) The testimony thus establishes that Mr. Cue's purported influence on the Executive Review Board is not unique, nor even paramount—it is Mr. Schiller Plaintiffs want (and they will depose him). The other topics noted by Mr. Fischer in his testimony on which Mr. Cue may have some knowledge do not even relate to issues in this case. (*See* Fischer Dep. 187:1–188:13, 334:17–335:6.)

As for Mr. Shoemaker—a former employee who left Apple in 2016—the cited portions from his testimony do not speak to any unique knowledge Mr. Cue would have regarding this case. In the first, Mr. Shoemaker again confirms that Mr. Cue has no testimony to give that is unique from Mr. Schiller's. (Shoemaker Dep. 25:23-26:5.) And in the second, he testifies only that [redacted] (Shoemaker Dep. 379:13-15 (emphasis added).) That does not suggest that Mr. Cue's knowledge is unique—to the contrary, it shows that lower-level employees on his team likely possess the same knowledge.

<u>Craig Federighi</u>:  Any information Mr. Federighi has regarding the design of the App Store is available from other Apple employees, including Mr. Schiller, Erik Neuenschwander, Scott Forstall, and Eric Friedman.

*First*, Plaintiffs point to Apple's observation that its commission represents a return on its many investments. Yet they fail to connect that issue with any documentary or other evidence involving Mr. Federighi, simply asserting that as the purported "head of iOS," he must have information relevant to it. As noted, Mr. Federighi is focused on the engineering side, and thus Plaintiffs are wrong that he would have any relevant (much less unique) knowledge regarding the economics of the App Store. And even if he did, that would not be sufficient to carry the burden on a motion to depose an apex witness—"topics of general application," such as the company's "policies and practices," cannot support a request for an apex deposition. *Anderson*, 2017 WL 930315, at *4.

*Second*, Plaintiffs assert (without evidence) that Mr. Federighi must have unique information about the benefits of Apple's integration of its StoreKit APIs into the App Store software platform. Again, simply pointing to the high-level responsibilities of an executive is not sufficient to compel an apex deposition. *See K.C.R.*, 2014 WL 3434257, at *4. And ironically, Plaintiffs' citation to Mr. Fischer's deposition testimony shows that when asked, Mr. Fischer could *not* recall Mr. Federighi having any unique information about this issue. (Fischer Dep. 201:2–8.)

*Third*, Plaintiffs contend that Mr. Federighi was "in the room where it happened," and thus must have unique information about "Apple's strategic decision-making." That is simply untrue—[redacted] (Shoemaker Dep. 114:24–115:2; Okamoto Dep. 107:18–22), and the fact that he sometimes offered his views on issues confronting the App Store does not make him a decisionmaker. Moreover, "Apple's strategic decision-making" covers virtually every aspect of everything Apple does. Indeed, the first document Plaintiffs cite does not even relate to a feature at issue in this lawsuit. (*See* APL-APPSTORE_02005453 (discussing iMessage).) If Plaintiffs simply want a high-level executive who was in the "room where it happened," they have access to Mr. Schiller. There is nothing "unique" about Mr. Federighi's knowledge in this respect.

Dated: January 19, 2021          FAEGRE DRINKER BIDDLE & REATH LLP
   Paul J. Riehle

   CRAVATH, SWAINE & MOORE LLP
      Christine Varney
      Katherine B. Forrest
      Gary A. Bornstein
      Yonatan Even
      Lauren A. Moskowitz
      M. Brent Byars

   Respectfully submitted,

   By:       */s/ Lauren A. Moskowitz*

      Lauren A. Moskowitz
      *Attorneys for Plaintiff Epic Games, Inc.*

Dated: January 19, 2021

   WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
      Mark C. Rifkin
      Rachele R. Byrd
      Matthew M. Guiney
      Brittany N. DeJong

   Respectfully submitted,

   By:       */s/ Rachele R. Byrd*
      Rachele R. Byrd
      *Interim Class Counsel for Consumer Plaintiffs*

Dated: January 19, 2021          HAGENS BERMAN SOBOL SHAPIRO LLP
      Steve W. Berman
      Robert F. Lopez
      Shana E. Scarlett
      Benjamin J. Siegel

   Respectfully submitted,

   By:       */s/ Robert F. Lopez*
      Robert F. Lopez
      *Interim Class Counsel for Developer Plaintiffs*

Dated: January 19, 2021

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Mark A. Perry
Veronica S. Lewis
Cynthia E. Richman
Jay P. Srinivasan
Ethan D. Dettmer
Eli M. Lazarus
Harry Phillips

Respectfully submitted,

By: */s/ Jay P. Srinivasan*
Jay P. Srinivasan
*Attorneys for Defendant Apple Inc.*

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**E-FILING ATTESTATION**

I, Lauren A. Moskowitz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Lauren A. Moskowitz*
Lauren A. Moskowitz
