# Exhibit F

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 216

1    ** HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER **

2

3                UNITED STATES DISTRICT COURT

4           FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                     OAKLAND DIVISION

6

7    _____

                                        )

8                                        )

     IN RE APPLE iPHONE TRUST           )Civil Action No.

9    LITIGATION                         )4:11-cv-06715YGR

                                        )

10                                       )

11

12

13               ZOOM VIDEOTAPED DEPOSITION OF

14                MATTHEW FISCHER, VOLUME II

15                  Hillsboro, California

16                Thursday, January 7, 2021

17

18

19

20

21

22

23

     Reported by:

24   LORI M. BARKLEY, CSR No. 6426

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 217

1          UNITED STATES DISTRICT COURT

2       FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                OAKLAND DIVISION

4

5

_____

6                                    )

                                     )

7    IN RE APPLE iPHONE TRUST        )Civil Action No.

     LITIGATION                      )4:11-cv-06715YGR

8                                    )

                                     )

9

10

11          Zoom Videotaped deposition of MATTHEW

12   FISCHER, Volume II, taken on behalf Plaintiff, at

13   Hillsboro, California, beginning at 8:38 a.m., and

14   ending at 2:42 p.m., on Thursday, January 7, 2021,

15   before LORI M. BARKLEY, Certified Shorthand Reporter

16   No. 6426.

17

18

19

20

21

22

23

24

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 218

```
 1   APPEARANCES:

 2

 3   For Plaintiff Epic Games, Inc.:

 4      CRAVATH SWAINE & MOORE

 5      BY:  JOHN I. KARIN

 6      BY:  LAUREN KLOSS

 7      Attorneys at Law

 8      825 Eighth Avenue, Suite 4043B

 9      New York, New York 10019

10      jkarin@cravath.com

11      lkloss@cravath.com

12

13   For Apple and the Witness:

14      GIBSON DUNN & CRUTCHER LLP

15      BY:  CYNTHIA RICHMAN

16      BY:  DANA LI

17      Attorneys at Law

18      1881 Page Mill Road

19      Palo Alto, California 94304

20      crichman@gibsondunn.com

21      dli2@gibsondunn.com

22

23

24

25
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

                                                   Page 219

```
 1    APPEARANCES (CONTINUED):

 2

 3    For Consumer Class Plaintiffs

 4        WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

 5        BY:  MARK RIFKIN

 6        BY:  KATE MCGUIRE

 7        BY:  JENNY Y. DUPONT

 8        Attorneys at Law

 9        270 Madison Avenue, 10th Floor

10        New York, New York 10016

11        (212) 545-4600

12        rifkin@whafh.com

13        dupont@whafh.com

14        kmcguire@whafh.com

15

16    For Developer Plaintiffs in the Cameron Matter:

17        HAGENS BERMAN SOBOL SHAPIRO LLP

18        BY:  ROB LOPEZ

19        Attorney at Law

20        1301 Second Avenue, Suite 2000

21        Seattle, Washington 98101-1214

22        (206) 623-7292

23        robl@hbsslaw.com

24

25
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

**Page 220**

```
 1   APPEARANCES (CONTINUED):

 2

 3   For Apple Inc.:

 4       BY:  SCOTT B. MURRAY

 5       Attorney at Law

 6       1 Infinite Loop

 7       Cupertino, California 95014

 8       (408) 783-8369

 9       scott_murray@apple.com

10

11   For Developer Plaintiffs:

12       SAVERI & SAVERI

13       BY:  TRAVIS L. MANFREDI

14       Attorneys at Law

15       706 Sansome Street

16       San Francisco, California 94111-1731

17       travis.l.manfredi@gmail.com

18

19

20

21   Videographer:  Cyril Suszckiewicz

22

23

24

25
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 285

1      Q.   So Mr. Fischer, you should be able to see

2   and tell us when it's loaded, an analyst report from

3   Goldman Sachs from June of 2013.  Tell us when you

4   have that in front of you?

5      A.   This is Exhibit 0079; is that right?

6      Q.   Correct.  This is exhibit 79 and it should

7   be the Goldman Sachs analyst report.

8           (Exhibit 79 was marked for identification and

9      is attached hereto.)

10          THE WITNESS:  Okay.

11  BY MR. RIFKIN:

12     Q.   Okay, have you seen this before?

13     A.   If you can give me just a minute for look

14  through it.

15     Q.   Would it be helpful if I showed you the

16  e-mail from Mr. Schiller to you dated June 20, 2013?

17     A.   Yes, that would be very helpful.

18          MR. RIFKIN:  Kate, why don't you put up

19  2311.  So this is Exhibit 80 now.

20          (Exhibit 80 was marked for identification and

21      is attached hereto.)

22          MS. MCGUIRE:  Sure thing.

23          (Technology discussion).

24  BY MR. RIFKIN:

25     Q.   Okay.  You see the e-mail -- Exhibit 80 is

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 286

5        Now, does that refresh your recollection

6    that you saw this Goldman Sachs report

11   report that discussed switching costs?

12       A.    No, I do not.

13       Q.    Okay.  Do you know what switching costs are?

14       A.    I think as it relates to this report, I

15   could --  I could venture a guess at what switching

16   costs are.

17       Q.    Okay.  You understand that's the cost a

18   consumer would have to incur to move from an iOS

19   device to another kind of device like for example, an

20   Android device.

22       A.    I don't know what the word "cost" means,

23

25       Q.    So for example -- okay, can you, can you

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 287

1    take the -- the native apps that you've downloaded

2    and I don't mean you, I mean can anyone, can a

3    customer, take the native apps that he or she

4    downloaded on to his or her iPhone and migrate them

5    over to Android device and switch from Apple to the

6    Android environment?

7        A.   I believe that there are tools that exist to

8    help customers, you know, migrate their data and --

9    and I don't know if it's apps as well, when switching

10   from, you know, one operating system to another,

11   whether that's, you know, iPhone to Android or vice

12   versa.

13       Q.   Okay.  Now, the Goldman report says the cost

14   of switching platforms is significant and indeed it

15   was not possible to transfer all of our content.

16            Have you ever tried to do that, to switch

17   data from an Apple device to Android device?

18       A.   I have not tried to do that personally, no.

19       Q.   Okay.  And Goldman Sachs says the explicit

20   switching costs of switch, of our switch totals

21   $79.85 in June of 2013.

22            Do you -- do you have any basis to know

23   whether that figure is accurate or inaccurate as of

24   June 2013?

25       A.   Should I be switching back to the previous

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 288

1   exhibit?  I --

2       Q.   Sure.  If you want to look at Exhibit 79

3   that would be helpful.  And I'm reading from the

4   first page.

5       A.   All right.  So I'm back in Exhibit 79.

6            Could you repeat your question?

7       Q.   Sure.  And I'm reading from the paragraph

8   under the heading Implications.  Goldman Sachs says

9   that (as read):

10           The explicit switching costs of

11           our switch total $79.85.

12           And I'm asking you if you have any basis to

13   know whether that was accurate or not as of June

14   2013?

15      A.   I don't know.  I wasn't involved in the

16   creation of this report.

17      Q.   Okay.  Well, have you ever seen any -- any

18   measure or estimate of switching costs from -- from

19   an Apple device to Android device, other than that?

20      A.   I don't -- I don't recall seeing anything

21   like this.  I mean, this is quite an old report and I

22   believe that there have been quite a few developments

23   since 2013 to make it easier for customers to switch

24   from, as I mentioned, one operating system to

25   another.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 289

1         But as I said, that's not something that

2    I've personally done myself.

3         Q.   Is that part of your responsibility to drive

4    top line growth, to be aware of the ease with which

5    customers can switch from one device, an Apple

6    device, to an Android device?



12        Q.   Okay.  And do you know what the switching

13   cost is today, do you have any estimate of what the

14   switching cost is today?

15        A.   I don't know how it's possible to determine

16   a definitive switching cost.  It probably depends on

17   the -- on the actual user.  The customer, and what

18   type of apps they have on their phone that they want

19   to switch over.

20        Q.   So when you said that there have been some

21   recent developments that make it easier, to the best

22   of your knowledge what -- what developments were you

23   thinking of that make it easier for a customer to

24   switch now from an Apple device to Android device?

25        A.   I remember seeing some apps over the past

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 290

1    several years that focused on helping customers, in

2    this case that are on -- new customers to iOS, to

3    migrate their data over from their Android phone.

4              I don't recall the names of the apps

5    specifically, but I recall seeing -- seeing, you

6    know, one or two apps like that over the past several

7    years.

8         Q.   Okay.  But you don't recall any of them as

9    you sit here today?

10        A.   I don't -- I don't remember the names, and

11   again, that's personally not something that I've

12   done.

13        Q.   Okay.

14             MR. RIFKIN:  Kate, let's pull up another

15   document, 09708562.

16        Q.   Mr. Fischer, just let us know when it's

17   loaded on to your system.

18        A.   Okay.

19             (Exhibit 81 was marked for identification and

20        is attached hereto.)

21             (Technology discussion.)

22   BY MR. RIFKIN:

23        Q.   Mr. Fischer, if you could let us know when

24   you have that up.

25        A.   Is this Exhibit 81?

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 414

1  STATE OF CALIFORNIA       ) ss.

2  COUNTY OF LOS ANGELES     )

3

4          I, Lori M. Barkley, CSR No. 6426, do hereby

5  certify:

6          That the foregoing deposition testimony

7  taken before me at the time and place therein set

8  forth and at which time the witness was administered

9  the oath;

10          That the testimony of the witness and all

11  objections made by counsel at the time of the

12  examination were recorded stenographically by me, and

13  were thereafter transcribed under my direction and

14  supervision, and that the foregoing pages contain a

15  full, true and accurate record of all proceedings and

16  testimony to the best of my skill and ability.

17          I further certify that I am neither counsel

18  for any party to said action, nor am I related to any

19  party to said action, nor am I in any way interested

20  in the outcome thereof.

21          IN WITNESS WHEREOF, I have subscribed my

22  name this 8th day of January, 2021.

23

24

25  LORI M. BARKLEY, CSR No. 6426

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED