1
2
3                    UNITED STATES DISTRICT COURT
4                  NORTHERN DISTRICT OF CALIFORNIA
5
6

| | |
|---|---|
| 7  IN RE APPLE IPHONE ANTITRUST LITIGATION | Case No.  11-cv-06714-YGR   (TSH) |
| 8 | |
| 9 | **PUBLIC VERSION OF JANUARY 26, 2021 DISCOVERY ORDER AT 11-6714 ECF NO. 392, 19-3074 ECF NO. 264, 20-5640 ECF NO. 291** |
| 10 | |
| 11 | Re: Dkt. Nos. 371, 372, 376 |
| 12  DONALD R. CAMERON, et al., | Case No.  19-cv-03074-YGR   (TSH) |
| 13                      Plaintiffs, | |
| 14           v. | Re: Dkt. Nos. 241, 242, 247 |
| 15  APPLE INC., | |
| 16                      Defendant. | |
| 17  EPIC GAMES, INC., | Case No.  20-cv-05640-YGR   (TSH) |
| 18                Plaintiff and Counter-defendant, | |
| 19           v. | Re: Dkt. Nos. 261, 262, 269 |
| 20  APPLE INC., | |
| 21                Defendant and Counterclaimant. | |

22
23          The Court held a hearing on January 25, 2021 on three joint discovery letter briefs in these
24   related actions and now issues the following order.
25   **A.      Apple's Subpoena to Samsung (11-6714 ECF No. 376; 19-3074 ECF No. 247; 20-5640 ECF No. 269)**
26          Apple moves to compel Samsung Electronics America, Inc. ("Samsung") to produce
27   documents responsive to RFP 5 in its October 30, 2020 subpoena.  The RFP seeks:
28

DOCUMENTS CONCERNING EPIC's distribution of APPS through YOUR APP MARKETPLACE or otherwise on YOUR HANDHELD DEVICES or NON-HANDHELD DEVICES, INCLUDING any DOCUMENTS CONCERNING:

> a. EPIC's decision to distribute Fortnite through YOUR APP MARKETPLACE;
>
> b. the pre-installation of any EPIC APP on YOUR HANDHELD DEVICES or NONHANDHELD DEVICES;
>
> c. co-marketing efforts, campaigns, or initiatives between YOU and EPIC;
>
> d. all support YOU have given EPIC in order to promote, market, and/or advertise any EPIC APP;
>
> e. all technical support YOU have given EPIC in order to optimize its APPS to run on YOUR HANDHELD DEVICES or NON-HANDHELD DEVICES;
>
> f. the ability and/or tendency of YOUR HANDHELD DEVICE users to choose between a payment and purchase functionality provided by YOU and EPIC; and
>
> g. the availability of EPIC APPS on, and tendency of users to download EPIC APPS from, any other APP MARKETPLACE, INCLUDING Epic's Fortnite Installer and APP MARKETPLACES on both HANDHELD DEVICES and NONHANDHELD DEVICES.

Apple states that "[d]uring meet and confer, Apple agreed that as to documents that may be in both Epic's and Samsung's possession, Apple would first seek those documents from Epic. Thus, Apple's and Samsung's meet and confer discussions – as well as this motion – focuses only on documents that would *not* be in Epic's possession, custody or control."  Letter Brief at 2 (emphasis original).

Apple explains that it "seeks to enforce RFP 5 only to the extent it requests Samsung's internal analyses and decision-making concerning distribution of *Fortnite* on Samsung's devices. The RFP would capture, for example, documents about the #FreeFortnite collaboration between Samsung and Epic, as disclosed by recent media reports."  *Id.* at 3.  Apple argues that "[d]iscovery obtained from Epic to date suggests that [redacted]  *Id.*  Apple also argues that "[d]ocuments responsive to RFP 5 will also bear on Apple's responses to Epic's tying claim.  Epic claims that Apple unlawfully 'coerces' app developers to use Apple's IAP functionality to sell in-app content."  *Id.*  Apple contends that [redacted] will support Apple's procompetitive justifications.

United States District Court
Northern District of California

1  *Id*. at 3-4.  And Apple says it has a substantial need for this information because, having agreed

2  that Samsung need not produce information that Epic also has, by definition everything Apple

3  now seeks is solely in Samsung's possession.

4      Samsung argues that its internal analyses and decision-making concerning the distribution

5  of *Fortnite* on its devices are irrelevant.  Samsung says that its views on where competition exists

6  and whether it is sufficient are not relevant to whether Apple has committed antitrust violations.

7  *Id*. at 5-6.  Samsung also argues that even if Apple could show relevance, it cannot show

8  substantial need under Rule 45(d)(3).  Samsung argues that its internal assessments of competition

9  are not critical to Apple's case.

10      The Court finds that Apple's subpoena seeks confidential commercial information within

11  the meaning of Rule 45(d)(3)(B)(i).  The requested documents "are plainly the sort of information

12  [Samsung] would not disclose to competitors."  *In re eBay Seller Antitrust Litig*., 2009 WL

13  10677051, at *4 (W.D. Wash. Aug. 17, 2009).  Apple does not argue otherwise and indeed cites

14  documents obtained from Epic in discovery that tend to emphasize the competitive sensitivity of

15  the requested documents.

16      The Court must then determine whether Apple has shown a "substantial need" for these

17  documents under Rule 45(d)(3)(C)(i).  At oral argument, in response to the Court's questions

18  about the relevance of these documents, Apple more fully explained its theory of relevance, an

19  explanation that the Court found helpful in understanding Apple's position.  By way of

20  background, market definition is a contested issue in the *Epic* case.  Epic has argued that iOS

21  should be considered the relevant market, there are disputes about whether the relevant market is

22  limited to mobile devices, and Apple has argued that other platforms aside from iOS are part of the

23  relevant market.  None of that has been determined yet, and Judge Gonzalez Rogers' order

24  regarding the preliminary injunction noted that further factual development was needed on those

25  issues.  In pressing for the current discovery, Apple takes the position that the relevant market is

26  Epic alone.  In other words, Apple is not contending that the ability of some defined group of app

27  producers to distribute their apps through other platforms is the proper focus of antitrust analysis.

28  Rather, Apple says the proper focus of antitrust analysis in the *Epic* case is whether this one

United States District Court
Northern District of California

particular company can do so, ignoring entirely what options are available for all other companies. Apple says that this Epic-focused discovery is the appropriate discovery into the relevant market. Apple did not admit this, but the form of its argument seems to acknowledge that if the relevant market is any bigger than just this one named plaintiff – for example, if it were large game company app developers – then RFP 5 is a quirky deep dive into Samsung's relationship with one participant in the market.  If the market includes dozens or hundreds of app producers, then the ability *this particular company* has to distribute its apps on other platforms is barely relevant to the antitrust claims at issue, which focus on the effect Apple's policies have on a market, not just one competitor.  That is particularly true because Apple acknowledges that Epic is not representative of other participants.  So, if the market is any bigger than this one company, the relevant discovery would have to be about the general availability of other ways to distribute apps, or at least certain kinds of apps, and in general what kinds of commission structures or policies apply.  But Apple firmly takes the view that in the *Epic* case, the relevant market is Epic alone. Apple also explained that it has subpoenaed many third parties, including other game platforms (such as Sony, Microsoft, Nintendo, Amazon and others), and that this discovery is similarly focused on Epic alone.

For two reasons, the Court finds that Apple has not established a "substantial need" for the requested documents.  First, assuming Apple is right about market definition, the requested documents still have only minimal relevance.  Apple says it is taking discovery into Epic's ability to distribute *Fortnite* on other platforms, but the current motion to compel seeks documents and information that are unknown to Epic.  Remember:  Apple told us that this motion focuses only on documents that would *not* be in Epic's possession, custody or control.  Any factual information about Epic's ability to distribute its apps through Samsung, and any restrictions or conditions that Epic must abide by, would be known to Epic and revealed in its documents.  Indeed, looking through the various subparts of RFP 5, most of them seem to be things Epic would know about and have documents about, e.g., "Epic's decision to distribute Fortnite through your app marketplace," "co-marketing efforts, campaigns, or initiatives between you and Epic," "all support you have given Epic," "all technical support you have given Epic."  Not captured in Epic's

United States District Court
Northern District of California

1   document production would be confidential, internal Samsung analysis of the arrangement with

2   Epic.  That would be highly sensitive competitive information, but also simply less relevant to

3   factual questions about Epic's ability to distribute apps on other platforms.  Accordingly, even

4   under Apple's definition of the relevant market, Apple has not shown a "substantial need" for

5   Samsung's competitively sensitive internal documents.

6        Second, Apple's definition of the relevant market, which is the linchpin that would make

7   the requested documents relevant at all, seems inconsistent with Judge Gonzalez Rogers' order on

8   the preliminary injunction.  In ruling on discovery issues, and in particular to assess "substantial

9   need," the Court must sometimes dip its toe into the merits of the case, which inform the

10  consideration of how relevant the requested documents are.  Recognizing that Judge Gonzalez

11  Rogers has not yet determined what the relevant market is, she did explain in her order that

12  "[a]ntitrust law is not concerned with individual consumers or producers, like Epic Games; it is

13  concerned with market aggregates."  20-5640 ECF No. 118 at 19; *see also id*. at 19-20 ("Thus, the

14  market definition rests on factual questions regarding the nature of the iOS market as a whole . . .

15  Neither party adequately addresses these factual questions.  Epic Games assumes all iOS

16  customers are the same, and Apple assumes that only Epic Games customers are relevant.").  The

17  requested documents would therefore seem to have very limited relevance because they are all

18  about one specific app producer:  Epic.  At oral argument, Apple acknowledged that Epic is not

19  representative of app companies generally, or even game app companies generally.  Rather,

20  because of Epic's size, its arrangement with Samsung is *sui generis* and cannot serve as a stand in

21  for some larger category of market participants.  This means that the requested documents are

22  idiosyncratic to Epic itself and unlikely to be important evidence of competition in a market or the

23  effect of Apple's policies on any sort of market, however the market may ultimately be defined.

24  This precludes a finding of "substantial need."

25        Accordingly, Apple's motion to compel is denied.

26  **B.    Tim Cook's Deposition (11-6714 ECF No. 372; 19-3074 ECF No. 242; 20-5640 ECF No. 262)**

27        Plaintiffs want to depose Apple's CEO, Tim Cook.  Apple invokes the apex doctrine.  *See*

28

*generally Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (summarizing the apex doctrine). However, this dispute is less than meets the eye. In general, the apex doctrine limits the length of a deposition, rather than barring it altogether, because of the heavy burden a party faces in blocking a deposition entirely. *See id.* For this witness, both sides appear to understand that. Plaintiffs assert that under the Coordination Order they are ordinarily entitled to depose a witness under Rule 30(b)(1) for ten hours, but they offer to compromise by limiting Cook's deposition to eight hours in recognition of his apex status. Apple asserts that Plaintiffs are not entitled to depose Cook at all, but offers to compromise at four hours. So, the dispute is whether he should be deposed for four hours, eight hours, or some length of time in between.

There isn't a legal principle that is going to answer that question. The inquiry has to be a practical one. Here, several factors lead the Court to conclude that Cook's deposition should be seven hours of record time. First, an important focus of the apex doctrine is whether the witness has unique, non-repetitive knowledge of the facts of the case. But in these three antitrust actions, the facts of the case go way beyond the historical facts of what happened and when. These cases challenge an important aspect of Apple's business model – the closed, integrated App Store and its policies and commission structure – and the parties are fighting about the relationship between different markets (e.g., app distribution, in-app purchases, hardware, operating systems) and the extent to which competition in some of those markets restrains behavior in others. These topics seem to embrace much of Apple's business model. There is really no one like Apple's CEO who can testify about how Apple views competition in these various markets that are core to its business model. Further, even if we train our attention more narrowly to the App Store and its policies, Apple's business justification defense is ultimately a matter of corporate opinion and judgment. It involves tradeoffs and prioritizing certain concerns over others. These three related cases, in other words, do not involve the traditional apex inquiry into the witness's participation in or knowledge about this or that historical decision. The antitrust claims presented here implicate the competition the company faces and important aspects of its business model. The CEO's understanding of these subjects is almost by definition unique and non-repetitive.

Second, Plaintiffs have demonstrated that this deposition will be meaningful.  They have shown that [redacted].  Plaintiffs have also shown that Cook has testified before Congress on issues relevant to these cases.  In other words, Plaintiffs have put forth enough factual information to show that a deposition of ordinary length would not be abusive or harassing.

Finally, under Rule 30, seven hours is the default rule for how long a witness must suffer being deposed.  Plaintiffs have shown they can make good use of that time, but they have not shown that Cook's deposition should be longer than a regular one.  The Court understands that the Coordination Order set a presumptive rule of 10 hours per individual deponent, but the Court does not understand the Coordination Order to have addressed issues specific to an apex witness.  And the parties, in the respective proposals here, seem to have the same view.  For Cook, the Court finds that under the apex doctrine, a deposition of longer than seven hours is unjustified.

## C.      Cue and Federighi Depositions (11-6714 ECF No. 371; 19-3074 ECF No. 241; 20-5640 ECF No. 261)

Plaintiffs seek to depose Eddy Cue and Craig Federighi, two of Apple's Senior Vice Presidents.  Apple objects, citing the apex doctrine.  The dispute as presented to the Court is all-or-nothing.  Apple seeks to block these depositions entirely, and neither side proposes limiting the number of hours.

Four legal points guide the Court's analysis.  First, as Judge Grewal observed, the apex "doctrine's common application to the classic paradigm of a single-hierarchy corporate structure [is] ill-suited to determining apex status and the resulting bounds of appropriate discovery in the case of a large, multi-national corporation."  *Apple*, 282 F.R.D. at 263.  For "[a] company of global proportions," "the two-prong test for first-hand, non-repetitive knowledge and for the party's attention to other, less intrusive discovery methods," must also be measured against "the person's degree of 'apex-ness' in relation to these factors."  *Id*.  Here, Cue and Federighi are not classic apex witnesses.  *See, e.g., DR Systems, Inc. v. Eastman Kodak Co.*, 2009 WL 2973008, *2 (S.D. Cal. Sept. 14, 2009) ("[W]hen a party seeks to take the deposition of an official at the highest level or 'apex' of a corporation, the court may exercise its authority under the federal rules to limit discovery.");  *Celerity, Inc. v. Ultra Clean Holdings, Inc.*, 2007 WL 205067, *3 (N.D. Cal.

Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates tremendous potential for abuse or harassment.").  As described by Apple, Cue is the SVP of Internet Software and Services, and Federighi is the SVP of Software Engineering.  Those are important jobs that are high up in Apple's management structure, but these witnesses are not a CEO or the head of an agency.  Because of their lesser degree of apex-ness, less is required to justify their depositions.

Second, the apex doctrine is not written down in the Federal Rules of Civil Procedure.  It is really just an application of Rule 26's requirements of relevance and proportionality and protecting a person from abuse or harassment.  When a lawsuit concerns important aspects of a company's business model that are plainly the result of high-level executive decisions, we should expect that high-level executives will be deposed, and their testimony will be relevant and proportional, and the depositions will not be abusive or harassing.  These lawsuits satisfy this standard, and Apple does not disagree.  As noted above, Apple has offered its classic apex witness, Tim Cook, for four hours of deposition.  Apple has also offered Phil Schiller for deposition, whom Apple describes as "*the* apex witness on the App Store."  Letter Brief at 10 (emphasis original).  So, this is not a lawsuit by someone who slipped on a banana peel in the produce aisle at Safeway and now seeks to depose Safeway's CEO.  Everyone agrees apex depositions are warranted here, and the dispute is just over which ones.

Third, under the case law, "it is very unusual for a court to prohibit the taking of a deposition [of an apex witness] altogether absent extraordinary circumstances." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 2012 WL 5373421, at *3 (S.D. Cal. Oct. 30, 2012) (quotation omitted).  Apple's attempt to block Cue and Federighi's depositions entirely thus swims against precedent.

Fourth, in applying the standard two-factor test (unique, non-repetitive information and resort to other forms of discovery first), "[w]ith respect to the first consideration, the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, 'where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed.'" *Finisar Corp. v. Nistica, Inc.*, 2015 WL

3988132, *2 (N.D. Cal. June 30, 2015) (quoting *Grateful Dead Prods. v. Sagan*, 2007 WL 2155693, *1 n.5 (N.D. Cal. July 26, 2007)).  As to the second prong, "[f]ormal 'exhaustion' of other requirements is not 'an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion.'"  *Id*. (quoting *Hunt v. Continental Cas. Co*., 2015 WL 1518067, *2 (N.D. Cal. Apr. 3, 2015)).

Taking these factors into account, Plaintiffs have justified deposing Cue and Federighi. They have provided evidence of Cue's important role in creating the App Store and his role in approving or rejecting apps.  They have shown his personal involvement in decisions concerning in-app purchasing and other conduct Plaintiffs contend is anticompetitive.  They have cited testimony by other Apple witnesses identifying Cue as someone with relevant knowledge on important issues in the case.  In the *Epic Games* lawsuit, Apple listed Cue in its initial disclosures as an individual likely to have discoverable information.  20-5640 ECF No. 187-12.  Federighi's role as SVP for Software Engineering logically makes him an important witness on Apple's business justification defense.  Plaintiffs have provided evidence of his personal involvement in discussions involving apps and security, an important aspect of that defense.  His role at the company likely gives him knowledge about whether Apple's reasons for integrating iOS, in-app purchasing, the App Store and other features are technical, as Apple suggests, or commercial, as Plaintiffs contend.  Plaintiffs have also cited evidence of Federighi's involvement in conduct that they maintain is anticompetitive.  Given the lesser degree of apex-ness for these two witnesses, there are no further exhaustion hoops that Plaintiffs need to jump through to take these depositions; this showing is sufficient.  Apple's apex objection is overruled.

**IT IS SO ORDERED.**

Dated:  January 26, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

9