Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS S. HIXSON, MAGISTRATE JUDGE

EPIC GAMES, INC.,                    )
                                     )
            Plaintiff,               )
                                     )
  VS.                                ) NO. 20-cv-05640 YGR (TSH)
                                     )
APPLE, INC.,                         )
                                     )  San Francisco, California
            Defendant.               )
                                     )
_____  )

                              Monday, February 1, 2021

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES</u>**:  (By Zoom Webinar)

For Plaintiff:

                CRAVATH SWAINE & MOORE, LLP
                825 Eighth Avenue
                New York, New York  10019
            BY: **LAUREN A. MOSKOWITZ, ESQ.**


For Defendant:

                GIBSON DUNN AND CRUTCHER,LLP
                333 South Grand Avenue
                Los Angeles, California  90017
            BY: **JAY P. SRINIVASAN, ESQ.**



Reported By: **BELLE BALL, CSR 8785, CRR, RDR**
                Official Reporter, U.S. District Court

<u>**Monday - February 1, 2021**</u>                    **9:00 a.m.**

                    P R O C E E D I N G S

        **THE CLERK:**  Good morning, everyone.  We're here in

Civil Action 20-5640, Epic Games, Inc. versus Apple, Inc.

    Counsel please state your appearances for the record.  The

Honorable Thomas S. Hixson presiding.  Let's start with the

plaintiff.

        **MS. MOSKOWITZ:**  Good morning, Your Honor.  Lauren

Moskowitz from Cravath, Swaine & Moore, on behalf of Epic

Games.

        **THE COURT:**  Good morning.

        **MR. SRINIVASAN:**  Good morning, Your Honor.  Jay

Srinivasan of Gibson Dunn & Crutcher on behalf of Apple.

        **THE COURT:**  Good morning.

    First, let me say that I'm glad to see that the parties

were able to work out between themselves the majority of the

discovery issues that we previewed you would be bringing before

me today.  So I was happy to see that.

    And second, I appreciate Apple's clarification in

Footnote 2 of the joint discovery letter brief concerning your

theories about market definition.  As you know, I came out of

the last hearing with quite a different impression, and so I do

appreciate seeing that clarification.

    It doesn't change my mind about the motion to compel, and

if anything, cements my view that my ruling was the correct

one.  But in terms of understanding the larger issues in the

case, I do appreciate that clarification.

So we're here today on a different issue, which is Epic's

motion to compel at least the non-custodial documents in

response to certain RFPs.

Just to give you my background understanding, if Judge

Gonzalez Rogers had said that February 15th was the close of

fact discovery and she provided no further elaboration, then I

would normally interpret that to be the last day to fulfill all

different types of discovery, including document production.

However, she did separately set January 6th as the last day for

document production, so that's a different deadline.  I don't

think that February 15th is the deadline for document

production.  It was January 6th.  And she has not changed that

order, so far as I am aware.

But let me hear from Apple.  Can you talk at a practical

level, tell me about the non-custodial documents in response to

these RFPs, and whether you could produce them by February 5th.

Just, what's involved in that production -- in that

collection?

**MR. SRINIVASAN:**  Sure, Your Honor.  And if I may,

I'll answer your question directly.  And if I could just

provide a response to your -- to the question about the

January 6th deadline.

**THE COURT:**  Sure.

1        **MR. SRINIVASAN:**  On the non-custodial pieces that
2    plaintiffs have focused on, I think it's seven specific RFPs,
3    those are either in process, meaning we are actually -- we
4    have some of the responsive material that we are, you know,
5    preparing for production.  As we indicated in our papers,
6    we're producing -- we didn't indicate the details, but we're
7    producing hundreds of thousands of documents a day.
8        And -- and so as part of that, where there is a custodial
9    stream or non-custodial stream or one or the other, that gets
10   put into the pipeline to get processed by the vendor and
11   produced.  So some of the documents I believe are in that
12   phase.
13       But other of those documents, things like the payment
14   processing details, or backup for particular statements --
15   public statements made, are still in the process of being
16   located.  It's a -- you know, this is a process where we've had
17   dozens of non-custodial requests all come in in late December,
18   early January, ultimately, when the parties actually met and
19   conferred on these.  And, you know, it takes even a company as
20   big as Apple -- and in fact, because of the size of Apple, it
21   can take a long time.  We're doing a number of these things in
22   parallel.
23       So some of these, we haven't identified yet.  It's not as
24   if we have them, and we're holding them.  And, and so that's
25   the practical reality of it.

 1          And if I can just expand on that, Your Honor, I appreciate

 2     your comment about January 6th.  But it's a date that neither

 3     party honored.  Or at least, we agreed around it, as sometimes

 4     parties do.

 5          And in fact, we were very express in our agreement with

 6     Epic that we wouldn't produce -- in other words, we wouldn't

 7     produce cert- -- we couldn't produce documents, a number of

 8     documents, by January 6th.  And if they were holding us to that

 9     date, we couldn't do it.

10          They said: No problem.  We're not holding you to that

11     date.  We don't view that as a sacrosanct date.

12          And in fact, it goes both ways.  They also are producing

13     hundreds of thousands of documents after January 6th.  They

14     still owe us non-custodial materials.  They owe us some

15     custodial materials.

16          And if -- if the answer would have been:  Well, you need

17     to produce by January 6th, then we would have simply come to

18     you early on, and said: Judge, we have an impasse.  We can't

19     practically produce hundreds of thousands of documents, since

20     January 6th.  I mean, I think we're almost up to a million.

21          And so I don't think it's fair for Epic to say: No

22     problem, we would rather have the documents -- which we

23     understand you cannot produce by January 6th.  And in fact, we

24     told them it might trickle into February.  They made the choice

25     of saying: We'll take it anyway.  And in fact, we'll

1   reciprocate and given you some documents of our own.

2        And so, Your Honor, we -- we -- we -- we think this is a

3   complete bait-and-switch if their position now is there should

4   be no production after January 6th, or the deadline was

5   January 6th.  In fact, some of this wasn't even negotiated

6   until after January 6th.

7        And so if Your Honor is inclined to hold that date, then I

8   think we have a completely different paradigm in which we've

9   both have been producing documents that, you know, were after

10  the deadline.  And that means we shouldn't have to produce

11  anything at all.

12       And one last thing, Your Honor, on the production issue --

13  on the third-party issue, sorry, one technical issue that I

14  forgot to raise.  We're also getting some third-party

15  clearances.

16       Again, as I think Your Honor appreciates, a lot of -- some

17  of the material are subject to third-party NDAs and

18  confidentiality restrictions.  Again, this is something

19  typically where you have weeks to work out with a third party,

20  third parties aren't as quick to jump when we need something

21  done.  We're all doing this in a few weeks.  And so that's also

22  taking some time for us.  And that will be actually a hard

23  impediment for us to produce by the 5th.

24       And that's it.  I'm happy to address the fact that we have

25  promised them a number of things by the 5th, some of which we

1   have already produced that we said in our letter: we'll try to

2   get to you by the 5th, we produced them that last week.  As I

3   mentioned, others are in process.  But we don't feel like we

4   can assure the Court that we can have it done by the 5th,

5   because of these other impediments.

6          **THE COURT:**  Well, I think that Epic has raised -- for

7   these RFPs they do seem like the kind of materials that an

8   expert would want to consider.  And so they have not taken,

9   Epic has not -- at least in this letter brief -- taken issue

10   with the fact that many of the document productions were after

11   January 6th.  They have a more focused inquiry, which is that

12   these particular sets of materials, they want their experts to

13   be able to use them.

14       And I would like to solve that problem.  I do think it's

15   appropriate for Epic to be able to show those documents to

16   their experts.  And you're not really offering a solution to

17   that problem.  You're just saying: No, we can't do it.  And

18   that feels frustrating and unsatisfactory to me.

19       Do you have a solution to that problem?

20          **MR. SRINIVASAN:**  We don't, Your Honor; and all I can

21   tell you is we have said this to them from the beginning.  And

22   I can point to you, for example, in their own record in

23   Exhibit 7, which is a letter that they sent on January 17th --

24   so that was 12 days ago.  And in the final paragraph of that

25   letter, they refer to at least two of these categories that

1   are RFPs 15 through 18.  And they say, they say (As read):

2           "Finally, although this issue did not come up during

3           the parties' meet-and-confer on January 15th, Epic

4           also requests that Apple promptly confirm whether it

5           will search for and produce responsive documents from

6           these RFPs that are at issue here."

7       So you have a situation where we -- they, themselves, note

8   that we had a meet-and-confer on January 15th.  The topic

9   didn't even come up, as they acknowledge.  Two days later, they

10  ask us, two weeks ago:  Hey, can you get this done by this

11  date?

12      Well, the fact is we had dozens and dozens and dozens of

13  requests from them for documents, on top of hundreds of

14  thousands of non-custodial documents that we were required to

15  produce after January 6th.  There was no prioritization.  We

16  did the best we could.

17      Excuse me.  There was prioritization on the custodial

18  documents.  They asked us to prioritize those in a very

19  specific way, and we did.  As far as non-custodial documents,

20  Your Honor, they didn't.

21      And in fact, on January 8th -- I'm sorry, Exhibit 8 also

22  of Epic's exhibits, on January 21st, we sent them a letter.  An

23  email -- and it's before Your Honor -- where we said:

24          "We will identify the non-custodial materials we

25          agree to produce in your list."

1      And then we -- we delineated that, and we said:  Will you

2   please reciprocate and do the same?  We never got a response

3   that.

4      I take it back.  We got a response last night,

5   January 31st, last night, at about 8:00 p.m., saying: Hey,

6   we're ready to do this.  Can you do it by 9:00 p.m., an hour

7   later?  Which we weren't ready do an hour later, on a Sunday

8   night.

9      But in other words, we have tried to work with them, to

10  prioritize these things, and otherwise ask them how you want

11  it.  They hasn't reciprocated.  So, our January 21st email

12  where we asked for this went unresponded to for ten days.  We

13  are doing our best.

14     I do want to emphasize, Your Honor, that there are number

15  of categories.  Exhibit 10 is our letter to them -- you may

16  have seen it, a January 27 letter -- that categorize each of

17  the RFP buckets, the non-custodial buckets, and said:  Here's

18  what we can do.  We offered a number of them by February 5th

19  because we could do it.  We didn't have an issue with

20  third-party approvals, or not being able to locate it.

21     And of those from February 5th, a number of those we've

22  already produced.  We've beaten the deadline.  And we intend to

23  do that; we're making every effort to do that; we're working

24  around the clock.  We think we'll beat more of those deadlines.

25  We think we will get them something by February 5th.  I can't

1    just say for sure, for now, that we can when we're relying on

2    third parties to clear some things, and also there are some

3    things that we're still locating.  We have beads; on some

4    things, we don't.  When we felt like we don't have a lot of

5    certainty, we said:  We'll commit to doing it by February 15th.

6    Where we felt like we had certainty, we thought we could do it

7    by the 5th.

8        So Your Honor, we are working around the clock on this.

9    And this is on top of the custodial production, where we are

10   producing literally hundreds of thousands of documents a day to

11   them.  We are not sandbagging.

12       And I'm not here to tell you -- my concern, Your Honor, is

13   that I commit to something, that there is a physical reason why

14   we can't do it.  And that's my hesitation.  But as far as

15   effort and intentions, we are full steam ahead here.

16       **THE COURT:**  I don't want to set you up for a contempt

17    motion, so I do want to be sensitive to what's possible or

18    not.

19       My tentative thought is to order Apple to use its best

20   efforts to produce these non-custodial documents by

21   February 5th.  Can you do that?

22       **MR. SRINIVASAN:**  We can certainly use our best

23    efforts.  We have been using our best efforts.

24       Just by way of example, Your Honor, you know, I don't want

25   to sound defensive here, but we've produced 10 million pages.

They've produced five.  We are working at a breakneck speed.

We are not the ones loafing.  I'm not suggesting they are.  I'm

simply saying that we are working as hard as we can.  We've

been through 8 million documents.  We've got, you know, as much

machine time as you can get in the TAR process.

We have everything going for us.  We have numbers of

people who are businesspeople, who have other responsibilities,

who are looking for documents in this case.  There's nothing

that we're not doing.  And in fact, the record is that we have

actually moved mountains in this case.

And by the way, they say -- our expert are reports are due

on the 15th, as well.  It's a simultaneous deadline for both

parties.  We -- they owe us documents.  You know, they owe us

non-custodial documents.  They still owe us data.  We are

subject to the same prejudice they are.  The difference between

us and them, it's the deal we make.

In fact, we asked them, you may remember, Your Honor, on

the record, we said:  Look, maybe we can move some of these

day; maybe we can give ourselves some relief on discovery.  And

they said no.  They said -- they very clearly said to you:

That's the last day of fact discovery; it's the day the expert

reports are due.  They set up the schedule that way.

And way back when, when we went to Judge Gonzalez Rogers

and offered competing proposals, we built in more time.  So you

can wait until the discovery cutoff and have some time for the

experts to absorb it.  They said no.  They wanted a compressed

schedule.  They set this schedule, Your Honor, not us.  And,

and so we -- we are doing our best to meet their schedule.  And

now that they're asking for interim dates that the Judge did

not set, that the parties did not agree to, we think is unfair.

That said, we're doing everything we work to accommodate

them.

**THE COURT:**  Okay.  Let me hear from Epic Games.

**MS. MOSKOWITZ:**  Your Honor, there's so many things

that Apple's counsel stated that are just flat wrong, and I

just don't even know where to begin.

But I think that the main issue here is that we did try to

ask for a targeted set of these non-custodial documents that we

really do need in advance of the expert reports being due.

They are due on the 15th.

We actually did offer Apple an alternate solution, which

was to move the opening expert reports by one week, by

agreement.  They said:  No, not unless you give us fewer hours

on Mr. Cue and Federighi.  Which is a separate issue I need to

raise with Your Honor.

But, you know, the issue here is we did propose a

practical solution.  They declined.  That's their right.  But

we still need these documents.

Everything Mr. Srinivasan said about what our

understanding and agreement was about documents being produced

1   after January 6th is completely wrong.  Nobody talked about

2   these documents being produced on February 15th.

3       We agreed that any newly-added custodians or

4   newly-expanded date ranges and custodians, when Apple said:

5   You either don't get them or you get them after January 6th, we

6   said:  We'll take them after January 6th.  And Apple asked us

7   for additional things on Christmas Eve or thereabouts, and we

8   gave them those documents after January 6th.

9       We've only produced -- out of the 1.7 million documents

10  we've produced, only 140,000 of those were after January 6th.

11  So the idea that we're dumping and we mutually agreed to

12  disregard January 6th is a fiction.  We do need these

13  documents.  And we need them in time to get their expert

14  reports.

15      This is the Court's schedule, not Epic's schedule, not

16  Apple's schedule -- it really doesn't matter.  This is the

17  schedule.  And our experts just need this stuff.  And it's a

18  pretty narrow ask.

19      They told us we were getting these documents in late

20  December.  They said:  We agree; we're giving them to you.  So

21  we didn't even raise it when we came to Your Honor on

22  December 20th.  We thought we had a deal that we were going to

23  get them.  They never said:  But you'll get them on the very

24  last day of fact discovery.  And that, of course, would never

25  have been agreeable to us.

1        So I'm loath to say any more other, than I disagree with a

2    lot more of what was said.  But, we just really need these

3    documents for our expert reports.  And we need them by

4    February 5th, which is much later than we are actually entitled

5    to them.

6            **THE COURT:**  All right.  Thank you.

7            **MR. SRINIVASAN:**  Your Honor, can I have -- can I just

8     briefly respond to that?  Because there are a few aspects of

9     that, that I just feel the record needs to be corrected.

10       As Ms. Moskowitz notes, we had these meet-and-confers on

11   non-custodial documents in late January.  And it spilled into

12   early January -- I'm sorry, late December, spilling into late

13   January -- early January.  It was at a time that our company,

14   we had said to them, was shut down.  And they told us their

15   company was shut down too.

16       And again, this is not to cast stones at anybody.  But the

17   notion that anybody was producing these on January 6th is an

18   outright fiction.  It would have been impossible.  We -- Apple

19   was closed through January 4th, for us to have made that

20   promise.  So it's a non-starter.

21       We did agree on what we thought we could produce to each

22   other.  And in fact, as we note in our letter brief -- and

23   we're happy to support this if this is an issue -- 80 percent

24   of Epic's non-custodial production occurred after January 6th.

25       I don't want the Court to have any impression that we

1   agreed in late December and early January, when our client

2   wasn't even open, that we would be producing anything two days

3   later on January 6th.  That was not the deal.  And if that was

4   the deal they insisted on, we would have come to the Court at

5   that time.

6       Second of all, on the expert issue, I do want to make

7   clear.  Your Honor, you told us last week that you are not in a

8   position to change any of the -- change any of the deadlines

9   set by Judge Gonzalez Rogers.

10      The parties -- Epic then did suggest to us, after telling

11  you that these deadlines are sacrosanct, on Monday they

12  suggested to us that:  How about pushing the expert report

13  dates back by a week?

14      And we said:  Okay, but the rebuttal reports have to go

15  back a week, too, because we don't want to get crunched there,

16  either.

17      And initially there was -- you know, they said:  Well, let

18  us go and think about that.  They came back, and they said:

19  Well, we might be willing to do that.

20      And we asked also if we can get some other concessions on

21  Federighi and Mr. Cue's deposition limits.  They said they

22  would think about it.  They didn't reject it.  We never heard

23  back from them.  This all happened over the weekend, to try to

24  resolve this motion.

25      So there was no, Your Honor, you know, inflexibility and

 1   intransigence on Apple's part.  We have been trying to solve

 2   this problem for a while; we have been alerting them to this

 3   problem for a while.  We have been telling them:  If you don't

 4   either prioritize or moderate what you want, we're going to run

 5   into this problem.  And they came to the Court on the eleventh

 6   hour, after it was too late for us to react to anything.

 7          But that all said, we are still doing our best.

 8          **THE COURT:**  All right, thank you.  I think I have

 9    what I need to rule on the present motion.

10          I'm going to order Apple to use best efforts to produce

11   the stuff by February 5th.

12          It seemed like there was another issue Epic wanted to

13   raise?

14          **MS. MOSKOWITZ:**  Yes, Your Honor, just briefly,

15    because I think that we have concern that this is going to

16    become a problem.

17          Your Honor just ruled on the issue of Mr. Cue and

18   Federighi's deposition.  Your Honor held, and noted that there

19   was no dispute that it was an all-or-nothing dispute, Apple was

20   trying to swing for the fences and blocked the deposition

21   altogether, and we weren't agreeing to less than ten hours.

22   And Your Honor ruled given, I think, the lesser degree of --

23   "apexness" I think was the word, that you were going to order

24   those depositions.

25          Since then, Apple has multiple times suggested that they

1  are going to insist that these depositions proceed for only

2  seven hours.  We said:  No; if you want to brief it, brief it.

3       They said:  No, we're not going to brief it.  But then,

4  continues to mention it.  So we have to plan; we have to know

5  that we have these ten hours.  And that Epic isn't going to

6  pull these witnesses after they have hit 6:59 and 59 seconds.

7       So we're hoping that Your Honor can just give some

8  guidance that we have the full ten hours with each of these

9  witnesses, according to Your Honor's order.

10          THE COURT:  Well, Mr. Srinivasan, do you want to

11  respond?

12          MR. SRINIVASAN:  I do, Your Honor.  And we -- we read

13  the order; we understand exactly what you said.  We understood

14  it as that the issue wasn't before you, and that nobody had

15  asked you for a lesser -- we hadn't asked you for a lesser

16  amount of time.

17       And so our position is simply we are assessing whether to

18  come back to Your Honor on asking for a lesser amount of time.

19  We do believe that Federighi and Mr. Cue both have, you know,

20  minimal overlap or relevance to the -- unique -- unique

21  firsthand knowledge to this case, as we've argued, and I won't

22  argue that again.

23       But also coupling the fact that they are apex witnesses,

24  and that ten hours versus seven hours is a significant

25  practical difference, because a seven-hour deposition can be

1   done in a single day.  And that, in fact, we are also having

2   scheduling problems getting not just these folks, but

3   everybody -- you know, the other 22 depositions we're trying to

4   get done in the next 11 business days -- scheduled.

5        And so if in fact we -- we believe that that's something

6   we want to insist on, we -- we would come back to you for that

7   relief, Your Honor.

8        And in fact, in that regard, you know, if Your Honor has

9   time on your schedule either for Friday or next Monday, we

10  would appreciate just having a hearing on calendar in case that

11  issue needs to come to a head, and we would present it for you.

12       All we've done with Epic on this is just mention the

13  issue.  We've asked them about it.  We flagged it for them.

14  We're not insisting on it.  We never said that we were going

15  stop at 6:59 unilaterally, without, you know, seeking

16  intervention of the Court.

17            **THE COURT:**  Okay.  Well, then, I think I do agree

18   with Apple's take on this, which is that I haven't ruled on

19   this issue.  Under the coordination order, the default rule is

20   that a 30(b)(1) deposition is ten hours.  So that's the

21   default rule that's currently in effect for Cue and Federighi.

22   And if Apple wants relief from that, you would have to ask the

23   Court for it, and you haven't done that yet.

24       So I'm happy too take a look at my schedule, and we can

25  put a hearing on calendar as a placeholder in case that issue

1  gets raised.

2      Friday works.  Let's see.  It's going to have to be in the

3  afternoon.  So I'm available Friday, February 5th, at 1:00

4  p.m., Pacific.  Are counsel available then?

5          MS. MOSKOWITZ:  Yes, Your Honor.

6          MR. SRINIVASAN:  We can be available then,

7  Your Honor.

8          THE COURT:  Okay.  And then if you're going to file a

9  joint discovery letter brief with the length of the Cue and

10 Federighi depositions, file it by noon Pacific time on

11 February 4th, so I have time to consider it.

12         MR. SRINIVASAN:  And Your Honor, we -- we hope to

13 work that out.

14     There are also a few other issues such as, again, we have

15 non-custodial data that we're asking Epic for.  Of course, our

16 view has been that, you know, the date on which that would be

17 due is February 15th.  And that the proper thing to do would be

18 to move to compel or something at that point, because that is

19 what the parties discussed.  But perhaps we'll raise that issue

20 with you on Friday.

21     And we also have some deposition scheduling issues which I

22 think we're working out.  But we may have other disputes.

23 We've done a pretty good job, I think, of narrowing these

24 disputes, and hopefully we won't need the hearing on Friday at

25 all.

 1          **THE COURT:**  Okay.  Well, then, I'll leave it open

 2    then.  Whatever discovery disputes you want me to consider on

 3    Friday, please have those joint discovery letter briefs filed

 4    on February 4th at noon.

 5          I'll give you the same encouragement to try to work things

 6    out as best you can between now and then.  But -- so I'll look

 7    to see what gets filed on February 4th by noon, and then that's

 8    what we will have the hearing on in, on Friday.

 9          Please use common sense, and remember that by time we have

10    a hearing on February 5th, it's only ten days from

11    February 15th.  So you're probably not going to get an order

12    from me compelling production of anything sooner than

13    February 15th, because there's just not much time between those

14    two dates.

15          And obviously, by February 5th, we're in the home stretch

16    for depositions.  So hopefully you will have worked out

17    schedules by then.

18          But anyway, I'll look to see what gets filed by noon

19    February 4th.  And then the following day at 1:00 p.m. we'll

20    have that hearing.

21          Is there anything else that the plaintiff would like to

22    raise at this hearing?

23          **MS. MOSKOWITZ:**  No.  Thank you, Your Honor.

24          **THE COURT:**  And what about Apple?

25          **MR. SRINIVASAN:**  No, thank you, Your Honor.

1          **THE COURT:**  All right.   Thank you, Counsel.   The

2    matter stands submitted.

3          **MR. SRINIVASAN:**   Thank you.

4          **THE CLERK:**   Thank you, everyone.   We're off the

5    record.   Court is in recess.

6       (Proceedings concluded)

<u>**CERTIFICATE OF REPORTER**</u>

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

—————————————————
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Monday, February 1, 2021