# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br>      Plaintiff, Counter-defendant <br> v. <br> APPLE INC., <br><br>      Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR-TSH <br> Case No. 4:11-cv-06714-YGR-TSH <br> Case No. 4:19-cv-03074-YGR-TSH <br><br> **JOINT DISCOVERY LETTER BRIEF REGARDING APPLE INC.'S SUBPOENA TO NON-PARTY SAMSUNG ELECTRONICS AMERICA, INC.** |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | |
| DONALD R. CAMERON, *et al.*, <br><br>      Plaintiffs <br> v. <br> APPLE INC., <br><br>      Defendant. | Hon. Thomas S. Hixson <br><br> Hearing Date: January 25, 2021 <br> Hearing Time: 10:00 AM PT |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Apple Inc. ("Apple") and non-party Samsung Electronics America, Inc. ("SEA") respectfully submit this joint letter brief regarding Apple's supplemental subpoena requesting the production of documents by SEA.

Counsel for Apple and SEA ("the Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter.

Respectfully submitted,

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| By: */s/ Jay P. Srinivasan* <br>    *Counsel for Apple Inc.* | By: */s/Victoria F. Maroulis* <br>    *Counsel for Non-Party Samsung Electronics America, Inc.* |

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

I.      **Apple's Position:**

Documents responsive to RFP 5 of Apple's supplemental subpoena are relevant to the *Epic* case and uniquely in Samsung's possession. The Court should order Samsung to produce them.

**Relevant Background:**

**Apple served Samsung with a narrow supplemental subpoena.** The Court previously compelled Samsung to produce documents pursuant to a non-party subpoena served on it in the Consumer and Developer cases. *See Pepper* Dkt 242 ("Samsung Order").[1] In November, Apple served Samsung with a supplemental subpoena in *Epic Games v. Apple*. *See* Ex. 1. As the Court's preliminary injunction ruling makes clear, Epic's various mobile and non-mobile distribution options are central to disputed issues of market definition and monopoly power. *See Epic* Dkt. 118 ("PI Order") at 18 (observing that *Fortnite*'s "multiplatform nature" suggests other digital distribution channels "may be economic substitutes" for Apple's App Store). Samsung's Galaxy Store is one of several places users may obtain *Fortnite*. Indeed, Epic launched *Fortnite* on Android in the Galaxy Store. *See Fortnite for Android Launches as a Samsung Galaxy Exclusive Today*, TechCrunch (Aug. 9, 2018), https://tcrn.ch/2X1fN5v. And today, *Fortnite* remains available for download through the Galaxy Store (among other channels) despite its removal from the App Store and Google Play. *See* Fortnite FAQ, https://www.epicgames.com/fortnite/en-US/faq (last visited Jan. 3, 2021).

Apple's six supplemental requests are limited to issues specific to *Epic*. These include Samsung's distribution of Epic's apps through the Galaxy Store, its pre-installation of Epic's apps on Samsung's devices, the marketing and technical support it has provided to Epic, Epic's use of Samsung's in-app purchase (IAP) technology to sell in-app products, and competition between the Galaxy Store and other Epic's other distribution alternatives. *See* Ex. 1 at 6-8. Far from being "overly broad," as Samsung claims, the subpoena precisely targets information about Samsung's relationship with *one* app developer (Epic) distributing primarily *one* app (*Fortnite*) for a brief, three-year period. *See* Ex. 1 at 5 (seeking documents from 2017 to present).

During meet and confer, Apple agreed that as to documents that may be in both Epic's and Samsung's possession, Apple would first seek those documents from Epic. Thus, Apple's and Samsung's meet and confer discussions—as well as this motion—focuses only on documents that would *not* be in Epic's possession, custody, or control.[2]

---

[1] Samsung produced a few hundred documents in response to the Court's October order, purporting to complete its production in December. After Apple raised concerns about the contents of these productions, Samsung provided Apple with the search protocol it used to respond to the order, including its search terms and custodians. Apple is presently reviewing that protocol and will meet and confer with Samsung to the extent Apple concludes it falls short of the response ordered by the Court.

[2] Despite being told in December that Apple wanted this dispute briefed in time for the Court's January 8 hearing and receiving Apple's portion of the brief on January 5, Samsung did not provide its portion until January 15—a full 10 days later.

2

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**Argument:**

**Samsung should produce in response to supplemental RFP 5.** RFP 5 calls for, inter alia, "DOCUMENTS CONCERNING EPIC's distribution of APPS through YOUR APP MARKETPLACE or otherwise on YOUR HANDHELD DEVICES or NON-HANDHELD DEVICES . . . ." Ex. 1 at 7. Samsung objects to producing documents in response to RFP 5 principally on the grounds that Apple "must seek these documents directly from Epic" and not from a non-party. Even assuming that is correct under the law, it is irrelevant. As noted, Apple has already narrowed its requests from Samsung to only documents that *could not be* in Epic's possession. There is no cause to quash requests for documents Apple is not seeking.

Instead, Apple seeks to enforce RFP 5 only to the extent it requests Samsung's internal analyses and decision-making concerning distribution of *Fortnite* on Samsung's devices. The RFP would capture, for example, documents about the #FreeFortnite collaboration between Samsung and Epic, as disclosed by recent media reports. *See Epic and Samsung send 'Free Fortnite' Care Package with Jacket, Galaxy Tab S7 to Influencers* (Dec. 22, 2020), https://bit.ly/3n9HXpSAs/. Such documents are plainly relevant. As the Court has made clear, this case will turn on the "ultimate[]" question of "where competition exists and whether such competition is sufficient to impact price and discipline market players." PI Order at 16. Discovery obtained from Epic to date [REDACTED] tablets and jackets in Apple-style packaging. RFP 5 is designed to elicit Samsung's own documents about these activities and decisions, which bear directly on competition among app marketplaces for developers and consumers and the related issues of proper market definition and market power analysis. *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("The relevant market is the field in which meaningful competition is said to exist.").[3]

Documents responsive to RFP 5 will also bear on Apple's responses to Epic's tying claim. Epic claims that Apple unlawfully "coerces" app developers to use Apple's IAP functionality to sell in-app content. *Epic* Compl. ¶ 10. Apple has defended this policy as "simply the practical, efficient, hardware-integrated, and consumer-friendly way by which Apple collects its contractually agreed-upon commission on paid transactions." *Epic* Dkt. 66 at 4-5. Samsung's internal documents [REDACTED]

---

[3] *Audio MPEG, Inc. v. HP Inc.*, 2017 WL 950847 (N.D. Cal., Mar. 10, 2017) does not provide otherwise. There, Dell sought discovery about whether Apple (the nonparty) thought its communications with the defendant were unlawful and designed to raise Dell's costs. *See id.* at *3 (responsive document would include "a memo discussing anti-trust concerns" raised by Apple's agreement with defendants). But Apple is not asking Samsung whether it thinks Apple monopolized app distribution. Rather, it is seeking documents that explain Samsung's own decisions with respect to Epic and Fortnite, including whether and why it charges Epic a lower commission, showers it with technical and marketing support, and has apparently made Epic's app a prominent feature of its smartphone and app-marketplace strategy.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

[REDACTED], *see* Ex. 5 (EPIC_00230744), will help Apple show that its "procompetitive justifications" are "reasonable and consistent with current industry practice." Samsung Order at 20 (quoting *FTC v. Qualcomm*, 969 F.3d 974, 996 (9th Cir. 2020)) (ordering Samsung to produce documents relevant to Apple's business justifications arguments). Contrary to Samsung's suggestion, these documents are plainly responsive to the request. *See* RFP 5(f) (seeking documents concerning "the ability and/or tendency of YOUR HANDHELD DEVICE users to choose between a payment and purchase functionality provided by YOU and EPIC.").

Apple has a substantial need for this information. As the Court previously held, a party establishes substantial need where information is relevant and not reasonably obtainable elsewhere. *See* Samsung Order at 6 ("'[S]ubstantial need' and 'undue hardship' requirements met where documents were relevant and [party] could not reasonably obtain them elsewhere." (quoting *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 154 (D.C. Cir. 2015)); *id.* at 21 ("The Court finds these documents are relevant, and since Apple is only able to obtain them from either Samsung or Google, it has shown a substantial need."). Importantly, only Samsung knows about the economics of its collaboration with Epic, how those economics compare with Samsung's collaborations with other app developers, how the Epic collaboration affects engagement with the Galaxy Store and sales of Samsung's mobile devices, and why Samsung [REDACTED]. All of these facts bear on issues relevant to Epic's antitrust claims and Apple's defenses, such as Epic's leverage over software distribution platforms, its options besides iOS, the relationship between apps, app marketplaces, and device competition, and the justifications for Apple's allegedly anticompetitive restraints. Discovery from competitors on such topics is a common feature of complex antitrust cases like this one, and "[t]he fact that [Samsung] competes with [Apple] is insufficient to thwart the free flow of information at the heart of the discovery rules." *Med. Ctr. at Elizabeth Pl. v. Premier Health Partners*, 2013 WL 3872077, at *7 (S.D. Ohio July 25, 2013).[4] Because the documents sought by RFP 5 are relevant and unavailable from anybody but Samsung, the Court should order Samsung to produce them.

---

[4] Moreover, the Court has already held that the Protective Order in *Pepper* and *Cameron*—which is substantively identical to the Protective Order in *Epic*, *see Epic* Dkt 112—is "sufficient" to protect the confidentiality of Samsung's competitively sensitive documents. *See* Samsung Order at 22 n.4.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## II.     SEA's Position

**Apple Served SEA with an Overbroad Subpoena:** On October 30, 2020, Apple served non-party Samsung Electronics America, Inc. ("SEA"), one of Apple's largest U.S. competitors, with an overly broad subpoena. Apple represents that its subpoena is "target[ed]" to "primarily *one* app (*Fortnite*)" and covers "a brief, three-year period." Not so. Apple seeks all of Samsung's (i.e., not just SEA's) confidential and competitive information concerning any Samsung entity's dealings with Plaintiff Epic Games, Inc. ("Epic"), as well as information that is available publicly or directly from Epic.[5] Indeed, not a single one of Apple's requests in the subpoena is limited to the *Fortnite* app. Further, one of Apple's requests covers "the last 10 years" while all of the others cover four years, not the "brief three years" Apple represents. Apple's October 30 subpoena is reminiscent of its March 15, 2020 subpoena, which this Court quashed in large part, finding Apple's requests "fantastically overbroad" and "vastly overbroad." (*Pepper* ECF 242, "Discovery Order" at 9, 12.)[6] Apple's October 30 subpoena fares no better.

Among other things, Apple's subpoena seeks the names of all of Epic's apps published in the Galaxy Store as well as the dates the apps were available (information that is publicly available or from Epic), copies of all current and former contracts between Epic and Samsung (information in Epic's possession), communications between Epic and Samsung on over a dozen topics (same), data showing downloads of Epic apps, including number of apps downloaded, number of in-app products sold, and related revenue (same), documents reflecting efforts to co-market Epic's apps (same), and support Samsung has provided to Epic (same). (Ex. 1.)

**Apple Has Conceded that its Subpoena, as Written, Seeks Documents in Epic's Possession:** On December 4, 2020, SEA provided detailed responses and objections to Apple's subpoena, and cited case law requiring Apple to obtain the requested documents from Epic, a party to the suit, before requesting them from a non-party. (Ex. 2.) To the extent Apple's requests sought documents not in Epic's possession, SEA objected that, among other deficiencies (including failure to show relevance), Apple did not show the required "substantial need" under Fed. R. Civ. P. 45. This Court held that Apple's prior subpoena suffered from the same defect. (Discovery Order at 11 ("the Court does not find Apple has a substantial need for any document based on a need to understand Samsung's assessment of handheld device or app marketplace competition"); *see also id.* at 10, 12, 17, 18.)[7]

---

[5]   Apple misleadingly and incorrectly refers to "Samsung" throughout its portion of the brief, making it impossible for the Court to distinguish between SEA and Samsung in Korea, which are separate entities, with separate employees, taking separate corporate actions. Contrary to Apple's assertion, Samsung is not subject to a Court Order in this case, has not been subpoenaed, and has not conferred with Apple or taken any of the positions Apple asserts. Apple served its subpoena only on SEA, yet demands that SEA produce documents from all other Samsung entities and employees worldwide, including SEA's "parent companies . . . and any of its subsidiaries predecessor or successor companies, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants . . . ." (Ex. 1.) The Court has already noted that SEA is not obligated to produce documents of its affiliates that are not in SEA's control. (Discovery Order at 9.) SEA adopts the subpoena's overbroad definition of "Samsung" only for the purposes of this letter brief to show the burdensome nature of Apple's requests, but consistent with the law and this Court's prior order, SEA responds only on behalf of SEA.

[6]   SEA produced 567 documents spanning 41,522 pages in response to that subpoena, not "a few hundred."

[7]   SEA's response to Apple's subpoena included a number of other appropriate objections. Given space constraints, SEA limits its discussion in this letter brief to relevance and lack of substantial need.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

During meet and confer, Apple conceded its requests seek documents available directly from Epic. Apple's letter brief is thus limited to RFP 5, but that, too, seeks documents in Epic's possession: documents concerning *Epic's decision* to distribute the *Fortnite* app, *Epic's* marketing efforts, *Epic's* request for support from Samsung, *Epic's* payment methods, *Epic's* apps in app stores other than the Galaxy Store, etc. Apple's argument only underscores this point: "The RFP would capture, for example, documents about the #FreeFortnite collaboration *between* Samsung *and Epic*." (Emphasis added.)[8] Apple implicitly concedes that it must seek these documents directly from Epic—not from non-party SEA. *See, e.g., Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) ("In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests." "[W]hen an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.") Apple's requests to SEA for these documents before first seeking them from Epic places an undue burden on SEA (*id.*) and courts "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).[9]

**Apple Has Failed to Show Either Relevance or the Required "Substantial Need" for Documents Responsive to RFP 5 that Might be in SEA's Exclusive Possession:** Apple seeks "Samsung's internal analyses and decision-making concerning distribution of *Fortnite* on Samsung's devices" on the grounds that such documents might concern "where competition exists and whether such competition is sufficient to impact price and discipline market players." Apple's justification for these documents fails to satisfy both the relevance and substantial need standards.[10]

As to relevance, *Audio MPEG, Inc. v. HP Inc.*, 2017 WL 950847 (N.D. Cal., Mar. 10, 2017) is directly on point. There, Dell subpoenaed its non-party competitor Apple for documents to support Dell's antitrust claim. *Id.* at *1. Among other things, and like here, Dell sought Apple's internal "communications regarding Apple's licensing agreements with Counter-Defendants" as well as "Apple's relationship with Counter-Defendants as a licensee or potential licensee." *Id.* The court quashed the subpoena, stating that "[t]he court is *not persuaded* that Apple's motivations for and understandings of its communications and relationship with Counter-Defendants *are relevant to Dell's antitrust claims against Counter-Defendants*." *Id.* at *3 (emphasis added).

---

[8] Apple states—falsely and without authority—that "only Samsung knows about the economics of its collaboration with Epic." Epic has documentation about that collaboration, so Apple should request such documents from Epic. ███████████████████████████████████████████████████████████████████████████████████ a separate entity. Apple's request for documents from a Samsung entity in Korea is ironic given that in this very case Apple "refus[ed] to produce documents concerning its activities outside the United States." (*Epic* ECF 226.)

[9] Apple misleadingly suggests that SEA delayed in preparing this joint letter brief. Apple's attack is both improper and unwarranted. On January 5, 2021, Apple (for the first time) provided SEA with Apple's portion of this letter brief and demanded that SEA provide its completed response *by the next morning*. Throughout, SEA has worked expeditiously and in good faith to confer with Apple and indeed even agreed to produce documents in response to some requests (RFPs 3 and 7) to reduce the points of disagreement.

[10] ███████████████████████████████████████████████████████████████████████████████ but RFP 5 *does not even request such documents*. Rather, RFP 5 seeks only "the ability or tendency" of *device users* to choose a payment method, not *why Samsung* would have a preference for a particular payment method. Further, Apple's request for documents concerning payment for in-app products is covered by RFP 3, which is not at issue here. SEA has located policies responsive to RFP 3 and will be producing them.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

SEA's views, if any, on "where competition exists and whether such competition is sufficient to impact price and discipline market players" is not relevant to whether Apple has committed antitrust violations.  As *Audio MPEG* held (when Apple was the non-party quashing a subpoena), "the motivations of a non-party are irrelevant to whether the parties are liable for antitrust violations."  *Id.*  *Audio MPEG* is not alone.  *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *5 (W.D. Wash. Aug. 17, 2009) ("An assessment of the relevant markets for Plaintiffs' antitrust case is an objective inquiry, not one that depends on Amazon's views on the subject.").

But even if Apple could show relevance, that would not be enough.  To obtain SEA's internal, confidential information, Apple must show "substantial need."  Fed R. Civ. P. 45(d)(3).[11]  This "is particularly important in the context of enforcing a subpoena when discovery of trade secret or confidential commercial information is sought from non-parties."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006).  Apple argues it needs SEA's internal assessments of relevant markets because they "bear directly on competition among app marketplaces for developers and consumers and the related issues of proper market definition and market power analysis."  But the Court already rejected this argument, found no substantial need, and quashed Apple's first subpoena in large part, finding, "to the extent documents responsive to this request would reveal Samsung's assessments of relevant markets, *the Court does not find, as Apple insists, that those assessments would be critical to Apple's case*."  (Discovery Order at 10 (emphasis added).)[12]

The Court further concluded that Apple did not "offer any argument for why Samsung's 'perspective' on the market in particular is relevant or necessary."  (*Id.* at 11 (citing *ACT, Inc. v. Sylvan Learning Sys., Inc.*, 1999 U.S. Dist. LEXIS 7055, at *9 (E.D. Pa. May 14, 1999) (movant "wholly faile[d] to show a 'substantial need' for the material that [could not] otherwise be met without undue hardship")).)  "[T]he Court does not find Apple has a substantial need for any document based on a need to understand Samsung's assessment of handheld device or app marketplace competition."  *Id.*; *see also id.* at 12, 17, 18.  The outcome here should be no different, particularly given that, as noted *supra*, most of the requested documents are in Epic's possession.  Accordingly, Apple's RFP 5 should be quashed.

---

[11] Apple concedes it is seeking Samsung's "internal analyses and decision-making."  The Court previously found that Apple would need to show substantial need for such documents.  (Discovery Order at 12 ("While it might be interesting for Apple to hear what its major competitor has to say on these subjects, that is a far cry from showing 'a substantial need for the . . . material that cannot otherwise be met.'").)

[12] Apple notes that the Court previously found Apple had a substantial need for communications between SEA and Google.  That is neither here nor there, as Apple is not now seeking SEA's communications with third parties, but is seeking "*internal* analyses and decision-making" from *all* Samsung entities worldwide.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated: January 21, 2021	GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Mark A. Perry
Veronica S. Lewis
Cynthia E. Richman
Jay P. Srinivasan
Jason C. Lo
Ethan D. Dettmer
Eli M. Lazarus

Respectfully submitted,

By: */s/ Jay P. Srinivasan*
*Attorneys for Defendant Apple Inc.*

Dated: January 21, 2021	QUINN EMANUEL URQUHART & SULLIVAN, LLP
Victoria F. Maroulis
Kyle K. Batter

Respectfully submitted,

By: */s/ Victoria F. Maroulis*
*Attorneys for Non-Party Samsung Electronics America, Inc.*

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## E-FILING ATTESTATION

I, Jay Srinivasan, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

CONTAINS INFORMATION DESIGNATED HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY