# Exhibit J

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 1

1          UNITED STATES DISTRICT COURT

2      FOR THE NORTHERN DISTRICT OF CALIFORNIA

3              OAKLAND DIVISION

4

5

6                              )

   IN RE:  APPLE IPHONE        )

7  ANTI-TRUST LITIGATION       )

                               )

8                              )

   AND RELATED ACTIONS.        ) Civil Action No.

9                              ) 4:11-cv-06715YGR

                               )

10 _____)

11

12

13  HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

14

15

16  DEPOSITION OF:

17               C.K. HAUN, VOLUME I

18               WEDNESDAY, JANUARY 13, 2021

19               9:00 A.M.

20

21

22

23

24  Reported by:  GINA M. CLOUD

25               CSR No. 6315

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 2

```
 1            Deposition of C.K. HAUN, the witness, taken
 2    on behalf of the Plaintiffs, on Wednesday, January
 3    13, 2021, at 9:00 a.m., via Virtual Zoom, pursuant
 4    to NOTICE.
 5
 6    APPEARANCES OF COUNSEL:
 7
 8    FOR PLAINTIFF EPIC GAMES, INC:
 9                   CRAVATH SWAINE & MOORE
                     BY:  BRENT BYARS, ESQ.
10                        MONICA COSCIA, ESQ.
                          ALEJANDRO CARVAJAL, ESQ.
11                   825 Eight Avenue
                     Suite 4043B
12                   New York, New York 10019
                     bmaida@cravath.com
13                   lkloss@cravath.com
14
      FOR APPLE AND THE WITNESS:
15
                     GIBSON DUNN & CRUTCHER LLP
16                   BY:  CYNTHIA RICHMAN, ESQ.
                          SARAH AKHTAR, ESQ.
17                   1881 Page Mill Road
                     Palo Alto, California 94303
18                   dli2@gibsondunn.com
19
      FOR CONSUMER CLASS PLAINTIFFS:
20
                     WOLF HALDENSTEIN ADLER FREEMAN & HERZ
21                   LLP
                     BY:  MARK RIFKIN, ESQ.
22                        JENNIFER DUPONT, ESQ.
                     270 Madison Avenue
23                   10th Floor
                     New York, New York 10016
24                   (212) 545-4600
                     dupont@whafh.com
25                   rifkin@whafh.com
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 3

```
1    APPEARANCES: (CONTINUED)
2
3    FOR THE DEVELOPER CLASS:
4                     SPERLING & SLATER
                      BY:  EAMON KELLY, ESQ.
5                          MARTIN AMARO, ESQ.
                      55 West Monroe Street
6                     Suite 3200
                      Chicago, Illinois 60603-5072
7                     (312) 641-3200
                      Arodriguez@sperling-law.com
8
9    ALSO PRESENT:
10                    Kiego Painter, Videographer
                      Matthew Riesdorph
11                    Judah Weinerman
                      Jennifer Fine, Esq.
12                    Stephanie Brown, Esq.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 13

1    Q.   Tell me about your career from then until

2    around the period when Apple launched its App Store.

3    Take me through the roles you played between that

4    period and the time when Apple launched App Store.

5    A.   I was a developer technical support engineer

6    until 1994.  At that point I moved into the Macintosh

7    system software engineering team and wrote and

8    applied software fixes to various portions of the Mac

9    operating system.

10        In late 1995, I briefly left the company to

11   join a startup; Be Incorporated.  It is B as in

12   baker, E as in echo, incorporated.

13        I worked there for roughly six months, left

14   that company, returned to Apple.  At that point I was

15   given responsibility for the engineering side of the

16   Mac OS 8 system software release, so I managed the

17   software engineering team for that operating system

18   release.

19        When that operating system release was

20   completed, I worked on some of the design and

21   foundational pieces of what would become Mac OS X,

22   and in 1998 I was approached by the management of the

23   Apple developer organization to take the director's

24   job of developer technical support.  I accepted and I

25   have had that role since then.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

**Page 14**

1    Q.    What did that role entail?

2    A.    My responsibilities at that point were to

3    direct the team of developer technical support

4    engineers in the appropriate areas to focus to assist

5    our third-party developer community.

6          I also had the opportunity to work with

7    various system software teams and provide feedback

8    from the third-party community on technologies they

9    were developing.

10         Along the time between 1998 and present, I

11   also had responsibility for the Evangelism team for

12   two years when their leadership left the company.  I

13   also started the App Review team when we opened the

14   iPhone App Store.

15   Q.    How long were you responsible for the App

16   Review team?

17   A.    I was responsible for the App Review team

18   from -- I will phrase this as from planning through

19   launch and execution, so that would be roughly a year

20   and five months I would describe it.

21   

24   Q.    What do you enjoy about providing developer

25   technical support?

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 64

1  intended for use by any third-party application who

2  uses them within the criteria of the documentation,

3  our guidelines and the program license agreement.

4          Private APIs are application interfaces in

5  the operating system that are not available for

6  third-party use.

7      Q.   Do third-party developers know of the

8  existence of the private APIs?

9      A.   I do not know if all third parties are aware

10  of a particular private API.

11     Q.   Can you give me an example of a particular

12  private API just in application?

13     A.   Would you like the specific name or would

14  you like a characterization of what it may do?

15     Q.   A characterization is fine.

16  ██     ████████████████████████████████████████

██  ████████████████████████████████████████████████

██  ██████████████████████████████████

██    ████████████████████████████████████████

██  ██████████████████████████████████████████

██  ████████████████████████████████████████████

██  ████████████████████████████████████

██    ██████████████████████████████████████

██  ████████████████████████████████████████████

██  ████████████████████████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 65

1 ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██

7      Q.    How does a developer know, third-party

8  developer, is it able to use the private APIs?

9      A.    No.

10     Q.    So how is that relevant to a review of the

11  application?

12     A.    The use of private APIs is prohibited by the

13  Apple Developer Program license agreement and The App

14  Review Guidelines; however, there have been occasions

15  where information about a particular private API has

16  become public and third-party applications have

17  attempted to incorporate them into their applications

18  that they want to provide to customers through the

19  iOS App Store.

20 ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 112

1      A.    Correct.

2      Q.    How does an iOS device recognize an app

3  that it can launch?

4      A.    How technical do you want to get into this?

5      Q.    Let's start functionally and then we'll

6  drill down.

7      A.    When the operating system requests an app to

8  be installed from the iOS App Store, the app is

9  downloaded to the device.  And I'll use "device" to

10  cover iPad, iPod Touch, iPhone, Apple TV.

11        What a consumer or layman sees as an app,

12  one single icon on their desktop or on the launch

13  screen of an iOS device, is in fact a folder.  And

14  the folder contains a variety of files.  There are

15  files that have different extensions, which I assume

16  most people are familiar with; it's the numbers or

17  letters after the period character in a file name,

18  like PDF or dot MOV or dot MP3.

19        There are a series of files inside that

20  folder and other subfolder that identify the

21  different components of the application.

22  ██████████████████████████████████████████

██  ████████████████████████████████████████

██  ███████████████████████████████  █████████

██  ████████████████████████████████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER



Page 113

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 114



18   Q.   Other than the App Store and other than the

19   enterprise program, are there other ways that an iOS

20   app can be loaded onto -- launched -- are there

21   other sources by which an iOS app can get -- native

22   iOS app can get to a phone?

23   A.   Yes.

24   Q.   I saw a reference to something about

25   developers getting 100 apps they could distribute.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 138

1    apps?

2         A.    I have a high level of confidence in the

3    robustness of our automated tooling and the skills of

4    the members of our App Review team.

5         Q.    Do you recall an incidence where a school

6    shooting game was uploaded to the App Store and on

7    sale soon after the shooting incident?

8         A.    I have a vague memory of that, yes.

9         Q.    Can we pull up tab 18.  And this will be --

10   I'll give you the Exhibit Number.  It takes a little

11   bit to come over to you.  This will be Exhibit 130.

12              (The document referred to was marked as

13   Exhibit 130 for identification and is attached

14   hereto.)

15   BY MR. KELLY:

16        Q.    We'll wait until you get that on your

17   screen.

18        A.    And I see it and I'm opening it.  Yes, I see

19   this e-mail.

20        Q.    Mr. Haun, you recognize Exhibit 130 as an

21   e-mail you sent to the group of individuals in

22   November of 2015 with the subject █████████████

     ███████████████████████████████████████

24              Do you see that?

25        A.    Yes.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 139



24    A.    As I mentioned, we have spent a great deal
25    of engineering resources, people resources and other

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 140

1    resources to reduce the incident of security and

2    privacy exploits.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER



Page 141

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 177

1    long time to do that correctly, so I purchased a

2    software development kit that contained some code and

3    a number of APIs that I could use in my application

4    to draw graphical text onto the screen.

5        Q.   The entity providing that kit, those APIs,

6    is that always the OS developer, or can it be third

7    parties?

8        A.   I'm sorry, I did not mean to imply that it

9    was the OS developer.  That was not.  That was a

10   third-party library.

11       Q.   We referred to private APIs that Apple has;

12   do you remember that?

13       A.   Yes.

14       Q.   What is a private API?

15       A.   A private API is a connection point to

16   system functionality which is not available to a

17   third-party developer.

18       Q.   What are the reasons Apple would choose to

19   make those APIs not available to third-party

20   developers?

21       A.   There are a number of reasons.  One of the

22   first and the highest priority ones is the operating

23   system may not want to vend an API that could expose

24   privacy or security risks to a customer.

25            Another very common reason is the private

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 178

1   API has been designed for a very narrow use.

2   ██████████████████████████████████████

██   ████████████████████████████████████████

██   ██████████████████████████████████████

██   ████████████████████████████████████████████

██   ████████████████████████████████████████████

██   ████████████████████████████████████████████

██   ████████████████████████████

██   ██████████████████████████████████████████

██   ███████████████████████████    ███████████

██   ██████████████████████████████████████

██   ██████████████████████████████████████

██   ████████████████████████████████████

██   ██████████████████████████████████████

██   █████████████████████████████████

16          The third characteristic of private APIs is

17   they are a private API today, so our engineering

18   teams can validate the points I was making about the

19   other API and have a level of confidence that there

20   has been enough time and enough usage of the API to

21   make a decision to say yes, we believe we can be

22   providing a service to third-party developers versus

23   a detriment by promoting this from a private API to a

24   public API.

25      ██   ██████████████████████████████    ██

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 196



REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 197



REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 249

1          I, GINA M. CLOUD, a certified shorthand

2     reporter for the State of California, do hereby

3     certify:

4              that prior to being examined, the

5     witness named in the foregoing deposition, was by me

6     duly sworn to testify the truth, the whole truth,

7     and nothing but the truth pursuant to Section No.

8     2093 of the Code of Civil Procedure;

9              That said deposition was taken before

10    me pursuant to notice, at the time and place therein

11    set forth, and was taken down by me in shorthand and

12    thereafter reduced to typewriting via computer-aided

13    transcription under my direction;

14              I further certify that I am neither

15    counsel for, nor related to, any party to said

16    action, nor in anywise interested in the outcome

17    thereof.

18              IN WITNESS WHEREOF, I have hereunto

19    subscribed my name this 14th day of January,

20    2021.

21

22

23

                     GINA M. CLOUD

24                   CSR No. 6315

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 250

1    ** HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER **

2

3                UNITED STATES DISTRICT COURT

4           FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                    OAKLAND DIVISION

6

7    _____

                                        )

8                                       )

     IN RE APPLE iPHONE ANTITRUST       )Civil Action No.

9    LITIGATION                         )4:11-cv-06715YGR

                                        )

10                                      )

11

12

13          ZOOM VIDEOTAPED DEPOSITION OF C.K. HAUN

14                      VOLUME II

15                 Palo Alto, California

16              Thursday, January 14, 2021

17

18

19

20

21

22

23

     Reported by:

24   LORI M. BARKLEY, CSR No. 6426

25   PAGES 250 - 348

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 251

1              UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   OAKLAND DIVISION

4

5

   _____

6                                    )

                                     )

7    IN RE APPLE iPHONE ANTITRUST    )Civil Action No.

     LITIGATION                      )4:11-cv-06715YGR

8                                    )

                                     )

9

10

11          Zoom Videotaped deposition of C.K. HAUN,

12   Volume II, taken on behalf, at Palo Alto, California,

13   beginning at 9:08 a.m., and ending at 11:41 a.m., on

14   Thursday, January 14, 2021, before LORI M. BARKLEY,

15   Certified Shorthand Reporter No. 6426.

16

17

18

19

20

21

22

23

24

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 252

1    APPEARANCES:

2

3    FOR PURE SWEAT BASKETBALL AND THE APP DEVELOPER CLASS

4    PLAINTIFFS:

5        SPERLING & SLATER

6        BY:  EAMON KELLY

7        BY:  MARTIN AMARO

8        Attorneys at Law

9        55 West Monroe Street, Suite 3200

10       Chicago, Illinois 60603-5072

11       (312) 641-3200

12       ekelly@sperling-law.com

13       mamaro@sperling-law.com

14

15

16   FOR DEVELOPER PLAINTIFF:

17       HAGENS BERMAN SOBOL SHAPIRO LLP

18       (Not present)

19       Attorney at Law

20       715 Hearst Avenue, Suite 202

21       Berkeley, California 94710-1948

22       (510) 725-3000

23       bens@hbsslaw.com

24

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 253

```
 1   APPEARANCES (CONTINUED):

 2

 3   FOR DEFENDANT APPLE:

 4       GIBSON DUNN & CRUTCHER LLP

 5       BY:  CYNTHIA RICHMAN

 6       BY:  SARAH AKHTAR

 7       Attorneys at Law

 8       1050 Connecticut Avenue, NW

 9       Washington, DC 20036

10       (202) 955-8234

11       crichman@gibsondunn.com

12       sakhtar@gibsondunn.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 254

```
 1   APPEARANCES (CONTINUED):

 2

 3   FOR PLAINTIFF EPIC GAMES, INC.:

 4       CRAVATH SWAINE & MOORE

 5       BY:  G. ALEJANDRO CARVAJAL

 6       BY:  M. BRENT BYARS

 7       BY:  MONICA COSCIA

 8       Attorneys at Law

 9       825 Eighth Avenue, Suite 4043B

10       New York, New York 10019

11       acarvajal@cravath.com

12       mbyars@cravath.com

13       mcoscia@cravath.com

14

15

16

17

18

19

20

21

22

23

24

25
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 255

1    APPEARANCES (CONTINUED):

2

3    FOR CONSUMER CLASS PLAINTIFFS:

4        WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

5        BY:  MARK RIFKIN

6        BY:  JANE DUPONT

7        BY:  JUDAH WEIDERMAN

8        Attorneys at Law

9        270 Madison Avenue, 10th Floor

10       New York, New York 10016

11       rifkin@whafh.com

12

13

14   Also present:

15       Curt Norris, Videographer

16       Jennifer Brown; Stephanie Fine (Apple)

17

18

19

20

21

22

23

24

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 292



REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER



Page 293

17    Q.    I will represent to you that according to

18    Mr. Lawson's LinkedIn page, he joined Apple sometime

19    in 2016 after XcodeGhost.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 302

1 ████████████████████████

2 ██    ██  ████    ████████████████████████

3 ██  ████████████████████████████████████

4 ██  ██████████████████████████████████████

5 ██  ████████████████████████████████████████

6 ██  ████████████████████

7 ██    ██  ████████████████████████████

8 ██  ██████████    ████████████████████████

9 ██  ██████████████████████████

10 ██        ████████████████████████

11  BY MR. RIFKIN:

12       Q.    Let's unpack that just a little bit.  First

13  of all, dev tools stands for development tools, yes?

14       A.    Developer tools.

15       Q.    Developer tools.  And is developer tools a

16  particular team at Apple?

17       A.    Yes.

18       Q.    And how did that relate to your team?

19       A.    In broad terms, my team does its job by

20  assisting third party developers in their development

21  of applications for Apple platforms and as part of

22  that, a large majority of the time that my engineers

23  spend working on technical issues related to building

24  code for iOS and other apps, they use the developer

25  tools like Xcode, to perform their work that is in

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 303

1    general, the relationship.

2          My engineers are a client of the products

3    that developer tools produces.



REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

Page 348

1    STATE OF CALIFORNIA        ) ss.

2    COUNTY OF LOS ANGELES      )

3

4         I, Lori M. Barkley, CSR No. 6426, do hereby

5    certify:

6         That the foregoing deposition testimony

7    taken before me at the time and place therein set

8    forth and at which time the witness was administered

9    the oath;

10        That the testimony of the witness and all

11   objections made by counsel at the time of the

12   examination were recorded stenographically by me, and

13   were thereafter transcribed under my direction and

14   supervision, and that the foregoing pages contain a

15   full, true and accurate record of all proceedings and

16   testimony to the best of my skill and ability.

17        I further certify that I am neither counsel

18   for any party to said action, nor am I related to any

19   party to said action, nor am I in any way interested

20   in the outcome thereof.

21        IN WITNESS WHEREOF, I have subscribed my

22   name this 14th day of January, 2021.

23

24

25              LORI M. BARKLEY, CSR No. 6426

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED