**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Ethan Dettmer
Direct: +1 415.393.8292
Fax: +1 415.374.8444
EDettmer@gibsondunn.com

Client: 03290-00146

December 26, 2020

VIA ELECTRONIC MAIL

Yonatan Even
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Re:   *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR (N.D. Cal.)

Dear Yonatan:

      I write in response to your December 23 letter regarding the parties' December 22 meet and confer on, *inter alia*, Epic's December 9, 2020 and December 15, 2020 letters regarding its Requests for Production. Apple is encouraged that the parties generally appear to be aligned. We address Epic's RFPs first and then the broader issues after that.

**Epic's RFPs**

- **Epic RFP Nos. 3 and 4 regarding revenue, costs, expenses and profits for certain Apple products**. With respect to RFP 3, Apple has already agreed to produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden, relating to the products at issue—iPhone, iPad, and iPod Touch. Apple has already produced non-privileged, non-custodial data responsive to this request for the iPhone, iPad, and iPod touch. Apple will not produce documents responsive to this request for Apple Watches or AirPods or Apple Accessory Products. You asked us to identify the Bates numbers for this data and agreed that Epic would likewise provide Bates numbers upon request for data in its own production. Apple has produced at APL-APPSTORE_08822222 the sales in units, revenue, and standard costs for iPhone, iPad, and iPod Touch. Please provide Bates numbers for Epic's cost and revenue data requested in Apple's Interrogatory Nos. 1, 3, and 4. *See* Dec. 21, 2020 Ltr. from J. Srinivasan to L. Moskowitz.

- **Epic RFP Nos. 5 and 6 regarding revenue, costs, expenses and profits for Apple's IAP.** We have previously explained that Epic's RFP Nos. 5-6, which seek cost and revenue data "earned by and/or attributed to, Apple's IAP" yields no responsive

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**GIBSON DUNN**

Yonatan Even
December 26, 2020
Page 2

documents as written because IAP is a functionality of the App Store and not a product that "earn[s]" or is "attributed" any costs or revenue. It thus makes no sense to attribute revenues from app and in-app purchases to IAP or to think of app reviewer compensation and marketing cost data as costs attributable to IAP. That said, Apple is producing transactional data that captures the revenue for the iOS App Store for the U.S. storefront.

- **Epic RFP Nos. 7 and 8 regarding revenue, costs, expenses, investments and profits for Apple's macOS App Store and iOS App Store, respectively.** Apple explained that while the costs and investments in the macOS App store and iOS App Store are not allocated or tracked separately, Apple is currently searching for this information in reasonably accessible non-custodial sources, and will produce responsive, non-privileged documents to the extent they exist for the U.S. storefront. Moreover, as we pointed out on the call, these Requests overlap with Apple's ongoing investigation to identify underlying data supporting certain Profits & Loss data already produced to plaintiffs pursuant to Magistrate Judge Hixson's Order. Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files. Finally, as you know, Apple is already producing transactional data that captures the revenue for the iOS App Store for the U.S. storefront.

- **Epic RFP No. 9 and 53 regarding financial documents for certain developer tools.** Apple explained that while it has not identified documents in existence that track specifically and separately Apple's financial investments in "Xcode, Metal, SDKs, APIs and all other developer tools for iOS that Apple makes available for use by third-party Developers," Apple is currently searching for and will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources and can be produced without undue burden. Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP No. 10 regarding Apple's app review employees.** Apple has produced anonymized data from a non-custodial repository containing information regarding salary, wages, and bonuses related to App Reviewers. *See* APL-APPSTORE_09814097. This is the only non-custodial source we are aware of that contains responsive data. Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP No. 11 regarding usage metrics.** To the extent this Request overlaps with Consumer Plaintiffs' RFP No. 48, Apple is already investigating whether it can produce responsive, non-privileged documents without undue burden. To the extent the Request does not overlap with Consumer Plaintiffs RFP No. 48, Apple is currently searching for

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**GIBSON DUNN**

Yonatan Even
December 26, 2020
Page 3

and investigating whether it can produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden.  Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP Nos. 12, 13, and 14 regarding customer lifetime value or lifespan of Apple products.**  Apple is currently searching for and will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden.  Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP Nos. 15-17 regarding developer agreements.**  Apple confirms that it will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden.  Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP Nos. 18-19 regarding third-party payment providers.**  Apple confirms that it will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden.  Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP Nos. 25 and 31 regarding "active use" and Apple's "installed based."**  Apple is currently searching for and will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden.  Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP Nos. 26, 27, and 28 regarding consumers that own certain multiple Apple products or use certain Apple services.**  Apple is currently searching for and will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden.  Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**GIBSON DUNN**

Yonatan Even
December 26, 2020
Page 4

- **Epic RFP Nos. 29 and 51 regarding use of Apple ID for transactions.** To the extent the Request overlaps with plaintiffs' requests for certain structured transactional data, Apple agrees to produce responsive, non-privileged material related to the U.S. storefront. As explained on the call, Apple is aware that Apple ID can be used as a login for certain third-party websites and applications. But we are not aware that Apple ID can be used to conduct transactions on these third-party platforms. On our call, you were not able to provide any instances of such transactions either. To the extent Epic is able to identify such transactions, Apple is willing to investigate.

- **Epic RFP No. 30 regarding spending and earnings through IAP.** As noted above, Apple's IAP is a functionality of the App Store and not a product that "earn[s]." As noted above, Apple is already producing transactional data that captures the revenue for the iOS App Store for the U.S. storefront.

- **Epic RFP No. 52 regarding communications concerning commissions for in-app purchasing on competitor marketplaces.** Apple agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP No. 54 regarding business and strategic plans related to competition.** Apple confirms that it will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden. Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP No. 67 regarding "hotfixes."** Apple explained that its issue with Epic's "hotfix" was, as the Court recognized, not that it was a "hotfix" *per se* but the specific nature of Epic's "hotfix," which carried out a severe breach of Epic's contracts with Apple and Apple's App Review Guidelines. Nonetheless, Apple is currently searching for and will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible custodial sources.

- **Epic RFP No. 79 regarding Small Business Developer Program.** Apple is currently searching for and will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden. Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

- **Epic RFP No. 81 regarding** [REDACTED] As explained above, Apple's issue with Epic's "hotfix" was, as the Court recognized, not that it was a "hotfix" *per se* but the specific nature of Epic's "hotfix," which carried out a severe breach of Epic's contracts

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# GIBSON DUNN

Yonatan Even
December 26, 2020
Page 5

with Apple and Apple's App Review Guidelines. Nonetheless, Apple is currently searching for and will produce responsive, non-privileged documents, to the extent they exist, that are locatable through a search of reasonably accessible non-custodial sources, and can be produced without undue burden. Apple further agrees to produce responsive, non-privileged documents to the extent they exist in the custodians' files.

**Epic's "Non-Data" Requests**

With respect to the issues labeled as "*first*" through "*seventh*" on pages 1-2 of your letter, the *third, sixth* and *seventh* issues are addressed above. Regarding the *first* issue, Apple confirms that Epic's requests for production is being and will be included in the scope of responsiveness for the review of the class production. Regarding the *fifth* issue, Apple confirms that its search includes Apple affiliates to the extent the contracting party to a responsive agreement or similar document is an Apple affiliate. That leaves the *second* (non-U.S. materials) and *fourth* (extending time period) issues, which are each addressed below.

**Documents Outside of the U.S.**

With respect to Epic's request for documents outside of the U.S., we explained on the call that to the extent the document addresses non-U.S. and U.S. storefronts, or global information, and is otherwise not privileged and responsive, the document will be produced. Moreover, if the document implicates Epic in any reasonably apparent way, including discussing Epic's games such as Fortnite, and is otherwise not privileged and responsive, the document will be produced regardless of whether the document is discussing a non-U.S. storefront. If, however, the document does not appear to implicate Epic or its products, and only discusses a non-U.S. storefront, the document would not be marked as responsive. For example, documents reflecting issues faced by a Japanese developer selling an app exclusively on the Japanese storefront that do not implicate Epic would be marked as not responsive as the document is not reasonably related to the claims that are in the case.

Similarly, with respect to Epic's request for cost, revenue, expenses and investment data from outside of the U.S., we reiterated on the call that such data is beyond the proper scope of discovery in light of the Foreign Trade Antitrust Improvements Act (FTAIA), which "removes from the reach of the antitrust laws" commercial activities abroad, subject to a few exceptions inapplicable here. *United States v. Hui Hsiung*, 778 F.3d 738, 751 (9th Cir. 2015). Documents and data regarding activities outside of the U.S. cannot form the basis for liability in this case, and therefore discovery regarding such data is neither relevant nor proportional to the needs of the case. That Epic has made conclusory allegations of a worldwide market has no bearing on the application of the FTAIA here.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**GIBSON DUNN**

Yonatan Even
December 26, 2020
Page 6

As for Epic's Request Nos. 3, 30 (transactions and sales), Epic contends that Apple should not limit its production to sales in the United States. Epic still has not explained why device sales outside of the U.S. are relevant to Epic's U.S. antitrust claims.

As for Epic's Request No. 18 (settlement providers), Epic has not articulated any relevancy of the Request with regard to settlement providers worldwide. The fact that Apple makes payment processing convenient for developers around the world has nothing to do with the relevancy and proportionality of a request to identify every payment settlement provider or other entity Apple engaged in connection with IAP throughout the world. Those identities do not bear on the strength of any claims or defenses at issue. But even assuming arguendo that this information is relevant (it is not), the burden of producing documents responsive to this Request for activity outside of the United States would greatly outweigh any marginal benefit in this case.

As for Epic's Request Nos. 56-58 and 60 (studies, analyses, surveys relating to competition and consumer demand), the relevant competition in this case is in the U.S. market—even though it is certainly true that Apple faces fierce competition globally.

As for Epic's Request Nos. 61-63 (security and privacy studies, analyses, and surveys), again, what is relevant in this case is Apple's security practices in the United States. Epic has not articulated why the fact that Apple also has important security practices worldwide is relevant to the matter.

**Date Ranges for the Parties' Productions**

In addition, Epic has requested that Apple expand the time period of collection for documents responsive to Epic's Request Nos. 1-2, 15-18, 32-38, 43-44, 54, 64, and 65-70. Apple has likewise requested that Epic collect documents from January 1, 2010 through August 13, 2020 for its designated custodians. The parties should meet and confer further to determine if they can reach agreement on these reciprocal requests.

\*   \*   \*   \*

Apple emphasizes that it was Epic that sought an aggressive discovery schedule based on its representations to the Court that Epic would seek only "limited targeted additional discovery" from Apple. Aug. 24, 2020 Hr'g Tr. at 5:21-22. And Apple is already providing a tremendous amount of discovery to Epic and working diligently to continue to produce responsive material on the expedited discovery schedule. Apple provided Epic the millions of documents already produced to the class plaintiffs, including documents from Apple's existing 15 custodians. Apple also began updating its collection and production of documents from two Apple witnesses, and collecting and producing documents from

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

GIBSON DUNN

Yonatan Even
December 26, 2020
Page 7

additional Epic-specific custodians. And while Apple has a longstanding tradition of shutting down most of its operations for approximately two weeks before and immediately after New Year's Day, Apple is nonetheless continuing to diligently prepare documents for production and investigate additional non-custodial repositories to accommodate Epic's numerous requests by January 6, 2021. However, Apple is constrained by what physically can be accomplished on the aggressive timeline requested by Epic and granted by the Court.

Sincerely,

Ethan Dettmer

EDD/bxy


cc: epic-mobileapps@cravath.com
    steve@hbsslaw.com
    robl@hbsslaw.com
    shanas@hbsslaw.com
    bens@hbsslaw.com
    rifkin@whafh.com
    byrd@whafh.com
    guiney@whafh.com
    dejong@whafh.com
    appleappstorediscovery@gibsondunn.com

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED