**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson, Magistrate Judge

| | |
|---|---|
| EPIC GAMES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. C 20-05640 YGR (TSH)** |
| ) | |
| APPLE, INC., ) | |
| ) | |
| Defendant. ) | |

San Francisco, California
Friday, February 5, 2021

**TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR**

**APPEARANCES BY ZOOM WEBINAR:**

For Plaintiff:
    CRAVATH, SWAINE & MOORE LLP
    825 Eighth Avenue
    New York, New York  10019
  **BY:  LAUREN A. MOSKOWITZ, ATTORNEY AT LAW**

For Defendant:
    GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street - Suite 3000
    San Francisco, California  94105
  **BY:  ETHAN DETTMER, ATTORNEY AT LAW**

Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
    Official Reporter

|   |   |
|---|---|
| 1 | **Friday - February 5, 2021**                                  **1:00 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |

4   **THE CLERK:** Good afternoon, everyone. We're here in
5   Civil action 20-5640, Epic Games, Inc., vs. Apple, Inc. The
6   Honorable Thomas S. Hixson presiding.
7       Counsel, please state your appearances. Let's start with
8   the plaintiff.
9       **MS. MOSKOWITZ:** Good afternoon, Your Honor. Lauren
10  Moskowitz from Cravath, Swain & Moore on behalf of Epic Games.
11      **THE COURT:** Hi. Good afternoon.
12      **MR. DETTMER:** Good afternoon, Your Honor. Ethan
13  Dettmer on behalf of Gibson, Dunn & Crutcher on behalf of
14  Apple.
15      **THE COURT:** All right. Good afternoon.
16      I'll give you my tentative thoughts about the letter brief
17  and then the parties can respond.
18      One thought I had is that Apple's attorney lists I think
19  were likely misleading to a reasonable reader. They did
20  list -- there were entitled "Apple in-house counsel" or
21  "in-house counsel" so I do think that someone reading those
22  lists would assume that the people listed there are attorneys.
23      I'm not in any way suggesting that Apple intended to
24  mislead anyone. There's nothing before me that indicates that.
25  I just think that somebody reading those lists would naturally

1   assume that those people are all lawyers.  So I can certainly
2   understand why Epic was confused and then thought that perhaps
3   they had stumbled onto a great secret when they realized that
4   some of those people were not lawyers.
5       However, the fact that Apple was able to respond to Epic's
6   letter in a little bit less than 12 hours with a description of
7   who everybody was in that list of 31 makes me think that Apple
8   was never confused about who those people were and Apple
9   understood that some of them were litigation specialists or
10  were working at the direction of legal and Apple knew that as
11  it was doing its privilege review.
12      So this suggests to me that there's no need for Apple to
13  re-review anything because it knew who these people were when
14  it did the review in the first place.
15      Now, by contrast, if Apple had stumbled and stammered and
16  taken two weeks to respond and then said, "Oh, my gosh, you're
17  right.  There are all these people and they're not lawyers, we
18  didn't realize that," that would be a very different situation
19  because it could suggest that Apple's initial privilege review
20  might have been done under erroneous assumptions, but I don't
21  see any indication here that Apple misunderstood who these
22  people were.
23      It's unfortunate that there was a misunderstanding on the
24  part of the reader that Epic thought they were lawyers and it
25  turns out some of them were, but I don't see much of a basis to

1  make Apple do anything more here.
2       So those are my tentative thoughts.  Ms. Moskowitz, why
3  don't you address that first.
4           **MS. MOSKOWITZ:**  Sure.  Thank you, Your Honor.
5       I don't think that the facts that Apple's counsel was able
6  to respond in 12 hours and, in fact, still got it wrong, they
7  said that five of the individuals were in-house counsel and
8  then when it came to Your Honor the next day, they narrowed
9  that down to one, I don't think that we have comfort that the
10 reviewers at the time that they were doing the review
11 necessarily did have in mind that these individuals were not,
12 in fact, lawyers.
13      And the very entries in the privilege log when we review
14 them do not say anything that indicates that there was an
15 awareness of these individuals not being attorneys.  It says,
16 in fact when they are the only one, that they are providing
17 advice.  It's not -- it's not the instance where, of course,
18 you can have an e-mail that doesn't involve lawyers that says,
19 between John Smith and Jane Doe, "Reflecting advice of
20 Cravath," for example, even though Cravath isn't on that.  And
21 that's the type of entry that could exist, and you look at it
22 and maybe you scrutinize it a little differently than John
23 Smith is a lawyer -- is indicated to be a lawyer providing
24 legal advice.
25      And so the entries in our view don't give us comfort that

1  the awareness was there at the review stage, and we have -- we
2  do think that they should re-review those entries and provide
3  actual entries that do tell us whose advice in fact is being
4  provided because there isn't an indication as to who the actual
5  lawyer is that is providing the advice, and that is what the
6  privilege log is supposed to do.  And right now we're left with
7  a bunch of entries that say the lawyer that's giving the advice
8  now we know is not in fact a lawyer.
9       So that is why we think that the entries should be
10 re-reviewed and corrected, that there actually is an entry then
11 provided to indicate who the lawyer is that is giving the
12 advice and that we take it from there.
13          **THE COURT:**  Well, but for a lot of those entries they
14 can be relaying legal advice but there wouldn't have been a
15 lawyer on that thread.  I think that's the whole point.
16          **MS. MOSKOWITZ:**  Not on the thread, Your Honor, but the
17 way I've seen it done is that there is still an indication in
18 the log of whose advice is being provided or whose advice is
19 being relayed even if it cannot be a specific name because that
20 person isn't on the thread, but you indicate what the advice --
21 whose advice is being reflected in there; so whether it's
22 in-house, whether it's outside counsel.
23       But the fact of the matter is what we're left with is a
24 bunch of entries that just says "Advice of counsel" and there
25 is no indication that any counsel was involved and the entry

1  gives us no information whatsoever as to whose advice is being
2  given.  So it's really we're left with no indication whatsoever
3  what the basis of the privilege is for those entries.
4            **THE COURT:**  I see.  This is a little bit different
5  from the issue that was teed up in the letter brief because now
6  you're making an argument that a privilege log -- when the
7  person that's the source of the legal advice is not a lawyer,
8  then the privilege log has to specify where the advice came
9  from.
10           I don't -- that's not stated in the plain language of
11 Rule 26 and I haven't memorized the case law to know if that's
12 true or not so I don't feel comfortable weighing in on that
13 during this hearing.  You could raise it again if you want to
14 in another discovery letter brief, but that's a very specific
15 argument you're making that I didn't feel was teed up in the
16 letter brief.
17           **MS. MOSKOWITZ:**  Your Honor, I think it really is just
18 the general principle behind Rule 26 that you need to provide
19 sufficient information to allow the recipient to undertake to
20 understand what the basis is for withholding the document; and
21 what we thought the basis for withholding the document was was
22 the identification of these individuals as lawyers.  Now that's
23 not, in fact, the basis.  The basis is something else, but it
24 hasn't been described.
25           They cannot rely on the privilege logs as they stand for

those entries because they're wrong, and so what we're asking for is for them to actually give us corrected entries for those individual entries that previously had relied on those individuals being lawyers for us to then scrutinize them and understand what the basis is or challenge them in front of Your Honor. So I think that they can't just leave them as it is because they're just definitionally incorrect.

**THE COURT:** I guess I'm struggling with that. If they had given you a list and said "These people are attorneys, these other people are secretaries for the Legal Department, these other people are paralegals, and these other people are working at the direction of Legal," would there have been a problem with their privilege log?

**MS. MOSKOWITZ:** I think -- I think so, Your Honor. I think we would have looked at those entries very differently. A government affairs person as the only individual on the entire e-mail, just an entry saying "Reflecting advice of counsel," I think we absolutely would have challenged that differently; and we didn't have the basis to challenge those at the time because we didn't know that that person was just a government affairs person but, rather, thought they were an attorney.

And so when you look at those entries, you take -- the approach is different. You scrutinize them differently. We would have asked follow-up questions and we may very well have

1  been in front of Your Honor saying "We need more information
2  for these entries" because there is no indication that there's
3  a lawyer actually involved in anything that's being discussed
4  in some of these e-mails.

5  **THE COURT:** Well, that's certainly a fair point, but I
6  don't even have the logs in front of me. I have no idea what
7  they say. They weren't put in front of me in this dispute.

8  Now that you have this knowledge about who these people
9  actually are, if you go back to certain logs and say, "Hey, we
10 can't tell why this is privileged," then, sure, that's fair.
11 You can bring that to me in a challenge, but I literally
12 haven't even seen their privilege logs so there is -- this new
13 dispute is not -- I don't think really is in front of me today,
14 but you're free to raise it.

15 **MS. MOSKOWITZ:** Yes, Your Honor. And I think we
16 didn't do that -- we tried to give some examples and quotes
17 from them. For example, we cited on page 3 of our letter brief
18 with respect to Mr. Brunetto was the entry is "e-mail chain
19 requesting legal advice from counsel regarding app review."
20 Like, that's the sum total of the entry on multiple entries for
21 him, and there's a couple of other examples of slight tweaks on
22 the language, but that's all that we have and there are no
23 lawyers we now know, no lawyers on any of those chains.

24 So we do challenge those entries because we don't have any
25 basis now to understand why a technical person as the only

1  person even legal adjacent, according to Apple's own admission,
2  is providing legal advice somehow who we just don't have any
3  basis to challenge that other than to challenge it as
4  insufficient.
5        **THE COURT:**  What I understood the letter brief to be
6  asking me to order Apple to do was to order them to re-review
7  the privilege entries to have these people on it who are now
8  disclosed not to be lawyers.  I don't think there's a basis to
9  do that; but I didn't understand you, partly because the logs
10 weren't put in front of me, to be making -- to be asking me to
11 rule on specific privilege log entries.  But, again, you're
12 welcome to do that.  I just didn't feel like that issue was set
13 up in the letter brief.
14    I also realize the letter brief seems like it came
15 together pretty fast so it may be that we get another one.
16       **MS. MOSKOWITZ:**  Okay.
17       **THE COURT:**  All right.  Well, let me hear argument
18 from Apple.
19       **MR. DETTMER:**  Your Honor, unless you have specific
20 questions, I mean, I'm certainly happy to answer them.
21    It sounds like I certainly agree with what you said in
22 your tentative.  We obviously had no intention of misleading
23 anyone.  We were actually trying to be helpful and provide more
24 information.  It could be that maybe we should have labeled
25 things better, and I apologize for that confusion; but we do

think that the privilege log is appropriate as it is and agree that a re-review doesn't make sense.

I will say we have been and will continue to talk with Epic about, you know, their concerns; and, you know, I think things should get worked out in a way that hopefully we won't have to bother Your Honor again with this.

**THE COURT:** All right. Ms. Moskowitz made the point that in the letter from Mr. Perry that identified who these 31 people were, I guess there were some changes between his letter and how things ended up in the letter brief; is that right?

**MR. DETTMER:** I am not sure what the exact issue was that Ms. Moskowitz was talking about. I mean, I would say that, as you've mentioned, Your Honor, this all came together very quickly at the insistence of Epic and, you know, we did do this all in about 24 hours. So it may be that, you know, there was some issue that got off, but I'm not sure exactly what the issue is there.

**THE COURT:** Okay. Well, Ms. Moskowitz, I've got it open in front of me -- when I'm looking to my left, it's my other computer monitor -- so if you want to walk me through the differences, I'd appreciate that.

**MS. MOSKOWITZ:** Yes. And we tried to lay it out in our -- the second paragraph of our letter brief. The February 3rd response from Apple, which is Exhibit 4, said that five individuals were lawyers. They listed them as in-house

1  counsel.  But in their letter brief they only claim --
2         **THE COURT:**  Just if we can slow down a little bit, and
3  I'll pull up Exhibit 4 and have that in front of me.
4         **MS. MOSKOWITZ:**  Yeah.
5         **THE COURT:**  Can you -- can you walk me through that?
6         **MS. MOSKOWITZ:**  Yes.  Annie Chan is listed on page 2
7  of Exhibit 4 as Apple in-house counsel.
8         **THE COURT:**  Okay.
9         **MS. MOSKOWITZ:**  As is Kathy Foster --
10        **THE COURT:**  Okay.
11        **MS. MOSKOWITZ:**  -- Jason Lundgaard, Fiona Nolan, and
12 Claire Thwaites.  I'm sure I'm mispronouncing that.
13        **THE COURT:**  Oh, Thwaites.  I see.
14    And then we should go up to the letter brief.
15                    (Pause in proceedings.)
16        **THE COURT:**  And where did they say it differently in
17 the letter brief?
18        **MS. MOSKOWITZ:**  I believe that they acknowledge that
19 all but one -- I'm trying to see how they phrase it, but they
20 describe that 13 worked within the Legal Department and they
21 list them, not that they were lawyers.  This is on the bottom
22 of page 6.
23    And then they state that eight worked directly for lawyers
24 and seven are in discrete business groups.  That's 28 people.
25    And the last one is the Ms. Stivers who, again, they're

```
 1   agreeing is not a lawyer.
 2        So they have not stood by the fact that five were
 3   previously -- actually, I'm sorry.  I found it, Your Honor.  I
 4   apologize.
 5        It's at the top of page 6, the second -- the first full
 6   paragraph that starts "Epic complains..."
 7             THE COURT:  Yes.
 8             MS. MOSKOWITZ:  (reading):
 9             "Apple has further investigated Epic's list and
10        confirmed that one of them, Annie Chan, is an in-house
11        attorney."
12             THE COURT:  Okay.  And then so Foster then is --
13   that's Footnote 4.
14                      (Pause in proceedings.)
15             THE COURT:  Oh, I see.  So we have...
16                      (Pause in proceedings.)
17             MS. MOSKOWITZ:  I believe Ms. Foster is actually the
18   former head of corporate governmental affairs, for example, and
19   not a lawyer.
20             THE COURT:  So we have -- so Foster, Lundgaard,
21   Thwaites are in Footnote 4.  There are seven people within the
22   business subgroups that are responsible for legal issues, and
23   then Nolan is in Footnote 3 worked in Apple's Legal Department.
24   I see.
25             MS. MOSKOWITZ:  Yep.
```

1       **THE COURT:** Okay. Got it. I think I understand.
2    Mr. Dettmer, if you want to address those four.
3       **MR. DETTMER:** Sure, Your Honor.
4    And I'll say, you know, what I said before is absolutely
5    the case, that we did put this together in about 24 hours and
6    so, you know, there are a few of these people who are working
7    closely with the legal group at all times, they have sort of
8    counsel titles, and so there's some, you know, confusion about
9    those couple and, you know, we're nailing that down; but either
10   they're working with lawyers all the time or they are lawyers
11   or they may -- it's -- you know, for those handful, that was
12   just something where in the short time period we've had to look
13   at this based on Epic's insistence. We just wanted to be
14   conservative and list them the way that we listed them in the
15   letter brief.
16      **THE COURT:** Okay. Got it. Understood.
17      **MR. DETTMER:** And I'll just say again, Your Honor,
18   obviously we're happy to talk more with Epic about this, you
19   know, to work this out in a way that, again, we don't want to
20   bother Your Honor with it and we'd rather just talk to them and
21   get these things worked out.
22      **THE COURT:** All righty. Well, I'm not going to order
23   any relief on the current letter brief. As I said, I don't
24   think that there's an indication that there really was a
25   problem in terms of claiming privilege; but I'm not ruling on

|   |   |
|---|---|
| 1 | the other issue that Epic raised today which is, if you don't |
| 2 | have a lawyer on a specific communication, is there some |
| 3 | obligation to identify where the legal advice came from.  I |
| 4 | don't see that in Rule 26, but maybe there's case law on that |
| 5 | that I'm not aware of. |
| 6 | And also since the privilege logs weren't put in front of |
| 7 | me, I don't have a basis to rule on specific entries.  So Epic |
| 8 | is free to raise those issues with a meet and confer; and if |
| 9 | you don't get a satisfactory resolution, to raise that with me. |
| 10 | That's all I have for today.  Sometimes the parties like |
| 11 | to preview if there may be disputes and reserve a hearing time |
| 12 | in the future.  Is there a need for either side to do that now? |
| 13 | **MR. DETTMER:**  No, Your Honor. |
| 14 | **MS. MOSKOWITZ:**  Your Honor, other than this, there's |
| 15 | nothing else currently brewing so I'm happy to either get |
| 16 | something on the schedule or reach out to Your Honor's deputy |
| 17 | if something does arise and get on your calendar that way. |
| 18 | Whatever Your Honor prefers. |
| 19 | **THE COURT:**  Okay.  Why don't we wait for something to |
| 20 | arise, and then you can reach out to my courtroom deputy. |
| 21 | All right.  Thanks, Counsel.  Have a good weekend. |
| 22 | **MR. DETTMER:**  Thank you, Your Honor.  You as well. |
| 23 | **MS. MOSKOWITZ:**  Thank you. |
| 24 | (Proceedings adjourned at 1:17 p.m.) |
| 25 | ---oOo--- |

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Saturday, February 6, 2021

_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
U.S. Court Reporter