UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>        *Plaintiff, Counter-defendant,*<br><br>    v.<br><br>APPLE INC.,<br><br>        *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING APPLE'S REQUEST FOR AN EXTENSION** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    The parties in the above-captioned actions respectfully submit this joint letter brief regarding Defendant Apple Inc.'s request for a unilateral extension of the deadline to serve certain of its expert reports.

    Counsel for Epic Games, Inc. ("Epic") and Apple Inc. ("Apple", together with Epic, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve the outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP<br><br>By: */s/ Gary A. Bornstein*<br>    Gary A. Bornstein<br>    *Counsel for Epic Games, Inc.* | GIBSON DUNN & CRUTCHER LLP<br><br>By: */s/ Mark A. Perry*<br>    Mark A. Perry<br>    *Counsel for Apple Inc* |

**Apple's Position:** Epic has *four times* produced to Apple deficient or otherwise unusable data regarding Fortnite users. Only on February 13 did Epic produce, albeit in patchwork form across several productions, complete and usable data. Apple has been prejudiced because expert reports are due to be served on February 15. Apple respectfully requests that the Court extend the service date for three Apple experts who rely on the Epic data by two days, to February 17. Apple will serve its remaining expert reports by the existing deadline, and expects Epic to do the same.[1]

**Background:** Apple's Request for Production ("RFP") No. 64 requested the production of data regarding usage and purchase behavior of *Fortnite* users. These data are necessary to understand how *Fortnite* users spent time and money across multiple platforms, which is relevant to (among other issues in the case) market definition and monopoly power. On January 13, 2021, Epic "agree[d] to produce the data sets responsive to Apple RFP Nos. 64 . . . for the entire, worldwide *Fortnite* userbase." Ex. A (Jan. 13, 2021 Ltr. from L. Moskowitz to J. Srinivasan).

On January 22, 2021, Epic produced three transactional databases in response to RFP Nos. 64 and 74 (regarding digital transactions). Apple's counsel and consultants promptly inspected the data and, four days later, advised Epic via email that there were significant issues with the data produced. Ex. B (E-mail exchange). Specifically, counsel for Apple observed that there were "a significant number of user accounts . . . missing from the data" for at least one month. *Id.* There also were numerous instances in which the data appeared internally inconsistent. *Id.* Counsel for Apple followed up on January 31 after Epic failed to respond. *Id.*

On February 3, 2021, Epic advised that it had uploaded to the parties' file-sharing site a new set of data that included the missing user accounts from the first production. Ex. B (E-mail exchange). On February 11, 2021, however, Epic advised Apple that it had "inadvertently excluded" certain data from the dataset reproduced on February 3, and that it was uploading yet another version of the data. *Id.* Upon inspection, however, it was determined that the February 11 data could not be extracted for use by Apple's experts. After yet another exchange of emails and multiple phone calls, Epic produced a revised, accessible data set on the morning of Friday, February 12, 2021.

On February 12, Apple informed Epic that its experts and consultants would "need to devote many hours to processing the new data, rerunning their existing analyses, and confirming their results and conclusions." Ex. C (Feb. 12, 2021 E-mail from H. Phillips to Counsel). Apple further advised that its experts would "make every effort to complete the reports that rely on these data by February 15," but "[i]n the event they are unable to do so," Apple "expect[ed] that Epic will have no objection to a short extension of time for service of those reports." *Id.* Following that exchange, Apple's consultants determined that the data produced by Epic was now missing information that had been produced in earlier rounds, including all data for July 2018, requiring the consultants to stitch together multiple data productions to try and create one set of usable data. On February 13, Epic produced the July 2018 data, and did not provide clarity on the meaning of certain data fields until 6:00 PT on February 13.

At *no point* in this litigation has Epic produced a complete, usable set of its own data in response to Apple's request. Yet, Epic has taken the position that it would agree to a brief extension of the

---

[1] Apple determined in the course of preparing this joint letter brief that a third expert relies on the data produced by Epic on February 13. Epic's insinuation that Apple is simply attempting to obtain more time for an unrelated expert report is without basis—a majority of Apple's expert reports are unaffected by this request.

deadline for service of Apple's expert reports only if Apple would agree to a mutual extension of Epic's deadlines. Apple even offered to exchange expert reports unaffected by the data deficiency in password-protected files on February 15, with the passwords to follow when the affected reports were served so as not to give either side an advantage, but Epic refused that compromise. Ex. D (Feb. 13, 2021 E-mail from G. Bornstein to M. Perry).

**Discussion:** Initial expert reports are due to be served on February 15, yet Epic to this day has failed to produce a complete and usable set of critical data regarding transactions by *Fortnite* users. Indeed, Apple's experts did not receive a usable set of transaction and user data until February 12, the Friday before a Monday deadline, and even that dataset had to be supplemented again on February 13. As a result, Apple's consultants have had to stitch together data across multiple productions, and could only begin re-running certain analyses on Saturday evening.

This delay has prejudiced Apple. Apple's experts need this data to analyze usage and purchase behavior of *Fortnite* players across all platforms on which *Fortnite* can be played. That information is relevant to a number of issues in the case, including market definition and monopoly power. Apple's economists already used the previously produced (and deficient) data to conduct a number of econometric analyses that underlie at least three experts' opinions. Those analyses will now have to be redone in order to account for the recently produced data, further impeding the progress of Apple's experts.

Epic protests that the absence of timely delivery of a single month of data will not prejudice Apple, but the issue is much broader. Epic has consistently provided inaccurate and incomplete data, necessitating a new analysis each time that data is delivered and consuming valuable (and limited) resources of Apple and its consultants. Apple's experts should not have to work with data that Epic has admitted is deficient in numerous respects. It behooves no one—not the parties, and certainly not the Court—to have expert testimony that depends on a series of inaccurate or incomplete data produced by the opposing party.

Regardless of Epic's diligence or lack thereof, the fact is that Apple's experts did not have access to the requested data within a reasonable timeframe to incorporate it into their reports. As a result of Epic's delays, the experts and their assistants have to run a complicated set of analyses on the dataset, *beginning* on February 13. Worse, those experts have already wasted significant time (and expense) analyzing data that turned out to be incomplete or inaccurate. Epic's errors, regardless of whether they were reasonable, have imposed an undue and unfair burden on Apple's experts, including during the final weekend of fact discovery.

Epic does not appear to dispute that a short extension is warranted in light of the deficiencies and delay in its own data production. Instead, it attempts to deflect scrutiny away from its own productions by raising a litany of complaints regarding Apple's productions. In all of the discussions between the parties regarding a potential extension to account for Epic's data mishaps, Epic *never* (before this letter) expressed that it needed additional time to process documents or data from Apple. That is particularly significant in light of the fact that Apple's discovery obligations—including with respect to transactional data—have been much more burdensome than Epic's. Moreover, the schedule is tight because *Epic asked that discovery be expedited*; it has no basis to complain of that very expedition. And contrary to Epic's unfounded assertion, Apple has delivered nothing "late." Apple produced its own transactional data, in particular, *before* the date it promised to all parties and the Court—with nary an objection from Epic.

Epic insists that any extension should be mutual. But it is Epic, not Apple, that failed to timely produce data responsive to Apple's requests that will allow Apple's experts to complete their work. And it is Apple, not Epic, that needs additional time for three of its experts to review, analyze, and incorporate the new data. Apple intends to serve the rest of its expert reports on the current deadline of February 15, and expects Epic to do the same.

To be clear, Apple is not at this time asking this Court to compel Epic to produce anything further. Apple's experts will use the data produced on February 12 and supplemented on February 13. Apple seeks only a modest extension of two days, to February 17, within which to serve the reports of the three experts who rely on the data at issue, while serving its other expert reports on the current deadline of February 15. This brief extension, necessitated by Epic's own delay in producing complete and usable data, will not materially impact Epic's ability to respond to any of Apple's expert reports in a timely manner. And it does not warrant any extension of time for Epic to serve its own expert reports.

**Epic's Position:** Apple is attempting to capitalize on minor, and easily explained, complaints about a small fraction of the extensive data Epic has provided, in order to obtain for itself a unilateral extension for three of its expert reports.[2] That is unwarranted.

As Apple itself has told the Court, "the February 15 fact discovery deadline is the same as the deadline for serving initial expert reports" and "that reality has been clear since Judge Gonzalez Rogers entered the scheduling order on October 6, 2020". (Dkt 297-3 at 4.) When Epic sought a more expeditious production of data for use by its experts, Apple objected vociferously. The fact is that, as this Court has already recognized, Apple itself has produced both data and meaningful volumes of documents belatedly. Epic has substantially been prejudiced by Apple's late production of documents and data—including its production of nearly 200,000 documents *today*—which has made it impossible for Epic's counsel to use these documents in depositions and for Epic's experts to incorporate that information in their reports. Nonetheless, Epic is working diligently toward the Court's deadline for opening expert reports. Apple's effort to seize on asserted discrepancies in Epic's data to leverage more time for itself alone should be rejected.

As part of their requests for production ("RFPs"), Apple propounded two broad requests for usage data (RFP No. 64) and transactional data (RFP No. 74) for all of *Fortnite*'s hundreds of millions of players. Epic explained to Apple that this data called for "hundreds of millions, if not billions, of rows of data", and proposed instead to produce the requested data for a randomly selected 1/16th sample of its user base (approximately 20 million accounts), which should have been more than sufficient to allow Apple to observe the player behaviors it wishes to analyze. (Ex. E at 4.) Epic produced the sample, comprising nearly 200 million rows of data, by the January 6, 2021 document discovery deadline. After Apple insisted it would not accept a sample, Epic produced on January 22, 2021 three different data sets responsive to RFP Nos. 64 and 74 that covered the entirety of its *Fortnite* user base and jointly comprised *billions* of rows of data.

On January 26, 2021, Apple first emailed Epic with questions about Epic's data productions (Ex. B at 4-6), several of which it could have raised earlier based on the sample data Epic produced on January 6, 2021. In addition to general questions about how to interpret the data, Apple identified two perceived deficiencies: (1) that certain rows of data for a single month (January 2019) appeared to be missing; and (2) an apparent inconsistency related to the amount of V-Bucks (*Fortnite*'s virtual currency) purchased by users. After investigating, Epic responded to the majority of Apple's questions on February 3, 2021, noting that it was still looking into certain questions, and re-produced the January 2019 data that previously had missing entries. (*Id.*)

On the evening of February 10, 2021, Epic provided a comprehensive response to Apple's remaining questions about Epic's data productions. (*Id.*) Again, Epic informed Apple that it simultaneously was producing supplemental data to address Apple's inquiries. (*Id.*) Most significantly, for RFP No. 64, Epic re-produced the full data set it previously had provided to add

---

[2] Throughout the parties' discussions, Apple had been requesting an extension for *two* of its expert reports. (Ex. D at 2.) But in a draft of this letter brief sent at 3:19pm PT on February 14, 2021, and without even mentioning the change, Apple changed its position to request an extension for *three* reports, which means Apple either: (1) suddenly realized that a third expert was relying on Epic's data, which seems implausible; or (2) decided for reasons unrelated to this purported dispute about Epic's data that the expert in question needed more time.

a new column related to purchases of V-Bucks.[3] The inclusion of that data turned on an interpretation of Apple's request for "purchases" of V-Bucks. The initial January 22, 2021 set included only direct purchases of V-Bucks using money, and the additional column of data produced on February 10, 2021 showed indirect purchases, such as the purchase of a gift card redeemable for V-Bucks or bundles of in-game content that included V-Bucks.

On February 11 and 12, 2021, Epic worked with Apple to resolve a technical issue Apple reported in unzipping the data Epic provided on February 10. Contrary to Apple's assertion, that discussion did not result in the production of another "revised" data set—Epic simply provided the same data through an alternative method that resolved Apple's reported inability to open it.

Later on February 12, 2021, Apple reported that the replacement RFP No. 64 data set appeared to be missing data for the month of July 2018—most of which it already had from Epic's prior production—and posed certain questions about the data. (Ex. F at 3.) Epic produced the data for the month of July 2018 in less than 24 hours and answered Apple's questions, confirming that none required production of additional data. (*Id.* at 1-2.) Thus, contrary to Apple's assertion, there is nothing incomplete about the data Epic has produced. Nor has Epic at any time produced data that is "inaccurate"—it simply supplemented certain months and one field as they were identified. Apple points to nothing that was incorrect.

All said, Epic has worked diligently to supplement data when Apple asked for supplementation, notwithstanding that Apple had a massive sample of data from Epic since January 6 and the full set of data other than one field since January 22, 2021. Epic responded to Apple's data requests, and, where it has identified issues as a result of Apple's inquiries, has been forthcoming in sharing that information with Apple and remedying it as promptly as possible in light of the massive volume of data Apple insisted on receiving.

Apple's claims that the data in question are "critical" to its case is overstated. Apple argues that "[t]hese data are necessary to understand how *Fortnite* users spent time and money across multiple platforms, which is relevant to (among other issues in the case) market definition and monopoly power". But a missing month from 2018 or Apple's request for additional data about the use of gift cards is hardly material to these questions, which themselves are of limited relevance. As this Court has recognized, Epic-specific document requests by Apple "have very limited relevance because they are all about one specific app producer: Epic". (Dkt. 291 at 5.)

Apple's purported justification for a *unilateral* extension is that only Apple has faced challenges obtaining information it considers relevant to its experts' analyses. Nothing could be further from the truth. Indeed, nearly 74% of Apple's document production in response to Epic's requests—or 1.5 million documents—has been made in the last three weeks, at the same time nearly all fact depositions have been occurring. Apple produced nearly 300,000 documents in the past week alone. That includes nearly 200,000 documents comprising approximately 1.6 million pages produced *today*, February 14, 2021, as this letter brief was being finalized. Nearly all of these documents came from the files of witnesses Epic already deposed, including Mr. Cook (35,177 documents), Mr. Schiller (3,466 documents) and Mr. Federighi (63,428 documents). Clearly, the late production makes it all but impossible for Epic's experts to digest these documents in time to

---

[3] Contrary to Apple's assertion, this was not a replacement of the one-month data set provided on February 3, 2021; it was a replacement of the full production made on January 22, 2021 based specifically on Apple's inquiries.

incorporate any learnings in their February 15, 2021 expert reports. And it makes it inconceivable for Apple to argue that it—not Epic—is the aggrieved party entitled to a unilateral extension.

To take another example, each party agreed to identify non-custodial documents it had produced in response to certain of the other party's data-related RFPs. (Ex. G.) Over 80% of the documents identified by Apple—which are critical for Epic's expert reports—were produced less than two weeks before the deadline to exchange expert reports. Not only has Apple produced data late, Apple has continued to maintain that it does not track data that it clearly does track. Despite the Court's observation that "Apple is losing credibility by continuing to assert that it does not have data in the teeth of documents [responsive to Epic's IAP request] proving that it does" (Dkt. 226 at 8), Apple continues to assert that it "has no responsive documents because it does not track costs or revenue as associated with the IAP software (as defined in your request)". (Ex. G at 1.) Epic's experts have simply had to make do with what is available.

Nonetheless, as stated above, Epic offered and does not oppose the concept of a short, *mutual* extension to the deadline for initial expert reports. Epic has also offered and does not oppose a mutual extension only for a relevant subset of the reports. Instead, Apple has moved this Court for an extraordinary remedy: that Epic serve all of its initial expert reports on February 15, but that Apple be allowed to hold back three of its reports. And it does so on the basis of minor issues of the sort routinely seen in massive data sets, without any credible suggestion that the refined information would have any impact on these three experts' analyses—or even any indication of how material the data is to any expert's report. This imbalanced proposal serves no purpose other than to force Epic to bear the burdens associated with Apple's belated productions while giving Apple more time to incorporate and consider the still-developing discovery record.

Dated: February 14, 2021

FAEGRE DRINKER BIDDLE & REATH LLP
   Paul J. Riehle

CRAVATH, SWAINE & MOORE LLP
   Christine Varney
   Katherine B. Forrest
   Gary A. Bornstein
   Yonatan Even
   Lauren A. Moskowitz
   M. Brent Byars

Respectfully submitted,

By:     */s/* Gary A. Bornstein

   Gary A. Bornstein
   *Attorneys for Plaintiff Epic Games, Inc.*

Dated: February 14, 2021

GIBSON, DUNN & CRUTCHER LLP
   Theodore J. Boutrous Jr.
   Richard J. Doren
   Daniel G. Swanson
   Mark A. Perry
   Veronica S. Lewis
   Cynthia E. Richman
   Jay P. Srinivasan
   Ethan D. Dettmer
   Eli M. Lazarus
   Harry Phillips

Respectfully submitted,

By:     */s/* Mark A. Perry
   Mark A. Perry
   *Attorneys for Defendant Apple Inc.*

## E-FILING ATTESTATION

I, Mark A. Perry, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                                                                          */s/* Mark A. Perry
                                                                                             Mark A. Perry