# Exhibit E

## CRAVATH, SWAINE & MOORE LLP

JOHN W. WHITE
EVAN R. CHESLER
RICHARD W. CLARY
STEPHEN L. GORDON
ROBERT H. BARON
DAVID MERCADO
CHRISTINE A. VARNEY
PETER T. BARBUR
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
PHILIP J. BOECKMAN
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1648

WRITER'S EMAIL ADDRESS
lmoskowitz@cravath.com

KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART
AARON M. GRUBER
O. KEITH HALLAM, III
OMID H. NASAB
DAMARIS HERNÁNDEZ
JONATHAN J. KATZ
RORY A. LERARIS
KARA L. MUNGOVAN
MARGARET T. SEGALL

NICHOLAS A. DORSEY
ANDREW C. ELKEN
JENNY HOCHENBERG
VANESSA A. LAVELY
G.J. LIGELIS JR.
MICHAEL E. MARIANI
LAUREN R. KENNEDY
SASHA ROSENTHAL-LARREA
ALLISON M. WEIN
MICHAEL P. ADDIS
JUSTIN C. CLARKE
SHARONMOYEE GOSWAMI
C. DANIEL HAAREN
EVAN MEHRAN NORRIS
LAUREN M. ROSENBERG

SPECIAL COUNSEL
SAMUEL C. BUTLER

OF COUNSEL
MICHAEL L. SCHLER
CHRISTOPHER J. KELLY

December 23, 2020

<u>*Epic Games, Inc. v. Apple Inc.*</u>, No. 4:20-cv-05640-YGR-TSH (N.D. Cal.)

Dear Jay:

I write in response to your December 17, 2020 letter regarding Epic's search of and production from non-custodial files and centrally located document repositories and further to the parties' meet and confer on the same subject on December 22, 2020.

## I. Agreements

Apple's letter requests that Epic conduct targeted searches and collections for certain agreements covered by Apple RFP Nos. 14, 22 and 119. Each of these requests seek "all DOCUMENTS RELATING TO" a broad category of agreements.

> <u>RFP No. 14</u>: "All DOCUMENTS RELATING TO any terms and conditions, program agreements, license agreements, or any other contract or agreement (including related schedules and appendices) between YOU and any APP MARKETPLACE, DIGITAL PRODUCT STORE, or location (such as a website or physical store) offering APPS, IN-APP PRODUCTS, WEB APPS, and/or SOFTWARE, INCLUDING drafts and DOCUMENTS RELATED TO negotiation of any terms or provisions in any such contract".

> <u>RFP No. 22</u>: "All DOCUMENTS RELATED to any agreements and/or contracts between YOU and any manufacturer of HANDHELD DEVICES or wireless carrier (such as Verizon) CONCERNING the pre-installation of YOUR APPS on HANDHELD DEVICES".

> <u>RFP No. 119</u>: "All DOCUMENTS RELATING TO contemplated or actual distribution of any of YOUR APPS through Nvidia's

GeForce Now on any PLATFORM, INCLUDING any compensation or COMMISSIONS paid by YOU to Nvidia RELATING TO distribution of YOUR APPS; any compensation or COMMISSIONS paid by Nvidia to YOU RELATING TO distribution of YOUR APPS; and DOCUMENTS sufficient to show which of YOUR APPS is available through GeForce Now and on which PLATFORMS".

In responding to Apple RFP Nos. 14, 22 and 119, Epic objected to the requests on the grounds that they are overly broad and unduly burdensome but, subject to those objections, agreed to "perform a reasonable search for documents pursuant to the mutually agreed upon Search Protocol".  What that was intended to convey is that Epic primarily would rely on the agreed custodial searches to satisfy those requests.  In fact, many of these agreements have already been captured and produced to Apple pursuant to Epic's custodial searches.  *See, e.g.*, EPIC_00231672, EPIC_00576493.

That language was not intended to foreclose that Epic may consult central repositories to satisfy aspects of those requests (*i.e.*, to obtain the agreements themselves), if doing so was reasonable and proportional to the needs of the case.  To be clear, Epic confirms that, in response to Apple RFP Nos. 14 and 119, it is conducting a reasonable search of its central repositories for executed versions of its *Fortnite* distribution agreements with platform providers and other distributors, including Google, Sony, Microsoft, Nintendo and Nvidia.  In response to Apple RFP No. 22, Epic also is conducting a reasonable search of its central repositories for agreements with original equipment manufacturers and wireless carriers relating to the preinstallation of the Epic Games app on Android devices.

## II.  Data

Apple's December 17, 2020 letter inquires about Epic's collection and production of data sought by Apple RFP Nos. 17, 46, 56, 60, 64, 65 and 74, which seek:  (a) financial data; (b) user data; (c) transactional data; and (d) data about the Epic Games Store ("EGS").  These four categories of requests are addressed in turn.

### A.  Financial Data

Apple RFP Nos. 17 and 46 seek financial data regarding Epic's distribution of its games and in-game content.

RFP No. 17:  DOCUMENTS, including data, showing the amount in COMMISSIONS, fees, OR advertising revenue that any DIGITAL PRODUCT STORE has received as a result of distributing YOUR DIGITAL PRODUCTS such as Fortnite to users of Android MOBILE DEVICES, INCLUDING the total amount any such store has received, any periodic fee such store has received, AND the COMMISSION percentage such store has received per unit distributed of YOUR DIGITAL PRODUCTS.

RFP No. 46:  DOCUMENTS sufficient to show YOUR earnings, revenues, sales, and profits from the download or purchase of any of YOUR APP(S), IN-APP PRODUCT(S), WEB APP(S), and/or SOFTWARE on each PLATFORM on which such APPs are available.

Epic responded to these requests by agreeing to search "centrally located or other reasonably accessible repositories" for responsive data.  This language was intended to convey that Epic would be searching central sources—namely, its internal databases—for responsive data.

With respect to RFP No. 17, Epic will produce data regarding the monthly platform fees paid to Google and Samsung in connection with the distribution of Epic's apps through their respective Android stores from January 2017 through October 2020.

With respect to RFP No. 46, Epic does not track its costs (other than platform fees) by platform.  Thus, Epic will produce data regarding the monthly platform fees paid to third parties in connection with the distribution of its games on non-Android devices and platforms from January 2017 through October 2020.  In addition, Epic will produce data regarding its gross revenue (from games and other sources), costs of sales, gross income, gross margin, total operating expense and net income for the same period.

B.  User Data

Apple RFP Nos. 64 and 65 seek a broad set of *Fortnite* user data.

RFP No. 64:  DOCUMENTS sufficient to show, for each user ID associated with *Fortnite*, on a monthly basis:

a. the total time in hours that user ID was used to play *Fortnite* on each PLATFORM;
b. the number of days on which the user ID was used to play *Fortnite* on each PLATFORM;
c. the quantity of V-bucks purchased by that user ID while accessing *Fortnite* on each PLATFORM;
d. the quantity of V-bucks redeemed by that user ID while accessing *Fortnite* on each PLATFORM;
e. the number of matches played by that user ID on each PLATFORM;
f. any categorization of the user ID by frequency of gameplay (e.g., light user or power user);
g. whether the user ID purchased a Battle Pass and, if so, whether the user ID completed the Battle Pass; and
h. whether the user ID engaged with Party Royale or any event in *Fortnite* (e.g., a live concert) and, if so, on which PLATFORM.

Since *Fortnite* launched in July 2017, there have been more than 400 million total users who have accessed the game and there are regularly tens of millions of users who access

the game in any given month.  Apple RFP No. 64 thus can be read to call for hundreds of millions, if not billions, of rows of data.  Collecting and producing that volume of data would be significantly burdensome and disproportionate to the needs of the case.  Instead, Epic proposes to produce the requested data for a sample of over 20 million *Fortnite* user accounts.  For each user in the sample and for each platform on which the user played in a given month, the data set would include:  (1) the time played in hours (RFP No. 64(a)); (2) the number of separate days played (RFP No. 64(b)); (3) the quantity of V-Bucks purchased (RFP No. 64(c)); (4) the quantity of V-Bucks redeemed[1] (RFP No. 64(d)); (5) the number of matches played (RFP No. 64)(e)); and (6) the number of in-game events attended (RFP No. 64(h)).  In addition, the data set would indicate whether the user purchased a Battle Pass and the Battle Pass level the user reached during the month (RFP No. 64(g)).  The data set would not include any information regarding the categorization of the user based on frequency of gameplay (RFP No. 64(f)) because Epic does not so categorize.  Please confirm whether Apple is willing to accept the sample of data responsive to RFP No. 64 proposed above.

> RFP No. 65:  For each PLATFORM on which *Fortnite* is available, DOCUMENTS sufficient to show how many times *Fortnite* has been installed on each PLATFORM; the number and percentage of all Fortnite users who have accessed Fortnite on that PLATFORM; the total number of hours that Fortnite has been played on that PLATFORM; and the number and percentage of average daily Fortnite users who access Fortnite on that PLATFORM.

RFP No. 65 is largely duplicative of the data Apple separately has requested in connection with Interrogatory No. 1, which seeks monthly data regarding the total number of users and hours played on each platform.  Epic plans to produce a data set responsive to Apple Interrogatory No. 1 in the next few days.  If Apple believes it needs data responsive to RFP No. 65 on a cumulative, rather than monthly basis, Epic is available to meet and confer after Apple has had an opportunity to review the data set produced in response to Interrogatory No. 1.  Epic does not track information regarding installations of *Fortnite* across all platforms in the ordinary course.

### C.  Transactional Data

Apple's letter raises its request for transaction-level data in connection with its RFP No. 74, which seeks data regarding two different types of transactions since August 1, 2020: (1) purchases using real money and (2) redemptions of V-Bucks for in-game content.

> RFP No. 74:  For each and every sale of a DIGITAL PRODUCT in Fortnite since August 1, 2020, INCLUDING any sale of V-bucks

---

[1] In the ordinary course, Epic does not track the platform on which users redeemed V-Bucks for digital content.  For purposes of Epic's response to this RFP, redemptions will be assigned to the platform on which the user spent the majority of their time on the day of the redemption.

or redemption of a DIGITAL PRODUCT (e.g., skins) in exchange
for V-bucks, DOCUMENTS sufficient to show:

a. the user ID (or other identifying information) of the *Fortnite*
user who engaged in each such transaction;
b. the PLATFORM on which such transaction occurred;
c. the identity and quantity of each DIGITAL PRODUCT sold or
redeemed;
d. the date of each transaction;
e. the price paid by the *Fortnite* user in connection with each
transaction;
f. the refund request, if any, by the Fortnite user, and the
disposition of the refund request;
g. YOUR gross and net revenues from each transaction;
h. the amount of any fees or COMMISSIONS paid by YOU to any
third party in connection with each sale, and the identity of such
third party; and
i. if the transaction was made on one of DEFENDANT's
HANDHELD DEVICES, whether the sale was made using
DEFENDANT'S IAP or EPIC DIRECT PAYMENT.

As with Apple RFP No. 64, Apple RFP No. 74 encompasses an enormous volume
of data. Even for the limited time period from August 1, 2020 to present, the combined number
of purchases and redemptions for millions of users totals at least tens of millions of transactions.
Collecting and producing that volume of data would be significantly burdensome and
disproportionate to the needs of the case. Instead, Epic proposes to produce the requested data
for the same sample of over 20 million *Fortnite* user accounts described above.[2]

Epic maintains slightly different types of data depending on the type of
transaction. Thus, what Epic can produce will vary slightly for real money transactions versus
V-Bucks redemptions.

Specifically, for real money purchase transactions in the sample, Epic can
produce the following data: (1) Epic account ID (RFP No. 74(a)); (2) platform (RFP No. 74(b));
(3) item (RFP No. 74(c)); (4) quantity (RFP No. 74(c)); (5) transaction date (RFP No. 74(d)); (6)
revenue in U.S. dollars (RFP No. 74(e)); and (7) net revenue in U.S. dollars (after platform fees)
(RFP No. 74(g-h)). Also, for purchases made on iOS devices, the data set would include data
regarding whether the purchases were made using IAP or Epic Direct payment (RFP No. 74(i)).
Regarding refunds (RFP No. 74(f)), for real money purchases, Epic does not have complete
refund data for transactions processed by third parties, and the refund data it does have is housed
in a separate database from its transactional data. Epic is still investigating whether and to what

---

[2] The production would include data only for those users in the sample who actually made
transactions during the time period called for by the request.

extent it is feasible and if so, how burdensome it would be, to provide refund-related data on a transaction-by-transaction basis.  Epic will follow up after it has completed this investigation.

For each redemption of V-Bucks for in-game content in the sample, Epic can produce the following data:  (1) Epic account ID (RFP No. 74(a)); (2) primary platform (RFP No. 74(b))[3]; (3) item type (RFP No. 74(c)); (4) transaction date (RFP No. 74(d)); (5) base price in V-Bucks (RFP No. 74(e)); (6) actual price paid in V-Bucks (RFP No. 74(e)); and (7) refund information (if applicable) (RFP No. 74(f)).  Revenue and commission data (RFP No. 74(g)-(h)) is not applicable to V-bucks redemptions.

Please confirm whether Apple is willing to accept the proposed sample of data responsive to RFP No. 74 as described above.

D.  EGS Data

Apple RFP Nos. 56 and 60 seek certain EGS data.

RFP No. 56:  From the inception of YOUR DIGITAL PRODUCT STORE through the present, DOCUMENTS, including data, sufficient to show – by week, month, or quarter – the number of DIGITAL PRODUCTS (e.g., games and in-game purchases) available on YOUR DIGITAL PRODUCT STORE, INCLUDING DOCUMENTS RELATED TO the number of such DIGITAL PRODUCTS per platform (e.g., Mac versus PC) and whether each such DIGITAL PRODUCT is zero-priced or non-zero priced.

RFP No. 60:  From the inception of YOUR DIGITAL PRODUCT STORE through the present, DOCUMENTS, including data, sufficient to show – by week, month, or quarter – the amount in U.S. dollars that YOU have received in COMMISSIONS from sales of DIGITAL PRODUCTS through YOUR DIGITAL PRODUCT STORE, INCLUDING:

a. DOCUMENTS showing the amount generated from initial downloads; and
b. DOCUMENTS showing the amount generated from sales of IN-APP PRODUCTS.

Apple's December 17, 2020 letter requests data responsive to Apple RFP Nos. 56 and 60 on a weekly basis.  But the RFPs themselves seek EGS data "by week, month, or quarter" (emphasis added).  Epic has already begun collecting the requested data on a monthly basis, in

---

[3] Epic can only provide data regarding the primary platform for the same reason as discussed above.

part, because that is how it tracks the relevant data in the ordinary course.  Accordingly, that is how Epic intends to proceed with producing data in response to these requests.

Specifically, in response to RFP No. 56, Epic will produce monthly data regarding the number of base games and "add-on" products available through EGS and whether they were available for purchase or for free.  Add-on products include digital content that EGS users can acquire through in-app purchases.  Epic does not separately track the number of PC versus Mac products in the ordinary course and, therefore, will not be producing data in response to this portion of the request.

In response to RFP No. 60, Epic will produce monthly data regarding (1) the amount of revenue associated with each game and add-on product that was available in EGS, and (2) the payouts to developers in connection with each title (*i.e.*, game and associated add-on products) available in EGS.  Epic does not track its "commissions" or retained revenue share on a per product basis and, therefore, will not be producing data in response to this portion of the request.

### III.  Studies, Reports and Analyses

Apple's letter also asks that Epic conduct targeted searches of its central repositories for "[v]arious studies, reports, analyses, strategy documents, surveys, and market research" sought by Apple RFP Nos. 23, 66, 116, 129-132 and 134.  Based on a reasonable inquiry, there does not appear to be a central repository that houses these types of documents to the extent they exist.  Instead, such documents are reasonably expected to be located in the files of Epic's 17 document custodians in this case, who cover all relevant parts of Epic's business.  Epic's search protocol not only includes emails for these custodians but also shared Google Drive folders that they use in the ordinary course of business on matters relevant to the issues in this case.  Moreover, as detailed in the attached Appendix A, various search terms—the vast majority of which were supplied by Apple itself—are likely to elicit documents responsive to these requests.[4]  Therefore, Epic already has conducted a reasonable search for these documents and has been and will be producing responsive, non-privileged documents that are located from that search.

*****

Epic is available to meet and confer.

Sincerely,


s/ Lauren A. Moskowitz

---

[4] Appendix A does not purport to represent an exhaustive list of the terms that may elicit documents responsive to the requests specified, just those that are most readily apparent.

Jay P. Srinivasan
GIBSON, DUNN & CRUTCHER LLP
jsrinivasan@gibsondunn.com
AppleAppStoreDiscovery@gibsondunn.com

E. Joshua Rosenkranz
William F. Stute
ORRICK, HERRINGTON & SUTCLIFFE LLP
jrosenkranz@orrick.com
    wstute@orrick.com

Steve W. Berman
Robert F. Lopez
Ronnie Siedel Spiegel
Shana E. Scarlett
Ben Siegel
Ted Wojcik
Ben Harrington
HAGENS BERMAN SOBOL SHAPIRO LLP
steve@hbsslaw.com
    robl@hbsslaw.com
        ronnie@hbsslaw.com
            shanas@hbsslaw.com
                bens@hbsslaw.com
                    tedw@hbsslaw.com
                        benh@hbsslaw.com

Mark C. Rifkin
Rachele R. Byrd
Matthew M. Guiney
Brittany N. DeJong
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
rifkin@whafh.com
    byrd@whafh.com
        guiney@whafh.com
            dejong@whafh.com

Encl.

BY EMAIL

**Appendix A**

| RFPs | Agreed Upon Search Strings |
|---|---|
| RFP No. 23:  DOCUMENTS CONCERNING any market research YOU have conducted or commissioned RELATED TO consumer preferences for playing games on particular PLATFORMS. | • (consum* OR user* OR player) w/5 (prefer* OR behav* OR trend* OR pattern* OR tend* OR typical* OR survey* OR unique OR retain* OR retention*) |
| RFP No. 66: All DOCUMENTS RELATED to the ability and tendency of users to access YOUR APPS and purchase DIGITAL CONTENT within YOUR APPS on multiple PLATFORMS, INCLUDING all DOCUMENTS discussing:<br><br>a. the number and/or percentage of users who have accessed any of YOUR APPS (including *Fortnite*) on multiple PLATFORMS;<br>b. any DOCUMENTS CONCERNING the actual or estimated tendency of users to access any of YOUR APPS (including *Fortnite*) on one or more different PLATFORMS;<br>c. any DOCUMENTS CONCERNING the actual or estimated tendency of users to acquire and/or redeem IN-APP PRODUCTS (INCLUDING V-bucks and DIGITAL PRODUCTS redeemed in exchange for V-bucks) on different PLATFORMS; and<br>d. any DOCUMENTS CONCERNING the HANDHELD DEVICES and NONHANDHELD DEVICES used by users of any of YOUR APPS (including *Fortnite*) who have accessed the APP on one or more PLATFORMS. | • crossplay*<br><br>• ((platform* OR console*) w/5 (cross* OR across OR multiple OR more OR switch* OR chang* OR substitut*))<br><br>• "cross-progression"<br><br>• (cross* w/5 progress*) |
| RFP No. 116:  All DOCUMENTS RELATING TO YOUR internal projections, business plans, budgets, forecasts, sales or profit projections, planning analyses, strategies, or models regarding Epic Online Services. | • ("Epic Online Services" OR "EOS") w/10 (market* OR contract* OR agreement* OR license* OR distribut* OR "PR" OR campaign OR advert* OR promot* OR secur* OR safe* OR harmful* OR fraud* OR cheat* OR decept* OR privacy OR cross* OR across OR multiple OR more OR switch* OR chang* OR substitut* OR platform*); |

| | |
|---|---|
| RFP No. 129:  All DOCUMENTS RELATING TO consumers' purchasing and/or spending behavior on APPS or IN-APP PRODUCTS, INCLUDING STUDIES and ANALYSES RELATED TO consumers' price sensitivity for purchases of APPS or IN-APP PRODUCTS, the factors that affect consumers' decisions to purchase APPS or IN-APP PRODUCTS, and/or any differences in consumer purchasing and/or spending behavior on different PLATFORMS and the reasons therefor. | • (consum* OR user* OR player) w/5 (prefer* OR behav* OR trend* OR pattern* OR tend* OR typical* OR survey* OR unique OR retain* OR retention*) |
| RFP No. 130:  All DOCUMENTS RELATING TO the extent to which *Fortnite* players change from playing *Fortnite* on one PLATFORM to playing on another PLATFORM, INCLUDING STUDIES, ANALYSES, or COMMUNICATIONS RELATING TO the factors affecting such PLATFORM migration. | • crossplay*<br><br>• ((platform* OR console*) w/5 (cross* OR across OR multiple OR more OR switch* OR chang* OR substitut*))<br><br>• "cross-progression"<br><br>• (cross* w/5 progress*) |
| RFP No. 131: All DOCUMENTS RELATED TO any anticipated or actual effect of Fortnite's removal from the App Store to YOU, INCLUDING STUDIES, ANALYSES, or COMMUNICATIONS RELATED TO the extent to which iOS Fortnite users continued playing iOS Fortnite, continued purchasing IN-APP PRODUCTS through iOS Fortnite, migrated to another PLATFORM, and/or ceased using iOS Fortnite temporarily or permanently, all STUDIES, ANALYSES, or COMMUNICATIONS RELATED TO the anticipated or actual effect of Fortnite's removal from the App Store on the number of Fortnite downloads, sales of IN-APP PRODUCTS, or time spent by Fortnite users in other PLATFORMS, and all STUDIES, ANALYSES, or COMMUNICATIONS RELATED TO the projected or actual financial impact to YOU from Fortnite's removal from the App Store. | • iOS* OR Android* OR "App Store" OR "Google Play" OR "Play Store" OR GPS*<br><br>• (Fortnite* OR fn* OR "Fortcraft") w/10 (store* OR market* OR distribut* OR channel* OR pric* OR pay* OR mone* OR transfer* OR approv* OR reject* OR delist* OR ban* OR ceas* OR complain* OR "PR" OR campaign OR advert* OR promot* OR secur* OR safe* OR harmful* OR fraud* OR cheat* OR decept*)<br><br>• (Epic OR business*) w/10 (model* OR "economics" OR "ecosystem" OR revenue* OR gross* OR profit* OR split* OR "income" OR upside* OR budget* OR forecast* OR mone* OR strategy OR perform* OR pipeline* OR exclusive* OR (free w/5 (app* OR game*))) |

| | |
|---|---|
| <u>RFP No. 132</u>:  All DOCUMENTS RELATED TO any anticipated or actual effect of *Fortnite's* removal from the Google Play Store to YOU, INCLUDING all STUDIES, ANALYSES, or COMMUNICATIONS RELATED TO the anticipated or actual effect of *Fortnite's* removal from the Google Play Store on the number of *Fortnite* downloads, sales of IN-APP PRODUCTS, or time spent by *Fortnite* users in other PLATFORMS, and all STUDIES, ANALYSES, or COMMUNICATIONS RELATED TO the projected or actual financial impact to YOU from *Fortnite's* removal from the Google Play Store. | <ul><li>iOS* OR Android* OR "App Store" OR "Google Play" OR "Play Store" OR GPS*</li><li>(Fortnite* OR fn* OR "Fortcraft") w/10 (store* OR market* OR distribut* OR channel* OR pric* OR pay* OR mone* OR transfer* OR approv* OR reject* OR delist* OR ban* OR ceas* OR complain* OR "PR" OR campaign OR advert* OR promot* OR secur* OR safe* OR harmful* OR fraud* OR cheat* OR decept*)</li><li>(Epic OR business*) w/10 (model* OR "economics" OR "ecosystem" OR revenue* OR gross* OR profit* OR split* OR "income" OR upside* OR budget* OR forecast* OR mone* OR strategy OR perform* OR pipeline* OR exclusive* OR (free w/5 (app* OR game*)))</li></ul> |
| <u>RFP No. 134</u>:  All DOCUMENTS RELATED TO presentations and reports provided by YOU to YOUR Board of Directors, INCLUDING presentations or reports RELATED TO YOUR APPS (INCLUDING Fortnite), YOUR DIGITAL PRODUCT STORE, Unreal Engine, EPIC DIRECT PAYMENT, APPLE, and/or YOUR financial statements or performance, and also INCLUDING all COMMUNICATIONS CONCERNING such reports and presentations. | <ul><li>"Board of Directors"</li><li>(Epic OR business*) w/10 (model* OR "economics" OR "ecosystem" OR revenue* OR gross* OR profit* OR split* OR "income" OR upside* OR budget* OR forecast* OR mone* OR strategy OR perform* OR pipeline* OR exclusive* OR (free w/5 (app* OR game*)))</li></ul> |