Pages 1 - 37

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable YVONNE GONZALEZ ROGERS, Judge**

| | | |
|---|---|---|
| EPIC GAMES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | NO. C-20-5640 YGR |
| | ) | |
| vs. | ) | Monday, March 1, 2021 |
| | ) | |
| APPLE, INC., | ) | Oakland, California |
| | ) | |
| | ) | FURTHER CASE MANAGEMENT |
| | ) | CONFERENCE |
| Defendant. | ) | |
| _____ | ) | |

**<u>REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS</u>**

<u>**APPEARANCES:**</u>

For Plaintiff:           CRAVATH, SWAINE & MOORE, LLP
                         825 Eighth Avenue
                         New York, New York 10019
                    **BY: KATHERINE B. FORREST, ESQUIRE**
                         **GARY A. BORNSTEIN, ESQUIRE**


For Defendant:           GIBSON, DUNN & CRUTCHER
                         2100 McKinney Avenue, Suite 1100
                         Dallas, Texas 75201
                    **BY: VERONICA S. MOYE, ESQUIRE**


                         GIBSON, DUNN & CRUTCHER
                         333 South Grand Avenue
                         Los Angeles, California 90071
                    **BY: RICHARD J. DOREN, ESQUIRE**


Reported By:             Diane E. Skillman, CSR 4909, RPR, FCRR
                         Official Court Reporter

        TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

<u>Monday, March 1, 2021</u>                                      <u>9:30 a.m.</u>

                    P R O C E E D I N G S

                            o0o

            **THE COURT:**  Good morning, everyone.  Let's go ahead

and call your case.

            **THE CLERK:**  Calling Civil Action 20-5640 Epic Games,

Inc. versus Apple, Inc.

      Counsel, please state your appearances.

            **MS. FORREST:**  Good morning, Your Honor.  This is

Katherine Forrest for plaintiff Epic.

            **MR. BORNSTEIN:**  Good morning.  Gary Bornstein also

for Epic Games.

            **MS. MOYE:**  Good morning, Your Honor.  Veronica Moye

for Apple.

            **MR. DOREN:**  Good morning, Your Honor.  Richard Doren

for Apple.

            **THE COURT:**  Good morning.

      All right.  Ms. Stone, you have something to read.

            **THE CLERK:**  All right.

      This Court is participating in a pilot program approved by

the Judicial Council to study the practice of live streaming

audio of civil proceedings.

      Under the pilot guidelines, with the parties' consent, a

judge may allow audio of certain civil proceedings to be live

streamed to the Court's YouTube channel where it will be

1    accessible to the public.  The parties to this proceeding have

2    consented to audio of the proceeding being live streamed to

3    the Court's YouTube channel.

4        To help ensure the audio is clear, please speak into your

5    microphones, mute your microphone when not speaking, and limit

6    background noises.

7        Thank you.

8            **THE COURT:**  Thank you.

9        All right.  When I originally set this, I thought perhaps

10   I was going to have all of the cases against Apple on the

11   platform.  We were going to do some coordinating.  That's not

12   necessary given the changes that the Court made in terms of

13   scheduling, which is why I vacated the hearings -- the Case

14   Management hearings in the other two Apple cases.

15       So today we are going to focus on getting ready for the

16   bench trial.  As I indicated, I received your emails on Friday

17   evening or late afternoon.  Appreciate that.  Gave me lots to

18   think about over the weekend.  And I also have received some

19   additional information from our Court staff here.  So, let me

20   tell you where I'm coming out on this.

21       I understand that Apple wants and is committed to a fully

22   in-person trial to the fullest extent possible and they would

23   prefer a date later if that means that we can't have it in

24   May.  Epic Games wants to have it in May as their first and

25   foremost priority, but they would prefer not to do it in

4

1    person.

2        I had -- when I talked to you all informally before, I

3    told you that I might be able to give you a couple of days in

4    person, which would make it hybrid, which has its own pros and

5    cons, but it turns out that our Court staff thinks that by May

6    I should be able to give you a fully in-person trial.

7        And given some of the considerations, which we will go

8    through, what I would be willing to do is have longer days.  I

9    will move my criminal calendars so that I can give you five

10   days a week as opposed to four.

11       I understand that there are risks, so let's talk about

12   some of that.

13       The reality is, is that given the allegations that Epic

14   Games has brought against Apple, and the significance of this

15   case, as I reflected on the various issues, it fundamentally

16   occurred to me, or really what is driving this is, that these

17   allegations in this case is so significant it warrants the

18   best that the judiciary has to give.  And the best is in

19   person.  And that is because credibility matters.  You're

20   going to have experts who have diametrically opposed views of

21   what's going on.  We are going to have people from Apple

22   probably come in and say they've got to do what they have to

23   do and people from Epic who say absolutely not, you are

24   constraining competition.

25       When someone walks into the United States courthouse

1    through the courtroom doors and onto that stand, and they have

2    to stand and raise their right hand in a court of law, it

3    gives them pause.  It makes them twice -- think twice about

4    lying or stretching.  That's really different from sitting in

5    the comfort of your house or the comfort of your office, and

6    Cross-Examination is different in person.

7        A deposition shows us that it's possible; we do it all the

8    time.  But we all know, as trial attorneys and as judges, we

9    all know that a deposition does not take the place of a

10   courtroom.  So, the best that the judiciary has to offer is in

11   person.  And I think that I can give it to you, and so that's

12   what I am going to do.

13       That being said, I am not going to, and I will be quite

14   generous with requests for people to appear remotely if

15   necessary for health considerations.  I've been in touch with

16   Judge Albright down in Texas.  Actually, just this morning an

17   article came out about his jury trials down there.  And he's

18   going to confer with me later this week.  He is making at

19   least the lawyers take daily COVID tests to make sure that

20   they are coming in without that.  The parties are paying for

21   it, I believe, but I'm going to find out the specifics which

22   will help, I think, with the -- some of the concerns.

23       I do -- I do think that the health considerations are

24   important, but I also don't want it to be used as an excuse.

25   So if you tell me that someone cannot come for health

1    considerations, we better not find out that they have been on

2    vacation somewhere else, that they've -- you know, that they

3    are COVID deniers, I should say, in a way.  We just -- I'm

4    asking you, as lawyers, to make sure that you investigate the

5    people who are telling you that they cannot show up.

6        I've got a case supposed to go to trial this summer, a

7    jury trial.  And all of a sudden the -- one of the key people

8    in the trial is, you know, all over Facebook denying that

9    COVID-19 even exists, that is, that the problem is even there.

10       So, lots of people have different views.  What I won't

11   allow is for someone to want to avoid the in-person

12   cross-examination by claiming a health concern, and then we

13   find out that that health concern is not genuine.  If I find

14   that out, then, you know, I will consider striking the entire

15   testimony of that person.  I won't be lied to.

16       Does that make sense?  Do you all agree with that

17   approach?

18           MS. FORREST:  Certainly, Your Honor, in terms of the

19   way in which witnesses should be handled and always should be

20   truth-telling and forthcoming with the Court as to the

21   realities of the situation.

22       We very much appreciate the Court's maintaining the

23   May 3rd date.  We will abide by the Court's determination

24   here.  We know that the Court has carefully considered our

25   concerns that we previously raised, so we won't go through

1    them again here right now.  May 3rd is the most important

2    aspects of this for us.

3            THE COURT:  Ms. Forrest, I will say, Epic Games has

4    lots of law firms that are local that are representing them.

5    You've got local counsel, Winston & Strawn and Fenwick both

6    represent Epic Games.  They have local offices.  To the extent

7    that you feel like you've got support staff, I'm sure that

8    these other law firms can give you local support staff.

9        Cravath and Epic, you know, you have considerable

10   resources.  There are ways to do this in a way that maintains

11   the safety of individuals.  And the reason, you know -- I

12   understand that people may have to quarantine when they go

13   home, but even that can be dealt with in terms of extra

14   resources.

15       Plus, you are all asking for five weeks.  I told you

16   three.  So add your two weeks to my three, and you get your

17   five.  You know, I think that -- look, I have a lot of respect

18   for trial lawyers.  Because sometimes you have to pick up and

19   leave and sometimes you leave for months your families.

20       A four- to five-week trial is, in the big scheme of

21   things, you know, is not the longest trials we do.  I've done

22   four- to five-month trials.  So it's not as if it -- it kind

23   of just comes with the nature of the practice.  So, that's why

24   I left big firm law because I couldn't leave my kids with a

25   spouse who was always traveling.  I couldn't do it anymore.

1    So that's, you know, that's part of why you get paid the big

2    bucks, so to speak.

3         **MS. FORREST:**  Your Honor, I won't repeat because I

4    know that Your Honor has carefully considered our views.  But

5    please understand that it has nothing to do with really the

6    convenience of the counsel.  We understand, as trial lawyers,

7    and we try cases all over the country, that we are prepared to

8    do what's necessary.  These are unusual times with unusual

9    issues associated with them.  We are fully prepared to

10   resource ourselves appropriately and to try this case on

11   May 3rd in your courtroom.

12        **THE COURT:**  Okay.

13        **MS. MOYE:**  Your Honor, Veronica Moye for Apple.

14   I just want to reiterate our thanks for your careful

15   consideration of the issues and your decision on that.

16   Apple has had to do multiple jury trials during this

17   pandemic -- some in Texas -- and has come up with careful

18   protocols that we are confident will ensure everyone's safety.

19   I just wanted to be sure that you understood that we, of

20   course, are sensitive to safety and health concerns.  We, too,

21   have a team that's located all over the country with, you

22   know, members from DC, from Texas, from Los Angeles.  And so

23   we are just as concerned about health and safety as Epic is.

24   It's just that we are confident that we can have a safe and

25   healthy proceeding in part based on our experience during this

1    pandemic.

2           **THE COURT:**  I asked you to meet and confer on some of

3    those proposed protocols.  I am happy to order them.

4        And I would say the other thing is, you know, my intent is

5    to have very few people in the courtroom at any one time.  It

6    may be different people over different days.  But, you know,

7    we'll have the witness, the Court, I have to figure out what

8    Court staff I need to have in the courtroom because I expect

9    that most everything that we will be doing in terms of

10   documents, et cetera, will be electronic.  So -- and then, you

11   know, at most, two to three people on the side, and that's it.

12   That would be the extent of the people in the courtroom for

13   any given day of proceeding.

14       I think those numbers will help immeasurably to keep

15   everyone safe.  Like I said, I've -- Judge Albright has agreed

16   to chat with me later this week and share with me the

17   protocols he is using that he thinks is helpful.

18       Now, again, this is all tentative.  I am telling you what

19   our people are hopeful that we are going to be able to achieve

20   by May.  But we look at the numbers on a weekly basis.  Right

21   now we have authorized criminal jury trials to proceed.  So, I

22   wanted to give you that information so that you could start

23   planning.

24           **MS. FORREST:**  Your Honor, may I just ask a logistical

25   question in terms of how Your Honor has done this?

1      As you know from our emails on this topic where we laid

2   out the Epic concerns about in-person proceedings, one of the

3   issues is whether or not the witnesses will be testifying with

4   masks or without masks.

5      With your -- in your experience, Your Honor, how would

6   that be likely to work?

7           **THE COURT:**  Different judges have done it different

8   ways.  I haven't had -- I mean, I haven't felt compelled to

9   have an in-person hearing yet.  By the time I get to you, I

10   will have already had a criminal hybrid proceeding.  Right now

11   I am just doing pleas and sentencings in person, and we have

12   used masks for those.

13      But the courtrooms are outfitted with shields.  So there

14   are shields everywhere which, I think, helps.  And then I know

15   that people have tried to use the masks that are see-through

16   so that you can see expressions, which I think will be

17   helpful.

18      The witnesses will be far away from all of you when they

19   are testifying.  And by May, I should be fully vaccinated, so

20   I would be the person who is closest to that individual.  So,

21   you know, I think, again, this is reason to let you know now

22   is because we have two months to figure out what is best

23   practice.

24           **MS. MOYE:**  Your Honor, our experience has been that

25   it is safe and workable to do witness testimony without masks.

1    We have used plexiglass shields and, of course, now we are

2    having just a bench trial where there are fewer people in the

3    courtroom and there would be a lot of distance between the

4    parties.

5        So we think we can come up with a protocol that would

6    allow a safe proceeding where witnesses can speak clearly

7    without masks.  And we are happy to go over that protocol with

8    Epic's counsel, to meet and confer with them about it.

9        **MS. FORREST:**  Well, one thing I just -- I don't know

10   that we have to resolve that particular issue at this point.

11   I had wanted to just get the Court's guidance at this point,

12   if the Court had any.  It may be to be determined.

13       I think from our perspective, indoor, unmasked testimony

14   could provide -- present some very significant health

15   concerns, but I think the Court has now laid out the

16   plexiglass, clear masks.  I think that this is one of those

17   issues that we can put a pin in, so to speak, and revisit as

18   we get closer to the trial proceeding itself.  I think that we

19   now have the direction, Your Honor, thank you very much, for

20   where it will be, and we will then set up the appropriate

21   precautions to preserve as much health and safety around that.

22       **THE COURT:**  So my plan would be -- so the May 3rd

23   date is confirmed.  What we are still trying to work on is the

24   precise format.  If for some -- you know, worst case scenario

25   it's a full bench trial by Zoom, worst case scenario, but it

will happen March (sic) 3rd.

**MS. FORREST:**  May 3rd, Your Honor?

**THE COURT:**  May 3rd.  Did I say something else?

**MS. FORREST:**  I think you said March 3 the last time, but we knew what you meant.

**THE COURT:**  I'm not starting in two days.  May 3rd.

Like I said, because I would like to plan for it being as compact as possible, I will change my trial day.  So we will go from 8:00 to 10:00, 20-minute break, 10:20 to 12:20 with a 40-minute break, and then 1:00 to 3:00.

That will give me a few extra hours in the afternoon if there's something I have to absolutely do for some other case. As all of you know, but maybe not members of the public, federal judges, our hundreds of cases do not go away while we are in trial.  That's a great thing about being a state court judge, try a case and that's the only thing I had to do. Nothing else.  So, not so as a federal court judge.

The findings of fact and conclusions of law that are due in a month or so, April 7th, what I would like you to do is the following:  I do this when I use jury instructions.

If what you will do is have just a one-page caption, the title with your signature blocks that says attached hereto are the proposed findings of facts and conclusions of law, and then the attachments.  If you will do it just in a Word document, no pleading pages or anything, and then make sure to

1    send it to us electronically.  That will just make it so much

2    faster for me to reconfigure it for my own purposes.

3       Okay?

4            **MR. DOREN:**  Your Honor, in terms of format for the

5    Word document, is something with -- like an outline form or

6    with paragraphs as opposed to a table as you might see with a

7    summary judgment motion?  I just want to make sure we do the

8    format that is useful.

9            **THE COURT:**  What I want, Mr. Doren, is I want

10   things -- every paragraph numbered, so that if we need to talk

11   about issues, I can just say, you know, number 75 of 120 or

12   whatever it is, and everybody knows where to go to.

13      If you look at Docket 18-5712, *California versus Bernhardt*

14   Docket number 177, that's a sample of something that

15   doesn't -- the paragraphs aren't numbered, but it will give

16   you a pretty good concept.

17           **MR. DOREN:**  Thank you.

18           **THE COURT:**  If you want to include some table in

19   advance that -- you know, that would help me navigate it,

20   that's always appreciated.

21      So, findings 1 through 52 relate to the Breach of

22   Contract; 53 to 3,000 relate to the Antitrust -- anyhow, if

23   there's some way to make it more accessible to me, that would

24   be helpful.

25      With respect to those proposed findings of fact, each fact

1    shall include the witness and/or document that you believe

2    proves the fact.  Again, that helps me navigate and understand

3    where all of the testimony is coming from.

4        With respect to the conclusions of law, those need to --

5    you need to make sure you do those by claim for brevity.  Not

6    that you all have done things that are brief, but to the

7    extent that something rises or falls with something else, just

8    say so and then cross-reference the ones that you've already

9    done.

10       Within seven days of the bench trial being finished,

11   before your trial briefs are done, within seven days

12   thereafter, I'm going to ask you for a redline version of the

13   proposed findings of fact indicating what was actually proved

14   and the record references.  And then to the extent you're

15   making any changes on the conclusions of law that are

16   corollary to those findings of fact, then those would be

17   redlined as well.

18       I will let you know that I will start writing before I get

19   your final briefing.  I'm not -- and in fact -- well, we'll

20   see how it goes to a 3:00 o'clock day.  When I do bench

21   trials, I usually finish at 1:30, do what I have to do and

22   then I start writing.  Otherwise I can't get my orders out

23   quickly enough.  It is these kinds of things that help me

24   navigate and help me be able to start writing.

25       Let's see.  Under all circumstances we will be using Zoom

1    because we still have people who need to be participating

2    remotely, whether it's Court staff.  And I think it also helps

3    for purposes of document management.

4        I expect there will be at least, you know, one person who

5    can't testify because of health concerns, so I want to make

6    sure that we have all of the technology in place.

7        So, again, I think if you all can meet and confer and try

8    to figure out a third-party vendor that can help you with all

9    of the documents, that would be helpful for everybody, and

10   especially for things like impeachment.  And that way, we are

11   not -- we're not exchanging documents in the courtroom that

12   everybody is touching, et cetera.

13           **MS. FORREST:**  Your Honor, we began to meet and confer

14   on that in the latter part of last week and have made some

15   progress on that issue.

16           **THE COURT:**  Great.

17       So I went through my standing order on bench trials.  And

18   there are a number of things that I don't think you need to

19   do, so I'm going to relieve you of the obligations of my

20   standing order.  That is the other point that I need to be

21   clear on in case -- so that there is no confusion.

22       While Zoom has allowed us to provide access over and

23   beyond what we have ever done, we're doing this by video and

24   everybody can see the video who wants to see it.  Looks like

25   we've got, you know, 65 people watching in addition to 11

```
 1    participating.  I cannot and, in fact, am not allowed to do
 2    that by the Administrative Office of the Courts for purposes
 3    of evidentiary hearings, including trials.
 4        So everybody understands that public access will be audio
 5    only.  All right?  And perhaps the U.S. Courts will change
 6    their mind over time, but right now that's the only option
 7    that's available.
 8            MS. FORREST:  Your Honor, can I just ask just a
 9    question on that:  Whether we will nonetheless be able to have
10    a corporate representative in the room during the trial
11    testimony?
12            THE COURT:  I'm going to give you an allocation.  I
13    think the number is three.  Use it however you want to.
14            MS. FORREST:  That would include lawyers and
15    representatives?
16            THE COURT:  Right.
17            MS. FORREST:  Thank you.
18            THE COURT:  I might be able to increase that to four,
19    but given the concerns that everybody has, the fewer number of
20    people in the courtroom the better.
21            MR. DOREN:  Just one observation, Your Honor.  As I
22    think about it, the parties may want to have a hot seat
23    operator in the courtroom who could be distant from the
24    lawyers but will facilitate the electronic use of documents.
25        So from out here, that may weigh in favor of four, but
```

1    obviously whatever the Court orders.

2            **THE COURT:**  Well, if you are both sharing and both

3    agreeing, I'll take the hit myself.

4            **MS. FORREST:**  I'm sure, Your Honor, we'll be able to

5    meet and confer on that issue as well and perhaps come up with

6    just one person who could fill that role for both of us.

7            **THE COURT:**  And that person doesn't need to be close.

8    They can be the furthest person away since it's all just

9    remote.

10       Okay.  Under my standing order with respect to trials,

11   Section 2 a. requires that you give me a brief description of

12   the claims and defenses, et cetera.  You are relieved.  I

13   don't need that.  I already have your 167 pages.  At some

14   point I'm going to give you a great quote on brevity, but

15   we're not there yet.

16       2 b. ii. requires plain and concise statement of disputed

17   factual issues.  I don't need that.

18       2 b. i. does provide for undisputed facts.  I would ask

19   you to meet and confer on undisputed facts.  There has to be

20   things that we do not have to argue about or take evidence on.

21   So that should be a separate filing.  You all can agree what

22   doesn't have to be proved here and is just stipulated.

23       2 c., disputed legal issues.  I don't need that.  What I

24   need is what I've already told you to do.

25       2 d., I don't want to know about any discovery issues.

1    I'm assuming by the time we get there we have what we have.

2        2 f., no Motions in Limine.

3        2 g., it's not applicable.

4        2 h., trial alternatives; not necessary to go through

5    that.

6        3 f., jury instructions does not apply.

7        3 g., joint statement of the case does not apply.

8        3 h., jury selection does not apply.

9        3 i., proposed verdict forms does not apply.

10       And then in terms of exhibits, 6 i. does not apply.

11       My first inclination is always to have -- I need one set.

12       Well, what are we looking at in terms of the exhibits?

13   Does anybody have a ballpark of the numbers of documents?

14           **MS. FORREST:**  Actually, Your Honor, this raises one

15   point that we wanted to address.  I think we are still

16   assessing that very quickly because we've got a -- I think it

17   is the way we count back, it's a March 24th submission of the

18   trial exhibits to each other.

19       One thing that would help, and counsel, Ms. Moye, and I

20   this morning were having a meet and confer on just this, is

21   getting an earlier date lined up for the exchange of witness

22   lists, at least tentative witness lists that precedes the date

23   that we submit it to the Court so we can be certain to have

24   the right trial exhibits lined up and not have to have a whole

25   slew of things that are on the list just in case somebody gets

```
 1   called that we're not expecting, that we've guessed wrong.

 2       So we are trying to work that out, but we would very much

 3   like to have something in advance of March 24th be a date when

 4   we exchange tentative trial witness lists.

 5            MS. MOYE:  Yes, Your Honor, we have discussed that

 6   issue --

 7            THE COURT:  Ms. Moye, your volume is pretty low.  So

 8   you are going to need to sit closer to your computer.

 9            MS. MOYE:  Okay.  Is this better, Your Honor?

10            THE COURT:  It is.  Thank you.

11            MS. MOYE:  Thank you.

12       Yes, we did discuss that issue this morning just before

13   the -- our meeting here today.  And we need to consider it

14   further with the client.

15       Of course, we want to do everything we can to narrow the

16   number of exhibits that are presented to the Court.  It's just

17   that we need to give that thought of whether we would be able

18   to exchange lists earlier further consideration.  So we will

19   continue to talk to Epic's counsel about that.

20            THE COURT:  Here's your problem.  Until I get those

21   lists, you don't know how much time you have.  So, if you want

22   to know if this is a two-week, three-week, or five-week trial,

23   you better try to get those things done so that I can look at

24   it and tell you what I'm going to give you.  You won't

25   necessarily get what you want.
```

1       I mean, just remember, our rule of thumb generally is,

2   that lawyers ask for twice the amount of time that judges want

3   to give 'em.  So I know you are at four to five weeks, you

4   know I'm at two to three weeks.  But I don't like to do things

5   in a vacuum.  So I need to see those lists and I need to see

6   what it is you think they are going to testify to and how much

7   time you think you are going to need.

8       So the sooner you can do it, the better for everyone.

9           **MS. FORREST:**  Your Honor, I think that that --

10          **MS. MOYE:**   Thank you, Your Honor, yes.

11          **MS. FORREST:**  It might assist the parties just to

12  have Your Honor give us a date certain when we can give you

13  exactly that information.

14      There are not that many witnesses I think that we are all

15  choosing from frankly.  I don't know that this exercise is

16  particularly difficult.  We may need to have some leeway in

17  case one person swaps out or in, but we would certainly be

18  prepared to give you that information as soon as the Court

19  would like.

20      The 12th of March, as a for instance, as a date to shoot

21  at so we can get that very important direction that Your Honor

22  has indicated in terms of trial duration, so we can plan

23  presentations, written directs, what should go in with

24  written, what might not, you know, be amenable to a written

25  process, et cetera.

1      **MS. MOYE:**  Well, your Honor, we're not prepared to

2  agree to expedite the current schedule in that regard --

3      **THE COURT:**  I am going to expedite it.  So what's the

4  best you can do?

5      **MS. MOYE:**  I believe certainly not March 12th is

6  doable.  I think we would need at least another week after

7  that.  I would like the opportunity just to confer with the

8  client if that's possible.

9      Again, this is an issue that was raised for the first time

10  shortly before our conference here today.

11      **MR. DOREN:**  Your Honor, if I may?  Two thoughts.

12      First of all, as the defendant, of course, who we will

13  call will depend in part on who Epic calls, so perhaps the

14  staging of this.

15      And second of all, expert discovery is still ongoing.  The

16  rebuttal experts' reports will be issued on March 15, and then

17  expert depositions will take place over the next two weeks.

18  So, those also may factor into who will ultimately be called

19  at trial.

20      So, the timing towards later in the month, I think, would

21  facilitate this and then also a staging.

22      **MS. FORREST:**  Your Honor, one point on that.

23      And March 24th is the date for the exchange of the trial

24  exhibits.  So if this is to have the ability to assist us with

25  having a realistic and narrowed list, something in advance of

1    March 24th, I think, would be certainly very helpful in that

2    regard.  Otherwise, we end up putting things on the list that

3    really would never have to go on the list and end up having

4    discussions that nobody ever has to have.

5        In terms of the experts, the experts have put in their

6    affirmative reports.  We could wait until March 16th.  That's

7    certainly, I think, still an advancement over the timing and

8    people will, I'm sure, proceed with deliberate speed to read

9    these reports as quickly as possible to see if it adjusts our

10   initial impressions.

11       But we know who the experts are.  That's for sure.  Those

12   lists don't change.

13           THE COURT:  I can't imagine at this point that -- are

14   you suggesting you are not going to put your experts on,

15   Mr. Doren?

16           MR. DOREN:  No, Your Honor.

17           THE COURT:  Well, you don't have time to replace

18   them, so --

19           MR. DOREN:  Your Honor, specifically, I mean, we just

20   learned -- I believe we just learned that there will be no new

21   experts on rebuttal.  So that's helpful information.  We did

22   not know that before just now.

23       And, again, Your Honor, for example, as to what documents

24   go on the exhibit list, we as defendants have to cover a

25   broader potential range of issues.  Epic knows what their case

1    is and knows what they want to put on the list.

2        Again, I'm just suggesting that a staging where Epic lets

3    us know who they are going to call, and then we can add from a

4    more educated perspective who we will be calling as defendants

5    to respond.

6            **THE COURT:**  All right.  Let's do this:  These are

7    tentative lists, right?  I'm going to give you the leeway to

8    adjust them later, but you better have a good reason why.

9        So, plaintiff, you exchange your list on March 12th.

10   Defense, exchange their list March 16th.  And then plaintiff,

11   you go ahead and respond by March 18th in case they bring

12   someone in that you didn't anticipate for your list.  So --

13           **MS. FORREST:**  Thank you, Your Honor.  That works very

14   well.

15           **MR. DOREN:**  Thank you, Your Honor.

16           **THE COURT:**  Okay.

17       I like to have a physical copy.  I'm still old school.  I

18   still like physical copies.  It allows me to go through the

19   totality of what you have very quickly, and I get tired of

20   doing things on screens.  So, I am going to need at least one

21   physical copy of the exhibits.

22       We'll need a thumb drive or something and then we'll load

23   everything electronically.  Everybody else in the court can

24   do -- can have it electronically.  At the end of it all,

25   whatever is admitted, just to be super clear, we will just

```
1   have you give us, again, a thumb drive with the culled out --
2   I mean, if it is easy enough for us to do it, that's fine.
3   But it may be easier for you to just send us a thumb drive.
4       Yes, Ms. Stone, I don't know if you want 50 binders.
5           THE CLERK:  We have to keep a paper copy that goes as
6   a set if it gets appealed.  We still keep a paper set.
7           THE COURT:  Okay.  Then maybe they can provide us the
8   paper set.  That way -- I don't know that you want -- well,
9   did you really want 50 binders?  That's why I'm saying, if
10  they provide it after-the-fact and everything else is
11  electronic.
12      You are not going to be giving it to them, to the
13  witnesses.
14          THE CLERK:  Right.  What the Court, as exhibits,
15  always keep a paper copy in case it is appealed it goes to the
16  Ninth Circuit.  I mean that's been the protocol in the Clerk's
17  office to have a paper copy.
18          THE COURT:  All right.
19          MS. FORREST:  Would it assist, Your Honor, if what we
20  did was give a paper copy of the received exhibits at the
21  conclusion of the bench trial?  That way you don't have 50
22  binders in case it turns out only 20 had been admitted?
23          THE COURT:  You know what would be helpful?
24      Let's have you -- so, every day -- well, to the extent
25  that you have -- let's have you, the day after the testimony
```

1   if I have admitted something, bring the paper copy in and hand

2   it to Ms. Stone.  Those are the admitted exhibits.

3       That way she's got a paper copy every day or the next day

4   and then she'll just hang on to those as they get admitted.

5           **THE CLERK:**  Okay.

6           **MS. FORREST:**  We can give it to her with tab numbers

7   that are three-hole punched to be inserted into the binder

8   directly.

9           **THE COURT:**  I don't know that she -- do you want them

10   in a binder or do you --

11          **THE CLERK:**  They can be loose.  I will figure it out.

12   If I need a binder, we have them.

13          **THE COURT:**  Okay.

14       I will require deposition transcripts.  The way that works

15   is, about a week before the trial starts, you will need to

16   make arrangements with Ms. Stone to bring those transcripts

17   in.  And, again, everything is changing.  So she'll let you

18   know the day.

19       The transcripts will need to be brought in with -- I

20   require that you provide a list or a chart of everything that

21   you are bringing.  And that chart has to have a place for your

22   person who is delivering to initial and Ms. Stone to initial

23   received.  That way I confirm that you believe you brought it

24   to us and your person has initialed that, and she has

25   explicitly agreed that we have it.

1    I require that because I had instances, and it happens in

2   trial, where someone says -- I haven't had it recently because

3   that's why I have this protocol -- but way back when, Your

4   Honor, we brought the transcript.  I say, no, you didn't.

5   Ms. Stone says I didn't have it, or my state court clerk, and

6   we can't find the deposition transcript.  So this is what I do

7   to make sure that I actually have what you say I have.  Okay?

8   So that, you will have to do as well.

9    Let me see if there is anything else.

10   Do you have any questions?

11   **MS. FORREST:**  One point that I just wanted to

12   clarify, not so much a question.

13   But when I made my comment earlier about everybody knows

14   their expert witnesses, that is certainly true.  We may have a

15   rebuttal expert that has been added because of the opening of

16   Apple's, but we will be able to take care of that with a list,

17   but I wanted the record to be clear on that.

18   And to report also that we have continued discussions on

19   the possibility of some written direct.  I don't know if Your

20   Honor is now thinking that we should not proceed further with

21   that in light of the live proceeding in your courtroom?

22   **THE COURT:**  No, I think that you should, but you also

23   have to get that to me early enough for me to read.  Because

24   having a Cross-Examination without having had the opportunity

25   to read the Direct Examination is kind of pointless -- not

```
1    pointless, but just not as effective.

2              MS. FORREST:  Your Honor, it could well be that it's

3    some substantial portions of some expert Direct Examination,

4    so they might be complex and lengthy.  What would your

5    preference be in terms of timing for that if we do end up

6    reaching such an agreement?

7        As I said, we are still continuing that conversation, but

8    it has been productive so far.

9              THE COURT:  Couple of weeks.

10             MS. FORREST:  The middle of April, Your Honor?  I can

11   take a look at the calendar.

12             THE COURT:  Again, it depends on how much you're

13   sending.

14             MS. FORREST:  April 20th, Your Honor?

15             THE COURT:  That would be great.

16             MS. FORREST:  And we can tell Your Honor in advance

17   perhaps what we will be sending.  And if you decide to adjust

18   the date in any way, we can take Your Honor's direction at

19   that time.

20             THE COURT:  Okay.

21             MS. MOYE:  Your Honor, just to be clear, we have had

22   a number of discussions and the parties have agreed that for

23   fact witnesses, their entire testimony should be live, both

24   Direct and Cross-Examination.

25             THE COURT:  That's fine.  It's really the expert --
```

1          **MS. MOYE:**  Correct.

2          **THE COURT:**  -- testimony that is pretty complicated

3    and is, you know, it works -- I think it works well to have

4    it, the Direct, at least, portions of it done in writing.

5          **MS. MOYE:**  That's exactly what we were thinking.  We

6    are continuing to discuss how to make that most effective and

7    efficient for the Court.

8       So it may be that we end up posing some kind of hybrid

9    model where there is a little bit of Direct, the balance of it

10   being written and then live Cross.  But we are continuing

11   those conversations trying to make it the most workable as

12   possible.

13         **THE COURT:**  Okay.

14      The other thing that I do is, I do require you to give

15   each other -- it sounds like you are all cooperating so it

16   shouldn't be an issue.  It has been an issue in other trials,

17   which is why it's a standard order of mine.

18      I do require that you give each other 24 hours advance

19   notice of someone's testimony.  For Monday testimony, you are

20   required to do it by noon on Saturday.

21      People need to prepare for witnesses.  And I've had

22   instances, again early on, where a lawyer came in and said,

23   Your Honor, I told her, we were standing at the elevator, that

24   I was going to bring in this witness.  And I suggest you were

25   probably right, you probably did tell her, but she's in trial

1    and she probably didn't pay any attention.

2        So, I require it be in writing.  And I've had some

3    lawyers, when I used to say one day, well, 10:00 o'clock is

4    the day before.  That doesn't work for me either.  So now I

5    say 24 hours.

6            MS. MOYE:  Understood, Your Honor.  We believe it

7    should be at least 24 hours and would like to, you know, have

8    the opportunity to confer with Epic about the possibility of

9    it even being 48.  Just, again --

10           THE COURT:  I will order 48 if you all agree on 48,

11   but I am not going to order it.

12           MS. MOYE:  Understood.

13           MS. FORREST:  Your Honor, along those lines, I think

14   we understood that when we are planning the presentation at

15   trial, we should plan to have like expert followed by like

16   expert.  So, for instance, a primary economist would be

17   followed by somebody speaking on the same topic from the other

18   side so that I think I understood Your Honor as wanting those

19   sort of joined up and paired.

20       Is that correct?

21           THE COURT:  Yes.

22           MS. MOYE:  Your Honor, just for clarity on this, what

23   I understood is that you wanted experts to testify by subject

24   matter, by the same subject matters.

25           THE COURT:  All I'm saying is, however you present --

1    and Epic goes first.  So you have -- I don't know how you

2    divided up your experts and the topics upon which they are

3    going to opine.  But I expect that for every expert and on

4    every topic on which they are going to opine, the other side

5    is going to have a counter expert.  I want that testimony back

6    to back.

7            MS. MOYE:  Understood.  Understood, Your Honor.

8        In our situation, there are experts that cover multiple

9    topics.  And so this is, again, another issue I think we will

10   have to meet and confer with Epic about to try to come to some

11   agreement on how to stage the expert testimony that, again,

12   makes it effective for the Court.

13       I understand the goal.  It's just that one of Epic's

14   expert, for example, covers kind of the whole waterfront.  So

15   if he testifies to all of his opinions, then we'd have five

16   experts behind him testifying to all their opinions.  So it is

17   just something we need to confer further about and come up

18   with a proposal to submit to the Court.

19           MS. FORREST:  I think that we are certainly open to

20   conferring.  The issue is that we have one primary economist

21   and then another economist who will be very short.  And Apple

22   has multiple economists who cover the same material.

23       We would prefer to put our economist on.  It's no surprise

24   that we would like to start him and then finish him because a

25   lot of these pieces, particularly market definition, things

```
1    like that, they flow one to the other.  And he tells a story

2    then about competitive effects that are based upon how the

3    market is defined.

4        So putting the story together is holistic.  We can do this

5    in perhaps multiple ways, but we would like to put the expert

6    on, let's just say in the morning and have him end by the end

7    of the day or however long he takes, and then his

8    Cross-Examination to follow and however Your Honor would like

9    to structure it after that.

10       MS. MOYE:  And, you know, again, this is something

11   we'll talk further about, but what we would like the

12   opportunity for the Court to consider is, does it want to hear

13   our expert testimony on market definition, for example, and

14   then move to expert testimony on other issues?

15       So to the extent one expert covers multiple issues, they

16   may have to take the stand multiple times.  The question is

17   what would be most --

18       THE COURT:  The problem with that is, Ms. Moye, the

19   problem with that is if we are live and this expert doesn't

20   live in the Bay Area, and I looked at the expert reports this

21   morning, and it doesn't look like they -- it doesn't look like

22   many of them live in the Bay Area, I'm not going to have that

23   person sitting around and wait --

24       MS. MOYE:  Absolutely.

25       THE COURT:  -- multiple days to finish up their
```

1    testimony.

2         So if it makes it more complicated for me, so be it.  I'm

3    just telling you what would be most helpful for me in terms of

4    understanding the experts' opinions.

5         The other thing I will say is that, you know, remember,

6    experts, much of their testimony is hearsay.  That is -- at

7    least with respect to the factual basis.  So they don't get to

8    testify on the hearsay until the facts are in the record.

9    Don't forget that.  And I am a stickler about that issue.

10        If the facts aren't coming in or do not come in, then

11   entire opinions could be invalidated or perhaps opinions don't

12   come in.  So it is important to remember that while experts

13   can talk and their opinions can be based on hearsay, the

14   underlying factual material actually needs to be in the

15   record.

16             **MS. MOYE:**  Understood.

17             **THE COURT:**  Okay.

18        If you're going to want daily transcripts, which I suspect

19   you might, we are going to need to know that and the order

20   will have the contact information.  Because typically our

21   court reporters have to hire somebody to help them turn out

22   those dailies and especially if we are going until

23   3:00 o'clock every day.

24             **MR. DOREN:**  I am guessing it's fair to say we will

25   want dailies, Your Honor.

```
 1                THE COURT:  I figured as much, Mr. Doren.

 2                MS. FORREST:  Your Honor, one other point that will,

 3    I think, hopefully narrow the case, at least a little bit is,

 4    that we do plan on making a stipulation that I will continue

 5    to work with Apple's counsel on related to the Breach of

 6    Contract claim where we will essentially stipulate that claim

 7    away in terms of -- from my client.  So we will work on how

 8    that will -- how that will come into the Court and to the

 9    extent to which it impacts the proof.

10                THE COURT:  I commend you for that.  As I was

11    thinking about this trial, it seemed to me that that, even

12    though your client might not want to stipulate, that the

13    Breach of Contract was actually pretty straightforward.

14                MS. MOYE:  Yes, Your Honor --

15                THE COURT:  Maybe the affirmative defenses is not,

16    but on a, you know -- I mean the terms aren't unambiguous.  It

17    seems to be straightforward.

18                MS. FORREST:  Correct, Your Honor.

19                MS. MOYE:  Yes, Your Honor.  Of course we appreciate

20    Epic's willingness to stipulate to the breach.  Our view is

21    that that stipulation is unlikely to have any impact on the

22    presentation of evidence in the case.  Because the facts

23    related to the breach are related to many of the other claims,

24    including the unclean hands issue.

25           So we don't expect that there will be much of an
```

1    evidentiary impact from that stipulation, but we do appreciate

2    the willingness to admit that they breached.

3            **THE COURT:**  Except that then I don't have to write

4    about it.

5            **MS. MOYE:**  Correct.

6            **THE COURT:**  So it impacts me.

7            **MS. MOYE:**  Correct, Your Honor.

8            **THE COURT:**  Okay.  Let's see.

9        The tentative lists of witnesses, I do want you to file

10   those and you can identify them as tentative until the final

11   ones are due.

12       With the final one coming in 3/18, if they are substantive

13   enough, that is, if you are identifying -- well, if you will

14   do this, identify the scope of what you think they are going

15   to testify to, and what you anticipate in terms of time,

16   Apple, when you file your list on the 16th, if you will also

17   file a response to the plaintiff's in terms of how much time

18   you think your Cross is going to take with their witnesses.

19       And then on the 18th, Ms. Forrest, when you file your

20   response, if you will take Apple's list and give me the Cross.

21           **MS. FORREST:**  I can certainly --

22           **THE COURT:**  I will need one more filing on the Epic's

23   list from the 18th.

24       You can do that by the 22nd, Ms. Moye?

25           **MS. MOYE:**  Yes, Your Honor.

1          **THE COURT:**  Okay.  Then you said your exhibit lists

2     are due to each other on the 24th?

3          **MS. FORREST:**  I think counting back, Your Honor, from

4     the conference and the trial book, yes, that's the date that I

5     have.

6          **MR. DOREN:**  That's the date we have as well.

7          **THE COURT:**  All right.

8       I go into trial on the 29th.  So why don't we go ahead and

9     if you're available on March 26th, we can have another trial

10    conference.  By then I'll have had an opportunity to look at

11    your lists and we will be approximately a month away, so I

12    will be able to confirm more details.

13         **MS. FORREST:**  Very well.  That works.

14         **MR. DOREN:**  Your Honor, for purposes of the witness

15    lists, one other question.

16      Will it be the Court's practice that if Epic were to call

17    an Apple witness in their case-in-chief, that that witness

18    would appear once for all purposes?

19         **THE COURT:**  You know, I think that that would be --

20    wouldn't that be your preference?

21         **MR. DOREN:**  Yes, Your Honor.

22         **THE COURT:**  Okay.  Look, you will find that I will

23    give you some flexibility if there's some reason -- if there's

24    some reason to do it differently.  But I would expect that it

25    will probably be easier for everyone if that person just

```
 1    testifies one time.
 2              MR. DOREN:  Thank you, Your Honor.
 3              THE COURT:  Okay.
 4         Friday, March 26th, 9:30 works?
 5              MS. MOYE:  Yes, Your Honor.
 6              MS. FORREST:  Yes.
 7              THE COURT:  Okay.
 8         There are some other miscellaneous things you may find in
 9    the Order, but just read the Order.  It's not really something
10    that's objectionable in any way.  It's court protocol.
11              MR. BORNSTEIN:  Would Your Honor like to receive a
12    statement seven days in advance of the March 26th conference
13    per the usual --
14              THE COURT:  My view is that we will discuss trial
15    logistics, trial time.  If you want to submit an agenda a
16    couple of days in advance, that's fine.
17              MR. BORNSTEIN:  Very good.  Thank you.
18              THE COURT:  Okay.  Anything else you want to do
19    today?
20              MS. FORREST:  Nothing more from Epic, Your Honor.
21              MS. MOYE:  Nothing more from Apple, Your Honor.
22              THE COURT:  All right.
23         And I will ask that you meet and confer on those
24    protocols.  To the extent that you have ideas that you would
25    like me to order or to consider, please feel free to reach out
```

1    and let me know so that we can make some progress here over

2    the next month even though we are not going to have a formal

3    hearing.  Okay?

4         **MS. FORREST:**  Yes.

5         **MS. MOYE:**  Thank you, Your Honor.

6         **THE COURT:**  All right.  Everybody stay safe.  Thank

7    you very much.  We are adjourned.

8         **MR. DOREN:**  Thank you, Your Honor.

9         **MS. FORREST:**  Thank you.

10        **MR. BORNSTEIN:**  Thank you.

11

12             (Proceedings concluded at 10:27 a.m.)

13

14                    **CERTIFICATE OF REPORTER**

15        I, Diane E. Skillman, Official Reporter for the

16   United States Court, Northern District of California, hereby

17   certify that the foregoing is a correct transcript from the

18   record of proceedings in the above-entitled matter.

19

20

21        DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

22             Monday, March 1, 2021

23

24

25

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**