# Exhibit A

| | |
|---|---|
| **From:** | Curran-Huberty, Emily |
| **To:** | Kreiner, Evan R (NYC) |
| **Subject:** | [Ext] RE: Epic v Apple - Facebook subpoena |
| **Date:** | 3/29/2021 5:07:00 PM |
| **CC:** | Raphael, Justin; Ring, Rosemarie; Lent, Karen Hoffman (NYC); Shikman, Dane; Sidibe, Sundiata (NYC) |
| **BCC:** | |

**Message:**

Evan,

Facebook has investigated the burden involved in producing additional documents at Apple's untimely request. A review and production of documents responsive to your proposed search, or even a substantially narrower search confined to topics that are appropriate and relevant to the claims and defenses in this case, would require Facebook to review tens of thousands of additional documents. Such a review would be unduly burdensome to third-party Facebook and disproportionate to the needs of this case, and Facebook has concluded that it does not intend to conduct such an unduly burdensome search or produce any additional documents.

Facebook's position remains that Apple's requests are untimely and that, in any event, Facebook's initial production was sufficient. In offering a compromise of a targeted, narrow subpoena specific to Mr. Sharma's files, Facebook made clear that it would not entertain or respond to an overbroad subpoena. The search Apple proposed in response is extremely overbroad and aimed at topics that are not appropriate subjects of discovery in this case. For the avoidance of doubt, our responses to your specific requests are as follows:

For documents from Facebook, including those not in Mr. Sharma's files, responsive to **RFP 1** of Apple's second subpoena, this request seeks documents that have not been shown to be relevant to any claim or defense in this action and seeks confidential commercial information for which Apple cannot demonstrate a substantial need. Facebook will stand on its objection served January 15, 2021.

For **Topics 4** and **7** requested from Mr. Sharma's files, these requests are untimely, overbroad, would subject Facebook to an undue burden disproportionate to the needs of this case, and seek confidential commercial information for which Apple cannot demonstrate a substantial need. These requests appear to be an effort to make an end run around Facebook's objection to producing documents responsive to Apple's second subpoena. Facebook will not produce documents responsive to these requests, based on the same objections Facebook raised in response to Apple's second subpoena.

For **Topics 1** and **2** requested from Mr. Sharma's files, these requests are untimely, overbroad, would subject Facebook to an undue burden disproportionate to the needs of this case, and seek confidential commercial information for which Apple cannot demonstrate a substantial need. In addition, these requests seek documents that were not the subject of any subpoena request issued within the fact discovery period. If Apple believes documents responsive to these request are relevant to its claims and defenses in this case, it had every reason to request such documents in a timely fashion. Facebook will not produce documents responsive to these requests.

For **Topics 3, 5,** and **6**, these requests are untimely, overbroad, would subject Facebook to an undue burden disproportionate to the needs of this case, and seek confidential commercial information for which Apple cannot demonstrate a substantial need. Facebook will not produce documents responsive to these requests.

Finally, Mr. Sharma is available for a deposition on April 28, 29, or 30. He is unavailable the prior week.

Best,

Emily

**Emily C. Curran-Huberty (she/her/hers)** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4052 | Emily.Curran-Huberty@mto.com | www.mto.com

*\*\*\*NOTICE\*\*\**
*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law. It is not intended for transmission to, or receipt by, any unauthorized person. If you have received this message in error, do not read it. Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected. Thank you.*

---

**From:** Curran-Huberty, Emily
**Sent:** Saturday, March 27, 2021 2:00 PM
**To:** 'Kreiner, Evan R'
**Cc:** Raphael, Justin ; Ring, Rosemarie ; Lent, Karen Hoffman ; Shikman, Dane ; Sidibe, Sundiata
**Subject:** RE: Epic v Apple - Facebook subpoena

Evan,

Your characterization of the time it is taking us to respond as "delay" is incorrect. Facebook received your proposed search terms on Wednesday afternoon and has been working diligently on a response. As part of that process, we are quite reasonably investigating the burden that would be involved in performing the search and review of documents you propose. As you are aware, there is unavoidable technical processing time baked in to such an investigation, and while we are pushing forward with our investigation, including over the weekend, we cannot reasonably meet the arbitrary deadlines you are trying to impose on Facebook, a third party to these litigations.

Facebook continues to reserve all rights and will respond no later than Monday with our position regarding whether and to what extent we intend to produce any additional documents at Apple's untimely request.

Best,

Emily

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Saturday, March 27, 2021 11:23 AM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

Given the timing of the upcoming *Epic* trial, this delay could prejudice Apple's ability to defend itself, particularly if any dispute will have to be submitted to the court. In light of Facebook's delay, Apple reserves all rights, including the right to move to preclude Mr. Sharma's testimony. And because a simple "no" should not take several days, we assume Facebook either plans to accept our proposal or revert with proposed alternative search terms and categories of documents. If we do not receive an acceptable counterproposal from Facebook by Monday, we will send you our portion of a joint dispute letter.

Thanks,
Evan


**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Friday, March 26, 2021 10:24 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

We had hoped to be able to respond to you with Facebook's position today, but it has taken longer than we anticipated and we won't have a response tonight. We will get back to you as soon as we are able.

Best,

Emily


**Emily C. Curran-Huberty (she/her/hers) | Munger, Tolles & Olson LLP**

560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4052 | Emily.Curran-Huberty@mto.com | www.mto.com

***NOTICE***
*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law. It is not intended for transmission to, or receipt by, any unauthorized person. If you have received this message in error, do not read it. Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected. Thank you.*

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Friday, March 26, 2021 4:29 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

Please let us know when we can expect a response.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491** | **F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Thursday, March 25, 2021 8:33 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

I just wanted to let you know that we have been consulting with our client and will be able to give you our position tomorrow. Thanks.

Best,

Emily

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Wednesday, March 24, 2021 1:09 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

Facebook's proposal that Apple issue a new subpoena to Mr. Sharma is neither necessary nor efficient. The subpoenas Apple already issued request documents that cover the topics that Epic listed for Mr. Sharma's testimony (i.e., "App distribution; Apple restrictions on iOS app distribution; App Store review process; interactions with Apple"), in addition to documents that are necessary for Apple to impeach Mr. Sharma's testimony (including because they could demonstrate both his own and his employer's bias). Moreover, particularly given the reservations of rights we made throughout this process, that Apple did not push for additional productions pursuant to the first subpoena or move to compel the second subpoena when there was no indication a Facebook employee would testify cannot be used as a reason to resist additional targeted productions pursuant to those subpoenas now that Epic has placed Mr. Sharma on its witness list. And as reflected throughout our correspondence, we have previously explained the relevance of the requests in the first and second subpoenas, so it appears that we are at an impasse if Facebook intends to stand on the rationales listed in your email, including that Facebook will not produce competitively sensitive information. Finally, regarding your note about other third parties' productions (which is, in any event, inapposite to whether Facebook's productions are sufficient), at least two other third parties have produced several times more documents than Facebook has in connection with this litigation.

However, in the spirit of compromise, Apple is willing to limit subsequent Facebook productions pursuant to the previously issued subpoenas to the below documents:

1. Documents to be produced from Mr. Sharma's files that hit on the below list of search terms and that fall into the below list of categories.
2. Documents from outside of Mr. Sharma's files that are called for in RFP 1 of the second subpoena—i.e., communications between Facebook and any other developer (including Epic and/or members of the Coalition for App Fairness) concerning pending or future litigation related to Apple's policies concerning iOS, iOS apps, and/or the iOS App Store. To be clear, such documents would include all such communications regarding the Coalition for App Fairness.

Please let us know by Thursday at 5PM Pacific whether or not Facebook is willing to proceed in this manner so that we can promptly present these issues to the court if necessary. Please also provide a list of dates on which Mr. Sharma is available for his deposition.

***

Categories of documents to be produced from Mr. Sharma's files, including his electronic correspondence:

1. Documents and communications concerning the security of Facebook Gaming, including documents and communications concerning data breaches
2. Documents and communications concerning the privacy protections afforded to users of Facebook Gaming
3. Documents and communications concerning the distribution of Facebook's apps, including documents and communications concerning the costs and/or benefits to Facebook of distributing its apps through iOS and/or the comparative benefits of distributing on different platforms (including the web)
4. Documents and communications concerning the claims Facebook has made publicly concerning upcoming changes to the privacy policies of iOS and/or the iOS App Store, including the policy known as App Tracking Transparency
5. Documents and communications concerning Apple's app review process and/or app store guidelines, including documents and communications concerning the rejection of any Facebook app or any version of any Facebook app
6. Documents and communications concerning Facebook's communications with Apple
7. Documents and communications concerning Epic's litigation against Apple, including documents and communications related to Facebook's intention to assist Epic in this litigation

Search terms to be applied to Mr. Sharma's files, including his electronic correspondence:
- "Epic"
- "iOS"
- "in-app purchase" or "IAP"
- "breach"
- "privacy policy"
- (account OR User) /3 (data OR privacy OR security)
- "app store"
- guideline
- "Store-like"
- "store-within"
- 4.7
- 3.1.1
- Apple.com
- "App Tracking Transparency" or "ATT"

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

_____

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Monday, March 22, 2021 10:24 PM

**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thank you again for the meet and confer on Friday. Below, are Facebook's responses to the issues raised on our call and in your email from Friday evening.

On **subpoena 1**, Facebook does not intend to search for or produce additional documents responsive to subpoena 1. Facebook conducted a reasonable search for documents responsive to the 26 RFPs Apple served on Facebook in late December with a final production deadline of February 15. Facebook produced over 1600 responsive documents before the close of discovery on February 15, consistent with its responses and objections, which were served on January 6—more than two months ago. Apple has now raised three issues with Facebook's response to the subpoena for the first time, more than a month after the close of discovery. Apple's assertions are untimely and we disagree that Apple can justify its delay on the ground that Epic disclosed Mr. Sharma as a trial witness. Apple had good reason to raise any issues with Facebook's production promptly, as it did with other third parties.

None of Apple's assertions that Facebook's response to the subpoena supposedly was deficient is persuasive. Apple asserts that Facebook produced too few documents for which Mr. Sharma is the custodian. We disagree that this is an appropriate measure of the adequacy of Facebook's response to a subpoena to the company that did not seek any documents from Mr. Sharma. Facebook also cannot take seriously Apple's claim that Facebook has produced too few documents from Mr. Sharma when Apple has not identified any third party that produced more documents than Facebook or that produced more documents for which a third-party trial witness is a custodian.

On **RFP 3 from subpoena 1**, Facebook does not intend to search for or produce additional documents. As we understand it, Apple believes Facebook's response to RFP 3 was deficient because Facebook did not produce "many strategy documents related to distribution of its app." The RFP does not refer to "strategy documents" at all. Moreover, if by "strategy documents," you mean decks, business plans, or similar documents about Facebook's broader app distribution strategy or plans, any such documents, even assuming they would be responsive, would fall within Facebook's objection to producing sensitive, confidential, or proprietary information responsive to RFP 3 for which Apple has not demonstrated a substantial need. Apple has had that objection since January 6 and has had Facebook's production since February 15, but never raised this issue until now.

On **RFP 20 from subpoena 1**, Facebook does not intend to produce any additional data. Facebook's gaming revenue, by app and by platform is, like its advertising revenue, competitively sensitive, confidential information, and we do not believe Apple has demonstrated a substantial need for this revenue or even explained why such granular data is relevant. Again, this request is also untimely.

While we do not believe that Apple is entitled to any additional documents from Mr. Sharma given Facebook's prior production, in the spirit of compromise, we are willing to work with you on a targeted, appropriately limited subpoena for documents from Mr. Sharma's files in connection with his upcoming deposition. To be clear, we will not entertain an overbroad subpoena that would subject Facebook to an

undue burden disproportionate to the needs of this case, but we are willing to negotiate the scope of a subpoena that is narrowly tailored to the documents that Apple believes are necessary for it to examine Mr. Sharma. Please let us know if and when you would like to discuss such a subpoena.

On **subpoena 2**, Facebook does not intend to produce any documents responsive to the subpoena. As we have explained in prior correspondence, we do not believe Apple has articulated why the documents sought in subpoena 2 are relevant to the claims and defenses in this litigation or why Apple has a substantial need for information responsive to this subpoena. Apple is now arguing that information responsive to subpoena 2 would be relevant to impeaching Mr. Sharma, but we disagree that Apple has a substantial need for internal Facebook documents regarding policies and restrictions not at issue in this litigation, and that are the subject of public documents referred to in the subpoena itself, merely for the purpose of impeaching Mr. Sharma. Apple's demand for documents regarding these policies and restrictions that are not at issue *even if* they were never sent to or from Mr. Sharma underscores that Apple is not seeking information relevant to its defense.

Best,

Emily

**Emily C. Curran-Huberty (she/her/hers)** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4052 | Emily.Curran-Huberty@mto.com | www.mto.com

*\*\*\*NOTICE\*\*\**
*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law. It is not intended for transmission to, or receipt by, any unauthorized person. If you have received this message in error, do not read it. Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected. Thank you.*

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Friday, March 19, 2021 5:59 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Emily,

Thanks for the meet and confer today. As we discussed this afternoon and I had previously requested in my email from Wednesday, please let us know the following information by Monday at 5PM Pacific:

1. How did Facebook previously search Mr. Sharma's files for documents responsive to requests in the first subpoena? Specifically, what search terms and date restrictions were applied and what locations were searched?

2.   Is Facebook willing to produce any documents in response to the second subpoena? If so, which requests will Facebook respond to, what files does Facebook intend to search, what search terms does Facebook intend to use, and by when will the productions be complete?

In addition to the above and also as discussed during today's meet and confer, please provide the following information by Monday at 5PM Pacific:

1.   Is Facebook willing to do additional searches in and productions from Mr. Sharma's files? If so, to which requests does Facebook intend to produce additional responsive documents, what files does Facebook intend to search, what search terms does Facebook intend to use, and by when would the productions be complete?

2.   Will Facebook conduct additional targeted searches to produce documents responsive to RFP 3 in the first subpoena? We noticed that Facebook did not produce many strategy documents related to distribution of its apps.

3.   Will Facebook produce the figures called for in RFP 20 with respect to Facebook Gaming, which would include figures related to any distribution of Facebook Gaming on non-mobile devices and over the web? We do not think that Facebook sufficiently complied with RFP 20, particularly with respect to Facebook Gaming.

Finally, please confirm that you can accept service of the deposition subpoena on Mr. Sharma.

Best,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Friday, March 19, 2021 1:25 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Yes, that works on our end. Thanks.

Best,

Emily

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Friday, March 19, 2021 9:36 AM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen

Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata
<Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

Could we do 12:30 PT?

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491** | **F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Friday, March 19, 2021 11:35 AM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen
Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe,
Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] Re: Epic v Apple - Facebook subpoena

Evan,

We're checking on the service issue and will have an answer shortly. On our meet and confer, we are no
longer available at 11 PT today. We are available starting at noon PT. Thanks.

Best,

Emily

Sent from my iPhone

> On Mar 18, 2021, at 10:29 PM, Kreiner, Evan R <Evan.Kreiner@skadden.com> wrote:
>
> Emily,
>
> Please also let us know whether you can accept service of the attached deposition
> subpoena for Mr. Sharma.
>
> Thanks,
> Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491** | **F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Kreiner, Evan R (NYC)
**Sent:** Thursday, March 18, 2021 5:23 PM
**To:** 'Curran-Huberty, Emily' <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie
<Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>;
Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC)
<Sundiata.Sidibe@skadden.com>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Emily,

11AM Pacific tomorrow works for the meet and confer. A calendar invite will follow.

In addition, I'll note that our position on the second subpoena is not "new." Throughout
our communications, including correspondence on this email chain, we have made clear
that we would seek to enforce the second subpoena if a Facebook employee were to
testify because the documents sought in the second subpoena are highly relevant
impeachment material. We had previously held the second subpoena in abeyance to
minimize the burden on a third party that apparently would not testify given that none
of its employees were deposed.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491** | **F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Thursday, March 18, 2021 2:00 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie
<Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>;
Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC)
<Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

We've received your email. We are conferring with our client and are available to meet confer with you on Friday, but we cannot respond by noon today with our position with respect to Apple's second subpoena. Requesting a response from Facebook in less than 24 hours, particularly where you have been aware of Mr. Sharma's disclosure since last Friday, is simply not reasonable. We are available to meet and confer Friday, either from 11-12 PT or between 1 and 3 PT, to discuss Apple's new position on subpoena 2, as well as your request for additional documents responsive to Apple's first subpoena. Thank you.

Best,

Emily

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Wednesday, March 17, 2021 2:20 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

Epic provided its tentative initial witness list on Friday night, listing Vivek Sharma (Facebook's VP of Gaming) as a witness for Epic who purportedly will testify about "App distribution; Apple restrictions on iOS app distribution; App Store review process; [and] interactions with Apple." While Apple reserves all rights regarding Mr. Sharma's testimony, as we explained in our earlier correspondence and during meet and confers, the document requests in Apple's second subpoena to Facebook are necessary for, among other things, impeachment in the event that a Facebook employee testifies. Accordingly, given Mr. Sharma's appearance on Epic's tentative initial witness list, we will no longer hold the second subpoena in abeyance.

Please let us know by Thursday at noon Pacific whether Facebook will continue to stand on its blanket objections to the second subpoena. If Facebook now intends to produce documents responsive to the second subpoena, please let us know which requests Facebook will respond to, what files Facebook intends to search, what search terms Facebook intends to use, and by when the productions will be complete.

In addition, given the breadth of subjects on which Mr. Sharma might testify, as well as the limited number of documents Facebook produced pursuant to the first subpoena (particularly for which Mr. Sharma is a custodian), we intend to press for additional documents in response to a number of the requests in the first subpoena. To better inform our discussions, please let us know how you searched Mr. Sharma's custodial files for documents responsive to Apple's first subpoena--e.g., what search terms and date restrictions you applied and what you searched.

We are available to meet and confer on Thursday from 1-2PM and 3-5PM, and Friday anytime after 11AM (all times Pacific) in order to understand the scope of any disputes regarding Facebook's response to the subpoenas so that we can promptly address them to Judge Hixson.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491** | **F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Monday, February 22, 2021 7:38 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Regarding your first question, "msite" refers to the Facebook website accessed via a mobile web browser.

With respect to your second question, without waiving any objection to requests for Facebook to identify which of the more than 1600 documents that Facebook produced subject to its objections were responsive to one of Apple's requests, as a courtesy, we can identify EGFB-010846; EGFB-003312; EGFB-003486; and EGFB-003487 as a non-exhaustive list of examples of documents partially responsive to RFP 20. If you have other questions regarding our production, please let us know.

Best,

Emily

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Thursday, February 18, 2021 9:20 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

The record is sufficiently clear, so in this email, I'm not going to further respond to the assertions in your last email on this chain. However, we do have two questions about Facebook's productions for which we'd appreciate a prompt response:

1. In EGFB004041, Facebook lists various "interfaces" in column C. Could you please let us know what "msite" refers to?
2. It's unclear to us which documents, if any, are responsive to RFP 20. Could you please point us to responsive documents or explain why none were produced?

Best,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Friday, February 12, 2021 1:49 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thanks for your response. The extent to which you are going out of your way to mischaracterize Facebook's position and avoid Apple's clear obligation to explain why the discovery it is seeking is relevant is remarkable. In any event, we again disagree with your characterization of Facebook's position and continue to reserve all rights.

Regarding the sufficiency of our production, as you note, our production is not yet complete and we produced additional documents on Wednesday. For the sake of clarity, however, Facebook did not "agree to produce responsive documents," but rather agreed to "conduct a reasonable search for and [] produce non-privileged documents responsive to [various RFPs] to the extent they exist, as proportionate to the needs of this case and in a manner that does not subject third-party respondent Facebook to an undue burden." Regardless, if you have specific concerns, please let us know what they are. Thanks.

Best,

Emily

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Wednesday, February 10, 2021 2:45 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie
<Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman,
Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

We do not think we misunderstand or are misrepresenting Facebook's position at all.
While we understand that you have made numerous objections to producing the
documents called for in the second subpoena, Facebook objected to each request on
the grounds of relevance. *See, e.g.*, Obj. to RFPs 2-4 ("Facebook additionally objects to
this Request as calling for information not relevant to any party's claims or defenses . . .
."). In addition, during our meet and confers and in these follow-up emails, Facebook
has continued to question how these requests are relevant to the app store litigations (a
more broad position than just that the App Tracking Transparency policy is not being
challenged by any plaintiff in these litigations). Accordingly, as stated in my earlier
email, we believe a fair representation of Facebook's position to be that App Tracking
Transparency is not relevant to the claims or defenses in any of the app store litigations.
Apple continues to reserve all rights, including the right to move to compel after
February 15, if Facebook either produces documents concerning App Tracking
Transparency or testifies in a deposition or at trial.

In addition, Facebook's productions to date do not appear to cover all of the requests
for which Facebook agreed to produce responsive documents. Please let us know when
Facebook plans to make additional productions in response to the first subpoena.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Monday, February 8, 2021 4:40 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie
<Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>;
Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC)
<Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thanks for your response. Your email either misrepresents or misunderstands Facebook's position with respect to what Apple calls its App Tracking Transparency policies, so we will state it again. Under the Federal Rules of Civil Procedure, Apple may seek information that is relevant to a claim or defense in the *Epic*, *Cameron*, and *Pepper* cases. As indicated by the questions in my prior email, we do not believe Apple has explained how information about these policies meets this standard, so we are simply asking that Apple do so now. We are also asking that Apple explain why there is a substantial need for such information, as the Federal Rules also require.

Nevertheless, consistent with Facebook's understanding that no plaintiff in these cases is challenging what Apple calls its App Tracking Transparency policies and pursuant to Facebook's objections to both subpoenas to producing documents related to policies or restrictions that are not challenged in this case, Facebook does not intend to produce documents in response to Apple's and Epic's subpoenas that relate solely to what Apple calls its App Tracking Transparency policies. It is possible, however, that Facebook's document production in response to Apple's and Epic's subpoenas may include documents related to what Apple calls its App Tracking Transparency policies because those documents also contain other responsive and relevant information.

Facebook reserves all of its objections to Apple's and Epic's subpoenas, including to requests for information after the close of fact discovery under the Court's orders.

Best,

Emily

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Thursday, February 04, 2021 1:38 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

As we said during our meet and confers, the requests in the second subpoena were prompted by Facebook's campaign attacking Apple's recently-announced privacy enhancements (i.e., the App Tracking Transparency policy), in which Facebook connected App Tracking Transparency to its goal of providing useful information to Epic in Epic's lawsuit against Apple.

We understand it is now Facebook's position that App Tracking Transparency is not relevant to the claims or defenses in any of the app store litigations (i.e., *Cameron*,

*Pepper*, and *Epic*). Please let us know immediately if that is not Facebook's position. If that is Facebook's position, then Apple will agree to hold the second subpoena in abeyance so long as: (1) Facebook does not produce documents concerning App Tracking Transparency, and (2) Facebook is not deposed. If Facebook produces documents concerning App Tracking Transparency, fairness would require that Facebook also produce documents concerning App Tracking Transparency responsive to the requests in this second subpoena. And if Facebook is deposed or testifies at trial, given the bias demonstrated in Facebook's advertising campaign, the requests in the second subpoena would be necessary for impeachment. To be clear, Apple reserves all rights, including the right to move to compel after February 15, if Facebook either produces documents concerning App Tracking Transparency or testifies in a deposition or at trial.

Regarding RFP 22 from the first subpoena, while we reserve all rights and disagree with Facebook's assertions concerning the relevance of the material, we do not currently plan to further pursue or move to compel a response to that request.

Best,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Thursday, January 28, 2021 1:48 AM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thanks again for your response on Apple's first subpoena.

We still do not understand Apple's position that Facebook's ad revenue by platform is relevant to show the volume of transactions in the app distribution market. Can you explain how transactions that earn Facebook ad revenue are transactions for which Apple competes in an app distribution market? Also, can you explain why Apple needs Facebook's ad revenue by platform in particular to estimate the total volume of transactions in the entire market? Has Apple subpoenaed other app developers for their ad revenue by platform in order to determine the total volume of ad transactions?

With respect to Apple's assertion that Facebook's ad revenue by platform might show that app developers can earn significant revenue from selling ads as opposed to paid downloads and in-app purchases, it is not clear how that fact would be relevant to the claims or defenses in these cases. Could you elaborate on that? Also, can you explain why Apple needs specific ad revenue figures from Facebook by platform and cannot rely on public information to establish the general proposition that developers can earn significant revenue from selling ads?

Best,

Emily

---

**From:** Curran-Huberty, Emily
**Sent:** Tuesday, January 26, 2021 3:53 PM
**To:** 'Kreiner, Evan R' <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thanks for these responses. We will consider the points you raise on ad revenue and get back to you.

Thanks as well for the call on Friday regarding Apple's second subpoena to Facebook. We have considered our discussion and have several follow-up questions. We are happy to jump on another call to discuss. Just let us know what works for you.

**RFP 1:** You said that communications between Facebook and/or its counsel and any developer and/or its counsel, including Epic, concerning pending or future litigation regarding Apple's "policies" concerning iOS, iOS Apps, and/or the iOS App Store are relevant for potential impeachment.

*First*, you have not defined "policies," except to say that you believe they include the iOS 14 policy changes. Please explain what you mean by "policies" and why you believe the iOS 14 policy changes will be the subject of testimony for which impeachment may be required so as to be included in that definition.

*Second*, you have not identified any testimony for potential impeachment, let alone explained why you believe that impeachment will be necessary and how documents responsive to RFP 1 would impeach any such testimony. Please explain.

*Finally*, even assuming that communications called for in RFP 1 could be a proper subject of discovery, Apple can obtain any such communications involving Epic from Epic itself. Please explain what steps Apple has taken to do so.

**RFP 2:** You said that Facebook's studies about the effects of "privacy policies" of iOS, Android OS, and/or any software store, including iOS App Store, are relevant to allegations in Epic's complaint anticipating that Apple will assert privacy concerns as a procompetitive justification for the distribution/IAP restrictions at issue in these cases, and that Epic will argues this justification is pretextual.

*First*, you have not defined "privacy policies," except to say that you believe they include the iOS 14 policy changes. Please explain what you mean by "privacy policies" and why you believe the iOS 14 policy changes will be at issue in connection with procompetitive justifications relevant to the distribution/IAP restrictions that are issue in these cases so as to be included in that definition.

*Second*, you have not explained why any studies or analyses conducted or requested by Facebook about "privacy policies" are relevant to any procompetitive justifications for the distribution/IAP restrictions at issue in these cases. For example, can you tell us or point us to a document explaining any procompetitive justification for its distribution/IAP restrictions that Apple plans to assert relating to privacy, and, if so, how the iOS 14 policy changes (particularly those addressed in the December blog post identified by the subpoena) relate to that asserted procompetitive justification? Has any party sought discovery from Apple regarding "privacy policies" and/or the iOS 14 policy changes? This information would help us evaluate Apple's argument that documents responsive to this request are relevant to claims that Apple's assertion of privacy as a procompetitive justification for the distribution/IAP policies at issue in these cases is pretextual.

*Third,* since Apple controls and knows the basis for any procompetitive justifications it will assert for the distribution/IAP restrictions, we do not understand the relevance of any studies conducted or requested by Facebook on those topics. For example, if Apple plans to assert privacy as a procompetitive justification for the distribution/IAP restrictions, has Apple conducted or requested any studies regarding the effects of the "privacy policies" in RFP 2? If so, then why does Apple need studies from Facebook? More fundamentally, how can Apple justify its policies prohibiting other app distributors or in-app purchase payment processors based on internal documents from Facebook, if any, that Apple has never seen. Can you explain that?

**RFP 3:** As with RFPs #1 and #2, you have not explained how public statements by Facebook regarding either this case or Apple's proposed policies related to iOS14 are relevant to any claim or defense in this case. As such, we do not see how documents reflecting criticism of those public statements, if any such documents exist, are relevant.

**RFP 4:** You said that Apple contends that documents responsive to this request are relevant to Apple's justifications for its decisions with respect to Facebook Gaming. But we do not understand how Apple could justify its own decisions about Facebook Gaming based on complaints, if any, that Facebook may have received. Could you please explain that?

You also said that internal documents regarding any complaints that Facebook may have received are relevant to understanding consumers' views regarding the marketplace.

Has Apple conducted studies regarding the security of the Facebook products identified in RFP #4 or various app stores generally? Has Apple conducted studies regarding consumers' views about the security of the Facebook products identified in RFP #4 or various app stores generally? If so, then why does Apple need studies from Facebook to understand the market or consumers' views?

Best,

Emily

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Tuesday, January 26, 2021 1:13 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Emily,

Responses to your email regarding the open issues for the first subpoena are below. As discussed, we look forward to receiving your follow-up email on the second subpoena promptly so that we can work toward a resolution in advance of the February 15 fact discovery deadline.

1. Your understanding is correct.
2. Your understanding is correct.
3. As we've explained during our meet and confers, the advertising revenue figures requested are relevant for multiple reasons. For example:
   a. To the extent that there is an alleged "app distribution market," one way to measure that market could be the volume of "transactions" on the various app distribution platforms. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2286 & n.8 (2018). For apps with an ad-based monetization strategy (rather than an in-app purchase or paid download monetization strategy), one way to measure the volume of "transactions" could be advertising revenue.
   b. In addition, it is relevant that app developers have alternative ways to monetize their apps beyond paid downloads and in-app purchases, which allows app developers to avoid paying a commission to Apple. One such alternative monetization strategy is in-app advertising. Because Facebook's apps monetize through in-app advertising, knowing Facebook's advertising revenues from its iOS apps in particular could demonstrate that app developers can generate significant advertising revenues through an iOS app. And knowing Facebook's advertising revenues on all other platforms would put the advertising revenues from the iOS apps in context—these revenue figures thus could show

20

that Facebook is able to monetize its apps in a similar manner on Apple's platforms as on other platforms, which could also demonstrate that the iOS policies being challenged do not impact Facebook's (and other advertising-based developers') ability to monetize its apps.

4.  This is acceptable.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491** | **F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Friday, January 22, 2021 5:53 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata (NYC) <Sundiata.Sidibe@skadden.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thanks again for your response. Our written responses to your proposals are below:

1.  Regarding the protective order, we understand you to be saying that Section 7.3 permits a designating party to decline to approve the disclosure of Highly Confidential Attorneys Eyes Only documents to any designated in-house counsel for the receiving party. If our understanding is correct, that aspect of the Protective Order is acceptable to Facebook.

2.  Regarding disclosure to mock jurors, we understand that you will only disclose documents to mock jurors if they acknowledge the protective order and agree to be bound and that Facebook would be notified in advance in the event any Facebook documents are intended to be shown to mock jurors. If our understanding is correct, and Apple can confirm that it will give notice of its intent to share Facebook documents sufficiently in advance for Facebook to object and seek intervention of the court if necessary, then this aspect of the Protective Order is acceptable to Facebook.

3.  On ad revenue, we appreciate your effort to compromise by offering to accept revenue data by platform, but this information remains very competitively sensitive, and we continue to have questions about your theory for why this is relevant and proportionate to the needs of the case even after today's discussion. Again, understanding how this data might fit into the case would

help us determine if there is a compromise that can get you what relevant information you need that protects Facebook's highly sensitive information.
4. On RFPs 18, 23 & 24, while we are searching and reviewing diligently, we cannot commit to inform you by February 1 whether we intend to withhold documents based on our competitive sensitivity objections to these RFPs. We can commit to providing you this notice by February 8. Please let us know if this is acceptable to Apple.
5. On our search and production process, we understand that you are reserving your rights at this time.

Thank you.

Best,

Emily

---

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Thursday, January 21, 2021 7:32 PM
**To:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Cc:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>; Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** Re: Epic v Apple - Facebook subpoena

Evan,

I am nearly certain that time still works for our side, so let's plan on speaking then. On subpoena 1, we should be able to update you either before or during our call tomorrow. Thanks.

Best,

Emily

Sent from my iPhone

> On Jan 21, 2021, at 2:56 PM, Kreiner, Evan R <Evan.Kreiner@skadden.com> wrote:
>
> Emily,
>
> We've moved our conflicting appointments and are now able to begin the meet and confer tomorrow at 1pm Pacific. Please let us know if that time still works and I'll circulate a calendar invite.

Separately, do you have an update on the outstanding issues for the first subpoena?

Thanks,
Evan

> On Jan 21, 2021, at 4:26 PM, Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com> wrote:
>
> Evan,
>
> I've conferred with the group, and we are not available tomorrow before 1 PM pacific. If that does not work on your end, is there a window on Monday that works for you? Thanks.
>
> Best,
>
> Emily

---

**From:** Curran-Huberty, Emily
**Sent:** Wednesday, January 20, 2021 4:49 PM
**To:** 'Kreiner, Evan R' <Evan.Kreiner@skadden.com>; Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>
**Cc:** Shikman, Dane <Dane.Shikman@mto.com>; Sidibe, Sundiata <Sundiata.Sidibe@skadden.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Evan,

I'm sorry, I apparently no longer know what day it is. I actually meant after 1 PM PT Friday, but it doesn't look like that solves the problem based on your response. Let me re-check availability.

Best,

Emily

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Wednesday, January 20, 2021 4:46 PM
**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>; Raphael, Justin

<[Justin.Raphael@mto.com](mailto:Justin.Raphael@mto.com)>; Ring, Rosemarie
<[Rose.Ring@mto.com](mailto:Rose.Ring@mto.com)>; Lent, Karen Hoffman
<[Karen.Lent@skadden.com](mailto:Karen.Lent@skadden.com)>
**Cc:** Shikman, Dane <[Dane.Shikman@mto.com](mailto:Dane.Shikman@mto.com)>; Sidibe,
Sundiata <[Sundiata.Sidibe@skadden.com](mailto:Sundiata.Sidibe@skadden.com)>
**Subject:** RE: Epic v Apple - Facebook subpoena

Hi Emily,

Apologies, but we're not available during that time
tomorrow. We're free on Friday anytime before 1 PM
Pacific. Please let us know if your group is available in
that window.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**[T: +1.212.735.2491](tel:+1.212.735.2491) | [F: +1.917.777.2491](tel:+1.917.777.2491)**
**[evan.kreiner@skadden.com](mailto:evan.kreiner@skadden.com)**

---

**From:** Curran-Huberty, Emily <[Emily.Curran-Huberty@mto.com](mailto:Emily.Curran-Huberty@mto.com)>
**Sent:** Wednesday, January 20, 2021 3:53 PM
**To:** Kreiner, Evan R (NYC)
<[Evan.Kreiner@skadden.com](mailto:Evan.Kreiner@skadden.com)>; Raphael, Justin
<[Justin.Raphael@mto.com](mailto:Justin.Raphael@mto.com)>; Ring, Rosemarie
<[Rose.Ring@mto.com](mailto:Rose.Ring@mto.com)>; Lent, Karen Hoffman (NYC)
<[Karen.Lent@skadden.com](mailto:Karen.Lent@skadden.com)>
**Cc:** Shikman, Dane <[Dane.Shikman@mto.com](mailto:Dane.Shikman@mto.com)>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thanks for your response. We are considering your
numbered responses below and will circle back soon. In
the meantime, we are available for a meet and confer
after 1 PM Pacific tomorrow. Thank you.

Best,

Emily

---

**From:** Kreiner, Evan R <[Evan.Kreiner@skadden.com](mailto:Evan.Kreiner@skadden.com)>
**Sent:** Tuesday, January 19, 2021 6:10 PM

**To:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>; Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman <Karen.Lent@skadden.com>
**Cc:** Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily,

Thanks very much for your email. Responses to the issues you raised are below (the numbers correspond with those in your email). Separately, please let us know what times on Thursday and Friday would work for a meet and confer on the second subpoena.

1.  Contrary to your reading of the protective order, Section 7.3 only enables Apple's in-house counsel to view documents marked Attorney's Eyes Only if the producing party or third party agrees to permit such access to designated in-house counsel. In addition, any mock juror would have to agree to be bound by the protective order before participating in a mock jury exercise, and we can agree to inform you before any Facebook document would be used with a mock jury. We'd also note that Magistrate Judge Hixson overruled Samsung's objection to the protective order. Please let us know whether Facebook continues to have an objection to the protective order.

2.  In the spirit of compromise, Apple will agree to drop the request for advertising revenue segmented by app if you can confirm that Facebook will produce advertising revenue segmented by platform.

3.  Please let us know by February 1 if Facebook intends to withhold documents responsive to RFPs 18, 23, or 24. Apple reserves all rights if Facebook withholds responsive documents.

4.  Apple reserves all rights if Facebook's productions indicate a deficient search process.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

**From:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>
**Sent:** Friday, January 15, 2021 10:36 PM
**To:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>; Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>; Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>
**Cc:** Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Evan,

Thanks for providing this information and for your patience. Below we have addressed the issues we discussed on our meet-and-confer.

1. With respect to the protective order, the current order does not adequately protect non-parties such as Facebook to the extent that Section 7.3 enables certain in-house counsel to view documents marked Attorney's Eyes Only. Not only does this create a risk that highly sensitive information will be exposed to a competitor, but it also creates an asymmetry as to third parties in which in-house counsel for parties can view such information from non-parties but in-house counsel for non-parties cannot do the same. As you know, Section 10(a) of the order makes clear that non-parties may be entitled to additional protections than those specified in the order. We also note that the parties have not addressed the circumstances under which any third party's sensitive, confidential documents would be shared with mock jurors. Facebook cannot agree to produce sensitive, confidential documents with the authorization that they be shared with mock jurors.

2. With respect to RFP 22, we appreciate your providing a copy of the Epic complaint. However, it still does not explain Apple's theory of how data on advertising revenue that Facebook earns from individual apps on an

app-by-app basis is relevant to the parties' claims and defenses. We remain willing to consider a more specific showing from Apple regarding its theory of relevance.

3. With respect to RFPs 18, 23 and 24, without waiving any of its objections, including objections on privilege grounds and on the ground that the documents contain commercially sensitive information, Facebook is willing to agree to conduct a reasonable search, as proportionate to the needs of this case and in a manner that does not subject third-party respondent Facebook to an undue burden, to determine whether responsive documents that would fall within those and Facebook's other asserted objections exist. In the event that such documents do exist, and Facebook intends to withhold such documents, Facebook will inform Apple of that fact.

4. You had asked for more information about how Facebook plans to search for responsive documents. As we're sure you can appreciate, there are more than two dozen requests in Apple's first subpoena, many of which have numerous subsidiary requests on discrete subject areas, seeking multiple kinds of documents on multiple subjects related to multiple parts of Facebook's business. Facebook has been engaged, and remains engaged, in an extensive process of searching for responsive documents, including by identifying and interviewing numerous potential custodians and collecting from potential custodians who appear likely to have some responsive documents. We believe this process complies with Facebook's obligations under the Federal Rules as a third party to these matters. Facebook cannot agree to search for documents responsive to each and every request created on or after January 1, 2015. Facebook is undertaking a proper process to identify documents responsive to each request and the proper timeframe for that search under the Federal Rules may vary from request to request and evolve as Facebook learns more information.

Best,

Emily

**From:** Curran-Huberty, Emily
**Sent:** Friday, January 15, 2021 11:50 AM

**To:** 'Kreiner, Evan R' <Evan.Kreiner@skadden.com>;
Raphael, Justin <Justin.Raphael@mto.com>; Ring,
Rosemarie <Rose.Ring@mto.com>; Lent, Karen
Hoffman <Karen.Lent@skadden.com>
**Cc:** Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Evan,

Attached, please find Facebook's Responses &
Objections to Apple's Second Subpoena. Regarding the
follow up on our meet and confer, we appreciate your
patience. We are still running an issue or two to ground,
but we will endeavor to get back to you on your
questions later today.

Best,
Emily

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Friday, January 15, 2021 6:48 AM
**To:** Curran-Huberty, Emily <Emily.Curran-
Huberty@mto.com>; Raphael, Justin
<Justin.Raphael@mto.com>; Ring, Rosemarie
<Rose.Ring@mto.com>; Lent, Karen Hoffman
<Karen.Lent@skadden.com>
**Cc:** Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

All,

Following up on our meet and confer and the below
email. Do you have any updates?

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Kreiner, Evan R (NYC)
**Sent:** Monday, January 11, 2021 11:05 PM
**To:** 'Curran-Huberty, Emily' <Emily.Curran-
Huberty@mto.com>; Raphael, Justin

<[Justin.Raphael@mto.com](mailto:Justin.Raphael@mto.com)>; Ring, Rosemarie
<[Rose.Ring@mto.com](mailto:Rose.Ring@mto.com)>; Lent, Karen Hoffman (NYC)
<[Karen.Lent@skadden.com](mailto:Karen.Lent@skadden.com)>
**Cc:** Shikman, Dane <[Dane.Shikman@mto.com](mailto:Dane.Shikman@mto.com)>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Emily, Justin, Rose, and Dane,

Following up on our meet and confer, I'm attaching the operative protective order in *Epic*, which is substantively the same as the protective orders entered in *Pepper* and *Cameron*. I'm also attaching the *Epic* complaint. While the factual allegations and claims are obviously in dispute, one example of a proposed market for app distribution that does not depend on whether an app developer's revenue is driven by advertisements or in-app purchases is at paragraphs 51-57. Moreover, Count I alleges unlawful monopoly maintenance of this proposed market.

As discussed on our call, please let us know whether Facebook will continue to stand on its objections related to the suitability of the protective order and to RFPs 18, 22, 23, and 24. Please also let us know whether the proposed 2015 start date is acceptable and the general parameters of the document search Facebook plans to conduct for the RFPs for which it will produce responsive documents.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**[evan.kreiner@skadden.com](mailto:evan.kreiner@skadden.com)**

**From:** Curran-Huberty, Emily <[Emily.Curran-Huberty@mto.com](mailto:Emily.Curran-Huberty@mto.com)>
**Sent:** Friday, January 8, 2021 5:07 PM
**To:** Kreiner, Evan R (NYC)
<[Evan.Kreiner@skadden.com](mailto:Evan.Kreiner@skadden.com)>; Raphael, Justin
<[Justin.Raphael@mto.com](mailto:Justin.Raphael@mto.com)>; Ring, Rosemarie
<[Rose.Ring@mto.com](mailto:Rose.Ring@mto.com)>; Lent, Karen Hoffman (NYC)
<[Karen.Lent@skadden.com](mailto:Karen.Lent@skadden.com)>

**Cc:** Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Hi Evan,

Our team is available between 2 and 4 PM pacific on
Monday. Thanks.

Best,

Emily

---

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Thursday, January 07, 2021 8:30 PM
**To:** Curran-Huberty, Emily <Emily.Curran-
Huberty@mto.com>; Raphael, Justin
<Justin.Raphael@mto.com>; Ring, Rosemarie
<Rose.Ring@mto.com>; Lent, Karen Hoffman
<Karen.Lent@skadden.com>
**Cc:** Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Emily, Justin, Rose, and Dane,

Thank you for sending these responses and objections.
Are you available to meet and confer after 2PM Pacific
on Monday? Among other things, we'll want to discuss
whether Facebook plans to stand on its objections to
RFPs 22-24 so we can expeditiously move forward with
any necessary motion practice. In addition, we'd
appreciate an update on Facebook's planned response
to the other subpoena.

Thanks,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Curran-Huberty, Emily <Emily.Curran-
Huberty@mto.com>
**Sent:** Thursday, January 7, 2021 12:14 AM
**To:** Kreiner, Evan R (NYC)
<Evan.Kreiner@skadden.com>; Raphael, Justin

<[Justin.Raphael@mto.com](mailto:Justin.Raphael@mto.com)>; Ring, Rosemarie
<[Rose.Ring@mto.com](mailto:Rose.Ring@mto.com)>; Lent, Karen Hoffman (NYC)
<[Karen.Lent@skadden.com](mailto:Karen.Lent@skadden.com)>
**Cc:** Shikman, Dane <[Dane.Shikman@mto.com](mailto:Dane.Shikman@mto.com)>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Karen, Evan,

Attached, please find Facebook's Responses and
Objections to Defendant's Subpoena. Thank you.

Best,

Emily

**Emily C. Curran-Huberty (she/her/hers)** | **Munger,
Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4052 | [Emily.Curran-Huberty@mto.com](mailto:Emily.Curran-Huberty@mto.com) |
[www.mto.com](http://www.mto.com)

*\*\*\*NOTICE\*\*\**
*This message is confidential and may contain
information that is privileged, attorney work product or
otherwise exempt from disclosure under applicable law.
It is not intended for transmission to, or receipt by, any
unauthorized person. If you have received this message
in error, do not read it. Please delete it without copying
it, and notify the sender by separate e-mail so that our
address record can be corrected. Thank you.*

**From:** Kreiner, Evan R <[Evan.Kreiner@skadden.com](mailto:Evan.Kreiner@skadden.com)>
**Sent:** Wednesday, December 30, 2020 2:45 PM
**To:** Raphael, Justin <[Justin.Raphael@mto.com](mailto:Justin.Raphael@mto.com)>; Ring,
Rosemarie <[Rose.Ring@mto.com](mailto:Rose.Ring@mto.com)>; Lent, Karen
Hoffman <[Karen.Lent@skadden.com](mailto:Karen.Lent@skadden.com)>
**Cc:** Curran-Huberty, Emily <[Emily.Curran-Huberty@mto.com](mailto:Emily.Curran-Huberty@mto.com)>; Shikman, Dane
<[Dane.Shikman@mto.com](mailto:Dane.Shikman@mto.com)>
**Subject:** RE: [Ext] RE: Epic v Apple - Facebook subpoena

Justin,

We'll agree to an extension to 12:00 PM Pacific on
January 15 for Facebook's responses and objections to
that subpoena. Hope everyone has a happy new year.

Best,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Raphael, Justin <Justin.Raphael@mto.com>
**Sent:** Wednesday, December 30, 2020 5:11 PM
**To:** Ring, Rosemarie <Rose.Ring@mto.com>; Lent,
Karen Hoffman (NYC) <Karen.Lent@skadden.com>
**Cc:** Kreiner, Evan R (NYC)
<Evan.Kreiner@skadden.com>; Curran-Huberty, Emily
<Emily.Curran-Huberty@mto.com>; Shikman, Dane
<Dane.Shikman@mto.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Karen and Evan, thanks for the call just now. Can you
just confirm Apple's agreement that Facebook's
responses and objections to Subpoena #2 will be due on
January 15, 2021?

Thanks,

**Justin P. Raphael** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4085 | justin.raphael@mto.com |
www.mto.com

*\*\*\*NOTICE\*\*\**
*This message is confidential and may contain*
*information that is privileged, attorney work product or*
*otherwise exempt from disclosure under applicable law.*
*It is not intended for transmission to, or receipt by, any*
*unauthorized person. If you have received this message*
*in error, do not read it. Please delete it without copying*
*it, and notify the sender by separate e-mail so that our*
*address record can be corrected. Thank you.*

**From:** Ring, Rosemarie <Rose.Ring@mto.com>
**Sent:** Wednesday, December 30, 2020 10:05 AM
**To:** Lent, Karen Hoffman <Karen.Lent@skadden.com>;
Raphael, Justin <Justin.Raphael@mto.com>
**Cc:** Kreiner, Evan R <Evan.Kreiner@skadden.com>;
Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>; Shikman, Dane
<Dane.Shikman@mto.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Thanks, Karen. We appreciate your flexibility. Talk to you soon.

---

**From:** Lent, Karen Hoffman
<Karen.Lent@skadden.com>
**Sent:** Wednesday, December 30, 2020 9:54 AM
**To:** Ring, Rosemarie <Rose.Ring@mto.com>; Raphael,
Justin <Justin.Raphael@mto.com>
**Cc:** Kreiner, Evan R <Evan.Kreiner@skadden.com>;
Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>; Shikman, Dane
<Dane.Shikman@mto.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

No problem, we can talk at 4:00 pm EST.

---

**From:** Ring, Rosemarie <Rose.Ring@mto.com>
**Sent:** Wednesday, December 30, 2020 12:46 PM
**To:** Lent, Karen Hoffman (NYC)
<Karen.Lent@skadden.com>; Raphael, Justin
<Justin.Raphael@mto.com>
**Cc:** Kreiner, Evan R (NYC)
<Evan.Kreiner@skadden.com>; Curran-Huberty, Emily
<Emily.Curran-Huberty@mto.com>; Shikman, Dane
<Dane.Shikman@mto.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Hi Karen

I suggested 1pm on our end, but I wasn't clear that I
meant *pacific* to make sure we have enough time to
review both subpoenas. Would 1pm PT/4pm ET work
for you?

Thanks,

Rose

**From:** Lent, Karen Hoffman
<Karen.Lent@skadden.com>
**Sent:** Wednesday, December 30, 2020 6:58 AM
**To:** Raphael, Justin <Justin.Raphael@mto.com>
**Cc:** Kreiner, Evan R <Evan.Kreiner@skadden.com>; Ring,
Rosemarie <Rose.Ring@mto.com>; Curran-Huberty,
Emily <Emily.Curran-Huberty@mto.com>; Shikman,
Dane <Dane.Shikman@mto.com>
**Subject:** Re: Epic v Apple - Facebook subpoena

Justin, would 2:00 pm eastern work? Thanks.

On Dec 30, 2020, at 9:32 AM, Raphael, Justin
<Justin.Raphael@mto.com> wrote:

Karen and Evan, are you available at 1 PM Eastern for a
call?

Best,

**Justin P. Raphael** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4085 | justin.raphael@mto.com |
www.mto.com

*\*\*\*NOTICE\*\*\**
*This message is confidential and may contain
information that is privileged, attorney work product or
otherwise exempt from disclosure under applicable law.
It is not intended for transmission to, or receipt by, any
unauthorized person. If you have received this message
in error, do not read it. Please delete it without copying
it, and notify the sender by separate e-mail so that our
address record can be corrected. Thank you.*

**From:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Sent:** Tuesday, December 29, 2020 6:50 PM
**To:** Ring, Rosemarie <Rose.Ring@mto.com>; Lent,
Karen Hoffman <Karen.Lent@skadden.com>; Raphael,
Justin <Justin.Raphael@mto.com>

**Cc:** Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>; Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** RE: Epic v Apple - Facebook subpoena

Hi Rose,

The subpoena we intended to serve tomorrow is attached. Thank you for accepting service and please let us know some times that would be good for a call.

Best,
Evan

**Evan Kreiner**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | New York | 10001**
**T: +1.212.735.2491 | F: +1.917.777.2491**
**evan.kreiner@skadden.com**

---

**From:** Ring, Rosemarie <Rose.Ring@mto.com>
**Sent:** Tuesday, December 29, 2020 9:27 PM
**To:** Lent, Karen Hoffman (NYC) <Karen.Lent@skadden.com>; Raphael, Justin <Justin.Raphael@mto.com>
**Cc:** Kreiner, Evan R (NYC) <Evan.Kreiner@skadden.com>; Curran-Huberty, Emily <Emily.Curran-Huberty@mto.com>; Shikman, Dane <Dane.Shikman@mto.com>
**Subject:** [Ext] RE: Epic v Apple - Facebook subpoena

Hi Karen,

Thank you for getting back to us.

On the subpoena that is attached to your email, which I will refer to as Subpoena #1, Mr. Teagegne is not authorized to accept service of process on behalf of Facebook, which explains why we were not aware of it until today. But Facebook has authorized me to accept service and to agree to the same schedule we have with Epic for its subpoena. We understand Epic has informed you of that schedule, but it is service of written objections/responses by January 6 and document production later in January.

On Subpoena #2, I am also authorized to accept service.

In the interest of keeping things moving, I suggest we set aside time late in the day tomorrow ET to discuss both subpoenas, so that we have time to review them before the call.

Thanks,

Rose

**Rosemarie T. Ring | Munger, Tolles & Olson LLP | (Pronouns: She, Her)**
560 Mission Street | San Francisco, CA 94105
Tel: 415.512.4008 | Fax: 415.644.6908 |
rose.ring@mto.com | www.mto.com

*\*\*\*NOTICE\*\*\**

*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law. It is not intended for transmission to, or receipt by, any unauthorized person. If you have received this message in error, do not read it. Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected. Thank you.*

---

**From:** Lent, Karen Hoffman
<Karen.Lent@skadden.com>
**Sent:** Tuesday, December 29, 2020 3:17 PM
**To:** Raphael, Justin <Justin.Raphael@mto.com>; Ring, Rosemarie <Rose.Ring@mto.com>
**Cc:** Kreiner, Evan R <Evan.Kreiner@skadden.com>
**Subject:** Epic v Apple - Facebook subpoena

Hi Rose and Justin.

Thanks for your voicemails today. It sounds like you heard from counsel for Epic that we represent Apple in the *Epic*, *In re Apple iPhone Antitrust Litigation*, and *Cameron* actions pending in the Northern District of California. I have attached the proof of service for the subpoena that Apple served on Facebook on December 15 (with a return date of December 28), as well as the

subpoena itself. Please let me when you are available to discuss tomorrow.

In addition, Apple intends to serve another subpoena on Facebook tomorrow arising from Facebook's recent public statements (it sounds like you also heard about this from Epic's counsel). Please let us know whether you can accept service of this subpoena or whether we'll need to engage a process server.

Thanks,
Karen

**Karen Hoffman Lent**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | **New York | 100**01
**T: 212.735.3276** | **F: 917.777.3276** | **M: 917.270.5411**
**karen.lent@skadden.com**

----------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

================================================================================

----------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of

this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

========================================================================

--------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

========================================================================

--------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email

(and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

=========================================
=========================================
====

----------------------------------------------------------------
---------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

=========================================
=========================================
====

----------------------------------------------------------------
---------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately

notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

======================================================
======================================================
====

------------------------------------------------------------------
---------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

======================================================
======================================================
====

------------------------------------------------------------------
---------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and

any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

==========================================
==========================================
====

--------------------------------------------------------------
---------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

==========================================
==========================================
====

---------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

==================================================
================================

--------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or confidential
information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any
attachments thereto) is strictly prohibited. If you receive this email in error please
immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.

===========================================================
====================

--------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or confidential
information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any
attachments thereto) is strictly prohibited. If you receive this email in error please
immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.

===========================================================
====================

--------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or confidential
information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any
attachments thereto) is strictly prohibited. If you receive this email in error please
immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.

=============================================================
====================

-----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or confidential
information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any
attachments thereto) is strictly prohibited. If you receive this email in error please
immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.

=============================================================
====================

-----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or confidential
information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any
attachments thereto) is strictly prohibited. If you receive this email in error please
immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.

=============================================================
====================

-----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or confidential
information. If you are not the intended recipient of this email, you are hereby
notified that any dissemination, distribution or copying of this email (and any
attachments thereto) is strictly prohibited. If you receive this email in error please
immediately notify me at (212) 735-3000 and permanently delete the original
email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional
qualifications will be provided upon request.

=========================================================
====================

----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named
herein and may contain legally privileged and/or confidential information. If you are not the
intended recipient of this email, you are hereby notified that any dissemination, distribution or
copying of this email (and any attachments thereto) is strictly prohibited. If you receive this
email in error please immediately notify me at (212) 735-3000 and permanently delete the
original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will
be provided upon request.

====================================================================
=========

----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named
herein and may contain legally privileged and/or confidential information. If you are not the
intended recipient of this email, you are hereby notified that any dissemination, distribution or
copying of this email (and any attachments thereto) is strictly prohibited. If you receive this
email in error please immediately notify me at (212) 735-3000 and permanently delete the
original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will
be provided upon request.

====================================================================
=========

----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named
herein and may contain legally privileged and/or confidential information. If you are not the
intended recipient of this email, you are hereby notified that any dissemination, distribution or
copying of this email (and any attachments thereto) is strictly prohibited. If you receive this
email in error please immediately notify me at (212) 735-3000 and permanently delete the
original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will
be provided upon request.

====================================================================
=========

----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

============================================================================
=========

----------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

============================================================================
=========