UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br>   *Plaintiff, Counter-defendant,*<br><br>   v.<br><br>APPLE INC.,<br><br>   *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH <br><br> **JOINT DISCOVERY LETTER BRIEF REGARDING EPIC EXPERT PRODUCTIONS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

  The parties in the above-captioned actions respectfully submit this joint letter brief regarding production of materials by expert witnesses associated with Epic Games, Inc. ("Epic").

  Counsel for Epic and Apple Inc. ("Apple", together with Epic, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve the outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP | GIBSON DUNN & CRUTCHER LLP |
| By: */s/ Lauren A. Moskowitz*<br>  Lauren A. Moskowitz<br>  *Counsel for Epic Games, Inc.* | By: */s/ Jay P. Srinivasan*<br>  Jay P. Srinivasan<br>  *Counsel for Apple Inc* |

**Apple's Position:**  Apple respectfully requests the Court enforce Rule 26's mandatory disclosure requirements, the parties' expert discovery stipulation, and Apple's subpoenas to Epic's experts. One of Epic's expert, Dr. Michael Cragg, described in his report an analysis he did not produce. His deposition testimony confirms this.  Apple is entitled to production of the regressions or other analysis.  If they do not exist—as Epic now claims—Apple is entitled to question Dr. Cragg about his testimony to the contrary.  Apple also is entitled to production of presentations, communications, and other materials Epic's experts gave or transmitted to or prepared for government regulators, industry groups, or other businesses on case-related topics.

**Apple Is Entitled to Production of Dr. Cragg's Regression Models, Or to Re-Depose Him About His Testimony Concerning Them:**

Request Nos. 1 and 2 of Apple's subpoenas seek from Epic's experts the "DOCUMENTS, DATA, and COMMUNICATIONS [they] relied upon in forming the opinions in" their opening and rebuttal expert reports.  (Exs. A–H.)  These requests track the disclosures mandated by the expert discovery order entered in *Cameron v. Apple Inc.*, Case No. 4:19-cv-03074-YGR (ECF No. 87), applicable in the *Epic* case via the Court's Discovery Coordination Order (*see Cameron* ECF No. 80, para. 7 (stating that parties to related cases "are to be bound by . . . the stipulation[] regarding . . . expert discovery.")).  The expert discovery order requires a party serving an expert report to produce within two days of service all documents or data referred to in the report.  Case No. 4:19-cv-03074-YGR (ECF No. 87).  "To the extent the disclosures in an expert report include, rely upon, or describe exhibits, information, or data processed or modeled by a computer at the direction of an expert in the course of forming the expert's opinions, the party offering the expert's opinions must produce native copies of the data along with the appropriate programs, software, and instructions. . . ." *Id*.  Epic's claim that it complied Apple's requests and the expert discovery order cannot be squared with Epic's experts' deposition testimony.

Dr. Cragg submitted a rebuttal report claiming that the relevant market does not include expenditures on game app transactions on multiple non-iOS platforms and devices (e.g., online marketplaces on game consoles like Xbox or on PC platforms or Android devices).  Dr. Cragg's report specifically attacked the work of Apple expert Prof. Lorin Hitt:

> Professor Hitt's analysis fails to control for *any variables that may be affecting game play or revenue*, as is common practice in economics.  *I perform a corrected analysis* to identify the substitution and complementarity across devices.  *This analysis examines consumers' playtime **and expenditures*** when they acquire another device, properly controlling for other potentially confounding variables.

(Ex. I, Cragg Rebuttal Report, ¶ 37 (emphasis added).)  At his deposition, Dr. Cragg did not withdraw this criticism of Dr. Hitt, and confirmed that he performed the "corrected analysis," but admitted he did not produce the regressions or other analysis examining both "consumers' playtime and expenditures when they acquire another device."  (Ex. J, Cragg Dep. Tr. 249:6–22 ("Q.  So you ran the regressions.  You refer to them here, but you didn't produce them; is that correct?  A.  I haven't produced them in this report.")  Apple demanded production of the withheld information on the record at the deposition.  (Ex. J, Cragg Dep. Tr. 249:24–250:1 ("we request those regressions under the governing discovery stipulation [and] our subpoena").)  Epic asserts that "since this was the last question on the record, Dr. Cragg had no opportunity to further clarify his response," but that is not correct.  After Apple requested the information, a break was taken and when the deposition resumed, Epic had (but declined) the opportunity to ask

1

clarifying questions of Dr. Cragg.  (Ex. J, Cragg Dep. Tr. 249:24–250:17.)  Following the deposition, Epic produced nothing but instead served an errata excising the words "and expenditures" from the portion of Dr. Cragg's report quoted above.  (Ex. K.)  The errata did not purport to identify any basis for the deletion, did not withdraw reliance on Dr. Cragg's "corrected analysis," and did not withdraw Dr. Cragg's criticism (quoted above) of Dr. Hitt's alleged "fail[ure] to control for *any variables that may be affecting game play **or revenue***."

Dr. Cragg's deposition testimony makes clear that he performed an "analysis"—whether by regression or otherwise—of consumers' expenditures when they acquire another device, and that he generated that work in forming the opinions in his expert report about whether particular gaming platforms are economic substitutes for gaming on iOS.  Because Dr. Cragg relied upon and described that analysis in his report, Apple was entitled to its production, including all regressions, by March 17, 2021.  And although Epic has served a post-deposition errata surgically deleting two words, the analysis is nonetheless information Dr. Cragg relied upon in forming his opinions about market substitution—opinions which remain in his report.  Indeed, even with the errata, the paragraph quoted above continues to suggests that Dr. Cragg's "corrected analysis" *had* controlled for variables affecting revenue.

Epic's position, that Dr. Cragg's regressions of consumer expenditures "do not exist" and "ha[ve] no basis in reality," do not square with the language of Dr. Cragg's report or his deposition testimony.  Not only did he not deny that he generated the regressions, his testimony that he did not "present[]" them or "produce[]" them is literally incoherent if there never was a "them" to present or produce.  If Epic's position is that Dr. Cragg's deposition testimony really meant to convey that he has *not* run such regressions, and that he made no "analysis" of any kind regarding consumer expenditures, that assertion, which was not made at his deposition, should be tested under oath.[1]  Similarly, if Epic is carefully choosing its words to avoid disclosing that Dr. Cragg did indeed run regressions but did not retain them among the "backup materials" that he "consulted" after his deposition, then that too should be explored in a continued deposition.

Epic has now on numerous occasions in this litigation produced incomplete materials or erroneous data relating to the work of its experts.  (*See* Ex. L, Evans Dep. Tr. 540:12–541:24.)  These errors and omission have prejudiced Apple's ability to defend itself in this litigation.  The Court should mitigate that prejudice by ordering immediate production of the regressions Dr. Cragg relied upon in forming the opinions expressed in his expert report, or in the alternative, allowing Apple to re-depose him about his testimony concerning them.

**Apple Is Entitled to Production of Epic's Experts' Presentations and Communications with Regulators, Industry Groups, and Businesses About Case-Related Issues:**

The disclosures required by Rule 26(a)(2) do not preclude parties from obtaining further information through ordinary discovery tools, including through Rule 45 subpoenas.  *MLC Intellectual Prop. LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 1318377, at *3 (N.D. Cal. Mar. 22, 2019).  Document requests to experts are appropriate where the requested materials would illuminate "discrepancies in an expert report," *United States v. Bazaarvoice, Inc.*, No. C 13–00133 WHO (LB), 2013 WL 3784240, at *2 (N.D. Cal. July 18, 2013), and

---

[1] Apple notes that another of Epic's experts, Prof. Nancy Mathiowetz, similarly testified at deposition that she performed analysis that was not produced.  After initially denying that the analysis existed, Epic ultimately conceded that Prof. Mathiowetz had performed calculations that were not produced and agreed to produce them.

where the requested documents would allow the requester to "determine whether the opinions expressed in [an] expert report are consistent with opinions and theories [the expert] has expressed in his work outside the courtroom," *Cadle v. GEICO Gen. Ins. Co.*, No. 6:13-cv-1591-ORL-31GJK, 2014 WL 12639859, at *4 (M.D. Fla. Aug. 29, 2014) (compelling production of materials expert "authored, co-authored, or contributed to" for seminar on case-related topic).

Request No. 3 of Apple's subpoenas seeks presentations, communications, and other materials Epic's experts have given or transmitted to or prepared for government regulators, industry groups, or other businesses on certain specific subject matters: (a) this litigation; (b) the parties to this litigation; (c) the App Store and other app marketplaces; (d) distribution of apps and in-app products; (e) review of apps or in-app products; (f) mobile payment or payment processing; and (g) middleware. (Exs. A–H.) Epic's experts have opined extensively about these subjects. To the extent Epic's experts have opined on these subjects to regulators, industry groups, or other businesses, those opinions—and their consistency with the opinions expressed here—are highly relevant and would provide fertile ground for cross-examination.

In response, Epic refused to deliver a timeline for production until April 4, 2021, saying then it would "endeavor to produce" only non-confidential materials by April 9, 2021. (Ex. M, N.) This unilateral limitation is baseless: Confidentiality concerns can be addressed through designation under the protective order entered by the Court. *See Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR-TSH, ECF No. 112. Given the specific nature of the request, any purported burden of resolving confidentiality issues is modest at most, especially given Epic's representation that only two of its experts, Drs. Evans and Athey, have responsive materials. And as regards Epic's concern about identifying confidential third-parties relationships, Apple is amenable to narrowly tailored redactions of produced materials to conceal client identities.

**Epic's Position:**  With respect to Dr. Cragg, Apple seeks materials that do not exist and that he therefore, by definition, cannot produce (and, of course, did not rely on).  With respect to its Request No. 3, Apple seeks materials that belong to third parties, not to Epic or Epic's experts, and that Epic's experts possess (if at all) subject to confidentiality obligations to the third parties that own them, the identity of which Epic's experts are not at liberty to disclose.  Apple has shown no pressing need for these materials, let alone one that outweighs the undue burden Epic and its experts would face, as they prepare for trial, in coordinating with the third parties whose interests are at issue.  Epic respectfully requests that the Court limit the scope of Request No. 3 to materials that are not subject to any confidentiality obligations to third parties, which Epic has already committed to produce.

**Neither Epic nor Dr. Cragg Can Produce Materials That Do Not Exist.**

Epic's production obligation under the stipulation governing expert discovery extends to documents that its experts ***relied upon*** in forming their opinions in this matter.  The present dispute, however, does not turn on whether Dr. Cragg relied upon a given document or analysis.  Nor is it a matter of Dr. Cragg failing to retain an analysis previously performed, as Apple suggests.  The "regressions" or "analyses" that Apple seeks relating to Dr. Cragg simply ***do not exist*** (and never did), as Epic repeatedly has confirmed to Apple both verbally and in writing.  (*See, e.g.*, Ex. N.)  Apple's defiant assertion that they do has no basis in reality; even had Dr. Cragg erred in his deposition and suggested the existence of nonexistent documents (which he did not), this could not give rise to an obligation on Epic or Dr. Cragg to produce such nonexistent documents.

Nor did Dr. Cragg testify that he conducted any such regressions.  When asked at the very end of his deposition, "Did you run any regression that you reported on consumers' expenditures?," Dr. Cragg stated, "I have not presented those, no."  (Ex. J, Cragg Dep. Tr. 249:16-18.)  Apple's counsel then put words in Dr. Cragg's mouth, asking, "So you ran the regressions. You refer to them here, but you didn't produce them; is that correct?".  In response, Dr. Cragg stated simply: "I haven't produced them in this report."  (Ex. J, Cragg Dep. Tr. 249:19-22.)  Dr. Cragg did not confirm Apple's counsel's assertion that he had run such regressions—and in fact he has not run them.  But because Apple waited until the final minute of the deposition to raise this issue, it was the last question on the record, and Dr. Cragg had no opportunity to elaborate on his response.[2] At no point did Dr. Cragg testify that he performed, much less that he relied upon, any regression or other analysis with respect to user expenditures when they acquire another device.[3]

Immediately after the deposition, Dr. Cragg consulted his team and his backup materials to confirm that indeed he had not run any regression with respect to expenditures.  On a meet and confer that very evening, Epic's counsel explained to Apple's counsel that the reference to "expenditures" in Dr. Cragg's report was in error, that no such regression analysis exists, and

---

[2] Contrary to Apple's assertion that the parties then took a "break"—implying that Dr. Cragg could have clarified the issue with counsel and his team—that was not the case.  As the transcript reflects, the parties went off the record momentarily (less than 2 minutes) for a time check, and the deposition concluded immediately thereafter.  (Ex. J, Cragg Dep. Tr. 250:2-14.)

[3] Despite the ambiguous language in Apple's section of this letter brief, it is undisputed that Dr. Cragg *did* perform and *did* produce regressions with respect to user *playtime*.

that the "expenditures" language in the report would therefore be excised through an errata. On March 30, 2021, as promised, Epic served an errata to Dr. Cragg's rebuttal report, signed by Dr. Cragg, correcting the portion of his report that erroneously suggested that regressions had been run as to player expenditures. (Ex. K.)

Despite Epic's repeated clarifications, Apple persists. Apple erroneously points to Dr. Cragg's statement, which remains in his report, that "Professor Hitt's analysis fails to control for any variables that may be affecting game play or revenue, as is common practice in economics," (Ex. I, Cragg Rebuttal Report at ¶ 37), as an indication that Dr. Cragg himself relied on regressions or other analyses with respect to users' expenditures. That argument misreads this sentence of Dr. Cragg's report, which is a factual observation that Professor Hitt failed to control for potentially relevant variables. That has no bearing on what Dr. Cragg did or did not do. Epic and Dr. Cragg cannot be made to produce an analysis that does not exist.

Moreover, Apple's assertion that it has cause to reopen Dr. Cragg's deposition is without merit. To the extent Apple believes it needs additional confirmation from Dr. Cragg directly that no expenditure-based regression was performed, Epic confirms that it will include that statement in Dr. Cragg's errata for his deposition transcript. If Apple truly believed that there were more to explore with Dr. Cragg on this issue, it undoubtedly would have raised it at his deposition with more than one minute left on the clock.

**Apple Is Not Entitled to the Production of Materials That Are Subject to Confidentiality Obligations in Response to Request No. 3 of Its Subpoenas.**

Request No. 3 of Apple's subpoenas directed to Epic's experts, requiring the production of presentations, communications, and other materials Epic's experts have given or transmitted to or prepared for government regulators, industry groups, or other businesses on behalf of *other* clients not represented here, is unduly burdensome, and Epic seeks a protective order limiting the scope of Request No. 3 pursuant to Federal Rule of Civil Procedure 26(c)(1)(D) and/or (G).[4] Good cause exists to limit the scope of Request No. 3 for the reasons enumerated below.

Only two of Epic's experts, Drs. Evans and Athey, possess materials that potentially are responsive to this Request. Dr. Evans was disclosed to Apple on September 4, 2020, and Dr. Athey was disclosed to Apple on February 16, 2021, and yet Apple waited to serve its subpoenas until March 19, 2021, demanding a response within seven days.

Nevertheless, in good faith and after working with the experts to investigate what responsive materials, if any, exist, Epic informed Apple in its April 4, 2021 letter that it, on behalf of the experts, will endeavor to produce by April 9, 2021 responsive, non-privileged materials that the experts have in their possession, custody or control and that are not subject to confidentiality obligations to any third party, subject to and without waiving Epic's and the experts' objections. Epic is in the process of collecting and preparing those productions.

Request No. 3 of Apple's subpoenas calls for the production of materials that belong to third parties and that are subject to confidentiality obligations to those third parties that neither Epic nor the experts have the ability to waive. In some cases, the very identity of the experts' client

---

[4] Pursuant to Rule 26(c)(1), the parties met and conferred on April 6, 2021 in an effort to resolve this dispute.

and the very fact of the experts' retention by them may itself be confidential.  Disclosure of this information, as well as the commercially sensitive business information these materials may contain, would be prejudicial not only to the experts, but to their clients, which are not parties to this litigation.

Requiring experts to notify each affected third party and resolve those confidentiality issues is unduly burdensome, especially considering that these materials are very likely to be duplicative of publicly available materials Apple already has access to.  Dr. Evans's and Dr. Athey's views on the issues in the case are known to Apple because these experts publish frequently and their positions on relevant issues are memorialized in publicly available documents, many of which are listed in the experts' CVs that were disclosed to Apple along with their opening reports.  Apple has not shown any pressing need for these documents; instead, it engages in a fishing expedition, chasing documents it knows nothing about, which were prepared confidentially for third-party clients.  Indeed, under the definitions set forth in the subpoenas, the mere mention of any "app marketplace", of the "distribution" or "review" of apps, or of "mobile payments" would be sufficient to bring a document within the scope of the subpoenas.  (*See* Ex. A, D.)  Epic respectfully requests that the Court decline to allow Apple to go on a fishing expedition through third-party confidential information and that the Court limit the scope of Request No. 3 to the materials Epic has committed to produce in its April 4, 2021 letter.  (Ex. N.)

| | |
|---|---|
| Dated: April 7, 2021 | FAEGRE DRINKER BIDDLE & REATH LLP<br>   Paul J. Riehle<br><br>CRAVATH, SWAINE & MOORE LLP<br>   Christine Varney<br>   Katherine B. Forrest<br>   Gary A. Bornstein<br>   Yonatan Even<br>   Lauren A. Moskowitz<br>   M. Brent Byars<br><br>Respectfully submitted,<br><br>By:      */s/ Lauren A. Moskowitz*<br>            Lauren A. Moskowitz<br>            *Attorneys for Plaintiff Epic Games, Inc.* |
| Dated: April 7, 2021 | GIBSON, DUNN & CRUTCHER LLP<br>   Theodore J. Boutrous Jr.<br>   Richard J. Doren<br>   Daniel G. Swanson<br>   Mark A. Perry<br>   Veronica S. Lewis<br>   Cynthia E. Richman<br>   Jay P. Srinivasan<br>   Ethan D. Dettmer<br>   Eli M. Lazarus<br><br>Respectfully submitted,<br><br>By:      */s/ Jay P. Srinivasan*<br>            Jay P. Srinivasan<br>            *Attorneys for Defendant Apple Inc.* |

## E-FILING ATTESTATION

I, Jay P. Srinivasan, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Jay P. Srinivasan*
Jay P. Srinivasan
