UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EPIC GAMES, INC.,

    Plaintiff and Counter-defendant,

    v.

APPLE INC.,

    Defendant and Counterclaimant.

Case No. 20-cv-05640-YGR (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 403

    The parties have filed a joint discovery letter brief on two issues concerning expert discovery. *See* ECF No. 403. The Court held a hearing on April 9, 2021, and this order follows.

**A.     Michael Cragg's Testimony**

    Apple's subpoena to Cragg requested the documents, data, and communications he relied on in forming the opinions in his reports. ECF No. 403-3 (RFPs 1 and 2). The expert discovery order in 19-3770 also requires him to produce those (19-3770 ECF No. 87 ¶ 2), and it applies in this action by virtue of paragraph 7 of the Discovery Coordination Order. 19-3770 ECF No. 80 ¶ 7 ("Any cases that are subsequently related to the Related App Store Actions are to be bound by these protocols governing the coordination of discovery, as well as the stipulations regarding ESI and expert discovery.").

    Cragg's rebuttal report states in paragraph 37: "Professor Hitt's analysis fails to control for any variables that may be affecting game play or revenue, as is common practice in economics. *I perform a corrected analysis* to identify the substitution and complementarity across devices. *This analysis examines* consumers' playtime *and expenditures* when they acquire another device,

properly controlling for other potentially confounding variables." ECF No. 403-9 (emphasis added). In his deposition Cragg testified:

> Q. You say, at the end here, that short paragraph, that your "analysis examines consumers' playtime and expenditures when they acquire another device, properly controlling for other potentially confounding variables."
> Do you see that?
> A. Yes.
> Q. Did you run any regression that you reported on consumers' expenditures?
> A. I have not presented those, no.
> Q. So you ran the regressions. You refer to them here, but you didn't produce them; is that correct?
> A. I haven't produced them in this report.

ECF No. 403-10.

Apple immediately requested those regressions. The following day Epic served an errata to Cragg's rebuttal report that removed the words "and expenditures" from paragraph 37. Apple now moves to compel production of the regressions Cragg ran on consumer expenditures. Epic says they don't exist, arguing that this was an error in the rebuttal report and that the witness misspoke during his deposition after Apple put words in his mouth. Apple alternatively asks to reopen the deposition to ask Cragg about his prior testimony concerning the regressions on consumer' expenditures.

The Court grants Apple's alternative request. If Epic is correct that Cragg did not run any regressions on consumers' expenditures, then his testimony certainly came out wrong. It would have been ideal if the defending attorney had noticed this mistake in real time, but that would have required an instantaneous recognition of the error because these were the last questions Apple asked in the deposition. Ordinarily, the way to make any changes "in form or substance" to deposition testimony is through a statement of changes. Fed. R. Civ. Proc. 30(e)(1)(B). However, the real issue is whether Cragg ran regressions on consumers' expenditures that he hasn't turned

2

over to Apple.  His rebuttal report says he did, and his testimony under oath makes it sound like he did.  The Court dislikes Epic's suggestion that it can walk this back through errata written by its attorneys.  Cragg needs to clear this up himself.

The Court orders that Apple may redepose Cragg concerning whether he ran regressions of consumer expenditures, his prior testimony on that subject, and the errata to paragraph 37 of his rebuttal report.  The deposition shall last no longer than 30 minutes.

**B.    Presentations and Reports**

Apple's third RFP to all of Epic's experts asked for:

> All DOCUMENTS constituting or reflecting any presentations, REPORTS, lectures, speeches, talks, or COMMUNICATIONS YOU have given, performed, delivered, transmitted, or prepared for delivery to any governmental agency, regulatory body, legislative body (such as either house of the U.S. Congress, any U.S. state legislature, or the legislature of any other country or political subdivision thereof) or any committee or subcommittee or member thereof, industry group (such as the "Coalition for App Fairness") or any member thereof, or directors or executives or other employees of any corporation or business (such as Rakuten, Inc. or Kobo, Inc.) CONCERNING any of the following subject matters:
> 
> a. Apple Inc. or Epic Games, Inc. or any affiliates thereof;
> 
> b. the LAWSUIT;
> 
> c. the APP STORE and/or any other APP MARKETPLACE;
> 
> d. the distribution of APPS and/or IN-APP PRODUCTS;
> 
> e. the REVIEW of APPS and/or IN-APP PRODUCTS;
> 
> f. mobile payment or payment processing systems; and/or
> 
> g. MIDDLEWARE.

Epic says that only two of its experts (Evans and Ashley) possess any potentially responsive materials.  Epic offers to produce any responsive, non-privileged materials those experts have in their possession, custody or control and that are not subject to confidentiality obligations to any third party.  With respect to confidentiality, Epic says that in some cases the

identity of the experts' client and the very fact of the experts' retention may itself be confidential. Epic also says that responsive materials may contain the commercially sensitive business information of non-parties. For its part, Apple states that it is amenable to narrowly tailored redactions of produced materials to conceal client identities.

The Court finds that documents responsive to this RFP may be relevant impeachment evidence. In terms of proportionality, the Court quashes that portion of the RFP that concerns "documents . . . reflecting any" and "communications" because those could refer to emails, and every email these experts have sent on the listed subjects is disproportional. Instead, the Court narrows the RFP to presentations, reports, lectures, speeches, and talks – that is, more formalized documents that resemble expert opinions.

Further, at the April 9, 2021 hearing, Epic was unable to make any representations about how many responsive materials the experts may have. This hinders the Court's proportionality analysis, and the party claiming burden does have the obligation to substantiate that claim. The Court's view is that if there are just a few responsive materials, the experts should produce them. If there are a lot of responsive materials, the experts should describe them to Apple (for example, five presentations to antitrust regulators, 150 expert reports in litigation, and 25 private non-litigation engagements), and Apple should request the key ones and leave the rest (presumably, Apple would want the five presentations to antitrust regulators). The parties are busy preparing for trial, and the expert depositions have already happened, so the search for impeachment evidence should be narrow and focused. The problem is that Epic has presented this dispute as a black box, providing neither Apple nor the Court any indication of the volume of responsive materials. If the volume of responsive materials is in fact substantial, then the Court orders Epic or the experts to describe the responsive materials to Apple in a way that lets Apple make a meaningful decision about the key documents it wants and to let go of the rest. Epic may simultaneously move for leave under Civil Local Rule 7-9. The Court does not want the experts to produce hundreds of presentations on the eve of trial – that's not worth the effort. But there was no meaningful meet and confer before this dispute came to the Court. The Court's hope is that now that Epic and the experts have learned that their bright line refusal to produce literally

anything that is confidential in response to this RFP has not prevailed, there can now be a meaningful meet and confer that will resolve this dispute.

As to confidentiality, Epic's argument overreaches because presumably every report for a client, including all expert reports prepared for litigation, is confidential to the client. There is a protective order in this case, and the Court has ordered non-parties to produce confidential materials, so the mere status of responsive materials as confidential to a non-party is not the showstopper that Epic argues. If the identity of the client or the fact of retention is itself part of what is confidential, the experts can redact client-identifying information.

As to procedure, with respect to non-party confidential information that may be in the experts' responsive materials, the Court orders the experts to follow the procedure in paragraph 10 of the protective order (ECF No. 112) and to provide the non-party with this order as well. To address a potential ambiguity in paragraph 10(c) of the protective order, the only way a non-party can stop the experts from producing responsive materials to Apple is to file a motion for a protective order in this Court within 14 days of receiving notice; an objection will not suffice. If no such motion is filed within 14 days, the experts shall produce the responsive materials to Apple. A non-party that wishes to avoid motion practice is also free to propose redactions to Apple. Since Apple is interested in the experts' opinions and not in the non-party's business, it may be relatively straightforward to come up with redactions that satisfy both the non-party and Apple.

Accordingly, Apple's motion to compel is granted, as described above.

**IT IS SO ORDERED.**

Dated: April 9, 2021

THOMAS S. HIXSON
United States Magistrate Judge