THEODORE J. BOUTROUS JR., SBN 132099
 tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
 rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
 dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
 jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213.229.7000
Facsimile:     213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092;
appearance *pro hac vice*)
 vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone:    214.698.3100
Facsimile:     214.571.2900

MARK A. PERRY, SBN 212532
 mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
 crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile:   202.467.0539

ETHAN D. DETTMER, SBN 196046
 edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
 elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:   415.393.8306

Attorneys for Defendant, APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>              Plaintiff, Counter-defendant,<br><br>              v.<br><br>APPLE INC.,<br><br>              Defendant, Counterclaimant. | CASE No. 4:20-cv-05640-YGR-TSH<br><br>**DECLARATION OF JAY P. SRINIVASAN IN SUPPORT OF APPLE INC.'S MOTION FOR PRE-TRIAL SANCTIONS**<br><br>The Honorable Yvonne Gonzalez Rogers |

1    Pursuant to Civil Local Rule 79-5, I, Jay P. Srinivasan, hereby declare as follows:

2        1.        I am an attorney licensed to practice in the State of California, and a member of the

3    Bar of this Court.  I am a partner at the law firm Gibson, Dunn & Crutcher LLP, counsel of record for

4    Defendant Apple Inc. ("Apple") in this case.

5        2.        I submit this declaration in support of Apple Inc.'s Motion for Pre-Trial Sanctions

6    Against Epic Games, Inc.  The contents of this declaration are based on my personal knowledge.  If

7    called as a witness, I could and would testify competently thereto.

8        3.        A true and correct copy of Epic's October 12, 2020 initial disclosures is attached

9    hereto as Exhibit A.

10       4.        A true and correct copy of Epic's January 13, 2021 amended Rule 26(a) disclosures is

11   attached hereto as Exhibit B.

12       5.        A true and correct copy of Epic's March 12, 2021 Tentative Initial Witness List is

13   attached hereto as Exhibit C.

14       6.        A true and correct copy of Apple's March 13, 2021 Subpoena to Produce Documents,

15   Information, or Objects directed to Neuro-Fin Inc. d/b/a SmartStops is attached hereto as Exhibit D.

16       7.        A true and correct copy of Apple's March 25, 2021 Subpoena to Produce Documents,

17   Information, or Objects directed to Shelley Gould is attached hereto as Exhibit E.

18       8.        A true and correct copy of March 30, 2021 correspondence from Karl Huth of Huth

19   Reynolds LLP to Henry Cornillie of Gibson, Dunn & Crutcher LLP is attached hereto as Exhibit F.

20       I declare under penalty of perjury under the laws of the United States that the foregoing is true

21   and correct and that this declaration was executed on April 9, 2021, at Altadena, California.

22   Dated: April 9, 2021

23                                        GIBSON, DUNN & CRUTCHER LLP

24

25                                        By:    */s/ Jay P. Srinivasan*
26                                                Jay P. Srinivasan

27                                        Attorneys for Defendant Apple Inc.

28

1
DECLARATION OF JAY P. SRINIVASAN IN SUPPORT OF APPLE'S MOTION FOR PRE-TRIAL SANCTIONS
4:20-cv-05640-YGR-TSH

**FILER'S ATTESTATION**

I, Karen Hoffman Lent, am the ECF User whose ID and password are being used to file this Declaration of Jay P. Srinivasan in Support of Apple Inc.'s Motion for Pre-Trial Sanctions Against Epic.  In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from the signatory.

By:        */s/Karen Hoffman Lent*

Karen Hoffman Lent

Gibson, Dunn & Crutcher LLP

DECLARATION OF JAY P. SRINIVASAN IN SUPPORT OF APPLE'S MOTION FOR PRE-TRIAL SANCTIONS
4:20-CV-05640-YGR-TSH

# EXHIBIT A

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 4:20-cv-05640-YGR<br><br>**PLAINTIFF/COUNTER-DEFENDANT EPIC GAMES, INC.'S RULE 26(a)(1) INITIAL DISCLOSURES** |
| APPLE INC.,<br><br>Counterclaimant,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>Counter-defendant. | |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant Epic Games, Inc. ("Epic") submits the following initial disclosures (the "Disclosures") to Defendant/Counterclaimant Apple Inc. ("Apple").  Epic makes these Disclosures based solely on information reasonably available to it as of the date hereof and reserves the right to amend or supplement these Disclosures.  Epic also makes these Disclosures subject to, and without waiver of, (a) attorney-client or work product privilege, (b) any other applicable privileges or immunities, or (c) Epic's position as to the proper sequencing of discovery and trial.

## I.      INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Based on Epic's investigation thus far, Epic discloses pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i) that it presently believes the following people employed by or affiliated with Epic, who may be contacted through Lauren Moskowitz, Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019, (212) 474-1648, are likely to have discoverable information on the subjects identified that Epic may use to support its claims or defenses:

1.      Steve Allison, General Manager – Store:  Epic Games Store (business).

2.      Jeremy Alpert, Producer:  parental controls process.

3.      Wen-Jen Chang, Senior Producer:  Epic's ecommerce platform.

4.      Andrew Grant, Technical Director:  iOS, macOS, and Android engineering; App Store review process; Epic's membership in the Apple Developer Program; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

5.      David Nikdel, Online Gameplay Systems – Lead:  the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

6.      Nick Penwarden, Vice President of Engineering:  *Unreal Engine*; iOS, macOS, and Android engineering.

7.      Ryan Reed, UI Programmer:  parental controls (technical).

8.      Stephanie Reimann, Senior Producer:  Epic Games Store purchase controls.

9.      Brittany Ritter, Ecommerce Product Support Specialist:  Epic's ecommerce platform; player support and customer service.

10.     Justin Sargent, Engineering Director:  Epic Games Store (technical).

11.    Alec Shobin, Marketing Manager:  day-to-day interactions with Apple; App Store policies and practices; Epic's membership in the Apple Developer Program; App Store review process; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

12.    Hans Stolfus, Global Partnerships Lead, Mobile:  Android app distribution; day-to-day interactions with Google; Google policies and practices; Epic's partnerships with original equipment manufacturers ("OEMs") and cellular carriers.

13.    Adam Sussman, President:  mobile strategy and business development; business discussions with Apple and Google.

14.    Tim Sweeney, Chief Executive Officer:  Epic's history and business; mobile strategy and business development; business discussions with Apple and Google; App Store policies and practices; Google policies and practices; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

15.    Daniel Vogel, Chief Operating Officer:  mobile strategy and business development; iOS, macOS, and Android engineering; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

16.    Matt Weissinger, Head of Marketing:  mobile strategy and business development; business discussions with Apple; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

17.    Miriam Ximil-Montes, Player Support Agent:  player support and customer service.

18.    Ed Zobrist, Head of Publishing:  mobile strategy and business development; business discussions with Google; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

Epic also believes the following former Epic employee, who may be contacted through Lauren Moskowitz, Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019, (212) 474-1648, is likely to have discoverable information on the subjects identified that Epic may use to support its claims or defenses:

1.    Haseeb Malik, Marketing Director:  day-to-day interactions with Apple and Google; App Store policies and practices; Google policies and practices.

PLAINTIFF/COUNTER-DEFENDANT
EPIC GAMES, INC.'S RULE 26(a)(1)          2          Case No. 4:20-cv-05640-YGR
INITIAL DISCLOSURES

Based on Epic's investigation so far, Epic also believes that the following individuals are likely to have discoverable information that Epic may use to support its claims or defenses:

1.   Dale Bagwell, Apple, Data Manager 2:  App Store policies and practices; Apple's removal of iOS developers' apps from the App Store; iOS security and privacy features.

2.   Tim Cook, Apple, Chief Executive Officer:  competition that Apple faces from other mobile devices and mobile operating system software; current and historical App Store policies and practices; business discussions with Epic concerning App Store policies; Apple's agreements with other iOS developers.

3.   Eddy Cue, Apple, Senior Vice President, Internet Software and Services:  competition that Apple faces from other mobile devices and mobile operating system software; App Store business strategy; current and historical App Store policies and practices.

4.   Craig Federighi, Apple, Senior Vice President, Software Engineering:  iOS and macOS engineering; business discussions with Epic concerning App Store policies.

5.   Matt Fischer, Apple, Vice President, App Store:  App Store business strategy; App Store financial performance; App Store policies and practices; Apple's agreements with other iOS developers.

6.   Scott Forstall, former Apple Senior Vice President, iOS Software:  iOS and macOS engineering; iOS security and privacy features; historical App Store policies and practices; Apple's in-app purchasing  function ("IAP").

7.   Eric Gray, Apple, Director, Commerce & Payments:  App Store business strategy; App Store financial performance; App Store policies and practices; Apple IAP.

8.   Mark Grimm, Apple, Game Developer Manager, App Store:  Apple's agreements with other iOS developers; day-to-day interactions with Epic.

9.   Adam Hammer, Apple, Threat Intelligence Manager 2:  App Store security; Apple's removal of iOS developers' apps from the App Store; iOS security and privacy features.

10.  C.K. Haun, Apple, Senior Director, Developer Technical Services:  App Store business strategy; App Store policies and practices; services provided to iOS developers.

11. Trystan Kosmynka, Apple, Marketing Senior Director:  App Store policies and practices; iOS and macOS engineering; iOS security and privacy features.

12. Spiro Kouretas, Apple, Senior Business Development Manager, Games:  day-to-day interactions with Epic.

13. Luke Micono, Apple, Games Business Development Manager:  day-to-day interactions with Epic.

14. Ron Okamoto, Apple, Vice President, Worldwide Developer Relations:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

15. Carson Oliver, Apple, Director of Business Management, App Store:  App Store business strategy; App Store policies and practices; services provided to iOS developers.

16. Robert Partington, Apple, Senior Partnership Manager, Worldwide Developer Relations:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

17. Shaan Pruden, Apple, Senior Director of Partnership Management and Worldwide Developer Relations:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

18. Phil Schiller, Apple, Apple Fellow:  competition that Apple faces from other mobile devices and mobile operating system software; App Store business strategy; App Store policies and practices; business discussions with Epic concerning App Store policies; Apple's agreements with other iOS developers.

19. Mike Schmid, Apple, Head of Games Business Development, App Store:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

20. Phillip Shoemaker, former Apple Senior Director, App Store Review:  historical App Store policies and practices.

21.     Current and former Apple employees who are custodians in *Cameron et al. v. Apple Inc.*, No. 19-cv-03074-YGR (N.D. Cal.), or *In re Apple iPhone Antitrust Litigation*, No. 11-cv-06714-YGR (N.D. Cal.).

22.     Current and former Apple employees not otherwise identified above who are knowledgeable about competition that Apple faces from other mobile devices and mobile operating system software; contractual and technical restrictions on app distribution built into the iOS operating system; Apple's historical and current policies and pricing for the App Store and IAP; the App Store review process for iOS apps submitted by developers; Apple's business relationship with Epic; Apple's App Store business strategy and agreements with other iOS developers.

23.     Third-party developers of iOS-compatible apps who have participated in the Apple Developer Program to distribute their apps to iOS users.

24.     Third-party distributors of software, including other OEMs and video game console makers that operate their own app stores.

25.     Kevin Gammill, Microsoft Corp., General Manager, Gaming Developer Experiences (who may be contacted through his employer, Microsoft Corp., One Microsoft Way, Redmond, Washington, 98052):  third-party developers' reliance on *Unreal Engine*.

26.     Third-party developers who rely on Epic's *Unreal Engine*.

27.     Individuals identified in Apple's initial disclosures not otherwise identified above.

## II.     DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND TANGIBLE THINGS

Based on Epic's investigation thus far, Epic discloses pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii) that it presently believes it may use the following categories of documents, electronically stored information ("ESI") or tangible things to support its claims or defenses:

1.     Documents and ESI concerning any competition Apple faces from other mobile devices, mobile operating system software, software distributors, or payment processing providers.

2.     Documents and ESI concerning Apple's App Store business strategy and financial performance.

3.     Documents and ESI concerning Apple's technical and contractual restrictions on the distribution of iOS apps.

4.     Documents and ESI concerning Apple's decision to restrict or not restrict distribution, payment processing, and in-app purchasing options for iOS apps.

5.     Documents and ESI concerning Apple's App Store policies and practices.

6.     Documents and ESI concerning Apple IAP.

7.     Documents and ESI concerning any attempts by other iOS developers to include payment processing or in-app purchasing options other than those required by Apple.

8.     Documents and ESI concerning Apple's agreements with other iOS developers.

9.     Documents and ESI concerning iOS security and privacy features.

10.    Documents and ESI concerning Apple's rejection or removal of iOS developers' apps from the App Store.

11.    Documents and ESI concerning Epic's business relationship with Apple.

12.    Documents and ESI concerning Epic's development of apps for iOS devices, including *Fortnite.*

13.    Documents and ESI concerning Epic's communications with Apple regarding the distribution of Epic's iOS apps.

14.    Documents and ESI concerning customer services issues related to Epic's iOS apps.

15.    Documents and ESI concerning Epic's ecommerce platform and in-app purchasing function.

16.    Documents and ESI concerning the Epic Games Store business.

17.    Documents and ESI concerning Epic's interest in offering a competing store for iOS apps.

18.    Documents and ESI concerning Apple's retaliation against Epic for offering consumers a choice of payment options.

19.     Documents and ESI concerning third-party developers' participation in the Apple Developer Program.

20.     Documents and ESI concerning the business of third-party distributors of software.

21.     Documents and ESI concerning *Unreal Engine*.

To the extent these materials are located in Epic's possession, custody or control, they are located on Epic's central servers, network drives and in other electronic repositories as well as on Epic's employees' computers, external drives and mobile devices and in paper form in the offices of Epic employees.  Epic may also use (a) documents and ESI produced by Epic in response to document requests served by Apple; (b) documents and ESI produced by Apple in response to document requests served by Epic; and (c) documents and ESI produced by third parties in response to subpoenas.

This disclosure does not waive any privilege or protection that may apply to documents within the foregoing categories, and Epic expressly preserves all objections to the discoverability or admissibility of any specific document or category of documents.

## III.   COMPUTATION OF DAMAGES

Epic has not asserted any claim for damages and, therefore, Federal Rule of Civil Procedure 26(a)(1)(A)(iii) is not applicable.

## IV.   INSURANCE AGREEMENT

Epic discloses pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iv) that it has no insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy a judgment in this action.

## V.   CERTIFICATION

Pursuant to Rule 26(g)(1) of the Federal Rules of Civil Procedure, the undersigned certifies that to the best of her knowledge, information and belief, formed after an inquiry that is reasonable under the circumstances, the foregoing disclosure is complete and correct as of the time it is made.

1    DATED:  October 12, 2020          By      */s/* Lauren A. Moskowitz

2                                               **FAEGRE DRINKER BIDDLE & REATH LLP**
3                                               Paul J. Riehle (SBN 115199)
                                                paul.riehle@faegredrinker.com
4
                                                Four Embarcadero Center
5                                               San Francisco, California 94111
                                                Telephone: (415) 591-7500
6                                               Facsimile: (415) 591-7510

7                                               **CRAVATH, SWAINE & MOORE LLP**
8                                               Christine A. Varney (*pro hac vice*)
                                                cvarney@cravath.com
9                                               Katherine B. Forrest (*pro hac vice*)
                                                kforrest@cravath.com
10                                              Gary A. Bornstein (*pro hac vice*)
                                                gbornstein@cravath.com
11                                              Yonatan Even (*pro hac vice*)
                                                yeven@cravath.com
12                                              Lauren A. Moskowitz (*pro hac vice*)
                                                lmoskowitz@cravath.com
13                                              M. Brent Byars (*pro hac vice*)
                                                mbyars@cravath.com
14
15                                              825 Eighth Avenue
16                                              New York, New York 10019
                                                Telephone: (212) 474-1000
17                                              Facsimile: (212) 474-3700

18                                              *Attorneys for Epic Games, Inc.*

19
20
21
22
23
24
25
26
27
28

PLAINTIFF/COUNTER-DEFENDANT
EPIC GAMES, INC.'S RULE 26(a)(1)              8              Case No. 4:20-cv-05640-YGR
INITIAL DISCLOSURES

1

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2020, I served true and correct copies of Plaintiff/Counter-Defendant Epic Games, Inc.'s Rule 26(a)(1) Initial Disclosures via electronic mail, pursuant to an agreement among the parties for electronic service, to the following counsel of record in this action and the related actions:

Theodore J. Boutrous Jr.
Richard J. Doren
Daniel G. Swanson
Mark A. Perry
Veronica S. Lewis
Cynthia E. Richman
Jay P. Srinivasan
Ethan D. Dettmer
Eli M. Lazarus
Harry Phillips
GIBSON, DUNN & CRUTCHER LLP
tboutrous@gibsondunn.com
rdoren@gibsondunn.com
dswanson@gibsondunn.com
mperry@gibsondunn.com
vlewis@gibsondunn.com
crichman@gibsondunn.com
jsrinivasan@gibsondunn.com
edettmer@gibsondunn.com
elazarus@gibsondunn.com
hphillips2@gibsondunn.com

William F. Stute
E. Joshua Rosenkranz
ORRICK, HERRINGTON & SUTCLIFFE LLP
wstute@orrick.com
jrosenkranz@orrick.com

*Attorneys for Apple Inc.*

Steve W. Berman
Robert F. Lopez
Shana E. Scarlett
Benjamin J. Siegel
HAGENS BERMAN SOBOL SHAPIRO LLP
steve@hbsslaw.com
robl@hbsslaw.com
shanas@hbsslaw.com
bens@hbsslaw.com

*Interim Class Counsel for the Developer Plaintiffs*

Mark C. Rifkin
Rachele R. Byrd
Matthew M. Guiney
Brittany N. DeJong
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
rifkin@whafh.com
byrd@whafh.com
guiney@whafh.com
dejong@whafh.com

*Interim Class Counsel for the Consumer Plaintiffs*

I certify under penalty of perjury that the foregoing is true and correct.  Executed on October 12, 2020, at Brooklyn, New York.

/s/ Brendan R. Blake
Brendan R. Blake

PLAINTIFF/COUNTER-DEFENDANT
EPIC GAMES, INC.'S RULE 26(a)(1)
INITIAL DISCLOSURES

9

Case No. 4:20-cv-05640-YGR

# EXHIBIT B

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE &**
**REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 4:20-cv-05640-YGR-TSH <br><br> **PLAINTIFF/COUNTER-DEFENDANT EPIC GAMES, INC.'S AMENDED RULE 26(a)(1) INITIAL DISCLOSURES** |
| APPLE INC., <br><br> Counterclaimant, <br><br> v. <br><br> EPIC GAMES, INC., <br><br> Counter-defendant. | |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant Epic Games, Inc. ("Epic") submits the following initial disclosures (the "Disclosures") to Defendant/Counterclaimant Apple Inc. ("Apple").  Epic makes these Disclosures based solely on information reasonably available to it as of the date hereof and reserves the right to amend or supplement these Disclosures.  Epic also makes these Disclosures subject to, and without waiver of, (a) attorney-client or work product privilege, (b) any other applicable privileges or immunities, or (c) Epic's position as to the proper sequencing of discovery and trial.

## I.      INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Based on Epic's investigation thus far, Epic discloses pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i) that it presently believes the following people employed by or affiliated with Epic, who may be contacted through Lauren Moskowitz, Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019, (212) 474-1648, are likely to have discoverable information on the subjects identified that Epic may use to support its claims or defenses:

1.      Steve Allison, General Manager – Store:  Epic Games Store (business).

2.      Jeremy Albert, Producer:  parental controls process.

3.      Arjan Brussee, Project Lead on *Fortnite* Mobile and Switch:  Mobile strategy and business development; business discussions with Apple and Google.

4.      Wen-Jen Chang, Senior Producer:  Epic's ecommerce platform.

5.      Andrew Grant, Technical Director:  iOS, macOS, and Android engineering; App Store review process; Epic's membership in the Apple Developer Program; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

6.      Thomas Ko, Head of Business and Online Strategy for Online Services:  Epic Online Services; Epic's ecommerce platform; Epic's partnerships with original equipment manufacturers ("OEMs") and cellular carriers.

7.      Joseph Kreiner, Vice President of Business Development:  Epic Games Store (business); business relationships with console partners.

8.      David Nikdel, Online Gameplay Systems – Lead:  the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

9.      Ray Park, Territory Manager/Representative Director, Epic Games Korea:  Game publishing and business discussions with OEMs.

10.     Nick Penwarden, Vice President of Engineering:  *Unreal Engine*; iOS, macOS, and Android engineering.

11.     Ryan Reed, UI Programmer:  parental controls (technical).

12.     Stephanie Reimann, Senior Producer:  Epic Games Store purchase controls.

13.     Mark Rein, Vice President:  Mobile strategy and business development; business discussions with Apple.

14.     Brittany Ritter, Ecommerce Product Support Specialist:  Epic's ecommerce platform; player support and customer service.

15.     Justin Sargent, Engineering Director:  Epic Games Store (technical).

16.     Alec Shobin, Marketing Manager:  day-to-day interactions with Apple; App Store policies and practices; Epic's membership in the Apple Developer Program; App Store review process; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

17.     Hans Stolfus, Global Partnerships Lead, Mobile:  Android app distribution; day-to-day interactions with Google; Google policies and practices; Epic's partnerships with OEMs and cellular carriers.

18.     Adam Sussman, President:  mobile strategy and business development; business discussions with Apple and Google.

19.     Tim Sweeney, Chief Executive Officer:  Epic's history and business; mobile strategy and business development; business discussions with Apple and Google; App Store policies and practices; Google policies and practices; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

20.     Daniel Vogel, Chief Operating Officer:  mobile strategy and business development; iOS, macOS, and Android engineering; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

21.     Matt Weissinger, Head of Marketing:  mobile strategy and business development; business discussions with Apple; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

22.     Miriam Ximil-Montes, Player Support Agent:  player support and customer service.

23.     Ed Zobrist, Head of Publishing:  mobile strategy and business development; business discussions with Google; the August 13, 2020 hotfix to Version 13.40 of *Fortnite* on iOS.

Epic also believes the following former Epic employees, who may be contacted through Lauren Moskowitz, Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019, (212) 474-1648, are likely to have discoverable information on the subjects identified that Epic may use to support its claims or defenses:

1.     Joseph Babcock, Chief Financial Officer:  Epic's financial performance; mobile strategy and business development.

2.     Marc Hutcheson, Marketing Director:  day-to-day interactions with Apple and Google; App Store policies and practices; Google policies and practices.

3.     Haseeb Malik, Marketing Director:  day-to-day interactions with Apple and Google; App Store policies and practices; Google policies and practices.

Based on Epic's investigation so far, Epic also believes that the following individuals are likely to have discoverable information that Epic may use to support its claims or defenses:

1.     Dale Bagwell, Apple, Data Manager 2:  App Store policies and practices; Apple's removal of iOS developers' apps from the App Store; iOS security and privacy features.

2.     Mary Brunson, Apple, Marketing Manager:  App Store policies and practices; Apple's removal of iOS developers' apps from the App Store.

3.     Tim Cook, Apple, Chief Executive Officer:  competition that Apple faces from other mobile devices and mobile operating system software; current and historical App Store policies and practices; business discussions with Epic concerning App Store policies; Apple's agreements with other iOS developers.

4.      Eddy Cue, Apple, Senior Vice President, Internet Software and Services:  competition that Apple faces from other mobile devices and mobile operating system software; App Store business strategy; current and historical App Store policies and practices.

5.      Craig Federighi, Apple, Senior Vice President, Software Engineering:  iOS and macOS engineering; business discussions with Epic concerning App Store policies.

6.      Matt Fischer, Apple, Vice President, App Store:  App Store business strategy; App Store financial performance; App Store policies and practices; Apple's agreements with other iOS developers.

7.      Scott Forstall, former Apple Senior Vice President, iOS Software:  iOS and macOS engineering; iOS security and privacy features; historical App Store policies and practices; Apple's in-app purchasing function ("IAP").

8.      Eric Friedman, Apple, Senior Engineering Leader:  iOS security and privacy features; iOS engineering.

9.      Eric Gray, Apple, Director, Commerce & Payments:  App Store business strategy; App Store financial performance; App Store policies and practices; Apple IAP.

10.      Mark Grimm, Apple, Game Developer Manager, App Store:  Apple's agreements with other iOS developers; day-to-day interactions with Epic.

11.      Adam Hammer, Apple, Threat Intelligence Manager 2:  App Store security; Apple's removal of iOS developers' apps from the App Store; iOS security and privacy features.

12.      C.K. Haun, Apple, Senior Director, Developer Technical Services:  App Store business strategy; App Store policies and practices; services provided to iOS developers.

13.      Trystan Kosmynka, Apple, Marketing Senior Director:  App Store policies and practices; iOS and macOS engineering; iOS security and privacy features.

14.      Ron Okamoto, Apple, Vice President, Worldwide Developer Relations:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

15. Carson Oliver, Apple, Director of Business Management, App Store:  App Store business strategy; App Store policies and practices; services provided to iOS developers.

16. Robert Partington, Apple, Senior Partnership Manager, Worldwide Developer Relations:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

17. Shaan Pruden, Apple, Senior Director of Partnership Management and Worldwide Developer Relations:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

18. Phil Schiller, Apple, Apple Fellow:  competition that Apple faces from other mobile devices and mobile operating system software; App Store business strategy; App Store policies and practices; business discussions with Epic concerning App Store policies; Apple's agreements with other iOS developers.

19. Mike Schmid, Apple, Head of Games Business Development, App Store:  App Store business strategy; App Store policies and practices; Apple's agreements with other iOS developers.

20. Phillip Shoemaker, former Apple Senior Director, App Store Review:  historical App Store policies and practices.

21. Tanya Washburn, Apple, Director of Operations, App Store:  App Store business strategy; App Store historical and current policies and practices.

22. Current and former Apple employees who are custodians in this case, or in *Cameron et al. v. Apple Inc.*, No. 19-cv-03074-YGR-TSH (N.D. Cal.), or *In re Apple iPhone Antitrust Litigation*, No. 11-cv-06714-YGR-TSH (N.D. Cal.).

23. Current and former Apple employees not otherwise identified above who are knowledgeable about competition that Apple faces from other mobile devices and mobile operating system software; contractual and technical restrictions on app distribution built into the iOS operating system; Apple's historical and current policies and pricing for the App Store and IAP; the App Store review process for iOS apps

submitted by developers; Apple's business relationship with Epic; Apple's App Store business strategy and agreements with other iOS developers.

24.     Third-party developers of iOS-compatible apps who have participated in the Apple Developer Program to distribute their apps to iOS users, including Match Group, Inc., Spotify USA Inc., Basecamp, LLC, Scroll Labs Inc., Yoga Buddhi Co., and Neuro-Fin Inc. d/b/a SmartStops, and the employees of the foregoing.

25.     Third-party distributors of software, including other OEMs and video game console makers that operate their own app stores, including Alphabet Inc., Microsoft Corporation, Amazon.com, Inc., Facebook, Inc, and SaurikIT, LLC, and the employees of the foregoing.

26.     Kevin Gammill, Microsoft Corp., General Manager, Gaming Developer Experiences (who may be contacted through his employer, Microsoft Corp., One Microsoft Way, Redmond, Washington, 98052:  third-party developers' reliance on *Unreal Engine*.

27.     Third-party developers who rely on Epic's *Unreal Engine*.

28.     Third-party payment processors, including those that offer payment processing services to developers of iOS apps, including Adyen, Inc., CyberSource Corp., PayPal Holdings, Inc., Braintree, Square, Inc., and Stripe, Inc., and the employees of the foregoing.

29.     Third parties, and any of their employees, to which Epic, plaintiffs in related actions, and/or Apple has issued document and/or deposition subpoenas not otherwise identified above.

30.     Individuals identified in Apple's initial disclosures not otherwise identified above.

## II.     DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND TANGIBLE THINGS

Based on Epic's investigation thus far, Epic discloses pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii) that it presently believes it may use the following categories of documents, electronically stored information ("ESI") or tangible things to support its claims or defenses:

1.      Documents and ESI concerning any competition Apple faces from other mobile devices, mobile operating system software, software distributors, or payment processing providers.

2.      Documents and ESI concerning Apple's App Store business strategy and financial performance.

3.      Documents and ESI concerning Apple's technical and contractual restrictions on the distribution of iOS apps.

4.      Documents and ESI concerning Apple's decision to restrict or not restrict distribution, payment processing, and in-app purchasing options for iOS apps.

5.      Documents and ESI concerning Apple's App Store policies and practices.

6.      Documents and ESI concerning Apple IAP.

7.      Documents and ESI concerning Apple's intellectual property rights.

8.      Documents and ESI concerning any attempts by other iOS developers to include payment processing or in-app purchasing options other than those required by Apple.

9.      Documents and ESI concerning Apple's agreements with other iOS developers.

10.    Documents and ESI concerning iOS security and privacy features.

11.    Documents and ESI concerning Apple's rejection or removal of iOS developers' apps from the App Store.

12.    Documents and ESI concerning Epic's business relationship with Apple.

13.    Documents and ESI concerning Epic's development of apps for iOS devices, including *Fortnite*.

14.    Documents and ESI concerning Epic's communications with Apple regarding the distribution of Epic's iOS apps.

15.    Documents and ESI concerning customer services issues related to Epic's iOS apps.

16.    Documents and ESI concerning Epic's customer base.

17.    Documents and ESI concerning Epic's ecommerce platform and in-app purchasing function.

18.    Documents and ESI concerning the Epic Games Store business.

19. Documents and ESI concerning Epic's interest in offering a competing store for iOS apps.

20. Documents and ESI concerning Apple's retaliation against Epic for offering consumers a choice of payment options.

21. Documents and ESI concerning third-party developers' participation in the Apple Developer Program.

22. Documents and ESI concerning the business of third-party distributors of software.

23. Documents and ESI concerning *Unreal Engine*.

To the extent these materials are located in Epic's possession, custody or control, they are located on Epic's central servers, network drives and in other electronic repositories as well as on Epic's employees' computers, external drives and mobile devices and in paper form in the offices of Epic employees.  Epic may also use (a) documents and ESI produced by Epic in response to document requests served by Apple; (b) documents and ESI produced by Apple in response to document requests served by Epic or plaintiffs in related actions; and (c) documents and ESI produced by third parties in response to subpoenas.

This disclosure does not waive any privilege or protection that may apply to documents within the foregoing categories, and Epic expressly preserves all objections to the discoverability or admissibility of any specific document or category of documents.

## III.   COMPUTATION OF DAMAGES

Epic has not asserted any claim for damages and, therefore, Federal Rule of Civil Procedure 26(a)(1)(A)(iii) is not applicable.

## IV.   INSURANCE AGREEMENT

Epic discloses pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iv) that it has no insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy a judgment in this action.

# V.      CERTIFICATION

Pursuant to Rule 26(g)(1) of the Federal Rules of Civil Procedure, the undersigned certifies that to the best of her knowledge, information and belief, formed after an inquiry that is reasonable under the circumstances, the foregoing disclosure is complete and correct as of the time it is made.

DATED:  January 13, 2021   By      */s/ Lauren A. Moskowitz*

**FAEGRE DRINKER BIDDLE & REATH LLP**
Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**
Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Epic Games, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2021, I served true and correct copies of Plaintiff/Counter-Defendant Epic Games, Inc.'s Amended Rule 26(a)(1) Initial Disclosures via electronic mail, pursuant to an agreement among the parties for electronic service, to the following counsel of record in this action and the related actions:

| | |
|---|---|
| Theodore J. Boutrous Jr. | Steve W. Berman |
| Richard J. Doren | Robert F. Lopez |
| Daniel G. Swanson | Shana E. Scarlett |
| Mark A. Perry | Benjamin J. Siegel |
| Veronica S. Lewis | HAGENS BERMAN SOBOL SHAPIRO LLP |
| Cynthia E. Richman | steve@hbsslaw.com |
| Jay P. Srinivasan | robl@hbsslaw.com |
| Ethan D. Dettmer | shanas@hbsslaw.com |
| Eli M. Lazarus | bens@hbsslaw.com |
| Harry Phillips | |
| GIBSON, DUNN & CRUTCHER LLP | *Interim Class Counsel for the Developer Plaintiffs* |
| tboutrous@gibsondunn.com | |
| rdoren@gibsondunn.com | Mark C. Rifkin |
| dswanson@gibsondunn.com | Rachele R. Byrd |
| mperry@gibsondunn.com | Matthew M. Guiney |
| vlewis@gibsondunn.com | Brittany N. DeJong |
| crichman@gibsondunn.com | WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP |
| jsrinivasan@gibsondunn.com | |
| edettmer@gibsondunn.com | rifkin@whafh.com |
| elazarus@gibsondunn.com | byrd@whafh.com |
| hphillips2@gibsondunn.com | guiney@whafh.com |
| | dejong@whafh.com |
| William F. Stute | |
| E. Joshua Rosenkranz | *Interim Class Counsel for the Consumer Plaintiffs* |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | |
| wstute@orrick.com | |
| jrosenkranz@orrick.com | |

*Attorneys for Apple Inc.*

I certify under penalty of perjury that the foregoing is true and correct.  Executed on January 13, 2021, at New York, New York.

/s/ *John I. Karin*
John I. Karin

PLAINTIFF/COUNTER-DEFENDANT
EPIC GAMES, INC.'S AMENDED RULE
26(a)(1) INITIAL DISCLOSURES

10

Case No. 4:20-cv-05640-YGR-TSH

# EXHIBIT C

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
KATHERINE B. FORREST (*pro hac vice*)
kforrest@cravath.com
GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant
Epic Games, Inc.*

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR-TSH |
| Plaintiff, Counter-defendant, | **EPIC GAMES INC.'S TENTATIVE INITIAL WITNESS LIST** |
| v. | The Honorable Yvonne Gonzalez Rogers |
| APPLE INC., | Trial:  May 3, 2021 |
| Defendant, Counterclaimant. | |

Pursuant to Pretrial Order No. 1 (ECF No. 371) and the Court's Standing Order re:  Pretrial Instructions in Civil Cases, Plaintiff and Counter-Defendant Epic Games, Inc. ("Epic") serves its tentative, initial list of trial witnesses, other than for impeachment or rebuttal, reserving its rights to supplement or amend its list for good cause or in response to Apple Inc.'s ("Apple") witness list and other pre-trial disclosures.  Epic also reserves the right to substitute deposition designations for live testimony, and vice versa, including based on the availability or non-availability of any witness to appear at trial.  Pursuant to Pretrial Order No. 1, Apple shall serve on or before March 16, 2021, together with its tentative witness list, an annotated version of Epic's initial tentative list showing Apple's estimated time of cross-examination and whether any listed witnesses under its control will be testifying in person or will be requesting leave to testify remotely.

DATE:  March 12, 2021

**CRAVATH, SWAINE & MOORE LLP**

*/s/   Katherine B. Forrest*
Katherine B. Forrest

**FAEGRE DRINKER BIDDLE & REATH LLP**
PAUL J. RIEHLE (SBN 115199)
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510
paul.riehle@faegredrinker.com

**CRAVATH, SWAINE & MOORE LLP**
CHRISTINE A. VARNEY (*pro hac vice*)
KATHERINE B. FORREST (*pro hac vice*)
GARY A. BORNSTEIN (*pro hac vice*)
YONATAN EVEN (*pro hac vice*)
LAUREN A. MOSKOWITZ (*pro hac vice*)
M. BRENT BYARS (*pro hac vice*)
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
cvarney@cravath.com
kforrest@cravath.com
gbornstein@cravath.com
yeven@cravath.com
lmoskowitz@cravath.com
mbyars@cravath.com

*Attorneys for Plaintiff and Counter-defendant*
*Epic Games, Inc.*

**Fact Witnesses**

| Witness | Epic's Brief Statement of Substance of Testimony | Estimated Length of Direct Examination | Estimated Length of Cross-Examination | Estimated Length of Re-Direct Examination | Appearance |
|---|---|---|---|---|---|
| | | Epic Witnesses | | | |
| Andrew Grant, Engineering Fellow* | Epic's membership in the Apple Developer Program; engineering and development of Epic's products for various platforms; Epic Direct Payment on iOS | 1 hour | | | Live, in person |
| Thomas Ko, Senior Director, Head of Online Business Strategy and Operations | Epic's payment processing services; Apple's payment processing services; Epic Direct Payment on iOS | 30 minutes | | | Live, in person |
| (* Primary witness and not included as precautionary) | | | | | |

EPIC GAMES, INC.'S TENTATIVE INITIAL WITNESS LIST
Case No. 4:20-cv-05640-YGR-TSH

| **Witness** | **Epic's Brief Statement of Substance of Testimony** | **Estimated Length of Direct Examination** | **Estimated Length of Cross-Examination** | **Estimated Length of Re-Direct Examination** | **Appearance** |
|---|---|---|---|---|---|
| Tim Sweeney, Founder and Chief Executive Officer* | Epic's history and business; Epic's business discussions with Apple and Google; Epic Direct Payment on iOS; App Store policies and practices; Epic's marketing and promotional activities; Epic's efforts to compete in app distribution and in-app payment processing | 4 hours | | | Live, in person |
| Matthew Weissinger, Vice President, Marketing* | Epic's marketing and promotional activities; marketing and promotional support services offered by video game consoles and mobile operating system providers, including Apple | 1 hour | | | Live, in person |
| Document custodian | Admission of business records and other documents in Epic's possession, as necessary | 20 minutes | | | Live, in person or may request leave to appear remotely. |

| **Witness** | **Epic's Brief Statement of Substance of Testimony** | **Estimated Length of Direct Examination** | **Estimated Length of Cross-Examination** | **Estimated Length of Re-Direct Examination** | **Appearance** |
|---|---|---|---|---|---|
| | | Apple Witnesses | | | |
| Matt Fischer, Vice President, App Store | App Store business strategy; App Store financial performance; App Store policies and practices; Apple's market power over iOS developers; and/or the subjects of designated testimony | 2 hours | | | Live or by Deposition Designation |
| Trystan Kosmynka, Senior Director, App Review | App Store review policies and practices; iOS and macOS engineering, security and privacy issues; and/or the subjects of designated testimony | 1 hour | | | Live or by Deposition Designation |
| Document custodian | Admission of business records and other documents in Apple's possession, as necessary | 20 minutes | | | Live |

| Witness | Epic's Brief Statement of Substance of Testimony | Estimated Length of Direct Examination | Estimated Length of Cross-Examination | Estimated Length of Re-Direct Examination | Appearance |
|---|---|---|---|---|---|
| Eddy Cue, Senior Vice President, Internet Software and Services | The subjects of designated testimony, which include:  lack of competition among mobile devices and mobile operating system software; App Store business strategy; App Store financial performance; current and historical App Store policies and practices; Apple's prior antitrust violations | Deposition Designation | | | Deposition Designation |
| Craig Federighi, Senior Vice President, Software Engineering | The subjects of designated testimony, which include:  iOS and macOS engineering, security, privacy and competition issues; App Store policies and practices | Deposition Designation | | | Deposition Designation |
| Scott Forstall, Senior Vice President, iOS Software (former) | The subjects of designated testimony, which include:  iOS and macOS engineering, security, privacy and competition issues; historical App Store policies and practices; Apple's in-app purchasing function | Deposition Designation | | | Deposition Designation |

EPIC GAMES, INC.'S TENTATIVE INITIAL WITNESS LIST
Case No. 4:20-cv-05640-YGR-TSH

| **Witness** | **Epic's Brief Statement of Substance of Testimony** | **Estimated Length of Direct Examination** | **Estimated Length of Cross-Examination** | **Estimated Length of Re-Direct Examination** | **Appearance** |
|---|---|---|---|---|---|
| Eric Friedman, Head of Fraud Engineering, Algorithms, and Risk | The subjects of designated testimony, which include:  App Store review process; fraud and other abuse in Apple's ecosystem | Deposition Designation | | | Deposition Designation |
| Eric Gray, Director, Commerce & Payments | The subjects of designated testimony, which include: inefficiencies and lack of integration of Apple's payment processing services; app pricing and inelasticity of demand; fraud and other abuse in Apple's ecosystem | Deposition Designation | | | Deposition Designation |
| C.K. Haun, Senior Director, Developer Technical Services | The subjects of designated testimony, which include:  App Store review policies and practices; iOS and macOS engineering, security and privacy issues | Deposition Designation | | | Deposition Designation |

| **Witness** | **Epic's Brief Statement of Substance of Testimony** | **Estimated Length of Direct Examination** | **Estimated Length of Cross-Examination** | **Estimated Length of Re-Direct Examination** | **Appearance** |
|---|---|---|---|---|---|
| Ron Okamoto, Vice President, Worldwide Developer Relations (former) | The subjects of designated testimony, which include: benefits Apple receives from other software developers, including Epic; Apple's market power over iOS developers | Deposition Designation | | | Deposition Designation |
| Shaan Pruden, Senior Director of Partnership Management and Worldwide Developer Relations | The subjects of designated testimony, which include: benefits that Apple receives from other software developers, including Epic | Deposition Designation | | | Deposition Designation |
| Mark Rollins, Finance Manager | The subjects of designated testimony, which include:  Apple financials; App Store profit and loss statements | Deposition Designation | | | Deposition Designation |
| Phillip Shoemaker, Technology Director, App Review (former) | The subjects of designated testimony, which include: historical App Store review policies and practices | Deposition Designation | | | Deposition Designation |

| Witness | Epic's Brief Statement of Substance of Testimony | Estimated Length of Direct Examination | Estimated Length of Cross-Examination | Estimated Length of Re-Direct Examination | Appearance |
|---|---|---|---|---|---|
| Third-Party Witnesses | | | | | |
| Vivek Sharma, Vice President, Gaming, Facebook, Inc.* | App distribution; Apple restrictions on iOS app distribution; App Store review process; interactions with Apple | 45 minutes | | | Mr. Sharma is expected to request to appear remotely. |
| Lori Wright, Vice President, Xbox Business Development, Microsoft Corporation* | Distribution of software; Xbox video game console business and operations; Xbox cloud gaming, including xCloud and Game Pass; interactions with Apple | 90 minutes | | | Intends to appear live and in person, but may request leave to appear remotely. |
| Benjamin Simon, Founder and Chief Executive Officer, Yoga Buddhi Co.* | App distribution; participation in the Apple Developer Program; App Store review process; interactions with Apple | 45 minutes | | | Intends to appear live and in person, but may request leave to appear remotely. |
| Shelley Gould, President, Co-Founder, Neuro-Fin Inc. d/b/a SmartStops* | App distribution; participation in the Apple Developer Program; App Store review process; interactions with Apple | 30 minutes | | | Intends to appear live and in person, but may request leave to appear remotely. |

| Witness | Epic's Brief Statement of Substance of Testimony | Estimated Length of Direct Examination | Estimated Length of Cross-Examination | Estimated Length of Re-Direct Examination | Appearance |
|---|---|---|---|---|---|
| Adrian Ong, Senior Vice President of Operations, Match Group* | The subjects of designated testimony, which include:  App distribution; participation in the Apple Developer Program; App Store review process; interactions with Apple; differences between native apps and web experiences; Match Group's payment processing capabilities; effects of Apple's 30% fee on Match Group and its users; user acquisition | Deposition Designation | | | Deposition Designation |

**Expert Witnesses**

| Witness | Summary of Theory and Conclusions and Bases Therefor and CV | Estimated Length of Direct Examination | Estimated Length of Cross-Examination | Estimated Length of Re-Direct Examination | Appearance |
|---|---|---|---|---|---|
| Susan Athey, Economics of Technology Professor, Stanford University Graduate School of Business* | See expert disclosure served February 16, 2021 | 1 hour / 40 minutes (with potential written direct) | | | Live, in person |
| Ned S. Barnes, Managing Director, Berkeley Research Group* | See expert disclosure served February 16, 2021 | 30 minutes / 15 minutes (with potential written direct) | | | Live, in person |
| David Evans, Chairman, Global Economics Group* | See expert disclosure served February 16, 2021 | 5 hours / 3 hours (with potential written direct) | | | Live, in person |
| Wenke Lee, Chair, College of Computing, Georgia Institute of Technology* | See expert disclosure served February 16, 2021 | 1 hour / 30 minutes (with potential written direct) | | | Live, in person |

| Witness | Summary of Theory and Conclusions and Bases Therefor and CV | Estimated Length of Direct Examination | Estimated Length of Cross-Examination | Estimated Length of Re-Direct Examination | Appearance |
|---|---|---|---|---|---|
| James Mickens, Professor of Computer Science, Harvard University* | See expert disclosure served February 16, 2021 | 1 hour 30 minutes /<br><br>1 hour 30 minutes (with potential written direct) | | | Intends to appear live and in person, but may request leave to appear remotely. |
| Peter E. Rossi, Professor of Marketing, Economics and Statistics, UCLA* | See expert disclosure served February 16, 2021 | 40 minutes /<br><br>15 minutes (with potential written direct) | | | Live, in person |

**CERTIFICATE OF SERVICE**

I, John I. Karin, the undersigned, declare:

1.   That declarant is and was, at all times herein mentioned a resident of the County of New York, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 825 Eighth Avenue, New York, NY 10019.

2.   That on March 12, 2021, declarant served the foregoing:

**EPIC GAMES, INC.'S TENTATIVE INITIAL WITNESS LIST**

by electronic mail to the counsel listed on the attached service list.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 12th day of March 2021, at New York, New York.


                                        /s/       John I. Karin
                                        JOHN I. KARIN

1

<u>**Service List**</u>

2

3   Theodore J. Boutrous, Jr.
    Richard J. Doren
4   Daniel G. Swanson
    Jay P. Srinivasan
5   **GIBSON, DUNN & CRUTCHER LLP**
6   333 South Grand Avenue
    Los Angeles, CA 90071-3197
7   Telephone: (213) 229-7000
    Facsimile: (213) 229-7520
8   tboutrous@gibsondunn.com
    rdoren@gibsondunn.com
9   dswanson@gibsondunn.com
10  jsrinivasan@gibsondunn.com

11  Cynthia E. Richman
12  Harry R. S. Phillips
    Mark A. Perry
13  **GIBSON, DUNN & CRUTCHER LLP**
14  1050 Connecticut Avenue, N.W.
    Washington, DC 20036-5306
15  Telephone: (202) 955-8500
    Facsimile: (202) 467-0539
16  crichman@gibsondunn.com
    hphillips2@gibsondunn.com
17  mperry@gibsondunn.com

18

19  Veronica S. Lewis
    **GIBSON, DUNN & CRUTCHER LLP**
20  2001 Ross Avenue, Suite 2100
    Dallas, TX 75201
21  Telephone: (214) 698-3100
    Facsimile: (214) 571-2900
22  vlewis@gibsondunn.com

23

24

25

26

27

28

Eli M. Lazarus
Ethan Dettmer
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
elazarus@gibsondunn.com
edettmer@gibsondunn.com

*Counsel for Defendant and Counterclaimant Apple Inc.*

# EXHIBIT D

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| EPIC GAMES, INC. v. APPLE INC. | ) | Civil Action Nos.   4:20-CV-05640-YGR |
| CAMERON ET AL v. APPLE INC. | ) | 4:19-CV-03074-YGR |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | ) | 4:11-CV-06714-YGR |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:       Neuro-Fin Inc. d/b/a SmartStops, 1550 Mountain View Oceanside, CA 92054

_(Name of person to whom this subpoena is directed)_

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Gibson, Dunn & Crutcher LLP<br>555 Mission St #3000, San Francisco, CA 94105<br>Or as otherwise agreed. | Date and Time:<br><br>04/02/2021 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 03/18/2021

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | OR | /s/ Jay Srinivasan |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Apple Inc. , who issues or requests this subpoena, are:

Jay Srinivasan, 333 South Grand Avenue, Los Angeles, CA 90017, JSrinivasan@gibsondunn.com, (213) 229-7296

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## <u>DEFINITIONS</u>

1.    The following rules of construction shall apply to all discovery requests:

    (a)    the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    (b)    the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    (c)    "**any**" and "**each**" shall be construed to include and encompass "**all**"; and ; and

    (d)    the use of the singular form of any word includes the plural and vice versa.

2.    "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3.    "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE. For the avoidance of doubt, the phrase "**YOUR APP**" shall mean any APP developed and/or published by YOU.

4.    "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

1

5.     "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, the Windows Store, the Windows Phone Store, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and websites that offer APPS.

6.     "**COALITION**" shall mean the Coalition for App Fairness in which YOU are a member or founder.

7.     "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

8.     "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

9.     "**DEFENDANT**" shall mean Apple Inc.

10.    "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.**

11.    "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books; records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings;

tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

12.  "**EPIC**" shall mean Epic Games, Inc., its officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on its behalf, or any PERSON or entity that served in any such role at any time, as well as its predecessors, successors, subsidiaries, departments, divisions, joint ventures, and/or affiliates, (including but not limited to Epic Games International S.à r.l and Life on Air, Inc.), and any PERSON that Epic Games, Inc., manages or controls.

13.  "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website) that one may use within an APP.

14.  "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player.

15.  "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

3

16.    "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, access to premium content, unlocking a full version of an APP, or paying to eliminate advertisements within an application.

17.    "**MALWARE**" shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

18.    "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.), INCLUDING:

      (a)    **Edward W. Hayter**, of Brooklyn, NY;

      (b)    **Edward Lawrence**, of California;

      (c)    **Robert Pepper**, of Chicago, IL; and

      (d)    **Stephen H. Schwartz**, of Ardsley, NY.

19.    "**NAMED DEVELOPER PLAINTIFF**" shall mean a named plaintiff in *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING:

      (a)    **Donald R. Cameron**, of California;

      (b)    **Barry Sermons**, of Georgia; and

      (c)    **Pure Sweat Basketball, Inc.**, an Illinois corporation.

20.    "**NON-HANDHELD DEVICE**" shall mean laptop computers, desktop computers, or video game consoles.

21.     "**PERSON**" shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

22.     "**REPORTS**" shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

23.     "**THE**" shall not be construed as limiting the scope of any topic.

24.     "**YOU**" or "**YOUR**" shall refer to Nuero-Fin Inc. d/b/a SmartStops or any of its predecessor or successor companies, subsidiaries, corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

## INSTRUCTIONS

1.     All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the Request.

2.     In responding to these Requests, YOU shall produce all DOCUMENTS and information in YOUR possession, custody, or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf.

3.     These Requests shall not be deemed to call for identical copies of DOCUMENTS. "Identical" means precisely the same in all respects; for example, a DOCUMENT with

handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4.      In the event YOU are able to produce only some of the DOCUMENTS called for in a particular Request, YOU shall produce all the DOCUMENTS available and state the reason(s) for YOUR inability to produce the remainder.

5.      If there are no DOCUMENTS responsive to a category in these Requests, YOU shall so state in writing. If a DOCUMENT requested is no longer existing or available, YOU shall so state in writing.

6.      If YOU object to a portion of any Request, YOU shall produce all DOCUMENTS called for by that portion of the Request to which YOU do not object.

7.      In producing DOCUMENTS responsive to these requests, YOU must Bates stamp them in a manner that clearly identifies the party that is producing each such DOCUMENT, and in whose possession the DOCUMENT was found.

8.      If any requested DOCUMENT is withheld on the basis of any claim of privilege, YOU must set forth the information necessary for DEFENDANT to ascertain whether the privilege properly applies, INCLUDING describing the DOCUMENT withheld, stating the privilege being relied upon, identifying all PERSONS (by name) who have had access to such DOCUMENT (INCLUDING all the identity(ies) of the author(s) or maker(s), recipient(s), carbon copy recipient(s), blind carbon copy recipient(s)), the number of attachments (if any), the Bates or production number of any attachments not withheld on the basis of privilege, the applicable date(s), and the subject matter(s) in a privilege log.

9.      If any portion of any DOCUMENT responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

10.      If YOU cannot answer all parts of a Request, but can answer some parts, YOU must answer those parts to which YOU can reply, and specify "unknown," or some other response, as appropriate, for any part to which YOU cannot reply.

11.      Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2015 to the present.

12.      References to any natural PERSON shall include, in addition to the natural PERSON, any agent, employee, representative, attorney, superior, or principal thereof.

13.      Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from January 1 to December 31.

14.      These Requests are to be regarded as continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. YOU are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by YOU or any PERSON acting on YOUR behalf that will augment or modify YOUR answers initially given to the following Requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, YOU are required to supplement these responses and provide additional DOCUMENTS without a specific request from DEFENDANT.

15.      DEFENDANT serves these Requests without prejudice to its right to serve additional requests for production of DOCUMENTS.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

DOCUMENTS sufficient to show the name of each APP that YOU have published in any APP MARKETPLACE, and for each such APP:

(a)  the dates during which the APP was available for download by U.S. consumers from each APP MARKETPLACE;

(b)  for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each APP MARKETPLACE;

(c)  for each APP MARKETPLACE, the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

(d)  YOUR decision to monetize the APP, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time;

(e)  the amount charged for APP downloads, subscriptions, and IN-APP PRODUCTS, by APP MARKETPLACE;

(f)  YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available); and

(g)  the number of minutes of usage of such APP.

8

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show, with respect to any APP MARKETPLACE:

(a)     the total yearly amount remitted to YOU by each APP MARKETPLACE from sales of APPS, subscriptions, and IN-APP PRODUCTS (by APP and method of monetization, if available);

(b)     any estimates of or accounting for annual ADVERTISING revenue attributable to each APP MARKETPLACE (by APP, if available);

(c)     any estimates of or accounting for YOUR annual revenues from sales of EXTERNAL PRODUCTS attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

(d)     any estimates of or accounting for annual revenues (other than the foregoing) attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

(e)     any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to each APP MARKETPLACE (by APP and method of monetization, if available); and

(f)     any comparisons of monetization rates across each APP MARKETPLACE for YOUR APPS distributed through each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

(a)     the dates during which the APP was available for direct download to such U.S. consumers;

(b)     for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

(c)     the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

(d)     YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time;

(e)     the amount charged for APP downloads and IN-APP PRODUCTS; and

(f)     YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, including distribution through the Internet, and for each such APP:

(a)     the dates during which the APP was available for direct download to such U.S. consumers;

(b)     for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

(c)　the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

(d)　YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time;

(e)　the amount charged for APP downloads and IN-APP PRODUCTS; and

(f)　YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS comparing the distribution of YOUR APPS through an APP MARKETPLACE versus the Internet, INCLUDING:

(a)　the past or present benefits or costs of distribution through an APP MARKETPLACE versus the Internet;

(b)　past or present fees and commission rates charged by each APP MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness of the APP MARKETPLACE to YOU;

(c)　past or present security or privacy protections offered in each APP MARKETPLACE;

(d)　past or present APP REVIEW and approval procedures and practices in each APP MARKETPLACE;

11

(e)     past or present tools for APP DEVELOPERS provided in each APP MARKETPLACE;

(f)     past or present ease or difficulty of updating YOUR APPS in each APP MARKETPLACE or the Internet;

(g)     past or present decision to distribute YOUR APPS on a particular APP MARKETPLACE;

(h)     contemplated, planned, or actual distribution of YOUR APPS directly (*i.e.*, not through an APP MARKETPLACE) to DEVICE users; and

(i)     past or present APP maintenance activities in each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 6:**

REPORTS concerning competition for each of YOUR APPS, INCLUDING:

(a)     who YOU consider to be YOUR competitors for each of YOUR APPS;

(b)     whether YOU offer the products or services available in YOUR APPS to NON-HANDHELD DEVICE users or any other form of distribution; and

(c)     comparisons of YOUR APPS to other competing products.

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS sufficient to show YOUR processes and protocols related to security, user data protection and protection against MALWARE, INCLUDING:

(a)     amount of time allocated as part of the development of YOUR APPS to security, user data protection and protection against MALWARE;

(b)     costs YOU incur related to your efforts to make YOUR APPS secure, protect user data and protect users from MALWARE;

12

(c)     controls you have in place in relation to each of YOUR APPS that protect

user data and protect user from MALWARE; and

(d)     frequency of and results from third party security review.

**REQUEST FOR PRODUCTION NO. 8**:

REPORTS AND DOCUMENTS related to the existence of MALWARE in connection

with any of YOUR APPS, INCLUDING, in relation to each MALWARE incident:

(a)     description of the MALWARE and how it was used to attack the user's

DEVICE, INCLUDING whether the MALWARE resulted in ransomware

being installed on the user's DEVICE;

(b)     the number of users impacted and any financial loss incurred by the users

and by YOU;

(c)     breakdown of the DEVICES the users were using at the time the

MALWARE was used to attack their DEVICE;

(d)     any change in user DEVICE preference as a result of a MALWARE

incident;

(e)     breakdown of which APP MARKETPLACE(S) the users downloaded the

APP from that was affected by the MALWARE;

(f)     details of how YOU became aware of the incident, how long the

MALWARE was active, and what actions you took to stop the incident; and

(g)     security updates and measures you took to prevent future MALWARE

incidents.

**REQUEST FOR PRODUCTION NO. 9**:

DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING any security or privacy concerns or incidents YOU have had.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING the COALITION INCLUDING its formation, documents of incorporation, bylaws, purpose, objectives, activities, sponsorship, founders, meeting minutes, membership, and fees.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS CONCERNING COMMUNICATIONS with any actual or proposed founder or member of the COALITION, INCLUDING Basecamp, Blix Inc., Blockchain.com, Deezer, Epic Games Inc., European Publishers Council, Match Group Inc., News Media Europe, Prepear Inc., ProtonMail, SkyDemon, and Tile, CONCERNING the COALITION, DEFENDANT, any APP MARKETPLACE, YOUR APP(s), and/or any allegations or suspicion of any anti-competitive conduct or behavior.

**REQUEST FOR PRODUCTION NO. 12:**

For each of YOUR APPS, DOCUMENTS sufficient to show the extent to which:

(a)     IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased on one DEVICE can be applied to the same APP on another DEVICE;

(b)     IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased outside of a DEVICE can be applied to YOUR APPS; and

(c)     consumers use the APP on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 13:**

For each of YOUR APPS, DOCUMENTS sufficient to show the prices of IN-APP PRODUCTS or EXTERNAL PRODUCTS, whether those prices vary based on DEVICE or where purchased, and whether APP users respond to discounts on IN-APP PRODUCTS or EXTERNAL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 14:**

DOCUMENTS CONCERNING YOUR decision to sell YOUR APPS, INCLUDING subscriptions, at a discounted or different price on YOUR website than through IN-APP purchases.

**REQUEST FOR PRODUCTION NO. 15:**

REPORTS CONCERNING the habits of YOUR APP users, INCLUDING whether users of YOUR APPS own multiple DEVICES and whether they use YOUR APPS on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 16**:

DOCUMENTS CONCERNING YOUR negotiations with operators of APP MARKETPLACES, INCLUDING YOUR negotiations CONCERNING commission rates.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show YOUR efforts to increase the ability of consumers in the United States to find and download YOUR APPS in any APP MARKETPLACE or on the Internet.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to show YOUR agreements or contracts with any APP MARKETPLACE or DEVICE manufacturer, INCLUDING any guidelines or rules setting forth

the terms and conditions under which YOU may distribute YOUR APPS through any APP MARKETPLACE(S) or to DEVICE users.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support provided to YOU by any APP MARKETPLACE or DEVICE manufacturer, INCLUDING APP development tools, application programming interfaces ("APIs"), programming tools, technical support, opportunities for testing APPS before they are released to the consumers, marketing, payment processing, refund processing, and security measures.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS relating to any intellectual property covering YOUR APPS or that YOUR APPS embody.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS relating to any advantages YOU perceive from YOUR APPS not storing user credit card information.

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show YOUR marketing strategy for growing your user base.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS and COMMUNICATIONS, INCLUDING customer complaints and reviews, for each of YOUR APPS relating to:

> (a)    YOUR customer service and responsiveness;
>
> (b)    YOUR APPS conducting any background activity without obtaining customer permission; and

      (c)       Any instances where an APP MARKETPLACE helped resolve any customer complaints, INCLUDING any instances where the APP MARKETPLACE refunded a customer any money.

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within, any division or unit of YOUR business that is responsible for YOUR APPS.

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS sufficient to show what user information and data YOU collect and how YOU collect the user information and data, INCLUDING data about each user's activity such as configurations and preferences chosen and classes taken and favored and/or saved.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS sufficient to show how YOU use user information and data, INCLUDING all third parties with whom you share user information and data with, INCLUDING REPORTS reflecting when and how you have shared user information and data with third parties.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS relating to YOUR privacy practices and concerns about user privacy, INCLUDING any customer COMMUNICATIONS raising questions or concerns about how YOU use and/or share customer information and data.

**REQUEST FOR PRODUCTION NO. 28:**

ALL COMMUNICATIONS between YOU and any NAMED CONSUMER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 29:**

ALL COMMUNICATIONS between YOU and any NAMED DEVELOPER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 30:**

ALL DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING EPIC.

**REQUEST FOR PRODUCTION NO. 31:**

ALL COMMUNICATIONS with EPIC.

**REQUEST FOR PRODUCTION NO. 32:**

ALL COMMUNICATIONS with any member of the COALITION.

**REQUEST FOR PRODUCTION NO. 33:**

ALL DOCUMENTS CONCERNING Shelley Gould's anticipated trial testimony in *Epic Games, Inc. v. Apple Inc*., Case No. 4:20-cv-05640-YGR (N.D. Cal.), INCLUDING DOCUMENTS CONCERNING her testimony about app distribution, participation in the Apple Developer Program, the App Store review process, and interactions with Apple.

**REQUEST FOR PRODUCTION NO. 34:**

ALL COMMUNICATIONS between YOU and any APP DEVELOPER, other than EPIC or any member of the COALITION, CONCERNING:

> (a)    the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;
>
> (b)    policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS;
>
> (c)    the following ongoing litigation, INCLUDING declarations, anticipated oral testimony, or documentary evidence relating to the same:
>
> > i.    *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);
> >
> > ii.    *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);
> >
> > iii.    *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

iv.   *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

v.   *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

# EXHIBIT E

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| EPIC GAMES, INC. v. APPLE INC. | ) | Civil Action Nos. | 4:20-CV-05640-YGR |
| CAMERON ET AL v. APPLE INC. | ) | | 4:19-CV-03074-YGR |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | ) | | 4:11-CV-06714-YGR |
| | ) | | |
| | ) | | |
| | ) | | |
| | ) | | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:              Shelley Gould, 3213 Ramona Street, Palo Alto, California 94306

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Gibson, Dunn & Crutcher LLP<br>555 Mission St #3000, San Francisco, CA 94105<br>Or as otherwise agreed. | Date and Time:<br><br>04/07/2021 9:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  03/25/2021
      _____

CLERK OF COURT

                                              OR      */s/ Jay Srinivasan*

_____        _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Apple Inc.
_____ , who issues or requests this subpoena, are:

Jay Srinivasan, 333 South Grand Avenue, Los Angeles, CA 90017, JSrinivasan@gibsondunn.com, (213) 229-7296

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

1.      The following rules of construction shall apply to all discovery requests:

    (a)      the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    (b)      the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    (c)      "**any**" and "**each**" shall be construed to include and encompass "**all**"; and ; and

    (d)      the use of the singular form of any word includes the plural and vice versa.

2.      "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3.      "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE. For the avoidance of doubt, the phrase "**YOUR APP**" shall mean any APP developed and/or published by YOU.

4.      "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

1

5.     "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, the Windows Store, the Windows Phone Store, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and websites that offer APPS.

6.     "**COALITION**" shall mean the Coalition for App Fairness in which YOU are a member or founder.

7.     "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

8.     "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

9.     "**DEFENDANT**" shall mean Apple Inc.

10.     "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.**

11.     "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books; records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings;

2

tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

12.  "**EPIC**" shall mean Epic Games, Inc., its officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on its behalf, or any PERSON or entity that served in any such role at any time, as well as its predecessors, successors, subsidiaries, departments, divisions, joint ventures, and/or affiliates, (including but not limited to Epic Games International S.à r.l and Life on Air, Inc.), and any PERSON that Epic Games, Inc., manages or controls.

13.  "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website) that one may use within an APP.

14.  "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player.

15.  "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

16.    "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, access to premium content, unlocking a full version of an APP, or paying to eliminate advertisements within an application.

17.    "**MALWARE**" shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

18.    "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.), INCLUDING:

     (a)    **Edward W. Hayter**, of Brooklyn, NY;

     (b)    **Edward Lawrence**, of California;

     (c)    **Robert Pepper**, of Chicago, IL; and

     (d)    **Stephen H. Schwartz**, of Ardsley, NY.

19.    "**NAMED DEVELOPER PLAINTIFF**" shall mean a named plaintiff in *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING:

     (a)    **Donald R. Cameron**, of California;

     (b)    **Barry Sermons**, of Georgia; and

     (c)    **Pure Sweat Basketball, Inc.**, an Illinois corporation.

20.    "**NON-HANDHELD DEVICE**" shall mean laptop computers, desktop computers, or video game consoles.

21.     "**PERSON**" shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

22.     "**REPORTS**" shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

23.     "**SMARTSTOPS**" shall refer to Nuero-Fin Inc. d/b/a SmartStops or any of its predecessor or successor companies, subsidiaries, corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

24.     "**THE**" shall not be construed as limiting the scope of any topic.

25.     "**YOU**" or "**YOUR**" shall refer to Shelley Gould.

## INSTRUCTIONS

1.     All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the Request.

2.     In responding to these Requests, YOU shall produce all DOCUMENTS and information in YOUR possession, custody, or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf.

3.      These Requests shall not be deemed to call for identical copies of DOCUMENTS. "Identical" means precisely the same in all respects; for example, a DOCUMENT with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4.      In the event YOU are able to produce only some of the DOCUMENTS called for in a particular Request, YOU shall produce all the DOCUMENTS available and state the reason(s) for YOUR inability to produce the remainder.

5.      If there are no DOCUMENTS responsive to a category in these Requests, YOU shall so state in writing. If a DOCUMENT requested is no longer existing or available, YOU shall so state in writing.

6.      If YOU object to a portion of any Request, YOU shall produce all DOCUMENTS called for by that portion of the Request to which YOU do not object.

7.      In producing DOCUMENTS responsive to these requests, YOU must Bates stamp them in a manner that clearly identifies the party that is producing each such DOCUMENT, and in whose possession the DOCUMENT was found.

8.      If any requested DOCUMENT is withheld on the basis of any claim of privilege, YOU must set forth the information necessary for DEFENDANT to ascertain whether the privilege properly applies, INCLUDING describing the DOCUMENT withheld, stating the privilege being relied upon, identifying all PERSONS (by name) who have had access to such DOCUMENT (INCLUDING all the identity(ies) of the author(s) or maker(s), recipient(s), carbon copy recipient(s), blind carbon copy recipient(s)), the number of attachments (if any), the Bates or production number of any attachments not withheld on the basis of privilege, the applicable date(s), and the subject matter(s) in a privilege log.

9.      If any portion of any DOCUMENT responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

10.     If YOU cannot answer all parts of a Request, but can answer some parts, YOU must answer those parts to which YOU can reply, and specify "unknown," or some other response, as appropriate, for any part to which YOU cannot reply.

11.     Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2015 to the present.

12.     References to any natural PERSON shall include, in addition to the natural PERSON, any agent, employee, representative, attorney, superior, or principal thereof.

13.     Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from January 1 to December 31.

14.     These Requests are to be regarded as continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. YOU are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by YOU or any PERSON acting on YOUR behalf that will augment or modify YOUR answers initially given to the following Requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, YOU are required to supplement these responses and provide additional DOCUMENTS without a specific request from DEFENDANT.

15.     DEFENDANT serves these Requests without prejudice to its right to serve additional requests for production of DOCUMENTS.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

DOCUMENTS sufficient to show the name of each APP that SMARTSTOPS has published in any APP MARKETPLACE, and for each such APP:

    (a)    the dates during which the APP was available for download by U.S. consumers from each APP MARKETPLACE;

    (b)    for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each APP MARKETPLACE;

    (c)    for each APP MARKETPLACE, the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

    (d)    SMARTSTOPS'S decision to monetize the APP, INCLUDING why SMARTSTOPS chose the monetization strategy it did, and whether that strategy changed over time;

    (e)    the amount charged for APP downloads, subscriptions, and IN-APP PRODUCTS, by APP MARKETPLACE;

    (f)    SMARTSTOPS'S annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available); and

    (g)    the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show, with respect to any APP MARKETPLACE:

    (a)    the total yearly amount remitted to SMARTSTOPS by each APP MARKETPLACE from sales of APPS, subscriptions, and IN-APP PRODUCTS (by APP and method of monetization, if available);

    (b)    any estimates of or accounting for annual ADVERTISING revenue attributable to each APP MARKETPLACE (by APP, if available);

    (c)    any estimates of or accounting for SMARTSTOPS'S annual revenues from sales of EXTERNAL PRODUCTS attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

    (d)    any estimates of or accounting for annual revenues (other than the foregoing) attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

    (e)    any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to each APP MARKETPLACE (by APP and method of monetization, if available); and

    (f)    any comparisons of monetization rates across each APP MARKETPLACE for SMARTSTOPS'S APPS distributed through each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS sufficient to show the name of each APP (if any) that SMARTSTOPS has made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

(a)     the dates during which the APP was available for direct download to such U.S. consumers;

(b)     for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

(c)     the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

(d)     SMARTSTOPS'S decision to monetize the APP, INCLUDING why SMARTSTOPS chose the revenue model it did, and whether that strategy changed over time;

(e)     the amount charged for APP downloads and IN-APP PRODUCTS; and

(f)     SMARTSTOPS'S annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show the name of each APP (if any) that SMARTSTOPS has made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, including distribution through the Internet, and for each such APP:

(a)     the dates during which the APP was available for direct download to such U.S. consumers;

10

(b)     for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

(c)     the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

(d)     SMARTSTOPS'S decision to monetize the APP, INCLUDING why SMARTSTOPS chose the revenue model it did, and whether that strategy changed over time;

(e)     the amount charged for APP downloads and IN-APP PRODUCTS; and

(f)     SMARTSTOPS'S annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS comparing the distribution of SMARTSTOPS'S APPS through an APP MARKETPLACE versus the Internet, INCLUDING:

(a)     the past or present benefits or costs of distribution through an APP MARKETPLACE versus the Internet;

(b)     past or present fees and commission rates charged by each APP MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness of the APP MARKETPLACE to SMARTSTOPS;

(c)     past or present security or privacy protections offered in each APP MARKETPLACE;

(d)     past or present APP REVIEW and approval procedures and practices in each APP MARKETPLACE;

(e)     past or present tools for APP DEVELOPERS provided in each APP MARKETPLACE;

(f)     past or present ease or difficulty of updating SMARTSTOPS'S APPS in each APP MARKETPLACE or the Internet;

(g)     past or present decision to distribute SMARTSTOPS'S APPS on a particular APP MARKETPLACE;

(h)     contemplated, planned, or actual distribution of SMARTSTOP'S APPS directly (*i.e.*, not through an APP MARKETPLACE) to DEVICE users; and

(i)     past or present APP maintenance activities in each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 6:**

REPORTS concerning competition for each of SMARTSTOPS'S APPS, INCLUDING:

(a)     who SMARTSTOPS'S considers to be its competitors for each of its APPS;

(b)     whether SMARTSTOPS offers the products or services available in its APPS to NON-HANDHELD DEVICE users or any other form of distribution; and

(c)     comparisons of SMARTSTOPS'S APPS to other competing products.

**REQUEST FOR PRODUCTION NO. 7**:

DOCUMENTS sufficient to show SMARTSTOPS'S processes and protocols related to security, user data protection and protection against MALWARE, INCLUDING:

12

(a)  amount of time allocated as part of the development of SMARTSTOPS'S APPS to security, user data protection and protection against MALWARE;

(b)  costs SMARTSTOPS incurs related to its efforts to make its APPS secure, protect user data and protect users from MALWARE;

(c)  controls you have in place in relation to each of SMARTSTOPS'S APPS that protect user data and protect user from MALWARE; and

(d)  frequency of and results from third party security review.

**REQUEST FOR PRODUCTION NO. 8**:

REPORTS AND DOCUMENTS related to the existence of MALWARE in connection with any of SMARTSTOPS'S APPS, INCLUDING, in relation to each MALWARE incident:

(a)  description of the MALWARE and how it was used to attack the user's DEVICE, INCLUDING whether the MALWARE resulted in ransomware being installed on the user's DEVICE;

(b)  the number of users impacted and any financial loss incurred by the users and by SMARTSTOPS;

(c)  breakdown of the DEVICES the users were using at the time the MALWARE was used to attack their DEVICE;

(d)  any change in user DEVICE preference as a result of a MALWARE incident;

(e)  breakdown of which APP MARKETPLACE(S) the users downloaded the APP from that was affected by the MALWARE;

(f)  details of how SMARTSTOPS became aware of the incident, how long the MALWARE was active, and what actions you took to stop the incident; and

(g)     security updates and measures you took to prevent future MALWARE incidents.

**REQUEST FOR PRODUCTION NO. 9**:

DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING any security or privacy concerns or incidents SMARTSTOPS has had.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING the COALITION INCLUDING its formation, documents of incorporation, bylaws, purpose, objectives, activities, sponsorship, founders, meeting minutes, membership, and fees.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS CONCERNING COMMUNICATIONS with any actual or proposed founder or member of the COALITION, INCLUDING Basecamp, Blix Inc., Blockchain.com, Deezer, Epic Games Inc., European Publishers Council, Match Group Inc., News Media Europe, Prepear Inc., ProtonMail, SkyDemon, and Tile, CONCERNING the COALITION, DEFENDANT, any APP MARKETPLACE, SMARTSTOPS'S APP(s), and/or any allegations or suspicion of any anti-competitive conduct or behavior.

**REQUEST FOR PRODUCTION NO. 12:**

For each of SMARTSTOPS'S APPS, DOCUMENTS sufficient to show the extent to which:

(a)     IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased on one DEVICE can be applied to the same APP on another DEVICE;

(b)     IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased outside of a DEVICE can be applied to SMARTSTOPS'S APPS; and

14

(c)      consumers use the APP on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 13:**

For each of SMARTSTOPS'S APPS, DOCUMENTS sufficient to show the prices of IN-APP PRODUCTS or EXTERNAL PRODUCTS, whether those prices vary based on DEVICE or where purchased, and whether APP users respond to discounts on IN-APP PRODUCTS or EXTERNAL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 14:**

DOCUMENTS CONCERNING SMARTSTOPS'S decision to sell its APPS, INCLUDING subscriptions, at a discounted or different price on its website than through IN-APP purchases.

**REQUEST FOR PRODUCTION NO. 15:**

REPORTS CONCERNING the habits of SMARTSTOPS'S APP users, INCLUDING whether users of its APPS own multiple DEVICES and whether they use its APPS on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 16**:

DOCUMENTS CONCERNING SMARTSTOPS'S negotiations with operators of APP MARKETPLACES, INCLUDING its negotiations CONCERNING commission rates.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show SMARTSTOPS'S efforts to increase the ability of consumers in the United States to find and download its APPS in any APP MARKETPLACE or on the Internet.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to show SMARTSTOPS'S agreements or contracts with any APP MARKETPLACE or DEVICE manufacturer, INCLUDING any guidelines or rules setting forth the terms and conditions under which it may distribute its APPS through any APP MARKETPLACE(S) or to DEVICE users.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support provided to SMARTSTOPS by any APP MARKETPLACE or DEVICE manufacturer, INCLUDING APP development tools, application programming interfaces ("APIs"), programming tools, technical support, opportunities for testing APPS before they are released to the consumers, marketing, payment processing, refund processing, and security measures.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS relating to any intellectual property covering SMARTSTOPS'S APPS or that its APPS embody.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS relating to any advantages SMARTSTOPS perceives from its APPS not storing user credit card information.

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show SMARTSTOPS'S marketing strategy for growing its user base.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS and COMMUNICATIONS, INCLUDING customer complaints and reviews, for each of SMARTSTOPS'S APPS relating to:

16

(a)     its customer service and responsiveness;

(b)     its APPS conducting any background activity without obtaining customer permission; and

(c)     Any instances where an APP MARKETPLACE helped resolve any customer complaints, INCLUDING any instances where the APP MARKETPLACE refunded a customer any money.

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within, any division or unit of SMARTSTOPS'S business that is responsible for its APPS.

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS sufficient to show what user information and data SMARTSTOPS collects and how it collects the user information and data, INCLUDING data about each user's activity such as configurations and preferences chosen and classes taken and favored and/or saved.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS sufficient to show how SMARTSTOPS uses user information and data, INCLUDING all third parties with whom its shares user information and data with, INCLUDING REPORTS reflecting when and how it has shared user information and data with third parties.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS relating to SMARTSTOPS'S privacy practices and concerns about user privacy, INCLUDING any customer COMMUNICATIONS raising questions or concerns about how it uses and/or shares customer information and data.

**REQUEST FOR PRODUCTION NO. 28:**

ALL COMMUNICATIONS with any NAMED CONSUMER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 29:**

ALL COMMUNICATIONS with any NAMED DEVELOPER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 30:**

ALL DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING EPIC.

**REQUEST FOR PRODUCTION NO. 31:**

ALL COMMUNICATIONS with EPIC.

**REQUEST FOR PRODUCTION NO. 32:**

ALL COMMUNICATIONS with any member of the COALITION.

**REQUEST FOR PRODUCTION NO. 33:**

ALL DOCUMENTS CONCERNING YOUR anticipated trial testimony in *Epic Games, Inc. v. Apple Inc*., Case No. 4:20-cv-05640-YGR (N.D. Cal.), INCLUDING DOCUMENTS CONCERNING YOUR testimony about app distribution, participation in the Apple Developer Program, the App Store review process, and interactions with Apple.

**REQUEST FOR PRODUCTION NO. 34:**

ALL COMMUNICATIONS with any APP DEVELOPER, other than EPIC or any member of the COALITION, CONCERNING:

> (a)    the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;

> (b)    policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS;

> (c)    the following ongoing litigation, INCLUDING declarations, anticipated oral testimony, or documentary evidence relating to the same:

> > i.    *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

18

ii.   *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

iii.   *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

iv.   *Sermons v.Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

v.   *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

# EXHIBIT F

## Cornillie, Henry H.

| | |
|---|---|
| **From:** | Karl Huth <huth@huthreynolds.com> |
| **Sent:** | Tuesday, March 30, 2021 6:19 AM |
| **To:** | Cornillie, Henry H. |
| **Cc:** | Srinivasan, Jay P.; 'Wes Earnhardt'; 'Samuel Stuckey'; robl@hbsslaw.com; bens@hbsslaw.com; 'Byrd, Rachele'; 'DeJong, Brittany'; Yang, Betty X.; Matthew Reynolds |
| **Subject:** | RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.) |

[External Email]

Thank you for this correspondence.  We accept Apple's offer of $5000.00 to defray fees and expenses relating to the existing subpoenas directed to Ms. Gould by Apple.  If additional discovery is served, then we will need to revisit the amount.  We will endeavor to complete Ms. Gould's production by April 13, as long as we receive the payment before that date.

Henry, I will separately send you wire information for the transfer.

Best,

**Karl Huth**
Huth Reynolds LLP
(212) 731-9333
huth@huthreynolds.com

*This email from Huth Reynolds LLP may contain confidential information, attorney-client privileged communications, and/or attorney work product. If you are not the intended recipient, please advise by return email and delete immediately without reading or forwarding to others. Thank you.*

---

**From:** Cornillie, Henry H.
**Sent:** Monday, March 29, 2021 4:53 PM
**To:** Karl Huth
**Cc:** Srinivasan, Jay P. ; 'Wes Earnhardt' ; 'Samuel Stuckey' ; robl@hbsslaw.com; bens@hbsslaw.com; 'Byrd, Rachele' ; 'DeJong, Brittany' ; Yang, Betty X.
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

Karl,

Please see the attached correspondence.

Thank you,
Henry

**Henry H. Cornillie**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8394 • Fax +1 415.374.8504
HCornillie@gibsondunn.com • www.gibsondunn.com

---

**From:** Cornillie, Henry H.
**Sent:** Thursday, March 25, 2021 8:48 PM
**To:** 'Karl Huth' <huth@huthreynolds.com>
**Cc:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Wes Earnhardt <WEarnhardt@cravath.com>; Samuel Stuckey <sstuckey@cravath.com>; robl@hbsslaw.com; bens@hbsslaw.com; Byrd, Rachele <Byrd@whafh.com>; 'DeJong, Brittany' <dejong@whafh.com>; Yang, Betty X. <BYang@gibsondunn.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

Karl,

That time works for us.  Please find dial-in information below.

8667475969,,,4153938394#

Thanks,
Henry

**Henry H. Cornillie**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8394 • Fax +1 415.374.8504
HCornillie@gibsondunn.com • www.gibsondunn.com

---

**From:** Karl Huth <huth@huthreynolds.com>
**Sent:** Thursday, March 25, 2021 3:23 PM
**To:** Cornillie, Henry H. <HCornillie@gibsondunn.com>
**Cc:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Wes Earnhardt <WEarnhardt@cravath.com>; Samuel Stuckey <sstuckey@cravath.com>; robl@hbsslaw.com; bens@hbsslaw.com; Byrd, Rachele <Byrd@whafh.com>; 'DeJong, Brittany' <dejong@whafh.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

[External Email]
Henry –

Can we speak tomorrow at noon Eastern / 9 AM Pacific?

Thanks,

**Karl Huth**
Huth Reynolds LLP
(212) 731-9333

huth@huthreynolds.com

*This email from Huth Reynolds LLP may contain confidential information, attorney-client privileged communications, and/or attorney work product. If you are not the intended recipient, please advise by return email and delete immediately without reading or forwarding to others. Thank you.*

---

**From:** Cornillie, Henry H. <HCornillie@gibsondunn.com>
**Sent:** Thursday, March 25, 2021 4:09 PM
**To:** Karl Huth <huth@huthreynolds.com>
**Cc:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Wes Earnhardt <WEarnhardt@cravath.com>; Samuel Stuckey <sstuckey@cravath.com>; robl@hbsslaw.com; bens@hbsslaw.com; Byrd, Rachele <Byrd@whafh.com>; 'DeJong, Brittany' <dejong@whafh.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

Counsel,

Please see the attached letter, along with the attached document subpoena to Ms. Gould and notice thereof.

Thank you,
Henry

**Henry H. Cornillie**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8394 • Fax +1 415.374.8504
HCornillie@gibsondunn.com • www.gibsondunn.com

---

**From:** Karl Huth <huth@huthreynolds.com>
**Sent:** Wednesday, March 24, 2021 2:45 PM
**To:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Wes Earnhardt <WEarnhardt@cravath.com>
**Cc:** Cornillie, Henry H. <HCornillie@gibsondunn.com>; Samuel Stuckey <sstuckey@cravath.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

[External Email]
Please see the attached.

Best,

**Karl Huth**
Huth Reynolds LLP
(212) 731-9333
huth@huthreynolds.com

*This email from Huth Reynolds LLP may contain confidential information, attorney-client privileged communications, and/or attorney work product. If you are not the intended recipient, please advise by return email and delete immediately without reading or forwarding to others. Thank you.*

---

**From:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>
**Sent:** Wednesday, March 24, 2021 3:24 PM
**To:** Wes Earnhardt <WEarnhardt@cravath.com>
**Cc:** Cornillie, Henry H. <HCornillie@gibsondunn.com>; Karl Huth <huth@huthreynolds.com>; Samuel Stuckey <sstuckey@cravath.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

Thanks, Wes.

Mr. Huth, we have a subpoena ready for Ms. Gould.  Will you accept service?   And to the extent you disagree with other aspects of my letter, let us please discuss ASAP.  Time is of the essence.

Thanks,
Jay


**Jay P. Srinivasan**
GIBSON DUNN
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7296 • Fax +1 213.229.6296
JSrinivasan@gibsondunn.com • www.gibsondunn.com

---

**From:** Wes Earnhardt <WEarnhardt@cravath.com>
**Sent:** Wednesday, March 24, 2021 12:09 PM
**To:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>
**Cc:** Cornillie, Henry H. <HCornillie@gibsondunn.com>; Karl Huth <huth@huthreynolds.com>; Samuel Stuckey <sstuckey@cravath.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

[External Email]
Jay,

I don't really understand the question.  Epic will call Ms. Gould to testify in her capacity as the Founder/CEO of SmartStops.  Trial examinations are of witnesses in their personal capacity even if the testimony will relate entirely to that witness's job or business (unlike, for example, a FRCP 30(b)(6) deposition where the deponent testifies on behalf of a company).  So, while I can't speak to what Mr. Huth meant by his letter, we intend to examine Ms. Gould as the Founder/CEO of SmartStops, only in connection with her role as Founder/CEO of SmartStops, not anything to do with her personal life or anything unrelated to SmartStops.  But it is also not a 30(b)(6) deposition of SmartStops, the company.

Wes

Wes Earnhardt
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474 - 1138
wearnhardt@cravath.com

From:     "Srinivasan, Jay P." <JSrinivasan@gibsondunn.com>
To:       "Samuel Stuckey" <sstuckey@cravath.com>, "Karl Huth" <huth@huthreynolds.com>
Cc:       "Wes Earnhardt" <WEarnhardt@cravath.com>, "Cornillie, Henry H." <HCornillie@gibsondunn.com>
Date:     03/24/2021 02:49 PM
Subject:    RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

---

Thanks Sam.  Does Epic agree with Mr. Huth's position in his letter that Ms. Gould is being called by Epic to trial in her individual capacity and not in her capacity as Founder/CEO of SmartStops?

**Jay P. Srinivasan**
GIBSON DUNN
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7296 • Fax +1 213.229.6296
JSrinivasan@gibsondunn.com • www.gibsondunn.com

**From:** Samuel Stuckey <sstuckey@cravath.com>
**Sent:** Wednesday, March 24, 2021 11:14 AM
**To:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>; Karl Huth <huth@huthreynolds.com>
**Cc:** Wes Earnhardt <WEarnhardt@cravath.com>; Cornillie, Henry H. <HCornillie@gibsondunn.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

[External Email]
Jay,

Please see the attached correspondence.

Regards,
Sam

Samuel A. Stuckey
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1302

**From:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>
**Sent:** Tuesday, March 23, 2021 2:13 PM

**To:** Karl Huth <huth@huthreynolds.com>
**Cc:** Wes Earnhardt <WEarnhardt@cravath.com>; Samuel Stuckey <sstuckey@cravath.com>; Cornillie, Henry H. <HCornillie@gibsondunn.com>
**Subject:** RE: Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)


Karl,

Thanks for your letter.  See Apple's response attached.  And given the fast approaching trial date, let's get on the phone to try to work this out ASAP.  We've proposed a few times in the letter.  If we cannot, we need to bring the dispute to the Court expeditiously.

Thanks,
Jay

**Jay P. Srinivasan**
GIBSON DUNN
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7296 • Fax +1 213.229.6296
JSrinivasan@gibsondunn.com • www.gibsondunn.com


**From:** Karl Huth <huth@huthreynolds.com>
**Sent:** Monday, March 22, 2021 11:35 AM
**To:** Srinivasan, Jay P. <JSrinivasan@gibsondunn.com>
**Cc:** Wes Earnhardt <WEarnhardt@cravath.com>; Samuel Stuckey <sstuckey@cravath.com>
**Subject:** Epic Games, Inc. v. Apple Inc., No. 4:20-CV-05640-YGR (N.D. Cal.)

[External Email]
Mr. Srinivasan –

I represent nonparty witness Shelley Gould (SmartStops).  Please see the attached letter.

Best,

**Karl Huth**
Huth Reynolds LLP
(212) 731-9333
huth@huthreynolds.com

*This email from Huth Reynolds LLP may contain confidential information, attorney-client privileged communications, and/or attorney work product. If you are not the intended recipient, please advise by return email and delete immediately without reading or forwarding to others. Thank you.*

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail from the computer on which you received it.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail from the computer on which you received it.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.