Michelle Lowery (302882)
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA  90067-3206
Telephone:  (310) 277-4110
Facsimile:  (310_ 277-4730
Email:  mslowery@mwe.com

KAREN HOFFMAN LENT (admitted *pro hac vice*)
EVAN R. KREINER (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile:  (212) 735-2000
Email: karen.lent@skadden.com
Email: evan.kreiner@skadden.com

Attorneys for Defendant
APPLE INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-CV-05640-YGR |
| Plaintiff, | |
| v. | **DECLARATION OF MICHELLE LOWERY IN SUPPORT OF APPLE'S MOTION FOR PRE-TRIAL SANCTIONS AGAINST EPIC** |
| APPLE INC., | |
| Defendant. | |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

I, Michelle Lowery, declare as follows:

1.      I am a partner at the law firm McDermott Will & Emery LLP, and I am one of the attorneys representing Apple, Inc. ("Apple") in the above-captioned action.  I am licensed to practice in the State of California and a member of the Bar of this Court.  I have personal knowledge of the facts stated below.  If called to be a witness, I could and would testify competently thereto.

2.      I submit this declaration in support of Apple's Motion for Pre-Trial Sanctions Against Epic.

**Microsoft Course of Dealing**

3.      On November 6, 2020, Apple served Microsoft Corporation ("Microsoft") with a subpoena (the "Microsoft Subpoena") seeking documents relating to Microsoft's various distribution channels, including Xbox, communications with Epic Games, Inc. ("Epic"), and communications concerning the Coalition for App Fairness, a group founded in part by Epic to challenge Apple's App Store policies.  (*See* Ex. A.)

4.      Apple and Microsoft engaged in meet and confer conversations concerning the scope of the Microsoft Subpoena over the course of the next several months.  Microsoft produced a total of 79 documents in response to the Microsoft Subpoena and refused to produce several categories of documents.  Apple made good faith attempts to narrow the Microsoft Subpoena and, in an act of compromise to lessen the burden on Microsoft as a third-party, Apple reserved all rights but deferred on compelling this information only if it became necessary.

5.      Apple promptly resurrected its meet and confer conversations with Microsoft when Epic designated Lori Wright, Vice President, Xbox Business Development at Microsoft as a third-party trial witness.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

6.      Microsoft did not produce a single document from Ms. Wright's email files, and included only two non-email documents with Ms. Wright designated as the custodian.

7.      On March 23, 2021, Apple and Microsoft engaged in a meet and confer conversation, but Microsoft refused to produce any additional documents, including searching and producing documents from Ms. Wright's custodial files.

8.      Apple had noticed Ms. Wright's deposition for April 20, 2021.  (*See* Ex. B.)  During the March 23, 2021 meet and confer, Microsoft informed Apple that Ms. Wright was available to sit for her deposition on April 16, 2021.  That date was not confirmed by either party, and on March 31, 2021, Apple asked Microsoft to provide a deposition date during the week of April 19 – 23, 2021.  (*See* Ex. C.)  On April 2, 2021, Microsoft informed Apple that Ms. Wright did not have availability during the week of April 19 – 23, 2021.  (*Id.*)  In response, Apple told counsel for Microsoft that it would see if it could make April 16, 2021 work.  (*Id.*)  Although Apple never had confirmed April 16, 2021 for the Microsoft deposition, during meet and confers with Epic's counsel held on April 7 and 8, 2021, Epic's counsel argued that the Microsoft deposition would go forward on April 16, 2021 and that Epic would plan to attend even if counsel for Apple did not.  Epic's counsel also stated that Microsoft would not produce any additional documents prior to Ms. Wright's deposition.  Later on April 8, 2021, and in line with Epic's position, Microsoft notified Apple that it was unwilling to provide any proposed dates for Ms. Wright's deposition prior to the beginning of trial other than April 16, 2021.  (*See* Ex. C.)

**Yoga Buddhi Course of Dealing**

9.      On December 8, 2020, Apple served Yoga Buddhi Co. ("Yoga Buddhi") with a subpoena for documents (the "Yoga Buddhi Subpoena") after Epic had served a subpoena on Yoga Buddhi.  (*See* Ex. D.)

DECLARATION OF MICHELLE          - 3 -          (Case Nos. 4:20-cv-05640-YGR)
LOWERY IN SUPPORT OF
APPLE'S MOTION FOR PRE-TRIAL
SANCTIONS AGAINST EPIC

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

10.     Apple and Yoga Buddhi engaged in meet and confer conversations concerning the scope of the Yoga Buddhi Subpoena.  Yoga Buddhi produced 94 documents (excluding a limited number of spreadsheets) in response to the Yoga Buddhi Subpoena and refused to produce several categories of documents.  Apple made good faith attempts to narrow the Yoga Buddhi Subpoena and, in an act of compromise to lessen the burden on Yoga Buddhi as a third-party, Apple reserved all rights but deferred on compelling this information only if it became necessary.

11.     Apple promptly resurrected its meet and confer conversations with Yoga Buddhi when Epic designated Benjamin Simon, Founder and Chief Executive Officer at Yoga Buddhi as a third-party trial witness and served a deposition notice for Mr. Simon's deposition.

12.     Yoga Buddhi's deficient production did not include a search of Mr. Simon's files for any communications with Epic, communications concerning the Coalition for App Fairness (of which Yoga Buddhi is a member), or any documents concerning privacy and security efforts, all of which were plainly required by the subpoena.

13.     On March 23, 2021, Apple and Yoga Buddhi engaged in a meet and confer conversation, but Yoga Buddhi refused to produce any additional documents, including searching and producing documents from Mr. Simon's custodial files related to bias and security issues.

14.     On April 8, 2021, Epic's counsel informed Apple's counsel that Yoga Buddhi persisted in its refusal to produce documents prior to deposition.

15.     Yoga Buddhi has offered Mr. Simon for deposition on April 23.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on April 9, 2021 in Los Angeles County, California.

*/s/ Michelle Lowery*
Michelle Lowery

## **FILER'S ATTESTATION**

I, Karen Hoffman Lent, am the ECF User whose ID and password are being used to file this Declaration of Michelle Lowery in Support of Apple Inc.'s Motion for Pre-Trial Sanctions Against Epic.  In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from the signatory.

By: _____*/s/Karen Hoffman Lent*_____

Karen Hoffman Lent

# Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| EPIC GAMES, INC. v. APPLE INC. | ) | Civil Action Nos. 4:20-CV-05640-YGR |
| CAMERON ET AL v. APPLE INC. | ) | 4:19-CV-03074-YGR |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | ) | 4:11-CV-06714-YGR |
| | ) | |
| | ) | |
| | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                              Microsoft Corporation
                     One Microsoft Way, Redmond, WA 98052-6399
*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See Schedule A

| Place: McDermott Will & Emery LLP<br>        2049 Century Park East<br>        Suite 3200<br>        Los Angeles, CA 90067-3206<br><br>        Or as otherwise agreed. | Date and Time:<br>November 20, 2020, 5:00 PM PT |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>November 6, 2020</u>

                *CLERK OF COURT*
                                        OR
                                              */s/ Michelle Lowery*
   _____          _____
   *Signature of Clerk or Deputy Clerk*      *Attorney's signature*
                                           Michelle Lowery

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ____Apple Inc.____
_____ , who issues or requests this subpoena, are:

Michelle Lowery, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206, mslowery@mwe.com, (310) 551-9309


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action Nos. 4:11-CV-06714-YGR, 4:19-CV-03074-YGR, 4:20-CV-05640-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐   I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ on *(date)*

☐   I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____   My fees are $ _____   My fees are $ _____

I declare under penalty of perjury that this information is true.

Date: _____          Date: _____
                                                                        *Server's signature*

                                                    _____
                                                                        *Printed name and title*

                                                    _____
                                                                        *Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).


American LegalNet, Inc.
www.FormsWorkFlow.com

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

1.      The following rules of construction shall apply to all discovery requests:

   a.   the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

   b.   the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

   c.   "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

   d.   the use of the singular form of any word includes the plural and vice versa.

2.      "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3.       "**ANDROID**" shall mean Google's mobile operating system.

4.      "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE.  For the avoidance of doubt, the phrase "**EPIC APP**" shall mean any APP developed and/or published by EPIC, INCLUDING *Fortnite*, *Battlebreakers*, and *Spyjinx*, as well as any APP developed and/or published by EPIC (such as the Epic Games App) that facilitates the download of those or other APPS.

5.      "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

6.      "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play,

the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store, the Epic Games Store, Steam, Origin, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.  For the avoidance of doubt, the phrase "YOUR APP MARKETPLACE" shall refer to the MICROSOFT STORE.

7.      **"COALITION"** shall mean the Coalition for App Fairness.

8.      "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

9.      "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

10.      "**DEFENDANT**" shall mean Apple Inc.

11.      "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.** For the avoidance of doubt, the term YOUR DEVICES shall mean any DEVICE manufactured and/or sold by YOU or for which YOUR software serves as the operating system, and shall include the Windows Phone series of smartphones, the Microsoft Surface and Microsoft Surface Pro and Go series of tablets, and the Xbox series of gaming consoles.

12.      "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books; records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front

2

and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

13.    "**EPIC**" shall mean Epic Games, Inc., its officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on its behalf, or any PERSON or entity that served in any such role at any time, as well as its predecessors, successors, subsidiaries, departments, divisions, joint ventures, and/or affiliates, (including but not limited to Epic Games International S.à r.l and Life on Air, Inc.), and any PERSON that Epic Games, Inc., manages or controls.

14.    "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website) that one may use within an APP, and shall include subscriptions to Office 365, Skype credit, and similar digital products to the extent they are acquired other than through an in-APP purchase.

15.    "**GAME PASS**" shall mean YOUR Xbox cloud gaming APPS INCLUDING Xbox Game Pass, Xbox Live, Xbox live Gold, and Xbox Game Pass Ultimate.

16.    "**GAMMILL DECLARATION**" shall mean the Declaration of Kevin Gammill in Further Support of Plaintiff Epic Games Inc.'s Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, filed in *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.) (ECF No. 40).

17.    "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player. For the avoidance of doubt, the term "**YOUR HANDHELD DEVICES**" shall mean any HANDHELD DEVICE manufactured and/or sold by YOU, and shall include the Windows

3

Phone series of smartphones and the Microsoft Surface and Microsoft Surface Pro and Go series of tablets.

18.    "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

19.    "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, in-game currencies, game levels, access to premium content, or unlocking a full version of an APP.

20.    "**MALWARE**"  shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

21.    "**MICROSOFT OS**" shall mean any operating system offered by YOU for any DEVICE.

22.    "**MICROSOFT STORE**" shall mean any APP MARKETPLACE operated by YOU available on DEVICES, and shall include the Microsoft Store for Xbox, Windows Store, and Windows Phone Store.

23.    "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.), INCLUDING:

      a.   **Edward W. Hayter**, of Brooklyn, NY;

      b.   **Edward Lawrence**, of California;

      c.   **Robert Pepper**, of Chicago, IL;

      d.   **Stephen H. Schwartz**, of Ardsley, NY; and

      e.   **Eric Terrell**, of Oakland, CA.

4

24.    **"NAMED DEVELOPER PLAINTIFF"** shall mean a named plaintiff in *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING:

      a.    **Donald R. Cameron**, of California;

      b.    **Barry Sermons**, of Georgia; and

      c.    **Pure Sweat Basketball, Inc.**, an Illinois corporation.

25.    "**NON-HANDHELD DEVICE**" shall mean laptop computers, desktop computers, or video game consoles. For the avoidance of doubt, the phrase "**YOUR NON-HANDHELD DEVICES**" shall mean any NON-HANDHELD DEVICE manufactured and/or sold by YOU, including the Xbox series of gaming consoles.

26.    "**PERSON**" shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

27.    "**REPORTS**" shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

28.    "**REVIEW**" and "**REVIEWING**" shall mean, with respect to APPS, any process of screening, evaluating, analyzing, approving, or monitoring APPS, regardless of whether such process takes place before or after the publication of APPS in an APP MARKETPLACE or before or after the installation of APPS onto a HANDHELD DEVICE or NON-HANDHELD DEVICE.

29.    "**THE**" shall not be construed as limiting the scope of any topic.

30.    "**YOU**" or "**YOUR**" shall refer to Microsoft Corporation or any of its predecessor or successor companies,    subsidiaries (INCLUDING LinkedIn Corporation and Mojang AB), corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

5

31.     **"xCLOUD"** shall mean YOUR Xbox cloud gaming service.

## INSTRUCTIONS

1.      All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the Request.

2.      In responding to these Requests, YOU shall produce all DOCUMENTS and information in YOUR possession, custody, or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf.

3.      These Requests shall not be deemed to call for identical copies of DOCUMENTS. "Identical" means precisely the same in all respects; for example, a DOCUMENT with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4.      In the event YOU are able to produce only some of the DOCUMENTS called for in a particular Request, YOU shall produce all the DOCUMENTS available and state the reason(s) for YOUR inability to produce the remainder.

5.      If there are no DOCUMENTS responsive to a category in these Requests, YOU shall so state in writing. If a DOCUMENT requested is no longer existing or available, YOU shall so state in writing.

6.      If YOU object to a portion of any Request, YOU shall produce all DOCUMENTS called for by that portion of the Request to which YOU do not object.

7.      In producing DOCUMENTS responsive to these requests, YOU must Bates stamp them in a manner that clearly identifies the party that is producing each such DOCUMENT, and in whose possession the DOCUMENT was found.

8.      If any requested DOCUMENT is withheld on the basis of any claim of privilege,

6

YOU must set forth the information necessary for DEFENDANT to ascertain whether the privilege properly applies, INCLUDING describing the DOCUMENT withheld, stating the privilege being relied upon, identifying all PERSONS (by name) who have had access to such DOCUMENT (INCLUDING all the identity(ies) of the author(s) or maker(s), recipient(s), carbon copy recipient(s), blind carbon copy recipient(s)), the number of attachments (if any), the Bates or production number of any attachments not withheld on the basis of privilege, the applicable date(s), and the subject matter(s) in a privilege log.

9.      If any portion of any DOCUMENT responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

10.      If YOU cannot answer all parts of a Request, but can answer some parts, YOU must answer those parts to which YOU can reply, and specify "unknown," or some other response, as appropriate, for any part to which YOU cannot reply.

11.      Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2008 to the present.

12.      References to any natural PERSON shall include, in addition to the natural PERSON, any agent, employee, representative, attorney, superior, or principal thereof.

13.      Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from January 1 to December 31.

14.      These Requests are to be regarded as continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. YOU are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by YOU or any PERSON acting on YOUR behalf that will augment or modify YOUR answers initially given to the following Requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, YOU are required to supplement these responses and provide additional DOCUMENTS without a specific request from DEFENDANT.

15.     DEFENDANT serves these Requests without prejudice to its right to serve additional requests for production of DOCUMENTS.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

DOCUMENTS sufficient to show the name of each APP, INCLUDING *Minecraft*, that YOU have published in any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and YOUR APP MARKETPLACE(S), and for each such APP:

a.      the dates during which the APP was available for download by U.S. consumers from each APP MARKETPLACE;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each APP MARKETPLACE;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time;

e.      YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available); and

f.      the number of minutes of usage of such APP that took place via a time-based APP MARKETPLACE.

8

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time; and

e.      YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of

EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.       YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time; and

e.       YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show, with respect to any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and YOUR APP MARKETPLACE(S):

a.       the total yearly amount remitted to YOU by each APP MARKETPLACE from sales of APPS and IN-APP PRODUCTS (by APP and method of monetization, if available);

b.       any estimates of or accounting for annual ADVERTISING revenue attributable to each APP MARKETPLACE (by APP, if available);

c.       any estimates of or accounting for YOUR annual revenues from sales of EXTERNAL PRODUCTS attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

d.       any estimates of or accounting for annual revenues (other than the foregoing) attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

e.       any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to each APP MARKETPLACE (by APP and method of monetization, if available); and

f.       any comparisons of monetization rates across each APP MARKETPLACE for YOUR APPS distributed through each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS comparing the distribution of APPS through any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and YOUR APP MARKETPLACE(S), INCLUDING:

      a.      the past or present benefits or costs of distribution in each APP MARKETPLACE;

      b.      past or present fees and commission rates charged by each APP MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness of any APP MARKETPLACE to APP DEVELOPERS;

      c.      past or present security or privacy protections offered in each APP MARKETPLACE;

      d.      past or present APP REVIEW and approval procedures and practices in each APP MARKETPLACE;

      e.      past or present tools for APP DEVELOPERS in each APP MARKETPLACE;

      f.      past or present relative ease or difficulty of updating YOUR APPS in each APP MARKETPLACE;

      g.      past or present market share calculations or estimates for APP MARKETPLACES, INCLUDING the definitions used to perform those calculations;

      h.      past or present decision to distribute YOUR APPS on a particular APP MARKETPLACE;

      i.      contemplated, planned, or actual distribution of YOUR APPS directly (*i.e.*, not through an APP MARKETPLACE) to U.S. users of MICROSOFT OS; and

      j.      past or present APP maintenance activities in each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 6**:

DOCUMENTS sufficient to show YOUR efforts to increase the ability of consumers in the United States to find and download YOUR APPS in any APP MARKETPLACE or to find and download YOUR APP MARKETPLACE(S), INCLUDING any agreement to pre-load YOUR MARKETPLACE(S) on any DEVICES in the United States.

**REQUEST FOR PRODUCTION NO. 7:**

REPORTS CONCERNING YOUR contemplated, planned, or actual development and/or operation of YOUR APP MARKETPLACE(S), INCLUDING:

a.       YOUR decision to build each such APP MARKETPLACE;

b.       YOUR decision to use a particular revenue model in each such APP MARKETPLACE; and

c.       YOUR decision to develop each such APP MARKETPLACE for specific operating systems.

**REQUEST FOR PRODUCTION NO. 8:**

DOCUMENTS sufficient to show, for each year since 2010:

a.       the number of MICROSOFT OS DEVICES sold in the United States, broken down by each model of such devices;

b.       the date(s) of each major release, minor release, and update to each operating system for YOUR DEVICES, the DEVICES each release is compatible with, and the release notes for each such major release, minor release, and update;

c.       the number of APPS submitted by APP DEVELOPERS for distribution through any APP MARKETPLACE to U.S. users of MICROSOFT OS DEVICES, separately for each such APP MARKETPLACE;

d.       the number of APPS available for download or use by U.S. users of MICROSOFT OS DEVICES from any APP MARKETPLACE, separately for each such APP MARKETPLACE;

e.      the average number of user-generated reviews in any APP MARKETPLACE(S) for each APP available for download or use by U.S. users of MICROSOFT OS DEVICES, separately for each such APP MARKETPLACE;

f.      the number of APPS downloaded by U.S. users of MICROSOFT OS DEVICES separately for each APP MARKETPLACE; and

g.      to the extent APPS are available for use on a time-of-use basis, the number of minutes each APP was used through any APP MARKETPLACE(S) by U.S. users of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 9:**

REPORTS CONCERNING comparisons of the number, identity, genre, quality, and/or popularity of APPS available for download from YOUR APP MARKETPLACE(S) and APPS available for download from any other APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 10:**

REPORTS CONCERNING comparisons of the number, identity, genre, quality, and/or popularity of APPS available for download on YOUR DEVICES and APPS available for download on any other DEVICES.

**REQUEST FOR PRODUCTION NO. 11:**

REPORTS CONCERNING any relationship between the number, identity, genre, quality, and/or popularity of APPS available for download from YOUR APP MARKETPLACES and sales of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 12:**

REPORTS CONCERNING any relationship between the number, identity, genre, quality, and/or popularity of APPS available for download on YOUR DEVICES and the sale of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 13:**

REPORTS CONCERNING whether users of YOUR DEVICES are willing to purchase a DEVICE with a different operating system or from a different DEVICE manufacturer than they already own and any switching costs they may consider, INCLUDING the value of any APPS previously purchased that the consumer cannot operate on the new DEVICE.

**REQUEST FOR PRODUCTION NO. 14:**

REPORTS CONCERNING YOUR decision to combine YOUR Windows 10 and Xbox APP MARKETPLACES, creating a "single unified store across all devices," as reported in a March 30, 2016, article in *The Verge*, available at https://www.theverge.com/2016/3/30/11332012/windows-10-xbox-app-stores-combining-microsoft.

**REQUEST FOR PRODUCTION NO. 15:**

DOCUMENTS sufficient to show, for each model of MICROSOFT OS DEVICE sold in the United States since 2010, whether the DEVICE allows users to install APPS from sources other than YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 16:**

REPORTS CONCERNING YOUR decision to limit the ability of users of YOUR DEVICES to install APPS from sources other than YOUR APP MARKETPLACE, INCLUDING REPORTS informing or explaining that decision.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show any efforts undertaken by YOU to attract or incentivize APP DEVELOPERS to develop APPS for distribution to MICROSOFT OS DEVICES.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to show each of YOUR agreements or contracts with APP DEVELOPERS, INCLUDING any agreements or contracts with EPIC, effective during the period that YOU have operated any APP MARKETPLACE, INCLUDING YOUR Microsoft Store App

14

Developer Agreement, and any other contract, guidelines, or rules setting forth the terms and conditions under which APP DEVELOPERS may distribute APPS through YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support YOU provide for APP DEVELOPERS, INCLUDING APP development tools, application programming interfaces ("APIs"), programming tools, technical support, opportunities for testing APPS before they are released to the consumers, marketing, payment processing, refund processing, and security measures.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to show any APIs used by YOUR APPS that YOU did not make available for use by MICROSOFT OS APP DEVELOPERS, INCLUDING undocumented or private APIs, and the period during which such APIs were used by YOUR APPS but not available to MICROSOFT OS APP DEVELOPERS.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS sufficient to show any annual fee(s) or registration fee(s) paid by APP DEVELOPERS in order to develop and publish APPS in YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show any commissions and/or transaction fees charged by YOU when a user makes a purchase from YOUR APP MARKETPLACE(S) or from an APP downloaded from the same, INCLUDING:

a.     any commissions and/or transaction fees charged on the sale of APPS or IN-APP PRODUCTS and any exemptions from or limitations on such commissions or fees; and

b.     the impact on any commission rates and/or transaction fees charged by YOU when a user makes a purchase through the use of any discount, virtual currency, or particular payment method, INCLUDING any particular credit card.

15

**REQUEST FOR PRODUCTION NO. 23:**

REPORTS CONCERNING YOUR decision to change any commission rates on APPS or IN-APP PRODUCTS distributed through YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS sufficient to show, for each year since 2010, any costs YOU incurred to process payments for purchases of APPS and IN-APP PRODUCTS in YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS sufficient to show YOUR policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS in APPS distributed through YOUR APP MARKETPLACE, INCLUDING DOCUMENTS sufficient to show whether YOU require APPS distributed through YOUR APP MARKETPLACE to use a payment and purchase functionality provided by YOU to facilitate purchases of IN-APP PRODUCTS, and if so, whether YOU have ever departed from such requirement with respect to EPIC APPS or any other APP DEVELOPER's APPS.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS, INCLUDING COMMUNICATIONS with EPIC, CONCERNING EPIC's submission of *Fortnite* for distribution through YOUR APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS, INCLUDING COMMUNICATIONS with EPIC, CONCERNING pre-installing EPIC's *Fortnite* on any of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 28:**

DOCUMENTS sufficient to show, for GAME PASS and any other services that offer access to APPS that YOU offer to U.S. users on YOUR DEVICES:

       a.       the dates during which the service was available to U.S. consumers;

b.      for each year that the service was available, the number U.S. consumers who subscribed to or otherwise used it;

c.      the method(s) used to monetize the service, INCLUDING, but not limited to, ADVERTISING and subscriptions;

d.      YOUR decision to monetize the service, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time; and

e.      YOUR annual revenues from the service (by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 29**:

DOCUMENTS and COMMUNICATIONS CONCERNING YOUR ability to distribute xCLOUD or GAME PASS to DEVICE users.

**REQUEST FOR PRODUCTION NO. 30:**

REPORTS CONCERNING YOUR distribution of YOUR APPS through the "Play Anywhere" initiative, as described at https://www.xbox.com/en-US/games/xbox-play-anywhere, INCLUDING your decision to implement the initiative, the rationale for the initiative, and any changes in commission rates charged.

**REQUEST FOR PRODUCTION NO. 31:**

REPORTS CONCERNING YOUR decision to implement a "new Microsoft Store revenue share," as described in a May 7, 2018, blog post, available at https://blogs.windows.com/windowsdeveloper/2018/05/07/a-new-microsoft-store-revenue-share-is-coming/, INCLUDING REPORTS explaining or informing YOUR decision to exempt any category of APPS from this policy, such as by genre or by platform.

**REQUEST FOR PRODUCTION NO. 32:**

REPORTS CONCERNING YOUR decision to "remove[] the 95/5% revenue share program that previously applied to qualifying apps on applicable platforms when customer acquisition was directly driven by the Publisher's promotion activities," as described in the "Main

Change History Summary" on page 49 of YOUR current effective Microsoft Store App Developer Agreement, available at https://query.prod.cms.rt.microsoft.com/cms/api/am/binary/RE4o4bH.

**REQUEST FOR PRODUCTION NO. 33:**

DOCUMENTS sufficient to describe YOUR efforts to REVIEW APPS made available to users of MICROSOFT OS DEVICES, whether through YOUR APP MARKETPLACE(S) or any other source, INCLUDING:

a.      guidelines, policies, and/or procedures for REVIEWING APPS, INCLUDING each effective version of YOUR MICROSOFT STORE Policies, (currently available at https://docs.microsoft.com/en-us/windows/uwp/publish/store-policies-and-code-of-conduct);

b.      separately by year and operating system, any costs YOU incurred or resources YOU expended in REVIEWING APPS;

c.      the efficacy of any such REVIEW of APPS, INCLUDING the number of instances of MALWARE YOU detected, the number of instances of MALWARE YOUR REVIEW failed to detect, and consumer and APP DEVELOPER COMMUNICATIONS regarding any such REVIEW; and

d.      actual or intended efforts to communicate to users that YOU have REVIEWED such APPS.

**REQUEST FOR PRODUCTION NO. 34:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within, any division or unit of YOUR business that is responsible for APP distribution, YOUR APP MARKETPLACE(S) (INCLUDING APP REVIEW), and/or YOUR DEVICES, INCLUDING any organizational charts or employee directories pertaining to such business unit(s) or division(s).

**REQUEST FOR PRODUCTION NO. 35:**

DOCUMENTS sufficient to show the following per-user averages for consumers associated with YOUR APP MARKETPLACE separately for each year since 2010:

     a.       annual spending on APPS and IN-APP PRODUCTS;

     b.       annual amounts received by YOU due to ADVERTISING shown to the user;

     c.       the portion of annual spending that is attributable to credits, discounts, or virtual currencies, INCLUDING gift cards, promotional codes, or the use of any particular credit card.

**REQUEST FOR PRODUCTION NO. 36:**

REPORTS CONCERNING the existence of MALWARE, INCLUDING any efforts to measure or quantify the number of APPS that contained MALWARE, the number of downloads of APPS that contained MALWARE and the impact of such MALWARE in:

     a.       APPS offered by YOUR APP MARKETPLACE(S); and

     b.       APPS offered by APP MARKETPLACES other than YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 37:**

DOCUMENTS sufficient to show, for each NAMED CONSUMER PLAINTIFF:

     a.       the number of APPS downloaded by the NAMED CONSUMER PLAINTIFF from YOUR APP MARKETPLACE(S);

     b.       for each APP downloaded by the NAMED CONSUMER PLAINTIFF from YOUR APP MARKETPLACE(S):

          i.       the identity of the APP;

          ii.       the date of download;

          iii.       the price paid for the download;

          iv.       the date that any IN-APP PRODUCT associated with the APP was purchased and the price paid for the IN-APP PRODUCT;

          v.       whether the APP uses a third party services for ADVERTISING; and

          vi.       to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

c.      the number of APPS downloaded by the NAMED CONSUMER PLAINTIFF from an APP MARKETPLACE other than YOURS onto a MICROSOFT OS DEVICE; and

d.      for each APP downloaded by the NAMED CONSUMER PLAINTIFF from an APP MARKETPLACE other than YOURS onto a MICROSOFT OS DEVICE:

i.      the identity of the APP;

ii.      the date of download;

iii.      the price paid for the download;

iv.      the date that any IN-APP PRODUCT associated with the APP was purchased and the price paid for the IN-APP PRODUCT;

v.      whether the APP uses any third party service for ADVERTISING; and

vi.      to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 38:**

DOCUMENTS sufficient to show, for each NAMED DEVELOPER PLAINTIFF:

a.      whether the NAMED DEVELOPER PLAINTIFF has published APPS on YOUR APP MARKETPLACE(S);

b.      any identification or account number associated with the NAMED DEVELOPER PLAINTIFF; and

c.      for each APP published by the NAMED DEVELOPER PLAINTIFF on YOUR APP MARKETPLACE(S):

i.      the name of the APP;

ii.      the date range during which the APP was available for download on YOUR APP MARKETPLACE(S);

iii.      the number of times the APP has been downloaded from YOUR APP MARKETPLACE(S) each year;

iv.      the price of the APP and any IN-APP PRODUCT associated with the APP

on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time;

v.      the total amount of money remitted by YOU to the NAMED DEVELOPER PLAINTIFF for purchases of such APP or associated IN-APP PRODUCT(S);

vi.     whether the APP uses any third party service for ADVERTISING; and

vii.    to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 39:**

DOCUMENTS (INCLUDING data) sufficient to show, for each month since 2010:

a.      whether EPIC has published APPS on YOUR APP MARKETPLACE(S);

b.      any identification or account number associated with EPIC;

c.      for each APP published by EPIC on YOUR APP MARKETPLACE(S):

i.      the name of the APP;

ii.     the date range during which the APP was available for download on YOUR APP MARKETPLACE(S);

iii.    the number of times the APP has been downloaded from YOUR APP MARKETPLACE(S) each year;

iv.     the price of the APP and any IN-APP PRODUCT associated with the APP on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time;

v.      the total value in U.S. dollars of IN-APP PRODUCTS sold through EPIC APPS downloaded from YOUR APP MARKETPLACE;

vi.     the total value in U.S. dollars of EPIC APPS downloaded from YOUR APP MARKETPLACE;

vii.    the amount that YOU earned in commissions from each download of any

EPIC APP, and the effective commission rate on each such transaction;

viii.    the amount that YOU earned in commissions from each sale of any IN-APP PRODUCT through EPIC APPS, and the effective commission rate on each such transaction;

ix.    whether the APP uses any third party service for ADVERTISING; and

x.    to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 40:**

DOCUMENTS sufficient to describe YOUR decision to prohibit or allow "cross-play" (*i.e.*, play between users on YOUR DEVICES and users on DEVICES other than YOUR DEVICES) in any particular APP.

**REQUEST FOR PRODUCTION NO. 41:**

DOCUMENTS sufficient to describe YOUR decision to prohibit or allow IN-APP PRODUCTS purchased outside of YOUR APP MARKETPLACE(s) or EXTERNAL PRODUCTS to be used on YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 42:**

ALL COMMUNICATIONS between YOU and any NAMED CONSUMER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 43:**

ALL COMMUNICATIONS between YOU and any NAMED DEVELOPER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 44:**

ALL COMMUNICATIONS between YOU and any APP DEVELOPER, INCLUDING EPIC CONCERNING:

a.    the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;

b.    policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS;

22

      c.      the following ongoing litigation, INCLUDING declarations, anticipated oral testimony, or documentary evidence relating to the same:

          i.     *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

          ii.     *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

          iii.    *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

          iv.    *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

          v.     *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

**REQUEST FOR PRODUCTION NO. 45:**

ALL DOCUMENTS and COMMUNICATIONS CONCERNING the GAMMILL DECLARATION.

**REQUEST FOR PRODUCTION NO. 46:**

ALL COMMUNICATIONS between YOU and any DEVICE manufacturer or telecommunications provider (INCLUDING Verizon Wireless, AT&T Mobility, T-Mobile U.S., or Sprint Corporation) CONCERNING:

      a.      the presence or risk of any APPS with MALWARE in any APP MARKETPLACE;

      b.      any APPS rejected, removed, or hidden from any APP MARKETPLACE;

      c.      any APP DEVELOPER for whom YOU have in any way restricted their/its ability to publish APPS in YOUR APP MARKETPLACE;

      d.      any discussion or agreement regarding pre-installation of APPS or APP MARKETPLACES on DEVICES;

      e.      any relationship between the ability to install or use a given APP MARKETPLACE on a DEVICE and the attractiveness to consumers of such DEVICE; and

      f.      any tendency for consumers to prefer purchasing DEVICES with the same operating system or from the same DEVICE manufacturer from whom they have previously purchased, and any costs to consumers, INCLUDING switching costs, associated with purchasing

a DEVICE with a different operating system or from a different DEVICE manufacturer and the value of any APPS previously purchased that the consumer cannot operate on the new DEVICE.

**REQUEST FOR PRODUCTION NO. 47:**

DOCUMENTS sufficient to show YOUR rules and policies regarding the pricing of APPS on YOUR APP MARKETPLACE(S), INCLUDING:

a.     any requirements that prices end in a specific number (*e.g.*, ".99");

b.     any variations in pricing based on the use of payment methods by consumers (*e.g.*, discounts); and

c.     any requirements that prices for APPS in YOUR APP MARKETPLACE(S) be linked to prices charged for the same APPS in other APP MARKETPLACES other than YOURS  (*e.g.*, "most favored nation" requirements).

**REQUEST FOR PRODUCTION NO. 48:**

ALL COMMUNICATIONS or DOCUMENTS exchanged between YOU and any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING any APP MARKETPLACE(S), the COALITION, or the DEFENDANT.

**REQUEST FOR PRODUCTION NO. 49:**

ALL COMMUNICATIONS with any actual or proposed founder or member of the COALITION, INCLUDING Basecamp, Blix Inc., Blockchain.com, Deezer, EPIC, European Publishers Council, Match Group Inc., News Media Europe, Prepear Inc., ProtonMail, SkyDemon, and Tile, CONCERNING the COALITION, the DEFENDANT, any APP MARKETPLACE(S), YOUR APP(s), and/or any allegations or suspicion of any anti-competitive conduct or behavior.

**REQUEST FOR PRODUCTION NO. 50:**

ALL COMMUNICATIONS or DOCUMENTS CONCERNING YOUR decision to adopt the COALITION'S 10 principles for the Microsoft Store for Windows 10 as reported in an October

8, 2020 blogpost on YOUR website, available at https://blogs.microsoft.com/on-the-issues/2020/10/08/app-store-fairness-caf-interoperability-principles/.

**REQUEST FOR PRODUCTION NO. 51:**

ALL COMMUNICATIONS or DOCUMENTS CONCERNING YOUR decision not to adopt the COALITION'S 10 principles for YOUR Microsoft Store for Xbox as reported in an October 8, 2020 article in *Variety*, available at https://variety.com/2020/digital/news/microsoft-app-store-principles-apple-fairness-1234797486/.

**REQUEST FOR PRODUCTION NO. 52:**

Any rulings, judgments, or findings of fact or law made by any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING YOUR APP MARKETPLACE(S) and any allegations or suspicion of any anti-competitive conduct or behavior.

# Exhibit B

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

EPIC GAMES, INC. v. APPLE INC.
CAMERON ET AL v. APPLE INC.
IN RE APPLE IPHONE ANTITRUST LITIGATION

)
)
)
)
)
)

Civil Action Nos.       4:20-CV-05640-YGR
                        4:19-CV-03074-YGR
                        4:11-CV-06714-YGR

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
            Lori Wright, One Microsoft Way, Redmond, WA 98052-6399

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. The deposition will be recorded by a stenographer or court reporter, will be recorded by video and audio means, and may also be recorded by instant display of the stenographic record.

| | |
|---|---|
| Place:  McDermott Will & Emery LLP<br> 2049 Century Park East, Suite 3200,<br> Los Angeles CA 90067-3206<br> Or as otherwise agreed. | Date and Time:<br> 04/20/2021 9:00 am |

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

            *CLERK OF COURT*
                                    OR
        _____          _____
        *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Apple Inc.
_____, who issues or requests this subpoena, are:
Jay Srinivasan, 333 South Grand Avenue, Los Angeles, CA 90017, JSrinivasan@gibsondunn.com, (213) 229-7296

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

    **(i)** is a party or a party's officer; or

    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and

    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit C

| | |
|---|---|
| **From:** | Brandon Kressin |
| **To:** | Lowery, Michelle |
| **Cc:** | Catherine Larsen; Jonathan Kanter; Castle, Nicole; Rodd, Elizabeth |
| **Subject:** | RE: Microsoft/Yoga Buddhi |
| **Date:** | Thursday, April 8, 2021 3:39:21 PM |
| **Attachments:** | image003.png |
| | image004.png |
| | image005.png |

**[ External Email ]**

Hi Michelle:

I'm afraid that doesn't work for us. Ms. Wright is a busy executive and she made significant sacrifices to clear her entire calendar on April 16th. This is the date she is available. We look forward to seeing you then.

Best,

Brandon

 **Brandon Kressin**
202.455.4244
brandon@kanterlawgroup.com

---

**From:** Lowery, Michelle <Mslowery@mwe.com>
**Sent:** Thursday, April 8, 2021 1:18 PM
**To:** Brandon Kressin <brandon@kanterlawgroup.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter <jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth <Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

Hi Brandon,

We tried to make the 16th work on our end, but it will not work for Apple.  Could you please provide any other dates prior to trial that Ms. Wright might be available for deposition?

Thanks,

Michelle

Michelle Lowery
**McDermott Will & Emery LLP** | Tel: 310.551.9309

---

**From:** Lowery, Michelle
**Sent:** Friday, April 2, 2021 2:47 PM
**To:** 'Brandon Kressin' <brandon@kanterlawgroup.com>

**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter <jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth <erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

Brandon,

Thanks for checking and thanks for letting me know.  We will work on making the 16th work on our end.

Michelle

Michelle Lowery
**McDermott Will & Emery LLP** | Tel: 310.551.9309

**From:** Brandon Kressin <brandon@kanterlawgroup.com>
**Sent:** Friday, April 2, 2021 9:13 AM
**To:** Lowery, Michelle <Mslowery@mwe.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter <jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth <Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

**[ External Email ]**
Michelle:

We have checked with Microsoft, and I'm afraid that the 19^nd through the 22nd will not work for Ms. Wright. If you'd like to discuss, please feel free to give me a call at 913-593-5979.

Thanks,

Brandon



**Brandon Kressin**
202.455.4244
brandon@kanterlawgroup.com

**From:** Brandon Kressin
**Sent:** Friday, April 2, 2021 10:52 AM
**To:** Lowery, Michelle <Mslowery@mwe.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter <jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth <Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

Michelle:

We are still checking on Ms. Wright's schedule. Regarding Down Dog, Mr. Simons will be available for a deposition on April 14.

Thanks,

Brandon



**Brandon Kressin**
202.455.4244
brandon@kanterlawgroup.com

---

**From:** Lowery, Michelle <Mslowery@mwe.com>
**Sent:** Thursday, April 1, 2021 9:11 PM
**To:** Brandon Kressin <brandon@kanterlawgroup.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter
<jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth
<Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

Thank you, Brandon.  Please let us know about Ms. Wright as well as when you have a proposed date for Mr. Simon.  We hope to have these drafts back to you tomorrow.

Michelle Lowery
**McDermott Will & Emery LLP** | Tel: 310.551.9309

**From:** Brandon Kressin <brandon@kanterlawgroup.com>
**Sent:** Wednesday, March 31, 2021 8:25 PM
**To:** Lowery, Michelle <Mslowery@mwe.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter
<jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth
<Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

**[ External Email ]**
Hi Michelle:

Unfortunately, Ms. Wright's schedule is very tight, but we will check whether there is any way to accommodate the week of the 19th through the 22nd.

Regarding the motions to compel, please find attached drafts from Microsoft and Yoga Buddhi.

Please let me know if you have any questions and when we should expect to see Apple's

revised drafts.

Thanks,

Brandon



**Brandon Kressin**
202.455.4244
brandon@kanterlawgroup.com

---

**From:** Lowery, Michelle <Mslowery@mwe.com>
**Sent:** Wednesday, March 31, 2021 5:44 PM
**To:** Brandon Kressin <brandon@kanterlawgroup.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter
<jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth
<Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

Brandon,

We understand that Ms. Wright was tentatively available on April 16.  I am wondering if there is any possibility that she also is available sometime the following week (except Friday).

Thanks very much,

Michelle

Michelle Lowery
**McDermott Will & Emery LLP** | Tel: 310.551.9309

---

**From:** Brandon Kressin <brandon@kanterlawgroup.com>
**Sent:** Monday, March 29, 2021 5:16 AM
**To:** Lowery, Michelle <Mslowery@mwe.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter
<jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth
<Erodd@mwe.com>
**Subject:** Re: Microsoft/Yoga Buddhi

**[ External Email ]**
Michelle,

We are working on our drafts and will aim to send those drafts to you on Wednesday.

Thank you,

Brandon

**From:** Lowery, Michelle <Mslowery@mwe.com>
**Sent:** Friday, March 26, 2021 5:12:50 PM
**To:** Brandon Kressin <brandon@kanterlawgroup.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter
<jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth
<Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

Jonathan, Brandon and Catherine,

Attached please find draft letter briefs for Microsoft and Yoga Buddhi.  Please let us know how
much time you need to respond.  If possible, we think it makes sense to try to get these on file next
week so that we can have a hearing the week of April 5 and therefore try to keep your proposed
deposition dates in tact. To that end, we have held April 16 for Microsoft.  Let us know if that is
confirmed and whether you have identified a potential date for Yoga Buddhi.

We also had discussed whether a coordinated approach would work for the third parties.  My
understanding is that the other third parties have agreed to continue discussions of documents to be
produced, so may not be filing letter briefs.  We, of course, remain open to those same discussions if
either of your clients are so inclined.

Thanks,

Michelle

Michelle Lowery
**McDermott Will & Emery LLP**  | Tel: 310.551.9309

**From:** Brandon Kressin <brandon@kanterlawgroup.com>
**Sent:** Friday, March 19, 2021 10:30 AM
**To:** Lowery, Michelle <Mslowery@mwe.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter
<jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth
<Erodd@mwe.com>
**Subject:** RE: Microsoft/Yoga Buddhi

**[ External Email ]**
Thank you, Michelle, we accept service. We will get back to you regarding that times that
will work for the witnesses. Also, we are available for a call at 2:30 EST on Tuesday.

Best,

Brandon

**Brandon Kressin**
202.455.4244

 brandon@kanterlawgroup.com

---

**From:** Lowery, Michelle <Mslowery@mwe.com>
**Sent:** Friday, March 19, 2021 12:25 PM
**To:** Brandon Kressin <brandon@kanterlawgroup.com>
**Cc:** Catherine Larsen <catherine@kanterlawgroup.com>; Jonathan Kanter <jonathan@kanterlawgroup.com>; Castle, Nicole <NCastle@mwe.com>; Rodd, Elizabeth <Erodd@mwe.com>
**Subject:** Microsoft/Yoga Buddhi

Hi Brandon,

Please see attached deposition notices for Ms. Wright of Microsoft and Mr. Simon of Yoga Buddhi. Would you mind confirming you can accept service? We have set the dates as approximate placeholders, but please let us know what works for you and for the witnesses.

In addition, given that your clients are now providing witnesses for trial, we would like to set a time to meet and confer about Microsoft's and Yoga Buddhi's subpoena responses in this case. Do you have availability?

- Monday, March 22 after 1030 am pacific/130 eastern
- Tuesday March 23 at 830-930 pacific/1130-1230 eastern
- Tuesday March 23 at 1030-1230 pacific/130-330 eastern

Thanks,

Michelle

Michelle Lowery
PARTNER
**McDermott Will & Emery LLP**  2049 Century Park E, Los Angeles, CA 90067
**Tel** +1 310 551 9309
**Biography** | **Website** | **vCard** | **Twitter** | **LinkedIn** | **Blog**

**McDermott Ranks Among the Top 20 Antitrust and Competition Practices in the World**
*Global Competition Review 100 – Global Elite*

************************************************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the

information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
*************************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

# Exhibit D

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | | | |
|---|---|---|---|
| EPIC GAMES, INC. v. APPLE INC. | ) | Civil Action Nos. | 4:20-CV-05640-YGR |
| CAMERON ET AL v. APPLE INC. | ) | | 4:19-CV-03074-YGR |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | ) | | 4:11-CV-06714-YGR |
| | ) | | |
| | ) | | |
| | ) | | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:              Yoga Buddhi Co.
(c/o InCorp Services, Inc., 5716 Corsa Ave, Suite 110, Westlake Village, CA 91362-7354)
*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

          See Schedule A

| Place: McDermott Will & Emery LLP<br>        2049 Century Park East<br>        Suite 3200<br>        Los Angeles, CA 90067-3206<br><br>        Or as otherwise agreed. | Date and Time:<br>December 22, 2020 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

          The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: December 8, 2020

          *CLERK OF COURT*

                                                                        OR          /s/ Michelle Lowery
_____                    _____
      *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*
                                                                                    Michelle Lowery

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*          Apple Inc.
_____ , who issues or requests this subpoena, are:

Michelle Lowery, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206, mslowery@mwe.com, (310) 551-9309



American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action Nos. 4:20-CV-05640-YGR, 4:19-CV-03074-YGR, 4:20-CV-05640-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐   I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ on *(date)*

☐   I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____   My fees are $ _____   My fees are $ _____

I declare under penalty of perjury that this information is true.

Date: _____        Date: _____

                                                                  *Server's signature*

                                                     *Printed name and title*

                                                     *Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

1.      The following rules of construction shall apply to all discovery requests:

     a.  the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

     b.  the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

     c.  "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

     d.  the use of the singular form of any word includes the plural and vice versa.

2.      "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3.      "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE.  For the avoidance of doubt, the phrase "**YOUR APP**" shall mean any APP developed and/or published by YOU.

4.      "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

5.      "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, the Windows Store, the Windows Phone Store, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and websites that offer APPS.

1

6.      "**COALITION**" shall mean the Coalition for App Fairness in which YOU are a member or founder.

7.      "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

8.      "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

9.      "**DEFENDANT**" shall mean Apple Inc.

10.     "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.**

11.     "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books; records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

2

12.     "**EPIC**" shall mean Epic Games, Inc., its officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on its behalf, or any PERSON or entity that served in any such role at any time, as well as its predecessors, successors, subsidiaries, departments, divisions, joint ventures, and/or affiliates, (including but not limited to Epic Games International S.à r.l and Life on Air, Inc.), and any PERSON that Epic Games, Inc., manages or controls.

13.     "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website) that one may use within an APP.

14.     "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player.

15.     "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

16.     "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, access to premium content, unlocking a full version of an APP, or paying to eliminate advertisements within an application.

17.     "**MALWARE**" shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

18.     "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.), INCLUDING:

    a.  **Edward W. Hayter**, of Brooklyn, NY;

    b.  **Edward Lawrence**, of California;

    c.  **Robert Pepper**, of Chicago, IL; and

      d.   **Stephen H. Schwartz**, of Ardsley, NY.

19.    **"NAMED DEVELOPER PLAINTIFF"** shall mean a named plaintiff in *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING:

      a.   **Donald R. Cameron**, of California;

      b.   **Barry Sermons**, of Georgia; and

      c.   **Pure Sweat Basketball, Inc.**, an Illinois corporation.

20.    **"NON-HANDHELD DEVICE"** shall mean laptop computers, desktop computers, or video game consoles.

21.    **"PERSON"** shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

22.    **"REPORTS"** shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

23.    **"THE"** shall not be construed as limiting the scope of any topic.

24.    **"YOU"** or **"YOUR"** shall refer to Yoga Buddhi Co. or any of its predecessor or successor companies, subsidiaries, corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

## INSTRUCTIONS

1.    All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the Request.

2.    In responding to these Requests, YOU shall produce all DOCUMENTS and information in YOUR possession, custody, or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former

attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf.

3.      These Requests shall not be deemed to call for identical copies of DOCUMENTS. "Identical" means precisely the same in all respects; for example, a DOCUMENT with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4.      In the event YOU are able to produce only some of the DOCUMENTS called for in a particular Request, YOU shall produce all the DOCUMENTS available and state the reason(s) for YOUR inability to produce the remainder.

5.      If there are no DOCUMENTS responsive to a category in these Requests, YOU shall so state in writing. If a DOCUMENT requested is no longer existing or available, YOU shall so state in writing.

6.      If YOU object to a portion of any Request, YOU shall produce all DOCUMENTS called for by that portion of the Request to which YOU do not object.

7.      In producing DOCUMENTS responsive to these requests, YOU must Bates stamp them in a manner that clearly identifies the party that is producing each such DOCUMENT, and in whose possession the DOCUMENT was found.

8.      If any requested DOCUMENT is withheld on the basis of any claim of privilege, YOU must set forth the information necessary for DEFENDANT to ascertain whether the privilege properly applies, INCLUDING describing the DOCUMENT withheld, stating the privilege being relied upon, identifying all PERSONS (by name) who have had access to such DOCUMENT (INCLUDING all the identity(ies) of the author(s) or maker(s), recipient(s), carbon copy recipient(s), blind carbon copy recipient(s)), the number of attachments (if any), the Bates or production number of any attachments not withheld on the basis of privilege, the applicable date(s), and the subject matter(s) in a privilege log.

9.      If any portion of any DOCUMENT responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be

5

privileged redacted and logged in a privilege log pursuant to the preceding instructions.

10.     If YOU cannot answer all parts of a Request, but can answer some parts, YOU must answer those parts to which YOU can reply, and specify "unknown," or some other response, as appropriate, for any part to which YOU cannot reply.

11.     Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2015 to the present.

12.     References to any natural PERSON shall include, in addition to the natural PERSON, any agent, employee, representative, attorney, superior, or principal thereof.

13.     Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from January 1 to December 31.

14.     These Requests are to be regarded as continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. YOU are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by YOU or any PERSON acting on YOUR behalf that will augment or modify YOUR answers initially given to the following Requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, YOU are required to supplement these responses and provide additional DOCUMENTS without a specific request from DEFENDANT.

15.     DEFENDANT serves these Requests without prejudice to its right to serve additional requests for production of DOCUMENTS.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

DOCUMENTS sufficient to show the name of each APP, that YOU have published in any APP MARKETPLACE and for each such APP:

a.      the dates during which the APP was available for download by U.S. consumers from each APP MARKETPLACE;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each APP MARKETPLACE;

c.      for each APP MARKETPLACE, the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time;

e.      the amount charged for APP downloads, subscriptions, and IN-APP PRODUCTS, by APP MARKETPLACE;

f.      YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available); and

g.      the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show, with respect to any APP MARKETPLACE:

a.      the total yearly amount remitted to YOU by each APP MARKETPLACE from sales of APPS, subscriptions, and IN-APP PRODUCTS (by APP and method of monetization, if available);

b.      any estimates of or accounting for annual ADVERTISING revenue attributable to each APP MARKETPLACE (by APP, if available);

c.      any estimates of or accounting for YOUR annual revenues from sales of EXTERNAL PRODUCTS attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

d.      any estimates of or accounting for annual revenues (other than the foregoing) attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

7

e.      any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to each APP MARKETPLACE (by APP and method of monetization, if available); and

f.      any comparisons of monetization rates across each APP MARKETPLACE for YOUR APPS distributed through each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time;

e.      the amount charged for APP downloads and IN-APP PRODUCTS; and

f.       YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time;

e.      the amount charged for APP downloads and IN-APP PRODUCTS; and

f.      YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS comparing the distribution of YOUR APPS through different APP MARKETPLACES INCLUDING:

a.      the past or present benefits or costs of distribution in each APP MARKETPLACE;

b.      past or present fees and commission rates charged by each APP MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness of the APP MARKETPLACE to YOU;

c.      past or present security or privacy protections offered in each APP MARKETPLACE;

d.      past or present APP REVIEW and approval procedures and practices in each APP MARKETPLACE;

e.      past or present tools for APP DEVELOPERS in each APP MARKETPLACE;

f.      past or present relative ease or difficulty of updating YOUR APPS in each APP MARKETPLACE;

9

g.      past or present decision to distribute YOUR APPS on a particular APP MARKETPLACE;

h.      contemplated, planned, or actual distribution of YOUR APPS directly (*i.e.*, not through an APP MARKETPLACE) to DEVICE users; and

i.      past or present APP maintenance activities in each APP MARKETPLACE.

## REQUEST FOR PRODUCTION NO. 6:

REPORTS concerning competition for each of YOUR APPS, INCLUDING:

a.      who YOU consider to be YOUR competitors for each of YOUR APPS;

b.      whether YOU offer the products or services available in YOUR APPS to NON-HANDHELD DEVICE users; and

c.      comparisons of YOUR APPS to other competing products.

## REQUEST FOR PRODUCTION NO. 7:

DOCUMENTS sufficient to show YOUR processes and protocols related to security, user data protection and protection against MALWARE, INCLUDING:

   a.   amount of time allocated as part of the development of YOUR APPS to security, user data protection and protection against MALWARE;

   b.   costs YOU incur related to your efforts to make YOUR APPS secure, protect user data and protect users from MALWARE;

   c.   controls you have in place in relation to each of YOUR APPS that protect user data and protect user from MALWARE; and

   d.   frequency of and results from third party security review.

## REQUEST FOR PRODUCTION NO. 8:

REPORTS AND DOCUMENTS related to the existence of MALWARE in connection with any of YOUR APPS, INCLUDING, in relation to each MALWARE incident:

   a.   description of the MALWARE and how it was used to attack the user's DEVICE, INCLUDING whether the MALWARE resulted in ransomware being installed on the user's DEVICE;

10

b.  the number of users impacted and any financial loss incurred by the users and by YOU;

c.  breakdown of the DEVICES the users were using at the time the MALWARE was used to attack their DEVICE;

d.  any change in user DEVICE preference as a result of a MALWARE incident;

e.  breakdown of which APP MARKETPLACE(S) the users downloaded the APP from that was affected by the MALWARE;

f.  details of how YOU became aware of the incident, how long the MALWARE was active, and what actions you took to stop the incident; and

g.  security updates and measures you took to prevent future MALWARE incidents.

**REQUEST FOR PRODUCTION NO. 9**:

DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING any  security  or privacy concerns or incidents YOU had in relation to any APP MARKETPLACE or DEVICE.

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS, INCLUDING COMMUNICATIONS CONCERNING the COALITION INCLUDING its formation, documents of incorporation, bylaws, purpose, objectives, activities, sponsorship, founders, meeting minutes, membership, and fees.

**REQUEST FOR PRODUCTION NO. 11**:

DOCUMENTS CONCERNING COMMUNICATIONS with any actual or proposed founder or member of the COALITION, INCLUDING Basecamp, Blix Inc., Blockchain.com, Deezer, Epic Games Inc., European Publishers Council, Match Group Inc., News Media Europe, Prepear Inc., ProtonMail, SkyDemon, and Tile, CONCERNING the COALITION, DEFENDANT, any APP MARKETPLACE, YOUR APP(s), and/or any allegations or suspicion of any anti-competitive conduct or behavior.

**REQUEST FOR PRODUCTION NO. 12**:

For each of YOUR APPS, DOCUMENTS sufficient to show the extent to which:

a.  IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased on one DEVICE can be applied to the same APP on another DEVICE;

b. IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased outside of a DEVICE can be applied to YOUR APPS; and

c.  consumers use the APP on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 13:**

For each of YOUR APPS, DOCUMENTS sufficient to show the prices of IN-APP PRODUCTS or EXTERNAL PRODUCTS, whether those prices vary based on DEVICE or where purchased, and whether APP users respond to discounts on IN-APP PRODUCTS or EXTERNAL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 14:**

DOCUMENTS CONCERNING YOUR decision to sell YOUR APPS, INCLUDING subscriptions, at a discounted or different price on YOUR website than through IN-APP purchases.

**REQUEST FOR PRODUCTION NO. 15:**

REPORTS CONCERNING the habits of YOUR APP users, INCLUDING whether users of YOUR APPS own multiple DEVICES and whether they use YOUR APPS on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 16**:

DOCUMENTS CONCERNING YOUR negotiations with operators of APP MARKETPLACES, INCLUDING YOUR negotiations CONCERNING commission rates.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show YOUR efforts to increase the ability of consumers in the United States to find and download YOUR APPS in any APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to show YOUR agreements or contracts with any APP MARKETPLACE or DEVICE manufacturer, INCLUDING any guidelines or rules setting forth

the terms and conditions under which YOU may distribute YOUR APPS through any APP MARKETPLACE(S) or to DEVICE users.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support provided to YOU by any APP MARKETPLACE or DEVICE manufacturer, INCLUDING APP development tools, application programming interfaces ("APIs"), programming tools, technical support, opportunities for testing APPS before they are released to the consumers, marketing, payment processing, refund processing, and security measures.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS relating to the interaction of YOUR APPS with APPLE's "Health" App and any benefits derived by users from such interactions.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS relating to any advantages YOU perceive from YOUR APPS not storing user credit card information.

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show YOUR marketing strategy for growing your user base and how each strategy contributed to YOUR APPS getting downloaded millions of times.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS and COMMUNICATIONS, INCLUDING customer complaints and reviews, for each of YOUR APPS relating to:

a.  YOUR customer service and responsiveness;

b.  YOUR APPS conducting any background activity without obtaining customer permission; and

c.  Any instances where an APP MARKETPLACE helped resolve any customer complaints, INCLUDING any instances where the APP MARKETPLACE refunded a customer any money.

13

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within, any division or unit of YOUR business that is responsible for YOUR APPS.

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS sufficient to show what user information and data YOU collect and how YOU collect the user information and data, INCLUDING data about each user's activity such as configurations and preferences chosen and classes taken and favored and/or saved.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS sufficient to show how YOU use user information and data, INCLUDING all third parties with whom you share user information and data with, INCLUDING REPORTS reflecting when and how you have shared user information and data with third parties.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS relating to YOUR privacy practices and concerns about user privacy, INCLUDING any customer COMMUNICATIONS raising questions or concerns about how YOU use and/or share customer information and data.

**REQUEST FOR PRODUCTION NO. 28:**

ALL COMMUNICATIONS between YOU and any NAMED CONSUMER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 29:**

ALL COMMUNICATIONS between YOU and any NAMED DEVELOPER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 30:**

ALL COMMUNICATIONS between YOU and any APP DEVELOPER, INCLUDING EPIC, or any member of the COALITION, CONCERNING:

a.       the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;

b.       policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS;

14

c.      the following ongoing litigation, INCLUDING declarations, anticipated oral testimony, or documentary evidence relating to the same:

     i.      *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

     ii.     *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

     iii.    *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

     iv.     *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

     v.      *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

**REQUEST FOR PRODUCTION NO. 31:**

ALL COMMUNICATIONS or DOCUMENTS exchanged between YOU and any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING any APP MARKETPLACE(S), the DEFENDANT, or YOUR privacy practices and user data.

**REQUEST FOR PRODUCTION NO. 32:**

ALL DOCUMENTS provided to EPIC in relation to any of the following litigations:

     i.      *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

     ii.     *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

     iii.    *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

     iv.     *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

     v.      *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).