| | |
|---|---|
| PAUL J. RIEHLE (SBN 115199)<br>paul.riehle@faegredrinker.com<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center<br>San Francisco, CA 94111<br>Telephone: (415) 591-7500<br>Facsimile: (415) 591-7510<br><br>CHRISTINE A. VARNEY (*pro hac vice*)<br>cvarney@cravath.com<br>KATHERINE B. FORREST (*pro hac vice*)<br>kforrest@cravath.com<br>GARY A. BORNSTEIN (*pro hac vice*)<br>gbornstein@cravath.com<br>YONATAN EVEN (*pro hac vice*)<br>yeven@cravath.com<br>LAUREN A. MOSKOWITZ (*pro hac vice*)<br>lmoskowitz@cravath.com<br>M. BRENT BYARS (*pro hac vice*)<br>mbyars@cravath.com<br>**CRAVATH, SWAINE & MOORE LLP**<br>825 Eighth Avenue<br>New York, New York 10019<br>Telephone: (212) 474-1000<br>Facsimile: (212) 474-3700<br><br>*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*<br><br>[Additional counsel appear on signature page] | THEODORE J. BOUTROUS JR. (SBN 132099)<br>tboutrous@gibsondunn.com<br>RICHARD J. DOREN (SBN 124666)<br>rdoren@gibsondunn.com<br>DANIEL G. SWANSON (SBN 116556)<br>dswanson@gibsondunn.com<br>JAY P. SRINIVASAN (SBN 181471)<br>jsrinivasan@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>VERONICA S. MOYE (*pro hac vice*)<br>vlewis@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>2100 McKinney Avenue, Suite 1100<br>Dallas, TX 75201<br>Telephone: 214.698.3100<br>Facsimile: 214.571.2900<br><br>CYNTHIA E. RICHMAN (*pro hac vice*)<br>crichman@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br><br>*Attorneys for Defendant and Counterclaimant Apple Inc.* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    *Plaintiff, Counter-defendant*,<br><br>vs.<br><br>APPLE INC.,<br><br>    *Defendant, Counterclaimant.* | No. 4:20-CV-05640-YGR-TSH<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Pretrial Conference Date:  April 21, 2021<br>Time:  9:00 a.m.<br>Courtroom:  1, 4th Floor (via Zoom)<br>Judge:  Hon. Yvonne Gonzalez Rogers |

Pursuant to the Court's Standing Order Re: Pretrial Instructions in Civil Cases, the Court's October 6, 2020 Case Scheduling and Pretrial Order (ECF No. 116), the Court's March 2, 2021 Pretrial Order No. 1 (ECF No. 371), and the Court's March 23, 2021 Pretrial Order No. 2 (ECF No. 381), Plaintiff and Counter-defendant Epic Games, Inc. ("Epic"), and Defendant and Counterclaimant Apple Inc. ("Apple"), together, the "Parties", by and through their undersigned counsel, hereby submit this Joint Pretrial Conference Statement in advance of the April 21, 2021 Pretrial Conference.

**a. The Action**

   **i. Substance of the Action**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1.  (ECF No. 371 at 3.)

   **ii. Relief Prayed**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1.  (*Id.*)

**b. Factual Basis of the Action**

   **i. Undisputed Facts**

   The Parties hereby submit that the following facts are not in dispute:

**I.   APPLE**

   1. Apple designs, manufactures and markets smartphones, personal computers, tablets, wearables and accessories, and sells a variety of related services.  Apple is a California corporation founded in 1977.

   2. Apple created and develops macOS, an operating system used by desktop and laptop computers, and iOS, an operating system used by mobile devices.  Apple installs macOS and iOS only on its own devices.

   3. Apple develops and sells the iPhone, a smartphone that runs on iOS.

   4. Apple develops and sells the iPad, a tablet that runs on an operating system derived from and closely related to iOS known as iPadOS.

1         5.      Apple develops and sells the iPod touch, a multimedia touchscreen device
2 that runs on iOS.
3         6.      Apple develops and sells the Mac line of computers, which run on macOS.
4         7.      In 2007, Apple launched the iPhone.
5         8.      The original iPhone came preinstalled with a few native iOS apps, all of
6 which were developed by Apple.
7         9.      On October 17, 2007, Apple announced that it would create and license a
8 software development kit ("SDK") for third-party developers.
9         10.     On March 6, 2008, Apple released the first iPhone SDK, which is the
10 software development kit that developers use to create native iOS apps. Apple also developed and
11 made available to developers various application programming interfaces ("APIs").
12         11.     In July 2008, Apple launched the App Store on iOS.
13         12.     The App Store hosts native iOS apps developed by developers using
14 Apple's SDK and APIs and offers them for download by users.
15         13.     In September 2009, Apple introduced In-App Purchase ("IAP").
16         14.     To distribute native iOS apps, developers must sign a Developer Agreement
17 and the Developer Program License Agreement ("DPLA") and pay a $99 annual fee.
18         15.     To distribute free apps, a developer must enter into Schedule 1 to the
19 DPLA. (PX2619 (DPLA) § 7.1.) To distribute an app for which the developer "intend[s] to
20 charge end-users a fee of any kind for [the] Licensed Application or within [the] Licensed
21 Application through the use of the In-App Purchase API", the developer must enter into Schedule
22 2 to the DPLA. (PX2619 (DPLA) § 7.2.)
23         16.     Section 3.2(g) of the DPLA provides that "Applications for iOS Products
24 . . . developed using the Apple Software may be distributed only if selected by Apple (in its sole

1  discretion) for distribution via the App Store . . . as contemplated in this agreement". (PX2619
2  (DPLA) § 3.2(g).)[1]

3  17.  Section 3.3 of the DPLA provides that "[a]ny Application that will be
4  submitted to the App Store . . . must be developed in compliance with the Documentation and the
5  Program Requirements". (PX2619 (DPLA) § 3.3.)

6  18.  Section 3.3.2 of the DPLA provides that apps may not "create a store or
7  storefront for other code or applications". (PX2619 (DPLA) § 3.3.2.)

8  19.  Section 7.6 of the DPLA provides that developers must "agree not to
9  distribute [their apps] for iOS Products . . . to third parties via other distribution methods" than
10 those expressly permitted under the DPLA. (PX2619 (DPLA) § 7.6.)

11 20.  Section 3.3.3 of the DPLA provides that "[w]ithout Apple's prior written
12 approval or as permitted under Section 3.3.25 (In-App Purchase API), an Application may not
13 provide, unlock, or enable additional features or functionality through distribution mechanisms
14 other than the App Store, Custom App Distribution or TestFlight". (PX2619 (DPLA) § 3.3.3.)

15 21.  Section 3.3.25 of the DPLA provides that "[a]ll use of the In-App Purchase
16 API and related services must be in accordance with the terms of this Agreement." "In-App
17 Purchase API" is defined as "the Documented API that enables additional content, functionality or
18 services to be delivered or made available for use within an Application with or without an
19 additional fee." (PX2619 (DPLA) § 3.3.25.)

20 22.  Section 3.1 of Schedule 2 provides that "Apple shall be solely responsible
21 for the collection of all prices payable by End-Users for Licensed Applications acquired by those
22 End-Users under this Schedule 2". (PX2621 (Schedule 2) § 3.1.)

23 23.  Apple publishes and periodically revises the App Store Review Guidelines
24 (the "Guidelines").

---

[1] The Parties reserve the right to introduce evidence that different contractual provisions were in effect at other relevant times, and/or that additional provisions are relevant to the issues.

24. Schedule 1 and Schedule 2 of the DPLA require developers to comply with the Guidelines. (PX2619 (Schedule 1) § 6.3; PX2621 (Schedule 2) § 7.3.)

25. Guideline 3.2.2(i) prohibits developers from "creating an interface for displaying third-party apps, extensions, or plug-ins similar to the App Store or as a general-interest collection". (PX0056 (Guidelines) § 3.2.2(i).)

26. Guideline 3.1.1 provides that, "[i]f you want to unlock features or functionality within your app, (by way of example: subscriptions, in-game currencies, game levels, access to premium content, or unlocking a full version), you must use in-app purchase. Apps may not use their own mechanisms to unlock content or functionality, such as license keys, augmented reality markers, QR codes, etc." (PX0056 (Guidelines) § 3.1.1.)

27. Guideline 3.1.1 also provides that "[a]pps and their metadata may not include buttons, external links, or other calls to action that direct customers to purchasing mechanisms other than in-app purchase". (PX0056 (Guidelines) § 3.1.1.)

28. Guideline 3.1.3 provides that six categories of apps may use, or are in some cases required to use, purchase methods other than IAP. (PX0056 (Guidelines) § 3.1.3.) The six categories under Guideline 3.1.3 are "'Reader' Apps", "Multiplatform Services", "Enterprise Services," "Person-to-Person Services", "app[s] that enable[] people to purchase physical goods or services that will be consumed outside of the app", and "Free Stand-Alone Apps". "Apps in this section cannot . . . encourage users to use a purchasing method other than in-app purchase." (*Id.*)

## II. EPIC

29. Founded in 1991, Epic Games is an American company founded by CEO Tim Sweeney. The company is headquartered in Cary, North Carolina and has more than 40 offices worldwide. Today Epic is a leading interactive entertainment company and provider of 3D engine technology. Epic operates Fortnite, one of the world's largest games with over 350 million accounts and 2.5 billion friend connections. Epic also develops Unreal Engine, which powers the world's leading games and is also adopted across industries such as film and television, architecture, automotive, manufacturing, and simulation. Through Unreal Engine, Epic

1   Games Store, and Epic Online Services, Epic provides an end-to-end digital ecosystem for
2   developers and creators to build, distribute, and operate games and other content.
3      30. Epic supports "cross-platform play" on Fortnite, which allows users of
4   different devices to play Fortnite with one another.
5      31. Epic owns and operates its own online digital marketplace called the Epic
6   Games Store, which it introduced in December 2018.
7      32. On August 13, 2020, Apple removed Fortnite from the App Store.
8      33. Epic then filed its Complaint for Injunctive Relief, initiating this lawsuit.
9   (Dkt. 1.)
10     34. Apple terminated Epic's Developer Program account, as well as its
11  Developer Agreement and DPLA with Apple, on August 28, 2020.
12     35. As of the termination, Epic's Developer Program account was associated
13  with five apps distributed through the App Store:  Fortnite, Battle Breakers, Spyjinx, Infinity
14  Blade Stickers and Shadow Complex Remastered.
15               * * *

16   **ii.** **Disputed Factual Issues**
17     The Court exempted the Parties from this requirement pursuant to its
18  March 2, 2021 Pretrial Order No. 1.  (ECF No. 371 at 3.)
19   **iii.** **Agreed Statement**
20     Epic has indicated that it would stipulate to liability on Apple's breach of contract
21  counterclaim (Counterclaims (ECF No. 66), Count I) and the Parties are negotiating the language
22  of this stipulation.
23   **iv.** **Stipulations**
24     On March 21, 2021, the Parties submitted a Stipulation and [Proposed] Order
25  Regarding Pretrial Schedule.  (ECF No. 377.)  On March 23, 2021, the Court granted this
26  stipulation as modified by its Pretrial Order No. 2.  (ECF No. 381 at 2.)  The Parties will file a
27  proposed order regarding trial stipulations on April 14, 2021, per the stipulation as modified by
28  Pretrial Order No. 2.

c. **Disputed Legal Issues**

   i. **Points of Law**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1. (ECF No. 371 at 3.)

   ii. **Proposed Conclusions of Law**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1. (*Id.*)

d. **Further Discovery or Motions**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1. (*Id.*)

e. **Estimate of Trial Time**

   Pursuant to its March 23, 2021 Pretrial Order No. 2, the Court ordered "that each party is afforded forty-five (45) hours to be used in whatever manner they choose for the bench trial". (ECF No. 381 at 1.)

f. **List of Motions in Limine**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1. (ECF No. 371 at 3.)

g. **Juror Questionnaire**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1. (*Id.*)

h. **Trial Alternatives and Options**

   i. **Settlement Discussions**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1. (*Id.*)

   ii. **Consent to Trial Before a Magistrate Judge**

   The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1. (*Id.*)

     iii.    **Amendments, Dismissals**

The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1.  (*Id.*)

     iv.    **Bifurcation, Separate Trial of Issues.**

The Court exempted the Parties from this requirement pursuant to its March 2, 2021 Pretrial Order No. 1.  (*Id.*)

Respectfully submitted,

Dated: April 9, 2021

CRAVATH, SWAINE & MOORE LLP
   Christine A. Varney (*pro hac vice*)
   Katherine B. Forrest (*pro hac vice*)
   Gary A. Bornstein (*pro hac vice*)
   Yonatan Even (*pro hac vice*)
   Lauren A. Moskowitz (*pro hac vice*)
   M. Brent Byars (*pro hac vice*)

FAEGRE DRINKER RIDDLE & REATH LLP
   Paul J. Riehle

By:  /s/ *Katherine B. Forrest*
   Katherine B. Forrest
   825 Eighth Avenue
   New York, New York 10019
   Telephone: (212) 474-1000

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

Dated: April 9, 2021

GIBSON, DUNN & CRUTCHER LLP
   Theodore J. Boutrous Jr.
   Richard J. Doren
   Daniel G. Swanson
   Mark A. Perry
   Veronica S. Moye
   Cynthia E. Richman
   Jay P. Srinivasan
   Ethan D. Dettmer
   Eli M. Lazarus

By:  /s/ *Mark A. Perry*
   Mark A. Perry
   1050 Connecticut Avenue, N.W.
   Washington, DC 20036-5306
   (202) 887-3667

*Attorneys for Defendant and Counterclaimant Apple Inc.*

**ECF SIGNATURE ATTESTATION**

In accordance with Local Rule 5-1, the filer of this document hereby attests that the concurrence of the filing of this document has been obtained from the other signatories hereto.

Dated: April 9, 2021                                CRAVATH, SWAINE & MOORE LLP

By:   /s/  *Katherine B. Forrest*
           Katherine B. Forrest

*Attorneys for Plaintiff and
Counter-defendant Epic Games, Inc.*