CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
KATHERINE B. FORREST (*pro hac vice*)
kforrest@cravath.com
GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
J. WESLEY EARNHARDT (*pro hac vice*)
wearnhardt@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant*
*Epic Games, Inc.*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>Plaintiff, Counter-defendant,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH<br><br>**PLAINTIFF EPIC GAMES, INC.'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR PRE-TRIAL SANCTIONS AGAINST EPIC GAMES, INC. AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  April 13, 2021, 2 p.m.<br><br>Courtroom:  1, 4th Floor<br><br>Judge:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 3

    A.    Initial Disclosures ................................................................................................. 3

    B.    Third-Party Depositions. ....................................................................................... 5

    C.    Witness List Disclosures. ...................................................................................... 7

    D.    The Dispute. ........................................................................................................... 8

ARGUMENT ............................................................................................................................. 9

I.    EPIC TIMELY AND ADEQUATELY DISCLOSED THE THIRD-PARTY WITNESSES. ................................................................................................................... 9

    A.    Epic's Rule 26(a) Disclosures Were Proper. ........................................................ 9

    B.    Apple Has Sufficient Notice to Prepare Its Case. ...............................................10

        1.    Vivek Sharma. ..........................................................................................11

        2.    Lori Wright. ..............................................................................................12

        3.    Benjamin Simon. ......................................................................................13

II.    THERE IS NO BASIS FOR EXCLUDING THE TESTIMONY OF THE THIRD-PARTY WITNESSES. ...................................................................................13

    A.    Any Deficiency in Epic's Disclosure Was Harmless. .........................................14

    B.    Epic Was Substantially Justified in Disclosing the Third-Party Witnesses When It Did. ........................................................................................................18

        1.    Epic Disclosed the Third-Party Witnesses upon Learning They Would Testify ........................................................................................18

        2.    Epic Disclosed the Third-Party Witnesses in Accordance with the Parties' Agreement Regarding Third-Party Witnesses. ..........................20

    C.    The Appropriate Remedy Is a Deposition, Not Exclusion. .................................21

CONCLUSION ........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benjamin v. B & H Educ., Inc.*,
  No. 13-CV-04993-VC, 2015 WL 6164891 (N.D. Cal. Oct. 16, 2015), *aff'd*,
  877 F.3d 1139 (9th Cir. 2017).................................................................................................9

*Bookhamer v. Sunbeam Prod. Inc.*,
  No. C 09-06027 ECM, 2012 WL 6000230 (N.D. Cal. Nov. 30, 2012)..................................21

*Corcoran v. CVS Pharm., Inc.*,
  No. 15-cv-03504-YGR, 2021 WL 633809 (N.D. Cal. Feb. 18, 2021)......................................9

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006)................................................................................................10

*Hoffman v. AmericaHomekey Inc.*,
  No. 3:12-cv-3806-B-BK, 2014 WL 12577104 (N.D. Tex. June 10, 2014)............................17

*Hoyle v. Freightliner, LLC*,
  650 F.3d 321 (4th Cir. 2011)................................................................................................11

*Jang Sool Kwon v. Singapore Airlines*,
  No. C02-2590 BZ, 2003 WL 25686535, at *2 (N.D. Cal. Nov. 7, 2003) ........................16, 21

*Jones v. RealPage, Inc.*,
  No. 3:19-CV-2087-B, 2020 WL 6149969 (N.D. Tex. Oct. 19, 2020).....................................9

*Maionchi v. Union Pac. Corp.*,
  No. C 03-0647 JF PVT, 2007 WL 2022027 (N.D. Cal. July 9, 2007)....................................21

*Mediatek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-cv-5341-YGR, 2014 WL 2854773 (N.D. Cal. June 20, 2014) ..................................17

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014)................................................................................................11

*Ortiz v. CVS Caremark Corp.*,
  No. C-12-05859-EDL, 2013 WL 6236743 (N.D. Cal. Dec. 2, 2013)....................................21

*Rodman v. Safeway, Inc.*,
  No. 11-CV-03003-JST, 2015 WL 5315940 (N.D. Cal. Sept. 11, 2015) ................................15

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*,
  791 F. Supp. 2d 719 (N.D. Cal. 2011)..................................................................13, 14, 16, 17

*Shenwick v. Twitter, Inc.*,
  No. 16-CV-05314-JST, 2021 WL 1232451 (N.D. Cal. Mar. 31, 2021)............................11, 18

*V5 Techs. v. Switch, Ltd.*,
   334 F.R.D. 615 (D. Nev. 2020) ............................................................................... 10

*In re Wash. Mut. Mortg. Backed Secs. Litig.*,
   No. C09-37-MJP, 2012 WL 2995046 (W.D. Wash. July 23, 2012) ................................. 18, 21

*Zertuche v. Cnty. of Santa Clara*,
   No. 11:cv-3691-YGR, 2013 WL 4111142 (N.D. Cal. Aug. 12, 2013) ................................. 13

**Statutes & Rules**

Civil Local Rule 37-3 .............................................................................................. 5, 7

Fed. R. Civ. P. 26(e)(1)(A) ......................................................................................... 10

Fed. R. Civ. P. 37 .............................................................................................. 13, 21

Fed. R. Civ. P. 37(c)(1) ............................................................................................ 12

**Other Authorities**

Moore's Federal Practice § 37.63 ................................................................................. 9

### **PRELIMINARY STATEMENT**

Apple Inc. ("Apple") is overreaching in an attempt to deprive the Court of important third-party proof at trial.  Its Motion for Pre-Trial Sanctions (the "Motion") fails at every turn and should be denied.

*First*, Epic Games, Inc. ("Epic")'s initial disclosures were appropriate.  During discovery, both Epic ***and Apple*** disclosed potential third-party witnesses at the company level.  Neither Epic nor Apple (together, the "Parties") objected to that approach.  But third-party companies cannot testify at trial; only third-party witnesses can.  As a result, it was clear to both Parties that ***any*** third-party witness appearing on the other Party's trial witness list would be an individual not previously identified in the initial disclosures.  To address that issue, the Parties agreed that any third-party witness on the other Party's trial witness list—*i.e.*, employees of the corporate entities named on the Parties' respective initial disclosures— could be deposed before trial (to the extent not deposed during the deposition period).  That was the deal.  The Parties did ***not*** reserve the right to take additional document discovery from any such individuals; the Parties did ***not*** object to each other's initial disclosures as inadequate nor did they seek additional specificity; and the Parties did ***not*** express concern about the lack of custodial productions from any third party, let alone move to compel such production.  Rather, they reached a compromise agreeable to both Parties.

That arrangement did not create an "unlevel playing field".  Had Apple listed third-party witnesses on its own trial witness list (as it indicated it would), Epic would be in exactly the same position as Apple.  There has been no gamesmanship by Epic.  Both sides agreed to the pre-trial deposition procedure based on the assumption that the other Party would, in fact, bring previously unspecified third-party witnesses to trial.  Apple is trying to re-trade the Parties' deal, mere weeks before trial, because it has not disclosed any additional third-party witnesses of its own and thus sees a tactical opportunity to disadvantage Epic.

Apple's Motion insinuates that Epic knew that it would call Lori Wright, Benjamin Simon and Vivek Sharma (together, the "Third-Party Witnesses") at trial well in advance of when Epic disclosed them.  That is not true.  Epic does not control these witnesses or their

employers.  Epic negotiated for months with numerous third parties, asking them to commit to making a witness available at trial and to disclose who the individual would be.  When Epic finally learned which third-party witnesses would be available to testify at trial, it promptly informed Apple (for two of the witnesses, literally within hours of Epic's own knowledge and the third within a few days).

*Second*, Apple has not suffered prejudice sufficient to justify excluding the Third-Party Witnesses' testimony.  Apple's only complaint is that it has not received an additional document production—from the third parties (not Epic)—culled from the individual witnesses' files.  But Apple did not require separate custodial document productions for the two third-party witnesses it previously deposed.  And Apple indisputably has documents from the relevant third-party companies themselves—both Apple and Epic served document subpoenas on the companies— and, in fact, ***already has documents from each individual witness as well***.  Apple has made no showing that there are additional, material, non-cumulative documents to which it is entitled, let alone why it would suffer material prejudice without access to those particular documents.  Nor could it.  Each witness is being called to testify as an employee of the third-party companies, not because the individual has any relevant knowledge outside of her/his employment.  To the extent the individuals have particularized knowledge not available in the company documents, Apple will have seven hours to depose each witness to discover those facts before cross-examining them at trial.  And, during those depositions and at trial, Apple will have the very same documents that Epic has.  There will be no surprise.

*Third*, Apple's proposed sanction is unwarranted.  To be clear, contrary to Apple's suggestion, Epic has not been involved in (and takes no position on) the scope of the third parties' productions to Apple.  Epic certainly has not "assisted" the third parties in "resisting" Apple's discovery.  That is between Apple and the third parties.  Epic should not be penalized for those parties' unwillingness to produce additional documents, even if the Court concludes that additional documents should have been produced by them.

Assuming *arguendo* Epic's disclosures were inadequate (and they were not) and Apple has suffered prejudice as a result (and it has not), the appropriate remedy would be to order

discovery of the Third-Party Witnesses in advance of trial, typically in the form of pre-trial depositions, which were already on calendar. Nothing more needs to be done. The outer limit of a potential remedy would be to order the third parties to produce additional documents in advance of the Third-Party Witnesses' depositions. The Court could have considered that potential remedy had Apple raised this issue promptly, either during the discovery period or on March 12, 2021 when Epic listed the Third-Party Witnesses' names on its trial witness list. At this point, timing makes additional productions difficult as a practical matter. But that is not Epic's fault. Epic does not control the third parties, and Epic only learned Apple's position on this issue on April 7, 2021. Apple should not be permitted to sit on its hands to create the very prejudice on which it now relies to attempt to exclude the Third-Party Witnesses' testimony.

## FACTUAL BACKGROUND

### A.  Initial Disclosures.

Epic and Apple served their initial disclosures on October 12, 2020. (Declaration of Jay P. Srinivasan in Support of Apple Inc.'s Motion for Pre-Trial Sanctions, ECF No. 419-2 ("Srinivasan Decl."), Ex. A (Epic's initial disclosures); Declaration of J. Wesley Earnhardt in Support of Epic Games, Inc.'s Opposition to Apple Inc.'s Motion for Pre-Trial Sanctions ("Earnhardt Decl."), Ex. A (Apple's initial disclosures).) Both Parties followed the same approach with respect to third parties—each listed categories of entities that were likely to have discoverable information that the Party might rely on to support its claims and defenses. (*See id.*) Epic identified, for example, "Third-party developers of iOS-compatible apps who have participated in the Apple Developer Program to distribute their apps to iOS users" and "Third-party distributors of software, including other OEMs and video game console makers that operate their own app stores." (Srinivasan Decl. Ex. A at 5.) Apple for its part disclosed, for example, "Third-Party App Marketplaces: companies that run app marketplaces, which may include, but are not limited to . . . Microsoft Store"; "Third-Party Game Platforms: companies that operate game platforms and distribute games made by Epic and others, which may include, but are not limited to, . . . Microsoft Xbox"; and "Other iOS App Developers: iOS app developers that are not Epic and/or its affiliates". (Earnhardt Decl. Ex. A at 7–8.)

Neither Epic nor Apple disclosed the names of any specific individuals for those third parties, except that Epic disclosed Kevin Gammill, Microsoft Corporation ("Microsoft")'s General Manager of Gaming Developer Experiences, who had filed a declaration during the preliminary injunction stage.  (*See* Declaration of Kevin Gammill in Further Support of Epic's Motion, ECF No. 40; Srinivasan Decl. Ex. A at 5.)  Neither Apple nor Epic objected to or raised any concerns regarding the sufficiency of the other's initial disclosures.

The Parties then proceeded to engage in extensive third-party document discovery.  Epic and Apple issued dozens of third-party subpoenas for the production of documents.

- Apple's document subpoena to Microsoft, served on November 3, 2020, included 52 requests for production, with 80 subparts.  (*See* Declaration of Michelle Lowery in Support of Apple's Motion for Pre-Trial Sanctions Against Epic, ECF No. 419-3 ("Lowery Decl."), Ex. A.)

- Apple's first document subpoena to Facebook, Inc. ("Facebook"), dated December 9, 2020, included 26 requests for production, with 45 subparts.  (*See* Declaration of Nathan Denning in Support of Epic's Opposition to Apple's Motion for Pre-Trial Sanctions ("Denning Decl."), Ex. A.)  Apple's supplemental document subpoena to Facebook, dated December 30, 2020, included an additional four requests for production, with six subparts.  (*See id.* Ex. B.)

- Apple's document subpoena to Yoga Buddhi Co. ("Yoga Buddhi"), served on December 8, 2020, included 32 requests for production, with 57 subparts.  (*See* Lowery Decl. Ex. D.)

Epic similarly served subpoenas on these third parties—with a more modest number of requests for production of documents—with service on Microsoft and Yoga Buddhi on December 2, 2020 and Facebook on December 7, 2020.  (*See* Earnhardt Decl. ¶ 5.)

On January 13, 2021, Epic amended its initial disclosures.  (Srinivasan Decl. Ex. B.)  The amended disclosures included, in relevant part:  "Third-party developers of iOS-compatible apps who have participated in the Apple Developer Program to distribute their apps to iOS users, including . . . Yoga Buddhi Co., . . . and the employees of the foregoing" and "Third-party

                              4

distributors of software, including other OEMs and video game console makers that operate their own app stores, including . . . Microsoft Corporation, . . . Facebook, Inc, . . . and the employees of the foregoing". (*Id.* at 6.) Apple again did not object to or raise any concerns regarding the sufficiency of Epic's amended initial disclosures. To the contrary, Apple amended its own Rule 26(a) initial disclosures one month later, on February 10, 2021, and continued to list third-party witnesses at the company (not individual) level. (Earnhardt Decl. Ex. B at 8–9.)

In response to each Party's subpoenas, and after engaging in an extensive meet and confer process, Microsoft, Facebook and Yoga Buddhi produced documents to both Epic and Apple: Facebook produced 1,677 documents totaling 11,755 pages; Microsoft produced 79 documents totaling over 8,000 pages; and Yoga Buddhi produced 189 documents totaling over 290 pages. (Denning Decl. ¶ 5; Earnhardt Decl. ¶¶ 8–10.) Neither Apple nor Epic got all of the documents it requested from the third parties. But neither Apple nor Epic brought any document discovery disputes to Magistrate Judge Hixson concerning Microsoft's, Facebook's or Yoga Buddhi's document productions before the close of fact discovery on February 15, 2021 or within seven days thereafter. *See* Civil Local Rule 37-3.

### B.     Third-Party Depositions.

Because the Parties had reached the ten-deposition limit imposed by the Federal Rules with Party depositions alone, on January 8, 2021, Epic contacted Apple to negotiate a process to handle third-party depositions. (Earnhardt Decl. Ex. C.)

At least 24 third-party entities had been identified on the Parties' initial disclosures or served with document subpoenas. Epic understood (as Apple surely did) that individuals, not entities, testify at trial. For that reason, Epic sought the ability to take up to 100 hours (and, later, counter-proposed 70 hours) of third-party depositions, intending to use this time to conduct discovery into the third parties listed on Apple's initial disclosures regarding both the substance of their potential testimony and which witnesses, if any, the third party would make available to testify at trial. (Earnhardt Decl. ¶ 12, Ex. C at 7.) Apple rejected Epic's proposal, informed Epic that it would not consent to Epic serving any third-party deposition subpoenas given that 10 Party depositions had been taken, and counter-proposed a process where the Parties would agree

to a limit on the total number of third-party depositions per side.  (*Id.* ¶ 13, Ex. C at 3.)  Epic could not agree to Apple's proposal because Epic needed the ability to depose any third-party witnesses that might testify at trial, and Apple would not agree to 24 separate third-party depositions.  The Parties met and conferred.

Ultimately, Epic agreed to Apple's proposal to drastically limit the total number of third-party depositions that could be taken before the discovery cutoff to a total of three per side.  (*Id.* ¶ 13, Ex. C at 1.)  In the context of reaching that agreement, Epic raised the situation that Apple now faces, and the Parties reached an agreement that was intended precisely to address this situation.  Specifically, because both Epic and Apple had made their initial disclosures on a company level, it was clear that any third-party witnesses that appeared on either side's witness list would not have been personally named on the Rule 26(a) disclosures.  Accordingly, the Parties agreed that any third-party individual later listed as a trial witness could be deposed before trial.  (*See id.* Ex. C at 3 (Apple counsel agreeing "to a rule where any previously un-deposed third-party witness who appears on a party's witness list will be subject to deposition by the other side before trial").)  The Parties did not agree to additional document discovery after the fact discovery deadline.  Apple did not even raise the issue of additional document discovery from such third-party witnesses, once identified.

Ultimately, the Parties deposed only two third-party witnesses before the close of fact discovery, leaving additional third-party depositions until after trial witness lists were exchanged.  Significantly, for the two third-party witnesses deposed during the deposition period, Apple did not require additional custodial documents from the individual witnesses as a prerequisite for deposing them, and Apple is set to cross examine at trial one of those witnesses (Aashish Patel from Nvidia Corporation) without the benefit of an additional document production from his personal files.  The other (Adrian Ong from Match Group) will testify at trial via deposition designation, again without either Party demanding an additional document production from his personal files.

### C.   **Witness List Disclosures.**

Epic engaged in months-long negotiations with numerous third parties regarding their document productions and whether the third parties (whom Epic does not control) would make witnesses available to testify at trial.

Eventually, on March 8, 2021, Epic learned that Yoga Buddhi's Benjamin Simon would accept a subpoena to testify as a trial witness.  (Earnhardt Decl. ¶ 19.)  On March 12, in the morning (PT), Epic learned that Microsoft would make Lori Wright available as a trial witness.  (*Id.* ¶ 18.)  And a few hours later, at approximately noon (PT) on March 12, Epic learned that Facebook would make Vivek Sharma available as a trial witness.  (*See* Denning Decl. ¶ 9.)  Epic served its trial witness list on Apple at 8:31 p.m. (PT) on March 12, 2021 (*see* Srinivasan Decl. Ex. C), the date required by the Court's schedule (Pretrial Order No. 1, ECF No. 371)—a few days after it learned the identity of Yoga Buddhi's witness, and mere hours after it learned of Ms. Wright's and Mr. Sharma's availability as trial witnesses on behalf of Microsoft and Facebook, respectively.  Epic included Mr. Simon, Ms. Wright and Mr. Sharma on its trial witness list.  (*See* Srinivasan Decl. Ex. G at 9.)

Apple did not object to or raise any concerns about the sufficiency of Epic's trial witness list or Epic's initial disclosures at the time the witness list was served on March 12, 2021.  Instead, Apple promptly, and consistent with the Parties' agreement, served deposition notices on the third-party witnesses who had not yet been deposed,[1] including the Third-Party Witnesses.  These depositions were set to occur in mid-April, prior to the commencement of the trial on May 3.

After serving deposition subpoenas on the Third-Party Witnesses, Apple apparently sought to re-open negotiations with the relevant third parties regarding the document productions they had made.  (*See* Motion at 3.)  As far as Epic is aware, Apple did not subpoena the individual witnesses for documents.  Apple did not inform Epic that it was seeking additional

---

[1] Epic also included Shelley Gould, the founder and CEO of Neuro-Fin (d/b/a SmartStops) on its trial witness list.  (*See* Earnhardt Decl. Ex. E at 9.)  Apple concedes that it has not suffered any prejudice with regards to her disclosure.  (Apple's Motion for Pre-Trial Sanctions, ECF No. 419 [hereinafter, "Motion"], at 1–2.)  Other than to observe that Apple's comments are unavailing for the reasons discussed above, this Opposition will not discuss Epic's disclosure of Ms. Gould because of Apple's concession.

documents from the third parties.  Apple did not take the position that it was unwilling to proceed with the pre-trial depositions unless it received additional document productions, including custodial productions from the witnesses (which it had not sought, to Epic's knowledge, for the two third-party witnesses already deposed).  Apple's efforts to negotiate additional productions from the third parties were apparently unsuccessful, as was its motion to compel Facebook to make additional productions, which Magistrate Judge Hixson denied on April 6, 2021 as untimely.  (Order Denying Motion to Compel, ECF No. 399 (citing Civil Local Rule 37-3).)

In its joint discovery letter brief with Facebook, Apple suggested for the first time that Epic's disclosures were deficient.  (Joint Discovery Letter Brief Regarding Apple's Subpoena to Non-Party Facebook, Inc. ("Joint Facebook Discovery Brief"), ECF No. 395.)  Epic sent Magistrate Judge Hixson a short letter disputing that newly raised claim.  (Letter from J. Wesley Earnhardt In Response to the Joint Facebook Discovery Letter Brief, ECF No. 398.)  Contrary to Apple's statements in its Motion, Epic did not support Facebook's resistance to document discovery, making clear in its letter to Magistrate Judge Hixson that "Epic does not take a position on the substance of the discovery dispute addressed in the letter."  (*Id.* at 1.)

### D.    The Dispute.

On April 7, 2021, one week before the first pre-trial deposition was likely to take place, Apple informed Epic that Apple claimed Epic's initial disclosures were deficient, and that it would not proceed with the depositions of the Third-Party Witnesses.  (Earnhardt Decl. ¶ 26.) Epic promptly agreed to meet and confer, reached out to the third-party companies to understand their position with respect to additional document discovery, and consented to expedited briefing.[2]  (*Id.* ¶¶ 26–30.)

---

[2] Contrary to Apple's insinuations (Motion at 11 n.2), Epic does not in fact have any control over the document productions of Microsoft, Facebook or Yoga Buddhi (Earnhardt Decl. ¶¶ 28–30.)

## ARGUMENT

## I. EPIC TIMELY AND ADEQUATELY DISCLOSED THE THIRD-PARTY WITNESSES.

### A. Epic's Rule 26(a) Disclosures Were Proper.

In its initial disclosures served on October 12, 2020, Epic disclosed, among others, "[t]hird-party developers of iOS-compatible apps who have participated in the Apple Developer Program to distribute their apps to iOS users" and "[t]hird-party distributors of software, including other OEMs and video game console makers that operate their own app stores". (*See* Srinivasan Decl. Ex. A at 5.) Epic supplemented its disclosures on January 13, 2020 with the information that it knew at the time, *i.e.*, the specific names of the third-party entities with relevant information, which Epic had learned as a result of the ongoing third-party discovery. (*See id.* Ex. B at 6.)

Apple never objected to the specificity of Epic's disclosures—not after October 13, 2020, when Epic's initial disclosures were first served; not after January 13, 2021, when they were supplemented; and not until almost four weeks after March 12, 2021, when Epic disclosed its trial witness list. In fact, Apple's Rule 26 disclosures took exactly the same form as Epic's, listing potential witnesses at the company (not individual) level. (*See* Earnhardt Decl. Ex. B at 8–9 (identifying, *inter alia*, "[t]hird-Party Game Platforms: companies that operate game platforms and distribute games made by Epic and others, which may include, but are not limited to, Nintendo, Sony PlayStation, and Microsoft Xbox" and "Other iOS App Developers: iOS app developers that are not Epic and/or its affiliates")).) Apple has no basis to object to Rule 26 disclosures that took the same form as its own Rule 26 disclosures.

The lone case that Apple cites in support of its position is inapposite. In *Benjamin v. B & H Educ., Inc.*, the court held that a generalized disclosure of the defendants' former employees was inadequate to allow the plaintiffs to submit declarations from those former employees in support of summary judgment. No. 13-CV-04993-VC, 2015 WL 6164891, at *1 (N.D. Cal. Oct. 16, 2015), *aff'd*, 877 F.3d 1139 (9th Cir. 2017). That case is nothing like this one. Here, Epic is not trying to submit evidence immune from cross examination (such as summary

judgment declarations); rather, consistent with the Parties' agreement, Apple will have an opportunity both to depose before trial and cross examine at trial each of the witnesses at issue. Moreover, the witnesses at issue here are true third parties not within Epic's or Apple's control.[3] In such circumstances—especially in complex, large-scale litigations like this one—it is routine for parties to provide disclosure and seek discovery from third parties on a corporate level.  *See Jones v. RealPage, Inc.*, No. 3:19-CV-2087-B, 2020 WL 6149969, at *3 (N.D. Tex. Oct. 19, 2020) (finding no Rule 26(a) violation where defendant had generally disclosed "corporate representatives" of third-party corporations).  That disclosure and subsequent discovery is what allows the Parties to determine which specific individuals, if any, will be called to present testimony at trial.  *See Corcoran v. CVS Pharm., Inc.*, No. 15-cv-03504-YGR, 2021 WL 633809, at *7 (N.D. Cal. Feb. 18, 2021) ("[A] corporation is deemed to be a person and therefore can only testify through the embodiment of individuals.").  That is precisely why Apple's Rule 26(a) disclosures *also* listed third parties only by corporate name, and that is precisely why the Parties agreed to depose *the witnesses* after they were identified on the Parties' trial witness lists.

Rule 26(a) only requires a party to identify what it knows.  As soon as Epic knew the identity of the individuals the third parties would make available to testify at trial, it promptly disclosed them to Apple—in most cases, mere hours after it learned the witness would be made available.  Pursuant to the Parties' agreement, Apple can now depose them.

**B.      Apple Has Sufficient Notice to Prepare Its Case.**

The "threshold for determining whether there has been a disclosure violation is whether the opposing party had meaningful notice to prepare its case."  *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 617–18 (D. Nev. 2020).  "The rules expressly contemplate that such notice need not necessarily be provided through a formal initial disclosure or a formal supplement thereto.  A formal disclosure is unnecessary when the information has 'otherwise been made known to the other parties during the discovery process.'"  *Id.* at 618 (quoting Fed. R. Civ. P. 26(e)(1)(A)).

---

[3] The other source Apple cites is Section 26.22(4)(a)(i) of Moore's Federal Practice (*see* Motion at 6–7), which similarly discusses collective descriptions in the context of identifying, for example, "*defendants'* employees or representatives", *see* Moore's Federal Practice § 37.63 (emphasis added).

1    Apple has sufficient notice to prepare its case for trial because it has known the names of

2    the Third-Party Witnesses since March 12, 2021, which gave Apple nearly seven weeks to

3    depose these three individuals, consistent with the Parties' prior agreement on how to address

4    exactly this issue.  That is more than sufficient notice and should end this dispute.  *See In re First*

5    *All. Mortg. Co.*, 471 F.3d 977, 1000 (9th Cir. 2006) (holding that district court did not err in

6    refusing to exclude trial testimony from witnesses not specifically identified on initial disclosures

7    where "[t]he complete witness list was provided to [defendant] with ample time remaining under

8    Rule 26(a)(3)").

9    But Apple learned of these witnesses even earlier than that:

10           **1.     Vivek Sharma.**

11    Epic cited Mr. Sharma in its Complaint.  (Complaint for Injunctive Relief Against Apple

12    Inc. ("Complaint"), ECF No. 1, ¶ 92.)  That gave Apple sufficient notice that, at the very least,

13    he is one Facebook employee who has relevant information that could be pursued in discovery.

14    None of the cases cited by Apple hold that disclosure of a specific witness in a complaint is

15    inadequate notice.[4]

16    Once in discovery, both Epic and Apple served document subpoenas on Facebook.  (*See*

17    Earnhardt Decl. ¶ 5; Denning Decl. Exs. A and B.)  In response, Facebook produced 1,677

18    documents, ***200 of which involved Mr. Sharma***.  (*See* Joint Facebook Discovery Brief, ECF No.

19    395, at 6.)  Not only was Apple aware that Facebook was likely to play a role at trial—as Apple

20    put it, it even issued a *second* subpoena to Facebook "[g]iven Facebook's stated intent to aid

21    Epic" (*id.* at 3)—but it also had ample notice that, to the extent it sought custodial information

22    from Facebook, Mr. Sharma would be an appropriate custodian of relevant information (and

23    potentially could be Facebook's witness).  And Apple did in fact receive discovery related

24

25          [4] Moreover, the cases cited by Apple fail to account for the specific circumstances and
       complexities of this case, where both parties have sought extensive document discovery from
       true *third parties*.  Each of *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th
26     Cir. 2014), *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011), and *Shenwick v.
       Twitter, Inc.*, No. 16-CV-05314-JST, 2021 WL 1232451, at *1 (N.D. Cal. Mar. 31, 2021),
27     primarily concern one party's failure to disclose *current or former employees of a party to the
       litigation*, not third-party witnesses—and certainly not third-party witnesses whose corporate
28     employers were disclosed in *both Parties'* Rule 26(a) disclosures and from whom *both Parties*
       actively pursued discovery.

1    specifically to him.  Moreover, Apple, like Epic, could have asked Facebook whether it intended

2    to make a witness available at trial; it could have insisted that Facebook identify that witness

3    during the discovery period or agree to produce additional documents from such witness's files

4    once disclosed.  Apple did none of these things.

5            As explained in more detail below, Epic negotiated with Facebook for weeks in an

6    attempt to secure a Facebook witness at trial, and once Epic learned on March 12, 2021 that

7    Facebook would make Mr. Sharma available to testify, it disclosed that to Apple within hours.

8    Epic presumes that Apple *did* negotiate with other third parties to come to trial, given Apple's

9    disclosures, and that it simply failed to secure their attendance.  The key point, however, is that

10   Epic disclosed to Apple that Mr. Sharma would be a trial witness on the deadline set by the

11   Court and immediately after learning that fact.

12                   **2.      Lori Wright.**

13           Apple also had meaningful notice that Ms. Wright might be called as a trial witness by

14   Epic, or at the very least is an individual at Microsoft with relevant information.  Epic's

15   Complaint alleged, *inter alia*, that Apple's policies harmed Microsoft's cloud gaming service.

16   (*See* Complaint, ECF No. 1, ¶ 91.)  As part of discovery into that issue, Apple itself produced

17   over 330 communications with Ms. Wright from its own files concerning that subject.  Apple

18   itself disclosed Microsoft as a relevant entity on its initial disclosures before Epic did.  (*Compare*

19   Earnhardt Decl. Ex. A (Apple's initial disclosures), *with* Srinivasan Decl. Ex. B (Epic's amended

20   initial disclosures).)  And Apple acknowledges that Ms. Wright was a custodian for some of the

21   non-email files produced by Microsoft during the discovery period.  (*See* Lowery Decl. ¶ 6.)

22   Apple therefore was on notice that Microsoft generally—and Ms. Wright specifically—could be

23   called at trial.  If Apple believed it needed additional discovery from Ms. Wright or from

24   Microsoft's then-undisclosed witness, Apple could have sought such disclosure during the

25   discovery period; it did not.  As with Mr. Sharma, Epic learned on March 12 that Microsoft

26   would make Ms. Wright available to testify at trial and disclosed that to Apple within hours.

27

28

### 3. Benjamin Simon.

Yoga Buddhi has only five employees; Mr. Simon is its co-founder and CEO and controls all of its operations. Disclosing Yoga Buddhi was tantamount to disclosing Mr. Simon. In fact, as far as Epic is aware, every single one of the documents produced by Yoga Buddhi in this case either involves Mr. Simon directly or relates to an operation of Yoga Buddhi that Mr. Simon controls. Mr. Simon has been publicly quoted in the Washington Post regarding his views on Apple's policies. Mr. Simon has negotiated directly with Apple on behalf of Yoga Buddhi, as Yoga Buddhi's document production shows. (*See* Earnhardt Decl. ¶ 20.) Apple was well aware that Mr. Simon could be Yoga Buddhi's witness at trial.

## II. THERE IS NO BASIS FOR EXCLUDING THE TESTIMONY OF THE THIRD-PARTY WITNESSES.

Even if Epic's disclosures were inadequate (and they were not), and Apple otherwise had inadequate notice (and it did not), there is no basis upon which to exclude the testimony of the Third-Party Witnesses because any deficiency was both substantially justified and harmless. *See* Fed. R. Civ. P. 37(c)(1).

In determining whether a deficiency was substantially justified and harmless, courts examine: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) (internal citation omitted).[5]

Here, each of those factors weighs against the exclusion of the witness testimony, which can be an "unduly harsh sanction". *See Zertuche v. Cnty. of Santa Clara*, No. 11:cv-3691-YGR, 2013 WL 4111142, at *4 (N.D. Cal. Aug. 12, 2013) (finding that complete exclusion of expert testimony would be "an unduly harsh sanction"); *see also* Fed. R. Civ. P. 37 Advisory Committee's Note (1993) (explaining that "[l]imiting the automatic sanction to violations

---

[5] Apple cites a slightly different formulation of these factors and fails to address the importance of the evidence at issue. (Motion at 7–8.)

'without substantial justification' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations").

### A.    Any Deficiency in Epic's Disclosure Was Harmless.

The five factors weigh against excluding the Third-Party Witnesses because any deficiency in Epic's disclosures—assuming *arguendo* any deficiency—was harmless.

*First*, there is no "surprise" or prejudice against Apple in holding Apple to the bargain it struck.  *See San Francisco Baykeeper*, 791 F. Supp. 2d at 733 (weighing "the surprise to the party against whom the evidence would be offered").  As discussed further in Sections II.B and II.C, each side disclosed the relevant companies on a corporate level in their initial disclosures, the specific individual witnesses were known to Apple, and the Parties negotiated how to address this very situation.  Apple explicitly agreed that it would be entitled to a ***deposition*** prior to trial; that also is what Epic would have been entitled to if Apple had third-party trial witnesses.  The Parties did not make any agreement concerning additional document productions, and they did not condition any third-party witness's ability to testify at trial on the other Party having received documents from that witness.  Apple could have—but never did—raise that issue or seek the agreement of Epic, any third party or the Court that it would be entitled to a custodial production from the files of the third-party witness prior to his or her pre-trial deposition.

Moreover, Apple has made no showing whatsoever that the *evidence* to be offered would be a surprise.  Each Third-Party Witness will testify as an employee of the third-party corporation that was identified in each Party's disclosures and from which each Party sought document discovery regarding that corporation's interactions with Apple.  Even though the exact name of the witness was not known by Epic or Apple until March, both Parties are well aware of the likely *evidence* because there has been extensive discovery of the third-party companies and the testimony will relate to those companies' business activities and experiences with Apple.  To the extent Apple is focused on what documents Apple has access to, it bears repeating that Epic and Apple have access to ***the very same documents***.  Apple faces no risk that Epic will surprise it by using a document it has not yet seen.  To the extent Apple is focused on the witnesses' personal knowledge, it is entitled to depose each witness for seven hours before trial.

*Second*, even if Apple were surprised by the names of the Third-Party Witnesses, Apple can easily "cure" any prejudice by deposing those witnesses.  *See San Francisco Baykeeper*, 791 F. Supp. 2d at 733 (weighing "the ability of that party to cure the surprise").  Shortly after Epic served its preliminary trial witness list on March 12, and, consistent with the agreement between the Parties, Apple served deposition subpoenas on each of the Third-Party Witnesses.  Apple did so without ever informing Epic of any purported disclosure deficiency regarding the Third-Party Witnesses, without informing Epic that it was unwilling to proceed with the depositions without custodial document productions from the Third-Party Witnesses, and without requesting Epic's consent to a limited extension of the fact discovery period to pursue such discovery.  Apple did not raise any objection with Epic until April 7—nearly a month after Epic served its preliminary witness list—when it abruptly informed Epic that it would not proceed with the third-party depositions, and would be filing the Motion.  (*See* Earnhardt Decl. ¶ 26.)

Now Apple asserts that it is entitled to and requires custodial productions from the Third-Party Witnesses in order to conduct "fair cross examinations" of them.  (*See* Motion at 1.) But Apple failed to justify to the third parties that the information it sought was relevant and appropriately discoverable, failed timely to move to compel the production of such information before Magistrate Judge Hixson, and fails even now to articulate to this Court why it needs custodial productions to prevent prejudice.  Apple also makes passing reference to a "public campaign" against Apple by Facebook, "bias" on the part of Yoga Buddhi, and interactions with the Coalition for App Fairness by Microsoft.  (*See id.* at 4–6.)  But any such claim of "bias" is presumably predicated on the views and commercial interests of Microsoft, Facebook and Yoga Buddhi, not on the personal views and interests of the individuals identified as witnesses. Further, any such claim of bias was fully known to Apple during the discovery period, and Apple could (and presumably did) obtain discovery about such claimed bias from the entities involved.

Apple nowhere identifies why it should now be entitled to custodial documents from the individual witnesses, above and beyond the productions already made by the third parties or available from the very public sources it cites as support for its claim of bias.  The passing reference that Apple makes to *Rodman v. Safeway, Inc.* in order to support its claim that a

1   deposition alone is an inadequate remedy does not change the calculus.  (Motion at 10 (citing

2   (*Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2015 WL 5315940, at *1–3 (N.D. Cal. Sept.

3   11, 2015)).)  That case concerned the plaintiff's attempt to submit a declaration from a

4   previously undisclosed witness in support of its motion for summary judgment "three weeks

5   after the [c]ourt had taken the motion under submission after hearing", in a case that had been

6   "pending for four years" and for a declarant whose name plaintiff could have determined "at any

7   time he chose to look for it".  *Rodman*, 2015 WL 5315940, at *2–3.

8          Apple's own conduct in the course of third-party discovery in this matter demonstrates

9   that its unjustified demand for third-party custodial productions or additional documents is a

10  pretextual attempt to preclude the Third-Party Witnesses from testifying, not a genuine effort to

11  obtain necessary discovery that cannot be cured.  During fact discovery, the Parties deposed two

12  other true third parties—Mr. Patel, a corporate representative of Nvidia Corporation, and

13  Mr. Ong, a senior executive of Match Group, Inc.  (Earnhardt Decl. ¶ 15.)  At no point following

14  the identification of Messrs. Patel and Ong did Apple demand an additional custodial production

15  from either witness, threaten to delay or hold open their depositions until such a production was

16  made, or in any way suggest that Apple believed a production from the witness's files was

17  required for a "fair cross examination".  (*Id.*; *cf.* Motion at 12.)  To the contrary, Apple did

18  precisely what it should do now—it examined the witnesses on the existing documentary record

19  produced by the witnesses' employers.  (*See* Earnhardt Decl. ¶ 15.)

20         Additionally, the very remedy Apple seeks in this Motion demonstrates that Apple is

21  interested in interfering with the presentation of Epic's case at trial, not "curing" whatever

22  prejudice it allegedly has suffered.  (Motion at 12.)  Instead of appealing Judge Hixson's order or

23  seeking an order from this Court directing the Third-Party Witnesses to produce the documents

24  Apple claims it needs, Apple asks this Court to exclude the testimony of the Third-Party

25  Witnesses in their entirety.  (*Id.*)  That Apple is seeking to exclude the Third-Party Witnesses,

26  rather than seeking "cure", is further evidence that Apple wants to create prejudice, not avoid it.

27  *See Jang Sool Kwon v. Singapore Airlines*, No. C02-2590 BZ, 2003 WL 25686535, at *2 (N.D.

28  Cal. Nov. 7, 2003) (denying motion to exclude individual not listed on Rule 26(a)(1) disclosures

where defendant's tactical decision to seek exclusion "suggests it is more interested in using the discovery rules to exclude evidence than to obtain discovery").

*Third*, contrary to Apple's claims, there is no risk of disrupting the trial schedule, other than as a result of Apple's continuing delay and attempts to self-sabotage.  (*Cf.* Motion at 11.) The depositions of the Third-Party Witnesses already had been placed on the calendar, and each Party already had factored testimony from the Third-Party Witnesses into its trial case, including in their proposed findings of fact and conclusions of law, and witness lists—which included Apple setting aside time to cross examine these Third-Party Witnesses.  (*See, e.g.*, Apple's Tentative Initial Witness List, ECF No. 375, at 12; Apple's Proposed Findings of Fact and Conclusions of Law, ECF No. 410; Epic's Proposed Findings of Fact and Conclusions of Law, ECF No. 407.)  Allowing this evidence therefore would not "disrupt the trial", again weighing against exclusion.  *See San Francisco Baykeeper*, 791 F. Supp. 2d at 733.

*Fourth*, evidence from third parties is critically important.  *See id.* (weighing "the importance of the evidence").  This is an antitrust case in which harm to competition is at the forefront.  Apple knows that customers and developers—in numbers that greatly exceed the five third parties Epic is seeking to bring to trial as exemplars—have been harmed by its policies and practices.  That is the real reason Apple is attempting to exclude this highly relevant evidence (and why it has almost no third-party case of its own to speak of).  Evidence of the effects of Apple's conduct is key, which also weighs against exclusion of these witnesses.  Contrary to Apple's assertions, it is Epic that would suffer severe and unwarranted prejudice if Epic were forbidden from calling the Third-Party Witnesses at trial when Epic followed the Parties' agreement to the letter and when its initial disclosures took precisely the same form as Apple's.

*Fifth*, as discussed in Section II.B below, Epic was substantially justified in disclosing the Third-Party Witnesses when it did.  *See San Francisco Baykeeper*, 791 F. Supp. 2d at 733 (weighing the party's "explanation for its failure to disclose the evidence").

**B.** **Epic Was Substantially Justified in Disclosing the Third-Party Witnesses When It Did.**

Epic was substantially justified in disclosing the Third-Party Witnesses when it did because it disclosed them promptly to Apple upon their identification (the timing of which was beyond Epic's control) and in accordance with an agreement between the Parties designed precisely to address third-party trial witnesses.  Exclusion therefore would be inappropriate.  *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341-YGR, 2014 WL 2854773, at *5 n.2 (N.D. Cal. June 20, 2014) (explaining that exclusion is not warranted "when a failure to disclose is substantially justified").

**1.** **Epic Disclosed the Third-Party Witnesses upon Learning They Would Testify.**

A party is substantially justified in failing to disclose an individual when such failure is due to circumstances beyond the party's control.  *See Hoffman v. AmericaHomekey Inc.*, No. 3:12-cv-3806-B-BK, 2014 WL 12577104, at *5 (N.D. Tex. June 10, 2014) (noting that "whether circumstances beyond the proponent's control prevented him from making the disclosure timely" is a factor relevant to the substantial justification analysis and refusing to exclude witness's testimony where the name of his employer was previously disclosed and proponent only learned his name through discovery).  Here, Epic was unable to identify the Third-Party Witnesses by name at the time of its Rule 26(a) disclosures because it did not know they were available and willing to testify.  (Earnhardt Decl. ¶¶ 18, 20; Denning Decl. ¶¶ 9–10.)  Contrary to Apple's repeated contention that Epic disclosed these witnesses when it did as a form of "gamesmanship" (*see* Motion at 2, 8, 12), Epic promptly disclosed to Apple the names of the Third-Party Witnesses when Epic learned who Facebook, Microsoft and Yoga Buddhi were designating.

In its amended initial disclosures, Epic listed Facebook, Microsoft and Yoga Buddhi, and other companies, as entities Epic had reason to believe had information relevant to its claims against Apple.  (*See* Srinivasan Decl. Ex. B at 6.)  Epic did not know which individuals were willing or could be compelled to provide discovery, or whether they were willing or could be compelled to testify in this action.  Through document discovery and negotiation with the third parties, Epic sought to determine whether there were individuals with relevant knowledge and

whether Epic could secure trial testimony from them.[6]  *See In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. C09-37-MJP, 2012 WL 2995046, at *7 (W.D. Wash. July 23, 2012) (finding that the plaintiff was "diligent" in its disclosure in relevant part because plaintiff learned of the witnesses through the "diligent review of the volumes of documents Defendants produced").  Upon learning that the Third-Party Witnesses would be available for trial, Epic promptly disclosed this information to Apple.  (*See* Srinivasan Decl. Ex. C at 9.)

<u>*Microsoft's Ms. Wright*</u>[7]:  Epic learned of Ms. Wright through *Apple's* document production, which contains over 330 emails between Ms. Wright and Apple executives regarding Apple's rejection of Microsoft's game streaming service from the App Store.  (Earnhardt Decl. ¶ 17.)  Since at least November 2020, Epic had been in discussions with Microsoft concerning whether Microsoft would be willing to offer a trial witness.  (*See id.* ¶ 16.)  Although Microsoft indicated that it could be open to making a witness available, it gave no indication at the time of who the witness would be, despite Epic asking for that information.  (*Id.*)  Epic and Microsoft continued their negotiations and, on March 5, 2021, in light of her direct interactions with Apple regarding game streaming, Epic asked Microsoft whether Ms. Wright would be willing to testify.  (*Id.*)  During that call, Microsoft informed Epic that Ms. Wright potentially could be made available, but Microsoft was unwilling to commit to making Ms. Wright available at trial at that time.  (*Id.*)  Epic did not learn that Ms. Wright would in fact be willing to provide trial testimony until March 12, 2021.  (*Id.* ¶ 18.)  Epic informed Apple later that same day.  (*Id.*; *see also* Srinivasan Decl. Ex. C at 9.)

---

[6] It is not easy to agree to testify in a case brought against the largest company in the world by market capitalization.  Even being disclosed as a potential source of information relevant to the claims and defenses at issue in the matter nearly guarantees receipt of an overbroad retaliatory subpoena.  (*See* Srinivasan Decl. Exs. D and E (Apple's document subpoenas on Neuro-Fin Inc. d/b/a SmartStops and its CEO Shelley Gould, with 34 requests for production including 57 subparts, spanning a date range of six years, after inclusion on Epic's tentative trial witness list).)

[7] Apple argues that because Epic's Rule 26(a)(1) disclosures disclosed an individual Microsoft employee, it was justified in assuming that no other third-party witness would testify in Epic's case.  (Motion at 9–10.)  That assumption is untenable.  It is evidence only that Epic *knew who he was*, because, as Apple concedes, the named Microsoft employee already had submitted a declaration in support of Epic's motion for a temporary restraining order.  *Shenwick* is not analogous since, in that case, it was a number of Twitter's own current and former employees and directors it failed to disclose, which it could and should have known about sooner.  *See* 2021 WL 1232451, at *2.

*Facebook's Mr. Sharma*:  Since at least January 15, 2021, Epic had been in discussions with Facebook's counsel concerning whether Facebook would be willing to make a witness available for trial.  (Denning Decl. ¶ 6.)  During those discussions, Facebook indicated that it was not in a position to confirm whether it would make a witness available or, if so, who the witness would be.  (*Id.*)  On March 3, 2021, based on publicly available information and the individuals (including Mr. Sharma) for whom Facebook had produced documents to Apple and Epic, Epic asked Facebook whether it would be willing to make one of those individuals available at trial. (*Id.* ¶ 7.)  During the call, Facebook informed Epic that it was still not able to commit to making a witness available or whether, if it did, the witness would be among those identified in Facebook's production.  (*Id.*)  On March 9, 2021, Facebook reiterated that it still could not commit to making a witness available at trial.  (*Id.* ¶ 8.)  Facebook further indicated that if it were to make a witness available, then the witness would likely be Mr. Sharma or one of the other individuals identified in Facebook's documents.  (*Id.*)  Epic did not learn that Facebook would be providing a witness, or that the witness would be Mr. Sharma, until approximately noon (PT) on March 12, 2021.  (*Id.* ¶ 9.)  Epic informed Apple later that same day.  (*See* Srinivasan Decl. Ex. C at 9.)

*Yoga Buddhi's Mr. Simon*:  Mr. Simon is Yoga Buddhi's co-founder and CEO.  (Lowery Decl. ¶ 11.)  Substantially all of Yoga Buddhi's document production came from Mr. Simon's files and revealed that he was the individual at Yoga Buddhi directly interacting with Apple. (*See* Earnhardt Decl. ¶ 20.)  On March 5, 2021, Epic inquired whether Mr. Simon would be willing to accept a trial subpoena.  (*Id.* ¶ 19.)  Epic did not learn that Mr. Simon would be willing to accept a trial subpoena until March 8, 2021.  (*Id.*)  Epic informed Apple four days later in its tentative initial trial witness list.  (*Id.*; *see also* Srinivasan Decl. Ex. C at 9.)

### 2.  Epic Disclosed the Third-Party Witnesses in Accordance with the Parties' Agreement Regarding Third-Party Witnesses.

Epic further was substantially justified in disclosing the names of the Third-Party Witnesses when it did because it did so pursuant to an agreement of the Parties in which they

1   (i) explicitly acknowledged that Epic or Apple might call previously unidentified third-party

2   witnesses at trial, and (ii) agreed upon a mechanism to prevent unfair surprise in that event.

3      During the discovery period, the Parties engaged in extensive negotiations regarding the

4   appropriate scope of third-party deposition discovery in light of the fact that the Parties had

5   issued document subpoenas to at least 26 third-party entities.  (*See* Earnhardt Decl. ¶¶ 5–6.)  As

6   described above, Epic proposed to Apple a flexible approach to third-party deposition discovery

7   that would permit each side an allotment of hours to use in deposing third parties.  (*See id.* ¶ 12,

8   Ex. C at 7.)  Apple rejected that approach, and instead proposed that the Parties agree to a

9   specific number of third-party depositions.  (*Id.* ¶ 13, Ex. C at 3.)  Epic explained that Apple's

10  proposal, which limited the number of third parties that each side could depose in a way that

11  Epic's proposal did not, presented a problem.  (*See id.* ¶ 13.)  Specifically, because Apple had

12  served document subpoenas on or disclosed more than 26 third parties by corporate name (*see id.*

13  ¶¶ 12–13), Epic could not agree to forgo its right to depose all of the third parties subpoenaed for

14  documents by Apple or listed on Apple's disclosures because it did not know from which third

15  parties, if any, Apple would call a witness at trial.

16     Apple recognized the reality of this problem—indeed, it was facing it as well, since Epic

17  had also served document subpoenas on or disclosed at least 24 third parties (*see id.* ¶ 5)—so the

18  Parties agreed to a condition that any third-party witness who appeared on either side's witness

19  list would be subject to deposition prior to trial, to the extent that witness was not previously

20  deposed.  Apple memorialized this agreement on January 22, 2021, writing that "the Parties will

21  agree to a rule where any previously un-deposed third-party witness who appears on a party's

22  witness list will be subject to deposition by the other side before trial".  (*Id.* Ex. C at 3.)

23     **C.    The Appropriate Remedy Is a Deposition, Not Exclusion.**

24     Even if Epic's disclosures were inadequate (again, they were not) and even if any such

25  inadequacy were not excused (again, it should be), the appropriate remedy would be for Apple to

26  be permitted to depose the Third-Party Witnesses, not for them to be excluded.  Third-party

27  evidence is critical to this case.  Having the witnesses deposed is consistent not only with the

28  Parties' express agreement as to how they would handle third-party trial witnesses, but it is

precisely the remedy that courts routinely order even for *unexcused* belated witness disclosures. *See, e.g.*, *Jang Sool Kwon*, 2003 WL 25686535, at *1 (denying motion *in limine* for Rule 37 sanctions seeking to preclude testimony of witnesses as long as plaintiff makes witnesses available for deposition); *Ortiz v. CVS Caremark Corp.*, No. C-12-05859-EDL, 2013 WL 6236743, at *8 n.1 (N.D. Cal. Dec. 2, 2013) (holding Rule 37 sanctions not appropriate because "any failure to disclose was harmless because Plaintiffs were able to depose nine of the declarants, and these declarations alone support Defendants' arguments"); *Maionchi v. Union Pac. Corp.*, No. C 03-0647 JF PVT, 2007 WL 2022027, at *1 (N.D. Cal. July 9, 2007) (holding that defendants' delay in disclosing expert and report did not warrant Rule 37 sanctions because it did not cause harm to plaintiffs because "[p]laintiffs may still depose" the witness); *Bookhamer v. Sunbeam Prod. Inc.*, No. C 09-06027 ECM, 2012 WL 6000230, at *3 (N.D. Cal. Nov. 30, 2012) (finding that even though failure to disclose was not justified and did cause harm, the harm could be remedied by allowing defendants to depose the seven non-retained experts if they chose to do so); *In re Wash. Mut.*, 2012 WL 2995046, at *7 ("To remedy any harm of which Defendants complain, the Court grants Defendants leave to depose the four individuals should they feel compelled."). Here too, any failure to disclose the Third-Party Witnesses already has been remedied through Apple's ability to depose each of the witnesses in advance of trial if Apple chooses to do so.

At most, the third parties should be ordered to produce additional documents as a prerequisite to testifying. Epic takes no position on whether the third parties adequately have responded to Apple's document subpoenas. But Epic strongly objects to Apple's gamesmanship, using a timing exigency of its own creation as a basis to exclude the witnesses from testifying at trial. Apple knew about these individuals on March 12; it waited until April 7 to raise this issue with Epic. If there is now too little time for additional document productions, Apple is to blame, not Epic, and, therefore, Epic should not be punished.

## CONCLUSION

For the foregoing reasons, Epic respectfully requests that the Court deny Defendant Apple Inc.'s Motion for Pre-Trial Sanctions Against Epic Games, Inc.

Dated:  April 12, 2021

Respectfully submitted,

By:   /s/ *J. Wesley Earnhardt*

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle ( SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

***Attorneys for Plaintiff and Counter-defendant*
EPIC GAMES, INC.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

Pursuant to L.R. 5-5, the undersigned certifies that on April 12, 2021, the foregoing opposition is being filed and served electronically via the Court's CM/ECF system.

*/s/ J. Wesley Earnhardt*