# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the

EPIC GAMES, INC.

_____

*Plaintiff*

v.

APPLE INC.
and related litigations including
CAMERON ET AL. v. APPLE INC. and
IN RE APPLE IPHONE ANTITRUST LITIGATION

_____

*Defendant*

)
)
)
)
)
)
)

Civil Action No.   4:20-CV-05640-YGR-TSH
4:11-CV-06714-YGR-TSH
4:19-CV-03074-YGR-TSH

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
FACEBOOK, INC.
1 HACKER WAY, MENLO PARK, CA 94025

_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Schedule A

| Place: REGUS LEGAL<br>101 Jefferson Drive<br>Menlo Park, CA 94025<br><br>Unless otherwise agreed | Date and Time:<br><br>December 28, 2020 at 10am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: December 9, 2020
_____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*
                                                         Hannah L. Cannom

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* ___Apple, Inc.___
_____, who issues or requests this subpoena, are:

Hannah L. Cannom, Walker Stevens Cannom LLP, 500 Molino Street, Suite 118, Los Angeles, CA 90013, (213) 337-9972, hcannom@wscllp.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

Notwithstanding any definition set forth below, each word, term or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

1.       "**ADVERTISING**" shall mean the IN-APP presentation of third-party promotional content in exchange for payment.

2.       "**ANDROID OS**" refers to the operating system for any Android DEVICE and INCLUDES any versions, variants or forks.

3.       "**APPLE'S IAP**" means APPLE'S IN-APP PAYMENT PROCESSOR that it uses to collect its 30% commission.

4.       "**APPLE**" means Apple Inc.

5.       "**APP**" or "**APPS**" means a software program or programs designed to run on a computing device, regardless of the means of distribution.

6.       "**COMMUNICATION**" or "**COMMUNICATIONS**" means, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing or in any other manner, at any time or place, and under any circumstances whatsoever.

7.       "**CONCERNING**" a given subject means directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing or supporting a given subject matter.

8.       "**DEVELOPER**" or "**DEVELOPERS**" means any person or entity who develops or publishes an APP or other software.

1

9.      "**DEVICE**" means any HANDHELD DEVICE or NON-HANDHELD DEVICE.

10.      "**DIGITAL PRODUCT**" or "**DIGITAL PRODUCTS**" means any digital product, service or other item distributed, made available for download or sold via or in (1) a SOFTWARE STORE, or (2) any website, for use on a DEVICE, INCLUDING APPS whether downloaded or purchased in or outside of the United States. This term INCLUDES IN-APP PURCHASES.

11.      "**DOCUMENT**" and "**DOCUMENTS**" has the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and encompasses all forms of tangible expression, INCLUDING all electronically stored information or data, and all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, computer code, software, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, INCLUDING papers, books, records, correspondence, reports, memoranda, electronic mail (e-mail), text, instant, or social media messages (INCLUDING SMS or MMS text or multimedia messages and proprietary messages such as those sent or received via Allo, Google+, Google Chat, WhatsApp, Twitter, Facebook, or iMessage), contracts, accounting or other ledgers, tables, tabulations, graphs, charts, diagrams, plans, schedules, appointment books, calendars, diaries, time sheets, studies, analyses, drafts, telegrams, teletype or telecopy messages, files, telephone logs and messages, checks, microfilms, microfiche, pictures, photographs, printouts, electronic data, electronic data compilations, tapes, diskettes, hard drives, magnetic drives, solid-state disks or solid-state drives, hybrid drives, cloud storage, removable media, notes, minutes or transcripts of proceedings. The term DOCUMENT or DOCUMENTS INCLUDES originals and all non-

identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all other data compilations from which information can be obtained (translated, if necessary into useable form), and any preliminary versions, drafts, or other revisions of any of the foregoing.

12.     "**EPIC**" means Epic Games, Inc. and all predecessors, successors, subsidiaries, divisions, parents, and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives, and any other person acting on behalf of any of the foregoing entities.

13.     "**FACEBOOK APP CENTER**" means YOUR SOFTWARE STORE that allows Facebook users to access, download, or play APPS listed on Facebook.com.

14.     "**FACEBOOK GAMING**" means YOUR APP providing game streaming and/or game viewing services.

15.     "**HANDHELD DEVICE**" means any smartphone, tablet or portable MP3 music player.

16.     "**IN-APP PRODUCT**" means any feature, service or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, in-game currencies, game levels, access to premium content or unlocking a full version of an APP.

17.     "**IN-APP PURCHASE**" or "**IN-APP PURCHASES**" means any purchase made within or from a DIGITAL PRODUCT by a DIGITAL PRODUCT user, excluding the purchase price of the DIGITAL PRODUCT, such as the APP, itself. Examples of IN-APP PURCHASES INCLUDE paying for enhanced or updated content, purchasing a weapon within a game, buying virtual currency, paying for or renewing subscriptions, or paying to eliminate advertisements within an application.

18.     "**INCLUDING**" or "**INCLUDE**" shall not be construed as limiting any request, and means the same as "including, but not limited to".

19.     "**iOS**" means APPLE'S operating system that powers or is used by an iOS DEVICE and INCLUDES any iOS versions, variants or forks, including iPadOS.

20.     "**iOS APP**" means any APP that is compatible with iOS.

21.     "**iOS APP STORE**" means APPLE'S SOFTWARE STORE, which allows iOS users to download iOS APPS.

22.     "**iOS DEVICE**" means any DEVICE created by APPLE that uses iOS, INCLUDING all iPhones and iPads.

23.     "**NON-HANDHELD DEVICE**" means laptop computers, desktop computers or video game consoles.

24.     The "**OCULUS RIFT STORE**" means YOUR SOFTWARE STORE that allows Facebook users to access, download, or play APPS listed on oculus.com/experiences/quest/ including but not limited to those APPS purchased through an Oculus Rift DEVICE.

25.     "**PAYMENT PROCESSOR**" or "**PAYMENT PROCESSORS**" means any software that handles payment transactions between users and APP DEVELOPERS through various channels such as credit card and debit cards. This term INCLUDES entities such as Adyen, Braintree, PayPal, Square and Stripe and also INCLUDES, for the avoidance of doubt, APPLE'S IAP and any payment processing solution YOU have developed.

26.     "**RELATE TO**" or "**RELATING TO**" means, without limitation, the following concepts: discussing, describing, setting forth, reflecting, dealing with, pertaining to, analyzing, evaluation, estimating, constituting, studying, surveying, projecting, assessing, recording,

summarizing, criticizing, reporting, commenting, from, to, or otherwise involving, in whole or in part.

27.     "**REPORTS**" means any final reports, research, papers, memoranda, presentations, reviews, statistical compilations or other analyses.

28.     "**SOFTWARE STORE**" or "**SOFTWARE STORES**" means any digital store that offers APPS for digital distribution.

29.     "**THIS ACTION**" means *Epic Games, Inc. v. Apple Inc*., No. 4:20-CV-05640-YGR-TSH (N.D. Cal.) and any related actions, INCLUDING *In re Apple iPhone Antitrust Litigation*, Case No. 4:11-cv-06714-YGR-TSH (N.D. Cal.) and *Cameron v. Apple Inc*., Case No. 419-cv-03074-YGR-TSH (N.D. Cal.).

30.     "**YOU**" or "**YOUR**" refers to Facebook, Inc., all predecessors, successors, subsidiaries, divisions, parents or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants and representatives thereof, and any other person acting on behalf of any of the foregoing entities.

## **INSTRUCTIONS**

1.     The following rules of construction shall apply to all discovery requests:

a.     The connectives "**and**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make the topic inclusive rather than exclusive;

b.     The use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

c.     "**Any**" and "**each**" shall be construed to mean "all", and vice versa;

d.     "**The**" shall not be construed as limiting the scope of any topic;

5

e.      References to employees, officers, directors or agents include both current and former employees, officers, directors and agents; and

f.      The use of the singular form of any word includes the plural and vice versa.

2.      Unless otherwise stated, the Subpoena and the requests contained herein ("**REQUESTS**") call for the search for, collection and production of all responsive DOCUMENTS created or obtained by YOU since 2008 through the present. If, after an initial production, YOU obtain or become aware of additional DOCUMENTS that are responsive to this Subpoena, YOU are required to promptly produce such additional DOCUMENTS.

3.      In complying with the Subpoena, YOU are required to produce all DOCUMENTS described below that are in YOUR possession, custody or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former attorneys, investigators, accountants, agents, representatives, or other persons acting on YOUR behalf.

4.      All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the REQUESTS.

5.      For the purpose of reading, interpreting or construing the scope of the REQUESTS in this Subpoena, the terms used should be given their most expansive and inclusive interpretation.

6.      Unless instructed otherwise, each specification should be construed independently and not by reference to any other REQUEST for the purpose of limitation.

7.      If any portion of a DOCUMENT or COMMUNICATION is responsive to any REQUEST, the entire DOCUMENT or COMMUNICATION should be produced.

8.      If YOU object to any REQUEST, in whole or in part, state the grounds of YOUR objection with specificity and produce DOCUMENTS responsive to the remainder of the REQUEST.

9.      If, in answering this Subpoena, YOU encounter any ambiguities when construing a REQUEST, instruction or definition, YOUR response shall set forth the matter deemed ambiguous and the construction used in responding. For the avoidance of doubt, this instruction does not in any way limit YOUR obligation to give terms their most expansive and inclusive interpretation when reading, interpreting or construing the scope of the REQUESTS in this Subpoena.

10.     Where a claim of privilege or other protection from discovery is asserted in objecting to any REQUEST, YOU should identify the nature of the privilege or protection (INCLUDING work product protection) that is being claimed. In such case, YOU should also (a) indicate, as to the information requested, whether any DOCUMENTS exist, and (b) provide the following information for each such DOCUMENT in a "privileged documents log" or similar format:

    a.      The type of DOCUMENT;

    b.      The general subject matter of the DOCUMENT;

    c.      The date of the DOCUMENT;

    d.      The author(s) of the DOCUMENT;

    e.      Any recipient(s), copyee(s) or blind copyee(s) of the DOCUMENT; and

    f.      The custodian of the DOCUMENT, where applicable.

11.     The search will INCLUDE both hard copies and electronically stored information. Compliance with this Subpoena requires a search of all DOCUMENTS in YOUR possession, custody or control, whether or not such DOCUMENTS are on YOUR premises.

12.     DOCUMENTS produced pursuant to this Subpoena should be produced as they are kept in the ordinary course of business, INCLUDING electronically stored information. Electronic materials, information and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

13.     DOCUMENTS in electronic form, INCLUDING e-mail, should be produced in color in single page tagged image file format ("TIFF"). TIFFs shall show all text and images that would be visible in the original electronic format ("native format"), INCLUDING redlines and speaker notes. An associated load file linking the images to the corresponding DOCUMENT should be provided. All DOCUMENTS with a native format of a spreadsheet, INCLUDING files such as Microsoft Excel and Google Sheets, shall be produced in native format. All metadata associated with any electronically stored information shall be produced in text format linked to the associated DOCUMENT. Extracted text or, if extracted text is not available, optical character recognition ("OCR") text should be provided in document-level text files. Alternatively, DOCUMENTS in electronic form may be produced in a manner consistent with any e-discovery stipulation that is filed in this Action.

14.     Notwithstanding any of the other provisions in these Instructions, DOCUMENTS that are re-produced in whole or in part from the production files of another litigation, arbitration, government inquiry or other matter may be produced in the same manner and form as originally produced in the other matter; provided, however, that YOU will re-produce

DOCUMENTS in a different format as set forth herein if reasonably necessary to the DOCUMENTS' comprehension or use.

15.     EPIC serves these REQUESTS without prejudice to serve additional requests for production.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

DOCUMENTS sufficient to show for each of YOUR APPS, INCLUDING YOUR "Facebook Mobile," "FACEBOOK GAMING," "Instagram," "WhatsApp," and "Messenger" APPS:

a.     the monthly active users for each APP on each platform for which the APP is available (including iOS, ANDROID OS, and non-mobile platforms);

b.     the extent to which users of YOUR APP use YOUR APP on multiple platforms or switch from one platform to another (INCLUDING iOS, ANDROID OS, and non- mobile platforms); and

c.     YOUR understanding as to why users of YOUR APPS do or do not use them on multiple platforms or switch among them (INCLUDING iOS, ANDROID OS, and non- mobile platforms).

### REQUEST FOR PRODUCTION NO. 2:

DOCUMENTS sufficient to show for each of YOUR APPS, INCLUDING YOUR "Facebook Mobile," "FACEBOOK GAMING," "Instagram," "WhatsApp," and "Messenger" APPS:

a.     the PAYMENT PROCESSOR(S) YOU use, if any, for IN-APP PURCHASES for each means of distribution;

b.      the factors that impacted YOUR decision to use or not use such PAYMENT PROCESSOR(S) for each means of distribution, INCLUDING why YOU chose to use or not use such PAYMENT PROCESSOR(S) and any alternatives YOU considered;

c.      the past or present fees and commission rates charged by (or, if available, that would be charged by) each such PAYMENT PROCESSOR for IN-APP PURCHASES for each means of distribution, including any exceptions, discounts, promotions, rebates, or marketing programs that lower, or effectively lower, the commission rates and/or fees;

d.      the impact of such past or present fees and commission rates charged by each such PAYMENT PROCESSOR on the prices YOU charge or charged for IN-APP PURCHASES to consumers;

e.      the impact of such past or present fees and commission rates charged by each such PAYMENT PROCESSOR on the IN-APP PURCHASE options (or other features or DIGITAL PRODUCTS) YOU provide or considered providing to consumers;

f.      the availability of alternative PAYMENT PROCESSORS for IN-APP PURCHASES, INCLUDING whether YOU have YOUR own PAYMENT PROCESSOR that could be used but for APPLE'S restrictions, and, for each such potential alternative, the fees and commission rates charged for IN-APP PURCHASES;

g.      whether users of YOUR APP are given a choice between PAYMENT PROCESSORS for IN-APP PURCHASES on any platform;

h.      the advantages of giving users a choice of PAYMENT PROCESSORS for IN-APP PURCHASES;

i.      YOUR understanding as to why users of YOUR APP choose to pay through any particular PAYMENT PROCESSOR(S);

j.      any differences among PAYMENT PROCESSORS regarding security issues;

k.      any difference among PAYMENT PROCESSOR(S) regarding parental controls; and

l.      any difference among PAYMENT PROCESSOR(S) regarding YOUR ability to provide customer support.

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS and REPORTS RELATING TO the distribution or planned distribution of any of YOUR APPS in the iOS APP STORE, INCLUDING:

a.      DOCUMENTS and REPORTS CONCERNING negotiations between YOU and APPLE RELATING TO APPLE'S Developer Program License Agreement or App Store Review Guidelines;

b.      DOCUMENTS and REPORTS CONCERNING negotiations between YOU and APPLE RELATING TO any actual or threatened removal of any of YOUR APPS from the iOS APP STORE;

c.      DOCUMENTS and REPORTS CONCERNING any rejected submission of any of YOUR APPS to the iOS APP STORE and efforts by YOU to bring YOUR APPS into compliance and/or resubmit YOUR APP to APPLE; and

d.      DOCUMENTS and REPORTS CONCERNING negotiations between YOU and APPLE RELATING TO the PAYMENT PROCESSOR offered in each APP YOU distribute on iOS.

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show:

a.      why YOU chose not to offer playable gaming content for YOUR FACEBOOK GAMING APP on iOS; and

b.      the impact on YOUR business of YOUR decision to not offer playable gaming content for YOUR FACEBOOK GAMING APP on iOS.

**REQUEST FOR PRODUCTION NO. 5:**

DOCUMENTS CONCERNING the impact of APPLE'S contractual or other restrictions on YOUR iOS APPS, DEVELOPERS, content creators, and businesses, INCLUDING DOCUMENTS CONCERNING any public comment YOU made about APPLE'S contractual or other restrictions.

**REQUEST FOR PRODUCTION NO. 6:**

DOCUMENTS CONCERNING APPLE'S enforcement and/or interpretation of its Developer Program License Agreement or App Store Review Guidelines, INCLUDING any inconsistencies in or changes regarding such enforcement and/or interpretation.

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS sufficient to show the impact of the iOS APP STORE policies on YOUR relationship with YOUR customers, INCLUDING CONCERNING policies that:

a.      prevent YOU from informing YOUR iOS customers about alternative platforms on which they can buy YOUR DIGITAL PRODUCTS;

b.      require YOU to offer Sign-in with APPLE to YOUR users if YOU offer any other third-party login service to YOUR users; and

c.      otherwise restrict YOUR ability to access customer data.

**REQUEST FOR PRODUCTION NO. 8:**

DOCUMENTS sufficient to show a representative sample of any innovations, services, features, APPS or IN-APP PRODUCTS that YOU would have developed or offered for use on iOS DEVICES but did not because iOS APP STORE policies would not have permitted it, would have made it unprofitable, or otherwise caused you to not pursue it.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to show whether YOU have offered, could offer, or have evaluated offering a SOFTWARE STORE on iOS DEVICES.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show whether APPLE'S contractual or other restrictions have prevented, impeded, or disincentivized YOU from developing or offering a SOFTWARE STORE on iOS DEVICES.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS sufficient to show the key features of YOUR SOFTWARE STORE(S), such as FACEBOOK APP CENTER or the OCULUS RIFT STORE (INCLUDING any features that YOU know differ from APPLE'S iOS APP STORE), INCLUDING:

a.      whether YOU block APPS from YOUR SOFTWARE STORE(S) based on the manner in which a DEVELOPER delivers content and services, for example, whether content is installed on a DEVICE or streamed from the cloud;

b.      whether YOU block APPS from YOUR SOFTWARE STORE(S) based on a DEVELOPER'S choice of PAYMENT PROCESSOR(S) offered for IN-APP PURCHASES;

c.      whether YOU block DEVELOPERS from communicating with their users through their APPS;

      d.      whether YOU permit IN-APP DIGITAL PRODUCTS purchased outside of YOUR SOFTWARE STORE(S) to be used on APPS purchased from YOUR SOFTWARE STORE(S);

      e.      whether YOUR SOFTWARE STORE(S) offer features, innovations, and services that are not available with APPLE iOS APP STORE, such as parental controls, customer service, security features, social features, ADVERTISING features, recommendation features, and others; and

      f.      whether YOUR SOFTWARE STORE(S) offer tools and services to DEVELOPERS that iOS APP STORE does not offer to DEVELOPERS.

**REQUEST FOR PRODUCTION NO. 12:**

      DOCUMENTS sufficient to show a representative sample of any exceptions, discounts, or promotions that YOU have offered to DEVELOPERS that lower the commission rates and/or fees YOU charge DEVELOPERS for a user IN-APP PURCHASE from an APP accessed from FACEBOOK APP CENTER, FACEBOOK GAMING, the OCULUS RIFT STORE, or any other of YOUR SOFTWARE STORE(S).

**REQUEST FOR PRODUCTION NO. 13:**

      REPORTS and/or analyses RELATING TO DEVELOPER reinvestment of savings from lower SOFTWARE STORE commissions and/or fees, INCLUDING any impact of such reinvestment on the quantity, quality, or price of APPS.

**REQUEST FOR PRODUCTION NO. 14:**

      DOCUMENTS sufficient to show whether YOU have offered, could offer, or have evaluated offering a PAYMENT PROCESSOR for IN-APP PURCHASES compatible with iOS.

**REQUEST FOR PRODUCTION NO. 15:**

DOCUMENTS sufficient to show whether APPLE'S contractual or other restrictions have prevented, impeded, or disincentivized YOU from developing or offering to a PAYMENT PROCESSOR for IN-APP PURCHASES compatible with iOS.

**REQUEST FOR PRODUCTION NO. 16:**

DOCUMENTS sufficient to show the characteristics of YOUR PAYMENT PROCESSOR(S) for each operating system on which they are offered INCLUDING their:

a.      ability to process payments within DEVELOPERS' APPS, INCLUDING IN-APP PURCHASES for DIGITAL PRODUCTS;

b.      services offered to DEVELOPERS;

c.      commission rates, transaction fees, or other pricing models and payment methods;

d.      availability of coupons, discounts or promotions for transaction fees;

e.      capability to permit DEVELOPERS to record sales directly;

f.      security features;

g.      data and analytics features;

h.      parental control features; and

i.      customer service.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show that there is demand for iOS-compatible PAYMENT PROCESSORS other than APPLE'S IAP.

**REQUEST FOR PRODUCTION NO. 18:**

Any REPORTS prepared by YOU CONCERNING APPLE'S IAP, INCLUDING:

15

a.    any comparisons of YOUR PAYMENT PROCESSOR(S) with APPLE'S IAP; and

b.    any evaluations of APPLE'S IAP, INCLUDING evaluations CONCERNING APPLE'S IAP's commission and rates, data and analytics, customer service, security, and parental controls.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS produced by YOU in THIS ACTION.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to show for each of YOUR APPS, INCLUDING YOUR "Facebook Mobile," "FACEBOOK GAMING," "Instagram," "WhatsApp," and "Messenger" APPS,

a.    the monthly downloads for each APP on each platform for which the APP is available (including iOS, ANDROID OS, and non-mobile platforms);

b.    the revenues from paid downloads (if any) for each APP on each platform for which the APP is available (including iOS, ANDROID OS, and non-mobile platforms);

c.    the revenues from in-app purchases for each APP on each platform for which the APP is available (including iOS, ANDROID OS, and non-mobile platforms); and

d.    the revenues remitted to Facebook (i.e., revenues minus commissions) for each APP on each platform for which the APP is available (including iOS, ANDROID OS, and non-mobile platforms).

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS sufficient to show a user's ability to use IN-APP PURCHASES made in YOUR APPS, INCLUDING YOUR "Facebook Mobile," "FACEBOOK GAMING," "Instagram," "WhatsApp," and "Messenger" APPS, on each platform for which the APP is available (including iOS, Android OS, and non-mobile platforms) for redemption on another platform (including iOS, Android OS, and non-mobile platforms).

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show for each of YOUR APPS, INCLUDING YOUR "Facebook Mobile," "FACEBOOK GAMING," "Instagram," "WhatsApp," and "Messenger" APPS, the monthly advertising revenue received by YOU on each platform for which the APP is available (including iOS, ANDROID OS, and non-mobile platforms).

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS sufficient to show the comparative benefits to YOU of distributing YOUR APPS through different marketplaces.

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS sufficient to show the services provided to YOU by APPLE related to YOUR APPS, including but not limited to technical support services related to YOUR APPS, comarketing services related to YOUR APPS, and anything that APPLE is providing to YOU to improve the performance and accessibility of YOUR APPS.

**REQUEST FOR PRODUCTION NO. 25:**

Documents sufficient to show the standard commission rate for DEVELOPERS that distribute APPS through FACEBOOK APP CENTER, FACEBOOK GAMING, the OCULUS RIFT STORE, or any other of YOUR SOFTWARE STORE(S).

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to show the standard contractual agreements between YOU and DEVELOPERS who distribute APPS through FACEBOOK APP CENTER, FACEBOOK GAMING, the OCULUS RIFT STORE, or any other of YOUR SOFTWARE STORE(S).