# EXHIBIT A:

# DECLARATION OF ADRIAN ONG

1  Douglas J. Dixon, State Bar No. 275389
   ddixon@hueston.com
2  HUESTON HENNIGAN LLP
   620 Newport Center Drive, Suite 1300
3  Newport Beach, CA 92660
   Telephone:    (949) 229-8640
4  Facsimile:    (888) 775-0898

5  Attorney for Third-Party Respondent
   Match Group, Inc.
6

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11 | EPIC GAMES, INC.,                         | Case No. 4:20-cv-05640-YGR
12 |         Plaintiff and Counter-Defendant,  | Case No. 4:11-cv-06714-YGR
   |                                           | Case No. 4:19-cv-03074-YGR
13 |    vs.                                    |
   |                                           | **DECLARATION OF ADRIAN ONG
14 | APPLE INC.,                               | PURSUANT TO LOCAL RULE 79-5(e)(1)
   |                                           | AND IN RESPONSE TO EPIC GAMES
15 |         Defendant and Counterclaimant.    | INC.'S ADMINISTRATIVE MOTION TO
   |                                           | FILE UNDER SEAL PORTIONS OF
16 |                                           | PROPOSED FINDINGS OF FACT AND
   |                                           | CONCLUSIONS OF LAW**
17 | IN RE APPLE iPHONE ANTITRUST              |
   | LITIGATION                                |
18 |                                           |
19 | DONALD R. CAMERON, et al.,                |
   |         Plaintiffs,                       |
20 |                                           |
   |    vs.                                    |
21 |                                           |
   | APPLE INC.,                               |
22 |                                           |
   |         Defendant.                        |
23

## DECLARATION OF ADRIAN ONG

I, Adrian Ong, declare as follows:

1. I am Senior Vice President of Operations at Match Group, LLC, which is a subsidiary of Match Group, Inc. In my position, I work closely with the Tinder brand, which is a division of Match Group, LLC. Match Group, Inc., Match Group, LLC, and Tinder are non-parties in the three above-captioned actions, and for the purposes of this declaration, I shall refer to them collectively as "Match."

2. I have been employed by Match since late 2011. Through the course of my employment with Match, I have become familiar with Match's treatment of proprietary business information, such as that discussed in this declaration. I make this declaration pursuant to Northern District of California Civil Local Rule 79-5(e)(1) and in response to Epic Games, Inc.'s ("Epic") Administrative Motion to File Under Seal Portions of Proposed Findings of Fact and Conclusions of Law ("Motion to Seal"). I know the facts stated herein based on my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

3. I have reviewed Epic's Motion to Seal and understand that Epic filed that motion on April 7, 2021, and the attached Proposed Findings of Fact and Conclusions of Law ("PFFCL"). Specified portions of Epic's PFFCL should remain under seal for the reasons stated in this declaration.

4. I was deposed in in the above-captioned actions on February 24, 2021. I understand that, during my deposition, counsel for Match requested that my deposition testimony be designated Highly Confidential pursuant to the protective orders entered in the above-captioned actions.

5. In **paragraph 81** of Epic's PFFCL, Epic refers to my testimony regarding the relative revenue generated by the Tinder app that originates on Apple's iOS platform. Match does not publicly disclose the percentage of app revenue that originates from particular platforms. Tinder considers that datapoint proprietary confidential business information because third-party knowledge of that data might be used against Tinder in business negotiations with the platforms on which Tinder appears. The information would also give Tinder's competitors insights into the

- 2 -
ONG DECLARATION IN RESPONSE TO MOTION TO SEAL

1  business that could place them at competitive advantage. Therefore, Match requests that the Court
2  seal the specific datapoint in paragraph 81 so that the relevant paragraph reads as: "For example,
3  mobile app developed Match Group could not just abandon iOS and develop solely for other
4  platforms," with the remainder of the paragraph redacted. This request is narrowly tailored and
5  appropriate to protecting Match's confidential business information.

6      6.   In **paragraph 157** of Epic's PFFCL, Epic refers to my testimony regarding the
7  percentage of the revenue generated by the Tinder app that originates on Apple's iOS platform.
8  Tinder does not publicly disclose the percentage of app revenue that originates from particular
9  platforms, as this datapoint is highly confidential and proprietary business information. If it were
10 disclosed, third parties—particularly the platforms, but also competing apps—would gain an unfair
11 competitive advantage and could use it against Tinder in future business negotiations, which would
12 undermine Tinder's ability to compete effectively in the market. Therefore, Match requests that the
13 Court seal the specific datapoint in paragraph 157 so that the relevant sentence reads as: "For
14 example, Adrian Ong, Match Group's Senior Vice President of Operations, testified that []% of its
15 revenue from the popular Tinder app comes from iOS." This request is narrowly tailored and
16 appropriate to protecting Match's confidential and proprietary business information.

17     7.   In **paragraph 245, sub-bullet c** of Epic's PFFCL, Epic characterizes my testimony
18 regarding Match's internal analysis of the performance of one of Tinder's products.  Match and
19 Tinder would not make information regarding this internal analysis public during the ordinary
20 course, because without the proper context, it could cause customers or investors to take an
21 incomplete or inaccurate view of the performance of Tinder's business. Therefore, Match requests
22 that the first sentence of paragraph 245, sub-bullet c, which references my deposition testimony at
23 24:17-25:5, 25:14-26:5, be sealed. This request is narrowly tailored and appropriate to protecting
24 Match's confidential business information.

25     8.   In **paragraph 262, sub-bullet b** of Epic's PFFCL, Epic refers to my testimony
26 regarding the percentage of Tinder's iOS downloads that were from users who were specifically
27 searching for the Tinder brand name in Apple's App Store. Tinder considers that datapoint to be
28 confidential and proprietary business information because third-party knowledge of that data might

- 3 -
ONG DECLARATION IN RESPONSE TO MOTION TO SEAL

be used by Tinder's competitors in deciding their strategy for bidding against Tinder for specific keywords in the App Store. Disclosing that datapoint could thus put Tinder at an unfair competitive disadvantage. Therefore, Match requests that the Court seal the specific datapoint in paragraph 262, sub-bullet b so that the relevant sentence reads as: "Match Group's data indicates that []% of Tinder's iOS downloads were from users who were specifically looking for Tinder." This request is narrowly tailored and appropriate to protecting Match's confidential business information.

9. In **paragraph 289, sub-bullet c** and **paragraph 365** of Epic's PFFCL, Epic refers to my testimony regarding the performance of Tinder's payment processing solution on Android devices and comparing that performance to Google Play Billing. Specifically, those paragraphs describe the portion of Tinder users on Android that use Tinder's proprietary payment solution relative to Google's. Match and Tinder consider those datapoints to be confidential and proprietary business information because their disclosure to third parties—particularly the platforms, but also Tinder's competitors—could be used against Tinder in its future business negotiations with those third parties. Therefore, Match requests that the Court seal the third full sentence of paragraph 289, sub-bullet c (beginning with "Despite the same prices…"), and the entirety of paragraph 365. This request is narrowly tailored and appropriate to protecting Match's confidential business information.

10. In **paragraphs 328** and **329** of Epic's PFFCL, Epic refers to my testimony regarding the means by which Match performs background checks on users. This information is not widely known and disclosing this information in a public setting could make it easier for bad actors to circumvent Match's efforts to protect its users and to ensure the safety and security of its apps. Therefore, Match requests that the Court seal both paragraphs 328 and 329 in their entirety. This request is narrowly tailored and appropriate to protecting Match's confidential business information and to ensure the safety and security of Match's users.

- 4 -
ONG DECLARATION IN RESPONSE TO MOTION TO SEAL

1  I declare under penalty of perjury of the laws of the United States of America that the
2  foregoing is true and correct. This declaration was executed this 12th day of April 2021, in Dallas,
3  Texas.

DocuSigned by:

*Adrian Ong*

EB8453A91E5D48C...

ADRIAN ONG

- 5 -
ONG DECLARATION IN RESPONSE TO MOTION TO SEAL