Pages 1 - 58

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable YVONNE GONZALEZ ROGERS, Judge**

| | | |
|---|---|---|
| EPIC GAMES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | NO. C-20-5640 YGR |
| | ) | |
| vs. | ) | Wednesday, April 21, 2021 |
| | ) | |
| APPLE, INC., | ) | Oakland, California |
| | ) | |
| Defendant. | ) | PRETRIAL CONFERENCE NO. 4 |
| _____ | ) | |
| APPLE, INC., | ) | |
| | ) | |
| Counterclaimant, | ) | |
| vs. | ) | |
| | ) | |
| EPIC GAMES, Inc., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| _____ | ) | |

**REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:         CRAVATH, SWAINE & MOORE, LLP
                       825 Eighth Avenue
                       New York, New York 10019
                  **BY:  KATHERINE B. FORREST, ESQUIRE**
                       **GARY A. BORNSTEIN, ESQUIRE**


                       (Appearances continued.)

Reported By:           Diane E. Skillman, CSR 4909, RPR, FCRR
                       Official Court Reporter


            TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1   For Defendant:           GIBSON, DUNN & CRUTCHER
                             333 South Grand Avenue
2                            Los Angeles, California 90071
                       BY:   RICHARD J. DOREN, ESQUIRE
3
                             GIBSON, DUNN & CRUTCHER, LLP
4                            2001 Ross Avenue, Suite 1100
                             Dallas, Texas 75201
5                      BY:   VERONICA S. MOYE, ESQUIRE

6

7   Also Present:            REPORTERS COMMITTEE FOR
                             FREEDOM OF THE PRESS
8                            1156 15th Street NW, Suite 1020
                             Washington, DC 20005
9                      BY:   KATIE TOWNSEND, ESQUIRE

10

11  For Interim Class        WOLF HALDENSTEIN ADLER
    Consumer Plaintiffs      FREEMAN & HERZ LLP
12  C-11-6714 YGR:           750 B Street, Suite 1820
                             San Diego, California 92101
13                     BY:   RACHELE R. BYRD, ESQUIRE

14

15  For Interim Lead         HAGENS BERMAN SOBOL SHAPIRO LLP
    Class Counsel            1301 Second Avenue, Suite 2000
16  C-19-3074 YGR:           Seattle, Washington 98101
                       BY:   STEVE BERMAN, ESQUIRE
17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | <u>Wednesday, April 21, 2021</u>                    <u>9:00 a.m.</u> |
| 2 | P R O C E E D I N G S |
| 3 | o0o |
| 4 | **THE COURT:**  Okay, good morning, everyone. |
| 5 | **MS. FORREST:**  Good morning, Your Honor. |
| 6 | **MR. DOREN:**  Good morning, Your Honor. |
| 7 | **MS. MOYE:**  Good morning, Your Honor. |
| 8 | **THE COURT:**  Ms. Stone, let's go ahead and call the |
| 9 | case. |
| 10 | **THE CLERK:**  Calling Civil action 20-5640 Epic Games, |
| 11 | Inc. versus Apple, Inc. |
| 12 | Counsel, please state their appearances. |
| 13 | **MS. FORREST:**  Katherine Forrest for plaintiff Epic |
| 14 | Games. |
| 15 | **MR. BORNSTEIN:**  Good morning, Your Honor.  Gary |
| 16 | Bornstein also for Epic. |
| 17 | **MR. DOREN:**  Good morning, Your Honor.  Richard Doren |
| 18 | for Apple. |
| 19 | **MS. MOYE:**  Good morning, Your Honor.  Veronica Moye |
| 20 | for Apple. |
| 21 | (Simultaneous colloquy.) |
| 22 | **MS. BYRD:**  I'm sorry. |
| 23 | **MS. TOWNSEND:**  I'm sorry, Rachele.  Go ahead. |
| 24 | **MS. BYRD:**  Good morning, Your Honor.  Rachele Byrd, |
| 25 | Wolf Haldenstein, on behalf of the Consumer plaintiffs in the |

1    related action.

2         **MR. BERMAN:**  Good morning, Your Honor.  Steve Berman

3    on behalf of the Developers.

4         **MS. TOWNSEND:**  Good morning, Your Honor.  Katie

5    Townsend on behalf of the Reporters Committee for Freedom of

6    the Press and 18 news organizations.

7         **THE COURT:**  Okay.  Good morning, everyone.

8         As the parties can see, I invited Ms. Townsend, Ms. Byrd,

9    and Mr. Berman to join us this morning just for a brief period

10   to deal with the public access issues.

11        Once we address those, then I will ask them to turn off

12   their videos as they are not parties, really, to the rest of

13   the things that we need to do in our pretrial.

14        Let's talk about that first.  I've read the motions.  I

15   think that there has been, and we have seen some of the

16   Twitter feed -- not just Twitter, but some of the social media

17   feed.  There seems to be some confusion, and certainly the

18   related-case lawyers seem to be confused as well.

19        With respect to what is being done here, there is no video

20   access to anyone; not to the parties, not to their teams, not

21   to anyone.  I said in our last conference that the

22   Administrative Office of the Courts does not allow me to video

23   trials.  And even though -- I know, Ms. Townsend, you have

24   mentioned some things in your motion, but they actually don't

25   help.

1      Frankly, look, if I could video something, I would.  I'm

2  all in favor of public access but it's not allowed.  And

3  courts, federal courts, that are using Zoom for trials are not

4  allowing people to watch the video.

5      Everybody gets audio access; we use the Zoom platform to

6  provide audio access and we will do that here.  We will also

7  use the platform in the event for health and safety reasons

8  that a witness cannot physically attend.

9      In that event, I will -- the lawyers and I will access

10  that person remotely using Zoom.  But no one else other than

11  those people in the courtroom will be able to see it.

12      So, I'm going to go into how I am going to give what I

13  think is more than adequate public access, but I want to know

14  if anybody has any questions about the first piece.

15      Ms. Townsend, do you have any questions?

16          **MS. TOWNSEND:**  I don't, Your Honor.  Thank you for

17  clarifying that.

18          **THE COURT:**  Ms. Byrd?

19          **MS. BYRD:**  I just have one clarifying question about

20  will there be Zoom access for Epic and Apple's trial teams who

21  are not in court?

22          **THE COURT:**  No.

23          **MS. BYRD:**  I misunderstood that based on prior

24  comments.

25          **THE COURT:**  And I understood your misunderstanding

1    because I read it in your papers.  Their teams, which will be
2    outside of the courtroom, will not have video access.  No one
3    has video access.

4         **MS. BYRD:**  Understood.

5         **THE COURT:**  I don't know how to say it more clearly.
6    Mr. Berman?

7         **MR. BERMAN:**  No questions.  It's clear now.  Thank
8    you.

9         **THE COURT:**  Okay.

10        I understand that there is a significant amount of
11   interest in the case.  And this is what -- this is what I am
12   planning on doing, but I brought the three additional lawyers
13   on to give me feedback before I issue any orders.

14        One is that right now, based upon the restrictions that
15   are imposed on me by the Court, and "by the Court," I mean by
16   the Northern District combined agreement of all judges, we
17   have protocols in place.  We have had jury trials in the
18   courthouses; judge Tigar just finished one in this courthouse,
19   but we have protocols.  And we are supposed to have two jury
20   trials happening during the Epic/Apple trial.  So there are
21   limitations on what I can do.

22        I do have a seat available in the courtroom which I will
23   designate for the media.  One seat, Ms. Townsend.  You all are
24   going to have to decide who gets that seat and who is the -- I
25   think what you've called it, the pre-authorized person whose

1    name I will need.  I am not going to be in the business of

2    trying to figure out who in the media gets that one seat.  So

3    you all are going to have to figure it out among yourselves.

4        And what I would like from you is some kind of protocol

5    that if you can file it with me by, let's say Friday, if you

6    think that's enough time, for how you are going to decide in

7    an equitable manner who is going to get that one seat, and

8    whether it rotates or not I don't -- it doesn't matter to me,

9    but it is one seat in the courtroom.

10       I am trying to get a couple more seats, but I cannot

11   guarantee at this moment that I can get a couple more seats.

12   So right now I've got one seat.

13       All right.  Ms. Townsend, can the media work on a protocol

14   for figuring out who gets to sit in that one seat?

15           **MS. TOWNSEND:**  Yes, Your Honor.  I'll consult with my

16   clients.  I'm sure we will come up with a pool arrangement

17   that will be -- that will be satisfactory to everybody.  We

18   can file something I think by Friday that updates Your Honor

19   on what that protocol -- what we would propose that protocol

20   to look like.

21           **THE COURT:**  Okay.  Terrific.

22       Now, I have questions because we have phone lines, but

23   when you get into the -- we have done a lot of research, and I

24   want to thank on the record our IT group who's been helping me

25   on a daily basis try to figure this stuff out.

1      After a certain number of people on our phone lines that

2  we link into the Zoom platform, we have to pay per person.

3  And the federal courts, although we have some resources, we do

4  not have unlimited resources.

5      So, what I would like to know from the parties is, how

6  many people do you think -- how many people do you think are

7  going to be calling in?

8      The reason that I ask this is that originally we talked

9  about just one phone line for the parties -- your war team,

10  whatever, the corporate representatives to use.  We are now

11  being told by the AO that the parties should access, if it's

12  efficient, should access the audio through Zoom.  If we do

13  that, it frees up a phone line.  But I need to make sure that

14  there's adequate capacity.

15      So, how many people do you think will be dialing in, so to

16  speak?

17          **MS. FORREST:**  Your Honor, for Epic, there will be

18  both a legal team who -- as well as some paralegals and

19  support folks and some business folks will be non-witnesses

20  who will be able to listen.  So I think that our total number

21  would be somewhere in the vicinity of 25.

22          **THE COURT:**  Okay.  So that's not so bad.  That

23  certainly I can accommodate, I assume.

24      What about you, Mr. Doren?

25          **MR. DOREN:**  Your Honor, I will say in the same

1    ballpark.

2         **THE COURT:**  That's an additional 50, which is easily

3    accommodated by Zoom.

4        And then for purposes of sealing, you have to be

5    comfortable that everybody who has access to that Zoom

6    platform is -- can be in the proceedings when they are sealed.

7         **MS. FORREST:**  Your Honor, I think the parties will be

8    able to work out a protocol to ensure that those individuals

9    who need to drop at certain points, if there are any, that we

10   can work that out.  We will handle that with a stipulation

11   with the parties.

12        **THE COURT:**  Mr. Doren?

13        **MR. DOREN:**  Agreed.

14        **THE COURT:**  Okay.

15       So then what I can do is, I can have a specific line for

16   media and for the attorneys in the two related cases.

17       What we have done is created a Survey Monkey so that those

18   individuals, whether media or attorneys in those related

19   cases, can complete a request which our administrative staff

20   will manage, and will give you special access to that link so

21   that we know that you have access.

22       Then I can have a third -- the third line, so to speak,

23   one internal, two external would be for the public at large.

24   And that line I would -- I could advertise the phone number on

25   my web page and on the website -- or the Court's home page so

1    that people can have access.

2        If -- you know, it could be -- again, I don't know what

3    the volume is going to be.  As I said to you before -- unless

4    you do.  If somebody has a good sense of what that volume is

5    going to be, I would be happy to hear.

6        I do think that, you know, this trial -- and, again, I say

7    this primarily for the public, the lawyers know -- but this

8    trial is going to last 15, maybe 16 days, maybe 17 days; it

9    depends on how many questions I ask.

10        There are some out there in the public who think that on

11    May 3rd, they are going to know whether Fortnite is back on

12    the Apple devices.  You will not know that on May 3rd, that is

13    the first day of trial.

14        So this I'm now talking not to the lawyers but to the

15    public.  No one is going to know that until after I write a

16    decision, which won't happen until after the trial is over.

17    So, anybody who thinks it's going to happen May 3rd, it's not

18    accurate.  That's just the first day of a long trial.  Not the

19    longest trial I've ever done, but this isn't a week-long

20    trial.

21        So, in terms of the media, Ms. Townsend, can you give me

22    any sense about how many people might access that line?

23            **MS. TOWNSEND:**  I wish I could, Your Honor.  I would

24    wager that you'd have every day at least a couple dozen

25    reporters every day.  It could be upwards of 50.  It could be

1    up to a hundred.  There's -- it's very possible that some news

2    organizations have multiple attorneys -- excuse me, multiple

3    reporters covering this.

4        So I don't think we are going to be in the area of

5    thousands for the media line, but I could certainly see us

6    hitting where we are right now.  I think there's 111, looks

7    like, participants currently.  So I can see us being there on

8    a daily basis.

9            **THE COURT:**  Okay.  Ms. Byrd?

10           **MS. BYRD:**  Yes, Your Honor.  For Consumer plaintiffs,

11   I think five, ten at the most people would want to listen in

12   on the dedicated line.

13           **THE COURT:**  Okay.  Mr. Berman?

14           **MR. BERMAN:**  For the Developers, Your Honor, no more

15   than five.

16           **THE COURT:**  Okay.

17       So, I can easily have a 200-line dedicated to the media

18   and the attorneys for the related cases.  Sounds like that's

19   more than sufficient to provide access on a daily basis.

20       Then what I will do is, for the public at large, I will

21   try to get a line that accommodates -- well, at least a couple

22   hundred.  We are looking into a 500-line or maybe we can get

23   two 200 lines and that will be 400.

24       In any event, with all of this, that is certainly more

25   than anybody would ever get with an audio feed into a

1    courtroom, an overflow courtroom.  And if we find that, you

2    know, people are still complaining, perhaps I can get another

3    line in.  But I think I will start with that.  And if it

4    doesn't seem to be adequate, then I can see if I can make

5    additional arrangements.

6         Does that work for everybody?  Does anybody have any

7    concerns about public access that I should know about?

8                         (No response.)

9         **MS. TOWNSEND:**  That sounds great to me, Your Honor.

10   Thank you.  We appreciate it.

11        **THE COURT:**  Okay.  Hearing none.

12        The other piece of the request, Ms. Townsend, were

13   exhibits.  And I want to thank the parties for meeting and

14   conferring and making a recommendation on those.

15        Did you have -- I don't know if you saw what they filed on

16   the docket.  I asked them to file that.  If you have any

17   questions -- although I did have a question.  I thought that

18   you were only going to upload exhibits that were admitted, not

19   necessarily introduced.

20        Your proposal said you were going to upload exhibits that

21   were introduced.  Which are you going to do?

22        **MS. FORREST:**  Your Honor, the concept is that it

23   would be those which were admitted with an exception, which is

24   if there are demonstratives, where the demonstrative may have

25   been received for purposes of just identification, we would

1    like to be able to upload those as well.

2            THE COURT:  I think more is better.  But the -- but

3    certainly in terms of the order, I could say, you know,

4    demonstratives as well.

5        I guess -- what do you want me to order?  I'm happy to

6    order that things that have been admitted be uploaded and then

7    I can leave to your discretion whether you want to upload

8    other things.  Unless you want me to order that anything --

9    that demonstratives also be uploaded so that it's fair to both

10   sides.

11           MS. FORREST:  I think, Your Honor, from our

12   perspective, demonstratives would also be useful.  I don't

13   know if that presents any issues for anyone else, but I think

14   it would help the public to sort of understand what's

15   happening, and the parties who are not present in the

16   courtroom to understand what is happening.

17       We can probably meet and confer on that, but I think all

18   the parties --

19           THE COURT:  I'm working on an order so I would like

20   to know.

21       Mr. Doren, your perspective?

22           MR. DOREN:  I think admitted exhibits and

23   demonstratives makes sense.

24           THE COURT:  Okay.  So I will order both.

25       What I am going to need from you is, I'm assuming that

1  there will be a link.  So when will you have that link

2  available to me so that, again, I can publicize that on the

3  website?

4          **MS. FORREST:**  I think we can be able -- we will be

5  able to get the information for the link -- today is

6  Wednesday, by the end of the week, early part of next week if

7  that suits Your Honor.

8          **THE COURT:**  How about by the 28th so that my team has

9  time to make sure it's there?

10         **MS. FORREST:**  That would work, Your Honor.

11         **THE COURT:**  Okay.  Any concerns about that?

12         **MS. TOWNSEND:**  Your Honor, I apologize.  My screen

13  froze momentarily.  It wasn't clear to me whether

14  demonstratives would be included or would not be included in

15  that.

16         **THE COURT:**  They will.

17         **MS. TOWNSEND:**  Okay.  We're -- we have no objections

18  to this approach.  Thank you.

19         **THE COURT:**  Any concerns, Ms. Byrd, Mr. Berman?

20         **MR. BERMAN:**  None, your Honor.

21         **MS. BYRD:**  Not with regard to the exhibits, Your

22  Honor.  I just had one question.

23      I appreciate the access to the audio, the dedicated

24  access.  I was just wondering if there was any way to give us

25  one seat in the courtroom as the media --

1        **THE COURT:**  As of today, no.  I will work on it.

2        **MS. BYRD:**  Thank you.

3        **THE COURT:**  There was a question about redactions.

4     What was the issue, Ms. Forrest, Mr. Doren?

5        **MR. DOREN:**  Your Honor, the parties were discussing

6     whether the documents used with witnesses should be redacted

7     prior to their use with the witness or subsequent to that and

8     before final submission to the Court.

9        I believe we worked our way through that issue.  And that

10    the current plan is, as part of the meet-and-confer process,

11    on any objections to exhibits we will redact any personal

12    identifying information and the like.  And with the parties

13    reserving their right to use redacted information if it's

14    relevant to the issues in the case.

15       **THE COURT:**  I certainly don't need people's home

16    addresses, you know, that kind of personal information.  I

17    won't need it so I don't know why anybody else would need it.

18    It seems to me easier to redact things in advance.  We are not

19    doing it on the fly during trial, that's probably better.  I

20    know I'm sensitive about my own private information, so....

21       **MS. FORREST:**  Your Honor, just to be clear.  The

22    thought is that the document that then is used in court, if it

23    is received, would be the version of the document that would

24    then be uploaded for the public's access.

25       **THE COURT:**  Right.  Right.

1      Let me circle back, Ms. Byrd, to your question.  I have to

2   say, that when I read your request, I don't understand how it

3   is that you think Apple is getting an advantage over the

4   plaintiffs in the related cases.

5      The witnesses who are testifying for the plaintiff Epic

6   aren't testifying, I suspect, in your case.  The other

7   witnesses are the Apple's -- are Apple's witnesses, and they

8   are Apple's witnesses.  So, how they would have an advantage

9   over you when they have access to their own witnesses doesn't

10  make any sense to me.

11     I understand that you would like to be in the courtroom,

12  but I don't see how you can argue that Apple is getting some

13  unfair advantage.

14          MS. BYRD:  That's a fair point, Your Honor.  I

15  just -- the conduct of the trial, how the witnesses testify on

16  the stand, their credibility, Apple will be able to view all

17  of that.

18          THE COURT:  But they are their witnesses.

19          MS. BYRD:  Understand, Your Honor.  There are other

20  third parties that will be testifying that are not Epic

21  witnesses and they are not Apple employees or former

22  employees.  They are developers, I believe, so --

23          THE COURT:  But are they going to testify?  Have you

24  identified them as people who are testifying in your case?

25          MS. BYRD:  We haven't gotten that far, Your Honor.

1          **THE COURT:**  Then you have no idea.

2          **MS. BYRD:**  I do not.

3          **THE COURT:**  Then, again, I don't see how there's any

4     prejudice.

5          **MS. BYRD:**  Okay.  Understood, Your Honor.

6     We would just like as much access as possible since Apple

7     will be present and because the evidence that is admitted at

8     this trial could have an impact on our trial.

9          **THE COURT:**  I agree.  I just don't see any prejudice.

10    I think that it is important to keep the rhetoric down

11    because it doesn't help.  Now, I understand litigators like to

12    have rhetoric out there, but I don't think it helps.  And I

13    don't think it was appropriate to argue prejudice when there

14    is none.  And you can't even articulate any here.

15    So, I will try, and I am trying and I am pushing back, to

16    try to get more seats in the courtroom but I'm constrained.

17    So, believe it or not, federal judges, we do have constraints

18    whether we like it or not.

19    So, okay.  Let's move on.

20    Is there anything else, Ms. Townsend, from your end that I

21    need to address or haven't addressed?

22         **MS. TOWNSEND:**  No, Your Honor.  I think that covers

23    everything that we asked for and we'll be sure to file

24    something by end of day Friday concerning the pool seat that

25    you made available.  And we appreciate your attention to these

1   matters.  Thank you.

2          THE COURT:  Ms. Townsend, I understand, too, I would

3   hope that you will reach out more broadly to media other than

4   just the ones that you represent.  I want to make sure that,

5   again, the media is being viewed broadly for purposes of the

6   trial.

7          MS. TOWNSEND:  We will, Your Honor.  Thank you.

8          THE COURT:  Okay.

9      Ms. Byrd, anything else from your end?

10         MS. BYRD:  No, Your Honor.

11         THE COURT:  Mr. Berman?

12         MR. BERMAN:  No, Your Honor.

13         THE COURT:  Okay.  Then I'll go ahead and ask you all

14  to turn off your videos.  You are welcome to stay on the

15  platform to hear if you want to hear, but you don't have to go

16  out and then back in again.

17         MR. BERMAN:  Thank you, Your Honor.

18         MS. BYRD:  Thank you.

19         THE COURT:  Thank you.

20     Okay.  So let's go to your list.  I have a list of things

21  I want to accomplish as well today, but we'll start with your

22  list that you emailed me last night.

23     The first issue you wanted to talk about was the COVID

24  protocol.  So mask use by arguing/questioning attorney and

25  testifying witness.

1    Whose issue is this?

2        **MR. DOREN:**  Your Honor, I think it's a joint issue.

3    We met and conferred on this, and both parties, if the Court

4    is comfortable with it, would like the opportunity for both

5    the questioning attorneys and for the witnesses to testify

6    without masks with, of course, the witness having discretion

7    on that as well.

8        **THE COURT:**  So here -- I have to think about this.

9     Here's the issue:  The science is that the spread of

10   COVID-19 is reduced significantly if you wear masks.  Now, we

11   don't ask whether people have received the vaccine or not.

12   And because of that, I can't be sure who is vaccinated and

13   who's not.  So I am reluctant to grant the request because it

14   would increase -- potentially increase risk.

15    That's my concern.  I've got the vaccine.  I'm not

16   concerned for myself.  The witness and the questioning

17   attorney are on the far side of the courtroom.  There are

18   shields in place.  But that's my concern.

19        **MR. DOREN:**  And, Your Honor, our thinking, and I

20   think I say our joint thinking was, given the presence of

21   shields and the distance between the individuals involved,

22   that recognizing that everyone at tables or in any closer

23   proximity would be wearing masks, that the risks would be

24   mitigated substantially and it would facilitate the Court's

25   opportunity to assess the witness, the questioning attorney's

1    opportunity to breathe, and the court reporter's ability to

2    hear everyone.

3          **MS. FORREST:**  And, Your Honor, if I might add, we

4    could also confer in advance.  And if there are witnesses, for

5    instance, or other personnel who we learn are uncomfortable

6    with that situation, we can try to resolve it on a

7    case-by-case basis.  There may be witnesses who are not

8    comfortable proceeding in that manner, and we can take care of

9    that, but we thought it would be useful to do it when we could

10   and when we had a courtroom limited number that were

11   comfortable with this.

12         **MR. DOREN:**  Agreed.

13         **THE COURT:**  All right.  Well, I will think more about

14   it.

15       There is -- like I said, we don't ask.  And the staff that

16   is closest is the court reporter and I have the courtroom

17   deputy who are in that area between the questioning attorney

18   and the witness.  So, you know -- and we've got the law clerks

19   as well.  So it's not -- it's not just a question of you, as

20   individuals, it's a question of everyone in the courtroom.  So

21   right now our protocol is that you wear masks.

22       I can say that some masks work better than others when you

23   have to do a lot of talking.  When I sentence and take pleas,

24   I wear the surgical mask.  They don't look the best, but

25   surgeons wear them all the time, right, for many hours to do

1    their work, and they can communicate.

2        And like I said, I don't always think they look the best,

3    but they certainly work for the ability to breath and talk and

4    hear each other.

5            **MR. DOREN:**  Thank you, Your Honor.

6            **THE COURT:**  Let's see.  Media access we've talked

7    about.

8        Depo designations.  This was the next issue.

9            **MR. DOREN:**  Go ahead, Ms. Forrest.

10           **MS. FORREST:**  The parties -- first, I would like to

11   say that we have made great progress with Judge Laporte in

12   resolving objections.  So really we have a logistical issue,

13   which is, for the time that is not going to be part of what we

14   are just calling for shorthand sake the four-hour portion that

15   will go to Your Honor, but the remainder, does -- is it the

16   case --

17           **THE COURT:**  I don't know what the -- I don't know

18   what you are talking about.  You're making a distinction I

19   don't understand.

20           **MS. FORREST:**  Let me back up.

21       There was a point in time when Your Honor had indicated

22   that you would read four hours that the parties submitted to

23   you.  So we are thinking of that, those four hours, as

24   separate from the remainder.  There may be additional

25   designations which the parties may want to introduce into

1    their case.  And the question for Your Honor is, whether or

2    not they will go in in writing at the appropriate time or

3    whether or not Your Honor would want them played in court.

4    And either is fine.

5        I think we had thought they would likely go in in writing

6    with the exception of instances when a party might find a

7    particular clip, relatively short, hopefully, that would be

8    useful to play for demeanor, or some other purpose, but the

9    bulk of them would go in in writing.

10       **MR. DOREN:**  And toward that end, Your Honor, we

11   believe, Apple believes that everything should simply go in in

12   writing rather than there being, you know, some greatest hits

13   and then everything else in writing.

14       **THE COURT:**  Well, what is your question?  That is,

15   okay, if you submit it in writing, then, you know, time is --

16   the time is taken off of your -- off of the number of hours

17   I've given you.  If it happens in the courtroom, the time is

18   taken off the number of hours I've given you.

19       So I'm not exactly sure what your question is.

20       **MS. FORREST:**  Let me pose it this way, Your Honor.

21   We think the time would be exactly the same in either

22   scenario.  Epic would like the opportunity to play certain

23   clips in court if we deem those clips to be something that the

24   Court would find useful to see sort of on video versus in

25   written form.

1         We just want the ability to do that.  So the time is not

2    going to change.  It's just a manner of presentation of our

3    case.

4              **THE COURT:**  I don't dictate how you present your

5    case.  You want to do it in the courtroom, you do it in the

6    courtroom.  I don't care.  You each have the same amount of

7    time.  So you can play them in the courtroom.

8              **MS. FORREST:**  Thank you, Your Honor.

9              **MR. DOREN:**  And alternatively, Your Honor, it's also

10   acceptable for both parties to submit the balance to the Court

11   in writing as opposed to playing them in court?

12        In other words, if the Court has a preference not to have

13   to read them, even though they are going against our time and

14   but rather hear them in court, I want to make sure we

15   understand the Court's position.

16             **THE COURT:**  If you give them to me to read and -- you

17   know, then I'll read them.  I can generally read faster than

18   those clips happen.  But, like I said, because we can't -- I'm

19   not going to sit here and try to -- I'm not going to clock

20   myself in terms of how long it takes me to read.

21        So the time is measured by the -- you all agree on what

22   that time allocation is.  And if you ask me to read it, then

23   I'll read it as opposed to listening to it in the courtroom.

24             **MR. DOREN:**  Thank you, Your Honor.

25             **MS. FORREST:**  Thank you.

1          **THE COURT:**  Okay.  That last bullet, though, I don't

2     understand that question about exhibits.

3          **MR. DOREN:**  Your Honor, I think we just -- I think

4     the parties just need clarification.  We talked about this

5     issue a little bit.  We just want to know mechanically how the

6     Court would like it to work.

7          So, obviously, with the depo excerpts, certain documents

8     are being introduced into evidence through those witnesses.  I

9     know that the Court's most recent order included -- Case

10     Management Order included a reference to a stipulation

11     identifying the exhibits.

12          And so the question, Your Honor, is, when the parties

13     submit -- both sides submit their four hours, should they

14     include a joint stipulation attaching the exhibits identified

15     and offered for admission through those excerpts, and then

16     will they then be in evidence for the trial at the same time

17     the first live witness takes the stand?

18          **THE COURT:**  So, if I need to see the exhibits to

19     understand the testimony, you need to give me the exhibits.

20     Sometimes the question is self-contained and I don't need the

21     exhibit.  But if you -- if I need them, you need to give them

22     to me.  So that's one.

23          Two, as long as I have a stipulation that says, you know,

24     when you give me everything to read, and a stipulation, let's

25     say there are 10 exhibits that you all agree come in, I'll

```
1    just enter that as part of the order and they are in.
2              MR. DOREN:  All right.
3              THE COURT:  Does that answer the question?
4              MR. DOREN:  That is very helpful, Your Honor.
5         And to the extent we submit exhibits to the Court within
6    the framework you just identified, would we lodge those with
7    the Court as opposed to file them through ECF?
8              THE COURT:  You can.  That's fine.
9              MR. DOREN:  Thank you.
10             MS. FORREST:  And then one additional point that
11   follows on this --
12             THE COURT:  Let me think about this, though.
13        We are going to have to have something -- it may be that
14   for purposes of any appellate record, I need to have all of
15   those deposition transcripts as an exhibit that get
16   technically admitted; otherwise I don't know how else it
17   becomes part of your trial transcript.
18             MR. DOREN:  That makes sense, Your Honor.
19             THE COURT:  Right.  Because it's not testimony that
20   is being transcribed, but it is testimony that is being
21   considered.
22             MR. DOREN:  In Your Honor's order, you said that each
23   deposition designation shall bear the exhibit marking depo,
24   insert number.  So if we prepare those exhibits with that type
25   of numbering and submit it to the Court --
```

1          **THE COURT:**  Then on the first day of trial, I can

2     just admit those.

3          **MR. DOREN:**  Perfect.

4          **THE COURT:**  And then we will have to have a clean

5     copy for the courtroom deputy who keeps the official exhibits.

6          So I'll need a copy for me, obviously, but my personal

7     copy I usually mark up.  So that should not be the official

8     copy for the courtroom deputy, for Ms. Stone.

9          **MR. DOREN:**  Understood.

10         **MS. FORREST:**  And the related issue, Your Honor, I

11    think which follows from this is there are additional

12    documents which are not part of this four-hour segment which

13    will come in through deposition designations.  And for those

14    which were prepared and all objections are resolved at the

15    outset of the case, during Epic's case we would like to offer

16    those potentially early, at least for some of them, so that

17    they are in the record and they would then be part of what we

18    would rely on going forward.

19         **THE COURT:**  Okay.  I'm not sure I'm with you

20    Ms. Forrest.  What are you -- be a little more explicit.

21         **MS. FORREST:**  There are the four hours of deposition

22    designations which have their documents, and we have just

23    spoken about those.

24         There will be some additional number of documents which

25    are not part of that four-hour group which will also come in

1   by way of deposition designation.  And just logistically, one

2   of the ways to get those in would be just to offer them early

3   in the case, early in our case, and those would then be in for

4   all purposes going forward.  And we wanted to make sure that

5   process would be acceptable to you.

6          **THE COURT:**  Well, I don't want you to provide

7   documents that aren't ultimately -- that aren't going to be

8   used.

9      So, why -- I don't understand why we would do it that way.

10         **MS. FORREST:**  Okay.  Perhaps let me back up and

11  explain.

12     In our findings of fact, particularly since some of our

13  evidence in our findings of fact came from the depositions of

14  Apple witnesses, we also authenticated documents of those

15  Apple witnesses through depositions and then cited some of

16  those in the findings of fact.

17     The concept is we will just logistically need to get those

18  into evidence.  We have resolved the objections where there

19  were any and, again, logistically, what we want to do is,

20  these are not part of the four-hour portion that Your Honor

21  would be reading, but there are some documents which have been

22  duly authenticated through depositions, we would want to offer

23  those in the case relatively early to be able to have those as

24  part of then the trial record.

25         **MR. DOREN:**  Again, Your Honor, we hadn't talked about

1    this yesterday so I, too, want to make sure I understand.

2        Presumably these would be deposition designations that

3    would then go against Epic's time at trial?

4        **MS. FORREST:**  Oh, absolutely.  Absolutely, Your

5    Honor.  The concept is that every single minute of any

6    deposition designation would go against their proffering

7    party.

8        To give Your Honor a sense of the magnitude, it is about

9    an hour.  And we're not planning on playing any of this, but

10   in terms of the amount of time, if you will, that is

11   associated with these documents, it's around --

12       **THE COURT:**  Here's my concern, Ms. Forrest.

13       I really don't like it when you all go to the Court of

14   Appeal and make arguments about things that you never argued

15   at the trial and dig out things that were never discussed

16   during the trial because you just dumped stuff on the Court.

17       So my -- so I don't -- if something is important, I would

18   assume that it's going to get -- you either are going to ask

19   me to read it or it will be discussed at the trial.

20       So, for instance, if you've got Exhibit 52 that's in this

21   group that you are talking about, and you want it in evidence,

22   I would think at some point someone is going to talk about

23   Exhibit 52.  So why wouldn't we just deal with it when it

24   became relevant?

25       **MS. FORREST:**  Well, Your Honor, there are a couple of

1    situations where what we have done is, through the deposition

2    process, we have obtained testimony that authenticates a

3    document.  We don't need to call the witness to trial to

4    simply authenticate the document again; the document speaks

5    for itself.  It is cited in the findings of facts, so it is

6    not something that is sort of a document that Your Honor would

7    not have understood was part of what we are thinking of in

8    the -- as coming out during the trial, it would be one of the

9    arguments we've already proffered.

10       It is simply a logistical way of receiving the deposition

11   designations.  We can do it just part of the as-we-go process

12   as we have already discussed and do it that way.  There will

13   be a number of documents where we have gotten the

14   authenticated testimony through witnesses at deposition, cited

15   in the findings of fact.  It's really a logistical question of

16   being able to get those in.

17            **THE COURT:**  Any response?

18            **MR. DOREN:**  Just so we share the Court's concern that

19   there will be sponsoring witnesses for each exhibit, and we

20   don't think that random citations in the findings of fact

21   satisfy that.

22            **MS. FORREST:**  Let me sort of -- I'm sorry.  I must be

23   unclear.  It is not -- we have a sponsoring witness for each

24   and every one of these documents.  The sponsoring witness is a

25   deposition which has been duly taken, the witness is within

1   the proper --

2          **THE COURT:**  It sounds like it will be fine.

3      Again, it seems to me the best way to deal with this is by

4   stipulation so that you identify the deposition portions that

5   authenticate the document, the other side verifies that.  If

6   there's no dispute, then provide me a stipulation that says

7   these exhibits, we agree, should be admitted.  Here's the

8   supporting documentation, and then that will be fine.

9          **MS. FORREST:**  Thank you, Your Honor.  That solves it.

10          **MR. DOREN:**  Thank you, Your Honor.

11          **THE COURT:**  I'm going to -- I think we are done with

12   this segment, right?  Is there anything else?

13          **MS. FORREST:**  Yes, Your Honor.

14          **THE COURT:**  Hold on just a moment.

15                  (Pause in the proceedings.)

16          **THE COURT:**  So it is great to have law clerks who are

17   young and totally in tune with what's happening on a much

18   faster basis than I ever would.

19      Apparently Reuters is already incorrectly reporting

20   something that happened in this -- in just within the hour.

21   Reuters is reporting that Apple and Epic will have to decide

22   which member of the media will attend the trial.

23      That is wrong.  Reuters is wrong.  The media has been

24   represented by Ms. Townsend.  Ms. Townsend, if you are still

25   here, put your video back on.  Hello?

1          The media group that filed a request for access who is

2     represented by Ms. Townsend here today will make that

3     decision.  So, Ms. Townsend, if you could have your people

4     send a note so that we stop getting inaccurate reporting, I

5     would really appreciate it.

6          **MS. TOWNSEND:**  Thank you, Your Honor.  We will make

7     sure that in-house attorneys at Reuters understand what you've

8     decided today.

9          Thank you.

10         **THE COURT:**  Okay.

11         The other question that continues to be out there

12    apparently is why there is no overflow room with video access.

13    There are a couple of reasons why.

14         One is that federal courts don't do that.  We don't video

15    live testimony.

16         Second, this courthouse has six courtrooms.  There are two

17    jury trials.  So -- well, any time we have a jury trial

18    because of COVID, we are using two courtrooms:  One for the

19    proceedings and one for jury deliberations.  Four courtrooms

20    are being held for jury trials to use for that reason.

21         There is one courtroom that will be used for this trial.

22    And the last courtroom is being used by all of the judges for

23    criminal sentencings and criminal proceedings.  That's it.

24    There are only six courtrooms in this courthouse.

25         So hopefully that clarifies that question.

1          Okay.  Let's keep moving.

2          Experts.

3          **MR. BORNSTEIN:**  Your Honor, if I could keep us on

4     deposition designations for just one moment.  We have one

5     other issue in the second bullet there.

6          If I can take a minute, if it would be helpful for me to

7     explain that, I can.

8          **THE COURT:**  Okay.  I thought we had dealt with it.

9     Since you only get four hours, if you're asking for more than

10    four hours, the answer is no.

11         **MR. BORNSTEIN:**  Absolutely not.

12         The issue here is, Your Honor, we may have more than four

13    hours that we choose to designate.  We recognize four hours is

14    what Your Honor will take.  And anything above the four hours,

15    if someone wants to use it, will come out of the remainder of

16    their trial time.

17         The issue the parties had discussed, and I think have a

18    common mind on, but want to be sure our common mind is common

19    with Your Honor's as well is the following:  If a party, for

20    example, has a total of seven hours of deposition

21    designations, four of them would be covered by the four Your

22    Honor has agreed to read, there would be three left.  And it

23    may be that as the trial proceeds, the party concludes that

24    some portion of that three hours is actually not worth going

25    into the record and that there's another half an hour of live

1    testimony with a witness that would be more useful for the

2    Court.

3        And what we are hoping we're able to do is, we know we

4    have a deadline to submit to Your Honor the deposition

5    designations that we would like potentially to have in the

6    record, with all of the objections having been either agreed

7    or resolved by Judge Laporte, but we would like to be able, as

8    the trial proceeds, to determine which of those portions we

9    have provided to the Court we would actually like Your Honor

10   to read in which we would --

11       **THE COURT:**  That doesn't work because I'm reading

12   them next week.

13       **MR. DOREN:**  Your Honor --

14       **THE COURT:**  Don't give me more than four hours.  If

15   there is other stuff that at the end or during the trial you

16   decide that you would rather have me read those materials

17   rather than take live testimony, I can do that at the end.

18       But I have -- you know, I finish this trial and I go into

19   a jury trial two weeks after.  So you're not the only case

20   that I have.  And I have scheduled -- I have structured my

21   workload so that I can read this information in advance.  So,

22   I need your four hours in advance by the deadline I gave you.

23       If you want to substitute later your trial time for

24   deposition designations, I can substitute it.  I don't care.

25   The time is there.  You know, maybe that means if you have two

1    and a half hours and the other side has two and a half hours,

2    then, you know, I may take Friday and close down the Court and

3    go sit in my yard and read your five hours.  We can do that.

4    But I need your four hours by my deadline.

5            **MR. BORNSTEIN:**  Okay.

6        If I understand correctly, we will be submitting to Your

7    Honor the four hours by the deadline the Court set which we

8    will be prepared to do with the objections addressed.

9        And to the extent either party has any additional

10   deposition testimony that it would like to have become part of

11   the record, either because of substantive testimony or in

12   connection with a witness's testimony about a document that we

13   would like to have come in, that's something we would do

14   subsequently and we don't need to submit to the Court by the

15   deadline you've set for the four hours?

16           **THE COURT:**  As long as you understand that it's being

17   done in replacement of your trial time.

18           **MR. BORNSTEIN:**  Absolutely, Your Honor.  Yes.

19           **THE COURT:**  That's fine.

20           **MR. BORNSTEIN:**  Okay.  Great.  That's helpful to have

21   clarity on.  I appreciate it.

22           **MR. DOREN:**  Thank you, Mr. Bornstein, for raising it.

23           **THE COURT:**  Okay.  Now, can we move to experts?

24           **MR. BORNSTEIN:**  Yes, Your Honor.  Thank you.

25           **THE COURT:**  Okay.  Your first bullet.

1          **MS. MOYE:**  Yes, Your Honor.

2          With respect to experts, we have talked about the concept

3     of back-to-back experts a number of times, and we just wanted

4     to confirm that we had the correct understanding.

5          As we understand it, the Court would find it to be helpful

6     to have the economic theory experts testify back to back.

7     That translates into Dr. Evans and Professor Athey for Epic

8     back to back with Professor Schmalensee, Professor Lafontaine

9     and Professor Hitt for Apple.

10          Apple would prefer to have the remainder of its expert

11     witnesses presented in its case in full.  We also have experts

12     on security issues, experts on IP issues, things like that as

13     opposed to having those experts back to back in the Epic case.

14     But we just wanted to confirm the Court's preference with

15     respect to that issue.

16          **MS. FORREST:**  Your Honor, might I make one comment?

17          **THE COURT:**  You may.

18          **MS. FORREST:**  There is one additional economist,

19     which is Mr. Rubinfeld, who had not been mentioned by

20     Ms. Moye.  I wasn't sure if she was thinking of him as part of

21     the expert economist group.  He does their -- a significant

22     piece of their expert work, expert economist work or whether

23     or not she was thinking of putting him later.

24          **MS. MOYE:**  Yes.  With respect to Mr. -- Professor

25     Rubinfeld, we were planning to put him later.  He is an

1    economist, but he is an economist who talks about IP licensing

2    arrangements, the procompetitive nature of Apple's IP

3    licensing to developers.  And so it is a slightly different

4    type of testimony than that at issue with Dr. Evans, Professor

5    Athey, Hitt, Schmalensee, and Lafontaine.

6        So, yes, we did intend to include Rubinfeld in our case as

7    opposed to as a part of the back-to-back exercise.

8            THE COURT:  And who is the contrary that -- the

9    opposite for Rubinfeld?

10           MS. MOYE:  Epic has not designated, to my mind, an

11   expert that responds to Rubinfeld.  I will let the Epic

12   lawyers chime in on that.

13           MR. BORNSTEIN:  Yes, Your Honor.  Dr. Evans responds

14   to portions of Professor Rubinfeld's opinions that we think

15   are worth responding to.

16           THE COURT:  What about on the security issues; who

17   are those?

18           MR. BORNSTEIN:  We have a -- we will have a security

19   expert testify in our opening case and we have a different

20   security expert who will be providing a rebuttal opinion in

21   response to Apple's security expert.

22           MS. MOYE:  And, Your Honor, Apple has one security

23   expert.

24           THE COURT:  Are there any other categories?

25           MS. MOYE:  The other category is survey experts.  So

```
1   Epic has a survey expert, Rossi.  Our corresponding survey

2   expert is Hanssens, and then I believe Epic has a rebuttal

3   survey expert Mr. Bornstein will identify for us.

4              MR. BORNSTEIN:  Yes.  That's Professor Mathiowetz.

5              MS. FORREST:  We have one other, Your Honor, as well

6   which is an accounting expert, Mr. Barnes, who is supportive

7   of our economists but can stand separately as well.  His work

8   supports the economists.

9              MS. MOYE:  Yes, Your Honor.  Just to make sure we

10  give you the full complement, we also have one IP expert that

11  is a complement to Rubinfeld, Malackowski.

12             THE COURT:  All right.  That's fine.  I did want the

13  economists all together though.

14             MS. MOYE:  Thank you, Your Honor.

15             MS. FORREST:  Your Honor, just to be clear, would

16  that include Professor Rubinfeld as well?

17             THE COURT:  No.

18             MS. FORREST:  All right.

19             THE COURT:  Okay.  Your second bullet?

20             MS. MOYE:  This question, Your Honor, just related to

21  the timing of rebuttal expert testimony given the back-to-back

22  exercise.

23      It may be that we can reach agreement on this at this

24  point now that we have clarity.  We -- the concern was, are

25  the rebuttal experts going to be called right after our
```

1     back-to-back expert or at the end of Apple's case as would

2     normally be the case for rebuttal?

3          THE COURT:  If they're economists, they are going to

4     be called all at the same time.

5          MR. BORNSTEIN:  Your Honor, we have two expert

6     witnesses who are economists who have put in rebuttal reports.

7     One of them is Dr. Evans, who you will have spent time with on

8     his opening report, and the other one is Dr. Cragg.

9          And I certainly think that Dr. Evans is going to want to

10    and need to respond to things that will come in through Apple

11    fact witnesses during the course of the Apple case.  So if we

12    were to bring him back right away, after the Apple economists

13    testify, we might want to have him testify in our rebuttal

14    case to address fact testimony that comes in during Apple's

15    case or he also responds to Dr. Rubinfeld's --

16         THE COURT:  I don't understand, Mr. Bornstein.

17         What is he going to say?

18         MR. BORNSTEIN:  Well, for one thing, Professor Evans

19    is going to respond to Professor Rubinfeld, who, I understand,

20    is now going to come in Apple's case.

21         THE COURT:  Okay.  That testimony can happen

22    afterwards.

23         MR. BORNSTEIN:  Sure.

24         And then he's going to be addressing, among other things,

25    the procompetitive justifications that I assume we're going to

1    hear from Apple's fact witnesses.

2           **THE COURT:**  Aren't they incorporated into the expert

3    reports?

4           **MR. BORNSTEIN:**  The Apple experts certainly cover the

5    point, but I do think, Your Honor, we are going to hear fact

6    testimony as well.  And Apple will support its procompetitive

7    justifications, I presume, they have in their findings of fact

8    attempted to do so, with fact witness testimony with, for

9    example, Mr. Schiller who is clearly going to be a key focus

10   of the Apple case, will testify about, I presume, what Apple

11   contends to be procompetitive benefits.

12       I think we need to have our economist be able to respond.

13          **THE COURT:**  So an expert is not going to be able

14   to -- okay.  The expert's not going to be able to testify as

15   to factual issues.  All the expert can do is say, if you

16   believe those factual issues, then my opinion is X.  Or you

17   shouldn't -- I don't even -- yeah.  So I'm not exactly sure

18   why it has to wait.

19          **MR. BORNSTEIN:**  For example, Your Honor, if

20   Mr. Schiller from Apple at trial is cross-examined effectively

21   on a particular point that is a foundation of the expert

22   opinion that's been offered by the Apple experts in a

23   particular procompetitive justification, turns out through his

24   testimony not to be supported, I think it will be important

25   for us to have the economist be able to come and to say now

1    that the facts have come in and that a particular point that

2    Apple has advanced is not, in fact, supported by the evidence,

3    that affects my opinion in the following way.  And to be able

4    to frame for Your Honor the relevance of the factual record

5    that has been created, I think, is a critical part of what the

6    expert can do and needs to do on rebuttal.

7        And Professor Evans is going to be coming anyway to

8    respond to Professor Rubinfeld.  And I imagine, Your Honor, as

9    scintillating as a witness as he may be, I imagine Your Honor

10   doesn't want to see him three times.

11           **MS. MOYE:**  Your Honor, if I can be heard on this

12   issue.

13       Apple's position is that each of these experts should be

14   testifying only once.  We understand that the Court has said

15   if there's some recentivity to Dr. Evans coming to address any

16   new opinions from Professor Rubinfeld in our case, we can put

17   that to the side.  But on the proposal that Dr. Evans would be

18   attempting to rebut factual witnesses, we think that testimony

19   would be highly inappropriate and that the Court has already

20   established a mechanism for the parties to address whether

21   expert testimony was supported by the record.

22           **THE COURT:**  Mr. Bornstein, I am trying to digest an

23   incredible amount of information.  Right?  I've already read

24   hundreds of pages.  There is no surprise here.  The notion

25   that -- I am sure you are all great trial lawyers, but the

1    notion that we are going to have a, you know, a huge ah-hah

2    moment because of a cross-examination is probably low.

3        I still don't understand, given that there are no

4    surprises here, there is no jury, why Evans can't say, Your

5    Honor, you're going to hear from Mr. Schiller and he's going

6    to make the argument, because I've read his testimony, he's

7    going to make the argument about A, B, and C.  I believe that

8    that's inaccurate; that there is no way they can prove that.

9    Or there is no -- there's no credible reason for believing it.

10   And if you don't believe A, B, and C, then it's my view that

11   X.

12       That's -- having all of that economic testimony

13   consolidated will help me digest all of it at once.  I don't

14   need Evans to come back and say, oh, Mr. Bornstein

15   cross-examined Schiller in such a fabulous way that you can't

16   believe what Schiller has to say.

17           **MR. BORNSTEIN:**  Well, I --

18           **THE COURT:**  An economist doesn't need to tell me

19   that.

20           **MR. BORNSTEIN:**  I understand the point Your Honor is

21   making about that.  I guess the practical question we have is

22   the following:  If Professor Rubinfeld is testifying in

23   Apple's case, then we need to have Professor Evans come at the

24   end so he can respond to Professor Rubinfeld.  Professor Evans

25   has put in an opening report, he has put in a rebuttal report.

1    So he is going to testify twice.  He needs to testify twice.

2    I don't know why Ms. Moye says he is coming once.  He's an

3    opening expert and he's a rebuttal expert.

4        And I think the only question is whether we have him come

5    twice or we have him come three times, which we were trying to

6    avoid.  So we can have him, if it's helpful to the Court, we

7    can certainly have him go after the Apple economists.  The

8    problem is, if Professor Rubinfeld is coming later, then he's

9    going to have to come back to deal with Professor Rubinfeld

10   anyway.

11           **THE COURT:**  Yes, but by that time we are talking

12   about IP licensing, we're not talking about the fundamental

13   economic theory that Epic is suggesting in terms of its

14   antitrust claims.

15           **MR. BORNSTEIN:**  Well, on that we may have a

16   difference of opinion with Apple, Your Honor, on the content

17   of Professor Rubinfeld's testimony.  He is an economist.  He

18   has given an economic opinion.  It's an economic opinion that

19   relates to issues of licensing, but he talks about free riding

20   and he talks about procompetitive --

21           **THE COURT:**  Well, then maybe Rubinstein -- Rubinfeld

22   or Rubinstein needs to testify with the economists.

23           **MR. BORNSTEIN:**  That would -- sorry.

24           **THE COURT:**  My only point is, look, is if is it

25   Rubinfeld, right?

1          **MS. MOYE:**  Rubinfeld.

2          **THE COURT:**  If his testimony is cabined to this one

3    issue, and Evans is going to come back and rebut it, then

4    Evans rebuts it on the one issue.

5          If you're anticipating that there's going to be all sorts

6    of other stuff happening between Evans and Rubinfeld, and so

7    you would like to have a second shot, that's not okay.  You

8    know what they are going to put on.  They have given you 385

9    pages to explain to you what they are going to put on.  Again,

10   there are no surprises here.

11         **MR. BORNSTEIN:**  Is Your Honor contemplating that we

12   would not have Professor Evans come back after Professor

13   Schmalensee testifies for example?  We need to be able to have

14   him come and respond to what they choose to put in their case.

15   He is a rebuttal expert and he's responding to their --

16         **THE COURT:**  I thought they were all coming at the

17   same time.  Didn't we just talk about that?

18         I was given a list of six experts; three from Epic and

19   three from Apple.  If you want to put on your three and then

20   they are going to put on your three and you want to bring your

21   other one back, I don't care.  That's fine with me.  I just

22   want them all to testify back to back.

23         **MR. BORNSTEIN:**  Understood.

24         So we have, just to make sure, we have the list because I

25   think there may be one that's off the list.

1          We have three economists:  It's Professor Evans, Professor

2    Athey, and Dr. Cragg.  Dr. Cragg submitted only a rebuttal

3    report, so we anticipate calling him as a rebuttal witness in

4    response to the economic testimony from the Apple witnesses.

5          Dr. Evans submitted both an opening and a rebuttal report,

6    and so we anticipated calling him to provide opening testimony

7    and then returning for rebuttal.  And Professor Athey

8    submitted only an opening report, so she's easy.  She would

9    just come and give her testimony.

10         If it is the Court's preference, which is completely fine

11   with us, to have all of this come together, what I think we

12   are landing on, is we would have our opening expert economist

13   give their testimony, Apple would have their four economists

14   give their testimony, and then we would have our rebuttal

15   economists respond.  And that would come all together for the

16   Court.  If that is the most useful thing, then that's

17   absolutely fine with us.

18              MS. MOYE:  Your Honor, for clarity, what Apple

19   proposes is that after Epic has its opening economic theory

20   experts, it's Evans and Athey testify, Apple will call

21   Schmalensee, Lafontaine, and Hitt, three of its four

22   economists.  The fourth economist is Rubinfeld who addresses

23   IP licensing issues.  He would be called in Apple's

24   case-in-chief.

25              THE COURT:  So what I hear the order of experts is

1    going to be is Evans, Athey or Athey, then Schmalensee,

2    Lafontaine, and Hitt, and then Evans and Cragg or Cragg.

3         **MR. BORNSTEIN:**  And the only --

4         **THE COURT:**  If you want to have Evans testify as to

5    his or her view of the three economists who are testifying

6    afterwards before they testify, that's fine.  Again, I just

7    want this to be all within -- all together.

8         **MR. BORNSTEIN:**  The only wrinkle that I think we are

9    having, Your Honor, is the placement of Professor Rubinfeld.

10   Because Professor Rubinfeld, although he does address IP

11   issues, he does also give rebuttal to Professor Athey.  That

12   is part of his testimony.  And then Professor Evans responds

13   to Professor Rubinfeld.

14        **THE COURT:**  Do I have his report yet?

15        **MS. MOYE:**  Yes, Your Honor.  It was submitted with

16   the trial readiness binder.

17        **MR. BORNSTEIN:**  So we are happy to have everybody

18   together, I just -- if we pluck one out --

19        **THE COURT:**  It sounds like you object to Rubinfeld

20   testifying separately.

21        **MR. BORNSTEIN:**  I do not object to him testifying

22   separately if we are able to have Professor Evans come back

23   and respond.  But at that point Professor Evans is testifying

24   three times, and Your Honor will be hearing the response to

25   Athey separately in Apple's case unless Professor Rubinfeld

1  does not intend to pursue that portion of his opinion that

2  responds to Athey.

3       MS. MOYE:  Your Honor, what I heard was there was no

4  objection to Rubinfeld coming later, so I don't know if

5  there's an issue --

6       THE COURT:  There is an objection.  He just stated

7  it.

8       MS. MOYE:  I thought he started with there was no

9  objection to Rubinfeld coming later.

10      THE COURT:  Lawyers say things but ultimately there

11  is an objection.  That's why we are having this discussion.

12      MS. MOYE:  Yes.  We would like to call Rubinfeld at

13  the -- in our case-in-chief because he discusses distinctly

14  different issues.  He focuses --

15      THE COURT:  Apparently he doesn't.  Apparently he

16  straddles the economic issues with other issues.

17      MS. MOYE:  There is some response to Athey in the

18  Rubinfeld report.

19      Whatever is most helpful for the Court, we are happy to

20  do, Your Honor.

21      THE COURT:  Well, it sounds like he needs to testify

22  twice.  If Evans needs to testify twice, he needs to testify

23  twice.

24      MS. MOYE:  So, his response --

25      THE COURT:  Or you can have him testify with all of

```
 1    your other experts.
 2              MS. MOYE:  We understand, Your Honor.
 3              THE COURT:  Meet and confer and let me know what's
 4    going to happen.
 5              MS. MOYE:  Okay.
 6              MR. BORNSTEIN:  We'll do that.
 7              MS. MOYE:  Your Honor, just to be clear, our proposal
 8    was that Schmalensee, Lafontaine, and Hitt would definitely be
 9    included in the back-to-back exercise, but we had not figured
10    out the order for those three witnesses.
11       So I didn't want to create a misperception there.
12              THE COURT:  Okay.  Noted.  Anything else on experts?
13                        (No response.)
14              THE COURT:  All right.  Next issue.
15       I don't know who's suggesting shadow reporters; we don't
16    do that.  So whoever request it is, it is denied.  And I
17    don't know why you would need it anyway.  You are getting
18    realtime through the official court reporter.
19              MR. DOREN:  Your Honor, if I may, that was my
20    follow-up question.  If we can get the live feed through the
21    court reporter remotely, we would not need a shadow reporter
22    or request one.
23              THE COURT:  Well, you can't have one.
24              MR. DOREN:  So I said, I will not make the request.
25              THE COURT:  And I know that they provide realtime so
```

1    I'm not exactly sure what the issue is.

2         You probably -- that's a technology question, and your

3    technology folks should connect with our folks, especially if

4    all your people are going to be on the Zoom platform.  So I

5    don't know what the issue really is, Mr. Doren.

6         **MR. DOREN:**  Sure, Your Honor.  And that's perfect.

7         If we have leave to put our technology people together to

8    work out remote access to the live feed, that would be

9    perfect.

10        The issue is, or the practical issue is, given the Court's

11   desire for daily redlines of the findings of fact, the goal is

12   to have the live feed reach those on the team who are outside

13   of the courtroom so that we can keep up with that task over

14   the course of the day.

15        **THE COURT:**  Well, if you can't do it, then I will

16   give you 48 hours instead of 24, and that will take care of

17   that problem.

18        **MR. DOREN:**  Thank you, Your Honor.  We will have our

19   IT people confer and report back to the Court.

20        **MR. BORNSTEIN:**  Your Honor, if the 48-hour rule -- or

21   48-hour concept is acceptable to the Court, I think I speak

22   for the members of the trial team that are not currently on

23   the platform with us, that I think it would help them from

24   being up all night each night in catching up with the day's

25   transcript and to be able to work on it during the day so we

1    are getting it to you one day in the rear, so to speak.

2              MR. DOREN:  More broadly put, Your Honor, I think the

3    question that the parties have for the Court is, as a

4    practical matter, how would you like to handle -- and when

5    would you like to receive these updates of -- redline updates

6    based on the testimony as it comes in?

7              THE COURT:  So 48 hours is fine.  They are long days.

8    When I read your proposed findings of fact and conclusions of

9    law, I realized that you did not indicate in there for much of

10   it -- sometimes you did, but for much of it you did not

11   indicate what the source of the proposed findings of fact

12   especially was.  So, it's not easy to -- it's not easy to just

13   shift a, you know, proposed name with the transcript cite.

14        So I think that it's probably -- it may be easier to, you

15   know, to just change font color to suggest that something's

16   actually come in.  So right now everything is in black.  Pick

17   a color.  If fact number 62 comes in, change it to blue or

18   change it to red and put a transcript cite.

19        And if you have to massage it because it didn't come in

20   the way the lawyers thought it would come in, then you massage

21   it.  And then what you would do is, we don't need to file

22   those things.  Just send it to our proposed mailbox --

23   proposed order or chambers email so that way I can keep track

24   of what's coming in versus what hasn't come in.  I will keep

25   track of that electronically.

1          **MR. DOREN:**  Thank you, Your Honor.

2      And if it is 48 hours, that would be the end of the second

3  day after the day for which it's being updated?

4          **THE COURT:**  The end of the day, yes.

5          **MR. DOREN:**  Thank you.

6          **THE COURT:**  I can guarantee you, I'm not going to be,

7  after a full day with all of you, I'm not going to be itching

8  for someone to print that out and give it to me.  As I said, I

9  do have a few other cases on my docket.  But I do want it

10  there and available for me so that I can know how we are

11  making progress and where we are not.

12      I mean, look, sometimes the most -- when I've done this

13  before, sometimes the most helpful information is what you

14  didn't get in.  Because all of these conclusions of law are

15  based upon a theory of what the factual record is going to

16  look like.  And when you actually don't get it in, because

17  that is not what the witnesses actually say as opposed to what

18  the lawyers think they are going to say, that helps me focus

19  on, you know, something that may not, in terms of the ultimate

20  conclusion, something that was never proved.

21      Plus, again, it keeps everything really transparent

22  between the both sides.

23      Okay?  Any questions on that?

24                      (No response.)

25          **MR. BORNSTEIN:**  We do have this other question on the

1   findings of fact in our second bullet which relates to Your

2   Honor's order from March 30 which stated that any objections

3   to --

4           **THE COURT:**  You know, I put that in there because --

5   and this is just for something major.  You know, I will give

6   you an example.

7       Hit and run case.  And, you know, big question about

8   whether the light was red or the light was green.  And it

9   comes in totally different than people expect or at least

10  what's presented to the Court is totally different.

11      If there is something that is not -- that is not arguable,

12  in your view, I want to know about it sooner rather than later

13  because memories -- I can try to fix it.

14      But that's what that objection would be; if there is

15  something that's really not arguable and that you think the

16  other side just got flat wrong, then let me know so that I can

17  try to figure it out.  Check my own notes while my memory is

18  fresh and we can try to -- so I expect to have nothing, I

19  expect to have no objections to be clear.  But I put it there

20  just in case.

21          **MR. BORNSTEIN:**  This is contemplated, if I understand

22  correctly, Your Honor, to be a situation where a party

23  indicates in their findings of fact that a particular fact was

24  proven, but the other party believes that they have just

25  completely botched the testimony, not that it's a shading or a

1    debate about how something ought to be interpreted, but it's

2    really just flat out wrong and it needs to be brought to the

3    Court's attention.  Is that --

4          **THE COURT:**  I don't want to have to deal with these

5    objections later in terms of what the record is.

6       You all have very different views, very different views.

7    Someone is going to lose.  So there are two very different

8    distinct approaches to this case.

9       But in terms of what's actually said, there should be no

10   dispute.  And I expect that, you know, when you go back or

11   your teams go back and change the color because you think

12   something's been proved, you know, sometimes those words are

13   going to have to change a little bit because the evidence is

14   not going to come in the way the lawyers have scripted it.

15      But that's not what this is about.  This is really for

16   something that is really almost outrageous.  Right?

17         **MR. BORNSTEIN:**  That's very helpful.  I was concerned

18   because otherwise we find ourselves arguing over minor nuances

19   that I am sure we would never agree on, and this is intended,

20   it sounds like, to be true outrageous misstatements of the

21   testimony.  That's helpful to know.

22         **THE COURT:**  Like I said, you will probably have to

23   change the -- because people are not going to testify in the

24   way you've scripted it.

25      So using quotes will help.

1          **MR. BORNSTEIN:**  That is helpful clarification.  Thank

2     you.

3          **MR. DOREN:**  Thank you for the guidance.

4          **THE COURT:**  Okay.  We talked about redactions before,

5     right, so nothing else on that?

6          **MR. DOREN:**  I believe that is correct, Your Honor.

7          **THE COURT:**  Okay.  Anything else that you want to

8     talk about before I move to my agenda?

9          **MS. FORREST:**  No, Your Honor.

10          **THE COURT:**  All right.

11     So you've provided the Court with some stipulations.  So

12     I'm accepting the stipulation that Epic will present an

13     opening statement followed by Apple.

14     I'll accept the stipulation with respect to the manner in

15     which the witnesses' deposition designations will be

16     introduced.  That's your number two.

17     I thought I already excluded all witnesses from the

18     courtroom.  To the extent that wasn't in a prior order, it is

19     ordered.  It is one of my standard --

20          **MR. DOREN:**  I think the stipulation and the order

21     crossed each other in the mail, Your Honor.  We did see that

22     order.

23          **THE COURT:**  Okay.  But there was something in here.

24     Do we know yet who your corporate representatives are going to

25     be?  Given how many people -- do we know who that's going to

be?

    Are they going to be in the courtroom or are they just
going to be participating on the platform?

        **MS. FORREST:**  Your Honor, the Epic corporate
representative will be Tim Sweeney and he will be present from
the beginning of the trial until the end in the courtroom.

        **MR. DOREN:**  And Apple's corporate representative will
be Phil Schiller, and we expect him to be in the courtroom as
well.

        **THE COURT:**  Okay.  It's fine for you to -- I'll
accept your stipulation to update your witness lists in terms
of "will" and "may" call status on April 26th.

    With respect to your stipulation regarding Magistrate
Judge -- or retired Magistrate Judge Laporte that stipulation
is granted.  That is at Docket 465.  I take it the motion at
441 is withdrawn?

        **MR. BORNSTEIN:**  Yes, Your Honor.  This is the Special
Master motion?

        **THE COURT:**  Yes.

        **MR. BORNSTEIN:**  Withdrawn.  If the Court needs us to
file anything to document that, we will do that.  We can
figure that out without --

        **THE COURT:**  No, I'll do it in my order.

        **MR. BORNSTEIN:**  Thank you.

        **THE COURT:**  Okay.  Do we know yet whether, in fact,

```
 1   witnesses will be testifying remotely or not?

 2              MS. FORREST:  Your Honor, Epic knows now of one third

 3   party who will testify remotely in Epic's case.  And that is

 4   the only witness that will be testifying remotely.

 5              THE COURT:  And who --

 6              MS. FORREST:  That is Mr. Patel via video.

 7              THE COURT:  Okay.

 8       Any for Apple?

 9              MR. DOREN:  Your Honor, at this point I believe

10   everyone will be live.  We'll let the Court know if that

11   changes.

12              THE COURT:  Okay.

13              MS. FORREST:  Your Honor, let me -- just to be clear,

14   the Epic single witness testifying remotely was dependent upon

15   a discussion that Apple and Epic were having yesterday about

16   Apple not calling another witness who was going to have to

17   testify remotely.

18       I believe that witness has been withdrawn and so,

19   therefore -- it hasn't been confirmed yet, but I believe it

20   was going to be confirmed today and that's why we only have

21   just the one now.

22              THE COURT:  Okay.

23       By any chance do you all have a list of acronyms?  You use

24   acronyms all the time and I know the press of trial sometimes

25   you move things around and so I don't get a definition before
```

1    the acronym is actually used.  I get the definition pages

2    later.

3        Does anybody have a list of acronyms that you are

4    routinely using that you can send?

5        **MS. FORREST:**  Your Honor, we have two things that

6    might be of assistance.  One, we prepared for the court

7    reporters, a list of words that would be perhaps helpful for

8    them to have.  Separately we also have a list of words with

9    definitions.

10       I think it would be helpful for us to confer with Apple to

11   be sure that we agree on those for the acronyms and then we

12   can get it right to Your Honor.

13       **THE COURT:**  That would make sense.

14       **MR. DOREN:**  Agreed.

15       **THE COURT:**  Okay.

16       Okay.  I think what this does is terminates a number of

17   issues on the docket.  Those were the only things left that I

18   had.

19       Let me just check one thing.  I also understand that you

20   each have reserved a conference room in the attorney's lounge.

21       I have not received any requests to bring in equipment.

22   So don't forget, you need to send those to me so I can review

23   them.  Marshals will not let you bring in anything like that

24   without an order.  I think that's probably it.

25       Make sure that you arrive in time to get through security.

1  Ms. Stone usually has the courtroom open about quarter of,

2  Ms. Stone?

3          **THE CLERK:**  Yes.  Yes, quarter to 8:00.

4          **THE COURT:**  And then we start right at 8:00 o'clock

5  every day.  I will, on day one, I'll tell you what my computer

6  says.  And you can set your clock to my computer.  That's when

7  we start, 8:00 o'clock.  Okay?

8      As you know, I'm here if you need me, but I think I won't

9  see you again until I see you live on May 3rd.

10     You will be getting daily time sheets.  We use an Excel --

11  actually do it manually.  I haven't figured out -- I know that

12  they have the chest clocks, but it doesn't really work for me.

13  So you will get your -- an Excel spreadsheet and we'll keep

14  track of your time.  But I do need to have the other stuff

15  with me so I can read in advance on time, Mr. Bornstein.

16     Okay?  Any other questions?

17         **MR. DOREN:**  No.

18         **MS. MOYE:**  No thank you, Your Honor.

19         **MS. FORREST:**  Thank you.

20         **THE COURT:**  All right.

21     And then, yes, it looks like we will be testing --

22  Ms. Stone is telling me on 4/29 10:00 a.m. people are coming

23  from your offices to set up equipment on Thursday.

24         **MS. FORREST:**  Yes.

25         **THE COURT:**  Okay.  All right.  Good enough.  Safe

1    travels.  We'll see you soon.

2             MR. DOREN:  Thank you, Your Honor.

3             MR. BORNSTEIN:   Thank you, Your Honor.

4

5             (Proceedings concluded at 10:30 a.m.)

6

7

8                   **CERTIFICATE OF REPORTER**

9             I, Diane E. Skillman, Official Reporter for the

10   United States Court, Northern District of California, hereby

11   certify that the foregoing is a correct transcript from the

12   record of proceedings in the above-entitled matter.

13

14

15             DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

16                  Thursday, April 22, 2021

17

18

19

20

21

22

23

24

25

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**