UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>        *Plaintiff, Counter-defendant,*<br><br>      v.<br><br>APPLE INC.,<br><br>        *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING APPLE'S CLAWBACK OF DOCUMENTS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

      The parties in the above-captioned action respectfully submit this joint letter brief regarding Apple's claw-back of three documents.

      Counsel for Epic Games, Inc. ("Epic"), and Apple Inc. ("Apple", together with Epic, the "Parties") have exchanged correspondence and met and conferred telephonically in a good faith effort to resolve the outstanding disputes. The Parties have been unable to reach agreement and therefore submit this joint letter. The Parties can make the documents and testimony identified in this submission available to the Court upon request.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP | GIBSON DUNN & CRUTCHER LLP |
| By: *s/ Yonatan Even*<br>   Yonatan Even<br>   *Counsel for Epic Games, Inc.* | By: *s/ Ethan Dettmer*<br>   Ethan Dettmer<br>   *Counsel for Apple Inc.* |

**Epic's Position:** Epic requests that the Court order Apple to re-produce three documents that Apple improperly clawed back this month, after Epic identified them as documents it would rely upon in its Proposed Findings of Fact (APL-EG_09689923; APL-EG_09690033; APL-APPSTORE_10170219.) Apple's clawback is improper. *First*, even if the documents were privileged (they are not), Apple waived privilege. Apple reviewed the documents repeatedly, confirming each time that they are not privileged, before reversing course. *Second*, the documents are not privileged. They are business communications between Apple executives reflecting their planning and evaluation of the Small Business Program announced in late 2020. *Third*, Apple may not assert privilege over "all aspects of structuring the" Program at the same time that it proffers trial testimony about the Program, in violation of the sword-and-shield doctrine.

**The Documents at Issue:** The documents relate to business planning for Apple's App Store Small Business Program, which Apple announced on November 18, 2020. Under this Program, "Developers can qualify for . . . a reduced, 15 percent commission if they earned up to $1 million in proceeds during the previous calendar year". (https://www.apple.com/newsroom/2020/11/apple-announces-app-store-small-business-program/.) Two documents are email strings in which Philip Schiller, Apple's central trial witness, and other top Apple business executives, discuss financial and business implications of the Program, including its costs; one lawyer is among the recipients of each, but does not participate in the discussion. The third document is a draft presentation laying out the business implications of the Program, produced from the files of Carson Oliver, Director of Business Management of the App Store. No lawyer is mentioned.

**Apple Has Waived the Privilege:** Even if the documents were privileged—which they are not—Apple has waived the privilege. "[D]isclosure generally waives privilege. . . . Rule 502(b) operates as an exception to the general principle." *In re Qualcomm Litigation*, 2018 WL 6617294, at *4 (S.D. Cal. Dec. 18, 2018). Apple bears the burden of proving it has met each element of the Rule. *Id.* Under Rule 502(b), "disclosure does not operate as a waiver" only if (1) "the disclosure is inadvertent", (2) "the holder of the privilege or protection took reasonable steps to prevent disclosure", and (3) "the holder promptly took reasonable steps to rectify the error". The Protective Order provides: "If any Producing Party learns that its privileged or protected material has been produced, it must promptly notify the Receiving Parties in writing." (ECF No. 274, § 12.2.)

Apple cannot meet its burden of proving that it has at least twice inadvertently determined that the documents were not privileged, or that it took reasonable steps to rectify what it now claims was error. Apple reviewed the documents before producing them in January and February 2021. Each document says "Privileged and Confidential", and the two emails were sent to a lawyer; presumably, Apple's systems would have flagged them for thorough privilege review. In February 2021, Apple "clawed back 13 documents" relating to the Program, and presumably searched for similar documents—but did not claw back these three documents. On March 24, 2021, Epic served its trial exhibit list, which included the three documents among a set of 1,201 exhibits, only about half of which were produced by Apple. Apple re-reviewed these three documents, along with Epic's other trial exhibits, to determine whether to object to them. On April 2, 2021, Apple provided Epic with its list of objections, indicating it had no objection to the three documents. This review was limited in size and focused on the substance of how the document might be used at trial. Presumably this review was conducted by lawyers who were knowledgeable about the substance of the case. The "Privileged and Confidential" legend again would have triggered heightened privilege review. Apple determined yet again that they were not privileged, and the boilerplate reservation of rights language to which Apple points does not suggest otherwise

(*see* n.5 below).  It was only after Epic informed Apple on April 5, 2021, that it would be citing two of the documents in Epic's Proposed Findings of Fact (so Apple could determine whether to request sealing), that Apple purported to determine that they were privileged.  Apple has not explained how its repeated prior decisions not to assert privilege were "inadvertent" or how Apple "promptly took reasonable steps to rectify" its alleged errors.  *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL 275083, at *2, *6 (S.D. Cal. Jan. 13, 2010) (finding waiver after a party allowed documents to be used at a deposition or on a summary judgment motion); *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 510 (2009) ("Because defendant disclosed the pages to plaintiff more than once, and via more than one mechanism, the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent.").

Apple responds that "inadvertent disclosure . . . involving massive document productions on accelerated timelines do not generally lead to waiver".  But Apple "bears the burden of proving that the elements of Rule 502(b) have been met", *Qualcomm*, 2018 WL 6617294, at *4, and has not even tried to substantiate its claim of inadvertence.  Instead, Apple cites cases (*Reyes* and *IBM*) involving failures to assert privilege during "massive document productions".  Moreover, at least Apple's decision not to assert privilege on April 2nd occurred in the context of a targeted review.  Apple argues it sought to claw back "12 days after service" of Epic's exhibit list, but in the interim, it had affirmatively stated it has no objection to the use of the documents at trial.  Apple's repeated ratification of its alleged error sets this case distinctly apart from the disclosing parties in its cited cases (*CP Salmon* and *Mauna Kea*).

**The Documents Are Not Privileged:**    Apple's first two determinations were correct; the documents are plainly not privileged.  Apple did not initially agree to *in camera* review, but has now dropped its resistance.  Epic submits that *in camera* review would confirm this conclusion.  Epic need only "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged".  *IndyMac Res., Inc. v. Carter*, 2013 WL 12138727, at *2 (C.D. Cal. Jan. 9, 2013).  "Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys . . . . the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel. . . . [T]he proponent of the privilege must make a clear showing that the speaker made the communications for the purpose of obtaining or providing legal advice."  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  "An attorney's involvement in . . . a transaction does not place a cloak of secrecy around all the incidents of such a transaction."  *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977).

The documents are ordinary course business documents that were created as Apple executives planned and evaluated a proposed new business initiative.  None bears any indication that the communications were made for a legal purpose.  The emails reflect Apple business executives—including witnesses Schiller, Cook and Cue—discussing the Program, including the reasons for its creation and its costs.  The lawyers among the recipients do not send any emails; they are passive recipients of the business conversations.  Simply including a lawyer on a business email—even in the "to" line—does not make it privileged.[1]  And there is no indication that any of the emails

---

[1] Apple employees have tried to do just that.  *E.g.*,  APL-APPSTORE_02761745 ("Privilege only applies when you're sending email to an attorney trying to get them to read your email, notes, etc. TO an attorney; copying an attorney doesn't work"); APL-EG_07058266 ("You MUST use

convey or request legal advice. As to the draft presentation produced from the files of a business executive, Apple asserts that it is "an internal document reflecting confidential legal advice from Apple's in-house counsel". (4/5/21 Ltr. at 2.) Apple has not supported its assertion that the document "reflect[s]" legal advice. A "vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged". *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *2-3 (N.D. Cal. Feb. 2, 2008). Apple has not explained specifically how the document, in its entirety, "reflects" legal advice. Nor can Apple establish production would disclose any legal advice. Many business documents "reflect" legal advice in the sense that a lawyer has "extensively edited" them; while the lawyer's comments may be privileged (if they are legal in nature), a business document does not become privileged simply because it has been revised with a lawyer's advice in mind.[2]

**Apple's Claw-back Violates the Sword-and-Shield Doctrine:** Apple seeks to shroud in privilege documents concerning the origins and business implications of the Program while simultaneously proffering trial evidence on the Program. Apple's assertion of privilege over "all aspects of structuring the" Program by definition denies Epic the ability to take discovery of that topic. "[W]here the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged." *Columbia Pictures v. Krypton Broadcasting*, 259 F.3d 1186, 1196 (9th Cir. 2001). Indeed, despite touting the Program in its Proposed Findings of Fact and proposing that Mr. Schiller testify concerning it (ECF No. 408-4 ¶¶ 166, 306, 454, 475, 562), Apple declined to discuss during the Parties' meet and confer the scope of the testimony it may offer concerning the Program and whether such testimony would implicate topics over which it has asserted privilege. Even if the documents were subject to an unwaived privilege, the appropriate remedy would be for the Court to "direct[] the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them". *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003).

---

Privileged & Confidential with [Apple lawyer] Sean [Cameron] on the To Line. We're trying to keep you from being depositioned.").

[2] Apple "requests the Court's permission to submit declarations". If the Court grants Apple's request, Epic respectfully requests the right to respond to any such declarations.

**Apple's Position:** Reviewing millions of documents in a few months, Apple inadvertently produced a handful of privileged documents about the development of its recently launched Small Business Program (the "SBP"). Apple learned in February that 13 such documents had been produced and clawed them back. Epic protested, and Apple explained why those documents are privileged. Epic then withdrew its already-drafted motion. Later, Epic included three other documents about the SBP on its trial exhibit list—two emails to members of Apple's Office of General Counsel, and a different version of a draft presentation that was subject to the earlier clawback. Apple promptly clawed them back. Epic again challenges the clawback. But as before, Epic's position is contrary to the facts and the law. Apple's privilege assertion should be upheld.

**Documents at Issue.** Each document at issue relates to legal advice about the SBP: (i) APL-EG_09689923 is an email chain about the structure and roll out of the SBP, initially sent to Apple Associate General Counsel Doug Vetter; (ii) APL-EG_09690033 is an email chain about the legal and business impacts of a change in Apple's fee structure in connection with the SBP, initially sent to Apple General Counsel Kate Adams; and (iii) APPSTORE_10170219 is a draft presentation describing the SBP, extensively edited by Apple in-house lawyer Sean Cameron. Apple will submit these documents for *in camera* review at the Court's request.[3]

**Procedural History.** This dispute does not arise in a vacuum. On February 10, 2021, Apple clawed back 13 documents because they reflected legal advice from Apple's legal department about risk mitigation in structuring the SBP. *See* E. Dettmer Ltr. (2/10/2021) at 2. Apple explained that its in-house counsel were closely involved in all aspects of structuring the SBP. *See* E. Dettmer Ltr. (3/1/2021) at 2. Epic sent Apple a draft letter brief on March 8, 2021, and in subsequent discussions, Apple explained counsel's role: to assess whether proposals for structuring the program would expose Apple to legal risk, and to provide legal advice as to how to mitigate or eliminate that risk. *See* E. Dettmer Ltr. (3/15/2021) at 2-3. Epic declined to pursue its motion. Epic then served its initial trial exhibit list, including three privileged SBP documents. Each was labeled "Privileged and Confidential" and/or "Attorney Work Product," and two were emails sent to counsel discussing legal risks Apple had described in the earlier meet and confer. Apple sent its clawback notice 12 days after Epic listed the documents on its exhibit list.

**The Documents at Issue Are Privileged.** Privilege applies if "the primary or predominate purpose of the communication is to seek legal advice or assistance." *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2016 WL 6922075, at *2 (C.D. Cal. May 26, 2016). Courts recognize implicit requests for legal advice as privileged. *See Jack Winter, Inc. v. Koratron Co.*, 54 F.R.D. 44, 46 (N.D. Cal. 1971) (concluding client communications intended to keep the attorney apprised of continuing business developments contained an "implied request for legal advice based thereon"); *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (privilege protects "the giving of information to the lawyer to enable him to give sound and informed advice"). Whether counsel responds to an email is not relevant to the determination.

Business documents reflecting legal advice are also privileged. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019) ("The fact that a document

---

[3] Epic falsely claims that Apple refused to submit these documents *in camera*. In fact, Apple told Epic in their initial discussion that it did not have a position on the question at that time.

may be prepared for a business purpose does not preclude it from being privileged if it is sent to an attorney for the purpose of receiving legal advice relating to that document."); *Skansgaard v. Bank of America*, 2013 WL 828210, at *2 (W.D. Wash. Mar. 6, 2013) (business presentation reflecting counsel's assessment of legal risk was privileged). Courts look to context, including declarations, in determining privilege. *See*, *e.g.*, *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, *5 (N.D. Cal. June 16, 2006).

Accordingly, these three documents are privileged. Throughout Apple's consideration, design, decisioning, and roll-out of the SBP, Apple in-house lawyers Cameron and Cody were involved in every step of the process.[4] Apple lawyers Ms. Adams and Mr. Vetter were also involved. Their role was to assess legal risks and work with Apple business people to reduce or eliminate those risks, including risks related to competition, data privacy, false advertising, fraud, and money laundering. Apple executives designing and implementing the program considered the regular advice of the Apple legal team to be critical to limit legal risk. Accordingly, Apple attorneys not only consulted with Apple business people through email, teleconference, and meetings, but regularly reviewed documents that they had requested, and analyzed, drafted, revised, or otherwise worked on in connection with the SBP. That is exactly what happened here.

Mr. Schiller sent the email chain produced at APL-EG_09689923 to Mr. Vetter so that he could provide legal advice regarding the risks described above. He discussed the substance of the chain with Mr. Vetter, and received legal advice from him on these topics, during contemporaneous meetings and telephone conversations. Similarly, Ms. Adams was included on the email chain produced at APL-EG_09690033 so that she could provide legal advice regarding these risks. Mr. Schiller discussed the substance of the chain with Ms. Adams, and received legal advice from her on these topics during contemporaneous meetings and telephone conversations. Finally, Messrs. Cameron and Cody reviewed and revised the draft presentation (APPSTORE_10170219). It reflects the legal advice that they provided to Apple business people in connection with the program. Accordingly, all of these privileged documents were properly clawed back.

**Apple Has Not Waived Privilege.** Epic misconstrues "inadvertent" disclosure and "reasonable steps" under FRE 502(b). *First*, inadvertent disclosure in cases involving massive document productions on accelerated timelines do not generally lead to waiver. *S.E.C. v. Reyes*, 2007 WL 528718, at *3 (N.D. Cal. Feb. 13, 2007) (finding no waiver and acknowledging "that mistakes in production are likely, and perhaps inevitable" when "producing a large number of documents in 'accelerated' discovery"); *Transamerica Computer Co., Inc. v. Int'l Bus. Machs. Corp.*, 573 F.2d 646, 649, 651–53 (9th Cir. 1978) (same); Advisory Committee's Note to Federal Rule of Evidence 502 (2007). Epic's claim that Apple's inadvertent failure to claw these documents back on April 2—rather than on April 5—does not make sense.[5]

---

[4] Apple respectfully requests the Court's permission to submit declarations from Phillip W. Schiller and Sean Cameron attesting to the facts herein. There are no material facts in these declarations that are not stated in this brief. Epic should not be allowed a reply brief.

[5] And far from "ratifying" its inadvertent production, Apple's transmittal of its objections to Epic's exhibit list made clear that it "reserves its right to object to and clawback any privileged documents inadvertently produced and included on Epic's exhibit list." S. Choy email (4/2/21). In contrast, Epic used true boilerplate: "Epic reserves all rights." J. Niu email (4/5/2021)

*Second*, Epic speculates that Apple's inadvertent production was unreasonable.  *See supra*, at 2 ("*presumably*, Apple's systems *would have* flagged them … and *presumably* searched for similar documents") (emphases added).  But the facts here are far removed from those where courts found failure to take "reasonable steps."  *See*, *e.g.*, *Mycone Dental Supply Co Inc v. Creative Nail Design Inc*, 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013) (concluding reasonable steps not taken where counsel waited 49 days from discovery of privilege to notify opposing side); *Skansgaard v. Bank of Am., N.A.,* 2013 WL 828210 at *3 (W.D. Wash. Mar. 6, 2013) (two-month delay in clawback after deposition in which disputed document was used was unreasonable); *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866–7 (N.D. Cal. 2019) (finding waiver where Google waited months to claw back a document quoted and cited in opponent's filing).

Apple acted immediately upon discovery of these documents, and only 12 days after service of Epic's exhibit list.  Courts have found much longer delays consistent with "reasonable steps."  *See, e.g.*, *CP Salmon Corp. v. Pritzker*, 238 F. Supp. 3d 1165, 1176 (D. Alaska 2017) (concluding a party took reasonable steps by sending clawback letter within a month of discovery of inadvertent disclosure); *Mauna Kea Resort, LLC v. Affiliated FM Ins. Co.*, No. CV 07-00605 DAE-KSC, 2009 WL 10677201, at *5 (D. Haw. June 24, 2009) (clawback letter sent within three weeks of notice sufficient to find prompt action to rectify error).  Critically, Epic cites no prejudice that it has or will suffer due to this timing, other than its inability to use privileged documents at trial.

**Apple's Clawback Does Not Implicate the Sword-and-Shield Doctrine.**  Epic conflates Apple's clawback of privileged *documents* regarding the SBP with anticipated non-privileged *trial testimony* from Mr. Schiller regarding the SBP.  Far from "shrouding" the "origins and business implications" of the SBP from discovery, Epic asked Apple numerous witnesses about the SBP during discovery, and received full answers without privilege objections.[6]  Epic has no response to this fact.  Simply because documents on a topic are privileged does not somehow mean that the topic is wholly off-limits.[7]

---

[6] *See* Oliver Dep. at 77:24:3 – 82:11, 271:17 – 272:6; Cue Dep. at 132:1 – 134:8; 237:15 – 239:3; Fischer Dep. at 196:23 – 200:6; Schiller Dep. at 117:20 – 118:7, 160:14 – 24; Cook Dep. at 24:8 – 34:3.  Mr. Cook was instructed not to answer only where such questions implicated the present action or legislative inquiries.  *See* Cook Dep. at 34:5 – 35:20.

[7] Epic's reliance on *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.* is misplaced.  There, the court found waiver of the attorney-client privilege because the defendant asserted the advice of counsel defense.  259 F.3d 1186, 1196 (9th Cir. 2001).

Dated: April 27, 2021         FAEGRE DRINKER BIDDLE & REATH LLP
  Paul J. Riehle

  CRAVATH, SWAINE & MOORE LLP
    Christine Varney
    Katherine B. Forrest
    Gary A. Bornstein
    Yonatan Even
    Lauren A. Moskowitz
    M. Brent Byars

  Respectfully submitted,

  By:  <u>s/ Yonatan Even</u>

    Yonatan Even
    *Attorneys for Plaintiff Epic Games, Inc.*

Dated: April 27, 2021         GIBSON, DUNN & CRUTCHER LLP
    Theodore J. Boutrous Jr.
    Richard J. Doren
    Daniel G. Swanson
    Mark A. Perry
    Veronica S. Lewis
    Cynthia E. Richman
    Jay P. Srinivasan
    Ethan D. Dettmer
    Eli M. Lazarus
    Harry Phillips

  Respectfully submitted,

  By:  <u>s/ Ethan Dettmer</u>
    Ethan Dettmer
    *Attorneys for Defendant Apple Inc.*

-9-

## **E-FILING ATTESTATION**

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Yonatan Even*
Yonatan Even
