THEODORE J. BOUTROUS JR., SBN 132099
 tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
 rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
 dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
 Los Angeles, CA 90071-3197
 Telephone: 213.229.7000
 Facsimile: 213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092; *pro hac vice*)
vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:    202.467.0539

ETHAN D. DETTMER, SBN 196046
edettmer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE ANTITRUST LITIGATION | CASE NO. 4:11-cv-06714-YGR<br><br>CASE NO. 4:19-cv-03074-YGR |
| DONALD R. CAMERON, *et al*.,<br><br>         Plaintiffs,<br><br>  v.<br><br>APPLE INC.,<br><br>         Defendant | **DECLARATION OF SEAN CAMERON IN SUPPORT OF APPLE'S OPPOSITION TO EPIC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Hon. Yvonne Gonzalez Rogers<br>Hon. Thomas S. Hixson |

I, Sean Cameron, declare as follows:

1. I make this declaration in support of Apple's Opposition to Epic's Motion to Compel Production of Documents. I have personal knowledge of the matters stated herein, and if called upon to do so, I could and would competently testify hereto.

2. I am currently an attorney in Apple's corporate legal department. In that role, I provide legal advice to Apple executives and employees on a variety of issues, including, but not limited to, the potential legal implications and effects of new Apple programs and products, as well as legal advice regarding the strategic decision-making, planning, and marketing related to these new Apple programs and products. I was closely involved in Apple's creation and development of the Small Business Program announced in November 2020 and provided legal advice to Apple's executives and employees, including Phillip Schiller, Eddy Cue, and Carson Oliver, throughout that process.

3. During the entire process of considering, designing, decisioning, and rolling-out the Small Business Program, myself and another Apple lawyer, Jason Cody, were involved in every step of the process. Other members of the Apple Legal team, including Apple General Counsel Kate Adams and Apple Associate General Counsel Douglas Vetter, were also involved in this process. Overall, our roles in the process were to: 1) to analyze plans, data, and documents relevant to the contemplated program to identify potential legal risks of the program; 2) consult with the responsible Apple business people regarding the various potential legal risks of the program; 3) consider ways to structure the program to eliminate or ameliorate those risks, and discuss those potential structures with Apple business people; and 4) work with Apple business people, in light of the information we had learned, to launch the program in a manner that minimized legal risks, including the review and revision of documents informing, discussing, describing, and announcing the program.

4. Some of the risks that I was concerned about in the process of advising on the Small Business Program included the following: competition (e.g., determining eligibility for the program and the potential legal implications of treating some developers differently than others), data privacy (e.g., opt-in vs. automatic enrollment, as well as providing notice to and obtaining consent of developers), false advertising (e.g., Apple's communications with developers about the program), fraud (e.g., how some participants may try to obscure their finances or corporate structures to become or

remain eligible for the program), and money laundering (e.g., the commission could not be zero because that could result in opportunities for developers to engage in money laundering).

5. As part of this process, I regularly reviewed documents that I had either requested and analyzed, drafted, revised, or otherwise worked on in connection with the project described in Paragraphs 3 and 4, above. These documents were typically labeled "privileged and confidential" and/or "attorney work product," and I kept them confidential because they were part of my work in learning about, considering, and then advising the Apple business people regarding this contemplated program.

6. The document produced with Bates-number APL-APPSTORE_10170219, which is labeled "Privileged and Confidential," is a version of a draft Keynote presentation regarding the Small Business Program that I reviewed and revised to provide legal advice regarding various legal risks related to the Small Business Program, including some of the concerns identified in Paragraph 4, above. This draft reflects legal advice that Mr, Cody and I provided to Apple business people in connection with this program.

7. APL-APPSTORE_10170219 is a different version of other draft Keynote presentations regarding the Small Business Program that I understand were inadvertently produced in this litigation and subsequently clawed back. As with APL-APPSTORE_10170219, I reviewed and revised those presentations to provide legal advice regarding various legal risks related to the Small Business Program, and those drafts reflected legal advice that Mr. Cody and I provided to Apple business people in connection with this program.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that I executed this declaration on the **24th of April**, 2021 in **San Jose**, California.

Sean Cameron