CAZ HASHEMI, State Bar No. 210239
BENJAMIN M. CROSSON, State Bar No. 247560
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: chashemi@wsgr.com
       bcrosson@wsgr.com

Attorneys for Non-Party
App Annie Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | Case Nos. 4:20-CV-05640-YGR <br><br> CLASS ACTION COMPLAINT <br><br> NON-PARTY APP ANNIE'S ADMINISTRSTIVE MOTION TO SEAL |

Pursuant to Civil Local Rules 7-11 and 79-5, Non-Party App Annie Inc. ("App Annie") submits this Administrative Motion to Seal ("Administrative Motion") regarding certain exhibits identified by Defendant Apple Inc. ("Apple") in connection with the upcoming trial in this matter. The material that App Annie seeks to seal, and the reasons why such information warrants sealing, are described below and in the supporting declarations of Ketaki Rao ("Rao Decl.") and Benjamin M. Crosson ("Crosson Decl.").

I.   INTRODUCTION AND BACKGROUND

App Annie is one of the leading providers of information and analytics regarding the mobile applications marketplace, offering a suite of products to help a broad range of industries, including mobile-first as well as brick-and-mortar companies, improve their mobile strategies. Rao Decl. ¶ 2. App Annie derives the vast majority of its revenue via paid subscription services, known as App Annie Intelligence. *Id.* ¶ 3. App Annie's Intelligence makes use of various data collected by App Annie, using principles of data science and other sophisticated modeling techniques, to generate a wide variety of app performance estimates regarding the mobile marketplace ("estimate data"). *Id.* ¶ 2-3.

On March 31, 2020, plaintiff in the related case *Cameron et al. v. Apple, Inc.*, Case No. 4:19-cv-03074-YGR ("*Cameron*") served a Subpoena to Produce Documents, Information, or Objects on App Annie, seeking years' worth of App Annie's proprietary estimate data that it sells to customers. Crosson Decl. ¶ 2. On August 5, 2020, Defendant Apple also served a Subpoena to Produce Documents, Information, or Objects on App Annie seeking additional estimate data in connection with the *Cameron* matter. *Id.* ¶ 2. App Annie met and conferred with both parties separately and came to an agreement on the scope of estimate data to be produced in response to the subpoenas. *Id.* ¶ 3. In October 2020, App Annie produced over ***fifteen terabytes of estimate data*** to the parties in the *Cameron* matter in response to their subpoenas, designated Confidential under the protective order entered in that matter. *Id.* ¶ 3.

In November 2020, the parties in the *Cameron* matter informed App Annie that Plaintiff Epic Games brought suit against Apple in the above-captioned matter, and that the *Cameron* parties intended to share all third-party productions made in connection with the *Cameron* matter

APP ANNIE'S ADMIN. MOTION TO SEAL                    -1-
CASE NO.: 4:20-cv-05640-YGR

1   with the Epic Plaintiffs.  *Id.* ¶ 4.  App Annie agreed to the *Cameron* parties sharing the produced
2   estimate data pursuant to the protective order entered in this matter.  *Id.* ¶ 4.
3          On November 25, 2020, the parties in the *Cameron* matter made an additional request for
4   information regarding the nature and structure of App Annie's estimate data.  *Id.* ¶ 5.  On
5   December 14, 2020, Plaintiff Epic Games also served a Subpoena to Produce Documents,
6   Information, or Objects on App Annie seeking additional estimate data in connection with this
7   matter.  *Id.* ¶ 6.  App Annie produced the additional requested estimate data, along with a
8   confidential and proprietary document detailing the fields, definitions and structure regarding the
9   produced estimate data ("Bulk API Documentation"), also designated Confidential under the
10  protective order in this matter.  *Id.* ¶ 7.
11         On Saturday, April 24, 2021, counsel for Apple contacted counsel for App Annie,
12  indicating that Exhibits DX-5408, DX-5409, DX-5410, DX-5411, and DX-3591 were on
13  Apple's exhibit list for the trial in this matter, scheduled to start May 3, 2021.  *Id.* ¶ 8.  Apple's
14  counsel instructed App Annie that if it wanted to protect the Confidential designation of its
15  estimate data, it should file the instant motion.  *Id.* ¶ 8.
16         The information warrants sealing for multiple reasons.  First and foremost, the estimate
17  data information in Exhibits DX-5408, DX-5409, DX-5410, and DX-5411 contain a large subset
18  of App Annie's Intelligence data over a number of years, which form the entire basis for the
19  Intelligence product it sells to customers.  Rao Decl. ¶¶ 3, 8.  This Intelligence product is the
20  means by which App Annie generates the vast majority of its revenue.  *Id.* ¶ 3.  Public disclosure
21  of this information would significantly harm App Annie's competitive position in the
22  marketplace, not only because App Annie's prospective and current customers could now get—
23  for free—that which they would otherwise have to pay for, but also because App Annie's
24  competitors would now have unfettered and free access to its product.  *Id.* ¶ 8.  Second,
25  disclosure of the Bulk API Documentation, Exhibit DX-3591, which contains confidential
26  proprietary information regarding the nature and structure of App Annie's estimate data, would
27  also place App Annie at a competitive disadvantage, as its competitors could take advantage of
28  this intimate understanding of App Annie's product.  *Id.* ¶ 8.

Moreover, App Annie's request is as narrowly tailored as it can be while protecting App Annie's ability to monetize its products, in particular because counsel for Apple has provided no further clarity as to which portions of these estimate data may be introduced at trial, other than indicating in an email to App Annie's counsel that "these data are likely to be used only in summary exhibits."  Crosson Decl. ¶ 8.

## II.   EXHIBITS TO BE SEALED

App Annie requests that the Court seal the following Defense Exhibits in their entirety: DX-5408, DX-5409, DX-5410, DX-5411, and DX-3591.

## III.   LEGAL STANDARD

While there is a presumption of public access to judicial records, that right is not absolute.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).  Courts in this district have applied the "compelling reasons" standard to applications to seal materials in connection with dispositive events, including trials that are "more than tangentially related to the merits of a case." *Ctr. For Auto Safety v. Chrysler Grp. LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016).

Compelling reasons exist to seal information when disclosure of such information may become a vehicle for improper purposes, such as granting an unfair advantage to competitors or causing a business irreparable financial harm.  *Nixon*, 435 U.S. at 598; *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (ordering sealing where information could be used to harm party's competitive standing).  Courts routinely find that parties established compelling reasons to seal confidential and proprietary business information if disclosure of such information would put the disclosing party at a competitive disadvantage.  *See e.g. Oracle v. Concentric Analgesics*, 2021 WL 1022874 (N.D. Cal. Mar. 17, 2021) (finding compelling reasons to seal proprietary and confidential business and intellectual property information that could give competitors an unfair advantage); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 6115623 (N.D. Cal. Dec. 10, 2012) (granting motion to seal Samsung's source code under compelling reason standard); *Adtrader Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 207754 (N.D. Cal. Feb. 12, 2020) (finding

compelling reason to seal sensitive and confidential non-public information as disclosure could cause competitive harm).

### IV. THERE IS A COMPELLING REASON TO SEAL APP ANNIE'S INFORMATION

App Annie seeks to seal Exhibits DX-5408, DX-5409, DX-5410, DX-5411, and DX-3591. Specifically, these Exhibits contain (i) App Annie's proprietary estimate data that it sells to customers, contained in Exhibits DX-5408, DX-5409, DX-5410, and DX-5411, and (ii) App Annie's Bulk API Documentation, Exhibit DX-3591, which explains in confidential and proprietary detail the fields, definitions and structure regarding App Annie's estimate data. Rao Decl. ¶¶ 7-8. Given the sensitivity of the estimate data and Bulk API Documentation, App Annie treats this information as confidential and does not disclose it to the public, only to paying customers. *Id.* ¶¶ 3-5. Further, App Annie's sales contracts with customers forbid customers from sharing any of App Annie's estimate data and related information with others.[1] *Id.* ¶ 5. Additionally, the confidential estimate data and Bulk API Documentation were produced here on condition that the parties take steps to maintain their confidentiality. Crosson Decl. ¶¶ 3-4, 7; Rao Decl. ¶ 6.

App Annie protects the confidentiality of this information for one main reason – this information is the main basis for how it generates revenue. As stated in the Rao Declaration, "The estimates…are the core component of the products App Annie sells for revenue generation." Rao Decl. ¶ 3. App Annie would lose the opportunity to effectively monetize its product, and its revenue generating capabilities would be significantly hampered, if this information was released to the general public. *Id.* ¶ 8. Not only would it likely lose prospective customers who would not consider paying for a product they could now essentially access for free, but App Annie could also stand to lose current customers who would obviously prefer to receive its products free of charge. *Id.* ¶ 8.

---

[1] In exceptional cases, all of which are approved in writing and limited in scope, App Annie may allow customers to share some of the information they receive as part of their Intelligence subscription. Rao Decl. ¶ 5.

In addition to the substantial potential degradation of its ability to generate revenue from prospective and current customers, App Annie would also be placed at an extreme competitive disadvantage vis-à-vis the position of its product in the marketplace. If this information were made public, App Annie's competitors would not only have unfettered and free access to its product, but would also have access to the Bulk API Documentation that explains in confidential, proprietary detail the product and related structure and nature of its estimate data. *Id.* ¶ 8. The unfair competitive advantage this would give to App Annie's competitors cannot be overstated, as competitors would be able to utilize every aspect of what App Annie provides to customers and use that information to bolster their own products. *Id.* ¶ 8.

Finally, App Annie's request is as narrowly tailored as possible, to protect only the confidential information described herein, particularly in light of the fact that App Annie as of yet has no clarity about Apple's anticipated uses of these exhibits at trial. Crosson Decl. ¶ 8. App Annie seeks to seal only its own proprietary confidential information that it produced in good faith in response to multiple subpoenas. *Id.* This information is the core of App Annie's product, and public disclosure of this information would cause irreparable harm to App Annie's business. Rao Decl. ¶ 8.

## V. CONCLUSION

For the compelling reason described above, App Annie respectfully requests that the Court grant the Administrative Motion with respect to the information identified herein.

Dated: April 28, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Benjamin M. Crosson*
Benjamin M. Crosson

Attorneys for Non-Party
App Annie Inc.