THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092; *pro hac vice*)
  vmoye@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
  mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN DETTMER, SBN 196046
  edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant, Counterclaimant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN CONFIDENTIAL MATERIAL AT TRIAL** |

Gibson, Dunn & Crutcher LLP

ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN CONFIDENTIAL MATERIAL AT TRIAL, 4:20-cv-05640-YGR

## Introduction

In this antitrust suit, Apple Inc. ("Apple") has produced to Epic Games, Inc. ("Epic) documents containing Apple's sensitive non-public financial information. Thanks in significant part to the protective order entered by the Court, Apple has done so largely without troubling the Court with many of the concerns that Apple might normally have about these disclosures. And, recognizing that the Court has expressed a preference for a public trial, Apple has not objected—and does not plan to object—to the presentation of most evidence at the upcoming bench trial. Like the Court, Apple believes the public interest is best served by a trial that is as open and transparent as possible.[1]

However, Apple respectfully requests that the courtroom be closed during the discussion of a particular topic: the purported "profitability" of the App Store on a standalone basis, as opined on by Epic's accountant, Mr. Barnes. To be clear, Apple is not objecting to the Court's consideration of this evidence for whatever probative value it may have in the context of this trial. Rather, Apple is concerned that analysts, investors, reporters, and others in the marketplace could misinterpret the public disclosure of non-public, unaudited financial information. Apple is a publicly traded company whose audited financials are a matter of public record. Under the securities laws, SEC guidance, and Public Company Accounting Oversight Board standards, investment decisions ought to be made on the basis of such public information. Apple does not—and is not required to under the governing regulatory regime—publicly disclose the unaudited financial information that is the subject of Mr. Barnes' testimony. Apple respectfully submits that this evidence should remain non-public so as not to unduly confuse the securities markets and participants in those markets, including the many pension funds, mutual funds, and other ordinary investors who own Apple stock.

Specifically, Apple requests that the courtroom be closed for: (1) the entirety of the testimony of Mr. Barnes, whose testimony is devoted to the non-public financial information at issue; (2) any testimony from other expert witnesses adopting or responding to Mr. Barnes' opinions; and (3) any testimony from fact witnesses addressing the subject matter of Mr. Barnes' opinions or the documents on which he relied. In addition, Apple requests that Epic be directed not to refer to this information in

---

[1] Apple reserves the right to submit a future request to the Court that the courtroom be closed during discussion of a limited subset of exhibits that contain highly confidential business information.

Gibson, Dunn & Crutcher LLP

ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN CONFIDENTIAL MATERIAL AT TRIAL, 4:20-CV-05640-YGR

its opening statement or in any demonstratives made available on the public record, and that any exhibits admitted into evidence on this subject be and remain redacted.

## Legal Standard

While there is a common law right of public access to judicial proceedings, that right is "not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). A party seeking to seal a judicial record may overcome the presumption in favor of access by "articulat[ing] justifications for sealing that outweigh the public policies favoring disclosure." *In re Incretin-Based Therapies Prod. Liab. Litig.*, No. 13-MD-2452, 2021 WL 873290, at *1 (S.D. Cal. Mar. 9, 2021) (citing *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). Put differently, the party must present "compelling reasons" to justify the "closure of a courtroom during trial." *In re LDK Solar Sec. Litig.*, No. 07-CV-5182, 2010 WL 724809, at *1 (N.D. Cal. Mar. 1, 2010).

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598).

## Discussion

Apple is the world's most valuable publicly traded company. Its market capitalization exceeds $2 trillion and its average daily trading volume exceeds 100 million shares. Apple stock is owned and traded by mutual funds, pension funds, institutional investors, and individual investors. It is one of the most closely watched technology stocks on Wall Street and on Main Street. *See, e.g.*, Bloomberg Quint, *Apple Could Hit $3 Trillion Market Valuation, Analysts Say* (Mar. 12, 2021) https://www.bloombergquint.com/onweb/apple-could-reach-a-3-trillion-market-valuation-analysts-say.

By this motion, Apple seeks to prevent any confusion on the part of the investing public about what certain trial evidence might (or might not) mean for Apple's financial performance and, thus, the trading value of its stock. Courts have recognized that "the potential to confuse and mislead the public" can "amount to compelling reasons to maintain the [business] information at issue under seal" where disclosure "may result in more harm than good." *Incretin-Based Therapies*, 2021 WL 873290, at *3;

Gibson, Dunn & Crutcher LLP

2
ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN CONFIDENTIAL MATERIAL AT TRIAL, 4:20-CV-05640-YGR

*see also United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (declining to release information that was "more likely to mislead than to inform the public").

One key policy of the federal securities laws is to ensure that investors have available to them accurate and consistent financial statements by which to assess share value and make investment decisions. Since the Sarbanes-Oxley Act, most public companies have been required to prepare financial statements audited by an independent accounting firm. Apple provides such statements, prepared using Generally Accepted Accounting Principles ("GAAP"), to its investors on a regular basis, consistent with its statutory and regulatory obligations. *See, e.g.*, Apple, *Investor Relations – SEC Filings*, https://investor.apple.com/sec-filings/default.aspx.

This orderly, regulated process of financial information disclosure could be disrupted by public disclosure of Mr. Barnes' opinions regarding the purported "profitability" of the App Store. As the Court observed at a recent hearing, the news media have been following this case extremely closely, and have at times released misleading accounts of proceedings *while those proceedings are still ongoing*. See Hr'g Tr. at 30:19–25 (Apr. 21, 2021). The disclosure of Mr. Barnes' seemingly concrete—but, as Apple will show at trial, deeply flawed—financial metrics about the App Store's profitability, based entirely on non-public information, may be misinterpreted by the media and the investing public. *Cf. ATLC, Ltd. v. Eastman Kodak Co.*, No. 06-CV-0416, 2007 WL 9677272, at *5 (M.D. Fl. June 26, 2007) ("Because . . . internal financial information is not prepared in accordance with [GAAP], nor accompanied by the required disclosures if it were to be made public, this information could mislead financial analysts and the investing public."). As a result, allowing him to testify in open court about his calculations could inject unaudited and non-public financial metrics into the total mix of information available to investors, analysts, and others seeking to learn about Apple and its business.

Dissemination of Mr. Barnes' calculations could confuse market participants. For instance, the public might attempt to compare Mr. Barnes' figures, which are based on internal, unaudited analyses prepared for different purposes, to Apple's audited financial reports—which are prepared on a company-wide basis in accordance with applicable accounting standards. This exercise could lead investors to make trading decisions based on this non-public information. It seems likely that

Gibson, Dunn & Crutcher LLP

3
ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN CONFIDENTIAL MATERIAL AT TRIAL, 4:20-CV-05640-YGR

disclosure of Mr. Barnes' calculations, and the associated testimony, could ultimately do significantly "more harm than good," *Incretin-Based Therapies*, 2021 WL 873290, at *3, to the integrity of Apple's stock price. As one court in this Circuit put it, closure of the courtroom is appropriate where disclosure of sensitive information "could have a devastating financial impact on the parties (and third parties) if revealed." *St. Alphonsus Med. Ctr. v. St. Luke's Health Sys., Ltd.*, 2013 WL 5883737, at *1 (D. Idaho Oct. 18, 2013).

Disclosure of the non-public financial information at issue could have these significant negative consequences despite not advancing in any meaningful way the *purpose* of public disclosure of trial proceedings—the promotion of the "public interest in understanding the judicial process." *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 659 (9th Cir. 2010). Mr. Barnes' calculations are relevant, if at all, to only a single sub-element of a subset of Epic's claims, and are not crucial to the public's understanding of this case or the issues it presents. Epic itself estimates that his direct examination will last only 10 minutes. His testimony in no way represents the "core of [Epic's] antitrust claims against" Apple. *Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. 16-CV-0300, 2017 WL 2806897, at *8 (C.D. Cal. Mar 30, 2017). There is "little value to the public in" making this testimony public. *Foran v. Ulthera, Inc.*, No. 20-CV-0267, 2020 WL 3047789, at *2 (E.D. Cal. June 8, 2020); *cf. Apple Inc. v. Samsung Elec. Co., Ltd.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013) (concluding that "the financial information at issue" was "not essential to the public's understanding of the" legal issues and that "the public therefore has minimal interest in this information").

In fact, as Apple has pointed out in its Proposed Findings of Fact and Conclusions of Law, data about profitability is of little importance, legally or economically, to the Court's evaluation of market power. *See, e.g.*, Dkt. 405 at 107–08, ¶¶ 484–92. Moreover, Mr. Barnes's calculations are simply wrong because the sources on which he relied only cover a fraction of the costs associated with running the App Store, particularly since there are substantial joint costs between Apple's hardware and software businesses. *Id.* at 107, ¶ 480. For example, Mr. Barnes "uses a revenue-based allocation of joint costs" in his calculations, which is a "very poor indicator of the extent to which [the App Store] benefits from various joint costs, such as research and development or marketing." *Id.* at 106, ¶ 479.3.

Gibson, Dunn & Crutcher LLP

4
ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN CONFIDENTIAL MATERIAL AT TRIAL, 4:20-CV-05640-YGR

Hence, the risks of disclosure far outweigh any competing interest in the public's learning this information.

Nor would Epic be prejudiced in any way by being directed not to refer to this information in its opening statement or in any demonstratives made available on the public record. The Court will still have full access to the information, and can consider it for whatever merit or lack thereof it might have.

In sum, the existence of a "general right to inspect and copy public records and documents" and observe public proceedings, *Nixon*, 435 U.S. at 597–98, does not mandate that this Court allow its courtroom to become a market mover. Preventing the public confusion, and potential economic harm, that could result from disclosure of Mr. Barnes' calculations is a compelling reason to close the courtroom during discussions of the App Store's profitability.

## Conclusion

For the foregoing reasons, the Court should close the courtroom during the presentation of any information about the App Store's "profitability" at trial. The Court should also direct Epic not to refer to this information in its opening statement or in any demonstratives made available on the public record, and order that any exhibits admitted into evidence on this subject be and remain redacted.

DATED:  April 28, 2021        By       */s/ Mark A. Perry*
                                       GIBSON, DUNN & CRUTCHER LLP
                                       Theodore J. Boutrous Jr.
                                       Richard J. Doren
                                       Daniel G. Swanson
                                       Mark A. Perry
                                       Veronica S. Lewis
                                       Cynthia E. Richman
                                       Jay P. Srinivasan
                                       Ethan D. Dettmer
                                       Rachel Brass

                                       *Attorneys for Apple Inc.*

Gibson, Dunn & Crutcher LLP

5
ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN CONFIDENTIAL MATERIAL AT TRIAL, 4:20-CV-05640-YGR