THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092; appearance *pro hac vice*)
  vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone:    214.698.3100
Facsimile:    214.571.2900

MARK A. PERRY, SBN 212532
  mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile:   202.467.0539

ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:   415.393.8306

Attorneys for Defendant, APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>         Plaintiff, Counter-defendant,<br><br>         v.<br><br>APPLE INC.,<br><br>         Defendant, Counterclaimant. | CASE No. 4:20-cv-05640-YGR-TSH<br><br>**DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY**<br><br>The Honorable Yvonne Gonzalez Rogers |

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-cv-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Apple Inc. ("Apple") respectfully objects to selected paragraphs of the written direct testimony of two of Epic Games, Inc.'s ("Epic") experts, economic expert Professor Susan Athey, and technical expert, Professor James Mickens, as indicated in the parties' stipulation, *see* Dkt. 510 at 3, and to the written direct testimony of three of Epic's rebuttal experts, economic experts Dr. Michael I Cragg and Dr. David S. Evans, and security expert Dr. Wenke Lee. The written testimony of each of these experts sets forth new material that was not disclosed in their reports, and/or relies on internal Apple documents that they expressly disclaimed reliance on at the time of their depositions. Apple objects to these previously undisclosed opinions—¶¶ 86–96 of Prof. Athey's written direct, ¶ 94 of Prof. Mickens' written direct, ¶¶ 26, 38–39, 55–56, 58–59, 66–68, 72, 97–104 of Dr. Cragg's written rebuttal, ¶¶ 39, 48–50 of Dr. Evans' written rebuttal, and ¶¶ 19, 76–77, 80, 103–04 of Dr. Lee's written rebuttal.

## I. PROCEDURAL BACKGROUND

Opening expert reports in this case were due on February 16, 2021; rebuttal reports were due on March 15, 2021. *See* Dkt. 116. Profs. Athey and Mickens submitted only opening reports. Dr. Evans and Dr. Lee submitted both opening and rebuttal reports, and Dr. Cragg submitted only a rebuttal report. Apple deposed Prof. Athey on April 3, Prof. Mickens on March 26, Dr. Evans on March 31 and April 1, Dr. Cragg on March 29 and April 14, and Dr. Lee on March 29. Pursuant to the Court's direction, Epic served the written direct testimony of its opening experts on April 20, 2021 and filed its final written direct testimony (including its rebuttal testimony) with the Court on April 27, 2021. Dkt. 389 at 3. These written direct examinations are to "become part of the trial record," in much the same way an oral direct examination would. *See* Dkt. 389 at 3. Apple did not stipulate to the admission of the paragraphs objected to here. Dkt. 510 at 3.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(B)(i) and (ii) require that an expert's report contain "a <u>complete</u> statement of all opinions the witness will express and the basis and reasons for them" and a list of all "the facts or data considered by the witness in forming" their opinions. The Court's standing order underscores that disclosure must be complete and timely: "All witnesses who will provide expert testimony under Federal Rule of Evidence 702, 703, or 705, whether retained or non-

Gibson, Dunn & Crutcher LLP

1
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-CV-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  retained, <u>must be disclosed</u> and must provide written reports in compliance with Federal Rule of Civil
2  Procedure 26(a)(2)(B).  <u>At the time of disclosure of a written report</u>, the disclosing party must
3  identify all written materials upon which the expert relies in that report and produce those materials if
4  they have not done so previously." Standing Order In Civil Cases ¶ 10 (emphasis added). In this
5  case, the parties expressly agreed that "no expert report, summary, or other expert evidence may be
6  supplemented, and no expert evidence may be offered or admitted that has not been timely and
7  properly disclosed, except by leave of Court." *Cameron v. Apple Inc.*, C.A. No. 19-CV-3074, Dkt.
8  87 ¶ 3; *see id.* at Dkt. 80 (applying stipulations from related cases to present action).

Full disclosure of expert opinions and the basis for them prevents a party from furnishing reports that are "of little help in preparing for a deposition." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. Otherwise, expert reports would be little more than a "sneak preview of a moving target." *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983 (N.D. Cal. 2014). Full disclosure of the bases for the expert's opinion also allows an "adversary with sufficient information to engage in meaningful cross-examination." *Pertile v. Gen. Motors, LLC*, No. 15-CV-0518, 2017 WL 3767780, at *7 (D. Colo. Aug. 31, 2017). Incomplete disclosure, by contrast, deprives the opposing party of an effective deposition and thus a meaningful cross. *See Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-CV-4405, 2019 WL 8508083, at *3 (N.D. Cal. May 3, 2019) ("by failing to disclose [the facts or data underlying his opinion] with his report, [expert] deprived Defendant of the opportunity to effectively depose him regarding the documents"); *Siburt v. U.S. Bank*, No. 10-CV-135, 2011 WL 3687614, at *5 (E.D. Wis. Aug. 23, 2011) (expert reports that fail to identify the facts or data relied upon in generating the report are "useless" in "preparing for cross-examination.").

Federal Rule of Civil Procedure 37 "gives teeth" to Rule 26's disclosure requirements by requiring that opinions not timely disclosed must be excluded at trial unless the party proffering the information shows that the failure was substantially justified or harmless. *Yeti by Molly, Ltd.* v. *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Exclusion is "automatic" and "self-executing," providing a "strong inducement for disclosure of material." *See id.*

### III. DISCUSSION

A.   **Prof. Susan Athey – ¶¶ 86–96**

Gibson, Dunn & Crutcher LLP

2
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-CV-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  Epic retained Prof. Athey as an expert to opine on issues related to the use and impact of
2  "economic middleware" on mobile platform competition. In her February 16 report, she did not rely
3  on any materials produced by Apple, except the publicly available developer agreement and App
4  Review Guidelines. At her deposition, Prof. Athey confirmed that she did not " ███████████
5  ███████████████████████████████." Perry Decl., Ex. 1 at 245:10–13 ("Athey
6  Dep.") (emphasis added).
7  ███████████████████████████████████████████████
8  ███████████████████████████████████████████████████
9  ███████████████████████████████████████████████
10 ████████████████████████ At her deposition, counsel for Epic repeatedly
11 instructed Prof. Athey not to answer questions relating to the nature and scope of that work, even
12 instructing the witness not to answer "yes" or "no" as to ████████████████████
13 ████████████ since August 2020—when Epic filed its Complaint related to the issues in this
14 case. Athey Dep. 55:22–58:6; 39:19–40:8 (████████████████████████████
15 ████. Epic thus knowingly retained an expert that had a past and ongoing working relationship with
16 a competitor of Apple, and knew its expert would not be able to view any Apple confidential
17 information produced in this litigation at the time of her report and her April 3, 2020, deposition.
18 Nevertheless, Prof. Athey's April 21, 2021 written direct testimony cites and relies upon a
19 cherry-picked selection of <u>eight</u> internal Apple documents. *See* Dkt. 508-4 ¶¶ 86–96 ("Athey Written
20 Direct").[1] Prof. Athey reviewed those documents after Apple withdrew its prior confidentiality
21 designations as part of the trial preparation process. *Id.* ¶ 86. None of these documents, of course,
22 were disclosed in the "Materials Relied Upon" list served with Prof. Athey's expert report, nor had
23 she reviewed them before her deposition. Prof. Athey now characterizes, quotes, and summarizes
24 these internal Apple emails, claiming that they "reinforce" her opinions, because, in her view, they
25 "establish Apple's keen awareness of the economic principles" in her report and "demonstrate
26 Apple's concerted efforts to take advantage of these market realities." Athey Written Direct ¶ 87.

---

[1] The documents are: PX114, PX115, PX405, PX407, PX416, PX882, PX886, and PX892.

3

DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-cv-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Gibson, Dunn &
Crutcher LLP

1  Apple asked Epic to withdraw this new material, but Epic refused, arguing that it was "proper" for
2  Prof. Athey to have reviewed "newly available evidence" and that her opinions have not changed.
3  Perry Decl., Ex. 2 at 1 (April 27, 2021, G. Bornstein Letter to M. Perry).

4         Contrary to Epic's stance, the addition of brand-new opinions and reliance on new documents
5  violates the disclosure requirements of Rules 26(a)(2)(B)(i) and (ii), the scheduling order, and the
6  Court's Standing Order in Civil Cases ¶ 10.  Dkt. 116 (scheduling order requiring service of expert
7  reports and completion of depositions before April); C.A. No. 19-CV-3074, Dkt. 87 at 3 (parties'
8  stipulation).  Epic mischaracterizes the documents Prof. Athey relies on as "newly available
9  evidence." *Id*.  These documents were produced before Prof. Athey served her report, and are in no
10  way "newly available" to Epic.  Even if they were, Epic would be in violation of the parties'
11  agreement that "no expert report, summary, or other expert evidence may be supplemented" and not
12  to proffer expert material that "has not been timely and properly disclosed, except by leave of Court."
13  Dkt. 87 at 3.  If Prof. Athey is taking into account "newly available evidence," supplementation is
14  <u>exactly</u> what she is attempting to do.  And Epic's argument that Prof. Athey does not "provide new
15  opinions" proves too much; if she were truly not adding anything new to her prior reports, then she
16  need not have included the eight additional documents or discussion of them at all.  Their mere
17  inclusion demonstrates that Prof. Athey's analysis <u>is</u> new; she offers analysis and interpretation of
18  documents she was previously silent on, regardless of her and Epic's insistence otherwise.  The
19  proper remedy is exclusion.  *Yeti by Molly*, 259 F.3d at 1106.

20         Epic cannot show that the late disclosure of Prof. Athey's new alleged bases and opinions is
21  either substantially justified or harmless.  Fed. R. Civ. P. 37(c); *Yeti by Molly*, 259 F.3d at 1106.  The
22  late disclosure prevented Apple from comprehensively deposing Prof. Athey on these new opinions
23  and their bases.  Apple had no opportunity to ask Prof. Athey about her (incorrect) understanding of
24  these documents; their relevance to her testimony; why these documents, but not others, informed her
25  opinion; whether she reviewed any other documents; whether other documents might have changed
26  her views; how she came to cite only the eight emails she chose to opine on; whether she asked for
27  materials she did not receive; whether any de-designated emails did <u>not</u> "confirm" her opinions; and
28  any number of other issues.  *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05-CV-9546, 2007 WL

Gibson, Dunn &
Crutcher LLP

4
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-CV-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

4157163, at *6 (S.D.N.Y. Nov. 16, 2007) (excluding portion of expert testimony relying on materials not disclosed in initial report because an expert may not add material late in the game to "produce a more thorough and stronger report than he initially produced"); *Chinitz v. Intero Real Estate Servs.*, No. 18-CV-5623, 2020 WL 7391299, at *3 (N.D. Cal. July 22, 2020) (excluding expert testimony setting forth "new opinions based on new documents and work performed after her deposition was completed"). Late disclosure of expert material, after the expert has already sat for deposition, is, by definition, not harmless. *See Ward v. Nat'l Ent. Collectibles Ass'n, Inc.*, No. 11-CV-6358, 2012 WL 12885073, at *5 (C.D. Cal. Oct. 29, 2012) (excluding expert evidence disclosed after deposition).

The failure to disclose is not substantially justified, either. Epic elected to retain an expert it knew was categorically disabled from viewing confidential Apple materials, based on her relationship with one of Apple's competitors. Epic never challenged Apple's designation of these documents as confidential, nor did it ask Apple to de-designate these documents in advance of the expert report deadline. Moreover, Epic requested and received a discovery schedule in which the close of fact discovery was the same day as the deadline for service of expert reports (February 15, 2021). *See* Dkt. 116; *see also* Dkt. 345 (extending deadline for initial reports by one day). Epic's schedule contemplated that there would be no break between fact and expert discovery. In short, Prof. Athey's inability to timely review Apple documents is entirely one of Epic's own making. *See Rojas v. Marko Zaninovich, Inc.*, No. 09-CV-705, 2011 WL 6671737, at *6 (E.D. Cal. Dec. 21, 2011) (finding no substantial justification where the plaintiff withheld relevant documents from expert).

**B.     Prof. Mickens - ¶ 94**

Prof. Mickens, too, has attempted to offer written direct testimony based on a document that Epic *admits* Prof. Mickens did not see prior to signing his opening (and only) expert report. In preparing his expert report, Prof. Mickens did not review a single document that was produced by Apple in this action. In his testimony, however, Prof. Mickens now cites to a document that Apple produced that Prof. Mickens did not previously rely upon (PX461). Epic admits that Prof. Mickens did not rely upon PX461, but claims that PX461 is similar—*though not identical*—to another document that Prof. Mickens did rely upon.

Gibson, Dunn & Crutcher LLP

5
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-CV-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Apple proposes a practical solution to this dispute.  Epic may revise Prof. Mickens's written direct to cite to the actual document that Prof. Mickens previously relied upon in preparing his expert report, and if necessary, Epic also may add to the Exhibit List the actual document that Prof. Mickens did rely upon.

C. **Dr. Cragg - ¶¶ 26, 38–39, 55–56, 58–59, 66–68, 72, 97–104**

Dr. Cragg has also attempted to offer a number of new opinions that are not disclosed in or supported by his rebuttal report.  *See* Dkt. 508-6.

*First*, at ¶ 26, Dr. Cragg introduces the argument that there is correlation between monthly game play and monthly revenue by platform, relying on a newly calculated correlation coefficient of .65.  This was not disclosed in his rebuttal report, nor was any assertion that revenue and game play by platform are correlated.

*Second*, at ¶¶ 38–39, Dr. Cragg provides a new response to Professor Hitt's analysis of the overlap of apps between iOS and PC.  However, Dr. Cragg did not provide any opinions regarding the overlap of apps between iOS and PC in his rebuttal report, and his calculation that 48% of top iOS apps are available on PC is not based on any opinion in his report.

*Third*, and most dramatically, almost the entirety of Dr. Cragg's Section IV.C contains new substitution analysis unsupported by his rebuttal report and largely responsive to Prof. Hitt's opening report filed in February:

At ¶¶ 55–56, Dr. Cragg argues that companion apps are not accurate proxies for identifying individuals who are playing games more frequently on consoles or PCs, responding to Prof. Hitt's rebuttal report.  Dr. Cragg never discussed these issues in his report.  Dr. Cragg also now criticizes Prof. Hitt's use of growth rates to compare the control and treatment group, proposing instead that measuring change in actual dollar spend would inform substitutional analysis. Neither this opinion, nor the facts on which it is based, is found in Dr. Cragg's rebuttal report.

At ¶¶ 58–59, Dr. Cragg argues that Prof. Hitt's Nintendo Switch analysis only shows the spending of the treatment group on iOS, and that it is necessary to also show that this group's spending moved to Switch in order to claim substitution.  However, this criticism is not found in Dr.

6
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-cv-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Gibson, Dunn & Crutcher LLP

Cragg's rebuttal report, even though Prof. Hitt's Switch analysis was summarized at ¶¶ 95–97 of his opening report

At ¶¶ 66–68, Dr. Cragg critiques the Spotify case study from Professor Hitt's rebuttal report (Hitt Rebuttal at ¶¶ 222–24).  Among other things, Dr. Cragg now states that Spotify is a non-game app and thus, if the game-app distribution market definition is used, the Spotify case study is irrelevant to any switching analysis.  ¶ 66; *see also* ¶¶ 67–68.  Dr. Cragg did not make these arguments in his rebuttal report.  Dr. Cragg also uses the Spotify data for the first time, even though it was not relied on or cited in his report, making various claims plainly unsupported by his rebuttal report. ¶¶ 69–71.

*Fourth*, at ¶ 72, Dr. Cragg challenges Professor Hitt's Netflix substitution analysis, another argument not raised in his rebuttal report

*Fifth*, at ¶¶ 97–104, Dr. Cragg provides four new analyses seeking to challenge Prof. Hitt's pricing and commission rate analysis.  For example, Dr. Cragg now claims Professor Hitt is incorrect to include free downloads as a 0% commission rate because it is mathematically incorrect and conflates a change in the type of transactions with the price of transactions. Dr. Cragg, however, failed to raise such an objection in his rebuttal report.  Dr. Cragg further presents several new figures not found in his rebuttal report purporting to show that Apple's per-transaction fee has increased continuously over time.

**D.   Dr. Evans - ¶¶ 39, 48–50**

Like his counterpart, Dr. Evans has used his rebuttal written direct testimony to offer new opinions.

*First*, at ¶ 39, Dr. Evans newly opines "that even if a relevant market for distribution of apps were limited to game apps," his conclusions regarding Apple's market power and conduct would not change.  Dkt. 508-9 ¶ 39.  Such an opinion is not disclosed in either his opening or rebuttal report. Indeed, Dr. Evans has consistently refused to entertain such a market definition.

*Second*, Dr. Evans challenges Prof. Hitt's approach to calculating the commission rate for free downloads, another opinion not stated in either his opening or rebuttal reports.  Dkt. 508-9 ¶¶ 48–49.  Next, Dr. Evans challenges a calculation he claims "appears for the first time in [Prof.

Gibson, Dunn & Crutcher LLP

7
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-CV-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Hitt's] direct testimony," *id.* ¶ 50, while also recognizing that the calculation came from Prof. Hitt's opening and rebuttal reports, *see id.* ¶ 49 n.61. Moreover, Dr. Evans offers a new opinion based on Dr. Cragg's new analysis described above, which purports to show that the App Store's commission rate has increased significantly over time. *Id.* ¶ 50. These opinions were not disclosed in Dr. Evans' reports and should not be accepted into evidence.

E.  **Dr. Lee - ¶¶ 19, 76–77, 80, 103–04**

Dr. Lee also has attempted to supplement his expert reports with new written direct testimony.

Dr. Lee offers several opinions that are completely new. At ¶ 19, Dr. Lee discusses iOS's threat model, but he did not address that concept in either of his reports. Dkt. 508-8 ¶ 19. Dr. Lee claims also that Dr. Rubin's reliance on statistics regarding Common Vulnerabilities and Exposures ("CVEs") is flawed, *id.* ¶ 76, but Dr. Lee did not discuss CVEs *at all* in his reports. In the next paragraph, Dr. Lee criticizes Dr. Rubin's comparison between Android and iOS, *id.* ¶ 77, but did not offer such criticism in his reports. Nor did Dr. Lee rebut in his reports Dr. Rubin's opinion that Epic's demanded changes to iOS would make iOS essentially the same as the Android platform in China, which suffers from a host of security problems, yet he offers that rebuttal in his direct testimony. *Id.* ¶ 80. And finally, in discussing the likelihood that third party app stores under Epic's proposed system would actually provide secure transaction platforms for users, Dr. Lee offers the new opinion that there is "empirical evidence suggests that third parties indeed have incentives to keep their stores secure," and that third-party stores might specialize in a narrower subgroup of apps. Dkt. 508-8 ¶¶ 103–04. Dr. Lee offered no such opinion in his rebuttal reports, and broadly addressed the issue only in his *opening* report. Epic has elected to call Dr. Lee only as a rebuttal witness as trial, and so Dr. Lee cannot rely on the opinions set forth in his opening expert report to form the basis for his testimony.

*       *       *

As the Court stated in the pretrial conference, "there is" to be "no surprise" at this trial. Hr'g Tr. 40:24 (Apr. 21, 2021). Yet that is exactly what Epic is trying to accomplish. Apple has declined to stipulate to the admission into evidence of these specific paragraphs of Epic's written direct expert testimony for the reasons set forth herein, and those objections should be sustained.

Gibson, Dunn & Crutcher LLP

8
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-cv-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Dated: April 28, 2021

                                                         GIBSON, DUNN & CRUTCHER LLP

                                     By:    */s/ Mark A. Perry*
                                                               Mark A. Perry

                                     Attorneys for Defendant Apple Inc.

Gibson, Dunn & Crutcher LLP

9
DEFENDANT APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY
4:20-cv-05640-YGR-TSH
REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED