1  Douglas J. Dixon, State Bar No. 275389
   ddixon@hueston.com
2  HUESTON HENNIGAN LLP
   620 Newport Center Drive, Suite 1300
3  Newport Beach, CA 92660
   Telephone:    (949) 229-8640
4  Facsimile:    (888) 775-0898

5  Attorneys for Third-Party Respondent
   Match Group, Inc.
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  EPIC GAMES, INC.,                           Case No. 4:20-cv-05640-YGR
                                                Case No. 4:11-cv-06714-YGR
12            Plaintiff and Counter-Defendant,  Case No. 4:19-cv-03074-YGR

13       vs.                                    **NON-PARTY MATCH GROUP, INC.'S
                                                ADMINISTRATIVE MOTION TO FILE
14  APPLE INC.,                                 DOCUMENTS CONDITIONALLY UNDER
                                                SEAL PURSUANT TO CIVIL LOCAL
15            Defendant and Counterclaimant.    RULE 79-5(e)**

16  IN RE APPLE iPHONE ANTITRUST
    LITIGATION
17

18  DONALD R. CAMERON, et al.,

             Plaintiffs,
19

20       vs.

21  APPLE INC.,

22            Defendant.

23

24

25

26

27

28

1    TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE THAT pursuant to Civil Local Rules 7-11 and 79-5, non-party

3    Match Group, Inc. ("Match") hereby brings this administrative motion to seal certain trial exhibits

4    and maintain their confidentiality designations throughout the trial.  Specially, Match requests

5    sealing of any portion of the trial transcript and any exhibit in the record (including any

6    demonstrative) that references Match's confidential and proprietary revenue and user information.

7    These trial exhibits satisfy the "compelling reasons" standard for sealing for the reasons described

8    below and in the supporting Declaration of Adrian Ong ("Ong Decl.") and as such, Match

9    respectfully requests that they be sealed and treated as highly confidential during the entity of the

10   trial proceedings.

11   Under the procedures set forth in the Local Rules and which the Court has established in

12   this case for the protection of confidential material, Match does not object to the unredacted

13   versions of these documents being used during the trial proceedings, assuming they are otherwise

14   admissible, so long as the public monitors or other displays are turned off while they are being

15   displayed, the redacted information sought to be sealed is not revealed during the course of

16   questioning, and only redacted versions of the exhibits are admitted into the public record.

17   Pursuant to Civil Local Rule 7-11, Match's counsel met and conferred with counsel for

18   Apple and Epic regarding this motion.  Counsel for both Apple and Epic have reported that they

19   take no position on this motion and will submit objections to Match's proposed sealing, if any, on

20   April 30.  *See* Declaration of Douglas J. Dixon ("Dixon Decl.," ¶¶ 2–3.)

21   Match requests to seal the following materials and for those materials to remain highly

22   confidential at the trial:

23

| Exhibit | Document | Reason(s) for Highly Confidential Designation |
|---------|----------|-----------------------------------------------|
| DX-4139 | MATCH-00000001–MATCH00000007 | This document is a spreadsheet titled "Match," with tabs titled "Downloads," "Revenue," "Unique Users," and "iOS User Digital Products." Match does not publicly disclose the percentage of app downloads on particular platforms, the amount of revenue that originates from particular platforms, the number of unique users who access the app on particular platforms, or the number of unique users who purchased digital products on particular |

| | | | |
|---|---|---|---|
| | | | platforms. Match considers that datapoint to be confidential and proprietary business information, which would give Match's competitors insights into the business. If a competitor gained access to this information, that competitor could the information to reallocate marketing spend or to target markets where it perceives Match's penetration to be lower. Releasing this information publicly could thus put Match at a competitive disadvantage relative to rival dating services that are able to keep this information private. |
| | DX-4537 | MATCH-00000038 (last row of chart only) | This document is a chart titled "Tinder – Information Requests." The last row of the chart shows the number of "Monthly active users (AVG US December 2020)." Tinder has never publicly disclosed how many monthly active users ("MAUs") it has. Match considers these datapoints to be extremely confidential and proprietary business information, which would give Tinder's competitors insights into the business. Tinder is a dating app, and one of the key competitive differentiators among dating apps is the relative size of their networks—having a larger dating pool attracts new users to the app because they perceive a greater likelihood of finding a match, which in turn grows the dating pool. The size of a dating apps network (as measured by MAUs) on different platforms and in different markets are competitively significant datapoints because with that information, rival dating apps could better decide how to compete against the app which has its data disclosed. For example, if a rival app determined Tinder's dating pool was shallower on a particular platform, then the rival app could then reallocate spending to that platform to gain a competitive advantage. The competitive significance of the MAU datapoint is one of the reasons that dating sites in particular—and unlike apps in many other categories—very rarely publish their MAUs, and then generally at only a very high level. |
| | PX-0864 | APL_APPSTORE_06147190-93, APL_APPSTORE_ 06147191 (portion of second page only) | This document is an email chain in which Match and Apple discuss Match's revenue on iOS and Apple's effect on App Store discovery. Match considers these datapoints to be confidential and proprietary business information, which would give Tinder's competitors insights into the business that could place them at a competitive advantage. Once again, if a competitor gained access to this information, |

NON-PARTY MATCH'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF TRIAL EXHIBITS

5966135

| | | |
|---|---|---|
| | | that competitor could the information to reallocate marketing spend or to target markets where it perceives Tinder's penetration to be lower, placing Tinder at a competitive disadvantage. |
| PX-0865 | APL_APPSTORE_06090236 (portion of first page only) | This document is an email thread between Match and Apple that includes the same Match email contained in PX-0864 above. For the reasons discussed above, Match considers the datapoints in that email to be confidential and proprietary business information, which would give Tinder's competitors insights into the business that could place them at a competitive advantage. |
| PX-2122 | APL_APPSTORE_06010126 (portion of first page only) | This document is an email thread between Match and Apple that includes the same Match email contained in PX-0864 above. For the reasons discussed above, Match considers the datapoints in that email to be confidential and proprietary business information, which would give Tinder's competitors insights into the business that could place them at a competitive advantage. |
| PX-2237 | APL_APPSTORE_09522297 (portions of fourth, fifth, and sixth pages only) | This document is an email thread between Match and Apple that includes the same Match email contained in PX-0864 above. For the reasons discussed above, Match considers the datapoints in that email to be confidential and proprietary business information, which would give Tinder's competitors insights into the business that could place them at a competitive advantage. |
| PX-2271 | APL_APPSTORE_09682270, APL_APPSTORE_09682273 (portion of fourth page only) | This document is an email thread between Match and Apple that includes the same Match email contained in PX-0864 above. For the reasons discussed above, Match considers the datapoints in that email to be confidential and proprietary business information, which would give Tinder's competitors insights into the business that could place them at a competitive advantage. |
| PX-0863 | MATCH-00000039 | This document is a spreadsheet titled "Tinder," and shows the number of downloads of Tinder on iOS and the Google Play Store from 2012 to 2020. Match considers these datapoints to be confidential and proprietary business information, which would give Tinder's competitors insights into the business that could place them at a competitive advantage. |

Civil Local Rule 79-5(b) allows sealing any document that is "privileged, protectable as a trade secret or otherwise entitled to protection under the law." For documents introduced in

1   connection with dispositive proceedings, "compelling reasons" must justify sealing court records.

2   *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  The Ninth Circuit

3   and Supreme Court have long recognized that trade secrets and other information "that might harm

4   a litigant's competitive standing" satisfy the compelling reasons standard.  *In re Elec. Arts, Inc.*,

5   298 F. App'x 568, 569 (9th Cir. 2008) (unpublished) (quoting *Nixon v. Warner Commc'ns, Inc.*,

6   435 U.S. 589, 598 (1978) (("[C]ourts have refused to permit their files to serve as . . . sources of

7   business information that might harm a litigant's competitive standing")); *see also Ctr. v. Auto*

8   *Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (same).

9         The information Match seeks to seal constitutes "detailed financial information" that courts

10   have recognized parties "have an interest in keeping . . . secret."  *Apple Inc. v. Samsung Elec. Co.,*

11   *Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013).  In *Apple*, for example, the Federal Circuit (applying

12   Ninth Circuit law) reversed the district court's denial of a motion to seal because the parties would

13   "suffer competitive harm" if their "product-specific financial information" were publicized,

14   including because counterparties could gain an "advantage in contract negotiations."  *Id*.  The

15   information contained in the exhibits above would allow Match's competitors and counterparties to

16   understand granular details and datapoints about how many active users on Match's iOS Tinder

17   product purchase subscriptions and other in-app purchases, and would accordingly harm Match's

18   competitive standing.  For example, if a rival app determined Tinder's dating pool was shallower

19   on a particular platform, then the rival app could then reallocate spending to that platform to gain a

20   competitive advantage.  Match has "narrowly tailored" its request to "only redact the portions of

21   filings and the precise exhibits" that implicate "confidential business information," and the

22   concurrently filed Ong Declaration explains that this information is "not available to the public."

23   *In re Qualcomm Litig.*, No. 3:17-cv-01018-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. 2017).

24   Match accordingly asks that these materials be maintained under seal and as highly confidential if

25   they are introduced at trial.

26         Granting Match's motion to seal is further warranted because Match is a non-party to this

27   action.  Courts are more protective of the confidential business information of non-parties who

28   have not affirmatively or voluntarily invoked the Court's jurisdiction and whose rights and

1  liabilities are not at issue in the underlying action.  *See, e.g.*, *France Telecom S.A. v. Marvell*

2  *Semiconductor Inc.*, No. 12-cv-04967-WHO, 2013 WL 4965995, at *3–4 (N.D. Cal. Oct. 3, 2014)

3  (granting motion to seal third-party confidential business information); *Hunt v. Cont'l Cas. Co.*,

4  No. 13-cv-05966-HSG, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (sealing information

5  because "important privacy concerns of nonparties," who were "not relevant to the disposition of

6  [the] case," outweighed public interest).

7

8          DATED:  April 29, 2021.                    Respectfully submitted,

9                                                     HUESTON HENNIGAN LLP

10                                                     */s/ Douglas J. Dixon*
                                                       DOUGLAS J. DIXON

11

12                                                     Attorneys for Third-Party Respondent
                                                       MATCH GROUP, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28