1 | Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
2 | HUESTON HENNIGAN LLP
620 Newport Center Drive, Suite 1300
3 | Newport Beach, CA 92660
Telephone:     (949) 229-8640
4 | Facsimile:     (888) 775-0898

5 | Attorney for Third-Party Respondent
Match Group, Inc.
6

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10

11 | EPIC GAMES, INC.,

| Case No. 4:20-cv-05640-YGR
12 | Plaintiff and Counter-Defendant, | Case No. 4:11-cv-06714-YGR
| Case No. 4:19-cv-03074-YGR
13 | vs.

| **DECLARATION OF ADRIAN ONG
14 | APPLE INC., | PURSUANT TO CIVIL LOCAL RULE 79-
| 5(e)(1) AND IN RESPONSE TO EPIC
15 | Defendant and Counterclaimant. | GAME'S INC.'S ADMINISTRATIVE
| MOTION TO FILE UNDER SEAL
16 | | DOCUMENTS AT TRIAL PURSUANT TO
| CIVIL LOCAL RULE 79-5(e)**
17 | IN RE APPLE iPHONE ANTITRUST
LITIGATION
18

19 | DONALD R. CAMERON, et al.,

20 | Plaintiffs,

21 | vs.

22 | APPLE INC.,

23 | Defendant.

24

25

26

27

28

ONG DECLARATION IN SUPPORT OF TO MOTION TO SEAL

**DECLARATION OF ADRIAN ONG**

I, Adrian Ong, declare as follows:

1.      I am Senior Vice President of Operations at Match Group, LLC, which is a subsidiary of Match Group, Inc. In my position, I work closely with the Tinder brand, which is a division of Match Group, LLC. Match Group, Inc., Match Group, LLC, and Tinder are non-parties in the three above-captioned actions, and for the purposes of this declaration, I shall refer to them collectively as "Match."

2.      I have been employed by Match since 2011. Through the course of my employment with Match, I have become familiar with Match's treatment of proprietary business information, such as that discussed in this declaration. I make this declaration in response to Epic's Administrative Motion to Seal Documents at Trial Pursuant to Civil Local Rule 79-5(E) ("Motion to Seal"). I know the facts stated herein based on my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

3.      I have reviewed Epic's Motion to Seal and the attached Deposition Designations. Specified portions of my deposition should remain under seal for the reasons stated in this declaration.

4.      I was deposed in in the above-captioned actions on February 24, 2021. I understand that, during my deposition, counsel for Match requested that my deposition testimony be designated Highly Confidential pursuant to protective orders entered in the above-captioned actions.

5.      At the outset, I would like to note that on April 12, 2021, I filed a declaration in this Court in response to Epic's Administrative Motion to File Under Seal Portions of Proposed Findings of Fact and Conclusions of Law ("PFFCL"). In paragraph 10 of that declaration, I stated that my deposition testimony regarding Match's efforts to protect its users and to ensure the safety and security of its apps should be sealed. Subsequent to my declaration, on April 21, 2021, Match's Chief Legal Officer, Jared Sine, testified about Apple's in-app payment policies and practices in the Senate Judiciary Subcommittee Hearing on Competition in App Stores.[1] During that testimony, Mr. Sine

_____

[1] C-Span, "Senate Judiciary Subcommittee Hearing on Competition in App Stores," April 21, 2021,
(Continued...)

DocuSign Envelope ID: 88066B52-6AD3-48BE-B42A-0D45176D55C3

discussed several aspects of Match's security efforts, including topics that I had discussed during my deposition and requested to be sealed. Now that the information regarding Match's security efforts has been made public, I no longer believe that the information regarding my deposition testimony in paragraphs 328 and 329 of Epic's PFFCL is highly confidential or should be sealed.

6.      On page 28, lines 11 and 15 of the Deposition Designations, I identify the specific percentages of Tinder revenue in 2020 that came from the web version of Tinder and the mobile app version of Tinder, respectively. Match considers the specific percentages identified to be confidential and proprietary business information, because third-party knowledge of that data might be used against Tinder in business negotiations with the platforms on which Tinder appears. This information would also give Tinder's competitors insights into Tinder's business. Particularly, if a competitor gained access to this information, that competitor could use the information to reallocate marketing spend or to target markets where it perceives Match's penetration to be lower. Releasing this information publicly could thus put Match at a competitive disadvantage relative to rival dating services that are able to keep this information private.

7.      On page 45, lines 15 and 16, and page 46, lines 1 and 2 of the Deposition Designations, I identify what percentage of users opt to use Tinder's payment system, as well as the amount of Match's revenue that is attributable to Google Play and to Tinder's payment system, respectively. Match considers these datapoints to be confidential and proprietary business information, which would give Tinder's competitors insights into Tinder's business that could place them at a competitive advantage. Particularly, disclosing this information to third parties—primarily to other app platforms such as Google's Play Store, but also Tinder's competitors—could be used against Tinder in its future business negotiations with those third parties. Further, releasing these numbers when Tinder's competitors do not would allow those competitors to selectively compete against Tinder where it is most competitively vulnerable, placing Tinder at a competitive disadvantage.

---

available online at https://www.c-span.org/video/?511099-1/senate-judiciary-subcommittee-hearing-competition-app-stores (last accessed April 29, 2021).

ONG DECLARATION IN SUPPORT OF MOTION TO SEAL

8.      On page 48, lines 21 through 25, page 49, lines 1 through 25, page 50, lines 1 through 25, and page 51, lines 1 through 6, and on page 162, lines 5 through 22 of the Deposition Designations, I describe Match's internal mechanism for deciding if a refund should be offered to a customer and if so, for how much. Match considers this information to be confidential and proprietary business information, which would give Tinder's competitors insights into Tinder's business that could place them at a competitive advantage. The specifics of Match's refund policy reflect a critical tool to maintaining customer satisfaction and the intricacy and adaptability of its policy is a competitive differentiator that allows Match to retain customers. If competitors knew of the specifics of this policy while Match does not know theirs, competitors would be at a competitive advantage for customer retention and satisfaction because they could ensure a narrowly better refund policy in most instances. Further publicizing the generosity of the case-by-case refund policy could encourage a substantial increase in improper requests, which has the potential to overwhelm the ability of Match to make decisions about those deserving refunds. This again would place Match at a competitive disadvantage.

9.      On page 56, lines 10, 16, and 17 of the Deposition Designations, I identify the percentage of users driven to Match's products by the Apple App Store versus the percentage of users making specific searches, such as typing in "Tinder," in the Apple App Store. Match considers these datapoints to be confidential and proprietary business information, which would give Tinder's competitors insights into Tinder's business that could place them at a competitive advantage.  The disclosure of these datapoints to third parties—particularly the platforms, but also Tinder's competitors—could be used against Tinder in its future business negotiations with those third parties. Particularly, search terms users use to find Tinder's app in the Apple App Store could be used by Tinder's competitors to refine their Apple App Store advertising strategies. Specifically, rivals could use this information to determine how much they are willing to bid on particular keywords in the Apple App Store.

10.      On page 58, line 25, page 59, lines 2, 6, and 13, and page 152, lines 11 and 16 of the Deposition Designations, I refer to a document that identifies what percentage of users are driven to Match's products by the Apple App Store versus users making specific searches, such as typing in

ONG DECLARATION IN SUPPORT OF MOTION TO SEAL

"Tinder" or "Match," in the Apple App Store. Match considers these datapoints to be confidential and proprietary business information, which would give Tinder's competitors insights into Tinder's business that could place them at a competitive advantage.   The disclosure of these datapoints to third parties—particularly the platforms, but also Tinder's competitors—could be used against Tinder in its future business negotiations with those third parties. Particularly, search terms users use to find Tinder's app in the App Store could be used by Tinder's competitors to refine their Apple App Store advertising strategies. Specifically, rivals could use this information to determine how much they are willing to bid on particular keywords in the Apple App Store.

11.     On page 69, line 19 of the Deposition Designations, I identify what percentage of Tinder's revenue was attributable to iOS. Match does not publicly disclose the amount of revenue that originates from particular platforms. Match considers this datapoint to be confidential and proprietary business information, which would give Tinder's competitors insights into Tinder's business that could place them at a competitive advantage.   Particularly, the disclosure of this datapoint to third parties—particularly the platforms, but also Tinder's competitors—could be used against Tinder in its future business negotiations with those third parties. If a competitor gained access to this information, that competitor could use the information to reallocate marketing spend or to target markets where it perceives Match's penetration to be lower. Releasing this information publicly could thus put Match at a competitive disadvantage relative to rival dating services that are able to keep this information private.

12.     I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. This declaration was executed this 29th day of April 2021, in Dallas, Texas.



DocuSigned by:

EB8453A91E5D48C...

ADRIAN ONG

ONG DECLARATION IN SUPPORT OF MOTION TO SEAL