PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
KATHERINE B. FORREST (*pro hac vice*)
kforrest@cravath.com
GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    *Plaintiff, Counter-defendant*,<br><br>vs.<br><br>APPLE INC.,<br><br>    *Defendant, Counterclaimant.* | Case No. 4:20-CV-05640-YGR-TSH<br><br>**EPIC GAMES, INC.'S STATEMENT RESPONDING TO PRETRIAL ORDER NO. 6 & APPLE INC.'S OBJECTIONS TO EXPERT TESTIMONY**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>Trial: May 3, 2021 |

Epic Games, Inc. ("Epic") respectfully submits this Statement in response to Pretrial Order No. 6 (ECF No. 521) and Apple Inc.'s ("Apple") Objections to Expert Testimony (ECF No. 518).

The chart below lists each of the paragraphs referenced in Pretrial Order No. 6 and Apple's Objections to Expert Testimony and, where applicable, "the exact paragraph in the disclosed reports of each expert . . . that proves that the opinion was, in fact, disclosed."  (ECF No. 521.)

| Expert | Paragraph in Expert Written Testimony to which Apple Objects | Expert Report and Paragraph Disclosing Opinion |
|---|---|---|
| Prof. Athey | ¶ 86 | None (N/A) |
| | ¶ 87 | None (N/A) |
| | ¶¶ 88-92 | Athey Opening Report ¶¶ 61-64 |
| | ¶¶ 93-96 | Athey Opening Report ¶¶ 103-111 |
| | ¶ 96 | None (N/A) |
| Prof. Mickens | ¶ 94 | None (N/A) |
| Dr. Cragg | ¶ 26 | Cragg Rebuttal Report ¶ 35, Table 2 |
| | ¶¶ 38-39 | None (responsive to Hitt Rebuttal Report ¶ 140; Hitt Direct Testimony ¶ 31) |
| | ¶¶ 55-56 | None (responsive to Hitt Rebuttal Report ¶ 219; Hitt Direct Testimony ¶¶ 83-85) |
| | ¶¶ 58-59 | Cragg Rebuttal Report ¶ 31, Figure 1, and Figure 2 |
| | ¶¶ 66-68 | None (responsive to Hitt Rebuttal Report ¶ 218 *et seq.*; Hit Direct Testimony ¶ 102-104) |
| | ¶ 72 | None (responsive to Hitt Direct Testimony ¶ 105) |
| | ¶¶ 97-102 | None (responsive to Hitt Direct Testimony, Figures 40-42) |
| | ¶ 103 | None (responsive to Cragg Direct Testimony, Exhibit 55) |
| | ¶ 104 | Cragg Rebuttal Report ¶ 149 |
| Dr. Evans | ¶ 39 | Evans Rebuttal Report ¶ 129 |
| | ¶¶ 48-50 | None (Hitt Rebuttal Report Exhibits 47 and 62; Hitt Written Testimony ¶¶ 172-173, 179-180, 217; Figures 39 and 51) |
| Dr. Lee | ¶ 19 | Lee Rebuttal Report ¶ 48-49 |
| | ¶¶ 76-77 | None (Rubin Rebuttal Report ¶¶ 260-63; Rubin Direct Testimony ¶¶ 44-47) |
| | ¶ 80 | None (Rubin Rebuttal Report ¶¶ 332-35; Rubin Direct Testimony ¶¶ 100-04) |
| | ¶ 103 | None (Rubin Rebuttal Report ¶¶ 248-53; Rubin Direct Testimony ¶¶ 80-86) |
| | ¶ 104 | Lee Rebuttal Report ¶¶ 42-43 |

1   Epic does not seek the sealing of any materials subject to Apple's provisional motion to
2   seal (ECF No. 517).
3   Epic responds to Apple's Objections to Expert Testimony as follows:

4   **I.   LEGAL STANDARD**

5   Fed. R. Civ. P. 26(a)(2)(B)(i) requires that an expert's report contain "a complete statement
6   of all opinions the witness will express and the basis and reasons for them".  Nonetheless, an
7   expert may comment on criticisms of their opinions by the opposing party's expert—such
8   comments do not amount to a "new opinion".  *See Layne Christensen Co. v. Bro-Tech Corp.*, 836
9   F. Supp. 2d 1203, 1211–12 (D. Kan. 2011) (holding that "as long as [an expert] does not offer any
10  new opinions separate from those offered in his authorized report, [the expert] will of course be
11  permitted at trial to comment on criticisms by [opposing party's expert] of [the expert's]
12  opinions").  Furthermore, "[w]hile Rule 26 demands that expert disclosures be 'complete,' there is
13  no requirement that such disclosures cover any and every objection or criticism of which an
14  opposing party might conceivably complain . . . ." *Bryant v. Wyeth*, 2012 WL 11924298, at *3
15  (W.D. Wash. 2012) (finding that statements presented to respond to an opposing expert's
16  *criticisms* are different from new opinions that result in "sandbag[ging] one's opponent").

17  **II.   DISCUSSION**

18  **A.   Prof. Athey - ¶¶ 86-96**

19  Apple's claim that Professor Athey "add[ed] brand-new opinions" to her written testimony
20  is not correct.  (ECF No. 518 at 4.)  On the contrary, Professor Athey explicitly declined to offer
21  *any* new opinions, and simply noted a handful of newly available documents that confirm the
22  opinions that she previously and timely disclosed.
23  The disclosure rules in Federal Rule of Civil Procedure 26(a)(2) do not prohibit an expert
24  witness from addressing newly-available evidence that confirm her fully-disclosed opinions.
25  *Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.*, 971 F. Supp. 2d 896, 903 (E.D. Mo.
26  2013) (finding declarations submitted after the close of discovery admissible because "they merely
27  expand upon or clarify initial opinions that the defendants had an opportunity to test during
28

discovery. They do not express new or contradictory opinions that might prejudice the defendants."); *Bryant*, 2012 WL 11924298, at *3 (finding supplemental declarations admissible because they "contain no new material information and present no opinions that were not provided to Defendants during the course of discovery"). Here, the evidence to which Professor Athey cited, and to which Apple objects, was not available to her until after she had submitted her report and been deposed. Her written testimony made clear that "[w]hen formulating [her] opinions, [she] could not consult confidential Apple documents, pursuant to the Protective Order in this matter". (ECF No. 508-4 at ¶ 86.) Professor Athey could only review these documents after Apple withdrew its confidentiality designations over them. (*Id.*)

Once the documents became available for her review, Professor Athey reviewed them. As her testimony makes clear, Professor Athey "did not rely on these documents to form [her] opinions" (ECF No. 508-4 at ¶ 87), which were timely disclosed in her expert report in February. Nor did the documents change her opinions in any way—they were strictly confirmatory of what she had already testified. (*Id.*) Apple had the full opportunity to test Professor Athey's opinions at deposition and through rebuttal reports from its own experts. Her written testimony noting the consistency of newly available documents with those previously disclosed opinions does not amount to "add[ing] brand-new opinions".

For these reasons, Professor Athey's reference to of these documents in her written testimony do not run afoul of Rule 26(a)(2)(B)(i).

B.   Prof. Mickens - ¶ 94

Apple claims that Professor Mickens cites to a document from Apple's production that he previously did not rely upon in his opening expert report. (ECF No. 518 at 5.) This is misleading.

Professor Mickens's February 16, 2021 expert report originally cited a public version of Apple's Platform Security white paper from Spring of 2020 for the language that currently appears in ¶ 94 of his written direct testimony. This document appeared in Appendix A ("Materials Relied Upon") of Professor Mickens's expert report. (*See* PX2888.64.) Apple subsequently withdrew its confidentiality designation for an earlier, non-public version the same Platform Security white

paper. (PX461.) Epic had marked this earlier, non-public version of the document as an intended trial exhibit, used it in fact depositions and cited it in Epic's Proposed Findings of Fact. For purposes of convenience and efficiency, ¶ 94 of Professor Mickens's written testimony cited to the intended trial exhibit version of the document rather than to the public version of the same document that had previously appeared in Professor Mickens's expert report. The information cited by Professor Mickens from that document is precisely the same in both the public version of the document that he cited in his expert report and in the newly non-confidential version cited in his direct testimony.

Because the information Professor Mickens references is the same in both documents, there is no new subject matter disclosed by Professor Mickens, and there is no prejudice to Apple from the substitution of one document for another. Nonetheless, if the Court were to agree with Apple's position on this matter, Epic respectfully requests that the Court allow Epic to re-file Professor Mickens's written direct testimony with an updated ¶ 94 that cites to the public version of the white paper as the source for the same quote that is currently cited from PX461 and include the public version as an intended trial exhibit.

### C. Dr. Cragg - ¶¶ 26, 38-39, 55-56, 58-59, 66-68, 72, 97-104

Apple objects to ¶¶ 26, 38-39, 55-56, 58-59, 66-68, 72, and 97-104 of Dr. Michael I. Cragg's written direct on the basis that they "attempt[] to offer a number of new opinions that are not disclosed in or supported by his rebuttal report." (ECF No. 518 at 6.) Apple's arguments are incorrect.

Expert reports are disclosure mechanisms intended to eliminate surprise at trial. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983 (N.D. Cal. 2014). As explained below, most of Apple's objections are directed to Dr. Cragg's brief responses to new analyses that Apple's expert, Prof. Lorin Hitt, presented for the first time in his own rebuttal report, to which Epic had no opportunity to respond in a rebuttal opinion. These new analyses from Prof. Hitt, offered purportedly in rebuttal, were largely an effort to buttress his own *affirmative* opinions rather than a response to any opinion from Epic's experts. Apple now asks the Court to strike Dr. Cragg's

responses, even though they do not contain any new data or elaborate analyses, but instead point out specific errors in Prof. Hitt's analysis or correct the presentation of their results where they are misleading. These are not new "opinions" from Dr. Cragg, but criticisms of specific uses of data that Prof. Hitt first deployed in rebuttal. It would be prejudicial to Epic if Dr. Cragg were not allowed to react to these new analyses at all. Therefore, with the one exception noted below, Epic requests that Apple's objections be denied.

- ¶ 26: Although Epic does not believe this paragraph constitutes an improper new opinion, Epic does not oppose the objection to the extent it is limited to Dr. Cragg's discussion of correlation coefficients. The rest of ¶ 26 simply explains the data in Figure 1, which was disclosed as Table 2 in Dr. Cragg's rebuttal report.

- ¶¶ 38-39: Prof. Hitt presented for the first time in his rebuttal report the claim that 88% of the top 25 iOS apps are also available on PCs, citing certain exhibits. (Hitt Rebuttal Report ¶ 140, Exhibit 19.) Prof. Hitt claimed in his rebuttal report that he presented this number "to respond to Dr. Evans' conclusions regarding lack of substitutability". (*Id.* at ¶ 139.) Prof. Hitt incorporated that analysis, together with a new chart, in his written direct testimony. (ECF No. 489-7 ¶ 31, Figure 3.) In his rebuttal report, Dr. Cragg simply examined the backup evidence relied on by Prof. Hitt and noted where Prof. Hitt miscalculated or misrepresented the data. Dr. Cragg relied exclusively on the backup materials provided by Prof. Hitt himself, and performed no calculation other than a simple percentage share. (ECF No. 508-6 ¶¶ 38-39.) Under these circumstances, there is no new opinion and thus no disclosure issue.

- ¶¶ 55-56: Prof. Hitt presented for the first time in his rebuttal report his "companion app" analysis. (Hitt Rebuttal Report ¶ 218 *et seq.*) Prof. Hitt claimed that he presented this analysis "in order to address Professor Athey's

claims of complementarity, and to understand substitutability for the relevant market of game transactions". (*Id.* ¶ 218.) The analysis assumes that users who download certain apps have recently acquired a console or PC and then presents results concerning average user growth after downloading those apps. (*Id.* ¶ 219.) Dr. Cragg, in the paragraphs Apple seeks to excise, briefly notes the shortcomings of Prof. Hitt's assumption and notes that he has presented his user growth results in a misleading way. Dr. Cragg simply uses Prof. Hitt's same data to present the results using a more appropriate metric. (ECF No. 508-6 ¶¶ 55-56.) There is no surprise here.

- **¶¶ 58-59**: Apple argues that a portion of Dr. Cragg's Nintendo Switch analysis should be struck. As to ¶ 58, it simply presents Prof. Hitt's claims and contains no opinions or analysis by Dr. Cragg. As to ¶ 59, in his opening expert report, Prof. Hitt performed a single analysis regarding usage and spending patterns following the launch of Fortnite on the Nintendo Switch, arguing that the evidence is "consistent with consumers switching . . . from iOS devices to the Nintendo Switch". (Hitt Opening Report ¶ 97.) Dr. Cragg addressed this analysis in his rebuttal expert report, showing that, when corrected, Prof. Hitt's analysis shows that "iOS players *do not* substitute their time away from iOS and towards Switch". (Cragg Rebuttal Report ¶ 31.) In his rebuttal expert report (Appendix G), and further emphasized in his written direct, Prof. Hitt adds a *second* Nintendo Switch analysis and new chart that he states "shows that existing iOS Fortnite users substituted transactions between iOS and the Nintendo Switch". (ECF No. 489-7 ¶ 90.) Dr. Cragg's written direct simply responds by making the same point as he did in his rebuttal expert report: that Prof. Hitt's analysis fails to show actual substitution. There is nothing improper or surprising about Dr. Cragg pointing out the same deficiency in Prof. Hitt's two related Nintendo Switch analyses.

- **¶¶ 66-68**: In his rebuttal report, following up on his "companion app" analysis noted above, Prof. Hitt provided a new analysis concerning the impact of Spotify's decision not to offer subscriptions on iOS. Prof. Hitt did not tie this new analysis to any specific opinion of any Epic expert (beyond his general comment noted above concerning Prof. Athey and "to understand substitutability"). (Hitt Rebuttal Report ¶ 218 *et seq.*) In ¶¶ 66-68, Dr. Cragg simply explains why Prof. Hitt's reliance on Spotify—a non-game app with unique features—is an improper basis to show the substitution of game transactions that is the focus of Prof. Hitt's testimony. Nothing about that is surprising or prejudicial, but Epic would be prejudiced if it were unable to address Prof. Hitt's new analysis.[1]

- **¶ 72**: Apple objects to Dr. Cragg challenging Prof. Hitt's Netflix subscription analysis. But it was not until Prof. Hitt's written direct that he first made the argument that Netflix provides evidence of substitution relevant to market definition. (ECF No. 508-6 ¶ 105). In his rebuttal report, Prof. Hitt pointed to Netflix only as an example of an app that sells subscriptions outside of iOS, without any specific claim about substitution. (Hitt Rebuttal Report ¶ 305.) ¶ 72 of Dr. Cragg's written testimony is limited to a single paragraph showing that Prof. Hitt performed no analysis on Netflix that could show "any evidence of substitution". (ECF No. 508-6 at ¶ 72.) That is not objectionable.

- **¶¶ 97-104**: Apple seeks to exclude Dr. Cragg's response to Prof. Hitt's claim of declining commissions. But Apple lumps together disparate portions of Dr. Cragg's testimony that should be considered separately. Specifically, ¶ 103 and

---

[1] In the reasons for its objections, Apple also mentions ¶¶69-71, in which Dr. Cragg re-charts Prof. Hitt's data to show separately iOS and Android growth in user Spotify premium purchases, instead of aggregating the two to obfuscate the effect on iOS. Apple did not identify these paragraphs but has instead stipulated to their admission (ECF No. 519), and any objection to them is therefore waived.

Figure 24 address a new analysis performed by Prof. Hitt for the first time in his written direct testimony—shown in Figure 55, which claims an average commission rate for all games transactions (combining initial downloads and in-app purchases) of 8.1% in 2019 (a rate never disclosed in any of Prof. Hitt's expert reports). Responding to this new analysis, Dr. Cragg simply uses Prof. Hitt's own data to show that, over time, that rate has nearly doubled. As for ¶ 104, it presents Dr. Cragg's analysis of Apple's share of app store revenue, an analysis Dr. Cragg fully disclosed in his rebuttal report. (Cragg Rebuttal Report VI.B.) Finally, ¶¶ 97-102 presents in different ways *the same data* presented by Prof. Hitt regarding increasing per-transaction fees (*see e.g.* ECF No. 489-7, Figures 40-42), an issue that is not in dispute, and is therefore not objectionable. Dr. Cragg then simply explains why increasing per-transaction fees are in fact tantamount to increasing prices.

D.   Dr. Evans - ¶¶ 39, 48-50

None of the three paragraphs cited by Apple contain new opinions by Dr. Evans.

*First*, contrary to Apple's assertion and as noted in the chart above, Dr. Evans's opinion at ¶ 39 of his rebuttal written direct testimony was disclosed at ¶ 129 of Dr. Evans's rebuttal report. There, Dr. Evans states, "I will assume for the sake of argument that, for the purposes of assessing Apple's app-distribution restrictions, the relevant products for distribution are limited to online gaming apps. I will show that Apple's experts have presented no economic evidence that would warrant including games for other devices in the relevant market for app distribution for smartphones." This language conveys the same opinion discussed in ¶39 of Dr. Evans's rebuttal written direct testimony—that any market for game apps is no broader than the market for iOS games apps.

*Second,* as noted above, an expert may comment on criticisms of their opinions by the opposing party's expert, and these responses are not considered to be new opinions. This is precisely what Dr. Evans does in ¶¶ 48-50 of his rebuttal written direct testimony. Professor Hitt

1  criticizes Dr. Evans's calculation of Apple's average effective commission rate for failing to
2  include free downloads, and Dr. Evans just responds to that criticism.  Further, the analyses to
3  which Dr. Evans responds in ¶¶ 48-49 appeared for the first time in Professor Hitt's rebuttal
4  report, to which Dr. Evans had no opportunity to respond as the parties served their experts'
5  rebuttal expert reports on the same day. (ECF No. 116.)  And the analysis to which Dr. Evans
6  responds in ¶ 50 was not disclosed in either of Professor Hitt's reports; as noted by Dr. Evans in
7  his rebuttal testimony (ECF No. 508-9), this analysis appeared for the first time in Prof. Hitt's
8  written direct testimony.[2]  Epic would be prejudiced if Apple's experts were permitted to inject
9  new analyses and opinions at this late stage and Epic's experts were not permitted to respond.
10         Dr. Evans's opinions in the above-referenced paragraphs should be accepted into evidence.
11         **E.      Dr. Lee - ¶¶ 19, 76-77, 80, 103-104**
12         Apple's claim that Dr. Lee offers several "completely new" opinions is meritless. (ECF
13  No. 518 at 8.)  Two of the challenged paragraphs (¶¶ 19, 104) reflect opinions that were included
14  in Dr. Lee's rebuttal expert report.  Paragraph 19 of Dr. Lee's written rebuttal testimony explains
15  that "[t]he Apple materials I have reviewed do not suggest that Apple's decision to adopt
16  exclusive app distribution on iOS was a result of threat modeling".  This opinion is fully disclosed
17  in ¶ 48 of Dr. Lee's rebuttal expert report (*see* PX2893.24), which explained that "[w]hen first
18  contemplating whether to allow third-party developers to distribute native apps on iOS, the
19  security team at Apple did not identify exclusive distribution through the App Store as necessary
20  to iOS security".  There is no substantive difference between the two opinions, and Apple's
21  objection boils down to a semantic complaint that Dr. Lee did not use the words "threat model" in
22  his rebuttal report when describing Apple's internal assessment of what was "necessary to iOS
23  security".

---

[2] Apple claims that Dr. Evans conceded that Prof. Hitt presented this analysis in his expert reports (ECF No. 518 at 7-8), but that is not correct.  Some of the underlying *data* was mentioned in Prof. Hitt's reports, but the *analysis* at issue was not, Dr. Evans's written testimony makes this plain (ECF No. 508-9 at ¶¶ 49-50).

Similarly, ¶ 104 of Dr. Lee's rebuttal written direct testimony explains that in an open distribution model, third-party app stores could specialize, and thereby review fewer apps in narrower categories, achieving the same level of security as Apple's App Store.  This opinion was fully disclosed in ¶¶ 42-43 of Dr. Lee's rebuttal expert report (*see* PX2893.21), which explained that "[a] third party . . . might create an app store that solely focused on a narrower category of apps"; that "[t]his focus could allow specialized app reviewers to spend more time with each app in both manual and automated review, resulting in the reviewers gaining a deeper understanding of the security measures most relevant to each app category"; and that "[t]his third-party store could then subject these apps to a more rigorous technical review than App Review".

With respect to the remaining challenged paragraphs, Apple's security expert, Dr. Aviel Rubin, submitted written direct testimony containing various criticisms of Dr. Lee's methodology that appeared for the first time in Dr. Rubin's rebuttal expert report.  In ¶¶ 76-77, 80 and 103, Dr. Lee responds directly to the critiques that first appeared in Dr. Rubin's rebuttal.  Thus, for the reasons stated above, the statements reflected in ¶¶ 76-77, 80 and 103 do not amount to "new" opinions; they are responses to attacks that Dr. Rubin levied on Dr. Lee's existing opinions.

- **¶¶ 76-77**: :  In paragraph 44 of his written direct testimony, Dr. Rubin states that he "disagree[s] with the conclusion of Drs. Lee and Mickens that other platforms . . . offer 'rough parity' in their security protections to those of iOS." (*See* ECF No. 490-6 at ¶ 44.)  Dr. Rubin bases this disagreement on third-party studies that purportedly support his claim that there is no parity in the security protections across certain platforms.  (*See id.* at 45-47.)  Those studies appeared for the first time in Dr. Rubin's rebuttal expert report, and Dr. Lee is entitled to respond to Dr. Rubin's use of the studies to attack Dr. Lee's opinions.  Accordingly, in ¶¶ 76-77 of Dr. Lee's rebuttal written direct testimony, he responds to Dr. Rubin's criticism by explaining why the analysis in the studies is flawed.

- **¶ 80**: Similarly, Dr. Rubin attacks Dr. Lee's opinion that more open distribution on iOS will not erode security on the platform. (*See* ECF No. 490-6, Section III.C.)  In support, Dr. Rubin offers a case study of the Android marketplace in China, which he claims demonstrates security problems that are "largely attributed to looser security standards that accompany the multitude of app stores distributing apps". (*Id.* at ¶ 104.)  This case study first appeared in Dr. Rubin's expert rebuttal report, and Dr. Lee is entitled to respond to the attack on his own opinion.  In ¶ 80 of Dr. Lee's written rebuttal testimony, he responds to Dr. Rubin's criticism by explaining why Dr. Rubin's case study is flawed.

- **¶103**: Dr. Rubin also attacks Dr. Lee's opinion that the app review process can be replicated by third parties—calling it "theoretical[]" and "speculative". (*See* ECF No. 490-6 at ¶¶ 80-86.)  In ¶ 103 of his written rebuttal testimony, Dr. Lee simply responds to that criticism, citing an example of a third-party app store that has implemented an app review process similar to that of App Review (one that includes both a human and automated review), which advertises security as its top priority.

Dr. Lee's opinions in the above-referenced paragraphs should be accepted into evidence. Apple's objection is part of an effort to attack Dr. Lee's opinions while precluding Dr. Lee from responding to those attacks.

| | |
|---|---|
| Dated: April 30, 2021 | CRAVATH, SWAINE & MOORE LLP<br>  Christine A. Varney (*pro hac vice*)<br>  Katherine B. Forrest (*pro hac vice*)<br>  Gary A. Bornstein (*pro hac vice*)<br>  Yonatan Even (*pro hac vice*)<br>  Lauren A. Moskowitz (*pro hac vice*)<br>  M. Brent Byars (*pro hac vice*)<br><br>FAEGRE DRINKER RIDDLE & REATH LLP<br>  Paul J. Riehle<br><br>By:  /s/ *Gary A. Bornstein*<br>    Gary A. Bornstein<br>    825 Eighth Avenue<br>    New York, New York 10019<br>    Telephone: (212) 474-1000<br><br>*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.* |