PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
27th Floor San Francisco, CA 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
KATHERINE B. FORREST (*pro hac vice*)
kforrest@cravath.com
GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant
Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, Counter-defendant, <br> v. <br> APPLE INC., <br><br> Defendant, Counterclaimant. | Case No. 4:20-cv-05640-YGR-TSH <br><br> **EPIC GAMES, INC.'S OPPOSITION TO APPLE INC.'S ADMINISTRATIVE MOTION TO SEAL THE COURTROOM DURING PRESENTATION OF CERTAIN MATERIAL AT TRIAL** <br><br> The Honorable Yvonne Gonzalez Rogers <br><br> Trial: May 3, 2021 |

In 2008, Steve Jobs told the world that Apple's restrictions on app distribution on iOS should be of no concern to developers or users, stating "we don't intend to make money off the App Store", and that Apple's commissions would be used only to cover Apple's costs. (ECF No. 407 at 27-28.) Apple's Motion To Seal the Courtroom attempts once more, this time through a sweeping prohibition, to conceal from the public record facts and evidence showing whether Apple lived up to Mr. Jobs's promise, or instead earns persistent and extraordinary profit margins from its App Store commissions. Despite Apple's efforts to minimize the relevance of this issue, its own principal antitrust economist has concluded that persistent excess profit margins are a "good indication of long-run power" in a monopolized market. Richard Schmalensee, *Another Look at Market Power*, 95 Harv. L. Rev. 1789, 1806 (1982).

While that question is clearly of the utmost public interest, Apple has consistently attempted to conceal it from public view. Just last week, during a Hearing of the Senate Subcommittee on Competition Policy, Antitrust, and Consumer Rights, Apple's representative was asked point blank by the Subcommittee's Chair about its App Store profits, and he responded that Apple does not calculate them. Earlier this year, Apple made the same claim at a hearing before Magistrate Judge Hixson who, after reviewing evidence of the very type Apple now asks to conceal from the public record, told Apple's counsel: "I don't believe anything you're saying." (ECF No. 212-2 at 68.) The fact that Epic intends to offer evidence and expert opinions that undermine Apple's representations is not a cognizable "compelling interest" that justifies sealing the courtroom when this evidence is presented. Nor should Apple be permitted to manipulate the public record by publicly denying its ability to calculate App Store profits— as Apple's experts have done in unsealed filings—while simultaneously hiding Epic's evidence regarding those claims based on internal Apple documents.

Apple's stated interest in requesting sealing—purportedly to avoid "confusion" in the securities markets because of the release of "unaudited" financial information—is pretextual. Apple regularly discusses and provides unaudited information about its financial performance, including in financial statements publicly released *on the very same day* it made its Motion. Apple's speculation that Epic's evidence "could lead investors to make trading decisions based

-1-
EPIC'S OPPOSITION TO APPLE'S ADMINISTRATIVE MOTION TO SEAL
Case No. 4:20-cv-05640-YGR-TSH

on this non-public information" (Mot. at 3) is both paternalistic and disingenuous. Apple's request has nothing to do with investor confusion, and everything to do with trying to maintain the fiction it has been promoting.

Apple's Motion is baseless and improper at every level and should be denied.

### DISCUSSION

"One of the most enduring and exceptional aspects of Anglo–American justice is an open public trial. Indeed, 'throughout its evolution, the trial has been open to all who cared to observe.'" *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Arizona*, 156 F.3d 940, 946 (9th Cir. 1998). To overcome the "strong presumption in favor of access" on a potentially dispositive matter, Apple "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events". *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted). Any such compelling reason must rely on a "factual basis", not "hypothesis or conjecture". *Id.* at 1179. "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes', such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets". *Id.* Conversely, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records". *Id.* Courts will not "close the courtroom, when information central to the parties' arguments in [the] case is being discussed . . . unless the parties demonstrate the most compelling of reasons and show through persons with direct knowledge why significant harm *would* occur if the information became public". *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 1003 (N.D. Cal. 2018).

**Apple's Attempt To Minimize the Importance of App Store Profitability Fails.**
Courts act with even more reluctance than usual in sealing *evidence* that could be relevant to a dispositive matter, let alone sealing a courtroom during a trial. *Kamakana*, 447 F.3d at 1179.

Apple argues without basis that information about the App Store's profits and profit margins is of "little value" or "little importance" to the public's understanding of the Court's resolution of the antitrust claims. (Mot. at 4.) Apple is wrong; Epic explained in its Proposed Findings of Fact and Conclusions of Law why and how courts weigh such margins in determining monopoly power. (ECF No. 192 at 75 ("One indication of market power in the relevant market is the sustained existence of higher profit margins than would exist in a competitive market.").) Apple's App Store margins also go directly to whether Apple has lived up to Mr. Jobs's 2008 representations. The fact that Apple disagrees only demonstrates that this is a hotly contested topic in this litigation, and as such, is of public interest.

For the same reasons, and as further evidence of the public's significant interest in accessing and understanding this evidence, both Houses of Congress have sought information about App Store profitability when considering and formulating potential antitrust legislation and policy.[1] Just last week, at a Senate hearing, Senator Amy Klobuchar asked Apple's witness for information about the App Store's profits and profit margins, which is "relevant because we're talking here about a monopoly situation". (https://youtu.be/EnCUmJvNIr0?t=8857 at 2:27:37.) The Apple witness, its Chief Compliance Officer, responded that "we don't have a separate profit and loss statement for the App Store" and that "it's not a separate standalone business for us". (*Id*.) While not directly related to this litigation, this scrutiny by members of Congress demonstrates the public interest in the information Apple seeks to seal.[2] S*ee also Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 4936595, at *3-4 (N.D. Cal. Oct. 17, 2012) (denying Apple's motion to seal profit margin data and noting that "Apple's reasons would have to be very compelling indeed" given "unusually robust public interest" in the case).

---

[1] "Investigation of Competition in Digital Marketplaces" at 344-45, Staff of Subcomm. On Antitrust, Commercial, and Admin. Law, U.S. House of Representatives (Oct. 6, 2020) ("Apple's monopoly power over app distribution on iPhone permits the App Store to generate supra-normal profits").

[2] Apple's suggestion that the opinions are less important because Epic estimates using 10 minutes on Mr. Barnes's live direct testimony is an effort at misdirection. Apple also has sought to seal a majority of Mr. Barnes's written direct testimony covering those opinions, which Epic has opposed for similar reasons as it opposes this Motion. (ECF No. 509-1.)

**Apple Improperly Requests To Seal Evidence That Undermines Its Public Representations on the Same Subject Matter.** Apple has repeatedly and publicly denied facts discussed in the testimony it seeks to have sealed. Earlier in this litigation, for example, Class Plaintiffs in the related cases moved to compel Apple to produce App Store-specific cost data, which would permit the calculation of App Store profits. Apple resisted, representing in a public hearing that such information "doesn't exist" and is "not something that Apple maintains" because Apple "does not maintain separate numbers for the App Store". (ECF No. 212-2 at 66, 68; ECF No. 192 at 7.) After receiving contrary evidence, Magistrate Judge Hixson rejected Apple's assertion and admonished Apple's counsel: "I don't believe you, because the plaintiff had submitted App Store-specific P&L statements." (ECF No. 212-2 at 66; ECF No. 192 at 7.) In a Discovery Order, Magistrate Judge Hixson concluded that Apple had produced an "App Store-specific P&L calculation" that "was used in business planning". (ECF No. 192 at 7.) Apple then produced more financial documents—including some on the last day of fact discovery and after the completion of all pertinent fact depositions—many of which form the basis of Mr. Barnes's opinions that Apple now seeks to conceal.

More recently, Apple has sought to use public representations about its purported inability to calculate App Store profits as a shield, while hiding evidence to the contrary. Apple's own experts opined in unredacted portions of their written testimony that "top Apple executives will testify" that "Apple does not calculate P&Ls by products and services because they view it as an unproductive exercise". (ECF No. 490-3 ¶ 115; *see also* ECF No. 410 at 106-07.) Mr. Barnes's testimony responds directly to those assertions. And in Apple's Motion To Seal the Courtroom, Apple inappropriately and publicly disparages the merits of Mr. Barnes's opinion, while seeking to deny Epic any opportunity to rebut its assertions publicly. Specifically, Apple argues that the documents on which Mr. Barnes relied "only cover a fraction of the costs associated with running the App Store" and that a "revenue-based allocation" used by Mr. Barnes is a "poor indicator of the extent to which the App Store benefits from various joint costs, such as research and development or marketing". (Mot. at 4.) Yet Apple now seeks to prevent Epic from publicly presenting Mr. Barnes's opinions and the

documents he relied on, so that the public has a full picture of that evidence and whether the documents provide a valid basis for calculating App Store profitability.

**Apple Fails To Show Any Compelling Interest.** Apple is a public company that is required by U.S. securities laws to make regular disclosure of its financial results to investors. It releases unaudited financials to investors multiple times a year. On April 28, 2021—the same day Apple filed this Motion—Apple filed a Form 8-K with the SEC containing Apple's *unaudited* income statement, *unaudited* balance sheet and *unaudited* statement of cash flows. (8-K at 7-9 (Apr. 28, 2021), *available at* https://investor.apple.com/sec-filings/default.aspx.) It then held a public investor call trumpeting—on the basis of this *unaudited* financial information—that Apple's Services line of business "reached an all-time revenue record of $16.9 billion *with all-time records for the App Store . . .* ". (*Q2 2021 Earnings Call Transcript*, (Apr. 28, 2021), https://news.alphastreet.com/apple-inc-aapl-q2-2021-earnings-call-transcript/.)

Apple nevertheless argues that public disclosure of the data regarding the App Store's profits "*could* ultimately do significantly more harm than good", because testimony "*may* be misinterpreted by the media and the investing public", and "*could* inject unaudited and non-public financial metrics into the total mix of information available to investors, analysts, and others seeking to learn about Apple and its business". (Mot. at 3-4 (emphases added).) All of this is conjecture unsupported by any evidence. The mere fact that Apple has not previously disclosed this financial data does not mean that any analysts, investors and media following the trial will be confused by it. To the contrary, a full public airing of the testimony—together with Apple's cross-examination and any rebuttal evidence—will permit the market to arrive at its own conclusion as to the information's reliability and materiality. Apple's failure to link its vaguely described public confusion with concrete harm to anyone falls far short of the "devastating financial impact" that Apple's own authority holds it must show to secure the closure of the courtroom. *See St. Alphonsus Med. Ctr. v. St. Luke's Health Sys., Ltd.*, 2013 WL 5883736, at *1 (D. Idaho Oct. 18, 2013).

## CONCLUSION

Apple's Motion To Seal the Courtroom should be denied.

Dated: April 30, 2021

CRAVATH, SWAINE & MOORE LLP

Christine Varney
Katherine B. Forrest
Gary A. Bornstein
Yonatan Even
Lauren A. Moskowitz
M. Brent Byars

Respectfully submitted,

By: */s/ Gary A. Bornstein*
    Gary A. Bornstein

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*