# EXHIBIT A

United States District Court
Northern District of California

Case No. **4:20-cv-05640-YGR**
Case Title *Epic Games, Inc. v. Apple, Inc.*
Exhibit No. **DX-3891**
Date Entered

By:                    Susan Y. Soong, Clerk
                                    , Deputy Clerk

# MERCHANT AGREEMENT
# (APPLE ITUNES STORE)

**THIS MERCHANT AGREEMENT**, together with all attachments, schedules, exhibits, guidelines, rules and other documents expressly incorporated herein or therein by reference (collectively, this "*Agreement*"), dated as of July 7, 2017 (the "*Effective Date*") is made by and between **APPLE INC.** ("*Apple*" or "*Merchant*"), a California corporation, with its principal place of business at 1 Infinite Loop, Cupertino, CA 95014, and **PAYPAL, INC.** ("*PayPal*" or "*Company*"), a Delaware corporation, with its principal place of business at 2211 North First Street, San Jose, CA 95131. PayPal, on the one hand, and Apple, on the other hand, are each referred to in this Agreement as a "*Party*" and together as the "*Parties*."

WHEREAS, Apple is engaged in the business of selling goods and/or services and wishes to offer the Company Services (defined below) to facilitate payments by its customers in the Apple iTunes Store (defined below).

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth in this Agreement, and intending to be bound, the Parties agree as follows:

## 1. COMPANY SERVICES

1.1. **Definitions.**

(a) "*Apple iTunes Store*" means one or more electronic stores, Internet sites or services accessible via the Internet or similar means, which are owned, controlled and operated by Apple, and from which digital content such as music, video (e.g., movies and television shows), and textual matter is sold to the public at the Points of Sale.

(b) "*Certification*" or "*Certified*" means that the functionality, design, and performance of the Company Services, technical operation of the Company Services have been reviewed and tested in the Apple iTunes Store by each Party to its reasonable satisfaction.

(c) "*Covered Territory*" means the Territory covered by a particular Account Nationality in the Points of Sale Schedule.

(d) "*PayPal Services*" or "*Company Services*" means the payment services and related products and services the Company provides to Apple in the Apple iTunes Store in the Territory in accordance with this Agreement and the PayPal User Agreement.

(e) "*PayPal Site*" means the PayPal website for the relevant PayPal Business Account (as defined in Section 1.4 hereof).

(f) "*PayPal User Agreement*" means the online PayPal User Agreement found on the PayPal website: http://www.paypal.com, as it may be amended from time to time, which terms are incorporated herein for the purposes of this Agreement, excluding the terms under the following sections, which are deemed superseded by the terms of this Agreement:

◦ Account Statements and Requesting Account Records in Writing

◦ Non discouragement

◦ Payment review

◦ Transaction Fees for Online and In-Store Payments

◦ PayPal Advertising Program

◦ Restricted Activities

◦ Actions We May Take if You Engage in Any Restricted Activities

◦ Holds, Limitations and Reserves

◦ Court Orders, Regulatory Requirements or Other Legal Process

◦ PayPal's Rights

◦ Indemnification and Limitation of Liability

1

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

APL-EG_06597611

DX-3891.001

    ◦ Disclaimer of Warranty and Release

    ◦ Agreement to Arbitrate

    ◦ Intellectual Property

    ◦ Assignment

    ◦ Escheatment of dormant accounts

    ◦ Governing Law

    ◦ PayPal is only a payment service provider

    ◦ Your Use of Information

(g)    "*Territory*" means the countries where consumers have the ability to purchase items in the Apple iTunes Store and shall mean those countries identified in the attached Points of Sale Schedule.

1.2.    **Scope of PayPal Services**. PayPal shall provide to Apple, and Apple shall make available in the Apple iTunes Store in the Territory, the PayPal Services. The PayPal Services enable Apple: (a) to receive online payments into its PayPal Business Account from PayPal users, (b) to make online payments to PayPal users from its PayPal Business Account, and (c) to manage its PayPal Business Account online. As part of the PayPal Services provided hereunder, PayPal shall: (i) settle payments into Apple's PayPal Business Account in accordance with this Agreement, (ii) investigate and process all chargebacks, (iii) use PayPal's fraud detecting services, and (iv) make available daily and monthly Apple settlement and transactions reports. Apple shall notify Company in writing of any errors or discrepancies detected by Apple in any monthly reports made available by Company within 90 days of the date such monthly report is made available to Apple. After such period, Apple will be deemed to have accepted the reports as delivered and PayPal shall have no obligation to correct errors identified after such period except in the case of PayPal's fraud.

1.3.    **Integration and Certification**. The Solution Design Document detailing the integration requirements for the Company Services is attached hereto as Exhibit B, which shall not be modified without the prior written consent of both Parties. The Company Services shall be integrated and presented at the Apple iTunes Store in accordance with the Solution Design Document, any mock ups agreed upon by the Parties, and this Agreement. The Company Services must be Certified at the Apple iTunes Store prior to launch. Following Certification, the Parties agree to discuss in good faith any proposed changes to the user experience on the Apple iTunes Store and to work cooperatively to implement any agreed-upon changes; notwithstanding the foregoing, Company reserves the right to make changes to the Company Services in its sole discretion and without notice, so long as such changes do not (i) otherwise violate the terms of this Agreement, (ii) require modifications or alterations by Apple, or (iii) otherwise affect the user experience on the Apple iTunes Store other than in immaterial respects. Presentation of the Company Services shall at all times comply with applicable laws, and Apple shall not mischaracterize, misrepresent or disparage any Company Services.

1.4.    **PayPal Business Account**. Prior to offering the PayPal Services at any Point of Sale, Apple shall register for and maintain a PayPal Business Account at the PayPal Site in accordance with the Points of Sale Schedule (each a "*PayPal Business Account*"). Use of the PayPal Business Account shall be governed by the PayPal User Agreement, except where the terms thereof are addressed herein, in which case the terms of this Agreement shall apply and supersede those of the PayPal User Agreement. Payments received from customers through the PayPal Services for the purchase of products at the Apple iTunes Store shall be credited by PayPal to Apple's PayPal Business Account less applicable fees within one business day of the capture of the transaction. PayPal will not use Apple's funds for PayPal's operating expenses or any other corporate purposes, and will not voluntarily make Apple's funds available to PayPal's creditors in the event a bankruptcy petition is filed by or against PayPal or for any other purpose. Apple shall not receive interest or other earnings on its funds.

1.5.    **Authorized Use**. Apple shall not use a PayPal Business Account, the PayPal Services, the PayPal Site or any of the additional services offered therein for any unlawful or fraudulent activity or in violation of PayPal's Acceptable Use Policy found on the PayPal

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED    APL-EG_06597612

DX-3891.002

Site ("*PayPal AUP*"), as may be amended from time to time in accordance with its terms. Apple represents, warrants, and covenants that it does not itself provide unlawful or illicit products or services and that it prohibits the selling of (and takes reasonable measures to ensure that it does not sell) any unlawful or illicit products or services on the Apple iTunes Store. Upon discovery or identification of any unlawful illicit products or services being sold on the Apple iTunes Store, Apple will take all commercially responsible efforts to remove or cause the seller to remove such products or services from the Apple iTunes Store. PayPal reserves the right to terminate, suspend, restrict or limit Apple's PayPal Business Account and immediately freeze account funds if Apple fails to cure within thirty (30) days of discovery or the receipt of notice of any problem with respect to the above.

1.6.    **Service Level Agreement**. The Parties agree to the terms of the Service Level Agreement attached as Exhibit C to this Agreement.

1.7.    **Commercial Entity Agreements.** Credit or debit card payments received by Apple from customers through the PayPal Services will be processed by the acquiring financial institutions providing card processing services to PayPal.  A payment via PayPal that is funded by an underlying card transaction is subject to the terms prescribed by the acquirers that process card transactions for PayPal, in accordance with the Commercial Entity Agreements set out on the relevant PayPal Site, and which are hereby incorporated by this reference.  Only one of the Commercial Entity Agreements will apply to a given card funded PayPal payment, depending on which of PayPal's acquiring financial institutions carries out a particular card transaction.

## 2. FINANCIAL TERMS

2.1.    **Fees.** The fees payable by Apple with respect to the Company Services are set forth in the attached Financial Terms Schedule to this Agreement.  Company may debit Apple's balance and/or offset any funds otherwise payable to Apple with respect to the Company Services by any undisputed amounts owed by Apple to Company pursuant to this Agreement.  During the Term, fees may be adjusted in accordance with the Financial Terms Schedule or upon mutual agreement of the Parties.

## 3. CONFIDENTIAL INFORMATION; INFORMATION SECURITY

3.1.    **Confidentiality.**

(a)    *Definition.* A Party's "*Confidential Information*" is defined as any information of the disclosing Party, which: (a) if disclosed in a tangible form is marked as "Confidential" or "Proprietary" or if not so marked, should be reasonably understood by the receiving Party from the context of disclosure or from the information itself, to be confidential; (b) if disclosed orally or visually is declared to be confidential or, if not so declared, should be reasonably understood by the receiving Party from the context of disclosure or from the information itself to be confidential; or (c) is designated as Confidential Information in this Agreement. Confidential Information shall include without limitation, the terms of this Agreement, information accessed via the Company APIs, technical specifications and processes of each Party, the API Tools, user IDs, key performance indicators about the PayPal Services including but not limited to credit approval rates and loan volumes, and all Apple customer information and Company customer information (including user IDs and passwords).

(b)    *Mutual Obligations.* Each Party shall hold the other Party's Confidential Information in confidence and shall not disclose such Confidential Information to third parties nor use the other Party's Confidential Information for any purpose other than solely as required and necessary to perform its obligations under this Agreement. Such restrictions shall not apply to Confidential Information that: (a) is known by the recipient prior to the date of disclosure by the disclosing Party; (b) becomes publicly known through no act or fault of the recipient; (c) is received by recipient from a third party without a restriction on disclosure or use; or (d) is independently developed by recipient without reference to the Confidential Information. Notwithstanding the foregoing, a Party may share Confidential Information with an

3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

DX-3891.003

affiliate in the event that the other Party requests services from such affiliate and such affiliate shall be bound by this Section. To the extent a Party shares the other Party's Confidential Information with its affiliates, the Party sharing such information agrees to be ultimately responsible for any breach of this Section by any such affiliate. In the event Confidential Information is required to be disclosed by a court, government agency, regulatory requirement, or similar disclosure requirement, the Party subject to such requirement shall immediately notify the disclosing Party upon learning of the existence or likely existence of such requirement and shall use reasonable efforts to avoid such disclosure and, if necessary, use reasonable efforts to obtain confidential treatment or protection by order of any disclosed Confidential Information. The Parties' respective obligations to maintain the confidentiality of information disclosed hereunder shall survive the expiration or termination of this Agreement or until such time as such information becomes public information through no fault of the receiving Party.

(c) *Return of Confidential Information upon Termination.* Upon termination of this Agreement, at the request of a disclosing Party, the receiving Party shall destroy or return to the disclosing Party within ten (10) days the Confidential Information of the Party and documents or media containing any such Confidential Information and any and all copies or extracts thereof or certify such Confidential Information's destruction. The foregoing obligation shall not be applicable to any Confidential Information that a Party is required to retain in order to comply with applicable law, rules or regulations.

3.2. **Information Security.** Each Party agrees to comply with the Information Security Addendum, attached hereto as Exhibit D.

## 4. COMPANY TECHNOLOGY; USE OF MARKS

4.1. **Marks**. Solely in connection with the activities contemplated by this Agreement, (a) PayPal grants to Apple a non-exclusive, non-transferable, royalty-free right and license to use, reproduce, distribute and display PayPal's name and Marks (defined below) for the purpose of identifying Company Services as an accepted payment form and (b) Apple grants to PayPal a non-exclusive, non-transferable, royalty-free right and license to use, reproduce, distribute and display the Apple Marks as may be specified by Apple for the purpose of identifying Company Services as an accepted payment form in the Apple iTunes Store , provided that Apple provides written approval, which is only effective if the written approval is consistent with Exhibit E. For the avoidance of doubt, if Apple provides written effective approval, any promotional materials approved by Merchant will be consistent with the requirements as described in Exhibit E. Each use by PayPal of the Apple Marks shall be subject to Apple's prior written approval in Apple's sole discretion, and, in all cases, any use by one Party of the other Party's marks shall be in the form specified by such Party, and in accordance with such Party's standard Mark guidelines and this Agreement. In addition to the foregoing, the Parties may enter into one or more agreements for marketing purposes. A Party shall be entitled to removal of any use of its Marks if, in its reasonable discretion, the use by the other Party of the Marks tarnishes, blurs, or dilutes the Marks or misappropriates the associated goodwill and such problem is not cured within five (5) business days of the using Party's receipt of notice of the problem, in which case such other Party shall promptly remove and cease such use. For the purposes of this Agreement, a Party's "*Marks*" means the trademarks, including registered and common law trademarks, trade names, service marks, logos and similar designations owned or licensed by the Party (if licensed, with the right to grant a sublicense to the other Party of the scope set forth in this Section 4.1). The licenses described in this Section shall terminate automatically upon termination of this Agreement.

4.2. **Treatment of Company Services**. Apple agrees that it shall treat Company's payment Marks at least substantially on par with any other payment methods offered by Apple at the Points of Sale, including substantially similar logo placement, position at any Point of Sale, and treatment in terms of payment flows, terms, conditions, or customer-facing fees or surcharges. When a customer selects a Company Service as its payment method, Apple shall not attempt to inhibit the customer's decision or, dissuade the customer from using the Company Services or encourage the customer to use an alternate payment

4

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

DX-3891.004

method (other than Apple's own branded payment method as discussed below). Apple shall not mischaracterize, misrepresent or disparage any Company Services or exhibit a preference for other payment methods over any Company Service. When Apple displays or exhibits the payment methods that Apple accepts, it agrees to display Company's acceptance Marks for the Company Services used by Apple as prominently and in at least as positive a manner that Apple does for other payment methods. Notwithstanding the foregoing, (i) if Apple has its own co-branded card, Apple payment alternative or Apple payment service, Apple may show preference for that card, alternative or service over the Company Services, and (ii) Apple may offer promotions of limited duration (including, without limitation, promotions with third parties) that favor other payment methods or services and such promotions shall not be deemed to be in violation of this Section 4.2.

4.3.    **Intellectual Property**.

(a) As between the Parties, Company shall own all right, title and interest in Company Background IPR and Company Project IPR, and Apple shall own all right, title and interest in Apple Background IPR and Apple Project IPR. No transfer of any ownership interest in any Company Project IPR or Apple Project IPR occurs under this Agreement.  To the extent that: (1) Apple provides Company with Apple API, Company hereby grants and assigns to Apple, without reservation, all ownership rights, title and interest it may have in and to such Apple API; and/or (2) Company provides Apple with Company API, Apple hereby grants and assigns to Company, without reservation, all ownership rights, title and interest it may have in and to such Company API. Each Party agrees to execute any documents reasonably requested by the other Party and necessary to enable the Party providing the API to secure and perfect such Party's ownership of the intellectual property rights in any such API.  Notwithstanding anything to the contrary, and for the avoidance of doubt, no license to any patents is provided under this Agreement.

(b) Apple, on behalf of itself and its Affiliates and their respective successors and permitted assigns, hereby grants Company and its Affiliates a non-exclusive, royalty-free, non-sublicenseable license in the Territory to use Apple Project IPR in accordance with the terms and conditions of this Agreement.  For clarity, Apple does not grant any license to Company for any other intellectual property rights.

(c) No joint development is contemplated under this Agreement. Before any joint development does occur, the parties will agree in writing on ownership terms for any contemplated joint development.

(d) Company, on behalf of itself and its Affiliates and their respective successors and permitted assigns, hereby grants to Apple and its Affiliates a non-exclusive, royalty-free, non-sublicensable license in the Territory to use the Company Services and related APIs in accordance with the terms and conditions of this Agreement. For clarity, Company does not grant any license to Apple for any other intellectual property rights.

(e) In the event of degradation or instability of Company's system(s) or an emergency, Company may, if it reasonably believes such degradation or instability could lead to significant liability to either Party under this Agreement, change or temporarily suspend Apple's access to any Company Service, including but not limited to the APIs and databases and/or information accessed from the APIs, in order to minimize any such potential liability to the Parties, minimize threats to and protect the operational stability and security of Company's systems.

(f) Definitions.

(i) "*Apple Background IPR*" means Intellectual Property Rights that Apple owned, created, or discovered prior to the Effective Date or independent of this Agreement and independent of any Apple confidential information, including any modifications, improvements, and derivative works of the same created or developed during the course of performance of this Agreement.

(ii) "*Apple Project IPR*" means Intellectual Project Rights created or developed by Apple in connection with this Agreement.

(iii) "*Company Background IPR*" means Intellectual Property Rights that Company owned, created, or discovered prior to the Effective Date or

5

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

independent of this Agreement and independent of any Apple confidential information, including any modifications, improvements, and derivative works of the same created or developed during the course of performance of this Agreement.

(iv) "*Company Project IPR*" means Intellectual Property Rights created or developed by Company in connection with this Agreement.

(v) "*Intellectual Property Rights*" means all current and future rights in copyrights, trade secrets, trademarks, mask works, patents, design rights, trade dress, and any other intellectual property rights that may exist anywhere in the world, including, in each case whether unregistered, registered or comprising an application for registration, and all rights and forms of protection of a similar nature or having equivalent or similar effect to any of the foregoing.

## 5. **TERM AND TERMINATION**

5.1. **Term**. This Agreement shall take effect on the Effective Date and shall continue for three (3) years from the Effective Date (the "*Initial Term*"). This Agreement shall automatically renew for successive one (1) year terms unless otherwise earlier terminated as provided in this Agreement.

5.2. **Termination**. Except as otherwise provided in this Agreement, this Agreement may be terminated by

(a) Apple upon at least thirty (30) days prior written notice to Company at any time following the first anniversary of the Effective Date and PayPal upon at least ninety (90) days prior written notice to Apple at any time following the first anniversary of the Effective Date;

(b) either Party in the event of a material breach, other than the Events of Default, by the other Party and, to the extent it can be cured, fails to cure such default within thirty (30) days after notice by the other Party thereof;

(c) either Party in the event (i) the other Party becomes insolvent; (ii) an insolvency proceeding is begun against a Party and not dismissed or stayed within thirty (30) days; or (iii) any material portion of a Party's assets is attached, seized, levied on, or comes into possession of a trustee or receiver and the attachment, seizure or levy is not removed within ten (10) days;

(d) Company, if Apple's chargebacks (as defined in applicable card network rules) are above acceptable levels, Apple acknowledges that Company may have certain rights or obligations under applicable card network rules to suspend or terminate Apple's merchant account. Before such suspension, Company will (i) provide written notice to Apple, (ii) provide an opportunity to cure excessive chargeback levels, and (iii) actively assist Apple (through consultancy) in taking actions aimed at reducing the levels of chargebacks. If Apple is unable to achieve acceptable chargeback levels within sixty (60) days, Company will have the right to terminate this Agreement, per such applicable card network rules. Apple will be responsible for any penalty fees levied by the card networks against either Apple or PayPal as a result of Apple's actions or inactions if Apple's chargebacks are above acceptable levels per such applicable card network rules;

(e) Company in the event Apple is no longer subject to the periodic reporting requirements set forth in applicable securities laws, such as the Securities Exchange Act of 1934, as amended, and Apple refuses to deliver to Company within thirty (30) business days of Company's request the necessary financial information required for Company to monitor and determine the anticipated scope of losses associated with processing Apple's transactions, including the financial statements for its most recent fiscal year end or financial reporting period; or

(f) the non-defaulting Party upon the occurrence of an Event of Default described in Section 5.4(a) that the other Party fails to cure within thirty (30) days after notice by the other Party thereof, provided that the non-defaulting Party may immediately suspend the provision or use of Company Services upon the occurrence of the Event of Default described in Section 5.4(a);

6

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

(g)    the non-defaulting Party immediately upon the occurrence of an Event of Default
described in Section 5.4(b).

5.3.    **Effect of Termination**. Termination of this Agreement shall not affect a Party's respective
rights, obligations and remedies under this Agreement as to transactions submitted by
Apple before the date of termination, nor shall it affect Company's right to collect for fees
or reversals of any transaction, each of which shall survive termination. In addition,
termination of this Agreement does not terminate the PayPal User Agreement which
remains in effect until the PayPal Business Account is closed. Termination of this
Agreement shall not affect any other agreement between the Parties or affiliates of the
Parties, including but not limited to the Framework Agreement for Payment Processing
between PayPal (Europe) S.a.r.l et Cie, S.C.A. and Apple Distribution International (the
"*Framework Agreement*").

5.4.    **Events of Default**. Each of the following events shall be considered a breach of this
Agreement (an "*Event of Default*"): (a) either Party fails to pay the other Party any
undisputed amounts payable under this Agreement within ten (10) days of written notice of
late payment from the other Party; or (b) either Party has a Material Adverse Change.

## 6. LOSS PREVENTION

6.1.    **Transaction Liability**. Apple is fully liable to Company for the transactions resulting in the
funds it sends and receives through the Company Services with respect to transactions,
refunds and transaction reversals, except where any error occurred, either wholly or in-
part, as a result of PayPal's actions or inactions.

6.2.    **Compliance with Laws**. Each Party represents and warrants that it has not violated, and
its execution of this Agreement and performance of its obligations hereunder do not and
will not violate, any applicable laws, the violation of which could reasonably be expected to
cause a Material Adverse Change. "*Material Adverse Change*" means a (i) material
adverse change in the business, operations, or financial condition of a Party, (ii) an event
that may cause a material impairment of the prospect of performance of the obligations of
a Party as they come due, including obligations under this Agreement, or (iii) an event that
could present a material financial or security risk to either Party.

## 7. LIMITATION OF LIABILITY

7.1.    NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY (OTHER
THAN THIS SECTION 7), IN NO EVENT SHALL COMPANY OR APPLE BE LIABLE FOR
SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOST PROFITS
(HOWEVER ARISING, INCLUDING NEGLIGENCE) ARISING OUT OF, IN
CONNECTION WITH, OR IN ANY WAY RELATING TO, THIS AGREEMENT.

7.2.    NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY (OTHER
THAN THIS SECTION 7), IN NO EVENT SHALL COMPANY'S OR APPLE'S
AGGREGATE, CUMULATIVE LIABILITY OR OBLIGATIONS ARISING OUT OF, IN
CONNECTION WITH, OR IN ANY WAY RELATING TO, THIS AGREEMENT
(INCLUDING FOR ANY AND ALL LOSSES, LIABILITIES, COSTS, EXPENSES,
DAMAGES, CLAIMS, SUITS, CONTROVERSIES, OR BREACHES FOR ANY CAUSE
WHATSOEVER AND REGARDLESS OF THE FORM OF ACTION, CAUSE OF ACTION,
OR LEGAL THEORY, EXCEED THE AMOUNT PAID BY APPLE UNDER THIS
AGREEMENT OR ANY ACCESSION AGREEMENT IN THE PAST TWELVE MONTHS.
THE EXISTENCE OF MORE THAN ONE CLAIM OR EVENT FROM WHICH LIABILITY
ARISES WILL NOT ENLARGE THIS AGGREGATE LIMITATION.  THIS AGGREGATE
LIMIT IS A SINGLE LIMIT THAT APPLIES COLLECTIVELY (AND NOT INDIVIDUALLY)
TO ALL PAYPAL ENTITIES.

7.3.    THE LIMITATIONS IN SECTION 7.2 SHALL NOT APPLY TO COMPANY'S OR APPLE'S:
(A) PAYMENT OBLIGATIONS OR REPRESENTATIONS OR WARRANTIES, OR (B)
OBLIGATIONS UNDER SECTION 3 (CONFIDENTIAL INFORMATION; INFORMATION
SECURITY), SECTION 4 (COMPANY TECHNOLOGY; USE OF MARKS), OR SECTION
6 (LOSS PREVENTION) OR (C) CLAIMS OR DAMAGES ARISING FROM A PARTY'S
FRAUD OR INTENTIONAL MISCONDUCT.

7

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

7.4. THE LIMITATIONS OF LIABILITY IN THIS SECTION 7 ARE FUNDAMENTAL
ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN THE PARTIES.

## 8. INDEMNIFICATION

8.1. **Mutual Indemnity.** Subject to the provisions of this Section 8, each Party (the
"*Indemnifying Party*") will defend, indemnify, and hold harmless the other Party (the
"*Indemnified Party*") against any suit by any third party ("*Claim*"): (a) where the Claim is
due to or arising out of the Indemnifying Party's alleged (i) breach of any representation or
warranty in this Agreement, (ii) violation of any applicable laws or regulations, or (iii)
negligence or misconduct; or (b) where the Claim asserts that the Indemnifying Party's
technology (whether owned by the Indemnifying Party or licensed from third parties) or
services provided under and used in accordance with this Agreement, infringes such third
party's intellectual property rights.

8.2. **Mitigation.** If (a) a Claim under Section 8.1(b) is made or (b) a Claim is made against
Company in connection with any technology or services it provides to Apple hereunder,
Company may, at its sole option and expense: (x) procure for Apple the right to continue
exercising the rights granted by Company under this Agreement and/or procure for
Company the right to continue to fulfill its obligations under this Agreement without liability,
(y) replace or modify the applicable technology so that it becomes non-infringing, or (z)
terminate this Agreement.

8.3. **Exclusions.** Notwithstanding any other provision in this Agreement, each Party shall have
no obligation under Section 8 or otherwise with respect to any claims of infringement
(including indirect infringement, inducement to infringe, or contributory infringement) or
misappropriation to the extent such claims are based upon (a) the Indemnified Party's
willful infringement, (b) the Indemnified Party's use of the Indemnified Party's technology
and/or services not in accordance with this Agreement, (c) any modifications of
Company's technology, products, or services, or (d) any combinations of any Company
technology, products, or services with any non-Company technology, products or services.

8.4. **Procedure.** The obligations of the Indemnifying Party to defend, indemnify, and hold
harmless in this Section 8 are conditioned upon the Indemnified Party (a) notifying the
Indemnifying Party promptly in writing of each Claim, (b) allowing the Indemnifying Party
sole control of the defense of the Claim, related settlement negotiations and settlement of
the Claim (for which written consent is not required so long as the settlement releases the
Indemnified Party from all liabilities with respect to all Claims), (c) cooperating and, at the
Indemnifying Party's request and reasonable expense, assisting in a timely manner in
such defense, and (d) complying with all terms of this Agreement. The Indemnified Party
shall have the right to participate in such defense with its own counsel, at its own expense.

8.5. **Sole Remedy.** This Section 8 states each Party's sole and exclusive remedy with respect
to any direct or indirect infringement (whether actual or alleged) of any patent, trade
secret, copyright, database right, trademark or other intellectual property right or any claim
or action relating thereto.

## 9. CUSTOMER INFORMATION

9.1. **Compliance with Privacy Laws.** Each Party agrees to comply with applicable privacy
laws with respect to the information which that Party collects.

9.2. **Separate Customer Information.** Customer information generated, collected or obtained
by Apple by virtue of a customer's relationship with Apple without regard to the customer's
use of the Company Services ("*Apple Customer Information*") is considered Apple's
property. Customer information generated or otherwise obtained by Company in
connection with or by virtue of a customer's use of the Company Services ("*Company
Customer Information*") is Company's property. Customer information collected by Apple
solely for purposes of the Company Services is Company Customer Information. In the
event that Company provides Apple with Company Customer Information, Apple shall only
use such Company Customer Information as authorized by this Agreement, or as directed
in writing by Company.

8

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

DX-3891.008

9.3. **Separate Policies.** Company's use of Company Customer Information shall not be subject to Apple's policies. Apple's use of Apple Customer Information shall not be subject to Company's policies.

9.4. **Overlapping Ownership of Customer Information.** To the extent Apple Customer Information includes information that also meets the definition of Company Customer Information, Apple and Company shall have overlapping ownership rights in such information, and the information shall be deemed both Apple Customer Information and Company Customer Information.

9.5. **Customer Communication.** Except with the prior written consent of Company, Apple will not explicitly refer to Company customers or users as "PayPal Users," "PayPal members" or any similar such reference in any promotions or related communications. Except with the prior written consent of Apple, Company will not explicitly refer to Apple customers or users as "Apple customers," or any similar such reference in any promotions or related communications.

## 10. COMPANY PARTIES AND EXTENSION TO AFFILIATES

10.1. **Relationship of the Company Entities.** Apple acknowledges that (except with respect to PayPal Europe): (a) no PayPal Entity is a bank; (b) the Company Services are payment processing services and not banking services; and (c) to the extent Company holds Apple funds, it is acting as a custodian and not acting as a trustee, fiduciary or escrow agent with respect to Apple's funds. Apple further acknowledges that with respect to PayPal Europe: (x) PayPal Europe is licensed as a Luxembourg credit institution and is under the prudential supervision of the Luxembourg supervisory authority, the Commission de Surveillance du Secteur Financier.

10.2. **Extension to Affiliates.** Apple Entities and PayPal Entities may adopt this Agreement, as a new agreement between themselves, by signing an Accession Agreement in the form attached hereto as Exhibit A ("*Accession Agreement*"). A PayPal Entity or Apple itself may also be a party to such an Accession Agreement as each may determine at the time the Accession Agreement is made. For the purposes hereof, "*Apple Entity*" or "*Apple Entities*" shall mean any entity/entities that is/are controlled by, or under common control with, Apple, and "*PayPal Entity*" or "*PayPal Entities*" means any entity/entities that is/are controlled by, or under common control with, PayPal or any entity/entities providing the Company Services by agreement with and under license from PayPal.

## 11. GENERAL PROVISIONS

11.1. **Company Passwords.** Apple will not ask its customers to provide their Company password, nor establish PayPal accounts and set passwords on behalf of its customers.

11.2. **Notices.** Any legal notices required hereunder shall be given in writing at the addresses set forth in the first paragraph of this Agreement, attn: General Counsel, and shall be deemed to have been delivered and given for all purposes: (i) on the delivery date, if delivered (A) personally to the Party to whom the same is directed or (B) by email; (ii) one (1) business day after deposit with a commercial overnight carrier, with written verification of receipt. A Party may change its notice address by giving the other Party prior written notice.

11.3. **Choice of Law, Venue and Jury Trial Waiver.** This Agreement shall be governed by and construed in accordance with the laws of the State of California, U.S.A., except for its conflicts of laws principles that would cause the application of laws of another jurisdiction. The Parties consent to the exclusive jurisdiction of, and venue in, the state and federal courts in Santa Clara County, California. COMPANY AND APPLE IRREVOCABLY WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING ANY CLAIM RELATING TO OR ARISING UNDER THIS AGREEMENT.

11.4. **Successors and Assigns.** This Agreement binds and is for the benefit of the successors and permitted assigns of each Party. Except for transfers or assignments to a Party's affiliates, each Party is prohibited from transferring or assigning this Agreement or any rights under this Agreement, in whole or in part, by operation of law or otherwise, without

9

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

the other Party's prior written consent, and any such transfer or assignment shall be voidable. An assignment or transfer includes, in the case of Apple, any transaction or series of related transactions in which another unaffiliated entity acquires, directly or indirectly, all or a substantial portion (25% or more in value) of the Apple iTunes Store business from Apple.

11.5.   **Disclaimer of Company Warranties**. ACCESS TO COMPANY DATABASES AND PARTICIPATION IN AND USE OF THE COMPANY SERVICES, INCLUDING BUT NOT LIMITED TO USE OF THE APIs (AND DATA ACCESSED FROM THE APIs), ARE PROVIDED UNDER THIS AGREEMENT ON AN "AS IS" BASIS WITHOUT WARRANTY OF ANY KIND.  EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, COMPANY DISCLAIMS ALL REPRESENTATIONS, WARRANTIES AND CONDITIONS, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF QUALITY, SUITABILITY, TITLE, NON-INFRINGEMENT, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  NOTHING CONTAINED HEREIN SHALL AFFECT EITHER PARTY'S OBLIGATIONS SET FORTH IN SECTION 8 HEREIN.

11.6.   **Independent Contractors**. Apple and Company are independent contractors and shall have no power or authority to assume or create any obligation or responsibility on behalf of each other.  This Agreement shall not be construed to create or imply any partnership, agency or joint venture.

11.7.   **Press Releases**. Neither Party shall, or shall permit, issue or cause the publication of any press release or other public announcement relating to the transactions contemplated by this Agreement without the consent of the other Party.

11.8.   **Expenses; Taxes**. Except as otherwise specified in this Agreement, each Party will bear its own costs of performance under this Agreement.  Each Party shall be liable for all taxes, duties, levies or tariffs or charges of any kind imposed by any federal, state or local governmental entity with respect to the net income recognized by such Party in connection with this Agreement and/or the sale of its products and services.

11.9.   **Licenses**. Each Party represents, warrants and covenants that it holds and shall hold for the term of this Agreement all necessary licenses to engage in the advertising and sale of the goods or services offered for sale or use by that party.

11.10.  **Power and Authority**.  Each Party represents, warrants and covenants that (a) it has full power and authority to enter into and perform this Agreement and (b) its execution and performance of this Agreement does not violate, conflict with, or result in a material default under any other contract or agreement to which it is a party or by which it is bound.

11.11.  **Severability**.  If any provision of this Agreement is found illegal or unenforceable, it will be enforced to the maximum extent permissible, and the legality and enforceability of the other provisions of this Agreement will not be affected.

11.12.  **Amendments in Writing**. This Agreement may only be modified, or any rights under it waived, by a written document executed by the Parties.

11.13.  **Integration; Order of Precedence**.  This Agreement is the complete and exclusive agreement by and among the Parties with respect to the Company Services provided hereunder, superseding any prior agreements and communications regarding such subject matter.  For the avoidance of doubt, this Agreement shall not govern the provision of any additional services by Company or the provision of Company Services at any additional Point of Sale unless the parties have expressly agreed in writing that such terms and conditions shall apply to such services or Point of Sale. The Parties acknowledge and agree that this Agreement is separate and distinct from the Framework Agreement.

11.14.  **Force Majeure**.  Neither Party hereto shall be responsible for any failure to perform its obligations under this Agreement if such failure is caused by acts of God, war, strikes, revolutions, lack or failure of transportation facilities, laws or governmental regulations or other causes that are beyond the reasonable control of such Party.  Obligations hereunder, however, shall in no event be excused but shall be suspended only until the cessation of any cause of such failure.

1

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

11.15. **Counterparts, Originals and Electronic Acceptance**.  This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one agreement.  A photographic or facsimile copy of the signature evidencing a Party's execution of this Agreement shall be effective as an original signature and may be used in lieu thereof.  An electronic agreement accepted and agreed to by Apple pursuant to the acceptance method described in the electronic agreement shall constitute Apple's legal and binding agreement and such acceptance shall be effective as original signature of Apple and may be used in lieu thereof.

11.16. **No Third Party Beneficiaries**.  This Agreement is intended for the sole and exclusive benefit of the signatories and is not intended to benefit any third party.  Only the Parties to this Agreement may enforce it.

11.17. **Survival**.  Sections 3, 4, 6, 8, 9 and 11 of this Agreement shall survive termination of the Agreement.

**[Signature page follows]**

1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

**APPLE INC.**

By: _____

Name: ___Michael Boyd___

Title: ___Sr. Director, Treasury___

**PAYPAL, INC.**

By: _____

Name: _____

Title: _____

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED                    APL-EG_06597622

DX-3891.012

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

**APPLE INC.**

By: _____

Name: _____

Title: _____

**PAYPAL, INC.**

By: _Robert Clarkson_
11F8C782DDF542F

Name: Robert Clarkson

Title: VP/GM N.A. LE SALES

13

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED   APL-EG_06597623

DX-3891.013

## POINTS OF SALE SCHEDULE
APPENDED TO MERCHANT AGREEMENT

| Account Nationality | Covered Territory | Point of Sale (URL, application, etc.) |
|---|---|---|
| United States (Account #1) | United States | https://www.apple.com/itunes/ <br> iTunes Store mobile app |
| United States (Account #2) | Mexico | https://www.apple.com/mx/itunes/ <br> iTunes Store mobile app |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED   APL-EG_06597624

DX-3891.014

## FINANCIAL TERMS SCHEDULE
APPENDED TO MERCHANT AGREEMENT

1. **FEES.**

1.1. 

1.2.

**Transaction Fees Table**



**Foreign Exchange Fee**

**Chargeback Fees**

| Transaction Currency | Chargeback Fee |
|---|---|
| | |

15

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-EG_06597625

DX-3891.015



1.3.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED
APL-EG_06597626

DX-3891.016

## EXHIBIT A – ACCESSION AGREEMENT FORM
APPENDED TO MERCHANT AGREEMENT

### ACCESSION AGREEMENT TO MERCHANT AGREEMENT

This Accession Agreement ("*Addendum*") between **[APPLICABLE PAYPAL ENTITY (NAME AND ADDRESS)]** ("*PayPal Entity*") and **[APPLICABLE APPLE ENTITY (NAME AND ADDRESS)]** ("*Apple Entity*") (together, the "*Parties*") is made and entered into as of _____ (the "*Addendum Effective Date*").

      **WHEREAS**, PayPal, Inc. ("*PayPal*") entered into a Merchant Agreement with Apple Inc. ("*Apple*") on _____ ("*Original Agreement*");

      **WHEREAS**, Section 10.2 of the Original Agreement permits a PayPal Entity and/or an Apple Entity to accede to the Original Agreement by executing this Addendum;

      **NOW THEREFORE**, in consideration of the mutual promises and covenants set forth in this Addendum, and intending to be bound, the Parties agree as follows:

1.  PayPal Entity and Apple Entity hereby adopt and accept the terms and conditions of the Original Agreement, except as set forth herein, to create a separate agreement between the Parties ("*Replicated Agreement*") under which PayPal Entity will provide online payment services and related products to Apple Entity for the purpose of enabling Apple Entity to receive and/or send payments to its customers in the countries set out herein. In the Replicated Agreement, the PayPal Entity will be a "PayPal Entity" and replace PayPal Inc. in the definition of "PayPal" thereunder and the Apple Entity will be a "Apple Entity" and replace Apple Inc. in the definition of "Apple" thereunder.

2.  The following table shall replace the Points of Sale Schedule in the Original Agreement:

| Territory | Account Nationality | Point of Sale (URL, application, etc.) |
|-----------|---------------------|-----------------------------------------|
|           |                     |                                         |
|           |                     |                                         |

3.  The attached Financial Terms Schedule shall apply to the Business Accounts set forth in Section 2 above.

4.  All terms and conditions in the Original Agreement not otherwise modified by this Addendum shall remain in full force and effect in the Replicated Agreement. This Addendum may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one agreement.

**IN WITNESS WHEREOF**, the Parties have caused this Addendum to be executed by their duly authorized representatives as of the Addendum Effective Date.

17

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED    APL-EG_06597627

**EXHIBIT B**

**INTEGRATION AND CERTIFICATION**

18

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

APL-EG_06597628

DX-3891.018

# EXHIBIT C
## SERVICE LEVEL AGREEMENT

PayPal shall use commercially reasonable efforts to make the PayPal Services available for use in the Apple iTunes Store with reference to the service level targets identified by Apple and PayPal set forth in this Service Level Agreement ("SLA"). All capitalized terms used but not defined in this SLA shall have the meanings set forth in the Agreement.

**1. Account Management**. PayPal shall provide Apple the following services and personnel for the PayPal Services account management:

    (a)    Provide an account management team as per the Issue Escalation Path for all projects to manage and run cross-functional technical implementation from start to finish, with the ability to scale to the levels required by Apple;

    (b)    Ensure the account management team is available during normal business hours in North America and Ireland and the technical implemention team is available during normal business hours Pacific Time for business support; and

    (c)    Ensure the account team members have cell phone & remote e-mail access to manage emergency needs on a 24x7x365 basis as required.

**2. System Implementation and Project Management Support Requirements**. PayPal shall provide Apple the following services and personnel for system implementation and project management:

    (a)    Conduct technical project calls as required and agreed with Apple and notify the Apple team if a meeting reschedule is required;

    (b)    Participate in meetings, record meeting actions, and publish meeting summaries for regularly scheduled project management calls;

    (c)    Document progress against project plan and milestones;

    (d)    Work with Apple on integration testing for the purpose of the PayPal Service;

    (e)    Develop mutually agreed general guidelines on system testing, including the development of user acceptance testing plans that provide coordinated delivery and testing, and overall project timelines and plans;

19

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED    APL-EG_06597629

(f)   Provide complementary environments directly to Apple to facilitate mutual development, integration test, acceptance test, performance tuning, burst test, capacity test, in-production cases and on-going maintenance activities, and work with Apple to integrate and secure API environments and test integration of PayPal APIs and other designated product features (e.g., Reconciliation Files) prior to launch, and within the timeframe mutually agreed upon. These will need to be stable, responsive and available, and accommodate concurrent software versions. PayPal has a sandbox environment, which is a mirror of production and not performance capabilities. For burst testing and capacity, Apple will contact PayPal and work to understand the best environment and methodology;

(h)   Complete load testing prior to launch and within the timeframe mutually agreed by the Parties.

## 3. Change Management

3.1   Both parties may propose amendments to the applicable requirements and/or specifications in this SLA from time to time by submitting a change request proposal setting out the details of the required change.

3.2   The parties shall develop mutually agreed general guidelines with respect to managing requested changes to the Solution Design Document attached as Exhibit B to the Agreement, including (a) notice periods; (b) processes for providing input and guidance, on-going project management, and timelines for making systemic changes; and (c) accelerated timelines and procedures to implement changes to the PayPal Services available in the Apple iTunes Store as required to comply with Applicable Law or to address consumer protection considerations.

3.3   PayPal shall provide Apple at least three (3) months advance written notice of any changes to the PayPal Services that would directly affect Apple's payment service integration under the Agreement.

## 4. Scheduled Maintenance and Emergency Maintenance

4.1   In the event that PayPal plans any scheduled maintenance to the PayPal Service ("Scheduled Maintenance"), PayPal will provide Apple at least four (4) business days prior written notice. PayPal will notify Apple via email promptly prior to and after the Scheduled Maintenance is performed, or if Scheduled Maintenance is postponed or cancelled.

20

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

4.2  PayPal will ensure there is a mechanism in place to provide for continuous monitoring (and that no measurement is lost), even during periods of Scheduled Maintenance.

4.3  Should PayPal require an emergency maintenance ("Emergency Maintenance"), PayPal will contact Apple promptly. Any downtime resulting from Emergency Maintenance shall be included as downtime in the availability calculation and reports.

4.4  PayPal will use commercially reasonable efforts to perform Scheduled Maintenance from Monday to Sunday between the hours of 11:00 pm and 4:00 am local time zone. Notwithstanding the foregoing, PayPal will use commercially reasonable efforts to ensure that (a) Scheduled Maintenance does not cause downtime to PayPal's provision of PayPal Services for the Apple iTunes Store under the Agreement and (b) it does not cause PayPal's provision of PayPal Services in the Apple iTunes Store under this Agreement to deviate from the requirements that are set forth in Section 5 below.

## 5. Service Level Requirements Specifications

PayPal agrees to use commercially reasonable efforts to meet the service levels mutually identified by Apple and PayPal as substantially described in the service tables below. Apple and PayPal agree that the Parties shall conduct regular operational review of the cooperation contemplated under this Agreement. The frequency of the operational review shall be mutually agreed between Apple and PayPal.

5.1  *Systems Availability*: PayPal will use commercially reasonable efforts to ensure that its systems will be available to make available the PayPal Services at least 99.9% of the total time in each year, other than scheduled downtime or downtime relating to a Force Majeure Event. If a month has a downtime below 99.9% of total time, PayPal will make commercially reasonable efforts in a timely fashion to bring it to a level of 99.9% or above.



21

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY      UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED      APL-EG_06597631

DX-3891.021



OF DOCUMENT SOUGHT TO BE SEALED

- ATTORNEYS' EYES ONLY



UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
APL-EG_06597633
DX-3891.023



5.4    *Root Cause and Service Level Reporting Requirements*:

| Service | Description | Requirements |
|---|---|---|
| Unscheduled Outage | Provide unscheduled outage Root Cause Analysis (RCA) Reports | The Root Cause Analysis Report will provide analysis on the event cause and detail steps PayPal will take to prevent similar issues in the future. PayPal will provide the report to Apple within 2 weeks of the determination of the cause of unscheduled outage, assuming internal approval has been obtained to release the RCA data. |
| Service Level Reporting | PayPal will initially provide Apple with a quarterly report ("Service Level Report"), which will provide statistics and analysis for each of the service levels in this Service Level Agreement that can be reasonably measured.  This report will be delivered to Apple no later than the 15th business day of the new quarter, for the previous quarter.  PayPal will seek to provide Apple with a monthly report by July 1, 2018, with the delivery date to be mutually agreed upon between the parties. | If PayPal detects an issue that could adversely impact any Apple service level under this SLA, PayPal will notify Apple within 1 hour (60 minutes) and will take immediate steps to triage, prioritize and initiate corrective actions based on the Severity Level Classification and Response Actions process below.  If Apple contacts PayPal (using any of the defined contact channels defined in this SLA), PayPal will acknowledge and respond according to the Severity Level Classification and Response Actions described below. |

**6. Severity Level Classification and Response Actions**.  Upon detection by PayPal, or notice

24

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

by Apple using the provided channels for phone, email or web form submission, any issues arising under this Service Level Agreement will be classified and defined and the PayPal response and actions by PayPal will be undertaken as noted in the following table:

| Priority | Criteria | PayPal Actions |
|---|---|---|
| **P1 (or P0) / Critical** Submission via phone, email or web form. | Any issue without a known commercially reasonable workaround that breaks or materially impacts performance of logins, authorizations, critical data flow, movement of money, registration or customer service operations; or<br><br>Any issue that results in the complete outage of PayPal account administration or fraud management systems. | • 1st response (or notification to Apple) in no more than 60 minutes after receipt of customer's notification or detection of incident through PayPal's monitoring system.<br>• On-going status reports every 2 hours thereafter<br>• Continuous effort on a 24x7 basis to fix or mitigate the negative impact. Best effort to fix or mitigate within 24 hours. |
| **P2 / Serious** Submission via phone, email or web form. | Any issue with a known commercially reasonable workaround that breaks or materially impacts performance of logins, authorizations, critical data flow, movement of money, registration or customer service operations; or materially degrades other PayPal production Payment Services; or<br><br>Any issue without a known commercially reasonable workaround that impairs other PayPal production Payment Services. | • 1st response (or notification to Apple) in no more than 60 minutes after receipt of customer's notification or detection of incident through PayPal's monitoring system.<br>• On-going status reports every 4 hours thereafter (during normal business hours).<br>• Continuous effort on a 24x5 basis to fix or mitigate the negative impact. Best effort to fix or mitigate within 7 days. |
| **P3 / Degraded** Submission via phone, email or web form. | Any issue with a known commercially reasonable workaround that minimally impairs PayPal production Payment Services. | • 1st response (or notification to Apple) in no more than 1 business day after receipt of customer's notification or detection of incident through PayPal's monitoring system.<br>• On-going status reports as needed or available thereafter. |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED
APL-EG_06597635

DX-3891.025

| | | • Effort on a 8x5 (normal business hours) basis to fix or mitigate the negative impact. Best effort to fix or mitigate within 4 weeks with the exception of issue resolution requiring a change to the PayPal production environment where best effort will be within 6 weeks. |
|---|---|---|
| **P4 / Minimal** Submission via phone, email or web form. | Any issue that does not impair PayPal production Payment Services. | • 1st response (or notification to Apple) in no more than 1 business day after receipt of customer's notification or detection of incident through PayPal's monitoring system.<br>• On-going status reports as needed or available thereafter.<br>• Effort on a 8x5 (normal business hours) basis to fix or mitigate the negative impact. Best effort to fix or mitigate within 12 weeks. |

6.1   PayPal will provide the following escalation support and services to Apple:

    6.1.1   24x7x365 access to PayPal's support help desk if Apple suffers a Transaction processing issue

    6.1.2   If Apple suffers a Transaction processing issue, it may contact PayPal immediately and PayPal  shall respond to Apple immediately. PayPal shall use best endeavours to resolve the Transaction processing issue as soon as possible.

    6.1.3.   PayPal will provide Apple with English language support both via email and telephone support. PayPal and Apple will refer to this Service Level Agreement for service contacts and procedures.

**7. Issue Escalation Paths.** The tables below contain succeeding levels of management. Issue Notifications must be done via the contact listed for the issue type prior to escalation.

| **PayPal** | |
|---|---|
| Issue Type | Escalation Path |
| **Relationship Manager** | Diane Hanna |
| **Engagement Manager** | Vishal Malakar |
| **Integration Engineer** | Prosenjit(PJ) Saha |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

APL-EG_06597636



| | |
|---|---|
| **Account Manager** | Janet Vaughan |
| **Technical Account Manager** | Eric Frauendorfer |
| **EMEA Relationship Manager** | Neal Wickens (UK based) |
| **EMEA Account Manager** | Patrick Rooney |
| **EMEA Technical Account Manager** | Sulayman Trawally |
| **Business Escalation** | **Tier 1 – NA:**<br>Janet Vaughan<br><br><br>**Tier 1 – EMEA:**<br>Patrick Rooney<br><br><br>**Tier 2:**<br>Marlo Monico<br>Manager, Customer Care<br><br><br>**Tier 3:**<br>Diane Hanna<br>Director, Global Business Development<br><br><br>**Tier 4:**<br>Rob Regan<br>Sr. Director, Business Development Global Strategic Partnerships<br><br><br>**Tier 5:**<br>Robert Clarkson |

27

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

APL-EG_06597637

DX-3891.027



| | VP, Sales, Retail & Enterprise Solutions |
|---|---|
| | ██████████████████████ |
| **Technical Escalation** | **Tier 1 - NA:**<br>Eric Frauendorfer<br>Technical Account Manager<br><br>██████████████████████ |
| | **Tier 1 - EMEA:**<br>Sulayman Trawally<br><br>██████████████████████ |
| | **Tier 2:**<br>Matt Lehmer<br>Backup Technical Account Manager<br><br>██████████████████████ |
| | **Tier 3:**<br>File Ticket: https://www.paypal-sptam.com/app/ask/origin/apple |
| | **Tier 4:**<br>Brian Beck<br>Senior Manager, Strategic Partners<br><br>██████████████████████ |
| | **Tier 5:**<br>Junaid Razzak<br>Head of PS Americas<br><br>██████████████████████ |

28

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

APL-EG_06597638

## EXHIBIT D

## INFORMATION SECURITY REQUIREMENTS

### INFORMATION SECURITY ADDENDUM

Apple Agreement Name & Date: _Merchant Agreement _____

Apple Agreement Number: _____

Counterparty Name: __PayPal, Inc._____

Addendum Effective Date: __July 5, 2017_____

This Information Security Addendum ("Addendum") is attached to and incorporated in the Merchant Agreement, as entered into by and between Apple Inc. ("Apple") and PayPal, Inc. ("PayPal") (each a "Party" and together the "Parties") as of the above date (the "Agreement"), and is effective as of the Effective Date of the Agreement. Except as specifically amended by this Addendum, Apple and PayPal hereby agree to and incorporate herein, as though fully set forth herein, the terms and conditions set forth in the Agreement, including all appendices, exhibits and other attachments thereto. Unless otherwise defined herein, the capitalized terms shall have the same meaning as such terms in the Agreement. In the event of a conflict between this Addendum and the Agreement, this Addendum shall control.

**WHEREAS,** PayPal provides Apple with goods and/or services pursuant to the Agreement, and in connection with the Agreement, each Party has or may have access to or be provided with, the other Party's Confidential Information (as defined herein) in performing its obligations thereunder;

**WHEREAS,** each Party requires that the other Party and its subcontractors and/or affiliates, comply with the requirements of the Agreement and this Addendum, as related to Confidential Information of the disclosing Party;

**NOW, THEREFORE,** in consideration of the premises and mutual covenants herein contained and for other good and valuable consideration, the sufficiency of which is acknowledged, the Parties hereto agree as follows:

#### 1. Network Security
Each Party shall maintain firewalls to segregate its internal networks from the internet, maintain intrusion detection systems to detect attacks from the internet, and conduct quarterly third-party network vulnerability assessments.

#### 2. Application Security
Each Party shall maintain its software to be secure against the vulnerabilities described in (i) industry best practice guidelines such as the version of the OWASP Top Ten List available as of the Effective Date and (ii) any changes to such industry best practices such as the OWASP Top Ten List after the Effective Date (within a

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

reasonable time after such changes are initially published). The term "OWASP Top Ten List" shall mean the Open Web Application Security Project's Top Ten list (available at https://www.owasp.org/index.php/Category:OWASP_Top_Ten_Project or an updated website, as periodically notified by Apple).

## 3. Vulnerability Management

Each Party shall, using its standard policies consistent with industry best practices, apply manufacturer-recommended security updates to all infrastructure storing or transiting Confidential Information of the other Party. "Confidential Information" shall mean: (i) Confidential Information, as defined in the Agreement, including but not limited to, any information that is disclosed by either Party in its capacity as a disclosing Party to the other Party in its capacity as the recipient, which, at the time it is disclosed, in any form, is identified or designated by the disclosing Party as "confidential," "proprietary," "internal," or reasonably should be known by the receiving Party to be proprietary or confidential information of the disclosing Party; and (ii) Personal Data as defined in the Agreement.

## 4. Electronic Mail; Passwords

Each Party shall ensure that all email communications related to such Party's provision of goods and/or services to the other Party are conducted to and from an email domain owned by such Party. Each Party shall provide the other Party with the domain registration documents proving ownership of said domain(s), upon the other Party's request. Each Party shall develop, comply with, and enforce a complex password requirement at least as restrictive as that described in this Section ("Policy") relevant to the disclosing Party's and/or the disclosing Party's personnel's user access account(s) to any systems, software, equipment, or network that store, process or transmit any Confidential Information of the disclosing Party, and shall ensure that, at all times during which the disclosing Party and/or the disclosing Party's Personnel are providing the receiving Party with services/products, such Policy is automatically enforced by its operating system. The Policy requirements are as follows:

- passwords shall be a minimum of 8 characters in length, and contain characters from three of the following four categories: uppercase letters, lowercase letters, numeric (0-9), and special (!@#$%^&*).
- passwords shall be updated every 90 days, and the operating system shall retain a password history of up to 5 previous instances per user account.

## 5. Data Storage; Data Transmission

Each Party shall store unencrypted Confidential Information of the other Party on devices within the disclosing Party's secure facilities only. Each Party shall never store any Confidential Information of the other Party on any portable storage device, including but not limited to, laptops, tablets, smartphones, flash drives, or removable media, unless such Confidential Information has been encrypted in accordance with Section 6 herein. Each Party shall encrypt, in accordance with the requirements in Section 6 herein, any transmission of Confidential Information of the other Party when transiting networks other than those administered by Apple or PayPal.

## 6. Data Encryption

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY     APL-EG_06597640

Each Party shall ensure that any Confidential Information of the other Party stored outside such Party's secure facilities shall be encrypted with ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and in accordance with industry standards for secure key and protocol negotiation and key management.

## 7. Data Re-Use

Each Party shall only use the other Party's Confidential Information for the purposes enumerated in the Agreement and this Addendum, and shall not distribute, repurpose or share such information across other applications, environments, or business units of the other Party.

## 8. End of Agreement Data Handling

Upon termination or expiration of the Agreement or at any time at either Party's written request, the other Party shall: (i) return to the requesting Party all Confidential Information of such requesting Party, including but not limited to, all paper and electronic files, materials, documentation, notes, plans, drawings, and all copies thereof, and ensure that all electronic copies of such Confidential Information are deleted from the other Party's (and where applicable, its subcontractors') systems; or (ii) if requested by requesting Party in writing, destroy, delete and render unrecoverable (in accordance with the National Institute of Standards and Technology (NIST) Guidelines for Media Sanitization) from the receiving Party's systems (and where applicable, it's subcontractors') all Confidential Information of the requesting Party, and certify in writing within thirty (30) days of the requesting Party's request for destruction that these actions have been completed.

## 9. Security Breach Notification

Each Party shall promptly notify the other if it learns or has reason to believe that any person or entity has breached its security measures, or gained unauthorized access to the other Party's Confidential Information ("Information Security Breach"), and it shall (i) promptly notify the other Party of such discovery, (ii) investigate, remediate, and mitigate the effects of the Information Security Breach, and (iii) provide the other Party with assurances as are reasonably satisfactory to the other Party that such Information Security Breach will not recur.

## 10. Verification

Within three (3) months upon written notification by a requesting Party, such request not to exceed more than once per calendar year, the responding Party shall (i) confirm the responding Party's performance of a data security assessment based on the PCI-DSS compliance requirements; and (ii) confirm with the requesting Party in writing the responding Party's status as PCI-DSS certified.

31

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED APL-EG_06597641

# EXHIBIT E
# MERCHANT APPROVAL

A. **Merchant Approval**. If Merchant approves the use of its Logo in any promotional materials, for the approval to be effective, the approval will be in a form similar to the template set out in Attachment A and will contain the following ("Merchant Approval Email"):

    a. Description of Usage
    b. Expected duration
    c. Delivery method (e.g., email, banner, landing page, etc.)
    d. Territories targeted
    e. Samples of assets

For the avoidance of doubt, PayPal's receipt of the Merchant Approval Email shall constitute written permission.

If Merchant objects to any promotional materials, PayPal and Merchant shall work together in good faith to resolve the objection. If PayPal and Merchant are unable to agree on the promotional materials, PayPal will not use Merchant's Logo.

B. **Revocation of Approval**. If at any time, Merchant decides to revoke permission, Merchant must notify PayPal in writing. PayPal shall suspend further distribution of the promotional materials within two (2) business days of receipt of the notice. To the extent the promotional materials remain under the control of PayPal, PayPal shall remove the promotional materials from further display within two (2) business days of receipt of the notice.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED   APL-EG_06597642

DX-3891.032

**ATTACHMENT A: MERCHANT APPROVAL EMAIL**

This Attachment A describes the email template that will be used to obtain Merchant approval for use of Merchant Logo in PayPal promotional materials.

\*\*\*

To: *Merchant*

From: *PayPal*

Subject: *Logo Approval*

Attachments: *<Samples of Assets>*

Body:

> Dear Merchant,
>
> PayPal is seeking approval for <Usage Name or Description> expected to run from <Start Date> to <End Date>. The marketing will be executed through <Delivery Method> and consists of the attached <Samples of Assets>.  The marketing will be targeted at <Relevant Countries>.
>
> Please respond to this mail with your approval to run the marketing, including the use of any of your trademarks, trade names, service marks, logos, domain names, website screen shots and/or other content contained in the sample assets attached.  By providing your approval, you are also confirming your authority to grant the permissions requested by this email.
>
> Regards,
>
> PayPal

33

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

APL-EG_06597643

DX-3891.033