David P. Chiappetta, Bar No. 172099
DChiappetta@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
Telephone:  415.344.7076
Facsimile:  415.344.7050

Attorneys for Non-Party
Nintendo of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    PLAINTIFF and COUNTER-DEFENDANT,<br><br>  v.<br><br>APPLE, INC.,<br><br>    DEFENDANT and COUNTER-CLAIMANT. | Case No. 4:20-CV-05640-YGR<br><br>NON-PARTY NINTENDO OF AMERICA INC.'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF DX-4075 |

Non-party Nintendo of America Inc. ("NOA") requests the sealing of portions of a document that Apple may submit to the Court as a trial exhibit. That document is designated DX-4075. Nintendo brings this motion pursuant to Civil Local Rules 7-11 and 79-5 and the October 2, 2020 Stipulation Between Epic Games, Inc. and Apple Inc. and Protective Order ("Protective Order") (Dkt. 112). The motion is accompanied by the Declaration of Steven Singer in Support of Non-Party Nintendo of America's Administrative Motion to Seal Portions of DX-4075 ("Singer Decl."). Epic does not object to NOA's sealing request. Apple has indicated it cannot say whether it will oppose.

Civil Local Rule 79-5(b) allows sealing where a "document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law." Fed. R. Civ. P. 26(c)(1)(G) provides a district court with broad discretion to protect "a trade secret or other confidential research, development, or commercial information" from disclosure. A party seeking to seal documents at trial must "articulate compelling reasons supported by specific factual findings." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). As described below, NOA's sealing request meets this standard.

Moreover, NOA has submitted a redacted public version of DX-4075 and requests sealing only Nintendo highly confidential information, leaving other portions of the document unsealed and available to the public. NOA does not object to use of an unredacted version of DX-4075 at trial if (i) monitors that allow public viewing of the document are shut off when the document is displayed, (ii) the public audio stream of the proceedings is disabled when the document is discussed, (iii) the information sought to be sealed is not revealed during the trial proceedings through witness testimony or otherwise, and (iv) only the redacted version of DX-4075 is made available in the public record.

NOA, which is a non-party to this case, produced the document designated DX-4075 to the parties in response to their document subpoenas. DX-4075 is entitled "Nintendo Switch Content License and Developer Agreement" ("CLDA"). This document is critical to Nintendo's[1]

---

[1] NOA is a subsidiary of Nintendo Co., Ltd. ("NCL"), a Japanese corporation. (Singer Decl. ¶ 1.) NCL has many other subsidiaries. (*Id.*) For purposes of this motion only, "Nintendo"

efforts to compete for content developers. A developer must agree to the terms of the CLDA before it can create content for Nintendo's Switch platform. Competition for developers is fierce. Many companies promote platforms that compete with the Switch and those firms, like Nintendo, seek to attract developers. Because the marketplace for developers is so competitive, the terms of Nintendo's CLDA are tremendously important—the CLDA is a key contributor to Nintendo's ability to attract and retain talented developers. In particular, the CLDA's provisions differentiate Nintendo from its competitors and provide Nintendo with a competitive advantage. For instance, the CLDA includes highly confidential terms that offer a unique blend of benefits to developers. (Singer Decl. ¶¶ 6, 8-9.) The CLDA also describes Nintendo's internally developed and highly confidential combination of platform features that make the Switch appealing to developers. (*Id.* ¶ 7.) Allowing competitors to access and use this highly confidential information would significantly harm Nintendo's business and competitiveness. (*Id.* ¶¶ 6-9, 11.) Together with this motion, Nintendo submits redacted and unredacted (sealed) copies of DX-4075 as Exhibit 1.

Given the CLDA's sensitivity, Nintendo treats the agreement as highly confidential and proprietary. (*Id.* ¶ 5.) The CLDA is not publicly available. (*Id.*) Any content developer who wishes to view the CLDA must apply for acceptance into Nintendo's content developer program, receive Nintendo's approval after a selective review, and sign a non-disclosure agreement. (*Id.*) Section 1.6 of the CLDA confirms that the agreement includes confidential information. That provision describes that the CLDA's terms and conditions are confidential and requires developers to maintain that confidentiality. (*Id.*) Accordingly, NOA designated the document "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY" when producing it to the parties under the applicable Protective Order.

Several portions of the CLDA that NOA seeks to have sealed reflect highly confidential and competitively sensitive Nintendo business information, including

- the tools and support that Nintendo provides to its content developers,

---

refers to NCL and its subsidiaries, including NOA, even though NCL and its subsidiaries are separate and distinct entities.

1 • the unique and proprietary combination of features that Nintendo's content
2   platform provides to developers and users,
3 • business strategies relating to Nintendo's relationship with content developers, and
4 • business strategy relating to Nintendo's allocation of geographical responsibilities
5   to different corporate entities.

(*Id.* ¶¶ 6-9, 11.)

For each of these categories, public disclosure would allow a competitor to obtain and exploit highly sensitive information and cause serious competitive harm to Nintendo. For example, a competitor could copy the specific tools and support that Nintendo provides to developers, allowing that competitor to compete more effectively for developers and reducing the number of developers working on content for the Switch. (*Id.* ¶ 6.) Or a competitor could reproduce for its own benefit the proprietary mix of platform features that Nintendo has developed over decades to appeal to developers and users alike. That would undermine the competitive advantage the combination of features supplies to Nintendo. (*Id.* ¶ 7.) Similarly, Nintendo has refined its relationship with content developers for years to ensure that the interaction benefits both Nintendo and the developers, as reflected in the terms of the CLDA. (*Id.* ¶¶ 8-9.) If made public, a competitor could duplicate those business strategies to Nintendo's competitive detriment. (*Id.* ¶ 9.) Nintendo's geographic allocations likewise divulge information that a competitor could use to inflict competitive injury. (*Id.* ¶ 11.)

The risk of competitive harm to Nintendo merits sealing the highly confidential business information described above. *E.g.*, *Century Aluminum Co. v. AGCS Marine Ins. Co.*, No. 11-CV-02514-YGR, 2012 WL 13042825, at *2 (N.D. Cal. Aug. 10, 2012) (sealing confidential information because "competitive harm may result" from public disclosure that would "reveal confidential business information and strategies"); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-CV-02737-BLF, 2015 WL 581574, at *2-3 (N.D. Cal. Feb. 10, 2015) (sealing confidential business information that could be used by competitors); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013) (finding disclosure of information that "competitors could not obtain anywhere else" might result in competitive harm and should be sealed); *XIFIN, Inc. v.*

*Firefly Diagnostics, Inc.*, No. 317CV00742BENKSC, 2018 WL 1244781, at *2 (S.D. Cal. Mar. 9, 2018) (sealing "commercially sensitive business information" reflected in a contract, including "proprietary protocols and processes"). Furthermore, none of the highly confidential business information that NOA seeks to have sealed for competitive reasons appears to be relevant to the claims and defenses at issue in the current case.

Other portions of the CLDA that NOA seeks to have sealed describe highly confidential and sensitive information regarding Nintendo's approach to information security and privacy. (Singer Decl. ¶ 10.) Nintendo carefully guards the confidentiality of this information because (1) if made public, it could enable bad actors to attempt to circumvent the protections and compromise developer and user data; and (2) ensuring the privacy and security of its platform is paramount in competing for both content developers and users. (*Id.*) The methods used by a company to protect the security of its developers and users are highly confidential. For this reason, courts have routinely sealed information that could be used to jeopardize data security. *E.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3092256, at *2 (N.D. Cal. Mar. 16, 2018) (finding compelling reasons to seal information regarding cybersecurity practices); *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2017 WL 1036652, at *5 (N.D. Cal. Mar. 17, 2017) (sealing information that "could make it easier to compromise" product security). Here again, none of the security information NOA seeks to have sealed appears to be relevant to the issues in this case.

NOA's sealing request is particularly strong because of the circumstances here. Non-party NOA was drawn into this litigation because of the parties' document subpoenas, not through any actions of its own. In addition, Nintendo has no control over the proceedings or whether and when the parties might seek to file its highly confidential information in the public record. It would be unfair to publicly disclose Nintendo's irrelevant highly confidential business information reflected in the CLDA just because Apple may want to refer to other portions of the document at trial. Further, Apple—as the party seeking to submit the document to the Court—has not followed the procedure in Civil Local Rule 79-5(d) that requires a party submitting a document to file a motion to seal. Instead, Apple puts that burden on non-party Nintendo, which

would ordinarily simply submit a declaration under Civil Local Rule 79-5(e) to support the submitting party's motion.  What is more, Apple has refused to cooperate with Nintendo to avoid disclosure of its sensitive information by using stipulations with Epic or excerpting the CLDA. Nintendo has no choice but to seek sealing to protect its highly confidential business information.

      For the reasons explained above, NOA respectfully requests that the Court grant its motion to seal.

DATED:  April 30, 2021

s/*David Chiappetta*
David P. Chiappetta, Bar No. 172099
DChiappetta@perkinscoie.com

Attorneys for Non-Party
Nintendo of America Inc.

**CERTIFICATE OF SERVICE**

☒  I hereby certify that on April 30, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

<u>s/ David Chiappetta</u><br>
Attorney