# EXHIBIT 1

## TO

## NON-PARTY NINTENDO OF AMERICA INC.'S

## ADMINISTRATIVE MOTION TO SEAL PORTIONS OF DX-4075

## (REDACTED VERSION)

**You, as an authorized representative of Content Provider, indicate Content Provider's agreement to be bound by these terms by clicking the "Accept" button.**

## Nintendo Switch
## Content License and Distribution Agreement

**Last Updated: November 15, 2019**

This Nintendo Switch Content License and Distribution Agreement (the "**Agreement**") governs the relationship between **Nintendo Co., Ltd.,** 11-1 Hokotate-cho, Kamitoba, Minami-ku, Kyoto, 601-8501, Japan ("**Nintendo**") and you or the entity you represent ("**Content Provider**").

Nintendo and Content Provider are collectively referred to as the "Parties"; each a "Party".

**Nintendo and Content Provider agree as follows:**

1.  **Definitions**

    1.1 ███████████████████████████████████████████
    ███████████████████████████████████████████
    ███████████████████████████████████████████
    ██████████████████████████

    1.2 "**Affiliate(s)**" of a Party means an entity that directly or indirectly controls, or is controlled by, or under common control with that Party.  "Control", for the purpose of this definition, means direct or indirect ownership or control of more than 50% of the voting interests of the subject entity.

    1.3 "**Assignment**" means any type or form of assignment, transfer, sale, sublicense, delegation, encumbrance, pledge, or hypothecation of this Agreement or of a Party's rights or obligations under this Agreement, whether occurring voluntarily or involuntarily.

    1.4 "**Authorized Developer**" means any person or entity that has accepted the Terms of Service and has a valid account to access the NDP.

    1.5 "**Claim**" means any and all threatened or realized third-party claims, demands, actions, suits or proceedings, including, without limitation, civil, criminal and regulatory matters, and those brought by governmental authorities, agencies or any third-party under any federal, state or foreign law or regulations, or the rules of any self-regulatory body (for example, the Entertainment Software Rating Board).

    1.6 "**Confidential Information**" means any information provided to a Party or to a Party's Affiliate ("**Receiving Party**") that is disclosed by the other Party or the other Party's Affiliate, ("**Disclosing Party**"), or by any third-party under an obligation of confidentiality to Disclosing Party, that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential. Nintendo's Confidential Information includes, without limitation, the Development Materials, Guidelines, any materials and information available on the NDP, ███████████████ and the terms and conditions of this Agreement.  Confidential Information will not include any information which: (i) was in the public domain prior to Receiving Party's receipt of the same hereunder, or which subsequently becomes part of the public domain by publication or otherwise, except by the Receiving Party's act or omission; (ii) Receiving Party can demonstrate, through written records kept in the ordinary course of business, was in its possession without restriction on use or disclosure, prior to its receipt of the same hereunder, and was not acquired directly or indirectly from Disclosing Party under an obligation of confidentiality which is still in force; (iii) Receiving Party can show was received by it from a third-party who did not acquire the same directly or indirectly from Disclosing Party under an obligation of confidentiality; or (iv) Receiving Party can

show was independently developed by it without reference to or reliance upon any Confidential Information of Disclosing Party.

1.7 "**Content**" means any software programs developed to be compatible with, and for use and operation solely on, the Nintendo System for distribution in digital or packaged form as authorized by Nintendo Entities. The Content includes any Patches, demonstration versions, and add-on content designed for use with such software program.

1.8 

1.9

1.10    "**Currency**" means any form of resources, credits, monies, currency, or other units or items, whether physical or digital, and recognized by any entity or group of persons as representing any particular value outside the Content that can be transferred as a medium of exchange.

1.11 

1.12

1.13

1.14    "**Effective Date**" means the date of the acceptance of this Agreement by an authorized representative of Content Provider by clicking the "Accept" button or through other means provided by Nintendo and explicitly identified by Nintendo for that purpose.

1.15 

1.16

1.17

1.18

1.19    "**Laws**" means any and all applicable national, federal, state and international laws, rules, regulations, orders, ordinances, regulatory guidance, and industry self-regulations.

1.20    "**Intellectual Property Rights**" means any registered or unregistered rights or applications for rights owned, licensed or otherwise held in patents, trademarks, service marks, copyrights, mask works, trade secrets, trade dress, moral rights, publicity rights and any other similar rights, together with all inventions, discoveries, ideas, technology, know-how, data, information, processes, formulas, drawings and designs, licenses, computer programs, software source code and object code, and all amendments, modifications, and improvements thereto for which such

patent, trademark, service mark, copyright mask work, trade secrets, trade dress, moral rights, or publicity rights may exist or may be sought and obtained in the future.

1.21 ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

1.22 "**NDP**" means Nintendo's developer support website and portal system, currently known as the Nintendo Developer Portal.

1.23 "**Nintendo Entity (ies)**" means collectively or individually, Nintendo and/or its Affiliates.

1.24 "**Nintendo Intellectual Property Rights**" means the Intellectual Property Rights owned, licensed or otherwise held by Nintendo, related to the Development Materials, the Security Technology, any System Update, the Nintendo System and the Nintendo Network.

1.25 ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████

1.26 "**Nintendo Marks**" means all registered and unregistered trademarks, service marks, trade names, domains, logos, brand names owned by Nintendo Entities or graphic icons for representing specific feature of the Nintendo System or Nintendo Network.

1.27 

1.28 

1.29 "**Nintendo System**" means the Nintendo Switch and its successor system(s) designated by Nintendo in its sole discretion.

1.30 "**Patch**" means any bug fixes, updates, modifications, or new versions of the original Content, that is distributed free of charge to end users who have purchased and/or downloaded the Content.

1.31    "**Reverse Engineer (ing)**" means, without limitation, (a) the x-ray, electronic scanning, or physical or chemical stripping of semiconductor components, (b) the disassembly, decompilation, decryption, or simulation of object code or executable code, or (c) any other technique designed to extract source code to facilitate the duplication of a program or product.

1.32    ████████████████████████████████████████████████████████████████
████████████████████████████

1.33    "**Schedule(s)**" means the Nintendo Shop Sales Schedule attached hereto as Schedule 1, any Packaged Content Schedule, and any other schedule entered into by Content Provider in accordance with Section 5.1.

1.34    ████████████████████████████████████████████████████████████████
██████████████████████████████

1.35    "**System Update**" means upgrades, bug fixes or additional features that modify the operating system of the Nintendo System and/or are designed to optimize, enhance or otherwise modify the operation or performance of the Nintendo Network or Nintendo System.

1.36    "**Term**" means the time period from the Effective Date through the expiration or termination of this Agreement in accordance with Section 14.

1.37    "**Terms of Service**" means the Terms of Service and Non-Disclosure Agreement accepted by Content Provider in connection with Content Provider's access to NDP.

1.38    "**Territory**" has the meaning as defined in the individual Schedules.

1.39    ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████

## 2.    Scope and Applicability

2.1    ████████████████████████████████████████████████████████████████

2.2    This Agreement will take precedence over any other terms related to the Content submitted by Content Provider. Nintendo will not be bound by, and hereby objects to, any different and/or additional terms and conditions presented by Content Provider. Any such terms and conditions will become binding on Nintendo only if Nintendo explicitly accepts such terms and conditions in writing.

## 3.    Creation and Submission of Content

3.1    ██████████████████████████  ██████████████████████████████████████
██████████████████████████████████

3.2    ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████

3.3    ████████████████████  ██████████████████████████████████████████
████████████████████████████████████████████████████████████████



3.6 <u>Guidelines</u>.  Content Provider will ensure that the Content and Marketing Material comply with all the Guidelines applicable to the respective items.  Content Provider acknowledges and agrees that the Guidelines do not (a) represent legal advice in relation to the Content or Marketing Material, or (b) diminish, release or otherwise affect Content Provider's warranties, representations, indemnifications or other obligations under this Agreement.



3.9 <u>Currency</u>. Content Provider will ensure that the Content does not permit the end user to obtain Currency within the Content, including but not limited to, for the purposes of gifting, exchange, redemption, transfer, use as a premium, or purchasing anything, whether within, or outside of, the Content or the Nintendo Network.

3.10 

3.11

3.12

3.13

3.14

4.   **Online Service**

4.1



4.2

5. **Distribution of Content**

5.1



5.2

5.3

5.4

6.  **Marketing**



6.1

6.2

6.3

6.4

6.5

6.6

6.7



7. **Intellectual Property Ownership**

7.1 Except for those rights expressly granted to Content Provider in this Agreement, Nintendo will retain whatever rights it owns or has been licensed, and Content Provider will obtain no rights in or to, any Nintendo Intellectual Property Rights.

7.2 Except for those rights expressly granted to Nintendo Entities in this Agreement, Content Provider will retain whatever rights it owns or has been licensed, and Nintendo will obtain no rights in or to any Content Provider Intellectual Property Rights.

7.3 

7.4

8. **Confidentiality**

8.1 

8.2

8.3

NINTENDO HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY



10. **Representations and Warranties**

    10.1    <u>Content Provider's Representations and Warranties</u>.  Content Provider represents and warrants to Nintendo Entities that:

10.1.1  If Content Provider is an individual, (a) he or she is at least legal age of majority in his/her country of residence, or (b) the legal guardian or parent accepts the agreement on behalf of the minor;

10.1.2  If Content Provider is a corporation or other legal entity, (a) it is a duly organized and validly existing entity and has the authority to enter into this Agreement and perform all of its obligations under this Agreement; and (b) a person who accepts this Agreement on behalf of Content Provider, has the right and authority to bind Content Provider to this Agreement;

10.1.3   The execution, delivery and performance of this Agreement does not and will not violate or otherwise conflict with any agreement by which Content Provider may be bound;

10.1.4   Content Provider: (a) is the sole owner of all right, title and interest in and to the Content, Product Information, and Marketing Material; or (b) throughout the Territory and during the Distribution Term, has obtained all necessary licenses or approval of third parties in writing, and will fulfill any obligation imposed by third parties as applicable, and fully paid any royalty, Third-Party Content Fee, or other sum related to the Content for Content Provider to: (i) use such third parties' Intellectual Property Rights in the Content, Product Information and Marketing Material for the purposes contemplated by this Agreement, and (ii) grant to Nintendo Entities the rights set forth in this Agreement;

10.1.5   Content Provider will at all times comply with all applicable Laws of the Territory relating to or in connection with this Agreement, including, without limitation, those relating to data protection, laws against bribery including UK Bribery Act, privacy and export laws and regulations, and all Content, Product Information, Marketing Material and all activities of Content Provider under this Agreement will at all times comply with this Agreement, the Guidelines and all applicable Laws;

10.1.6   None of the Content, Product Information and Marketing Material misappropriate or infringe the Intellectual Property Rights of any third-party in the Territory;

10.1.7   The Content will be delivered to Nintendo Entities free of any bugs, errors, or other operational defects that could materially affect the use and enjoyment of the Content, Nintendo System and Nintendo Network;

10.1.8   The Content, Product Information and Marketing Material do not contain (a) any material that is obscene, libelous or defamatory or that discloses private or personal matters concerning any person, or (b) any computer virus, Trojan horse, spyware, or other contaminating, malicious, or destructive feature; and

10.1.9   

   10.2   <u>Nintendo's Representations and Warranties</u>. Nintendo represents and warrants to Content Provider that:

10.2.1   It is a duly organized and validly existing entity and has the authority to enter into this Agreement and perform all of its obligations under this Agreement; and

10.2.2   The execution, delivery and performance of this Agreement does not violate or otherwise conflict with any agreement by which Nintendo may be bound.

11.   **Disclaimers and Limitation of Liability**

   11.1   <u>Disclaimers</u>. THE NINTENDO INTELLECTUAL PROPERTY RIGHTS, NINTENDO'S CONFIDENTIAL INFORMATION, DEVELOPMENT MATERIALS, GUIDELINES, NINTENDO NETWORK, SECURITY TECHNOLOGY, AND SYSTEM UPDATES ARE MADE AVAILABLE ON AN "AS IS" BASIS WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND. TO THE MAXIMUM EXTENT PERMITTED BY LAW, NINTENDO (ON BEHALF OF ITSELF, ITS AFFILIATES, SUPPLIERS AND LICENSORS) EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES WITH RESPECT TO THE NINTENDO INTELLECTUAL PROPERTY RIGHTS, NINTENDO'S CONFIDENTIAL INFORMATION, DEVELOPMENT MATERIALS, GUIDELINES, NINTENDO NETWORK, SECURITY TECHNOLOGY AND SYSTEM UPDATES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE. CONTENT PROVIDER ACKNOWLEDGES THAT THE NINTENDO NETWORK MAY BE SUBJECT TO DISRUPTIONS, AND THAT NINTENDO MAY DECIDE TO DISCONTINUE OR TERMINATE ALL OR PART OF

THE NINTENDO NETWORK, INCLUDING, WITHOUT LIMITATION, NINTENDO SHOP'S FUNCTIONALITY, AT ANY TIME IN NINTENDO'S SOLE DISCRETION AND WITH OR WITHOUT NOTICE OR REMEDY TO CONTENT PROVIDER.

11.2   <u>Limitation of Liability</u>. TO THE MAXIMUM EXTENT PERMITTED BY LAW, EXCEPT WITH RESPECT TO DAMAGES OR LOSSES CAUSED AS A RESULT OF NINTENDO'S GROSS NEGLIGENCE, FRAUD OR WILLFUL MISCONDUCT, NINTENDO, NINTENDO'S AFFILIATES, SUPPLIERS AND LICENSORS WILL NOT BE LIABLE FOR LOSS OF PROFITS, OR FOR ANY SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF, RELATED TO OR RESULTING FROM THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, THE BREACH OF THIS AGREEMENT, THE SALE OR DISTRIBUTION OF THE CONTENT, THE AVAILABILITY OF THE NINTENDO NETWORK AND THE FUNCTIONALITIES OF THE NINTENDO SYSTEM.

11.3   

## 12.   Indemnifications

12.1   

12.2

12.3

12.4

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

**13.    Changes to the Agreement**

13.1    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████

**14.    Term and Termination**

14.1    Term. This Agreement is effective on the Effective Date and continues for an initial period of three (3) years, renewing thereafter automatically for additional one (1) year periods, unless either Party provide a written notice of non-renewal at least sixty (60) calendar days prior to the expiration of the then current period, or unless earlier terminated as provided for in Section 14.2.

14.2    Termination.

14.2.1    Without prejudice to any right or remedy a Party may have against the other Party, either Party may terminate this Agreement and/or any Schedule effective immediately by giving written notice to the other Party, if the other Party is in breach of this Agreement or any Schedules and such breach continues uncured for fourteen (14) calendar days after receipt of written notice of such breach.

14.2.2    Termination by Nintendo. Without prejudice to any right or remedy Nintendo may have against Content Provider, Nintendo may terminate this Agreement and/or any Schedule effective immediately by giving written notice to Content Provider, if:

(a)    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

(b)    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

(c)    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████

(d)    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

(e)    ████████████████████████████████████████
████████████████████████████████████████████████



14.2.3 ████████████████████████████████████████████████
████████████████████████████████████

14.3 <u>Effect of Termination</u>. Upon expiration or termination of this Agreement, Content Provider will cease all use of the Nintendo Intellectual Property Rights and Nintendo's Confidential Information for any purpose, except expressly permitted under this Agreement or otherwise authorized by Nintendo in writing.  Within thirty (30) calendar days of such expiration or termination of this Agreement for any reason, Content Provider will securely delete or return to Nintendo Entities all Guidelines, writings, drawings, models, data, tools and other materials and information in possession of or under control of Content Provider that constitute or include Nintendo's Confidential Information.  Upon Nintendo Entities' request, Content Provider will provide Nintendo Entities with proof of such deletion in the form of a certification signed by an authorized representative.

14.4 <u>Survival</u>. Sections 1, 3.5, 6.5, 6.6, 7, 8, 9, 10, 11, 12, 14.3, 14.4, 16, and Exhibits A and B, and any other provisions that reasonably may be construed as surviving this Agreement will survive the expiration or termination of this Agreement.

15. **Assignment; Sublicense**



15.1 ████████████████████████████████████████

15.2 ████████████████████████████████████████

15.3 ████████████████████████████████████████

15.4 ████████████████████████████████████████

16. **Miscellaneous**

16.1 <u>Entire Agreement</u>.  Except as otherwise set forth in this Agreement, this Agreement together with any applicable Schedules, Exhibits hereto, the Guidelines, and the Terms of Service constitute the entire agreement between the Parties with respect to subject matter of this Agreement.  Any prior negotiations, representations, agreements and understandings are

extinguished by, and completely expressed by this Agreement.  Unless otherwise expressly provided herein, any amendment or modification to this Agreement must be in writing signed by the both Parties.

16.2     Severability. If any provision of this Agreement is held invalid, void, or unenforceable, wholly or in part, this will not affect the validity of the other provisions of this Agreement.  Such invalid or unenforceable provision will be removed from this Agreement and replaced with a valid and enforceable provision which comes as close as possible to the Parties' intended commercial effect.

16.3     No Waiver. The failure of a Party to enforce any provision of this Agreement will not be construed to be a waiver of such provision or of the right of such Party to thereafter enforce such provision.

16.4     Force Majeure. Neither Party will be liable for any breach of this Agreement occasioned by any cause beyond the reasonable control of such Party, including governmental action, war, terrorism, riot or civil commotion, fire, natural disaster, labor disputes, restraints affecting shipping or credit, delay of carriers, inadequate supply of suitable materials or any other cause that could not with reasonable diligence be controlled or prevented by the Parties.

16.5     Injunctive Relief. Content Provider acknowledges that in the event of its breach of this Agreement, no adequate remedy in money or other damages may be available to Nintendo Entities and that Nintendo Entities will be entitled to seek injunctive or other similar available relief in addition to any additional relief available to Nintendo Entities.

16.6     Attorney's Fees. In the event it is necessary for either Party to this Agreement to undertake legal action to enforce or defend any action arising out of or relating to this Agreement, the prevailing Party in such action will be entitled to recover from the other Party all reasonable attorneys' fees, costs and expenses relating to such legal action or any appeal therefrom.

16.7     Third-Party Rights. Except as expressly stipulated by this Agreement, this Agreement does not confer, and is not intended to confer, any right on any person existing now or in the future who is not a party to this Agreement.

16.8     Notice.  Unless otherwise set forth in this Agreement, any notices relating to this Agreement will be in writing.  All notices relating to this Agreement by Nintendo Entities will be deemed sufficiently given by when sent to Content Provider at the email address or mailing address Content Provider registers on NDP.  All notices by Content Provider to Nintendo relating to this Agreement will be sufficiently given when (a) personally served or delivered; (b) transmitted electronically, with an original sent concurrently by first class mail; or (c) deposited with a guaranteed air courier service, in each case addressed to Nintendo Co., Ltd, 11-1 Hokotate-cho Kamitoba, Minami-ku Kyoto 601-8501, Japan, attention: General Manager of General Affairs Division.  Notice will be deemed effective upon the earlier of actual receipt or three (3) business days after transmittal. Each Party may change its email address or mailing address by giving notice as described herein.

16.9     Governing Law / Jurisdiction.

16.9.1  Americas.  If Content Provider's head office is located in the Americas (as defined in Exhibit A of Schedule 1), this Agreement and the relationship between Nintendo and Content Provider under this Agreement are governed by the laws of the State of Washington, United States of America, without regard to its conflict of laws provisions.  Content Provider irrevocably consents to the jurisdiction and venue of the Federal, state, and local courts located in King County, Washington, U.S.A. in connection with any action, suit, proceeding, or claim arising under or by reason of this Agreement. Content Provider waives all defences for lack of personal jurisdiction and *forum non conveniens*. The United Nations Convention on Contracts for the International Sales of Goods will not apply to this Agreement.

16.9.2  Other countries.  If Content Provider's head office is located in the countries other than the Americas, this Agreement and the relationship between Nintendo and Content Provider under this Agreement are governed by the laws of Japan without regard to its conflict of laws provisions.

Content Provider irrevocably consents to the exclusive jurisdiction of the Tokyo District Court in connection with any action, suit, proceeding, or claim arising under or by reason of this Agreement. The United Nations Convention on Contracts for the International Sales of Goods will not apply to this Agreement.

16.10   <u>Language</u>.  This Agreement is made in the English language and any translated version of this Agreement is provided for reference purpose only.   In the event of any inconsistency between non-English version and the English version, the English version will control.

NINTENDO HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY

NOA-EPIC-APPLE_000115

**Exhibit A (Privacy and Information Security Terms)**





IN THE EVENT OF A BREACH, NINTENDO ENTITIES HAVE THE RIGHT TO CONTROL THE BREACH NOTIFICATION PROCESS, UNLESS APPLICABLE LAWS DICTATE OTHERWISE, AND NOTHING IN THIS AGREEMENT WILL BE CONSTRUED TO LIMIT OR OTHERWISE PREVENT NINTENDO ENTITIES FROM INVESTIGATING, REMEDYING, MAKING NOTIFICATIONS TO PUBLIC AUTHORITIES (INCLUDING DATA PROTECTION AUTHORITIES) OR TAKING ANY OTHER ACTIONS IN RELATION TO THE BREACH.

5.   Content Provider's Representation and Warranties. Content Provider represents and warrants to Nintendo Entities that:



**Exhibit B (Anti-Social Forces)**

This Exhibit B will be applied to Content Provider if it is located in Japan.

1.  Content Provider represents and warrants to Nintendo Entities that:

    (i)    it is not and will not be an Anti-Social Force (defined below);
    (ii)   any of its employees, directors and officers are not and will not be an Anti-Social Force;
    (iii)  it will not give monetary benefits or any other favors to an Anti-Social Force; and
    (iv)   it does not and will not, directly or indirectly; (a) make violent demands, make unreasonable demands beyond the legal liability of Nintendo Entities; (b) use threat or violence in connection with transactions; (c) damage the credit or interfere with the business of Nintendo Entities by spreading false rumors, using fraud or force; or (d) any other acts equivalent to any of the foregoing.

    "**Anti-Social Force**" means an organized crime group ("Boryokudan"), a member of a Boryokudan ("Boryokudanin"), a sub-member of a Boryokudan ("Boryokudan jyunkoseiin"), a corporation related to a Boryokudan ("Boryokudan kanren gaisha"), a racketeer attempting to extort money from a company by threatening to cause trouble at the general stockholders' meeting ("Soukaiya") or acting as if advocating legitimate social causes ("Shakai undou nado hyoubou goro"), or a special intelligence organized crime group ("Tokusyu chinou boryoku syudan"), or other group or person equivalent to any of the foregoing.

2.  If Content Provider breaches the representations and warranties above, Nintendo will be entitled to immediately terminate the Agreement without notice and demand Content Provider to indemnify Nintendo against all damages.  Nintendo will not be liable for any damages, losses or expenses incurred by Content Provider in connection with the termination of this Agreement by Nintendo under this Section.

**Schedule 1:**
**Nintendo Shop Sale Schedule**
**to**
**Nintendo Switch Content License and Distribution Agreement**

If Content Provider submits Content for Distribution in the Nintendo Shop, the following terms apply;

1. **Distribution of the Content**

    1.1 <u>Nintendo as Commission Agent</u>. Content Provider hereby appoints Nintendo as Content Provider's sale commission agent.

    

    1.2

    1.3

    1.4

    1.5

2. **License Grant by Content Provider**

    2.1 Content Provider grants to Nintendo Entities during the Distribution Period and throughout the Territory, a non-exclusive, paid-up, royalty-free license in and to the Content, and all of Content Provider's Intellectual Property Rights associated therewith, necessary and sufficient to permit Nintendo Entities (and all third parties working on their behalf) to (a) host the Content on one or

more servers owned, controlled or authorized by Nintendo Entities; (b) offer the Content for Sale via the Nintendo Network for end users' use; (c) Register a license of the Content (d) advertise, market and promote the Content; and (e) Sell and Distribute the Content.



### 3.    Commission; Payments

3.1   <u>Commission</u>. Nintendo, as Content Provider's sale commission agent, will receive from Content Provider the Commission for each Sale in the Territory.



3.4   <u>Payment Currency</u>. All payments by Nintendo to Content Provider under this Schedule will be made in the Payment Currency set forth in the Payment Currency Schedule as updated from time to time by Nintendo ███████ For Sales in currencies other than the Payment Currency, the foreign currency price and the applicable Transaction Taxes for Sales will be converted to the Payment Currency based upon the monthly average exchange rate posted by OANDA.com for the month such Sale occurs. For example, for a Sale transaction in January, Nintendo would use the OANDA's monthly average rate for January to calculate the currency conversion.

3.5   <u>Transaction Taxes</u>.  In the event the Sale is subject to the Transaction Taxes, responsibility for remittance of the Transaction Taxes will be determined in accordance with <u>Exhibit C</u> to this Schedule.  Exhibit C is subject to change in compliance with the applicable Laws including local tax laws.  Content Provider will promptly and fully indemnify, defend and hold Nintendo Entities harmless against any and all claims by any tax authority in connection with the Transaction Taxes Content Provider is responsible for remitting.

3.6   <u>Withholding Taxes</u>. Content Provider is solely responsible for paying all taxes that are levied on Content Provider in compliance with applicable Laws. In the event that any payment by Nintendo to Content Provider or by Content Provider to Nintendo is subject to any withholding or other similar tax levied by any applicable jurisdiction, the payer will withhold such tax and pay the payee the amount of money after deducting such withholdings. The payer will not be obliged to make gross-up payments to the payee. If reduction of withholding taxes is available in

accordance with an applicable treaty, both parties will cooperate in mitigating any withholding tax burden. In the event any withholding tax is levied on the payment from the payer to the payee, payer will provide payee copies of relevant tax documents evidencing withholding of such taxes.



3.7

4.

5.

6.

7.   **Survival**  In addition to those provisions specified elsewhere in the Agreement, Sections 2.1(ii), (iii), (iv), 3.5, 3.6, 5, 6, 7 and 8 of this Schedule will survive any expiration or termination of this Schedule.

8.   **Definitions**  Capitalized terms not defined below in this Section 8 of this Schedule have the meanings set forth Section 1 of the Agreement.

8.1  "**Commission**" means the percentage set forth in <u>Exhibit B</u>.

8.2  "**Distribute**," "**Distributed**," or "**Distribution**" means a delivery of a single copy of the Content and the Registration of a license for the Content to the account of an end user by a Nintendo Entity.

8.3  "**Final Payable Amount**" means the total amount of payment a Nintendo Entity actually received for Sales from end users during the applicable month, reduced by (where applicable): (i) the Transaction Taxes, (ii) the Commission, (iii) the Refunds, (iv) withholding taxes and (v) Third-Party Content Fees paid by Nintendo Entities to any third party.

8.4

8.5 "**Payment Currency**" means the currencies used for the payment by Nintendo to Content Provider.  The list of the Payment Currency is specified in the Payment Currency Schedule.

8.6 "**Payment Currency Schedule**" means the current version or any future version of the list of the Payment Currency and Minimum Payment Amount.

8.7 

8.8 

8.9 "**Territory**" means NCL Region, NOA Region, NOE Region, NAL Region, NOK Region and/or NHL Region (each as defined in Exhibit A) as selected by Content Provider for the distribution of the specific Content.

8.10 "**Transaction Taxes**" means in relation to a Sale, all applicable value-added taxes, consumption taxes, sales taxes, or similar transaction-based taxes.

**Exhibit A to Schedule 1: Appointment as Commission Agent**

| | | |
|---|---|---|
| ██████ ████ ███ ███ ████ ████████████████████ | ████████ | |
| ████████████ | ████████ | ████████ ████ ██ ██ ████ ████████ ████ █ ███ ████ ████ ████ ████████████████████ |

| | | |
|---|---|---|
| ██████ ████ ███ ███ ████ ████████████████████ | ████████ | |
| ████████████████ | ████████ | ████████████████████████████████ ████████████████████████████ |
| ██████████████████ ██████████████ | | ██████ |
| ████████████████ | ████████ | ████████████████████████████ ████████████████████ |
| ████████████████████ | ████████ | ████████████████████████ |
| ████████████████ | ████████ | ██████ |
| ████████████████████ | ████████ | ████████████████████ |

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

**Exhibit B to Schedule 1: Commission**

Thirty percent (30%) ████████████████████████████

████████████████████

████████████████████████████████████████████████

████████████████████

**Exhibit C to Schedule 1: Transaction Taxes**

1. Content Provider will be solely responsible for remitting the Transaction Taxes to the appropriate tax authorities as required by the applicable local Laws for Sales to end users located in the following countries:

Japan

2. The respective Nintendo Entity will remit the Transaction Taxes to the appropriate tax authorities for Sales to end users located in the following countries:

Countries in which Nintendo Entities offer the Nintendo Shop services other than the countries listed in Section 1 of this Exhibit C above.

NINTENDO HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY