UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br>            Plaintiff, Counter-Defendant <br><br>     v. <br><br> APPLE, INC., <br><br>            Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR <br><br> DECLARATION OF STEVEN SINGER IN SUPPORT OF NON-PARTY NINTENDO OF AMERICA INC.'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF DX-4075 |

I, Steven Singer, declare as follows:

1.  I am currently Senior Vice President Publisher & Developer Relations at Nintendo of America Inc. ("NOA"). NOA is one of many subsidiaries of Nintendo Co., Ltd. ("NCL"), a corporation based in Japan. Although NCL and each of its subsidiaries (including NOA) are separate companies, for purposes of this declaration I will refer to NCL and its subsidiaries together as "Nintendo." The facts stated in this declaration are based on my own personal knowledge and, if called as a witness, I could and would testify to those facts.

2.  In my current role at NOA, I am responsible for managing the relations between Nintendo and its numerous content developers throughout the United States and Latin America. I have been employed with NOA since April 1999. I joined as Vice President – Latin America and was responsible for overseeing operations in the Latin America region. I also provided support for Nintendo's operations in Southeast Asia, India, and the Middle East. In January 2007, I became Vice President – Licensing. In that role, I was responsible for licensing activities relating to Nintendo's brand and accessories. Based on my work experience, I am familiar with Nintendo's business strategies and security protocols relating to content development. Nintendo keeps that information confidential to protect itself, its developer partners, and its content users from potential harm.

3.  I understand that Apple may submit a document designated DX-4075 that contains Nintendo confidential information as a trial exhibit in the above-captioned legal case. I also understand NOA is filing a motion to seal portions of that document, and I make this declaration in support of that motion. I further understand that NOA has filed a highlighted and sealed copy of the document as Exhibit 1 to its motion to seal. I have reviewed the document and explain below why the highlighted portions contain sensitive and highly confidential information that would potentially cause serious harm if publicly released.

4.  I have reviewed the document designated DX-4075, which is entitled "Nintendo Switch Content License and Distribution Agreement" and bears production numbers NOA-EPIC-APPLE_000100-124. For ease of reference, I will refer to that document as the "CLDA." The highlighted portions of the CLDA in the version filed under seal are confidential to Nintendo and would result in harm if disclosed publicly. The CLDA reflects highly confidential information about Nintendo's business strategies, including strategies for its relationship with content developers for the Nintendo Switch. The CLDA also describes proprietary features of Nintendo's content platform for the Nintendo Switch, including security and privacy protections.

5.  Nintendo maintains the CLDA as a confidential document. Nintendo takes extensive steps to limit access to the terms of the CLDA and to protect those terms from becoming public. Before obtaining access to the CLDA, a prospective content developer must follow several steps. The developer must first formally apply to Nintendo's content developer program. If Nintendo accepts the application, the developer must then sign a non-disclosure agreement. Only then can the developer view the CLDA. With respect to its current platform, the Nintendo Switch, Nintendo also requires that developers submit a proposal regarding what they plan to develop along with their development history and prior experience, which Nintendo reviews before any developer is allowed further access into Nintendo's development ecosystem for the Nintendo Switch. Approval by Nintendo is subjective and selective. In addition, the CLDA states in Section 1.6 that its "terms and conditions" are "Confidential Information." That provision requires any developer who signs the CLDA to keep its provisions confidential.

1  Nintendo imposes confidentiality restrictions on the CLDA because its terms reflect sensitive
2  business and security information.

3        6.      The sealed version of the CLDA filed by NOA highlights portions of Sections 1.9,
4  1.11-1.13, 1.15, 1.18, 1.21, 1.25, 3.2, 3.4, 3.12, 5.1-5.3, 6.3-6.4, 6.7, 7.3, 12.2, and Schedule 1
5  Sections 1.1-1.2, 1.5, and 8.7.  The highlighted materials reflect highly confidential information
6  relating to specific tools and support that Nintendo provides to developers in exchange for their
7  efforts to develop content for the Nintendo Switch.  That information is competitively sensitive.
8  Nintendo offers a unique combination of benefits to developers to incentivize them to dedicate
9  time and invest resources to developing content for the Nintendo Switch.  If information about the
10 tools and support provided by Nintendo were disclosed publicly, that would potentially
11 undermine Nintendo's competitive edge in recruiting and retaining developers.  A competitor
12 could copy the tools and support provided by Nintendo, eroding the competitive advantage they
13 create.

14       7.      The sealed version of the CLDA filed by NOA highlights portions of Sections 1.1,
15 1.6, 1.8, 1.11-1.12, 1.17-1.18, 1.27-1.28, 1.34, 3.7, 5.1, 6.4-6.5, 9, Exhibit A, and Schedule 1
16 Sections 5-6 that reflect the highly confidential combination of features for Nintendo's content
17 platform for the Nintendo Switch.  The highlighted information is competitively sensitive
18 because, through years of experience and interactions with content developers and users,
19 Nintendo has invested in and created a proprietary mixture of features that distinguish its
20 Nintendo Switch content platform from competitors' offerings.  Some features maintain and
21 enhance security for developers and users.  Other features make the platform more appealing to
22 and help retain developers and users.  As a result, the array of platform features described in the
23 CLDA reflects Nintendo's competitive strategy.  If the information were released publicly,
24 competitors would be able to emulate Nintendo's approach, which would eliminate any
25 competitive advantage provided by Nintendo's combination of features.

26       8.      The sealed version of the CLDA filed by NOA highlights highly confidential
27 information regarding Nintendo's business strategies for its relationship with content developers.
28 That confidential information includes detailed contract terms relating to:

- the development of content and submission of content for approval by Nintendo, as reflected in highlighted portions of Sections 1.15-1.16, 1.18, 1.39, 2.1, 3.1-3.5, 3.7-3.8, 3.10-3.14, 4.1-4.2, 8.8, 10.1.9, and Schedule 1 Section 4;
- the distribution of content created by developers, as reflected in highlighted portions of Sections 1.12-1.13, 1.25, 1.32, 5.1-5.4, 11.3, Schedule 1 Sections 1.1-1.4 and 2.1, and Exhibit A to Schedule 1;
- content-related payments, as reflected in highlighted portions of Schedule 1 Sections 1.1-1.2, 3.2-3.4, 3.7, 4-6, 8.4, and 8.8 and Exhibit B to Schedule 1;
- marketing activities by developers and Nintendo, as reflected in highlighted portions of Sections 1.21 and 6.1-6.7;
- intellectual property rights for developers and Nintendo, as reflected in highlighted portions of Sections 1.9, 1.32, and 7.3-7.4;
- privacy and information security, as reflected in highlighted portions of Sections 1.6, 1.28, 1.34, 3.7, 5.1, 6.4, 9, and Exhibit A; and
- legal rights and obligations relating to confidentiality, indemnity, modifications to or termination of the CLDA, assignments and sublicensing, and disputes relating to the CLDA, as reflected in highlighted portions of Sections 8.1-8.8, 12.1-12.4, 13.1, 14.2.2-14.2.3, and 15.1-15.4.

9. In general, the various provisions of the CLDA are unique to Nintendo and do not merely reflect industry standard provisions. Public disclosure of the highlighted portions of these contractual provisions could lead to substantial competitive harm to Nintendo. Nintendo has drafted the terms of the CLDA that establish its relationship with developers based on decades of experience in partnering with content creators, selecting a collection of terms that are attractive to and advantageous for both developers and Nintendo. If those confidential terms were publicly disclosed, competitors could use them to Nintendo's detriment to compete for developers by, for example, adopting Nintendo's strategies for establishing a mutually beneficial relationship with content developers. That could lead to developers spending less time developing content for

Nintendo and more time developing content for its competitors, which could adversely affect content generation for the Nintendo Switch and Nintendo's business.

10. The sealed version of the CLDA filed by NOA highlights highly sensitive information relating to Nintendo's approach to data security and privacy. That information appears in Sections 1.1, 1.6, 1.28, 1.34, 3.7, 5.1, 6.4, 9, 10.1.9, Exhibit A, and Schedule 1 Section 8.8. Information security is a serious concern for Nintendo, especially as data breaches have become increasingly common. To protect non-public information of its developers and users, Nintendo imposes strict security and privacy requirements for content developed for the Nintendo Switch. If the security and privacy provisions of the CLDA were made public, that could compromise the data of Nintendo's developers and users. Releasing Nintendo's security and privacy protocols publicly would allow bad actors to attempt to defeat the protections and obtain private or proprietary information.

11. The sealed version of the CLDA filed by NOA highlights portions of Exhibit A to Schedule 1 that describe Nintendo's allocation of responsibilities for different geographical territories to different Nintendo business entities. That information reflects business strategy that is highly confidential and competitively sensitive. Disclosure of the geographic allocation information would allow a competitor to obtain a better understanding of how and where Nintendo devotes resources as it conducts business. A competitor might use that information to put Nintendo at a competitive disadvantage, such as by allocating its own resources in response to and based on Nintendo's strategy. That could harm Nintendo's business.

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of April 2021 in Redmond, WA.

Steven Singer