Steven L. Holley (*pro hac vice* pending)
(holleys@sullcrom.com)
Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588

Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:     (650) 461-5600
Facsimile:      (650) 461-5700

*Attorneys for Non-Party Spotify USA Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EPIC GAMES, INC., <br><br>    Plaintiff, <br><br>    v. <br><br> APPLE INC. <br><br>    Defendant. | Case No. 4:20-cv-05640-YGR-TSH <br><br> **NON-PARTY SPOTIFY USA INC.'S ADMINISTRATIVE MOTION TO SEAL EXHIBITS DX-4491 AND DX-4641** |

Pursuant to Local Civil Rules 7-11 and 79-5, Non-party Spotify USA Inc. ("Spotify") respectfully moves the Court to seal Exhibits DX-4491 and DX-4641, which were listed by Defendant Apple Inc. ("Apple") in its trial exhibit list. Spotify sought Apple's and Epic Games, Inc.'s ("Epic") consent to the relief that Spotify is requesting through this Motion; Epic informed Spotify that it does not object to Spotify seeking to seal Exhibits DX-4491 and DX-4641, and Apple indicated that it takes no position with respect to Spotify's motion to seal at this time.

In support of the Motion, Spotify is submitting the accompanying Declaration of Benjamin Kung, the Declaration of Shane M. Palmer, unredacted versions of Exhibits DX-4491 and DX-4641 for the Court's review, and a Proposed Order.

## FACTUAL BACKGROUND

On April 23, 2021, Apple informed Spotify that two documents Spotify had produced to Apple were listed on Apple's exhibit list for the trial in this action, identified as Exhibits DX-4491 and DX-4641. (*See* Declaration of Shane M. Palmer ¶ 8.) Spotify produced these documents to Apple and Epic Games, Inc. ("Epic") in response to subpoenas that Apple and Epic served on Spotify in this action pursuant to Federal Rule of Civil Procedure 45. (*Id.* ¶¶ 3–4, 7.) As a condition to producing these documents to Apple and Epic, Spotify negotiated with both parties and obtained their agreement to seek from the Court additional confidentiality protections for Spotify's documents. (*Id.* ¶ 5.) In recognition of the competitively sensitive nature of Spotify's information, the parties jointly filed a Stipulated Supplemental Protective Order Governing Discovery from Spotify that would give Spotify the ability to designate documents it produced in this action as "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY," which in turn would prohibit even employees and in-house counsel of Apple and Epic from viewing the documents or the information contained therein except in narrowly limited circumstances.[1] (*Id.* ¶¶ 5–6.) The Court entered that stipulation on February 11, 2021 (Dkt. No.

---

[1] One reason why Spotify sought these heightened protections for its confidential information is because Spotify directly competes with Apple's Apple Music audio streaming service. Recognizing that the information Apple and Epic were seeking from Spotify could give Apple an unwarranted advantage in its competition with Spotify if that information were disclosed to Apple employees or in-house counsel, Spotify took steps to ensure that its proprietary,

407), and Spotify properly designated Exhibits DX-4491 and DX-4641 as containing "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" information when it produced those documents to Apple and Epic.  (*Id.* ¶¶ 6–7.)

## ARGUMENT

Although there is a presumptive right of public access to court records based on common law and First Amendment grounds, "access to judicial records is not absolute," *Kamakana* v. *City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and may be denied by the Court to protect confidential information.  *See Phillips ex rel. Estates of Byrd* v. *General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002).  A party seeking to seal a document or proceedings must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (alteration, citations, and quotation marks omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Moreover, Spotify is not a party to this action and did not voluntarily invoke the Court's jurisdiction; it only produced the information it seeks to seal because Apple and Epic demanded it by invoking the Court's subpoena power.  As a result, Spotify's confidentiality interests should be entitled to special consideration.  *See, e.g.*, *Hunt* v. *Cont'l Cas. Co.*, No. 13-cv-05966 HSG, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (sealing third parties' names where such information "implicates important privacy concerns of nonparties . . . that outweigh the public's interest in disclosure of these judicial records").

Consistent with the heightened protections that Spotify has already obtained in connection with the production of its highly sensitive business information, Spotify seeks to maintain Exhibits DX-4491 and DX-4641 under seal.  Exhibit DX-4491 is a spreadsheet that

---

competitively sensitive information would not be disclosed to Apple employees or any others who might use that information inappropriately to Spotify's disadvantage.

reflects Spotify's analysis of the number of Spotify app users worldwide who used the app on both a mobile device and one or more non-mobile devices, and who used the app on both an iOS mobile device and an Android mobile device, for each year from 2015 through 2020. (Declaration of Benjamin Kung ("Kung Decl.") ¶ 5.) Exhibit DX-4641 is a spreadsheet that reflects Spotify's internal calculations of the monthly active users of Spotify's audio streaming app each month from February 2015 through December 2020, with detailed breakdowns of users by platform type and by operating system. (*Id.* ¶ 6.) The information in these documents comprises Spotify's proprietary data and its analysis of that data, which Spotify keeps confidential and does not disclose to the public. To maintain the confidentiality of the data reflected in Exhibits DX-4491 and DX-4641, Spotify invests in data security measures to prevent unauthorized outside parties from accessing the information, and even restricts access to this data within the company. (*Id.* ¶ 7.)

Here, compelling reasons—including the serious risk of competitive harm to Spotify—warrant keeping Exhibits DX-4491 and DX-4641 under seal. As explained below, the level of competitive harm that Spotify would suffer from any public disclosure of these materials cannot be overstated. Public disclosure of the documents would not only harm Spotify's business and its ability to compete on a level playing field with its biggest competitors, including Apple, but would also harm Spotify in its negotiations with distribution partners and advertisers. As the Supreme Court has explained, "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. The Ninth Circuit has similarly recognized in an unpublished opinion that documents containing confidential and/or proprietary business information are generally protected from public disclosure. *In re Electronic Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008) ("[T]he common-law right of inspection has bowed before the power of a court to insure that its records are not used . . . as sources of business information that might harm a litigant's competitive standing.") (quoting *Nixon*, 435 U.S. at 598); *cf. Sun Microsystems Inc.* v. *Network Appliance*, No. C–08–01641–EDL, 2009 WL 5125817, at *9 (N.D. Cal Dec. 21, 2009) (sealing confidential business information, which if disclosed could cause harm to the parties).

The documents that Spotify seeks to keep under seal reflect competitively sensitive platform- and device-specific information about the number of users of Spotify's audio streaming app over a six-year period.  As Benjamin Kung attests to in his accompanying declaration, Spotify uses this data for a variety of strategic business purposes, including:  developing business strategies to compete with other audio and music streaming app providers, including Apple; identifying and negotiating with potential distribution partners to broaden the availability of the Spotify app across multiple platforms and expand Spotify's subscription business; planning strategic corporate investment decisions to drive sustainable growth and remain competitive in the marketplace; and developing strategies to more effectively monetize Spotify's ad-supported services.  (Kung Decl. ¶ 10.)  The market for audio and music streaming apps and app distribution is highly competitive.  Because Spotify does not directly control a widely used channel for distributing its audio streaming app to a large number of users, its business model not only depends on its ability to acquire content or negotiate licenses with content rights holders on favorable terms, but also requires it simultaneously to negotiate with distribution partners to keep distribution fees and commissions as low as possible.  (*Id.* ¶ 9.)  To compete successfully in the audio streaming market, therefore, Spotify invests substantial time and resources into gathering, maintaining, and analyzing the data underlying Exhibits DX-4491 and DX-4641.  (*Id.*)

If this information in Exhibits DX-4491 and DX-4641 were disclosed publicly, it would give Spotify's audio streaming competitors such as Apple insight into Spotify's internal data and analysis concerning its business operations and relative market share across platforms, including trends in those areas over time.  (*Id.* ¶ 11.)  Such information could be used by Spotify's competitors to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising.  (*Id.*)  For example, competing app developers could use the data to understand trends in Spotify app usage across different platforms and then selectively devote their resources to optimize their apps differently.  (*Id.*)  Exhibits DX-4491 and 4641 are properly sealable in order to prevent Spotify's competitors from getting an unwarranted advantage through access to this data.  *See Opperman* v. *Path, Inc.*, 2017 WL 1036652, at *1 (N.D. Cal., 2017) (explaining that "detailed product-specific financial information, customer information, and

internal reports are appropriately sealable under the 'compelling reasons' standard where that information could be used to the company's competitive disadvantage.")

Additionally, if these documents became public through the trial of this action, third parties who do business with Spotify could use the information in the documents to gain unwarranted leverage over Spotify in contract negotiations. (Kung Decl. ¶¶ 12–13.) If this material were to fall into the hands of distribution platforms or partners, for example, it would undermine Spotify's position in negotiations, undercut deal terms, drive up the price Spotify would pay (consequently impacting its margins), and generally harm Spotify's ability to compete and grow its business. (*Id.* ¶ 12.) Courts in this district have recognized that documents may be sealed in order to avoid giving these types of advantages to an entity's counterparts in business dealings. *See Philips* v. *Ford Motor Co.*, No. 14-cv-02989-LHK, 2016 WL 7374214, at *4 (N.D. Cal. Dec. 20, 2016) (finding that "the need to avoid competitive disadvantage in contract negotiations . . . is a compelling reason that justifies sealing").[2]

## CONCLUSION

Because public disclosure of Exhibits DX-4491 and DX-4641 would cause significant harm to Spotify's business, compelling reasons exist to keep these documents under seal. Accordingly, to the extent these documents are admitted into evidence at trial, the Court should order that these materials be maintained under seal to protect them from public disclosure.

Dated: April 30, 2021

/s/ Brendan P. Cullen
Steven L. Holley (*pro hac vice* pending)
Shane M. Palmer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588
Email:   holleys@sullcrom.com
        palmersh@sullcrom.com

---

[2] In addition, Exhibits DX-4491 and DX-4641 were compiled solely for the purpose of responding to document requests in Apple's and Epic's subpoenas to Spotify. (Kung Decl. ¶ 12.) Although they were compiled from data that Spotify maintains in the ordinary course of its business, these documents are not used or maintained by Spotify in the format in which they were produced to Apple and Epic, and they were not prepared with an eye towards providing a complete view of Spotify's business. (*Id.*) This also weighs in favor of sealing these materials.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brendan P. Cullen
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:   (650) 461-5600
Facsimile:    (650) 461-5700
Email:    cullenb@sullcrom.com

*Attorneys for Non-Party Spotify USA Inc.*