UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br>               Plaintiff, Counter-Defendant<br><br>v.<br><br>APPLE, INC.,<br><br>               Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR<br><br>DECLARATION OF STEVEN SINGER IN SUPPORT OF APPLE'S ADMINISTRATIVE MOTION TO PARTIALLY SEAL EXPERT WRITTEN DIRECT TESTIMONY AND APPLE'S ADMINISTRATIVE MOTION TO PARTIALLY SEAL DEPOSITION DESIGNATIONS |

I, Steven Singer, declare as follows:

1. I am currently Senior Vice President Publisher & Developer Relations at Nintendo of America Inc. ("NOA"). NOA is one of many subsidiaries of Nintendo Co., Ltd. ("NCL"), a corporation based in Japan. Although NCL and each of its subsidiaries (including NOA) are separate companies, for purposes of this declaration I will refer to NCL and its subsidiaries together as "Nintendo." The facts stated in this declaration are based on my own personal knowledge and, if called as a witness, I could and would testify to those facts.

2. In my current role at NOA, I am responsible for managing the relations between Nintendo and its numerous content developers throughout the United States and Latin America. I have been employed with NOA since April 1999. I joined as Vice President – Latin America and was responsible for overseeing operations in the Latin America region. I also provided support for Nintendo's operations in Southeast Asia, India, and the Middle East. In January 2007, I became Vice President – Licensing. In that role, I was responsible for licensing activities relating to Nintendo's brand and accessories. Based on my work experience, I am familiar with Nintendo's business and its strategies relating to content development. Nintendo keeps financial and business strategy information confidential to protect itself from potential competitive harm. That includes information relating to sensitive and specific contract terms negotiated with another

1. entity.

2. 3. I understand that Apple has submitted expert testimony and deposition designations that contain Nintendo confidential information to the Court in the above-captioned legal case. I also understand Apple filed motions to seal portions of those documents (Dkt. 489; Dkt. 505), and I make this declaration in support of those motions. I further understand that Apple has filed highlighted and sealed copies of Written Direct Testimony of Lorin M. Hitt, Ph.D ("Hitt Testimony") and designations from the deposition of Joe Kreiner ("Kreiner Deposition") with the Court. I have reviewed portions of the Hitt Testimony and Kreiner Deposition and explain below why those portions contain sensitive and highly confidential information that would potentially cause serious harm to Nintendo if publicly released.

3. 4. Kreiner Deposition 80:9-12, 83:12-22, 85:21-86:6, 86:14-21, and 87:7-8 (Dkt. 505-1 at 4), reflect information relating to highly confidential provisions of the "Content License and Distribution Agreement" specifically negotiated between Nintendo and Epic. For ease of reference, I will refer to that agreement as the "Epic CLDA." Kreiner Deposition 80:9-12 and 87:7-8 refer to the Epic CLDA, Kreiner Deposition 83:12-22 relates to Section 3.10 of the Epic CLDA, Kreiner Deposition 85:21-86:6 relates to Schedule 1 Section 1.1 of the Epic CLDA, and Kreiner Deposition 86:14-21 relates to Exhibit B to Schedule 1 of the Epic CLDA. The deposition testimony describes the Epic CLDA and its terms that are internal to Nintendo and specific to Epic. Those terms would result in harm if disclosed publicly. The Epic CLDA reflects highly confidential information about Nintendo's business strategies, including strategies for its relationship with Epic. Section 3.10 concerns the submission of content by developers for approval by Nintendo. Exhibit B to Schedule 1 pertains to payments by Nintendo to developers. Schedule 1 Section 1.1 relates to content distribution.

4. 5. Nintendo maintains the CLDA as a confidential document. Nintendo takes extensive steps to limit access to the terms of the CLDA and to protect those terms from becoming public. Before obtaining access to the CLDA, a prospective content developer must follow several steps. The developer must first formally apply to Nintendo's content developer program. If Nintendo accepts the application, the developer must then sign a non-disclosure

agreement. Only then can the developer view the CLDA. With respect to its current platform, the Nintendo Switch, Nintendo also requires that developers submit a proposal regarding what they plan to develop along with their development history and prior experience, which Nintendo reviews before any developer is allowed further access into Nintendo's development ecosystem for the Nintendo Switch. Approval by Nintendo is subjective and selective. In addition, the CLDA states in Section 1.6 that its "terms and conditions" are "Confidential Information." That provision requires any developer who signs the CLDA to keep its provisions confidential. Nintendo imposes confidentiality restrictions on the CLDA because its terms reflect sensitive business and security information.

6. In general, the various provisions of the CLDA are unique to Nintendo and do not merely reflect industry standard provisions. Public disclosure of information relating to the contractual provisions could lead to substantial competitive harm to Nintendo. Nintendo has drafted the terms of the CLDA based on decades of experience in partnering with content creators, selecting a collection of terms that are attractive to and advantageous for both developers and Nintendo. If those confidential terms were publicly disclosed, competitors could use them to Nintendo's detriment to compete for developers by, for example, adopting Nintendo's strategies for establishing a mutually beneficial relationship with content developers. That could lead to developers spending less time developing content for Nintendo and more time developing content for its competitors, which could adversely affect content generation for the Switch and Nintendo's business. In addition, the provisions of the Epic CLDA are specific to Epic and were the result of sensitive negotiations between Nintendo and Epic. The terms of the Epic CLDA could be used against Nintendo by other potential developers during negotiations of a CLDA.

7. Kreiner Deposition 229:7-23, as identified by Apple (Dkt. 505-1 at 5), reflects highly confidential and competitively sensitive information about Nintendo's business practices relating to content distribution, including discounts. Those practices are internal to Nintendo and not public. If a competitor learned details about Nintendo's approach to content distribution, it could use that information against Nintendo and cause competitive injury. For example, a

DECLARATION OF STEVEN SINGER                -3-

1  competitor might adopt the same practices and therefore undermine any competitive advantage
2  the current approach gives Nintendo.

3    8.   Kreiner Deposition 81:16-20, 82:6-83:11, 137:24-138:3, 168:7, and 168:11-20,
4  and Hitt Testimony ¶¶ 114-115, as identified by Apple (Dkt. 489-1 at 5; Dkt. 505-1 at 4-5),
5  include non-public and highly confidential information relating to the terms of agreements
6  between Nintendo and Epic, including the Epic CLDA, that resulted from negotiations between
7  the parties.  That information is competitively sensitive.  Over the course of several years,
8  Nintendo has developed a business relationship with Epic, including agreements relating to
9  content development, to create benefits for both Nintendo and Epic.  If non-public and
10 confidential information about the Nintendo-Epic relationship were disclosed publicly, a
11 competitor could use that information to Nintendo's detriment by copying the unique mixture of
12 benefits that Nintendo provides to Epic and offering those same benefits to Epic and others.  That
13 could lead to Epic spending less time developing content for Nintendo and more time developing
14 content for the competitor.  The competitor might also leverage the proprietary benefits Nintendo
15 provides to Epic to attract other developers, causing them to spend time developing content for
16 the competitor's platform instead of for the Switch.  Overall, if the confidential terms of the
17 Nintendo-Epic relationship were revealed, that could potentially undermine Nintendo's
18 competitive edge in recruiting and retaining developers, including Epic.

19   9.   Hitt Testimony Figure 4, as identified by Apple (Dkt. 489-1 at 5), includes highly
20 confidential information relating to Nintendo's share of purchases of Minecraft, a game available
21 on Nintendo's Switch platform, for the year 2020.  This information is competitively sensitive.
22 Nintendo's percentage of Minecraft purchases reflects the company's business strategy and
23 allocation of resources relating to sales and marketing efforts dedicated to a particular piece of
24 content.  If the information in Figure 4 were released to the public, a competitor could use it to
25 construct a competing strategy designed to undercut Nintendo's practices and hurt is business.

26   10.  Hitt Testimony ¶ 260, as identified by Apple (Dkt. 489-1 at 6), refers to highly
27 confidential information regarding the features and capabilities of Nintendo's Switch platform
28 and how developers might use those features and capabilities.  The information is competitively

DECLARATION OF STEVEN SINGER   -4-

sensitive because, through years of experience and interactions with content developers and users, Nintendo has created proprietary features and capabilities that distinguish the Switch from platforms sold by competitors. Those features and capabilities make the platform more appealing to and help retain developers and users. The platform features and capabilities reflect Nintendo's competitive strategy. If that information were released publicly, a competitor would be able to copy the innovative features and capabilities, eliminating any advantage they provide to Nintendo.

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of May 2021 in Redmond, Washington.

DocuSigned by:

*Steve Singer*

Steven Singer

DECLARATION OF STEVEN SINGER                    -5-