# EXHIBIT 1

*Execution Version*

## Addendum to Developer Program License Agreement
### between
### AMZN Mobile LLC and Apple Inc.

This Addendum to the Developer Program License Agreement ("**Addendum**") between Apple Inc. ("**Apple**") and AMZN Mobile LLC ("**Developer**" or "**You**", with respect to the DPLA)▉ ▉ and supplements and amends the terms of the Apple Developer Program License Agreement (together with all schedules, policies and guidelines related thereto in effect as of the Effective Date collectively, the "**DPLA**") between Developer and Apple. In the event of any conflict or inconsistency between the DPLA and this Addendum, this Addendum shall govern. Apple and Developer are referred to herein as the "**Parties**".

The parties hereby agree to supplement and amend the terms of the DPLA as follows:

## 1.   Definitions

Terms that are defined in the DPLA, if not otherwise defined in this Addendum, shall have the same meaning as in the DPLA. In addition, the following definitions will apply when used in this Addendum:

"**Affiliate**" means with respect to either Party, any entity that directly or indirectly controls, is controlled by, or is under common control with that Party.

"**Amazon.com**" means Amazon.com, Inc.

"**Amazon EST Content**" means video purchases from the Amazon Video Service.

"**Amazon VOD Content**" means video rentals from the Amazon Video Service.

"**Amazon Prime Service**" means the subscription based Amazon Prime membership program as made available in the Territory from time to time during the Term, which includes but is not limited to shipping of physical goods and access to the Amazon Video on demand streaming service.

"**Amazon Prime Video Only Service**" means the subscription based video service that provides access to the video on demand content that is included in the Amazon Prime Service.

"**Amazon Video App**" means the audio-visual content streaming application distributed by Developer for use on iOS devices, tvOS devices and/or Legacy Devices in the applicable territory.

"**Amazon Video Service**" refers to Developer's service that allows end users to discover, access, subscribe to, rent, purchase and view audio-visual content.

**"Amazon Video Service APIs"** means the APIs, urls and other technical guidelines provided by Developer to enable the Legacy Devices to access the Amazon Video Service pursuant to this Agreement.

**"Apple"** refers to Apple Inc. and its subsidiaries involved in distribution through the App Store.

"**Apple TV**" means Apple's device branded as an Apple TV and that is physically connected to an end user's television, uses tvOS and enables streaming of audio visual programs to end users. For the sake of clarity, a change in the name of the Apple TV device will not remove it from this definition.

"**Apple Subscription Video Service**" means a video service containing audio-visual content licensed and/or produced by Apple that is available to customers on a subscription or membership basis on Apple devices and any third party devices.

**"Authorized Devices"** means (i) iOS Products that are iPhones, iPads, or iPod touch devices, including future versions thereof, (ii) 4th generation Apple TV devices, (iii) future generations of Apple TV devices, and (iv) any future devices that are approved by Developer in writing.

"**Change of Control**" means, (i) with respect to Developer (a) any transaction pursuant to which a third party (or multiple third parties) would (x) acquire all or substantially all of the assets or outstanding voting securities or other voting interests of Amazon.com, Inc., (y) merge or be consolidated with Amazon.com, Inc., where as a result of such merger or consolidation less than 50% of the assets or voting securities or interests of the surviving entity would be owned or controlled by the former holders who owned the assets, voting securities or interests of Amazon.com, Inc. immediately prior to such merger or consolidation or (b) any transaction pursuant to which the Amazon Video Service would be owned or controlled by a Third Party Surviving Entity; and (ii) with respect to Apple, any transaction pursuant to which a third party (or multiple third parties) would (x) acquire all or substantially all of the assets or outstanding voting securities or other voting interests of Apple, (y) merge or be consolidated with Apple, where as a result of such merger or consolidation less than 50% of the assets or voting securities or interests of the surviving entity would be owned or controlled by the former holders who owned the assets, voting securities or interests of Apple immediately prior to such merger or consolidation

"**Confidential Information**" means nonpublic information provided by one Party or its Affiliates (the "**Disclosing Party**") to the other Party or its Affiliates (the "**Receiving Party**") pursuant to this Addendum that is designated as Confidential Information. For the sake of clarity, unless the nonpublic information is Confidential Information disclosed pursuant to the terms set forth in this Addendum, Apple Confidential Information (as defined in the DPLA) will be governed by Sections 9.1 and 9.2 of the DPLA (or such other Section of the DPLA that contains the confidentiality provisions applicable to Apple Confidential Information), and Licensee Disclosures (as defined in the DPLA) will be subject to Section 9.3 of the DPLA (or such other Section of the DPLA that contains the

*Execution Version*

confidentiality provisions applicable to Licensee Disclosures). Notwithstanding the foregoing, Confidential Information provided pursuant to this Addendum does not include any information that (i) is or becomes publicly available without breach of this Agreement (provided, however, information that is rumored or reported does not become public based only on such rumors or reports), (ii) was known by the Receiving Party prior to its receipt from the Disclosing Party, (iii) is disclosed to the Receiving Party from any third party, except where the Receiving Party knows, or reasonably should know, that such disclosure constitutes a wrongful or tortious act, or (iv) is independently developed by the Receiving Party without use of any Confidential Information.

**"Consumption Only Experience"** means that end users are able to discover, access and view any content to which they have entitlements through an application but they are not able to subscribe to a service or purchase or rent content.

**"Escalation Issue"** means each of the following: (i) any amendment, update, change or modification to the DPLA, (ii) any new requirements, specifications or guidelines after the Effective Date that are applicable to Developer or the Amazon Video App, including any update, change or modification to the Specifications or the APIs referenced herein, (iii) Apple's failure to begin providing access to the Amazon Video Service on Legacy Devices in any territory following submission by Developer in such territory in accordance with Exhibit A, (iv) if Developer determines, in its reasonable discretion, that the Account Management Process is not sufficient to secure placement of designated titles within the editorially driven sections of the TV App, and (v) any other issue expressly designated as an Escalation Issue or for which a Party has the right to initiate the Escalation Process in this Agreement.

**"Escalation Process"** means a process for escalation of issues in the situations specifically identified as an Escalation Issue in this Addendum, which process shall be the following: (i) the applicable Party with the right to initiate the Escalation Process as set forth in this Addendum (the "**Notifying Party**") may provide written notice to the other Party of an Escalation Issue, which notice will set forth the applicable issue. Thereafter, at the Notifying Party's request, the Parties will discuss the issue within 15 days, and, if, following such discussion, the Notifying Party wishes to escalate the issue further, then each Party will, within an additional fifteen (15) days, provide a senior executive (vice president or higher) to discuss the issue. If, following such process, the Notifying Party is not satisfied with the outcome of the Escalation Process, the Notifying Party shall have a right to terminate this Addendum upon thirty (30) days' written notice; provided that the Notifying Party provide such notice of termination within thirty (30) days following the senior executive meeting.

**"IAP"** means Apple's application programing interface that enables Apple to collect payment from end users for purchases made in applications on iOS, tvOS and Legacy Devices, as made available for use in applications under the DPLA, as amended by this Addendum.

**"Legacy Devices"** means the 2nd and 3rd generation Apple TV devices.

"**Legacy Device Specification**" means Apple's technical and media formatting specifications for delivery of data services or content to Legacy Devices.

"**Legal or Security Issue**" means the applicable Party's reasonable belief that an action or omission will result in actual or substantial likelihood of a violation of law or legal liability or expose that Party to a material security vulnerability.

"**Live Tune-in Features**" means the features described in Apple's Linear Live Tune-In Specification, Version 1.1 and Apple TV Siri Sports Tune-In document, Version 0.1.5, as updated from time to time.

"**Rights Restrictions**" means Developer's reasonable belief that restrictions in the agreements between Developer (or its Affiliates) and third-parties prohibit or restrict Developer from making particular items of content, metadata or information available to Apple for use in accordance with this Addendum, or participating in new features included in updates to the DPLA or the Specifications or that doing so would result in an actual or substantial likelihood of a violation of law or legal liability.

"**Schedule 2**" means Schedule 2 to the DPLA.

"**Specifications**" means collectively, the TV App Specifications, the Legacy Device Specification, the Live Tune-in Specification, the Sports Tune-in Specification, and the Universal Search Specifications and any other specifications that are applicable to Developer and necessary for Developer to participate in the Universal Services or be available on Apple TV or Legacy Devices and, each individually, a "**Specification**".

"**Start Date**" means the first date on which Developer: (i) has made available to Apple in all applicable territories (as described in Section 2.1), an Amazon Video App with at least a Consumption Only Experience for distribution through the App Store for use on 4th generation Apple TVs and iOS, (ii) is participating in all of the applicable Universal Services for iOS and tvOS, in all applicable territories and (iii) (unless otherwise agreed in writing between the parties) has made IAP available in the Amazon Video App submitted to Apple for distribution through the App Store for use on iOS and Apple TV (other than Legacy Devices) in the US, and, (iv) for purposes of Sections 9.2 and 10.1, the Start Date will occur on a country-by-country basis, and IAP must be available in the Amazon Video App made available for distribution through the App Store for both iOS and tvOS in a given country before the Start Date referenced in Sections 9.2 and 10.1 will occur in such country.

"**Third Party Surviving Entity**" means a surviving entity that is not an Affiliate of Amazon.com, Inc. prior to the transaction in which it obtains an ownership interest in the entities that control the Amazon Video Service and which following the relevant transaction owns more than fifty (50%) of the assets, voting securities or interests of Amazon.com or its Affiliate that controls the Amazon Video Service.

4

"**TV App**" means the application provided by Apple on iOS and tvOS that enables end users to (i) search for and select audio-visual content available from multiple video providers; (ii) browse recommendations; (iii) deep link into playback for such audio-visual content in third party digital applications; and (iv) deep link into previously viewed content in third party digital applications to continue playing such content at the point where the user stopped viewing it previously.

"**TV App Data**" means the data described in the TV App Specification, which data is to be provided by Developer to Apple through the TV App API pursuant to this Addendum.

"**TV App API**" means the API(s) documented in the TV App Specification.

"**TV App Features**" means functionality accessible to end users via Authorized Devices that provides end users the ability to view and access customized video content information and recommendations and/or the ability to continue play of previously viewed content.

"**TV App Specification**" means the TV App + Universal Search Guide, Version 1.12, and Watch List Linking Guidelines, as updated from time to time.

"**Universal Search**" means the functionality set forth in the Universal Search Specification that enables end users to search for audio-visual content through Spotlight, Siri and text-based search.

"**Universal Search Metadata**" refers to the data described in the Universal Search – Search Brand Set Up document, version 1.0, UMC Availability Data Interface Specification, version 2.0, and UMC Catalog Data Interface Specification, version 1.2.2, as updated from time to time.

"**Universal Search Specification**" means the documentation identified in Exhibit D, as updated from time to time.

"**Universal Services**" means the following services collectively: the TV App Features, Universal Search, and the Live Tune-in Features.

## 2.  Distribution of Amazon Video App on iOS and tvOS

2.1   Developer will submit the Amazon Video App to Apple for distribution through the App Store for use on Authorized Devices in all countries in which the Amazon Video Service has a presence and Apple has an App Store (to the extent that Developer has not already submitted an Amazon Video App for such device in the territory); provided that Developer may choose not to submit the Amazon Video App, or may choose not to enable IAP in the Amazon Video App, in those territories identified in Exhibit B of Schedule 2 of the DPLA as being territories in which Apple does not collect and remit sales, value added tax, goods and services tax or other applicable taxes (the "**Tax Submission Exception**"). In addition, Developer will be permitted to withdraw the Amazon Video App in a particular country, upon 30 days' prior written notice to Apple, (a) in the event that there is a change in applicable law that impacts applicable taxes for IAP transactions by users in such country

and/or applicable withholding taxes, if such change is not adequately addressed by Apple, or (b) in the event of an existing or potential legal or regulatory problem arising from Apple's tax collection or documentation, or lack thereof, in such country (the "**Tax Withdrawal Exception**" and together with the Tax Submission Exception, the "**Tax Exceptions**"). Developer's election to not submit an Amazon Video App in certain territories based on the Tax Submission Exception (as described above) or to withdraw the Amazon Video App in certain territories based on the Tax Withdrawal Exception (as described above) will not impact its right to the reduced commission rate set forth in Section 10.1 below. The Parties acknowledge that the existing Amazon Video App and the newly submitted or updated Amazon Video App may include a Consumption Only Experience initially and the submission of the Amazon Video App may not take place simultaneously for all territories. Following launch of the Amazon Video App on an Authorized Device, Developer will continue to make the Amazon Video App available for distribution through the App Store on Authorized Devices during the term of this Addendum, subject solely to the termination and suspension rights set forth in this Addendum.

2.2 

### 3. Access to Amazon Video Service in Legacy Devices

Apple will provide access to the Amazon Video Service on all Legacy Devices in all countries in which the Amazon Video Service has a presence, provided that Apple distributed the Legacy Devices in such countries, and provided that Developer complies with the Legacy Device Specification and the requirements set forth in Exhibit A hereto. Notwithstanding the foregoing, if Apple in its reasonable discretion determines it is restricted from continuing to provide such access in Legacy Devices due to a Legal or Security Issue, Apple may initiate the Escalation Process. To the extent Apple deems it necessary to suspend access to the Amazon Video Service on Legacy Devices to avoid or mitigate a Legal or Security Issue, then Apple may do so during the Escalation Process. For the sake of clarity, IAP on Legacy Devices will be limited to the IAP functionality that is available on such devices as of the Effective Date of this Addendum but the commission rate for transactions on Legacy Devices shall be the same as for Authorized Devices. The Parties acknowledge that Developer may not provide access to the Amazon Video Service on Legacy Devices in all territories simultaneously. Apple may review the Amazon Video Service delivery mechanism to ensure that it complies with the Legacy Device Specification. If, after such review, Apple does not begin providing access to the Amazon Video Service on Legacy Devices, then Apple will notify Developer of the reasons for not

6

providing access to the Amazon Video Service and will assist Developer with identifying any issues blocking distribution of the Amazon Video Service and Developer will be responsible for resolving the issues in compliance with the applicable Specifications. If Apple does not begin providing access to the Amazon Video Service on Legacy Devices following submission in accordance with Exhibit A, Developer may initiate the Escalation Process. Following launch of the Amazon Video App on a Legacy Device, Developer and Apple will continue to make the Amazon Video Service available via the Amazon Video Service APIs for access via Legacy Devices, subject to the escalation, termination and suspension rights set forth in this Addendum.

**4.   Universal Search**

4.1   Developer will make the Universal Search Metadata available to Apple and Apple may use such Universal Search Metadata to match the content available in the Amazon Video Service to the metadata received from other sources solely for the purpose of promoting the availability of content in the Amazon Video App, which may include: (i) enabling users to find content available in the Amazon Video App using Siri, Spotlight and text-based search, (ii) allowing users to browse within the TV App to discover content that is available through the Amazon Video App, (iii) recommending content available in the Amazon Video App to users, and (iv) enabling users to deep link from such features to the Amazon Video App for content playback. For any such metadata not tagged as "restricted" in a manner to be agreed upon between the parties, Apple will also be permitted to display the title, cover art, synopsis, release date, genre, content rating, trailer, season/episode information, and information related to the cast and crew in the search results for Universal Search.

4.2   

**5.   TV App/Watch List Features**

5.1   

*Execution Version*



5.2    Developer may use the Account Management Process outlined in Exhibit C hereto to
       designate the titles that it desires that Apple display within the editorially driven sections of
       the TV App, but Apple will make the final decision with respect to such display and
       marketing in its sole discretion. If Developer determines in its reasonable discretion, that
       the Account Management Process is not sufficient to secure placement of designated titles
       within the editorially driven sections of the TV App, then Developer may initiate the
       Escalation Process.

5.3    Developer hereby grants Apple permission during the Term to store and use the TV App
       Data provided to Apple by Developer hereunder solely for the purposes of: (a) providing
       information and recommendations to users of TV App Features, based solely on the TV
       App Data associated with that user's particular Apple ID, (b) enabling a user to deep link to
       content in the Amazon Video App that the TV App Data indicates a user with a particular
       Apple ID is entitled to access; (c) using data regarding the point at which a user stopped
       watching a video or an episodic series associated with that user's Apple ID to recommend
       to that user that they continue to watch a particular video or start watching the next video in
       an episodic series, and (d) servicing, maintaining and improving the technical performance
       of the TV App Features. In addition, Apple may use the TV App Data from a technical
       perspective for the limited purpose of enabling the features expressly agreed upon in this
       Addendum. For the avoidance of doubt, Apple may not use TV App Data or other
       behavioral data provided by Developer to Apple pursuant to this Addendum to (i) inform
       any video content acquisition, original programming or licensing decisions for Apple's
       first party streaming video service or (ii) display advertisements to Developer's end users based
       on TV App Data or a subset of the TV App Data (e.g., licensee end users who watched a
       certain movie or television show). Upon the termination of this Addendum for any reason,
       Apple will cease exercising the rights granted herein to use the TV App Data and delete all
       TV App Data received from Developer within 60 days. If a user revokes consent for
       Developer to share data with Apple, Apple will delete all TV App Data associated with
       such user's Apple ID within 30 days. Under no circumstances does anything in this
       Addendum or the DPLA provide Apple the right to redistribute or resell the TV App Data
       by itself as a stand-alone product or as part of any product or service (except as expressly
       set forth herein), or to sublicense the TV App Data to any third party or make it available
       for display or any other use in third party applications or use the TV App Data to promote
       or sell any other product or advertisements.

*Confidential*

*Execution Version*

5.4 Apple will obtain user consent prior to (i) including the Amazon Video App in the TV App Features provided for an Apple ID and (ii) initiating any call to Developer to send TV App Data associated with any Apple ID. Apple will also provide the user with the ability to withdraw such consent at any time thereafter and to delete their TV App Data from Apple's systems. Apple may alter the wording of the consent and its end user privacy policy from time to time in accordance with applicable law, however Developer may initiate the Escalation Process in connection with any change to the user consent or Apple's privacy policy related to the TV App Data or participation in the TV App Features and may cease providing TV App Data for any or all end users during the Escalation Process.

5.5 Apple will provide a mechanism for Developer to signal Apple to present a new user consent request via the TV App API and require Apple to obtain a new consent when a different Amazon Video Service subscriber is logged in to the Amazon Video App on a device based upon Developer's own subscriber ID system.

5.6 Developer may withhold TV App Data for a user if there is a Legal or Security Issue related to sharing such TV App Data. For clarity, failure to send the TV App Data for the foregoing reasons will not impact Developer's right to the reduced commission rate set forth in Section 10.1 below unless Developer is unable to participate in the TV App Feature in its entirety, or Developer's participation will be diminished in a manner that would frustrate the purposes of this Section 5, in which case Apple will have the right to initiate the Escalation Process.

5.7 The TV App Data will be considered Developer's Confidential Information, and Apple will not use such data or disclose it to third parties other than as expressly permitted hereunder. In addition, Apple will protect such data from unauthorized access, disclosure and use with the same degree of care that Apple uses to protects its own like confidential information, and in no event less than a reasonable degree of care.

**6. Live Tune-In**

If the Amazon Video App includes live television on an Authorized Device, the Amazon Video App will also support the Live Tune-In Features. If other similarly-situated video content distributors are distributing live television on an Authorized Device under substantially similar terms, but are not required to participate in Live Tune-In Features or any subset of the Live Tune-In Features, then Developer may initiate an Escalation Process.

**7. Attribution**

Apple will permit Developer to display a brief (non-persistent) visual attribution on Amazon Video titles when playback of such titles is launched from Universal Search features, the TV App and/or Live Tune-In Features. In addition, Apple will provide attribution to the Amazon Video App when launching playback of Developer's video title from Universal Search features and/or the TV App. If Apple allows any more favorable attribution to another third party participant in the Universal Search Features, then Apple will enable equivalent attribution to Developer.

9

**8.    APIs, Specifications, Parity**

8.1    Any APIs provided by Apple to Developer pursuant to this Addendum for use in providing TV App Data to Apple will be included in the definition of Apple SDKs under the DPLA. Any documentation provided by Apple to Developer pursuant to this Addendum, including, but not limited to, the TV App Specification, the Universal Search Specification, the Live Tune-in Specification, the Sports Tune-in Specification, and the Legacy Device Specification will be included in the definition of Documentation under the DPLA. The metadata, text, descriptions or other information provided by Developer to Apple pursuant to this Addendum will be excluded from the definition of Licensed Application Information under the DPLA, and, for the avoidance of doubt, Apple shall be subject to the restrictions set forth in this Addendum with respect to such metadata, text, descriptions or other information.

8.2    If Apple makes any amendment, update, modification or change to the DPLA (each a "**DPLA Change**"), Developer may initiate the Escalation Process to discuss the DPLA Change with Apple.  Unless the DPLA Change relates to a Legal or Security Issue, the DPLA Change shall not apply to Developer until: (i) Developer accepts the DPLA Change by electronically clicking accept in the user interface or (ii) the Parties complete the Escalation Process initiated by Developer. To the extent access to new versions of Apple Software or participation in a new or modified feature or functionality requires acceptance of the DPLA Change, Developer will not be permitted such access or to be included in the new or modified feature or functionality until Developer accepts and complies with the DPLA Change. Further, Developer may not be permitted to submit an updated version of the Developer's Licensed Application for distribution through the App Store until the DPLA Change has been accepted but Apple will allow Developer to access tools and development materials through the Apple developer portal during the Escalation Process.

8.3    

8.4    Apple will make available to Developer technical support contacts as set forth in Exhibit C hereto who shall be responsible for answering Developer's questions and facilitating Apple support for the Amazon Video App and Amazon Video Service APIs in accordance with Exhibit C attached hereto (the "**Account Management Process**").

8.5

8.6   If Developer is not able to provide particular content or metadata required hereunder due to Rights Restrictions, Developer will not be required to do so, but in the event that, due to Rights Restrictions, Developer is unable to participate in a Universal Service in its entirety, or Developer's participation will be diminished in a manner that would frustrate the purposes of this Addendum, then Apple will have the right to initiate the Escalation Process.

8.7   Except as expressly set forth herein, Developer shall have sole control over the timing of participation in the features described in this Addendum and Developer will not be required to provide any data to Apple prior to commencing participation in a particular feature that requires such data unless necessary to commence testing for a reasonable period prior to commencing participation in such feature. Following launch of the applicable feature, Developer will continue to support the applicable feature during the Term, subject to Section 8.6 and any applicable Escalation Issues.

## 9.   Availability of IAP and Amazon App Transactions Outside of IAP

9.1   Subject to the terms of the DPLA, following the Start Date (except with respect to the US in which IAP must be made available on or before the Start Date and except as set forth in the Tax Submission Exception), the Amazon Video App on Authorized Devices will provide a means for users to use IAP to subscribe to and be billed for the Amazon Prime Service and/or Prime Video Only Service provided within the Amazon Video App when the user has not already subscribed to the Amazon Prime Service or Amazon Prime Video Only Service. Subject to the Tax Exceptions, Developer will use commercially reasonable efforts to make IAP available on the Amazon Video App in all countries in which the Amazon Video Service has a presence and Apple has an App Store within twelve (12) months of the Start Date (with the exception of the US in which it must be made available on or before the Start Date), unless otherwise mutually agreed in writing by the Parties. In addition, users who subscribe to the Amazon Prime Service or the Amazon Prime Video Only Service using IAP will be able to obtain additional video content or video services (e.g., Showtime, transactional VoD rentals) available via the Amazon Video Service via IAP if Developer enables on device purchase for such additional video services and content using the Amazon Wallet (as defined below) in the Amazon Video App. Developer will enable subscription and/or purchase or rental of the same additional video content via IAP that is available via the Amazon Wallet. After the end user turns off auto-renewal through IAP, if the user signs up for an Amazon Video Service subscription outside of the Amazon Video App, then Developer may sell products and services to the end user using the Amazon Wallet within the Amazon Video App to the extent permitted pursuant to Section 9.2 below. Apple will provide a method to indicate to Developer that an end user has turned off auto-renew.

*Execution Version*

9.2    Following the Start Date, Developer may sell additional video services (e.g., subscriptions and content services like Showtime) from within the Amazon Video App using an Amazon developed and controlled purchasing system (the "**Amazon Wallet**") and not using IAP, but in each case, Developer may do so only for users who have signed up for the Amazon Prime Service and/or the Amazon Video Only Service outside of the Amazon Video App prior to making such purchases. Developer will not owe any royalties, commissions, fees or any other payment to Apple for such transactions occurring within the Amazon Video App to the extent that they do not use IAP. For the sake of clarity, the right to sell content in the Amazon Video App using the Amazon Wallet as permitted in this Section 9 will commence on the applicable Start Date as determined on a country-by-country basis, in accordance with the definition of Start Date set forth in Section 1 above.

9.3    Until the earlier of (a) Apple's launch of the ability to display Amazon EST Content in the TV App or (b) October 31, 2018, Developer will be restricted from enabling purchase of Amazon EST Content in the Amazon Video App using the Amazon Wallet or via IAP; provided that following October 31, 2018, such restriction will no longer apply only if Amazon has made commercially reasonable efforts to support Apple's ability to display Amazon EST Content in the TV App. Within 120 days following execution of this Addendum, Apple will make commercially reasonable efforts to scope the work that would be needed for Apple to display Amazon EST Content in the TV App and will provide Developer an estimated date by which Apple would be able to display Amazon EST Content in the TV App; provided nothing herein is intended to create any obligation (express or implied) for Apple to launch such feature. If Developer enables purchase of Amazon EST Content in the Amazon Video App before Apple enables display of EST content in the TV App, then Amazon agrees to make such data available for display within the TV App when Apple launches such feature.

9.4

9.5    Developer will have sole and complete control over whether to offer or suspend access to any end user of the Amazon Video App and prices charged for the Amazon Video Service and any video content subscriptions, purchases or rentals available through the Amazon Video App (subject to Apple's pricing tiers). For the avoidance of doubt, the user interface for the Amazon Video App may provide Amazon account creation for IAP users, and, for customers who have access to the Amazon Wallet, access to the Amazon Wallet for purposes of, purchasing, payment, and account management, including changing address and payment method. For transactions using the Amazon Wallet within the Amazon Video App in accordance with Section 9.2 above, Developer may allow customers to utilize any payment method accepted on any Amazon website and any other web site, web property, application, platform, or online point of presence that is owned or operated by Developer or its Affiliates and may promote the use of any such payment method.

## 10.    Commission Rate for IAP and Amazon Wallet Transactions

10.1  Subject to the terms and conditions of this Addendum, starting on the Start Date, Apple's 30% commission for subscriptions to the Amazon Video Service and any additional video content or video services purchased via IAP in the Amazon Video App on Authorized Devices is hereby amended and restated to 15% for the Term of this Addendum. Such restated commission rate shall remain in effect during the Term of this Addendum. Apple is not entitled to commissions for any products, services or subscription purchases by any means other than through IAP directly on the Authorized Devices or Legacy Devices. For the sake of clarity, the reduced commission rate set forth in this Section 10.1 will commence on the applicable Start Date on a country-by-country basis, in accordance with the definition of Start Date set forth in Section 1 above

10.2  If the commission rate generally applicable to developers pursuant to the then current publicly available Developer Program License Agreement becomes more favorable than the rates set forth in this Addendum, then notwithstanding anything to the contrary in this Addendum, Developer will automatically receive such more favorable rate.   If the Addendum terminates, Developer will be given credit for the time that a subscriber was subscribed to the applicable Amazon service, when relevant under the DPLA for purposes of determining the applicable commission rate related to purchases by such subscriber.

10.3  In no event shall it be a breach of this Addendum or the DPLA if Developer does not comply with the obligations set forth in (i) Section 2 to submit the Amazon Video App for distribution on Authorized Devices, (ii) Section 4 to make the Universal Search Metadata available, (iii) Section 5 to make the TV App Data available or (iv) Section 8 to make IAP available to end users through the Amazon Video App (the "**Commission Triggers**"); provided however, that if Developer does not deliver the Commission Triggers, then Developer shall not be entitled to the reduced commission rate set forth in Section 10.1 and if Developer enables IAP then it will be pursuant to the commission rates available under the then-current generally available Developer Program License Agreement.

## 11.   Marketing; Apple Subscription Video Service

11.1  The parties will mutually agree on announcement of the Amazon Video App and an ongoing marketing plan for promotion of the Amazon Video App when the app is available for distribution via the App Store.

11.2  ████████████████████████████████████████████████████████

## 12.   Taxes

12.1  Notwithstanding anything to the contrary in the DPLA (including Schedule 2), if taxes are required to be deducted or withheld on any payments to be made to Developer under applicable law, then Apple may (i) deduct such taxes from the gross amount owed to

Developer and pay them to the appropriate taxing authority as required by applicable law and (ii) Apple will provide an original receipt or other information evidencing such payment to the tax authority. To the extent the payments to be made are subject to a lower rate of withholding pursuant to an income tax treaty, Apple will withhold at a reduced rate if Developer provides Apple with such documentation as is required under that income tax treaty sufficient to establish Developer's entitlement to the benefit of that reduced rate of withholding tax. Apple will indemnify Developer for any applicable penalties or interest arising from Apple's failure to deduct and withhold the correct amount from payments to Developer as required under Schedule 2 in those countries where Apple is obligated to collect and remit taxes under Section 3.2 and Paragraph 1 of Exhibit B of Schedule 2 to the DPLA, and any additional countries that Apple has elected to include in its tax indemnity obligation pursuant to Section 12.3 below; provided that Apple will not be obligated to indemnify Developer for claims arising from any erroneous claim or representation made by Developer with respect to Developer's entitlement to or qualification for the benefit of a reduced rate of withholding tax and Developer will indemnify Apple for third party claims arising from such erroneous claims or representations by Developer.

12.2  Apple will indemnify, defend and hold harmless Developer and its Affiliates for any claim, loss, damage, settlement, cost, expense or other liability (including interest charges, penalties, fines, assessments, and attorneys' fees) arising from: (i) any inaccuracy in the collection or remittance of any applicable transaction taxes, including sales tax, value added tax, goods and services tax and all similar taxes, by Apple pursuant to the DPLA or the Addendum in Apple's role and tax collection as agent and/or commissionaire as set forth in Schedule 2 (as amended herein) or (ii) inaccuracy of Developer's tax filings that is caused by the inaccuracy or insufficiency of the information or reports provided to Developer by Apple with respect to those countries in which Apple is obligated to collect and remit taxes under Paragraph 1 of Exhibit B of Schedule 2 to the DPLA provided that Apple will not be obligated to indemnify Developer for claims arising from any erroneous claim or representation made by Developer. For the sake of clarity, the foregoing indemnity obligation will apply only with respect to taxes for transactions with users in those countries where Apple is obligated to collect and remit taxes under Paragraph 1 of Exhibit B of Schedule 2 to the DPLA, and any additional countries that Apple has elected to include in its tax indemnity obligation pursuant to Section 12.3 below. Apple shall be solely responsible for any collection of taxes for products or services sold using IAP in those countries where Apple is obligated to collect and remit taxes under Paragraph 1 of Exhibit B of Schedule 2 to the DPLA, and any additional countries that Apple has elected to include in its tax indemnity obligation pursuant to Section 12.3 below.

12.3  At its option, Apple may elect, by providing written notice to Developer, with respect to one or more of the countries identified in Exhibit B of Schedule 2 to the DPLA for which it does not collect taxes on behalf of Developer, that Apple agrees to include such country in its tax indemnity obligation set forth in Sections 12.1 and 12.2 above, in which case the indemnity set forth in Sections 12.1 and 12.2 will apply to Developer's IAP transactions in such country. Apple will be permitted to withdraw any such election upon 30 days' prior written notice to Developer in the event that there is a change in applicable law with respect to taxes for transactions to users in such country, or a change in how Developer is

14

doing business in such country that impacts applicable taxes for transactions to users in such country, or in the event of an existing or potential legal or regulatory problem arising from Apple's tax collection or documentation, or lack thereof, in such country. If Apple withdraws such election, Apple's indemnity obligation set forth in Sections 12.1 and 12.2 will not apply with respect to taxes based on transactions from users in such country occurring after such 30-day notice period.  In the event that Developer elects to distribute the Amazon Video App with IAP in such a country even though Apple has not agreed to provide a tax indemnity pursuant to this Section 12.3 with respect to such country, the indemnity set forth in Sections 12.1 and 12.2 will not apply and any tax indemnity required to be provided by Developer to Apple as set forth in Schedule 2 to the DPLA will apply with respect to IAP transactions in such country.

12.4  Developer will make available its internally developed tax matrices transactions tax by country, state and province for all countries in which the Amazon Prime Service and/or Amazon Prime Video-Only Service is available via IAP, and Developer will also indicate the country of residence of the Amazon Affiliate that will be delivering the Amazon Prime Service and/or the Amazon Prime Video-Only Service and/or receiving payments from Apple under Schedule 2 to the DPLA in each such country (the "**Tax Matrices**").  The Tax Matrices are Confidential Information and shall be treated as Developer's Confidential Information pursuant to this Addendum. Sharing the Tax Matrices is not tax advice and Apple agrees that it will perform its own independent analysis of the sales tax that it is required to collect with respect to any products or services sold using IAP.

## 13.  Confidentiality; Data Usage

13.1  The Receiving Party will use Confidential Information received pursuant to this Addendum only as permitted under this Addendum and the DPLA as modified by this Addendum. Except as provided in this Addendum, the Receiving Party will not disclose such Confidential Information to anyone without the Disclosing Party's prior written consent. Each party will take reasonable steps to protect such Confidential Information of the other party from unauthorized access, dissemination and will use the same degree of care that such party uses to protect its own like information. Except as expressly permitted under this Addendum, neither party will disclose such Confidential Information to anyone other than its employees and contractors and/or its Affiliates' employees and contractors who have a need for access to such information in connection with furthering the purposes of this Addendum, without the prior written consent of the other party. The terms of this Addendum, including its existence, shall be Confidential Information of the parties. The parties may disclose the terms and conditions of this Addendum to their legal and financial advisors who are subject to a written confidentiality agreement that protects such Confidential Information to the same extent as this Addendum. The parties may disclose such Confidential Information if required by law as part of a judicial or regulatory proceeding so long as the party required to disclose takes all reasonable steps available to obtain protective treatment and notifies the other party prior to disclosure in sufficient time to enable such party to seek protective treatment. Neither Party will issue a press release and/or any public statement regarding the Addendum or the relationship between the Parties without the other Party's prior written consent. Nothing in this Addendum will

*Execution Version*

impair either Party's right to develop, acquire, license, market, promote, or distribute products or technologies that perform the same or similar functions as, or otherwise compete with, Licensed Applications, Covered Products, or any other products or technologies that the other Party may develop, produce, market, or distribute, provided such Party does not violate the copyright, patent or trademark rights of the other party. With respect to Confidential Information provided to either party pursuant to this Addendum, nothing in this Addendum (a) prevents the Receiving Party from using, for any purpose and without compensating the Disclosing Party, information learned from Confidential Information retained in the unaided memory of the Receiving Party's personnel who have had access to such Confidential Information; provided that the foregoing does not create a license under any copyright, patent or trademark of the disclosing party  and such use may not violate the copyright, patent or trademark rights of the Disclosing Party, or (b) obligates the Receiving Party to restrict the scope of employment of the Receiving Party's Personnel; provided, however, that this Section does not create a license under any copyright, patent or trademark of the Disclosing Party. The Receiving Party acknowledges that a breach of its obligations under this Section 13.1 could cause irreparable harm to the Disclosing Party as to which monetary damages may be difficult to ascertain or an inadequate remedy. The Receiving Party therefore agrees that the Disclosing Party will have the right, in addition to its other rights and remedies, to seek injunctive relief for any violation of this Section13.1.

13.2   Notwithstanding any provision in the DPLA to the contrary, except as specifically authorized in the Addendum, Apple will not, and will not authorize or enable any other person or entity to, monitor, collect, use, store, or disclose any information pertaining to an end user's interaction with the Amazon Video App or Amazon Video Service once the customer is in the Amazon Video App, including, without limitation, information pertaining to an end user's browsing, purchase, or viewing of content on the Amazon Video Service. In addition, Apple will not request or require that any user provide to Apple any information regarding that user's Amazon user account, including, without limitation, user name, password, or payment information.

13.3   Developer acknowledges that Apple may have access to certain data regarding (i) end users' content selection and purchasing behavior with respect to the Amazon Service, (ii) end users' content selection and purchasing behavior with respect to the Amazon Services through the integration with IAP, and/or (iii) end users' TV App Data (the "**Amazon Data**").  Apple shall not disclose to any third party any Amazon Data unless it is combined by Apple with comparable data from third party video application developers in a manner so that neither Developer nor any of its Affiliates can be traced to, or identified by, the data ("**Blended Data**"). Apple will not disclose to any third party any Amazon Data if the Amazon Data represents 20% or more of the Blended Data in any given report.  Apple may use the Amazon Data solely and exclusively for the purposes specifically provided in this Addendum and for no other purpose.

13.4   Apple agrees that it will not use Amazon Data to conduct targeted marketing or promotion outside of the TV App specifically directed at end users of the Amazon Video Service nor will it use Amazon Data to sell or offer advertising placement to any third party.  For the

sake of clarity, this section is not intended to preclude Apple from (i) conducting targeted advertising of end users of the Amazon Video Service provided that the advertising is not targeted specifically at Amazon Video Service end users based on information obtained from use of the Amazon Video Service through Apple products or (ii) including Amazon Video Service users in marketing or promotion that Apple undertakes generally, so long as they are treated the same as other Apple users.

13.5 The permissions and rights granted to Apple in Section 3.3.49 of the DPLA (or any other Section of the DPLA that contains rights to take the actions described in Section 3.3.49 as of the Effective Date of this Addendum) will not apply to Developer and Developer will not be required to participate in any new features that require Developer to grant Apple any of the rights described in Section 3.3.49 of the DPLA. Further, Licensed Content (as defined in Section 3.3.49 of the DPLA) shall not be considered Licensed Application Information under the DPLA or this Addendum and Apple shall have no right to use or distribute the Licensed Content other than as set forth herein.

## 14. Term; Termination of this Addendum; and Survival

14.1 

14.2 At any time during the Term of this Addendum, either Party may terminate this Addendum in the event of a material breach by the other Party of any of such Party's obligations under this Addendum, provided that: (i) the non-breaching Party provides 30 days' notice to the breaching Party thereof, and (ii) such breach is not cured within 30 days following the date such notice is deemed given. Notwithstanding the terms of the DPLA, if Apple exercises its right to terminate the DPLA for convenience, Apple will do so as to all of Developer's applications distributed pursuant to Developer's DPLA. In addition, if Apple notifies Developer that it intends to exercise any other termination right it has pursuant to the DPLA other than termination for material breach, the Escalation Process will be immediately triggered, with Apple as the Notifying Party.

14.3 If Developer is not in compliance with its obligations set forth in this Addendum (and in the case of a Specification Change or DPLA Change, subject to the grace periods set forth in Sections 8.2 and 8.3 as applicable), Apple will have the right to notify Developer of such non-compliance and will have the right to initiate the Escalation Process. If following the Escalation Process, the issue has not been cured or otherwise resolved to Apple's satisfaction, then Apple will have the ability to terminate the Addendum upon 60 days' written notice. For the sake of clarity, nothing in this Section 14.3 is intended to remove Apple's right to terminate this Addendum for material breach on 30 days' notice as set forth in Section 14.2.

17

14.4 At any time during the Term of this Addendum, Developer may terminate this Addendum for convenience on sixty (60) days' prior written notice. In any case this Addendum shall be terminable immediately upon notice in the event that the other Party: (i) institutes or otherwise becomes a Party, voluntarily or involuntarily, to a proceeding alleging or pertaining to is insolvency or bankruptcy, (ii) is dissolved or liquidated, (iii) makes an assignment of its assets for the benefit of creditors, and/or (iv) initiates or is subject to reorganization proceedings. The supplemental terms set forth in this Addendum shall apply to existing and future versions of the DPLA into which the parties may enter during the Term of this Addendum. Termination of this Addendum will not constitute termination of the DPLA; provided, however, that termination of the DPLA will constitute termination of this Addendum.

14.5 In the event of termination or expiration of this Addendum other than pursuant to Section 14.2 for Developer's material breach, or pursuant to Section 14.3 if the non-compliance is not cured through the Escalation Process, Developer shall have the right to continue to exercise the rights granted in this Addendum and may maintain the features and functionality available in the Amazon Video App and in the Amazon Video Service accessed via Legacy Devices immediately prior to termination or expiration for a period of six (6) months following termination or expiration of this Addendum (the "**Wind Down Period**") so long as such features and functionality were in compliance with the DPLA and this Addendum prior to commencement of the Wind-Down Period and do not give rise to a Legal or Security Issue. For the sake of clarity, during such a Wind Down Period if the termination resulted from a DPLA Change or a Specification Change that could not be resolved through the Escalation Process, Developer will be required to comply in all material respects with all Specifications, requirements under the DPLA and this Addendum that it was obligated to comply with prior to the DPLA Change or Specification Change. During such Wind Down Period upon Developer's request, Apple will continue to support and make available the Amazon Video App and make the Amazon Video Service accessible via the Legacy Devices, as provided by Developer with all of the features and functionality available therein immediately preceding such termination or expiration, unless Apple determines it is unable to do so due to a Legal or Security Issue. For the avoidance of doubt, during such Wind Down Period, (a) the reduced commission rate set forth in Section 10 above will continue to apply, and (b) Developer will be permitted to continue enabling customers to subscribe to services and make purchases and rentals from within the Amazon Video App on all Authorized Devices in the manner permitted in this Addendum using IAP and the Amazon Wallet, and (c) Developer will not be permitted to update the Amazon Video App other than to migrate it to a Consumption Only Experience, or as necessary to address a Legal or Security Issue, fix a bug or as necessary to make the application compatible with the current version of iOS or tvOS. Following termination or expiration of this Addendum, nothing in this Addendum will limit Developer's ability to submit a new or updated application for distribution that complies with the then-current version of Apple's standard DPLA including a Consumption Only Experience, so long as the DPLA remains in effect. Except as necessary to mitigate or prevent a Legal or Security Issue, (i) any termination or expiration of this Addendum shall not impact any end user's right to continue accessing or using the Amazon Video Service via the Amazon Video App, in each case if it was accessed via an Authorized Device prior to expiration of the Wind-

18

*Execution Version*

Down Period and (ii) if a user has purchased a subscription through IAP, Developer will allow such user to continue to access the service for the remainder of the then current term of their subscription.

14.6 In the event of termination of this Addendum pursuant to Section 14.2 for Developer's material breach, Developer may: (i) disable the IAP functionality and the Amazon Wallet functionality in the Amazon Video App, or (ii) continue to maintain and make available the Amazon Video App with IAP functionality on the same terms as would be applicable to any other application developer pursuant to the then current Developer Program License Agreement.

14.7 If, prior to the end of the Wind Down Period, Developer updates the Amazon Video App so that it includes a Consumption Only Experience and Developer gives Apple at least 30 days' notice in writing that it would like to disable recurring subscriptions, then starting at the end of such 30-day notice period, Apple will notify the end user at least 10 days before the end of the end user's current subscription period that the end user's subscription purchased using IAP will no longer automatically renew.

14.8 Upon termination or expiration of this Addendum, Sections 1, 5.7, 12, 13, 14.5, 14.6, 14.7, 14.8, 15, 16 and 17, and any provision which by its express terms states that it will survive, will survive. No termination or expiration of this Addendum will relieve either Party of any liability for any breach of, or liability (including payments owed) otherwise accruing under, this Addendum prior to termination or expiration or during the Wind Down Period.

## 15. Representations and Warranties; Disclaimers.

15.1 Each Party represents and warrants to the other Party that: (i) it has the full corporate right, power and authority to enter into this Addendum and to perform the acts required of it under this Addendum; and (ii) when executed and delivered, this Addendum will constitute a legal, valid and binding obligation of such Party that is enforceable against such Party.

15.2 DISCLAIMERS. EXCEPT AS EXPRESSLY SET FORTH IN SECTION 15.1, NEITHER PARTY MAKES, AND EACH PARTY SPECIFICALLY DISCLAIMS, ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, WITH REGARD TO ALL MATTERS ADDRESSED IN THIS ADDENDUM, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, AND ANY IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE.

## 16. Indemnification; Limitation of Liability.

16.1 Apple agrees to defend and indemnify Developer, its Affiliates, directors, officers and employees (each an "**Amazon Indemnified Party**") from any and all losses, liabilities, damages, taxes, expenses and costs, including attorneys' fees and court costs ("**Losses**") arising from claims brought by a third party against an Amazon Indemnified Party arising from or related to any of the following: (i) Apple's breach of any certification, covenant,

obligation, representation or warranty in this Addendum, and (ii) Apple's use or handling of the Amazon Data, including TV App Data and customer credentials in violation of its privacy policy, any law or regulation, or the scope of the data sharing consent obtained from the user; provided Apple will not be obligated to indemnify Developer to the extent the claim would have been avoided if Developer had signaled Apple to present a new consent request based on the Amazon user log-in, as described in Section 5.5 above.

16.2 Developer agrees to defend and indemnify Apple and its affiliates, directors, officers, and employees (each an "**Apple Indemnified Party**"), from any and all Losses arising from claims brought by a third party against an Apple Indemnified Party arising from or related to any of the following: (i) Developer's breach of any certification, covenant, obligation, representation or warranty in this Addendum and (ii) Apple's use of the TV App Data and/or the Universal Search Metadata provided by Developer in the manner expressly authorized in this Addendum violates or infringes on any third party intellectual property or proprietary rights, or violates any law or regulation.

16.3 With respect to any indemnity obligation pursuant to this Addendum (including, but not limited to, any obligation pursuant to Section 12), the indemnified party shall promptly notify the indemnifying party in writing of any claim for which indemnification is sought hereunder, provided that any failure to so notify will not relieve the indemnifying party from any liability or obligation that it may have under this paragraph, except to the extent of any material prejudice to it resulting from such failure. The indemnifying party will have the right, at its option, to settle or defend the claim, at its own expense and with its own counsel. The indemnified party will have the right, at its option, to participate in the settlement or defense of the claim, with its own counsel and at its own expense, but the indemnifying party will have the right to control the settlement or defense. The indemnifying party may not settle or dispose of any such claim in any manner without the prior written consent of the indemnified party, and will not disclose such settlement to any third party without the prior written consent of the other party (except to the extent required by law, in which case prior notice will be given to the other party in writing and reasonable steps will be taken to obtain protective treatment (if available) to protect the confidentiality of the information).

16.4 TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, EXCEPT WITH RESPECT TO (A) A PARTY'S INDEMNIFICATION OBLIGATIONS IN SECTIONS 12, 16.1 OR 16.2 AND (B) BREACHES OF THE CONFIDENTIALITY PROVISIONS HEREIN, AND (C) VIOLATIONS OF THE OTHER PARTY'S INTELLECTUAL PROPERTY, (I) NEITHER PARTY WILL BE LIABLE FOR PERSONAL INJURY, OR ANY INCIDENTAL, SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF PROFITS, LOSS OF DATA, OR ANY OTHER COMMERCIAL DAMAGES OR LOSSES, ARISING OUT OF THIS ADDENDUM HOWEVER CAUSED, WHETHER UNDER A THEORY OF CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), PRODUCTS LIABILITY, OR OTHERWISE, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY

REMEDY. In no event shall either Party's total liability under this Addendum for all damages (other than as may be required by applicable law in cases involving personal injury) exceed the amount of ten million dollars ($10,000,000.00).

**17. Miscellaneous.**

17.1 <u>Force Majeure</u>. Neither Party will be liable for any failure or delay in its performance under this Addendum due to causes, including, but not limited to, an act of God, act of civil or military authority, fire, epidemic, flood, earthquake, riot, war, sabotage, labor shortage or dispute, and governmental action, which are beyond its reasonable control; provided that the delayed Party: (i) gives the other Party written notice of such cause promptly, and in any event within fifteen (15) days of discovery thereof; and (ii) uses its reasonable efforts to correct such failure or delay in its performance. The delayed Party's time for performance or cure under this Section 17.1 will be extended for a period equal to the duration of the cause or sixty (60) days, whichever is less.

17.2 <u>Independent Parties</u>. Except to the extent described in the DPLA: (a) the Parties to this Addendum are independent parties and neither Party is an agent, representative or partner of the other Party, (b) neither Party shall have any right, power or authority to enter into any agreement for or on behalf of, or incur any obligation or liability of, or to otherwise bind, the other Party, and (c) this Addendum shall not be interpreted or construed to create an association, agency, joint venture or partnership between the Parties or to impose any liability attributable to such a relationship on either Party.

17.3 <u>Notice</u>. Any notice, approval, request, authorization, direction or other communication under this Addendum will be given in writing and will be deemed to have been delivered and given for all purposes (i) on the date of sending, if sent by e-mail during normal business hours and no delivery failure is reported to or by the sender's e-mail server, (ii) one day after dispatch when sent by overnight courier maintaining records of receipt, or (iii) three days after dispatch when sent by certified mail, postage prepaid, return-receipt requested. Notices shall be given to the following address (as such addresses may be amended from time to time):

If to Apple:

Apple Inc.

1 Infinite Loop, Mail Stop 169-4I
Cupertino, California 95014
Attention: Apple Developer Program Licensing, Software Products Legal

With a copy to:

Apple Inc.
1 Infinite Loop, MS 301-4GC
Cupertino, California 95014

*Confidential*

*Execution Version*

Attention:  General Counsel

If to Developer:

If sent by courier or personal delivery:

410 Terry Avenue North
Seattle, WA 98109-5210
U.S.A.
Attn: VP, Amazon Video

If sent by mail:

P.O. Box 81226
Seattle, WA 98108-1226
U.S.A.
Attn: VP, Amazon Video

With a copy to:

410 Terry Avenue North
Seattle, WA 98109-5210
U.S.A.
Attn: AGC, Amazon Video

If sent by mail:

P.O. Box 81226
Seattle, WA 98108-1226
U.S.A.
Attn: AGC, Amazon Video

17.4    No Waiver.  Except with respect to the termination right described in the Escalation Process, the failure of either Party to insist upon or enforce strict performance by the other Party of any provision of this Addendum or to exercise any right under this Addendum shall not be construed as a waiver or relinquishment to any extent of such Party's right to assert or rely upon any such provision or right in that or any other instance; rather, the same shall be and remain in full force and effect.

17.5    Assignment. This Addendum will bind and inure to the benefit of each Party's permitted successors and assigns. Neither Party may assign this Addendum, in whole or in part, without the other Party's written consent; provided however, either Party may assign its rights or delegate its obligations under this Agreement without consent of the other Party to: (i) any entity resulting from any merger, consolidation or other reorganization involving the assigning Party that does not constitute a Change of Control or (ii) any of

its Affiliates; so long as, with respect to (i) and (ii), such assignment or delegation does not have any impact with respect to applicable transaction and/or withholding taxes. If it would have such an impact, then Apple's written consent will be required. In the event of any assignment or delegation pursuant to this Section 17.5, the Party assigning its rights or delegating its obligations will remain jointly and severally liable for any violations of this Addendum by any such entity or Affiliate to the same extent as if such Party had exercised such rights and/or performed such obligations itself, and a breach of this Agreement by any such Affiliate will be deemed a breach by Developer. For the sake of clarity, in the event of any assignment of this Addendum or assignment of any rights hereunder, or any delegation of any obligations hereunder, this Addendum will still apply only to the Amazon Video App. Any attempted assignment in violation of this Section 17.5 will be null and void. In the event of a Change of Control, the other Party may terminate this Addendum on 60 days' written notice.

17.6    Construction; Severability.  The terms of the DPLA apply to any application submitted by Developer to the App Store except as set forth in this Addendum. In the event of any conflict or inconsistency between the DPLA and this Addendum, this Addendum shall control, provided, for the sake of clarity, nothing in this Addendum is intended to remove or limit Apple's rights under the DPLA to suspend Licensed Applications. In the event that any provision of this Addendum conflicts with the law under which this Addendum is to be construed or if any such provision is held invalid by a court with jurisdiction over the Parties, (i) such provision shall be deemed to be restated to reflect as nearly as possible the original intentions of the Parties in accordance with applicable law, and (ii) the remaining terms, provisions, covenants and restrictions of this Addendum shall remain in full force and effect.

17.7    Remedies.  Except where otherwise specified, the rights and remedies granted to a Party under this Addendum are cumulative and in addition to, and not in lieu of, any other rights or remedies which the Party may possess at law or in equity.

17.8    Applicable Law.  This Addendum will be governed by and construed in accordance with the laws of the State of California as applied to residents of California without regard to its conflict of laws principles.

17.9    Jurisdiction and Venue.  Any litigation or other mutually agreed upon dispute resolution proceeding will take place in the Northern District of California. The parties consent to the personal jurisdiction and venue in the state and federal courts located within that district with respect to this Addendum.

17.10   Headings.       The captions and headings used in this Addendum are inserted for convenience only and shall not affect the meaning or interpretation of this Addendum.

17.11   Counterparts.  This Addendum may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

17.12  <u>No Third Party Beneficiaries</u>.  This Addendum is executed and entered into by Apple and Developer solely for their benefit, and no other party (including without limitation any individual employee, officer, director, contractor or agent of either Party) shall be entitled to any of the benefits hereof, or shall have any rights hereunder.

17.13  <u>Entire Agreement</u>. This Addendum, including all Exhibits thereto and the DPLA (as the DPLA is in effect on the Effective Date), constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, regarding such subject matter. No amendment to or modification of this Addendum will be binding unless in writing and signed by a duly authorized representative of both Parties.

**[Signature Page Follows]**

*Confidential*

*Execution Version*



25

## Exhibit A
### Additional Terms Applicable to Service Integration in Legacy Devices

1.  During the term of this Addendum, Developer will provide access to the Amazon Video Service through the Amazon Video Service APIs when accessed via the Legacy Devices. Except as set forth herein, the Amazon Video Service provided through the Amazon Video Service APIs to Legacy Devices will be substantially the same as the service provided via the Amazon Video App submitted for distribution through the App Store. The parties acknowledge that Universal Search, the TV App and the Live Tune-In Features will not be available on Legacy Devices and that users will not be able to rent and/or purchase transactional content on the Legacy Devices. If a user is entitled to view content through the Amazon Video Service, that content will be available for such user to view on the Legacy Devices unless Developer's ability to make such content available is limited by the technical integration with the Legacy Devices.

2.  Subject to the terms of this Addendum, Developer grants Apple a limited, worldwide, non-exclusive, non-assignable, non-transferable, royalty-free license: (a) to use the Amazon Video Service APIs in conjunction with Legacy Devices to enable access to the Amazon Video Service through Legacy Devices; and (b) to enable users to access the Service through Legacy Devices in accordance with this Addendum. The design, features and user interface of the software providing access to the Amazon Video Service in the Apple Products will be determined by Apple.

3.  Subject to the terms of this Addendum, Developer grants Apple (and its agents and contractors acting on Apple's behalf), during the Term, a non-exclusive, non-transferable, worldwide, royalty-free license to use, reproduce, have reproduced, and display the Amazon Marks set forth in Exhibit B hereto in connection with: (a) the use and display of the Amazon Video Service in Legacy Devices; and (b) the marketing, advertising and promotion, in any medium, of the availability of the Amazon Video Service in Legacy Devices; and (c) marketing and promotional materials relating to Legacy Devices. Developer acknowledges and agrees that the Amazon Marks displayed in Legacy Products pursuant to this Addendum may be black and white.

4.  The Legacy Device Specification provided to Developer pursuant to this Addendum will be considered Documentation licensed under the terms and conditions of the DPLA, provided that Developer will be permitted to use the Legacy Device Specification solely for the purpose of its development and internal use of a software implementation to format and serve the Amazon Video Service through the Amazon Video Service APIs to Legacy Devices pursuant to this Addendum. Such implementation, and any updates thereto or new versions thereof, will be subject to Apple's prior review and approval.

5.  The Amazon Video Service provided to Legacy Devices hereunder shall be treated the same as a Licensed Application under the DPLA with respect to any warranties, indemnities and limitations of liability provided by Developer under the DPLA.

*Confidential*

6.  Use of IAP within the Legacy Devices will be subject to the terms and conditions set forth in the DPLA, including Schedule 2, as amended in this Addendum, in the same manner as use of IAP in the Amazon Video App, except as otherwise expressly set forth herein.

*Execution Version*

# Exhibit B
# Amazon Marks


















28

*Execution Version*

## Exhibit C

### Account Management and Developer Technical Support Contacts

Apple Technical Support Contacts

Apple will provide Amazon with a technical support contact (telephone and email) for escalation of technical issues.

Regular Meetings

Upon request from Developer, Developer and Apple will have a periodic, but no less than quarterly, (i) development call to, among other things, identify and discuss development issues and blocking items and (ii) marketing and merchandising call to, among other things identify the titles in that Developer desires that Apple display within the editorially driven sections of the TV App on Authorized Devices.

The Parties agree that they will meet for a quarterly business review on or about every calendar quarter which will be scheduled at a mutually agreeable time and will cover, among other topics, the current state of Amazon Video Service performance, use of the Amazon-recommended content/titles used in the Apple editorialized content marketing efforts, above the line streaming video service marketing efforts (not limited to, but including the App Store, in-store placements, and targeted email marketing), and iTunes community forum discussion/feedback regarding the Amazon Video Service.

*Confidential*

**Exhibit D**

**Universal Search Specification**

UMC Standards and Style Guide, version 1.0
Universal Search Getting Started, version 1.0
Universal Search – Search Brand Set Up, version 1.0
UMC Availability Data Interface Specification, version 2.0
UMC Catalog Data Interface Specification, version 1.2.2
UMC Catalog Data Interface Specification (addendum) Content Ratings and Advisories, version 1.2.2
Universal Search Content Artwork Specification, version 1.1
TV App + Universal Search Guide, version 1.12

*Confidential*