JOHN F. COVE, JR. (SBN 212213)
    john.cove@shearman.com
MATTHEW BERKOWITZ (SBN 310426)
    matthew.berkowitz@shearman.com
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA  94105-2997
Telephone:   415.616.1100
Facsimile:    415.616.1199

*Attorneys for Non-Party Sony Interactive Entertainment LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　*Plaintiff, Counter-defendant,*<br><br>　　　v.<br><br>APPLE INC.,<br><br>　　　*Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR<br><br>**DECLARATION OF DON SECHLER PURSUANT TO LOCAL RULE 79-5(e)(1) IN SUPPORT OF NON-PARTY SONY INTERACTIVE ENTERTAINMENT LLC'S MOTION TO SEAL** |

I, Don Sechler, declare as follows:

1. I am the Vice President and Global Head of Global Partner Development and Relations Business Operations, Planning & Strategy at Sony Interactive Entertainment LLC ("SIE"). I am more than eighteen years of age. Based on my experience with SIE, I am familiar with SIE's protection of its trade secrets and other confidential and proprietary business information and the documents I discuss below. I make this declaration based on personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein. I previously submitted a declaration dated April 28 related to certain Confidential SIE documents that SIE had produced to Apple in discovery that Apple informed SIE had been placed on its exhibit list. I also submitted a declaration dated April 12 related to certain Confidential SIE information in Apple's Proposed Findings of Fact and Conclusions of Law.

2. I make this declaration pursuant to Civil Local Rule 79-5, in support of SIE's motion to seal (i) certain deposition and direct witness testimony given in this litigation and (ii) portions of certain trial exhibits because the public disclosure of this information would reveal SIE trade secrets and competitively-sensitive confidential and proprietary business information, and cause competitive harm to SIE.

3. As described in more detail below, the testimony and documents reflect different aspects of SIE's confidential business strategies, confidential contracting terms, and confidential information about the performance of some of its business initiatives and about user behavior, all of which is highly competitively sensitive. If this information were made public, SIE would suffer competitive harm because it would enable SIE's competitors or other contracting counterparties to gain valuable insight into SIE's business, which SIE has invested significant resources developing, including through trial and error, and better position themselves in any future competition or negotiation with SIE.

4. I understand that, on Thursday, April 29, Epic counsel informed SIE counsel that certain other documents containing SIE confidential information had been placed on Apple's exhibit list. In addition, I have been provided with certain deposition and written testimony excerpts, which I understand were filed with the Court in Apple's Expert Written Direct

Examinations and Four-Hour Deposition Designation Binders, and that one of the Parties indicated may contain confidential information of SIE.  Based on my review of these additional documents and material, I request that the following portions of these SIE confidential documents and testimony excerpts be maintained under seal because the public disclosure of this material is likely to cause competitive harm to SIE.  In providing this declaration, I do not mean to suggest that I necessarily agree with the deponent's or witness's characterization of the contractual terms, the purported financial results, or SIE's purported motivations as described by the witness.

5.      Proposed trial exhibits DX-3582, DX-3660, DX-3988, DX-4425, DX-4493, and DX-4519 are all confidential agreements between Epic and SIE and various amendments.  These agreements contain highly confidential terms of the business relationship between the parties, including revenue sharing, pricing, reporting and performance obligations.  Each of these contracts includes (or incorporates by reference) strict requirements of confidentiality.

6.      Proposed trial exhibit DX-3660 is the "Exclusivity and Comarketing Agreement for 'Fortnite' on PlayStation 4" (the "Fortnite Comarketing Agreement").  The Fortnite Comarketing Agreement is a multifaceted, heavily-negotiated contract that SIE entered into with Epic regarding the marketing of Epic's Fortnite game on SIE's PlayStation 4 platform.  The contract terms are maintained confidentially by the parties because of the competitive harm that would result from public disclosure.  SIE is proposing specific, limited redactions of portions of this Agreement that contain the most competitively sensitive discussion of the negotiated obligations of each party with regard to marketing, exclusivity and financial elements of the payment terms.  Public disclosure of this information could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment, exclusivity and marketing obligations with Epic, which they could use to SIE's detriment if disclosed.

7.      Portions of the deposition excerpts of Joe Kreiner relating to the Fortnite Comarketing Agreement, specifically Kreiner Deposition 35:20–36:6 and 37:4–14, also would cause competitive harm if disclosed because they relate specifically to pricing obligations under

the contract, the public disclosure of which could harm SIE's competitive position as discussed above.

8. Proposed trial exhibit DX-4493 is the "Amendment #1 to Exclusivity and Comarketing Agreement for 'Fortnite' on PlayStation 4" ("Amendment #1"). Amendment #1 to the Fortnite Comarketing Agreement is also a multifaceted, heavily-negotiated contract that SIE entered into with Epic that is subject to strict confidentiality requirements. The contract terms are maintained confidentially by the parties because of the competitive harm that would result from public disclosure. SIE is proposing specific, limited redactions of portions of this Agreement that contain the most competitively sensitive discussion of the negotiated obligations of each party with regard to performance and reporting obligations, marketing, pricing, and other financial elements of Amendment #1. Public disclosure of this testimony could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment, exclusivity and marketing obligations with Epic, which they could use to SIE's detriment if disclosed.

9. Portions of the deposition excerpts of Joe Kreiner relating to Amendment #1 to Exclusivity and Comarketing Agreement for 'Fortnite' on PlayStation 4, specifically Kreiner Deposition 40:2–41:9 and 41:21–42:8, also would cause competitive harm if disclosed because these excerpts purport to reflect SIE's strategies and motivations in negotiating the agreement, contractual pricing terms, and the purported financial results of this cross-platform initiative. Both the contractual terms and the purported user response and financial results relating to SIE's innovative cross-play strategy are particularly sensitive trade secrets. Public disclosure of this testimony would provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment terms with regard to this strategy and would likely cause competitive harm.

10. Proposed trial exhibit DX-3988 is the "Amendment #2 to Exclusivity and Comarketing Agreement for 'Fortnite' on PlayStation 4" ("Amendment #2"). Proposed trial exhibit DX-4519 appears to be an exact duplicate of DX-3988. Amendment #2 to the Fortnite Comarketing Agreement is also a multifaceted, heavily-negotiated contract that SIE entered into

with Epic that is subject to strict confidentiality requirements. It was entered approximately 6 months after Amendment #1, as SIE refined its approach to cross-platform cross play. SIE is proposing specific, limited redactions of portions of DX-3988 and DX-4519 that contain the most competitively-sensitive discussion of the negotiated obligations of each party with regard to performance and reporting obligations, marketing, pricing, and other financial elements of Amendment #2. Public disclosure of these terms could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment, exclusivity and marketing obligations with Epic, which they could use to SIE's detriment if disclosed.

11. The deposition excerpts of Joe Kreiner, Kreiner Deposition 47:20–48:3; 48:20–49:13; 51:12–52:19; and 52:23–53:14, purport to describe specific confidential terms of Amendment #2. These excerpts also purport to reflect SIE's strategies and motivations, contractual payment terms, and the purported results of, and payments made under, the novel cross-platform model. Both the contractual terms and the purported user response and financial results relating to SIE's innovative cross-play strategy are particularly sensitive trade secrets. Public disclosure of this testimony would provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment terms with regard to this innovation and would likely cause competitive harm.

12. Proposed trial exhibit DX-3094, entitled "Cross-Platform Policy, Requirements and Process," is a document that SIE provided to Epic on a confidential basis that reflects SIE's strategies and requirements, including with regard to reporting and pricing, with regard to its Cross-Play initiative with Epic. SIE is proposing specific, limited redactions of portions of DX-3094 that reflect the most competitively sensitive reporting and pricing requirements. Public disclosure of these terms could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment, exclusivity and marketing obligations with Epic, which they could use to SIE's detriment if disclosed.

13. Proposed trial exhibit DX-3582, entitled "PlayStation 4 Cross-Platform Policy Schedule to the PlayStation Global Developer and Publisher Agreement" is a confidential agreement between Epic and SIE setting out the parties' rights and obligations with respect to cross-platform gameplay.  Proposed trial exhibit DX-4425 is an earlier iteration of DX-3582.  SIE is proposing specific, limited redactions of portions of DX-3582 and DX-4425 that reflect the most competitively sensitive reporting and pricing obligations and financial terms of the contract.  Public disclosure of these terms could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment, pricing and reporting obligations under the contract, which they could use to SIE's detriment if disclosed.

14. Proposed trial exhibit DX-3433 is email exchange between employees of Epic and employees of SIE engaged in confidential negotiations over an agreement to expand SIE's cross-platform gameplay.  The exchange contains discussions of potential contracts terms, including pricing and revenue sharing, reporting and performance obligations, SIE's business strategies, and the potential economic benefits and drawbacks of the concepts being discussed, including some claims purportedly based on confidential information about results of related programs. The public disclosure of this information would subject SIE to competitive harm if disclosed to competitors.  SIE is proposing specific, limited redactions of portions of DX-3433 that reflect the most competitively sensitive elements reporting and pricing obligations and financial terms of the contract.   In addition, Kreiner Deposition 215:14–23 contains testimony that purports to describe confidential negotiations between SIE and Epic regarding cross-play.  For the reasons discussed above, public disclosure of this testimony could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential terms with Epic and other game developers and would likely cause competitive harm if disclosed.

15. Proposed trial exhibit DX-3125 is an email exchange between Epic and SIE engaged in confidential negotiations over a potential agreement to expand SIE's cross-platform gameplay.  The exchange contains discussions of SIE's business strategies, potential economic

benefits and drawbacks of the concepts being discussed, claims of results based on confidential performance results, potential market size, and other issues of competitive significance. SIE is proposing specific, limited redactions of portions of DX-3125 that reflect the most competitively sensitive elements of the exchange. The public disclosure of this information would subject SIE to competitive harm if disclosed to competitors or to actual or potential contract counterparties.

16. Proposed trial exhibit DX-3865 is email exchange between Epic and SIE engaged in confidential negotiations over an agreement to expand SIE's cross-platform gameplay. The exchange contains a discussions of potential contracts terms and contract structures, SIE's business strategies, and the potential economic benefits and drawbacks to SIE of the concepts being discussed. SIE is proposing specific, limited redactions of portions of DX-3865 that reflect the most competitively sensitive elements of the exchange. The public disclosure of this information would subject SIE to competitive harm if disclosed to competitors.

17. The deposition excerpt of Joe Kreiner, Kreiner Deposition 77:6–78:6, purports to describe certain contractual payment terms and other contractual obligations. Public disclosure of this testimony could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential terms with Epic and other game developers and would likely cause competitive harm if disclosed.

18. Written Direct Testimony of Lorin M. Hitt, Ph.D ("Hitt Testimony") Figure 4 purports to reflect confidential sales data for the Minecraft game on Sony PlayStation. Public disclosure of this confidential sales data in this testimony could provide SIE's competitors or other contracting counterparties with information regarding SIE's sales performance and would likely cause competitive harm if disclosed.

19. Hitt Testimony Paragraphs 114–15 purport to describe SIE's business strategy and commercial relationship with Epic based on the witness's review and interpretation of terms in confidential agreements between the parties. Public disclosure of this testimony could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment terms with Epic and other game developers and would likely cause competitive harm if disclosed.

20. Hitt Testimony Paragraph 163 purports to describe the terms of confidential contracts between SIE and Epic regarding pricing and payment structures. Public disclosure of this testimony could provide SIE's competitors or other contracting counterparties with information regarding SIE's confidential business strategies and negotiations of confidential payment terms with Epic and other game developers and would likely cause competitive harm if disclosed.

21. In submitting this motion, SIE has not attempted to redact or keep under seal all aspects of the agreements or information, but has limited the proposed redactions in order to keep the request narrowly tailored.

22. I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 3rd day of May, 2021.

DON SECHLER