CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
KATHERINE B. FORREST (*pro hac vice*)
kforrest@cravath.com
GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
J. WESLEY EARNHARDT (*pro hac vice*)
wearnhardt@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
JUSTIN C. CLARKE (*pro hac vice*)
jcclarke@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant*
*Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>          Plaintiff, Counter-defendant,<br><br>      v.<br><br>APPLE INC.,<br><br>          Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH<br><br>**EPIC GAMES, INC.'S ADMINISTRATIVE MOTION TO SEAL LIMITED PORTIONS OF THE PARTIES' TRIAL EXHIBITS AND DEPOSITION TESTIMONY AND ANY REFERENCES AT TRIAL TO THE INFORMATION SOUGHT TO BE SEALED**<br><br>Trial: May 3, 2021<br>Courtroom: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

Pursuant to Civil Local Rules 7-11 and 79-5(d), Plaintiff Epic Games, Inc. ("Epic") hereby moves the Court for an administrative order sealing certain limited portions of the parties' trial exhibits and deposition testimony and prohibiting public references at trial to the information sought to be sealed. Epic's Exhibit List was filed on April 25, 2021, *see* Dkt. 448 and 482, and Epic lodged its exhibits with the Court on April 29, 2021. Epic's final Exhibit List includes a total of 1336 exhibits, 16 of which contain information Epic contends is sealable under controlling authorities and the Local Rules. *See* L. R. 79-5 (defining "sealable" "document[s], or portions thereof," as being "privileged, protectable as a trade secret or otherwise entitled to protection under the law"). Defendant Apple Inc.'s ("Apple") Exhibit List, *see* Dkt. 481, identifies a total of 2285 exhibits, 36 of which contain information Epic contends is sealable under controlling authorities and the Local Rules. In particular, these trial exhibits and deposition testimony contain: (1) third-party business information that is confidential and highly sensitive to Epic's business partners, including, among other things details of unannounced products and confidential pricing and financial terms of commercial agreements that if revealed, would impact those third parties' competitive standing; and (2) specific details relating to anti-fraud or anti-cheat mechanisms within Fortnite which if made public would allow bad actors to circumvent those mechanisms.

Accordingly, Epic moves to seal limited portions of the parties' respective trial exhibits and deposition testimony and live trial testimony directly related thereto. Epic's requests are narrowly tailored. Epic's motion implicates fewer than 2% of the more than 3,600 documents identified as potential trial exhibits in this case. Moreover, where possible, Epic has limited its request to seal to an individual page or pages containing the sensitive information, thereby making it possible for public, redacted versions of the materials to be made available. Apple has filed a similar motion. *See* Dkt. 577. Epic is filing this motion to seal, along with a concurrently filed declaration of Joseph Kreiner describing the specific justification for sealing each document at issue. Epic will continue to meet and confer with Apple regarding redactions where possible.

1    Epic does not anticipate that the Court will rule on every exhibit or deposition
2    excerpt at this time, and understands that the Court may prefer to defer a decision on any specific
3    exhibit until such time as the document is used at trial, if it is used at all.  *See* Dkt. 547 (Pretrial
4    Order No. 7 Re: Third Party Administrative Motions To Seal, at 5) (deferring consideration of
5    sealing various documents relating to third parties "[w]ithout knowing more about how these
6    documents will be used").  Accordingly, Epic provides the legal and factual bases for the sealing
7    of these materials so that if and when these exhibits are offered for admission, or the deposition
8    testimony is used, the Court will have the information necessary to rule on the sealing of the
9    exhibit or deposition testimony and any trial testimony related thereto.

## ARGUMENT

11   Local Rule 79-5 provides that documents, or portions thereof, may be sealed if a
12   party "establishes that the documents, or portions thereof, are privileged, protectable as a trade
13   secret, or otherwise entitled to protection under the law."  Civ. L. R. 79-5(b).  The test applied is
14   whether "compelling reasons supported by specific factual findings . . . outweigh . . . the public
15   policies favoring disclosure."  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010)
16   (internal quotation and citation omitted).  "In general, 'compelling reasons' sufficient to
17   outweigh the public's interest in disclosure and justify sealing court records exist when such
18   'court files might have become a vehicle for improper purposes,' such as the use of records to
19   gratify private spite, promote public scandal, circulate libelous statements, or release trade
20   secrets."  *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting
21   *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  In addition, courts seal
22   information that could be abused by bad actors to harm the parties.  *See, e.g., Adtrader, Inc. v.*
23   *Google LLC*, 2020 WL 6387381, at *2 (N.D. Cal. Feb. 24, 2020) (sealing information where
24   "disclosing to bad actors who would seek to manipulate Google's systems information about
25   how Google detects and reacts to invalid traffic").

26   **A.  The Court Should Grant Epic's Request as to Confidential Third-Party Information.**

27   As the Court has noted:  "[T]he standard is more lenient when the information
28   concerns third parties, but this is not dispositive. The third-party information must be balanced

with the Court's ultimate resolution of the instant dispute which should be transparent in its analysis."[1]  With respect to third-party information, Epic seeks to seal only information that reflects sensitive business information of its third-party business partners which, if revealed, could impact those third parties' competitive standing. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).  Epic also seeks to seal exhibits which disclose the contents of negotiations between it and third parties, which competitors could use as leverage in future negotiations with these third parties.[2]

The trial exhibits and deposition testimony at issue contain sensitive third-party confidential business information entrusted to and shared with Epic by its partners.  Epic's agreements with those partners require Epic to treat such third-party information as confidential; Epic takes those responsibilities seriously and protects this information as it would its own confidential business information.  The third-party information at issue has not been disclosed publicly.  (Kreiner Decl. ¶ 2.)  If revealed, this information would negatively impact those third parties' competitive standing.  (*Id.* at. ¶ 3.)  For example, certain exhibits disclose:  the existence and names of games that have not been released; nonstandard deal terms agreed to by Epic partners and/or contain proprietary licensing terms and deal structures that could be used by counterparties against Epic's partners in future negotiations to gain leverage; that certain companies are in confidential acquisition negotiations with Epic which could, for example, impact their ability to retain employees and attract investors; and the non-public revenue of Epic's private company partners.  (*Id.* at. ¶ 3.)  Several third parties have already filed their own motions to seal and supporting declarations, expressing similar concerns in connection with this

---

[1] Dkt. 547 (Pretrial Order No. 7 Re: Third Party Administrative Motions To Seal, at 2.)

[2] *See FTC v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal under the compelling to the extent it may harm the party or third parties' "competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets."); *Philips v. Ford Motor Co.*, 2016 WL 7374214, at *6 (N.D. Cal. Dec. 20, 2016) (concluding that "need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason that justifies sealing").

litigation.[3]  Moreover, the third-party information contained in these materials has little to no relevance to the claims and defenses in this litigation.

While third parties may assert their own confidentiality interests, many of the documents at issue collect the sensitive information of multiple third parties, such that it would be a burden to this Court, the parties, and the third parties to attempt to coordinate numerous third-party applications to seal those exhibits.  *See, e.g., Total Recall Technologies v. Luckey*, 2021 WL 1245357, *1 (Mar. 25, 2021) (finding as legitimate "a request to seal a spreadsheet containing the names and addresses of multiple uninvolved third parties").

The trial exhibits and deposition testimony which contain information that is sealable for the reasons set forth above are listed and described more fully in Exhibit A to the Kreiner Declaration.

**B.  <u>The Court Should Grant Epic's Request as to Anti-Fraud/Anti-Cheat Information.</u>**

Epic requests that the Court seal a limited amount of information that could aid bad actors in harming Epic or the users of Fortnite, specifically information involving key details relating to anti-cheat and/or anti-fraud mechanisms within Fortnite.  Courts have sealed information that could be used by a bad actor to breach a company's security system.  *See, e.g., Connor v. Quora, Inc.*, 2020 WL 6700473, at *2 (N.D. Cal. Nov. 13, 2020) (sealing "information regarding Quora's investigation into the data breach incident that could be used by a bad actor to exploit and breach Quora's systems"); *In re Google Inc. Gmail Litig.*, 2013 WL 5366963, at *3 (N.D. Cal. Sept. 25, 2013) (sealing information where "hackers and spammers could use this information to circumvent Google's anti-virus and anti-spam mechanisms").

The remaining trial exhibits Epic seeks to seal involve key details relating to anti-cheat and/or anti-fraud mechanisms within Fortnite.  These internal documents contain highly sensitive information that if made public could be used to defraud Epic's customers or allow

---

[3] These third-party motions to seal are:  NVIDIA (Dkt. 504), Google (Dkt. 506), App Annie (Dkt. 513), Sony (Dkt. 516), Yoga Buddhi Co. (Dkt. 522), Roblox Inc. (Dkt. 525), Valve Corporation (Dkt. 526), Match Group, Inc. (Dkt. 528), Facebook, Inc. (Dkt. 546), Lyft, Inc. (Dkt. 550), Microsoft (Dkt. 551), Nintendo of America, Inc. (Dkt. 554), Kabam Inc. (Dkt. 555), Spotify USA Inc. (Dkt. 560), Samsung Electronics Co. Ltd. (Dkt. 561), Amazon.com Services LLC (Dkt. 571), Roblox Inc. (Dkt. 573), Sony (Dkt. 576), Netflix (Dkt. 588).  Epic does not include in this motion any exhibits that are already the subject of another motion to seal.

1  cheaters to ruin the game experience for its players.  (Kreiner Decl. ¶ 4.)  Epic takes substantial

2  steps to prevent harm to its community including from cheating and fraud.  (*Id.*)  Keeping Epic's

3  anti-cheat and anti-fraud mechanisms confidential is essential to their effectiveness.  (*Id.*)

4  Disclosure of the identified information would allow bad actors to circumvent Epic's anti-fraud

5  and anti-cheat measures.  (*Id.*)  For example, if individuals looking to defraud users become

6  privy to the metrics Epic uses to detect fraud, they will use that information to design schemes to

7  avoid detection.  (*Id.*)  Similarly, if cheat creators knew which anti-cheat mechanisms Epic

8  employs, they will refocus their efforts to circumvent those mechanisms and avoid detection.

9  The public release of this information would cause severe harm to the Epic community.  (*Id.*)

10        The trial exhibits which contain information that is sealable for the reasons set

11  forth above are listed and described more fully in Exhibit B to the Kreiner Declaration.

12        For the foregoing reasons and the reasons set forth in the accompanying Kreiner

13  Declaration, Epic respectfully requests that the Court seal the identified information.

Dated: May 5, 2021　　　　　　　　　　　　Respectfully submitted,

By:　*/s/ M. Brent Byars*

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke
jcclarke@cravath.com
M. Brent Byars
mbyars@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

***Attorneys for Plaintiff and Counter-defendant*
EPIC GAMES, INC.**

**CERTIFICATE OF SERVICE**

Pursuant to L.R. 5-5, the undersigned certifies that on May 5, 2021, the foregoing motion is being filed and served electronically via the Court's CM/ECF system and served manually on Defendant.

             /s/ M. Brent Byars