David P. Chiappetta, Bar No. 172099
DChiappetta@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
Telephone:  415.344.7076
Facsimile:  415.344.7050

Attorneys for Non-Party
Nintendo of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　　PLAINTIFF and COUNTER-DEFENDANT,<br><br>　V.<br><br>APPLE, INC.,<br><br>　　　　DEFENDANT and COUNTER-CLAIMANT. | Case No. 4:20-CV-05640-YGR<br><br>NON-PARTY NINTENDO OF AMERICA INC.'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF DX-3464 |

Non-party Nintendo of America Inc. ("NOA") requests sealing of portions of a document that Apple intends to use as a trial exhibit. That document is designated DX-3464. Nintendo brings this motion pursuant to Civil Local Rules 7-11 and 79-5 and the October 2, 2020 Stipulation Between Epic Games, Inc. and Apple Inc. and Protective Order ("Protective Order") (Dkt. 112). The motion is accompanied by the Declaration of Steven Singer in Support of Non-Party Nintendo of America Inc.'s Administrative Motion to Seal Portions of DX-3464 ("Singer Decl.").

Civil Local Rule 79-5(b) allows sealing where a "document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law." Fed. R. Civ. P. 26(c)(1)(G) provides a district court with broad discretion to protect "a trade secret or other confidential research, development, or commercial information" from disclosure. A party seeking to seal documents at trial must "articulate compelling reasons supported by specific factual findings." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). As described below, NOA's sealing request meets this standard.

NOA submits to the Court highlighted sealed and redacted public versions of the relevant portion of DX-3464 as exhibits to this motion. NOA does not object to use of an unredacted, sealed version of the relevant portions of DX-3464 at trial if (i) monitors that allow public viewing of the document are shut off when the document is displayed, (ii) the public audio stream of the proceedings is disabled when the document is discussed, (iii) the information sought to be sealed is not revealed during the trial proceedings through witness testimony or otherwise, and (iv) only the redacted version of the relevant portion of DX-3464 is made available in the public record.

Epic produced the document designated DX-3464 to Apple during discovery in this case. DX-3464 includes a "Nintendo Switch Content License and Developer Agreement" between Epic and non-party Nintendo[1] (the "Epic CLDA"). The Epic CLDA portion of DX-3464 bears production numbers EPIC_04503637-62.

---

[1] NOA is a subsidiary of Nintendo Co., Ltd. ("NCL"), a Japanese corporation. (Singer Decl. ¶ 1.) NCL has many other subsidiaries. (*Id.*) For purposes of this motion only, "Nintendo"

-1-
NON-PARTY NINTENDO OF AMERICA INC.'S ADMINISTRATIVE MOTION TO SEAL

In general, the Content License and Developer Agreement is critical to Nintendo's efforts to compete for content developers. Nintendo and a developer must agree on terms before the developer can create content for Nintendo's Switch platform. Competition for developers is fierce. Many companies promote platforms that compete with the Switch and those firms, like Nintendo, seek to attract developers. Given the highly competitive marketplace, the terms of Nintendo's specific Content License and Developer Agreement with each content developer are critical. Those terms reflect Nintendo's business strategy relating to each individual developer and the specific circumstances relating to that developer.

The Epic CLDA is no exception. Nintendo and Epic carefully negotiated precise and unique terms for the Epic CLDA. (Singer Decl. ¶¶ 3-4, 7.) Those terms detail Nintendo's specific relationship with Epic and include competitively sensitive provisions that depart from the standard terms of Nintendo's default Content License and Developer Agreement. (*Id.* ¶¶ 3-4, 6, 7-8.) Allowing competitors to access and use such highly confidential information would significantly harm Nintendo's business and competitiveness. (*Id.* ¶¶ 2-3, 6, 8.) It would also harm Nintendo's relationships with developers other than Epic, which would affect Nintendo's ability to compete. (*Id.* ¶ 8.) Together with this motion, Nintendo submits redacted (public) and unredacted (sealed) copies of the Epic CLDA—the portion of DX-3464 labeled EPIC_04503637-62—as Exhibit 1.

Given the Epic CLDA's sensitivity, Nintendo treats the agreement as highly confidential and proprietary. (*Id.* ¶¶ 5-6.) The Epic CLDA is not publicly available. (*Id.*) The Epic CLDA requires Epic to keep the agreement's terms and conditions confidential and is labeled "Confidential." (*Id.*) Epic designated the document "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY" when producing it to Apple under the applicable Protective Order.

The highlighted sealed and redacted public versions of the Epic CLDA identify information that is highly confidential and sensitive to Nintendo. NOA's sealing request is narrowly tailored to these highlighted and redacted contract terms. The terms were subject to

---

refers to NCL and its subsidiaries, including NOA, even though NCL and its subsidiaries are separate and distinct entities.

-2-
NON-PARTY NINTENDO OF AMERICA INC.'S ADMINISTRATIVE MOTION TO SEAL

intense negotiation between Nintendo and Epic.  (*Id.* ¶¶ 3-4, 6-8.)  They reflect specific deviations from Nintendo's default Content License and Distribution Agreement that resulted from the negotiations between Nintendo and Epic.  (*Id.* ¶¶ 6-7.)  The highlighted and redacted terms are unique to the Epic CLDA and the circumstances surrounding the relationship between Nintendo and Epic; they are not available to the public.  (*Id.*)

Public disclosure of the highly confidential terms of the Epic CLDA would allow a competitor to obtain and exploit highly sensitive information and cause serious competitive harm to Nintendo.  The Court has noted its inclination to grant "requests to seal party specific agreements" because they "reflect sensitively negotiated terms and conditions."  (Dkt. 564 at 3-4.)  The highlighted and redacted terms of the Epic CLDA are examples of such sensitive, negotiated terms specific to a party.  After much negotiation, Nintendo agreed to highly confidential terms in the Epic CLDA that differ from its standard approach and ensure both Nintendo and Epic benefit from the relationship.  (Singer Decl. ¶¶ 3-4, 7-8.)  Making the Epic CLDA's negotiated terms available to the public would allow a competitor to duplicate Nintendo's business strategy and undermine any competitive advantage conferred to Nintendo by the specific terms it negotiated with Epic, causing harm to Nintendo and its business.  (*Id.* ¶ 8.)  For example, shifts in competitors' strategies in response to the negotiated terms of the Epic CLDA could cause Epic or other developers to devote more time and resources to developing content for competing platforms rather than for the Nintendo Switch.  (*Id.*)  In addition, public disclosure of the negotiated terms of the Epic CLDA would make it more difficult for Nintendo to negotiate with potential developers and could upset Nintendo's relationships with existing developers, both of which would adversely affect Nintendo's efforts to compete.  (*Id.*)

The risk of competitive harm to Nintendo merits sealing the highlighted and redacted terms of the Epic CLDA.  *E.g.*, *Century Aluminum Co. v. AGCS Marine Ins. Co.*, No. 11-CV-02514-YGR, 2012 WL 13042825, at *2 (N.D. Cal. Aug. 10, 2012) (sealing confidential information because "competitive harm may result" from public disclosure that would "reveal confidential business information and strategies"); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,

1   No. 14-CV-02737-BLF, 2015 WL 581574, at *2-3 (N.D. Cal. Feb. 10, 2015) (sealing confidential
2   business information that could be used by competitors); *Apple Inc. v. Samsung Elecs. Co.*, 727
3   F.3d 1214, 1228 (Fed. Cir. 2013) (finding disclosure of information that "competitors could not
4   obtain anywhere else" might result in competitive harm and should be sealed); *XIFIN, Inc. v.*
5   *Firefly Diagnostics, Inc.,* No. 317CV00742BENKSC, 2018 WL 1244781, at *2 (S.D. Cal. Mar. 9,
6   2018) (sealing "commercially sensitive business information" reflected in a contract, including
7   "proprietary protocols and processes").

8         In addition, some negotiated terms of the Epic CLDA describe highly confidential and
9   sensitive information regarding security and privacy, such as the highlighted and redacted terms
10  in Sections 3.7 and 9 and in Exhibit A.  (Singer Decl. ¶¶ 2, 4, 9.)  Nintendo carefully guards the
11  confidentiality of this information because (1) if made public, it could enable bad actors to
12  attempt to circumvent the protections and compromise developer and user data; and (2) ensuring
13  the privacy and security of its platform is paramount in competing for both content developers
14  and users.  (*Id.*)  Methods used to protect developer and user security are highly confidential.  For
15  this reason, courts have routinely sealed information that could be used to jeopardize data
16  security.  *E.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL
17  3092256, at *2 (N.D. Cal. Mar. 16, 2018) (finding compelling reasons to seal information
18  regarding cybersecurity practices); *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2017 WL
19  1036652, at *5 (N.D. Cal. Mar. 17, 2017) (sealing information that "could make it easier to
20  compromise" product security).

21        NOA's sealing request is particularly strong because of the circumstances here.  Non-
22  party NOA was drawn into this litigation by the parties, not through any actions of its own.  In
23  addition, Nintendo has no control over the trial proceedings or whether and when the parties
24  might seek to file its highly confidential information in the public record.  It would be unfair to
25  publicly disclose the highly confidential negotiated terms of the Epic CLDA, and subject
26  Nintendo to competitive harm, just because Apple wants to use some other portions of the
27  agreement at trial.  Further, Apple—as the party seeking to use the document during trial—has
28  not followed the procedure in Civil Local Rule 79-5(d) that requires a submitting party to file a

1  motion to seal.  Instead, Apple puts that burden on non-party Nintendo, which would ordinarily
2  simply submit a declaration under Civil Local Rule 79-5(e) to support the submitting party's
3  motion.  What is more, although Nintendo sought to work together with Apple to avoid any
4  disclosure of Nintendo's highly confidential and sensitive information, by using party stipulations
5  or excerpting potential trial exhibits, Apple would not engage.  Nintendo has no choice but to
6  seek to seal highly confidential negotiated terms of the Epic CLDA.
7       For the reasons explained above, NOA respectfully requests that the Court grant its
8  motion to seal.

DATED:  May 10, 2021

s/*David Chiappetta*
David P. Chiappetta, Bar No. 172099
DChiappetta@perkinscoie.com

Attorneys for Non-Party
Nintendo of America Inc.

**CERTIFICATE OF SERVICE**

☒   I hereby certify that on May 10, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

*s/ David Chiappetta*
Attorney
