UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>          Plaintiff, Counter-Defendant<br><br>     v.<br><br>APPLE, INC.,<br><br>          Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR<br><br>DECLARATION OF STEVEN SINGER IN SUPPORT OF NINTENDO OF AMERICA INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SEEK RECONSIDERATION REGARDING SEALING PORTIONS OF THE KREINER DEPOSITION |

I, Steven Singer, declare as follows:

1. I am currently Senior Vice President Publisher & Developer Relations at Nintendo of America Inc. ("NOA"). NOA is one of many subsidiaries of Nintendo Co., Ltd. ("NCL"), a corporation based in Japan. Although NCL and each of its subsidiaries (including NOA) are separate companies, for purposes of this declaration I will refer to NCL and its subsidiaries together as "Nintendo." The facts stated in this declaration are based on my own personal knowledge and, if called as a witness, I could and would testify to those facts.

2. In my current role at NOA, I am responsible for managing the relations between Nintendo and its numerous content developers throughout the United States and Latin America. I have been employed with NOA since April 1999. I joined as Vice President – Latin America and was responsible for overseeing operations in the Latin America region. I also provided support for Nintendo's operations in Southeast Asia, India, and the Middle East. In January 2007, I became Vice President – Licensing. In that role, I was responsible for licensing activities relating to Nintendo's brand and accessories. Based on my work experience, I am familiar with Nintendo's business and its strategies relating to content development. Nintendo keeps financial and business strategy information confidential to protect itself from potential competitive harm. That includes information relating to sensitive and specific agreements negotiated with another

1  entity.

2  3. I understand that the Court in the above-captioned legal case denied Apple's
3  request to seal portions of the deposition of Joe Kreiner ("Kreiner Deposition"). I also understand
4  that NOA has moved for leave to seek reconsideration of the Court's ruling as to 82:14-83:3 and
5  83:12-16 of the Kreiner Deposition, and I make this declaration in support of NOA's motion. I
6  have reviewed those portions of the Kreiner Deposition and, as explained in a previous
7  declaration submitted to the Court (Dkt. 568) and below, they reflect sensitive and highly
8  confidential information that would potentially cause serious harm to Nintendo if publicly
9  released.

10 4. Kreiner Deposition 82:14-83:3 and 83:12-16, as identified in Apple's motion to
11 seal (Dkt. 505-1 at 4), reflect information relating to highly confidential and specifically
12 negotiated terms of agreement between Nintendo and Epic. Those terms are not part of the
13 standard Content License and Distribution Agreement that Nintendo makes available to
14 prospective developers. Instead, the terms of agreement mentioned in Kreiner Deposition 82:14-
15 83:3 and 83:12-16 were negotiated between Nintendo and Epic, are specific to the relationship
16 between Nintendo and Epic, and constitute non-public information. The terms would result in
17 harm if disclosed publicly.

18 5. Over the course of several years, Nintendo has developed a business relationship
19 with Epic, including by negotiating specific terms for that relationship that create benefits for
20 both Nintendo and Epic. If non-public and confidential information about the Nintendo-Epic
21 relationship were disclosed publicly, a competitor could use that information to Nintendo's
22 detriment by copying the unique mixture of benefits that Nintendo provides to Epic and offering
23 those same benefits to Epic and others. That could lead to Epic spending less time developing
24 content for Nintendo and more time developing content for a competitor. A competitor might also
25 leverage the proprietary benefits Nintendo provides to Epic to attract other developers, causing
26 them to spend time developing content for the competitor's platform instead of for the Nintendo
27 Switch. If the specific confidential terms of the Nintendo-Epic relationship were revealed, that
28 could potentially undermine Nintendo's competitive edge in recruiting and retaining developers,

1  including Epic.  In addition, the terms specific to Nintendo's relationship with Epic could be used
2  against Nintendo by other potential developers during negotiations of a Content License and
3  Distribution Agreement.
4        6.     I understand that the Court concluded that the negotiated terms described in
5  Kreiner Deposition 82:14-83:3 and 83:12-16 are "already disclosed elsewhere, including in the
6  generic agreement for which sealing was denied" (Dkt. 609 at 6-7).  As mentioned above, the
7  terms of agreement between Nintendo and Epic described in Kreiner Deposition 82:14-83:3 and
8  83:12-16 are different from the terms of Nintendo's generic Content License and Development
9  Agreement.  They are not public and are kept confidential by Nintendo.

     I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

     Executed this 10th day of May 2021 in Redmond, Washington.

_____
Steven Singer