1  Steven L. Holley (*pro hac vice* pending)
   (holleys@sullcrom.com)
2  Shane M. Palmer (SBN 308033)
   (palmersh@sullcrom.com)
3  SULLIVAN & CROMWELL LLP
   125 Broad Street
4  New York, New York  10004
   Telephone:     (212) 558-4000
5  Facsimile:      (212) 558-3588

6  Brendan P. Cullen (SBN 194057)
   (cullenb@sullcrom.com)
7  SULLIVAN & CROMWELL LLP
   1870 Embarcadero Road
8  Palo Alto, California  94303
   Telephone:     (650) 461-5600
9  Facsimile:      (650) 461-5700

10 *Attorneys for Non-Party Spotify USA Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| EPIC GAMES, INC., | ) | Case No. 4:20-cv-05640-YGR-TSH |
|---|---|---|
| Plaintiff, | ) | **NON-PARTY SPOTIFY USA INC.'S ADMINISTRATIVE MOTION TO PARTIALLY SEAL SPOT-EPIC-00000932** |
| v. | ) | |
| APPLE INC. | ) | |
| Defendant. | ) | |

Pursuant to Local Civil Rules 7-11 and 79-5, Non-Party Spotify USA Inc. ("Spotify") respectfully moves the Court to seal certain portions of a document that Spotify produced to Apple Inc. ("Apple") and Epic Games, Inc. ("Epic"), bearing Bates numbers SPOT-EPIC-00000932 through SPOT-EPIC-00000943, which Spotify understands the parties may use or discuss during the trial of this action. To the extent this document is introduced as an exhibit in the trial of this action, the unredacted version of the document should not be disclosed to the public, and the courtroom should be sealed for any portion of trial testimony in which the parties seek to describe or discuss the sealable portions of this document. Spotify sought Apple's and Epic's consent to Spotify's filing of a motion to seal the contents of this document; both parties informed Spotify that they consent to Spotify's request to seal the document.

In support of the Motion, Spotify is submitting the accompanying Declaration of Benjamin Kung, the Declaration of Shane M. Palmer, redacted and unredacted versions of the document Spotify is moving to partially seal for the Court's review, and a Proposed Order.

## FACTUAL BACKGROUND

On May 9, 2021, Apple informed Spotify that it intends to "disclose" a document that Spotify produced to the parties in this litigation, in connection with upcoming expert testimony estimated to begin on May 12, 2021. (*See* Declaration of Shane M. Palmer ("Palmer Decl.") ¶ 7.) The document that Apple indicated it intends to disclose was produced by Spotify, bearing Bates numbers SPOT-EPIC-00000932 through SPOT-EPIC-00000943, in response to subpoenas that Apple and Epic served on Spotify in this action pursuant to Federal Rule of Civil Procedure 45. (*Id.* ¶ 3.) This document is a confidential response by Spotify to an Information Request from the Japan Fair Trade Commission ("JFTC"), dated September 4, 2020, in connection with a fact-finding survey conducted by the JFTC of competition in digital platforms (the "JFTC Response"). (Declaration of Benjamin Kung ("Kung Decl.") ¶ 7.) As a condition to producing the JFTC Response and other documents to Apple and Epic, Spotify negotiated with both parties and obtained their agreement to seek from the Court additional confidentiality protections for Spotify's documents. (Palmer Decl. ¶ 4.) In recognition of the competitively sensitive nature of Spotify's information, the parties jointly filed a Stipulated Supplemental Protective Order Governing

SULLIVAN
&
CROMWELL LLP

1

Discovery from Spotify that provided Spotify the ability to designate documents it produced in this action as "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY," which in turn prohibited even employees and in-house counsel of Apple and Epic from viewing the documents or the information contained therein except in narrowly limited circumstances.[1] (*Id.* ¶ 5.) The Court entered that stipulated protective order on February 11, 2021 (Dkt. No. 407), and Spotify properly designated the JFTC Response as containing "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" information when it produced the document to the parties. (*Id.* ¶¶ 5–6.)

## ARGUMENT

Although there is a presumptive right of public access to court records based on common law and First Amendment grounds, "access to judicial records is not absolute," *Kamakana* v. *City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and may be denied by the Court to protect confidential information. *See Phillips ex rel. Estates of Byrd* v. *General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002). A party seeking to seal a document or proceedings must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (alteration, citations, and quotation marks omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Moreover, Spotify is not a party to this action and did not voluntarily invoke the Court's jurisdiction; it only produced the information it seeks to seal because Apple and Epic demanded it by invoking the Court's subpoena power. As a result, Spotify's confidentiality interests should be

---

[1] One reason why Spotify sought these heightened protections for its confidential information is because Spotify directly competes with Apple's Apple Music audio streaming service. Recognizing that the information Apple and Epic were seeking from Spotify could give Apple an unwarranted advantage in its competition with Spotify, Spotify took steps to ensure that its proprietary, competitively sensitive information would not be disclosed to Apple employees or any others who might use that information inappropriately to Spotify's disadvantage.

entitled to special consideration. *See, e.g.*, *Hunt* v. *Cont'l Cas. Co.*, No. 13-cv-05966 HSG, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (sealing third parties' names where such information "implicates important privacy concerns of nonparties . . . that outweigh the public's interest in disclosure of these judicial records").

Consistent with the heightened protections that Spotify has already obtained in connection with the production of its highly sensitive business information, Spotify seeks to maintain selected portions of the JFTC Response—which are highlighted in the unredacted version of the document that Spotify is submitting concurrently herewith—under seal.  This document includes information comprising Spotify's proprietary data and its analysis of that data, and other information that Spotify keeps confidential and does not disclose to the public.  To maintain the confidentiality of the information in the JFTC Response, Spotify invests in data security measures to prevent unauthorized outside parties from accessing the information. (Kung Decl. ¶ 13.) And when Spotify provided this document to the JFTC, it made clear that the document contained sensitive business information and shared it with the understanding that the JFTC would maintain the document in confidence and not disclose it to the public. (*Id.* ¶ 7.)

Here, compelling reasons—including the serious risk of competitive harm to Spotify—warrant keeping portions of the JFTC Response under seal.  As explained below, public disclosure of this information would harm Spotify's business and its ability to compete on a level playing field with its biggest competitors, including Apple, and also put Spotify at a disadvantage in negotiations with partners.  As the Supreme Court has explained, "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598.  The Ninth Circuit has similarly recognized in an unpublished opinion that documents containing confidential and/or proprietary business information are generally protected from public disclosure. *In re Electronic Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008) ("[T]he common-law right of inspection has bowed before the power of a court to insure that its records are not used . . . as sources of business information that might harm a litigant's competitive standing.") (quoting *Nixon*, 435 U.S. at 598); *cf. Sun Microsystems Inc.* v.

*Network Appliance*, No. C–08–01641–EDL, 2009 WL 5125817, at *9 (N.D. Cal Dec. 21, 2009) (sealing confidential business information, which if disclosed could cause harm to the parties).

The information that Spotify seeks to keep under seal includes a description of the methodology and detailed findings of a proprietary analysis that was undertaken by Spotify to understand the impact of Apple's marketing restrictions on Spotify's ability to convince users to subscribe to Spotify's Premium audio streaming service. As Benjamin Kung attests to in his accompanying declaration, Spotify would be competitively harmed in its business if this information were disclosed publicly. (Kung Decl. ¶¶ 10–11.). The public disclosure of this document would reveal the sophisticated types of analyses that Spotify performs to assess user behavior and the effectiveness of Spotify's marketing strategies. (*Id.* ¶ 10.) If Spotify's distribution partners knew the types of internal analyses that Spotify is capable of performing (and has previously performed), they might demand that Spotify undertake such analyses as a condition of continued partnership. (*Id.*) This, in turn, could undermine the value of Spotify's existing distribution partnerships, undercut Spotify's ability to negotiate favorable arrangements with new distribution partners, and drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business. (*Id.*) Spotify's audio streaming app competitors could also use the findings of Spotify's analysis to assess the effectiveness of Spotify's advertising for its Premium service on mobile devices and use that to inform their own business and marketing strategies, giving them an unfair advantage over Spotify. (*Id.* ¶ 11.) Indeed, the Court has already acknowledged the compelling reasons that support sealing the information concerning Spotify's proprietary analysis of the impact of Apple's marketing restrictions when it granted Spotify's request to seal paragraph 71 of Dr. Michael Cragg's Rebuttal Written Direct Testimony. (*See* Dkt. No. 614, at 5.) In fact, the reasons for sealing the descriptions of Spotify's proprietary analysis in the JFTC Response are even more compelling than the reasons for sealing paragraph 71 of Dr. Cragg's written testimony, since the descriptions contained in the JFTC Response are significantly more detailed and reveal much more about the specific analyses that Spotify performed.

Finally, the JFTC Response contains Spotify's proprietary, internal data and analysis concerning the percentages of first-time Premium subscribers who first used Spotify's Free service for a period of time, or who signed up directly for the Premium service, over a period of six years.  (*Id.* ¶ 12.)  Spotify uses this data for a variety of strategic business purposes, including:  developing business strategies to compete with other audio and music streaming app providers, including Apple; identifying and negotiating with potential distribution partners to expand Spotify's subscription business; and planning strategic corporate investment decisions to drive sustainable growth and remain competitive in the marketplace.  (*Id.* ¶ 13.)  If this information were disclosed publicly, it would give Spotify's competitors insight into Spotify's internal data and analysis concerning its business operations, including trends in those areas over time.  (*Id.* ¶ 14.)  Such information could be used by Spotify's competitors to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising.  (*Id.*)  Additionally, distribution partners that Spotify relies on for distribution of its app could use the data to gain unfair leverage over Spotify in negotiations, which would harm Spotify's ability to compete and grow its business.  (*Id.* ¶ 15.)[2]

## CONCLUSION

Because public disclosure of the unredacted JFTC Response would cause significant harm to Spotify's business, compelling reasons exist to keep the unredacted document under seal if it is admitted into evidence at trial, and to seal the courtroom for any portion of trial testimony in which the parties seek to describe or discuss the sealable portions of this document.

Dated: May 11, 2021

/s/ Brendan P. Cullen
Steven L. Holley (*pro hac vice* pending)
Shane M. Palmer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

---

[2]   In addition, the JFTC Response was created solely for the purpose of responding to specific requests from the JFTC on a confidential basis.  Although Spotify's responses were compiled from information that Spotify maintains in the ordinary course of its business, this document is not used or maintained by Spotify in the format in which it was produced to the JFTC, and it was not prepared with an eye towards providing a complete view of Spotify's business.  (Kung Decl. ¶ 16.)

Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: holleys@sullcrom.com
palmersh@sullcrom.com

Brendan P. Cullen
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California 94303
Telephone: (650) 461-5600
Facsimile: (650) 461-5700
Email: cullenb@sullcrom.com

*Attorneys for Non-Party Spotify USA Inc.*