CHRISTINE A. VARNEY (*pro hac vice*)
cvarney@cravath.com
KATHERINE B. FORREST (*pro hac vice*)
kforrest@cravath.com
GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
J. WESLEY EARNHARDT (*pro hac vice*)
wearnhardt@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., <br><br> *Plaintiff, Counter-defendant*, <br><br> v. <br><br> APPLE INC., <br><br> *Defendant, Counterclaimant*. | Case No. 4:20-CV-05640-YGR-TSH <br><br> **EPIC GAMES, INC.'S OPPOSITION TO APPLE INC.'S MOTION FOR AN ADVERSE CREDIBILITY FINDING AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> The Honorable Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1
BACKGROUND ...............................................................................................................2
    A.    Apple Placed Microsoft's Conduct at Issue in this Litigation. ....................2
    B.    Non-Party Microsoft Produced the Same Materials to Both Parties. ..........3
    C.    The Court Denied Apple's Attempt To Prevent Ms. Wright from Testifying. ....................................................................................................4
    D.    Apple Had Ample Opportunity To Conduct Discovery at The Deposition.5
    E.    Ms. Wright's Trial Testimony Repeated Her Deposition Testimony that Microsoft's Xbox Gaming Business Does Not Compete with iOS. ............6
ARGUMENT.......................................................................................................................6
CONCLUSION..................................................................................................................10

**PRELIMINARY STATEMENT**

Apple Inc. ("Apple") argues that it was placed at a disadvantage with respect to Microsoft Corporation ("Microsoft")'s documents. But Apple had access to exactly the same Microsoft documents as Epic Games, Inc. ("Epic") and does not claim otherwise. Moreover, Apple *actually has* much of the information it says it needed. Other information it criticizes Microsoft for withholding it did not request. Still other information relates to facts that are not in dispute. There was a level playing field here and Apple has not been disadvantaged in any way.

Apple has put Microsoft front and center in this dispute by arguing that gaming consoles are substitutes for iOS devices and that commissions charged by console manufacturers justify Apple's own iOS tax. Now, having heard directly from its purported competitor that iOS devices are not in fact substitutes for Xbox consoles—or vice versa—and that the commission charged by Microsoft in its digital marketplace is not comparable to Apple's 30% tax, Apple seeks to discredit the testimony with baseless allegations of bias and gamesmanship. Its motion should be denied.

On May 5, 2021, Lori Wright, an executive for Microsoft's Xbox line of business, testified that the primary competitor to Microsoft's Xbox console is the Sony PlayStation and, to a lesser extent, the Nintendo Switch. (Ex. A[1], Trial Tr. 537:14-538:21 (Wright).) Ms. Wright testified that the Xbox console does not compete with any iOS device, grounding her testimony in differences in those devices' functionality and how they are used by consumers. (*Id.*) Ms. Wright also testified about Xbox's business model, including that the Xbox Store does not compete with the Apple App Store for gaming transactions and that Xbox hardware consoles are sold for a loss to enable future content sales. (Ex. A, Trial Tr. 546:19-548:20, 551:8-552:13 (Wright).) This is a striking difference from the iOS ecosystem, in which Apple earns a significant profit margin for each element of the ecosystem, including its hardware. Finally,

---

[1] "Ex." refers to the exhibits to the Declaration of J. Wesley Earnhardt in Support of Epic Games, Inc.'s Opposition to Apple Inc.'s Motion for an Adverse Credibility Finding and Memorandum of Points and Authorities in Support Thereof.

1  Ms. Wright testified that Apple has kept Microsoft's cloud-based game streaming service out of
2  the App Store, while arbitrarily allowing other subscription-based streaming services like Netflix
3  to flourish on iOS.  (Ex. A, Trial Tr. 575:19-577:8 (Wright).)
4         Although Ms. Wright's testimony undermines Apple's case, none of it was a
5  surprise to Apple.  Apple elicited the very same testimony at Ms. Wright's deposition.  (Ex. B,
6  Wright Dep. Tr. 36:5-37:9, 92:6-24, 97:5-18, 256:25-257:13.)  In fact, Epic at trial did little more
7  than ask Ms. Wright to tell this Court what she already had told Apple during her deposition.
8  (*See infra* at pp. 5-7.)
9         Apple already has failed to prevent the Court from hearing Ms. Wright's
10 testimony once.  (*See* ECF No. 437.)  Now, Apple effectively attempts to exclude Ms. Wright's
11 testimony again, despite there being no surprise about what she said at trial and despite Apple
12 having had access to the very same Microsoft documents as Epic.  Apple's motion is a pretext to
13 exclude truthful testimony it does not like.  We respectfully request that the Court deny Apple's
14 motion in its entirety.

## BACKGROUND

### A.  Apple Placed Microsoft's Conduct at Issue in this Litigation.

17        On August 13, 2020, Epic commenced this litigation by filing a complaint and
18 motion for preliminary injunctive relief seeking to restrain Apple's anticompetitive conduct in
19 the related markets for iOS App Distribution and for iOS In-App Payment Processing.  (ECF
20 No. 1, Compl. ¶¶ 51-57, 109-118.)  Neither market involves Microsoft's Xbox gaming platform.
21 Epic's complaint does not mention Microsoft other than to identify the Windows personal
22 computing platform as an example of an operating system and to identify Microsoft's xCloud
23 game streaming service as among the many victims of Apple's anticompetitive conduct.
24 (*Id.* ¶¶ 38, 91-92.)  In connection with its application for preliminary injunctive relief, Epic also
25 submitted a declaration from a Microsoft employee, but only concerning the use of Epic's
26 *Unreal Engine*, a three dimensional environment application suite, by game developers.
27 (ECF No. 40.)

In response to Epic's motion for injunctive relief, Apple argued, *inter alia*, that its allegedly anticompetitive conduct was justified because gaming platform owners, including Microsoft in relation to its Xbox gaming console, purportedly maintain similar distribution and commission structures.  (ECF No. 36, Apple TRO Opp'n at 4 ("Apple's commission is hardly unique; Google's Play Store, the Amazon Appstore, and the Microsoft Store, and many video game digital marketplaces, such as ***Xbox***, PlayStation, Nintendo, and Steam, all have similar fees and requirements to use the marketplace's official in-app purchase functionality." (emphasis added)); *see also id.* at 2 ("And [Epic] fails to contend with the fact that its logic would make monopolies of ***Microsoft***, Sony and Nintendo, just to name a few." (emphasis added)).)  Apple has continued this refrain throughout this litigation, and repeatedly it has sought to justify its own anticompetitive conduct with references to Microsoft's Xbox gaming platform.  (*E.g.*, ECF No. 489-7, Written Direct Testimony of Lorin Hitt ("Hitt Testimony") ¶¶ 3, 112, 206, figs. 4 & 29.)  Apple's theory even featured prominently in its opening statement.  (Ex. A, Trial Tr. 60:13-16 (Apple Opening Statement) ("And just as those competitors who came before Apple charged 30 percent, so did the ones who entered the market after Apple.  And this includes the Google Play Store, the Samsung Galaxy store, ***Microsoft***, HP, Amazon." (emphasis added)); *see also id.* 84:23-85:11.)

### B. Non-Party Microsoft Produced the Same Materials to Both Parties.

Consistent with Apple's view that its conduct can be justified by reference to Microsoft's Xbox gaming platform, on October 12, 2020, Apple disclosed Microsoft in its Rule 26(a)(1) disclosures as relevant to this litigation as, *inter alia*, a "Third-Party Game Platform[]".  (Ex. C at 8.)  On November 3, 2020, Apple followed up its disclosure by informing Epic that Apple intended to serve a document subpoena on Microsoft containing 52 requests for production.  (Ex. D.)  It was Apple, not Epic, that first brought Microsoft into this litigation.

One month later, on December 2, 2020, Epic served its own document subpoena on Microsoft.  (Ex. E.)  Epic then engaged in an extensive meet and confer process with Microsoft regarding the scope of its document production.  (Earnhardt Decl. ¶ 13.)  Epic did not

receive all of the documents it requested from Microsoft; for example, Epic asked for but did not receive documents regarding Microsoft's Windows 10 in S Mode; reports, statistics and projections for the xCloud business; and documents concerning Apple's refusal to allow Microsoft's xCloud app on the App Store.  (Earnhardt Decl. ¶¶ 14-15.)  Although it did not get everything it wanted, Epic decided not to move to compel additional document productions from Microsoft.

Epic was not involved in Apple's negotiations with Microsoft regarding Apple's document subpoena and does not know the details of those negotiations.  But it is notable that Apple's experts rely upon materials produced by Microsoft in response to Apple's subpoena, including data regarding Microsoft's *Minecraft* app and alleged competition between mobile devices and video game consoles.  (ECF No. 489-7, Hitt Testimony ¶¶ 3, 112, 206, figs. 4 & 29.) Apple presumably was satisfied that it received the information it wanted and decided not to move to compel additional productions from Microsoft.

Notably, Microsoft apparently has been cooperating with Apple on other discovery and pre-trial evidentiary requests, including by providing declarations to authenticate business records to enable Apple to admit documents into evidence that otherwise would have been hearsay, which Epic did not receive until just days before Ms. Wright testified.  (Ex. F.)

**C.      The Court Denied Apple's Attempt To Prevent Ms. Wright from Testifying.**

As recounted in detail in prior papers filed with this Court, after reviewing the Microsoft-produced documents, Epic engaged in protracted negotiations with Microsoft concerning it providing a trial witness.  (ECF No. 431 at 7.)  On March 12, 2021, Epic ultimately secured a commitment from Microsoft to make Ms. Wright available at trial in this matter.  (*Id.*) Epic's witness list disclosed Ms. Wright as a trial witness to Apple hours later.  (*Id.*)  Epic disclosed Ms. Wright as a witness on the "[d]istribution of software", the "Xbox video game console business and operations", "Xbox cloud gaming, including xCloud and Game Pass" and Microsoft's "interactions with Apple".  (Ex. G at 9.)

After Ms. Wright was identified as a trial witness by Epic on March 12, 2021, Apple sought additional document productions from Microsoft, including documents related specifically to Ms. Wright.  (ECF No. 419 at 7.)  When those negotiations failed, Apple moved to exclude her testimony (and the testimony of other third-party witnesses).  (*Id*.)  The Court denied the motion but noted that it would weigh the credibility of the witnesses to the extent they "have failed to make a sufficient production of relevant documents".  (ECF No. 437 at 4.)  Microsoft did not make an additional production following the Court's order.

### D. Apple Had Ample Opportunity To Conduct Discovery at The Deposition.

On April 16, 2021, Apple deposed Ms. Wright.  At her deposition, Apple questioned Ms. Wright about numerous Microsoft-produced documents, including documents containing the very information Apple now claims not to have had.  (Ex. B, Wright Dep. Tr. 146:21-147:3, 221:2-11, 278:6-17, 280:25-281:7, 282:9-21.)  Apple also made the strategic decision *not* to question Ms. Wright on her communications with Apple regarding Microsoft's xCloud product, including communications contained in documents produced ***by Apple*** in this litigation.  Counsel for Apple confirmed during Ms. Wright's deposition that Apple had reviewed those communications, stating: "Well in what sense is it not fully correct?  I -- I have seen a number of emails where -- where Microsoft was saying, 'We don't want to use your IAP processing system; we want to use our own.'"  (Ex. B, Wright Dep. Tr. 237:4-8.)

During the course of Ms. Wright's deposition, Apple extensively questioned Ms. Wright regarding the topics for which Epic disclosed her as a witness.  Specifically, Ms. Wright testified at her deposition that:

- The competitor for Microsoft's Xbox gaming platform is Sony's PlayStation, not iPhones or iPads (Ex. B, Wright Dep. Tr. 96:20-97:18);
- There is no competition between the App Store and the Xbox Store (Ex. B, Wright Dep. Tr. 92:6-24);
- Microsoft's 30% commission in the Xbox Store is necessary to subsidize its Xbox hardware losses (Ex. B, Wright Dep. Tr. 134:10-17, 139:15-23); and

- Apple has prevented Microsoft from offering its game streaming service through the App Store because of policies that would require infeasible and disruptive changes that would be bad for consumers (Ex. B, Wright Dep. Tr. 216:6-218:11).

Apple concluded its deposition of Ms. Wright without using the full seven hours to which it was presumptively entitled and did not seek to hold the deposition open. (Ex. B, Wright Dep. Tr. 286:16-287:21.)

### E. Ms. Wright's Trial Testimony Repeated Her Deposition Testimony that Microsoft's Xbox Gaming Business Does Not Compete with iOS.

At trial, Ms. Wright testified to the very same things she testified to in her deposition. Specifically, Ms. Wright confirmed for the Court that: the Xbox console does not compete with iOS devices; the Xbox Store does not compete with the App Store; Microsoft's commission for apps and in-app purchases is distinguishable from Apple's commission; and Apple has foreclosed Microsoft's innovative game streaming service from the App Store. (Ex. A, Trial Tr. 537:14-538:2, 548:2-20, 551:24-553:4, 650:10-651:6 (Wright).) Apple filed this motion on the evening of May 6, after Ms. Wright was excused.

### ARGUMENT

Apple's motion fails because there was no "fail[ure] to provide information" under Rule 26(a) or (e). (*See* Mot. at 4.) As the Court noted in its Order Denying Defendant Apple Inc.'s Motion for Pretrial Sanctions, the parties must avoid "surprise[]" at trial and ensure an opportunity for the Court to "measuredly consider and weigh the relevant evidence to reach a final determination". (ECF No. 437 at 3.) Ms. Wright's testimony was entirely predictable and disclosed. Ms. Wright testified to the following topics both at her deposition and at trial:

- The competitor for Microsoft's Xbox gaming console is Sony's PlayStation, not iPhones or iPads (*compare* Ex. A, Trial Tr. 537:14-538:2 (Wright), *with* Ex. B, Wright Dep. Tr. 96:20-97:18);
- There is no competition between the App Store and the Xbox Store (*compare* Ex. A, Trial Tr. 548:2-20 (Wright), *with* Ex. B, Wright Dep. Tr. 92:6-24);

- Microsoft's 30% commission in the Xbox Store is necessary to subsidize its Xbox hardware losses (*compare* Ex. A, Trial Tr. 552:19-553:4 (Wright), *with* Ex. B, Wright Dep. Tr. 134:10-17, 139:15-23);
- Apple has prevented Microsoft from offering its game streaming service through the App Store because of policies that would require infeasible and disruptive changes that would be bad for consumers (*compare* Ex. A, Trial Tr. 650:10-652:7 (Wright), *with* Ex. B, Wright Dep. Tr. 216:6-218:11); and
- Key differences between special purpose platforms (like Xbox) and general purpose platforms (like Windows and iOS) impact whether platforms should have policies that prohibit alternative app distribution channels (*compare* Ex. A, Trial Tr. 555:7-556:24 (Wright), *with* Ex. B, Wright Dep. Tr. 114:13-22, 139:8-12, 153:23-154:7, 199:25-200:1).

There is very little difference, if any, between what Ms. Wright testified to during her deposition and what she testified to at trial.

Apple claims that Microsoft's failure to provide a subset of documents hampered its ability to cross-examine Ms. Wright. But Apple's arguments are misplaced as to each category of documents about which it complains.

*First*, Apple takes issue with Microsoft failing to produce "[d]ocuments related to Ms. Wright's interactions with Apple". (Mot. at 3.) But Ms. Wright's interactions with Apple ***are with Apple***. Apple has access to the very same emails and communications, and, in fact, ***Apple produced them in this litigation*** and one was introduced at trial. (*See* PX-2311; Ex. A, Trial Tr. 573:17-22 (Wright); *see also* Earnhardt Decl. ¶ 16.) Apple implies in its motion that there are documents Ms. Wright reviewed prior to her deposition that Apple does not already have. (Mot. at 3 ("Before being deposed, she searched her personal files for documents regarding the four topics on which she intended to testify so she could "'[r]efresh [her] recollection on' relevant events, including those related to xCloud".).) To the contrary, Ms. Wright testified that emails ***with Apple*** are the only documents that Ms. Wright reviewed,

and those were limited to the topic of xCloud.  (Ex. B, Wright Dep. Tr. 25:12-26:20.)  Again, Apple is complaining that Ms. Wright did not produce documents Apple already had in its possession and had produced in the litigation.

    Apple points to notes that Ms. Wright's colleague wrote following a meeting with Apple in which Ms. Wright was in attendance.  (Mot. at 3.)  But, again, the meeting *was with Apple*, and if Apple would like to introduce additional evidence about what was said at the meeting it is free to do so through the testimony of its own witnesses.  Moreover, these notes apparently were not Ms. Wright's notes, and Apple does not suggest that Microsoft was required to produce every document from every employee at Microsoft concerning its interactions with Apple.  In all events, the facts of what happened at that meeting are not in dispute:  there can be no question that Microsoft tried to put its xCloud app in the App Store and that Apple refused because catalog game streaming services violate Apple's guidelines.  There is nothing more to discover about that meeting because the points are uncontested.

    *Second*, Apple criticizes Microsoft for failing to produce a P&L statement for Xbox.  (Mot. at 3.)  But **Apple did not request an Xbox P&L in its document subpoena**.[2]  (*See* Ex. D.)  Apple's suggestion that Microsoft acted in bad faith by failing to produce a P&L that Apple did not request necessarily must fail.  It is important to note that *Epic* requested in its later-issued subpoena to Microsoft information about the Xbox console profit margin; and

---

[2] To be clear, Apple's document subpoena to Microsoft requests various financial information regarding Microsoft's revenues from the distribution of its apps (which it produced for certain apps, and which Apple's experts rely on, as described above), the commission fees Microsoft charges (for which it produced documents concerning its standard commission rates) and various costs incurred by Microsoft, including in connection with payment processing and app review services.  (*See* Ex. D, Requests for Production 4, 22, 25 and 33.)  It appears to Epic that Microsoft produced much of that information, including cost data specifically requested by Apple, for each of the Microsoft Store and Xbox Store.  (Ex. H (MSFT_EPIC_00008040), Ex. I (MSFT_EPIC_00008041).)  Apple does not appear to have requested an Xbox profit and loss statement, nor does it appear to have requested any information regarding Xbox hardware costs.  Apple may have requested this information in subsequent discussions with Microsoft (though it does not claim to have done so), but Epic is unaware what conversations Microsoft and Apple have had regarding this subject.

Microsoft produced such information *to both parties* in a document about gaming industry profit that Apple introduced at Ms. Wright's deposition (Ex. B, Wright Dep. Tr. 282:15-286:2), and that Epic used at trial (Ex. A, Trial Tr. 559:7-560:6 (Wright); DX-5523).  Ms. Wright testified specifically about the profitability of the Xbox console on the basis of that very document, which Apple has had in its possession for months.  (Ex. A, Trial Tr. 560:9-25 (Wright); DX-5523.31.)

*Third*, Apple notes that Ms. Wright has documents generally related to Xbox cloud gaming and the Xbox video game console business and operations.  (Mot. at 3.)  Of course she does; Ms. Wright is Microsoft's Vice President of Xbox Business Development.  That does not entitle Apple to every one of her documents nor did Apple ask for all of them.  Apple does possess documents containing information relevant to the subjects of Ms. Wright's testimony.  For example, Microsoft produced documents relevant to whether the Apple App Store competes with the Microsoft Store for Xbox.  (*See* PX-2476.)  Apple, for its part, used different Microsoft-produced documents in an attempt to impeach Ms. Wright on that same issue.[3]  (*See* Ex. A, Trial Tr. 639:5-643:24 (Wright); DX-5363.)  Other than saying that Ms. Wright must have many emails about Xbox as an Xbox employee, Apple does not say what it believes it is missing.

*Fourth*, Apple states that there may "perhaps" be communications in Ms. Wright's files "relating to Epic".  (Mot. at 3).  But there is no basis for that speculation.  Ms. Wright testified under oath that she has not had communications with Epic because interfacing with developers is not part of her job.  (Ex. B, Wright Dep. Tr. 78:8-79:23.)

---

[3] On cross examination, Apple also attempted to impeach Ms. Wright using Microsoft's 2020 Form 10-K, which it cites again in its Motion.  (Mot. at 5; Ex. A, Trial Tr. 645:2-647:9 (Wright).)  But Apple's selective presentation of that document to the Court is misleading.  Just as Apple did when it attempted to mislead Ms. Wright on cross, Apple again reproduces only a section of the 10-K relating to Microsoft's Xbox Live service and its cloud gaming service.  (*Id.*)  The full statement confirms that Apple is not a competitor to Xbox's app distribution marketplace (the Xbox Store) or to the Xbox console business.  (*See* DX-5532.012 ("Our gaming platform competes with console platforms from Nintendo and Sony, both of which have a large, established base of customers.").)

*Finally*, Apple makes passing reference to the fact that Ms. Wright was called in her individual capacity and appears to imply that it was improper for Epic to call Ms. Wright as an individual witness, rather than as a corporate representative. (Mot. at 3.) Epic called Ms. Wright in her personal capacity so as to be certain to comply with Federal Rule of Evidence 602, which requires a witness to testify at trial only as to matters for which she has "personal knowledge". Apple seems to be applying at trial the deposition procedure spelled out in Federal Rule of Civil Procedure 30(b)(6), titled "Deposition by Oral Examination". But, as made clear by the title, that rule applies to depositions and Epic is unaware of any mechanism in the Federal Rules to apply it during trial examination. Rather, it is entirely appropriate to call an individual at trial to testify as to personal knowledge gained during her employment. Epic's decision to call Ms. Wright as an individual was based on its understanding of the Rules of Evidence, not any gamesmanship. In all events, Epic made clear to Apple that it would be calling third-party individuals, not entities, well before trial. Indeed, Ms. Wright also was deposed by Apple in her individual capacity, not as an F.R.C.P. 30(b)(6) witness.

\* \* \*

To be sure, it is "the exclusive province of the fact-finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts". *United States v. Khatami*, 280 F.3d 907, 910 (9th Cir. 2002). The Court is the arbiter of Ms. Wright's credibility with or without Apple's motion. But Apple has no basis to argue that any unlevel playing field or surprise caused it prejudice such that Ms. Wright's testimony should be impugned.

## CONCLUSION

For the foregoing reasons, Epic respectfully requests that the Court deny Apple's request for an adverse credibility finding as to Ms. Wright.

Dated: May 12, 2021

Respectfully submitted,

By:   /s/ *J. Wesley Earnhardt*

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Vanessa A. Lavely (*pro hac vice*)
vlavely@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff and Counter-Defendant Epic Games, Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to L.R. 5-5, the undersigned certifies that on May 12, 2021, the foregoing opposition is being filed and served electronically via the Court's CM/ECF system.

*/s/ J. Wesley Earnhardt*