| | |
|---|---|
| THEODORE J. BOUTROUS JR., SBN 132099<br>　tboutrous@gibsondunn.com<br>RICHARD J. DOREN, SBN 124666<br>　rdoren@gibsondunn.com<br>DANIEL G. SWANSON, SBN 116556<br>　dswanson@gibsondunn.com<br>JAY P. SRINIVASAN, SBN 181471<br>　jsrinivasan@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone:　213.229.7000<br>Facsimile:　213.229.7520<br><br>MARK A. PERRY, SBN 212532<br>　mperry@gibsondunn.com<br>CYNTHIA E. RICHMAN (D.C. Bar<br>　No. 492089; *pro hac vice*)<br>　crichman@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone:　202.955.8500<br>Facsimile:　202.467.0539<br><br>VERONICA S. LEWIS (Texas Bar<br>　No. 24000092; *pro hac vice*)<br>　vlewis@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue, Suite 1100<br>Dallas, TX 75201<br>Telephone:　214.698.3100<br>Facsimile:　214.571.2900 | E. JOSHUA ROSENKRANZ (N.Y. Bar No. 2224889; *pro hac vice*)<br>　jrosenkranz@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY 10019-6142<br>Telephone:　212.506.5000<br>Facsimile:　212.506.5151<br><br>WILLIAM F. STUTE (D.C. Bar No. 1032093; *pro hac vice*)<br>　wstute@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>1152 15th Street, N.W.<br>Washington, DC 20005-1706<br>Telephone:　202.339.8400<br>Facsimile:　202.339.8500<br><br>**Attorneys for Defendant APPLE INC.** |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>　　　　　　Defendant. | CASE NO. 4:20-cv-05640-YGR<br><br>**DEFENDANT AND COUNTER-CLAIMANT APPLE INC.'S INITIAL DISCLOSURES [SERVED OCTOBER 12, 2020]**<br><br>The Honorable Yvonne Gonzalez Rogers |

1 | APPLE INC.,
2 |
3 |                 Counterclaimant,
4 | v.
5 |
6 | EPIC GAMES, INC.
7 |                 Counter-defendant.

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant and Counter-Claimant Apple Inc. ("Apple"), by and through its undersigned counsel, makes the following disclosures. These disclosures are based upon the information currently and reasonably available to Apple. Its investigation of the facts pertaining to this matter is ongoing, and Apple reserves the right to supplement and/or amend these disclosures as appropriate under Federal Rule of Civil Procedure 26(e). In particular, and without limitation, Apple reserves the right to identify additional individuals and to identify and produce additional documents and other such information as they become known or available and to include individuals not identified in these initial disclosures in Apple's list of trial witnesses.

By making these disclosures, Apple does not concede the relevance or admissibility of any of the information provided, nor does it represent that it is identifying every individual or document possibly relevant to this lawsuit, or that Plaintiff Epic Games, Inc. ("Epic") states any actionable claim.

In addition, Apple makes these disclosures without in any way waiving: (1) the right to object on the basis of any privilege, the work product doctrine, competency, undue burden, relevance, materiality, hearsay, or any other proper ground, to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; (2) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures; or (3) the right to seek relief under the Protective Order issued by the Court covering information provided in discovery in this case.

All of the disclosures set forth below are made subject to the above objections and qualifications.

**I.      Individuals Likely To Have Discoverable Information**

Pursuant to Rule 26(a)(1)(A)(i), the following list sets forth the names and contact information of those individuals that Apple presently has reason to believe are likely to have discoverable information that Apple may use to support its claims and/or defenses. Apple anticipates that further individuals may be identified as discovery proceeds and Epic's claims are clarified. Apple also reserves the right to call any witnesses or rely on any documents or categories of documents identified by Epic in its Rule 26(a)(1) disclosures.

| Name and Title | Contact Information | Subject(s) |
|---|---|---|
| Dale Bagwell, Data Manager 2 | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Bagwell has information relating to developer compliance or noncompliance with App Store policies and guidelines; Apple's investment and efforts to combat fraudulent and deceptive conduct by app developers and otherwise protect iOS device users. |
| Eddy Cue, Senior Vice President, Internet Software & Services | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Cue has information relating to the development and launch of the App Store. He also has information relating to App Store policies and guidelines; the App Store business model; App Store commission; and app distribution. Mr. Cue also has information relating to the iOS operating system for Apple mobile devices and competition among device manufacturers and mobile operating system software. |
| Josh Doss, Development Manager, Metal Ecosystem | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Doss has information relating to Apple's Developer Relations team and App Store team and the tools, services, and benefits that Apple provides to developers, including services and support Apple provided to Epic. Mr. Doss also has information relating to Apple's relationship with Epic, Epic's breaches of its agreements with Apple, and Epic's tortious conduct toward Apple. |
| Matt Fischer, Vice President, App Store | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Fischer has information relating to the marketing of apps available in the App Store. He also has information relating to competitors and competition in the sale of apps and the different app marketplaces. Mr. Fischer also has information about Apple's business relationships with app developers. |

| | | |
|---|---|---|
| Eric Gray, Director, Commerce & Payments | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Gray has knowledge about Apple's policies relating to iOS app sales, including developer price selection, App Store commission levels, subscriptions, and in-app purchasing.  He also has information relating to App Store costs. |
| Mark Grimm, Game Development Manager | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Grimm has information relating to Apple's Developer Relations team and App Store team and the tools, services, and benefits that Apple provides to developers, including services and support Apple provided to Epic.  Mr. Grimm also has information relating to Apple's relationship with Epic, Epic's breaches of its agreements with Apple, and Epic's tortious conduct toward Apple. |
| Adam Hammer, Threat Intelligence Manager 2 | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Hammer has information relating to developer compliance or noncompliance with App Store policies and guidelines; Apple's investment and efforts to combat malware, spyware, and other issues relating to app security and iOS device user protection. |
| C.K. Haun, Senior Director, Developer Technical Services | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Haun has information relating to App Store policies and guidelines, the App Store business model, Apple's policies relating to app sales commission, and developer price selection.  Mr. Haun also has information about Apple's app review and curation process and procedures, and technical services Apple provides to app developers. |
| Trystan Kosmynka, Marketing Senior Director | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | Mr. Kosmynka has information relating to App Store policies and guidelines and Apple's app review and curation process and procedures. He also has information relating to Apple's investment in efforts to protect iOS device users' safety and privacy. |

| | | | |
|---|---|---|---|
| Ron Okamoto, Vice President, Worldwide Developer Relations | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | | Mr. Okamoto has information relating to the App Store policies and guidelines, the App Store business model, and app developer resources, tools, software, content and services, including those made available pursuant to the Apple Developer Agreement and Program License Agreement ("PLA").  He also has information regarding app development for macOS, the transformation of the application software business after 2008, app sales and distribution practices more generally, and Apple's promotion of new developers. |
| Robert Partington, Senior Partnership Manager, Worldwide Developer Relations | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | | Mr. Partington has information relating to Apple's Developer Relations team and App Store team and the tools, services, and benefits that Apple provides to developers, including services and support Apple provided to Epic.  Mr. Partington also has information relating to Apple's relationship with Epic, Epic's breaches of its agreements with Apple, and Epic's tortious conduct toward Apple. |
| Phil Schiller, Apple Fellow | Apple<br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 229-7000 | | Mr. Schiller has information relating to the development and launch of the App Store.  He also has information relating to App Store policies and guidelines; the App Store business model; the App Store commission; and app distribution.  Mr. Schiller also has information relating to the iOS operating system for Apple mobile devices and competition among device manufacturers and mobile operating system software.  He also has information regarding the design, development, launch, and marketing of the iPhone, and competition between device manufacturers and between mobile device operating systems. |

| | | |
|---|---|---|
| Michael Schmid, Head of Games Business Development, App Store | Apple<br><br>c/o Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br><br>(213) 229-7000 | Mr. Schmid has information relating to Apple's Developer Relations team and App Store team and the tools, services, and benefits that Apple provides to developers, including services and support Apple provided to Epic. Mr. Schmid also has information relating to Apple's relationship with Epic, Epic's breaches of its agreements with Apple, and Epic's tortious conduct toward Apple. |
| **Epic Games, Inc.** | Epic Games, Inc.<br><br>c/o Cravath, Swaine & Moore LLP<br>825 8th Avenue<br>New York, NY 10019<br><br>(212) 474-1000 | Epic and its employees have information relating to the development of apps offered by Epic; the tools, services, and benefits that Apple has provided to Epic; Apple's contracts and agreements with Epic; breach of those contracts by Epic; the "hotfix" that Epic introduced to *Fortnite* without Apple's knowledge or consent; and Epic's interference with Apple's relationships with its customers. Epic and its employees also have information relating to competition among apps and app developers; Epic's business models, revenues, costs and profits, and distribution practices and channels for its apps; Epic's business models, revenues, costs and profits, and distribution practices for its Epic Games Store; the relationship between Epic and its affiliates; and Epic's allegations in this case. |

| | | | |
|---|---|---|---|
| **Epic's Proposed Document Custodians** | Epic Games, Inc.<br><br>c/o Cravath, Swaine & Moore LLP<br>825 8th Avenue<br>New York, NY 10019<br><br>(212) 474-1000 | | Upon information and belief, the 15 individuals included on Epic's September 24, 2020, proposed custodian list have information relating to the claims and defenses in this case, including the development of apps offered by Epic; the tools, services, and benefits that Apple has provided to Epic; Apple's contracts and agreements with Epic; breach of those contracts by Epic; the "hotfix" that Epic introduced to *Fortnite* without Apple's knowledge or consent; and Epic's interference with Apple's relationships with its customers. The 15 individuals included on Epic's September 24, 2020, proposed custodian list also have information relating to competition among apps and app developers; Epic's business models, revenues, costs and profits, and distribution practices and channels for its apps; Epic's business models, revenues, costs and profits, and distribution practices for its Epic Games Store; the relationship between Epic and its affiliates; and Epic's allegations in this case. |
| **Mark Rein, Vice President and Co-Founder, Epic Games Inc.** | Epic Games, Inc.<br><br>c/o Cravath, Swaine & Moore LLP<br>825 8th Avenue<br>New York, NY 10019<br><br>(212) 474-1000 | | Mr. Rein has information relating to the development of apps offered by Epic; the tools, services, and benefits that Apple has provided to Epic; Apple's contracts and agreements with Epic; breach of those contracts by Epic; the "hotfix" that Epic introduced to *Fortnite* without Apple's knowledge or consent; and Epic's interference with Apple's relationships with its customers. Mr. Rein also has information relating to competition among apps and app developers; Epic's business models, revenues, costs and profits, and distribution practices and channels for its apps; Epic's business models, revenues, costs and profits, and distribution practices for its Epic Games Store; the relationship between Epic and its affiliates; and Epic's allegations in this case. |

| | | |
|---|---|---|
| **Epic Games International S.à r. l. ("SARL")** | Epic Games, Inc.<br><br>c/o Cravath, Swaine & Moore LLP<br>825 8th Avenue<br>New York, NY 10019<br><br>(212) 474-1000 | SARL and its employees have information relating to the relationship between Epic and its affiliates, including SARL; and, SARL's knowledge of, participation in, and receipt of proceeds from Epic's hotfix.  SARL and its employees also have information relating to competition among apps and app developers. |
| **Life on Air, Inc. ("Life on Air")** | Epic Games, Inc.<br><br>c/o Cravath, Swaine & Moore LLP<br>825 8th Avenue<br>New York, NY 10019<br><br>(212) 474-1000 | Life on Air and its employees have information relating to the relationship between Epic and its affiliates, including Life on Air; and, Life on Air's knowledge of, participation in, and receipt of proceeds from Epic's hotfix.  Life on Air and its employees also have information relating to competition among apps and app developers. |
| **Tencent Holdings, Ltd. ("Tencent")** | Tencent America Headquarters<br><br>2747 Park Boulevard<br>Palo Alto, CA 94306 | Tencent and its employees have information relating to Epic's business models, revenues, costs and profits, and distribution practices and channels for its apps; Epic's business models, revenues, costs and profits, and distribution practices for its Epic Games Store; the relationship between Epic and its affiliates; and Epic's allegations in this case |
| **Third-Party App Marketplaces**: companies that run app marketplaces, which may include, but are not limited to Google Play, Amazon AppStore, Chrome Web Store, Microsoft Store, and those run by Samsung, Blackberry, Valve, and Cydia. | N/A | Third party app marketplaces have information relating to sales and distribution of apps; app developer business models; pricing of apps; competition for sales of apps; competition between device manufacturers and between mobile device operating systems; and entry and expansion in the U.S. |

| | | |
|---|---|---|
| **Third-Party Game Platforms**: companies that operate game platforms and distribute games made by Epic and others, which may include, but are not limited to, Nintendo, Sony PlayStation, and Microsoft Xbox. | N/A | Third-party game platforms have information relating to sales and distribution of games; game developer business models; pricing of games; competition for sales of games; competition between console manufacturers, mobile devices, and operating systems; consumer preference for play on various consoles and mobile devices; and entry and expansion in the U.S. |
| **Other iOS App Developers**: iOS app developers that are not Epic and/or its affiliates. | N/A | Other iOS app developers have information relating to competition among apps and app developers; app developer business models; app developer revenues, costs and profits; and distribution practices and channels. |
| **Other App Developers for the Epic Games Store**: app developers that offer software or apps through the Epic Games Store. | N/A | Other app developers for the Epic Games Store have information relating to their revenues, costs and profits on the Epic Games Store; Epic's distribution practices; the commissions charged by Epic and the services and support provided by Epic on the Epic Games Store; and, the quality, security, and consumer privacy standards and experiences on the Epic Games Store. |

II.   **Documents**

Pursuant to Rule 26(a)(1)(A)(ii), Apple provides the following description by category of all documents, electronically stored information, and tangible things that Apple currently believes to have in its possession, custody, or control, and that Apple may use to support its counterclaims and defenses.

1. Documents relating to the design, development, launch, maintenance, and updating of the App Store.

2. Documents relating to the relationship between the App Store, Apple's mobile devices, and the iOS operating system for Apple mobile devices.

3. Documents relating to the design, development, launch, updating, and provision of the software tools and other software, resources, content and services made available to iOS app developers pursuant to the Apple Developer Agreement and PLA.

4. Documents relating to the software tools and other software, resources, content and services that Apple provided to Epic pursuant to the Apple Developer Agreement and PLA or otherwise.

5. Documents relating to Apple's intellectual property rights, including with respect to Apple's mobile devices, the iOS operating system, application programming interfaces, software tools and other software, content and services made available to iOS app developers pursuant to the Apple Developer Agreement and PLA.

6. Apple agreements with Epic, its affiliates, and other iOS app developers, including the Apple Developer Agreement, Apple Developer Program License Agreement, and schedules, amendments, and modifications thereto.

7. Apple agreements with consumers, including the Software License Agreements for any iPhone, iPad, iPod, or version of iOS or iPadOS, the Licensed Application End User Agreement, the Apple Media Services Terms and Conditions, and amendments and modifications thereto.

8. Documents relating to Apple's review and curation of apps for sale in the App Store, including the importance of Apple's App Review Guidelines to the operation and viability of the App Store.

9. Documents relating to Apple's review and approval of updates for apps available in the App Store, including information developers are required to submit for any app update, the mechanisms of updating apps, and Apple's policies and procedures for reviewing app updates.

10. Documents relating to Apple's marketing of apps and activity supporting app discovery in the App Store.

11. Documents relating to Apple's efforts to ensure compliance with App Store policies and guidelines by iOS app developers and their affiliates, including preventing malware and security or privacy threats in the App Store.

12. Documents relating to app sales and app pricing.

13. Documents relating to the lack of any injury allegedly sustained and/or claimed by Epic in this action.

14. Documents relating to Apple's knowledge, review, and approval of Epic's apps and app updates for sale in the App Store, including *Fortnite*.

15. Documents relating to Apple's relationship with Epic Games and its affiliates, including the support provided by Apple to support Epic Games' apps.

16. Documents relating to Epic Games' breaches of its agreements with Apple.

17. Documents relating to communications between Epic and Apple.

9

DEFENDANT AND COUNTERCLAIMANT APPLE INC.'S
INITIAL DISCLOSURES [Served October 12, 2020]
CASE NO. 4:20-cv-05640-YGR

Gibson, Dunn &
Crutcher LLP

18. Documents relating to the injury, damages, and/or monetary loss sustained and/or claimed by Apple in this action.

In addition, Apple provides the following description by category of all documents, electronically stored information, and tangible things that Apple believes to be in Epic's possession, custody, or control, and that Apple may use to support its counterclaims and defenses.

19. Documents relating to competition among apps and app developers, including for development of games.

20. Documents relating to Epic's business model, revenues, costs, and profits on each distribution channel for its apps and products.

21. Documents relating to commissions paid by Epic and services and support received by Epic on each distribution channel for its apps and products.

22. Documents relating to the quality, security, and consumer privacy standards and experiences on each distribution channel for Epic's apps and products.

23. Documents relating to Epic's business model, revenues, costs, and profits on the Epic Games Store.

24. Documents relating to commissions charged by Epic and services and support provided by Epic to its developers on the Epic Games Store, including Epic's agreements with app developers.

25. Documents relating to the quality, security, and consumer privacy standards and experiences on the Epic Games Store.

26. Documents relating to Epic's initial decision not to offer Fortnite on Google Play and the subsequent malware attacks on Android Fortnite players.

27. Documents relating to Epic's decision to ultimately offer Fortnite on Google Play and the reasons for that decision.

28. Documents relating to Version 13.40 of Fortnite, including the information that Epic submitted to Apple for review and approval of Version 13.40.

29. Documents related to Epic's "hotfix" that incorporated Epic Direct Payment into Fortnite, including Epic's development and execution of the hotfix, and Epic's communications with its affiliates and with Apple regarding that "hotfix."

30. Documents relating to the distribution of revenues from in-app purchases by iOS users through Epic's hotfix and Epic Direct Payment, including any distributions to SARL and/or other Epic affiliates.

This disclosure does not waive any privileges or protection that may apply to documents within the foregoing categories, and Apple expressly reserves any objection to the production of documents that are protected from discovery pursuant to the law of the United States or any applicable jurisdiction. Apple may assert any and all appropriate privileges, including, but not limited to, the attorney-client privilege and work product doctrine, and the Court has entered a stipulated protective order to govern the production of any confidential or sensitive information. Apple anticipates that additional documents will be obtained from Epic. Apple reserves the right to supplement this list to reflect additional documents upon Epic's clarification of their claims and as discovery commences and continues. Apple expressly preserves all objections under the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and/or the Civil Local Rules of this Court to the admissibility of any information disclosed. By identifying the foregoing categories of documents, Apple does not concede that any category listed is relevant and reserves all objections, privileges and protections (including, but not limited to, the attorney-client privilege and/or the work product doctrine).

### III. Damages

Pursuant to Rule 26(a)(1)(A)(iii), Apple intends to seeks indemnification, compensatory damages, punitive damages, pre- and post-judgment interest, and attorney's fees, in addition to a permanent injunction. It also intends to seek restitution and disgorgement of all earnings, profits, compensation, benefits, and all other ill-gotten gains obtained by Epic based on its illegal conduct.

Some or all of Apple's injuries are ongoing, and Apple will supplement these disclosures to identify the amount of damages arising from Epic's conduct as fact and expert discovery progress.

### IV. Insurance Agreements

Pursuant to Rule 26(a)(1)(A)(iv), Apple is unaware at this time of the existence of any relevant agreement under which an insurance company may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

* * * * *

Apple reserves the right to supplement and correct these initial disclosures to include information hereafter acquired based upon further clarification of Epic's claims and discovery.

Dated: October 12, 2020                               GIBSON, DUNN & CRUTCHER LLP


                                        By:   /s/ *Cynthia E. Richman*
                                               Cynthia E. Richman


                                        Attorney for Defendant and Counterclaimant Apple Inc.

**CERTIFICATE OF SERVICE**

I, Betty X. Yang, hereby certify that I am a citizen of the United States, over the age of eighteen, and not a party to this action. I hereby certify that on October 12, 2020, I delivered the foregoing **DEFENDANT AND COUNTERCLAIMANT APPLE INC.'S INITIAL DISCLOSURES**, via electronic mail, pursuant to an agreement among the parties for electronic service, to the following counsel for Epic Games, Inc.

| | |
|---|---|
| PAUL R. RIEHLE<br>paul.riehle@faegredrinker.com<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center<br>San Francisco, CA 94111<br>Telephone: (415) 591-7500<br>Facsimile: (415) 591-7510 | CHRISTINE A. VARNEY<br>cvarney@cravath.com<br>KATHERINE B. FORREST<br>kforrest@cravarth.com<br>GARY A. BORNSTEIN<br>gbornstein@cravarth.com<br>YONATAN EVEN<br>yeven@cravath.com<br>LAUREN A. MOSKOWITZ<br>lmoskowitz@cravath.com<br>M. BRENT BYARS<br>mbyars@cravath.com<br>**CRAVATH, SWAINE & MOORE LLP**<br>825 Eighth Avenue<br>New York, New York 10019<br>Telephone: (212) 474-1000<br>Facsimile: (212) 474-3700 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12th day of October 2020, at Dallas, Texas.

By: /s/ *Betty X. Yang*
    Betty X. Yang