# UNITED STATES DISTRICT COURT
for the
Northern District of California

|  |  |
|---|---|
| EPIC GAMES, INC. v. APPLE INC.<br>IN RE APPLE IPHONE ANTITRUST LITIGATION<br>CAMERON ET AL. v. APPLE INC. | Civil Action Nos.   4:20-CV-05640-YGR-TSH<br>4:11-CV-06714-YGR-TSH<br>4:19-CV-03074-YGR-TSH |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Microsoft Corporation
One Microsoft Way, Redmond, WA 98052-6399

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Schedule A

| Place: | Faegre Drinker Biddle & Reath LLP<br>Four Embarcadero Center, 27th Floor<br>San Francisco, California 94111<br><br>Or as otherwise agreed. | Date and Time:<br>December 21, 2020, 10:00 a.m. |
|---|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: December 2, 2020

*CLERK OF COURT*

OR

_____          /s/ J. Wesley Earnhardt
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*
                                               J. Wesley Earnhardt

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Epic Games, Inc. _____, who issues or requests this subpoena, are:

J. Wesley Earnhardt, 825 Eighth Avenue, New York, New York 10019, wearnhardt@cravath.com, (212) 474-1000

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action Nos. 4:20-CV-05640-YGR-TSH, 4:11-CV-06714-YGR-TSH, 4:19-CV-03074-YGR-TSH

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ on *(date)* _____

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____    My fees are $ _____    My fees are $ _____    _____

I declare under penalty of perjury that this information is true.

Date: _____                    Date: _____
                                                   _____
                                                   *Server's signature*

                                                   _____
                                                   *Printed name and title*

                                                   _____
                                                   *Server's address*

Additional information regarding attempted service, etc.:

Case 4:20-cv-05640-YGR   Document 648-6   Filed 05/12/21   Page 4 of 19

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

1. "**APPLE**" means Apple Inc. and all predecessors, successors, subsidiaries, divisions, parents or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants and representatives thereof, and any other person acting on behalf of any of the foregoing entities.

2. "**APPLE'S IAP**" refers to the Apple In-App Purchase API referenced in Section 3.3.25 and Attachment 2 of the current version of the Apple Developer Program License Agreement.

3. "**APP**" or "**APPS**" means a software program or programs designed to run on a computing device, regardless of the means of distribution.

4. "**COALITION**" refers to the Coalition for App Fairness.

5. "**COMMUNICATION**" or "**COMMUNICATIONS**" means, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing or in any other manner, at any time or place, and under any circumstances whatsoever.

6. "**CONCERNING**" a given subject means: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing or supporting a given subject matter.

7. "**DEVELOPER**" or "**DEVELOPERS**" means any person or entity who develops or otherwise makes available an APP or other software.

8. "**DEVICE**" means any HANDHELD DEVICE or NON-HANDHELD DEVICE. For the avoidance of doubt, the term YOUR DEVICES refers to any DEVICE manufactured and/or sold by YOU or for which YOUR software serves as the operating system, and

INCLUDES the Windows Phone series of smartphones, the Microsoft Surface and Microsoft Surface Pro and Go series of tablets and the Xbox series of gaming consoles.

9. "**DIGITAL PRODUCT**" or "**DIGITAL PRODUCTS**" means any digital product, service or other item available for download or sold via or in a SOFTWARE STORE for use on a DEVICE, INCLUDING APPS whether downloaded or purchased in or outside of the United States. This term INCLUDES IN-APP PURCHASES.

10. "**DOCUMENT**" and "**DOCUMENTS**" has the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and encompasses all forms of tangible expression, INCLUDING all electronically stored information or data, and all written, recorded, printed, typed, transcribed, filmed, digitized, or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, computer code, software, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, INCLUDING papers, books, records, correspondence, reports, memoranda, electronic mail (e-mail), text, instant or social media messages (INCLUDING SMS or MMS text or multimedia messages and proprietary messages such as those sent or received via Allo, Google+, Google Chat, WhatsApp, Twitter, Facebook or iMessage), contracts, accounting or other ledgers, tables, tabulations, graphs, charts, diagrams, plans, schedules, appointment books, calendars, diaries, time sheets, studies, analyses, drafts, telegrams, teletype or telecopy messages, files, telephone logs and messages, checks, microfilms, microfiche, pictures, photographs, printouts, electronic data, electronic data compilations, tapes, diskettes, hard drives, magnetic drives, solid-state disks or solid-state drives, hybrid drives, cloud storage, removable media, notes, minutes or transcripts of proceedings. The term DOCUMENT or DOCUMENTS INCLUDES originals and all non-identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all other data compilations from which information can be obtained (translated, if necessary into useable form), and any preliminary versions, drafts or other revisions of any of the foregoing.

11. "**EPIC**" means Epic Games, Inc. and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants, representatives and any other person acting on behalf of any of the foregoing entities.

12. "**EXTERNAL PRODUCTS**" means DIGITAL PRODUCTS and services purchased outside of an APP (such as through an APP DEVELOPER'S website) that one may use within an APP, and INCLUDES subscriptions to Office 365, Skype credit and similar DIGITAL PRODUCTS to the extent they are acquired other than through an IN-APP PURCHASE.

13. "**GAME PASS**" means YOUR Xbox cloud gaming APPS, INCLUDING Xbox Game Pass, Xbox Live, Xbox Live Gold and Xbox Game Pass Ultimate.

14. "**HANDHELD DEVICE**" means any smartphone, tablet or portable MP3 music player. For the avoidance of doubt, the term YOUR HANDHELD DEVICES refers to any HANDHELD DEVICE manufactured and/or sold by YOU, and INCLUDES the Windows Phone series of smartphones and the Microsoft Surface and Microsoft Surface Pro and Go series of tablets.

15. "**IN-APP PRODUCT**" means any feature, service or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, in-game currencies, game levels, access to premium content or unlocking a full version of an APP.

16. "**IN-APP PURCHASE**" or "**IN-APP PURCHASES**" means any purchase made within or from a DIGITAL PRODUCT by a DIGITAL PRODUCT user, excluding the purchase price of the DIGITAL PRODUCT, such as the APP, itself. Examples of IN-APP PURCHASES INCLUDE paying for enhanced or updated content, purchasing a weapon within a game, buying virtual currency, paying for or renewing subscriptions, or paying to eliminate advertisements within an application.

17. "**INCLUDING**" or "**INCLUDE**" shall not be construed as limiting any request, and means the same as "including, but not limited to".

18. "**iOS**" means APPLE'S operating system that powers or is used by an iOS DEVICE and INCLUDES any iOS versions, variants or forks, INCLUDING iPadOS and any versions, variants or forks thereof.

19. "**iOS APP**" means any APP that is compatible with iOS.

20. "**iOS APP STORE**" means the SOFTWARE STORE operated by APPLE for use on iOS.

21. "**iOS DEVICE**" means any DEVICE created by APPLE that uses iOS, INCLUDING all iPhones and iPads.

22. "**MICROSOFT OS**" means any operating system offered by YOU for DEVICES and INCLUDES Windows 10 and Xbox OS and any versions, variants or forks.

23. "**MICROSOFT STORE**" means any SOFTWARE STORE operated by YOU available on DEVICES, and INCLUDES the Microsoft Store on Windows 10, the Microsoft Store for Xbox, Windows Store and Windows Phone Store.

24. "**NON-HANDHELD DEVICE**" means laptop computers, desktop computers or video game consoles. For the avoidance of doubt, the phrase YOUR NON-HANDHELD DEVICES means any NON-HANDHELD DEVICE manufactured and/or sold by YOU, INCLUDING the Xbox series of gaming consoles.

25. "**PAYMENT PROCESSOR**" means an entity or a service that handles payment transactions between APP users and DEVELOPERS through various channels such as credit cards and debit cards. This term INCLUDES entities such as Adyen, Braintree, PayPal, Square and Stripe and also INCLUDES, for the avoidance of doubt, APPLE'S IAP and any PAYMENT PROCESSOR YOU have developed.

26. "**RELATE TO**" or "**RELATING TO**" means, without limitation, the following concepts: discussing, describing, setting forth, reflecting, dealing with, pertaining to, analyzing, evaluation, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, from, to, or otherwise involving, in whole or in part.

27. "**REPORTS**" means any reports, research, papers, memoranda, presentations, reviews, statistical compilations or other analyses.

28. "**REVIEW**" and "**REVIEWING**" means, with respect to APPS, any process of screening, evaluating, analyzing, approving or monitoring APPS, regardless of whether such process takes place before or after the publication of APPS in a SOFTWARE STORE or before or after the installation of APPS onto a HANDHELD DEVICE or a NON-HANDHELD DEVICE.

29. "**SOFTWARE STORE**" or "**SOFTWARE STORES**" means any digital store that offers APPS for digital distribution, INCLUDING websites that offer APPS for digital distribution.

30. "**THIS ACTION**" means *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR-TSH (N.D. Cal.) and any related actions, INCLUDING *In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR-TSH (N.D. Cal.) and *Cameron v. Apple Inc.*, No. 419-cv-03074-YGR-TSH (N.D. Cal.).

31. "**xCLOUD**" refers to YOUR Xbox cloud gaming service.

32. "**YOU**" or "**YOUR**" refers to Microsoft Corporation, all predecessors, successors, subsidiaries, divisions, parents or affiliates thereof, past or present, and all past or present officers, directors, affiliates, agents, employees, consultants and representatives thereof, and any other person acting on behalf of any of the foregoing entities.

## INSTRUCTIONS

1. The following rules of construction shall apply to all discovery requests:

   a. The connectives "**and**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make the topic inclusive rather than exclusive;

  b. The use of the present or past tense shall be construed to INCLUDE both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

  c. "**Any**" and "**each**" shall be construed to mean "all", and vice versa;

  d. "**The**" shall not be construed as limiting the scope of any topic;

  e. References to employees, officers, directors or agents INCLUDE both current and former employees, officers, directors and agents; and

  f. The use of the singular form of any word INCLUDES the plural and vice versa.

2. Unless otherwise stated, the Subpoena and the requests contained herein ("**REQUESTS**") call for the search for, collection and production of all responsive DOCUMENTS created or obtained by YOU since 2008 through the present. If, after an initial production, YOU obtain or become aware of additional DOCUMENTS that are responsive to this Subpoena, YOU are required to promptly produce such additional DOCUMENTS.

3. In complying with the Subpoena, YOU are required to produce all DOCUMENTS described below that are in YOUR possession, custody or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody or control of YOUR present and former attorneys, investigators, accountants, agents, representatives or other persons acting on YOUR behalf.

4. All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the REQUESTS.

5. For the purpose of reading, interpreting or construing the scope of the REQUESTS in this Subpoena, the terms used should be given their most expansive and inclusive interpretation.

6. Unless instructed otherwise, each specification should be construed independently and not by reference to any other REQUEST for the purpose of limitation.

7. If any portion of a DOCUMENT or COMMUNICATION is responsive to any REQUEST, the entire DOCUMENT or COMMUNICATION should be produced.

8. If YOU object to any REQUEST, in whole or in part, state the grounds of YOUR objection with specificity and produce DOCUMENTS responsive to the remainder of the REQUEST.

9. If, in answering this Subpoena, YOU encounter any ambiguities when construing a REQUEST, instruction or definition, YOUR response shall set forth the matter deemed ambiguous and the construction used in responding. For the avoidance of doubt, this instruction does not in any way limit YOUR obligation to give terms their most expansive and inclusive interpretation when reading, interpreting or construing the scope of the REQUESTS in this Subpoena.

10. Where a claim of privilege or other protection from discovery is asserted in objecting to any REQUEST, YOU should identify the nature of the privilege or protection (INCLUDING work product protection) that is being claimed. In such case, YOU should also (a) indicate, as to the information requested, whether any DOCUMENTS exist, and (b) provide the following information for each such DOCUMENT in a "privileged documents log" or similar format:

    a. The type of DOCUMENT;

    b.  The general subject matter of the DOCUMENT;

    c.  The date of the DOCUMENT;

    d.  The author(s) of the DOCUMENT;

    e.  Any recipient(s), copyee(s) or blind copyee(s) of the DOCUMENT; and

    f.  The custodian of the DOCUMENT, where applicable.

  11.  The search will INCLUDE both hard copies and electronically stored information. Compliance with this Subpoena requires a search of all DOCUMENTS in YOUR possession, custody or control, whether or not such DOCUMENTS are on YOUR premises.

  12.  DOCUMENTS produced pursuant to this Subpoena should be produced as they are kept in the ordinary course of business, INCLUDING electronically stored information. Electronic materials, information and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

  13.  DOCUMENTS in electronic form, INCLUDING e-mail, should be produced in color in single page tagged image file format ("TIFF"). TIFFs shall show all text and images that would be visible in the original electronic format ("native format"), INCLUDING redlines and speaker notes. An associated load file linking the images to the corresponding DOCUMENT should be provided. All DOCUMENTS with a native format of a spreadsheet, INCLUDING files such as Microsoft Excel and Google Sheets, shall be produced in native format. All metadata associated with any electronically stored information shall be produced in text format linked to the associated DOCUMENT. Extracted text or, if extracted text is not available, optical character recognition ("OCR") text should be provided in document-level text files. Alternatively, DOCUMENTS in electronic form may be produced in a manner consistent with any e-discovery stipulation that is filed in THIS ACTION.

14. Notwithstanding any of the other provisions in these Instructions, DOCUMENTS that are re-produced in whole or in part from the production files of another litigation, arbitration, government inquiry or other matter may be produced in the same manner and form as originally produced in the other matter; provided, however, that YOU will re-produce DOCUMENTS in a different format as set forth herein if reasonably necessary to the DOCUMENTS' comprehension or use.

15. EPIC serves these REQUESTS without prejudice to serve additional requests for production.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

DOCUMENTS sufficient to show whether YOU have offered, could offer or have evaluated offering a version of MICROSOFT STORE on iOS DEVICES.

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show whether APPLE'S contractual or other restrictions have prevented, impeded or disincentivized YOU from developing or offering MICROSOFT STORE on iOS DEVICES.

**REQUEST FOR PRODUCTION NO. 3:**

REPORTS, studies or analyses of any real or anticipated impact on YOU, DEVELOPERS or APP users from YOUR adoption of each of the COALITION'S 10 Principles for MICROSOFT STORE.

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show whether YOU allow DEVELOPERS to distribute their MICROSOFT OS APPS through SOFTWARE STORE(S) other than

9

MICROSOFT STORE.

**REQUEST FOR PRODUCTION NO. 5:**

DOCUMENTS sufficient to show the key features of MICROSOFT STORE (INCLUDING any features that YOU know differ from iOS APP STORE), INCLUDING:

a. whether YOU block APPS from MICROSOFT OS based on the manner in which a DEVELOPER delivers content and services, for example, whether content is installed on a DEVICE or streamed from the cloud;

b. whether YOU block APPS from MICROSOFT OS based on a DEVELOPER'S choice of the PAYMENT PROCESSOR(S) offered for IN-APP PURCHASES;

c. whether YOU block DEVELOPERS from communicating with their users through their APPS;

d. whether YOU permit IN-APP DIGITAL PRODUCTS purchased outside of MICROSOFT STORE to be used on YOUR DEVICES;

e. whether MICROSOFT STORE offers features, innovations and services that iOS APP STORE does not offer, such as parental controls, customer service, security features, social features, advertising features, recommendation features and others; and

f. whether MICROSOFT STORE offers tools and services to DEVELOPERS that iOS APP STORE does not offer to DEVELOPERS.

**REQUEST FOR PRODUCTION NO. 6:**

DOCUMENTS sufficient to show a representative sample of any exceptions, discounts or promotions that YOU have offered to DEVELOPERS that lower the commission rates and/or fees YOU charge DEVELOPERS for:

a. a user purchase of an APP downloaded from MICROSOFT STORE for

10

Windows;

   b. a user IN-APP PURCHASE from an APP downloaded from MICROSOFT STORE for Windows; or

   c. a user purchase of an APP from other online or direct distribution methods on Windows.

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS sufficient to show the tools and services that YOU provide to DEVELOPERS on MICROSOFT STORE for Windows, and any REPORTS quantifying the value of such tools and services, INCLUDING how the value of such tools and services effectively reduces the commission rates and/or fees YOU charge DEVELOPERS.

**REQUEST FOR PRODUCTION NO. 8:**

REPORTS and/or analyses RELATING TO DEVELOPER reinvestment of savings from lower SOFTWARE STORE commission rates and/or fees, INCLUDING any impact of such reinvestment on the quantity, quality or price of APPS.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to show whether YOU have offered, could offer or have evaluated offering a PAYMENT PROCESSOR for IN-APP PURCHASES compatible with iOS.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show whether APPLE'S contractual or other restrictions have prevented, impeded, or disincentivized YOU from developing or offering a PAYMENT PROCESSOR for IN-APP PURCHASES compatible with iOS.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS sufficient to show whether APPS on MICROSOFT OS are

11

capable of using and/or in fact use a PAYMENT PROCESSOR (or PAYMENT PROCESSORS) for IN-APP PURCHASES other than a PAYMENT PROCESSOR provided by YOU.

**REQUEST FOR PRODUCTION NO. 12:**

For a representative sample of YOUR APPS, such as "Microsoft Soundscape", "Continue on PC", "Microsoft Pix Camera", "Microsoft Selfie", "Microsoft Translator", "Microsoft Office Lens/PDF Scan", "MileIQ", "Microsoft Family Safety" and "Xbox Game Pass", DOCUMENTS sufficient to show:

a. each operating system for which YOU have developed the APP and any differences in APP features among each operating system;

b. the extent to which individual users of the APP download and/or utilize the APP on both iOS and Android HANDHELD DEVICES; and

c. the extent to which individual users of the APP download and/or utilize the APP on both a HANDHELD DEVICE and a NON-HANDHELD DEVICE.

**REQUEST FOR PRODUCTION NO. 13:**

DOCUMENTS sufficient to show how distribution of YOUR APPS through iOS APP STORE, and the attendant contractual and other restrictions, has impacted YOUR relationships with YOUR customers for a representative sample of YOUR APPS, such as "Microsoft Soundscape", "Continue on PC", "Microsoft Pix Camera", "Microsoft Selfie", "Microsoft Translator", "Microsoft Office Lens/PDF Scan", "MileIQ", "Microsoft Family Safety" and "Xbox Game Pass", INCLUDING:

a. the extent to which YOU are or were able (or unable) to provide comprehensive customer support to YOUR customers on the iOS APP STORE;

b. the impact on YOUR customer support and customer relationships from

APPLE'S requirement that customers use the iOS APP STORE and that all APPS use APPLE'S IAP for IN-APP PURCHASES;

  c. customer dissatisfaction with the iOS APP STORE, INCLUDING dissatisfaction CONCERNING customer service RELATED TO cancellations, payments and refunds;

  d. customers blaming YOU for customer service decisions made by APPLE; and

  e. customer dissatisfaction with APPLE'S parental controls.

**REQUEST FOR PRODUCTION NO. 14:**

  DOCUMENTS sufficient to show a representative sample of any innovations, services, features, APPS or IN-APP PRODUCTS that YOU would have developed or offered for use on iOS DEVICES but did not because iOS APP STORE policies would not have permitted it, would have made it unprofitable or otherwise caused YOU to not pursue it.

**REQUEST FOR PRODUCTION NO. 15:**

  DOCUMENTS sufficient to show the availability and capability of and demand for GAME PASS and xCLOUD on iOS DEVICES, INCLUDING:

  a. the extent to which YOUR efforts to offer GAME PASS and xCLOUD on iOS DEVICES have been prevented, impeded or disincentivized by APPLE'S contractual and other restrictions;

  b. REPORTS and/or analyses CONCERNING differences in user experience between using GAME PASS and xCLOUD on iOS DEVICES, NON-HANDHELD DEVICES or any other DEVICE, INCLUDING differences in consumer investment costs, characteristics or quality of game play and latency;

13

c. REPORTS and/or analyses CONCERNING differences in user experience between using an APP and using a web browser to stream GAME PASS and xCLOUD, INCLUDING differences in quality of game play and latency; and

d. REPORTS and/or projections of the demand or market opportunity for GAME PASS and xCLOUD on iOS DEVICES accessed via both (i) iOS APPS and (ii) a web browser, INCLUDING any data RELATING TO the actual or projected number of users, duration of average game play and frequency of game play as between GAME PASS and xCLOUD accessed on iOS APPS and GAME PASS and xCLOUD accessed on a web browser.

**REQUEST FOR PRODUCTION NO. 16:**

With respect to YOUR Xbox line of business, DOCUMENTS sufficient to show:

a. the commission rates and/or fees YOU charge DEVELOPERS on APP sales on MICROSOFT STORE for Xbox, INCLUDING a representative sample of any exceptions, discounts or promotions that YOU have offered to DEVELOPERS;

b. the commission rates and/or fees YOU charge DEVELOPERS on IN-APP PURCHASES from APPS downloaded from MICROSOFT STORE for Xbox, INCLUDING a representative sample of any exceptions, discounts or promotions that YOU have offered to DEVELOPERS;

c. the profit margins that YOU earn on the sale of Xbox DEVICES; and

d. YOUR rationale for YOUR pricing of Xbox DEVICES.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show the tools and services that YOU provide to DEVELOPERS on MICROSOFT STORE for Xbox, and any REPORTS quantifying the value of such tools and services, INCLUDING how the value of such tools and services effectively

reduces the commission rates and/or fees YOU charge DEVELOPERS.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS analyzing or CONCERNING who YOU consider to be YOUR primary competitors for YOUR Xbox business line.

**REQUEST FOR PRODUCTION NO. 19:**

With respect to Windows OS, DOCUMENTS sufficient to show:

a. that YOU offer a version of Windows OS called "Windows 10 in S Mode", which YOU market as more secure than standard Windows 10;

b. that Windows 10 in S Mode allows only APPS from MICROSOFT STORE;

c. the percentage of Windows 10 users who have chosen to use Windows 10 in S Mode;

d. a representative sample of feedback from users on why they have chosen to use—or not to use—Windows 10 in S Mode; and

e. REPORTS and/or analyses CONCERNING why users may have chosen to use—or not to use—Windows 10 in S Mode.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS produced by YOU in THIS ACTION, INCLUDING all DOCUMENTS produced by YOU pursuant to APPLE'S subpoena dated November 3, 2020.