Steven L. Holley (appearance *pro hac vice*)
(holleys@sullcrom.com)
Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588

Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:     (650) 461-5600
Facsimile:     (650) 461-5700

*Attorneys for Non-Party Spotify USA Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>APPLE INC.<br><br>                    Defendant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**NON-PARTY SPOTIFY USA INC.'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00000925 AND SPOT-EPIC-00001023** |

SULLIVAN & CROMWELL LLP

NON-PARTY SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00000925 AND SPOT-EPIC-00001023
CASE NO. 4:20-CV-05640-YGR-TSH

Pursuant to Local Civil Rules 7-11 and 79-5, Non-Party Spotify USA Inc. ("Spotify") respectfully moves the Court to seal certain portions of two documents that Spotify produced to Apple Inc. ("Apple") and Epic Games, Inc. ("Epic"), bearing Bates numbers SPOT-EPIC-00000925 through SPOT-EPIC-00000929, and SPOT-EPIC-00001023 through SPOT-EPIC-00001025, which Spotify understands the parties may use or discuss during the trial of this action. To the extent these documents are introduced as exhibits in the trial of this action, the unredacted versions of the documents should not be disclosed to the public, and the courtroom should be sealed for any portion of trial testimony in which the parties seek to describe or discuss the sealable portions of these documents. Spotify sought Apple's and Epic's consent to Spotify's filing of a motion to seal the contents of these documents; both parties informed Spotify that they consent to Spotify's request to seal the documents.

In support of the Motion, Spotify is submitting the accompanying Declaration of Benjamin Kung, the Declaration of Shane M. Palmer, redacted and unredacted versions of the documents Spotify is moving to partially seal for the Court's review, and a Proposed Order.

## FACTUAL BACKGROUND

On May 11, 2021, Epic informed Spotify that it may rely upon two documents that Spotify produced to the parties in this litigation during trial. (*See* Declaration of Shane M. Palmer ("Palmer Decl.") ¶ 7.) The documents that Epic indicated it may rely upon were produced by Spotify, bearing Bates numbers SPOT-EPIC-00000925 through SPOT-EPIC-00000929, and SPOT-EPIC-00001023 through SPOT-EPIC-00001025, in response to subpoenas that Apple and Epic served on Spotify in this action pursuant to Federal Rule of Civil Procedure 45. (*Id.* ¶ 3.) SPOT-EPIC-00000925 is a cover letter for a production of documents made by Spotify to the Office of the Attorney General of California ("the California AG") on June 11, 2020 (the "Letter"). (Declaration of Benjamin Kung ("Kung Decl.") ¶ 7.) SPOT-EPIC-00001023 is a response by Spotify to an Information Request from the Japan Fair Trade Commission ("JFTC"), dated November 16, 2020, in connection with a fact-finding survey conducted by the JFTC of competition in digital platforms (the "JFTC Response"). (*Id.* ¶ 8.) As a condition to producing the Letter, the JFTC Response, and other documents to Apple and Epic, Spotify negotiated with

Sullivan & Cromwell LLP

1

Non-Party Spotify's Administrative Motion to Seal Portions of SPOT-EPIC-00000925 and SPOT-EPIC-00001023
Case No. 4:20-cv-05640-YGR-TSH

both parties and obtained their agreement to seek from the Court additional confidentiality protections for Spotify's documents. (Palmer Decl. ¶ 4.) In recognition of the competitively sensitive nature of Spotify's information, the parties jointly filed a Stipulated Supplemental Protective Order Governing Discovery from Spotify that provided Spotify the ability to designate documents it produced in this action as "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY," which in turn prohibited even employees and in-house counsel of Apple and Epic from viewing the documents or the information contained therein except in narrowly limited circumstances.[1] (*Id.* ¶ 5.) The Court entered that stipulated protective order on February 11, 2021 (Dkt. No. 407), and Spotify properly designated the Letter and the JFTC Response as containing "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" information when it produced those documents to the parties. (*Id.* ¶¶ 5–6.)

## ARGUMENT

Although there is a presumptive right of public access to court records based on common law and First Amendment grounds, "access to judicial records is not absolute," *Kamakana* v. *City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and may be denied by the Court to protect confidential information. *See Phillips ex rel. Estates of Byrd* v. *General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002). A party seeking to seal a document or proceedings must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (alteration, citations, and quotation marks omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

---

[1] One reason why Spotify sought these heightened protections for its confidential information is because Spotify directly competes with Apple's Apple Music audio streaming service. Recognizing that the information Apple and Epic were seeking from Spotify could give Apple an unwarranted advantage in its competition with Spotify, Spotify took steps to ensure that its proprietary, competitively sensitive information would not be disclosed to Apple employees or any others who might use that information inappropriately to Spotify's disadvantage.

Sullivan & Cromwell LLP

2

Non-Party Spotify's Administrative Motion to Seal Portions of SPOT-EPIC-00000925 and SPOT-EPIC-00001023
Case No. 4:20-cv-05640-YGR-TSH

1  Moreover, Spotify is not a party to this action and did not voluntarily invoke the Court's
2  jurisdiction; it only produced the information it seeks to seal because Apple and Epic demanded it
3  by invoking the Court's subpoena power.  As a result, Spotify's confidentiality interests should be
4  entitled to special consideration.  *See, e.g.*, *Hunt* v. *Cont'l Cas. Co.*, No. 13-cv-05966 HSG, 2015
5  WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (sealing third parties' names where such information
6  "implicates important privacy concerns of nonparties . . . that outweigh the public's interest in
7  disclosure of these judicial records").

8     Consistent with the heightened protections that Spotify has already obtained in
9  connection with the production of its highly sensitive business information, Spotify seeks to
10 maintain certain portions of the Letter and JFTC Response—which are highlighted in the
11 unredacted versions of these documents that Spotify is submitting concurrently herewith—under
12 seal.  The sealable portions of these documents include information comprising Spotify's
13 proprietary data and its analysis of that data, and other information that Spotify keeps confidential
14 and does not disclose to the public.  To maintain the confidentiality of this information, Spotify
15 invests in data security measures to prevent unauthorized outside parties from accessing the
16 information. (Kung Decl. ¶ 11.)  And when Spotify provided these documents to the California
17 AG and the JFTC, it made clear that the documents contained sensitive business information and
18 shared them with the understanding that the California AG and the JFTC would maintain the
19 documents in confidence and not disclose them to the public.  (*Id.* ¶¶ 7–8.)

20    Here, compelling reasons—including the serious risk of competitive harm to
21 Spotify—warrant keeping portions of the Letter and the JFTC Response under seal.  As explained
22 below, public disclosure of this information would harm Spotify's business and its ability to
23 compete on a level playing field with its biggest competitors, including Apple, and also put Spotify
24 at a disadvantage in negotiations with partners.  As the Supreme Court has explained, "courts have
25 refused to permit their files to serve  . . . as sources of business information that might harm a
26 litigant's competitive standing." *Nixon*, 435 U.S. at 598.  The Ninth Circuit has similarly
27 recognized in an unpublished opinion that documents containing confidential and/or proprietary
28 business information are generally protected from public disclosure.  *In re Electronic Arts, Inc.*,

SULLIVAN
&
CROMWELL LLP

3

NON-PARTY SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00000925 AND SPOT-EPIC-00001023
CASE NO. 4:20-cv-05640-YGR-TSH

298 Fed. App'x 568, 569 (9th Cir. 2008) (quoting *Nixon*, 435 U.S. at 598); *cf. Sun Microsystems Inc.* v. *Network Appliance*, No. C–08–01641–EDL, 2009 WL 5125817, at *9 (N.D. Cal Dec. 21, 2009) (sealing confidential business information, which if disclosed could cause harm to the parties).

The information Spotify seeks to keep under seal in the Letter reflects Spotify's estimate of the number of iOS subscribers to Spotify's Premium service that Spotify had to acquire through more expensive paid marketing channels after disabling in-app conversions in iOS and its estimate of the additional marketing costs Spotify incurred between 2017 and 2019 as a result. (Kung Decl. ¶ 11.) The Letter also contains information quantifying the amount of Spotify's total marketing expenditure for its Premium service between 2017 and 2019. (*Id.*) As Benjamin Kung attests to in his accompanying declaration, Spotify would be competitively harmed in its business if this information were disclosed publicly. (*Id.* ¶ 12.) If the Letter were to become public, it would give Spotify's competitors insight into Spotify's internal data and analysis concerning its business operations, which those competitors could use to gain an unfair advantage over Spotify. Specifically, Spotify's audio streaming app competitors could use the estimates and figures contained in the Letter to assess the extent of Spotify's marketing expenditures and use that to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising. (*Id.*) Indeed, the Court has already acknowledged the compelling reasons that support sealing this type of information when it granted Spotify's request to seal similar information contained in paragraph 70 of Dr. Michael Cragg's Rebuttal Written Direct Testimony. (*See* Dkt. No. 614, at 5.)

The information Spotify seeks to keep under seal in the JFTC Response includes a description of the methodology and detailed findings of a proprietary analysis that was undertaken by Spotify to understand the impact of Apple's marketing restrictions on Spotify's ability to convert users to Spotify's Premium audio streaming service. (Kung Decl. ¶ 13.) Spotify would be competitively harmed in its business if this information were disclosed publicly, because such a disclosure would reveal the sophisticated types of analyses that Spotify performs to assess user behavior and the effectiveness of Spotify's marketing strategies. (*Id.* ¶ 14.) If Spotify's

Sullivan & Cromwell LLP

4

distribution partners knew the types of internal analyses that Spotify is capable of performing (and has previously performed), they might demand that Spotify undertake such analyses as a condition of continued partnership. (*Id.*) This, in turn, could undermine the value of Spotify's existing distribution partnerships, undercut Spotify's ability to negotiate favorable arrangements with new distribution partners, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business. (*Id.*) Spotify's audio streaming app competitors could also use the findings of Spotify's analysis to assess the effectiveness of Spotify's advertising for its Premium service on mobile devices and use that to inform their own business and marketing strategies, giving them an unfair advantage over Spotify. (*Id.* ¶ 15.) And as with the information contained in the Letter, the Court has already acknowledged the compelling reasons that support sealing the information concerning Spotify's proprietary analysis of the impact of Apple's marketing restrictions when it granted Spotify's request to seal paragraph 71 of Dr. Cragg's written testimony. (*See* Dkt. No. 614, at 5.) In fact, the reasons for sealing the descriptions of Spotify's proprietary analysis in the JFTC Response are even more compelling than the reasons for sealing paragraph 71 of Dr. Cragg's written testimony, since the descriptions contained in the JFTC Response are significantly more detailed and reveal more about the specific analyses that Spotify performed.[2]

## CONCLUSION

Because public disclosure of the unredacted Letter and JFTC Response would cause significant harm to Spotify's business, compelling reasons exist to keep the unredacted documents under seal if they are admitted into evidence at trial, and to seal the courtroom for any portion of trial testimony in which the parties seek to describe or discuss the sealable portions of these documents.

---

[2]   In addition, the Letter and the JFTC Response were created solely for the purpose of responding to requests from the California AG and the JFTC, respectively, on a confidential basis. Although Spotify's responses were compiled from information that Spotify maintains in the ordinary course of its business, these documents are not used or maintained by Spotify in the format in which they were produced to the California AG and the JFTC, and they were not prepared with an eye towards providing a complete view of Spotify's business. (Kung Decl. ¶ 16.)

SULLIVAN & CROMWELL LLP

5

NON-PARTY SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00000925 AND SPOT-EPIC-00001023
CASE NO. 4:20-CV-05640-YGR-TSH

Dated: May 12, 2021

/s/ Brendan P. Cullen
Steven L. Holley (appearance *pro hac vice*)
Shane M. Palmer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588
Email:   holleys@sullcrom.com
         palmersh@sullcrom.com

Brendan P. Cullen
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:   (650) 461-5600
Facsimile:   (650) 461-5700
Email:   cullenb@sullcrom.com

*Attorneys for Non-Party Spotify USA Inc.*

SULLIVAN & CROMWELL LLP

6

NON-PARTY SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00000925 AND SPOT-EPIC-00001023
CASE NO. 4:20-CV-05640-YGR-TSH