Steven L. Holley (appearance *pro hac vice*)
(holleys@sullcrom.com)
Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588

Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:     (650) 461-5600
Facsimile:      (650) 461-5700

*Attorneys for Non-Party Spotify USA Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.<br><br>　　　　　　Defendant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**DECLARATION OF BENJAMIN KUNG IN SUPPORT OF NON-PARTY SPOTIFY USA INC.'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00000925 AND SPOT-EPIC-00001023** |

SULLIVAN & CROMWELL LLP

DECL. OF BENJAMIN KUNG IN SUPP. OF NON-PARTY SPOTIFY'S ADMIN. MOT. TO SEAL PORTIONS OF DOCUMENTS
CASE NO. 4:20-CV-05640-YGR-TSH

I, Benjamin Kung, declare as follows:

1. I am a Director in the Financial Planning & Analysis ("FP&A") team at Spotify USA Inc. ("Spotify"), currently serving as our Head of Strategic Planning and Licensing Finance. I submit this declaration pursuant to Local Rule 79-5(d) in support of Spotify's Administrative Motion to Partially Seal SPOT-EPIC-00000925 and SPOT-EPIC-00001023, submitted concurrently herewith.

2. I have worked at Spotify since March 2016 and have served in various roles within the FP&A team during that time. My current job responsibilities include overseeing teams that forecast and manage the economics of our music licensing deals, providing guidance and visibility to business teams and senior leadership on matters impacting Spotify's consolidated margins, and long-range strategic planning for the company. I have personal knowledge of the facts set forth in this declaration and can testify competently to those facts.

3. Spotify is an indirect, wholly-owned subsidiary of Spotify Technology S.A., a publicly-traded company incorporated in Luxembourg. Founded in Sweden, Spotify operates the most popular global audio streaming service. Spotify's streaming service first launched in Sweden in 2008 and launched in the United States in 2011. Spotify is available in 178 markets, and its platform is used by over 356 million monthly active users.

4. The market for audio and music streaming apps and app distribution on various platforms is highly competitive and includes several of the largest tech companies in the world, including Apple Inc. ("Apple"). Because Spotify does not directly control a widely-used channel for distributing its audio streaming app to a large number of users, our business model not only depends on our ability to acquire content or negotiate licenses with content rights holders on favorable terms, but also requires us to simultaneously negotiate with distribution partners to keep distribution fees and commissions as low as possible. To optimize our distribution and user growth strategies against these variables, Spotify employs significant resources with respect to research and development, data collection, and analysis about user experience and behavior across various channels in order to successfully compete in the audio streaming market.

SULLIVAN
&
CROMWELL LLP

1

DECL. OF BENJAMIN KUNG IN SUPP. OF NON-PARTY SPOTIFY'S ADMIN. MOT. TO SEAL PORTIONS OF DOCUMENTS
CASE NO. 4:20-CV-05640-YGR-TSH

5. I understand that on May 11, 2021, Epic Games, Inc. ("Epic") notified Spotify that Epic may rely upon two documents produced by Spotify, bearing Bates numbers SPOT-EPIC-00000925 through SPOT-EPIC-00000929, and SPOT-EPIC-00001023 through SPOT-EPIC-00001025, at trial.

6. I further understand that the documents bearing Bates numbers SPOT-EPIC-00000925 through SPOT-EPIC-00000929, and SPOT-EPIC-00001023 through SPOT-EPIC-00001025, were produced by Spotify in response to subpoenas served on Spotify by Epic on December 2, 2020, and by Apple on December 8, 2020; and that Spotify designated these documents as "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" pursuant to the Supplemental Protective Order Governing Discovery from Spotify that was filed jointly by Apple and Epic at Spotify's request and was entered by the Court in this litigation on February 11, 2021 ("Supplemental Protective Order") (Dkt. No. 407).

7. The document bearing Bates numbers SPOT-EPIC-00000925 through SPOT-EPIC-00000929 is a cover letter for a production of documents made by Spotify to the Office of the Attorney General of California ("the California AG") on June 11, 2020 (the "Letter"). I understand that Spotify obtained the California AG's agreement to treat the information in the letter and the accompanying materials as confidential prior to making the June 11, 2020 production, and Spotify branded each page of the cover letter with the legend "CONFIDENTIAL TREATMENT REQUESTED BY SPOTIFY."

8. The document bearing Bates numbers SPOT-EPIC-00001023 through SPOT-EPIC-00001025 is a response by Spotify to an Information Request from the Japan Fair Trade Commission ("JFTC"), dated November 16, 2020, in connection with a fact-finding survey conducted by the JFTC of competition in digital platforms (the "JFTC Response"). Spotify provided this document to the JFTC with the understanding that the JFTC would maintain the document in confidence and not disclose it to the public, and Spotify branded each page of the document with the legend "STRICTLY CONFIDENTIAL – CONTAINS BUSINESS SECRETS."

SULLIVAN & CROMWELL LLP

2

DECL. OF BENJAMIN KUNG IN SUPP. OF NON-PARTY SPOTIFY'S ADMIN. MOT. TO SEAL PORTIONS OF DOCUMENTS
CASE NO. 4:20-cv-05640-YGR-TSH

9. The following chart lists the portions of the Letter and the JFTC Response that are sealable for the reasons stated in this declaration, and the specific portions that are sealable are highlighted in the unredacted versions of the Letter and the JFTC Response that are attached as Exhibits A and B, respectively, to the Declaration of Shane M. Palmer, submitted concurrently herewith:

| Portion of Document Sought to be Sealed | Evidence Offered in Support of Sealing |
|---|---|
| Highlighted portions on page SPOT-EPIC-00000926 | Declaration of Benjamin Kung ¶¶ 11–12, 16 |
| Highlighted portions on pages SPOT-EPIC-00001023 through '1025 | Declaration of Benjamin Kung ¶¶ 13–16 |

10. In an effort to narrowly tailor its sealing requests, Spotify does not request sealing of the Letter and the JFTC Response in their entirety. Although certain information reflected in the non-highlighted portions of the Letter and the JFTC Response is non-public, Spotify recognizes the Court's need to balance Spotify's interests against the public's interest in access to court records and has sought to narrow its sealing requests as much as possible.

11. The sealable portions of the Letter reflect Spotify's estimate of the number of subscribers to Spotify's Premium service on iOS devices that we had to acquire through more expensive paid marketing channels due to Apple's prohibition on certain in-app messaging concerning Spotify's Premium service; Spotify's estimate of the additional marketing costs it incurred between 2017 and 2019 that are attributable to the marketing restrictions that Apple imposed on Spotify following Spotify's decision to discontinue the ability for users to make in-app purchases in Spotify's app for iOS devices; and information quantifying the amount of Spotify's total marketing expenditure for its Premium service between 2017 and 2019. This information reflects Spotify's proprietary, internal data and analysis concerning its marketing expenditures on iOS devices. This is highly sensitive information that Spotify keeps confidential and does not disclose to the public. To maintain the confidentiality of this information reflected in the Letter, Spotify invests in data security measures to prevent unauthorized outside parties from accessing the information, and even restricts access to this data within the company. Spotify

SULLIVAN & CROMWELL LLP

3

DECL. OF BENJAMIN KUNG IN SUPP. OF NON-PARTY SPOTIFY'S ADMIN. MOT. TO SEAL PORTIONS OF DOCUMENTS
CASE NO. 4:20-CV-05640-YGR-TSH

1  provided this information to the California AG with the understanding that the information would
2  be kept confidential and was only willing to produce the Letter in this litigation subject to the
3  protections of the Supplemental Protective Order, which restricts access to the documents
4  containing the data to outside counsel, experts, and trial consultants for the parties and to the court
5  and its personnel.

6        12.    Spotify would be competitively harmed in its business if this information
7  concerning Spotify's marketing costs reflected the Letter were disclosed publicly. If the Letter
8  were to become public, it would give Spotify's competitors insight into Spotify's internal data and
9  analysis concerning its business operations, which those competitors could use to gain an unfair
10 advantage over Spotify. Specifically, Spotify's audio streaming app competitors could use this
11 number to assess the extent of Spotify's marketing expenditures on iOS devices and use that to
12 inform their own business and marketing strategies with respect to product strategy, distribution,
13 and advertising.

14        13.    The sealable portions of the JFTC Response describe the methodology and
15 detailed findings of a proprietary analysis that was undertaken by Spotify to understand the impact
16 of Apple's marketing restrictions on Spotify's ability to convert users to Spotify's Premium audio
17 streaming service. Spotify provided this information to the JFTC with the understanding that the
18 information would be kept confidential and was only willing to produce the JFTC Response in this
19 litigation subject to the protections of the Supplemental Protective Order, which restricts access to
20 the documents containing the data to outside counsel, experts, and trial consultants for the parties
21 and to the court and its personnel.

22        14.    If this information were disclosed publicly, Spotify would be competitively
23 harmed in its business because it would reveal the sophisticated types of analyses that Spotify
24 performs to assess user behavior and the effectiveness of Spotify's marketing strategies. If
25 Spotify's distribution partners knew the types of internal analyses that Spotify is capable of
26 performing (and has previously performed), they might demand that Spotify undertake such
27 analyses as a condition of continued partnership. This, in turn, could undermine the value of
28 Spotify's existing distribution partnerships, undercut Spotify's ability to negotiate favorable

SULLIVAN & CROMWELL LLP

4

arrangements with new distribution partners, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business.

15. Further, Spotify would be competitively harmed in its business if the specific quantitative findings of Spotify's proprietary analysis reflected in the JFTC Response became public, because Spotify's audio streaming app competitors could use this analysis to assess the effectiveness of Spotify's advertising for its Premium service on mobile devices and use that to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising.

16. Finally, the Letter and the JFTC Response were created solely for the purpose of responding to requests from the California AG and the JFTC, respectively, on a confidential basis. Although Spotify's responses were compiled from information that Spotify maintains in the ordinary course of its business, these documents are not used or maintained by Spotify in the format in which they were produced to the California AG and the JFTC, and they were not prepared with an eye towards providing a complete view of Spotify's business.

I declare under penalty of perjury that the foregoing is true and correct. Executed this May 12, 2021 in Brooklyn, New York.

/s/ Benjamin Kung
Benjamin Kung

## **ATTESTATION**

I, Brendan P. Cullen, am the ECF User whose ID and password are being used to file this document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories concur with this filing.

Dated: May 12, 2021                                  /s/ Brendan P. Cullen
                                                                   Brendan P. Cullen

Sullivan & Cromwell LLP

Decl. of Benjamin Kung in Supp. of Non-Party Spotify's Admin. Mot. to Seal Portions of Documents
Case No. 4:20-cv-05640-YGR-TSH