Steven L. Holley (appearance *pro hac vice*)
(holleys@sullcrom.com)
Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588

Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:     (650) 461-5600
Facsimile:      (650) 461-5700

*Attorneys for Non-Party Spotify USA Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>                    Plaintiff,<br><br>       v.<br><br>APPLE INC.<br><br>                    Defendant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**DECLARATION OF BENJAMIN KUNG PURSUANT TO CIVIL LOCAL RULE 79-5(e)(1) AND IN RESPONSE TO EPIC'S ADMINISTRATIVE MOTION TO SEAL LIMITED PORTIONS OF THE PARTIES' TRIAL EXHIBITS AND ANY REFERENCES AT TRIAL TO THE INFORMATION SOUGHT TO BE SEALED (DKT. NO. 660)** |

SULLIVAN & CROMWELL LLP

DECLARATION OF BENJAMIN KUNG IN RESPONSE TO EPIC'S ADMINISTRATIVE MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 4:20-CV-05640-YGR-TSH

I, Benjamin Kung, declare as follows:

1. I am a Director in the Financial Planning & Analysis ("FP&A") team at Spotify USA Inc. ("Spotify"), currently serving as our Head of Strategic Planning and Licensing Finance. I submit this declaration pursuant to Local Civil Rule 79-5(e) in support of sealing certain trial exhibits that are the subject of an Administrative Motion to Seal filed by Epic Games, Inc. ("Epic") on May 14, 2021 (Dkt. No. 660).

2. I have worked at Spotify since March 2016 and have served in various roles within the FP&A team during that time. My current job responsibilities include overseeing teams that forecast and manage the economics of our music licensing deals, providing guidance and visibility to business teams and senior leadership on matters impacting Spotify's consolidated margins, and long-range strategic planning for the company. I have personal knowledge of the facts set forth in this declaration and can testify competently to those facts.

3. Spotify is an indirect, wholly-owned subsidiary of Spotify Technology S.A., a publicly-traded company incorporated in Luxembourg. Founded in Sweden, Spotify operates the most popular global audio streaming service. Spotify's streaming service first launched in Sweden in 2008 and launched in the United States in 2011. Spotify is available in 178 markets, and its platform is used by over 356 million monthly active users.

4. The market for audio and music streaming apps and app distribution on various platforms is highly competitive and includes several of the largest tech companies in the world, including Apple Inc. ("Apple"). Because Spotify does not directly control a widely-used channel for distributing its audio streaming app to a large number of users, our business model not only depends on our ability to acquire content or negotiate licenses with content rights holders on favorable terms, but also requires us to simultaneously negotiate with distribution partners to keep distribution fees and commissions as low as possible. To optimize our distribution and user growth strategies against these variables, Spotify employs significant resources with respect to research and development, data collection, and analysis about user experience and behavior across various channels in order to successfully compete in the audio streaming market.

Sullivan & Cromwell LLP

1

Declaration of Benjamin Kung in Response to Epic's Administrative Motion to Seal Trial Exhibits
Case No. 4:20-cv-05640-YGR-TSH

5.      I understand that two documents that are the subject of Epic's Administrative Motion to Seal—Exhibits DX-5549 and DX-5550—were produced by Professor David Evans in response to a subpoena served on Professor Evans by Apple.  I understand that Exhibit DX-5549 is a report prepared by Professor Evans on behalf of Spotify, titled "Economic Analysis of Market Definition and Market Power Related to Apple's Mobile Platform," and dated January 25, 2016 (the "Evans Report").  I understand that Exhibit DX-5550 is a PowerPoint presentation prepared by the Global Economics Group on behalf of Spotify, titled "Impact of Apple's Vertical Practices on Spotify's Subscriber Base and Financial Performance," and dated July 28, 2016 (the "Presentation").  I understand that the Evans Report and the Presentation were originally produced to Apple with redactions to remove references to Spotify or other content that might identify the documents as being prepared on behalf of Spotify.

6.      I have reviewed Epic's Administrative Motion to Seal and copies of Exhibits DX-5549 (the Evans Report) and DX-5550 (the Presentation) that were provided by Epic.  True and correct copies of DX-5549 and DX-5550 are attached hereto as Exhibits A and B, respectively, with highlighting to show the specific portions that are sealable.  The following chart lists the portions of these exhibits that should remain under seal for the reasons stated in this declaration:

| Document or Portion of Document Sought to be Sealed | Evidence Offered in Support of Sealing |
|---|---|
| DX-5549, highlighted portions on pages 4–5 | Declaration of Benjamin Kung ¶¶ 7–10, 15 |
| DX-5549, highlighted portions on pages 8–9 | Declaration of Benjamin Kung ¶¶ 7–10, 15 |
| DX-5549, highlighted portion on page 10 | Declaration of Benjamin Kung ¶¶ 13, 15 |
| DX-5549, highlighted portion on page 14 | Declaration of Benjamin Kung ¶¶ 12, 15 |
| DX-5550, highlighted portions on slide 4 | Declaration of Benjamin Kung ¶¶ 12, 15 |
| DX-5550, highlighted portions on slide 5 | Declaration of Benjamin Kung ¶¶ 12–13, 15 |
| DX-5550, first two highlighted portions on slide 7 | Declaration of Benjamin Kung ¶¶ 13, 15 |

2

DECLARATION OF BENJAMIN KUNG IN RESPONSE TO EPIC'S ADMINISTRATIVE MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 4:20-cv-05640-YGR-TSH

SULLIVAN & CROMWELL LLP

| Document or Portion of Document Sought to be Sealed | Evidence Offered in Support of Sealing |
|---|---|
| DX-5550, third highlighted portion on slide 7 | Declaration of Benjamin Kung ¶¶ 14–15 |
| DX-5550, first highlighted portion on slide 8 | Declaration of Benjamin Kung ¶¶ 14–15 |
| DX-5550, second and third highlighted portions on slide 8 | Declaration of Benjamin Kung ¶¶ 13, 15 |
| DX-5550, highlighted portion on slide 12 | Declaration of Benjamin Kung ¶¶ 7–10, 15 |
| DX-5550, highlighted portion on slide 14 | Declaration of Benjamin Kung ¶¶ 7–10, 15 |
| DX-5550, highlighted portion on slide 16 | Declaration of Benjamin Kung ¶¶ 11, 15 |
| DX-5550, highlighted portions on slide 19 | Declaration of Benjamin Kung ¶¶ 12, 15 |
| DX-5550, highlighted portions on slide 20 | Declaration of Benjamin Kung ¶¶ 11–12, 15 |
| DX-5550, highlighted portion on slide 21 | Declaration of Benjamin Kung ¶¶ 12, 15 |
| DX-5550, highlighted portions on slide 23 | Declaration of Benjamin Kung ¶¶ 12, 15 |
| DX-5550, highlighted portions on slide 24 | Declaration of Benjamin Kung ¶¶ 11, 15 |
| DX-5550, highlighted portions on slide 25 | Declaration of Benjamin Kung ¶¶ 11–12, 15 |
| DX-5550, highlighted portions on slide 30 | Declaration of Benjamin Kung ¶¶ 12–13, 15 |
| DX-5550, highlighted portion on slide 36 | Declaration of Benjamin Kung ¶¶ 13–15 |
| DX-5550, highlighted portion on slide 38 | Declaration of Benjamin Kung ¶¶ 12, 15 |

7.      DX-5549 and DX-5550 include information concerning the proportion of total audio streams and streaming minutes on the Spotify app accounted for by different platforms, and other confidential Spotify app usage data. Spotify would be competitively harmed in its business if these figures were disclosed to the public in the course of the trial in this action. These figures reflect Spotify's proprietary, internal data and analysis concerning the use of its app across different platforms and operating systems. This is highly sensitive information that Spotify keeps confidential and does not disclose to the public. To maintain the confidentiality of the data reflected in these figures, Spotify invests in data security measures to prevent unauthorized outside parties from accessing the information, and even restricts access to this data within the company.

3

8. Spotify uses the data reflected in DX-5549 and DX-5550 for a variety of strategic business purposes, including but not limited to:

    a. developing business strategies to compete with other audio and music streaming app providers, including Apple;

    b. identifying and negotiating with potential distribution partners to broaden the availability of the Spotify app across multiple platforms and expand Spotify's subscription business; and

    c. planning strategic corporate investment decisions to drive sustainable growth and remain competitive in the marketplace.

9. If these figures in DX-5549 and DX-5550 were disclosed publicly, it would give Spotify's competitors insight into Spotify's internal data and analysis concerning its business operations and usage on mobile and desktop devices, including trends in those areas over time. Such information can be used by Spotify's competitors to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising. For example, competing app developers could use the data to understand trends in Spotify usage on mobile and desktop devices and then selectively devote their resources to optimize their apps differently. And the competitive harm to Spotify resulting from any public disclosure of these figures would be amplified because Spotify's competitors generally do not make the same level of platform-specific usage detail publicly available.

10. If this information contained in DX-5549 and DX-5550 were publicly disclosed, the information would also unfairly disadvantage Spotify in its negotiations with distribution partners (including original equipment manufacturers such as mobile, TV, gaming, and auto partners, as well as app providers and commercial partners), and advertisers. If this material were to fall into the hands of distribution platforms or partners, for example, it would undermine Spotify's position in negotiations, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business.

Sullivan & Cromwell LLP

4

DECLARATION OF BENJAMIN KUNG IN RESPONSE TO EPIC'S ADMINISTRATIVE MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 4:20-cv-05640-YGR-TSH

11. Certain portions of DX-5549 and DX-5550 describe the methodology and findings of proprietary analyses and surveys that were undertaken by Spotify to understand the impact of Apple's marketing restrictions on Spotify's ability to convert users to Spotify's Premium audio streaming service. If this information were disclosed publicly, Spotify would be competitively harmed in its business because it would reveal the sophisticated types of analyses that Spotify performs to assess user behavior and the effectiveness of Spotify's marketing strategies. If Spotify's distribution partners knew the types of internal analyses and surveys that Spotify is capable of performing (and has previously performed), they might demand that Spotify undertake such analyses and surveys as a condition of continued partnership. This, in turn, could undermine the value of Spotify's existing distribution partnerships, undercut Spotify's ability to negotiate favorable arrangements with new distribution partners, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business.

12. Further, Spotify would be competitively harmed in its business if the specific quantitative findings of Spotify's proprietary analyses and surveys reflected in DX-5549 and DX-5550 became public, because Spotify's audio streaming app competitors could use this information to assess the effectiveness of Spotify's advertising for its Premium service on mobile devices and the impact of Apple's restrictions on Spotify's revenues, and use that to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising.

13. DX-5549 and DX-5550 also include figures reflecting Spotify's overall operating margins and contribution margins for users of its Free and Premium audio streaming services. These figures reveal information about Spotify's cost structures and the terms of its agreements with content rights holders, and Spotify would be competitively harmed in its business if the information were disclosed publicly. Spotify's competitors could use such information to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising. And if these figures in DX-5550 were publicly disclosed, the information would also unfairly disadvantage Spotify in its negotiations with distribution partners and advertisers. If

SULLIVAN
&
CROMWELL LLP

5

DECLARATION OF BENJAMIN KUNG IN RESPONSE TO EPIC'S ADMINISTRATIVE MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 4:20-cv-05640-YGR-TSH

this material were to fall into the hands of distribution platforms or partners, for example, it would undermine Spotify's position in negotiations, undercut deal terms, drive up the prices Spotify would pay (consequently impacting its revenues), and generally harm Spotify's ability to compete and grow its business.

14. Additionally, DX-5550 contains information reflecting the terms of Spotify's carefully negotiated license agreements with content rights holders.  The terms of those agreements are highly confidential and commercially sensitive, and Spotify would be competitively harmed in its business by the disclosure of those terms through any public filing. Public disclosure of the terms of Spotify's license agreements would disadvantage Spotify in its future licensing negotiations, undercut deal terms, and negatively impact deal economics.  For this reason, Spotify's business model depends on the terms of its license agreements remaining confidential.

15. Finally, although certain information reflected in DX-5549 and DX-5550 was compiled from data and records that Spotify maintains in the ordinary course of its business, these documents are not used or maintained by Spotify in the format in which they are presented here, and they were not prepared with an eye towards providing a complete view of Spotify's business.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this May 15, 2021 in Brooklyn, New York.

/s/ Benjamin Kung<br>Benjamin Kung

SULLIVAN & CROMWELL LLP

6

DECLARATION OF BENJAMIN KUNG IN RESPONSE TO EPIC'S ADMINISTRATIVE MOTION TO SEAL TRIAL EXHIBITS
CASE NO. 4:20-CV-05640-YGR-TSH

## ATTESTATION

I, Brendan P. Cullen, am the ECF User whose ID and password are being used to file this document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories concur with this filing.

Dated: May 15, 2021                      /s/ Brendan P. Cullen
                                         Brendan P. Cullen