1

2

3                              UNITED STATES DISTRICT COURT

4                            NORTHERN DISTRICT OF CALIFORNIA

5

6    EPIC GAMES, INC.,                           Case No.  4:20-cv-05640-YGR

7              Plaintiff,                         TRIAL ORDER NO. 6 RE: EXHIBITS ONLY
                                                  CONTAINING HEARSAY
8         vs.

9    APPLE INC.,
                                                  Re: Dkt. Nos. 604, 608
10             Defendant.

11   AND RELATED COUNTERCLAIM

12

13        Plaintiff Epic Games, Inc. seeks to admit three exhibits—PX-0065, PX-0067, and PX-

14   0744—which are emails sent by third-party app developers to defendant Apple Inc.  The face of

15   two documents (PX-0065, PX-0067) simply reflect one-page email complaints from a developer

16   to Matt Fischer.  The other is a three-page email complaint from a developer to Phil Schiller which

17   Mr. Schiller then apparently forwards to others at Apple.  The Court understands that there are

18   approximately 20-30 other such documents.

19        While Epic Games used these 3 exhibits with Mr. Matt Fischer during his trial testimony,

20   they seek to have the others admitted outside the context of trial testimony under Federal Rule of

21   Civil Procedure 32(a)(3).  Apple objects that the emails are hearsay under Federal Rule of

22   Evidence 802 which Epic Games does not contest.  Rather, Epic Games argues that the documents

23   should be admitted for the non-hearsay purpose "to prove Apple's awareness of problems in and

24   dissatisfaction with its App Store and its IAP payment system, as described by the consumers and

25   developers who use those products."  (See Dkt. No. 604.)

26        By way of background, during the course of the trial, the parties themselves have agreed to

27   the admission of numerous emails, presumably under the business record exception to the hearsay

28

United States District Court
Northern District of California

1  rule.[1]  Nonetheless, the parties made repeated hearsay objections. Rather than attempt the

2  laborious process of ruling on each individual email within a chain of emails, especially during

3  trial, the Court ruled that in resolving this case, it would only consider the hearsay portions of

4  emails with the proper evidentiary limitations.  In this regard, the Court accepted a "standing

5  objection" from both sides to the hearsay portions of the emails which *did not* qualify for

6  admission under the business records exception or as a party admission. The distinction matters

7  because the business records portions can be admitted for the truth, while the balance cannot

8  unless independently verified.

9        Where no evidence exists from the *supplier* of the document or its custodians, "an essential

10  link is broken; the assurance of accuracy does not extend to the information itself, and the fact that

11  it may be recorded with scrupulous accuracy is of no avail."  *Rowland v. Am. Gen. Fin., Inc.*, 340

12  F.3d 187, 195 (4th Cir. 2003) (quoting Fed. R. Evid. 803 adv. committee note); *see also United*

13  *States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982) (similar).  Without the necessary foundation to

14  support the business exception to the hearsay rule, the exception cannot be established. Thus,

15  those portions of the emails or the emails themselves cannot be admitted as business records.[2]

16

17        [1]  The Court applauds the parties for addressing these issues themselves but notes that it was not involved in the process.  This particular issue could not be resolved by the parties and thus the Court resolves it now.  While the Court frequently attempts to honor the parties' joint agreements in a trial, ultimately if an issue cannot be resolved, the Federal Rules control.

18

19        [2]  In order to qualify as business record, a proponent must establish Rule 803(6) provides:

20  A record of an act, event, condition, opinion, or diagnosis if:

21  **(A)** the record was made at or near the time by — or from information transmitted by — someone with knowledge;

22  **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

23  **(C)** making the record was a regular practice of that activity;

24  **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

27  **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

28  *See United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) ("applies only if the person

2

United States District Court
Northern District of California

1    Next, as a procedural matter, and as the Court noted on the record, Rule 32(a)(3) permits

2    the use of an adverse party's officer's deposition "for any purpose," including, as here, to

3    authenticate the documents.  Generally, this rule is used to read testimony of an adverse party at

4    trial, whether or not the declarant is available.  However, the rule does not obviate evidentiary

5    objections that could be made if the witness were present and testifying.  8A Charles Alan Wright

6    & Arthur R. Miller, *Federal Practice and Procedure, Civil* § 2143 (3d ed. 2021).  Thus, Rule

7    32(a)(3) does not automatically provide a mechanism for the admission of hearsay.

8    During the course of Mr. Fischer's testimony, Epic Games solicited the following

9    information, which is similar to the questions asked during the relevant deposition testimony

10   relating to the other 20-30 documents:[3]

11       Q:    Let's turn then to the next document, Mr. Fischer, PX67.

                          ***

12       Q.    Mr. Fischer, is this a document that you are – you are the addressee of?
         A.    Yes, it is.
13       Q.    And is it a document that you received on or about March 26, 2019?
14       A.    Yes
         Q.    And did you receive it in connection with your duties and responsibilities at the
15             App Store?
         A.    Yes.
16

On this basis alone, without any questions or context, the document was offered for the "purpose

17   of state of mind [of the sender of the email] and the fact that certain statements were made and

18   Apple was informed of certain views."  Transcript: 840:17-841:11.

19       These exhibits are unlike others admitted in evidence which showed the internal dialogue

20   of the parties when complaints were received from third party, non-testifying witnesses.[4]  Thus,

21   the admitted documents reflected what the recipients understood and how they reacted to the

23   _____

24   furnishing the information to be recorded is 'acting routinely, under a duty of accuracy, with
     employer reliance on the result, or in short in the regular course of business").

25   [3] All that Rule 32(a)(3) allows is for the similar testimony to be read during trial or
26   admitted as a designation.

27   [4] Judge LaPorte's ruling does not appear to contradict.  The cited reference indicates that
     the witness himself testified that he had heard of complaints and she allowed evidence regarding
28   his state of mind, not that of a third party.

3

1    hearsay.  The three documents here do not.  Nor is this a situation where complaints are sent to a

2    central designation where they are collected and processed, and can then be admitted potentially as

3    business records.

4         Instead, Epic Games claims the documents are admissible under Rule 803(3) showing the

5    state of mind or motive of the third party.  Epic Games expanded its proffer arguing the document

6    prove that "users and developers do not use Apple's app distribution and IAP products because of

7    their quality, as Apple asserts, but rather in spite of them." (Dkt. 604 at 3:8-9.)  For this

8    proposition, Epic Games cites two district court cases.  These cited authorities do not support Epic

9    Games' proposition.  *See Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*, No. 16-cv-9814,

10   2017 WL 6512223, at *4 n.9 (C.D. Cal. Oct. 16, 2017) (in denying defendant's summary

11   judgment motion the court allowed consideration of plaintiff's own records containing customers'

12   statements as evidence of their reason for not using plaintiff's services); *Consol. Credit Agency v.*

13   *Equifax, Inc.*, No. CV-03-1229, 2005 WL 6218038, at *2 (C.D. Cal. Jan. 26, 2005) (provisionally

14   excluding the hearsay evidence for failure to identify the precise statement's proof of a "state of

15   mind" element).[5]  Even assuming that developers were dissatisfied with Apple's App Store

16   practices, that would not indicate refusal to deal with any party.

17        Given the case law, the Court now turns to Epic Games' anticipated use of the three

18   exhibits.  In its proposed findings of fact, plaintiff relied on each of the exhibits for the truth of the

19   hearsay statements in each document, *not* for a non-hearsay purpose.  (*See* Dkt. No. 407 ¶ 530(a)

20   using PX65 for the existence of malicious apps; ¶ 530(i) using PX67 for same; and ¶ 321 using

21   PX-0744 for actual interference with developer's ability to provide customer service.)

22

23

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
          [5]  This case distinguished *Lawlor v. Loewe,* 235 U.S. 522, 536, 35 S.Ct. 170, 59 L.Ed. 341
     (1915) which only allowed the hearsay because the state of mind of the customers was at
25   issue.  This binding precedent was not relied upon here by Epic Games.  Further, the case
     explicitly indicates that the importance of state of mind being of issue.  It reads: "The state of
26   mind exception to the hearsay rule requires that: (1) the statement was made contemporaneously
     with the mental state to be proven; (2) circumstances do not suggest a motive for the declarant to
27   fabricate or misrepresent his or her thoughts; and (3) the declarant's state of mind is relevant to an
     issue in the case. 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence §
28   803.05[2][a] (Joseph M. McLaughlin, ed., 2d ed.2004) (citations omitted)."  *Id.* at *2.

United States District Court
Northern District of California

1    For the reasons discussed above, PX-0065 and PX-0067 would only be admissible for the

2  proposition that they were found in Apple's files.  *See White v. Ford Motor Co.*, 312 F.3d 998,

3  1009 (9th Cir. 2002) (explaining additional evidence which would be required to use hearsay for

4  direct evidence of proof).  The third party email are not imbedded in an email chain nor is there

5  any context.  Thus, without more, the limited value does not warrant admission of a hearsay

6  document.  Theoretically, they may have been admissible to show notice but Epic Games chose

7  not to question Apple witnesses on that topic, at least not during trial or in what has been provided

8  to the Court by way of deposition transcripts.  Just because an email is found in a recipient's box

9  does not mean that it was reviewed, much less considered.

10    By contrast, PX-0744 indicates that Mr. Schiller reviewed and forwarded the concerns

11  contained therein. The Court reasonably believes that others to whom he sent the email would

12  have reviewed the email sent by Mr. Schiller.  This factual distinction changes the calculus.  PX-

13  0744 is admissible for notice of the contents in the email.  Depending on its use at trial, it may be

14  admissible for more but not at this juncture.

15    Accordingly, on the current state of the record, Epic Games' request to admit PX-0065 and

16  PX-0067 is **DENIED** and **GRANTED** as to PX-0744 for the limited purpose of notice.

17    **IT IS SO ORDERED.**

18  Dated:  May 17, 2021                                    _____

19                                                              **YVONNE GONZALEZ ROGERS**
                                                                **UNITED STATES DISTRICT JUDGE**

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California