# Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| EPIC GAMES, INC. v. APPLE INC. | ) | Civil Action Nos. 4:20-CV-05640-YGR |
| CAMERON ET AL v. APPLE INC. | ) | 4:19-CV-03074-YGR |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | ) | 4:11-CV-06714-YGR |
| | ) | |
| | ) | |
| | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                   Microsoft Corporation
                        One Microsoft Way, Redmond, WA 98052-6399
                        *(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See Schedule A

| Place: McDermott Will & Emery LLP<br>        2049 Century Park East<br>        Suite 3200<br>        Los Angeles, CA 90067-3206<br><br>        Or as otherwise agreed. | Date and Time:<br>November 20, 2020, 5:00 PM PT |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>November 6, 2020</u>

                        *CLERK OF COURT*
                                                    OR
                                          */s/ Michelle Lowery*
_____        _____
    *Signature of Clerk or Deputy Clerk*               *Attorney's signature*
                                          Michelle Lowery

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ Apple Inc.
_____ , who issues or requests this subpoena, are:

Michelle Lowery, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206, mslowery@mwe.com, (310) 551-9309



AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action Nos. 4:11-CV-06714-YGR, 4:19-CV-03074-YGR, 4:20-CV-05640-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐   I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ on *(date)*

☐   I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____   My fees are $ _____   My fees are $ _____

I declare under penalty of perjury that this information is true.

Date: _____          Date: _____
                                                      *Server's signature*

                                     _____
                                                      *Printed name and title*

                                     _____
                                                      *Server's address*

Additional information regarding attempted service, etc.:



American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).


American LegalNet, Inc.
www.FormsWorkFlow.com

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## <u>DEFINITIONS</u>

1.  The following rules of construction shall apply to all discovery requests:

    a.  the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    b.  the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    c.  "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

    d.  the use of the singular form of any word includes the plural and vice versa.

2.  "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3.  "**ANDROID**" shall mean Google's mobile operating system.

4.  "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE.  For the avoidance of doubt, the phrase "**EPIC APP**" shall mean any APP developed and/or published by EPIC, INCLUDING *Fortnite*, *Battlebreakers*, and *Spyjinx*, as well as any APP developed and/or published by EPIC (such as the Epic Games App) that facilitates the download of those or other APPS.

5.  "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

6.  "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play,

the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store, the Epic Games Store, Steam, Origin, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.  For the avoidance of doubt, the phrase "YOUR APP MARKETPLACE" shall refer to the MICROSOFT STORE.

7.      **"COALITION"** shall mean the Coalition for App Fairness.

8.      "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

9.      "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

10.     "**DEFENDANT**" shall mean Apple Inc.

11.     "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.** For the avoidance of doubt, the term YOUR DEVICES shall mean any DEVICE manufactured and/or sold by YOU or for which YOUR software serves as the operating system, and shall include the Windows Phone series of smartphones, the Microsoft Surface and Microsoft Surface Pro and Go series of tablets, and the Xbox series of gaming consoles.

12.     "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books; records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front

2

and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

13.    "**EPIC**" shall mean Epic Games, Inc., its officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on its behalf, or any PERSON or entity that served in any such role at any time, as well as its predecessors, successors, subsidiaries, departments, divisions, joint ventures, and/or affiliates, (including but not limited to Epic Games International S.à r.l and Life on Air, Inc.), and any PERSON that Epic Games, Inc., manages or controls.

14.    "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website) that one may use within an APP, and shall include subscriptions to Office 365, Skype credit, and similar digital products to the extent they are acquired other than through an in-APP purchase.

15.    "**GAME PASS**" shall mean YOUR Xbox cloud gaming APPS INCLUDING Xbox Game Pass, Xbox Live, Xbox live Gold, and Xbox Game Pass Ultimate.

16.    "**GAMMILL DECLARATION**" shall mean the Declaration of Kevin Gammill in Further Support of Plaintiff Epic Games Inc.'s Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, filed in *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.) (ECF No. 40).

17.    "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player. For the avoidance of doubt, the term "**YOUR HANDHELD DEVICES**" shall mean any HANDHELD DEVICE manufactured and/or sold by YOU, and shall include the Windows

Phone series of smartphones and the Microsoft Surface and Microsoft Surface Pro and Go series of tablets.

18.     "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

19.     "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, in-game currencies, game levels, access to premium content, or unlocking a full version of an APP.

20.     "**MALWARE**"  shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

21.     "**MICROSOFT OS**" shall mean any operating system offered by YOU for any DEVICE.

22.     "**MICROSOFT STORE"** shall mean any APP MARKETPLACE operated by YOU available on DEVICES, and shall include the Microsoft Store for Xbox, Windows Store, and Windows Phone Store.

23.     "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.), INCLUDING:

      a.   **Edward W. Hayter**, of Brooklyn, NY;

      b.   **Edward Lawrence**, of California;

      c.   **Robert Pepper**, of Chicago, IL;

      d.   **Stephen H. Schwartz**, of Ardsley, NY; and

      e.   **Eric Terrell**, of Oakland, CA.

24.     **"NAMED DEVELOPER PLAINTIFF"** shall mean a named plaintiff in *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING:

      a.  **Donald R. Cameron**, of California;

      b.  **Barry Sermons**, of Georgia; and

      c.  **Pure Sweat Basketball, Inc.**, an Illinois corporation.

25.     **"NON-HANDHELD DEVICE"** shall mean laptop computers, desktop computers, or video game consoles. For the avoidance of doubt, the phrase "**YOUR NON-HANDHELD DEVICES** shall mean any NON-HANDHELD DEVICE manufactured and/or sold by YOU, including the Xbox series of gaming consoles.

26.     **"PERSON"** shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

27.     **"REPORTS"** shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

28.     **"REVIEW"** and **"REVIEWING"** shall mean, with respect to APPS, any process of screening, evaluating, analyzing, approving, or monitoring APPS, regardless of whether such process takes place before or after the publication of APPS in an APP MARKETPLACE or before or after the installation of APPS onto a HANDHELD DEVICE or NON-HANDHELD DEVICE.

29.     **"THE"** shall not be construed as limiting the scope of any topic.

30.     **"YOU"** or **"YOUR"** shall refer to Microsoft Corporation or any of its predecessor or successor companies,    subsidiaries (INCLUDING LinkedIn Corporation and Mojang AB), corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

31.    **"xCLOUD"** shall mean YOUR Xbox cloud gaming service.

## INSTRUCTIONS

1.     All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the Request.

2.     In responding to these Requests, YOU shall produce all DOCUMENTS and information in YOUR possession, custody, or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf.

3.     These Requests shall not be deemed to call for identical copies of DOCUMENTS. "Identical" means precisely the same in all respects; for example, a DOCUMENT with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4.     In the event YOU are able to produce only some of the DOCUMENTS called for in a particular Request, YOU shall produce all the DOCUMENTS available and state the reason(s) for YOUR inability to produce the remainder.

5.     If there are no DOCUMENTS responsive to a category in these Requests, YOU shall so state in writing. If a DOCUMENT requested is no longer existing or available, YOU shall so state in writing.

6.     If YOU object to a portion of any Request, YOU shall produce all DOCUMENTS called for by that portion of the Request to which YOU do not object.

7.     In producing DOCUMENTS responsive to these requests, YOU must Bates stamp them in a manner that clearly identifies the party that is producing each such DOCUMENT, and in whose possession the DOCUMENT was found.

8.     If any requested DOCUMENT is withheld on the basis of any claim of privilege,

YOU must set forth the information necessary for DEFENDANT to ascertain whether the privilege properly applies, INCLUDING describing the DOCUMENT withheld, stating the privilege being relied upon, identifying all PERSONS (by name) who have had access to such DOCUMENT (INCLUDING all the identity(ies) of the author(s) or maker(s), recipient(s), carbon copy recipient(s), blind carbon copy recipient(s)), the number of attachments (if any), the Bates or production number of any attachments not withheld on the basis of privilege, the applicable date(s), and the subject matter(s) in a privilege log.

9.      If any portion of any DOCUMENT responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

10.      If YOU cannot answer all parts of a Request, but can answer some parts, YOU must answer those parts to which YOU can reply, and specify "unknown," or some other response, as appropriate, for any part to which YOU cannot reply.

11.      Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2008 to the present.

12.      References to any natural PERSON shall include, in addition to the natural PERSON, any agent, employee, representative, attorney, superior, or principal thereof.

13.      Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from January 1 to December 31.

14.      These Requests are to be regarded as continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. YOU are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by YOU or any PERSON acting on YOUR behalf that will augment or modify YOUR answers initially given to the following Requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, YOU are required to supplement these responses and provide additional DOCUMENTS without a specific request from DEFENDANT.

15.     DEFENDANT serves these Requests without prejudice to its right to serve additional requests for production of DOCUMENTS.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

DOCUMENTS sufficient to show the name of each APP, INCLUDING *Minecraft*, that YOU have published in any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and YOUR APP MARKETPLACE(S), and for each such APP:

a.     the dates during which the APP was available for download by U.S. consumers from each APP MARKETPLACE;

b.     for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each APP MARKETPLACE;

c.     the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.     YOUR decision to monetize the APP, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time;

e.     YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available); and

f.     the number of minutes of usage of such APP that took place via a time-based APP MARKETPLACE.

8

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time; and

e.      YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of

EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

     d.     YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time; and

     e.     YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 4:**

     DOCUMENTS sufficient to show, with respect to any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and YOUR APP MARKETPLACE(S):

     a.     the total yearly amount remitted to YOU by each APP MARKETPLACE from sales of APPS and IN-APP PRODUCTS (by APP and method of monetization, if available);

     b.     any estimates of or accounting for annual ADVERTISING revenue attributable to each APP MARKETPLACE (by APP, if available);

     c.     any estimates of or accounting for YOUR annual revenues from sales of EXTERNAL PRODUCTS attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

     d.     any estimates of or accounting for annual revenues (other than the foregoing) attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

     e.     any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to each APP MARKETPLACE (by APP and method of monetization, if available); and

     f.     any comparisons of monetization rates across each APP MARKETPLACE for YOUR APPS distributed through each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS comparing the distribution of APPS through any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and YOUR APP MARKETPLACE(S), INCLUDING:

a.      the past or present benefits or costs of distribution in each APP MARKETPLACE;

b.      past or present fees and commission rates charged by each APP MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness of any APP MARKETPLACE to APP DEVELOPERS;

c.      past or present security or privacy protections offered in each APP MARKETPLACE;

d.      past or present APP REVIEW and approval procedures and practices in each APP MARKETPLACE;

e.      past or present tools for APP DEVELOPERS in each APP MARKETPLACE;

f.      past or present relative ease or difficulty of updating YOUR APPS in each APP MARKETPLACE;

g.      past or present market share calculations or estimates for APP MARKETPLACES, INCLUDING the definitions used to perform those calculations;

h.      past or present decision to distribute YOUR APPS on a particular APP MARKETPLACE;

i.      contemplated, planned, or actual distribution of YOUR APPS directly (*i.e.*, not through an APP MARKETPLACE) to U.S. users of MICROSOFT OS; and

j.      past or present APP maintenance activities in each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 6**:

DOCUMENTS sufficient to show YOUR efforts to increase the ability of consumers in the United States to find and download YOUR APPS in any APP MARKETPLACE or to find and download YOUR APP MARKETPLACE(S), INCLUDING any agreement to pre-load YOUR MARKETPLACE(S) on any DEVICES in the United States.

**REQUEST FOR PRODUCTION NO. 7**:

REPORTS CONCERNING YOUR contemplated, planned, or actual development and/or operation of YOUR APP MARKETPLACE(S), INCLUDING:

a.      YOUR decision to build each such APP MARKETPLACE;

b.      YOUR decision to use a particular revenue model in each such APP MARKETPLACE; and

c.      YOUR decision to develop each such APP MARKETPLACE for specific operating systems.

**REQUEST FOR PRODUCTION NO. 8**:

DOCUMENTS sufficient to show, for each year since 2010:

a.      the number of MICROSOFT OS DEVICES sold in the United States, broken down by each model of such devices;

b.      the date(s) of each major release, minor release, and update to each operating system for YOUR DEVICES, the DEVICES each release is compatible with, and the release notes for each such major release, minor release, and update;

c.      the number of APPS submitted by APP DEVELOPERS for distribution through any APP MARKETPLACE to U.S. users of MICROSOFT OS DEVICES, separately for each such APP MARKETPLACE;

d.      the number of APPS available for download or use by U.S. users of MICROSOFT OS DEVICES from any APP MARKETPLACE, separately for each such APP MARKETPLACE;

e.      the average number of user-generated reviews in any APP MARKETPLACE(S) for each APP available for download or use by U.S. users of MICROSOFT OS DEVICES, separately for each such APP MARKETPLACE;

f.      the number of APPS downloaded by U.S. users of MICROSOFT OS DEVICES separately for each APP MARKETPLACE; and

g.      to the extent APPS are available for use on a time-of-use basis, the number of minutes each APP was used through any APP MARKETPLACE(S) by U.S. users of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 9:**

REPORTS CONCERNING comparisons of the number, identity, genre, quality, and/or popularity of APPS available for download from YOUR APP MARKETPLACE(S) and APPS available for download from any other APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 10:**

REPORTS CONCERNING comparisons of the number, identity, genre, quality, and/or popularity of APPS available for download on YOUR DEVICES and APPS available for download on any other DEVICES.

**REQUEST FOR PRODUCTION NO. 11:**

REPORTS CONCERNING any relationship between the number, identity, genre, quality, and/or popularity of APPS available for download from YOUR APP MARKETPLACES and sales of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 12:**

REPORTS CONCERNING any relationship between the number, identity, genre, quality, and/or popularity of APPS available for download on YOUR DEVICES and the sale of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 13:**

REPORTS CONCERNING whether users of YOUR DEVICES are willing to purchase a DEVICE with a different operating system or from a different DEVICE manufacturer than they already own and any switching costs they may consider, INCLUDING the value of any APPS previously purchased that the consumer cannot operate on the new DEVICE.

**REQUEST FOR PRODUCTION NO. 14:**

REPORTS CONCERNING YOUR decision to combine YOUR Windows 10 and Xbox APP MARKETPLACES, creating a "single unified store across all devices," as reported in a March 30, 2016, article in *The Verge*, available at https://www.theverge.com/2016/3/30/11332012/windows-10-xbox-app-stores-combining-microsoft.

**REQUEST FOR PRODUCTION NO. 15:**

DOCUMENTS sufficient to show, for each model of MICROSOFT OS DEVICE sold in the United States since 2010, whether the DEVICE allows users to install APPS from sources other than YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 16:**

REPORTS CONCERNING YOUR decision to limit the ability of users of YOUR DEVICES to install APPS from sources other than YOUR APP MARKETPLACE, INCLUDING REPORTS informing or explaining that decision.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show any efforts undertaken by YOU to attract or incentivize APP DEVELOPERS to develop APPS for distribution to MICROSOFT OS DEVICES.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to show each of YOUR agreements or contracts with APP DEVELOPERS, INCLUDING any agreements or contracts with EPIC, effective during the period that YOU have operated any APP MARKETPLACE, INCLUDING YOUR Microsoft Store App

14

Developer Agreement, and any other contract, guidelines, or rules setting forth the terms and conditions under which APP DEVELOPERS may distribute APPS through YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support YOU provide for APP DEVELOPERS, INCLUDING APP development tools, application programming interfaces ("APIs"), programming tools, technical support, opportunities for testing APPS before they are released to the consumers, marketing, payment processing, refund processing, and security measures.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to show any APIs used by YOUR APPS that YOU did not make available for use by MICROSOFT OS APP DEVELOPERS, INCLUDING undocumented or private APIs, and the period during which such APIs were used by YOUR APPS but not available to MICROSOFT OS APP DEVELOPERS.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS sufficient to show any annual fee(s) or registration fee(s) paid by APP DEVELOPERS in order to develop and publish APPS in YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show any commissions and/or transaction fees charged by YOU when a user makes a purchase from YOUR APP MARKETPLACE(S) or from an APP downloaded from the same, INCLUDING:

a.      any commissions and/or transaction fees charged on the sale of APPS or IN-APP PRODUCTS and any exemptions from or limitations on such commissions or fees; and

b.      the impact on any commission rates and/or transaction fees charged by YOU when a user makes a purchase through the use of any discount, virtual currency, or particular payment method, INCLUDING any particular credit card.

15

**REQUEST FOR PRODUCTION NO. 23:**

REPORTS CONCERNING YOUR decision to change any commission rates on APPS or IN-APP PRODUCTS distributed through YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS sufficient to show, for each year since 2010, any costs YOU incurred to process payments for purchases of APPS and IN-APP PRODUCTS in YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS sufficient to show YOUR policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS in APPS distributed through YOUR APP MARKETPLACE, INCLUDING DOCUMENTS sufficient to show whether YOU require APPS distributed through YOUR APP MARKETPLACE to use a payment and purchase functionality provided by YOU to facilitate purchases of IN-APP PRODUCTS, and if so, whether YOU have ever departed from such requirement with respect to EPIC APPS or any other APP DEVELOPER's APPS.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS, INCLUDING COMMUNICATIONS with EPIC, CONCERNING EPIC's submission of *Fortnite* for distribution through YOUR APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS, INCLUDING COMMUNICATIONS with EPIC, CONCERNING pre-installing EPIC's *Fortnite* on any of YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 28:**

DOCUMENTS sufficient to show, for GAME PASS and any other services that offer access to APPS that YOU offer to U.S. users on YOUR DEVICES:

a.      the dates during which the service was available to U.S. consumers;

16

b.      for each year that the service was available, the number U.S. consumers who subscribed to or otherwise used it;

c.      the method(s) used to monetize the service, INCLUDING, but not limited to, ADVERTISING and subscriptions;

d.      YOUR decision to monetize the service, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time; and

e.      YOUR annual revenues from the service (by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 29**:

DOCUMENTS and COMMUNICATIONS CONCERNING YOUR ability to distribute xCLOUD or GAME PASS to DEVICE users.

**REQUEST FOR PRODUCTION NO. 30:**

REPORTS CONCERNING YOUR distribution of YOUR APPS through the "Play Anywhere" initiative, as described at https://www.xbox.com/en-US/games/xbox-play-anywhere, INCLUDING your decision to implement the initiative, the rationale for the initiative, and any changes in commission rates charged.

**REQUEST FOR PRODUCTION NO. 31:**

REPORTS CONCERNING YOUR decision to implement a "new Microsoft Store revenue share," as described in a May 7, 2018, blog post, available at https://blogs.windows.com/windowsdeveloper/2018/05/07/a-new-microsoft-store-revenue-share-is-coming/, INCLUDING REPORTS explaining or informing YOUR decision to exempt any category of APPS from this policy, such as by genre or by platform.

**REQUEST FOR PRODUCTION NO. 32:**

REPORTS CONCERNING YOUR decision to "remove[] the 95/5% revenue share program that previously applied to qualifying apps on applicable platforms when customer acquisition was directly driven by the Publisher's promotion activities," as described in the "Main

17

Change History Summary" on page 49 of YOUR current effective Microsoft Store App Developer Agreement, available at https://query.prod.cms.rt.microsoft.com/cms/api/am/binary/RE4o4bH.

**REQUEST FOR PRODUCTION NO. 33:**

DOCUMENTS sufficient to describe YOUR efforts to REVIEW APPS made available to users of MICROSOFT OS DEVICES, whether through YOUR APP MARKETPLACE(S) or any other source, INCLUDING:

a.      guidelines, policies, and/or procedures for REVIEWING APPS, INCLUDING each effective version of YOUR MICROSOFT STORE Policies, (currently available at https://docs.microsoft.com/en-us/windows/uwp/publish/store-policies-and-code-of-conduct);

b.      separately by year and operating system, any costs YOU incurred or resources YOU expended in REVIEWING APPS;

c.      the efficacy of any such REVIEW of APPS, INCLUDING the number of instances of MALWARE YOU detected, the number of instances of MALWARE YOUR REVIEW failed to detect, and consumer and APP DEVELOPER COMMUNICATIONS regarding any such REVIEW; and

d.      actual or intended efforts to communicate to users that YOU have REVIEWED such APPS.

**REQUEST FOR PRODUCTION NO. 34:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within, any division or unit of YOUR business that is responsible for APP distribution, YOUR APP MARKETPLACE(S) (INCLUDING APP REVIEW), and/or YOUR DEVICES, INCLUDING any organizational charts or employee directories pertaining to such business unit(s) or division(s).

**REQUEST FOR PRODUCTION NO. 35:**

DOCUMENTS sufficient to show the following per-user averages for consumers associated with YOUR APP MARKETPLACE separately for each year since 2010:

18

a.      annual spending on APPS and IN-APP PRODUCTS;

b.      annual amounts received by YOU due to ADVERTISING shown to the user;

c.      the portion of annual spending that is attributable to credits, discounts, or virtual currencies, INCLUDING gift cards, promotional codes, or the use of any particular credit card.

**REQUEST FOR PRODUCTION NO. 36:**

REPORTS CONCERNING the existence of MALWARE, INCLUDING any efforts to measure or quantify the number of APPS that contained MALWARE, the number of downloads of APPS that contained MALWARE and the impact of such MALWARE in:

a.      APPS offered by YOUR APP MARKETPLACE(S); and

b.      APPS offered by APP MARKETPLACES other than YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 37:**

DOCUMENTS sufficient to show, for each NAMED CONSUMER PLAINTIFF:

a.      the number of APPS downloaded by the NAMED CONSUMER PLAINTIFF from YOUR APP MARKETPLACE(S);

b.      for each APP downloaded by the NAMED CONSUMER PLAINTIFF from YOUR APP MARKETPLACE(S):

  i.      the identity of the APP;

  ii.     the date of download;

  iii.    the price paid for the download;

  iv.     the date that any IN-APP PRODUCT associated with the APP was purchased and the price paid for the IN-APP PRODUCT;

  v.      whether the APP uses a third party services for ADVERTISING; and

  vi.     to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

19

c.      the number of APPS downloaded by the NAMED CONSUMER PLAINTIFF from an APP MARKETPLACE other than YOURS onto a MICROSOFT OS DEVICE; and

d.      for each APP downloaded by the NAMED CONSUMER PLAINTIFF from an APP MARKETPLACE other than YOURS onto a MICROSOFT OS DEVICE:

  i.      the identity of the APP;

  ii.     the date of download;

  iii.    the price paid for the download;

  iv.     the date that any IN-APP PRODUCT associated with the APP was purchased and the price paid for the IN-APP PRODUCT;

  v.      whether the APP uses any third party service for ADVERTISING; and

  vi.     to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 38:**

DOCUMENTS sufficient to show, for each NAMED DEVELOPER PLAINTIFF:

a.      whether the NAMED DEVELOPER PLAINTIFF has published APPS on YOUR APP MARKETPLACE(S);

b.      any identification or account number associated with the NAMED DEVELOPER PLAINTIFF; and

c.      for each APP published by the NAMED DEVELOPER PLAINTIFF on YOUR APP MARKETPLACE(S):

  i.      the name of the APP;

  ii.     the date range during which the APP was available for download on YOUR APP MARKETPLACE(S);

  iii.    the number of times the APP has been downloaded from YOUR APP MARKETPLACE(S) each year;

  iv.     the price of the APP and any IN-APP PRODUCT associated with the APP

20

on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time;

v.     the total amount of money remitted by YOU to the NAMED DEVELOPER PLAINTIFF for purchases of such APP or associated IN-APP PRODUCT(S);

vi.     whether the APP uses any third party service for ADVERTISING; and

vii.     to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 39:**

DOCUMENTS (INCLUDING data) sufficient to show, for each month since 2010:

a.     whether EPIC has published APPS on YOUR APP MARKETPLACE(S);

b.     any identification or account number associated with EPIC;

c.     for each APP published by EPIC on YOUR APP MARKETPLACE(S):

i.     the name of the APP;

ii.     the date range during which the APP was available for download on YOUR APP MARKETPLACE(S);

iii.     the number of times the APP has been downloaded from YOUR APP MARKETPLACE(S) each year;

iv.     the price of the APP and any IN-APP PRODUCT associated with the APP on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time;

v.     the total value in U.S. dollars of IN-APP PRODUCTS sold through EPIC APPS downloaded from YOUR APP MARKETPLACE;

vi.     the total value in U.S. dollars of EPIC APPS downloaded from YOUR APP MARKETPLACE;

vii.     the amount that YOU earned in commissions from each download of any

21

EPIC APP, and the effective commission rate on each such transaction;

    viii.   the amount that YOU earned in commissions from each sale of any IN-APP PRODUCT through EPIC APPS, and the effective commission rate on each such transaction;

    ix.   whether the APP uses any third party service for ADVERTISING; and

    x.   to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 40:**

DOCUMENTS sufficient to describe YOUR decision to prohibit or allow "cross-play" (*i.e.*, play between users on YOUR DEVICES and users on DEVICES other than YOUR DEVICES) in any particular APP.

**REQUEST FOR PRODUCTION NO. 41:**

DOCUMENTS sufficient to describe YOUR decision to prohibit or allow IN-APP PRODUCTS purchased outside of YOUR APP MARKETPLACE(s) or EXTERNAL PRODUCTS to be used on YOUR DEVICES.

**REQUEST FOR PRODUCTION NO. 42:**

ALL COMMUNICATIONS between YOU and any NAMED CONSUMER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 43:**

ALL COMMUNICATIONS between YOU and any NAMED DEVELOPER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 44:**

ALL COMMUNICATIONS between YOU and any APP DEVELOPER, INCLUDING EPIC CONCERNING:

    a.   the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;

    b.   policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS;

c.      the following ongoing litigation, INCLUDING declarations, anticipated oral testimony, or documentary evidence relating to the same:

      i.      *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

      ii.     *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

      iii.    *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

      iv.     *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

      v.      *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

**REQUEST FOR PRODUCTION NO. 45:**

ALL DOCUMENTS and COMMUNICATIONS CONCERNING the GAMMILL DECLARATION.

**REQUEST FOR PRODUCTION NO. 46:**

ALL COMMUNICATIONS between YOU and any DEVICE manufacturer or telecommunications provider (INCLUDING Verizon Wireless, AT&T Mobility, T-Mobile U.S., or Sprint Corporation) CONCERNING:

a.      the presence or risk of any APPS with MALWARE in any APP MARKETPLACE;

b.      any APPS rejected, removed, or hidden from any APP MARKETPLACE;

c.      any APP DEVELOPER for whom YOU have in any way restricted their/its ability to publish APPS in YOUR APP MARKETPLACE;

d.      any discussion or agreement regarding pre-installation of APPS or APP MARKETPLACES on DEVICES;

e.      any relationship between the ability to install or use a given APP MARKETPLACE on a DEVICE and the attractiveness to consumers of such DEVICE; and

f.      any tendency for consumers to prefer purchasing DEVICES with the same operating system or from the same DEVICE manufacturer from whom they have previously purchased, and any costs to consumers, INCLUDING switching costs, associated with purchasing

a DEVICE with a different operating system or from a different DEVICE manufacturer and the value of any APPS previously purchased that the consumer cannot operate on the new DEVICE.

**REQUEST FOR PRODUCTION NO. 47:**

DOCUMENTS sufficient to show YOUR rules and policies regarding the pricing of APPS on YOUR APP MARKETPLACE(S), INCLUDING:

a. any requirements that prices end in a specific number (*e.g.*, ".99");

b. any variations in pricing based on the use of payment methods by consumers (*e.g.*, discounts); and

c. any requirements that prices for APPS in YOUR APP MARKETPLACE(S) be linked to prices charged for the same APPS in other APP MARKETPLACES other than YOURS  (*e.g.*, "most favored nation" requirements).

**REQUEST FOR PRODUCTION NO. 48:**

ALL COMMUNICATIONS or DOCUMENTS exchanged between YOU and any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING any APP MARKETPLACE(S), the COALITION, or the DEFENDANT.

**REQUEST FOR PRODUCTION NO. 49:**

ALL COMMUNICATIONS with any actual or proposed founder or member of the COALITION, INCLUDING Basecamp, Blix Inc., Blockchain.com, Deezer, EPIC, European Publishers Council, Match Group Inc., News Media Europe, Prepear Inc., ProtonMail, SkyDemon, and Tile, CONCERNING the COALITION, the DEFENDANT, any APP MARKETPLACE(S), YOUR APP(s), and/or any allegations or suspicion of any anti-competitive conduct or behavior.

**REQUEST FOR PRODUCTION NO. 50:**

ALL COMMUNICATIONS or DOCUMENTS CONCERNING YOUR decision to adopt the COALITION'S 10 principles for the Microsoft Store for Windows 10 as reported in an October

8, 2020 blogpost on YOUR website, available at https://blogs.microsoft.com/on-the-issues/2020/10/08/app-store-fairness-caf-interoperability-principles/.

**REQUEST FOR PRODUCTION NO. 51:**

ALL COMMUNICATIONS or DOCUMENTS CONCERNING YOUR decision not to adopt the COALITION'S 10 principles for YOUR Microsoft Store for Xbox as reported in an October 8, 2020 article in *Variety*, available at https://variety.com/2020/digital/news/microsoft-app-store-principles-apple-fairness-1234797486/.

**REQUEST FOR PRODUCTION NO. 52:**

Any rulings, judgments, or findings of fact or law made by any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING YOUR APP MARKETPLACE(S) and any allegations or suspicion of any anti-competitive conduct or behavior.