Steven L. Holley (appearance *pro hac vice*)
(holleys@sullcrom.com)
Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588

Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:     (650) 461-5600
Facsimile:      (650) 461-5700

*Attorneys for Non-Party Spotify USA Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR-TSH |
| Plaintiff, | **NON-PARTY SPOTIFY USA INC.'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00001047** |
| v. | |
| APPLE INC. | |
| Defendant. | |

1    Pursuant to Local Civil Rules 7-11 and 79-5, Non-Party Spotify USA Inc. ("Spotify") respectfully moves the Court to seal certain portions of a document that Spotify produced to Apple Inc. ("Apple") and Epic Games, Inc. ("Epic"), bearing Bates numbers SPOT-EPIC-00001047 through SPOT-EPIC-00001066, which Spotify understands was discussed during a closed session in the trial of this action and may be used in subsequent proceedings before the Court.  To the extent this document is introduced as an exhibit in the trial of this action or filed with the Court, the unredacted version of the document should not be disclosed to the public, and the courtroom should be sealed for any portion in which the parties seek to describe or discuss the sealable portions of this document.  Epic has indicated that it has no objection to Spotify seeking to seal this document; Spotify sought Apple's consent to the filing of this Motion, and Apple indicated that it does not intend to oppose the Motion.

In support of the Motion, Spotify is submitting the accompanying Declaration of Benjamin Kung, the Declaration of Shane M. Palmer, redacted and unredacted versions of the document Spotify is moving to partially seal for the Court's review, and a Proposed Order.

## FACTUAL BACKGROUND

On May 13, 2021, Epic informed Spotify that a document Spotify produced to the parties in this litigation was mentioned during a closed session in the trial of this action in response to questioning by the Court, and that the Court requested a copy of the document.  (*See* Declaration of Shane M. Palmer ("Palmer Decl.") ¶ 7.)  The document was produced by Spotify in response to subpoenas that Apple and Epic served on Spotify in this action pursuant to Federal Rule of Civil Procedure 45 and bears Bates numbers SPOT-EPIC-00001047 through SPOT-EPIC-00001066. (*Id.* ¶ 6.)  The document is a report prepared by Compass Lexecon on behalf of Spotify, which was annexed to a confidential response by Spotify to an Information Request from the Australia Competition and Consumer Commission ("ACCC"), dated October 21, 2020, in connection with an investigation into Apple's App Store practices (the "CL Report").   (Declaration of Benjamin Kung ("Kung Decl.") ¶ 7.)  Spotify provided this document to the ACCC with the understanding that the ACCC would maintain the document in confidence and not disclose it to the public, and

1  Spotify branded each page of the document with the legend "PRIVILEGED AND
2  CONFIDENTIAL." (*Id.*)
3       As a condition to producing the CL Report in this litigation, Spotify negotiated with
4  both parties and obtained their agreement to seek from the Court additional confidentiality
5  protections for Spotify's documents. (Palmer Decl. ¶ 4.) In recognition of the competitively
6  sensitive nature of Spotify's information, the parties jointly filed a Stipulated Supplemental
7  Protective Order Governing Discovery from Spotify that provided Spotify the ability to designate
8  documents it produced in this action as "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE
9  COUNSEL EYES ONLY," which in turn prohibited even employees and in-house counsel of
10 Apple and Epic from viewing the documents or the information contained therein except in
11 narrowly limited circumstances.[1] (*Id.* ¶ 5.) The Court entered that stipulated protective order on
12 February 11, 2021 (Dkt. No. 334), and Spotify properly designated the CL Report as containing
13 "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" information
14 when it produced this document to the parties. (*Id.* ¶¶ 5–6.)

## ARGUMENT

Although there is a presumptive right of public access to court records based on common law and First Amendment grounds, "access to judicial records is not absolute," *Kamakana* v. *City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and may be denied by the Court to protect confidential information. *See Phillips ex rel. Estates of Byrd* v. *General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002). A party seeking to seal a document or proceedings must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (alteration, citations, and quotation marks omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records

---

[1] One reason why Spotify sought these heightened protections for its confidential information is because Spotify directly competes with Apple's Apple Music audio streaming service. Recognizing that the information Apple and Epic were seeking from Spotify could give Apple an unwarranted advantage in its competition with Spotify, Spotify took steps to ensure that its proprietary, competitively sensitive information would not be disclosed to Apple employees or any others who might use that information inappropriately to Spotify's disadvantage.

exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Moreover, Spotify is not a party to this action and did not voluntarily invoke the Court's jurisdiction; it only produced the information it seeks to seal because Apple and Epic demanded it by invoking the Court's subpoena power. As a result, Spotify's confidentiality interests should be entitled to special consideration. *See, e.g.*, *Hunt* v. *Cont'l Cas. Co.*, No. 13-cv-05966 HSG, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (sealing third parties' names where such information "implicates important privacy concerns of nonparties . . . that outweigh the public's interest in disclosure of these judicial records").

Consistent with the heightened protections that Spotify has already obtained in connection with the production of its highly sensitive business information, Spotify seeks to maintain certain portions of the CL Report—which are highlighted in the unredacted version of the document that Spotify is submitting concurrently herewith—under seal. The sealable portions of this document include information comprising Spotify's proprietary data and its analysis of that data, and other information that Spotify keeps confidential and does not disclose to the public. To maintain the confidentiality of this information, Spotify invests in data security measures to prevent unauthorized outside parties from accessing the information. (Kung Decl. ¶ 13.) And when Spotify provided the CL Report to the ACCC, it made clear that the document contained sensitive business information and shared it with the understanding that the ACCC would maintain the document in confidence and not disclose it to the public. (*Id.* ¶ 7.)

Here, compelling reasons—including the serious risk of competitive harm to Spotify—warrant keeping portions of the CL Report under seal. As explained below, public disclosure of this information would harm Spotify's business and its ability to compete on a level playing field with its biggest competitors, including Apple, and also put Spotify at a disadvantage in negotiations with its partners. As the Supreme Court has explained, "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. The Ninth Circuit has similarly recognized in an

1  unpublished opinion that documents containing confidential and/or proprietary business
2  information are generally protected from public disclosure. *In re Electronic Arts, Inc.*, 298 Fed.
3  App'x 568, 569 (9th Cir. 2008) (quoting *Nixon*, 435 U.S. at 598); *cf. Sun Microsystems Inc.* v.
4  *Network Appliance*, No. C–08–01641–EDL, 2009 WL 5125817, at *9 (N.D. Cal Dec. 21, 2009)
5  (sealing confidential business information, which if disclosed could cause harm to the parties).

6          The information Spotify seeks to keep under seal in the CL Report includes a description of the methodology and detailed findings of proprietary analyses that were undertaken by Spotify to understand the impact of Apple's marketing restrictions on Spotify's ability to convert users to Spotify's Premium audio streaming service. (Kung Decl. ¶ 10.) As Benjamin Kung attests to in his accompanying declaration, Spotify would be competitively harmed in its business if this information were disclosed publicly, because such a disclosure would reveal the sophisticated types of analyses that Spotify performs to assess user behavior and the effectiveness of Spotify's marketing strategies. (*Id.* ¶ 11.) Specifically, if Spotify's distribution partners knew the types of internal analyses that Spotify is capable of performing (and has previously performed), they might demand that Spotify undertake such analyses as a condition of continued partnership. (*Id.*) This, in turn, could undermine the value of Spotify's existing distribution partnerships, undercut Spotify's ability to negotiate favorable arrangements with new distribution partners, negatively impact deal economics, and generally harm Spotify's ability to compete and grow its business. (*Id.*) Spotify's audio streaming app competitors could also use the findings of Spotify's analyses to assess the effectiveness of Spotify's advertising for its Premium service on mobile devices and use that to inform their own business and marketing strategies, giving them an unfair advantage over Spotify. (*Id.* ¶ 12.) Indeed, the Court has already acknowledged the compelling reasons that support sealing this type of information when it granted Spotify's request to seal paragraph 71 of Dr. Cragg's written testimony. (*See* Dkt. No. 614, at 5.) In fact, the reasons for sealing the descriptions of Spotify's proprietary analyses in the ACCC Response are even more compelling than the reasons for sealing paragraph 71 of Dr. Cragg's written testimony, since the descriptions contained in the CL Report are significantly more detailed and reveal more about the specific analyses that Spotify performed.

Moreover, Figures 2 and 3 of the CL Report reflect the number of monthly active users of Spotify's Premium subscription service on iOS and Android in Australia, from January 30, 2014 through August 5, 2020. (*Id.* ¶ 13.) Spotify would be competitively harmed in its business if this data were disclosed to the public. (*Id.*) Spotify uses the data reflected in Figures 2 and 3 of the CL Report for a variety of strategic business purposes (*id.* ¶ 14), and access to this data would give Spotify's competitors insight into Spotify's internal data and analysis concerning its business operations and relative market share on iOS and Android, including trends in those areas over time (*id.* ¶ 15). Such information can be used by Spotify's competitors to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising. (*Id.*) Specifically, competing app developers could use the data to understand trends in Spotify usage on iOS and Android and then selectively devote their resources to optimize their apps differently. (*Id.*) This data would also unfairly disadvantage Spotify in negotiations with distribution partners and advertisers. (*Id.* ¶ 16.) And as with the descriptions of Spotify's proprietary analyses discussed above, the Court has already acknowledged the compelling reasons that support sealing Spotify's platform-specific monthly active user data when it granted Spotify's request to seal Exhibit DX-4641, which is a spreadsheet containing similar information. (*See* Dkt. No. 594, at 6.)[2]

## CONCLUSION

Because public disclosure of the unredacted CL Report would cause significant harm to Spotify's business, compelling reasons exist to keep the unredacted document under seal if it is filed on the Court's docket or admitted into evidence at trial, and to seal the courtroom for any portion of trial testimony or proceedings in which the parties seek to describe or discuss the sealable portions of these documents.

---

[2]   In addition, the CL Report was created solely for the purpose of responding to requests from the ACCC on a confidential basis. Although certain information reflected in Spotify's response was compiled from data and records that Spotify maintains in the ordinary course of its business, the CL Report is not used or maintained by Spotify in the format in which it was produced to the ACCC, and it was not prepared with an eye towards providing a complete view of Spotify's business. (Kung Decl. ¶ 17.)

Dated: May 17, 2021

/s/ Brendan P. Cullen
Steven L. Holley (appearance *pro hac vice*)
Shane M. Palmer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:   (212) 558-3588
Email:   holleys@sullcrom.com
             palmersh@sullcrom.com

Brendan P. Cullen
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:  (650) 461-5600
Facsimile:   (650) 461-5700
Email:   cullenb@sullcrom.com

*Attorneys for Non-Party Spotify USA Inc.*