Steven L. Holley (appearance *pro hac vice*)
(holleys@sullcrom.com)
Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588

Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, California  94303
Telephone:     (650) 461-5600
Facsimile:      (650) 461-5700

*Attorneys for Non-Party Spotify USA Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>Defendant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**DECLARATION OF BENJAMIN KUNG IN SUPPORT OF NON-PARTY SPOTIFY USA INC.'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00001047** |

SULLIVAN
&
CROMWELL LLP

DECL. OF BENJAMIN KUNG IN SUPP. OF SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00001047
CASE NO. 4:20-CV-05640-YGR-TSH

I, Benjamin Kung, declare as follows:

1. I am a Director in the Financial Planning & Analysis ("FP&A") team at Spotify USA Inc. ("Spotify"), currently serving as our Head of Strategic Planning and Licensing Finance. I submit this declaration pursuant to Local Civil Rule 79-5(d) in support of Spotify's Administrative Motion to Seal Portions of SPOT-EPIC-00001047, submitted concurrently herewith.

2. I have worked at Spotify since March 2016 and have served in various roles within the FP&A team during that time. My current job responsibilities include overseeing teams that forecast and manage the economics of our music licensing deals, providing guidance and visibility to business teams and senior leadership on matters impacting Spotify's consolidated margins, and long-range strategic planning for the company. I have personal knowledge of the facts set forth in this declaration and can testify competently to those facts.

3. Spotify is an indirect, wholly-owned subsidiary of Spotify Technology S.A., a publicly-traded company incorporated in Luxembourg. Founded in Sweden, Spotify operates the most popular global audio streaming service. Spotify's streaming service first launched in Sweden in 2008 and launched in the United States in 2011. Spotify is available in 178 markets, and its platform is used by over 356 million monthly active users.

4. The market for audio and music streaming apps and app distribution on various platforms is highly competitive and includes several of the largest tech companies in the world, including Apple Inc. ("Apple"). Because Spotify does not directly control a widely-used channel for distributing its audio streaming app to a large number of users, our business model not only depends on our ability to acquire content or negotiate licenses with content rights holders on favorable terms, but also requires us to simultaneously negotiate with distribution partners to keep distribution fees and commissions as low as possible. To optimize our distribution and user growth strategies against these variables, Spotify employs significant resources with respect to research and development, data collection, and analysis about user experience and behavior across various channels in order to successfully compete in the audio streaming market.

SULLIVAN & CROMWELL LLP

1

DECL. OF BENJAMIN KUNG IN SUPP. OF SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00001047
CASE NO. 4:20-CV-05640-YGR-TSH

5. I understand that Epic Games, Inc. ("Epic") has notified Spotify that a document produced by Spotify, bearing Bates numbers SPOT-EPIC-00001047 through SPOT-EPIC-00001066, was mentioned during a closed session in the trial of this action in response to questioning by the Court, and that the Court requested a copy of the document.

6. I further understand that the document bearing Bates numbers SPOT-EPIC-00001047 through SPOT-EPIC-00001066 was produced by Spotify in response to subpoenas served on Spotify by Epic on December 2, 2020, and by Apple on December 8, 2020; and that Spotify designated this document as "SPOTIFY HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" pursuant to the Supplemental Protective Order Governing Discovery from Spotify that was filed jointly by Apple and Epic at Spotify's request and was entered by the Court in this litigation on February 11, 2021 ("Supplemental Protective Order") (Dkt. No. 334).

7. This document is a report prepared by Compass Lexecon on behalf of Spotify, which was annexed to a confidential response by Spotify to an Information Request from the Australia Competition and Consumer Commission ("ACCC"), dated October 21, 2020, in connection with an investigation into Apple's App Store practices (the "CL Report"). Spotify provided this document to the ACCC with the understanding that the ACCC would maintain the document in confidence and not disclose it to the public, and Spotify branded each page of the document with the legend "PRIVILEGED AND CONFIDENTIAL."

8. The following chart lists the portions of the CL Report that are sealable for the reasons stated in this declaration, and the specific portions that are sealable are highlighted in the unredacted version of the CL Report that is attached as Exhibit A to the Declaration of Shane M. Palmer, submitted concurrently herewith:

| Portion of Document Sought to be Sealed | Evidence Offered in Support of Sealing |
| --- | --- |
| CL Report ¶ 1.4 (highlighted portion) | Declaration of Benjamin Kung ¶¶ 10–11, 17 |
| CL Report ¶¶ 1.5–1.6 (highlighted portions) | Declaration of Benjamin Kung ¶¶ 10–12, 17 |
| CL Report ¶ 1.7 (highlighted portions) | Declaration of Benjamin Kung ¶¶ 12, 17 |
| CL Report ¶ 2.1 (highlighted portion) | Declaration of Benjamin Kung ¶¶ 10–11, 17 |

2

| Portion of Document Sought to be Sealed | Evidence Offered in Support of Sealing |
|---|---|
| CL Report ¶¶ 2.2–2.5 (full paragraphs) | Declaration of Benjamin Kung ¶¶ 10–11, 17 |
| CL Report, Figure 1 | Declaration of Benjamin Kung ¶¶ 10–11, 17 |
| CL Report ¶¶ 2.6–2.12 (full paragraphs) | Declaration of Benjamin Kung ¶¶ 10–12, 17 |
| CL Report, Table 1 | Declaration of Benjamin Kung ¶¶ 10–12, 17 |
| CL Report, Table 2 | Declaration of Benjamin Kung ¶¶ 10–12, 17 |
| CL Report ¶ 2.13 (full paragraph) | Declaration of Benjamin Kung ¶¶ 10–11, 17 |
| CL Report ¶¶ 2.14–2.16 (full paragraphs) | Declaration of Benjamin Kung ¶¶ 10–12, 17 |
| CL Report, Table 3 | Declaration of Benjamin Kung ¶¶ 10–12, 17 |
| CL Report, Figure 2 | Declaration of Benjamin Kung ¶¶ 13–17 |
| CL Report, Figure 3 | Declaration of Benjamin Kung ¶¶ 13–17 |
| CL Report, Table 4 | Declaration of Benjamin Kung ¶¶ 12, 17 |
| CL Report ¶¶ 3.14–3.16 (highlighted portions) | Declaration of Benjamin Kung ¶¶ 12, 17 |
| CL Report, Table 5 | Declaration of Benjamin Kung ¶¶ 12, 17 |

9. In an effort to narrowly tailor its sealing requests, Spotify does not request sealing of the CL Report in its entirety. Although certain information reflected in the non-highlighted portions of the CL Report is non-public, Spotify recognizes the Court's need to balance Spotify's interests against the public's interest in access to court records and has sought to narrow its sealing requests as much as possible.

10. Certain portions of the CL Report describe the methodology and detailed findings of proprietary analyses that were undertaken by Spotify to understand the impact of Apple's marketing restrictions on Spotify's ability to convert users to Spotify's Premium audio streaming service. Spotify provided this information to the ACCC with the understanding that the information would be kept confidential and was only willing to produce the CL Report in this litigation subject to the protections of the Supplemental Protective Order, which restricts access to

SULLIVAN & CROMWELL LLP

3

DECL. OF BENJAMIN KUNG IN SUPP. OF SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00001047
CASE NO. 4:20-cv-05640-YGR-TSH

the documents containing the data to outside counsel, experts, and trial consultants for the parties and to the court and its personnel.

11. If this information were disclosed publicly, Spotify would be competitively harmed in its business because it would reveal the sophisticated types of analyses that Spotify performs to assess user behavior and the effectiveness of Spotify's marketing strategies. If Spotify's distribution partners knew the types of internal analyses that Spotify is capable of performing (and has previously performed), they might demand that Spotify undertake such analyses as a condition of continued partnership. This, in turn, could undermine the value of Spotify's existing distribution partnerships, undercut Spotify's ability to negotiate favorable arrangements with new distribution partners, negatively impact deal economics, and generally harm Spotify's ability to compete and grow its business.

12. Further, Spotify would be competitively harmed in its business if the specific quantitative findings of Spotify's proprietary analyses reflected in the CL Report became public, because Spotify's audio streaming app competitors could use these findings to assess the effectiveness of Spotify's advertising for its Premium service on mobile devices and use that to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising.

13. In addition, Figures 2 and 3 of the CL Report are charts that reflect the number of monthly active users of Spotify's Premium subscription service on iOS and Android in Australia, from January 30, 2014 through August 5, 2020. Spotify would be competitively harmed in its business if these figures were disclosed to the public in the course of the trial in this action. These figures reflect Spotify's proprietary, internal data and analysis concerning the use of its app across different platforms and operating systems. This is highly sensitive information that Spotify keeps confidential and does not disclose to the public. To maintain the confidentiality of the data reflected in these figures, Spotify invests in data security measures to prevent unauthorized outside parties from accessing the information, and even restricts access to this data within the company.

14. Spotify uses the data reflected in Figures 2 and 3 of the CL Report for a variety of strategic business purposes, including but not limited to:

4

DECL. OF BENJAMIN KUNG IN SUPP. OF SPOTIFY'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF SPOT-EPIC-00001047
CASE NO. 4:20-cv-05640-YGR-TSH

      a. developing business strategies to compete with other audio and music streaming app providers, including Apple;

      b. identifying and negotiating with potential distribution partners to broaden the availability of the Spotify app across multiple platforms and expand Spotify's subscription business; and

      c. planning strategic corporate investment decisions to drive sustainable growth and remain competitive in the marketplace.

15. If Figures 2 and 3 of the CL Report were disclosed publicly, it would give Spotify's competitors insight into Spotify's internal data and analysis concerning its business operations and relative market share on iOS and Android, including trends in those areas over time. Such information can be used by Spotify's competitors to inform their own business and marketing strategies with respect to product strategy, distribution, and advertising. For example, competing app developers could use the data to understand trends in Spotify usage on iOS and Android and then selectively devote their resources to optimize their apps differently. And the competitive harm to Spotify resulting from any public disclosure of these figures would be amplified because Spotify's competitors generally do not make the same level of platform-specific usage and subscription detail publicly available.

16. If Figures 2 and 3 of the CL Report were publicly disclosed, the information would also unfairly disadvantage Spotify in its negotiations with distribution partners (including original equipment manufacturers such as mobile, TV, gaming, and auto partners, as well as app providers and commercial partners), and advertisers. If this material were to fall into the hands of distribution platforms or partners, for example, it would undermine Spotify's position in negotiations, undercut deal terms, negatively impact deal economics, and generally harm Spotify's ability to compete and grow its business.

17. Finally, the CL Report was created solely for the purpose of responding to a request from the ACCC on a confidential basis. Although the CL Report was compiled from information that Spotify maintains in the ordinary course of its business, this document is not used

Sullivan & Cromwell LLP

5

Decl. of Benjamin Kung in Supp. of Spotify's Administrative Motion to Seal Portions of SPOT-EPIC-00001047
Case No. 4:20-cv-05640-YGR-TSH

or maintained by Spotify in the format in which it was produced to the ACCC, and it was not prepared with an eye towards providing a complete view of Spotify's business.

      I declare under penalty of perjury that the foregoing is true and correct. Executed this May 17, 2021 in Brooklyn, New York.

      /s/ Benjamin Kung
      Benjamin Kung

Sullivan & Cromwell LLP

6

Decl. of Benjamin Kung in Supp. of Spotify's Administrative Motion to Seal Portions of SPOT-EPIC-00001047
Case No. 4:20-cv-05640-YGR-TSH

**ATTESTATION**

I, Brendan P. Cullen, am the ECF User whose ID and password are being used to file this document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories concur with this filing.

Dated: May 17, 2021                     /s/ Brendan P. Cullen
                                        Brendan P. Cullen

Sullivan & Cromwell LLP

Decl. of Benjamin Kung in Supp. of Spotify's Administrative Motion to Seal Portions of SPOT-EPIC-00001047
Case No. 4:20-cv-05640-YGR-TSH