# Exhibit C

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Northern District of California

| | | | |
|---|---|---|---|
| EPIC GAMES, INC. v. APPLE INC. | ) | Civil Action Nos. | 4:20-CV-05640-YGR |
| CAMERON ET AL v. APPLE INC. | ) | | 4:19-CV-03074-YGR |
| IN RE APPLE IPHONE ANTITRUST LITIGATION | ) | | 4:11-CV-06714-YGR |
| | ) | | |
| | ) | | |
| | ) | | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                             Spotify USA Inc.
                    (c/o CT Corporation System, 28 Liberty St, New York, NY 10005)
                    *(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

            See Schedule A

| Place: McDermott Will & Emery LLP | Date and Time: |
|---|---|
| 340 Madison Avenue | December 22, 2020 |
| New York, NY 10173-1922 | |
| Or as otherwise agreed. | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: December 8, 2020

            *CLERK OF COURT*
                                        OR
                                            */s/ Michelle Lowery*
_____          _____
    *Signature of Clerk or Deputy Clerk*              *Attorney's signature*
                                        Michelle Lowery

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Apple Inc.
_____, who issues or requests this subpoena, are:

Michelle Lowery, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206, mslowery@mwe.com, (310) 551-9309


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action Nos. 4:20-CV-05640-YGR, 4:19-CV-03074-YGR, 4:20-CV-05640-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ on *(date)* _____

☐  I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____   My fees are $ _____   My fees are $ _____

I declare under penalty of perjury that this information is true.

Date: _____

Date: _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

American LegalNet, Inc.
www.FormsWorkFlow.com

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

1.    The following rules of construction shall apply to all discovery requests:

    a.    the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    b.    the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    c.    "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

    d.    the use of the singular form of any word includes the plural and vice versa.

2.    "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3.    "**AFFILIATE**" or "**AFFILIATED**" shall mean any entity that directly or indirectly controls YOU, is controlled by YOU or is under common control with YOU.

4.    "**ANCHOR**" shall mean YOUR AFFILIATED podcasting platform Anchor FM Inc.

5.    "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE.  For the avoidance of doubt, the phrase "**YOUR APP**" shall mean any APP developed and/or published by YOU.

6.    "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

7.    "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play,

the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, the Windows Store, the Windows Phone Store, the Epic Games Store, Steam, Origin, online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and websites that offer APPS.

8.      "**COALITION**" shall mean the Coalition for App Fairness in which YOU are a member or founder.

9.      "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

10.      "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

11.      "**DEFENDANT**" shall mean Apple Inc.

12.      "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.**

13.      "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books; records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of

2

electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

14.    "**EPIC**" shall mean Epic Games, Inc., its officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on its behalf, or any PERSON or entity that served in any such role at any time, as well as its predecessors, successors, subsidiaries, departments, divisions, joint ventures, and/or affiliates, (including but not limited to Epic Games International S.à r.l and Life on Air, Inc.), and any PERSON that Epic Games, Inc., manages or controls.

15.    "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website) that one may use within an APP.

16.    "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player.

17.    "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

18.    "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, access to premium content, unlocking a full version of an APP, or paying to eliminate advertisements within an application.

19.    "**MALWARE**"  shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

20.    "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.), INCLUDING:

    a.   **Edward W. Hayter**, of Brooklyn, NY;

    b.   **Edward Lawrence**, of California;

    c.   **Robert Pepper**, of Chicago, IL; and

    d.   **Stephen H. Schwartz**, of Ardsley, NY.

21.    **"NAMED DEVELOPER PLAINTIFF"** shall mean a named plaintiff in *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING:

    a.   **Donald R. Cameron**, of California;

    b.   **Barry Sermons**, of Georgia; and

    c.   **Pure Sweat Basketball, Inc.**, an Illinois corporation.

22.    **"NON-HANDHELD DEVICE"** shall mean laptop computers, desktop computers, or video game consoles.

23.    **"PERSON"** shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

24.    **"REPORTS"** shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

25.    **"SOUNDBETTER"** shall mean YOUR AFFILIATED platform for connecting music services providers and customers, SoundBetter, Inc.

26.    **"THE"** shall not be construed as limiting the scope of any topic.

27.    **"YOU"** or **"YOUR"** shall refer to Spotify USA Inc. or any of its predecessor or successor companies, subsidiaries, corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

## INSTRUCTIONS

1.    All DOCUMENTS requested herein must be produced in their entirety, with all

attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the Request.

2.      In responding to these Requests, YOU shall produce all DOCUMENTS and information in YOUR possession, custody, or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf.

3.      These Requests shall not be deemed to call for identical copies of DOCUMENTS. "Identical" means precisely the same in all respects; for example, a DOCUMENT with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4.      In the event YOU are able to produce only some of the DOCUMENTS called for in a particular Request, YOU shall produce all the DOCUMENTS available and state the reason(s) for YOUR inability to produce the remainder.

5.      If there are no DOCUMENTS responsive to a category in these Requests, YOU shall so state in writing. If a DOCUMENT requested is no longer existing or available, YOU shall so state in writing.

6.      If YOU object to a portion of any Request, YOU shall produce all DOCUMENTS called for by that portion of the Request to which YOU do not object.

7.      In producing DOCUMENTS responsive to these requests, YOU must Bates stamp them in a manner that clearly identifies the party that is producing each such DOCUMENT, and in whose possession the DOCUMENT was found.

8.      If any requested DOCUMENT is withheld on the basis of any claim of privilege, YOU must set forth the information necessary for DEFENDANT to ascertain whether the privilege properly applies, INCLUDING describing the DOCUMENT withheld, stating the privilege being relied upon, identifying all PERSONS (by name) who have had access to such DOCUMENT (INCLUDING all the identity(ies) of the author(s) or maker(s), recipient(s), carbon copy

recipient(s), blind carbon copy recipient(s)), the number of attachments (if any), the Bates or production number of any attachments not withheld on the basis of privilege, the applicable date(s), and the subject matter(s) in a privilege log.

9.      If any portion of any DOCUMENT responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

10.     If YOU cannot answer all parts of a Request, but can answer some parts, YOU must answer those parts to which YOU can reply, and specify "unknown," or some other response, as appropriate, for any part to which YOU cannot reply.

11.     Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2010 to the present.

12.     References to any natural PERSON shall include, in addition to the natural PERSON, any agent, employee, representative, attorney, superior, or principal thereof.

13.     Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from January 1 to December 31.

14.     These Requests are to be regarded as continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. YOU are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by YOU or any PERSON acting on YOUR behalf that will augment or modify YOUR answers initially given to the following Requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, YOU are required to supplement these responses and provide additional DOCUMENTS without a specific request from DEFENDANT.

15.     DEFENDANT serves these Requests without prejudice to its right to serve additional requests for production of DOCUMENTS.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

DOCUMENTS sufficient to show the name of each APP, that YOU have published in any APP MARKETPLACE and for each such APP:

a.      the dates during which the APP was available for download by U.S. consumers from each APP MARKETPLACE;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each APP MARKETPLACE;

c.      for each APP MARKETPLACE, the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time;

e.      the amount charged for APP downloads, subscriptions and IN-APP PRODUCTS, by APP MARKETPLACE;

f.      YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available); and

g.      the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show, with respect to any APP MARKETPLACE:

a.      the total yearly amount remitted to YOU by each APP MARKETPLACE from sales of APPS, subscriptions, and IN-APP PRODUCTS (by APP and method of monetization, if available);

7

b.      any estimates of or accounting for annual ADVERTISING revenue attributable to each APP MARKETPLACE (by APP, if available);

c.      any estimates of or accounting for YOUR annual revenues from sales of EXTERNAL PRODUCTS attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

d.      any estimates of or accounting for annual revenues (other than the foregoing) attributable to each APP MARKETPLACE (by APP and method of monetization, if available);

e.      any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to each APP MARKETPLACE (by APP and method of monetization, if available); and

f.      any comparisons of monetization rates across each APP MARKETPLACE for YOUR APPS distributed through each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time;

e.      the amount charged for APP downloads and IN-APP PRODUCTS;

f.      the percentage of the subscription costs paid to YOU that YOU retain for yourself versus pass through to the websites that you partner with; and

g.      YOUR annual revenues from APP downloads, subscriptions and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such U.S. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, whether the APP is available as a subscription, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time;

e.      the amount charged for APP downloads and IN-APP PRODUCTS;

f.      the percentage of the subscription costs paid to YOU that YOU retain for yourself versus pass through to the websites that you partner with; and

g.      YOUR annual revenues from APP downloads, subscriptions, and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS comparing the distribution of YOUR APPS through different APP MARKETPLACES INCLUDING:

a.      the past or present benefits or costs of distribution in each APP MARKETPLACE;

9

b.        past or present fees and commission rates charged by each APP MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness of the APP MARKETPLACE to YOU;

c.        past or present security or privacy protections offered in each APP MARKETPLACE;

d.        past or present APP REVIEW and approval procedures and practices in each APP MARKETPLACE;

e.        past or present tools for APP DEVELOPERS in each APP MARKETPLACE;

f.        past or present relative ease or difficulty of updating YOUR APPS in each APP MARKETPLACE;

g.        past or present decision to distribute YOUR APPS on a particular APP MARKETPLACE;

h.        contemplated, planned, or actual distribution of YOUR APPS directly (*i.e.*, not through an APP MARKETPLACE) to DEVICE users; and

i.        past or present APP maintenance activities in each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 6:**

REPORTS concerning competition for each of YOUR APPS, INCLUDING:

a.        who YOU consider to be YOUR competitors for each of YOUR APPS;

b.        whether YOU offer the products or services available in YOUR APPS to NON-HANDHELD DEVICE users; and

c.        comparisons of YOUR APPS to other competing products.

**REQUEST FOR PRODUCTION NO. 7**:

DOCUMENTS sufficient to show YOUR processes and protocols related to security, user data protection and protection against MALWARE, INCLUDING:

a.        amount of time allocated as part of the development of YOUR APPS to security, user data protection and protection against MALWARE;

10

    b.   costs YOU incur related to your efforts to make YOUR APPS secure, protect user data and protect users from MALWARE;

    c.   controls you have in place in relation to each of YOUR APPS that protect user data and protect user from MALWARE; and

    d.   frequency of and results from third party security review.

**REQUEST FOR PRODUCTION NO. 8**:

REPORTS AND DOCUMENTS related to the existence of MALWARE in connection with any of YOUR APPS, INCLUDING, in relation to each MALWARE incident:

    a.   description of the MALWARE and how it was used to attack the user's DEVICE, INCLUDING whether the MALWARE resulted in ransomware being installed on the user's DEVICE;

    b.   the number of users impacted and any financial loss incurred by the users and by YOU;

    c.   breakdown of the DEVICES the users were using at the time the MALWARE was used to attack their DEVICE;

    d.   any change in user DEVICE preference as a result of a MALWARE incident;

    e.   breakdown of which APP MARKETPLACE(S) the users downloaded the APP from that was affected by the MALWARE;

    f.   details of how YOU became aware of the incident, how long the MALWARE was active, and what actions you took to stop the incident; and

    g.   security updates and measures you took to prevent future MALWARE incidents.

**REQUEST FOR PRODUCTION NO. 9**:

DOCUMENTS, INCLUDING COMMUNICATIONS, CONCERNING any security or privacy concerns or incidents YOU had in relation to any APP MARKETPLACE or DEVICE.

11

**REQUEST FOR PRODUCTION NO. 10**:

DOCUMENTS, INCLUDING COMMUNICATIONS CONCERNING the COALITION INCLUDING its formation, documents of incorporation, bylaws, purpose, objectives, activities, sponsorship, founders, meeting minutes, membership, and fees.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS CONCERNING COMMUNICATIONS with any actual or proposed founder or member of the COALITION, INCLUDING Basecamp, Blix Inc., Blockchain.com, Deezer, Epic Games Inc., European Publishers Council, Match Group Inc., News Media Europe, Prepear Inc., ProtonMail, SkyDemon, and Tile, CONCERNING the COALITION, DEFENDANT, any APP MARKETPLACE, YOUR APP(s), and/or any allegations or suspicion of any anti-competitive conduct or behavior.

**REQUEST FOR PRODUCTION NO. 12:**

ALL COMMUNICATIONS or DOCUMENTS CONCERNING YOUR website timetoplayfair.com INCLUDING its formation, documents of incorporation, bylaws, purpose, objectives, activities, sponsorship, founders, meeting minutes, membership, fees, timeline of events YOU published on timetoplayfair.org, and any allegations YOU published on timetoplayfair.org of anti-competitive conduct or behavior.

**REQUEST FOR PRODUCTION NO. 13:**

For each of YOUR APPS, DOCUMENTS sufficient to show the extent to which:

a.  IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased on one DEVICE can be applied to the same APP on another DEVICE;

b. IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased outside of a DEVICE can be applied to YOUR APPS; and

c.  consumers use the APP on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 14:**

For each of YOUR APPS, DOCUMENTS sufficient to show the prices of IN-APP PRODUCTS or EXTERNAL PRODUCTS, whether those prices vary based on DEVICE or where

purchased, and whether APP users respond to discounts on IN-APP PRODUCTS or EXTERNAL PRODUCTS.

**REQUEST FOR PRODUCTION NO. 15:**

DOCUMENTS CONCERNING YOUR decision to sell YOUR APPS, INCLUDING subscriptions, at a discounted or different price on YOUR website than through IN-APP purchases.

**REQUEST FOR PRODUCTION NO. 16:**

REPORTS CONCERNING the habits of YOUR APP users, INCLUDING whether users of YOUR APPS own multiple DEVICES and whether they use YOUR APPS on multiple DEVICES.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS CONCERNING YOUR negotiations with operators of APP MARKETPLACES, INCLUDING YOUR negotiations CONCERNING commission rates.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to show YOUR efforts to increase the ability of consumers in the United States to find and download YOUR APPS in any APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to show YOUR agreements or contracts with any APP MARKETPLACE or DEVICE manufacturer, INCLUDING any guidelines or rules setting forth the terms and conditions under which YOU may distribute YOUR APPS through any APP MARKETPLACE(S) or to DEVICE users.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support provided to YOU by any APP MARKETPLACE or DEVICE manufacturer, INCLUDING APP development tools, application programming interfaces ("APIs"), programming tools, technical support, opportunities for testing APPS before they are released to the consumers, marketing, payment processing, refund processing, and security measures.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS sufficient to show YOUR marketing strategies for growing YOUR user and subscriber base and how each strategy contributed to the growth of YOUR user and subscriber base.

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within, any division or unit of YOUR business that is responsible for YOUR APPS.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS sufficient to show what user information and data YOU collect and how YOU collect the user information and data.

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS sufficient to show how YOU use user information and data, INCLUDING all third parties with whom you share user information and data with, INCLUDING REPORTS reflecting when and how you have shared user information and data with third parties.

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS relating to YOUR privacy practices and concerns about user privacy, INCLUDING any customer COMMUNICATIONS raising questions or concerns about how YOU use and/or share customer information and data.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS sufficient to show any policies, restrictions, or rules, INCLUDING any commissions and/or transaction fees, imposed on users of YOUR AFFILIATED platform(s) INCLUDING ANCHOR and SOUNDBETTER.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS sufficient to show the features, functionality, or processes YOU use to impose any policies, restrictions, or collect any commissions and/or transaction fees charged by YOUR AFFILIATED platform(s) INCLUDING ANCHOR and SOUNDBETTER.

**REQUEST FOR PRODUCTION NO. 28:**

REPORTS CONCERNING YOUR decision to charge any commissions and/or transaction fees in connection with YOUR AFFILIATED platform(s) INCLUDING ANCHOR and SOUNDBETTER, including determining the amount of such commissions and/or transaction fees to charge.

**REQUEST FOR PRODUCTION NO. 29:**

DOCUMENTS sufficient to show any costs YOU incurred to process payments for purchases of services in YOUR AFFILIATED platform(s) INCLUDING ANCHOR and SOUNDBETTER.

**REQUEST FOR PRODUCTION NO. 30:**

ALL DOCUMENTS or COMMUNICATIONS CONCERNING Paragraph 1.A (Freelancing Transactions) of SOUNDBETTER's Terms of Use, *available at* https://soundbetter.com/terms-of-use, INCLUDING the purpose, rationale, and enforcement of the contents of Paragraph 1.A.

**REQUEST FOR PRODUCTION NO. 31:**

ALL COMMUNICATIONS between YOU and any NAMED CONSUMER PLAINTIFF or NAMED DEVELOPER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 32:**

ALL COMMUNICATIONS between YOU and any APP DEVELOPER, INCLUDING EPIC, or any member of the COALITION, CONCERNING:

a.      the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;

b.      policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS;

c.       the following ongoing litigation, INCLUDING declarations, anticipated oral testimony, or documentary evidence relating to the same:

i.      *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

15

      ii.      *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

      iii.     *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

      iv.     *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

      v.     *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

**REQUEST FOR PRODUCTION NO. 33:**

ALL COMMUNICATIONS or DOCUMENTS exchanged between YOU and any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING any APP MARKETPLACE(S), the DEFENDANT, or YOUR privacy practices and user data.

**REQUEST FOR PRODUCTION NO. 34:**

ALL DOCUMENTS provided to EPIC in relation to any of the following litigations:

      i.      *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

      ii.      *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

      iii.     *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

      iv.     *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

      v.     *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).