# Exhibit D

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| EPIC GAMES, INC. v. APPLE INC. ) | Civil Action Nos.  4:20-CV-05640-YGR-TSH |
| ) | 4:11-CV-06714-YGR-TSH |
| IN RE APPLE IPHONE ANTITRUST LITIGATION ) | 4:19-CV-03074-YGR-TSH |
| ) | |
| CAMERON ET AL. v. APPLE INC. ) | |
| ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:  Spotify USA Inc.
4 World Trade Center, 150 Greenwich St., 62nd Fl., New York, NY 10007

*(Name of person to whom this subpoena is directed)*

☒ **Testimony**: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. The deposition will be recorded by a stenographer or court reporter, will be recorded by video and audio means, and may also be recorded by instant display of the stenographic record. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

See Schedule A

| Place: Veritext Legal Solutions<br>1250 Broadway, Suite 2400<br>New York, NY 10001<br><br>Or as otherwise agreed. | Date and Time:<br>February 8, 2021, 9:00 a.m. PST<br><br><br><br>Or as otherwise agreed. |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.  respond to this subpoena and the potential consequences of not doing so.

Date: January 25, 2021

*CLERK OF COURT*                                    or

_____                              */s/ J. Wesley Earnhardt*
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Epic Games, Inc. who issues or requests this subpoena, are: J. Wesley Earnhardt, Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, New York 10019, wearnhardt@cravath.com, (212) 474-1138

/s/ *Rachele R. Byrd*
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* <u>Consumer Plaintiffs</u>, who issues or requests this subpoena, are: Rachele R. Byrd, Symphony Towers, 750 B Street, Suite 1820, San Diego, California 92101, byrd@whafh.com, (619) 239-4599

---

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action Nos. 4:20-CV-05640-YGR-TSH, 4:11-CV-06714-YGR-TSH, 4:19-CV-03074-YGR-TSH

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ on *(date)* _____

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____   My fees are $ _____   My fees are $ _____   _____

I declare under penalty of perjury that this information is true.

Date: _____        Date: _____

    *Server's signature*

_____

    *Printed name and title*

_____

    *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)   fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

A. The following rules of construction shall apply to all discovery requests:

    a. The use of the present or past tense shall be construed to INCLUDE both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    b. "**Any**" and "**each**" shall be construed to mean "**all**", and vice versa;

    c. "**The**" shall not be construed as limiting the scope of any topic;

    d. References to employees, officers, directors or agents INCLUDE both current and former employees, officers, directors and agents; and

    e. The use of the singular form of any word INCLUDES the plural and vice versa.

B. "AND" means the conjunctive OR the disjunctive, whichever is more inclusive.

C. "APP" OR "APPS" means a software program OR programs designed to run on a computing DEVICE, regardless of the means of distribution.

D. "APPLE" means Apple Inc. AND all predecessors, successors, subsidiaries, divisions, parents, AND affiliates thereof, past OR present, AND all past OR present officers, directors, affiliates, agents, employees, consultants AND representatives thereof, AND any other person acting on behalf of any of the foregoing entities.

E. "APPLE MUSIC" means APPLE's music streaming service.

1

F. "DEVICE" OR "DEVICES" means any handheld DEVICE, such as a smartphone, tablet OR portable MP3 music player, AND any non-handheld DEVICE, such as a laptop computer, desktop computer OR video game console.

G. "DIGITAL PRODUCT" OR "DIGITAL PRODUCTS" means any digital product, service, OR other item available for download OR sold via OR in a SOFTWARE STORE for use on a mobile DEVICE, INCLUDING APPS whether downloaded OR purchased in OR outside of the United States. This term INCLUDES IN-APP PURCHASES.

H. "IAP" means APPLE's IN-APP PURCHASE API referenced in Section 3.3.25 AND Attachment 2 of the current version of APPLE's Developer Program License Agreement.

I. "IN-APP PURCHASE" OR "IN-APP PURCHASES" means any purchase made within OR from a DIGITAL PRODUCT by a DIGITAL PRODUCT user, excluding the purchase price of the APP itself. Examples of IN-APP PURCHASES INCLUDE paying for enhanced OR updated content, purchasing a weapon within a game, buying virtual currency, paying for OR renewing subscriptions, OR paying to eliminate advertisements within an APP.

J. "INCLUDING" AND its variants mean including without limitation OR in any way qualifying, limiting, OR restricting the foregoing.

K. "iOS" means APPLE's operating system that powers OR is used by an iOS DEVICE AND INCLUDES any iOS versions, variants OR forks, INCLUDING iPadOS AND any versions, variants OR forks thereof.

L. "iOS APP STORE" means the SOFTWARE STORE operated by APPLE for use on iOS.

M. "iOS DEVICE" OR "iOS DEVICES" means any DEVICE created by APPLE that uses iOS, INCLUDING all iPhones AND all iPads.

2

N. "OR" means the conjunctive or the disjunctive, whichever is more inclusive.

O. "PAYMENT PROCESSOR" OR "PAYMENT PROCESSORS" means an entity OR a service that handles payment transactions between APP users AND DEVELOPERS through various channels such as credit cards AND debit cards. This term INCLUDES entities such as Adyen, Braintree, PayPal, Square AND Stripe AND also INCLUDES, for the avoidance of doubt, IAP AND any payment processing solution YOU have developed.

P. "RELATING TO" AND its variants mean referring to, mentioning, commenting on, concerning, reflecting, pertaining to, evidencing, showing, involving, describing, discussing, responding to, supporting, contradicting, rebutting, constituting in whole or in part, consisting of, addressing the subject matter of, OR being a draft, copy, OR summary of, in whole OR in part.

Q. "SPOTIFY", "YOU" AND "YOUR" mean Spotify USA Inc. AND all predecessors, successors, subsidiaries, divisions, parents, AND affiliates thereof, past OR present, AND all past OR present officers, directors, affiliates, agents, employees, consultants AND representatives thereof, AND any other person acting on behalf of any of the foregoing entities.

R. "SOFTWARE STORE" OR "SOFTWARE STORES" means any digital store that offers APPS for digital distribution.

## SUBPOENA SUBJECT MATTERS FOR TESTIMONY

**Topic No. 1:**

The means of distribution through which SPOTIFY makes its APP available to consumers, INCLUDING through SOFTWARE STORES AND direct distribution, AND why SPOTIFY decided to distribute its APP through such means.

**Topic No. 2:**

The reasons for SPOTIFY's decision(s) to offer OR not offer users the ability to subscribe to SPOTIFY's premium music streaming service through its iOS APP, AND the impacts on SPOTIFY's business of those decisions, INCLUDING:

    a.    SPOTIFY's 2011 decision not to offer premium subscriptions as IN-APP PURCHASES in its iOS APP;

    b.    SPOTIFY's 2014 decision to offer premium subscriptions as IN-APP PURCHASES in its iOS APP; AND

    c.    SPOTIFY's 2016 decision to remove the ability for users to purchase premium subscriptions as IN-APP PURCHASES in its iOS APP.

**Topic No. 3:**

The fees APPLE has charged SPOTIFY AND how those fees have impacted SPOTIFY's business, INCLUDING: (1) commission fees AND the prices SPOTIFY charged OR charges to users for premium subscriptions; (2) any decisions SPOTIFY has made to offer new products AND features; AND (3) the impact on SPOTIFY's profitability.

**Topic No. 4:**

The cost to SPOTIFY of developing AND operating APPS.

**Topic No. 5:**

The impact on SPOTIFY's business of APPLE introducing its APPLE MUSIC APP at a subscription price of $9.99 per month, INCLUDING the loss of subscribers AND/OR market share.

**Topic No. 6:**

How SPOTIFY's users access SPOTIFY's APP AND services AND whether individual users access SPOTIFY's services on multiple platforms (*e.g.*, on a mobile DEVICE one day AND a personal computer another day, OR on an iOS DEVICE one day AND an

4

Android DEVICE another day) AND why, INCLUDING whether SPOTIFY's users tend to switch between Android DEVICES AND iOS DEVICES.

**Topic No. 7:**

Discussions AND negotiations between SPOTIFY AND APPLE RELATING TO APPLE's rejections OR threatened rejections of SPOTIFY's APP (OR updates thereto) on the iOS APP STORE, INCLUDING the purported bases for such rejections OR threatened rejections.

**Topic No. 8:**

APPLE's enforcement of its iOS APP STORE guidelines AND contract provisions against SPOTIFY, INCLUDING APPLE's Developer Program License Agreement AND App Store Review Guidelines, AND whether APPLE has consistently applied these rules, INCLUDING with respect to limiting what SPOTIFY may communicate to its users.

**Topic No. 9:**

PAYMENT PROCESSORS that SPOTIFY uses OR has used to process subscription payments for its music streaming service, INCLUDING the fees those PAYMENT PROCESSORS charge AND any features or functionalities those PAYMENT PROCESSORS offer.

**Topic No. 10:**

Actions taken by APPLE to advantage OR give preference to its APPLE MUSIC APP relative to SPOTIFY's iOS APP, INCLUDING:

a. impeding users from discovering SPOTIFY's iOS APP in the iOS APP STORE;

b. promoting APPLE MUSIC within the iOS APP STORE AND otherwise (INCLUDING engaging in promotional activities that APPLE forbids to other developers);

    c.    preventing the SPOTIFY APP from being compatible with iOS features such as the Siri voice assistant OR APPLE DEVICES such as the Apple Watch OR Apple HomePod; AND/OR

    d.    positioning APPLE MUSIC as the default music player on iOS DEVICES.