THEODORE J. BOUTROUS JR., SBN 132099
    tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
    rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
    dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
    jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092; *pro hac vice*)
    vmoye@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
    mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
    crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN DETTMER, SBN 196046
    edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
    elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>   Plaintiff, Counter-defendant<br><br> v.<br><br>APPLE INC.,<br><br>   Defendant, Counterclaimant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**APPLE INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON PARTIAL FINDINGS PURSUANT TO FED. R. CIV. P. 52(c) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 24, 2021 at 8:00 a.m., or as soon thereafter as the matter may be heard by the Court, at the courtroom of the Honorable Yvonne Gonzalez Rogers, Courtroom 1, 14th Floor, United States District Court, 1301 Clay Street, Oakland, California, Defendant Apple Inc. will and hereby does move the Court for judgment on partial findings in Apple's favor on Count 2.

This motion for judgment on partial findings (as set forth in the attached memorandum in support) is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities that follows, any reply papers that may be filed, and on the arguments of counsel.

DATED: May 24, 2021        By    /s/ Mark A. Perry
                                 GIBSON, DUNN & CRUTCHER LLP
                                 Theodore J. Boutrous Jr.
                                 Richard J. Doren
                                 Daniel G. Swanson
                                 Mark A. Perry
                                 Veronica S. Lewis
                                 Cynthia E. Richman
                                 Jay P. Srinivasan
                                 Ethan D. Dettmer
                                 Rachel S. Brass

                                 *Attorneys for Apple Inc.*

**TABLE OF CONTENTS**

LEGAL STANDARD ................................................................................................................... 1

DISCUSSION ............................................................................................................................... 1

      A.     iOS Is Not an Essential Facility ................................................................................ 2

      B.     Epic Has Access to iOS ............................................................................................ 4

CONCLUSION ............................................................................................................................. 6

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**CASES**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
　836 F.3d 1171 (9th Cir. 2016) ................................................................................................. 2, 4, 5

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
　948 F.2d 536 (9th Cir. 1991) ............................................................................................................ 4

*Blix Inc. v. Apple, Inc.*,
　No. 19-CV-1869, 2020 WL 7027494 (D. Del. Nov. 30, 2020) ........................................................ 4

*City of Anaheim v. S. Cal. Edison Co.*,
　955 F.2d 1373 (9th Cir. 1992) .......................................................................................................... 2

*City of Coll. Station, Tex. v. City of Bryan, Tex.*,
　932 F. Supp. 877 (S.D. Tex. 1996) ................................................................................................... 5

*City of Vernon v. S. Cal. Edison Co.*,
　955 F.2d 1361 (9th Cir. 1992) .......................................................................................................... 5

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*,
　848 F.2d 976 (9th Cir. 1988) ............................................................................................................ 5

*JamSports & Entm't, LLC v. Paradama Prods., Inc.*,
　336 F. Supp. 2d 824 (N.D. Ill. 2004) ............................................................................................ 2, 4

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
　708 F.2d 1081 (7th Cir. 1983) .......................................................................................................... 2

*Ritchie v. United States*,
　451 F.3d 1019 (9th Cir. 2006) .......................................................................................................... 1

*United States v. Terminal R.R. Ass'n*,
　224 U.S. 383 (1912) ..................................................................................................................... 2, 6

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
　540 U.S. 398 (2004) ..................................................................................................................... 4, 6

**STATUTES**

15 U.S.C. § 2 .......................................................................................................................................... 1

**RULES**

Fed. R. Civ. P. 52(c) ............................................................................................................................... 1

**OTHER AUTHORITIES**

Herbert Hovenkamp et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property*  (3rd ed. 2020 supp.) ...................................................................................... 3

Apple Inc. moves for judgment on partial findings on Epic Games, Inc.'s "essential facility" claim (Count 2). At trial, Epic adduced no proof in support of this claim—on the contrary, Epic's principal expert expressly disclaimed any opinion on essential facility, and (in response to a direct question from the Court) rejected the notion that iOS should be treated as a public utility. The Court should enter judgment for Apple on this claim.

## LEGAL STANDARD

"If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). This rule "expressly authorizes the district judge to resolve disputed issues of fact." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). "In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." *Id.*

## DISCUSSION

Epic contends that Apple has violated Section 2 of the Sherman Act "through its unlawful denial to Epic and other app distributors of an essential facility—access to iOS." Dkt. 1 ¶ 197. Epic's experts did not opine on whether iOS is an essential facility, or whether Epic has been denied access to iOS. Rather, Dr. Evans *admitted* in his written direct testimony that Epic and other developers are provided "access to the tools and permissions for writing iOS apps." Ex. Expert 1 ¶ 100 (Evans). And on the stand, Dr. Evans *admitted* that he was not "expressing any opinion on anything termed an essential facility or anything related to an essential facility claim in this case." Trial Tr. 1673:8–11 (Evans); *see also* Trial Tr. 2390:16–2391:2 (Evans). Having completed its case-in-chief, Epic has no factual, expert, or legal support for its theory of essential facility, and has effectively abandoned this claim. Apple is therefore entitled to judgment on Count 2.[*]

---

[*] The essential facility doctrine is addressed in more detail in Apple's proposed conclusions of law. *See* Dkt. 405 COL ¶¶ 374–419.

### A. iOS Is Not an Essential Facility

Under Ninth Circuit precedent, the first and second elements of an essential facility claim require Epic to show that Apple is "a monopolist in control of an essential facility," and that Epic "is unable reasonably or practically to duplicate the facility." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1185 (9th Cir. 2016). These elements essentially collapse into one another: "[T]he second element is effectively part of the definition of what is an essential facility in the first place. That is to say, if the facility can be reasonably or practically duplicated it is highly unlikely, even impossible, that it will be found to be essential at all." *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1380 (9th Cir. 1992). Because Epic failed to prove that iOS is an essential facility, it cannot meet either of these elements.

Essential facilities typically are limited to physical infrastructures of a finite availability (such as a bridge or a power network) that are not capable of being replicated by competitors and serve as a necessary conduit without which transmission or distribution is impossible. *See United States v. Terminal R.R. Ass'n*, 224 U.S. 383, 392–94 (1912). "Essential means essential," not "'best,' 'most profitable' or 'preferable.'" *JamSports & Entm't, LLC v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004). Only preexisting "bottlenecks" (such as bridges and infrastructure networks) typically have been deemed essential facilities by the courts. *See MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1148 (7th Cir. 1983). Unlike bridges and power grids—which function essentially as public utilities—iOS is a proprietary operating system that is not an "essential" facility.

Notably, Dr. Evans testified in response to a question from the Court that he would not characterize iOS as a "utility." Trial Tr. 2382:8–13 (Evans). Dr. Evans elaborated, explaining that "oftentimes when economists looking at the history of regulation talk about utilities, we really are talking about a situation in which there is – there is one company, and it's an absolutely, positively essential service," Trial Tr. 2382:24–2383:2 (Evans), but he acknowledged that "at this point in time, I don't want to suggest that as foundational platforms [iOS and Android] are – they are so – they are something where I would say to Congress that you should think about regulating these companies like we would regulate electric utilities in the past," Trial Tr. 2383:13–18 (Evans); *see also* Trial Tr. 2390:21–2391:2 (Evans) (Dr. Evans explaining that his use of the words "gateway" or "toll booth" is

1  not synonymous with "essential facility"). Epic's own expert thus refused to equate iOS with a public
2  utility, and therefore conceded the predicate of Epic's essential facility claim.

3  A proprietary operating system encompassing features and functionalities protected by patent,
4  copyright, and other intellectual property laws cannot constitute an essential facility. Intellectual
5  property is protected by a discrete legal regime, which gives the owner the power to exclude others
6  from using or profiting from the owner's intellectual property. As the leading antitrust treatise
7  recognizes, there has been "*no case in which a United States court* consciously held that an intellectual
8  property right was itself an essential facility that must be licensed on reasonable and nondiscriminatory
9  terms." Herbert Hovenkamp et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to*
10 *Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.) (emphasis added). This Court should not be
11 the first.

12 Epic does not dispute that "Apple's intellectual property gave Apple the right to prevent all
13 third parties from writing apps for use on iOS." Dkt. 407 COL ¶ 226; *see also* Apple Ex. Depo. 5 at
14 46:15–23, 25 (Penwarden). A firm that elects to design its own operating system cannot be compelled
15 to provide public access to that operating system once it proves workable and desirable for other
16 competitors. *See* Herbert Hovenkamp et al., *IP and Antitrust: An Analysis of Antitrust Principles*
17 *Applied to Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.). It is the firm's prerogative to
18 decide whether and to what extent to make its operating system available to others, and a firm's
19 decision to restrict access (or to set terms of access) is not a basis for antitrust liability. Epic cannot
20 "just demand the right to piggyback on its larger rival" through these proceedings, rather than
21 "investing [or] innovating" itself. *Novell*, 731 F.3d at 1073.

22 Epic's own experience, as established by the trial evidence, confirms that there is nothing
23 "essential" about iOS. *Fortnite* was a success before it was made available on the App Store, Trial Tr.
24 1337:19–21 (Weissinger), and *Fortnite*'s revenues from iOS (prior to its removal) accounted for just
25 7% of its total revenue, DX-4766. And native apps are not the only way Epic can reach iOS
26 customers—it also is free to distribute its products (including by selling V-Bucks) to iOS customers
27 over the internet. PX-2790.1; *see also* Trial Tr. 476:20–477:12, 524:8–15 (Patel) (Nvidia has plans to
28 offer *Fortnite* through its web app for iOS in October). Moreover, Epic can and does reach customers

of all types on PCs and Macs—including through the Epic Games Store—as well as through game consoles, tablets, and other mobile devices. Ex. Expert 6 ¶¶ 35, 151 & fig. 6 (Hitt). iOS thus cannot be an essential facility because Epic has already "achieved success on *multiple* platforms." *Blix Inc. v. Apple, Inc.*, No. 19-CV-1869, 2020 WL 7027494, at *7 (D. Del. Nov. 30, 2020) (emphasis in original) (dismissing essential facility claim related to the Mac App Store).

When asked by the Court what Epic's "backup plan" was if the Court did not grant the requested relief, Mr. Sweeney did not suggest that Epic would be out of business, but instead testified that Epic simply "would have to live with" its ejection from the App Store, "without supporting the iOS platform." Trial Tr. 347:25–348:11 (Sweeney). That is another concession that iOS is not an essential facility. Unlike a single bridge linking two land masses, Epic—and other developers—have many avenues to reach customers. Those avenues might not be identical to one another (just as a bridge is not identical to a tunnel), but they plainly provide alternatives for developers. Regardless of whether transactions on other platforms are substitutable or interchangeable for purposes of market definition, the standard for identifying an essential facility is different (and higher): Epic's essential facility theory required it to prove that iOS is *essential*—necessary, indispensable, non-replicable, etc. *See JamSports*, 336 F. Supp. 2d at 839; *see also Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 543 (9th Cir. 1991) (explaining that an essential facility may exist where a firm has "eliminated *all possibility* of competition in the downstream market" (emphasis added)). But the evidence at trial, including the testimony of Epic's own witnesses, did not even come close to satisfying that standard. Therefore Apple is entitled to judgment on the essential facility claim.

**B.      Epic Has Access to iOS**

Even if iOS could constitute an essential facility, Epic's claim still fails because Epic *does* have access to iOS, pursuant to the terms of the DPLA. Denial of access to the alleged essential facility is an element of an essential facility claim. *See Aerotec*, 836 F.3d at 1185. "[W]here access exists, the [essential facility] doctrine serves no purpose." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004).

There is no dispute that Epic actually has access to iOS. Epic, like all other developers, may obtain "access to the tools and permissions for writing iOS apps," and may distribute those apps through

iOS, by agreeing to the DPLA. Ex. Expert 1 ¶ 100 (Evans). And Epic clearly *did* (prior to Project Liberty) distribute its apps through iOS and the App Store. So do millions of other developers. "[T]he access factor cannot be read to mean that the courts will secure a better deal for an antitrust plaintiff." *City of Coll. Station, Tex. v. City of Bryan, Tex.*, 932 F. Supp. 877, 888 (S.D. Tex. 1996). As Mr. Sweeney testified, Apple's license agreements set forth the specific terms of Epic's access to iOS and its use of Apple's intellectual property. Trial Tr. 167:15–23 (Sweeney). Having identified the alleged essential facility as iOS, and then having affirmatively offered evidence that it (and other developers) has access to iOS, Epic has no basis on which to maintain its essential facility claim. Indeed, Epic and its subsidiaries have developed a number of native iOS apps using Apple's proprietary software, including access to iOS, pursuant to the DPLA.

The real basis for Epic's claim is that it does not like the terms of the access it *does* have. But Apple did not deny access to an essential facility by merely refusing to deal in a manner "conducive to [Epic's] existing business model," *MetroNet Servs. Corp.*, 383 F.3d at 1130, "in the most profitable manner" to Epic, *id.*, or on Epic's preferred terms, *Aerotec Int'l, Inc*, 836 F.3d at 1185 (plaintiff had access to facility even where process for doing so was "Kafkaesque" and inferior to "certain [other] customers"); *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983 (9th Cir. 1988) (rejecting claim because plaintiff did not outbid its competitors for access to facility).

Apple's terms of access have benefited Epic greatly. Epic made over $700 million through its distribution of the native iOS *Fortnite* app through the App Store. Ex. Expert 6 ¶ 73 & fig. 14 (Hitt); *see also* Trial Tr. 1999:10–12 (Schmalensee) (Well, if [Epic] want[s] to access iOS, they have to go through the store. But they do, and they make a lot of money going through the store."). The essential facility doctrine does not require that Apple change its business model based on Epic's desires. *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1367 (9th Cir. 1992) (the city's "demand that [the utility] turn over its facility to a city simply because the city could save money by obtaining cheaper power stands the essential facility doctrine on its head"). Epic has access to iOS, but it seeking better *terms* of access. That is not the role of the essential facility doctrine.

The essential facility doctrine does not require a firm to provide its competitors with unfettered, unlimited, or uncompensated access to its property. *Cf.* Dkt. 407 COL ¶ 233. Take, for example, one

of the classic examples of an essential facility—a railroad bridge at the only crossable portion of a river. *Cf. Terminal R.R. Ass'n*, 224 U.S. at 392–94. If all other elements of the essential facility doctrine are satisfied, the operator of the bridge may be required to provide access to competitors who wish to move freight across the bridge. Those competitors, however, will still have to pay the operator to use the bridge, and may be required to abide by certain terms (weight limits, timing restrictions, prohibitions on carrying hazardous waste, etc.).

Here, viewing iOS as a "bridge" (among other options, as noted above) between developers and iOS users, what Epic is demanding is that it be permitted to use the bridge at any time of day at no cost and with no limitations on its terms of access. *See, e.g.*, Dkt. 276-1 at 3 (seeking an injunction enjoining Apple from restricting the "downloading, executing, installing and/or updating [of] iOS apps and app stores from a distribution channel other than the App Store"). That is not what the essential facility doctrine requires. Epic is free to access iOS (and distribute native iOS apps) in accordance with the terms of access set forth by Apple in the DPLA. "[W]here access exists, the [essential facility] doctrine serves no purpose." *Trinko*, 540 U.S. at 411. Judgment should therefore be entered against Epic on its Count 2.

* * *

The Court's preliminary injunction order put Epic on notice that the essential facility claim had not been adequately developed and thus could be a candidate for early resolution. Dkt. 118 at 17 n.17. During trial, the Court noted that Epic had not addressed or briefed adequately its essential facility claim. Trial Tr. 1996:25–2000:1 (Schmalensee). And at the end of Epic's case-in-chief, the Court once again observed that Epic had not offered evidence on this claim. Trial Tr. 2621:18–2622:11. Accordingly, Epic has had plenty of notice that this claim is vulnerable to summary disposition, and dismissing it at this time would simplify the issues for post-trial resolution.

## CONCLUSION

For the foregoing reasons, the Court should grant judgment on partial findings in favor of Apple and against Epic on Count 2 of Epic's complaint.

DATED: May 18, 2021          By     /s/ Mark A. Perry
                                    GIBSON, DUNN & CRUTCHER LLP
                                    Theodore J. Boutrous Jr.
                                    Richard J. Doren
                                    Daniel G. Swanson
                                    Mark A. Perry
                                    Veronica S. Lewis
                                    Cynthia E. Richman
                                    Jay P. Srinivasan
                                    Ethan D. Dettmer
                                    Rachel S. Brass

                                    *Attorneys for Apple Inc.*