THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092; *pro hac vice*)
  vmoye@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
  mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN DETTMER, SBN 196046
  edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant, Counterclaimant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**REPLY IN SUPPORT OF APPLE INC.'S MOTION FOR AN ADVERSE CREDIBILITY FINDING** |

**CONTENTS**

PRELIMINARY STATEMENT ............................................................................................................. 1

ARGUMENT ........................................................................................................................................ 2

CONCLUSION ..................................................................................................................................... 5

**PRELIMINARY STATEMENT**

At trial, Epic presented testimony from as many witnesses associated with Microsoft as it did from Epic itself (five each). A reasonable observer might wonder whether Epic is serving as a stalking horse for Microsoft. Yet Microsoft shielded itself from meaningful discovery in this litigation by not appearing as a party or sending a corporate representative to testify. Instead, Epic called one Microsoft employee—Lori Wright—who testified in her personal capacity, as well as a series of Microsoft "consultants." *See* Trial Tr. 1478:11–16 (Evans), 1797:10–1801:14 (Athey), 2322:22–2325:9 (Cragg), 2554:6–2555:2 (Mickens). Yet even as to Ms. Wright, Microsoft refused to produce the documents in her personal files, including a number of documents about which she testified at trial.

On April 12, 2021, this Court entered an order warning both Epic and Microsoft that "failure to produce relevant documents, including documents relevant to [Ms. Wright], to both parties (here, to Apple)" could result in an adverse credibility finding. Dkt. 437 at 4. The Court explained that Ms. Wright could avoid such a sanction by "ensur[ing] that [she] adequately and timely produce[d] such documents [at least three days] in advance of [her] deposition." *Id.* Microsoft, however, did not produce Ms. Wright's documents before she was deposed (or, for that matter, before she testified at trial).

In other words, on notice from this Court that it could produce Ms. Wright's documents or subject her to an adverse credibility finding, Microsoft chose not to produce her documents. Epic similarly had the choice of whether to call Ms. Wright in light of Microsoft's decision to withhold her documents. By this motion, Apple simply seeks to hold Epic and Microsoft—allied against Apple in this case from the temporary restraining order stage, *e.g.*, Dkt. 40—accountable for those choices. Apple submits that the only logical inference from the considered decisions of Epic and Microsoft, each ably assisted by respected counsel, is that the documents from Ms. Wright's files were withheld because they would be detrimental to Epic's case and supportive of Apple's.

In their respective responses to Apple's motion, Epic and Microsoft all but ignore the Court's April 12 order, even though it is that order which Apple seeks to enforce here. Nor do they dispute that Ms. Wright failed to produce internal communications providing insight into Microsoft's efforts to introduce the xCloud streaming service, discussions (including with Epic) about challenging the

Apple App Store rules, and a P&L statement for Xbox, even though she cited it as a basis for her understanding of Microsoft's supposed hardware subsidies. And they do not dispute that these documents would have confirmed or refuted the testimony that she offered on these subjects.

Rather than address Microsoft's conscious choice not to produce Ms. Wright's documents, thus risking the very adverse credibility finding that Apple now seeks, Epic and Microsoft advance a series of other arguments in the apparent hopes that the Court will not adhere to its previous order. These arguments should be rejected, and the Court should enter an adverse credibility finding as to Ms. Wright's testimony—just as it warned Microsoft and Epic that it would do if her documents were not produced.

## ARGUMENT

Epic agrees that this Court has the authority to find Ms. Wright's testimony not to be credible. Dkt. 648 at 10. The Court should exercise that authority here, where it is undisputed that Microsoft did not produce a single document following entry of this Court's April 12 order, despite the explicit warning of the consequences of doing so. At that time, the Court expressed concern with being able "to measuredly consider and weigh the relevant evidence to reach a final determination." Dkt. 437 at 3. Ms. Wright's trial testimony shows that this concern was well-founded, and neither Apple nor the Court have the documentary evidence with which to test the veracity of Ms. Wright's assertions—even though that evidence was available in her own files.

First, Epic and Microsoft argue that Apple requested (and received) certain financial information from Microsoft but did not specifically ask for the Xbox P&L. Dkt. 648 at 8; Dkt. 691 at 4. But the P&L was clearly relevant to Ms. Wright's testimony, including because Ms. Wright referenced the P&L at her deposition as a basis for her testimony about Microsoft "subsidizing the consoles for the sake of the content revenue." Dkt. 602-1 Ex. A at 123:1–2. Thus, even if there was any question whether the P&L was within the bounds of the "relevant documents" the Court urged Microsoft to produce on April 12, that question was resolved at the deposition. When Apple reached out to Microsoft after the deposition, Microsoft did not respond. Calandra Decl. ¶ 2. And when Apple finally connected with Microsoft a few days before trial, Microsoft was unwilling to even confirm Ms. Wright would appear at trial. Srinivasan Decl. ¶ 2. Microsoft's argument that Apple unduly

waited until after the close of discovery to seek documents related to Ms. Wright, Dkt. 691 at 4, fails in light of the fact that Ms. Wright's identity was not disclosed until after the close of discovery. Apple did not have the burden to guess which witness Microsoft would put forward. *See* Dkt. 691 at 3. Rather, Epic had the burden to disclose the "name" of the "individual" it would call at trial, Fed. R. Civ. P. 26, and Microsoft had the burden to produce relevant documents at least three days prior to Ms. Wright's testimony. Dkt. 437 at 4.

Second, Epic argues that witnesses can testify at trial as to facts within their personal knowledge. Dkt. 648 at 10. But that has nothing to do with whether Apple (and the Court) has an opportunity to compare that testimony to the underlying documents—especially where, as here, the documents are a basis for the witness's personal knowledge. Microsoft, for its part, insists that because Ms. Wright testified in her individual capacity, she "had no duty to collect documents for Apple." Dkt. 691 at 1. But Microsoft conveniently ignores this Court's order stating the opposite. The Court recognized that Microsoft had not produced any documents specifically relevant to Ms. Wright and reminded Ms. Wright of her obligation to "adequately and timely produce such documents [at least three days] in advance of [her] deposition." Dkt. 437 at 4 & n.4. Instead, Ms. Wright testified— presumably with Microsoft's blessing, if not its corporate imprimatur—on a financial question (the profitability of the Xbox console business) that is documented in her files, yet did not produce those documents.

Third, Epic argues that Apple had ample opportunity to conduct discovery at Ms. Wright's deposition. Dkt. 648 at 5–6. But whether Apple had the opportunity to ask questions of Ms. Wright is distinct from whether Apple had received any documents that would allow it to test the veracity of Ms. Wright's answers. That is what justifies the consequences for Ms. Wright's failure to produce documents *before* her deposition. *See* Dkt. 437 at 4; *see also FDIC for Butte Cmty. Bank v. Ching*, 2016 WL 8673035, at *4 (E.D. Cal. Oct. 14, 2016) (recognizing need for adequate document disclosure prior to deposition). Epic's only response is that Apple failed to keep Ms. Wright's deposition open. Dkt. 648 at 6. But the onus was on Ms. Wright, not Apple, to comply with her production obligations. And Apple *did* consistently seek relevant documents—in its original subpoena to Microsoft, and in the window between Epic's identification of Ms. Wright and her deposition. Dkt. 419-3 ¶¶ 3, 5. In

response to Apple's subpoena, Microsoft produced 79 documents. Dkt. 419-3 ¶ 4. Of these, none came from Ms. Wright's emails and only two non-email documents came from her custodial file. *Id.* ¶ 6. Microsoft refused to produce additional documents in response to Apple's pre-deposition request, *id.* ¶¶ 5–7, and refused to engage with Apple at all after Ms. Wright's deposition. Calandra Decl. ¶ 2; Srinivasan Decl. ¶ 2.

Fourth, Epic argues that the playing field was even because Ms. Wright gave both Epic and Apple the same paltry document production. Dkt. 648 at 1. But the issue is not whether both Apple and Epic received the same documents—it is that Microsoft produced documents in a one-sided manner helpful to Epic, while withholding documents helpful to Apple. Just because documents were produced to both parties does not mean that the production was complete. Here, it obviously was not. In addition, it is apparent that Microsoft and Epic are coordinating behind the scenes, so Epic's "level playing field" argument is entirely disingenuous. As any litigant knows, only the party adverse to the witness needs her documents to test the veracity and reliability of her testimony. Here, that party is Apple, as the Court's order expressly indicates. Dkt. 437 at 4 (noting that the warning to produce Ms. Wright's documents was especially important "(here, to Apple)").

Fifth, Epic argues that Ms. Wright's trial testimony was "predictable" based on her deposition testimony, and thus Apple was not surprised at trial. Dkt. 648 at 6. But Apple's ability to depose Ms. Wright was itself hampered by Microsoft's failure to produce in advance of the deposition (as contemplated by the Court's April 12 order). Moreover, prevention of surprise is only one reason that witnesses are expected to comply with document production obligations. Another reason is to allow "the Court to measuredly consider and weigh the relevant evidence to reach a final determination." Dkt. 437 at 3. Without the relevant documents underlying Ms. Wright's testimony—both at her deposition and trial—this Court cannot measuredly consider and weigh the relevant evidence. This became especially apparent at trial when Ms. Wright made repeated references to the profitability of aspects of Microsoft's business while withholding the precise documents that could have bolstered or belied her testimony.

Finally, Epic argues that Ms. Wright did not need to produce any documents reflecting correspondence between Microsoft and Apple because such correspondence is already in Apple's

possession. Dkt. 648 at 7.  For example, Epic used with Ms. Wright and moved into evidence PX-2311, which is an email between Ms. Wright and Apple discussing xCloud.  But Apple's production of certain emails involving Ms. Wright and xCloud is beside the point.[1]  Rather, the point is that Apple received *no internal Microsoft communications* providing insight into what Microsoft was actually thinking and saying about efforts to introduce xCloud or on any other subject about which Ms. Wright testified.  Ms. Wright admits that such communications exist. Dkt. 602-1 Ex. A at 64:3–15.  And there is no dispute that Microsoft withheld internal communications, whether from Ms. Wright or anyone else, on important issues including discussions with Epic about the hotfix, discussions (including with Epic) about challenging the Apple App Store rules, and submitting a declarations in support of Epic's motion for temporary restraining order and preliminary injunction motion.  Such internal communications are particularly relevant in light of Microsoft's relationship with at least five Epic witnesses and the potential that Microsoft is using Epic as a proxy plaintiff in litigation that it refuses to prosecute in its own name.

## CONCLUSION

The Court should make an adverse credibility finding as to Ms. Wright's direct examination testimony.

DATED:  May 19, 2021                    By       */s/ Jay Srinivasan*
                                                 GIBSON, DUNN & CRUTCHER LLP
                                                 Theodore J. Boutrous Jr.
                                                 Richard J. Doren
                                                 Daniel G. Swanson
                                                 Mark A. Perry
                                                 Veronica S. Lewis
                                                 Cynthia E. Richman
                                                 Jay P. Srinivasan
                                                 Ethan D. Dettmer
                                                 Rachel Brass

                                                 *Attorneys for Apple Inc.*

---

[1] That Epic used internal Apple emails on the subject of Ms. Wright's testimony leaves Apple only further prejudiced by Microsoft's decision to do likewise.  So while Epic was able to cherry-pick internal Apple documents in support of its case, Epic and Microsoft ensured that Apple would have no corresponding opportunity.