UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br>     *Plaintiff, Counter-defendant,* <br> v. <br> APPLE INC., <br>     *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH <br><br> **JOINT DISCOVERY LETTER BRIEF REGARDING APPLE INC.'S CLAWBACK OF DOCUMENT** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    The parties in the above-captioned action respectfully submit this joint letter brief regarding Apple's clawback of one document.

    Counsel for Epic Games, Inc. ("Epic"), and Apple Inc. ("Apple", together with Epic, the "Parties") have exchanged correspondence and met and conferred telephonically in a good faith effort to resolve the outstanding dispute. The Parties have been unable to reach agreement and therefore submit this joint letter. The Parties can make the document identified in this submission available to the Court for *in camera* review upon request.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP | GIBSON DUNN & CRUTCHER LLP |
| By: */s/ Lauren A. Moskowitz* <br>     Lauren A. Moskowitz <br>     *Counsel for Epic Games, Inc.* | By: */s/ Ethan Dettmer* <br>     Ethan Dettmer <br>     *Counsel for Apple Inc.* |

**Epic's Position:**  Epic requests that the Court conduct an *in camera* review and order Apple to re-produce a document, APL-EG_09147370 – 378, that Apple improperly clawed back during the final week of trial.  Apple's clawback is improper because the document is on its face not a privileged communication.  The document does not contain any legal advice, analysis or discussion.  The document is a business presentation describing potential business, lobbying and public relations responses to challenges faced by the Apple App Store business model.  Apple clawed the presentation back in its entirety during trial on May 18, 2021, when Epic began to question Apple's central trial witness, Philip Schiller—the document's custodian.

**The Document at Issue:**  Throughout this litigation, Apple has made Epic's "Project Liberty" a central focus of its defense, asserting that Epic's litigation, lobbying and public relations efforts against Apple were part of an illicit plan to "revive and reinvigorate" a declining business.  (Apple's Proposed Findings of Fact and Conclusions of Law (Dkt. 405) ("Apple FoF") § XI.F.)  Apple's presentation at trial has focused extensively on Epic's public relations and lobbying efforts (*see, e.g.*, Apple FoF § XI.H), arguing in Apple's opening statement that "rather [than] investing in innovation, Epic invested in lawyers, PR and policy consultants" (Trial Tr. 56:21-57:6).[1]

The presentation that Apple clawed back in the midst of testimony concerns *precisely* the same kind of public relations and lobbying efforts that Apple has made a centerpiece of its defense.  The presentation describes anticipated regulatory and public relations challenges to the Apple App Store business model, and contains speaker notes at the bottom of certain pages.  Its filename is "2020.8.7.App Store Meeing.key" [*sic*].  The metadata of the cover email indicates that the cover email was sent to Mr. Schiller (who is not a lawyer) by Kyle Andeer (Apple's Chief Compliance Officer, who is a lawyer), and copied to Doug Vetter (who is an Apple in-house lawyer).  Apple produced the presentation at issue on February 15, 2021—the last day of fact discovery.  At the time, Apple withheld the cover email attached to the presentation on privilege grounds, but elected *not* to withhold the presentation itself.  In other words, before the presentation was produced, Apple's counsel reviewed the cover email and the presentation, determining that the former was privileged and the latter was not.

**The Document Is Not Privileged:**  "In order to show that a communication relates to *legal* advice, the proponent of the privilege must demonstrate that the '*primary purpose*' of the communication was securing legal advice."  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (second emphasis added).  The proponent of the privilege "must make a clear showing that the speaker made the communications for the purpose of obtaining or providing legal advice."  *Id*.  "An attorney's involvement . . . does not place a cloak of secrecy around all the incidents of . . . a transaction."  *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977).

Here, Apple's original determination was correct; the document is not privileged, as should be confirmed by *in camera* review.  The presentation describes various threats to the Apple App Store business model and discusses possible business, public relations and lobbying responses.  It includes factual information about the existence of investigations and complaints by developers; but it does not contain any legal advice, analysis or discussion.  While Apple carefully

---

[1] Contrary to Apple's assertion, Epic produced thousands of documents concerning Project Liberty.  It redacted legal advice and analysis, while producing discussions of public relations, lobbying or business strategy.  This is precisely why Apple has been able to make Project Liberty a centerpiece of its defense.

characterizes the presentation as containing "potential next steps regarding the legal challenges to the App Store and lay[ing] out several strategic considerations", these "next steps" and "strategic considerations" involve business, public relations, and lobbying considerations—not *legal* advice or *legal* considerations.[2]  Nevertheless, Epic offered Apple the opportunity to provide a version that redacted the statements that Apple believes constituted legal advice or analysis.  Apple declined.

Apple argues that the cover email was sent by a lawyer and copied a lawyer, and "makes clear that the document at issue was the subject of revisions by Mr. Andeer and reflects drafting by Mr. Andeer and also was shared with another Apple attorney not on the transmittal".  (Apple's 5/18/21 Ltr. at 2.)  But Mr. Andeer wears many hats, as is apparent from his recent testimony before the U.S. Senate Judiciary Committee in lieu of Apple CEO Tim Cook.  (Hearing on "Antitrust Applied: Examining Competition in App Stores" Before the S. Judiciary Comm., 117th Cong. (Apr. 21, 2021) (statement of Kyle Andeer).)  "[U]nlike outside counsel, in-house attorneys can serve multiple functions within the corporation.  In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities." *ChevronTexaco*, 241 F. Supp. 2d at 1076.[3]

Thus, the business presentation is not privileged for the same reason as the Court determined that a draft presentation that Apple previously clawed back was not privileged.  (*See* April 28, 2021 Discovery Order, Dkt. 512.)  As the Court noted there, "Lots of documents are reviewed and revised by attorneys and therefore reflect legal advice they provided to business people", but that does not render them privileged.  (*Id.* at 2.)  "The attorney-client privilege protects the communications between attorney and client involved in the drafting of those documents, such as emails with redlined documents *reflecting legal advice or oral conversations giving legal advice*.  But that's it."  (*Id*. (emphasis added).)  As was the case there, the presentation itself is not "a communication between attorney and client" (that communication was embodied in the cover email, which Apple determined to withhold), nor is this a case where "the reader could glean from this document what the legal advice or edits were (you can't), so it is not privileged."  (*Id.*)

A "vague declaration that states only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged". *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *2-3 (N.D. Cal. Feb. 2, 2008).  Apple has not explained

---

[2] For the same reason, Apple's citation to *Skansgaard* is misplaced, as the document in that case discussed "*legal* risks".  *Skansgaard v. Bank of America, N.A.*, 2013 WL 828210, at *2 (W.D. Wash. Mar. 6, 2013) (emphasis added).

[3] Apple asserts that "Mr. Andeer is so intimately involved with Apple's global competition law issues that Epic refused to permit him to see Epic's highly confidential documents pursuant to the protective order".  To the contrary, it was precisely because Mr. Andeer wears many *business* hats—including testifying on behalf of Apple before the Arizona House of Representatives and U.S. Senate—that Epic declined to permit Mr. Andeer to access Epic's highly confidential information.

Apple notes that "Mr. Andeer is prepared to submit a declaration".  If he does, Epic respectfully requests the right to respond to any such declaration.

specifically how the document, in its entirety, should be withheld; nor can Apple establish that production would disclose any legal advice or analysis.

Apple's other assertion, that the presentation subsequently "was shared" with another Apple attorney not on the cover email, is not a proper basis to withhold the document. Any discussions with that attorney about the presentation are not part of the presentation at issue and not before the Court. (*See* April 28, 2021 Discovery Order, Dkt. 512 at 1-2 ("It may be true that Schiller separately discussed the substance of the email chain with Vetter, and if so, those conversations would be privileged. But this email thread is not privileged.").)

**Apple Waived Privilege:** Even if the document were privileged—which it is not—Apple has waived the privilege. "[D]isclosure generally waives privilege. . . . Rule 502(b) operates as an exception to the general principle." *In re Qualcomm Litig.*, 2018 WL 6617294, at *4 (S.D. Cal. Dec. 18, 2018). Apple bears the burden of proving it has met each element of the Rule. *Id.* Under Rule 502(b), "disclosure does not operate as a waiver" only if (1) "the disclosure is inadvertent", (2) "the holder of the privilege or protection took reasonable steps to prevent disclosure", and (3) "the holder promptly took reasonable steps to rectify the error".

Apple's clawback letter states that "the transmittal e-mail . . . *makes clear* that the document" is privileged. (Apple's 5/18/21 Ltr. at 2 (emphasis added).) But after reviewing the privileged transmittal—which according to Apple "makes clear" Mr. Andeer's involvement—Apple elected to claim privilege over *only* the cover email, and not the document at issue. Apple cannot meet its burden of proving that the disclosure of the presentation was inadvertent. It looked at both documents and consciously decided that only one of the two was privileged. The presentation did not just slip through the cracks. Apple's cited authorities (*Reyes* and *Transamerica*) are distinguishable, as they did not involve situations where the party asserting privilege consciously decided that a cover email was privileged but the attachment was not privileged.[4]

---

[4] Apple complains that the presentation was "never disclosed by Epic as an exhibit it intended to use at trial". This fails. Epic recently became aware of the document; both Parties have offered exhibits into evidence that were not previously disclosed on their exhibit lists; and the Court-ordered notice stipulation requires disclosure only of "[e]xhibits and demonstratives to be used in connection with a Party's examination of a witness *within its control*" (Dkt. 538, 594).

**Apple's Position:**    The document at issue (APL-EG_09147370 – 378) is a slide deck directly prepared by a senior in-house attorney to present legal advice to Apple's top executives, including a legal assessment of various competition law challenges to the App Store and offering litigation and regulatory strategy recommendations about potential responses to those challenges.  This document is plainly protected as an attorney-client privilege communication and by the work-product doctrine.  It was inadvertently produced on February 15, 2021, never disclosed by Epic as an exhibit it intended to use at trial or otherwise, and promptly clawed back by Apple on May 18, 2021 after counsel for Epic first disclosed its intent to use the document in the middle of a cross-examination.  While Apple has no objection to the Court's *in camera* review of the document, Apple should not be ordered to re-produce it.

**Background:** The document at issue is a Keynote presentation prepared by Kyle Andeer—Apple's Chief Compliance Officer, and the in-house counsel primarily responsible for competition law—advising Apple executives as to regulatory and litigation issues involving competition, both in the United States and around the world.  The presentation was delivered by Mr. Andeer on August 10, 2020 to Phil Schiller and a small number of other senior Apple executives for the purpose of assessing those regulatory and litigation challenges and offering legal advice about Apple's potential strategies in response.  Mr. Andeer shared an outline of his presentation with Mr. Schiller in advance of the meeting, and Mr. Schiller posed additional related questions and further requests for advice regarding strategic options.  Mr. Andeer revised the slide deck to respond to Mr. Schiller's request and also shared the deck with Kate Adams, Apple's General Counsel, for her review and comment in advance of the meeting.  Ms. Adams also participated in the meeting and offered legal advice on these topics.

This document was inadvertently produced in this litigation on February 15, 2021, although the cover transmittal email was properly withheld for privilege.  In the lead-up to trial, the parties exchanged several exhibit lists disclosing the exhibits they intended to use at trial and filed those lists with the Court in accordance with the Court's pretrial orders.  *See* Dkts. 448, 453.  This document was not included on Epic's exhibit list, and Epic never sought to supplement its exhibit list to include this document.

Apple was therefore surprised when Epic attempted to introduce this document at trial on May 18, during its cross-examination of Mr. Schiller, with no advance notice.  Apple immediately objected on privilege grounds and the document was not used or admitted until the issue could be resolved.  Apple immediately sent Epic a clawback letter and, later that same day, met and conferred with Epic and explained the bases for the assertion of privilege, including the facts described herein.

**Discussion:** Epic's assertion that the document is not privileged, or that Apple has waived the privilege, are without merit.

*First*, the document plainly is privileged.  As described above, this is not merely a business document:  It was drafted by Apple's in-house legal counsel responsible for competition law, specifically about pending and anticipated legal and regulatory challenges against Apple around the globe, and it offers an explanation of and legal advice regarding those challenges.  Epic's assertion that the document "does not contain any legal advice, analysis or discussion" is not supported by the document itself—the very first slide of the presentation discusses potential next steps regarding the legal challenges to the App Store and lays out several strategic considerations.  The second slide describes competition law challenges regarding regulation, investigations, and litigation.   Other slides likewise contain more detailed summaries of pending actions or

investigations, challenges to particular aspects of the App Store and analyses of what those challenges mean, the legal effects of those challenges on the App Store, and potential responses and strategies. The document is at the core of the privilege doctrine—if businesses cannot receive confidential advice from their in-house counsel about the litigation and regulatory challenges they face, the entire purpose of privilege would be vitiated.[5]

This is not a situation, as Epic suggests, where an attorney simply "reviewed" or "revised" the document at issue. Mr. Andeer, an attorney, both drafted *and* delivered this presentation in order to provide legal advice to his clients (Apple and its executives). He also made additions to the presentation in response to specific questions from Mr. Schiller, further evidencing that the slide deck is the product of solicitation of legal advice. Contrary to Epic's assertions, this *is* "a communication between attorney and client." Although this Court's rules do not permit declarations to be filed with letter briefs, Mr. Andeer is prepared to submit a declaration under oath testifying that he personally prepared the deck in response to a request for legal advice, that the purpose of the deck was to provide legal advice regarding the ongoing regulatory investigations, and that he intended and expected that the advice would remain confidential.

That Apple's legal interests overlap with its business interests is unsurprising—Epic's legal claim seeks to alter some of the most fundamental aspects of the App Store, and some of those issues are also being investigated by regulators (often at the instigation of Epic or its "coalition" partners). But courts have recognized that the fact that a document may have been prepared for a business purpose does not strip it of privilege if the document otherwise satisfies the requirements of the attorney-client privilege and work-product doctrines. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019) ("The fact that a document may be prepared for a business purpose does not preclude it from being privileged if it is sent to an attorney for the purpose of receiving legal advice relating to that document."); *Skansgaard v. Bank of America*, 2013 WL 828210, at *2 (W.D. Wash. Mar. 6, 2013) (business presentation reflecting counsel's assessment of legal risk was privileged).

Epic's attempted comparison to its own Project Liberty proves Apple's point—Epic withheld or redacted many documents related to Project Liberty on privilege grounds, notwithstanding that Project Liberty as a whole implicates Epic's business and public relations interests. The document here is no less privileged—it was prepared by legal counsel for the purpose of assessing and responding to ongoing regulatory investigations and related challenges around the world, which may have significant ramifications for Apple and its business. While it is true that Mr. Andeer, as in-house counsel, "wears many hats," the content of this particular document is unmistakably legal advice, and Mr. Andeer was wearing his "lawyer" hat when he prepared and delivered this presentation. Indeed, Mr. Andeer is so intimately involved with Apple's global competition law issues that Epic refused to permit him to see Epic's highly confidential documents pursuant to the protective order—Mr. Andeer is *the* chief in-house lawyer for the competition law issues discussed in the document.

---

[5] Epic asserts that the slides "involve business, public relations, and lobbying considerations—not *legal* advice or *legal* considerations." That assertion is not supported by the document itself. More importantly, advice regarding the fallout or ramifications of litigation or regulation is squarely within the privilege. For the same reason, Epic's reference to "redactions" is misplaced—the entire deck is privileged.

*Second*, Epic is incorrect that Apple's clawback is procedurally defective. In fact it is *Epic* that has not acted timely. Epic never included this exhibit on its exhibit list in disclosures to either Apple or the Court. And while Epic did attempt to use another privileged document in its cross-examination of Mr. Schiller, Epic represented that it first identified *that* document only the day before, on May 17 (the Court concluded that the document was privileged and there was no issue of waiver). As to the current document, Epic states only that it "recently" became aware of it; if Epic's counsel knew about this document earlier than May 17, it should not have waited until the last moment to disclose its intent to Apple. As the Court has said on numerous occasions, there should be "no surprises" at this trial. Hr'g Tr. 40:24, 41:4 (Apr. 21, 2021).

Epic's argument that Apple has not acted diligently is incorrect. Epic claims that because Apple asserts that the privileged nature of the document is "clear" from the face of the transmittal email, it has not shown that the disclosure was "inadvertent." Other than a case outlining the general standard under FRE 502(b), Epic cites no authority in support of its contention, and the law is decidedly against it. Apple produced millions of documents in this case on a highly compressed discovery schedule demanded by Epic, and the unfortunate reality is that some privileged documents made it past the review mechanisms. That is why the parties agreed to a clawback procedure. Courts recognize this, agreeing "that mistakes in production are likely, and perhaps inevitable," when "producing a large number of documents in 'accelerated' discovery." *SEC v. Reyes*, 2007 WL 528718, at *3 (N.D. Cal. Feb. 13, 2007); *see also Transam. Computer Co. v. Int'l Bus. Machs. Corp.*, 573 F.2d 646, 649, 651–53 (9th Cir. 1978) (same).

Epic's assertion that "[t]he presentation did not just slip through the cracks" is not true—there is no coherent reason why Apple would *intentionally* allow this document to be produced only to claim privilege later. Both parties recognized ex ante that the volume of documents and highly compressed schedule in this case made perfection in privilege review impossible. For Epic now to argue that a single review error among millions of review decisions is somehow indicative of strategy, gamesmanship, or something else is outlandish.

Apple is happy to submit the document at issue—including the transmittal email withheld for privilege—to the Court under seal for *in camera* review to facilitate resolution of this matter, with or without Mr. Andeer's declaration. However, we submit that the information set forth herein should be sufficient to simply deny Epic's objection.

Dated: May 19, 2021                FAEGRE DRINKER BIDDLE & REATH LLP
   Paul J. Riehle

   CRAVATH, SWAINE & MOORE LLP
      Christine Varney
      Katherine B. Forrest
      Gary A. Bornstein
      Yonatan Even
      Lauren A. Moskowitz
      M. Brent Byars

   Respectfully submitted,

   By:     /s/ Lauren A. Moskowitz
      Lauren A. Moskowitz
      *Attorneys for Plaintiff Epic Games, Inc.*

Dated: May 19, 2021                GIBSON, DUNN & CRUTCHER LLP
      Theodore J. Boutrous Jr.
      Richard J. Doren
      Daniel G. Swanson
      Mark A. Perry
      Veronica S. Lewis
      Cynthia E. Richman
      Jay P. Srinivasan
      Ethan D. Dettmer
      Eli M. Lazarus
      Harry Phillips

   Respectfully submitted,

   By:     /s/ Ethan Dettmer
      Ethan Dettmer
      *Attorneys for Defendant Apple Inc.*

-9-

## **E-FILING ATTESTATION**

I, Lauren A. Moskowitz, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Lauren A. Moskowitz*
Lauren A. Moskowitz
