THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092;
appearance *pro hac vice*)
  vlewis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone:     214.698.3100
Facsimile:     214.571.2900

MARK A. PERRY, SBN 212532
  mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile:   202.467.0539

ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:   415.393.8306

Attorneys for Defendant, APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>  *Plaintiff, Counter-defendant,*<br><br>v.<br><br>APPLE INC.,<br><br>  *Defendant, Counterclaimant.* | CASE No. 4:20-cv-05640-YGR-TSH<br><br>**APPLE INC.'S MOTION TO STRIKE DR. SUSAN ATHEY'S WRITTEN AND ORAL EXPERT TESTIMONY**<br><br>The Honorable Yvonne Gonzalez Rogers |

Apple Inc. ("Apple") respectfully moves to strike specific portions of the written and oral testimony of Epic Games, Inc.'s ("Epic") economic expert, Dr. Susan Athey, as unsupported by sufficient facts or data and unreliably applied to the facts of this case under Federal Rule of Evidence 702. The objectionable portions of the written and oral testimony are highlighted in red in Exhibits A and B to the Declaration of Mark A. Perry ("Perry Decl.") in support of this motion.

## I. BACKGROUND

Dr. Susan Athey offered extensive opinions regarding consumer and developer behavior and purported switching costs. *See* Perry Decl. Ex. A ¶¶ 8–9, 18–54 (Athey Written Direct Testimony ("Athey WDT")); Trial Tr. vol. 7, 1813:13–21 (Athey's opinions about anticompetitive effects generally relate to switching costs). She presented no concrete factual bases for those opinions, however. She conducted no original surveys, and analyzed no original data. Trial Tr. vol. 7, 1777:18–24 ("THE COURT: Well, have you done any survey evidence or research with respect to consumer actions, and, if so, can you point me to it in your direct testimony? . . . THE WITNESS: I'm sorry. So I did not conduct an original survey of consumers, if that was the first question."); Trial Tr. vol. 8, 1869:10–15 ("THE COURT: Did you review data and did you analyze data? THE WITNESS: I did not do original analysis of data. THE COURT: And there's no data attached to your report? THE WITNESS: No – no original data, no."). Rather than rely on the extensive body of economic literature around switching costs, she relied almost exclusively on Internet news and other articles, which are not in evidence. *See* Trial Tr. vol. 7, 1813:22–1814:8 (Athey cited only three academic articles, none of which relate to the App Store). As the Court has already had occasion to observe, "[j]ust because something is in the press doesn't make it true." Trial Tr. vol. 3, 559:1–2. At the time Dr. Athey submitted her expert report, she had not reviewed a single confidential Apple document. Trial Tr. vol. 7, 1794:12–15. Dr. Athey made no attempt to quantify switching costs. Trial Tr. vol. 7, 1814:13–1816:10. Nor did she do any independent qualitative analysis, for example into the extent to which family groups have devices that run different operating systems. *See* Trial Tr. vol. 7, 1823:10–17.

During trial, Apple preserved its objection to the lack of factual basis for Dr. Athey's opinions. Trial Tr. vol. 7, 1777:10–17. The Court noted that, in the event there was no such basis, "I will not consider" the opinion "and it will ultimately be stricken." Trial Tr. vol. 7, 1781:3–9.

## II.  LEGAL STANDARD

The proponent of expert testimony has the burden of proving its admissibility.  *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146–47 (N.D. Cal. 2003).  This includes meeting the requirements of Federal Rule of Evidence 702, which permits a qualified expert to provide opinion testimony only if, as relevant here, "the testimony is based on sufficient facts or data" and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (d).  "Ultimately, expert opinions must have a sufficient factual and foundational basis in order to be helpful."  *AngoScore, Inc. v. TriReme Medical, Inc.*, 87 F. Supp. 3d 986, 1017 (N.D. Cal. 2015) (Gonzalez Rogers, J.).  The Court acts as a gatekeeper, excluding testimony that does not have the factual basis, reliability, and fit that the Federal Rules require.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

Experts must have a reliable factual basis for their opinions, which ordinarily must be offered through competent fact witnesses.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2323856, at *2 (N.D. Cal. May 22, 2008) (the "traditional and correct way to proceed is for a foundational witness to testify firsthand at trial to the foundational fact or test and to be cross-examined"); *Epic Games, Inc. v. Apple Inc.*, No. C-20-5640 (YGR), Hr'g Tr. 31:25–32:15 (Mar. 1, 2021) ("If the facts aren't coming in or do not come in, then entire opinions could be invalidated or perhaps opinions don't come in.  So it is important to remember that while experts can talk and their opinions can be based on hearsay, the underlying factual material actually needs to be in the record.").  Rule 703, on which Epic relies, does not abrogate the requirement that experts testify based on "sufficient facts or data."  While Rule 703 identifies some additional "permissible 'bases' of an expert's opinion testimony," *United States v. Nelson*, No. 17-cr-00533-EMC-1, 2021 WL 75757, at *2 (N.D. Cal. Jan. 8, 2021) (emphasis added), the "'question whether the expert is relying on a sufficient basis of information—whether admissible information or not—is governed by the requirements of Rule 702.'" *Broussard v. Maples*, 535 Fed. App'x 825, 828 (11th Cir. 2013) (quoting Fed. R. Evid. 703, advisory committee's note to 2000 amendments).  And in order to permit an expert to testify based on inadmissible facts or data, like hearsay, Rule 703 first requires "the trial court to determine whether that information is of a type reasonably relied on by other experts in the field." *Id.*

## III. DISCUSSION

Apple moves to strike the parts of Dr. Athey's testimony that are not based on sufficient facts or data or reliably applied to this case under Rule 702. Dr. Athey opines as to what consumers and developers think, consider, and do, as well as the costs they incur, without any firsthand observation or reference to reliable facts or data, admissible or otherwise. The Court has put the onus on Epic to identify the factual predicate for Dr. Athey's opinions: "So what I would need, I think, to resolve that is the factual basis for Epic's position . . . . What I need to know is where the factual basis comes from." Trial Tr. vol. 11, 2626:11–15. There is no such sufficient factual basis in this trial record.

### A.   Dr. Athey's Opinions Should Be Stricken.

Dr. Athey offered opinions that consumers face "switching costs" and "mixing and matching costs" because they are "locked-in" to a specific smartphone OS due to the "costs associated with changing OSs, including two-app related costs." Attorney Decl. Ex. A (Athey WDT) ¶ 8. She provides broad-sweeping, unsubstantiated assertions about consumer behavior and knowledge, as well as developer behavior and knowledge, to support her opinions on "switching" and "mixing and matching" costs. *See, e.g., id.* ¶ 8 (parents could be deterred by certain costs), ¶¶ 18, 27, 28 (what consumers "typically" or "may" do), ¶ 33 (what families could do in relation to hypothetical costs), ¶ 37 (what a user "presumably" might want), ¶ 42 (costs that developers consider when deciding where to release apps), ¶ 43 (costs that developers are willing to incur); Trial Tr. vol. 7, 1776:5–23 (what aggregate switching costs a "consumer perceives"). Dr. Athey also testified about what consumers might know or believe, again without reference to any actual survey or data regarding consumer awareness of the things she identified. Trial Tr. vol. 7, 1764:11–20 (consumers "might not have focused on the fact that it wouldn't provide you that cross-platform functionality"). These and all similar assertions should be stricken. As detailed above, Dr. Athey has not relied on any reports, studies, data, or documents produced in this litigation (or otherwise) concerning consumer or developer behavior or habits. Trial Tr. vol. 7, 1777:18–24; vol. 8, 1869:13–1870:15. She conducted no surveys, reviewed no data, and attached no original data to her report. *Id.* She did not base her opinions on "sufficient facts or data" under Rule 702(b) or apply her expertise to the facts of this case reliably under Rule 702(d).

Epic attempted to lay foundation at trial by asking Dr. Athey whether "research into consumers'

preferences and consumer behavior in the space of technology" is part of the "day-to-day" research she conducts. Trial Tr. vol. 7, 1779:2–4. But, as the Court observed, it "doesn't matter if she does or not. If it's not in the report and wasn't disclosed, it is not properly in front of the Court." Trial Tr. vol. 7, 1779:5–7. The identified portions of Dr. Athey's testimony should therefore be stricken. The same lack of factual basis undercuts the remainder of her theoretical opinions about the existence and potential effects of middleware, as well.

### B. Epic's Excuses Should Be Rejected.

Epic tries to evade Rule 702 by suggesting that Dr. Athey's opinions are admissible under Rule 703 and the parties' stipulation. *See* Trial Tr. vol. 11, 2626:16–25; Dkt. No. 635. Epic relies on the wrong rule. Rule 703 "deals only with a situation in which the admissibility of the basis of an expert opinion is challenged. The Court has an independent responsibility to consider whether the opinion of an expert is itself admissible." *Apple Inc. v. Samsung Electronics Co.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *8 (N.D. Cal. Feb. 25, 2014). Neither Rule 703 nor the parties' stipulation obviates Rule 702(b)'s requirements. Rule 703 does not give experts a free pass to rely on <u>nothing</u>, even if they may rely on hearsay and otherwise inadmissible evidence under certain circumstances. And it does not obviate Epic's obligation to put into evidence the factual predicate for its expert's opinions. *Epic Games, Inc. v. Apple Inc.*, No. C-20-5640 (YGR), Hr'g Tr. 31:25–32:15 (Mar. 1, 2021). In the parties' stipulation, Apple did no more than agree not to object to Dr. Athey's "reliance on such unadmitted materials <u>within the scope of Rule 703</u>." Dkt. No. 635, at 2 (emphasis added). Apple's challenges here are based on Rule 702, not Rule 703.

The other experts in this case, on the whole, relied on materials generally used by experts in their fields, on summaries of datasets, and on evidence admitted into the record through a series of extensively negotiated stipulations. *Cf.* Fed. R. Evid. 703, 1006. Apple does not concede that all of Epic's experts' opinions are adequately supported. But Dr. Athey uniquely, offered unsourced, unsupported musings. The law has no place for opinions supported only by the *ipse dixit* of an expert. *Gen. Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Her testimony should be stricken.

### IV. CONCLUSION

Apple requests that the Court strike the identified portions of Dr. Athey's testimony.

| | | |
|---|---|---|
| Dated: May 20, 2021 | By: | /s/ Mark A. Perry |

                                                GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutros Jr.
Richard J. Doren
Daniel G. Swanson
Mark A. Perry
Veronica S. Lewis
Cynthia E. Richman
Jay P. Srinivasan
Ethan D. Dettmer
Rachel S. Brass

*Attorneys for Apple Inc.*