1  PAUL J. RIEHLE (SBN 115199)
   paul.riehle@faegredrinker.com
2  **FAEGRE DRINKER BIDDLE & REATH LLP**
   Four Embarcadero Center
3  27th Floor San Francisco, CA 94111
   Telephone: (415) 591-7500
4  Facsimile: (415) 591-7510

5  CHRISTINE A. VARNEY (*pro hac vice*)
   cvarney@cravath.com
6  KATHERINE B. FORREST (*pro hac vice*)
   kforrest@cravath.com
7  GARY A. BORNSTEIN (*pro hac vice*)
   gbornstein@cravath.com
8  YONATAN EVEN (*pro hac vice*)
   yeven@cravath.com
9  LAUREN A. MOSKOWITZ (*pro hac vice*)
   lmoskowitz@cravath.com
10 M. BRENT BYARS (*pro hac vice*)
   mbyars@cravath.com
11 **CRAVATH, SWAINE & MOORE LLP**
   825 Eighth Avenue
12 New York, New York 10019
   Telephone: (212) 474-1000
13 Facsimile: (212) 474-3700

14 *Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

15

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                           OAKLAND DIVISION

19                                                Case No. 4:20-cv-05640-YGR-TSH

20

21 EPIC GAMES, INC.,

22              Plaintiff, Counter-defendant,    **EPIC GAMES, INC.'S BRIEF REGARDING DR. SUSAN ATHEY'S DIRECT WRITTEN TESTIMONY**
           v.
23 APPLE INC.,

24              Defendant, Counterclaimant.      The Honorable Yvonne Gonzalez Rogers

25

26

27

28

Apple Inc.'s ("Apple") objection to the written direct testimony of Dr. Susan Athey is contrary to two stipulations that Apple signed, and is without merit. By email dated May 16, 2021, Apple notified Epic Games, Inc. ("Epic") that Apple objected to all or portions of 50 paragraphs of Dr. Athey's direct testimony, on the basis that it is supposedly "unsupported by the factual record". (*See* accompanying Declaration of Yonatan Even ("Even Decl.") at Exs. 1 at 2 [Apple May 16 email], 2 [markup of written direct, highlighting Apple's objections].) Apple does not seem to dispute that these opinions were timely and properly disclosed under Fed. R. Civ. P. 26. Nor does it contend that Dr. Athey's opinions lack a proper basis under Fed. R. Evid. 703. Its sole objection, which is both waived and untethered to any rule of procedure or evidence, should be overruled.

*Apple's objection is waived.* Apple has waived its objection to Dr. Athey's testimony twice over. First, on April 27, 2021, Apple stipulated that "the written direct testimony" of experts including Dr. Athey "is admitted". (Dkt. 510 at 2-3.) Although Apple carved out objections to 11 paragraphs of Dr. Athey's testimony in that stipulation (*id.* at 3), the Court overruled those objections (Dkt. 614 at 11). Apple's new objection relates to portions of Dr. Athey's written direct testimony that Apple previously stipulated to without objection (except for one sentence in Paragraph 88). (Dkt. 510 at 2-3; *see* Ex. 2 at ¶ 88.) Apple then went on to waive any objection a second time, this time specifically as to Dr. Athey's reliance on unadmitted materials. After extensive negotiation over matters relating to the Parties' expert testimony, Apple stipulated that "Drs. Evans, Athey, Hitt and Schmalensee may rely on information not admitted into the record, consistent with Rule 703, and [] *the parties will not object to those experts' reliance on such unadmitted materials* within the scope of Rule 703". (Dkt. 635 at 2 (emphasis added).) Apple knew this stipulation would surrender any objection Apple may have had to Dr. Athey's reliance on facts not admitted into evidence, and Apple so stipulated as part of a deal in which Epic agreed to waive similar objections as to Professors Hitt and Schmalensee. (*Id.*) Apple should be held to its bargains.

*Apple's objection is without merit.* Even if the Court were to consider Apple's objection (and it should not), the objection lacks merit. In its May 16 email, Apple objected to

Dr. Athey's direct testimony on the purported basis that it is "unsupported by the factual record". (Even Decl. Ex. 1 at 2.) During argument on May 17, Apple elaborated on this point, contending that there is no "factual support" for what it characterized as "opinions about what consumers think or what consumers do". (Even Decl. Ex. 4 at 2627:3-4.) That characterization of the testimony is misleading. Dr. Athey's cited testimony contains only one mention of a "consumer" in reciting the truism that "consumers use different devices in different settings". (Ex. 2 at ¶ 28.) Dr. Athey's testimony also discusses "*users*", but that discussion is in the specific context of explaining the significant switching and mixing-and-matching costs mobile users face due to mobile platforms' indirect network effects and market power. These are economic concepts that Dr. Athey researches extensively, fully disclosed in her report and appropriately opined on based on her experience and the sources she relied upon.

    Indeed, it is unclear what basis Apple has for objecting to Dr. Athey's testimony. As set forth in the chart attached to the Even Decl. at Appendix A, the substance of Dr. Athey's written testimony was fully disclosed in her February 16, 2021 expert report. As the chart also shows, in each instance, Dr. Athey's report disclosed extensive materials supporting her opinions. (*Id.*) The Court has provided guidance that Dr. Athey, like other experts in this case, may testify to facts not in the record that were fully disclosed in her report, consistent with Fed. R. Evid. 703.[1] The objected-to testimony easily meets that criteria.

    Apple's assertion that Dr. Athey's testimony is objectionable because she relies on facts outside the record—including public market studies, studies conducted by her and her team, and her expertise—is not only at odds with the Court's guidance but also would turn the Rules of Evidence of their head. Rule 702 permits an expert witness to rely "solely or primarily on experience", as long as "the witness . . . *explain[s] how that experience leads to the conclusion reached*, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts". Advisory Committee Notes to the 2000 Amendments (emphasis

---

[1] Even Ex. 3 at 1781:10-1782:2 ("MR. EVEN: … [W]hat is the factual basis that we want now, other than Professor Athey's general assessment as a professor of technology and economics, as to the incentives and what consumers may or may not do facing these incentives. That's clearly in the report, Your Honor. THE COURT: Then if it is in the report, you're all good. . . . They can testify as to what they have disclosed".).

1  added) (citation omitted); *see Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th Cir. 1998) (rejecting objection to expert testimony under Rule 702 where expert was professor in relevant area with 19 years of experience studying and writing on the topic).  And Rule 703 provides that "[t]he facts or data relied upon [by an expert] need not be otherwise admissible if they are 'of a type reasonably relied upon by experts in a particular field'".  *Id.* at 1286.  Courts give experts "'great liberality' . . . in determining the basis of their opinions under Rule 703".  *K&N Eng'g, Inc. v. Spectre Performance*, 2011 WL 13131157, at *10 (C.D. Cal. May 12, 2011) (citation omitted).  "The fact that [an expert's] opinions are based on data collected by others is immaterial; [Rule] 703 expressly allows such opinion testimony".  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997).

Dr. Athey's testimony fits squarely within Rules 702 and 703.  Her academic and industry experience qualifies her to testify with authoritative expertise concerning the types of user and developer costs involved in mobile platforms.  She is a Ph.D economist who is the "economics of technology professor" at Stanford.  (Even Ex. 3 at 1750:13-1751:3.)  Her research focuses on "industrial economics, the economics of digitization, the economics of platforms and marketplace design, and the intersection of machine learning and digitization".  (*Id.* at 1751:19-24.)  She has taught courses related to the economics of platforms, focusing on "sources of profits for firms, the tactics that incumbents use, and strategies that entrants might use to come into these markets".  (*Id.* at 1751:25-1752:9.)  She also has broad industry experience relating to platforms as a board member of "a variety of companies, including Expedia, which is a platform for travel services; Rover, which is a platform for pet-related services . . . ; Turo, which is a platform for peer-to-peer car sharing; and some others".  (*Id.* at 1752:13-21.)  "As a tech economist [and] platform economist," she "generally keep[s] abreast of the data about switching between those two platforms".  (*Id.* at 1869:13-16.)

Although under Rule 702 Dr. Athey was entitled to rely solely on this experience in offering her opinions in the paragraphs Apple now objects to, Dr. Athey also relied, as expressly permitted by Rule 703, on an array of public data that she disclosed in her report.  In the paragraphs of Dr. Athey's report that disclose the substance of the objected-to testimony,

Dr. Athey cited more than 80 unique sources. (Even Decl. ¶ 7 & App'x A.) These sources include publicly available market reports from reputable sources such as the Pew Research Center, App Annie, and the Nielsen Norman Group.[2] (*See* Even Decl. App'x A at pp. 1, 3, 5, 8.) Dr. Athey also cites consumer guides and news articles from well-known publications (New York Times, Bloomberg, CNET, The Verge, Business Insider); primary source developer documentation (Steam and Epic); and primary source user guides and product pages (Amazon, Apple, Google, Epic, Steam). (*See id.* at pp. 1-5, 7, 9, 11-14.) As disclosed in her report, Dr. Athey also relied on, among other sources, Dr. Evans' discussion of user switching and mixing-and-matching. (*See id.* at pp. 2, 10, 16.) These materials are "of a type reasonably relied upon by experts in a particular field", *Scott*, 140 F.3d at 1286, and thus Dr. Athey appropriately relied on them. Indeed, Apple's own economists relied heavily on similar public reports and other experts' reports. Drs. Schmalensee and Hitt, for example, relied on publicly available market studies, webpages, news articles and other Apple expert reports. (Dkt. 635 at 2-7.) Because such reliance is proper, Epic did not object to it, but rather stipulated to it as part of a mutual agreement with Apple. Dr. Athey's written direct testimony is as consistent with Rules 702 and 703, and has likewise been stipulated to.

      Finally, as set forth in the chart in Appendix A, the substance of Dr. Athey's testimony at issue is also broadly supported by trial testimony and admitted documents. For example, PX-405, PX-407 and PX-892 confirm Apple's awareness of how switching and mixing-and-matching costs lock users into the iOS ecosystem; several witnesses testified to the high developer costs of multi-homing on iOS and other platforms (*see* Trial Tr. 394:2-7 (Simon); 670:11-671:20 (Grant)). Epic therefore requests that the Court admit Dr. Athey's written direct testimony in full.

---

[2] *See* https://www.pewresearch.org/about/ (last visited May 20, 2021); https://www.appannie.com/en/about/ (last visited May 20, 2021); https://www.nngroup.com/ (last visited May 20 2021).

*Dated*: May 20, 2021

CRAVATH, SWAINE & MOORE LLP

Christine Varney (*pro hac vice*)
Katherine B. Forrest (*pro hac vice*)
Gary A. Bornstein (*pro hac vice*)
Yonatan Even (*pro hac vice*)
Lauren A. Moskowitz (*pro hac vice*)
M. Brent Byars (*pro hac vice*)

FAEGRE DRINKER BIDDLE & REATH LLP

Paul J. Riehle

Respectfully submitted,

By: /s/ *Yonatan Even*
    Yonatan Even

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*