# Exhibit 3

```
                                              VOLUME 7

                                              Pages 1584 - 1826

                                    UNDER SEAL PAGES 1729 - 1741

               UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA
```

**Before The Honorable YVONNE GONZALEZ ROGERS, Judge**

```
EPIC GAMES, INC.,               )
                                )
       Plaintiff,               )   NO. C-20-5640 YGR
                                )
   vs.                          )   Tuesday, May 11, 2021
                                )
APPLE, INC.,                    )   Oakland, California
                                )
       Defendant.               )   BENCH TRIAL
_____)
APPLE, INC.,                    )
                                )
       Counterclaimant,         )
   vs.                          )
                                )
EPIC GAMES, Inc.,               )
                                )
       Counter-Defendant.       )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          CRAVATH, SWAINE & MOORE, LLP
                        825 Eighth Avenue
                        New York, New York 10019
                  **BY: KATHERINE B. FORREST, ESQUIRE**
                        **GARY A. BORNSTEIN, ESQUIRE**
                        **YONATAN EVEN, ESQUIRE**

                    (Appearances continued.)

Reported By:            Diane E. Skillman, CSR 4909, RPR, FCRR
                        Pamela Hebel, CSR, RMR, FCRR
       TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
 1   For Plaintiff:          CRAVATH, SWAINE & MOORE, LLP
                             825 Eighth Avenue
 2                           New York, New York 10019
                        BY:  LAUREN A. MOSKOWITZ, ESQUIRE
 3                           JUSTIN C. CLARKE, ESQUIRE
                             W. WES EARNHARDT, ESQUIRE
 4                           BRENDAN BLAKE, ESQUIRE
                             JIN NIU, ESQUIRE
 5

 6   For Defendant:          GIBSON, DUNN & CRUTCHER
                             333 South Grand Avenue
 7                           Los Angeles, California 90071
                        BY:  RICHARD J. DOREN, ESQUIRE
 8                           DAN SWANSON, ESQUIRE
                             CYNTHIA RICHMAN, ESQUIRE
 9                           RACHEL BRASS, ESQUIRE
                             ARPINE LAWYER, ESQUIRE
10

11                           GIBSON, DUNN & CRUTCHER, LLP
                             2001 Ross Avenue, Suite 1100
12                           Dallas, Texas 75201
                        BY:  VERONICA S. MOYE, ESQUIRE
13
                             PAUL WEISS RIFKIND
14                           WHARTON & GARRISON LLP
                             2001 K STREET, NW
15                           Washington, DC 20006
                        BY:  KAREN DUNN, ESQUIRE
16                           JESSICA E. PHILLIPS, ESQUIRE

17

18   For Defendant:          PAUL WEISS RIFKIND
                             WHARTON & GARRISON LLP
19                           943 Steiner Street
                             San Francisco, California 94117
20                      BY:  ARPINE LAWYER, ESQUIRE

21

22

23

24

25
```

|  |  |
|---|---|
| 1:17:55PM | **MR. EVEN:** I believe so, Your Honor. |
| 1:17:57PM | **MS. DUNN:** Your Honor, same objection as -- |
| 1:18:01PM | **THE CLERK:** Let me turn on the mic. |
| 1:18:04PM | **MS. DUNN:** Your Honor, same objection as yesterday |
| 1:18:06PM | with Dr. Evans, just to whether there will ultimately be a |
| 1:18:12PM | factual basis for the opinions. Otherwise, all other issues |
| 1:18:15PM | have been resolved. |
| 1:18:17PM | **THE COURT:** Okay. Well, then, as with the others, |
| 1:18:21PM | I'll admit it once we have all these issues resolved. |
| 1:18:25PM | Otherwise, it does not get admitted yet. |
| 1:18:27PM | Proceed. |
| 1:18:31PM | **MR. EVEN:** Thank you, Your Honor. |
| 1:18:31PM | BY MR. EVEN: |
| 1:18:33PM | **Q.** Professor Athey, what is your occupation? |
| 1:18:35PM | **A.** I'm the economics of technology professor at the Stanford |
| 1:18:38PM | Graduate School of Business. |
| 1:18:40PM | **Q.** Thank you. |
| 1:18:41PM | And have you prepared a demonstrative slide that |
| 1:18:44PM | summarizes your background? |
| 1:18:45PM | **A.** I have. |
| 1:18:47PM | **MR. EVEN:** If I can bring up that slide. Thank you. |
| 1:18:49PM | BY MR. EVEN: |
| 1:18:52PM | **Q.** Can you please describe your educational background. |
| 1:18:55PM | **A.** Yes. I have a bachelor's degree in economics, computer |
| 1:18:59PM | science, and mathematics from Duke University and a Ph.D. in |

1:19:04PM   economics from Stanford.
1:19:06PM   Q.  And when did you receive your Ph.D. from Stanford?
1:19:09PM   A.  In 1995.
1:19:12PM   Q.  How long have you been a professor?
1:19:14PM   A.  I've been a professor since then at Harvard, MIT, and
1:19:20PM   Stanford.
1:19:21PM   Q.  And how long have you now been at Stanford?
1:19:24PM   A.  Most recently, since 2013.
1:19:28PM   Q.  Have you won any awards, Professor Athey?
1:19:31PM   A.  I have.
1:19:32PM   Q.  Which awards have you won?
1:19:35PM   A.  I'm an elected member of the National Academy of Science,
1:19:38PM   and I've received the John Bates Clark Medal from the American
1:19:41PM   Economic Association.
1:19:44PM   Q.  And what is the John Bates award?
1:19:47PM   A.  It's for the economist -- American economist under the age
1:19:50PM   of 40 who has made the most significant contribution to
1:19:53PM   thought and knowledge.
1:19:56PM   Q.  Do you have a particular area of focus for your research
1:20:02PM   as a professor?
1:20:03PM   A.  Yes.  Generally, industrial economics, the economics of
1:20:06PM   digitization, the economics of platforms and marketplace
1:20:11PM   design, and the intersection of machine learning and
1:20:15PM   econometrics.
1:20:18PM   Q.  Have you taught any courses related to the economics of

platforms?

**A.** Yes. I've taught a variety of courses to master students and Ph.Ds and MBAs, including the economics of digitization, topics in digital business, marketplaces for goods and services, the economics of digital platform markets.

And, broadly, these classes study the forces that -- sources of profits for firms, the tactics that incumbents use, and strategies that entrants might use to come into these markets.

**Q.** Thank you.

Do you do any work outside of academia?

**A.** I do.

**Q.** And can you please summarize for the Court your nonacademic work experience.

**A.** Yes. I was consulting chief economist for Microsoft for several years.

After that, I've served on boards of directors for a variety of companies, including Expedia, which is a platform for travel services; Rover, which is a platform for pet-related services, such as dog sitting; Turo, which is a platform for peer-to-peer car sharing; and some others.

I also advise a couple of venture capital firms on their investments in technology-related businesses.

**Q.** Thank you.

I see on the slide at the very bottom, it says "California

1:21:57PM  Governor's Council of Economic Advisors.
1:22:01PM       What is that?
1:22:02PM  A.  That's a committee of academic economists who advise the
1:22:06PM  governor of California on policy issues.
1:22:10PM  Q.  Have you ever been retained as an economist by any
1:22:13PM  government agencies?
1:22:14PM  A.  Yes, I have, by the Department of Justice and the Federal
1:22:17PM  Trade Commission.
1:22:20PM  Q.  And have you ever presented to antitrust regulators in the
1:22:24PM  U.S. or outside of the U.S.?
1:22:26PM  A.  Yes, in many jurisdictions, including the United States,
1:22:29PM  Europe, Canada, and others.
1:22:33PM  Q.  Thank you.
1:22:34PM         **MR. EVEN:**  Your Honor, at this time, Epic Games
1:22:37PM  tenders Professor Susan Athey as an expert in industrial
1:22:37PM  organization, platform economics, and the economics of
1:22:43PM  technology.
1:22:45PM         **THE COURT:**  Any objection?
1:22:45PM         **MS. DUNN:**  No objection.
1:22:46PM         **THE COURT:**  She's admitted as such.
1:22:48PM         **MR. EVEN:**  Thank you, Your Honor.
1:22:49PM  BY MR. EVEN:
1:22:51PM  Q.  Professor Athey, what have you been asked to do in this
1:22:54PM  case?
1:22:55PM         **THE WITNESS:**  Can you go to the next slide, please.

```
2:06:49PM   it to me.
2:06:50PM              MR. EVEN:  Okay.
2:06:50PM              THE COURT:  Because you all know your case better
2:06:52PM   still, having lived with it for ten months, than I do.  If
2:06:57PM   there is not a factual basis, I will not consider it and
2:07:02PM   it's -- and it will ultimately be stricken.
2:07:05PM      But as I understood it, you all were still negotiating
2:07:10PM   over whether the factual basis is ever proved up in some of
2:07:15PM   these expert reports.  So I'm relying, in part, on you all.
2:07:22PM              MR. EVEN:  And I appreciate that, Your Honor.  I'm
2:07:24PM   just not sure what is the factual basis that we want now,
2:07:27PM   other than Professor Athey's general assessment as a professor
2:07:31PM   of technology and economics, as to the incentives and what
2:07:36PM   consumers may or may not do facing these incentives.  That's
2:07:42PM   clearly in the report, Your Honor.
2:07:45PM              THE COURT:  Then if it is in the report, you're all
2:07:47PM   good.
2:07:49PM              MR. EVEN:  Okay.
2:07:53PM              THE COURT:  And I should say and it's still subject
2:07:56PM   to your ongoing negotiations about the factual basis.
2:08:03PM              MR. EVEN:  I understand, Your Honor.  I just want to
2:08:06PM   make sure that I understand the objection, because my
2:08:09PM   understanding is that somebody who researches what consumers
2:08:12PM   and technology firms do for a living can come into court and
2:08:16PM   testify to that based on their expertise.
```

2:08:20PM    **THE COURT:** They can testify as to what they have
2:08:21PM disclosed.
2:08:24PM    **MR. EVEN:** Absolutely, Your Honor. I don't really
2:08:25PM think there is a disclosure issue here, but that's okay. I
2:08:30PM appreciate that. I'll move on.
2:08:33PM **BY MR. EVEN:**
2:08:34PM **Q.** Professor Athey, do you have any examples -- let me take a
2:08:41PM step back.
2:08:41PM    Obviously, we don't have a cross-platform app store right
2:08:47PM now, correct?
2:08:49PM **A.** Yes, correct.
2:08:50PM **Q.** And so have you seen any examples of a cross-platform
2:08:55PM store that sells something other than apps?
2:09:01PM **A.** Yes. So going back in history, when you used to watch
2:09:10PM movies and shows on the iPhone, you would purchase individual
2:09:14PM movies on iTunes, but you could watch those on -- in the iOS
2:09:20PM system.
2:09:20PM    Today, there are services like *Amazon Prime Video* or
2:09:28PM *Netflix*. *Amazon Prime Video* at the beginning offered the same
2:09:34PM kind of service to iTunes except you would buy movies or shows
2:09:40PM one at a time, but it was cross-platform and so people could
2:09:43PM buy on one device and move to another. And that type of --
2:09:46PM that type of cross-platform experience is also -- is an
2:09:54PM example.
2:09:55PM    Now, that's allowed, so *Netflix* and *Amazon Prime Video* are

```
                                                VOLUME 8

                                                Pages 1827 - 2098-A

                  UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

    Before The Honorable YVONNE GONZALEZ ROGERS, Judge

EPIC GAMES, INC.,              )
                               )
        Plaintiff,             )   NO. C-20-5640 YGR
                               )
   vs.                         )   Wednesday, May 12, 2021
                               )
APPLE, INC.,                   )   Oakland, California
                               )
        Defendant.             )   BENCH TRIAL
_____)
APPLE, INC.,                   )
                               )
        Counterclaimant,       )
   vs.                         )
                               )
EPIC GAMES, Inc.,              )
                               )
        Counter-Defendant.     )
_____)


             REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:         CRAVATH, SWAINE & MOORE, LLP
                       825 Eighth Avenue
                       New York, New York 10019
                  BY:  KATHERINE B. FORREST, ESQUIRE
                       GARY A. BORNSTEIN, ESQUIRE
                       YONATAN EVEN, ESQUIRE

                       (Appearances continued.)

Reported By:      Diane E. Skillman, CSR 4909, RPR, FCRR
                  Pamela Batalo-Hebel, CSR 3593, RMR, FCRR
                  Raynee Mercado, CSR 8258 RMR, CRR, FCRR

     TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION
```

```
 1   For Plaintiff:          CRAVATH, SWAINE & MOORE, LLP
                             825 Eighth Avenue
 2                           New York, New York 10019
                         BY: LAUREN A. MOSKOWITZ, ESQUIRE
 3                           JUSTIN C. CLARKE, ESQUIRE
                             W. WES EARNHARDT, ESQUIRE
 4                           BRENDAN BLAKE, ESQUIRE
                             JIN NIU, ESQUIRE
 5

 6   For Defendant:          GIBSON, DUNN & CRUTCHER
                             333 South Grand Avenue
 7                           Los Angeles, California 90071
                         BY: RICHARD J. DOREN, ESQUIRE
 8                           DAN SWANSON, ESQUIRE
                             CYNTHIA RICHMAN, ESQUIRE
 9                           RACHEL BRASS, ESQUIRE
                             ARPINE LAWYER, ESQUIRE
10

11                           GIBSON, DUNN & CRUTCHER, LLP
                             2001 Ross Avenue, Suite 1100
12                           Dallas, Texas 75201
                         BY: VERONICA S. MOYE, ESQUIRE
13
                             PAUL WEISS RIFKIND
14                           WHARTON & GARRISON LLP
                             2001 K STREET, NW
15                           Washington, DC 20006
                         BY: KAREN DUNN, ESQUIRE
16                           JESSICA E. PHILLIPS, ESQUIRE

17

18   For Defendant:          PAUL WEISS RIFKIND
                             WHARTON & GARRISON LLP
19                           943 Steiner Street
                             San Francisco, California 94117
20                       BY: ARPINE LAWYER, ESQUIRE

21

22

23

24

25
```

08:51:38  1          And so I had that relationship in 2008 and in one other
08:51:46  2     subsequent period.  I believe in 2011 or 2012.
08:51:57  3     Q.   And was your employment for Microsoft or your relationship
08:52:01  4     with Microsoft in 2008 and 2011 disclosed on your C.V. in this
08:52:06  5     case?
08:52:06  6     A.   Yes.
08:52:11  7     Q.   Are you presently engaged by Microsoft on any antitrust
08:52:14  8     matter?
08:52:14  9     A.   No.
08:52:18 10     Q.   Did you seek permission from Microsoft to serve as an
08:52:21 11     expert in this case?
08:52:21 12     A.   No.
08:52:26 13     Q.   Did anyone at Microsoft ask you to serve as an expert in
08:52:29 14     this case?
08:52:29 15     A.   No.
08:52:35 16     Q.   Did you get any direction from Microsoft about any of the
08:52:38 17     opinions you voiced in this case?
08:52:41 18     A.   No.
08:52:44 19     Q.   Has Microsoft been your primary consulting client in
08:52:47 20     recent years?
08:52:49 21     A.   No.
08:52:49 22     Q.   When was the last time that Microsoft was your primary
08:52:52 23     consulting client?
08:52:53 24     A.   It was scaling down during 2015, and so somewhere in that
08:53:03 25     range.

08:53:06  1   Q.   As far as you know, did your engagement by Epic have
08:53:09  2   anything to do with Microsoft?
08:53:10  3   A.   Not as far as I know.
08:53:23  4   Q.   Ms. Dunn asked you some questions yesterday about your
08:53:28  5   potential review of hypothetical confidential Apple documents
08:53:33  6   that hypothetically said how many people switched from Android
08:53:37  7   iOS or vice versa.
08:53:39  8        You remember that?
08:53:40  9   A.   Yes.
08:53:41 10   Q.   Is there public data concerning switching between iOS and
08:53:45 11   Android?
08:53:46 12   A.   Yes.
08:53:47 13   Q.   And as a tech economist, platform economist, do you
08:53:53 14   generally keep abreast of the data about switching between
08:53:56 15   those two platforms?
08:53:57 16   A.   Yes.
08:54:07 17             THE COURT:   Is all of that evidence attached to your
08:54:09 18   report?  That is, is it a part of the record in this case?
08:54:16 19             MR. EVEN:   I'm sorry.  Which data is that, Your
08:54:17 20   Honor?
08:54:19 21             THE COURT:   What you just asked her about, the data
08:54:21 22   about switching between the platforms.  Is that data that is
08:54:24 23   in the record in this case, Professor Athey?
08:54:27 24             THE WITNESS:   I -- I don't want to misspeak, but I --
08:54:38 25             THE COURT:   Well, and I just want to know what's in

```
08:54:40  1    the record.
08:54:45  2             THE WITNESS:  I believe that Dr. Evans has
08:54:49  3    information.
08:54:52  4             THE COURT:  Did you rely on Dr. Evans in establishing
08:54:55  5    your opinions?
08:54:55  6             THE WITNESS:  I relied on Dr. Evans for the market
08:55:01  7    definition and for the -- the switching costs and the -- the
08:55:10  8    market power in both the -- the foremarket and the
08:55:14  9    aftermarket.
08:55:15 10             THE COURT:  Did you review data and did you analyze
08:55:18 11    data?
08:55:18 12             THE WITNESS:  I did not do original analysis of data.
08:55:22 13             THE COURT:  And there's no data attached to your
08:55:23 14    report?
08:55:24 15             THE WITNESS:  No -- no original data, no.
08:55:28 16             THE COURT:  All right.  Thank you.
08:55:29 17    BY MR. EVEN:
08:55:46 18    Q.   You were also asked some questions about DX5612 and --
08:55:56 19    which talked about some bad news and good news about switching
08:56:02 20    between iOS and Android.
08:56:04 21         Do you remember that?
08:56:05 22    A.   Yes.
08:56:16 23    Q.   And in the good news, it said -- and I'm reading from
08:56:23 24    it -- "These days, most major productivity apps are readily
08:56:28 25    available on both platforms.  And once you are all set up with
```