**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| Epic Games, Inc. <br><br>               Plaintiff, <br><br> v. <br><br> Apple Inc. <br><br>               Defendant. | Case No. 4:20-cv-05640-YGR-TSH |
| Apple Inc. <br><br>               Counterclaimant, <br><br> v. <br><br> Epic Games, Inc., <br><br>               Counter-defendant. | Deposition Objections Chart and Rulings Thereon |

*Epic v. Apple*
Deposition Objections

1.      Epic's 21 Objections to Apple Designations

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| 1. | Eric Friedman (Head of Fraud Eng., Algorithms and Risk) | [58:10-58:13] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | Mr. Friedman lacks personal knowledge of the subject matter because he testified immediately afterwards that the subject matter is "outside of [his] purview":<br><br>"Q Okay. What about Apple? Does Apple perform any other function that prevents customers from obtaining malware?<br>A Yes.<br>Q What are the things that Apple does?<br>A I can't give you a detailed response to that.<br>Q Is that because it's outside your job description?<br>A It's outside of my purview, that's right." [58:10-18] | The fact that something is outside of a witness's "purview" does not mean that witness has no information about it. And indeed, Friedman did not testify that he had no information about this topic, only that he "can't give you a detailed response." Lack of detailed knowledge is not the same thing as lack of personal knowledge under Rule 602. | Overruled. Witness has sufficient personal knowledge for response to a general question. |
| 2. | C.K. Haun (Senior Director, Developer Technical Services) | [50:10-50:20] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | Mr. Haun acknowledges that he "may not have participated in all the discussions or activities" that he describes. He therefore lacks personal knowledge to testify to them. | Haun started working at Apple in 1990 (11:1-5) and can speak at a high level about the company's activities, as he is doing here. The fact that he "may not have participated in all of the discussions" does not alter that fact. He certainly has more than a sufficient basis for describing company | Overruled. Witness has sufficient personal knowledge for response to a general question. |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | | activity at this level of generality. | |
| 3. | C.K. Haun (Senior Director, Developer Technical Services) | [193:4-193:8] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | Mr. Haun acknowledges that his knowledge of this topic is "anecdotal"; that he "do[es] not know if it is accurate or not"; that he gained the knowledge from a "hallway conversation" ten years ago; and that he cannot remember who was involved in the conversation:<br><br>"Q. Do you know why they prohibit that use?<br>A. I have anecdotal knowledge that I do not know if it is accurate or not.<br>Q. What is that anecdotal knowledge?<br>A. That the IAP, as designed for digital goods and services, gives us a reasonably high level of confidence that that digital good or service has been delivered. Using IAP for a physical good, we have no such knowledge.<br>Q. How did you obtain that knowledge?<br>A. How did I obtain which knowledge?<br>Q. The anecdotal knowledge that you just explained.<br>A. I believe it was a hallway conversation in 2010.<br>Q. With whom? | Haun's testimony shows that he is knowledgeable about IAP, and certainly sufficiently knowledgeable to answer the question that is subject to the objection. He makes that knowledge clear in questions and answers on the page before:<br><br>Q. What is IAP?<br>A. IAP is the name we use for the API set and back end services which allow a developer to complete a transaction with a customer for digital goods or services provided inside the app -- his or her application.<br>Q. And you can't use IAP for physical products, right?<br>A. IAP was not designed for physical products and our guidelines and program license agreement prohibit that use.<br>[192:14-24]<br><br>Mr. Haun is plainly knowledgeable, and the fact that he has only "anecdotal" knowledge about a different and narrower question ("*why they prohibited that use*") does not change that fact. | Sustained. Witness testified that he only has "anecdotal knowledge that I do not know if it is accurate or not" gained from a long ago hallway conversation with someone he cannot recall. |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AFCC879C

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | A. I don't recall." [192:25-193:16] | | |
| 4. | C.K. Haun (Senior Director, Developer Technical Services) | [193:4-193:8] | Epic Objection – Rule 802 (Hearsay) | Same as above.  Mr. Haun is testifying concerning statements made in a hallway conversation ten years ago with an undisclosed counterpart. The testimony is being offered for the truth of the matter asserted—i.e., that "IAP... gives us a reasonably high level of confidence that that digital good or service has been delivered. Using IAP for a physical good, we have no such knowledge." | The "hallway conversation" that is the basis for this objection was about a different and narrower issue than the one that is the subject of the testimony objected to: "*why they prohibited that use.*"  The hearsay objection is, in fact, to different testimony than the cited testimony. | Sustained for same reason as #3. |
| 5. | Thomas Ko (Senior Director, Head of Online Business Strategy and Operations) | [35:13-36:1] | Epic Objection – Rule 802 (Hearsay) | The statements concern an email from a Samsung employee. Samsung is not a party to the litigation. The Samsung employee's statements are out-of- court statements that are inadmissible for the truth of the matter asserted. | The parties have agreed that document admissibility will be addressed in connection with the exhibit objection process. This testimony serves to authenticate and explain potentially vague language in the document, but it should not be excluded for that reason. | Overruled.  Offered not for the truth but for context/clarification that R/S reference in email sent to him refers to revenue split. |
| 6. | Haseeb Malik (Marketing Manager (former Epic)) | [189:14-190:3] | Epic Objection – Rule 802 (Hearsay) | This a quote from a text message chain between a former Epic employee and an Apple employee, and is therefore hearsay.<br><br>Mr. Malik departed Epic in May 2020. (Tr. 18:25-19:2 ("Q And when were you employed at Epic Games? A From around May of 2019 -- | The question was plainly not intended to recite a hearsay statement, but rather to learn from the witness his understanding of the behavior described in the testimony. The statement isn't sought to be admitted for the truth of the matter asserted, but rather as context and background for other | Sustained.  While Apple maintains not offered for the truth, it is unclear what other purpose it serves, if any.  At best, any limited probative value is substantially outweighed by the waste of time. |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|-----|--------------------|--------------------|----------------------------|---------------|----------------|------------------------|
| | | | | yeah, 2019 to around May of 2020.").) The quoted text comes from a chat between Mr. Malik and an Apple employee in July 2020. (Tr. 188:24- 189:1 ("Q And is this, in fact, a chat between you and Mr. Schmid from July 2020? A Yes.").) | descriptions in the deposition, including the immediately subsequent testimony. | |
| | | | | Rule 802(d)(2) applies only when the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed". Fed. R. Evid. 802(d)(2)(D); *see Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). A statement by a former employee is not a statement of a party opponent. *See, e.g.*, *Frederick v. City of Portland*, 98 F.3d 1345 (9th Cir. 1996) (unpublished); *Young v. James Green Management, Inc.*, 327 F.3d 616, 622 (7th Cir. 2003); *Blanchard v. Peoples Bank*, 844 F.2d 264, 267 & n.7 (5th Cir. 1988). | | |
| 7. | Phillip Shoemaker (Technology Director, App Review (former Apple)) | [516:6-516:17] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | It is axiomatic that witness speculation concerning another individual's knowledge, beliefs or state of mind is inadmissible under Fed. R. Evid. 602. *See, e.g.,* | Shoemaker testified that he worked with both Haun and Louv. He therefore has an established history of knowing and being familiar with their patterns, practices | Overruled.  Witness has sufficient personal knowledge of co-workers based on conversations and working with them |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | *Coleman v. Adams*, No. 1:06-CV-00836-AWI, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, 2013); *Peterson v. Gore*, No. 2:09-CV-3267 JAM CKD, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013). The testimony here is inadmissible because the witness speculates concerning other individuals' "views". | and habits. Shoemaker is testifying to procedure with which he is familiar, not to Haun's or Louv's individual, subjective viewpoints. | regarding their expressed views and practices. |
| 8. | Phillip Shoemaker (Technology Director, App Review (former Apple)) | [524:12-525:2] | Epic Objection – Rule 802 (Hearsay) | The testimony quotes an email from a third-party to Steve Jobs. That is an out-of-court statement that is being submitted for the truth of the matter asserted—specifically that "Apple's line of communication with developers [was] just open, even when they have been banned". | The statement is not being used to prove the truth of the matter asserted. Shoemaker is being asked, based on his experience and background, about Apple's communication practices with developers. Moreover, if Epic is offering this objection to the exhibit, not the testimony, that objection is more correctly dealt with outside of the designations objection process, as agreed to by the parties. | Overruled. Witness is testifying regarding his own understanding of Apple's practices from own experience. |
| 9. | Tim Sweeney (Chief Executive Officer) | [127:11-127:13] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | It is axiomatic that witness speculation concerning another individual's knowledge, beliefs or state of mind is inadmissible under Fed. R. Evid. 602. *See, e.g., Coleman v. Adams*, No. 1:06-CV-00836-AWI, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, 2013); *Peterson v.* | The question asks for Sweeney's own understanding of the situation, and not his speculation about Samsung's internal beliefs. Given Sweeney's personal involvement in meetings with Samsung representatives, and his | Overruled. Witness as CEO who was personally involved in business relationship and meetings with Samsung representatives has personal knowledge. |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AFCC879C

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | *Gore*, No. 2:09-CV-3267 JAM CKD, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013). The testimony here is inadmissible because the witness speculates concerning a third-party's motivations. | obvious significant business and professional interest in this "strategic partnership," this is well grounded in his own personal knowledge. | |
| 10. | Tim Sweeney (Chief Executive Officer) | [127:15-127:20] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | It is axiomatic that witness speculation concerning another individual's knowledge, beliefs or state of mind is inadmissible under Fed. R. Evid. 602. *See, e.g., Coleman v. Adams*, No. 1:06-CV-00836-AWI, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, 2013); *Peterson v. Gore*, No. 2:09-CV-3267 JAM CKD, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013). The testimony here is inadmissible because it calls for the the witness to speculate concerning a third-party's "view[s]". | This is the answer to the prior question, and the objection should be overruled for the same reasons. | Overruled for same reason as #9. |
| 11. | Daniel Vogel (Chief Operating Officer) | [253:10-253:19] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | It is axiomatic that witness speculation concerning another individual's knowledge, beliefs or state of mind is inadmissible under Fed. R. Evid. 602. *See, e.g., Coleman v. Adams*, No. 1:06-CV-00836-AWI, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, 2013); *Peterson v.* | The question does not call for speculation or otherwise invite testimony beyond Vogel's personal knowledge and experience. He was asked whether he himself "[has] an understanding" of why an Epic employee "might need to prove that email verification doesn't | Sustained.  Witness acknowledges that the author of the writing in question would have to answer the question regarding his own intention. |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AFCC879C

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | *Gore*, No. 2:09-CV-3267 JAM CKD, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013). The testimony here is inadmissible because the witness speculates concerning a third-party's motivations. | have much of an impact on onboarding and revenue." And his response does not offer testimony beyond the scope of his own personal experience, knowledge, and understanding, in light of his work relationship, as Epic COO, with the relevant Epic employee. | |
| 12. | Matthew Weissinger (Vice President, Marketing) | [272:7-272:10] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | Weissinger is an employee of Epic, not Samsung. He has no basis to speculate concerning what "fairness" principles "Samsung abide[s] by". | Epic designated Weissinger as its Rule 30(b)(6) witness for topic no. 42, which related exclusively to the Coalition for App Fairness (an organization founded by Epic in conjunction with this lawsuit), including its "membership" and "objectives": <br><br> "42. The COALITION, INCLUDING its formation, membership, and objectives, and the paid or unpaid participation of YOU or any of YOUR employees, officers, or directors in the COALITION." <br><br> And Weissinger testified throughout his deposition about the Coalition and his familiarity with its "principles," asserting that the Coalition "was formed around th[e] principles for app fairness." Tr. 269:25– | Overruled.  Witness has extensive personal knowledge of the principles for app fairness at issue, and is testifying as to his own belief as to other participant's knowledge, which he has adequate basis to form, whether he is ultimately proven correct or not. |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|-----|-----|-----|-----|-----|-----|-----|
| | | | | | 270:1. He continued: "That was what everybody signed up for. These were principles that everybody believed should be applied to all store ecosystems." Tr. 270:1–4. He further stated his view that "Apple and Google do not abide by the principles for app fairness *as formulated on the [Coalition's] website*, and so thus, they are naturally not a part of those principles and communication and results by nature of that fundamental difference." Tr. 272:1–5 (emphasis added).<br><br>The testimony, to which Epic objects, regarding whether "Samsung abide[s] by the principles for app fairness as formulated on the website" (Tr. 272:7-8) is plainly within the scope of the 30(b)(6) topics for which Mr. Weissinger was designated. And in any event, his testimony regarding both the Coalition and Samsung specifically makes clear that he "has personal knowledge of the matter." Fed. R. Evid. 602; *see also*, *e.g.*, Tr. 276:2–4 (testifying regarding the commission that Epic itself pays to Samsung for app- | |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | | related purchases). For example, Weissinger said it was his understanding "that in general, Samsung also charges a 30 percent commission for in-app purchases" (Tr. 269:2–5), just like Apple and Google. He is well-positioned to opine, based on his personal knowledge, about whether Samsung abides by the Coalition's principles. The fact that Weissinger is not employed by Samsung is wholly irrelevant. | |
| 13. | Matthew Weissinger (Vice President, Marketing) | [276:5-276:11] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | It is axiomatic that witness speculation concerning another individual's knowledge, beliefs or state of mind is inadmissible under Fed. R. Evid. 602. *See, e.g., Coleman v. Adams*, No. 1:06-CV-00836-AWI, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, 2013); *Peterson v. Gore*, No. 2:09-CV-3267 JAM CKD, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013). The testimony here is inadmissible because the witness speculates concerning a third-party's knowledge.<br><br>That Mr. Weissinger was designated pursuant to Fed. | Weissinger was designated as the Rule 30(b)(6) witness regarding the Coalition for App Fairness, and testified regarding his close involvement with Mr. Kasselman and the Messina Group in the Coalition's formation. The testimony regarding such interactions provides a sufficient basis for Weissinger's informed judgment as to what he "thinks" is the case with respect to the questions posed. This contrasts with the authorities that Epic cites, in which a declarant definitively testified as to what another individual "had personal knowledge" of despite the declarant's failure | Overruled for same reasons as #12. |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|-----|--------------------|--------------------|-----------------------------|---------------|----------------|------------------------|
| | | | | R. Civ. P. 30(b)(6) to testify on behalf of Epic does not change the analysis because the subject matter of the testimony is outside Epic's knowledge as well. | to "demonstrate how [the declarant] has personal knowledge and is competent to testify about" such issues. *Coleman v. Adams*, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, 2013); *Peterson v. Gore*, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013) (similar). | |
| 14. | Matthew Weissinger (Vice President, Marketing) | [276:13-276:16] | Epic Objection - Rule 602 (Lack of Personal Knowledge) | It is axiomatic that witness speculation concerning another individual's knowledge, beliefs or state of mind is inadmissible under Fed. R. Evid. 602. *See, e.g., Coleman v. Adams*, No. 1:06-CV-00836-AWI, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, it in 2013); *Peterson v. Gore*, No. 2:09-CV-3267 JAM CKD, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013). The testimony here is inadmissible because the witness speculates concerning a third-party's knowledge.

That Mr. Weissinger was designated pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of Epic does not change the analysis because the subject matter of the testimony is outside Epic's knowledge as well. | When asked whether Mr. Kasselman, the Messina Group, and/or other members of the Coalition for App Fairness are aware that "Epic does not pay a 30 percent commission to Samsung" (Tr. 276:2–3), Weissinger repeatedly offered testimony regarding what he "think[s]" about that subject. Tr. 276:10–11 ("I do not think so."), 15–16 (same), 20–21 (same). These judgments are well- grounded in his own personal knowledge.

The same reasoning applies to objections 13, 14, and 15. | Overruled for same reasons as #12. |
| 15. | Matthew Weissinger (Vice President, Marketing) | [276:18-276:21] | Epic Objection – Rule 602 (Lack of Personal Knowledge) | It is axiomatic that witness speculation concerning another individual's knowledge, beliefs or state of | | Overruled for same reason as # 12. |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | mind is inadmissible under Fed. R. Evid. 602. *See, e.g., Coleman v. Adams*, No. 1:06-CV-00836-AWI, 2013 WL 495285, at *7 (E.D. Cal. Feb. 7, 2013); *Peterson v. Gore*, No. 2:09-CV-3267 JAM CKD, 2013 WL 5230245, at *4 (E.D. Cal. Sept. 16, 2013). The testimony here is inadmissible because the witness speculates concerning a third-party's knowledge.<br><br>That Mr. Weissinger was designated pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of Epic does not change the analysis because the subject matter of the testimony is outside Epic's knowledge as well. | | |
| 16. | Haseeb Malik (Marketing Manager (former Epic)) | [190:4-190:7] | Epic Objection – Rule 802 (Hearsay) | This a quote from a text message chain between a former Epic employee and an Apple employee, and is therefore hearsay.<br><br>Malik departed Epic in May 2020. (Tr. 18:25-19:2 ("Q And when were you employed at Epic Games? A From around May of 2019 -- yeah, 2019 to around May of 2020.").) The quoted text comes from a chat between | This appears to be the same question that is part of the broader testimony objected to in number 6, above. This objection should be overruled for the same reasons (which are quoted here for your convenience):<br><br>The question was plainly not intended to recite a hearsay statement, but rather to learn from the witness his understanding of behavior | Sustained for same reasons as #6. |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | Malik and an Apple employee in July 2020. (Tr. 188:24- 189:1 ("Q And is this, in fact, a chat between you and Mr. Schmid from July 2020? A Yes.").)<br><br>Rule 802(d)(2) applies only when the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed". Fed. R. Evid. 802(d)(2)(D); *see Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). A statement by a former employee is not a statement of a party opponent. *See, e.g., Frederick v. City of Portland*, 98 F.3d 1345 (9th Cir. 1996) (unpublished); *Young v. James Green Management, Inc.*, 327 F.3d 616, 622 (7th Cir. 2003); *Blanchard v. Peoples Bank*, 844 F.2d 264, 267 & n.7 (5th Cir. 1988). | described in the testimony. The statement isn't sought to be admitted for the truth of the matter asserted, but rather as context and background for other descriptions in the deposition, including the immediately subsequent testimony. | |
| 17. | Craig Federighi (Senior Vice President, Software Engineering) | [82:14-83:7] | Epic Objection – Non-Responsive | The question asked was "Q And you agree with me that the level of security of macOS is a level of security that the market finds satisfactory?" (Tr. 82:4-6.) The question did not concern iOS, security on iOS or whether mechanisms that | Epic solicited testimony in response to an exhibit in which Apple noted in an advertisement how its "security controls provide a stable, secure platform for apps, enabling thousands of developers to deliver hundreds of thousands of | Overruled as not offered for the truth but for context. |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AF6C879C

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | work on macOS would function on iOS. Therefore, the portion of the answer discussing these topics is non- responsive. | apps for iOS, iPadOS, and macOS - all without impacting system integrity." Federighi Dep. Tr. at 81:1-7. After Epic read the advertisement, it asked "And when this speaks to Apple devices, that includes Mac computers; correct?" "This" referenced the Apple advertisement text for iOS, iPadOS, and macOS. Epic then followed with the question and response that is the subject of the objection. Epic's question necessarily required Federighi to provide the context necessary to understand his response in context with the other operating systems that were the subject of the advertisement and line of questioning. For this reason, Federighi could not respond to the level of security without providing the context for the other operating systems, including iOS, that were a part of the advertisement. | |
| 18. | Carson Oliver (Director of Business Management, App Store) | [358:18-359:3] | Epic Objection – Non-Responsive | The question posed concerned punitive measures taken by Apple against Netflix *aside* from ceasing to feature the Netflix app. The witness's response does not address this issue. Instead, | Oliver made clear that he was providing context for the question, and specifically stated in the next question and answer that "to clarify my prior answer, I was trying to respond to the specific – | Sustained as non-responsive. |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AF66879C

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | the response discusses the user experience created when a user is unable to subscribe through an app, and suggests that that user experience was related to Apple's decision no longer to feature the app. | your question about what a measure was or a punitive measure was" and then goes on "to answer the second part of your question." (359:10-14.) The witness was obviously trying to answer the question clearly and with full context. | |
| 19. | Phillip Shoemaker (Technology Director, App Review (former Apple)) | [178:18-179:4] | Epic Objection – Non-Responsive | The question asked for a definition of the term "embedded games". The objectionable portion of the witness's response does not provide a definition of "embedded games". Instead, it explains the rationale for rejecting a particular app and explains App Review guidelines prohibiting the offering of stores within a store. | Shoemaker's testimony answers the question posed, which was "What do you mean by 'embedded games.'" Shoemaker answered the question by providing examples and explaining how these games fit into the larger system. Providing this context and example is certainly responsive to the question asked. | Overruled as to first portion of answer ending with "So that was a store within a store" which was responsive to question re meaning of "embedded games." Sustained as to the remaining three sentences which address the different topic of guidelines. |
| 20. | Tim Sweeney (Chief Executive Officer) | [207:17-208:17]<br><br>[208:22-209:5] | Epic Objection – Mischaracterizes Testimony | The question contains a four-paragraph-long preamble. It concludes with a question that is jumbled and confusing: "...you do not know whether that is greater than the 5 percent that runs between the 7 and 12 -- 7 percent taken up by payment processing and bandwidth and customer support and the 12 percent fee, correct?" | Sweeney asked Apple counsel to clarify what he meant by variable costs, and counsel listed examples of what Sweeney himself had previously testified were costs, including: technical support (196:9- 12), employees dedicated to the Epic Games Store (198:19-23), development efforts contributing to the Epic Games Store (199:9-15), intellectual property and licensing (199:24-200:21), marketing | Sustained as to objection to lengthy, testimony-like 3 paragraph introduction to actual question, which purported to summarize prior testimony but did not do so completely; Overruled as to the actual question "So when you take all of that different support that is part and parcel of running the Epic Games Store, you do not know whether that is greater |

| No. | Witness Name/Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's ruling |
|---|---|---|---|---|---|---|
| | | | | campaigns (200:22-201:1), and partnering with companies on game content (200:2-7). Counsel's summary is an accurate delineation of what the witness himself described as costs of the Epic Games Store. The witness's responses serve as a basis for counsel's related question asking the witness to estimate the amount of the costs witness had just listed. | | than the 5 percent that runs between the 7 and 12 -- 7 percent taken up by payment processing and bandwidth and customer support and the 12 percent fee, correct?" and the witness's answer. |
| 21. | Daniel Vogel (Chief Operating Officer) | [97:1-97:11] | Epic Objection – Assumes Facts | The question assumes a fact—that Epic sold V-Bucks on its website in January 2020—that is not in evidence and incorrect. | Apple withdraws its designation of this testimony. | Moot, as Apple withdrew this designation |

2.    Apple's 22 Objections to Epic Designations

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| 1. | Matt Fischer (Apple, Vice President, App Store) | 41:16-25 | Apple – FRE 802 – Hearsay | Mr. Fischer's testimony is not hearsay, but a party-opponent  admission under FRE 801(d)(2)(C). Moreover, in the context of his testimony, Mr. Fischer likely acquired this knowledge—that a person cannot delete the App Store from an iPhone—from an Apple employee, whose statement is also a party-opponent admission under FRE 801(d)(2)(C). Finally, "[o]ut-of- court statements introduced to show the effect on the listener are not hearsay". *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991). Here, the statement shows that Mr. Fischer, the Vice President of the App Store, is aware that iOS users cannot delete the App Store from their iPhones. | The question asks whether Fischer has "heard" that one cannot delete the App Store from the iPhone in order to prove that one cannot do so – classic hearsay. It is not an effort to "show the effect on the listener" of the hearsay statement, but rather an attempt to get Fischer to repeat the hearsay after he stated that he has not tried to delete the app from the iPhone himself. No hearsay exceptions apply. | Overruled.  Goes to state of mind of witness, as to general awareness of topic, and consistent with his testimony at 42:1-6 as to his belief that the App Store remains on iPhones during their (virtual) life cycle. |
| 2. | Matt Fischer (Apple, Vice President, App Store) | 85:5-16 | Apple – FRE 602 - Personal Knowledge | Under FRE 602, "[e]vidence to prove personal knowledge may consist of the witness's own testimony". Fed. R. Evid. 602. Here, Mr. Fischer has testified that he "remember[s] being in some conversations with Netflix" about "their desire to remove IAP". (Fischer Tr. 84:12- | The questions ask Fischer to describe Netflix's opinion regarding growth of its business without IAP and/or Netflix's opinion that Apple's commission was too high. Fischer could only speak to Netflix's business judgments based on the statements of others, and any | Overruled.  The witness as VP of the App Store has personal conversations with Netflix about their concern about the commission charged and testifies as to his own beliefs regarding Netflix's views, for |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | 84:17). These conversations provide Mr. Fischer with the necessary foundation to testify as what he thought was Netflix's reason for removing IAP. *See SM 10000 Property, LLC v. Allianz Global Risks U.S. Ins. Co.*, 2021 WL 1299071, at *10 (N.D. Cal. April 7, 2021) (holding that the witness's communications with third- party were sufficient to give him personal knowledge regarding the third-party's understanding of a contract); *Sherwood v. Wavecrest Corp.*, 2005 WL 8162631, at *4 n.4 (N.D. Cal. Nov. 11, 2005) ("As a participant in the conversation at issue, [the witness] has personal knowledge of the conversation about which he testified"). <br><br> Moreover, the Netflix complaints are not offered for any hearsay purpose; in an antitrust case, the state of mind of consumers in the relevant markets is admissible under FRE 803(3) to show the anti-competitive effects of a monopolist's conduct. *Hydrolevel Corp. v. Am. Soc. of Mech.* | statements he relays from them are hearsay, not personal knowledge. | which he has personal knowledge. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | *Engineers, Inc.*, 635 F.2d 118 (2d Cir. 1980), aff'd, 456 U.S. 556, 102 S. Ct. 1935, 72 L. Ed. 2d 330 (1982) (holding that plaintiff was permitted to introduce statements by its customers attributing their decisions not to do business with the plaintiff to the defendant's conduct). | | |
| 3. | Andrew Grant (Epic Engineering Fellow) | 36:7-37:6 | Apple – FRE 602 - Personal Knowledge; Speculation; Lacks Foundation | Under 9th Circuit precedent, "[p]ersonal knowledge includes opinions and inferences grounded in observations and experience". *United States v. Whittemore*, 776 F.3d 1074, 1083 (9th Cir. 2015) (citing *Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009)). Here, Mr. Grant is being asked to interpret his own tweet (Exhibit 45), which shows a screenshot of Mr. Grant's iPhone displaying an unsolicited notification from an app. (Grant Tr. 35:5-35:24). Mr. Grant is not speculating about Apple's company-wide practice; instead, he is providing his personal opinion based on his own experience as an iPhone user. Moreover, Mr. Grant has "developed | Without describing any factual basis, or reference to his own personal knowledge or experience, Grant speculates about Apple's company- wide practices, including that Apple's "rule enforcement is generally lax." Indeed, while Epic claims that "Mr. Grant is not speculating about Apple's company- wide practice," that assertion cannot be squared with the very testimony at issue. *E.g.*, 36:14-16 ("It is one of those guidelines that has been inconsistently, if ever, enforced against some of the bigger companies. "); 36:19-20 ("[B]ecause, you know, the rule enforcement is generally lax."); 37:2-4 ("So I see that as -- not only was it a -- 3 a slippery slope, but, you know, Apple have gone | Sustained. Witness goes way beyond his own personal knowledge to engage in much more general conclusions. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|-----|----------------------|----------------------|------------------------------|---------------|----------------|------------------------|
|     |                      |                      |                              | software for mobile platforms in one form or another since probably 2008". (Grant Tr. 19:10-19:12). Through his long career as an app developer, Grant has sufficient foundation grounded in observation and experience to provide an opinion regarding the enforcement of certain App Review rules. | 4 skidding down that slope themselves. "). Grant may have personal experiences, but they are not a proper basis for his broad-ranging, company-wide statements. |  |
| 4. | Eric Gray (Apple, Director, Commerce & Payments) | 76:23-77:24 | Apple – FRE 602 – Personal Knowledge; Lack of foundation; speculation | Apple's objection mischaracterizes Mr. Gray's foundation to testify concerning the presentation and the topics covered in it. Mr. Gray was not asked about the author's intent or the document's meaning—only whether he personally agreed with statements contained therein. Mr. Gray had adequate foundation to provide such testimony.<br><br>Based on the cover email, the presentation was transmitted by one Apple employee, David Ralston, directly to Mr. Gray, copying Mr. Gray's boss, Matt Railo. (PX523). When Mr. Gray was asked whether he "play[ed] a role in preparing the attached deck", Mr. Gray answered "Yes". (Gray Tr. 61:24-62:1). Mr. Gray | The designated testimony relates to notes in a presentation that Mr. Gray testified he did not author and did not recall discussing. There is no foundation for what the author of the notes intended by writing them, and Mr. Gray's testimony regarding their meaning is purely speculative. | Overruled.  The witness has personal knowledge and foundation, for the reasons stated by Epic, and can and does testify as to his own understanding. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | clearly has foundation to discuss the subject matter of his testimony, namely redundancies and inefficiencies in Apple's payment processing systems. He testified that he has information about "the series of steps by which [Apple] accepts and processes customer payments" (Gray Tr. 50:19-51:1) and Apple has identified Mr. Gray as a trial witness who will testify concerning "design and operation of Apple's payment processing policies and practices". | | |
| 5. | Eric Gray (Apple, Director, Commerce & Payments) | 128:8-13, 128:15-25 | Apple – FRE 802 - Hearsay | Mr. Gray's testimony that he has personally heard complaints from developers concerning Apple's refund process is not hearsay, but an admissible statement of a party- opponent.<br><br>Nor are the developers' complaints themselves offered for any hearsay purpose; in an antitrust case, the state of mind of participants in the relevant markets is admissible under FRE 803(3) to show the anti-competitive effects of a monopolist's conduct. Here, the developers' complaints are admissible to show, | The communications of unnamed developers who purportedly expressed dissatisfaction with Apple's refund process are out of court statements being offered for the truth of the matters asserted, and no exception to the rule against hearsay applies. Epic's claim that these third party statements are, somehow, Apple's statements, is simply not consistent with reality. And even further afield are Epic's claims that some vague third party complaints about "sometimes" wanting the ability to do something differently somehow "show | Overruled.  Admissible both for witness's awareness of complaints by developers, i.e., his state of mind, and also as evidence of the impact of allegedly anti-competitive conduct, see, e.g., Hydrolevel Corp. v Am. Soc. Of Mech. Engineers, Inc., 635 F.2d 118 (2d Cir. 190), aff'd, 436 U.S. 556 (1982). |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | among other things, that app developers do not choose to use Apple's in-app purchase system because it offers superior value or service, but because they are forced to because of Apple's anti-competitive tie. *Hydrolevel Corp. v. Am. Soc. of Mech. Engineers, Inc.*, 635 F.2d 118 (2d Cir. 1980), aff'd, 456 U.S. 556, 102 S. Ct. 1935, 72 L. Ed. 2d 330 (1982) (holding that plaintiff was permitted to introduce statements by its customers attributing their decisions not to do business with the plaintiff to the defendant's conduct). | the anti-competitive effects of a monopolist's conduct." Epic's arguments are not sufficiently tethered to the actual language of the transcript. | |
| 6. | Eric Gray (Apple, Director, Commerce & Payments) | 150:15-18; 150:20-23; 150:25-151:5 | Apple – FRE 602 - Personal knowledge; FRE 701 - Calls for expert opinion | Apple mischaracterizes the record concerning Mr. Gray's foundation. When asked to describe the referenced "pilots", Mr. Gray testified at length concerning both the manner in which they were conducted by Apple and the findings that resulted from them. (Gray Tr. 151:9-25). This is more than sufficient foundation for the designated testimony. Further, even if Mr. Gray's testimony were considered an "opinion" rather than factual, it is admissible as the opinion of a lay witness | Mr. Gray testified that he did not have personal knowledge regarding any assessment of the relationship between the rate of refund fraud and developers' ability to process refunds (if any). Moreover, determining whether any such relationship existed is improper as it would be the subject of expert opinion, and Mr. Gray is a lay witness. And if Mr. Gray is not knowledgeable about this issue, then he cannot offer opinion testimony about it any more than he can offer factual testimony. | Overruled.  Witness has personal knowledge of pilots and results, and even if viewed as opinion, within his competence as lay witness. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | because it is rationally based on Apple's conduct of the pilots described in the testimony. Fed. R. Evid. 701. | | |
| 7. | Eric Gray (Apple, Director, Commerce & Payments) | 69:20-70:3, 70:10-15 | Apple – FRE 402 - Relevance | Contrary to Apple's suggestion, neither Magistrate Judge Hixson nor Judge Gonzalez Rogers has held that Apple's foreign conduct is irrelevant in this case, nor that the FTAIA or other law exempts such conduct from scrutiny. To the contrary, Judge Hixson's Discovery Order expressly stated "the Court cannot endorse a simplistic holding that documents about foreign conduct are always relevant or never relevant because neither proposition is true". Order at 2.<br><br>Judge Hixson's Discovery Order concluded that Epic had not made a sufficient showing that certain foreign documents were relevant to Epic's claims such that Apple should be put to the burden of collecting and producing them. There is no burden here because the testimony at issue already exists. Epic alleges worldwide antitrust markets; the parties' disputes about the geographic scope of the | Magistrate Judge Hixson denied Epic's motion to compel discovery "concerning non-U.S. activities" because Epic failed to explain how foreign activities "are relevant to the U.S. and California claims in this case." Dkt. 226 (12/31/20 Discovery Order) at 5. The designated testimony regarding Deposition Exhibit No. 523 solely pertains to Apple's payment mechanisms outside the United States— specifically, that Apple's retail points of sale do not use a particular system in the United States and only uses it in retail stores in China, so far as Mr. Gray was aware. Accordingly, it is not relevant to any claim or defense in this litigation. *See*, *U.S. v. Hui Hsuing*, 778 F.3d 738, 751 (9th Cir. 2015) ("[T]he Foreign Trade Antitrust Improvements Act generally removes from antitrust liability commercial activities abroad, subject to a few exceptions"). And Epic's effort to draw some specific | Overruled.  Whether or not the trial judge decides that the worldwide market is relevant, as Epic apparently contends, regardless of there apparently being no liability for the extraterritorial conduct that Epic points to, the testimony is relevant to Apple's contention that its IAP payment processing product is integrated with the App Store in the U.S., because it tends to show that the IAP is capable of also being used in Apple's physical retail stores, as is done in China. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | antitrust markets and the FTAIA are for the Court to decide on the merits.

In any event, this testimony is directly relevant to rebut Apple's repeated claim that its IAP payment processing product is integrated with the App Store. The designated testimony shows that the same payment processing systems utilized by IAP are also utilized by Apple's *physical retail* stores, not just the App Store. That this happens outside of the United States does not undermine the relevance of this information.

Here, the Court, as finder of fact, will make the ultimate determination concerning the scope of the geographic market. The Court should be permitted to hear this testimony so that it can arrive at its own determination as to what weight to afford the evidence. | factual relevance from this testimony falls flat, as it is not clear at all from Epic's description what the relevance of the testimony to the App Store is. | |
| 8. | Eric Gray (Apple, Director, Commerce & Payments) | 73:22-74:2 | Apple – FRE 402 - Relevance | The designated testimony concerns a graphic representation of Apple's payment processing systems in the U.S. and outside the U.S. Apple does not explain | Magistrate Judge Hixson denied Epic's motion to compel discovery "concerning non-U.S. activities" because Epic failed to explain how foreign | Overruled for the same reasons as # 7. |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AF6G879C

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | how the designated testimony pertains to the "retail stores in China" objection it makes to other designated testimony, and it should be overruled on that basis alone.<br><br>In any event, Apple's objection should be overruled for the same reasons that its other related objection should be. | activities "are relevant to the U.S. and California claims in this case." Dkt. 226 (12/31/20 Discovery Order) at 5. The designated testimony regarding Depo Exhibit No. 523 refers to Mr. Gray's prior testimony regarding Apple's payment mechanisms outside the United States—specifically, that Apple's retail points of sale do not use a particular system in the United States and only uses it in retail stores in China, so far as Mr. Gray was aware. Accordingly, it is not relevant to any claim or defense in this litigation. | |
| 9. | Eric Gray (Apple, Director, Commerce & Payments) | 208:6-14 | Apple – FRE 402 - Relevance | Contrary to Apple's suggestion, neither Magistrate Judge Hixson nor Judge Gonzalez Rogers has held that Apple's foreign conduct is irrelevant in this case, nor that the FTAIA or other law exempts such conduct from scrutiny. To the contrary, Judge Hixson's Discovery Order expressly stated "the Court cannot endorse a simplistic holding that documents about foreign conduct are always relevant or never relevant because neither proposition is true". Order at 2. | Magistrate Judge Hixson denied Epic's motion to compel discovery "concerning non-U.S. activities" because Epic failed to explain how foreign activities "are relevant to the U.S. and California claims in this case." Dkt. 226 (12/31/20 Discovery Order) at 5. The designated testimony solely pertains to a hypothetical regarding the price of an app in India in 2009. Accordingly, it is not relevant to any claim or defense in this litigation. And Epic's effort to draw specific | Sustained insofar as this practice in India does not shed any additional light on the similar practice in the U.S. (unlike, e.g., #7); but Overruled insofar as the trial judge has not yet decided whether the worldwide market is relevant, as Epic apparently contends and Apple disputes. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|-----|---------------------|----------------------|----------------------------|---------------|----------------|------------------------|
| | | | | Judge Hixson's Discovery Order concluded that Epic had not made a sufficient showing that certain foreign documents were relevant to Epic's claims such that Apple should be put to the burden of collecting and producing them. There is no burden here because the testimony at issue already exists. Epic alleges worldwide markets; the parties' disputes about the geographic scope of the antitrust markets and the FTAIA are for the Court to decide on the merits.<br><br>In any event, the testimony is relevant because it illustrates one of the anti-competitive effects of Apple's monopolizing conduct, namely that developers selling apps or other digital content are forced to choose among worldwide "price tiers" arbitrarily determined by Apple (*e.g.*, $.99, 1.99, 2.99 and equivalents in foreign currencies), which raises prices and eliminates innovation in pricing practices in the U.S. and around the globe. Indeed, Apple's requirement that | factual relevance to this testimony is again inadequate—indeed, the only effort it makes to demonstrate some effect occurred in 2009 according to this testimony. | |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | foreign consumers pay equivalent prices as US consumers pay itself shows that the markets are global in scope.<br><br>Here, the Court, as finder of fact, will make the ultimate determination concerning the scope of the geographic market.  The Court should be permitted to hear this testimony so that it can arrive at its own determination as to what weight to afford the evidence. | | |
| 10. | Eric Gray (Apple, Director, Commerce & Payments) | 301:7-16, 301:21-24, 306:25-307:16, 308:10-309:4, 309:6-23 | Apple – FRE 402 - Relevance | Contrary to Apple's suggestion, neither Magistrate Judge Hixson nor Judge Gonzalez Rogers has held that Apple's foreign conduct is irrelevant in this case, nor that the FTAIA or other law exempts such conduct from scrutiny. To the contrary, Judge Hixson's Discovery Order expressly stated "the Court cannot endorse a simplistic holding that documents about foreign conduct are always relevant or never relevant because neither proposition is true". Order at 2.<br><br>Judge Hixson's Discovery Order concluded that Epic | Magistrate Judge Hixson denied Epic's motion to compel discovery "concerning non-U.S. activities" because Epic failed to explain how foreign activities "are relevant to the U.S. and California claims in this case." Dkt. 226 (12/31/20 Discovery Order) at 5. The designated testimony regarding Deposition Exhibit No. 544 and subsequent testimony discusses pricing changes for apps outside the United States. As Mr. Gray later explained, this document and others like it are "related to each specific circumstance" (Gray Dep. 347:18- 348:1), | Overruled.  Whether or not the trial judge decides that the worldwide market is relevant, the testimony is relevant to Epic's antitrust theory as it explains that price inelasticity has resulted from the lack of consumers' knowledge about the usual price of apps due to the variety in the App Store and the usual practice of making only one time purchases – an explanation that would appear to also apply to customers in the United States, absent some effective rebuttal. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | had not made a sufficient showing that certain foreign documents were relevant to Epic's claims such that Apple should be put to the burden of collecting and producing them. There is no burden here because the testimony at issue already exists. Epic alleges worldwide markets; the parties' disputes about the geographic scope of the antitrust markets and the FTAIA are for the Court to decide on the merits.<br><br>In any event, the designated testimony is highly relevant to Epic's antitrust claims. The testimony discusses Apple's findings when it has conducted "foreign equalization" exercises. Apple requires that developers sell apps and digital content in foreign currencies that it deems equivalent to the U.S. prices charged for such content. When the value of foreign currencies change relative to the U.S. dollar, Apple must raise or lower the foreign prices, as much as 11%. Apple found that in the face of such changes, demand for apps and in-app content was | and Epic therefore should not rely on such testimony to prove any claim related to domestic activities. Accordingly, it is not relevant to any claim or defense in this litigation. And Epic's explanation of the supposed relevance of this specific information again takes the testimony far beyond what it actually says, and takes the specific circumstance described well beyond what they actually say. | Apple's bare citation to the witness in response to brief questioning later by his own counsel summarily invoking "specific circumstances" without pointing to any does not negate the relevance. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | "*highly inelastic*". (Gray Tr. 307:3). Apple itself attributed this to the fact that consumers lack actionable knowledge about the price of apps and content. Evidence of Apple's power to increase prices directly supports Epic's claim that Apple has monopoly power in well-defined markets for iOS apps and in- app payments. Apple alludes to testimony that purportedly shows that this dynamic occurs in "specific circumstance[s]" and from there hypothesizes that such dynamic is limited to non-U.S. markets. This inappropriately asks for fact finding before the trial has occurred. Apple's preferred inference from the evidence is not deemed conclusive and should not bar Epic from making its own argument. But because the evidence "has any tendency to make a fact more probable than it would be without the evidence", it meets the threshold test of relevancy. Fed. R. Evid. 401.<br><br>Here, the Court, as finder of fact, will make the ultimate determination concerning the scope of the geographic | | |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | market. The Court should be permitted to hear this testimony so that it can arrive at its own determination as to what weight to afford the evidence. | | |
| 11. | Eric Gray (Apple, Director, Commerce & Payments) | 310:2-5 | Apple – FRE 402 - Relevance | Contrary to Apple's suggestion, neither Magistrate Judge Hixson nor Judge Gonzalez Rogers has held that Apple's foreign conduct is irrelevant in this case, nor that the FTAIA or other law exempts such conduct from scrutiny. To the contrary, Judge Hixson's Discovery Order expressly stated "the Court cannot endorse a simplistic holding that documents about foreign conduct are always relevant or never relevant because neither proposition is true". Order at 2.\n\nJudge Hixson's Discovery Order concluded that Epic had not made a sufficient showing that certain foreign documents were relevant to Epic's claims such that Apple should be put to the burden of collecting and producing them. There is no burden here because the testimony at issue already exists. Epic | Magistrate Judge Hixson denied Epic's motion to compel discovery "concerning non-U.S. activities" because Epic failed to explain how foreign activities "are relevant to the U.S. and California claims in this case." Dkt. 226 (12/31/20 Discovery Order) at 5. The designated testimony regarding Deposition Exhibit No. 545 and subsequent testimony discusses pricing changes for apps outside the United States. As Mr. Gray later explained, this document and others like it are "related to each specific circumstance" (Gray Dep. 347:18- 348:1), and Epic therefore should not rely on such testimony to prove any claim related to domestic activities. Accordingly, it is not relevant to any claim or defense in this litigation. Once again, Epic is trying to stretch assertions in one specific and very different | Overruled for the same reasons as # 10. Related to ##11-14 regarding price inelasticity |
| 12. | Eric Gray (Apple, Director, Commerce & Payments) | 311:16-21 | Apple – FRE 402 - Relevance | | | Overruled for the same reasons as #10. |
| 13. | Eric Gray (Apple, Director, Commerce & Payments) | 313:8-24, 314:1-2 | Apple – FRE 402 - Relevance | | | Overruled for the same reasons as #10. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | alleges worldwide markets; the parties' disputes about the geographic scope of the | context into one that simply does not bear on the matters at issue in this case. | |
| 14. | Eric Gray (Apple, Director, Commerce & Payments) | 314:6-315:18, 315:20-21 | Apple – FRE 402 - Relevance | antitrust markets and the FTAIA are for the Court to decide on the merits.<br><br>In any event, the designated testimony is highly relevant to Epic's antitrust claims. The testimony discusses Apple's findings when it has conducted "foreign equalization" exercises. Apple requires that developers sell apps and digital content in foreign currencies that it deems equivalent to the U.S. prices charged for such content. When the value of foreign currencies change relative to the U.S. dollar, Apple must raise or lower the foreign prices, as much as 11%. Apple found that in the face of such changes, demand for apps and in-app content was "*highly inelastic*". (Gray Tr. 307:3). Apple itself attributed this to the fact that consumers lack actionable knowledge about the price of apps and content. Evidence of Apple's power to increase prices directly supports Epic's claim that Apple has monopoly power in well- | | Overruled for the same reasons as #10. |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AF6C879C

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | defined markets for iOS apps and in-app payments. Apple alludes to testimony that purportedly shows that this dynamic occurs in "specific circumstance[s]" and from there hypothesizes that such dynamic is limited to non-U.S. markets. This inappropriately asks for fact finding before the trial has occurred. Apple's preferred inference from the evidence is not deemed conclusive and should not bar Epic from making its own argument. But because the evidence "has any tendency to make a fact more probable than it would be without the evidence", it meets the threshold test of relevancy. Fed. R. Evid. 401.<br><br>Here, the Court, as finder of fact, will make the ultimate determination concerning the scope of the geographic market.  The Court should be permitted to hear this testimony so that it can arrive at its own determination as to what weight to afford the evidence. | | |
| 15. | Ron Okamoto (former Vice President, | 330:23-331:8, 331:10-11: 23 | Apple – FRE 402 - Relevance | Apple's relevance objection is meritless. In its Findings of Fact submission, Apple | Counsel's question about whether or not Apple considered acquiring Epic is | Sustained.  Witness admits he cannot recall, so lacks relevance. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | Worldwide Developer Relations) | | | has proposed that the Court find that Epic "reaped enormous benefits from its relationship with Apple" and "has benefitted from Apple's support over the years". Together with other evidence introduced by Epic on this topic, the fact that Apple considered acquiring Epic shows that Apple actually reaped "enormous benefits" provided by Epic to the iOS ecosystem and Apple's products. It is of no moment that Mr. Okamoto did not recall a fact that was plainly stated in a contemporaneous email sent to Mr. Okamoto and others by Adrian Perica, whom Mr. Okamoto identified as Apple's head of mergers and acquisitions. (Okamoto Tr. 329:10-12.) | not relevant to any claim or defense in this litigation, and the witness is clear that he cannot recall this information. This testimony is objectionable because—as Epic's argument confirms—it is nothing more than an effort by Epic to insert an issue into evidence through attorney assertion. Given that Mr. Okamoto was clear that he didn't remember this, that attorney assertion is of no evidentiary value. | |
| 16. | Ron Okamoto (former Vice President, Worldwide Developer Relations) | 346:4-7, 346:9. | Apple – FRE 602 - Speculation, Lack of Personal Knowledge | At his deposition, Mr. Okamoto testified about Apple's decision to allow certain developers not to use its otherwise mandatory IAP payment processing tool during the COVID pandemic. (Okamoto Tr. 343:17- 344:3). As then Vice President of Developer Relations and a member of Apple's policymaking Executive Review Board, | Mr. Okamoto does not have personal knowledge of whether or not the IAP requirement "would have had a negative impact" on third-party developers in specific circumstances, and the question calls for speculation about what would theoretically happen if circumstances related to COVID-19 did not exist. Epic claims that this | Overruled. Witness has personal knowledge from his position at Apple, and testified he participated in decision made by consensus because of likelihood of negative effect on developers under circumstances. As an adverse witness, his concession that "it might have" is not speculative |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | Mr. Okamoto would have been party to discussions concerning the impact such a step would have had on developers.

The sole question to which Apple objected is a follow-up to a series of answers in which Mr. Okamoto extols the purported benefits developers received because of the limited exemption. The objected-to testimony shows that developers that remain subject to Apple's anti- competitive tie are deprived of the benefits resulting from the limited choice Apple provided to other developers. | testimony, based on discussions Epic says Mr. Okamoto "would have" been party to, is nevertheless based on personal knowledge. But that lack of foundation is amply demonstrated by the only testimony the witness actually gives in this excerpt: "it might have." | but a reluctant admission. |
| 17. | Phillip Shoemaker (former Apple, former Technology Director, App review) | 66:1-24 | Apple – FRE 602 - Foundation/Personal Knowledge | Mr. Shoemaker is being questioned concerning an article that he personally authored. He has personal knowledge concerning his own writings.

Moreover, Mr. Shoemaker has personal knowledge of digital stores as the former Senior Director of App Store Review at Apple. Further, Shoemaker testified that his answers to this line of questioning were also "based on [Shoemaker's] experience." (Shoemaker Tr. | The witness is asked to testify about current facts long after he left his role at Apple. He has no personal knowledge of Apple's policies or position related to today's app marketplaces. The article that purports to provide foundation is from 2017, and the witness has no recent experience at Apple as a foundation for his speculation. | Overruled.  The witness has extensive personal knowledge, based on his own experience through 2017, which is not such ancient history as to have no value. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | 66:16)<br><br>The question of whether Mr. Shoemaker's knowledge is sufficiently current to have probative value goes to the weight the testimony should be afforded—not its admissibility. | | |
| 18. | Phillip Shoemaker (former Apple, former Technology Director, App review) | 67:6-9 | Apple – 602 – Lack of Foundation/Personal Knowledge | Mr. Shoemaker has personal knowledge of digital stores as the former Senior Director of App Store Review at Apple and as the author of the article being discussed. Further, this line of questioning was also "based on [Shoemaker's] experience." (Shoemaker Tr. 66:16)<br><br>The question of whether the article is sufficiently current to have probative value goes to the weight the testimony should be afforded—not its admissibility. | The witness is asked to testify about current facts, long after he left his role at Apple. He has no personal knowledge that would serve as a basis to offer an opinion about the comparison of app marketplaces today. The article that purports to provide foundation is from 2017. | Overruled for the same reasons as # 17. |
| 19. | Phillip Shoemaker (former Apple, former Technology Director, App review) | 117:1-16 | Apple – 602 – Lack of Foundation/Personal Knowledge | Courts in this District have found that Rule 602 allows testimony from a corporate executive about knowledge obtained as part of that official's job responsibilities. *Peterson v. AT & T Umbrella Ben. Plan No. 1*, No. C-10- 03097 JCS, 2011 WL 5882877, at *9 (N.D. | Mr. Shoemaker testifies that he cannot give a complete answer regarding the guidelines questions. That, in combination with the fact that he has not been at the company for years, is sufficient to undercut his foundation for making statements about the current | Overruled for the same reasons as # 17, and as set forth by Epic, including his responsibility for writing and updating guidelines. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|-----|----------------------|----------------------|------------------------------|---------------|----------------|------------------------|
| | | | | Cal. Nov. 23, 2011) (finding declarations admissible under Rule 602 because declarants had personal knowledge by virtue of their job responsibilities); *Fed. Ins. Co. v. Albertson's Inc.*, No. C 06-04000 MHP, 2007 WL 1455910, at *11 (N.D. Cal. May 16, 2007) (overruling evidentiary objection because declarant was an employee with supervisory responsibilities and therefore had personal knowledge). In addition, "[e]vidence to prove personal knowledge may consist of the *witness's own testimony*." Fed. R. Evid. 602 (emphasis added).<br><br>Mr. Shoemaker has personal knowledge of the App Store review guidelines because as Senior Director of App Store Review, he was one of the individuals responsible for writing and implementing the new guidelines for App Review. In particular, he stated:<br>Q What was your role in writing the guidelines?<br>A My role was to, over time, as we were reviewing apps, we would always flag the things that we thought were | status of the App Store. | |

DocuSign Envelope ID: B1180108-A772-4CB6-84A5-7452AF6C879C

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | inappropriate and put them into a knowledge base. I then rewrote that knowledge base and presented that to Steve and Phil Schiller, and Kevin Saul, who was our attorney at the time. And we started hammering out, writing different guidelines. And so that was my involvement was working on the line by line with the -- with the team. (Shoemaker Tr. 46:17-47:4) | | |
| 20. | Phillip Shoemaker (former Apple, former Technology Director, App review) | 184:19-185:22 | Apple – FRE 602 - Personal Knowledge | Mr. Shoemaker is testifying about statements in documents that he personally authored. He has sufficient personal knowledge to testify concerning his own prior statements.  Moreover, courts in this District have found that Rule 602 allows testimony from a corporate executive about knowledge obtained as part of that official's job responsibilities. *Peterson v. AT & T Umbrella Ben. Plan No. 1*, No. C-10-03097 JCS, 2011 WL 5882877, at *9 (N.D. Cal. Nov. 23, 2011) (finding declarations admissible under Rule 602 because declarants had personal knowledge by virtue of their job responsibilities); *Fed. Ins.* | The witness testified that he does not remember these guidelines, and thus he lacks personal knowledge to testify about any current understanding of these issues. He is instead merely agreeing with a document. | Overruled for the same reasons as # 17 and #19. He has personal knowledge as to the trustworthiness of his opinion expressed at the time he was directly involved with the guidelines. |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | *Co. v. Albertson's Inc.*, No. C 06-04000 MHP, 2007 WL 1455910, at *11 (N.D. Cal. May 16, 2007) (overruling evidentiary objection because declarant was an employee with supervisory responsibilities and therefore had personal knowledge). In addition, "[e]vidence to prove personal knowledge may consist of the *witness's own testimony*." Fed. R. Evid. 602 (emphasis added).<br><br>Mr. Shoemaker has personal knowledge of the App Store review guidelines because as Senior Director of App Store Review, he was one of the individuals responsible for writing and implementing the new guidelines for App Review. In particular, he stated:<br><br>Q What was your role in writing the guidelines?<br>A My role was to, over time, as we were reviewing apps, we would always flag the things that we thought were inappropriate and put them into a knowledge base. I then rewrote that knowledge base and presented that to Steve and Phil Schiller, and Kevin Saul, who was our attorney | | |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | | | | at the time. And we started hammering out, writing different guidelines. And so that was my involvement was working on the line by line with the -- with the team. (Shoemaker Tr. 46:17-47:4) | | |
| 21. | Phillip Shoemaker (former Apple, former Technology Director, App review) | 438:19-24 | Apple – FRE 602 - Personal Knowledge | The question is about whether *in 2013* there was any way of catching a backdoor switch—*i.e.*, a process by which developers would submit an app to Apple's App Review one way and then once it passed review, would change the app entirely. Mr. Shoemaker's response make clear that there was no way of checking a backdoor switch at that time. Mr. Shoemaker had personal knowledge of that fact because, at the time, he was the Senior Director of App Store Review.<br><br>To the extent that Mr. Shoemaker separately indicates that his testimony about the current state of affairs is speculative, the Court can take that into account when determining the weight to assign the testimony. | The witness is clear that he is guessing about whether there is currently any way of checking whether this particular circumstance occurred, and thus he does not have personal knowledge sufficient to answer this question within the scope of Rule 602. | Sustained in part as to first complete sentence (i.e., the one that follows his initial confirmatory response, "Yeah.") that is purely speculative: "There is – there is – I would <u>guess</u> there is still no way of checking a backdoor switch, but yeah." (Emp. added.) Overruled as to initial "Yeah" and last sentence: "There was no - nothing done." |
| 22. | Phillip Shoemaker | 583:16-19 | Apple – FRE 602 - | Mr. Shoemaker has personal | The witness is clear that he | Overruled. The witness |

| No. | Witness Name / Title | Designated Testimony | Objecting Party & Objection | Epic Position | Apple Position | Judge Laporte's Ruling |
|---|---|---|---|---|---|---|
| | (former Apple, former Technology Director, App review) | | Personal Knowledge | knowledge of the Bomb Gaza Strip app that was once offered on the Google Play Store and Apple's guidelines against such apps. He explained to Apple's counsel on redirect: "It is a -- it is a game that -- that – that people could bomb the Gaza Strip. Standard stuff that people like to try to post in the App Store as well, but we always prevented apps like this from going into the store because we had specific guidelines preventing this type of humor type of game". (Shoemaker Tr. 570:10-16). Moreover, the question at issue is not "was the Bomb Gaza Strip app ever submitted to the App Store," but rather does Mr. Shoemaker know one way or the other if it ever was. | does not know whether this occurrence happened, and thus he lacks personal knowledge to answer this question. | has personal knowledge that he does not know whether or not the Bomb Gaza Strip app was submitted to the App Store and that lack of knowledge is relevant in context to whether Apple's guidelines stopped it from being accepted to the App Store or it was instead not submitted, in the internal discussion of the comparison to the backlash against Google carrying that app initially. |

IT IS SO ORDERED.

DATED: _____  4/30/2021 | 5:06 PM PDT

_____
HON. ELIZABETH D. LAPORTE (RET.)

<u>**PROOF OF SERVICE BY E-Mail**</u>

Re: Epic Games, Inc. vs. Apple Inc
Reference No. 1100111234

I, Sandra Chan, not a party to the within action, hereby declare that on May 3, 2021, I served the

attached DEPOSITION OBJECTIONS CHART AND RULINGS THEREON on the parties in the within

action by electronic mail at San Francisco, CALIFORNIA, addressed as follows:

Paul J. Riehle Esq.
Faegre Drinker Biddle & Reath LLP
4 Embarcadero Center
27th Floor
San Francisco, CA  94111
Tel: 415-591-7500
Email: paul.riehle@faegredrinker.com
   Parties Represented:
   Epic Games, Inc.

Christine Varney
Gary Bornstein Esq.
Mr. Yonatan Even
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Ave
New York, NY  10019-7475
Tel: 212-474-1000
Email: cvarney@cravath.com
gbornstein@cravath.com
yeven@cravath.com
   Parties Represented:
   Epic Games, Inc.

Ms. Lauren A. Moskowitz
M. Brent Byars Esq.
Justin C. Clarke Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Ave
New York, NY  10019-7475
Tel: 212-474-1000
Email: lmoskowitz@cravath.com
mbyars@cravath.com
jcclarke@cravath.com
   Parties Represented:
   Epic Games, Inc.

John I. Karin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Ave
New York, NY  10019-7475
Tel: 212-474-1000
Email: jkarin@cravath.com
   Parties Represented:
   Epic Games, Inc.

Theodore J. Boutrous Jr. Esq.
Richard J. Doren Esq.
Daniel G. Swanson Esq.
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor

Jagannatha P. Srinivasan Esq.
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor
Los Angeles, CA  90071-3197
Tel: 213-229-7296

Los Angeles, CA   90071-3197
Tel: 213-229-7804
Email: tboutrous@gibsondunn.com
RDoren@gibsondunn.com
DSwanson@gibsondunn.com
    Parties Represented:
    Apple Inc.

Ms. Cynthia Richman
 Harry R. S. Phillips
Mark A. Perry Esq.
Gibson Dunn & Crutcher
1050 Connecticut Ave. NW
Washington, DC   20036
Tel: 202-9558500
Email: crichman@gibsondunn.com
hphillips2@gibsondunn.com
mperry@gibsondunn.com
    Parties Represented:
    Apple Inc.

 Eli M. Lazarus
Ethan D. Dettmer Esq.
Gibson Dunn & Crutcher
555 Mission St.
Suite 3000
San Francisco, CA   94105
Tel: 415-393-8200
Email: elazarus@gibsondunn.com
edettmer@gibsondunn.com
    Parties Represented:
    Apple Inc.

Email: JSrinivasan@gibsondunn.com
    Parties Represented:
    Apple Inc.

Veronica S. Lewis Esq.
Gibson Dunn & Crutcher
2001 Ross Ave.
Suite 2100
Dallas, TX   75201
Tel: 214-698-3320
Email: vlewis@gibsondunn.com
    Parties Represented:
    Apple Inc.

 Canon Pence
Epic Games, Inc.
5520 Dillard Dr.
Cary, NC   27518
Tel: (919) 854 0070
Email: project-liberty-invoices@epicgames.com
    Parties Represented:
    Epic Games, Inc.

        I declare under penalty of perjury the foregoing to be true and correct. Executed at San

Francisco, CALIFORNIA on May 3, 2021.


Sandra Chan
JAMS
SChan@jamsadr.com