THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. MOYÉ (Texas Bar No. 24000092; *pro hac vice*)
  vmoye@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
  mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN DETTMER, SBN 196046
  edettmer@gibsondunn.com
ELI M. LAZARUS, SBN 284082
  elazarus@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant, Counterclaimant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON PARTIAL FINDINGS PURSUANT TO FED. R. CIV. P. 52(c)** |

**TABLE OF CONTENTS**

DISCUSSION ........................................................................................................................... 1

    A.    iOS Is Not an Essential Facility ................................................................................. 1

    B.    Epic Has Access to iOS ............................................................................................ 3

CONCLUSION ........................................................................................................................ 4

# TABLE OF AUTHORITIES

**CASES**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016) ................................................................................................ 1

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) .................................................................................................. 2

*JamSports & Entm't, LLC v. Paradama Prods., Inc.*,
    336 F. Supp. 2d 824 (N.D. Ill. 2004) ...................................................................................... 3

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ................................................................................................ 2

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) ................................................................................................ 4

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) .............................................................................................. 2

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004). .............................................................................................................. 3

**OTHER AUTHORITIES**

Herbert Hovenkamp et al., *IP and Antitrust: An Analysis of Antitrust Principles
    Applied to Intellectual Property* (3rd ed. 2020 supp.). ......................................................... 2

# DISCUSSION

Epic's response confirms what this Court has already observed—there is *no* evidence in the record relating to Epic's essential facility claim. While Epic attempts to repurpose some of its evidence regarding other issues, essential facility claims have distinct elements and require distinct proof. As Epic does not dispute, Dr. Evans *expressly disclaimed* that he was offering an opinion on essential facility. *See* Trial Tr. 1673:8–11, 2390:16–2391:2 (Evans). There is no other evidence that could support judgment for Epic on this claim; on the contrary, the trial evidence confirms that iOS—Apple's proprietary operating system—cannot constitute an essential facility, and that Epic actually has access to iOS. Epic may prefer different terms of access, but that is no basis for an essential facility claim. Apple is entitled to judgment on Count Two.

## A.   iOS Is Not an Essential Facility

There is no evidence in the record that iOS is an essential facility. Epic's own expert disclaimed any opinion on the essential facility doctrine, *see* Trial Tr. 1673:8–11 (Evans), and affirmatively testified that operating systems should not be treated as utilities, *see* Trial Tr. 2382:8–13 (Evans). Epic contends that this concession does not mean that iOS cannot be an essential facility, *see* Opp'n 4, but that is *precisely* what it means. The consequence of deeming something an essential facility is that competitors have a right to access it for the purpose of providing their own competing service. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1185 (9th Cir. 2016). In response to a direct question from the Court, Dr. Evans denied that iOS is utility-like, and thus that it is "essential" within the meaning of this doctrine. *See* Trial Tr. 2381:21–2382:18 (Evans).

The evidence that *is* in the record squarely refutes Epic's claim. Epic does not dispute that *Fortnite* was extremely successful before it ever launched on iOS, or that its business through iOS accounts for a fraction of *Fortnite*'s revenue. Trial Tr. 1337:19–21 (Weissinger); DX-4766. Instead, Epic argues that it has "brought its essential facility claim in its capacity as a potential competing *distributor* of iOS apps, not as an app developer." Opp'n 3. This is a concession that Epic as "developer" (i.e., anything related to *Fortnite*) has no essential facility claim. And Epic as "distributor" (i.e., operator of the Epic Games Store) offers EGS on both the PC and Mac platforms, and Android is an available platform for distribution through EGS. Where there are multiple avenues of distribution,

one of them cannot be "essential." A facility is not essential unless it has "eliminated *all possibility* of competition in the downstream market." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 543 (9th Cir. 1991) (emphasis added). iOS is not "essential" to Epic's distribution business.

Epic's evidentiary presentation is particularly deficient in light of the fact that it is asking this Court to be the first to declare intellectual property an essential facility. Epic insists that intellectual property can constitute an essential facility, *see* Opp'n 3–4, yet in support, it cites only an out-of-circuit district court decision that was overturned on appeal and a denial of summary judgment that did not even directly address this issue, *see id.* Suffice to say, neither of those cases calls into question the fundamental proposition—which Epic does not dispute—that there has been "no case in which a United States court consciously held that an intellectual property right was itself an essential facility that must be licensed on reasonable and nondiscriminatory terms." Herbert Hovenkamp et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.). Nor does Epic dispute that only preexisting "bottlenecks" typically have been deemed essential facilities by the courts. *See MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1148 (7th Cir. 1983). Epic has given this Court no factual or legal basis to break new ground.

Epic argues that "Apple is inviting the Court to make an extraordinary exception to antitrust law that would exclude the majority of the modern technology and digital economy." Opp'n 4. There are well-established considerations for assessing the interplay between the antitrust laws and the intellectual property laws. *See* Trial Tr. 3606:15–3607:7 (Malackowski); DX-3305. The essential facility doctrine is not part of that calculus. It is, in fact, Epic's argument that is "extraordinary" and "exception[al]," Opp'n 4—under its theory, any firm's intellectual property is subject to appropriation by competitors if the firm is successful in attracting consumers and developing a distinct brand. There is no all-or-nothing requirement for licensing anywhere in the antitrust laws—indeed, such a requirement would override the incentives to license at all, and chill the sharing of IP that is part and parcel of intellectual property rights. Ex. Expert 12 ¶ 64 (Malackowski); DX-3305.007–008 (discussing procompetitive benefits of licensing). As then-Judge Gorsuch put it, a competitor cannot "just demand the right to piggyback on its larger rival." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013). iOS is the intellectual property of Apple—developed through years and billions

of dollars of investment—and it would set a dangerous precedent to declare that such intellectual property may be deemed "essential" to competitors.

Far from disputing this point, Epic embraces it: "If Epic did go to the enormous lengths necessary to develop a competing smartphone operating system, by definition, *it would give rise to an entirely different platform and app distribution market*." Opp'n 3 (emphasis added). Every operating system, in Epic's view, is an "essential facility" to which competitors must be given unfettered (and apparently uncompensated) access. The antitrust laws have never been stretched so far—in no small part because doing so would deprive the innovators who create operating systems of their intellectual property rights.

## B.     Epic Has Access to iOS

Even if iOS were an essential facility, Epic has not been denied access. And "where access exists, the [essential facility] doctrine serves no purpose." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004).

Epic does not dispute that it actually has access to iOS, nor could it: Epic has been part of the Apple Developer Program since 2010. Trial Tr. 166:16–167:2 (Sweeney). Epic has used Apple's proprietary tools—including access to iOS—to develop and distribute apps on which it has earned hundreds of millions of dollars. This fact destroys Epic's argument that "this is not an instance where a plaintiff is merely complaining about the *terms* on which access is being afforded." Opp'n 6. Epic's argument that "EGS is not permitted any access to iOS whatsoever," *id.*, ignores the fact that EGS is just one of the products or services developed and marketed by Epic Games, Inc., which undisputedly has access to iOS (and has distributed other apps, including *Fortnite*, through the App Store). Denial of access under the essential facility doctrine means denial of *all* access, not some access.

Epic as "distributor" wants to distribute EGS as an *app* through the App Store. Trial Tr. 1198:23–25, 1233:8–1234:1 (Allison). Such a "store-within-a-store" app is prohibited by Apple's Guidelines—just as it is prohibited on Xbox, PlayStation, or Switch. While Epic would prefer changes in the terms of access to iOS, "[e]ssential means essential," not "'best,' 'most profitable' or 'preferable.'" *JamSports & Entm't, LLC v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004). There is simply no evidence in the record to support such a finding. On the contrary, the record

shows that other distributors—including Steam—have been successful on a variety of platforms, including iOS, even without operating a store-within-a-store on the App Store.  *See* Trial Tr. 1840:3–1850:12 (Athey); DX5601; DX5603; DX5617; DX5622.  And Epic is free to distribute individual apps to iOS customers so long as it complies with Apple's developer agreements and guidelines.

Epic's entire theory rests on the terms and conditions that Apple imposes on the use of its intellectual property.  *See* Opp'n 2–3 (citing PX2619 (DPLA); PX2790 (App Review Guidelines)).  It is thus a dispute about the terms of access to iOS; and as the post-trial hearing made clear, what Epic is seeking is that Apple modify the terms of access in a way "conducive to [Epic's] existing business model."  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004).  But that does not mean Epic lacks access, only that it does not have the kind of access it wants.  The essential facility doctrine has no applicability in these circumstances.

## CONCLUSION

For the foregoing reasons, the Court should grant judgment on partial findings in favor of Apple and against Epic on Count 2 of Epic's complaint.

DATED:  May 26, 2021          By     */s/ Mark A. Perry*
                                     GIBSON, DUNN & CRUTCHER LLP
                                     Theodore J. Boutrous Jr.
                                     Richard J. Doren
                                     Daniel G. Swanson
                                     Mark A. Perry
                                     Veronica S. Moyé
                                     Cynthia E. Richman
                                     Jay P. Srinivasan
                                     Ethan D. Dettmer
                                     Rachel S. Brass

                                     *Attorneys for Apple Inc.*