THEODORE J. BOUTROUS JR., SBN 132099
tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
jsrinivasan@gibsondunn.com
JASON C. LO, SBN 219030
jlo@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue Los Angeles, CA
90071-3197 Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. MOYÉ (Texas Bar No.
24000092; *pro hac vice*)
vmoyé@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

MARK A. PERRY, SBN 212532
mperry@gibsondunn.com
CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN DETTMER, SBN 196046
edettmer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant, APPLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 20-CV-05640-YGR <br><br> **APPLE INC.'S RESPONSE TO OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** <br><br> The Honorable Yvonne Gonzalez Rogers |

1    Defendant Apple Inc. ("Apple") respectfully submits this response to Epic Games, Inc.'s
2  Objections to Apple Inc.'s Proposed Findings of Fact and Conclusions of Law.  Dkt. 791.
3    At the final pretrial conference, the Court explained the purpose of the objection procedure, as
4  well as the scope of appropriate objections:

> You know, I put that in there because – and *this is just for something major*.  You know, I will give you an example.
>
> Hit and run case.  And, you know, big question about whether the light was red or the light was green.  And it comes in totally different than people expect or at least what's presented to the Court is totally different.
>
> If there is something that is not – that is not arguable, in your view, I want to know about it sooner rather than later because memories – I can try to fix it.
>
> But that's what that objection would be; *if there is something that's really not arguable and that you think the other side just got flat wrong*, then let me know so that I can try to figure it out.  Check my own notes while my memory is fresh and we can try to – so I expect to have nothing, *I expect to have no objections to be clear*.  But I put it there just in case.

Hr'g Tr. 51:4–20 (Apr. 21, 2021) (emphases added).  As the Court summarized:  "*This is really for something that is really almost outrageous*."  *Id.* at 52:15–16 (emphasis added).

None of Epic's objections come close to meeting the high standard set by the Court.  Rather than objections about what witnesses actually testified to or what documents actually say, Epic merely offers arguments about what the evidence proves, without claiming or showing that any of its objections relate to "something major," let alone "outrageous."  Epic has filed what it characterizes as "objections," but what really are an attempt to rebut four specific characterizations of the evidentiary record by Apple.

Each of the four points to which Epic takes issue is at least "arguable."  Indeed, as to each of them, Apple clearly has the better of the argument:

**Finding of Fact ¶ 168.1**

> At trial, Epic pointed to Apple documents with surveys of developers that contain negative comments about the App Store.  But Epic focused exclusively on figures related to one narrow issue—search and discoverability—which, given the nature of search results (in which only one developer's app can be the top result for a given search) almost always leaves some developers dissatisfied.  Trial Tr. 4001:7–9.

1

Gibson, Dunn & Crutcher LLP

Epic objects that this statement is "incorrect" because other "developer complaints" were addressed at trial. Dkt. 791 at 2. But Apple's proposed finding is expressly limited to (a) "Apple documents with surveys of developers," and (b) the "figures" within such documents relating to search and discovery. The documents Epic cites confirm that the statistical survey evidence Epic put into the record relates to the discoverability and marketing of apps. PX-2284.6; DX-3800.073. Indeed, Epic's expert, Dr. Evans, used a demonstrative that was limited to search and discovery. PDX-0041.40.

PX-2062, also cited by Epic, is simply a collection of anecdotal responses from developers, not any "figures" on developer satisfaction. *See* PX-2062.1 (noting that the document "only include[s] a handful [of] quotes"). The remaining citations in Epic's objections similarly provide only anecdotal evidence. The actual *statistical* evidence in the record shows that developers (and users) are overwhelmingly satisfied with the App Store. *See* PX-2062.6–.7; DX-3513.015; DX-3781.008; DX-3922.063; DX-4275.205; DX-4089.056. Epic's trial tactic was to divert the Court's attention from this fact by focusing on search and discovery—as the proposed finding accurately states.

**Finding of Fact ¶ 602**

> The challenged licensing terms do not restrain any competition that would occur in the absence of the DPLA. Ex. Expert 12 ¶¶ 51, 54 (Malackowski).

Epic objects that this proposed finding is not supported by Mr. Malackowski's written direct testimony. That is incorrect: Mr. Malackowski's written direct testimony explains that "a developer must use Apple's IP to develop apps for the iOS ecosystem," and that Dr. Evans' failure to analyze the intellectual property implications of his proposed but-for world "casts doubt on his analysis of the hypothetical world that he contends would exist 'absent Apple's exclusionary practices.'" Ex. Expert 12 ¶ 51 (Malackowski). Similarly, Mr. Malackowski testified that although "Dr. Athey opines that she would expect greater innovation in economic middleware absent Apple's challenged conduct," Dr. Athey "never analyzes the degree to which Apple IP would need to be used to develop such middleware for iOS apps." Ex. Expert 12 ¶ 54 (Malackowski). Mr. Malackowski criticizes Dr. Evans' and Dr. Athey's respective visions of the but-for world. Neither Dr. Evans nor Dr. Athey considered the

intellectual property implications of their proposal, and thus this proposed finding is amply supported by Mr. Malackowski's written direct testimony.

**Finding of Fact ¶ 618**

> Many third-party app stores simply lack the resources or incentives to conduct the same level of review and analysis as Apple. Ex. Expert 11 ¶ 83 (Rubin); *see also* DX-3194.001 (observing that a store-within-a-store represents "the worst of the worst" type of threat to Apple's ecosystem). Others do not have the same standards for privacy and may have economic incentives to affirmatively lower the level of review. *See* Ex. Expert 11 ¶ 84 (Rubin).

Epic objects that this finding relies on portions of Dr. Rubin's written direct testimony that were stricken by the Court. However, the Court did not strike the entirety of paragraph 84, and this finding is amply supported by Dr. Rubin's admitted testimony. Dr. Rubin testified, for example, that "certain large companies are heavily dependent on ad revenue, which in turn, is heavily dependent on the ability of an app to track user behavior," that "[o]ther companies may choose to maintain different standards," that "Google similarly does not have guidelines pertinent to privacy protection," and that "[b]ecause GOG's purpose is to make unworkable games work again, not to provide secure apps, it likely prioritizes security less than the App Store." Ex. Expert 11 ¶ 84 (Rubin); *see also* Trial Tr. 3765:21–3766:10 (Rubin) (overruling objection to testimony regarding the business model of ad-based app stores). This evidence supports the uncontroversial conclusion that different companies, with different business objectives (and budgets), have differing incentives to protect privacy.

**Conclusion of Law ¶ 600**

> Epic brings a claim under the California Unfair Competition Law ("UCL"), claiming that it "was unreasonably prevented from freely distributing mobile apps or its in-app payment processing tool." Dkt. 1 ¶ 290. (Epic does not challenge the anti-steering provisions in its UCL cause of action.) Epic claims that Apple's conduct is both "unlawful" and "unfair" under the Unfair Competition Law. *Id.* ¶¶ 288, 289.

Epic complains that the parenthetical sentence in this conclusion is incorrect because Epic "challenged these [anti-steering] provisions under the California Unfair Competition Law in Count 10 of the Complaint." Dkt. 791 at 3. Epic's pleadings and other filings speak for themselves. Nowhere in Count 10 of its Complaint does Epic even tangentially reference anti-steering. *See* Dkt. 1 ¶¶ 285–

291. Similarly, nowhere in its Conclusions of Law discussing the UCL claim does Epic discuss or reference anti-steering. *See* Dkt. 777-3 ¶¶ 437–471 (Conclusions of Law). Epic may wish in retrospect that it had brought such a challenge, but it did not.

DATED:  June 9, 2021                                   GIBSON, DUNN & CRUTCHER LLP


By:  _____/s/ *Mark A. Perry*_____
                    Mark A. Perry

*Attorney for Defendant Apple Inc.*