THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
JULIAN W. KLEINBRODT, SBN 302085
  jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200
Facsimile: 415.393.8306

MARK A. PERRY, SBN 212532
  mark.perry@weil.com
JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice pending*)
  joshua.wesneski@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000
Facsimile: 202.857.0940

MORGAN D. MACBRIDE, SBN 301248
  morgan.macbride@weil.com
WEIL, GOTSHAL & MANGES LLP
Redwood Shores Pkwy, 4th Floor
Redwood Shores, CA 94065
Telephone: 650.802.3044
Facsimile: 650.802.3100

MARK I. PINKERT (Fla. Bar No. 1003102; *pro hac vice pending*)
  mark.pinkert@weil.com
KATHERINE G. BLACK (Fla. Bar No. 1031465; *pro hac vice pending*)
  katie.black@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: 305.577.3100
Facsimile: 305.374.7159

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.<br><br>    Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR<br><br>**DECLARATION OF MARK ROLLINS IN SUPPORT OF APPLE INC.'S MOTION FOR ENTRY OF JUDGMENT ON ITS INDEMNIFICATION COUNTERCLAIM**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>**REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED** |

**TABLE OF CONTENTS**

Page

I. Apple's Practices for Scrutinizing Law Firm and Vendor Invoices ...........................................1

II. Confirming the Fees and Costs Paid in this Matter ...................................................................5

III. Apple's Payments To Law Firms in this Matter........................................................................6

IV. Apple's Payments Directly To Vendors in this Matter..............................................................8

V. Summary of Amounts Paid Directly By Apple .........................................................................9

VI. Confidentiality of Billing Practices, Rates Charged, and Detailed Time Entries....................10

I, Mark Rollins, declare:

1. I am a Senior Financial Manager and the Finance Controller for Legal and Global Security ("LGS") at Apple Inc. ("Apple"). I joined the company in November of 2019 and have consistently worked with Apple's litigation teams while at Apple as a finance manager.

2. In my current position, I oversee all LGS budgets and expenses. In this capacity, I am familiar with the process by which Apple reviews and approves vendor budgets and invoices pertaining to a variety of types of litigation in a variety of jurisdictions. This includes expenses related to the *Epic* litigation.

3. I make this declaration in support of Apple's Motion for Entry of Judgment on its Indemnification Counterclaim (the "Motion") and Apple's Administrative Motion to Seal (the "Motion to Seal"). I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the matters stated herein.

## I. APPLE'S PRACTICES FOR SCRUTINIZING LAW FIRM AND VENDOR INVOICES

4. Apple is involved in litigations in a wide variety of subject areas and jurisdictions, and its cases vary substantially in terms of the degree of complexity and exposure to liability. Apple regularly retains outside counsel to represent its interests.

5. Apple is a consumer of legal services, and it is diligent in managing the costs and fees associated with litigation including attorneys' fees and other related expenses. Apple keeps costs as low as possible by negotiating for discounts and lower fees and requiring law firms to submit budgets and then holding them accountable to those budgets.

6. Apple has written policies and guidelines for vendor billing, which impose standards and requirements for all vendors in terms of rates, budgeting, billing, invoicing, and staffing. At the outset, it is Apple's standard practice with all vendors, including attorneys and law firms, ▮▮▮▮▮▮ ▮▮▮▮▮▮ negotiate a discount of the vendor's standard rates. Apple further requires that ▮▮▮▮▮▮

1 ██████████████████████████████████████████████████████████████
2 ███████████████████████████████████████████████
3    8. ██████████████████████████████████████████████████████
4 ██████████████████████████████████████████████████████████████
5 ██████████████████████████████████████████████████████████████
6 ██████████████████████████████████████████████████████████████
7 ██████████████████████████
8    9. ██████████████████████████████████████████████████████
9 ██████████████████████████████████████████████████████████████
10 ██████████████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████████████
12 ███████████████████████████████████████
13    10. █████████████████████████████████████████████████████
14 ██████████████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████████████████
16 ██████████████████████████████████████████████████████████████
17 ██████████████████████████████████████████████████████████████
18 ██████████████████████████████████████████████████████████████
19 ███████████████████████████████
20    11. Apple uses ████████████████████████████████ for billing management and invoicing.
21    12. █████████████████████████████████████████████████████
22 ██████████████████████████████████████████████████████████████
23 ██████████████████████████████████████████████████████████████
24 ██████████████████████████████████████████████████████████████
25 ██████████████████████████████████████████████████████████████
26 ██████████████████████████████████████████████████████████████
27 ██████████████████████████████████████████████████████████████
28 ██████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████████
2 ███████████████████████████████████████████████████████████
3 ████████████████████████████
4    13. Apple's policies also include requirements for how invoices are written and submitted. ██
5 ████████████████████████████████████████ ██████████████████
6 ███████████████████████████████████████████████████████████
7 ███████████████████████████████████████████████████████████
8 ██████████████████████████████████████
9    14. █████████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████████
12 ██
13    15. █████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████████████
15 ███████████████████████████████████████████████████████████
16    16. Apple has several other written policies in addition to those that govern billing, some of which
17 specifically govern law firm vendors and their work with Apple.  Apple also has ██████████████
18 ███████████████████████████████████████████████████████████
19    17. In carrying out and enforcing these written policies, and in ensuring that vendors adhere to them,
20 Apple ████████████████████████████████████████████████████.
21    18. █████████████████████████████████████████████████████
22 ███████████████████████████████████████████████████████████
23 ██████████████████████████████████████
24    19. ████████████████████████████████████████████████████
25 ███████████████████████████████████████████████████████████
26 ███████████████████████████████████████████████████████████
27 ███████████████████████████████████████████████████████████
28 █████████████

20. ■

21. ■

22. ■ Apple pays only bills that are reasonable.

23. I can confirm that Apple adheres to these processes and closely reviews bills before paying them.

24. I can attest that all of these procedures were in place during the *Epic* litigation, and that all vendors were subject to Apple's standard or modified policies, ■ . I can also attest that Apple paid all bills in the *Epic* matter only after ■

25. For this matter, ■ . The bills that Apple has paid, or approved for payment, cover services that the law firms provided from August 2020 to October 31, 2023.

26. ■

1 ████████████████████████████████████████████████████████████
2 ████████████████████████████████████████████████████████████
3 ████████████████

4     27. I understand that Apple seeks recovery of only the bills that it actually paid for work performed related to the domestic *Epic* litigation, inclusive of discounts if they were secured. Although Apple's in-house counsel also spent time on this case, Apple is not seeking recovery of any fees or costs associated with that time or expense, or any other time or expense incurred internally at Apple.

## II.  CONFIRMING THE FEES AND COSTS PAID IN THIS MATTER

    28. For every litigation matter, ████████████████████████████████████████
████████████████████████████████████████████████████████████
████  ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

    29. To confirm the accuracy of the fees and costs paid for the domestic *Epic* litigation, Apple's in-house and outside counsel engaged Cornerstone Research, and an economic and financial consulting firm. Apple's in-house counsel then sent all of the payment data associated with the *Epic* litigation ████████████ and the indemnification litigation ████████████ to Cornerstone, so that Cornerstone could review and determine the amount of Apple's expenditures that Apple seeks to recover as indemnification under the DPLA. I understand that Cornerstone analyzed the data, and worked with in-house and outside counsel to determine appropriate amount sought in the Motion.

    30. As part of that process, Cornerstone and Apple's in house counsel worked with vendors to analyze the data and confirm the appropriate fees and costs to be sought. This included working with the vendors to understand and/or reconcile any discrepancy between the amount that Apple actually paid to vendors and each vendor's assessment of the work performed for the domestic *Epic* litigation. An example of such a discrepancy is a vendor that billed time to the domestic *Epic* litigation ████████████ for work it actually performed related to international *Epic* litigation. I understand that Cornerstone has provided adjusted totals for each vendor or matter.

    31. I also understand that, for purposes of the indemnification request, the total amounts Apple

actually spent on the domestic *Epic* litigation have further reduced at the direction of outside counsel.

**III.  APPLE'S PAYMENTS TO LAW FIRMS IN THIS MATTER**

32. In connection with its Motion, Apple seeks to recover legal fees and costs incurred in connection with its services provided by eight law firms in this matter: Gibson, Dunn & Crutcher LLP; Latham & Watkins LLP; McDermott Will & Emery; O'Melveny & Myers LLP; Orrick, Herrington & Sutcliffe LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP; Skadden, Arps, Slate, Meagher & Flom LLP; and Weil, Gotshal & Manges LLP.

33. I have reviewed data from Apple's billing and payment systems, and determined that Apple has paid the Law Firms a total of ▮▮▮▮▮[1] for all invoices billed to the domestic *Epic* litigation ▮▮▮▮▮. These total payments to law firms include payments for work performed by Apple's vendors that was billed to and initially paid for by the law firms themselves.[2]

    a. <u>Gibson, Dunn & Crutcher LLP</u>: Apple has worked with Gibson Dunn on prior litigations. Because Apple works with Gibson Dunn on multiple litigations and on a regular basis, ▮▮▮▮▮, as described above. In total, Gibson Dunn was paid ▮▮▮▮▮ for the invoices on the domestic *Epic* litigation.

    b. <u>Latham & Watkins LLP</u>: Apple has worked with Latham on prior matters. Because Apple works with Latham on multiple matters and on a regular basis, ▮▮▮▮▮, as described above. In total, Latham was paid ▮▮▮▮▮ for the invoices on the domestic *Epic* litigation.

    c. <u>McDermott Will & Emery</u>: Apple has worked with McDermott on prior matters. Because Apple works with McDermott on multiple matters and on a regular basis, ▮▮▮▮▮

---

[1] The *Epic* litigation is ongoing, and Apple is continuing to incur fees and costs from law firms related to this matter. I will supplement this declaration as necessary to reflect those additional payments.

[2] Some vendors billed to and were directly paid by Apple, as discussed below in Section IV.

|    |    |
|---|---|
| 1  | ███████████████████████████████████, as described above. In total, McDermott was |
| 2  | paid ████████ for invoices on the domestic *Epic* litigation. |
| 3  |    d. <u>O'Melveny & Myers LLP</u>: Apple has worked with O'Melveny on prior matters. Because |
| 4  | Apple works with O'Melveny on multiple matters and on a regular basis, ███ |
| 5  | ████████████████████████████████████████████████████████████████ |
| 6  | ███████████████████████████████████, as described above. In total, O'Melveny was |
| 7  | paid ████████ for invoices on the domestic *Epic* litigation. |
| 8  |    e. <u>Orrick, Herrington & Sutcliffe LLP</u>: Apple has worked with Orrick on prior matters. |
| 9  | Because Apple works with Orrick on multiple matters and on a regular basis, ████ |
| 10 | ████████████████████████████████████████████████████████████████ |
| 11 | ███████████████████████████████████, as described above. In total, Orrick was paid |
| 12 | ████████ for invoices on the domestic *Epic* litigation. |
| 13 |    f. <u>Paul, Weiss, Rifkind, Wharton & Garrison LLP</u>: Apple has worked with Paul Weiss on |
| 14 | prior matters. Because Apple works with Paul Weiss on multiple matters and on a regular |
| 15 | basis, ████████████████████████████████████████████████████████████ |
| 16 | ████████████████████████████████████████, as described above. In total, Paul |
| 17 | Weiss was paid ████████ for invoices on the domestic *Epic* litigation. |
| 18 |    g. <u>Skadden, Arps, Slate, Meagher & Flom LLP</u>: Apple has worked with Skadden on prior |
| 19 | matters. Because Apple works with Skadden on multiple matters and on a regular basis, |
| 20 | ████████████████████████████████████████████████████████████████ |
| 21 | ████████████████████████████████████████, as described above. In total, Skadden |
| 22 | was paid ████████ for invoices on the domestic *Epic* litigation. |
| 23 |    h. <u>Weil, Gotshal & Manges LLP</u>: Apple has worked with Weil on prior litigations. Because |
| 24 | Apple works with Weil on multiple litigations and on a regular basis, ████ |
| 25 | ████████████████████████████████████████████████████████████████ |
| 26 | ███████████████████████████████, as described above. In total, Weil was paid |
| 27 | ████████ for invoices on the domestic *Epic* litigation. |
| 28 |    |

## IV. APPLE'S PAYMENTS DIRECTLY TO VENDORS IN THIS MATTER

34. In connection with its Motion, Apple seeks to recover fees and costs incurred in connection with professional and other services provided by other vendors to Apple throughout the domestic *Epic* litigation. This includes: eDiscovery vendors Consilio Holdings Inc. and Open Text Inc.; and expert witness vendors Compass Lexecon and Cornerstone Research. These vendors received direct payments from Apple for work performed on the domestic *Epic* litigation.

35. I have reviewed data from Apple's billing and payment systems, and determined that Apple has directly paid these vendors a total of ▮▮▮▮▮▮ for invoices billed to the domestic *Epic* litigation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

　　a. <u>Consilio Holdings Inc.</u>: Apple has worked with Consilio on prior matters. Because Apple works with Consilio on multiple matters and on a regular basis, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as described above. In total, Consilio was directly paid ▮▮▮▮▮▮ for invoices on the domestic *Epic* litigation.

　　b. <u>Open Text Inc.</u>: Apple has worked with Open Text on prior matters. Because Apple works with Open Text on multiple matters and on a regular basis, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as described above. In total, Open Text was directly paid ▮▮▮▮▮▮ for invoices on the domestic *Epic* litigation.

　　c. <u>Compass Lexecon</u>: Apple has worked with Compass on prior matters. Because Apple works with Compass on multiple matters and on a regular basis, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as described above. In total, Compass was directly paid ▮▮▮▮▮▮ for invoices on the domestic *Epic* litigation.

　　d. <u>Cornerstone Research</u>: Apple has worked with Cornerstone on prior litigations. Because Apple works with Cornerstone on multiple litigations and on a regular basis, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as described above. In total, Cornerstone was directly

paid ▓▓▓ for the work performed on the *Epic* domestic litigation.

## V.   SUMMARY OF AMOUNTS PAID DIRECTLY BY APPLE

36. The Apple billing and payment systems reflect the total amounts actually paid to all vendors who directly billed Apple in connection with the domestic *Epic* litigation ▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

37. Apple's systems reflect that the following amounts (detailed above) were actually paid to the following vendors in connection with the domestic *Epic* litigation:

| Vendor | Total Amount Paid |
|---|---|
| Gibson, Dunn & Crutcher LLP | ▓ |
| Latham & Watkins LLP | ▓ |
| McDermott Will & Emery | ▓ |
| O'Melveny & Myers LLP | ▓ |
| Orrick, Herrington & Sutcliffe LLP | ▓ |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | ▓ |
| Skadden, Arps, Slate, Meagher & Flom LLP | ▓ |
| Weil, Gotshal & Manges LLP | ▓ |
| Consilio Holdings Inc. | ▓ |
| Open Text Inc. | ▓ |
| Compass Lexecon | ▓ |
| Cornerstone Research | ▓ |
| **Total:** | **$82,971,401** |

38. These payments reflect "any and all claims, losses, liabilities, damages, taxes, expenses and costs, including without limitation, attorneys' fees and court costs (collectively, 'Losses')"[3] that were actually paid by Apple in connection with the *Epic* litigation.

39. As noted above, I understand that certain reductions have been made to these amounts in

---

[3] PX-2619.40 (DPLA § 10).

connection with the pending Motion.

## VI. CONFIDENTIALITY OF BILLING PRACTICES, RATES CHARGED, AND DETAILED TIME ENTRIES

40. I have reviewed the Motion, the accompanying declarations of Carlyn Irwin and Richard M. Pearl, and all associated exhibits.

41. Based on my review, I believe that these documents contain certain information that is confidential, proprietary, and/or commercially sensitive, for both Apple and its vendors. These documents contain, among other things, Apple's proprietary litigation handling processes and tools; confidential, negotiated rates and write-offs requested from Apple's vendors; and Apple's non-public financial information regarding costs expended in the *Epic* litigation. If this information were made public, it would create a substantial risk of competitive, financial, or other injury to Apple and its vendors, and to their relationships with other vendors and clients.

42. I understand that Apple has taken great lengths to shield this information to the extent possible—even from counsel on the *Epic* litigation—including implementing various measures to restrict access to that information. Given the sensitive nature of these records, they have been kept strictly confidential in the ordinary course of business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of January 2024, in Cupertino, California.

Respectfully submitted,

By:   */s/ Mark Rollins*
      MARK ROLLINS