| | |
|---|---|
| THEODORE J. BOUTROUS JR., SBN 132099<br>  tboutrous@gibsondunn.com<br>RICHARD J. DOREN, SBN 124666<br>  rdoren@gibsondunn.com<br>DANIEL G. SWANSON, SBN 116556<br>  dswanson@gibsondunn.com<br>JAY P. SRINIVASAN, SBN 181471<br>  jsrinivasan@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)<br>  crichman@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br><br>RACHEL S. BRASS, SBN 219301<br>  rbrass@gibsondunn.com<br>JULIAN W. KLEINBRODT, SBN 302085<br>  jkleinbrodt@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111<br>Telephone: 415.393.8200<br>Facsimile: 415.393.8306 | MARK A. PERRY, SBN 212532<br>  mark.perry@weil.com<br>JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice pending*)<br>  joshua.wesneski@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Telephone: 202.682.7000<br>Facsimile: 202.857.0940<br><br>MORGAN D. MACBRIDE, SBN 301248<br>  morgan.macbride@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>Redwood Shores Pkwy, 4th Floor<br>Redwood Shores, CA 94065<br>Telephone: 650.802.3044<br>Facsimile: 650.802.3100<br><br>MARK I. PINKERT (Fla. Bar No. 1003102; *pro hac vice pending*)<br>  mark.pinkert@weil.com<br>KATHERINE G. BLACK (Fla. Bar No. 1031465; *pro hac vice pending*)<br>  katie.black@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>1395 Brickell Avenue, Suite 1200<br>Miami, FL 33131<br>Telephone: 305.577.3100<br>Facsimile: 305.374.7159 |

Attorneys for Defendant APPLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.<br><br>       Plaintiff, Counter-defendant<br>v.<br><br>APPLE INC.,<br><br>       Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR<br><br>**DECLARATION OF MARK A. PERRY IN SUPPORT OF APPLE INC.'S MOTION FOR ENTRY OF JUDGMENT ON ITS INDEMNIFICATION COUNTERCLAIM**<br><br>The Honorable Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

Page

I.   Work Performed by Law Firms and Secondary Vendors in the *Epic* Litigation........................2

II.  Work Performed by Vendors Paid Directly by Apple in the *Epic* Litigation..........................10

I, Mark A. Perry, declare:

1. I am an attorney duly licensed to practice law in the State of California and am a partner in the law firm of Weil, Gotshal & Manges LLP ("Weil"), and counsel of record for Counterclaimant Apple Inc. ("Apple") in *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal. Aug. 13, 2020) ("*Epic* litigation").

2. I make this declaration (the "Declaration") in support of Apple's Motion for Entry of Judgment on its Indemnification Counterclaim (the "Indemnification Motion"). I have personal knowledge of the matters set forth herein and, if called as a witness, could and would testify competently thereto.

3. I graduated from the University of California, Berkeley, with a B.A. in 1988, and received my J.D. with high honors from the University of Chicago Law School in 1991. After receiving my law degree, I served as a law clerk to Judge Alex Kozinski of the United States Court of Appeals for the Ninth Circuit, and then to Justice Sandra Day O'Connor of the Supreme Court of the United States. I also worked in the Office of the Solicitor General of the United States, in a capacity that would now be called a Bristow Fellow.

4. In private practice, I was a partner at Gibson, Dunn & Crutcher LLP for more than two decades and served as Co-Chair of the firm's nationwide Appellate and Constitutional Law Practice Group. I joined Weil in May 2022 and am currently Co-Head of Weil's Appeals and Strategic Consulting Practice, focusing on complex commercial litigation at both the trial and appellate level. Among other accolades, I have been nationally ranked in appellate law by Chambers USA for fifteen years.

5. I am one of the outside counsel primarily responsible for managing the *Epic* litigation in the United States. In that capacity, I have personal knowledge of the Law Firms, their respective roles in the *Epic* litigation, and the types of work that they performed. I also have personal knowledge regarding the non-Law Firm vendors, some of which these Law Firms engaged, and I have also reviewed a limited set of information regarding those vendors in connection with Apple's Indemnification Motion. I have not, however, reviewed the invoices or other detailed information provided by the Law Firms and other vendors in connection with the Indemnification Motion.

## I. WORK PERFORMED BY LAW FIRMS AND SECONDARY VENDORS IN THE *EPIC* LITIGATION

6. In connection with its Indemnification Motion, Apple seeks to recover legal fees and costs incurred in connection with its services provided by eight law firms in this matter: Gibson, Dunn & Crutcher LLP ("Gibson Dunn"); Latham & Watkins LLP ("Latham"); McDermott Will & Emery ("McDermott"); O'Melveny & Myers LLP ("O'Melveny"); Orrick, Herrington & Sutcliffe LLP ("Orrick"); Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"); Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"); and Weil, Gotshal & Manges LLP ("Weil") (collectively, "Law Firms").

*Gibson, Dunn & Crutcher LLP*

7. Gibson Dunn has offices across the United States and worldwide. Gibson Dunn was engaged to represent Apple in this case shortly after Epic filed suit on August 13, 2020. Lawyers from Gibson Dunn filed their initial appearances five days after the complaint was filed. *See, e.g.*, Dkts. 20-22. Gibson Dunn then represented Apple as lead counsel throughout trial and appeal on this case—with central involvement in every aspect of the litigation—and Gibson Dunn continues to represent Apple in this case. The lead Gibson Dunn partner was (and is) Cynthia Richman, who has been a partner at Gibson Dunn since 2012 and currently serves as Global Co-Chair of the firm's Antitrust and Competition Practice Group. She has received several accolades for her work litigating antitrust cases, including by Chambers; Global Competition Review's Top 100 Women in Antitrust; The Best Lawyers in America in the field of Litigation; a "Leading Lawyer" in merger control, cartels, and civil litigation/class action defense by Antitrust and U.S. Legal 500; one of the Lawdragon's "500 Leading Litigators in America"; and a "Future Litigation Star" by Benchmark Litigation and a Rising Star by Law360.

8. It is my understanding that Gibson Dunn engaged a number of vendors on behalf of Apple, including:

    a. <u>Analysis Group</u>: Analysis Group is a financial and economic consulting firm that provided support for Apple's testifying economic expert Professor Richard Schmalensee.

    b. <u>Aquipt, Inc.</u>: Aquipt provided rentals for copy equipment, network supplies, and computer equipment, among other similar office supplies.

  c. <u>Courtalert.Com, Inc.</u>:  Courtalert.Com provided document retrieval services, such as docket tracking among other services, to the Apple trial and appeal teams during the *Epic* litigation from January 2021 through September 2023.

  d. <u>Dalmatian Courier, Inc.</u>:  Dalmatian Courier provided messenger and courier services for the Apple trial team during the *Epic* litigation from February 2021 to May 2021.

  e. <u>David Binder Research, LLC</u>:  David Binder Research is an outside consultancy service that conducted research for the Apple trial team related to the *Epic* litigation.

  f. <u>Deluxe Delivery of DC Inc.</u>:  Deluxe Delivery of DC provided messenger and courier service for the Apple trial and appeal teams in the D.C. metropolitan area during the *Epic* litigation and appeal from November 2020 through January 2023.

  g. <u>Dub, Ana M.</u>:  Ms. Dub is a court reporter who provided transcription services for court hearings in the *Epic* litigation.

  h. <u>Ekhaus, Ruth</u>:  Ms. Ekhaus is a court reporter who provided transcription services for court hearings in the *Epic* litigation.

  i. <u>Eleven Canterbury LLC</u>:  Eleven Canterbury is a professional network of expert witnesses and litigation consultants with industry-specific expertise.  As part of the *Epic* litigation, Apple retained the services of two consulting, industry experts through Eleven Canterbury.

  j. <u>Expert Holdings, LLC dba IMS Consulting</u>:  Expert Holdings provided trial graphics consulting services, including the creation of trial demonstratives and prepared evidence for publication to the Court, during the *Epic* litigation from March 2021 to May 2021.

  k. <u>Federal Express Corporation (also known as FedEx)</u>:  Federal Express provided messenger and courier services for the Apple trial team during the *Epic* litigation from September 2020 through November 2021.

  l. <u>First Legal Network Insurance Services</u>:  First Legal Network Insurance Services assisted with service of subpoenas on behalf of the Apple trial team during the *Epic* litigation in November 2020, December 2020, and January 2021.

  m. <u>First Legal Network, LLC</u>:  First Legal Network provided messenger services to

1    send documents (primarily to remote workers during and following the COVID-19 pandemic).

2          n.    Harbor Experts LLC (also known as Harbor Labs):   Harbor Experts provides computer science, networking, and cybersecurity-related consulting services; in the *Epic* litigation, Harbor Experts provided support for Professor Aviel Rubin, who testified as an expert witness on behalf of Apple with respect to the security, privacy, and reliability of Apple's App Store.

          o.    HDLM Services, INC. dba Wheels of Justice:   In March 2021, Wheels of Justice provided service of subpoenas to aid in Apple's discovery work.  In May and April 2021 the company provided messenger services to send documents to remote workers amid the COVID-19 pandemic.

          p.    Hon. Elizabeth Laporte (JAMS):   In April 2021, at the request of the district court and with the consent of Epic, Judge Laporte served as a special master for resolving disputes between the parties regarding deposition designations.

          q.    Instacart:   Instacart was one of the vendors that provided food and drink to the Apple trial team during trial in May 2021.

          r.    L & D Bistro and Catering Inc.:   L & D Bistro and Catering was one of the vendors that provided food and drink to the Apple trial team during trial in May 2021.

          s.    Lucky 2 Logistics dba SDS Global Logistics:   Lucky 2 Logistics provided messenger and courier services for the Apple trial team in the New York metropolitan area during the *Epic* litigation from December 2020 through April 2021.

          t.    Mendocino Farms Texas, LLC:   Mendocino Farms was one of the vendors that provided food and drink to the Apple trial team during trial in May 2021.

          u.    Oakland Marriott City Center:   The Oakland Marriott City Center provided lodging and workspace for members of Apple's legal team and supporting experts and consultants during and immediately preceding trial in May 2021.

          v.    Ocean Tomo:   Ocean Tomo provided support for James E. Malackowski, who testified as an expert witness on behalf of Apple with respect to Apple's intellectual property assets and licenses, particularly those associated with the App Store, iOS, and software and tools

provided by Apple to third-party app developers, together with Apple's investment in and protection of those intellectual property assets.

w. <u>Office Depot, Inc.</u>: Office Depot provided office supplies to support the Apple trial team in the Epic litigation in April 2021.

x. <u>Omni-Invictus, LLC dba Array</u>: Omni-Invictus provided binding and printing services of trial readiness binders to the Apple trial team in the *Epic* litigation in April 2021.

y. <u>Reprints Desk, Inc.</u>: Reprints Desk is a service that the Apple trial and appeal teams used for document retrieval services of articles among other documents, during the *Epic* litigation and appeal from October 2020 to January 2022.

z. <u>Respectable Bird Shop</u>: Respectable Bird Shop was one of the vendors that provided food and drink to the Apple trial team during trial in May 2021.

aa. <u>Ryder Truck Rental, Inc. dba Ryder Trans</u>: Ryder Truck Rental provided a truck rental to transport trial supplies from Los Angeles, California to Oakland, California.

bb. <u>Skillman, Diane</u>: Ms. Skillman is a court reporter who provided transcription services for court hearings in the *Epic* litigation.

cc. <u>Special Delivery Service, Inc.</u>: Special Delivery Services provided messenger and courier services for the Apple trial and appeal teams in Dallas, Texas during the *Epic* litigation and appeal from September 2020 through August 2022.

dd. <u>Strut Legal, Inc.</u>: Strut Legal provided electronic briefing services to the Apple appeals team in January 2022 and August 2022.

ee. <u>United Parcel Service, Inc. (also known as UPS)</u>: United Parcel Service provided messenger and courier services for the Apple trial and appeal teams from September 2020 to April 2022.

ff. <u>University of Wisconsin System dba WISCO</u>: The University of Wisconsin System provided document retrieval services of articles for the Apple trial team during the *Epic* litigation in June 2021.

gg. <u>Veritext Legal Solutions</u>: From approximately December 2020 to April 2021, Veritext provided transcription, videography, and other logistical services for remote depositions

1  as well as transcription of video exhibits for use at trial.

2        hh.  <u>VitalCheck Wellness Inc.</u>:  VitalCheck Wellness provided daily COVID-19

3  testing for all members of Apple's trial team during and immediately preceding trial in May 2021.

4        ii.  <u>W 9 Microsolutions, Inc. dba Warp 9</u>:  Warp 9 provided trial exhibit branding and

5  printing services for Apple's legal team during and immediately preceding trial in May 2021.

6        jj.  <u>West Publishing Corporation dba Thomson</u>:  West Publishing Corporation

7  provided copies of reference materials to the Apple trial team during the *Epic* litigation in April

8  2021.

9        kk.  <u>Western Attorney Services</u>:  Western Attorney Services provided messenger

10  services to send documents to deponent and Apple fact witness, Eric Friedman.

11        ll.  <u>Western Messenger Service, Inc.</u>:  Western Messenger Service provided

12  messenger services for documents, particularly during trial in this case.

### *Latham & Watkins LLP*

14    9. Latham has offices across the United States and worldwide.  Latham provided additional insights
15  and support to Apple's counsel of record in preparation for oral argument before the Ninth Circuit Court
16  of Appeals and in connection with the submission of the petition for a writ of certiorari to the United
17  States Supreme Court.

18    10. The lead litigator on the team was Melanie M. Blunschi, who has practiced law at Latham since
19  2004, and has been a partner with Latham in the Litigation & Trial Department since 2013.  She currently
20  co-chairs the Bay Area Litigation & Trial Department and serves as Global Vice Chair for Latham's
21  Retail & Consumer Products industry group.  She was named a Leading Woman in Tech Law by the
22  *Recorder* this year, and recently was named a Class Action MVP by Law360 for her success resolving
23  high-stakes class actions.

### *McDermott Will & Emery*

25    11. McDermott is part of an international network of law firms with collectively more than 1,400
26  attorneys across the United States, Europe, and Asia.  McDermott was brought in to assist with the *Epic*
27  litigation in September 2020 and McDermott's work on this matter continued through July 2022.
28  McDermott's work in the *Epic* litigation included third-party discovery and strategic advice.

12. The lead litigator on the team was Peter John Sacripanti, who has nearly 40 years of litigation experience, and began his career as a federal prosecutor with the United States Department of Justice. Since joining McDermott in 1996, his practice has focused on complex business disputes, ranging from the defense of whistleblower claims and breach of fiduciary duty claims to serving as liaison counsel for a Fortune 100 company in a multi-district putative class/mass action.

13. It is my understanding that McDermott engaged two vendors on behalf of Apple:

    a.    <u>Veritext Legal Solutions</u>: Veritext Legal Solutions provided videographer and court report and stenographic transcription of depositions that McDermott handled for the *Epic* litigation.

    b.    <u>First Legal Network LLC:</u>  First Legal Network LLC provided subpoena services to serve third-party subpoenas in the *Epic* litigation.

<u>*O'Melveny & Myers LLP*</u>

14. O'Melveny is based in Los Angeles, California, with offices worldwide.  O'Melveny handled third party discovery against five third parties because Apple's lead trial counsel in the *Epic* litigation had a conflict of interest.  For the third-party document discovery work, that included preparation of subpoenas, meet and confer negotiations with the third parties to obtain their compliance with the subpoenas, review produced documents, and meet and confer discussion with the third parties regarding the terms of and compliance with the protective order.

15. The lead litigator on the team was David R. Eberhart, who has been licensed to practice law since 1992 and has been licensed to practice law in California since 1998.  He has practiced law continuously from admission to the bar to the present, and has focused his practice on litigation for technology companies.

16. It is my understanding that O'Melveny engaged two vendors on behalf of Apple:

    a.    <u>Veritext Legal Solutions</u>: Veritext Legal Solutions provided videographer and court report and stenographic transcription in the *Epic* litigation.

    b.    <u>Nationwide Legal LLC</u>:  Nationwide Legal LLC provided court services and filing fees service in the *Epic* litigation.

*Orrick, Herrington & Sutcliffe LLP*

17. Orrick has offices across the U.S. and worldwide. Orrick was retained in the *Epic* litigation to perform work on motions for temporary restraining order and for a preliminary injunction.

18. The lead litigator on the team was E. Joshua Rosenkranz, who has argued more than 200 appeals in state and federal appellate courts across the nation, including 20 before the U.S. Supreme Court. He has been named *American Lawyer*'s "Litigator of the Year" twice in addition to being a finalist for 2022 and clerked for U.S. Supreme Court Justice William J. Brennan Jr. and then-Judge Antonin Scalia on the D.C. Circuit.

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*

19. Paul, Weiss is headquartered in New York, New York, has more than 1,000 lawyers and has offices in the U.S. and worldwide. In 2019, Paul, Weiss was recognized by The American Lawyer as the "Law Firm of the Year." Paul, Weiss is consistently ranked as one of the top litigation practices in the country by The American Lawyer, Chambers, National Law Journal, and U.S. News & World Report, among others.

20. For the *Epic* litigation, Paul, Weiss primarily assisted Apple during trial, including working with expert witnesses to develop direct examinations, drafting multiple cross examinations, participating in meetings with Apple regarding the status of the trial and trial strategy, and preparing proposed findings of fact and conclusions of law pre- and post-trial.

21. Karen Dunn, William Isaacson, and Meredith Dearborn from Paul, Weiss also assisted in the defense of Apple in the *Epic* litigation. Among many other accolades, Ms. Dunn was recently named "Litigator of the Year" by The American Lawyer for handling "high-stakes, high-profile and hard-fought" cases and has been named a "Star Individual," the highest recognition from Chambers and Partners.

22. It is my understanding that Paul, Weiss engaged nine vendors on behalf of Apple.

    a.    <u>Aquipt Inc.</u>: Aquipt Inc. provided support with respect to trial logistics.

    b.    <u>Case Driven Technologies Inc.</u>: Case Driven Technologies Inc. assisted the case team with copying and printing relevant materials.

    c.    <u>Digital One Legal Solutions</u>: Digital One Legal Solutions assisted the case team

with copying and printing relevant materials.

   d. <u>FedEx</u>: FedEx assisted the case team with delivery of relevant materials for trial.

   e. <u>The Levinson Group</u>: provided advice regarding strategic communications with the media in connection with the trial.

   f. <u>LMI Trial Services</u>: LMI Trial Services assisted with the preparation of trial demonstratives and to provide daily trial tech support in court.

   g. <u>Page Vault Inc.</u>: Page Vault Inc. provided the case team with access to necessary materials.

   h. <u>Washington Express</u>: Washington Express assisted the case team with delivery of relevant materials for trial.

   i. <u>World Courier</u>: World Courier assisted the case team with delivery of relevant materials for trial.

### *Skadden, Arps, Slate, Meagher & Flom LLP*

23. Skadden is a multinational law firm headquartered in New York, New York that has more than 1,500 attorneys spanning dozens of practice areas, including antitrust and competition. Skadden was principally involved in the *Epic* litigation during the case's discovery phase, though it also provided legal advice to Apple during and after the case's trial phase. Skadden conducted factual investigation interviews in furtherance of Apple's discovery and trial strategy efforts with various Apple employees, including current and former employees, and handled third-party discovery.

24. The lead litigator on the team was Karen Hoffman Lent, who is the head of the New York office's antitrust and competition practice and co-head of the firm's sports practice. In these capacities, she represents a wide variety of clients in antitrust, sports, and other complex litigation matters at both the trial and appellate court levels and provides an array of general antitrust counseling. In her antitrust litigation practice, she has handled litigations involving price fixing, group boycotts, monopolizations, and other alleged restraints of trade.

### *Weil, Gotshal & Manges LLP*

25. Weil is based in New York, with offices worldwide. Weil has worked extensively with Apple's in-house counsel team and other outside counsel to draft all briefing currently before the Court, and took

the lead on arguing the appeal before the Ninth Circuit in November 2022. Regarding Apple's indemnification counterclaim, Weil has been principally responsible for preparing the Motion and other related filings.

26. I am the lead litigator on the Weil team. I am the Co-Head of Weil's Appeals and Strategic Consulting Practice. Among other accolades, I have been nationally ranked in appellate law by Chambers USA for fifteen years.

27. Weil engaged two vendors on behalf of Apple:

  a. <u>Irwin, Carlyn</u>: Ms. Irwin, of Cornerstone Research, Inc., is a forensic accounting expert based out of California. Ms. Irwin was engaged to calculate Apple's attorneys' fees and litigation expenses for the purposes of its indemnification claim.

  b. <u>Pearl, Richard M.</u>: Mr. Pearl is an expert on attorneys' fees and costs, and is based out of California. Mr. Pearl was engaged to offer his opinion as to the reasonableness of Apple's billing processes, as well as the reasonableness of the fees Apple paid for the *Epic* litigation.

**II. WORK PERFORMED BY VENDORS PAID DIRECTLY BY APPLE IN THE *EPIC* LITIGATION**

28. In connection with its Motion, Apple seeks to recover fees and costs incurred related to professional and other services provided by other vendors to Apple throughout the *Epic* litigation. This includes: eDiscovery vendors Consilio Holdings Inc. ("Consilio") and OPEN TEXT INC. ("Open Text"); and expert witness vendors Compass Lexecon ("Compass") and Cornerstone Research ("Cornerstone").

29. My understanding of the role each of these vendors played in the *Epic* ligation is summarized below.

*Consilio*

30. Consilio is a worldwide leader in end-to-end e-discovery services, providing hosting and review services for world-leading S&P 100 corporations in technology, pharmaceutical, financial services, energy, and numerous other industries. Consilio conducted managed document review and related tasks, including: (1) initial substantive review, including relevance and issue tagging, initial privilege analysis, identification of private customer data, and identification of proprietary technical information; (2)

1  focused privilege review, including analysis of documents for attorney-client privilege and attorney work
2  product, redaction or withholding of that information, and redaction or withholding of sensitive customer
3  and client technical information; and (3) regular updates and substantive communications related to
4  same. Due to the scope and complexity required for the review, over the course of the review project, a
5  total of 460 document review professionals were engaged on the matter.

### OPEN TEXT INC.

7  31. Open Text is a leader in eDiscovery solutions, providing technology and related services to a
8  wide variety of customers worldwide. Open Text facilitated the hosting and eventual production of data
9  relevant to the *Epic* litigation.

### Compass Lexecon

11  32. Compass is one of the world's leading economic consulting firms. It is involved in a broad
12  spectrum of matters related to economics and finance in legal and regulatory proceedings, strategic
13  decisions, and public policy debates. Compass has over 825 employees, including over 200 with PhDs,
14  in 21 offices globally. Compass performed work in the *Epic* litigation in four primary phases: (1)
15  preparation and filing of an initial expert report; (2) preparation and filing of a rebuttal report; (3)
16  preparation of expert and sitting for deposition; and (4) preparation for trial testimony and attending trial.

### Cornerstone Research

18  33. Cornerstone provides economic and financial consulting and expert testimony in all phases of
19  complex disputes and regulatory investigations and has over 900 staff in nine offices across the U.S. and
20  Europe. In the *Epic* litigation, Cornerstone provided support for three testifying experts in the *Epic*
21  litigation: Professor Dominique M. Hanssens of UCLA, Anderson School of Management; Professor
22  Lorin M. Hitt of the University of Pennsylvania, Wharton School; and Professor Francine Lafontaine of
23  the University of Michigan, Ross School of Business.

24  34. In addition, Cornerstone teams supported Apple and counsel from Gibson Dunn in producing
25  data and other materials in response to requests from Epic, preparing requests for data and other
26  production materials from Epic, and, in coordination with attorneys from McDermott, O'Melveny, and
27  Skadden, as well as Gibson Dunn, assisting in the preparation of subpoenas for third parties and
28  analyzing materials produced in response to these subpoenas.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of January, 2024, in Washington, D.C.

Respectfully submitted,

By:   */s/ Mark A. Perry*
      MARK A. PERRY