THEODORE J. BOUTROUS JR.,
SBN 132099
  tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JAY P. SRINIVASAN, SBN 181471
  jsrinivasan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
JULIAN W. KLEINBRODT, SBN 302085
  jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200
Facsimile: 415.393.8306

MARK A. PERRY, SBN 212532
  mark.perry@weil.com
JOSHUA M. WESNESKI (D.C. Bar No.
1500231; *pro hac vice pending*)
  joshua.wesneski@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000
Facsimile: 202.857.0940

MORGAN D. MACBRIDE, SBN 301248
  morgan.macbride@weil.com
WEIL, GOTSHAL & MANGES LLP
Redwood Shores Pkwy, 4th Floor
Redwood Shores, CA 94065
Telephone: 650.802.3044
Facsimile: 650.802.3100

MARK I. PINKERT (Fla. Bar No. 1003102; *pro hac vice pending*)
  mark.pinkert@weil.com
KATHERINE G. BLACK (Fla. Bar No.
1031465; *pro hac vice pending*)
  katie.black@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: 305.577.3100
Facsimile: 305.374.7159

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.<br><br>        Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>        Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR<br><br>**DECLARATION OF RICHARD M. PEARL IN SUPPORT OF APPLE INC.'S MOTION FOR ENTRY OF JUDGMENT ON ITS INDEMNIFICATION COUNTERCLAIM**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

Page

I.      Background And Experience ..................................................................................1

II.     Scope of Testimony ..............................................................................................6

III.    Apple's Total Request for Attorneys' Fees Is Reasonable .....................................7

        A.      Apple Paid Its Lawyers Reasonable Rates for the *Epic* Matter ....................................7

        B.      The Hours of Work That Apple Paid in the *Epic* Matter Was Reasonable .................15

        C.      Apple's Voluntary 10% Reduction Further Bolsters Reasonableness........................19

IV.     Apple's Costs and Expenses Are Reasonable........................................................20

V.      Conclusion ..........................................................................................................21

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                      **Page(s)**

3

*Alcoser v. Thomas,*
4
   No. A124848, 2011 WL 537855 (Cal. Ct. App. Feb. 16, 2011)................................4

5

*Amphastar Pharms., Inc. v. Aventis Pharma SA,*
   No. 5:09-CV-00023, 2020 WL 8680070 (C.D. Cal. Nov. 13, 2020) .....................................10
6

*Andrews v. Equinox Holdings, Inc.,*
7
   570 F. Supp 3d 803 (N.D. Cal. 2021) .......................................................5

8

*Apple Inc. v. Samsung Electronics Co. Ltd. et al.,*
   No. 5:11-CV-01846 (N.D. Cal.) .......................................................9
9

*Calvo Godwin & Jacob LLP v. Lujan,*
10
   234 Cal. App. 4th 608 (2015) .....................................................2, 15

11

*Camacho v. Bridgeport Financial, Inc.,*
12
   523 F.3d 973 (9th Cir. 2008) .......................................................4

13

*Children's Hosp. & Med. Ctr. v. Bonta,*
   97 Cal. App. 4th 740 (2002) .....................................................7, 9
14

*In re Conservatorship of Whitley,*
15
   50 Cal. 4th 1206 (2010) .......................................................3

16

*Copeland v Marshall,*
17
   641 F.2d 880 (D.C. Cir. 1980) (en banc) .......................................................18

18

*Davis v. City & County of San Francisco,*
   976 F.2d 1536 (9th Cir. 1992) .......................................................4
19

20
*Davis v. St. Jude Hosp.,*
   No. 30201200602596CUOECX, 2018 WL 7286170 (Orange Cty. Super. Ct. Aug.
21
   31, 2018) .......................................................3

22
*Delaney v. Baker,*
   20 Cal. 4th 23 (1999) .......................................................3
23

*Dept. of Fair Employ. and Hous. v. Law Sch. Admission Council, Inc.,*
24
   No. 12-cv-08130, 2018 WL 5791869 (N.D. Cal. Nov. 5, 2018) ................................4

25
*Feminist Women's Health Ctr. v Blythe,*
   32 Cal. App. 4th 1641 (1995) .......................................................18
26

27
*Flannery v. Prentice,*
   26 Cal. 4th 572 (2001) .......................................................4
28

*French v. City of Los Angeles*,
  No. 5:20-cv-00416-JGB-SP, 2022 WL 2189649 (C.D. Cal. May 10, 2022)..........................13

*Graham v. DaimlerChrysler Corp.*,
  34 Cal. 4th 553 (2004) .........................................................................................3, 4

*Hardie v. Nationstar Mortg. LLC*,
  32 Cal. App. 5th 714 (2019) ............................................................................................3

*Hartshorne v. Metlife, Inc.*,
  No. BC576608, 2017 WL 1836635 (Los Angeles Super. Ct. May 02, 2017)..........................3

*Havensight Cap. LLC v. Facebook, Inc.*,
  No. 2:17-cv-06727 (C.D. Cal. Nov. 9, 2018), Dkt. 58 ........................................................10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...................................................................................................16, 18

*Herring Networks, Inc. v. Maddow*,
  2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ..................................................................10

*Highland Springs Conference & Training Ctr. v. City of Banning*,
  42 Cal. App. 5th 416 (2019) ...........................................................................................3

*Human Rights Defense Center v. County of Napa*,
  No. 20-cv-01296-JCS, 2021 WL 1176640 (N.D. Cal. Mar. 28, 2021).........................5, 8, 11

*In re Hurtado*,
  2015 WL 6941127, No. 09-16160-A-13 (E.D. Cal. Nov. 6, 2015) .........................................3

*Int'l Billing Servs., Inc. v. Emigh*,
  84 Cal. App. 4th 1175 (2000) .........................................................................................2

*Kang v. Wells Fargo Bank*,
  No. 17-cv-06220, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021)..........................................10

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ..................................................................................................3

*Lealao v. Beneficial California, Inc.*,
  82 Cal. App. 4th 19 (2000) .............................................................................................4

*Lolley v. Campbell*,
  28 Cal. 4th 367 (2002) ...................................................................................................3

*Mangold v. Cal. Public Utilities Commission*,
  67 F.3d 1470 (9th Cir. 1995) ..........................................................................................4

*Margolin v. Reg. Planning Comm'n*,
  134 Cal. App. 3d 999 (1982) ..........................................................................................9

*Maria P. v. Riles*,
   43 Cal. 3d 1281 (1987) ........................................................................3

*Conservatorship of McQueen*,
   59 Cal. 4th 602 (2014) ........................................................................4

*Monster Energy Co. v. Vital Pharms. Inc.*,
   No. EDCV 18-1882-JGB, 2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) ...........................13, 17

*Monster, LLC et al. v. Beats Elecs., LLC et al.*,
   No. BC595235 (Los Angeles Cnty. Sup. Ct.) ........................................................9

*Moore v. Jas. H. Matthews & Co.*,
   682 F.2d 830 (9th Cir. 1982) ........................................................................16

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ........................................................................16

*Ocampo v. Apple Inc.*,
   No. 5:20-CV-05857-EJD (N.D. Cal.) ........................................................................9

*Orozco v. WPV San Jose, LLC*,
   36 Cal. App. 5th 375 (2019) ........................................................................2

*Peak-Las Positas Partners v Bollag*,
   172 Cal. App. 4th 101 (2009) ........................................................................17

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV 11-07098-AB, 2015 WL 1746484 (C.D. Cal. 2015) ...........................8, 17

*PLCM Group, Inc. v. Drexler*,
   22 Cal. 4th 1084 (2000) ........................................................................19

*Plumbers & Steamfitters, Local 290 v Duncan*,
   157 Cal. App. 4th 1083 (2007) ........................................................................20

*Prison Legal News v. Ryan*,
   No. 19-17449 (9th Cir. Mar. 21, 2023), DE 78 ...........................10, 11

*Ramon v Cnty. of Santa Clara*,
   173 Cal. App. 4th 915 (2009) ........................................................................16

*Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*,
   No. CV 2019-0585, 2021 WL 5174088 (Del. Ch. Nov. 8, 2021)...........................10

*Sciacca v. Apple, Inc.*,
   No. 5:18-CV-03312 (N.D. Cal.) ........................................................................9

*Serrano v. Unruh*,
   32 Cal.3d 621 (1982) ........................................................................18

*Sonoma Land Trust v. Thompson*,
   63 Cal. App. 5th 978 (2021) ..................................................................................3

*Stonebrae L.P v. Toll Bros.*,
   No. C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011).......................16

*Stratton v. Beck*,
   30 Cal. App. 5th 901 (2018) ..................................................................................2

*Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*,
   36 Cal. App. 5th 970 (2019) ..................................................................................3

*Syers Props III, Inc. v. Rankin*,
   226 Cal. App. 4th 691 (2014) ................................................................................3

*In re Tobacco Cases I*,
   216 Cal. App. 4th 570 (2013) ................................................................................4

*Trendsettah USA, Inc. v. Swisher, Int'l, Inc.*,
   No. 8:14-cv-01664, 2020 WL 11232926 (C.D. Cal. Dec. 2, 2020)........................10

*TruGreen Companies LLC v. Mower Brothers, Inc.*,
   953 F. Supp. 2d 1223 (D. Utah 2013) ..................................................................3

*Trustees of Constr. Indus. v. Redland Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) ..............................................................................21

*United Steelworkers of Am. V. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ................................................................................9

*Unwired Planet, LLC v. Apple Inc.*,
   No. 4:13-CV-04134 (N.D. Cal.) ..............................................................................9

*Vasquez v. State of California*,
   45 Cal. 4th 243 (2009) ..........................................................................................4

*Vo v. Las Virgenes Muni. Water Dist.*,
   79 Cal. App. 4th 440 (2000) ................................................................................17

*Wit v. United Behavioral Health*,
   578 F. Supp. 3d 1060 (N.D. Cal. Jan. 5, 2022)........................................5, 8, 10, 11

*Woodhouse v. United States Gov't*,
   No. 2:21-CV-06372, 2021 WL 6333451 (C.D. Cal. Dec. 31, 2021)......................10

*Yenidunya Invs. Ltd. v. Magnum Seeds, Inc.*,
   No. CIV 2:11-1787 WBS, 2012 WL 538263 (E.D. Cal. Feb. 17, 2012)...................9

*Yo LLC v. Krucker*,
   No. 17CV306261 (Santa Clara Superior Ct., Feb. 9, 2022) ................................11

*Yost v. Forestiere*,
   51 Cal. App. 5th 509 (2020) ........................................................................3

**Statutes**

Cal. Civ. Code § 1021.5 ...........................................................................3, 21

**Other Authorities**

Cal. Rules of Professional Conduct 1.5(b)...........................................17, 18

*California Attorney Fee Awards* (2d ed. Calif. Cont. Ed. of the Bar 1994) ..................................2

*California Attorney Fee Awards* (3d ed. Calif. Cont. Ed. of the Bar 2010) ..................................2

Debra Weiss, *This BigLaw firm charges nearly $2,500 per hour for top billers' bankruptcy work*, ABA Journal, December 19, 2023 ..........................12

Vaidehi Mehta, *Billing Rates Surge Past $2k in the World of High-Stakes Litigation*, FindLaw, Sept. 27, 2023 ...........................................12

Roy Strom, *Rising Rates Are Law Firms' Salve Amid Layoffs, Pay Cuts,* Bloomberg Law (Bureau of National Affairs, Inc.), Jan. 19, 2023 ..........................12

*Wrongful Employment Termination Practice* (2d ed. Calif. Cont. Ed. of the Bar 1997) ...............3

PEARL DECLARATION IN SUPPORT OF APPLE'S
MOTION FOR ENTRY OF JUDGMENT
   vi
   CASE NO. 4:20-CV-05640-YGR

I, Richard M. Pearl, hereby declare as follows:

1.       I am a member in good standing of the California State Bar. I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California. My current practice is almost entirely focused on cases involving attorneys' fees, including the representation of parties in fee litigation and appeals, and service as an expert witness and consultant on attorneys' fees issues. I make this declaration on the basis of the information described and cited throughout this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

2.       In this case, I have been asked by Defendant/Counterclaimant Apple Inc. ("Apple") to render an opinion as to the reasonableness of its request for an order requiring the Plaintiff/Counter-defendant Epic Games, Inc. ("Epic") to reimburse it for $73,404,326 of the attorneys' fees and expenses it has incurred in this matter.

3.       To form my opinion as to the reasonableness of the attorneys' fees and expenses Apple requests, I have reviewed extensive materials that describe the history of this matter, the results achieved, counsel's qualifications and experience, the nature of the work required by this case, and the attorneys' fees they request. A full list of materials I have reviewed is included in **Exhibit A**. In addition, I have consulted with the attorneys at Weil, Gotshal & Manges LLP ("Weil"), the law firm that represents Apple in this indemnification matter, about this motion and the underlying facts of the case. I have also had conversations with Apple's in-house counsel and personnel and have reviewed Apple's e-billing and invoice policies.

## I.       Background And Experience

4.       Briefly summarized, my background is as follows: I am a 1969 graduate of Berkeley School of Law (then Boalt Hall), University of California, Berkeley, California. I took the California Bar Examination in August 1969 and learned that I had passed it in November of that year, but because I was working as an attorney in Atlanta, Georgia for the Legal Aid Society of Atlanta ("LASA"), I was not admitted to the California Bar until February 1970. I worked for LASA until the summer of 1971, then went to work in California's Central Valley for California Rural Legal Assistance, Inc. ("CRLA"), a statewide legal services program. From 1975 until 1977, I directed CRLA's "Backup Center", which

1   provided assistance on impact litigation to other legal services programs throughout Central and

2   Northern California. From 1977 to 1982, I was CRLA's Director of Litigation, supervising more than

3   fifty attorneys. In 1982, I transitioned into private practice, first in a small law firm and then as a sole

4   practitioner, in which capacity I have practiced for the past 36 years.

5        5.   Martindale Hubbell rates my law firm "AV Preeminent," representing the highest level

6   of professional, peer-reviewed excellence. I have been selected as a Northern California "Super Lawyer"

7   in Appellate Law for the years 2005-2008 and 2010-2023. I also have served as a member of the

8   California State Bar's Attorneys' Fees Task Force and have testified before the State Bar Board of

9   Governors and the California Legislature on attorneys' fee issues. A true and correct copy of my résumé

10   is attached as **Exhibit B**.

11        6.   Since 1982, the focus of my legal work has been in general civil litigation and appellate

12   practice, with an increasing emphasis on cases and appeals involving attorneys' fee issues. Over that

13   period, I have lectured and written extensively on court-awarded attorneys' fees. I am the author of

14   *California Attorney Fee Awards* (3d ed. Cal. Cont. Ed. of the Bar 2010), and its cumulative annual

15   Supplements between 2011 and March 2023. I also authored *California Attorney Fee Awards* (2d ed.

16   Cal. Cont. Ed. of the Bar 1994), and its 1995 through 2008 Annual Supplements, and authored the 1984

17   through 1993 annual Supplements to the predecessor treatise, *CEB's California Attorney's Fees*

18   *Award Practice*.

19        7.   Several courts have referred to my CEB treatise as "[t]he leading California attorney fee

20   treatise." *Calvo Godwin & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 621 (2015); *see also, e.g.*, *Int'l*

21   *Billing Servs., Inc. v. Emigh*, 84 Cal. App. 4th 1175, 1193 (2000) ("the leading treatise"); *Stratton v.*

22   *Beck*, 30 Cal. App. 5th 901, 911 (2018) ("a leading treatise"); *Orozco v. WPV San Jose, LLC*, 36 Cal.

23   App. 5th 375, 409 (2019) ("a leading treatise on California attorney's fees"). It has been cited with

24

25

26

27

28

approval by the California Supreme Court and Court of Appeal many other times,[1] as well as by many other California trial courts[2] and federal district courts.[3]

8.    In addition, I authored a federal manual on attorneys' fees entitled *Attorneys' Fees: A Legal Services Practice Manual*, published by the Legal Services Corporation. I am also the co-author of the chapter on "Attorney Fees" in Volume 2 of *CEB's Wrongful Employment Termination Practice* (2d ed. Calif. Cont. Ed. of the Bar 1997).

9.    More than 98% of my current practice is devoted to issues involving reasonable attorneys' fees. I have appeared as counsel of record in over 150 attorneys' fee applications in state and federal courts, primarily representing other attorneys. I also have briefed and argued more than 40 appeals, at least 30 of which have involved attorneys' fees issues. These include five successful attorneys' fee cases in the California Supreme Court:

- *Maria P. v. Riles*, 43 Cal. 3d 1281 (1987), which upheld a fee award under Cal. Civ. Code § 1021.5 based on a preliminary injunction obtained against the State Superintendent of Education.

- *Delaney v. Baker*, 20 Cal. 4th 23 (1999), which held that heightened remedies, including attorneys' fees, are available in suits against nursing homes under California's Elder Abuse Act.

- *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), which reaffirmed that contingent risk multipliers are an essential consideration under California attorneys' fee law.

---

[1] *See, e.g.*, *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 576, 584 (2004); *Lolley v. Campbell*, 28 Cal. 4th 367, 373 (2002); *In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214–15, 1217 (2010); *Sonoma Land Trust v. Thompson*, 63 Cal. App. 5th 978, 986 (2021); *Yost v. Forestiere*, 51 Cal. App. 5th 509, 530 n.8 (2020); *Highland Springs Conference & Training Ctr. v. City of Banning*, 42 Cal. App. 5th 416, 428, n.11 (2019); *Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist.*, 36 Cal. App. 5th 970, 988 (2019); *Hardie v. Nationstar Mortg. LLC*, 32 Cal. App. 5th 714, 720 (2019); *Syers Props III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698, 700 (2014).

[2] *See, e.g.*, *Davis v. St. Jude Hosp.*, No. 30201200602596CUOECX, 2018 WL 7286170, at *4 (Orange Cty. Super. Ct. Aug. 31, 2018); *Hartshorne v. Metlife, Inc.*, No. BC576608, 2017 WL 1836635, at *10, (Los Angeles Super. Ct. May 02, 2017).

[3] *See In re Hurtado*, 2015 WL 6941127, No. 09-16160-A-13 (E.D. Cal. Nov. 6, 2015); *TruGreen Companies LLC v. Mower Brothers, Inc.*, 953 F. Supp. 2d 1223, 1236 nn.50, 51 (D. Utah 2013).

- *Flannery v. Prentice*, 26 Cal. 4th 572 (2001), which held that under California law, in the absence of an agreement to the contrary, statutory attorneys' fees belong to the attorney whose services they are based upon.

- *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004), which held that the "catalyst" theory of fee recovery remained viable under California law and that lodestar multipliers could be applied to fee motion work.

10. I have also represented and argued on behalf of *amicus curiae* in the Supreme Court of California. I represented an *amicus curiae* in *Conservatorship of McQueen*, 59 Cal. 4th 602 (2014), which held that attorneys' fees incurred for appellate work were not "enforcement fees" subject to California's Enforcement of Judgments law, and I presented the argument that the Court ultimately adopted. Additionally, along with Richard Rothschild of the Western Center on Law and Poverty, I prepared and filed an *amicus curiae* brief in *Vasquez v. State of California*, 45 Cal. 4th 243 (2009).

11. I have handled several other appeals involving reasonable attorneys' fees, including: *Davis v. City & County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) (represented plaintiffs' attorneys on fee motion in major employment discrimination class action in the district court and before the Ninth Circuit); *Mangold v. Cal. Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995) (represented plaintiffs' attorney on fees appeal); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008) (same); *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) (consumer class action in which I consulted extensively on fees appeal and represented plaintiffs' counsel on remand); and *Alcoser v. Thomas*, No. A124848, 2011 WL 537855 (Cal. Ct. App. Feb. 16, 2011) (tenant class action in which I represented class counsel on a fee motion in the trial court and as co-counsel on both punitive damages and fee issues in the appellate court). An expanded list of representative reported decisions in cases I have handled is set out in **Exhibit B**, at 4–8.

12. I have been retained by various governmental entities, including the California Attorney General's office, at my then-current rates, to consult with them and serve as their expert regarding their affirmative attorney fee claims. *See, e.g.*, *In re Tobacco Cases I*, 216 Cal. App. 4th 570, 584 (2013); *Dept. of Fair Employ. and Hous. v. Law Sch. Admission Council, Inc.*, No. 12-cv-08130, 2018 WL

5791869, (N.D. Cal. Nov. 5, 2018).

13.    I am frequently called upon to opine about the reasonableness of attorneys' fees, and numerous federal and state courts have relied expressly on my testimony on those issues.

14.    Most recently, in *Wit v. United Behavioral Health*, 578 F. Supp. 3d 1060, 1079 (N.D. Cal. Jan. 5, 2022), the court stated it "place[d] significant weight on Pearl's opinion that the rates charged by all of the timekeepers listed above are reasonable and 'in line with the standard hourly noncontingent rates charged by Bay Area law firms that regularly engage in civil litigation of comparable complexity.' . . . Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California (including the undersigned) in determining reasonable billing rates."

15.    Previously, in *Human Rights Defense Center v. County of Napa*, No. 20-cv-01296-JCS, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021), the Court stated that it had "place[d] significant weight on the opinion of Mr. Pearl that the rates charged by all of the timekeepers listed above are reasonable and in line with the rates charged by law firms that engage in federal civil litigation in the San Francisco Bay Area." The Court found that "Mr. Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California [] in determining reasonable billing rates." *Id.*

16.    Likewise, in *Andrews v. Equinox Holdings, Inc.*, 570 F. Supp 3d 803, 807 (N.D. Cal. 2021), the court quoted the above language from the *Human Rights Defense Center* case and concluded: "This Court similarly finds Pearl's opinions well supported and persuasive." *Id.*

17.    In addition to the *Wit*, *Andrews*, and *Human Rights Defense Center* cases cited above, state and federal courts have cited my testimony favorably in at least 41 reported decisions. *See* **Exhibit C.**

18.    Through my writing and practice, I have become very familiar with the attorneys' fees charged by attorneys in California and elsewhere. I have obtained this familiarity in several ways, including by: (1) representing litigants and/or their attorneys in attorneys' fee litigation; (2) serving as a consultant and/or expert in numerous fee matters; (3) discussing fees with other attorneys; (4)

reviewing declarations regarding prevailing market rates and other factors filed in mine and other attorneys' cases; and (5) reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorneys' fees in the legal newspapers and treatises.

19.     In this case, a complete list of the case materials that I reviewed is attached as **Exhibit A**. In addition, each of the law firms engaged in the *Epic* litigation has prepared a summary of its work on the matter, including the qualifications and experience of its attorneys. I have reviewed those materials as well. I also have consulted with the Weil attorneys representing Apple for this indemnification litigation, as well as with various Apple personnel who are familiar with the processes by which Apple paid its law firms for their work in this matter, and with Apple's legal staff who engaged on a regular basis with Apple's outside law firms and their litigation strategies and tasks.

**II.    Scope of Testimony**

20.     Apple's indemnification counterclaim in this case is based on the Developer Program License Agreement ("DPLA"). While I am not offering any legal opinions in connection with this engagement, it is my understanding that California courts honor the contracting parties' agreed-upon language and intent in formulating indemnification provisions.

21.     The DPLA that Epic and Apple signed includes an indemnification provision that covers all "Losses," defined as "any and all claims, losses, liabilities, damages, taxes, expenses and costs, including without limitation, attorneys' fees and court costs (collectively, 'Losses'), incurred by [Apple] and arising from or related to . . . [Epic's] breach of any certification, covenant, obligation, representation or warranty in [the DPLA], including Schedule 2." PX-2619.40 (DPLA § 10). The indemnification provision does not include "reasonableness" or any other limitation on those "Losses." To the contrary, Losses are recoverable "without limitation" for Epic's breach of the DPLA, which is undisputed.

22.     Nonetheless, Weil has asked me to assess the reasonableness of Apple's request for Losses, as though it were a typical post-judgment motion for attorneys' fees and costs. They asked me to evaluate reasonableness under California law, which governs the DPLA. *See* Rule 52 Order at 167.

### III.  Apple's Total Request for Attorneys' Fees Is Reasonable

#### A.  Apple Paid Its Lawyers Reasonable Rates for the *Epic* Matter

23.     Under California law, requested hourly rates are reasonable if they are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 783 (2002).[4]  The hourly rates paid by Apple and requested here easily meet that standard.

24.     In formulating my opinion, I have reviewed and am aware of the hourly rates charged by Apple's law firms and each timekeeper for their work on this matter.  Those rates ranged from ▮ per hour to ▮ per hour for all law firm staff, including paralegals and other support staff.

25.     For all of Apple's attorneys on the matter, the range was from ▮ per hour to ▮ per hour. *See* Irwin Decl. ¶ 19.  Because the majority of hours were billed at rates much lower than the high-end, however, Apple ultimately paid a weighted average hourly rate of ▮ for all its attorneys' work—*i.e.*, weighted based on the number of hours each timekeeper billed as a percentage of the total hours billed in the matter.  *See id*.  The weighted average was calculated to include discounts (*i.e.*, what Apple actually paid).  *See id*.

26.     In addition to the materials I have reviewed (**Exhibit A**), I also am aware of the very high and well-deserved reputation and standing in the legal community that Apple's law firms here enjoy: Gibson, Dunn & Crutcher LLP ("Gibson Dunn"); Latham & Watkins LLP ("Latham"); McDermott Will & Emery ("McDermott"); O'Melveny & Myers LLP ("O'Melveny"); Orrick, Herrington & Sutcliffe LLP ("Orrick"); Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"); Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"); and Weil.  I also am aware of the high quality of their work and their high degree of success in this case.

27.     In light of these facts and the information about non-contingent hourly rates I have gathered, the hourly rates charged to and paid by Apple in this matter are, in my opinion, well within the range of the non-contingent market rates charged by both local and national attorneys of reasonably comparable experience, skill, and expertise for reasonably similar services.

---

[4] In this declaration, I cite to legal authorities not as argument but to explain the legal standards on which my opinions are based.

28.     I base that opinion on the following five factors:

### i.  My Knowledge of the Legal Marketplace

29.     My opinion is based initially on my long and extensive experience and expertise regarding the Northern California legal marketplace, as noted in the numerous reported cases listed above in ¶¶ 7–17 and in **Exhibit C**.  *See, e.g.*, *Wit*, 578 F. Supp. 3d at 1079 ("the Court places significant weight on Pearl's opinion");  *Human Rights Defense Center*, 2021 WL 1176640 at *11 ("Mr. Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts").

30.     As noted below in ¶¶ 36–58, the range of rates and the weighted average rate (*i.e.*, ▮▮▮ per hour) that Apple has paid for this matter fall well within the range of rates charged and paid for comparable work in the relevant marketplace.  Further, based on my decades of experience, I believe that Apple paid reasonable rates to each of the individual law firms and for each of the timekeepers that worked on the *Epic* matter.

### ii.  Apple's Knowledge of the Legal Marketplace

31.     Apple is a highly sophisticated consumer of legal services, able to negotiate discounted hourly rates with all of its principal law firms.  As such, Apple is familiar with the local and global legal marketplace and the rates paid to comparably qualified attorneys for comparable high-stakes federal commercial litigation.  As a profit-generating company, Apple had no incentive to pay more than market rates for its attorneys.  To the contrary, it is Apple's policy to negotiate discounted rates with all of its vendors, and it often obtains rate discounts from top tier and other law firms.  Rollins Decl. ¶ 6.

32.     In this case, Apple was able to retain top-tier law firms, including Gibson Dunn and Weil, ▮▮▮▮▮▮▮▮▮▮▮.  Apple's decision to retain those firms ▮▮▮▮▮▮▮▮▮ alone is a strong indication that those rates are within the range of marketplace rates for similar top-tier firms throughout the country and locally.  *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB, 2015 WL 1746484, at *18 n.14 (C.D. Cal. 2015) ("[E]vidence that an institutional client in a competitive legal market was willing to pay the rates charged without any guarantee of reimbursement is important evidence that the rate was reasonable."),  *aff'd* 847 F.3d 657, 675 (9th Cir. 2017).

33.     For many of the law firms Apple works with regularly, including Gibson Dunn and Weil, Apple paid for their legal services ████████████████████████████████████ ███████████. Rollins Decl. ¶¶ 6, 25. Again, this demonstrates that the rates are "within the range" of rates charged by comparably qualified attorneys for comparably complex work.

34.     Apple's pre-existing relationships with Gibson Dunn and Weil are another strong indication that Apple believed it was paying no more than fair market value for the work it was receiving. Gibson Dunn has represented Apple in other high-profile cases at ████████████████, including *Apple Inc. v. Samsung Electronics Co. Ltd. et al.*, No. 5:11-CV-01846 (N.D. Cal.), *Monster, LLC et al. v. Beats Elecs., LLC et al.*, No. BC595235 (Los Angeles Cnty. Sup. Ct.), and *Unwired Planet, LLC v. Apple Inc.*, No. 4:13-CV-04134 (N.D. Cal.). Weil has also represented Apple in other high-profile cases, including *Sciacca v. Apple, Inc.*, No. 5:18-CV-03312 (N.D. Cal.), and *Ocampo v. Apple Inc.*, No. 5:20-CV-05857-EJD (N.D. Cal.).

35.     These firms' demonstrated ability to obtain favorable results at a reasonable cost is obviously a compelling factor in deciding the rates Apple would pay. These prior relationships also tend to show Apple's trust in and satisfaction with the efficiency and effectiveness of its attorneys' prior work and billings: if these law firms had a practice of overbilling or of performing inefficiently or ineffectively, it is unlikely that a large, sophisticated client like Apple would have continued to hire them at all, let alone pay the hourly rates it has.[5]

### iii.   Prior Rate Determinations for Apple's Attorneys and Others

36.     Numerous recent judicial rate determinations finding the rates charged by Apple's law firms reasonable also support my opinion that the rates Apple negotiated with its law firms are well within the range of hourly rates found reasonable for comparably qualified attorneys handling similarly complex matters. These findings are entitled to significant weight. *See, e.g.*, *United Steelworkers of Am. V. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Margolin v. Reg. Planning Comm'n*, 134 Cal. App. 3d 999, 1005 (1982); *Child.'s Hosp. & Med. Ctr.*, 97 Cal. App. 4th at 783 (same).

---

[5] *See, e.g.*, *Yenidunya Invs. Ltd. v. Magnum Seeds, Inc.*, No. CIV 2:11-1787 WBS, 2012 WL 538263, at *7-9 (E.D. Cal. Feb. 17, 2012) (noting efficiency derived from attorneys' prior and ongoing representation of party).

37.     Apple's principal law firms in this litigation, Gibson Dunn and Weil, have had their rates upheld by courts as reasonable in several other matters.   For example, Gibson Dunn's rates for representing Apple in its litigation with Monster Cable were found reasonable by the Los Angeles County Superior Court.   *See Monster, LLC v. Beats Elecs., LLC*, No. BC595235, 2017 WL 8181268 (L.A. Cnty. Superior Ct. Dec. 21, 2017) (awarding $7,916,201.64 in damages as attorneys' fees for Apple).   Numerous other courts also have found Gibson Dunn's rates reasonable.   *See e.g.*, *Herring Networks, Inc. v. Maddow*, 2021WL 409724, at *5-7 (S.D. Cal. Feb. 5, 2021) (awarding Gibson Dunn San Diego hourly rates of up to $1,150 and $1,050); *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, No. CV 2019-0585, 2021 WL 5174088, at *5-6 (Del. Ch. Nov. 8, 2021) (granting all of Gibson Dunn's requested fees, totaling $839,255.59, and explaining that its partner hourly rates of $1,645 "are in line with those of other experienced litigators appearing in this court, which have been held to be reasonable" and "reflect the complexity of the work performed and the results obtained.") (internal citations and quotations omitted); *see also Woodhouse v. United States Gov't*, No. 2:21-CV-06372, 2021 WL 6333451, at *2 (C.D. Cal. Dec. 31, 2021); *Trendsettah USA, Inc. v. Swisher, Int'l, Inc.*, No. 8:14-cv-01664, 2020 WL 11232926, at *8 (C.D. Cal. Dec. 2, 2020); *Amphastar Pharms., Inc. v. Aventis Pharma SA*, No. 5:09-CV-00023, 2020 WL 8680070, at *28 (C.D. Cal. Nov. 13, 2020); *Havensight Cap. LLC v. Facebook, Inc.*, No. 2:17-cv-06727 (C.D. Cal. Nov. 9, 2018), Dkt. 58, *aff'd sub nom. Havensight Cap. LLC v. Facebook, Inc.*, 776 F. App'x 420 (9th Cir. 2019).

38.     Likewise, the rates paid here are consistent with the hourly rates other courts have found to be reasonable for comparably qualified attorneys for reasonably comparable civil litigation.   In **Exhibit D** to this declaration, I list 31 recent fee awards which show that the rates paid here are well within the range of rates found reasonable in the local legal marketplace.   For example:

- In *Kang v. Wells Fargo Bank,* No. 17-cv-06220, 2021 WL 5826230, at *17 (N.D. Cal. Dec. 8, 2021), the court approved hourly rates of **$640-$1,150** for experienced appellate counsel, and **$325-$950** for class counsel.

- In *Wit*, 578 F. Supp. 3d at 1077–79, citing my declaration, this District Court found that hourly rates of **$1,145, $1,040,** and **$980** were reasonable for lawyers with 35-39, 24, and

21 years of experience respectively.

- In *Prison Legal News v. Ryan,* No. 19-17449 (9th Cir. Mar. 21, 2023), DE 78, the Appellate Commissioner, also citing my declaration, found that a reasonable hourly rate for the appellate work performed by plaintiff's attorneys ranged from **$575** to **$1,350** per hour.

- In *Human Rights Defense Center*, 2021 WL 1176640 at *12, a prisoner rights action, the court found that Plaintiff's counsel's 2020 hourly rates were reasonable, including **$950** per hour for a 39-year attorney.

- In *Yo LLC v. Krucker,* No. 17CV306261 (Santa Clara Superior Ct., Feb. 9, 2022), a contractual fee case, the court found that **$1,275** per hour was reasonable in 2021 for a 17-year partner and **$1,010** was a reasonable 2020 rate for an 11-year associate. Again, the rates paid by Apple in this litigation are well within this range.

39.    The rates paid by Apple for paralegal services also are in line with these court awards. In *Prison Legal News,* for example, the court found **$400** per hour reasonable for paralegal work. In *Wit*, this district court found that paralegal rates of **$250-390** were reasonable.

### iv.   Rates Reported by Local and National Firms

40.    My opinion is based on the reported rates of numerous local and national law firms set out in **Exhibit E**. **Exhibit E** consists of data I have compiled from declarations, surveys, articles, and individual correspondence which, like the fee awards in **Exhibit D** show that the rates Apple has paid are within the range of rates paid in the local and national legal marketplace.

41.    For example, in 2024, Kirkland & Ellis is billing its partners at hourly rates ranging from **$1,195** to **$2,465** and its associates at hourly rates ranging from **$745** to **$1,495**. In 2022, Wilson Sonsini billed its "Members" at rates of up to **$2,200** per hour, its Associates at rates up to **$1,175** per hour, and its Staff at rates up to **$935** per hour. The same year, King & Spalding billed a 16-year attorney at **$1,125**, a 10-year senior associate at **$1,025**, and a 4-year associate at **$775**.

42.    In 2021, Munger, Tolles & Olson billed a 30-year attorney at **$1,725** per hour, a 12-year attorney at **$995**, a 5-year attorney at **$825**, and an experienced paralegal at **$365**. In 2020, Paul Hastings LLP billed a 25-year attorney at **$1,425** per hour and a 7-year associate at **$885** per hour. Counsel's

rates here are well within this range, indeed well below, its higher end.

43.     The rates charged to PG&E by Simpson Thacher & Bartlett LLP for its work in the PG&E Bankruptcy case, No. 19-30088, (Bankr. N.D. Cal. Aug. 28, 2020), Dkt. No. 8901, attached hereto as **Exhibit F**, also fully support my opinion.  For example, in July 2020, PG&E's attorneys billed a 31-year attorney at **$1,640** per hour, a 19-year attorney at **$1,535**, a 12-year attorney at **$1,325** per hour, and paralegals at up to **$400** per hour.

44.     Media reports also support my opinion.  For example, in a recent article, David Thomas, *David Boies reveals $2,110 billing rate in Deutsche Bank fee bid*, Reuters, Sept. 18, 2023,[6] it was reported that David Boies charged **$2,110** per hour for his work on a case representing Deutsche Bank. The article also disclosed that in 2022, Hogan Lovells was awarded **$2,465** per hour for one of its senior partners.  *Id.*  And Covington & Burling revealed in a filing that its billing rate for senior partners was **$2,500** per hour.  *Id.*

45.     Similarly, Samantha Stokes, *Will billing rates for elite lawyers rise in 2020?*, Recorder, July 30, 2020 (attached as **Exhibit G**), sets out the rates of three other major law firms—Kirkland & Ellis, Weil, and Akin Gump.  Citing bankruptcy court fee applications, which require that the requested rates not exceed the firm's standard billing rates, the range of partner rates was **$1,025** to **$1,795** at Kirkland, **$1,100** to **$1,695** at Weil, and up to **$1,755** at Akin Gump.  Associate rates were up to **$1,165** at Kirkland, **$595** to **$1,050** at Weil, and up to **$975** at Akin Gump.

46.     The article also predicted 2020 rates for Kirkland rising to **$1,895** for partners, **$1,795** at Weil, and **$1,815** at Akin.  More recent articles confirm this view.  *See, e.g.*, Debra Weiss, *This BigLaw firm charges nearly $2,500 per hour for top billers' bankruptcy work*, ABA Journal, December 19, 2023 (referring to Kirkland & Ellis's rates); Vaidehi Mehta, *Billing Rates Surge Past $2k in the World of High-Stakes Litigation*, FindLaw, Sept. 27, 2023, https://lp.findlaw.com/legalblogs/practice-of-law/billing-rates; Roy Strom, *Rising Rates Are Law Firms' Salve Amid Layoffs, Pay Cuts,* Bloomberg Law (Bureau of National Affairs, Inc.), Jan. 19, 2023, 5:30 AM, https://news.bloomberglaw.com/business-and-practice/rising-rates-are-law-firms-salve-as-layoffs-and-

---

[6] www.reuters.com/legal/legalindustry/david-boies-reveals-2110

pay-cuts-surge (new 2023 hourly rates for some commercial firms reflect averaged increases over 2022 rates of 10%). Again, Apple's rates here are well within the ranges evidenced by these rates.

### v. Rates Reported in Credible Surveys

47.     The rates Apple has paid are consistent with the range of rates described in respected surveys of law firms' billing rates. The 2023 Real Rate Report compiled by Wolters Kluwer, relevant excerpts of which are attached hereto as **Exhibit H**, surveys the hourly rates actually charged in 2023 by San Francisco area attorneys, which it classifies by "First Quartile", "Median", and "Third Quartile" rates. Given the high levels of skill, experience, expertise, and reputation enjoyed by Apple's law firms, the Report's "Third Quartile" rates—*i.e.*, the rates that the top 25% of San Francisco and San Jose area litigators charge at or above—are the most appropriate measure for similarly highly-skilled attorneys handling hard-fought civil matters. *See, e.g.*, *Monster Energy Co. v. Vital Pharms. Inc.,* No. EDCV 18-1882-JGB, 2023 WL 8168854, at *23 (C.D. Cal. Oct. 6, 2023) (citing to Report's Third Quartile rates); *French v. City of Los Angeles*, No. 5:20-cv-00416-JGB-SP, 2022 WL 2189649, at *18 (C.D. Cal. May 10, 2022) ("this Court has found that the [2021] Real Rate Report provides a helpful reference point and consults it here," citing the Report's Third Quartile rates).

48.     Pages 21 and 22 of the Report describe the 2023 rates charged by 115 San Francisco Area Litigation partners and 76 San Francisco Litigation associates. For those categories, the Third Quartile San Francisco Area rates were **$1,124** per hour for partners and **$718** per hour for associates. Comparable San Jose rates were **$1,083** for partners and **$775** for associates. Here, the credentials of Apple's top-tier law firms certainly rank them at the higher end of the top 25% of local law firms.

49.     Page 33 lists the Third Quartile rate charged by 114 San Francisco partners with 21 or more years of experience at **$1,059** per hour. For the 69 partners with fewer than 21 years, the Third Quartile rate was **$1,067** per hour. Comparable San Jose rates were **$1,504** for 17 partners with fewer than 21 years and **$1,315** for the 43 partners with 21 or more years. Again, the rates Apple has paid here are squarely within this range.

50.     Page 177 of the Report states that in the "Corporate: Other" category, the Third Quartile hourly rate charged by San Francisco firms with "more than 1,000 lawyers" is **$1,305** per hour. Many if not most of Apple's law firms here fall in that category.

51.     The 2022 Real Rate Report, relevant excerpts of which are attached hereto as **Exhibit I**, surveys the hourly rates charged in 2022 by hundreds of San Francisco area attorneys.

52.     As applied here, pages 21 and 22 of the Report describe the 2022 rates charged by 143 San Francisco Area partners and 98 San Francisco Area associates who practice "Litigation."  For that category, the Third Quartile San Francisco Area rates were **$995** per hour for partners and **$731** per hour for associates.  San Jose rates were higher: **$1,133** for partners and **$745** for associates.

53.     Page 187 of the Report states that in the "Corporate: Other" category, the Third Quartile hourly rate charged by San Francisco firms with "more than 1,000 Lawyers" is **$1,194** per hour.  As noted, most of Apple's law firms here fall in that category.

54.     Page 35 of the Report describes the 2022 rates charged by 149 San Francisco Area partners and 51 San Jose area partners with "21 or More Years" of experience.  For this category, the Third Quartile San Francisco Area rate was **$994** per hour for San Francisco partners and **$1,251** for San Jose partners.

55.     The same page lists Third Quartile rates for 89 San Francisco partners and 113 San Jose partners with "Fewer Than 21 Years": **$987** for San Francisco and **$1,382** for San Jose.

56.     Page 28 of the Report describes 2022 Associate rates. It shows that the third Quartile rate charged by 18 San Francisco Area Associates with "Fewer Than 3 Years" of experience was **$597** per hour.  The Third Quartile rates charged by 33 San Francisco Area associates with "3 to Fewer Than 7 Years" of experience was **$702** per hour.  And, the 2022 Third Quartile rates charged by 59 San Francisco Area associates and 14 San Jose associates with "7 or More Years" of experience were **$717** per hour for San Francisco and **$605** per hour for San Jose.

57.     The 2021 Real Rate Report by Wolters Kluwer, attached hereto as **Exhibit J**, also shows that Apple's rates are in line with the local legal marketplace.  Specifically, the "High Level Data Cuts" section at page 22 describes the 2021 rates charged by 150 San Francisco partners and 108 associates who practiced "Litigation."  For that category, the 2021 litigation hourly rate for the Third Quartile of surveyed attorneys was **$961** per hour for partners.  Similarly, the "High Level Data Cuts" section at page 34 of the Report describes the 2021 rates charged by 158 San Francisco partners with "21 or More

Years" of experience.  For that category, the Third Quartile 2021 partner rate was **$960** per hour, and in my experience, since 2021 most firms have raised their rates annually by at least 4–6%.  *See* Ex. I at 34. Apple's rates here are well in line with these published rates.

58.     The evidence I have relied on shows definitively that the hourly rates charged to and paid by Apple here are well within the range of hourly rates billed by other top tier firms in the San Francisco-San Jose area for comparable high stakes, complex litigation.

### B.  The Hours of Work That Apple Paid in the *Epic* Matter Was Reasonable

59.     Apple seeks reimbursement for the approximately ███ net hours[7] of time it paid its law firms for their work on this litigation.  In my opinion, that total number of hours (which, because of write-offs and other adjustments, is less than the total number of hours its law firms actually billed) is entirely appropriate and reasonable in light of numerous factors:

### i.  Apple's Deep Involvement and Monitoring of Invoices

60.     Initially, in my opinion, a client's heavy involvement in litigation and its close monitoring of its law firm's strategies, actions, and billings are compelling indications that the billed time was reasonably devoted to advancing the client's interests.  In this case, Apple personnel were heavily involved at every step in terms of strategy, work performed, and careful review of its law firms' billings. This type of involvement and monitoring served as a significant check against any excessive billing. *See, e.g., Calvo Fisher & Jacob LLP*, 234 Cal. App. 4th at 617 (noting client's review of bills and efforts to minimize fees and maximize effectiveness).

61.     As noted, the hours Apple's law firms spent litigating the *Epic* case are fully documented by the invoices submitted to Apple, which were then subjected ███████████ before being paid by Apple. Rollins Decl. ¶¶ 17–21.  That review was not ministerial or a mere rubber-stamp.  To the contrary, Apple's internal review of its law firms' bills was rigorous and fully informed by Apple's extensive involvement in the litigation itself.  Not only were Apple's in-house counsel personally involved in the litigation, but their involvement informed Apple's careful internal monitoring of the time spent by its law firms and meant that Apple paid only for work that its own personnel believed

---

[7] This number reflects the net hours of all law firm timekeepers.

was reasonably and efficiently expended to further its interests.

62.    As a result of that review, over ████████ in fees billed by its law firms through October 31, 2023 were rejected and not paid by Apple and are not being claimed here. Irwin Decl. ¶ 35. In my opinion, this is another very strong indication that the hours that were paid for were reasonable.

63.    My focus on the importance of Apple's close involvement in the litigation itself is fully supported by the courts, many of which have found that a sophisticated, fee-paying party's careful monitoring of its counsel's work and the subsequent payment of its attorneys' fees creates a strong presumption that the fees incurred were reasonable and appropriate. *See, e.g.*, *Stonebrae L.P v. Toll Bros.*, No. C-08-0221-EMC, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011).

64.    This strong presumption is "particularly forceful where, as here, the fees were billed to and actually paid by the plaintiff during the course of the litigation, the relationship between counsel and the plaintiff was a valid business relationship, and the plaintiff, as client, exercise[d] business judgment in retaining and paying counsel." *Stonebrae*, 2011 WL 1334444, at *6. While not dispositive, "[t]he fact that the fees in question were actually paid by a party employing business judgment nonetheless adds weight to the presumption of reasonableness." *Id.*

65.    Apple's careful review of its law firms' activities and invoices prior to any payment entitles it to a *strong presumption*, based on market principles, that the amount of time was reasonably expended to pursue and achieve Apple's goals. In my opinion, they show that in the absence of any compelling reason to disallow their recovery, counsel's fees for the time they expended are reasonable and recoverable by Apple.

66.    That strong presumption also is consistent with the principle that the hours chargeable to an opponent are those that would be billed to a fee-paying client. *See, e.g.*, *Ramon v Cnty. of Santa Clara,* 173 Cal. App. 4th 915, 925 (2009) (time incurred to protect client's interests in litigation compensable because it is the type of work that would be billed to fee-paying client); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (reasonableness of lodestar generally determined by whether fees would be billed to a fee-paying client); *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (in an antitrust case, "every item of service which, at the time rendered, would have

been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest" is compensable) (citation omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983) (compensable hours include "all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter") (citation omitted); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *4–5. By definition, the fees requested here are for work that was billed (and paid) by a sophisticated fee-paying client.

### ii. The Stakes and Complexity of the Case, and the Quality of The Work

67.     In assessing the reasonableness of the fees and costs paid by Apple, I also have considered the stakes involved in the litigation and the complexity of the legal issues presented. *See, e.g.*, *Peak-Las Positas Partners v Bollag*, 172 Cal. App. 4th 101, 114 (2009) (hours determination affirmed: "the fees are well documented and reasonable in light of the complexity of the issues, [defendant's] aggressive litigation posture, and the results obtained"); *Vo v. Las Virgenes Muni. Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) (trial court fee award properly "based on the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself"); *Monster Energy Co. v. Vital Pharms. Inc.,* No. EDCV 18-1882-JGB, 2023 WL 8168854, at *23 (C.D. Cal. Oct. 6, 2023) ("Here, the fee award comports with the Court's sense of the amount of effort it took to successfully litigate this high-stakes action over the course of four years.") (citation and internal quotation marks omitted); Cal. Rules of Professional Conduct 1.5(b) (appropriateness of fees based in part on "the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly" (*id.*, subs. (5)) and on "the amount involved and the results obtained" (*id.,* subs. (7))).

68.     Here, Apple's attorneys' fees and costs were proportionate to the stakes involved. In the underlying case, Epic challenged Apple's iOS App Store core structure—a generator of a multi-billion-dollar revenue stream for Apple. If Epic had prevailed, Apple stood to lose much if not all of this entire source of revenue. The expenditure of $81,560,362, to obtain complete relief from such an enormous claim is reasonable by any measure.

69.     Further, Epic brought ten claims under state and federal antitrust laws seeking to fundamentally alter the core functionality of Apple's App Store platform. In doing so, the case raised

highly technical and complex issues regarding, among other things, the relevant product market for the App Store in terms of mobile gaming and Apple's market power and precompetitive justifications for its business practices. This led the Court to issue a 180-page decision after a 16-day bench trial, in which over 900 exhibits were entered. The case involved numerous experts and dealt with highly complex factual and legal issues, such as the contours of the multi-billion-dollar market for mobile gaming apps.

70. The quality of work produced for Apple to succeed was exceptionally high. Many unique issues arose as the case proceeded to judgment, where Epic lost on all but its claim under the California Unfair Competition Law, and Apple succeeded on its counterclaims for breach of contract and declaratory judgment. After the Ninth Circuit appeal, it succeeded on its counterclaim for indemnification as well. To address such complex issues takes many long, hard hours of research, analysis, writing, and editing.

### iii.   The Litigation Was Vigorous

71. As the stakes involved would suggest, Epic vigorously fought for its case, requiring equally vigorous preparation by Apple's law firms to defend their client: dozens of depositions were taken; multiple motions were filed; many unique legal issues were briefed and argued; and a 16-day bench trial had to be prepared for and conducted.

72. On this score, it appears that Epic bears much of the responsibility for the activity required by this case and for the resulting amount Apple has spent proving the reasonableness of its fees and costs. As courts repeatedly have recognized, a "defendant 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *Serrano v. Unruh*, 32 Cal.3d 621, 641 (1982) (quoting *Copeland v Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)).

### iv.   Apple's Success Confirms the Amount of Fees Paid Was Reasonable

73. The results obtained by Apple also fully justify the number of hours for which Apple seeks recovery. Under California law, a party that has obtained excellent results should recover a fully compensatory fee. *See Feminist Women's Health Ctr. v Blythe,* 32 Cal. App. 4th 1641, 1674 n.8 (1995) (where a "plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified" (quoting *Hensley*, 461 U.S. at 435); *see also*

*Serrano*, 32 Cal. 3d at 632–33 (adopting federal rule that "absent facts rendering the award unjust, parties who qualify for a fee should recover for all hours reasonably spent, including those on fee-related matters"); Cal. Rules of Professional Conduct 1.5(b)(7) (conscionability of fee measured in part by "the amount involved and the results obtained").

74.     Throughout this litigation, Epic has been represented by top-flight law firms: Cravath, Swaine & Moore LLP; and Faegre Drinker Biddle & Reath LLP. Nonetheless, the favorable rulings at trial and on appeal provided Apple with nearly all the relief it could obtain: a sound defeat of all but one of Epic's claims and complete victory on its indemnification Cross-Complaint. This is an excellent result by any measure, and in my opinion, fully justifies the time for which Apple requests reimbursement.

### v.  Apple's Write-Offs Confirm the Reasonableness of the Request

75.     Notably, Apple's motion does *not* request reimbursement for *all* of the time its attorneys spent on Apple's defense against Epic's claims and pursuit of its counterclaims.

76.     Apple's careful review, adjustment, and approval process for all invoices of outside counsel led to reductions to the fees and expenses invoiced by its law firms. Rollins Decl. ¶¶ 24–27.

77.     Additionally, Apple's in-house attorneys not only observed the work being billed but also performed substantial work in preparing the case for trial and in formulating trial strategy. Rollins Decl. ¶¶ 26–27. Under California law, this time would have been compensable from Epic had Apple chosen to claim it. *See PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084 (2000). It has not done so; and, in my view, this willingness to forego fees to which it is otherwise entitled further demonstrates that Apple's request here is reasonable.

### C.  Apple's Voluntary 10% Reduction Further Bolsters Reasonableness

78.     Apple's motion further does *not* request reimbursement for all the fees and costs incurred in defending against Epic's claim under the California Unfair Competition Law ("UCL"). While Apple's success was near complete on Epic's claims, in recognition of the one claim on which Epic prevailed, Apple has preemptively reduced its request by 10%. This not only shows reasonableness on its face, but also is a significant reduction compared to the actual volume of UCL-based fees and costs invoiced to and paid by Apple. Irwin Decl. ¶ 39.

79.     Before applying this 10% discount, Apple also reduced its request by another $1,411,039 million based on adjustments made in connection with preparing its Motion to this Court.

## IV.     Apple's Costs and Expenses Are Reasonable

80.     In addition to its reasonable attorneys' fees, Apple also has requested reimbursement for ███████ in certain costs and litigation expenses—*i.e.*, its "expenses and costs" "without limitation." Those costs include experts and consulting fees, discovery vendors, travel, and trial support services. Irwin Decl. ¶ 37.[8] I have reviewed those costs and expenses, and in my opinion, they are reasonable expenditures for a case of this scope, contentiousness, and amounts at stake.

81.     First, as with their hours and rates, my opinion that Apple's costs and expenses are reasonable is based in part on the fact that they reflect substantial discounts negotiated by Apple. Apple has been able to take advantage of numerous billing rate reductions negotiated with its vendors. Due to Apple's preexisting relationship with various vendors that participated in this case, Apple received the benefit of preferential rates already established with the company. The fact that the rates for services provided by these firms were the subject of negotiation based on Apple's parent company's long-standing relationship with them and use of them in many litigation matters is a further indication that the rates were reasonable and well within the range of fair market value for such services.

82.     Second, just as Apple carefully monitored the time spent by its law firms, Apple also closely scrutinized costs and expenses billed by its vendors. As a result of its review, many expenses billed were rejected and not paid by Apple and are not being claimed here. *See* Irwin Decl. ¶¶ 15–16, 35. In my view, this is another strong indication that those costs and expenses that Apple paid and claims here were reasonable.

83.     Third, I looked at the nature of experts and the total costs, and they appear to be similar to how other litigants employ experts in similarly complex cases (in total and kind). It's my understanding that the issues in this case—for example, antitrust market definition—typically require expert testimony, and that both parties therefore employed several experts. *See, e.g.*, Rule 52 Order at 41, 67.

---

[8] This number represents total Losses, before Apple applied the 10% discount for purposes of the Motion.

84.     Fourth, under Apple's billing guidelines, computer research expenses and other similar charges have not been billed to Apple or claimed from Epic, even though they have frequently been found to be reimbursable expenses.  *See, e.g.*, *Plumbers & Steamfitters, Local 290 v Duncan*, 157 Cal. App. 4th 1083, 1099 (2007) (computerized legal research expenses recoverable as attorney fees under CCP § 1021.5); *Trustees of Constr. Indus. v. Redland Ins. Co.*, 460 F.3d 1253, 1258–59 (9th Cir. 2006).

V.     **Conclusion**

85.     For all the reasons stated herein, it is my opinion that the full amount of Losses that Apple seeks to be reimbursed under the DPLA is reasonable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th day of January, 2024, in Berkeley, California.

Respectfully submitted,

*Richard M. Pearl*
RICHARD M. PEARL