GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
JUSTIN C. CLARKE (*pro hac vice*)
jcclarke@cravath.com
MICHAEL J. ZAKEN (*pro hac vice pending*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant*
*Epic Games, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-CV-05640-YGR-TSH |
| Plaintiff, Counter-defendant, | **EPIC GAMES, INC.'S OPPOSITION TO APPLE INC.'S MOTION FOR ENTRY OF JUDGMENT ON ITS INDEMNIFICATION COUNTERCLAIM** |
| v. | |
| APPLE INC., | Date:  On or after March 19, 2024 (stipulated date) |
| Defendant, Counterclaimant. | Courtroom:  1, 4th Floor |
| | Judge:  Hon. Yvonne Gonzalez Rogers |

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ................................................................................................4

    A.    The District Court Case ................................................................................4

    B.    Parallel Class Proceedings ................................................................................5

    C.    Subsequent Procedural History ................................................................6

    D.    Apple's Motion ................................................................................................7

LEGAL STANDARDS ................................................................................................8

ARGUMENT ................................................................................................9

I.    Apple's Claim for Fees and Costs Incurred in Litigating Epic's Antitrust and UCL Claims Is Barred by Black Letter Law Prohibiting Fee Shifting in Favor of Antitrust Defendants ................................................................................................9

II.    The Indemnification Provision Permits Apple To Recover Only for Fees and Costs Arising from or Related to Epic's Breach of the DPLA, Not Fees and Costs for Antitrust Claims that Apple Would Have Incurred Regardless of the Breach............12

III.    Apple Is Not Entitled To Recover from Epic for Third Parties' Antitrust Claims ...........16

IV.    Apple Is Barred from Recovering for Any "Losses" Other than Attorneys' Fees ............16

V.    Apple Should Not Be Granted Fees or Costs for This Motion ........................................19

CONCLUSION ................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azizian v. Federated Dept. Stores, Inc.*,
499 F.3d 950 (9th Cir. 2007) ............................................................................................10

*Bear Creek Plan. Comm. v. Ferwerda*,
193 Cal. App. 4th 1178 (2011) .........................................................................................18

*Burkhalter Kessler Clement & George LLP v. Hamilton*,
19 Cal. App. 5th 38 (2018) ...............................................................................................15

*Carver v. Chevron U.S.A., Inc.*,
119 Cal. App. 4th 498 (2004) .............................................................................1, 9, 11, 15

*Chen v. Valstock Ventures, LLC*,
81 Cal. App. 5th 957 (2022), ............................................................................................15

*Costco Wholesale Corp. v. Hoen*,
538 F.3d 1128 (9th Cir. 2008) ..........................................................................................10

*Dane-Elec Corp., USA v. Bodokh*,
35 Cal. App. 5th 761 (2019) ...............................................................................................9

*Dominick v. Collectors Universe, Inc.*,
2013 WL 990825 (C.D. Cal. Mar. 13, 2013) .............................................................1, 9, 10, 12

*El Escorial Owners' Assn. v. DLC Plastering, Inc.*,
154 Cal. App. 4th 1337 (2007), ........................................................................................14

*Epic Games, Inc. v. Apple Inc.*,
67 F.4th 946 (9th Cir. 2023) .................................................................................2, 12, 17, 19

*Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) ..........................................................................................17

*Instrumentation Lab. Co. v. Binder*,
2013 WL 12049070 (S.D. Cal. Mar. 28, 2013) ................................................................20

*Lovell v. Chandler*,
303 F.3d 1039 (9th Cir. 2002) ..........................................................................................18

*Martinez v. Extra Space Storage, Inc.*,
2013 WL 6623889 (N.D. Cal. Dec. 16, 2013) ..................................................................13

*Mirpad, LLC v. California Ins. Guarantee Assn.*,
132 Cal. App. 4th 1058 (2005) .........................................................................................13

*Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*,
    13 Cal. App. 4th 949 (1993) ...................................................................................13

*Port of Stockton v. W. Bulk Carrier KS*,
    371 F.3d 1119 (9th Cir. 2004) ................................................................................20

*Reudy v. Clear Channel Outdoors, Inc.*,
    693 F. Supp. 2d 1091 (N.D. Cal. 2010), ................................................................11

*Reynolds Metals Co. v. Alperson*,
    25 Cal.3d 124 (1979) .............................................................................................11

*SK hynix Inc. v. Rambus Inc.*,
    2013 WL 1915865 (N.D. Cal. May 8, 2013 ...........................................................17

*Tax Servs. of Am., Inc. v. Mitchell*,
    2008 WL 2834271 (D. Colo. July 21, 2008) ..........................................................18

*The Travelers Indem. Co. v. Lara*,
    84 Cal. App. 5th 1119 (2022) .................................................................................15

*Turner v. Ass'n of Am. Med. Colleges*,
    193 Cal. App. 4th 1047 (2011) .................................................................................9

*Walker v. Countrywide Home Loans, Inc.*,
    98 Cal. App. 4th 1158 (2002) ...................................................................................9

*Zhu v. Li*,
    2023 WL 4770431 (N.D. Cal. July 26, 2023).........................................................20

*Zintel Holdings, LLC v. McLean*,
    209 Cal. App. 4th 431 (2012) .................................................................................14

**Statutes & Rules**

Cal. Civ. Code § 1717.................................................................................... passim

Civ. L. R. 54-5 ......................................................................................3, 7, 19, 20

Fed. R. Civ. P. 54(d) .........................................................................................20

**Other Authorities**

Black's Law Dictionary (11th Ed. 2019)...............................................................13

10 C. Wright & A. Miller, Federal Practice and Procedure § 2666 (4th Ed. 2023) .....................17

1

## **PRELIMINARY STATEMENT**

2          Controlling precedent bars defendants from recovering attorneys' fees or costs

3   incurred in connection with defending against antitrust claims.  In direct contravention of that

4   precedent—and the plain language of the Developer Program Licensing Agreement ("DPLA"),

5   which entitles Apple only to fees and costs arising from or relating to Epic's (largely

6   uncontested) breach of the DPLA—Apple seeks from Epic a striking sum of more than $73

7   million in attorneys' fees and other costs, the vast majority of which Apple incurred in defending

8   against the very types of claims for which recovery is prohibited.

9          Apple's Motion for Entry of Judgment on Its Indemnification Counterclaim

10   (Dkt. 876 *et seq.* (the "Motion")) overreaches at every turn.  Apple seeks recovery of

11   unrecoverable fees and costs incurred in defending against Epic's antitrust claims; it seeks

12   recovery of fees and costs it incurred in defending against *other plaintiffs'* antitrust claims; and it

13   seeks recovery of categories of expenditures that go beyond what the Ninth Circuit's ruling in this

14   case permitted.  Apple even seeks its fees and costs incurred in seeking its fees and costs, even

15   though the vast majority of those fees and costs it seeks are not recoverable and Apple made no

16   effort to meet and confer with Epic to determine the scope of any dispute before filing the

17   Motion.  Apple's Motion should be denied for the following reasons.

18          *First*, it is black letter law that Apple may not recover *any* fees or costs it incurred

19   in defending against antitrust claims.  An unbroken line of precedent going back 20 years firmly

20   establishes that, as a matter of public policy, a prevailing defendant cannot recover fees or costs

21   associated with defending against antitrust claims, even where there is an express agreement that

22   purports to require a plaintiff to cover the defendant's attorneys' fees and costs in those

23   circumstances.  *See Carver v. Chevron U.S.A., Inc.*, 119 Cal. App. 4th 498, 504-05 (2004);

24   *Dominick v. Collectors Universe, Inc.*, 2013 WL 990825, at *5 (C.D. Cal. Mar. 13, 2013).

25   Moreover, any fees and costs that are "inextricably intertwined" with those incurred in defending

26   against antitrust claims also cannot be recovered, even if they were incurred also in connection

27   with a breach of contract claim.  Apple may thus recover *only* those fees and costs it incurred

28   specifically to litigate separable, *non*-antitrust claims—*i.e.*, fees and costs attributable to work

performed for Apple's contract claims that did not overlap with its defense against Epic's (or other plaintiffs') antitrust claims.  Here, Apple has not taken any steps to identify such separate fees or costs.  To the contrary, *Apple completely ignores this binding precedent* and seeks primarily and specifically the unrecoverable fees and costs it incurred in defending against Epic's antitrust claims.  (*See infra* Section I.)

*Second*, even apart from the legal principle described above, Apple's contractual entitlement is limited to recovery of only those fees and costs it incurred in pursuing its contract claims.  Under the plain language of Section 10 of the DPLA (the "Indemnification Provision"), Epic agreed to indemnify Apple only for fees and costs "arising from or related to . . . [Epic's] breach of any certification, covenant, obligation, representation or warranty in [the DPLA]".  (PX-2619 § 10(i).)  The Ninth Circuit's decision similarly makes clear that Apple's entitlement to recovery is limited to "attorney fees incurred in this litigation [that] can be *fairly attributed to Epic's breach of the DPLA*".  *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1004 n.24 (9th Cir. 2023) (emphasis added).  The substance of Epic's antitrust and UCL claims have nothing to do with Epic's breach of the DPLA.  Indeed, as this Court has recognized, Epic could have brought its antitrust claims even if it had never breached the DPLA.  (Dkt. 812 at 178 (the "Rule 52 Order").)  Controlling California law applying Section 1717 of the California Civil Code—which applies to this Motion—also requires Apple to segregate its fees and costs as between its recoverable breach claims and non-recoverable antitrust and UCL claims.  But again, Apple did not attempt to segregate the fees and costs it incurred defending against Epic's antitrust and UCL claims from those it incurred pursuing its contract claims.  (*See infra* Section II.)

*Third*, Apple improperly seeks to recover from Epic fees and costs that Apple incurred in defending against the antitrust claims of *other plaintiffs* in parallel class proceedings.  As this Court is aware, alongside this lawsuit, Apple defended against two separate class proceedings—*Pepper* and *Cameron*—that raised substantially similar antitrust claims.  Consistent with the Court's directive, fact discovery was coordinated across these proceedings; documents were produced in all three cases and many depositions proceeded jointly in all three cases.  Yet Apple's Motion makes no mention of these parallel proceedings and does not attempt to apportion

any fees or costs among these proceedings.  This is doubly inappropriate:  not only is Apple prohibited from recovering fees or costs for defending antitrust claims—which the class proceedings were, as no contract claims were at issue there—but Epic certainly is not required to subsidize Apple's defense to claims brought by other plaintiffs.  (*See infra* Section III.)

*Fourth*, the mandate rule bars Apple's recovery of any costs other than attorneys' fees.  Apple asked for, and the Ninth Circuit instructed this Court on remand to determine, only the appropriate amount of attorneys' fees—as distinct from other types of costs—that Apple is entitled to.  Yet roughly 40% of the amount Apple is seeking in its Motion represents costs other than attorneys' fees, which are unrecoverable pursuant to the Ninth Circuit's mandate.  (*See infra* Section IV.)

*Fifth*, Apple is not entitled to recover fees or costs that it incurred in putting together this Motion.  Apple has completely overreached in what it is seeking and much of the work it did to put together this Motion relates to fees and costs that are not recoverable.  Moreover, Apple did not meet and confer with Epic prior to filing its Motion as required by Civil Local Rule 54-5, and, as a result, incurred attorneys' fees and costs that it could well have avoided.  Specifically, Apple unilaterally engaged two experts and a team of nine analysts from an expert consulting shop to review its invoices, without so much as checking whether Epic intended to dispute any of its calculations or the reasonableness of the fees and costs it incurred.  (*See infra* Section V.)

*       *       *

For these reasons (and as explained further below), Apple seeks a far broader scope of recovery than it is entitled to receive.  There are separate questions regarding the accuracy of Apple's calculations and the reasonableness of the fees and costs that Apple alleges it has incurred.  Epic does not address those questions in this brief, both because (1) a detailed review of the specific fees and other costs would be wasteful when Apple has sought to sweep in much to which it is not legally entitled; and (2) Apple denied Epic reasonable access to the evidentiary support for its claimed fees and costs, providing Epic only an incomplete set of materials just days before this Opposition was due.  Epic therefore reserves its right to challenge

Apple's calculations and the reasonableness of its fees and costs once this Court determines the appropriate scope of Apple's recovery—*i.e.*, whether Apple can recover attorneys' fees and other costs related to the entire case or just attorneys' fees that "can be fairly attributed to Epic's breach of the DPLA" and are not intertwined with the attorneys' fees that Apple incurred to defend against Epic's (and other plaintiffs') antitrust claims.

## FACTUAL BACKGROUND

### A.  The District Court Case

On August 13, 2020, Epic filed this lawsuit alleging that Apple illegally harmed competition in an iOS app distribution market and in an iOS in-app payment processing market. (Dkt. 1.)  Specifically, in its Complaint, Epic brought 10 counts under Sections 1 and 2 of the Sherman Act, the California Cartwright Act and the California Unfair Competition Law ("UCL"). The claims related to a variety of Apple's App Store conduct including technical and contractual limitations placed on iOS app distribution and in-app payment processing, deliberate policies to "lock in" users to the Apple ecosystem to reduce competitive restraints on its market power and contractual limitations on steering that prevent the effective dissemination of pricing information. As both a would-be competitor of Apple in iOS app distribution and a business consumer of its iOS app distribution and in-app payment processing services, Epic could have brought this suit without breaching the DPLA. (*See, e.g.*, Dkt. 812 at 160-61.)  Nonetheless, just prior to bringing this suit, Epic offered Apple users a choice to use an Epic direct payment option in *Fortnite*.  That payment method offered users a 20% reduction on prices for in-app purchases. (Dkt. 1 ¶ 19.) Epic then approached Apple and suggested that Apple open up iOS app distribution and in-app payments to competition. (*Id.* ¶ 18.)  Apple responded by removing *Fortnite* from the Apple App Store, so that new users could not download the app and *Fortnite* players that had already downloaded the app could not receive updates. (*Id.* ¶ 20.)  Epic had anticipated that possibility and filed this suit shortly thereafter.

In its September 8, 2020 Answer to Epic's Complaint, Apple brought a counterclaim asserting that Epic had breached the DPLA by activating Epic's payment mechanism in the *Fortnite* build it had distributed to iOS users. (Dkt. 66 at 53-54, 56-57.)  Epic

1   never disputed that it violated the terms of the DPLA.  (Dkt. 106 ¶ 37 (Epic's Answer to Apple's

2   counterclaims admitting that its conduct was prohibited by the express provisions of the DPLA);

3   *id.* ¶ 41 (admitting that Epic gave users choices for payment processing that violated the terms of

4   the DPLA).)  Instead, Epic maintained that the terms of the DPLA were illegal because they

5   violated federal and state antitrust and unfair competition laws.  Apple's claim that Epic breached

6   the DPLA was therefore never litigated by the Parties; instead, on April 23, 2021, the Court

7   entered a stipulation whereby Epic agreed that "Apple has proven all elements of its cause of

8   action for breach of . . . the 'DPLA'", subject to Epic's defenses.  (Dkt. 474 ¶ 1.)

9           From May 3, 2021 to May 24, 2021, this case proceeded to trial.  In light of the

10  above stipulation, virtually all of the evidence presented at trial concerned Epic's claims that

11  Apple had violated Sections 1 and 2 of the Sherman Act, California's Cartwright Act and the

12  UCL.  Following the trial, on September 10, 2021, this Court found for Epic on one of its claims

13  under the UCL (the anti-steering provision) and against Epic on its remaining claims.  (Dkt. 812.)

14  Out of the 180 pages of the Court's analysis of the facts and law, 167 related squarely to Epic's

15  antitrust claims.  (*Id.*)  The Court then resolved Apple's counterclaim for breach of contract—

16  including Epic's affirmative defenses related thereto, which again implicated Epic's antitrust

17  claims—in just five pages.  (*Id.* at 169-73.)  The Court also found that Epic's breach was not

18  necessary in order for Epic to bring its antitrust suit against Apple.  (*Id.* at 178.)

19      **B.   Parallel Class Proceedings**

20          Epic's case was related to two parallel class proceedings raising similar antitrust

21  claims against Apple:  (i) a class action lawsuit brought by a putative class of app developers,

22  titled *Cameron, et al. v. Apple Inc.*, No. 19-cv-03074-YGR (N.D. Cal.); and (ii) a class-action

23  lawsuit brought on behalf of a putative class of consumers, titled *Pepper v. Apple Inc. (In re*

24  *Apple iPhone Antitrust Litigation)*, No. 11-cv-06714-YGR (N.D. Cal.).  Both *Cameron* and

25  *Pepper* pre-dated the *Epic* action and were subject to an order coordinating discovery across the

26  two actions.  (Order Granting Stipulation Regarding Coordination of Discovery, *In re Apple*

27  *iPhone Antitrust Litigation*, No. 11-cv-06714-YGR (N.D. Cal. Jan. 6, 2020), Dkt. 80.)  This

28  coordinated discovery order also included a provision binding all cases that were subsequently

1   related to the *Cameron* and *Pepper* litigations.  (*Id.* ¶ 7.)  Pursuant to that order, the same

2   documents were produced across the *Epic*, *Cameron* and *Pepper* cases.  (Even Decl. ¶ 6.).

3   Further, of the 22 depositions of non-Epic fact witnesses (*i.e.*, Apple or third-party fact witnesses)

4   conducted in this case, 17 were taken jointly by plaintiffs in the *Cameron* and/or *Pepper* cases,

5   and three others were non-party witnesses for whom Apple issued a joint subpoena across the

6   *Epic*, *Cameron* and *Pepper* cases.  (*Id.* ¶¶ 7, 8.)

7           **C.    Subsequent Procedural History**

8                   Following this Court's September 10, 2021 decision, Apple and Epic appealed the

9   Rule 52 Order.  On January 20, 2022, Epic filed its opening appeal brief, which was based

10  entirely on this Court's decisions on Epic's antitrust claims.  (C.A.9. No. 21-16695, Dkt. 28.)  On

11  March 24, 2022, Apple filed its brief in response to Epic's opening appeal brief and its principal

12  brief on its cross appeal.  (C.A.9. No. 21-16695, Dkt. 80.)  In the responsive portion of its brief,

13  Apple acknowledged that "[i]f the Court affirms the Sherman Act judgment . . . , then Epic's

14  defense of illegality also fails".  (*Id.* at 100.)  And the cross-appeal portion of Apple's brief spent

15  just over three pages (out of 15) discussing its breach of contract claim, focusing its argument on

16  its challenge to this Court's decision on Apple's indemnification counterclaim.  (*Id.* at 112-14.)

17                  On April 24, 2023, the Court of Appeals issued its merits Opinion affirming this

18  Court's judgment as to Epic's Sherman Act, California Cartwright Act and UCL claims.

19  (Dkt. 200-1.)  The Court of Appeals reversed this Court's judgment as to the Indemnification

20  Provision, which it found not to be limited to third-party actions against Apple.  (*Id.* at 86.)  The

21  Court of Appeals "express[ed] no opinion on what portion of Apple's attorney fees incurred in

22  this litigation can be fairly attributed to Epic's breach of the DPLA" (*Id.* at 87 n.24), and

23  remanded to this Court to decide the amount to which Apple was entitled.

24                  On September 27 and 28, 2023, Epic and Apple, respectively, filed petitions for

25  writ of certiorari exclusively related to antitrust and UCL issues.  (Pet. for Writ of Cert., *Epic*

26  *Games, Inc. v. Apple Inc.*, No. 23-337 (Sept. 27, 2023); Pet. for Writ of Cert., *Apple Inc. v. Epic*

27  *Games, Inc.*, No. 23-344 (Sept. 28, 2023).)  On January 16, 2024, both Epic's and Apple's

28

petitions were denied.  2024 WL 156473 (Mem) (U.S. Jan. 16, 2024); 2024 WL 156474 (Mem) (U.S. Jan. 16, 2024).

### D.   Apple's Motion

Apple filed this Motion the same day that Apple's and Epic's petitions for a writ of certiorari were denied.  (*See* Dkt. 876 *et seq.*)  Apple never met and conferred with Epic regarding this Motion in order to identify whether there were any disputes that might be resolved between the parties prior to filing, as required by Civil Local Rule 54-5.  (Even Decl. ¶ 9.)

Once Apple filed its Motion, Epic initiated a meet and confer with Apple and proposed a staged briefing schedule so that the Court could first determine the appropriate scope of fees and costs (*id.* Ex. A at 7, 8)—which, as explained above and below, Epic believes to be far narrower than Apple has sought in its Motion.  Under Epic's proposal, with the benefit of the Court's guidance as to the scope of allowed recovery, Apple could submit updated calculations consistent with the Court's decision, after which Epic could assess whether it wished to challenge Apple's calculations or the reasonableness of the fees and costs Apple seeks.  (*Id.* Ex. A at 7.) Apple rejected Epic's proposal for staged briefing.  (*Id.* Ex. A at 6.)

Apple also refused to provide the backup data relied upon by its experts, Ms. Irwin and Mr. Pearl, in the declarations they submitted in support of Apple's Motion—unless Epic agreed that the complete data would be provided only to independent experts retained by Epic in connection with this Opposition (with Epic *and* its outside counsel only receiving redacted data).[1] (*Id.* Ex. A at 3-4.)  Apple insisted that if Epic challenged the reasonableness of the fees and costs Apple seeks, then Apple would require a "reciprocal" production of data concerning the fees and costs incurred by Epic in pursuing its claims.  (*Id.* Ex. A at 6.)  After Epic rejected these demands,

---

[1] Epic told Apple that it could not agree to the proposed limitations Apple seeks to place on this data. (Even Decl. Ex. A at 1, 3, 5.)  For one thing, Apple assumed Epic would be retaining a team of experts to analyze the data.  (*Id.* Ex. A at 1.)  Based on Epic's preliminary review of the data Apple did produce, which consists of only 317 documents, all but one of which are PDF documents consisting of invoices and draft declarations, it is not clear that Epic will need to retain experts in connection with its opposition to this Motion.  Furthermore, Apple has not sufficiently explained why the existing Protective Order does not provide adequate protections for the documents at issue.  (*Id.* Ex. A at 1, 3.)

Apple ultimately produced some of the data Epic requested,[2] with redactions, near midnight Pacific Time on Monday, February 12, four days before the due date of this Opposition.  (*See id.* Ex. B.)  This was too little information, produced far too late to be useful.  Epic reserves the right to raise objections to Apple's experts' conclusions once the Court has resolved the Parties' dispute as to the appropriate scope of recovery, as well as any remaining dispute regarding Apple's disclosure of the materials considered by Apple's experts in forming the opinions presented to this Court.

## **LEGAL STANDARDS**

Apple's indemnification counterclaim is based on Section 10(i) of the DPLA, which sets forth, in relevant part:

> "To the extent permitted by applicable law, You agree to indemnify and hold harmless, and upon Apple's request, defend, Apple, its directors, officers, employees, independent contractors and agents (each an "Apple Indemnified Party") from any and all claims, losses, liabilities, damages, taxes, expenses and costs, including without limitation, attorneys' fees and court costs . . . incurred by an Apple Indemnified Party and arising from or related to any of the following . . . : (i) Your breach of any certification, covenant, obligation, representation or warranty in this Agreement, including Schedule 2." (PX-2619 § 10.)

Section 14.10 of the DPLA sets forth that disputes over the agreement "will be governed by and construed in accordance with the laws of the United States and the State of California".  (*Id.* § 14.10.)  As Apple admits, "[t]he substance of [this] inquiry is governed by the plain terms of the parties' contract and by California law".  (Dkt. 876 at 9.)

---

[2] Epic requested all data listed in the materials identified on pages 2-3 of Exhibit D to Ms. Irwin's declaration, under the headings "Data", "Declarations" and "Invoices" (*see* Dkt. 876-6 at 2-3), and the materials identified on page 2 of Exhibit A to Mr. Pearl's declaration under the headings "Data from Cornerstone" and "Other" (*see* Dkt. 876-10 at 2), with the limitation that Epic did not initially demand individual time entries from counsel, subject to a reservation of rights to demand such information later.  (Even Decl. Ex. A at 5.)  Apple refused to provide internal Apple policy documents, claiming that they are "not relevant", notwithstanding the fact that they were considered by Apple's experts.  (*Id.* Ex. B at 2.)  Based on Epic's preliminary review of the production, it appears that other data that Epic requested simply is not in Apple's production.  For example, the production contains only one Excel spreadsheet, whereas Exhibit D to Ms. Irwin's declaration lists at least three spreadsheets as material that Ms. Irwin considered, under the heading "Data".

1

## ARGUMENT

2

**I.    Apple's Claim for Fees and Costs Incurred in Litigating Epic's Antitrust and UCL Claims Is Barred by Black Letter Law Prohibiting Fee Shifting in Favor of Antitrust Defendants**

3

4         The seminal decision that controls Apple's Motion is *Carver v. Chevron U.S.A.,*

5   *Inc.*, 119 Cal. App. 4th 498 (2004).  The court there held that (i) prevailing defendants cannot

6   recover attorneys' fees or litigation costs they incurred while defending against antitrust claims

7   (there under the Cartwright Act), even where the parties have entered into a private contract that

8   otherwise permits fee shifting; and (ii) recovery is likewise barred where fees and costs were

9   incurred in connection with *contract* claims if the litigation of those claims inextricably

10  overlapped with the defense against antitrust claims.  *Carver*, 119 Cal. App. 4th at 505 ("[T]he

11  Cartwright Act's unilateral fee-shifting provision precludes an award of attorney fees to a

12  prevailing defendant for defending claims common to both Cartwright Act and non-Cartwright

13  causes of action").  Since that decision, courts applying California law have further recognized

14  that the same bar on recovery applies equally to defense against federal antitrust claims and

15  California UCL claims.  *Dominick*, 2013 WL 990825, at *2-3 (finding prevailing defendants

16  could not recover fees and costs for defending against Sherman Act, Clayton Act, California

17  Cartwright Act or California UCL claims); *see also Walker v. Countrywide Home Loans, Inc.*, 98

18  Cal. App. 4th 1158, 1179-81 (2002) (pre-*Carver* decision affirming trial court's denial of

19  recovery for UCL-related portion of fees in an action involving multiple claims because "where a

20  plaintiff sues solely under the unfair competition law, fees may not be recovered by a prevailing

21  defendant").[3]

22         *Dominick*, which applied *Carver* to claims under Sections 1 and 2 of the Sherman

23  Act, the Cartwright Act and the UCL, is instructive.  There, the prevailing defendant sought to

24  recover its attorneys' fees pursuant to a fee-shifting provision in the licensing agreement between

25  _____

26         [3] Cases subsequent to *Carver* have also broadly applied its holding outside of the antitrust context, to other areas where a statute bars the recovery of fees by a prevailing defendant.  *See, e.g., Dane-Elec Corp., USA v. Bodokh*, 35 Cal. App. 5th 761, 770-72 (2019) (fee request under California labor law); *Turner v. Ass'n of Am. Med. Colleges*, 193 Cal. App. 4th 1047, 1062 (2011) (fee request under California Unruh Civil Rights Act and Disabled Persons Act).

27

28

the parties.[4]  *Dominick*, 2013 WL 990825, at *4-5.  The court refused to allow the defendants to invoke the provision to recover fees for defending against the antitrust claims, finding that "under California law, prevailing defendants may not recover attorneys' fees for successfully defending against antitrust claims, even if a contractual fee-shifting clause may have otherwise allowed for such fees".  *Id.* at *5.  In reaching this decision, the court held that private parties may not, by contract, "override congressional intent" that prevailing defendants not recover attorneys' fees. *Id.*  The congressional intent applicable here is well established; recovery of attorneys' fees under federal antitrust statutes is purposefully asymmetrical "to encourage private enforcement of the antitrust laws", "insulate the treble damages award from the costs of obtaining recovery" and "deter violations of the antitrust laws".  *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 959-60 (9th Cir. 2007); *see also Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1138 (9th Cir. 2008) ("[T]he purpose of fee-shifting under [the Clayton Act] is to protect the potential plaintiff's incentive for suit").  As such, allowing fee-shifting to Apple for its defense of antitrust claims would violate public policy, congressional intent and controlling California law.

Apple does not acknowledge, let alone address, this binding precedent or these policy considerations.[5]  Apple argues that because its defense against Epic's antitrust claims and its pursuit of its contract claims are inextricably intertwined, Apple is entitled to recover its *full fees and costs* and need not segregate or apportion its fees and costs as between the two litigation

---

[4] That agreement was even broader than the Indemnification Provision at issue here, stating in relevant part:  "In the event of any controversy, claim or dispute between the parties hereto *arising from, under, out of, or relating to this Agreement or breach thereof* . . . [t]he prevailing party shall be entitled to recover all of its reasonable attorneys' fees, expenses and costs." *Dominick*, 2013 WL 990825, at *4 (emphasis and alteration in original).

[5] Apple is well aware of this case law.  In fact, in recent antitrust litigation brought against Apple by AliveCor, Inc., Apple filed an indemnification counterclaim pursuant to Section 10 of the DPLA, seeking to recover its attorneys' fees and costs incurred in litigating AliveCor's claims.  (Defendant and Counterclaimant Apple, Inc.'s Answer, Defenses and Counterclaim to AliveCor, Inc.'s Complaint, No. 21-cv-03958-JSW (N.D. Cal. Apr. 4, 2022) (hereinafter "*AliveCor* Dkt."), Dkt. 46 at 24-25.)  AliveCor moved to dismiss Apple's indemnification counterclaim, including on the grounds that *Carver* and its progeny foreclosed recovery of attorneys' fees incurred in litigating its antitrust and California UCL claims.  (*AliveCor* Dkt. 47.)  The court there ruled for AliveCor on other grounds, but Apple addressed AliveCor's arguments in its opposition to the motion to dismiss.  (*AliveCor* Dkt. 48.)

efforts.  In support of this argument, Apple relies on *Reynolds Metals Co. v. Alperson*, 25 Cal.3d
124 (1979), which stands for the general proposition that attorneys' fees need not be apportioned
when they are incurred for representation on an issue common to two causes of action, only one
of which is covered by a contract that entitles the defendant to fees.  (*Id.* at 129-30.)  But in
*Carver*, the *Reynolds* holding was rejected as inapplicable in the context of antitrust claims.
Specifically, the *Carver* court held that *Reynolds* is inapposite in the context of antitrust claims
"because [*Reynolds*] did not involve a conflict between a contractual right to attorney fees and a
statutory prohibition against awarding such fees".  119 Cal. App. 4th at 504-05.  As a result,
"[t]he court in *Reynolds* did not address the public policy concern that fee awards not deter
enforcement of important statutory rights".  *Id.* at 505.

Thus, while the *Reynolds* court allowed recovery of *all* attorneys' fees when
defending against inextricably overlapping compensable and noncompensable claims, the *Carver*
court announced the exact opposite rule—*barring* recovery of *any* attorneys' fees or costs—in the
context of defending against inextricably overlapping compensable claims and noncompensable
*antitrust* claims, finding that "[b]ecause [the Cartwright Act] expressly authorizes recovery of
attorney fees for prevailing plaintiffs only, a prevailing defendant cannot use an alternative
contractual fee provision to claim entitlement to fees for overlapping compensable and
noncompensable claims".  *Id*.  Thus, the court in *Carver* held:

> "When a defendant incurs attorney fees for successfully defending both Cartwright
> Act and non-Cartwright Act claims, the portion of those fees related exclusively or
> by 'inextricable overlap' to Cartwright Act claims *are not recoverable*."  *Id.* at 506
> (emphasis added).

Apple cites no case abrogating *Carver* or otherwise permitting a prevailing
defendant to recover attorneys' fees or other costs associated with an antitrust or unfair
competition claim on the basis of a contractual fee-shifting or indemnification provision.[6]

---

[6] In Apple's briefing in *AliveCor*, when addressing the *Carver* issue, Apple cited *Reudy v.
Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1101 (N.D. Cal. 2010), *aff'd sub nom.
Reudy v. CBS Corp.*, 430 F. App'x 568 (9th Cir. 2011), as an example where recovery was
allowed.  But as the court noted in *Reudy*, the plaintiff there did not cite any authority to support
the position that the attorneys' fees sought were not recoverable, and thus, the court had no
occasion to address *Carver* and its progeny.  *Id*.  Cases that have engaged with this issue, such as

Consistent with the above principles, Apple's Motion should be denied because it fails to segregate the fees and costs Apple incurred in defending against Epic's antitrust and UCL claims—which are not recoverable as a matter of law—from any fees and costs that Apple incurred *solely* to pursue its breach of contract claim. Instead, as noted above, Apple takes the position that it cannot separate these fees and costs because the "vast majority of the litigation and trial related to the antitrust issues implicated by 9 of Epic's claims". (Dkt. 876 at 16.) But those are precisely the types of fees and costs that *Carver* found to be unrecoverable. Under *Carver*, any fees and costs that "inextricably overlap" with those Apple incurred in defending against Epic's antitrust and UCL claims cannot be recovered, even if they were also incurred in furtherance of Apple's pursuit of its breach of contract claim. To recover *any* fees or costs, Apple needed to identify the fees and costs that it incurred *solely* in pursuing its contract claims. Apple has identified no such fees or costs, and its Motion should be denied.

## II.  The Indemnification Provision Permits Apple To Recover Only for Fees and Costs Arising from or Related to Epic's Breach of the DPLA, Not Fees and Costs for Antitrust Claims that Apple Would Have Incurred Regardless of the Breach

Even if *Carver* and its progeny did not bar the recovery Apple's seeks (they do), neither the plain language of the Indemnification Provision nor applicable California law supports Apple's Motion to recover fees and costs that Apple would have incurred irrespective of Epic's breach of the DPLA. Specifically, the Indemnification Provision only permits recovery for the "attorneys' fees and court costs . . . incurred by [Apple] *arising from or related to* . . . [Epic's] *breach* of any certification, covenant, obligation, representation or warranty in [the DPLA]". (PX-2619 § 10(i) (emphasis added).) The Ninth Circuit left it to this Court on remand to determine "what portion of Apple's attorney fees incurred in this litigation can be fairly attributed to Epic's breach of the DPLA, such that they fall within the scope of the [Indemnification Provision]". *Epic Games, Inc.*, 67 F.4th at 1004 n.24. California Civil Code Section 1717(a) therefore also requires that Apple segregate the attorneys' fees and costs attributable to the claims

---

*Dominick* (which post-dates *Reudy*), invariably have applied *Carver* and its progeny to reject fees sought by defendants for defending claims under the Sherman Act. *Dominick*, 2013 WL 990825, at *5.

1   for which it is entitled to recover as compared to those for which it is not.  *Martinez v. Extra*

2   *Space Storage, Inc.*, 2013 WL 6623889, at *2-3 (N.D. Cal. Dec. 16, 2013) (applying § 1717(a) to

3   deny recovery of fees and costs where they were not attributable to an action on a contract).

4          Under California law, indemnification agreements are "to be interpreted according

5   to the language and contents of the contract as well as the intention of the parties as indicated by

6   the contract".  *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968 (1993).

7   The term "breach" is commonly understood to refer simply to the issue of whether a contract or

8   law has been violated.  Breach, Black's Law Dictionary (11th Ed. 2019) (defining breach as a

9   "violation or infraction of law, obligation, or agreement").  The term "breach" in the DPLA has

10  the same meaning, as made clear in Section 11.2(a), which refers to a "breach" as a "fail[ure] to

11  comply with any term of this Agreement".  (PX-2619 § 11.2(a).)  *See Mirpad, LLC v. California*

12  *Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1069 (2005) ("Our Supreme Court has long

13  followed the 'same meaning rule' in the construction of contracts.  Words used in a certain sense

14  in one part of an instrument are deemed to have been used in the same sense in another."

15  (quotation marks and citation omitted)).

16         Epic's antitrust claims cannot be said to arise out of or relate to a breach of the

17  DPLA because they are completely independent of Epic's violation of the terms of the DPLA.  It

18  is undisputed that Epic's antitrust claims could have been brought against Apple even if Epic had

19  not violated the terms of the DPLA, and conversely, that Epic could have breached the DPLA

20  without bringing any antitrust claims.  The core of this case was Epic's claims that Apple

21  monopolized and harmed competition in the markets for iOS app distribution and payment

22  processing, not Epic's breach of the DPLA.  The anticompetitive and unfair conduct at issue was

23  ongoing before Epic violated the terms of the DPLA and continued thereafter.  The parallel

24  *Pepper* and *Cameron* proceedings further illustrate this point:  In those cases, substantially similar

25  antitrust claims were brought by classes of app developers and consumers with no allegation by

26  Apple of any attendant breach by either class.  Thus, no claims for breach of the DPLA were or

27  are being litigated in those matters.  As a matter of contractual interpretation, Apple's fees and

28

1  costs incurred in defending against Epic's antitrust and UCL claims did not arise out of, and do

2  not relate to, Epic's breach of the DPLA.

3       Apple nonetheless argues that it is entitled to all of the attorneys' fees and costs it

4  incurred in this litigation because "Apple's breach-of-contract claim would have implicated all of

5  the antitrust issues that were the principal focus of the parties' litigation".  (Dkt. 876 at 17.)

6  Apple's basis for this assertion is that one of Epic's affirmative defenses to Apple's breach of

7  contract claim was that the DPLA was unlawful (because it violated the antitrust laws).  But if

8  this argument were successful, then that would interfere with the public policy of encouraging

9  private enforcement of the antitrust laws, as it would impose significant costs on any party that

10  has a legitimate defense that a contract they breached is illegal under the antitrust laws.

11       Section 1717(a) of the California Civil Code, which governs Apple's Motion.

12  further requires Apple to apportion its fees and costs as between those that are recoverable under

13  the Indemnification Provision (*i.e.*, those arising from or related to Epic's breach of the DPLA)

14  and those that are not recoverable (*i.e.*, those that have nothing to do with Epic's breach of the

15  DPLA).  *See Zintel Holdings, LLC v. McLean*, 209 Cal. App. 4th 431, 443 (2012) (collecting

16  cases and noting that Section 1717(a) requires that fees be apportioned between claims for which

17  they are recoverable and those for which they are not, and noting that "[a] court may apportion

18  fees even where the issues are connected, related or intertwined" (quotation marks and citation

19  omitted)); *El Escorial Owners' Assn. v. DLC Plastering, Inc.*, 154 Cal. App. 4th 1337, 1365

20  (2007), *as modified on denial of reh'g* (Oct. 3, 2007) (similar).  Since, as described above in

21  Section I, Apple has made no effort to segregate its fees and costs incurred in defending against

22  Epic's antitrust and UCL claims from those incurred in pursuing its claim for Epic's breach of the

23  DPLA, Apple's Motion also fails to satisfy this requirement under Section 1717(a).

24       At certain points in its Motion, Apple suggests that Section 1717(a) does not apply

25  here because it only applies to "post-judgment" motions for attorneys' fees and costs, whereas

26  this is supposedly a pre-judgment motion.  (*See, e.g.*, Dkt. 876 at 18 (describing § 1717 as

27  "California law applicable to *post*-judgment motions for attorneys' fees and costs") (emphasis in

28  original).)  This is incorrect.  Section 1717 by its plain terms applies broadly to any motion to

recover attorneys' fees and costs based on a contract, as Apple admits in other portions of its

Motion.  (*Id.* at 9.)  While it is true that Section 1717 cannot apply to requests for *interim* fee

awards before a "prevailing party" under the contract has been determined, *Chen v. Valstock*

*Ventures, LLC*, 81 Cal. App. 5th 957, 977-78, 983 (2022), *as modified* (Aug. 24, 2022), that is not

the case here, where Apple has already been determined to be the prevailing party on its contract

claims and all appeals of that determination are exhausted.  Section 1717 applies even in this

"pre-judgment" context.  *Burkhalter Kessler Clement & George LLP v. Hamilton*, 19 Cal. App.

5th 38, 46-47 (2018) (Section 1717 does not require that one "wait[] to file the motion for

attorney fees until after the trial court had ruled on the motion for entry of judgment").

Notwithstanding its position that Section 1717(a) does not apply to its Motion,

Apple argues in the alternative that, if it applies (it does, for the reasons stated above), then

"Epic's entire lawsuit—including its antitrust claims—was an 'action on the contract', within the

meaning of [Section 1717(a)]" (Dkt. 876 at 19), therefore entitling Apple to fees and costs it

indisputably incurred in defending against Epic's antitrust claims.  Apple's basis for this

argument is that *any* antitrust claim that challenges the legality of the DPLA under the antitrust

laws is an "action on the contract".  (*Id.*)  As set out in *Carver*, Apple's approach would raise the

risk significantly for plaintiffs challenging a contract as unlawful under the antitrust laws.  *See*

*Carver*, 119 Cal. App. 4th at 504.  Even setting aside that negative policy implication, this

approach cannot stand as a matter of statutory and contractual interpretation.  Section 1717(a) is

not an independent source of an entitlement to recover fees and costs, and it cannot be used in a

way that would change the parties' agreed scope of recovery in the underlying Indemnification

Provision.  *See The Travelers Indem. Co. v. Lara*, 84 Cal. App. 5th 1119, 1136 (2022) ("Before

section 1717 comes into play, it is necessary to determine whether the parties entered an

agreement for the payment of attorney fees and, if so, the scope of the attorney fee agreement."

(citations omitted)); *id.* at 1137 ("If the action is outside the scope of the attorney fee provision,

that is the end of the matter; section 1717 does not apply." (citations omitted)).  Here, the

underlying obligation is to indemnify Apple only for those fees and costs that arise from or relate

to a breach of the DPLA, which cannot include the antitrust claims.

### III.    Apple Is Not Entitled To Recover from Epic for Third Parties' Antitrust Claims

Apple's Motion further should be denied because Apple seeks to recover from Epic attorneys' fees and costs it incurred in defending against pure antitrust claims, with no contractual aspects at all, that were pursued by other plaintiff groups in two separate cases.

As noted above, discovery in this case was coordinated, to a large extent, with discovery in the related *Cameron* and *Pepper* actions:  More than a dozen depositions were conducted jointly in all three actions and all document discovery conducted after the filing of this Action was likewise conducted in all three parallel proceedings.  (*See supra* Section B.)  The Indemnification Provision does not require Epic to subsidize Apple's defense in the *Cameron* and *Pepper* proceedings, as these proceedings plainly do not "arise from" or "relate to" Epic's breach of the DPLA.  Yet Apple appears to be seeking from Epic the full fees and costs it incurred with respect to any coordinated discovery efforts, including the portions relating to *Cameron* and *Pepper*.  Indeed, Apple's Motion reflects no effort to apportion its claimed fees and costs to account for the fact that only a portion of those fees and costs are attributable to this case.  And in a meet and confer following the filing of this Motion (which was initiated by Epic), Apple stated that its calculations assume that the fees and costs associated with certain jointly conducted depositions should be charged to and recovered from Epic, on the theory that Epic was the plaintiff that happened to have sent the deposition notice.[7]  This Court should deny Apple's Motion to the extent it seeks recovery of fees and costs that should appropriately be apportioned to Apple's defense in the *Pepper* and *Cameron* cases.

### IV.    Apple Is Barred from Recovering for Any "Losses" Other than Attorneys' Fees

Apple also overreaches by seeking costs that go beyond the scope of the Ninth Circuit's mandate, which allows Apple to seek only "attorney fees".  That mandate was so limited based on Apple's own argument on appeal.  Apple's attempt now to shoehorn in costs that it concedes are distinct from its attorneys' fees is improper.

---

[7] Specifically, Apple's counsel confirmed that the costs of Mr. Cook's deposition had been charged to Epic in Apple's Motion even though counsel for the class plaintiffs participated in the questioning of Mr. Cook.  (Even Decl. ¶ 10.)

1    It is black letter law that the Ninth Circuit's mandate is binding on this Court.  *See,*
2  *e.g.*, *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) ("A district court that has
3  received the mandate of an appellate court cannot vary or examine that mandate for any purpose
4  other than executing it. . . .  A district court is limited by our remand when the scope of the
5  remand is clear.  Violation of the rule of mandate is a jurisdictional error." (citations omitted));
6  *see also SK hynix Inc. v. Rambus Inc.*, 2013 WL 1915865, at *6 (N.D. Cal. May 8, 2013) ("Unless
7  remanded by the appellate court, all issues within the scope of the appealed judgment are deemed
8  incorporated within the mandate and thus are precluded from further adjudication.  The mandate
9  rule precludes reconsideration of any issue within the scope of the judgment appealed from—not
10 merely those issues actually raised." (quotations and alterations omitted)).

11   Here, the Ninth Circuit mandate provides that this Court is to determine only
12 "what portion of Apple's *attorney fees* incurred in this litigation can be fairly attributed to Epic's
13 breach of the DPLA".  *Epic Games, Inc.*, 67 F.4th at 1004 n.24 (emphasis added).  This mandate
14 is limited in scope for good reason—it is exactly the argument that Apple presented to the Ninth
15 Circuit in its appeal.  For example, in its Principal and Response Brief on appeal, Apple stated
16 that the relevant Issue Presented in its cross-appeal was "[w]hether the court committed legal
17 error in construing the indemnification provision as not requiring Epic to pay Apple's *attorneys'*
18 *fees*".  (C.A.9. No. 21-16695, Dkt. 80 at 6 (emphasis added).)  In describing this Court's decision
19 on this topic, Apple stated that this Court "denied Apple's request for *attorneys' fees*".  (*Id.* at 24
20 (emphasis added).)  Apple's Cross Appeal Reply Brief likewise argues that "Epic Must Pay
21 Apple's *Attorneys' Fees*" and concludes with the statement that "the judgment on Apple's
22 indemnity claim should be reversed and remanded for an award of *attorneys' fees*".  (C.A.9.
23 No. 21-16695, Dkt. 168 at 28, 30 (emphasis added).)  In short, Apple asked the Ninth Circuit to
24 order Epic to pay Apple its attorneys' fees, and the Ninth Circuit granted that request.  No more.

25   Because attorneys' fees are well-recognized as distinct from "costs" or other
26 "expenses", this Court must consider only what *attorneys' fees* Apple is entitled to recover under
27 the Indemnification Provision, and not any other costs that Apple seeks in its Motion.  *See, e.g.*,
28 10 C. Wright & A. Miller, Federal Practice and Procedure § 2666 (4th Ed. 2023) (collecting cases

and distinguishing between "costs", "fees" and "expenses" and characterizing "attorney's fees" as a particular type of "expenses").  Indeed, cases cited by Apple in support of its Motion treat attorneys' fees as distinct from other costs and expenses, such as expert fees.  *See, e.g.*, *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (recognizing that the Americans with Disabilities Act treats attorneys' fees, litigation expenses (including "expert witness fees, travel expenses, etc.") and costs as distinct categories); *Tax Servs. of Am., Inc. v. Mitchell*, 2008 WL 2834271, at *5 (D. Colo. July 21, 2008) (granting distinct awards for attorneys' fees, expert fees and other costs).

The distinction between attorneys' fees and other costs is in both the Indemnification Provision and Apple's own Motion.  As to the Indemnification Provision, this section of the DPLA provides that signatories "agree to indemnify and hold harmless, and upon Apple's request, defend, Apple[] . . . from any and all claims, losses, liabilities, damages, taxes, expenses and costs, *including without limitation, attorneys' fees* and court costs".  (PX-2619 § 10 (emphasis added).)  The term "attorneys' fees" must therefore be interpreted to be separate from "court costs", and only a specific category of "expenses and costs", otherwise the term "attorneys' fees" would be rendered superfluous and violate the "cardinal principle of document construction . . . that document[s] must be construed as a whole so as to give effect to every part thereof".  *Bear Creek Plan. Comm. v. Ferwerda*, 193 Cal. App. 4th 1178, 1183 (2011) (citation and quotation marks omitted).

As to Apple's Motion, Apple effectively concedes that attorneys' fees are distinct from and separable from other costs.  Specifically, Apple sorts the fees and costs that it seeks to recover into several different categories, including, on the one hand, "Attorneys' Fees" and, on the other hand, other costs, which include "Expert Witness and Consulting Fees", "Document and Information Technology Expenses", "Travel and Meal Expenses", "Arbitration Expenses"[8] and

---

[8] The inclusion of "Arbitration Expenses" in Apple's chart is likely an indication of Apple's failure to segregate expenses between the instant litigation and the *Cameron* and *Pepper* litigations, as no arbitration or mediation was conducted with Epic, neither separately nor in conjunction with the other class actions.

1    "Other Expenses" (collectively, "Other Costs"), with these Other Costs accounting for

2    approximately 40% of the total recovery Apple is requesting.  (Dkt. 876 at 15.)  Apple also

3    spends portions of its Motion arguing that other categories of litigation outlays, including expert

4    fees, are "expenses", which Apple categorizes as "separate from and broader than 'costs'".  (*Id.*

5    at 12.)  Tellingly, Apple never characterizes expert fees as "attorneys' fees".  (*Id.*)

6               Apple attempts to justify its pursuit of these Other Costs in its Motion by its

7    incorrect statement that "[t]he Ninth Circuit . . . held that Apple is entitled to recover its 'Losses'

8    arising from or related to Epic's breach under the indemnification provision in the DPLA".

9    (Dkt. 876 at 1.)  But the Ninth Circuit never used the term "Losses" in its operative decision

10   (notwithstanding Apple's use of quotation marks to suggest otherwise).  Instead, consistent with

11   how Apple presented the issue to the court as detailed above, in the section of its opinion entitled

12   "Attorney Fees", the Ninth Circuit reversed what the Ninth Circuit characterized as this Court's

13   holding that the Indemnification Provision "does not require Epic to pay Apple's *attorney fees*

14   related to this litigation", finding instead that the Indemnification Provision "contemplates intra-

15   party disputes and Apple is entitled to *attorney fees* pursuant to it".  *Epic Games, Inc.*, 67 F.4th

16   at 1003-04 (emphases added).  Therefore, Apple's recovery for its indemnification counterclaim

17   must be limited only to Apple's attorneys' fees, not the Other Costs that it seeks through this

18   Motion.

19               Accordingly, Apple's Motion should be denied to the extent it seeks Other Costs

20   beyond attorneys' fees.

21   **V.    Apple Should Not Be Granted Fees or Costs for This Motion**

22               Apple's Motion should also be denied to the extent it seeks recovery of fees and

23   costs associated with preparing this Motion (as well as fees and costs for any follow-on briefing

24   or proceedings related thereto).  As explained above, Apple's Motion seeks to recover vast

25   amounts to which Apple clearly is not entitled.  Furthermore, Apple incurred significant, and

26   likely unnecessary, expenses, without first meeting and conferring with Epic as to the scope and

27   substance of its motion, as it was required to do under Civil Local Rule 54-5.  An orderly meet

28   and confer process could have (and likely would have) focused Apple's Motion on the issues

1    actually in dispute—namely the scope of recovery to which it is entitled—and avoided the

2    considerable additional fees and costs Apple has incurred in retaining experts and engaging large

3    support teams to calculate the overall fees and costs Apple has incurred, the vast majority of

4    which Apple is not entitled to recover as a matter of law.

5            Apple claims it was not required to meet and confer with Epic before filing its

6    Motion because the provisions of Federal Rule of Civil Procedure 54(d) do not apply to a pre-

7    judgment motion.  (*See* Dkt. 876 at 9.)  But those rules do apply because Apple's Motion seeks

8    attorneys' fees and costs through a post-trial motion, not having sought to prove them as an

9    element of damages at trial.  *Port of Stockton v. W. Bulk Carrier KS*, 371 F.3d 1119, 1121

10   (9th Cir. 2004) (applying Fed. R. Civ. P. 54(d) and Cal. Civ. Code § 1717(a) where attorneys'

11   fees and costs were not an element of damages at trial); *see also Zhu v. Li*, 2023 WL 4770431,

12   at *1, 3-4 (N.D. Cal. July 26, 2023) (applying Fed. R. Civ. P. 54(d) to motion for attorneys' fees

13   and court costs under contractual indemnification provision and noting similarity of

14   indemnification language in that case and in the *Epic Games, Inc. v. Apple Inc.* litigation);

15   *Instrumentation Lab. Co. v. Binder*, 2013 WL 12049070, at *19 (S.D. Cal. Mar. 28, 2013)

16   (applying Fed. R. Civ. P. 54(d) to motion for attorneys' fees and court costs under contractual

17   indemnification provision).  And under Civil Local Rule 54-5, "[c]ounsel for the respective

18   parties must meet and confer for the purpose of resolving all disputed issues relating to attorney's

19   fees before making a motion for award of attorney's fees."  Civ. L. R. 54-5(a).  Apple failed to

20   adhere to that requirement; indeed, Apple provided no advance notice at all to Epic that it planned

21   to file this Motion, let alone that it had engaged multiple experts and has asked them to form

22   opinions and to put together dozens of exhibits and tens of pages of analysis,[9] which Apple is

23   now asking the Court to make Epic pay for.  (Even Decl. ¶ 9.)

24

25

---

26   [9] As one example, as noted above, Apple engaged an expert and a team of nine additional
     analysts to "analyze[] Apple's billing and invoice records from the *Epic* litigation" (Dkt. 876

27   at 21), work that likely carried on for weeks or months, all the while keeping Epic in the dark
     about these additional costs.

28

1    As explained above, all of this expert work was unnecessary and misguided

2  because it was for naught:  Apple calculated all of its fees and costs for this case and engaged

3  experts to opine on their reasonableness, when what it should have done was to identify only its

4  attorneys' fees that were fairly attributable to Epic's breach of the DPLA, as required under

5  California law, the Indemnification Provision and the Ninth Circuit's mandate.  Had Apple

6  consulted with Epic before conducting all of this work, at the very least the Parties could have

7  jointly asked for the Court to determine the appropriate scope of recovery *before* Apple retained a

8  large team of experts and sent them to answer what Epic believes to be entirely the wrong

9  question.

10    There is no excuse for Apple's failure to follow the rules that apply to this briefing,

11  and this conduct should not be rewarded.  Apple should be required to bear its own attorneys' fees

12  and costs as to this Motion and any follow-on briefing or proceedings.

13                                   **<u>CONCLUSION</u>**

14    For the foregoing reasons, Epic respectfully requests this Court deny Apple's

15  Motion.

1    Dated:  February 16, 2024          Respectfully submitted,

2

                                            By:   /s/ *Yonatan Even*

3

4                                      **FAEGRE DRINKER BIDDLE & REATH LLP**

5                                      Paul J. Riehle (SBN 115199)

6                                      paul.riehle@faegredrinker.com

7                                      Four Embarcadero Center

8                                      San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

9

10                                   **CRAVATH, SWAINE & MOORE LLP**

11                                   Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com

12                                   Yonatan Even (*pro hac vice*)
yeven@cravath.com

13                                   Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com

14                                   Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com

15                                   Michael J. Zaken (*pro hac vice pending*)
mzaken@cravath.com

16                                   M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

17

18                                   825 Eighth Avenue
New York, New York 10019

19                                   Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

20

21                                   *Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

22

23

24

25

26

27

28