# Exhibit A

Renata B. Hesse (SBN 148425)
(hesser@sullcrom.com)
Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California  94301
Telephone:  (650) 461-5600
Facsimile:  (650) 461-5700

Shane M. Palmer (SBN 308033)
(palmersh@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for* Amicus Curiae *Spotify USA Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC., <br><br>    Plaintiff, <br><br> v. <br><br>APPLE INC. <br><br>    Defendant. | Case No. 4:20-cv-05640-YGR-TSH <br><br> **BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC GAMES, INC.'S MOTION TO ENFORCE INJUNCTION** <br><br> Judge: Hon. Yvonne Gonzalez-Rogers <br> Hearing Date: April 30, 2024 <br> Hearing Time: 2:00 p.m. <br> Courtroom: 1, 4th Floor |

SULLIVAN & CROMWELL LLP

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

# TABLE OF CONTENTS

*Page*

INTERREST OF *AMICUS CURIAE* ..........................................................................................1

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.    THE COURT'S INJUNCTION APPLIES TO ALL APPS, INCLUDING SPOTIFY ...........................................................................................................................3

    II.    THE APPLE PLAN DEPRIVES APP DEVELOPERS OF THE BENEFITS OF THE INJUNCTION ...........................................................................................................4

        A.    Guideline 3.1.3 Continues To Prohibit Reader Apps from Steering ................4

        B.    The Apple Plan Imposes New Anti-Steering Restrictions that Prevent Apps from Communicating with Users about the Content and Pricing of Their Services .....................................................................................................5

        C.    The Apple Plan Forecloses Price Competition by Imposing Commissions on Out-of-App Transactions that Effectively Meet or Exceed Apple's IAP Commissions, Deterring Developers from Implementing an External Payment Link ..........................................................7

CONCLUSION ................................................................................................................................9

i

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Epic Games, Inc.* v. *Apple Inc.*,
    559 F. Supp. 3d 898 (N.D. Cal. 2021) .................................................................................. *passim*

*Epic Games, Inc.* v. *Apple Inc.*,
    67 F.4th 946 (9th Cir. 2023) ........................................................................................................2

SULLIVAN & CROMWELL LLP

ii

BRIEF OF AMICUS CURIAE SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

Spotify USA Inc. ("Spotify") respectfully submits this brief as *Amicus Curiae* in support of Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction.[1]

## INTEREST OF *AMICUS CURIAE*

Spotify and its affiliates operate one of the world's most popular audio streaming subscription services. Spotify's streaming service first launched in Sweden in 2008 and launched in the United States in 2011. With a presence in more than 180 countries and territories, Spotify's platform includes 602 million monthly active users, including 236 million paid subscribers to its Premium service as of December 31, 2023.

Spotify's audio-streaming app has been available on the Apple App Store in the United States since 2011. As an app developer that has been subject to Apple's anti-steering restrictions for many years, and as a beneficiary of this Court's September 10, 2021 injunction against Apple, Spotify has a substantial interest in ensuring that the injunction is enforced so that Spotify can freely communicate with its users about price and purchasing information within its iOS app. Moreover, Spotify can offer the Court an important perspective because it falls within a category of apps known as "reader" apps under Guideline 3.1.3(a) of Apple's App Store Review Guidelines ("Guidelines"). Spotify can aid the Court in its resolution of Epic's motion by explaining how changes to Apple's Guidelines in response to the injunction continue to restrict the flow of price and purchasing information and prevent users from learning about the low-cost options offered by reader apps, inhibiting the price competition that this Court sought to enable.

## INTRODUCTION

This Court's September 10, 2021 trial order ("Order") was clear: the anti-steering provisions contained in Apple's Guidelines violate California law and cause "considerable" harm to app developers and Apple mobile device users. *Epic Games, Inc.* v. *Apple Inc.*, 559 F. Supp. 3d 898, 1056 (N.D. Cal. 2021). The Court found that this harm could "best be remedied by

---

[1] Spotify is a wholly owned subsidiary of Spotify Technology S.A., a publicly traded company that does not have a parent corporation. No publicly traded corporation owns 10% or more of the common stock of Spotify Technology S.A. Spotify affirms that no counsel for a party authored this brief in whole or in part, and no person other than Spotify contributed any money to fund its preparation or submission.

SULLIVAN & CROMWELL LLP

1

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

invalidating the offending provisions" in Apple's Guidelines and entered a permanent injunction preventing Apple from prohibiting app developers from including in their apps "buttons, external links, or other calls to action that direct customers to purchasing mechanisms" other than Apple's proprietary In-App Purchase mechanism ("IAP"). (*See* Dkt. No. 813.) The Ninth Circuit affirmed this Court's findings that Apple's anti-steering provisions decrease the pricing information available to consumers, enable Apple to reap supracompetitive profits, and reduce innovation. *Epic Games, Inc.* v. *Apple Inc.*, 67 F.4th 946, 1000–02 (9th Cir. 2023). It also held that this Court did not abuse its discretion by imposing an order permanently enjoining Apple from enforcing its anti-steering rules nationwide. *Id.* at 1003–04.

Apple's conduct shows that it has no intention of complying with this Court's directive. On January 16, 2024, Apple filed a Notice describing the changes it has made in a supposed effort to comply with the injunction (the "Apple Plan"). (*See* Apple's Notice, Dkt. No. 871.) Although the Apple Plan makes nominal changes, even a cursory review reveals that the Apple Plan falls far short of what this Court has ordered Apple to do. Rather than removing the offending provisions, Apple has essentially left its anti-steering rules in place by enacting additional new rules that will continue to (i) prevent app developers from offering competitive alternatives to Apple's IAP, (ii) limit information flow to consumers, and (iii) deprive users and developers of any benefit of the injunction.

The Apple Plan violates the injunction and undermines the goal of this Court's injunctive relief: to "uncloak[] the veil hiding pricing information on mobile devices and bring[] transparency to the marketplace." *Epic Games*, 559 F. Supp. 3d at 1057. As such, this Court should reject the Apple Plan in its entirety and order Apple to allow all apps to share price and purchasing information with their users within the app, so that the injunction can have its intended effect of increasing transparency for consumers and, thus, constraining Apple's IAP commissions.

As an initial matter, this Court's injunction applies with equal force to protect all apps, including Spotify. This Court was clear that its injunction was intended to apply "nationwide" to "all apps, not just gaming apps." *Id.* at 922, 1058. And all app users stand to benefit from the greater price transparency that this Court's injunction was designed to bring about.

SULLIVAN
&
CROMWELL LLP

2

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

This Court should reject the Apple Plan because it violates the letter and spirit of the Court's injunction in multiple ways.  *First*, Apple's revised Guideline 3.1.3 retains express anti-steering language that this Court already found to be anticompetitive and continues Apple's ongoing effort to prevent its competitors from freely communicating with their consumers.  *Second*, the numerous requirements governing Apple's new external purchase link entitlement ensure that the links will not be an effective means of providing pricing information to users to aid them in their purchasing decisions.  *Third*, the Apple Plan's imposition of a new 27% commission on out-of-app purchases will discourage developers from using links at all because doing so would extend the inflated pricing that has long existed within iOS apps to the open web.

Ignoring this Court's directive simply to "sever[]" the anti-steering provisions from its Guidelines, *id.* at 1055, Apple has instead implemented a new scheme designed to ensure that developers cannot effectively steer their users within iOS apps to non-Apple payment mechanisms.  Collectively, Apple's new requirements will deter many developers from even trying to include an external purchase link within their apps, and will ensure that those developers who do implement such a link are not able to offer a competitive alternative to IAP.  Spotify respectfully requests that this Court reject the Apple Plan and issue clear directives that ensure that Apple fully complies with the injunction.

**ARGUMENT**

**I.     THE COURT'S INJUNCTION APPLIES TO ALL APPS, INCLUDING SPOTIFY.**

This Court made clear that Apple's anti-steering provisions create anticompetitive effects for "all apps, not just gaming apps."  *Epic Games*, 559 F. Supp. 3d at 1057–58.  The Order expressly called out language from Guidelines 3.1.1 and 3.1.3 "prohibiting apps from including 'buttons, external links, or other calls to action that direct customers to purchasing mechanisms other than in-app purchase,' and from 'encourag[ing] users to use a purchasing method other than in-app purchase' either 'within the app or through communications sent to points of contact obtained from account registrations within the app (like email or text).'"  *Id.* at 1055 (quoting PX-2790, Dkt. No. 871-4, Ex. 11 §§ 3.1.1, 3.1.3) (alteration in original).  Reviewing the trial record, the Court then concluded that Apple "acts anticompetitively" by blocking marketing activities such

3

SULLIVAN & CROMWELL LLP

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

as "push notifications" and "email outreach," and that "[t]he Court cannot discern any principled reason for eliminating the anti-steering provisions to mobile gaming only." *Id.* at 1054–55, 1057–58. As such, the Court found that a "nationwide remedy to eliminate those provisions is warranted." *Id.* at 922. Thus, there can be no real dispute that the injunction applies to all apps, without exception.

Reaffirming the injunction's application to all apps is necessary to achieve the benefits of price transparency and expanded user choice that the Court intended to foster. Just as with mobile gaming apps, users of all other types of apps benefit when they can learn about lower-cost pricing and payment options. This Court acknowledged that information barriers "may create 'lock-in' for platforms as users lack information about the lifetime costs of an ecosystem" and "lack the ability to attribute costs to the platform versus the developer, which further prevents them from making informed choices." *Id.* at 1055. The injunction ensures that Apple cannot use such "lock-in" for its own benefit by preventing app developers from informing users about the availability of lower-cost alternatives.

## II. THE APPLE PLAN DEPRIVES APP DEVELOPERS OF THE BENEFITS OF THE INJUNCTION.

After finding that Apple's anti-steering restrictions were unlawful, the Court rightly observed that the injuries to developers and consumers resulting from Apple's conduct "can best be remedied by invalidating the offending provisions." *Id.* at 1057. Simply removing Apple's anti-steering rules from the Guidelines would enable greater price transparency and would allow viable alternatives to Apple's IAP to emerge. But instead of following this Court's directive, Apple has introduced a new scheme that is designed to continue suppressing developers' ability to steer users towards non-Apple payment mechanisms. At least three aspects of Apple's scheme, described in the sections that follow, will deprive developers like Spotify and their users of the benefits of the Court's injunction.

### A. Guideline 3.1.3 Continues To Prohibit Reader Apps from Steering.

Reader apps, like other apps, have long been subject to Apple's anti-steering restrictions. As described above, this Court found that Apple's prohibition on "encourag[ing] users

SULLIVAN & CROMWELL LLP

4

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

to use a purchasing method other than in-app purchase" was anticompetitive, and that this provision "can be severed without any impact on the integrity of the ecosystem." *Id.* at 1055. Despite this clear directive, Apple's revised Guidelines still provide that reader apps,[2] and other apps that fall within Guideline 3.1.3's ambit, "cannot, within the app, encourage users to use a purchasing method other than in-app purchase, except as set forth in 3.1.3(a)."[3] (Dkt. No. 874, Ex. 1 § 3.1.3.)  For reader apps (as with all other types of apps), Apple's new external purchase link entitlement is the *sole* means that Apple allows for communicating with users within an iOS app about prices, offers, or payment options available outside of the app, and it in fact permits nothing of the kind. Thus, Apple remains out of compliance with the express commands of this Court's Order and injunction.

### B. The Apple Plan Imposes New Anti-Steering Restrictions that Prevent Apps from Communicating with Users about the Content and Pricing of Their Services.

In place of the anti-steering restrictions in Apple's Guideline 3.1.1 that this Court found to be anticompetitive, *see id.* at 1055 & n.635, the Apple Plan puts in place new anti-steering restrictions that achieve the same practical effects.  Thus, even if an app developer applies for and is granted an entitlement to include an external payment link within its app, Apple's myriad restrictions on the location, appearance, and technical implementation of the link — which are

---

[2] Apple defines reader apps to mean apps that "allow a user to access previously purchased content or content subscriptions" that were paid for outside of the iOS app. (*See* Dkt. No. 874, Ex. 1 § 3.1.3.)  Apple classifies Spotify as a reader app because Spotify users can purchase audio-streaming subscriptions and other products on Spotify's website, then later access them within the Spotify iOS app by logging into the account that was used to make those purchases.

[3] To be clear, Guideline 3.1.3(a) does not create any exception allowing reader apps to encourage the use of non-Apple payment methods. Guideline 3.1.3(a) gives reader app developers only the narrow ability to "apply for the External Link Account Entitlement to provide an informational link in their app to a web site . . . in order to create or manage an account." This account link entitlement has *nothing* to do with pricing or directing users to non-Apple payment methods outside of the app. In fact, Apple's rules governing the account link entitlement expressly state that the link cannot "include, or be used with, language that includes the price of items available on the website." Apple, *Distributing "Reader" Apps with a Link to Your Website*, https://developer.apple.com/support/reader-apps/ (last visited March 19, 2024). In addition, these account management links are subject to restrictions on the location, appearance, and technical implementation of the link that are similar to the rules Apple imposes on its new external payment links, discussed in Section II.B below. *See id.* As such, the account link entitlement does nothing to further this Court's goal of improving price transparency.

SULLIVAN & CROMWELL LLP

5

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

thoroughly catalogued in Epic's Motion to Enforce the Injunction (Epic Brief, Dkt. No. 897, at 5–9) — will prevent the developer from effectively communicating pricing information to users in a way that they might actually find to be useful in deciding whether and how to make a purchase.

As Epic has explained, the Apple Plan's external link entitlement restrictions severely hamper all app developers' ability to inform users about lower-price alternatives to IAP. (*See id.* at 5–9, 15–17.) The entitlement is limited to a single link that cannot be displayed in any in-app payment flow, and Apple carefully circumscribes every aspect of the link through exacting rules as to its location, language, and even color. (*Id.* at 5–9.) These restrictions cannot reasonably be explained by any of the purported privacy or security justifications that Apple asserts. (*See id.* at 19.) None of them has any reasonable justification other than to serve as an obstacle to non-Apple payment alternatives.

Apple's new restrictions ensure that, just as under the pre-injunction status quo, developers cannot present users with information about alternative payment mechanisms and pricing at the moments when they are considering a purchase. This has important implications for Spotify and countless other apps that create or license content that is then made available to users through different service tiers, each with varying price points and features. Such apps typically offer a variety of subscription options, including free/ad-supported tiers, paid tiers that unlock certain features or content, and tiers like Family plans or discounted plans for eligible students that offer particular value to some consumers. To encourage users to subscribe to these services, developers need to be able to communicate with users about their apps' paid features and how to access them. The success of these apps depends, therefore, on a developer's ability to inform users of the options and benefits of each subscription offering, and to make paying for those features as convenient as possible. If there is significant friction in subscribing to a paid-service tier, users might decide it is not worth the trouble — even if they otherwise would have desired the paid service's features.

Apple's external link entitlement restrictions introduce friction to every aspect of a developer's attempt to provide any useful price or purchasing information to its users. Moreover, because the link must be in a location that the user "navigates to" and cannot be part of any payment

SULLIVAN
&
CROMWELL LLP

6

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

flow, the Apple Plan prohibits developers from presenting alternative payment options to users at the point when they are actually trying to access a paid feature of the app.  Apple's restrictions on information flow *at the moment* users are contemplating a purchase thus wholly undermines this Court's goal of "bringing transparency to the marketplace." *Epic Games*, 559 F. Supp. 3d at 1057.  By contrast, if Apple simply followed the letter of the injunction and permitted developers to share information with their users — without the numerous unjustified restrictions on the location, appearance, and content of that information — those users would be better informed and able to make their own choices of which offer and payment method was most suitable.

      C.      **The Apple Plan Forecloses Price Competition by Imposing Commissions on Out-of-App Transactions that Effectively Meet or Exceed Apple's IAP Commissions, Deterring Developers from Implementing an External Payment Link.**

On top of its anti-steering restrictions, the Apple Plan also requires that app developers that implement a payment link must pay Apple a 27% commission (or 12% for certain qualifying purchases) on any purchases made on the developer's website within seven days after linking out through the external purchase link in an iOS app.[4]  The commission applies even if the user navigates directly to the developer's website to make the purchase days after clicking on the external payment link within the iOS app.  (*See* Dkt. No. 874, Ex. 2 § 1 (definition of "Transaction").)  This commission undermines the injunction and ensures that app developers such as Spotify will not even attempt to implement external links in their apps.  It is designed to nullify the Court's Order in practical effect.

Apple's new 27% commission eliminates any potential consumer benefit provided by an external link because it essentially guarantees that a developer's prices offered through an alternative payment mechanism will be the same as or higher than prices that developer would charge using IAP.  Under the status quo, apps can offer subscription options on their websites at lower prices than they would charge using IAP precisely because Apple cannot impose a

---

[4]    This commission is only 3% lower than the 30% (or 15%) commission charged on transactions made through IAP.  (Dkt. No. 874, Ex. 2 § 5.1.)  Developers with subscription products — such as Spotify — are subject to Apple's 27% commission on the initial purchase of the subscription *and* for each subsequent auto-renewal after the subscription is initiated.  (*Id.*)  After the first year of the subscription, the commission on auto-renewals drops to 12%.  (*Id.*)

SULLIVAN
&
CROMWELL LLP

7

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

commission on those purchases.[5]  But many apps would be forced to raise their prices to the same inflated levels they would charge using IAP if they had to pay Apple's new 27% commission on payments outside of iOS.

Furthermore, because the Apple Plan imposes a commission on payments made on a developer's website by users long after linking out of an iOS app, Apple's new tax would likely affect prices even for the developer's users who never actually tapped on an external payment link. Apple's new tax would apply even to purchases made on non-iOS devices, including desktop computers and even Android devices.  A developer cannot, therefore, account for Apple's commission by simply sending all iOS users who tapped an external link — or even all iOS users generally — to a dedicated website that charges higher prices.  Instead, any developer that implements an external payment link would have to assume that *any* transactions completed on its website, originating from any type of device, might be subject to Apple's tax.  As a result, the Apple Plan would effectively require Spotify to increase prices for *all users* if it wanted to implement the external purchase link without having to absorb Apple's commissions.  This outcome would be bad for consumers and contrary to the purpose of the injunction.

There is no legitimate basis for Apple to impose such a tax on developers for transactions made outside of an iOS app.  When considered in light of payment processing and other expenses incurred by developers for transactions made on their own websites, the 27% commission under the Apple Plan is effectively equivalent to or higher than the 30% commission imposed on transactions through Apple's IAP.  (*See* Epic Brief, Dkt. No. 897, at 15–16.)  Apple claims that this new commission is appropriate "in view of the substantial value Apple provides to developers" through use of its platform.  (*See* Apple's Notice, Dkt. No. 871, at 12.)  But this Court has already found Apple's 30% commission to be "excessive" and "unjustified." *Epic Games*, 559 F. Supp. 3d at 997, 1054.

---

[5]  Spotify's own experience with Apple demonstrates this point.  When Spotify, under commercial pressure from Apple, adopted IAP for a time between 2014 and 2016, Spotify had to raise its monthly subscription fee from $9.99 to $12.99 because of the 30% commission on all subscription signups within its iOS app.  *See Time to Play Fair*, Spotify (2024), https://www.timetoplayfair.com/timeline/.

Sullivan & Cromwell LLP

8

BRIEF OF *AMICUS CURIAE* SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

        Apple's new 27% commission, together with its other restrictions on external links, accomplishes one clear goal: Ensuring that developers have no incentive to apply for an external link entitlement in the first place. This unjustified tax on linking to an out-of-app payment method will have the same practical effect as an outright ban on such links. By imposing this new fee, Apple eliminates any possibility that its narrow external link entitlement could lead to increased price transparency, and it ensures that no competing payment method will ever serve as a check on Apple's IAP commissions.

## CONCLUSION

        This Court correctly concluded that Apple's anti-steering restrictions are illegal because they prevent developers from informing consumers about where to buy something and how much it costs. It also correctly observed that the most obvious way for Apple to comply with the injunction would be simply to remove the anti-steering restrictions from the Guidelines. Removing those provisions would allow developers to communicate with their users and bring about the price transparency that this Court intended to foster. But Apple failed to take this simple remedial step. Beyond failing even to remove all of the provisions that this Court found unlawful, Apple has also implemented a new set of anti-steering restrictions designed to ensure that developers cannot steer users to alternative payment methods within their iOS apps.

        For the reasons described above, the Apple Plan deprives developers such as Spotify of the benefits of the injunction. This Court should not sanction Apple's continued anticompetitive conduct by approving the Apple Plan. This Court should reject the Apple Plan and order Apple to comply with the injunction by removing the offending anti-steering provisions.

Dated: March 20, 2024

/s/ *Brendan P. Cullen*
Renata B. Hesse
Brendan P. Cullen
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California  94301
Telephone:  (650) 461-5600
Facsimile:  (650) 461-5700
Email:   hesser@sullcrom.com
           cullenb@sullcrom.com

SULLIVAN & CROMWELL LLP

9

BRIEF OF AMICUS CURIAE SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH

Shane M. Palmer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Email:    palmersh@sullcrom.com

*Attorneys for* Amicus Curiae *Spotify USA Inc.*

SULLIVAN
&
CROMWELL LLP

10

BRIEF OF AMICUS CURIAE SPOTIFY USA INC. IN SUPPORT OF EPIC'S MOTION TO ENFORCE INJUNCTION
CASE NO. 4:20-CV-05640-YGR-TSH