

Karl C. Huth • (631) 263-3648 • huth@huthreynolds.com • 41 Cannon Court, Huntington NY 11743

April 22, 2024

*Via ECF*

Hon. Yvonne Gonzalez Rogers, U.S. District Judge
U.S. District Court for the Northern District of California
Courtroom 1 – 4th Floor
1301 Clay Street
Oakland, CA 94612

  Re: *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR-TSH

Dear Judge Gonzalez Rogers:

  Pursuant to Your Honor's Orders in the above-referenced action, ECF Nos. 911 & 913, *amicus curiae* Digital Content Next ("DCN") hereby submits this letter to correct or clarify certain incomplete or misleading factual assertions made in Defendant Apple Inc.'s ("Apple") April 12, 2024 Opposition to Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction, ECF No. 915 (the "Opposition").[1]

### **The Court Should Disregard Apple's Attempt to Characterize DCN As a Front for DCN Member Disney Because DCN Represents a Broad Coalition of News and Media Interests**

  As an initial matter, Apple claims that DCN's Amicus Curiae Brief, ECF No. 908-1 (the "DCN Brief") merely repeats Epic's arguments, *see* Opp'n at 24, and represents "self-interested advocacy from a non-party seeking to further its members' commercial interests." Opp'n at 28. Apple selectively targets one of DCN's members to argue that it is "fantastical" to suggest that Apple's Guidelines "prevent multi-billion-dollar companies" from adequately communicating with American consumers. *Id*. at 22 n.3. Apple's *ad hominem* attack ignores that DCN is a trade organization which represents many dozens of members, consisting primarily of traditional news and media organizations, *see* DCN Br. at 3, whose ability to communicate with consumers is limited by Apple's Guidelines. Those members include The Associated Press, *The New York Times*, *The Washington Post*, the publisher of *The Wall Street Journal*, *The Financial Times*, Hearst Newspapers, Bloomberg, Condé Nast, Consumer Reports, *The Economist*, NBCUniversal, NPR, PBS and many other critical pipelines of news and information to the American public. It is obvious why Apple chose to focus only on one of DCN's members—Apple wishes to cast this proceeding as merely an economic battle between Apple and other large, powerful organizations, such as Epic, Microsoft, X, Spotify, and Meta, and Apple feels it can paint DCN's members with the same brush—but Apple's attacks miss the mark. The focus of DCN's Brief plainly centers on the impact of Apple's misconduct on the publishing efforts of DCN's members and on the public.

---

[1]  Unless otherwise noted, all defined terms herein take on the same definitions as in DCN's March 22, 2024 *Amicus Curiae* Motion and Brief (ECF Nos. 908 & 908-1).

Page 2
April 22, 2024



Apple's Opposition, by choosing to focus only on attacking a single DCN member, utterly fails to address the chilling impact of its Guidelines on news and media organizations or the public.

**Apple Falsely Characterizes Its Policies Forcing Developers into Developing Subscription-Only Apps As Permitting the Exercise of Unfettered "Business Judgment"**

Apple argues that the restrictions discussed in DCN's Brief concerning Apple's Video Parter Program ("VPP") and News Partner Program ("NPP") are inapposite to the Injunction because they largely relate to subscription apps and are styled as voluntary programs. As explained in DCN's Brief, Apple's VPP and NPP programs ***outright prohibit*** participants from applying for a Link Entitlement to direct consumers to an external third-party payment system. *See* DCN Br. at 7, *citing* ECF No. 874 Ex. 2 § 2.1 ("You will need to request an Entitlement Profile on the Apple Developer Program web portal prior to use of links from Your Application to an external website for purchases. To use an Entitlement Profile, Your Application must . . . [n]ot participate in the Apple Video Partner Program or News Partner Program . . . ."). Apple argues that participants in these programs chose to participate and asks the Court not to second-guess the "informed exercise of business judgment" by participants in those programs. Opp'n at 28.

If the Court accepts Apple's invitation to rely on the "business judgment" of participants in the VPP or NPP programs, or of "subscription app" developers generally, then it is important that the Court know that NPP and VPP apps do not just become "subscription apps" in a vacuum or through the free choice of developers. Rather, Apple's policies force developers into these categories—and then deny developers the ability to use external payment options. In truth, participants in these programs are ***limited*** to subscription content because ***the Apple Plan limits the payment and product options that members can provide, such that subscription payment systems are the only option within Apple's system available*** to news publishers and similar institutions. Apple's scheme to constrain app functionality and squelch innovation affects a wide range of developers, and has recently prompted the U.S. Department of Justice ("DOJ") to file a civil antitrust lawsuit against Apple. The DOJ's complaint in that action alleges that Apple's policies operate to protect its monopoly position by preventing "super apps", *i.e.*, apps that provide opportunities for consumers to access information, make purchases, and other services within a single app. *See* Compl. ¶¶ 60–70, ECF No. 1, *United States v. Apple Inc.*, Case No. 2:24-cv-04055 (D.N.J. Mar. 21, 2024).[2]

Apple's constraints on app development are an integral part of the Gauntlet and Tax schemes discussed in DCN's Brief—*i.e.*, the system of restrictions, prohibitions, rent-taking, and penalties through which Apple protects its market position from competition. A prime example is that the Apple Plan prohibits participants (including DCN members) in Apple's VPP or NPP from including External Links in their apps. *See* DCN Br. at 14. The Apple Plan also requires that NPP participants make some of their content available for Apple's proprietary Apple News service,

---

[2]   Examples of potential alternative offerings through "super apps" may include pay-per-view events, add on subscriptions, tokens for micro-transactions, and other ways for developers to generally innovate new ways of funding their news and entertainment services, which the Apple Guidelines prohibit.



Page 3
April 22, 2024

effectively adding a "content tax" to the overall Tax paid by developers.[3] This policy works with Apple's carefully constructed framework of anticompetitive policies to steer consumers toward Apple's own news program and away from competitors, all while weakening the value of a subscription-based app.

In other words, participants in NPP and VPP have subscription-only apps **because Apple has made it so**. Apple created its Gauntlet, Tax, and Scare schemes to limit competition and maintain its dominant position, and Apple now finds itself defending against a DOJ lawsuit arising from exactly this policy. Yet Apple discounts DCN's interest as an *amicus curiae* specifically because DCN's members are ***victims*** of Apple's anticompetitive practices and have been forced to take Apple's oppressive terms or be excluded from Apple's platform entirely. Apple may be entitled to points for chutzpah—but it should not be allowed to use its own Plan as both a sword against innovation and a shield against criticism.

This is not a reply brief, and DCN will not address each of Apple's legal arguments in detail. DCN submits this letter only to clarify the above misleading or incomplete factual assertions raised in Apple's Opposition.

Fundamentally, DCN's goal in this proceeding is to emphasize that Apple's Gauntlet, Tax, and Scare policies are not victimless crimes, or immaterial breaches of the Injunction. These policies have real-world effects and cause real-world harm—not just to Apple's competitors or game developers like Epic, but to news organizations and the public at large.

DCN and its members' concerns go beyond the economic interests of the parties, *amici*, or other developers, and touch on the freedom of the press, one of the foundations of a free democratic society. Those concerns are consonant with the purpose of the Injunction, which Apple admits is focused on "consumer choice and information, because '***[i]n the context of technology markets, the open flow of information becomes even more critical***.'" Opp'n at 3 (quoting Rule 52 Order at 164) (emphasis added). DCN respectfully submits that, by adopting Guidelines that are designed to neuter the Injunction and throttle that "open flow of information", Apple has violated the Injunction both in letter and in spirit.

---

[3]     See "*Introducing the News Partner Program*," Apple Developer – Apple News, https://developer.apple.com/apple-news/program/ (last visited on April 22, 2024).

Page 4
April 22, 2024



                          Respectfully,

                          _/s/ Karl C. Huth_
Of Counsel:                    Karl C. Huth, *pro hac vice*
                          HUTH REYNOLDS LLP
J. Lee Hill                    Matthew J. Reynolds, *pro hac vice*
HUTH REYNOLDS LLP     Luke Rushing
lhill@huthreynolds.com      huth@huthreynolds.com
41 Cannon Court           reynolds@huthreynolds.com
Huntington, NY 11743      lrushing@huthreynolds.com
Tel: (405) 826-3226        41 Cannon Court
Fax: (646) 664-1512       Huntington, NY 11743
                          Tel: (631) 263-3648
                          Fax: (646) 664-1512

                          *Attorneys for Digital Content Next*

cc:  Counsel of record via ECF