UNITED STATES DISTRICT COURT     *ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | | |
|---|---|---|
| EPIC GAMES, INC., | ) | **Status Conference** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. C 20-05640 YGR |
| | ) | |
| APPLE, INC., | ) | Pages 1 - 16 |
| | ) | |
| Defendant. | ) | |
| _____ | ) | Wednesday, June 5, 2024 |

**REPORTER'S TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM WEBINAR:**

For Plaintiff:        Cravath, Swaine & Moore LLP
                      825 Eighth Avenue
                      New York, New York  10019
                 BY:  GARY A. BORNSTEIN,
                      YONATAN EVEN, ATTORNEYS AT LAW


For Defendant:        Weil, Gotshal & Manges LLP
                      2001 M Street NW, Suite 600
                      Washington, D.C.  20036
                 BY:  MARK A. PERRY, ATTORNEY AT LAW


        (Appearances continued next page)

Reported By:        Raynee H. Mercado, CSR No. 8258


   Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

**A P P E A R A N C E S (CONT'D.)**

For Defendant:          Gibson, Dunn & Crutcher LLP
                        One Embarcadero Center, Suite 2600
                        San Francisco, California  94111-3715
                   BY:  DANA L. CRAIG, ATTORNEY AT LAW



                          --o0o--

```
1    Wednesday, June 5, 2024                              8:28 a.m.
2                      P R O C E E D I N G S
3                         (Zoom Webinar)
4                             --o0o--
5
6         THE CLERK:  Morning, everyone.
7       These proceedings are being court reported by this court.
8    Any other recording of this proceeding either by video, audio,
9    including screen shots or other copying of the hearing is
10   strictly prohibited.
11       Your Honor, now calling the civil matter 20-CV-5640, Epic
12   Games versus Apple, Incorporated.
13       Parties, please state your appearances for the record
14   starting with plaintiff.
15         MR. BORNSTEIN:  Good morning, Your Honor.  Gary
16   Bornstein for Epic.  I have on with me Yonatan Even.  And with
17   the court's permission, Mr. Even will be leading the
18   discussions for us today.
19         THE COURT:  Okay.  Thank you.  Good morning.
20         MR. EVEN:  Morning, Your Honor.
21         MR. PERRY:  Good morning, Your Honor.  Mark Perry for
22   Apple.  And I have with me today Dana Craig of Gibson Dunn,
23   who's one of our e-discovery experts.
24         THE COURT:  Okay.  Good morning.
25       So where -- where are we?  Who wants to start?
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1            **MR. PERRY:**  I'm happy to start, Your Honor.  It's
2    Mark Perry.
3            We met and conferred with Cravath on -- or with Epic --
4    excuse me -- on Monday.  And we've had some follow-up emails.
5            Here's the basic outline as I understand it.  The parties
6    have agreed on a two-step process for this document
7    production.  The first is Apple's delivery of what we're
8    calling some "go-gets," some follow-up materials from the
9    Mr. Oliver production that was made last week.  And that is
10   under way.
11           Second step would be a custodial search of records related
12   to the link entitlement.  We have provided Epic with a
13   proposed list of custodians, seventeen people, which is
14   basically the working group that the Court has heard about
15   during the evidentiary hearing and the executives that
16   reviewed and approved the entitlement.
17           Just by contrast, that compares to 24 custodians at the
18   merits stage of the -- of the case, so it's, you know, roughly
19   the same number -- not quite, but a large number.
20           We have done a -- we don't have all of their documents
21   pulled.  We have access right now to a subset of them.  We
22   have run a -- a test search string -- again, the parties
23   haven't agreed on search terms, but we just wanted to size the
24   box, if you will, and that set will result in at least a
25   hundred thousand documents, probably more.  But we need to

1  settle, obviously, on search terms before that can be actually
2  run for real.
3       I think the next steps are for the parties to agree on the
4  custodians and the search terms and actually get the search
5  under way.
6       We continue to think -- our estimate last week was three
7  months to do this production.  I think that's still a fair
8  estimate assuming we're in the ballpark that our test work
9  over the weekend has done.  And we would -- we had proposed to
10 Epic that we follow the ESI protocols and other guidance that
11 was used essentially during the merits document productions as
12 to confidentiality, privilege logs, and so forth.  I mean,
13 there's -- there's a set of procedures in place that we don't
14 think needs to be changed.
15          **THE COURT:**  Mr. Even?
16          **MR. EVEN:**  Thank you, Your Honor.
17      So, unfortunately, I'm going to have to disagree with what
18 was just said.  I think the only thing we agree with is that
19 we had discussed and agreed to a two-step -- a two-step
20 discovery process.
21      What we asked for and what we thought we had an agreement
22 on is that in the first step, Apple will produce in relatively
23 short order -- and when we spoke, they said maybe last --
24 maybe next week.  They will produce on a go-get basis the
25 relevant Quip database that was, as we understand it, used to

1  run Apple's injunction-related decision-making.  That was
2  the -- the repository for this project.
3      That production, we then wrote to Apple, needs to include
4  all the draft versions and revisions.  Apple told us that,
5  yes, Quip does -- they did have the setting such that
6  revisions, et cetera, are being kept.
7      And what we had expected was that all that is going to be
8  something that we get, we can review, sink our teeth into,
9  understand who against who, and then discuss custodians for
10 the next step.
11     What we learned last night from an email from Mr. Perry is
12 that Apple's view is that they're only going to produce to us
13 the documents that were specifically linked to Quip in the few
14 emails that we've highlighted last week from Mr. Carson's
15 production.
16     That's not too many documents.  That's a handful of
17 documents, I believe.  There's a lot of writing about how
18 they're setting up Quip for the project, et cetera.  But the
19 documents themselves, they're -- they're a handful of
20 documents.  That's not what we need.  That's not what we asked
21 for.  That's not what we understand the orders are.
22     And then what we also learned last night is that Apple is
23 now saying that Quip and another repository, a Box repository
24 that we've found additional emails suggesting that Apple also
25 had that, that Apple will only collect those documents as part

1    of its custodial review, meaning however many custodians they
2    had -- apparently some personal Box and Quip issues -- Apple
3    intends to apply search terms to that, et cetera.
4         That is not what we had in mind at all.  That's not what
5    we think we need.
6         Apple clearly has repositories that were dedicated to this
7    particular project.  We need Apple to get those repositories,
8    not through custodial searches, not to apply search terms or
9    anything like that.  These are repositories for this project.
10   Review it for privilege, if that's what they need to do, but,
11   otherwise, take the databases as they exist and put them on a
12   hard drive and ship them to us.  That's what we think we need
13   as a first step.  Then we can intelligently sit down and
14   discuss who all we need as custodians.
15        But we need some background for that, not a background
16   through the narrow prism of the Carson/Oliver production or
17   from three or four or five or six documents that happened to
18   be sent as links in that production.
19             **THE COURT:**  What kind of documents does the
20   repository have, Mr. Perry?
21             **MR. PERRY:**  So, Your Honor, I think "repository"
22   is -- is a misnomer.  It's not a database or a repository.  It
23   is a program.  It's a -- it's a functionality, if you will,
24   that allows the team to -- to create collaborative materials.
25        It is accessed through the custodians.  It's -- in other

1   words, it's not like a central thing.  It is -- it is accessed
2   through the custodians.  So Mr. Oliver, who was, as the Court
3   is aware, deeply involved in this has access to various files
4   and folders regarding -- there are in there we know right now,
5   meeting notes, agendas, other materials relating to the
6   project, all of which we are pulling, all of which we are
7   going to deliver.
8       Again, this is -- this is the way that the -- the program
9   works is through the custodians.  We have the links from
10  Mr. Oliver.  It -- there is not a -- my understanding -- we're
11  learning this as we go on Quip, but we do have Quip
12  specialists within the company.  There's not a way to search
13  Quip itself.  You have to go in through the links maintained
14  by the custodians, so the more custodians the more links we
15  have.
16      The documents are maintained and retained.  We will -- we
17  will get them.  We believe from our initial review -- and,
18  again, the collection is under way -- that the
19  Mr. Oliver-linked Quip files will be a significant number
20  relating to this project, as we've explained to Mr. Even
21  previously.
22          **THE COURT:**  Mr. Perry?
23          **MR. PERRY:**  Yes, Your Honor.
24          **THE COURT:**  What is the analogy?  That is, we all
25  have folders.  I've got, you know, I have a folder that I use

1  for everything in this case.  Now, my law clerks may have
2  their own folders, but we have a central file for this case.
3  Anything that's related to it goes into that folder.  Anybody
4  has access to it if they're authorized to be in that folder.
5       Isn't there the same kind of thing for the project?  Can't
6  you just download the folder for this project?
7       **MR. PERRY:**  There is -- the answer is yes and no,
8  Your Honor.  And if I can explain.
9       There is a folder for this -- there is more than one
10  folder for the project that Mr. Oliver had access to and that
11  others did as well in exactly the way the Court described.
12                  (Pause in the proceedings.)
13       **THE COURT:**  Is it just me or did Mr. Perry freeze?
14       **THE CERTIFIED STENOGRAPHIC COURT REPORTER:**  Mr. Perry
15  froze, Your Honor.
16       **THE COURT:**  Okay.  Ms. Craig, can you let him know
17  that he --
18       **MS. CRAIG:**  He looks to be back.
19       **THE COURT:**  All right.
20       **MR. PERRY:**  I apologize, Your Honor.  I'm in a -- in
21  a hotel with -- I don't have control over the Wi-Fi.
22       There's not a master folder.  There are folders within the
23  Mr. Oliver production.  And as I said, these other custodians,
24  we will -- we will see what they have.  So to the Court's
25  analogy, Mr. Oliver has a file to which other members of the

Case 4:20-cv-05640-YGR   Document 982   Filed 06/05/24   Page 10 of 16      10

1   working group had access.  We are producing that.
2       Other members of the working group may or may not have
3   their own files, and we will have to -- that's why we have to
4   go on a custodian level rather than a top-down level.
5       We certainly believe as to Mr. Even's point, and we have
6   explained this before, that the files to which Mr. Oliver had
7   access will be a substantial start -- you know, a substantial
8   amount of the Quip materials to which the full team had access
9   because, as, you know, one of the team leaders, he would have
10  presumably had access to the important materials there.
11          **MR. EVEN:**  So, Your Honor, I -- I disagree with that
12  as well, I'm afraid.
13      So we have documents, including documents that I placed in
14  a binder before Your Honor on Friday.  And what Mr. Guebert,
15  for instance, writes in Apple dash EG10675385, "Hi all,
16  meeting notes from today's discussion have been captured in
17  Quip and are part of our folder that we will be using for this
18  project," and a Quip link.  "The folder also contains a work
19  in progress functional spec," another link, "and tracking
20  sheets for all our action items opens [sic]," another link.
21  "We've looked at the Quip notes and web pages.  Under
22  governance of Quip, the first thing it says is that this
23  system is built for e-discovery."  And it says, "E-discovery
24  apps pull messages and files from Quip and store the
25  information in third data -- in third-party data warehouses.

1   From the data warehouses, documents, files, and messages can
2   be searched, archived, or retrieved."
3       It's a Salesforce platform.  It's clearly built with
4   U.S.-style discovery in mind.  It just can't be that we now
5   need to ignore the fact that Apple managed this thing through
6   a dedicated platform and wait for custodians who may or may
7   not have access to specific documents and -- and run search
8   terms that will, by definition, omit some of these documents
9   because we don't know what we don't know about the -- the
10  relevant search terms.
11          **MR. PERRY:**  Your Honor, I think there's a
12  miscommunication here.  I -- I'm sorry.
13      All of the things that Mr. Even just mentioned will be
14  produced we hope next week.  We are collecting these right
15  now, so the meeting file -- the meeting notes folder, yes.  It
16  exists.  We're pulling it down.  My --
17      The point is we will get it, and when we produce it, this
18  conversation will be much more useful when we both have --
19  both parties have, you know, what we can get out of Quip.
20      This is not, you know -- it is a tool that was used.  We
21  are pulling the information, and we have, you know, agreed to
22  deliver it.  I'm not sure how much further we can go in the
23  abstract without seeing --
24      Everything Mr. Even just mentioned, we will deliver.  I
25  mean, that's not -- that's not in question.

1            The issue is whether there is more.  And the answer is
2   probably, but we will only know that by tracking through in
3   the usual discovery way the additional bread crumbs.  And if
4   we -- you know, if there is a, quote, unquote, master folder
5   that we can identify, we will produce that, too.
6         This is -- this is a matter of how the data structure is
7   organized in the machine, not -- not a matter of --
8         Well, that's the issue.
9            **THE COURT:**  All right.
10       Why -- so there is going to be a production next week,
11  right?
12           **MR. PERRY:**  Yes, Your Honor.
13           **THE COURT:**  And when do you expect that production to
14  occur?
15           **MR. PERRY:**  Your -- Your Honor, we are collecting the
16  materials today.  I can say next week for sure.  I don't know
17  what day because we are still pulling it down and trying to
18  get everything in one place, so --
19      Ms. Craig, I don't know if we have a better estimate on
20  time.
21           **MS. CRAIG:**  I think we can do it middle of next week.
22           **THE COURT:**  So, Mr. Even, sounds to me like maybe we
23  talk again after you get this production.
24           **MR. EVEN:**  So I'm obviously willing to do that, and
25  I -- and I appreciate that the Court's time on that, and that

1    would be helpful.
2         I can only live off of what Apple told us in emails,
3    obviously.  But I hear what Mr. Perry's saying, and I'm happy
4    to see that production and understand it.
5         I would just comment that, you know, both we and -- and
6    Apple have done many productions like these in the past.  I
7    don't know what that means "if there is a central folder,"
8    like, I would have -- I would have expected by now Apple to
9    know exactly what the central folders are.
10        There are 60 people who had access to this Quip thing that
11   we counted or thereabouts.  Apple should go and interview them
12   and ask them, "where's the central repository," and pull these
13   repositories, not through custodial reviews.
14        The whole notion of pulling anything from central
15   repository through custodial reviews seems to me completely
16   contrary to, a, what the Court ordered and, b, frankly common
17   sense.
18        **THE COURT:**  Yeah, I don't know that I disagree with
19   you.  And -- but I also am not in the nitty-gritty.
20        If there are folders, the whole folder should be produced.
21   I mean, it's -- I don't -- in that way, it's very -- it seems
22   to me to be very simple.
23        You have central repositories.  Lots of people have
24   access.  The whole thing just gets produced.  So -- and then
25   if there's follow-up -- you know, there may need to be

1   follow-up.  I don't know.
2       When I -- I said "all," and so they're obviously taking
3   "all" seriously, you know.  But I think until we get -- I
4   mean, and if that's also the case, it would seem to me that
5   the production should be pretty large because it should all be
6   there, one would think.  I don't know.  We'll see.
7       But I think it would be better to have a discussion that's
8   not in a vacuum.
9           **MR. EVEN:**  Understood.
10          **THE COURT:**  So I can meet on Friday afternoon,
11  assuming I don't have plane delays.  Or I can meet the
12  following Monday on the 17th.
13      So -- and we don't exactly know when it is, so do you just
14  want to schedule the 17th?
15          **MR. PERRY:**  That would be good for Apple, Your Honor.
16  And we could certainly provide an update to the -- the clerk
17  or the Court if that would be helpful.
18          **MR. EVEN:**  That -- we can make it work, Your Honor.
19  If -- if the court's calendar allows for it to be late in the
20  day Pacific, that'd be better for me 'cause I'm in a
21  deposition that day.  But if not, somebody else could cover.
22          **THE COURT:**  On the 17th?
23          **MR. EVEN:**  Yes, Your Honor.
24          **THE COURT:**  Yeah, I'm -- my trial got pushed back by
25  a week, so I'm free that day.  So what time works for you,

```
 1   then?
 2           MR. EVEN:  4:00 p.m. Pacific if Your Honor can do
 3   that, that'd be ideal for me.  I'll be out of the deposition
 4   by then.
 5           THE COURT:  Does that work for everybody?
 6           MR. PERRY:  It's fine with Apple, Your Honor.  Thank
 7   you very much.
 8           THE COURT:  All right.  So then we'll set another
 9   conference for 4:00 p.m. June 17th, same link.
10       Hopefully, we'll have a much clearer idea of where we're
11   going on this.  Okay?
12           MR. EVEN:  Your Honor, may I make one more request
13   before we leave?
14           THE COURT:  Sure.
15           MR. EVEN:  Apologize in advance.
16       But we also still have not received a revised production
17   of Mr. Oliver's documents that removes any redactions for
18   confidentiality.  I understand we're waiting on the priv log
19   for that -- those redactions, but -- and I understand it's
20   coming but.  For the confidentiality, redactions should just
21   be removed.
22           THE COURT:  I'd agree with that.  They need to be
23   produced next week with the rest of the production, or no
24   later than --
25           MR. PERRY:  Yes, Your Honor.
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

| | |
|---|---|
| 1 | **THE COURT:** -- next week. |
| 2 | **MR. PERRY:** Yes, Your Honor. |
| 3 | **THE COURT:** All right? |
| 4 | Anything else? |
| 5 | **MR. EVEN:** Nothing from me.  Thank you, Your Honor. |
| 6 | **MR. PERRY:** Not from Apple, Your Honor.  Thank you |
| 7 | very much. |
| 8 | **THE COURT:** All right.  We'll see you in about a |
| 9 | week. |
| 10 | Thank you. |
| 11 | **MR. BORNSTEIN:** Thank you. |
| 12 | **MR. EVEN:** Thank you. |
| 13 | (Proceedings were concluded at 8:47 A.M.) |
| 14 | --o0o-- |
| 15 | **CERTIFICATE OF REPORTER** |
| 16 | I certify that the foregoing is a correct transcript |
| 17 | from the record of proceedings in the above-entitled matter. |
| 18 | I further certify that I am neither counsel for, related to, |
| 19 | nor employed by any of the parties to the action in which this |
| 20 | hearing was taken, and further that I am not financially nor |
| 21 | otherwise interested in the outcome of the action. |
| 22 | |
| 23 | _____ |
| 24 | Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR |
| 25 | Wednesday, June 5, 2024 |