UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., *Plaintiff, Counter-defendant,* v. APPLE INC., *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT STATUS REPORT REGARDING CONTEMPT HEARING DISCOVERY** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Pursuant to the Court's Discovery Order dated June 18, 2024 (Dkt. 986), the parties in the above-caption action respectfully submit this joint status report regarding discovery related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

    Counsel for Epic and Apple Inc. ("Apple", together with Epic, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve the outstanding disputes.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP | WEIL, GOTSHAL & MANGES LLP |
| By: */s/Yonatan Even*<br>   Yonatan Even<br>   *Counsel for Epic Games, Inc.* | By: */s/Mark A. Perry*<br>   Mark A. Perry<br>   *Counsel for Apple Inc.* |

**Epic's Position:** The Court ordered Apple to produce all documents relative to its decision-making process for its response to the injunction the Court entered after trial. (Dkt. 974.) The Parties agreed that Apple's productions would proceed in two steps: (1) an initial production of documents from the files of Apple employee Carson Oliver and from certain repositories related to Apple's response work referenced therein ("Step One"); and (2) a further production from custodial files based on negotiated search terms and custodians ("Step Two"). Apple claims that it completed "Step One" through a production of documents on June 14, 2024; Epic disagrees and the Parties continue to confer on the deficiencies Epic has identified in this production, as well as on search terms and custodians for "Step Two". Epic is thus not presently seeking relief from this Court. Epic provides below relevant background regarding Apple's discovery obligations and the Parties' ongoing negotiations. Epic proposes to update the Court on the Parties' progress in seven days and thereafter on a cadence convenient to Your Honor.

**Relevant Background:** On September 10, 2021, the Court found that Apple violated the California Unfair Competition Law (the "UCL") because its anti-steering rules prevented developers from "communicat[ing] lower prices on other platforms either within iOS or to users obtained from the iOS platform" and thus "'threaten[ed] an incipient violation of an antitrust law' by preventing informed choice among users of the iOS platform". (Dkt. 812 at 163-64.) The Court enjoined Apple from prohibiting developers from, among other things, including in their iOS apps "buttons, external links, or other calls to action" that direct customers to purchasing methods outside of the app. (Dkt. 813 ¶ 1 (the "Injunction").) The Injunction went into effect upon exhaustion of Apple's appeals on January 16, 2024, and on that same day, Apple filed a Notice of Compliance with UCL Injunction. (Dkt. 871.) On March 13, 2024, Epic filed a Motion to Enforce the Injunction. (Dkt. 897.) On April 12, 2024, Apple filed its Opposition to Epic's Motion, attaching a declaration from Alex Roman, a VP of Finance at Apple, and a presentation given to an Apple "Price Committee", which recommended a new commission structure that Apple adopted in response to the Injunction. (*See* Dkts. 915, 916-5, 916-7.) On April 23, 2024, the Court found Epic "has made a sufficient preliminary showing that, viewed holistically, Apple's practice changes undermine the spirit of the injunction" and ordered an evidentiary hearing on Epic's Motion. (Dkt. 925 at 3.) Apple designated four employees as witnesses: Carson Oliver, Phil Schiller, Alex Roman, and Matthew Fischer. (Dkt. 932.)

The evidentiary hearings on Epic's Motion commenced on May 8 and exposed serious gaps in Apple's narrative of compliance, leading the Court to order Apple to produce increasing volumes of documents to support the testimony of its witnesses. On May 8, following Epic's examination of Mr. Fischer, the head of the App Store, the Court ordered Apple to produce (i) reports on the number of apps in the U.S. App Store that are eligible for the entitlement program Apple introduced to govern steering; and (ii) the list of 38 apps that, as of early May, had applied for and been granted the entitlement. (Dkt. 952.) On May 10, following Epic's examination of Mr. Roman, the Court ordered Apple to produce (i) a list of the top 200 developers with apps in the U.S. App Store; and (ii) a summary report that Mr. Roman testified supported Apple's assumption that roughly half of linked purchases would be made more than seven days after a user clicked an external purchase link (Hrg. Tr. 339:19-344:4). (Dkt. 958.) On May 16, following Epic's examination of Mr. Oliver, the Court ordered Apple to produce (i) a January 11, 2024 draft of the Price Committee Deck; (ii) any notes Mr. Oliver made concerning the assumptions underlying the analysis contained in the Price Committee Deck; and (iii) any case studies relied upon in the preparation of that slide deck. (Dkt. 967.) On May 24, 2024, Apple

produced 629 documents pursuant to the Court's orders (the "May 24 Production").[1]  Between May 25 and May 30, Epic and Apple met and conferred, with Epic raising serious concerns about the May 24 Production, including that Apple: (i) did not include any metadata in its production; (ii) did not provide a privilege log; (iii) improperly redacted documents for "confidentiality"; and (iv) did not produce linked documents that were shared with Mr. Oliver but reside in central or shared repositories.

On May 31, Epic raised the deficiencies in Apple's May 24 Production with the Court. The Court agreed that Apple's production did not comply with the Court's orders, stating to Apple that "[t]he whole point . . . was to get the documents relative to the decision-making with respect to the issues in front of the Court. . . . And you didn't do it." (Hrg. Tr. 913:20-24.) The Court then ordered Apple to produce "all of [its] documents relative to its decision-making process with respect to the issues in front of the Court. All of them. All." (*Id.* at 914:12-14.) The Court clarified that the "time parameter" for this order was "the day that [the Injunction was entered, *i.e.*, September 10, 2021,] to the present". (*Id.* at 914:16-21.)

On June 3, the Parties met and conferred and agreed on the general two-step procedure described above for complying with the Court's May 31 order. On June 4, Apple proposed a list of 17 custodians for "Step Two" of the production. On June 5, the Court held a status conference and reiterated that all documents from central repositories should be produced promptly (June 5 Conf. Tr. 13:18-14:6), and that the documents from the May 24 Production should be reproduced with appropriate metadata and a privilege log (*id.* at 15:12-16:1; *see also* Dkt. 983).

On June 14, Apple made a production that it claimed satisfies "Step One" (the "June 14 Production"), which included a reproduction of the files from the May 24 Production, approximately 269 documents it previously withheld as privileged, and 173 documents from Quip, a shared repository. During a June 17 status conference, Epic raised multiple deficiencies in the June 14 Production, including that the production: (i) did not include all documents from central or shared repositories utilized by Apple in connection with its response to the Injunction, or even from the Box repository referenced and linked in Mr. Oliver's documents; and (ii) contained documents that were overly redacted for privilege. The Court ordered the Parties to meet and confer within 24 hours to try and resolve their differences or attend a further status conference the following day. (Dkt. 984.)

On June 18, the parties met and conferred to discuss (i) the deficiencies in the June 14 Production that Epic had identified; and (ii) the search terms and custodians to be used for Step Two of the productions. On this meet-and-confer and in follow up correspondence:

- The Parties agreed that Apple will begin collecting documents that are hyperlinked in the The Parties agreed that Apple will begin collecting documents that are hyperlinked in the production of Mr. Oliver's files without the need to finalize search terms and custodians;

- The Parties agreed that Apple will (i) interview all custodians to determine whether they had access to central or shared repositories; (ii) collect such repositories; and (iii) review documents from repositories dedicated to Injunction response work without applying search terms;

---

[1] Prior to May 24, Apple had also produced to the Court and Epic documents in response to the Court's May 8 and 10 orders, as well as the January 11 version of the Price Committee Deck.

3

- Epic identified 54 custodians as non-attorney members of the core team working on Apple's response to the Injunction (Epic reserved the right to supplement this list based on Apple's future productions). Epic also proposed search terms tailored to the key issues that have been raised during the evidentiary hearings. Epic has proposed, and expects that Apple will agree, that the files of these custodians be searched for the period beginning on September 10, 2021 (when the Injunction issued) through the present (subject to any modifications for individual custodians based on their work history). Apple stated that it has no conceptual objection to the number of custodians proposed by Epic or to the topics Epic is targeting through its search terms. Apple now estimates (in its position below) that it will need a minimum of six months to complete its "Step Two" productions. Epic disagrees with this timeline and will meet and confer with Apple once Apple provides further information on the volume of documents identified by agreed-upon terms and custodians; and

- Epic has noted that the privilege log accompanying Apple's June 14 Production has 1,078 entries (for a production of only 1,289 documents), many of which do not appear to meet the relevant standards for withholding documents. Epic has challenged Apple's privilege assertion for one particular document, which Apple has agreed to re-review. Epic's review is ongoing and Epic expects the Parties will confer on privilege claims in the coming days.

While the Parties have not resolved all outstanding issues related to Apple's productions, the Parties have made progress and therefore informed the Court that they had agreed on a framework for moving the discovery efforts forward and requested to remove the June 18 status conference from the Court's calendar. The Court vacated the June 18 status conference and referred all discovery matters to Your Honor. (Dkt. 985.)

**Apple's Position:** Although Epic sought no discovery, the Court has ordered Apple to produce, in addition to a limited number of documents and data requested by the Court during the evidentiary hearing, all documents relative to its decision-making process for its response to the injunction the Court entered after trial. Dkt. 974. The Parties agreed to proceed in two steps: "Apple will first (i) identify and produce certain 'go-gets' relative to Carson Oliver's testimony and secondly will (ii) produce additional documents relative to the company's decision-making process concerning the link entitlement program and associated commission rate." Dkt. 983. The Court clarified that the first phase involves production of "the Quip records to which Oliver has access relative to the link entitlement program and associated commission rates." Dkt. 983. Apple completed this first phase on June 14, 2024. The Parties are currently negotiating the second phase, which requires an agreement on the custodian list, search terms, and date range prior to Apple beginning its collection, review, and further productions. Given the ongoing negotiation between the Parties, Apple is not presently seeking relief from this Court. Apple provides the below relevant background related to discovery in the evidentiary hearing. Apple proposes to update the Court on the Parties' progress in fourteen days and thereafter on a cadence convenient to Your Honor.

**Relevant Background:** In the above-captioned matter, the Court issued a permanent injunction on September 10, 2021, Dkt. 813, which was stayed until appellate mandate issued on January 16, 2024. On that same day, Apple filed a notice of compliance with the UCL injunction. Dkt. 871.

4

Epic subsequently filed a notice of non-compliance and intent to enforce the UCL injunction on January 30, 2024, Dkt. 883, followed by briefing, Dkts. 897 (Epic's Mot. to Enforce), 915 (Apple's Opp.) 923 (Epic's Reply).  The Court convened an evidentiary hearing on Epic's motion, Dkt. 925, and proceeded to hear testimony on the following dates: May 8, 10, 16-17, 22, and 31, 2024.  *See* Dkts. 952, 958, 967, 968, 969, and 974.  Epic, the Plaintiff carrying the burden of proof, did not request discovery prior to the evidentiary hearing.  Hearing Tr. at 923:24-924:07 (May 31, 2023) ("THE COURT: I'm curious why you didn't ask for discovery prior to a hearing.  MR. EVEN: Your Honor, we had -- at the time we thought we had enough information into what Apple has done based on the declaration and things of that nature … And we didn't think that much more was needed.").

Throughout these proceedings, Apple has produced the limited number of documents and data ordered by the Court, including a production of responsive data and documents from the custodial files of Carson Oliver on May 24, 2024.  *See* Dkt. 970.  On May 31, the Court ordered Apple to produce "all Apple's documents relative to the decision-making process leading to the link entitlement program and associated commission rates," Dkt. 974, which the Court later clarified in its June 5 Minute Order to encompass a two-step discovery process the Parties had agreed to.  Dkt. 983 ("The parties previously agreed to a two-step process through which Apple will first (i) identify and produce certain 'go-gets' relative to Carson Oliver's testimony and secondly will (ii) produce additional documents relative to the company's decision-making process concerning the link entitlement program and associated commission rate.")  The Court further indicated that the first step of the process involves production of "the Quip records to which Oliver has access relative to the link entitlement program and associated commission rates."  *Id*.

Following the Court's instruction "to remove redactions for confidentiality" and to "provide Epic with a privilege log" should Apple "wish[] to maintain other redactions for privilege," Dkt. 983, along with Epic's representation that the Protective Order from the underlying case shall apply, Hearing Tr. at 923:9-10 (May 31, 2023), Apple reproduced the May 24 production of Carson Oliver's custodial files removing confidentiality redactions, with the exception of a handful of documents with source code, and produced a privilege log on June 14, 2024.  For the June 14 Production, in finalizing the privilege log, Apple downgraded several privilege determinations, resulting in almost 300 more documents being produced.  The Parties met and conferred on June 18, 2024, and at Epic's request, Apple revised and transmitted to Epic that same day a privilege log including corresponding Bates numbers.  This privilege log includes documents redacted for privilege, which Apple was not required to include in the privilege log during the merits phase of the litigation.  Apple also produced the documents requested in the first step of the discovery process, which were certain Quip documents related to Mr. Oliver's files, completing step one.  Every production Apple has made has been pursuant to and compliant with the Court's Orders.

The Parties are currently negotiating the proposed custodians and Apple estimates that including Epic's voluminous number of custodians would require a minimum of six months for Apple to complete productions.  (Apple proposed seventeen custodians; Epic countered with fifty-four custodians.)  By comparison, during the merits phase of the matter, Apple completed productions from eleven custodians—less than a quarter the number of document custodians that Epic is currently seeking—and that (expedited) process took approximately four months.  Apple anticipates this review to also take proportionately longer than discovery at the merits phase, given the continuous involvement of attorneys in the injunction compliance work.  The resulting privilege review will require significant time.  Epic has proposed thirteen search strings to Apple.

Subject to running some hit count tests, Apple anticipates agreeing to many of the terms and further negotiating a small number. Once collections have been made and search terms finalized, Apple can provide a more definite estimate for completion.

The Parties agree to continue to negotiate in good faith and come to an agreement on the custodian list, search terms, and date range prior to Apple beginning its review for further productions, with the exception of a specific data source from Carson Oliver, which the parties have agreed Apple will prioritize in its collection and production. Once a custodian list is finalized, Apple agrees to conduct custodial interviews of all identified custodians, including inquiries into whether the custodian utilizes collaborative data sources like Quip or Box. The Parties agree that should Apple determine in custodial interviews that a Quip or Box folder is one dedicated to compliance with the Court's injunction, Apple will collect and review all contents, rather than applying search terms to that folder. Search terms may be applied to other data sources. It is Apple's position that, consistent with this Court's prior discovery order, Apple will undertake good faith efforts to locate a reasonable number of linked files requested by Epic from other custodians. *See* Dkt. 192 ("The Court also finds that the burden on Apple to go through its entire document production and for each email to try to identify what all of the hyperlinked documents were would be overwhelming, as well as impossible for documents that were revised after the hyperlink was sent … Accordingly, the Court orders Apple, in response to requests by Plaintiffs directed at particular emails, to do its best to identify the hyperlinked documents for a reasonable number of emails.").

Given the Parties' ongoing negotiations, Apple proposes to update the Court on the Parties' progress in fourteen days and thereafter on a cadence convenient to Your Honor. We look forward to discussing these issues on June 25.

Respectfully submitted,

DATED: June 21, 2024                          CRAVATH, SWAINE & MOORE LLP
                                              By: */s/ Yonatan Even*
                                              *Counsel for Plaintiff Epic Games, Inc.*


                                              WEIL, GOTSHAL & MANGES LLP
                                              By: */s/ Mark A. Perry*
                                              *Counsel for Defendant Apple Inc.*