**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | |
|---|---|
| EPIC GAMES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. C 20-05640 YGR** |
| ) | |
| APPLE, INC., ) | |
| ) | |
| Defendant. ) | |

Oakland, California
Monday, June 17, 2024

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:   (via Zoom)

For Plaintiff:
          CRAVATH, SWAINE & MOORE, LLP
          375 Ninth Avenue
          New York, New York  10001
    **BY: GARY A. BORNSTEIN, ATTORNEY AT LAW
          YONATAN EVEN, ATTORNEY AT LAW**

For Defendant:
          WEIL, GOTSHAL & MANGES LLP
          2001 M Street, NW - Suite 600
          Washington, D.C.  20036
    **BY: MARK A. PERRY, ATTORNEY AT LAW**

          GIBSON DUNN & CRUTCHER LLP
          One Embarcadero Center - Suite 2600
          San Francisco, California  94111
    **BY: DANA L. CRAIG, ATTORNEY AT LAW**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          U.S. District Court - Official Reporter

|  |  |
|---|---|
| 1 | **Monday - June 17, 2024**                                    **4:00 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:** Your Honor, we are now calling case number |
| 5 | 20-CV-5640, Epic Games versus Apple, Incorporated. |
| 6 | Appearances, please, starting with the Plaintiff and then |
| 7 | the Defendant. |
| 8 | **MR. BORNSTEIN:** Good afternoon, Your Honor, Gary |
| 9 | Bornstein for Epic and with me is Yonatan Even, who will be |
| 10 | taking the lead in today's discussions. |
| 11 | **THE COURT:** Okay.  Good afternoon. |
| 12 | **MR. EVEN:** Good afternoon. |
| 13 | **MR. PERRY:** Good afternoon, Your Honor, Mark Perry |
| 14 | with Apple and with me today is Dana Craig. |
| 15 | **THE COURT:** Good afternoon. |
| 16 | **MR. PERRY:** Good afternoon. |
| 17 | **THE COURT:** Okay.  Who is going to start? |
| 18 | **MR. PERRY:** It's Mark Perry, Your Honor.  If it's all |
| 19 | right, I will start. |
| 20 | **THE COURT:** Sure, Mr. Perry. |
| 21 | **MR. PERRY:** Thank you.  Three points of update for the |
| 22 | Court.  First, in accordance with the directions of the last |
| 23 | hearing, we have produced to Epic on Friday the Quip pages |
| 24 | referenced in the Carson Oliver document production as well as |
| 25 | the contents of a, quote-unquote, Wisconsin folder. |

1    We have done that with metadata and other information and
2 in accordance with what the Court described in the minute order
3 as the go-gets at the first step.
4    Second, we also produced an amended set of the materials
5 previously produced from Mr. Oliver. We unredacted
6 confidentiality designations except for source code pursuant to
7 the ESI protocol.
8    We downgraded -- we re-reviewed all of the privilege calls
9 and downgraded a number of them and produced a privilege log
10 explaining the redactions and documents withheld based on
11 privilege.
12    And third, as the Court is aware from last time, we had
13 previously proposed a list of custodians and invited Epic to
14 propose search terms.
15    We also proposed a meet-and-confer for earlier today, but
16 Epic advised that they would like further time with the
17 production before that happens.
18    So, the next step for the second step, as we understand it
19 in the Court's minute order, is that meet-and-confer regarding
20 the custodial production which has not yet happened but we are
21 ready to do so.
22        **THE COURT:** Okay.  Epic?
23        **MR. EVEN:** Yes, Your Honor, thank you.
24    So, we were expecting the production middle of last week.
25 I think that was what was promised on the last hearing. We got

it at midnight on Friday.  We are, therefore, not entirely through it although we are doing our best to get through it as quickly as possible.

We are frankly disappointed at the scope of the production.  We have by our count 173 documents total from central repositories.  I'm not sure which ones.

Apple says it collected a Wisconsin folder from Quip.  It didn't mention anything about Box even though we have raised it in our correspondence last week.

We know that things are missing because, for instance, we don't have a single draft of the pricing committee deck predating January of this year.

We have about seven or eight e-mails suggesting that those existed and were shared among folks through a Box repository and perhaps others.

Our view is that that is not compliant with what the Court ordered.

Our understanding was that Apple was supposed to go and bring out and collect and produce all central repositories related to its compliance with the injunction.  It doesn't seem like that was done.

In addition to that, we have serious concerns about privilege, which I started raising last time.  We have a priv log now.  It's a thousand and 78 lines.  That's about the same number of lines of documents that were produced.  I think there

was about 1,200 documents that were produced.

The priv log does not have Bates numbers, so very hard for us to cross-check priv claims for redacted documents at least. We can't even say how many of the thousand and 78 were redacted, how many were withheld.

And some of the privilege logs frankly seem indefensible. We have lots of documents that were sent to dozens of people including lawyers that are redacted in full or withheld apparently.

When we understand the test in the Ninth Circuit to be the primary purpose test. You can't shroud a document with privilege by just sending it to lawyers amongst a large group of others even if you seek comments from the lawyers, if you also seek comments from the executive and product people, et cetera.

Just as an example, we have documents involving Mr. Schiller and Annie, who is a product person, as I understand it, discussing mock-ups of the various graphics that could be used and buttons that could be used for external links. All of these graphics are redacted in full.

We don't have a single mock-up that was not withheld as far as we can see of the scare screen.

We don't have any of these things. And so we feel even on a rudimentary initial review that Apple just is -- has not lived up to the kind of transparency that we understood the

1  Court to order and we're -- we will need to finish our review,
2  but we don't feel like we are prepared to start the second step
3  of custodial collection and production.
4       We need to get through the central repositories first, we
5  think, as contemplated.
6           **THE COURT:** Response?
7           **MR. PERRY:** Thank you, Your Honor.  First, this is the
8  first we are hearing any of this.  Again, we offered to meet
9  and confer earlier today and Epic declined.  So we are hearing
10 this for the first time.
11          **THE COURT:** Mr. Perry.
12          **MR. PERRY:** Yes, Your Honor.
13          **THE COURT:** Midnight on Friday when you said it was
14 supposed to be there midweek and you are complaining that they
15 haven't had a chance to meet and confer?
16          **MR. PERRY:** I'm not complaining, Your Honor.  I'm
17 pointing out that we would have explained it to Mr. Even.  I'm
18 happy to explain it now.
19          **THE COURT:** Well, explain it now.
20          **MR. PERRY:** We produced the documents at 9:00 p.m.
21 Pacific on Friday.  The Court's minute order required the
22 production on Friday.  We met that.  It says Friday, June 14th,
23 2024.  We did that.
24      It did take longer than we expected.  It took hundreds of
25 hours to do these Quips.  I mentioned last time it is not a

1  user friendly program.  It took a long, long time.
2      It is not a central repository.  I said that before.
3  Mr. Even keeps using that word.  It is accessible only by
4  users.  It is not accessible from any centralized mechanism;
5  and, therefore, it has to be manually checked, each link.  And
6  we did all of that.
7      And we did that on Friday and we produced it and -- and
8  we -- specifically the Court's minute order says "the
9  production of the Quip records to which Oliver had access."
10      That's exactly what we searched for and produced.  It took
11  last week.
12          **THE COURT:**  It said to "identify and produce certain
13  go-gets relevant to Carson Oliver's testimony."
14          **MR. PERRY:**  Yes, Your Honor.
15          **THE COURT:**  That's different.
16          **MR. PERRY:**  Your Honor, we understood the go-gets to
17  be the Quip records.  The Court ordered Apple to complete the
18  first step, which "shall involve the production of the Quip
19  records to which Oliver had access relative to the link
20  entitlement program and associated commission rates."
21      And that's what we have produced.  They are -- it is a
22  hundred -- I think Mr. Even said 173 documents.  That has been
23  done.  The privilege log -- I'm happy to stop on this one or
24  keep going.
25          **THE COURT:**  Keep going.

1       **MR. PERRY:** Thank you, Your Honor.
2           The privilege log, the whole purpose of it, of course, is
3   to advise Epic of what we have withheld or redacted.  We
4   followed exactly the same protocols that we did in the
5   litigation -- both parties did in the litigation without Bates
6   numbers.  If they had raised that, I'm sure we could provide
7   that.  I mean, again, we are hearing that for the first time.
8   I don't know what the issue is there.  We followed the same
9   privilege log basis.
10          It is not a surprise, I don't think, to anyone that
11  lawyers were involved throughout this process.  This was
12  compliance with a court order in which lawyers were involved.
13          We have significantly de-designated, Your Honor.  We
14  produced an additional 300 documents as a result of the
15  re-review.  We manually re-reviewed every single document and
16  every single redaction.
17          I'm sure there are some to discuss.  I mean, that's always
18  the nature of this.  We would propose to do that, you know, in
19  advance in the usual course, document-by-document or
20  issue-by-issue with Counsel.  And if the parties, you know,
21  can't come to an agreement or an understanding, then the
22  Court's involvement may be necessary.
23          Third, as to other materials, we have said repeatedly that
24  this is a custodial search.  It would need to be a custodial
25  search as it was at the merits.

1    We are stand ready to do that for any documents, the PC
2 decks or anything else that may be in the materials; but we
3 need to do it through a custodial search with an agreed upon
4 set of search terms.
5    It will take a very long time.  I mean, it is very labor
6 intensive to do this, and we need to do it once.  So, again, we
7 are not resisting at all.  We simply need to have that list of
8 custodians and search terms agreed upon, which is the second
9 step in the Court's minute order that we are, you know, stand
10 ready to meet and confer on.  And once we have got agreement,
11 we can push the button and get the machines running.
12    **THE COURT:**  And the drafts?
13    **MR. PERRY:**  The draft, as I understood Mr. Even's
14 comments to be that there are references to draft price
15 committee decks.  I have no doubt that there are such things.
16 They would be in the custodial productions.  They are not in
17 the materials that have been produced during the litigation.
18    And again, we haven't done a custodial production because
19 we need a list of custodians and search terms.
20    **MR. EVEN:**  If I may, Your Honor.
21    **THE COURT:**  You may.
22    **MR. EVEN:**  As to that last point, the reference that
23 we have are references with links.  Links to me suggest a
24 central repository.  We had expected to find these.
25    It is not clear to me what Mr. Perry is again saying about

the nature of Quip.  Quip has group folders and private folders.  It's not clear to us that they have collected the group folders pertaining to compliance.  It is clear to us that they have not collected Box.

They say that they have collected what Mr. Oliver had access to.  That's not what they said in their e-mail to us.  What they said is they collected what Mr. Oliver -- the links -- the documents from the links in the production they have made earlier.

It is not at all clear to me that Mr. Oliver had access only to these Quip documents as opposed to central repositories pertaining to this project.

It mainly -- the thing that is still, I think, the main issue here is that I think the Court made it very clear that Apple is to produce these things and err on the side of overproduction.  And at least in our view, that's simply not what Apple has done.

Apple keeps erring on the side of underproduction, over redaction; not producing documents that clearly exist.  This -- the decks, for instance, is something that both the courts and we have asked for now probably four or five weeks ago.

I don't know where they are but Apple does, and those should have been produced from wherever they are.  There's got to be some central repository where they exist because people were sent e-mails with links to those documents.

**MR. PERRY:** Your Honor, may I respond to that because I think there's a misconception here.

There is no central repository in the sense that Mr. Even is using the word. These documents are maintained by individuals or on behalf of individuals.

We have provided our list of proposed custodians; starts at Mr. Cook; includes the senior executives; includes the project managers; includes all the names the Court has heard during the hearing. And these documents will be produced once the parties have agreed on that list and the search terms.

We don't have another way to go in and get -- I mean, we could go -- you know, we have to do this in a systemic way. Otherwise, we are never going to get done with this process. We need a custodian list and a search term list so we can do it in a systemic way and get the right people's documents searched so that we can give Epic all is all.

We understand the point but that's the second step of the process. We are ready to get there but we have to get the custodian list and the search term list together. That's -- that seems to be the issue.

The Quip documents are not those and we have said that to Epic over and over again. They now have the Quip documents. They can make their own assessment of those documents.

**MR. EVEN:** I would just comment that, again, there is no answer on Box or other kind of other repository which

1  clearly exists.  There are e-mails pointing to it.  We have
2  sent those e-mails to Mr. Perry, and we have mentioned them
3  before.
4          **THE COURT:**  So, do I need to get someone on the stand
5  to explain this?  Is that really how -- is that really the best
6  use of my time?
7          **MR. PERRY:**  What does the Court need an explanation
8  of, Your Honor?  I'm sorry.
9          **THE COURT:**  The two of you obviously do not -- have
10 not come to some understanding about how it is these documents
11 are being held.
12     What I hear Mr. Even saying is that you are not being
13 forthcoming.  What I hear you saying is that he refuses to
14 understand the nature in which these documents are being held.
15 So do I have to put someone on the stand to get to the bottom
16 of this or not?
17         **MR. PERRY:**  I don't believe so, Your Honor.  I think
18 the -- you know, if this was an ordinary document production,
19 Counsel would have had a number of meetings about this
20 including our e-discovery experts, which both firms have.  They
21 have not discussed these issues.
22     I'm sure the Cravath firm has an expert in Quip.  You
23 know, Counsel have not had the normal discussions that would
24 happen in discovery.  This is happening, you know, fast and on
25 the fly.

1  I think these things out to be worked out.  If they can't
2  be worked out among Counsel, we would be happy -- if the Court
3  would be interested, Judge Hixson could -- you know, knows this
4  stuff who did the last round.  We can come to this court.
5     I don't think it is a matter of putting a witness on the
6  stand.  I think it's a matter of this is e-discovery.  We are
7  doing all -- we, Apple, are doing the ordinary protocols that
8  the parties agreed to the last time that we are following the
9  same thing including ESI this time, and that is a custodial
10 search with search terms.  And once we get there, all of these
11 issues will be addressed.
12    We are being forthcoming but we can't back into it.  We
13 have to do it with the custodial list and the search terms just
14 as we did the last time around, and it worked for everybody on
15 both sides.
16    And so, I think -- as I said, I think there is a
17 miscommunication; but part of that is we have not had the
18 communications with Epic that would be ordinary in discovery.
19        **THE COURT:**  So, last time we talked, Mr. Even, you had
20 agreed on this two-step process.
21        **MR. EVEN:**  Yes, I had.
22        **THE COURT:**  So, I understand your frustration about
23 getting these things on Friday late in the day as opposed to
24 earlier in the day.
25    I have now spent 16 minutes on this issue.  What am I

1   supposed to do here?  What are you asking me to do?  Believe
2   me, I would like to get to the bottom of this.  I would like to
3   get this evidentiary hearing finished.  I would like to
4   understand what the content of those documents are.
5           **MR. EVEN:**  So, I appreciate that, Your Honor.  I am
6   happy to take that back, but at least an idea on this would be
7   if we can have -- either an affidavit that explains this or a
8   short 30(b)(6) deposition from somebody at Apple who knows how
9   they are maintaining this; and we can try and get to the bottom
10  of this; show them the Box documents; ask them what this means;
11  where are these Box documents and things of that nature and get
12  to the bottom of it.
13      I am -- I fully understand the Court's frustration.  We
14  are obviously frustrated with this, but I'm -- I don't know --
15          **THE COURT:**  I mean, this product -- this Quip product
16  that Mr. Perry is talking about, I assume this is some kind of
17  commercial enterprise.
18          **MR. EVEN:**  It is a commercial Salesforce platform as I
19  understand it.
20          **THE COURT:**  Okay.  Is there -- is it special to Apple
21  that no one from Salesforce knows how this works or you don't
22  have anybody who knows how it works?
23          **MR. EVEN:**  We believe we understand how this works.
24      We understand that there are central folders or group
25  folders and individual folders.  What we don't know is how

1  Apple applied it here because what we have are snippets of
2  links that were sent to it and now a presentation that they
3  have collected one folder that was called Wisconsin.
4       I'm not sure about whether that is the only folder on Quip
5  that they had as a central folder that pertains to compliance
6  because we have not received that representation.
7           **THE COURT:** All right.  So what are we going to do
8  here?
9           **MR. PERRY:** May I make --
10          **THE COURT:** I will order a 30(b)(6) but usually
11 depositions aren't the fastest way to get information.
12          **MR. PERRY:** Your Honor, Apple is happy to talk to Epic
13 and its Counsel about these issues.  And, again, I feel like we
14 are backing into this.
15       All of this information will come in the custodial search.
16 It is, you know -- we need the search terms -- I'm just going
17 to repeat myself on that.  We are more than happy to talk to
18 our counterparts.  This is not a matter of not being
19 forthcoming.  This is a matter of the most efficient way to get
20 a very large number of data out of a very large organization.
21 We did this once before with Epic with Cravath.  The parties
22 know how to do this.  We did it on an expedited basis before.
23 We should do it again.
24       I mean, we don't need to reinvent the wheel.  I suggest we
25 do it the same way we did it last time, and they will get what

```
 1  they need or what they want.
 2          THE COURT:  I'm going to give you less than 24 hours
 3  to talk and try to figure this out.  I have a hearing tomorrow
 4  at 1:00 o'clock.  I will talk with you again at 3:00 o'clock
 5  and hopefully it will be resolved.  If it is resolved, you let
 6  me know and we won't have the hearing.
 7          MR. EVEN:  Okay, Your Honor.
 8          MR. PERRY:  Thank you, Your Honor.
 9          THE COURT:  Tomorrow at 3:00 o'clock.  Thank you.
10          THE CLERK:  Court stands in recess.
11              (Proceedings adjourned at 4:20 p.m.)
12                          ---oOo---
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   June 24, 2024

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter