UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>   *Plaintiff, Counter-defendant,*<br><br>   v.<br><br>APPLE INC.,<br><br>   *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>JOINT STATUS REPORT |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

  Pursuant to the Court's Discovery Order dated June 18, 2024 (Dkt. 986) and the Minute Entry for proceedings held on June 25, 2024 (Dkt. 993), the parties in the above-caption action respectfully submit this joint status report regarding discovery related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

  Counsel for Epic and Apple Inc. ("Apple", together with Epic, the "Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve the outstanding disputes.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP | WEIL, GOTSHAL & MANGES LLP |
| By: */s/ Yonatan Even*<br>  Yonatan Even<br>  *Counsel for Epic Games,*<br>  *Inc.* | By: */s/ Mark A. Perry*<br>  Mark A. Perry<br>  *Counsel for Apple Inc.* |

**Epic's Position:** Following the June 25, 2024 status conference, the Parties met and conferred telephonically on June 26 June 28, 2024, and by email on July 1, 2024. Apple provided written responses to several issues raised by Epic. In light of Apple's responses, the Parties are at impasse on several issues. Epic will raise these disputes with the Court in discovery letters pursuant to the Court's procedure in the coming days. Epic summarizes the status of the Parties' discussions, including agreements and disputes, below.

**Custodians**: Apple has objected to five of the 54 custodians that Epic had proposed on June 19.

- Alex Rofman: Apple took the position that Alex Rofman, who works at Apple Arcade, should not be a custodian because he had only limited involvement (if any) in Apple's response to the Injunction. On June 28, based on Apple's representation regarding his lack of involvement, Epic agreed to remove Mr. Rofman as a custodian.

- Fred Sainz and Marni Goldberg: Apple takes the position that Mr. Sainz and Ms. Goldberg should not be custodians because they worked on the public relations aspects of Apple's response to the Injunction, and thus (according to Apple) did not have decision-making authority with respect to the substance of that response. Epic disagrees in light of substantive communications Apple has already produced involving those individuals and because both were part of the core group at Apple that worked on Apple's response to the Injunction.

- Payam Mirrashidi: Apple takes the position that Mr. Mirrashidi should not be a custodian because he is an engineer who supposedly had no decision-making role with respect to Apple's response to the Injunction. Epic disagrees because Mr. Mirrashidi, a Vice President of engineering, appears to have been a core member of Apple's response team and consequently has attended (and presumably contributed to) multiple meetings where Apple's response to the Injunction was crafted, including an initial planning meeting on May 1, 2023, and a "Wisconsin Steering Committee" meeting on July 17, 2023.

- Jeff Wilder: Apple takes the position that Mr. Wilder should not be a custodian because while he is not a lawyer, he works with Apple's legal department. Based on Apple's representations, Mr. Wilder is an economist who previously worked at the Department of Justice's Antitrust Division and "currently supports Apple's legal function in the areas of antitrust and competition law". This information confirms rather than undercuts, that Mr. Wilder should be a custodian. Apple lawyers were involved in multiple facets of Apple's response to the Injunction, and Epic voluntarily removed all lawyers from its proposed list of custodians so as to minimize the burden on Apple of privilege review. But Epic does not agree that *non*-lawyers who worked on Apple's response to the Injunction should not be custodians simply because they worked with Apple's lawyers. Given Mr. Wilder's role as an economist, not a lawyer, Epic does not agree to his removal as a custodian.

Apple's argument that the above custodians are duplicative rings hollow. Any truly duplicative documents will be removed from the review process through deduplication.

Based on the above, the Parties are at an impasse regarding the inclusion of Fred Sainz, Marni Goldberg, Payam Mirrashidi, and Jeff Wilder as custodians, and the Parties will therefore proceed to brief the dispute over custodians in the coming days.

**Search Terms**: On June 19, Epic proposed a set of 13 search strings. Two of those strings remain in dispute. Specifically, Apple is objecting Epic's proposed search string relating to Analysis Group, a third-party consulting firm that prepared a report that is in evidence, that purports to provide the justification for the new fees Apple has imposed in response to the Injunction, and that has been the focus of significant testimony by Carson Oliver during the evidentiary hearings. In addition, Apple objects to a search string targeting Apple's response to the European Digital Markets Act ("DMA"), even though Apple's documents show that for months, Apple coordinated its response efforts to the DMA and the Injunction so that the two responses would be consistent with one another. Given this coordinated effort, Apple's DMA response efforts are relevant to the issues on which the Court ordered discovery—namely the factors that affected Apple's decision-making process in response to the Injunction. Epic does not agree to narrow or eliminate these terms absent any specific showing of burden, which Apple has not even attempted to make. The Parties continue to meet and confer on this issue.

**Search Period**: The Parties agree that the relevant start date for Apple's document production is September 10, 2021, the date the Court entered the Injunction. (Dkt. 813; *see also* Hrg. Tr. 914:20-21; *see also* Dkt. 974.) With respect to the end date for Apple's document production, however, the parties disagree. Apple maintains that the relevant end date for discovery should be Apple's announcement of its compliance with the Injunction. Epic's position is that Apple's document production should run through the present because the implementation of the response and the market's reaction thereto are relevant to the issues before the Court. The Parties appear to have reached impasse on this issue and will brief it in the coming days.

**Dedicated Repositories**: As discussed during the June 25 Status Conference, the Parties disagree over whether Apple should conduct a relevance review for documents in central or shared repositories—or "collaborative data sources", as Apple refers to them—that Apple custodians identify as being dedicated to Apple's Injunction response work. (June 25 Status Conf. Tr. 4:2-10.) Epic offered a compromise position whereby if Apple intends to withhold any documents from any such repository on grounds other than privilege, Apple would inform Epic of its intent to do so, and the parties will then meet and confer on the propriety of any such withholding. In its July 1 email, Apple rejected that compromise, maintaining that it intends to produce only those documents that Apple, in its sole discretion, deems relevant from such Injunction-related "collaborative data sources". The Parties appear to have reached impasse on this issue, and will brief the dispute in the coming days.

**Relevance Criteria:** Documents Apple already produced make clear that Apple's response to the Injunction was informed by, and conformed with, Apple's response to regulatory requirements in other jurisdictions, including in the Netherlands, South Korea, and the anti-steering or alternative payment aspects of the DMA in the EU. Epic's position, which it has shared with Apple, is that documents that concern Apple's decision-making with respect to its compliance with and/or response to these other jurisdictions' regulatory requirements are

responsive to the Court's May 31 discovery order. Apple maintains that documents from "these foreign programs must have a nexus to decision-making regarding Apple's Injunction [response]". (July 1, 2024 Email From D. Craig to B. Wylly.) The Parties continue to discuss this issue.

**Substantial Completion Schedule**: Apple has estimated that it will take it approximately six months to complete its production. Epic informed Apple that six months is unacceptably long and requested that the Parties negotiate substantial completion periods based on actual hit count data. In its portion of this status report, Apple for the first time disclosed its initial estimate that the search parameters at issue would require it to review roughly 650,000 documents. If anything, this estimate confirms that Apple should reasonably complete its review and production(s) within 6-8 *weeks*, rather than 6 *months*. Indeed, this estimate is more than an order of magnitude smaller than the more than 2.9 million documents Apple reportedly reviewed (or produced without human review) in a matter of months during the merits phase of the case. Moreover, Apple has not confirmed that it has actually commenced the process of collecting and reviewing documents, stating only that it is in the process of *preparing to commence* custodial interviews. Epic believes this delay is unwarranted and that given the Parties' agreement on the vast majority of custodians and search terms, Apple should have already begun collecting, reviewing and producing documents. The Parties continue to discuss this issue.

**Privilege Log**: Epic's review of Apple's privilege log is nearly complete, and Epic expects the Parties will confer on privilege claims in the coming days.

**Apple's Position:**

*Custodians.* On June 4, 2024, after considerable diligence, Apple proposed a list of 17 custodians for the second step of discovery subject to this Court's Order to provide "all documents relative to the decision-making process leading to the link entitlement program and associated commission rates." Dkt. 974. On June 18, 2024, Epic proposed 54 custodians, and Apple agreed to 49 of these custodians and provided Epic with justifications for the removal of five individuals. Epic agreed to remove one individual and refused to remove four. Three of these four individuals (Fred Sainz, Marni Goldberg, and Payam Mirrashidi) were not involved in the decision-making process in Apple's Injunction Compliance Project. Their documents are therefore either not relevant to the core issues here or duplicative to the extent these custodians were included on documents with other custodians actually involved in the decision-making process. Mr. Sainz and Ms. Goldberg work on Public Relations and were involved with the Injunction Compliance Project in this limited role. Mr. Mirrashidi is an engineer and while he was copied on various meeting invitations, he was one of many attendees and participated in a limited capacity. As for Jeff Wilder, Mr. Wilder previously worked as an enforcer in the Antitrust Division of the Department of Justice and currently supports Apple's legal function in the areas of antitrust and competition. He works in the legal department at the direction of counsel. The inclusion of Mr. Wilder will significantly increase Apple's burden on privilege logging. In fact, Epic on its own accord, removed attorneys from the custodian list, acknowledging the privilege burden these individuals would pose on Apple. Mr. Wilder poses a similar, if not greater burden, because it will require greater scrutiny and potentially interviews with specific individuals to determine if in each circumstance Mr. Wilder appears on a document whether he is working at the direction of counsel. Apple does not believe the Parties are yet at an impasse on this subject.

*Search Terms*. Epic has proposed 13 search strings which consist of over 100 unique search terms and refuses to narrow its proposed terms on grounds of relevance or overbreadth.[1] Of the over 100 terms Epic seeks, Apple only proposes narrowing two and removing four terms; Apple has accepted all others. The two terms that merit narrowing are patently overbroad in subject matter. The remaining four terms that Apple proposes removing will result in the inclusion of documents beyond the scope of the Court's Order for discovery, which was limited to the decision-making process behind the link entitlement program in the United States. Federal Rule of Civil Procedure 26(b) bars discovery that is irrelevant to the subject matter involved in the pending action. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978); *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (applying *Oppenheimer Fund*); *see In re Trinh*, No. 2:18-BK-11475-RK, 2022 WL 1769135, at *3 (Bankr. C.D. Cal. May 31, 2022) (document subpoenas seeking information not relevant to the facts in issue in a contempt proceeding are outside of the scope permitted by Fed. R. Civ. P. 26(b)(1)). Moreover, Epic has stated that it did not seek discovery prior to the evidentiary hearing because "we thought we had enough information" and "didn't think much more was needed." Hr'g Tr. 923:24-924:10 (May 31, 2024). Epic now seeks to unjustifiably expand discovery beyond the scope of the Injunction Compliance work, despite having filed a motion without seeking *any* discovery.

Apple's narrowing requests pertain to Epic's inclusion of unbounded search terms related to Analysis Group, a consulting firm. Apple has engaged Analysis Group in connection with various projects, touching subject matters beyond the scope of the Injunction Compliance. *See* Hr'g Tr. 506:21-507:02 (May 16, 2024) (C. Oliver testifying that "Analysis Group is a public firm that Apple has used from time to time to prepare public reports about its App Store business" including "prior reports commissioned by Apple."). Apple proposes to narrow this search string to ensure that Analysis Group documents relate to the Injunction Compliance work. Apple's removal request pertains to Epic's inclusion of unbounded search terms related to the Digital Markets Act ("DMA"). The DMA is a multifaceted foreign regulatory regime in a separate market, which covers much more than anti-steering. Moreover, Apple's compliance with the DMA was announced *after* Apple's compliance with this Court's Injunction. Given the timing of these projects and the fact that these projects apply to separate geographic markets, Apple's DMA compliance is irrelevant to Apple's decision-making process in these proceedings. Apple has agreed to certain search terms about other foreign programs because, based on the work being done for those, there may be a nexus in documents to Injunction Compliance. In those circumstances, those foreign programs may have relevance here. In other words, Apple is not drawing a hard line against the inclusion of foreign programs in its acceptance of search terms, but rather a reasoned one based on the factual background of the work done for these programs. Apple continues to meet and confer with Epic on this issue and intends to provide metrics for hits related to these terms, as well as certain proposals for limiting the terms to return hits that might relate specifically to Injunction Compliance. The Parties continue to discuss these proposals and will bring any unresolved dispute to the Court promptly.

*Date Range*. Given the Court's guidance that the scope of discovery is limited to the "decision-making process leading to the link entitlement program and associated commission rates" and this concern is "historic," Dkt. 974, Apple's position is that the relevant date range for discovery is from the date the Court entered its injunction (September 10, 2021) to Apple's

---

[1] In the event of a dispute, Apple may provide the search strings to Your Honor for *in camera* review.

announcement of its compliance with the injunction (January 16, 2024). Given the Court's guidance that the scope of the proceedings is limited to "Apple's documents relative to its decision-making process," *id*. at 914:12-14, as well as clarifications that the scope of the proceedings is Apple's *historic* decision-making, *id*. at 931:05-09, Dkt 974, the end date of these activities is January 16, 2024, the date Apple announced its compliance with the Injunction. To the extent Epic continues to request documents that post-date January 16, 2024, this may be an issue that the Court will need to resolve.

*Discovery Schedule.* Given Epic's extensive custodian list and expansive search terms, Apple estimates it will require a minimum of six months to complete productions. Apple has informed Epic during the meet and confers as well as in written correspondence that the length of the discovery schedule is driven by Epic's demands for wide-ranging discovery: Epic has requested nearly five times the number of custodians as from the merits phase of the litigation (which took four months on an expedited schedule). Epic's statement that Apple reviewed or produced without human review more than 2.9 million documents during the merits phase is an incomplete statement and in any event supports Apple's argument. During the merits phase, Apple's review applied TAR, allowing documents to be produced without human review. Here, Apple will apply search terms and humans will review the documents. Apple anticipates this review to also take considerably longer than discovery at the merits phase, given the continuous involvement of attorneys in the Injunction Compliance project—which will require extensive privilege review. Based on the productions already made, Apple anticipates that privilege decisions will also often require custodial interviews to determine whether attorneys were involved in specific instances. The discovery schedule should reasonably account for Apple's time burden in response to Epic's far reaching discovery requests. Apple will provide metrics as they are available to provide greater clarity on the length of the schedule and Apple will continue to update the Court in its bi-weekly reports, but Apple anticipates its burden will only grow. At this time, having collected server-side emails for the current custodial list, Epic's requested search terms result in about 650,000 de-duplicated results, with families included, from among server-side emails alone. That number will increase as Apple conducts interviews with each and every custodian and collects from their other data sources that contain potentially relevant information.

*Collaborative Data Sources.* The Parties disagree on whether Apple may conduct a relevance review of folders or locations within a collaborative data source dedicated to Injunction Compliance. Apple agreed to inquire with custodians about collaborative data sources and committed to reviewing and producing relevant, non-privileged documents from these folders or locations regardless of search terms. However, Apple is entitled to, and will, review these documents for relevance. Apple only agreed to forego the use of search terms on such data sources and instead conduct a linear review. Epic now overreaches by arguing that it is entitled to any not privileged, irrelevant documents that may exist in these folders. It is not.

Respectfully submitted,

DATED: July 3, 2024                                CRAVATH, SWAINE & MOORE LLP
                                                   By: */s/ Yonatan Even*

*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: */s/ Mark A. Perry*
*Counsel for Defendant Apple Inc.*