UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>    *Plaintiff, Counter-defendant,*<br><br>v.<br><br>APPLE INC.,<br><br>    *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTES** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Pursuant to Your Honor's Discovery Standing Order, the Parties in the above-captioned action respectfully submit this joint statement regarding discovery disputes related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

    Counsel for Epic and Apple Inc. met and conferred telephonically on June 26, June 28, and July 12, 2024, and exchanged correspondence in a good faith effort to resolve the outstanding disputes.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP | WEIL, GOTSHAL & MANGES LLP |
| By: */s/ Yonatan Even*<br>    Yonatan Even<br>    *Counsel for Epic Games,*<br>    *Inc.* | By: */s/ Mark A. Perry*<br>    Mark A. Perry<br>    *Counsel for Apple Inc.* |

**Epic's Position:**  Apple resists clear guidance the Court has provided concerning the relevant discovery period.  Specifically, the Court stated that the relevant discovery period is the day that the Injunction was entered (*i.e.*, September 10, 2021) to the present.  Apple also now insists that it cannot complete its productions until December 2024 (*i.e.*, over six months from the day the productions were ordered), despite the fact that Apple originally estimated that it would take only three months to complete this production, and it was able to review and produce millions more documents in a similar time period during pre-trial discovery.  Epic therefore respectfully requests that this Court (1) order Apple to treat the discovery period for its productions as September 10, 2021 to May 31, 2024, and (2) order that Apple complete rolling productions with an aim towards substantial completion by August 30 (three months from the Court's Order).

**Discovery Period**:  On May 31, 2024, the Court ordered Apple to produce *all* documents relative to its decision-making process concerning its response to the Court's Injunction (the "May 31 Order").  (Hrg. Tr. 913:20-24, 914:10-15.)  Apple's counsel asked the Court directly as to the relevant time period from which it would need to produce responsive documents, and the Court stated simply: "All. . . .  So let's say from the day that my decision came out [*i.e.*, September 10, 2021] until the present".  (*Id.* at 914:18-21.)[1]  Despite this simple answer to Apple's direct inquiry, Apple takes the position that the discovery period should be cut off on January 16, 2024, the date that Apple made its response to the Injunction public by filing its Notice of Compliance with the Court.  (*See* Dkt. 871.)

Apple's position cannot be squared with the clear guidance provided by the Court—nor does it make any sense.  The evidence presented during the hearings and the documents Apple has already produced clearly show that relevant questions concerning Apple's response to the Injunction touch on facts that occurred well beyond January 16, 2024.  Indeed, Apple already produced dozens of documents that post-date January 16, 2024, in its June 14 production—and for good reason; these documents are clearly relevant to the Court's inquiry.

For example, a central issue at the hearings has been the market's response to Apple's Notice of Compliance and the adoption rate of the External Links Apple introduced as part thereof.  In that context, there has been significant testimony concerning the total non-adoption of External Purchase links, including that *none* of the top 200 developers on the Apple App Store have applied for—or even indicated to Apple that they will apply for—an External Purchase Link.  (*E.g.*, Hrg. Tr. 656:16-657:4.)  Documents reflecting whether and how Apple monitored External Purchase Link adoption (or lack thereof) after January 16, 2024, and how Apple reacted to that lack of adoption, are clearly relevant to Apple's decision-making process with respect to Injunction compliance—for example, because they can show whether Apple was surprised by this market outcome, whether it considered modifying its External Purchase Link program to make it an actual option for developers and, if so, what changes Apple considered.[2]  Epic therefore requests that

---

[1] Apple's position statement below describes Epic's focus on the Court's directive as "myopic" and claims it cannot be untethered from its context.  But Epic is focused on this exchange specifically *because* of its context; the Court already provided its answer on this issue when asked a direct question about it by Apple.

[2] Apple suggests below that the issue presented by Epic's Motion is only whether Apple was in compliance with the Injunction as of January 16, 2024.  This is incorrect.  The issue is whether Apple is *presently* in compliance with the Injunction.

1

Apple be ordered to collect documents from September 10, 2021 through May 31, 2024, as the Court already instructed Apple to do in the May 31 Order.

**Substantial Completion Schedule**: On May 31, 2024, the Court also asked Apple, "[h]ow long is it going to take [Apple] to get the actual full production that I just ordered" and gave Apple's counsel "45 minutes to figure it out". (Hrg. Tr. 920:2-3.) Apple acknowledged that there would be up to 50 relevant custodians if its productions were limited to the issues that had been the focus of the hearings—the same approximate number of custodians to which the Parties have now agreed—and that if the Parties could agree on those custodians and applicable search terms then Apple "could do this in approximately three months". (Hrg. Tr. 921:3-24.)[3] On July 1, Apple for the first time estimated that it would take it approximately six months to complete its productions. Apple has since disclosed that the custodians and search terms the Parties were nearing agreement on resulted in approximately 650,000 de-duplicated hits on "server-side emails", but maintains that it cannot complete its productions until at least December 6, 2024, just over six months from the Court's May 31 Order.

There is simply no legitimate justification for Apple's proposed six-month production schedule. During the merits stage, Apple was reportedly able to review (or produce without human review) *2.9 million* documents in roughly six months. The only reasons Apple has offered for why it should now be given roughly the same time to review less than a quarter of that volume of documents are that this review will not leverage technology-assisted review, and there is purportedly more demanding privilege review because Apple's attorneys were involved in Project Wisconsin. (*See* Dkt. 998 at 6.) Epic offers another apparent reason: Apple's strategic delay. Indeed, Apple's delay tactics have been on display ever since the Court entered its May 31 Order. For example, Apple committed on June 20, 2024 to prioritize producing the documents stored in Box that are hyperlinked in the "Step One" documents it already has produced; over three weeks have passed, and Apple has not even provided Epic with *an estimate* of when those documents will be produced. Moreover, Epic provided Apple with its proposed list of custodians and search terms on June 18, 2024, **nearly a month ago**. Apple agreed to the vast majority of both lists, and the parties are now in agreement on the custodians. Nonetheless, to date, Apple still has not confirmed that it has begun its review of documents collected from the agreed custodians using the agreed-to search terms, and, below, it still measures its time for completion *from the present*, suggesting it has not been using its time in the last month to collect and review documents from these agreed-upon sources. Further, in its position statement below, Apple can only represent that it has completed interviews with "several" custodians. Apple's failure to complete custodial interviews nearly a month into this process is inexcusable.

Apple's delay tactics are hardly surprising. The Court's Injunction was intended to expose Apple's In-App Purchase service to competitive pressure and reduce the Apple's App astronomical margins. (Dkt. 812 at 166.) Every day of delay by Apple is another day that developers are unable to enjoy the benefits of the Court's Injunction and Apple gets to collect—illegally— hundreds of

---

[3] Apple's statement below that its initial proposal of just 17 custodians would have made its three-month estimate "more feasible" is difficult to square with this statement at the hearing. Apple cannot escape that it told this Court that it could make productions from a core group of approximately 50 custodians in about three months, subject to agreeing to search terms.

millions of dollars at a gross margin the Court has found to be "excessive . . . under any normative measure". (*Id.* at 163.)

Epic does not expect Apple to complete the impossible. But Epic does expect Apple to act with all alacrity, so it will at the very least meet the three-month schedule it represented to the Court it could meet. Epic therefore requests that this Court order that (i) by no later than July 26, 2024, Apple produce the hyperlinked documents from its June 14 (*i.e.*, "Step One") production; (ii) by no later than August 9, 2024, Apple makes a first production of "Step Two", which shall comprise at least 40% of its overall production volume; (iii) by August 30, 2024, Apple substantially complete its "Step Two" productions; and (iv) consistent with the operative ESI Protocol, Apple provide a privilege log for any document withheld from each production not more than 10 days after a that production is made. (Dkt. 245 ¶ 12.) These deadlines are consistent with the initial three-month estimate that Apple provided for productions in response to the Court's May 31 Order, and are more than reasonable in light of the pace with which Apple completed pre-trial discovery.

**Apple's Position:** This proceeding involves Apple's compliance with the Court's injunction, enjoining Apple from prohibiting iOS app developers in the U.S. from including with their apps links, buttons, or other calls to action steering users to purchase platforms other than Apple's In-App Purchase ("IAP") system. On January 16, 2024, Apple implemented new developer Guidelines that permit U.S. developers to include such external purchase links. In connection with an evidentiary hearing to determine whether Apple is in violation of the injunction, the Court ordered Apple to produce documents "relative to the decision-making process leading to the new framework." Dkt. 974. The Court then referred the matter to Your Honor for ongoing disputes over the production "concerning Apple Inc.'s decision-making process" for the new framework allowing developers to include external purchase links within their apps. Dkt. 985.

Apple agreed to a substantial production of documents from 52 custodians, using more than 100 unique search terms, from a period of two-and-a-half years. And Apple agreed to substantially complete that voluminous production in under six months. Epic seeks to unreasonably extend the date range, even though the documents it seeks after January 2024 are irrelevant to the Court's request for documents "relative to the decision-making process *leading to* the new framework," Dkt. 974 (emphasis added), which was implemented on January 16. Epic seeks to shrink the time within which Apple can substantially complete this large production. Apple has made good-faith efforts to resolve outstanding issues, but Epic has refused to compromise.

**Discovery Period**. The Parties agree on the start date for the production (the date the permanent injunction was entered) but disagree on the end date. The issue here is whether Apple came into compliance with the Court's permanent injunction on January 16, 2024, when Apple implemented the new link entitlement program. Thus, the Court directed Apple to produce "all documents relative to the decision-making process *leading to* the link entitlement program and associated commission rates." Dkt. 974 (emphasis added). By definition, the "decision-making process leading to the link entitlement program and associated commission rates" ended on January 16, 2024. That is the natural, obvious end date for the relevant time period.

Epic contends that Apple must produce all documents up to May 31, 2024, focusing myopically on Judge Gonzalez Rogers' statement that the range is the "date my decision came out until the present." Hr'g Tr. 914:20–21 (May 31, 2024). This single statement from the Court cannot be

3

untethered from its context. As noted, the Court was clear that it seeks documents regarding Apple's "decision-making process." *Id.* at 914:12–14. The Court further clarified that the scope of the proceeding is Apple's "*historic* decision-making process" regarding "anything *leading up to that decision*." *Id.* at 931:5–9 (emphases added). Documents postdating "that decision" necessarily are not relevant to the "decision-making process . . . leading up" to the decision.

Epic argues that post-January 16, 2024 evidence is relevant because Apple produced some such documents in response to a specific Court order and because Epic believes that a "central issue" at the hearing has been the "response" to Apple's notice of compliance. But the fact that Apple produced some post-January 16, 2024 documents in the context of targeted document requests directed to a specific witness does not justify a wholesale five-month enlargement of the discovery period. Moreover, the "response" to Apple's compliance likewise does not justify an enlargement. If Epic seeks updated information at the end of discovery regarding the number of developers who have applied for, received, and/or implemented the link entitlement, Apple will provide that information. But Apple's subjective reactions to developments since January 2024 are not relevant to the question of whether Apple was in compliance on January 16, 2024. Nothing about Apple's compliance has changed since that date.

Notably, Epic failed to seek any discovery before filing its motion to enforce the injunction, and cannot now convert the Court's order of discovery about Apple's "historic decision-making process" into a general license for discovery on any topic *it* deems relevant. If Epic really believed this information was critical to its contempt application, it could have asked the Court for such information at some point in the last six months. Having deliberately and repeatedly forgone any effort to seek discovery on its own, Epic cannot now commandeer the Court's discovery order for its own ends. Moreover, extending the discovery timeframe would impose a significant burden on Apple. Given the breadth of the custodians and search terms Apple has agreed to, extending the discovery timeframe even by a few months would substantially increase the number of documents Apple would have to review. That burden would be imposed notwithstanding that nothing in those documents could be relevant. Accordingly, Apple respectfully requests that the Court limit the discovery date range to end on January 16, 2024.

**Discovery Schedule**. Apple proposes six months to complete a production involving 52 custodians, 100+ search terms, and complicated privilege decisions. Document reviews of this magnitude often take much longer. But Apple understands the need for resolution of these proceedings and has committed to invest substantial resources to accomplish this. Contrary to Epic's suggestion, moreover, Apple has already made great efforts over the last month toward the document collection, including interviews with several custodians.

Epic notes that at the hearing, after being given 45 minutes to provide an answer, Apple estimated that discovery could take three months. But that was a rough estimate made in a short time, and without the extensive search terms Epic would insist on. After that hearing, Apple proposed a set of custodians and search terms that would have made a three-month estimate more feasible, but Epic responded with 54 custodians and dozens of additional search terms. In the interest of compromise, Apple has agreed to almost every request Epic has made regarding the scope of document collection and searches. Under that expanded search protocol, Apple has since consistently and transparently maintained that the document review Epic seeks will take a minimum of six months, *after* the parties have agreed on custodians and search terms, which is a

necessary, threshold step for discovery. Epic, by contrast, has repeatedly shortened the time that it claims that Apple needs, now asking Apple to substantially complete the production no later than August 30, 2024—just over a month from now—with interim deadlines on July 26 and August 9. That is patently unrealistic and indeed impossible.

Having accepted the bulk of Epic's requests, Apple will undertake a massive document collection and production for 52 custodians with 100+ unique search terms applied, resulting in *at least* 642,000 documents and attachments from server-side emails alone. Completing such a large and complex production in fewer than six months—or in eight weeks, as Epic urges—is not possible. By way of example, Apple must conduct individual custodial interviews with each of the 52 agreed-upon custodians, which each require Apple's counsel and the custodian to work through dozens or hundreds of folders containing potentially relevant documents. That collection process alone takes several hours for *each* custodian, to say nothing of the time it then takes to actually *review* the collected documents for relevance and privilege.

Moreover, because these proceedings concern Apple's compliance with a Court-ordered injunction, there are serious and difficult privilege issues that Apple must resolve. Apple's counsel was involved at every stage of Apple's compliance efforts. Distinguishing between privileged and confidential materials, and communications reflecting only business advice or decisionmaking, is a time-intensive project that requires the attention of attorneys intimately familiar the case and with Apple's compliance efforts. This discovery project is therefore more complicated, not less so, than document productions of a similar size. Epic says nothing of these privilege issues, which makes this production fundamentally different from the merits stage.

Epic's comparison to the discovery in the merits phase of this matter is also not helpful because there were only 11 custodians designated by Epic *and* Apple relied on Technology Assisted Review ("TAR"). Even with TAR and one-fifth as many custodians, fact discovery took over *four* months to complete. *See* Dkt. 116 (setting non-expert discovery period from October 6, 2020 to February 15, 2021). The use of TAR is not an option here—and Epic has not suggested as much—due to the need for individualized relevancy and privilege determinations. Epic's bid for a discovery period less than four months shows the unreasonableness of its position.

Epic falsely accuses Apple of a delay tactic, but Apple has acceded to nearly every demand Epic has made regarding the scope of discovery. The result is that the scope of collection and review is much broader than what Apple had envisioned (or that is necessary). Epic elected to boil the ocean, and it cannot claim surprise now that Apple has indicated a need for a reasonable period of time. Epic also claims that "developers" are losing out on the benefit of the Injunction—but Epic does not represent a class of developers in this single-plaintiff case and has not identified *any* prejudice to itself from Apple's proposed schedule. Apple can agree to rolling productions, but not to a substantial completion date earlier than December 6, 2024, and respectfully requests that the Court permit it until that date to fulfill its obligations.

Respectfully submitted,

DATED: July 17, 2024

CRAVATH, SWAINE & MOORE LLP
By: */s/ Yonatan Even*
*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: */s/ Mark A. Perry*
*Counsel for Defendant Apple Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

I, Mark A. Perry, am the ECF User whose ID and password are being used to file the foregoing. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Yonatan Even concurred in this filing, and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated: July 17, 2024

/s/ Mark A. Perry
Mark A. Perry