**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., <br><br>　　　　　*Plaintiff, Counter-defendant,* <br><br>　　v. <br><br>APPLE INC., <br><br>　　　　　*Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH <br><br> **JOINT STATEMENT OF DISCOVERY DISPUTES** <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

　　Pursuant to Your Honor's Discovery Standing Order, the Parties in the above-captioned action respectfully submit this joint statement regarding discovery disputes related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

　　Counsel for Epic and Apple Inc. met and conferred telephonically on June 26, June 28, and July 12, 2024, and exchanged correspondence in a good faith effort to resolve the outstanding disputes.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE & MOORE LLP <br><br> By: */s/ Yonatan Even* <br>　　Yonatan Even <br>　　*Counsel for Epic Games, Inc.* | WEIL, GOTSHAL & MANGES LLP <br><br> By: */s/ Mark A. Perry* <br>　　Mark A. Perry <br>　　*Counsel for Apple Inc.* |

**Epic's Position:** Apple claims that two of the 13 search strings that Epic proposed on June 18, 2024 are overbroad, but until very recently has refused to provide Epic with the requisite data to support that claim. Apple does not seriously dispute that the terms at issue—which concern (1) Analysis Group and (2) the Digital Markets Act in Europe—are relevant to the issues that have been the focus of the evidentiary hearings on Epic's Motion. It nonetheless claims the search strings are inherently overbroad because they would capture some documents that are not relevant to those issues. This conceptual objection is meritless; any search string, by definition, would capture some documents that are irrelevant, that is precisely why documents are reviewed for responsiveness, and Apple has provided no data showing the proposed search strings would yield a disproportionate number of irrelevant documents. Indeed, Epic has consistently told Apple that it is willing to consider burden arguments if Apple can provide data showing that these terms result in inordinately high counts of unique hits, but the data Apple has provided does not substantiate Apple's burden claim. Epic therefore requests that the Court order Apple to use the search terms that Epic proposed nearly a month ago.

**Relevant Background:** On May 31, 2024, the Court ordered Apple to produce *all* documents relative to its decision-making process concerning its response to the Court's Injunction, admonishing Apple that "[i]f there is a concern, then be overly broad." (Hrg. Tr. 913:20-24, 914:10-15; the "May 31 Order"). On June 17, Apple proposed an initial list of just five search terms. The Parties met and conferred on June 18 to discuss possible search terms and custodians for Apple's review, during which Epic previewed for Apple that it would propose terms targeted at, *inter alia*, Analysis Group and the Digital Markets Act, and Apple confirmed that it did not have any conceptual objection to terms targeting those issues. Epic then proposed later that day the following two search strings that are now at issue (as well as 11 other search strings that are not in dispute)[1]—with bolded terms in the second string identifying the DMA-related terms that Apple objects to: (1) "Analysis Group" OR "AG"; and (2) ███ OR ███[2] OR ███ OR ███ OR **DMA** OR **digital markets act**" OR Netherlands OR NL OR Korea OR "KR" OR (Compliance w/2 plan*) OR "UCB" OR "user choice billing".

Apple objected to these two strings (the "Analysis Group Terms" and the "DMA Terms") on grounds of overbreadth—specifically, that (i) Analysis Group worked for several other projects for Apple in addition to its work related to Apple's response to the Injunction and (ii) the DMA included regulatory requirements that went beyond steering and alternative payment mechanisms. (*See* Dkt. 998 at 5.) On July 11, Apple took the position that the search strings ought to be narrowed with limiters strictly tying them to Apple's Injunction response, and specifically proposed that the Analysis Group Terms and DMA Terms be modified by adding the qualifying search string "w/10 (Wisconsin OR Michigan OR (injunction w/2 (compliance or plan))".[3] Epic declined to limit the search strings absent any showing of burden (let alone undue burden), noting that such burden is unlikely given that Apple has now disclosed that all of Epic's search terms, in

---

[1] Apple repeatedly mischaracterizes Epic's 13 search strings as "100+" search terms. Not to belabor the point, it makes no sense to break down Epic's 13 strings into unique terms when many of the terms are used to limit, rather than expand, the search.

[2] ███████████████████████████████████████████████████████████████████████.

[3] Apple's prior correspondence suggested it was proposing that the terms "███" and "███" be removed entirely, but Epic understands based on Apple's position statement below that Apple does not presently object to running those terms.

the aggregate, hit on approximately 650,000 documents. In response, on July 12 Apple disclosed that the Analysis Group Terms hit "roughly" on 65,000 de-duplicated documents, and the DMA Terms hit "roughly" on 125,000 de-duplicated documents. Epic asked Apple to confirm whether those counts reflected *unique* hits (i.e., documents that hit only on the Analysis Group Terms or DMA Terms, respectively, and not on any of the other terms Apple had already agreed to), but Apple did not provide this information, instead declaring the parties at impasse. It was only today, July 16, that Apple disclosed to Epic through a draft of its below position statement what the rough number of unique hits for these terms are (approximately 21,200 and 71,200 documents, respectively).

**Argument**: Apple does not dispute that Analysis Group's work on Apple's U.S. Injunction response program and Apple's work on its response to the Digital Markets Act requirements regarding anti-steering and the use of alternative payment solutions may be responsive to the Court's May 31 Order.[4] Rather, it claims these search terms need to be severely narrowed to ensure that the resulting hits relate to Apple's work on the U.S. Injunction compliance, and not to some other project involving Analysis Group or some aspects of its DMA response that pertain to other DMA requirements that are purportedly irrelevant to Apple's U.S. Injunction response. (*See* Dkt. 998 at 5.) Apple's claim of overbreadth is misplaced generally, and especially in light of the Court's admonition for Apple to be "overly broad" in its production.

First, every search string is intended to capture some documents that are non-responsive; that is precisely the purpose of a *responsiveness review*. The fact that a search string would capture some non-responsive documents is hardly remarkable, and without unique hit count data establishing that the contested terms would result in an inordinate amount of documents for Apple to review, Apple's request to limit the proposed terms is entirely unjustified.

Second, Apple's supposed concern should be mitigated—at least to some extent—by the fact that the proposed search terms would be applied to the documents of custodians who are core members of Apple's Injunction response working group. Indeed, Apple's suggestion below that the DMA Terms and Analysis Group terms are "unbounded" ignores the fact that applying the terms to specific custodians significantly limits the scope of documents that the terms will return. And although Apple states below that some members of the U.S. Injunction working group also worked on its ex-U.S. responses, that *supports* Epic's position—these custodians are presumably even less likely to explicitly discuss the justifications for the U.S. Injunction response if the justifications are the same as for the ex-U.S. responses they were working on in parallel.

Third, the specific limiters that Apple has proposed are *completely meaningless*. Apple has already agreed to include "Wisconsin", "Michigan" and "injunction" as standalone search terms (indeed, these are the first three terms Apple initially proposed), meaning every single document that would hit on Apple's proposed limiters would already hit other agreed-upon search terms.

---

[4] The Parties' dispute over relevance criteria concerning Apple's responses to ex-U.S. regulatory actions challenging its anti-steering and alternative purchase guidelines, including the Digital Markets Act, is addressed in a separate letter brief that is being filed concurrently. As noted in that letter brief, Epic agrees that documents concerning Apple's DMA response are relevant only insofar as they concern the anti-steering or alternative payment aspects of the DMA.

Fourth, the folly of applying significant limiters to search terms is made clear by the results generated from Apple's proposed limiters. As to Analysis Group, two versions of the report that it generated in support of Apple's U.S. Injunction compliance program were admitted into evidence as Exhibits CX-0014 and CX-0015, respectively. Neither of those two reports hit on the terms included in Apple's proposed limiter string. Similarly, Epic has identified three highly relevant documents concerning the DMA in Apple's prior productions, which are described further in the Parties' separate letter brief regarding responsiveness criteria (filed concurrently)—APL-EG_10679997, APL-EG_10679787 and APL-EG_10679956. Of these three squarely relevant and on point documents, only one (APL-EG_10679787) would be captured by Apple's proposed limiters. Apple's proposed limitations to the Analysis Group Terms and DMA Terms would thus remove key documents concerning these concepts from Apple's review and production, unless the documents also hit on other terms that the Parties have agreed on. That is not a reasonable way to approach identifying relevant documents concerning these concepts.

Finally, although Epic offered to consider arguments concerning burden, the hit count data that Apple provided does not substantiate a claim that the Analysis Group Terms and DMA Terms should be narrowed. The overall number of documents that Apple has identified so far—approximately 650,000 de-duplicated documents—is not particularly high in light of the stakes involved, and is less than a quarter of the 2.9 million documents that Apple represented it reviewed (or produced without human review) during merits discovery. And the DMA Terms and Analysis Group Terms, while accounting for a non-trivial portion of these overall number of hits, do not result in so many hits as to raise an overbreadth concern. Particularly in light of the Court's admonition that "[i]f there is a concern, then [Apple should] be overly broad" (Hrg. Tr. 914:14-15), Epic respectfully submits that Apple simply has not justified its contention that the Analysis Group Terms and DMA Terms warrant narrowing.

**Apple's Position:** This proceeding involves Apple's compliance with the Court's injunction, enjoining Apple from prohibiting iOS app developers in the United States from including with their apps links, buttons, or other calls to action steering users to purchase platforms other than Apple's In-App Purchase ("IAP") system. On January 16, 2024, Apple implemented new developer Guidelines that permit U.S. developers to include such external purchase links. In connection with an evidentiary hearing to determine whether Apple is in violation of the injunction, the Court ordered Apple to produce documents "relative to the decision-making process leading to the new framework." Dkt. 974.

This dispute involves only two search strings for Apple's document collection. After conferring with Epic several times, Apple agreed to collect and produce documents from 52 custodians (out of the 54 Epic proposed), using over 100 unique search terms. Epic claims that it proposed only 13 search strings, but because the terms in those strings are tied together with the word "OR," Epic has requested more than 100 unique terms that will yield about 642,000 server-side documents with attachments. Of that expansive set, Apple objected to only two strings (and six total terms).

For these two objections, Apple has simply requested to add a modifier—not to remove Epic's proposed search completely, but to ensure the search will appropriately capture documents "relative to the decision-making process leading to the link entitlement program and associated commission rates," as ordered by the Court. Dkt. 974. Epic refused to even consider Apple's reasonable proposals and instead demanded that Apple provide a unique hit count to prove that the

searches were overly burdensome. But Epic's demand ignored that Apple's objection was based on both burden *and* relevance.[5]

Moreover, contrary to Epic's statement, Apple's position is not that Epic's searches would yield some non-responsive documents; it is that the great majority of the search results would be non-responsive and that any responsive documents captured by those searches would be covered by other proposed searches. Epic claims, for example, that Apple's proposed limitations on the disputed search terms do not capture certain relevant documents,[6] but *all* of those documents are *already* captured by search strings to which Apple has not objected.[7] Epic's unbounded searches below, without Apple's proposed modifiers, therefore sweep in irrelevant documents unnecessarily. Apple requests the Court's guidance on its proposed search terms limiters, on the following two issues:

Analysis Group search terms. Epic seeks an unbounded search for any documents including the term "Analysis Group." Analysis Group is a consulting firm that Apple engaged not only for compliance with the permanent injunction issued in this Court, but also for several other projects unrelated to the injunction. Epic's proposed and unbounded search for "Analysis Group" would sweep well beyond the scope of this hearing, yielding irrelevant documents and increasing the burden on Apple substantially and unnecessarily. After Epic refused to remove the search term altogether, Apple offered a compromise by narrowing it to injunction-related documents. Apple added the underlined text below:

> ("Analysis Group" OR "AG") w/10 (Wisconsin OR Michigan OR (injunction w/2 (compliance or plan))

Epic rejected even this compromise, even though the compromise still permits a broad sweep while also ensuring the search will be tethered to the subject matter of the hearing. Given Analysis Group's involvement with work entirely unrelated to anything at issue in this proceeding, Apple's position represents a reasonable compromise. Epic's demand that Apple search for all documents using the term "Analysis Group" is unsupported and should be rejected.

"DMA" and ▮▮▮▮ search terms. Apple has objected to the "DMA" and ▮▮▮▮ search terms because they concern foreign projects. The Digital Markets Act ("DMA") is an E.U. regulation applicable to Apple, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *After* implementation of the permanent injunction in January 2024, Apple made changes to its European storefronts in March 2024 to comply with the DMA. To that end, Apple has designed and implemented an entirely new monetization structure for apps on European storefronts. Those changes were the product of hundreds of different Apple employees working across groups over several months.

---

[5] Apple cannot provide unique hit counts for the Analysis Group and DMA searches because of the nature of how the searches are run. It has attempted to nonetheless determine this information and, to the best of its ability, has found that the Analysis Group search without limiters yields up to about 21,200 unique hits with attachments, and the DMA search without limiters yields up to about 71,200 hits with attachments.

[6] Exhibits CX-0014, CX-0015, APL-EG_10679997, and APL-EG_10679956.

[7] *E.g.*, (link* OR button*) NEAR/5 (external OR out OR purchas* OR transact* OR icon OR style OR templat* OR ux OR ui).

4

As Apple explained in the prior joint letter, Apple's compliance efforts regarding foreign law and regulations are not relevant to the U.S. injunction compliance (which covers only apps on the U.S. storefront, *see* Dkt. 812, at 167–68), unless there is a specific nexus with the U.S. injunction. The parties dispute this issue and are briefing it in a separate discovery letter. Because DMA and  have no nexus to these proceedings in and of themselves—particularly because they were not implemented until after the U.S. link entitlement became effective—Apple proposed a reasonable modification to the search, in underlined text:

> ("DMA" OR "digital markets act") w/10 (Wisconsin OR Michigan OR (injunction w/2 (compliance or plan)))
>
> (█████ OR █████) w/10 (Wisconsin OR Michigan OR (injunction w/2 (compliance or plan))

As noted, Epic rejected these proposals, unless Apple showed the original search terms resulted in an overly burdensome number of hits. But Apple explained that its objection is based on relevance, not just burden. And, here, Epic's search would be both irrelevant *and* overly burdensome. Epic responds that Apple's burden should be mitigated because the custodians are limited to members of Apple's injunction response group. But the *52* custodians to which Apple has agreed (a significant number on its own) include high-level executives, decisionmakers, and engineers who undertake broad and substantial work at Apple for all facets of its business, and who are likely to have thousands of non-responsive documents that Epic's search terms would capture. Apple's burden is not mitigated simply because these employees also worked on injunction compliance.

Apple has undertaken substantial efforts and expended vast resources to address the DMA, with hundreds of employees working on the program, most of which is immaterial to this matter. Epic has not offered any valid reason as to why an unbounded search for foreign regulatory compliance would be relevant and not unduly burdensome. Epic's rhetorical appeal to the "stakes" of the litigation is misplaced: The question is whether the searches will yield unique relevant documents not already captured by any of the other dozens of search terms, or whether instead they will sweep in irrelevant documents unnecessarily. Epic has not shown that it is the former.

In reality, demanding that Apple produce documents regarding the regulation of the worldwide App Store is a fishing expedition. Epic is challenging Apple's practices in a number of other jurisdictions, and it is attempting to leverage this dispute in order to help itself in those matters. But, while Epic may seek relevant discovery in those cases, as provided for under local law, it may not use this proceeding to obtain discovery from Apple for use overseas.[8]

---

[8] This is not the first time that irrelevant discovery related to conduct abroad has been sought before this Court against Apple, and the Court should reject it again here. *See In re Apple iPhone Antitrust Litig.*, 2021 WL 75741, at *2 (N.D. Cal. Jan. 8, 2021) (Hixson, J.) (denying motion to compel discovery of which "at most" had "an attenuated relationship to the [alleged] injuries").

Respectfully submitted,

DATED: July 17, 2024                          CRAVATH, SWAINE & MOORE LLP
By: */s/ Yonatan Even*
*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: */s/ Mark A. Perry*
*Counsel for Defendant Apple Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

I, Mark A. Perry, am the ECF User whose ID and password are being used to file the foregoing. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Yonatan Even concurred in this filing, and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated: July 17, 2024                             /s/ Mark A. Perry
                                                                Mark A. Perry