RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DANIEL G. SWANSON, SBN 116556
  dswanson@gibsondunn.com
JASON C. LO, SBN 219030
  jlo@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN, D.C. Bar No. 492089; *pro hac vice*
  crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

JULIAN W. KLEINBRODT, SBN 302085
  jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200
Facsimile: 415.393.8306

MARK A. PERRY, SBN 212532
  mark.perry@weil.com
JOSHUA M. WESNESKI, D.C. Bar No. 1500231; *pro hac vice*
  joshua.wesneski@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000
Facsimile: 202.857.0940

**Attorneys for Defendant APPLE INC.**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.<br><br>    Plaintiff, Counter-defendant<br>v.<br><br>APPLE INC.,<br><br>    Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR<br><br>**APPLE INC.'S ADMINISTRATIVE MOTION TO MODIFY ORDER REGARDING WITNESS COMMUNICATIONS**<br><br>The Honorable Yvonne Gonzalez Rogers<br>Courtroom 1, 4th Floor |

Apple Inc. ("Apple") respectfully brings this administrative motion under Civil Local Rule 7-11 to modify the Court's May 31, 2024, minute order instructing Apple's witnesses who testified at the May 8–31 evidentiary hearing to "refrain from discussing the decision-making process leading to the link entitlement program and associated commission rates." Dkt. 974 (the "Order"). When it issued the Order, the Court advised that "[i]f Apple has concerns regarding the applicability of this ruling, it may contact the Court." *Id.* Since then, the discovery record upon which Apple's compliance with the Court's Injunction and potential contempt of court will be judged has changed significantly. Apple has produced almost 100,000 documents, relating not only to Apple's compliance with the Injunction but also to foreign regulations such as the EU's Digital Markets Act. Epic has indicated that, if and when the evidentiary hearing resumes, it intends to recall the same four Apple witnesses as before. Apple's inability to discuss the newly produced documents, their content, and their import on these proceedings with any of those witnesses would significantly prejudice Apple's ability to prepare for future testimony on Epic's motion, and more generally to prepare and present its defense to Epic's charges of contempt. To be clear, Apple is not seeking to communicate with the witnesses regarding their prior testimony. Apple is asking for a limited modification that would permit preparing its witnesses for further examination, including with respect to the newly produced documents.

## BACKGROUND

On September 10, 2021, following a trial on the merits, this Court issued an injunction enjoining Apple from "prohibiting developers from (i) including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchas[e] ['IAP'] and (ii) communicating with customers through points of contact obtained voluntarily from customers through account registration within the app." Dkt. 813. On January 16, 2024, Apple notified the Court that it has complied with the Injunction by striking relevant parts of the App Store Review Guidelines and implementing an External Link Entitlement program permitting developers to include buttons or links with calls to action in their apps. *See generally* Dkt. 871.

On March 13, 2024, Epic filed a motion seeking an order "finding Apple in civil contempt" for alleged noncompliance with the Injunction. Dkt. 897 at 3. Between May 8 and May 31, 2024, the

Court held an evidentiary hearing over six nonconsecutive days to "explore the factual bases for" Epic's motion. Dkt. 925. During those hearings, the Court heard testimony from four Apple witnesses involved in Apple's efforts to comply with the Injunction: former Head of Worldwide App Store Matthew Fischer, Vice President of Finance Alex Roman, Senior Director of App Store Business Management Carson Oliver, and Apple Fellow Phil Schiller. Pursuant to this Court's order, each Apple witness was subject to cross-examination by Epic's attorneys before presenting any direct testimony. Dkt. 935. After their testimony, the witnesses were admonished regarding communications with lawyers and discussions about their testimony and the link entitlement program. *See, e.g.*, Dkt. 952-1 at 1 (Fischer); *id.* at 2 (Roman); Dkt. 967-1 at 2 (Oliver); Dkt. 968-1 at 1 (Schiller).

Epic sought no discovery prior to filing its motion. On the final day of testimony, the Court ordered Apple to produce "documents relative to the decision-making process leading to the link entitlement program and associated commission rates." Dkt. 974; *see also* Tr. 914:12–15. The Court's order also provided guidance about "its admonitions that witnesses refrain from discussing matters at issue in this evidentiary hearing." Dkt. 974. Specifically, the Court "clarifie[d] that witnesses shall refrain from discussing the decision-making process leading to the link entitlement program and associated commission rates. To be clear, the Court's concern is historic." *Id.*; *see also* Tr. 901:17–902:22, 931:4–8 (discussing admonitions).

The Court later referred to Magistrate Judge Hixson decisions relating to "the scope and timing of" Apple's response to the Court's document production order. Dkt. 985. After meet-and-confer negotiations and joint briefing (*see* Dkts. 988, 999, 1000, 1001, 1002, 1003), the parties largely agreed on a set of custodians and expansive search terms. Judge Hixson held a hearing on the remaining disputed issues and issued an order on August 8 requiring Apple to also produce certain documents about Apple's "responses to similar regulations in other countries concerning anti-steering and alternative payments," including Apple's response to aspects of EU legislation known as the Digital Markets Act ("DMA"). Dkt. 1008 at 2. Judge Hixson required this discovery based on the allegation that Apple likely had "import[ed] … measure[s]" from those compliance efforts "into the United States." *See* Perry Decl. Ex. A (Aug. 8 Hrg. Tr.) at 38:3–18. As a result, Apple produced a number of

documents relating to anti-steering and other components of the DMA, even if those documents on their face had nothing to do with Apple's efforts in the United States. Judge Hixson ordered Apple to substantially complete the production of documents by September 30, 2024. Dkt. 1008 at 2.

In the four months since the evidentiary hearing concluded, Apple has worked diligently to comply with this Court's and Judge Hixson's orders. Apple reviewed over 1.5 million documents from the custodial files of 52 people involved in Apple's injunction and foreign regulatory compliance, as well as dozens of collaborative sources. *See* Dkt. 1024 at 3. As of September 30, Apple produced around 89,000 documents and complied with the Court's substantial completion order. *Id.* Apple produced another 5,900 documents over the following week, completing its productions. Pursuant to the ESI Protocol, Apple has served (or will serve) privilege logs within 10 days after each production.

During this time, Apple's four hearing witnesses have abided by the Order and have had no discussions about their testimony or the decision-making process leading to the link entitlement program and related commission rates. Epic has indicated it will ask the Court to reopen hearing evidence on its contempt motion "as soon as possible," Dkt. 1011 at 2, and "certainly intend[s] to ask additional questions" of Apple's four witnesses, including on "the materials the Court has ordered to be produced." Ex. A at 36:8–14. At a hearing on October 4, Magistrate Judge Hixson directed the parties to address in their next status report (due October 17) when the case will be ready for further consideration by Judge Gonzalez Rogers. *See* Dkt. 1025.[1]

**ARGUMENT**

Apple respectfully asks the Court to modify the Order so that, before the evidentiary hearing resumes, Apple may discuss with the witnesses the significantly expanded record produced to Epic in accordance with the Court's discovery orders. As the Court has recognized, the current proceedings are about "whether or not to hold [Apple] in contempt … for failure to comply with [the Court's] order." Tr. 915:1–3. Contempt is among the most serious charges a party can levy in civil litigation. For that reason, due process "requires" that "before civil contempt sanctions are imposed," Defendants have adequate opportunity to "prepare a defense." *Chiquita Fresh, N.A., L.L.C. v. Pandol Associates*

---

[1] Apple reserves all rights to argue that the Injunction and related evidentiary proceedings should be vacated. *See* Dkt. 1018 (R. 60(b) Mot.).

*Marketing, Inc.*, 2008 WL 324009, at *2 (E.D. Cal. Feb. 5, 2008); *see U.S. v. Powers*, 629 F.2d 619, 626 (9th Cir. 1980) (alleged contemnor should be afforded a "reasonable time to prepare a defense"); *U.S. v. Hawkins*, 501 F.2d 1029, 1031 (9th Cir. 1974) (same). These due process safeguards are consistent with others required by law to prevent the imposition of erroneous contempt sanctions. *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (notice and opportunity to be heard); *U.S. v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (clear and convincing evidence standard); *see generally* Benchbook for U.S. District Court Judges § 7.02, at 235–237 (2013) (outlining procedures for civil contempt and observing that "[c]ase law makes clear that the contempt power is one to be exercised with the greatest restraint").

The Order was a workable restriction when issued, and Apple and its witnesses have carefully complied with it. But the Court presciently observed that "[i]f Apple has concerns regarding the applicability of this ruling, it may contact the Court." Dkt. 974. In light of the recent document productions, the Order now seriously impedes Apple's ability to prepare its defense to Epic's contempt motion. Because Epic did not seek discovery, almost none of the documents that Apple has produced were part of the record during the initial evidentiary hearing. Yet many of the newly produced documents pertain to what the Court has said it "need[s] to understand" through these proceedings, including "what people [at Apple] were thinking" when Apple instituted the challenged External Link Entitlement. Tr. 915:11–13; *see id.* at 927:9–19. Moreover, many documents concern issues—such as Apple's compliance with certain aspects of the DMA—that received minimal discussion during the hearing.[2] In response to Epic's post-hearing motion, however, Apple has now produced at least 21,500 documents related to the DMA, including many hundreds from the files of Messrs. Schiller, Roman, Oliver, and Fischer.

A limited modification of the Order would permit Apple to discuss these documents with its prior witnesses in order to understand their content, their relevance (if any) to Apple's decision-making, and what they reveal about Apple's intent in complying with the Injunction. The witnesses affected by the Order include one of the final decisionmakers on pricing the Link Entitlement and associated

---

[2] Epic asked only seven questions about the DMA, and to only one witness (Mr. Schiller). Tr. 706:4–5, 707:1–2, 764:11–765:2, 765:22–24. In Apple's view, the DMA is not relevant to this proceeding.

commission (Mr. Schiller), *see* Tr. 678:2–8, Apple's former worldwide head of the App Store (Mr. Fischer), *see* Tr. 11:24–12:1, and the two executives that spearheaded the related competitive and financial analysis (Messrs. Roman and Oliver), *see* Tr. 302:17–303:12. Apple's inability to discuss newly produced documents with them prevents Apple from presenting its case through direct examination of its most relevant witnesses and defending against Epic's cross-examination. For example, it appears Epic intends to inject DMA topics into these proceedings; yet Apple is presently unable to prepare its key witnesses for direct and cross examination on those topics—including the extent that Apple's compliance with the Court's Injunction was "based on and informed by" measures taken in the EU. *See* Dkt. 1008 at 2; *see also* Ex. A at 28:8–29:15.

The Order prejudices Apple in other ways as well given the intervening document productions. The documents, by their nature, implicate legal advice about Apple's injunction and regulatory compliance. If Epic seeks to use new documents as exhibits, it is essential Apple be able to discuss them with its witnesses to ensure Apple's privileges are preserved. *See United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system."). The Order also risks making future proceedings less efficient, as Apple cannot presently call on its witnesses to identify and explain documents that are most relevant to the issues raised by Epic's motion before they retake the stand. A modification to the Order will help avoid unfocused questioning about the witnesses' recollection of documents and involvement in events.

For the reasons above, the Order as currently applied impedes Apple's ability to competently defend itself against charges of contempt and threatens to prolong proceedings. Again, Apple is not seeking to rescind the Order. Apple's position is that an order prohibiting discussion of prior testimony, while permitting witness preparation for any future hearing, including on the newly produced documents, strikes the right balance between protecting the integrity of the proceedings and Apple's ability to prepare a defense against charges of contempt. Apple welcomes the opportunity to discuss reasonable modifications to the Order with the Court, consistent with the Court's prior guidance. Dkt. 974 ("If Apple has concerns regarding the applicability of this ruling, it may contact the Court.").

DATED: October 11, 2024

Respectfully Submitted,

By: */s/ Mark A. Perry*

Mark A. Perry

*Attorney for Apple Inc.*