GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
JUSTIN C. CLARKE (*pro hac vice*)
jcclarke@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant
Epic Games, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, Counter-defendant, <br><br> v. <br><br> APPLE INC., <br><br> Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH <br><br> **EPIC GAMES, INC.'S OPPOSITION TO APPLE INC.'S MOTION TO MODIFY ORDER REGARDING WITNESS COMMUNICATIONS** <br><br> Courtroom:  1, 4th Floor <br><br> Judge:  Hon. Yvonne Gonzalez Rogers |

Apple's intentional noncompliance with the Court's Injunction (Dkt. 813) necessitated the current contempt proceedings. Now, Apple seeks to modify a different Court order so that it can prepare its witnesses to justify its noncompliance. Its request should be denied.

## I.   Background

On January 16, 2024, Apple filed a notice claiming to be in compliance with the Injunction. (Dkt. 871 (the "Notice of Compliance").) In fact, however, Apple's so-called compliance plan was designed to—and did—circumvent the Injunction. Specifically, Apple (1) implemented a new 27% commission for external linked purchases and imposed numerous restrictions on external links that render them commercially unviable, (2) continued to prohibit "buttons" or "other calls to action" directing users to other purchasing mechanisms, and (3) refused to clarify Guideline 3.1.3 to remove the prohibition on steering to alternative purchasing methods in certain types of apps. Collectively, these restrictions render external payments so burdensome or costly to developers that they are commercially unviable or directly contravene the text of the Court's Injunction. As a result, Epic moved to enforce the Injunction and hold Apple in civil contempt. (Dkt. 897.) On April 23, 2024, this Court found that Epic had made out "a sufficient preliminary showing that, viewed holistically, Apple's practice changes undermine the spirit of the injunction by limiting competition, impeding the free flow of information, and constraining user choice" and set an evidentiary hearing. (Dkt. 925.)

In light of the testimony elicited at the hearing, which proceeded over six days in May 2024, the Court ordered Apple to produce "all of Apple's documents relative to its decision-making process with respect to the issues in front of the Court". (Tr. 914:12-15; *see also* Dkt. 974 (the "Order").) The Court stated that it sought evidence regarding the decision-making process relating to the "commission that [Apple is] seeking" and "all the other restrictions that have been added, that [the Court] never authorized". (Tr. 927:7-13.)

Because the Court anticipated that further cross-examination of Apple's witnesses would be necessary following the document production, it admonished each of Apple's witnesses not to discuss his testimony with counsel until after he had completed testifying. (*See* Tr. 378:6-9

(Roman) ("[H]e is not excused and he cannot talk to lawyers or anyone else about his testimony until I get those reports and decide whether he needs to be examined on them."); Tr. 668:24-669:13 (Oliver) (Apple's counsel acknowledging that Oliver "[is] not excused" and "may not talk to lawyers"); Tr. 902:19-22 (Schiller) ("[I]f it's a close call, you don't talk about it, you don't do it. You understand me? You keep a very wide berth around what we're doing in here and your instruction not to talk to anyone.").) During the final day of the hearing, Apple sought guidance as to what it could and could not discuss with its witnesses due to their involvement in "ongoing future business operations". (Tr. 931:10-11.) The Court clarified that its concern was "historic" and that witnesses were prohibited from "discussing the decision-making process leading to the link entitlement program and associated commission rates". (Dkt. 974.) The reason for this was clear: the Court did not want Apple tainting ongoing testimony by discussing with the witnesses the subjects for which they were still under examination.

II.     **Apple's Proposed Modification Would Undermine the Purpose of the Order.**

The Court's Order that witnesses not discuss the subject matter of their testimony until they finish testifying is a standard trial practice within the sound discretion of the trial judge. *See, e.g.*, *Perry v. Leeke*, 488 U.S. 272, 281 (1989) ("[I]t is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed."). When the court deems it appropriate, such an order serves the straightforward purpose of ensuring that witnesses are not guided by counsel to shape their testimony in light of the lines of inquiry being pursued on cross-examination. Apple's request for an order "permitting witness preparation for any future hearing, including on the newly produced documents" (Dkt. 1033 at 5) would allow precisely that kind of witness instruction and gravely undercut the very purpose of the hearing, *i.e.*, to uncover the truth about Apple's decision-making process.

What Apple terms a request for "modification" is for all practical purposes a request that the Court rescind its Order, because if the Order is "modified" as Apple requests, Apple could easily circumvent it and use discussions with witnesses to influence ongoing testimony. Apple denies this, contending that the spirit of the Court's Order will be preserved by continuing to

EPIC'S OPPOSITION TO APPLE'S
MOTION TO MODIFY ORDER RE:                    2                    CASE NO. 4:20-CV-05640-YGR-TSH
WITNESS COMMUNICATIONS

1  "prohibit[] discussion of *prior testimony*" while allowing wide-ranging discussion about Apple's
2  historic decision-making process and the documents reflecting it.  (Dkt. 1033 at 5 (emphasis
3  added).)  That is plainly wrong.  Discussions with witnesses about the process leading to Apple's
4  purported compliance plan would materially affect the way those witnesses testify when they
5  return to the courtroom—*regardless* of whether there is any discussion of their prior testimony
6  itself.  The witnesses can be guided as to what they should (or should not) say in the future,
7  without specific reference to what they said in the past.  And even if prior testimony is not
8  expressly discussed with the witness, it would inevitably influence how counsel and others advise
9  the witness.  Apple's requested "modification" would allow Apple to achieve the exact goal that
10 the Court sought to prevent.

11      These concerns are not just theoretical.  While Apple witness Alex Roman testified on
12 May 10, 2024, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple's
28

proposed modification of the Court's Order would go even further and allow Apple to prepare witnesses *who have already begun cross-examination* to engage in counsel-guided clean-up of each other's testimony as well as their own.[1]

### III. Nothing Has Changed Since the Court's Order.

Apple contends that its recent document productions justify modifying the Court's Order. Not so. The Court knew that Apple would be producing a wide range of documents at the time it entered the Order. After six days of proceedings, this Court ordered Apple to produce "*all* Apple's documents relative to the decision-making process leading to the link entitlement program and associated commission rates." (Dkt. 974 (emphasis added).) In that same order, the Court clarified its admonishment stating that Messrs. Fischer, Oliver, Roman and Schiller should "refrain from discussing the decision-making process leading to the link entitlement program and associated commission rates". (*Id.*) It is evident that this Court considered the breadth of documents that Apple could potentially produce when the Court issued the Order.

Nor does the fact that Apple has been ordered to produce documents about its compliance with foreign legal requirements change the analysis. The foreign compliance efforts have been at issue since *Apple* first mentioned them in its purported Notice of Compliance on January 16, 2024. (Dkt. 871 at 3.) Further, on the first day of the hearing, Apple attempted to exclude all testimony regarding developments outside the United States, and the Court overruled that objection. (Tr. 8:22-9:11.) As such, witnesses have testified about Apple's global compliance efforts throughout the proceedings. (*See, e.g.*, Tr. 286: 1-15 (Roman) (discussing South Korea and The Netherlands); Tr. 705:20–707:4 (Schiller) (discussing Europe).)

Apple's repeated references to the Court's stated willingness to hear "concerns regarding the applicability of this ruling" (Dkt. 1033 at 1, 4, 5) are misplaced. The Court made this offer in

---

[1] Apple engaged in similar conduct at trial, when Tim Cook was "reminded" by counsel, during his examination, of the reason for a change to a schedule to Apple's Developer Program License Agreement. (*See* Trial Tr. 3978:24-3979:13 (Cook).) The Court remarked that it was "odd . . . that [Mr. Cook] did not remember anything about that termination provision before the break, and it was only by the prompting of [his] attorney's question that somehow [Mr. Cook] remembered it". (Trial Tr. 3986:14-17.)

EPIC'S OPPOSITION TO APPLE'S
MOTION TO MODIFY ORDER RE:                    4                    CASE NO. 4:20-CV-05640-YGR-TSH
WITNESS COMMUNICATIONS

1  response to Apple's concerns about communicating with its employees regarding the "ongoing
2  operations of the company".  (Tr. 931:2-3.)  Apple now seeks a modification to allow discussions
3  about "historic" issues, which are at the core of the Court's stated concerns.

### IV. The Order Does Not Prejudice Apple.

Apple's argument that the Order impedes its "ability to prepare its defense to Epic's contempt motion" is without merit.  (Dkt. 1033 at 4.)  Apple had ample opportunity to prepare its witnesses before the hearing began in May 2024, including by reviewing documents and discussing them with the witnesses.  Apple itself put each of the four witnesses on its list and affirmatively chose to present their testimony.  It presumably did appropriate diligence and preparation before doing so.  There is no prejudice in now having those same witnesses testify about the documents without further guidance in light of the questioning at the hearing so far.

Apple's assertion that it needs to speak with the witnesses to assess whether a privilege applies is a makeweight.  If documents are privileged, it is because they reflect advice given by or requested from a lawyer.  None of the four witnesses is a lawyer.  Apple can assess whether any document is privileged by discussing it with the lawyer who was involved or with one of the many other Apple employees involved in the process of developing the link entitlement program.

### **CONCLUSION**

To preserve the integrity of the proceedings and for the other reasons stated above, Epic respectfully requests that this Court deny Apple's Motion.

| | |
|---|---|
| Dated: October 15, 2024 | Respectfully submitted, |
| | By: /s/ *Gary Bornstein* |

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*