UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>      *Plaintiff, Counter-defendant,*<br><br>      v.<br><br>APPLE INC.,<br><br>      *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTES** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Pursuant to Your Honor's Discovery Standing Order, the Parties in the above-captioned action respectfully submit this joint statement regarding discovery disputes related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

    Counsel for Epic and Apple Inc. met and conferred telephonically on October 9, and exchanged correspondence in an effort to resolve or narrow the outstanding disputes.

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP | WEIL, GOTSHAL & MANGES LLP |
| By: */s/ Yonatan Even*<br>   Yonatan Even<br>   *Counsel for Epic Games, Inc.* | By: */s/ Mark A. Perry*<br>   Mark A. Perry<br>   *Counsel for Apple Inc.* |

**Epic's Position:**  Apple is withholding tens of thousands of responsive, relevant documents on the basis of facially improper and unsubstantiated privilege claims.  As to the entries on Apple's log that are facially improper, Epic respectfully requests that the Court order Apple to immediately produce all such documents.  As to the privilege log entries that fail to substantiate Apple's privilege claims, Epic requests that the Court order Apple to re-review those entries and (1) produce all documents the re-review shows have been improperly withheld or redacted, and (2) for all documents that Apple contends were properly withheld, supplement its privilege log with particularized information that would allow Epic to meaningfully assess Apple's claims of privilege.  Following Apple's re-review, Epic requests that the Court order Apple to submit to the Court for in camera review a sample of documents selected by Epic, over which Apple continues to claim privilege.[1]

**Background:**  On May 31, 2024, the Court ordered Apple to produce "all Apple's documents relative to the decision-making process leading to the link entitlement program and associated commission rates".  (Dkt. 974; Dkt. 981 at 913:20-24, 914:10-15.)  Over the course of 23 productions, Apple produced ~95,000 documents, but withheld ~57,000 documents—over one third of the responsive documents it had identified—on purported claims of privilege.  (Oct. 16 Ltr.)  Apple produced privilege logs for its productions on June 15, June 19, August 2, August 23, September 21, October 4, October 11, October 14 and October 16, 2024.  On October 1, 2024, Epic raised serious deficiencies in the initial privilege logs, including several categories of documents that Apple withheld or redacted on the basis of facially untenable privilege claims, as well as hundreds of entries that lacked any meaningful explanation of Apple's purported privilege claims.  On October 14, 2024, Apple rejected Epic's concerns wholesale, declining to make any substantive changes to its previous logs or its approach going forward.  Apple further insisted that Epic make any challenge to Apple's ~57,000 privilege claims on a document-by-document basis.

**Argument:**  Epic has two broad concerns:

**Facially Improper Privilege Claims:**  Apple's privilege logs assert privilege over a wide range of documents that are plainly not privileged.

- User Interface of External Purchase links:  Apple claims privilege over clearly non-privileged notes, correspondence, and virtually all images of the user interface and design of the external purchase links required by Apple's entitlement program.  APL-EG_10699646[2] is a stark example.  After Epic noted the document redacts design and dialog options presented by Mr. Schiller, with no legal advice requested or provided in the email chain, Apple argued (in its portion of this joint statement) that "the relevant redacted portion *explicitly refers to legal advice regarding the messaging to users*" (emphasis in original).  Epic then pointed out this claim is patently false, quoting another document that reflected the same text in unredacted form.  (*See* APL-EG_10720488 at '501.)  In response, Apple clawed back document '488, and changed its position to now claim the redacted text "*refers or responds to legal advice*".  This is both false—the redacted text does not refer to (or reveal) any legal advice—and unavailing; a "response" to legal advice is not privileged.  As another example, APL-EG_10680322 is a planning document titled "Wisconsin Draft Comms" that contains what appear to be redacted drafts of the "scare screen" Apple displays to users when clicking on an external purchase link (termed a "System Disclosure Sheet" by Apple).  (*Id.* at '327-328.)  The document contains no lawyer comments and no other redactions.  (*See also* APL-EG_10682416 (planning document redacting external link options).)

---

[1] Apple claims the Parties are somehow not yet at impasse.  But Epic's challenges are to Apple's overall approach to privilege, and Apple has made clear it will not change that approach.  The dispute is thus ripe.
[2] Given the nature of the Parties' dispute, Epic believes that a review of the documents will provide helpful context to the Court in considering this letter and is prepared to file or lodge the documents cited herein should the Court agree.

- Drafts or exchanges of presentations concerning Project Wisconsin: Apple claims privilege over draft presentations prepared for its "Pricing Committee"—an executive committee headed by CEO Tim Cook that adopted (among other things) the 27% commission Apple chose to impose on purchases made through external purchase links. Apple previously represented that the Pricing Committee engaged in a genuine commercial pricing analysis, rather than a made-for-litigation exercise. (Dkt. 977 at 281:16-22 (Alex Roman testifying that his team's analysis regarding the 27% fee was not "made-for-litigation").) As such, presentations to the Pricing Committee are presumptively not privileged; yet Apple has completely withheld many presentations to the Price Committee (*see, e.g.*, Entry No. 2,094 in Oct. 16, 2024 Privilege Log (withheld document named "01A_Price Committee Deck.pdf"); Entry No. 16,043 in Oct. 11, 2024 Privilege Log (withheld document named "Wisconsin Price Committee.key")), and it has overly redacted the decks it has produced to strip them of content that is plainly not privileged (*see* APL-EG_10682431 at '432-437 (July 3, 2023 Price Committee deck redacting a "situation summary" and "key considerations")).

- Communications with or concerning Analysis Group: Apple claims privilege over multiple drafts and communications concerning work performed by an outside consultant, Analysis Group, related to the 27% commission. Apple withheld multiple drafts of an Analysis Group deck in their entirety. (*See, e.g.*, Entries 7077 and 44831 to Oct. 11, 2024 Privilege Log). Notably, Apple claims these documents are privileged even though its witnesses testified that Analysis Group was intended to perform *economic* work to inform Apple's decision-making on the commission *as a business matter*. (Dkt. 977 at 314:14-17 (Roman) ("The [A]nalysis [G]roup was commissioned by our business management team to provide an overview of the competitive landscape the benchmarking for the services provided of what we were going to price."); *see also* APL-EG_10737782 (Mr. Oliver proposes retaining Analysis Group to "produce a study on comparable pricing structures . . . . The study would rely solely on external market data".).) Apple's reliance on *U.S. v. Richey* is misplaced; Analysis Group was not "engaged to assist the attorney in providing legal advice". None of its drafts is privileged.

- Compliance Timeline: Apple redacted virtually all statements related to the timeline for its compliance efforts. For example, APL-EG_10682416 is a document with notes from Carson Oliver titled "Wisconsin Proposals 6/1". Apple redacted its proposed compliance date from this document and multiple similar documents; *see e.g.* APL-EG_10682431 at '437 (redacting a proposed timeline and "[g]o live" date). To be clear; the documents contain no legal analysis explaining *why* redacted dates or timelines were chosen.

Apple's attempts to justify its privilege claims fall flat. For example, Apple claims the improperly withheld or redacted documents are privileged because "[a]lthough Apple . . . had to exercise its business judgment on a number of issues, advice from counsel as to the legal requirements of the injunction was sought and received at every step". (Oct. 14 Ltr. at 2.) That is not the test for privilege. Instead, courts look to whether the "primary purpose" of a specific document is business or legal. *In re Grand Jury*, 23 F.4th 1088, 1091-92 (9th Cir. 2021). Here, the "primary purpose" of these documents is clearly *not* to obtain legal advice; these are documents sent by non-lawyer business people to other non-lawyer business people as part of engineering and business efforts, and Apple witnesses have repeatedly testified they were created to inform business decisions. The fact that these efforts stemmed from a court order, or that lawyers were involved in the background, does not entitle Apple to withhold business communications on the basis of privilege or work product.

Apple further asserts that drafts of documents (*e.g.*, draft scare screens) are *always* privileged, even when they do not contain any legal advice, because Epic could use such drafts to try to reverse engineer legal advice that led to certain revisions. (Oct. 14 Ltr. at 2.) But Apple never explains *how* a multitude of drafts reflecting comments from lawyers and non-lawyers alike could somehow reveal to

Epic which changes were made on the basis of legal advice, let alone the substance of that advice. Without such showing Apple's cases are inapposite and its argument is plainly wrong, as it would allow parties to withhold virtually all draft documents from production. *Loftin v. Bande*, 258 F.R.D. 31, 35 (D.D.C. 2009) ("Drafts, standing alone, are not 'communications' and hence normally are not within the attorney-client privilege.").

**Unsubstantiated Privilege Claims:** For thousands of entries, Apple provides insufficient explanations of its privilege claims. For 22,649 entries, Apple claims privilege on the basis that the documents "relate to" or "contain" information "re regulatory issues" or "re regulatory compliance". For another 6,727 entries, Apple states the documents "relate to" or were "prepared based on" legal advice "re injunction compliance" or "re injunction compliance strategy and operations". Given that the Court specifically ordered Apple to produce documents about its decision-making and compliance with the Court's injunction (or similar regulatory requirements), these entries provide no information that would allow Epic to assess the basis of Apple's claims.

Two examples demonstrate why Apple's descriptions are insufficient. APL-EG_10699646 is an email chain in the files of an Apple public relations employee. A screenshot of a product page notice, as well as text or discussions of security and privacy warnings are redacted—none of which appear to be sent by an attorney. The privilege log states only: "Email chain with redacted text providing legal advice from counsel re regulatory issues." (Entry No. 160 in Oct. 4, 2024 Privilege Log.) APL-EG_10681518 is a January 18, 2024 draft press briefing about the injunction that was a standalone document in Mr. Oliver's custodial file. Almost the entirety of the first five pages of this document are redacted. The privilege log entry merely states "Presentation with redacted text reflecting legal advice from counsel re injunction compliance" without any explanation of what non-business purpose justifies the redactions or how a document that merely "reflects" legal advice, but does not contain it, may be privileged. (*See* Entry No. 34 in Aug. 23, as amended Oct. 14, 2024, Privilege Log.) Without more, these bald assertions cannot substantiate Apple's privilege claims.[3]

**Apple's Position:** Apple was directed to produce all documents concerning its work to comply with a Court-ordered injunction. It is therefore no surprise that a substantial number of those documents contain information protected by the attorney-client privilege or comprise work product. Yet Epic requests that the Court order Apple to "immediately produce all" documents covered by the categories of objections in Epic's submission, even though it has made no effort to demonstrate that "all" of those documents were improperly withheld or redacted. There is no legal or factual basis for this request, and it should be denied.[4]

Contrary to Epic's characterization, Apple does not reject the possibility that some privilege disputes can be resolved on a more categorical basis, and it agreed in its letter that Epic's objections regarding the system disclosure sheet and the launch date were appropriate for such resolution. But as made clear below, the other categorical objections Epic levies are inappropriate. For example, there is no basis for Epic to demand an order directing Apple to produce all "[c]ommunications with or concerning Analysis Group" without redaction, particularly in light of the manifestly privileged or protected content in many of those documents. *See Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989) (vacating order directing categorical production of documents because "it is quite probable, if not a virtual certainty, that a

---

[3] Apple also attempts to obfuscate by referencing entries in Epic's privilege log from the underlying litigation. While Epic disagrees that its privilege logs were insufficient, Epic's privilege logs (1) are not at issue in these proceedings and (2) covered a wide range of issues whereas Apple's logs in this phase of the case focus *only* on Injunction compliance.
[4] Apple disagrees that the parties are at an impasse. Epic has provided objections only to Apple's first two privilege logs. There has been no meet-and-confer since Apple provided its written responses to Epic's objections on October 14, even though Apple offered one. Epic has provided no objections (before this joint submission) to any privilege log provided after August 23.

category as broad as this does encompass documents which are or reflect confidential attorney-client communications"). Notwithstanding the breadth of Epic's categories, Apple has responded to Epic's objections to the best of its ability, but as this discussion proves, most of Epic's objections must be analyzed in the context of a specific document—as Apple offered to do with Epic.

**Privilege Categories**

User Interface. Epic principally objects to Apple's redaction of earlier drafts of the system disclosure sheet that appears when a user taps on an external purchase link. *See* APL-EG_10680322. Counsel reviewed and advised on the system disclosure sheet in detail, in part because similar system disclosure sheets were the subject of litigation in *Epic Games, Inc. v. Google LLC*, No. 20-cv-5671 (N.D. Cal.). Disclosing to Epic previous iterations of the system disclosure sheet and comparing them to the final version would reveal the substantive content of counsel's advice to Apple. Contrary to Epic's assertion otherwise, this commonsense proposition is not "extreme" and in fact has been accepted by numerous courts. *See Tsantes v. BioMarin Pharm. Inc.*, 2022 WL 17974487, at *2 (N.D. Cal. Dec. 7, 2022) (agreeing that the defendants "need not provide the draft press releases because the plaintiffs could compare them to the final public version and determine the underlying legal advice provided or incorporated"); *Hudock v. LG Elecs. U.S.A., Inc.*, 2019 WL 5692290, at *4 (D. Minn. Nov. 4, 2019) ("[D]isclosure of the fact that the client takes [the attorney's] advice to heart and acts upon it is privileged if it indirectly reveals the substance of the client's request for legal advice." (cleaned up)). Epic's citation to APL-EG_10699646 proves the point: The majority of this email exchange is unredacted, and the relevant redacted portion *refers or responds to legal advice regarding the messaging to users*.[5]

Decks. Apple convened a Price Committee to ultimately set the commission rate for the External Purchase Link Entitlement. Between the issuance of the Ninth Circuit's opinion and January 16, 2024, Apple's legal counsel (sometimes with input from non-lawyers too) prepared numerous decks to advise the Price Committee on the legal aspects of Apple's compliance obligations. Yet Epic appears to contend that because the ultimate output of the Price Committee was a business decision about the commission, all attorney advice to or litigation work product involving the Price Committee is therefore non-privileged. It cites no precedent for that position, and the law is to the contrary. *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs."); *Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021) ("[I]f an attorney gives a client *legal advice on a business decision*, that communication is protected by the privilege . . . .").

Epic points to APL-EG_10682431, which is a deck (among many others) that was prepared for review by the Price Committee during the development of the Entitlement (not the deck that formed the basis for the Price Committee's final decision on commission). The majority of the deck is unredacted; the only redacted portions are those discussing Apple's *legal* obligations. Apple has not redacted, for example, slides reflecting the work done by Alex Roman and his team. The mere fact that the deck as a whole is not privileged does not mean there are not some elements of it that are privileged. *See Morton v. County of San Diego*, 2023 WL 4243239, at *6 (S.D. Cal. June 27, 2023) ("[R]edaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication." (cleaned up)); *United States v. Chevron Corp.*, 1996 WL 444597, at *2 (N.D. Cal. May 30, 1996) ("[D]espite the overall nature of the document, the client may assert the attorney-client privilege over isolated sentences or paragraphs within a document.").

---

[5] Epic's reference to the content of a clawed-back document is both inappropriate and misleading. The clawed-back document left unredacted only one short passage that was redacted in the properly produced version. Epic cannot claim to know the full context of the legal discussion based on that single unredacted portion.

Analysis Group. Epic demands immediate production of all "[c]ommunications with or concerning Analysis Group" without redaction. That demand is unsupportable: The communications Apple has withheld or redacted involving Analysis Group are those on which Apple's in-house or outside counsel are providing legal advice, giving direction as to the development of work product, or otherwise discussing litigation strategy. The draft decks were provided to, commented on, and revised by counsel. The fact that Analysis Group was retained to provide an "overview of the competitive landscape" does not mean legal advice from, by, or among attorneys concerning that work product is not privileged. As noted above, legal advice regarding business decisions is still privileged. And conversations between attorneys and third-party experts engaged to help inform a company's compliance with a Court-ordered injunction—even when those experts are providing economic or competitive analysis for that purpose—is squarely within the boundaries of that privilege. *See United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice."). That is doubly true for any attorney work product in these materials, to which the "primary purpose" test does not apply. *See In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021) (material protected as work product if it was made "because of" litigation).

Compliance Timeline. Epic's objection to the redaction of information regarding Apple's timeline for compliance with the Injunction is entirely misplaced; the determination of when Apple would be required to comply with the Injunction—in view of the stay pending appeal and the post-decision filings—was informed extensively by legal counsel.

**Entry Descriptions.** Epic additionally objects that certain privilege log entries are insufficiently detailed. Apple's privilege logs contain the information required under the parties' ESI protocol. *See* Dkt. 242. And they are consistent with Ninth Circuit precedent defining the categories of information a party should provide in a privilege log. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Epic does not explain why Apple's entries are insufficient to allow it to discern the basis for Apple's privilege assertions, nor could it given that this entire phase of discovery is directed at Apple's compliance with a Court-ordered injunction. *See Orthopaedic Hospital v. DJO Global, Inc.*, 2020 WL 7625123, at *4 (S.D. Cal. Dec. 22, 2020) (privilege log need make only a *prima facie* showing of privilege or work product protection).

Additionally, Apple's logs provide the same or greater detail *as Epic's own logs in this case*. In the merits phase, Epic provided privilege logs that contained entries such as "Email(s) providing and requesting legal advice regarding U.S. legal compliance," "Email(s) and attachment(s) disclosing legal advice regarding foreign legal compliance," and "Email(s) providing and requesting legal advice regarding corporate policy." There has never been any suggestion that such entries are insufficient. A party's "complaint that [the opposing party's] privilege log does not give it sufficient information to assess the claimed privilege rings hollow when its own log is identical." *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118, 121 (E.D. Mich. 2019). As for Epic's complaint about the redaction of documents "reflect[ing]" legal advice, as set forth above, documents that indirectly reveal the substance of legal advice may be properly redacted or withheld. Epic cites no precedent suggesting otherwise.

Finally, there is no basis for Epic's demand that Apple re-review all entries to which Epic has objected or that the Court review a sample of documents "selected by Epic." Epic has not identified a single document over which Apple has improperly asserted privilege or work product protection. Even if Apple's privilege log descriptions were insufficient (they are not), the remedy would be to amend those descriptions, not to direct re-review of thousands of documents.

Respectfully submitted,

DATED: October 27, 2024

CRAVATH, SWAINE & MOORE LLP
By: */s/ Yonatan Even*
*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: */s/ Mark A. Perry*
*Counsel for Defendant Apple Inc.*