| | |
|---|---|
| PAUL J. RIEHLE (SBN 115199)<br>paul.riehle@faegredrinker.com<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center<br>San Francisco, California 94111<br>Telephone:  (415) 591-7500<br>Facsimile:  (415) 591-7510<br><br>GARY A. BORNSTEIN (*pro hac vice*)<br>gbornstein@cravath.com<br>YONATAN EVEN (*pro hac vice*)<br>yeven@cravath.com<br>LAUREN A. MOSKOWITZ (*pro hac vice*)<br>lmoskowitz@cravath.com<br>JUSTIN C. CLARKE (*pro hac vice*)<br>jcclarke@cravath.com<br>MICHAEL J. ZAKEN (*pro hac vice*)<br>mzaken@cravath.com<br>M. BRENT BYARS (*pro hac vice*)<br>mbyars@cravath.com<br>**CRAVATH, SWAINE & MOORE LLP**<br>375 Ninth Avenue<br>New York, New York 10001<br>Telephone:  (212) 474-1000<br>Facsimile:  (212) 474-3700<br><br>*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.* | RICHARD J. DOREN, SBN 124666<br>rdoren@gibsondunn.com<br>DANIEL G. SWANSON, SBN 116556<br>dswanson@gibsondunn.com<br>JASON C. LO, SBN 219030<br>jlo@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)<br>crichman@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br><br>JULIAN W. KLEINBRODT, SBN 302085<br>jkleinbrodt@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111<br>Telephone: 415.393.8200<br>Facsimile: 415.393.8306<br><br>MARK A. PERRY, SBN 212532<br>mark.perry@weil.com<br>JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice* pending)<br>joshua.wesneski@weil.com<br>**WEIL, GOTSHAL & MANGES LLP**<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Telephone: 202.682.7000<br>Facsimile: 202.857.0940<br><br>*Attorneys for Defendant and Counterclaimant Apple Inc.* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>            Plaintiff, Counter-defendant,<br><br>            v.<br><br>APPLE INC.,<br><br>            Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Courtroom:  1, 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

Pursuant to the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, the Court's Standing Order in Civil Cases, and the Court's Order of October 23, 2024 (Dkt. 1038), Plaintiff and Counter-defendant Epic Games, Inc. ("Epic"), and Defendant and Counterclaimant Apple Inc. ("Apple"; Apple and Epic together, the "Parties," and each individually, a "Party"), by and through their undersigned counsel, hereby submit this Joint Case Management Statement in advance of the November 4, 2024 Case Management Conference.

## I.  DISCOVERY

On the final day of testimony during the May 2024 evidentiary hearing on Epic's motion to enforce the Injunction, the Court ordered Apple to produce "all Apple's documents relative to the decision-making process leading to the link entitlement program and associated commission rates". (Dkt. 974.) On June 18, 2024, the Court ordered that all discovery matters be referred to Magistrate Judge Hixson, including the "[P]arties' ongoing dispute relative to the scope and timing of an additional production of documents concerning defendant Apple, Inc.'s decision-making process for the link entitlement program and associated commission rates." (Dkt. 985.) To manage the discovery process, Judge Hixson ordered the parties to submit biweekly status reports. (Dkt. 993.) On September 30, 2024, Apple stated that its document production was substantially complete after having produced approximately 89,000 documents. (Dkt. 1036 at 4.) Apple produced roughly 6,000 additional documents after September 30, 2024.[1] (*Id.*) Apple provided its latest privilege log on October 16, 2024.

**EPIC'S STATEMENT:**

Over the last five months, Apple has sought at every turn to delay its document production and thereby delay completion of the contempt proceedings. As Magistrate Judge Hixson found, the reasons for Apple's delay are clear: "[T]his document production is all downside for Apple because it relates to Apple's alleged lack of compliance with the Court's injunction. It is not in Apple's interest to do any of this quickly. This is a classic moral hazard . . . ." (Dkt. 1017 at 2.)

---

[1] Apple produced an additional 6,793 documents last night.

Specifically:

- By June 19, 2024, Epic provided Apple with a proposed custodian and search term list that is substantially identical to the final custodian and search term list that Apple used. (June 19, 2024 Email from B. Wylly to D. Craig.) With that information in hand, Apple could and should have proceeded with alacrity to collect, review and produce all documents. It did not.

- Two weeks later, Apple still "ha[d] not confirmed that it ha[d] actually commenced the process of collecting and reviewing documents, stating only that it is in the process of preparing to commence custodial interviews." (Dkt. 998 at 4.) Moreover, Apple took the position that "it will require a minimum of six months to complete productions"—*i.e.*, that it would not complete its production until well into December. (*Id*. at 6.)

- On July 17, 2024, because Apple would not agree to accelerate its collection and production of documents, Epic initiated the filing of a joint discovery dispute letter concerning Apple's ongoing delay. (Dkt. 1000.) In that letter, Epic pointed out that "to date, Apple still has not confirmed that it has begun its review of documents collected from the agreed custodians using the agreed-to search terms, and . . . Apple can only represent that it has completed interviews with 'several' custodians. Apple's failure to complete custodial interviews nearly a month into this process is inexcusable." (*Id*. at 2.) Apple took the position that it would "agree to rolling productions, but not to a substantial completion date earlier than December 6, 2024." (*Id*. at 5.)

- On July 30, 2024, six weeks after it was provided with Epic's proposed search terms, Apple sent a letter to Epic stating that Apple "agrees to Epic['s] search terms from its June 18, 2024 correspondence" and asking Epic to confirm certain syntax changes Apple had made to those terms. (July 30, 2024 Letter from J. Lo to Y. Even.) Evidently, Apple had not begun its review of documents before that date.

- On August 8, 2024, Magistrate Judge Hixson ordered Apple to complete its productions by September 30, "[c]onsidering the resources available to Apple, the importance of the issues at stake, and the importance of the discovery in resolving the issues." (Dkt. 1008 at 2.)

- On September 26, mere days before its substantial completion deadline, Apple—in a regularly scheduled status report—for the first time informed Epic and the Court that the search protocol Apple had known about since mid-June "resulted in a review population north of 1.3 million documents—at least double the original expectations," and asked the Court to defer its completion deadline until October 31, 2024. (Dkt. 1016 at 5.) The next day, Magistrate Judge Hixson rejected Apple's belated request, finding that Apple engaged in "bad behavior"; that it could easily meet the original deadline "if Apple really wanted to"; and that

  > the way Apple announced out of the blue four days before the substantial completion deadline that it would not make that deadline because of a document count that it had surely been aware of for weeks hardly creates the impression that Apple is behaving responsibly. (Dkt. 1017 at 2.)

Apple suggests below that the delay in making its production was due to the breadth of Epic's search terms[2] and the high number of custodians. But as demonstrated above, Apple delayed interviewing custodians, collecting documents and running search terms until at least late July.

Consistent with this pattern of delay, Apple also reneged on its commitment to make a rolling production prior to the September 30, 2024 substantial completion date. Overall, of the approximately 95,000 documents Apple produced, approximately 75,000 documents were

---

[2] Apple states Epic proposed "100 unique searches." Apple gets to this wildly inflated number by misleadingly counting each term and connector within a search string as a "unique search," regardless of whether it is used to broaden *or narrow* a search string. For example, Apple apparently treats the following string as containing 19 unique searches even though all of the terms after NEAR/2 are used to narrow the first term: commission* NEAR/5 (link* OR button* OR 27* OR 26* OR 12* OR "twenty-seven" OR "twenty-six" OR twelve OR window* OR duration* OR headline OR effective* OR blend* OR disc* OR reduc* OR alternat* OR affiliat* OR benchmark*). In fact, Epic proposed 13 search strings; Apple accepted 11 of them and was compelled to run the other two. (*See* Dkt. 1003 at 1.)

produced on September 30, 2024 or later (including an additional production made yesterday, October 27, that consists of 6,793 documents—more documents than Apple produced in all of May through August). Apple also did not provide logs reflecting the vast majority of its privilege claims until mid-October. Epic has therefore been unable to review the vast majority of documents and privilege claims until early to mid-October, resulting in further delay.[3]

Epic intends to bring these proceedings to completion expeditiously. Epic expects to be able to do so promptly upon the resolution of the Parties' pending dispute over Apple's privilege claims, under which Apple has stated that it is currently withholding approximately 57,000 documents (October 16, 2024 Letter from J. Lo to Y. Even) or just over a third of the documents it has identified as responsive and relevant to this proceeding (the contours of that dispute are further detailed below) and completion of the review of the documents Apple has produced.

**APPLE'S STATEMENT:**

Apple complied with the Court's order to produce "all documents relative to the decision-making process leading to the link entitlement program and associated commission rates." Dkt. 974. And Apple did so on the timeline ordered by Judge Hixson. Epic's complaints about the timing of Apple's productions are unfounded (or have already been addressed by Judge Hixson) and ignore the exhaustive efforts Apple undertook in these unique circumstances to comply with the Court's orders. Over the last four months, Apple has reviewed *more than 1.5 million documents* and produced around 95,000 in response to the Court's discovery order. Apple produced 90% of these documents by September 30—the deadline Judge Hixson set to substantially complete productions. *See* Dkt. 1008. Apple produced privilege logs 10 days after each production, pursuant to the ESI protocol in this case. Dkt. 245. In Apple's view, the discovery the Court ordered is complete, and the case is ready to return for any additional evidentiary proceedings subject to the scheduling issues outlined below. *See infra* § III.

---

[3] Apple is apparently still not done with the documents it has committed to produce. Apple produced another set of documents to Epic last night, October 27, 2024 and has not indicated whether it intends to produce additional documents.

Apple devoted significant resources to complete these productions by Judge Hixson's deadline. Following the Court's discovery order, Apple agreed to review and produce custodial ESI for 52 custodians. This is more than twice the number of custodians that Apple produced from during the merits phase of this case, and includes everyone from the CEO and executive team members, to engineers and designers, to pricing specialists and PR professionals, to financial and business analysts, and many others. Collecting these documents (which include, among other things, text messages, local files, and shared collaborative data sources in addition to server-side email) required interviewing custodians over hundreds of hours. In addition to agreeing to this broad set of custodians, Apple also agreed to all but two of Epic's sweeping search strings, containing 100 unique search terms in total.[4] Applying these searches to the vast collection of documents yielded north of 1.5 million review-eligible documents—more than double Apple's initial estimate of 650,000.

Apple then reviewed every one of these million-and-a-half documents in less than two months. Apple dedicated significant internal resources to this effort, including eDiscovery specialists, IT specialists, and in-house counsel, and also deployed hundreds of contract reviewers. Apple further engaged more than 70 outside counsel to provide guidance, support, and quality control checks to the contract reviewers and to also review thousands of documents for privilege. This document review was uniquely complicated for at least two reasons. First, it necessitated an unusually complex privilege review given that Apple's compliance with the Injunction, as well as its work to comply with various foreign regulations, necessarily involved the communications and work product of its in-house and outside counsel. Second, Epic's broad search terms swept in many thousands of irrelevant documents about foreign regulatory efforts, including documents about aspects of the EU's multifaceted Digital Markets Act (such as alternative app distribution, web browsers, and digital wallets) that have nothing to with issues now before the Court and were not responsive to the Court's orders. *See* Dkt. 1008 at 2 (limiting

---

[4] Epic claims this total is "wildly inflated." *Supra*. But it is simple fact: A search that reads "Epic OR Fortnite OR Sweeney OR VBucks" is four separate search terms whether Epic puts them in one "string" or four. Epic's 13 search strings are replete with compound searches like this one. *See* Dkt. 1003 at 2.

foreign regulatory documents to those about "responses to similar regulations … concerning anti-steering and alternative payments").

Given these efforts, Epic's tale of strategic delay lacks basis in reality and serves only to re-air grievances that Judge Hixson has long resolved. Epic sought no discovery before filing its motion to enforce; and Apple made clear both to this Court and Judge Hixson that it would require time to collect, review, and produce—from scratch—the documents required by the Court's order. Evid. Hrg Tr. 921:3–922:25 (providing "preliminary" three-month estimate given the number of custodians and complexity of privilege review); Dkt. 1000 at 5 (explaining size of review and need for individualized privilege and relevance determinations). Judge Hixson determined that September 30 was a reasonable deadline for Apple to complete its productions given the "volume of documents" Apple had identified and "the importance of the issues at stake, and the importance of the discovery in resolving the issues." Dkt. 1008 at 2. Although Apple sought a modest, two-week extension due to the volume of documents being more than twice as large as initially estimated, Judge Hixson denied that request and ordered Apple to meet the deadline. Dkt. 1017. Apple did so. Epic's complaints of delay ring hollow given that Apple met every deadline imposed by Judge Hixson and the other orders in the case. Dkt. 1008.

Nor did Apple "reneg[e]" on providing rolling document productions, as Epic contends. In fact, Apple made four productions to Epic over the course of August and September. Epic's real complaint seems to be that Apple did not produce *all* of its documents at the pace Epic would have preferred. *See supra* (complaining that 75,000 documents were produced on or after substantial completion deadline). But Judge Hixson *rejected* Epic's request for a more accelerated production timeline. Dkt. 1002. And it is not unusual in document discovery for initial productions to be smaller while the process of collection, review, and quality control is ongoing. Apple produced 89,000 of these documents by September 30 and thus met Judge Hixson's order to substantially complete document productions by that date. *See* Dkt. 1008 at 2. *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2018 WL 2979575, at *4 (S.D. Cal. June 8, 2018) (distinguishing substantial from full completion); *In re StubHub Refund Litig.*, 2024 WL 2305604, at *4 (N.D. Cal. May 20, 2024) (similar). Apple produced another 5,900 documents

over the following week, thereby completing its production. Epic's claim that Apple intentionally waited until the end of substantial completion to make any sizable production is unfounded. That Apple "did not provide logs reflecting the vast majority of its privilege claims until mid-October," *supra*, is also unsurprising. Under the ESI Protocol to which Epic agreed, the parties must exchange privilege logs no later than 10 days after producing documents. Dkt. 242 ¶ 12. The deadline for Apple to serve a privilege log for documents produced on the substantial completion deadline Judge Hixson ordered was therefore October 10.[5]

In the end, even though Epic did not seek any discovery before filing its motion in March because it "didn't think much more was needed," Evid. Hrg Tr. 923:23–924:10, Apple produced almost 100,000 documents related to its compliance with the Injunction in response to the Court's discovery order. Apple did this on a Court-ordered timeline that was not substantially different from the three-month estimate Apple provided to this Court in May. *See* Evid. Hrg Tr. 921:24. Apple is ready to move on from document discovery and invites Epic to do the same.

## II.   MOTIONS

The only pending discovery-related dispute before Magistrate Judge Hixson regards Epic's challenge to certain privilege claims Apple has asserted over documents responsive to the Court's May 31 order. (Dkt. 974.) The Parties filed a joint statement regarding this dispute (pursuant to Magistrate Judge Hixson's Discovery Standing Order) on October 27, 2024. (Dkt. 1039.) Epic is also still reviewing search string hit reports that Apple provided on October 16, 2024 to further assess Apple's production. The Parties have briefed several other discovery disputes before Magistrate Judge Hixson that have been resolved.

Apple has filed three motions that are pending before this Court.

- On January 16, 2024, Apple filed a Motion for Entry of Judgment on its Indemnification Counterclaim. (Dkt. 876). Epic filed its Opposition Brief on

---

[5] Epic claims Apple is "still not done" with document productions because it produced another 6,800-odd documents on October 27. *Supra*. But as Apple pointed out to Epic, these documents are not all new—they reflect documents downgraded as part of finalizing Apple's privilege log and in large part are less-withheld versions of documents Apple previously produced. In any event, Apple's production of a small number of documents after September 30 does not change the fact that it substantially completed its productions by that deadline.

February 16, 2024.  (Dkt. 886.)  Apple filed its Reply Brief on March 1, 2024.  (Dkt. 894.)  The briefing on that motion is complete.

- On September 30, 2024, Apple filed a Motion for Relief from the Judgment under Federal Rule 60(b).  (Dkt. 1018.)  Epic's Opposition Brief is due on November 7, 2024, and Apple's Reply Brief is due on November 21, 2024.  (Dkt. 1032.)
- On October 11, 2024, Apple filed an Administrative Motion to Modify Order Regarding Witness Communications.  (Dkt. 1033.)  Epic filed its Opposition Brief to that motion on October 15, 2024.  (Dkt. 1034.)  The briefing on that motion is complete.

**EPIC'S STATEMENT:**

As set forth in further detail in the Parties' joint statement before Judge Hixson (Dkt. 1039), Apple has withheld approximately 57,000 documents and produced approximately 95,000 documents.  These numbers speak for themselves.  A review of Apple's privilege log reflects that Apple is withholding tens of thousands of responsive, relevant documents on the basis of facially improper or wholly unsubstantiated privilege claims.  Epic has requested that Apple be ordered to produce certain categories of documents that are facially not privileged (*e.g.*, drafts of Apple's design of external purchase links and the scare screens Apple displays to users electing to use such links), and that it re-review and revise tens of thousands of privilege log entries that entirely fail to substantiate Apple's privilege claims.  Epic is further requesting that the Court order Apple to submit for *in camera* review a sample of documents, selected by Epic, over which Apple continues to claim privilege.

**APPLE'S STATEMENT:**

As Epic notes, the Parties' dispute about Apple's privilege logs is now pending before Judge Hixson and requires no action from this Court.  Apple was directed to produce all documents concerning its work to comply with a Court-ordered injunction and certain foreign regulations related to anti-steering.  It should come as no surprise that a substantial number of those documents contain information protected by the attorney client privilege or comprise work product.  Indeed, among the documents Epic claims are "facially not privileged," *supra*, are

1 documents with explicit references to legal advice and slides about Apple's legal obligations
2 under the injunction.  As for supposedly "unsubstantiated" privilege descriptions, *supra*, Apple's
3 logs provide the level of detail required by Rule 26 and in many cases resemble entries on Epic's
4 own logs from the merits phase of this case.  There is no basis for ordering Apple to "immediately
5 produce" broad categories of documents that Epic has made no effort to show were improperly
6 withheld or redacted, much less ordering re-review of "tens of thousands" of documents with
7 descriptions that both parties have deemed sufficient to date.

## III. SCHEDULING

### EPIC'S STATEMENT:

Apple filed its purported notice of compliance with this Court on January 16, 2024, the same day that the injunction went into effect.  (Dkt. 871.)  Epic promptly notified the Court on January 30, 2024 that it believed Apple was not complying with the injunction (Dkt. 883) and filed its motion to enforce the injunction on March 13, 2024 (Dkt. 897).  The Court found that Epic made a *prima facie* case of Apple's non-compliance, and swiftly held multiple evidentiary hearings on Epic's motion.  And while Apple initially represented to the Court that it would likely take it roughly three months to complete its document production (Dkt. 981 at 921:3-24), it has now been five months since the Court ordered Apple to produce "all Apple's documents relative to the decision-making process" relating to its purported compliance with the injunction.  (Dkt. 974.)  Epic believes that the contempt proceedings should resume promptly after that discovery is completed—*i.e.*, as soon as the Court's calendar will allow after the dispute regarding Apple's privilege claims is resolved.

Apple seeks to use the Rule 60(b) motion it filed on September 30, 2024 as yet another excuse to delay these proceedings.  Apple should not be permitted to do so.  As Epic intends to show, Apple's Rule 60(b) motion is meritless and does not warrant any delay in the contempt proceedings.  Moreover, while Epic recognizes the Court's heavy workload, there is no inherent reason that the Court's consideration of the Rule 60(b) motion and the remainder of the contempt proceedings cannot proceed in parallel.

Apple also seeks to delay the resumption of the evidentiary hearing by an additional 30 days after the latest of (i) a decision on its Rule 60(b) motion, (ii) a decision on its administrative motion regarding witness communications and (iii) the conclusion of discovery. There is no reason for that rigid rule. Apple's assertion that a witness needed for the evidentiary hearing may also need to testify in proceedings in London at some unspecified point during a six-week trial starting next year does not warrant imposing a mandatory 30-day window. Should the resumption of proceedings create an actual conflict for any witness, Apple can raise it at that time.

The real reason Apple wants the additional 30 days of delay is to prepare its witnesses on the new documents that have been or will be produced. But as articulated in Epic's opposition to Apple's motion regarding witness communications (Dkt. 1034), Apple should not be allowed to prepare its witnesses during their cross examination. In any event, Apple certainly does not need 30 days to do so. Apple argues that Epic "finished its cross-examination of Apple witnesses." That is not the case. The Court specifically noted that the cross examination of Apple witnesses was not finished. (Dkt. 977 at 378:6-9 (Roman) ("THE COURT: . . . he will, at the end of the day step down, but he is not excused and he cannot talk to lawyers or anyone else about his testimony until I get those reports and decide whether he needs to be examined on them."); Dkt. 979 at 668:24-669:1 (Oliver) ("THE COURT: You may step down. You are not excused. You may not talk to lawyers. You may not talk to anyone until I do not need your testimony again."); Dkt. 980 at 898:21-22 (Schiller) ("THE COURT: So I'm going to interrupt because we're not going to finish up"); Dkt. 981 at 926:25 ("THE COURT: Obviously we're not finishing today").

Deferring the continuation of the contempt proceedings until 30 days after a decision on Apple's motions would only allow Apple to further delay the proper implementation of this Court's injunction, harming developers and consumers alike.

**APPLE'S STATEMENT:**

With the discovery this Court ordered in May now complete, the case can return for any continuation of the evidentiary proceeding. Apple submits that to the extent a further evidentiary

hearing is necessary, it should begin after resolution of the two motions Apple filed that could affect further proceedings.

First, Apple filed a motion to vacate the judgment or, in the alternative, modify the injunction pursuant to Federal Rule 60(b).  *See* Dkt. 1018.  The basis for this motion is that two intervening legal developments—the California Court of Appeal's decision upholding Apple's antisteering rules under the UCL in *Beverage v. Apple Inc.*, 101 Cal. App. 5th 736 (2024), and the U.S. Supreme Court's opinion regarding Article III standing in *Murthy v. Missouri*, 144 S. Ct. 1972 (2024)—make prospective application of the injunction inequitable.  Under the schedule previously approved by the Court, that motion will be fully briefed as of November 21.

Second, Apple filed a motion to modify the Court's witness admonitions so that witnesses required to testify at any further evidentiary hearing may be given the opportunity to review with counsel documents produced during discovery and assist with Apple's defense.  *See* Dkt. 1033.  Epic opposed that motion on October 15, *see* Dkt. 1035, and the motion is ripe for decision.

Apple's position is that if further evidentiary proceedings are deemed necessary, they should begin on the first date this Court is available that is 30 days after the later of (1) the Court's resolution of Apple's two pending motions, or (2) the conclusion of the discovery phase of this proceeding.  In particular, Apple believes that it would be most efficient for the parties and the Court to have clarity regarding whether and to what extent the Injunction will have continuing prospective effect before devoting further resources into evidentiary proceedings.

To be clear, Apple's proposal is not an "excuse to delay these proceedings." *Supra*. Apple proposed a schedule for the Rule 60(b) motion that would have allowed the motion to be fully briefed earlier than November 21, but Epic would not agree to that schedule.  And Apple will make itself available for a hearing on the Rule 60(b) motion on any day after November 21 that is convenient for the Court.  A 30-day notice period before resumption of the evidentiary proceeding is warranted for the parties to prepare for the hearing, including ensuring the availability of witnesses.  Indeed, the need for advance notice before resuming proceedings is particularly important because Apple has a six-week antitrust trial beginning on January 13, 2025 in the United Kingdom concerning the same App Store distribution and payments policies that

1  Epic initially challenged in this case. *Dr. Rachael Kent v. Apple Inc.*, Case No. 1403/7/7/21.
2  Apple expects that at least one witness who will likely testify in further evidentiary proceedings
3  on Epic's motion will also be called to testify at the trial in London in January.
4        Epic apparently believes no notice period is required because Apple "should not be
5  allowed to prepare its witnesses during their cross examination." *Supra*. But Epic finished its
6  cross-examination of these witnesses, who were then "provisionally excused" subject to being
7  recalled in future proceedings. Evid. Hrg Tr. at 195:5–16, 378:4–11, 668:23–669:14, 902:2–22.
8  In these circumstances, due process demands they be allowed to "communicat[e] with [their]
9  retained counsel," *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1039 (9th Cir.
10 2021), including to help Apple "prepare a defense" against Epic's charges of contempt, *U.S. v.
11 Powers*, 629 F.2d 619, 626 (9th Cir. 1980); *see generally* Dkt. 1033.

| | | |
|---|---|---|
| 1 | Dated: October 28, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | By:   /s/ *Gary A. Bornstein* |
| 4 | | **FAEGRE DRINKER BIDDLE & REATH LLP** |

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

| | |
|---|---|
| Dated:  October 28, 2024 | Respectfully submitted, |
| | By:  */s/ Mark A. Perry* |

**WEIL, GOTSHAL & MANGES LLP**
  Mark A. Perry
  Joshua M. Wesneski

**GIBSON, DUNN & CRUTCHER LLP**
  Richard J. Doren
  Jason C. Lo
  Daniel G. Swanson
  Cynthia E. Richman
  Julian W. Kleinbrodt

*Attorneys for Defendant and Counter-claimant*
APPLE INC.

**E-FILING ATTESTATION**

I, Gary A. Bornstein, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Gary A. Bornstein*
Gary A. Bornstein