UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>      *Plaintiff, Counter-defendant,*<br><br>v.<br><br>APPLE INC.,<br><br>      *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>**JOINT STATUS REPORT** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Pursuant to Your Honor's Discovery Standing Order, the Parties in the above-captioned action respectfully submit this joint statement related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP<br><br> By: *Yonatan Even*<br>    Yonatan Even<br>    *Counsel for Epic Games,<br>    Inc.* | WEIL, GOTSHAL & MANGES LLP<br><br> By: *Mark A. Perry*<br>    Mark A. Perry<br>    *Counsel for Apple Inc.* |

**Epic's Position:**  Apple was ordered to substantially complete document production by September 30, 2024.  Since that date, it has produced nearly 13,000 documents, including 6,793 that were produced on October 27.[1]  Epic is therefore continuing to review and evaluate Apple's productions.  Epic has raised certain concerns with Apple's claims of privilege with the Court.  (Dkt. 1039.)  That dispute is ripe for adjudication.  Epic is still evaluating the reasonableness of Apple's responsiveness calls based on partial data Apple provided to Epic on October 16,[2] and intends to meet and confer with Apple on this topic in the coming week.  Finally, on October 24 and October 26, Apple clawed back 135 documents on the basis of new privilege claims; Epic is still evaluating these claims as well.

*Clawbacks.*  Apple is seeking to claw back 135 documents on the basis of privilege claims.  Four of these documents are versions of a document that Epic cited in the Parties' October 27, 2024 joint statement of discovery disputes.  (APL-EG_10699646; *see* Dkt. 1039.)  Epic challenged the redaction of a portion of an email from Apple executive Phil Schiller, and Apple initially defended its redaction by claiming that the redacted material "*explicitly refers*" to legal advice.  That turned out to be flatly untrue, as evidenced by other versions of the document that Apple had produced without the challenged redaction.  When Epic pointed out this misrepresentation in its portion of the joint statement, Apple clawed the documents back, retracted its claim that the text "explicitly refers" to legal advice and claimed instead that the text "refers or responds" to legal advice (which is also not true).  (Dkt. 1039.)[3]  These privilege claims are therefore covered by the joint statement currently pending before the Court. The other 131 documents were clawed back on the basis of new privilege claims, some of which appear to be improper.  Epic expects to complete its evaluation and meet and confer with Apple on these newly raised privilege claims in the coming week.  Epic is hopeful that the resolution of the pending privilege dispute would help resolve any issues with these newly raised privilege claims as well.

*Continued Productions.*  Apple continues to make additional productions of documents, the latest being a production on October 27, 2024, of 6,793 documents "related to the finalization of Apple's privilege logs".  In its transmittal e-mail, Apple stated that its production "consists of many documents previously produced, but that contain family members for which Apple has reassessed the privilege determination in finalizing its privilege logs".  These statements indicate that contrary to Apple's prior representations, Apple's October 16 privilege log was not its "final" privilege log, but rather an interim privilege log reflecting Apple's choice to over-withhold documents while continuing its privilege review process.  Because Apple did not indicate which of the documents from the October 27 production were "previously produced", in whole or in part, Epic asked Apple on October 29 to provide it with information "that would allow Epic to map (i) reproduced documents to their previously-produced versions and (ii) newly

---

[1] Apple has stated that some unidentified portion of these new productions are reproductions of previously produced documents.

[2] As explained below, Apple provided Epic with hit reports but not with any actual information on the yield of any particular search term.

[3] Apple's effort below to defend its misrepresentation is unavailing.  Apple contends that *other* portions of the document that remain redacted refer to legal advice.  Even if true, that is irrelevant. Apple specifically represented that the "*relevant* redacted portion explicitly refers to legal advice" (emphasis added).  That was false.  The "relevant" redacted portion does not mention any legal advice and is not even arguably privileged.  The fact that Apple has clawed this portion of the document back and defends its decision to do so shows that Apple's entire approach to making privilege determinations is fundamentally flawed.

produced documents to their attendant privilege log entries". Epic is awaiting Apple's response and is still reviewing this latest production.

*Responsiveness*. In its portion of the September 26 Joint Status Report, Apple for the first time made the claim that it "estimates it will have reviewed at least 1.3 million documents by the time this document review and production is complete, and the overwhelming majority of those documents will not be responsive". (Dkt. 1016 at 5.) By September 30, Apple updated that it "has reviewed nearly 1.5 million documents, and has produced over 89,000 documents. As we have previously noted, Epic's broad search terms resulted in a very low responsiveness rate for documents reviewed". (Sept. 30, 2024 Ltr. from J. Lo to G. Bornstein.) As Epic previously noted, these eleventh-hour claims of low yield—relative to the 1.5 million documents Apple had identified as potentially responsive—raise concerns as to the propriety of Apple's responsiveness review. To assess these concerns, Epic asked Apple for information showing the number of documents that hit on each search string and the yield of documents hit by each search string. On October 16, Apple provided hit reports to Epic but declined to provide any yield data, claiming that "Epic is in possession of the produced documents, and can determine for itself which search terms are present in any given produced document". Epic was therefore forced to try and evaluate yield by running the 13 search strings on Apple's production. As Apple's productions are missing nearly 40% of the documents Apple marked as responsive—namely the 57,000 documents Apple withheld from production on claims of privilege—this exercise necessarily provided only partial insight into the yield of each search string. Nonetheless, Epic intends to promptly complete its analysis of the information Apple provided and the yield information Epic can glean from the production corpus. Epic will endeavor to meet and confer with Apple about any concerns in that respect in the coming week.

*Resumption of Contempt Proceeding*. Epic expects to resume the evidentiary hearings related to Apple's noncompliance with the Court's injunction expeditiously as soon as the Court's calendar allows for the proceeding to continue following resolution of these discovery issues. Apple has elsewhere taken the position that its Rule 60(b) motion, filed on September 30, 2024, should be ruled on before the hearings resume. Epic disagrees, as there is no reason that the Court's consideration of Apple's Rule 60(b) motion and the continuation of the evidentiary hearings cannot proceed in parallel. Apple also suggested a 30-day hiatus before any further hearings, supposedly to prepare for the hearings—but nothing is preventing Apple from preparing for the hearings now, nor is there any good reason why Apple should require more time to prepare for hearings implicating only its own documents. Deferring the continuation of the evidentiary hearings until after a decision on Apple's pending motions or for additional preparation time would only allow Apple to continue its noncompliance with the Court's injunction and further delay proper implementation of that injunction.

**Apple's Position**: Discovery is complete. Apple complied with the Court's order to produce "all documents relative to the decision-making process leading to the link entitlement program and associated commission rates." Dkt. 974. Pursuant to the Order of this Court, Apple substantially completed production of those documents (~90%) by September 30. *See* Dkt. 1008. That 90% substantial completion percentage accounts for additional document productions Apple has made since September 30, including the production of documents Apple had initially designated as privileged but that it subsequently de-designated. Apple has provided privilege logs for each

production within 10 days, as required under the parties' ESI protocol. *See* Dkt. 242 ¶ 12. Apple believes that all document productions are complete and that the case should be returned to Judge Gonzalez Rogers upon resolution of Epic's privilege objections, summarized below.

*Privilege Dispute and Clawbacks*. Epic has argued that Apple has withheld or redacted too many documents as privileged, pointing to the size of the privilege logs as compared to the number of documents produced. As Apple has repeatedly pointed out, this discovery is about Apple's compliance with a Court-ordered injunction, and the documents at issue are therefore at the very heart of the attorney-client privilege and work product doctrines. Indeed, if Epic does not believe documents containing legal advice or work product regarding Apple's efforts to comply with the Injunction are privileged or protected, it is hard to imagine what Epic would think *is* covered by those doctrines. It is therefore no surprise that Apple has withheld or redacted a substantial number of otherwise responsive documents. Epic's repeated invocation of the sheer number of privileged documents adds nothing to its arguments.

The substance of the parties' privilege arguments have been set forth in the parties' joint submission to the Court. *See* Dkt. 1039. Apple will not repeat its arguments here, but the privilege dispute process itself has established the weakness of Epic's arguments. On numerous occasions in the last month, Epic has raised an objection to a document (either in correspondence with Apple or in a draft of its portion of a joint submission), Apple explained the basis for privilege or Epic's misapprehension of the document, and Epic subsequently removed that document from its discussion or argument. The fact that Epic has repeatedly been forced to tacitly admit that its objections to specific documents are without merit is further evidence that Epic's categorical objections have no basis in the law or facts.

Epic also raises the fact that Apple has clawed back a relatively small number of privileged documents (135), focusing in particular on four versions of the same document clawed back during the parties' briefing of the joint submission on privilege. Epic's recitation of that exchange is not accurate. Apple asserted in its draft joint submission that the "majority of [the relevant document] is unredacted, and the relevant redacted portion *explicitly refers to legal advice regarding the messaging to users*." That was accurate: The redacted text contains explicit legal advice and the recipient's response to that advice. During the exchange of revised submissions, Epic pointed to a different version of the document that Apple had produced in which Apple had inadvertently left *one small part* of the privileged material unredacted. From that, Epic drew the unsupported conclusion that the "relevant redacted portion"—the majority of which it has never seen and which does refer to legal advice in express terms—did not refer to legal advice. Apple promptly clawed back the document and advised Epic, "We do not believe our description of the redacted material was inaccurate, but we do not intend our clawback to obstruct Epic's effort to argue the merits of Apple's privilege assertions. Accordingly, in an effort to avoid any further dispute on this topic, we have amended our submission" to the form reflected in the parties' final submission. Epic has now twice tried to paint this unremarkable exchange as some sinister effort by Apple to mislead. There is no basis for this insinuation—Apple was forthright and cooperative. In any event, Apple remains willing to meet and confer with Epic on any privilege or clawback objections it has.

*Responsiveness*. Epic continues to suggest—without any evidence—that Apple has withheld responsive, non-privileged documents. The only basis Epic offers for this claim is sheer production metrics, including the percentage of responsive documents out of the total volume of

4

documents that hit on Epic's search terms. This accusation is without merit. Even before it began producing documents, Apple repeatedly made clear that Epic's search terms were broad and therefore were likely to (and ultimately did) pull in many non-responsive documents. *See* Dkt. 998, at 5; Dkt. 1003, at 4–5. Indeed, those terms encompassed *every* document during the relevant time period using the terms, inter alia, "epic," "fortnite," "korea," "linkout," "lookback," "dma," *or* "digital markets act." It is clear that many documents containing one or more of those terms—some of which implicate foreign regulations having nothing to do with external purchase links—would not be relevant to this matter. Apple was under no obligation to provide Epic any metrics about search terms or responsiveness; it did so anyway in a gesture of cooperation. But the notion that any of these metrics could be used to suggest that Apple has withheld responsive, non-privileged documents is nothing but speculation.

*Continued Productions*. Epic's opposition to Apple producing certain documents after finalizing its privilege log is contradictory to its current motion practice seeking that Apple do just that. Apple has made and completed its productions of certain documents that had privilege determinations reassessed when Apple served its privilege logs. With the exception of a small number of those logged documents for which Apple has *downgraded* the privilege determination and produced, Apple stands on those privilege logs. Epic is speaking out of both sides of its mouth in demanding that Apple review and reassess its privilege calls and then crying foul when it has done so. Apple has acted in good faith and produced those documents that have downgraded privilege calls, along with any family members. Epic's statement that Apple did not indicate which documents were previously produced is also incorrect. Apple produced previously-produced documents with both their old and new bates numbers on the face of the document. Apple has been working in good faith to create a cross-reference also showing the old and news bates numbers, following Epic's request. Apple expects to produce that cross-reference by October 31. Apple will serve a privilege log for any newly produced documents that warrant logging.

*Scheduling*. Apple's position regarding scheduling remains the same as in the prior Joint Status Report. *See* Dkt. 1036, at 6–7. As set forth therein and in the Case Management Statement filed before Judge Gonzalez Rogers on October 28, *see* Dkt. 1040, Apple believes that discovery in this matter is complete, although Epic's submission regarding privilege logs will have to be resolved before any hearing resumes. If a further evidentiary hearing is necessary, Apple's position is that it should begin on the first date that Judge Gonzalez Rogers is available that is 30 days after the later of (1) the Court's resolution of Apple's two pending motions for relief under Rule 60(b) and to modify the Court's witness admonitions, or (2) the conclusion of the discovery phase of this proceeding. Apple's proposed schedule is intended to provide for the most efficient process and the most clarity to the parties and the Court. As Apple has previously noted, it offered to brief its Rule 60(b) motion on a more expedited schedule and Epic refused, and Apple will make itself available for argument on that motion any day after November 21 that is convenient to the Court.

Epic has objected to a 30-day period between the end of discovery and the resumption of the evidentiary hearing. Apple reiterates that a modest period between discovery and the resumption of the evidentiary hearing is reasonable and sensible because, among other things, Apple will need time to fully review documents, develop case strategy and defense, and prepare its witnesses (depending in part on the Court's resolution of the pending motion for administrative relief). Additionally, Apple will need to ensure its witnesses' availability, including by coordinating with proceedings in other jurisdictions (including the United Kingdom). 30 days is already a highly

compressed time period to prepare for trial, and Epic's objection to even that short preparation period is without merit.

Respectfully submitted,

DATED: October 31, 2024

CRAVATH, SWAINE & MOORE LLP
By: <u>Yonatan Even</u>
*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: <u>Mark A. Perry</u>
*Counsel for Defendant Apple Inc.*