Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>                    Defendant. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**EPIC GAMES, INC.'S OPPOSITION TO APPLE'S MOTION FOR RELIEF FROM THE JUDGMENT**<br><br>Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .........................................................................................................1

BACKGROUND ...........................................................................................................4

     A.    This Court's Judgment and Injunction...............................................4

     B.    Apple's Appeal ...................................................................................7

     C.    *Beverage v. Apple* ............................................................................9

     D.    *Murthy v. Missouri*.........................................................................11

     E.    Apple Is Trying to Avoid or Delay Compliance with the Injunction. .............12

LEGAL STANDARD ..................................................................................................13

ARGUMENT ..............................................................................................................14

I.    *Beverage* Did Not Change Controlling Law, Does Not Conflict with the Injunction and Does Not Make the Anti-Steering Provisions Lawful. ................................................14

II.   *Murthy* Did Not Change the Controlling Law, and Epic Still Has Standing. ..............18

III.  All Equitable Considerations Weigh Against Apple's Motion....................................24

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ............................................................................. 14, 15

*Beverage v. Apple, Inc.*, 101 Cal. App. 5th 736 (2024) ..................................................... passim

*Bynoe v. Baca*, 966 F.3d 972 (9th Cir. 2000) ..................................................................... 15, 19

*California v. EPA*, 978 F.3d 708 (9th Cir. 2020) ..................................................................... 14

*California v. Texas*, 593 U.S. 659 (2021) ................................................................................ 20

*Casey v. Albertson's Inc.*, 362 F.3d 1254 (9th Cir. 2004) ....................................................... 13

*Cel-Tech Communications v. Los Angeles Cellular Telephone Company*, 20 Cal. 4th 163
    (1999) ..................................................................................................................................... 5

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001) .............................................. 1, 5, 6

*Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013) ....................................................................... 20

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .............................................................. 19, 20

*Epic Games, Inc. v. Apple, Inc. (Epic I)*, 559 F. Supp. 3d 898 (N.D. Cal. 2021) .............. 2, 5, 6

*Epic Games, Inc. v. Apple, Inc. (Epic II)*, 67 F.4th 946 (9th Cir. 2023) .......................... passim

*FTC v. Apex Cap. Grp.*, 2021 WL 7707269 (C.D. Cal. Sept. 3, 2021) ................................... 13

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2023 WL 2836794 (C.D. Cal. Mar.
    17, 2023) .............................................................................................................................. 14

*Griffith v. Dep't of Public Works*, 141 Cal. App. 2d 376 (1956) ............................................ 16

*Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434 (9th Cir. 2019) .......................................... 14

*In re Pac. Far E. Lines, Inc.*, 889 F.2d 242 (9th Cir. 1989) .................................................... 18

*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097 (9th Cir. 2006) ...................................... 14

*Lopez v. Ryan*, 678 F.3d 1131 (9th Cir. 2012) ........................................................................ 14

*Louisiana v. EEOC*, 2024 WL 4016381 (W.D. La. Aug. 13, 2024) ......................................... 19

*Motorola Credit Corp. v. Uzan,* 561 F.3d 123 (2d Cir. 2009) ....................................... 4, 14, 25

*Murthy v. Missouri*, 144 S. Ct. 1972 (2024) ..................................................................... passim

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ........................................................ 19, 20

*Planned Parenthood Fed. of Am. v. Ctr. for Med. Progress*, 704 F. Supp. 3d 1027 (N.D. Cal. 2023) ............................................................................................................ 24

*Price v. City of Seattle*, 2006 WL 2128758 (W.D. Wash. July 27, 2006) ................ 16

*Royal Crown Ins. Corp. v. Commonwealth of the N. Mariana Islands*, 447 F. App'x 760 (9th Cir. 2011) ..................................................................................................... 16

*S. Oregon Barter Fair v. Jackson Cnty., Oregon*, 372 F.3d 1128 (9th Cir. 2004) ................. 19

*Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000) .............................................. 14, 15

*Spokeo v. Robins*, 578 U.S. 330 (2016) ............................................................... 20

*United Farm Workers v. Perdue*, 2020 WL 6939021 (E.D. Cal. 2020) ...................... 14

*United States v. Colgate & Co.*, 250 U.S. 300 (1919) ............................................ 1

*United States v. Thrasher*, 483 F.3d 977 (9th Cir. 2007) ....................................... 23

*Venoco, LLC v. Plains Pipeline, L.P.*, 2022 WL 1090974 (9th Cir. Apr. 12, 2022) .......... 24, 25

*Whaley v. Belleque*, 520 F.3d 997 (9th Cir. 2008) ....................................... 3, 18, 25

**Statutes & Rules**

California Unfair Competition Law, BPC § 17200 ............................................. 5, 6

Cartwright Act, BPC § 16700 ...................................................................... 5, 6, 10

Federal Rules of Civil Procedure 60(b)(5) .......................................................... 13

Federal Rules of Civil Procedure 60(b)(6) ...................................................... passim

Sherman Act, 15 U.S. Code § 1 .................................................................. passim

**Other Authorities**

12 James Wm. Moore *et al., Moore's Federal Practice* § 60.22[5] (3d ed. 2008) ................... 14

## **INTRODUCTION**

Apple's Motion is a last-ditch effort to avoid or further delay a reckoning for its ongoing non-compliance with the Court's Injunction.  Apple moves to vacate an Injunction that was entered after trial and affirmed on appeal, and that the *en banc* Court of Appeals and Supreme Court declined to review.  Seeking to vacate such a final decision, over three years after it was issued, is an extraordinary request.  As Apple's Motion acknowledges, to obtain relief, Apple must show a change in law that not only conflicts with the Injunction, but makes it inequitable to continue enforcing it. (Mot. at 1.)  Apple does not come close to meeting that burden.  Apple's claims that the *Beverage* and *Murthy* decisions reflect a change in controlling law are incorrect; indeed, Apple's claims about *Beverage* in its Motion are directly contrary to the arguments Apple made before the California Supreme Court in *Beverage* itself.

Apple first relies on the California Court of Appeal's decision in *Beverage v. Apple, Inc.*, 101 Cal. App. 5th 736 (2024).  Apple's Motion is premised on three representations about *Beverage*:  (1) *Beverage* changed California law governing UCL claims, (2) *Beverage* conflicts with the decisions in this case, and (3) *Beverage* declared Apple's anti-steering provisions to be lawful conduct under California law.  (Mot. at 1-2.)  Each of these representations is wrong. First, in *Beverage*, the Court of Appeal declined to overrule its 2001 decision in *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001), noting that *Chavez* is consistent with decades of caselaw of the California Supreme Court and of the other Courts of Appeal.  *Beverage*, 101 Cal. App. 5th at 753-55.  A decision declining to overrule settled law, by definition, is not a change in law.  Second, the *Beverage* Court took no issue with the Ninth Circuit's application of California law; to the contrary, the *Beverage* Court noted that the Ninth Circuit's explanation of the scope of the UCL was fully consistent with California caselaw.  *Id.* at 754-55.   Third, *Beverage* did not declare Apple's anti-steering provisions to be lawful.  Rather, the trial court in *Beverage* had concluded that the specific complaint before it pled nothing but unilateral conduct permitted under *United States v. Colgate & Co.*, 250 U.S. 300 (1919), and the *Beverage* plaintiffs did not appeal that holding.  The Court of Appeal therefore **expressly presumed (without deciding)** that Apple's anti-steering provisions were unilateral conduct that is lawful under *Colgate* when

analyzing plaintiffs' UCL claim, *Beverage*, 101 Cal. App. 5th at 752, and it did not address the Ninth Circuit's holding that Apple's Developer Program License Agreements ("DPLAs") constitute bilateral contracts subject to Section 1 of the Sherman Act or other exceptions to the *Colgate* rule.[1]  Apple's assertion that *Beverage* "declined to follow" the Ninth Circuit's decision in this case is thus wrong.  (Mot. at 5.)  *Beverage* simply noted that the Ninth Circuit did not address the "precise issue" presented by the *Beverage* plaintiffs' appeal:  whether *Chavez* was wrongly decided.  *Beverage*, 101 Cal. App. 5th at 756 n.6; *id.* at 746 ("The central premise of Plaintiffs' argument is that *Chavez* was wrongly decided").

Apple knows all of this; in fact, **Apple argued all of this**.  When the *Beverage* plaintiffs petitioned for review in the California Supreme Court, Apple's Answer opposing review successfully presented a starkly different reading of *Beverage* than its Motion does now.  Although Apple now tells this Court that *Beverage* changed California law (Mot. at 1), Apple told the Supreme Court that the Court of Appeal "relied on settled principles" of unfair competition law to reach the same result as *Chavez* and every other California appellate decision in the two decades since.  (Byars Ex. A at 7 [hereinafter, "Answer"].)  Although Apple tells this Court that a "direct and irreconcilable conflict now exists between *Beverage* and the Injunction", leading to a "direct conflict" between the California courts and the federal courts (Mot. at 16), Apple told the Supreme Court that the *Beverage* plaintiffs' arguments "that *Chavez* and the decision below [*Beverage*] are inconsistent with decisions in a federal court lawsuit involving Epic Games . . . are wrong" (Answer at 11-12).  And while Apple tells this Court that the California courts held that its anti-steering rules "comply with the UCL and are lawful" (Mot. at 16), Apple told the Supreme Court that the Court of Appeal issued a "narrow" decision that did not reach that issue because "plaintiffs conceded that the *Chavez* decision would bar their 'unfair' claim under the UCL" (Answer at 7; *see also id.* at 6, 9).  Remarkably, Apple now

---

[1] *Epic Games, Inc. v. Apple, Inc.* (*Epic II*), 67 F.4th 946, 982 (9th Cir. 2023) ("To hold that a contract is exempt from antitrust scrutiny simply because one party reluctantly accepted its terms would be to read the word 'contract' out of the statute.") (cleaned up); *see also Epic Games, Inc. v. Apple, Inc.* (*Epic I*), 559 F. Supp. 3d 898, 1036 n.602 (N.D. Cal. 2021) ("conditioning sales is not a 'unilateral refusal to deal'" and not subject to *Colgate*) (citations omitted).

backpedals from its own (successful) arguments before the California Supreme Court and cites the *Beverage* plaintiffs' unsuccessful Petition for Review as support for its about-face.  (Mot. at 5.)  But, as a section of Apple's Answer in *Beverage* argued, the *Beverage* plaintiffs' Petition "**misreads the Court of Appeal decision**".  (Answer at 8 (emphasis in original).)  Apple's statements to the California Supreme Court about the scope of *Beverage* were correct; its statements to this Court are false.  And even setting that aside, judicial estoppel—also known as the doctrine of preclusion of inconsistent positions—prevents Apple from "gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position". *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008).

The Supreme Court's decision in *Murthy v. Missouri*, 144 S. Ct. 1972 (2024), changed no more relevant law than did *Beverage*.  In *Murthy*, the Supreme Court applied "bedrock" principles and pre-existing standing law to determine that the particular plaintiffs lacked standing to sue an assortment of government actors who allegedly were going, in the future, to cause third-party social media platforms to censor plaintiffs' speech.  *Id*. at 1986.  The Supreme Court explained that it was "not applying a 'new and heightened standard'" to the standing issues in that case.  *Id*. at 1992 n.8.  Rather, the result was based on the facts on record.  This case turned out differently from *Murthy* because the facts here are starkly different.  Indeed, Apple argued in its appeal of the Injunction that the same standing principles the Supreme Court applied in *Murthy* meant that Epic lacked standing.  Apple's briefs even used some of the same exact quotes and caselaw as the opinion in *Murthy*.  Apple lost in the Ninth Circuit because the evidence in this case showed that, but for Apple's anti-steering provisions, app users would be able to discover Epic's cheaper payment platform and developers and users would switch to that platform to process their in-app transactions, increasing Epic's revenues.  *Epic II*, 67 F.4th at 1000.  Epic proved its injuries, and proved that the Injunction was necessary to prevent them.  Because *Murthy* did not change the law and would not change the result of this case, it is no basis for reconsidering the Injunction—much less countermanding the Ninth Circuit's holding.

Because Apple shows no change in controlling law, its Motion fails.  Apple's arguments that it would be inequitable for the Court not to vacate or at least modify the Injunction are also

1   wrong.  (Mot. at 15-25.)  Because there is no conflict between the California and federal courts

2   (as Apple itself previously argued), there are no comity or federalism issues at play.  Apple

3   argues that the Injunction prevents California citizens from addressing the lawfulness of Apple's

4   anti-steering provisions "through the processes provided by the State's constitution".  (Mot.

5   at 19.)  But even if there were some inconsistency between the federal decisions in this case and

6   the California decisions (and there is none, as Apple told the California Supreme Court, Answer

7   at 11), federal decisions about the UCL are not binding on California courts, which remain free

8   to address Apple's anti-steering provisions *de novo*.  (Apple explained this too to the California

9   Supreme Court, Answer at 11-12.)  Apple's other complaints about the nationwide scope of the

10  Injunction are not even purportedly based on new controlling law, but instead simply rehash

11  Apple's arguments that have been rejected by all courts to which they have been presented.  This

12  Court need not reconsider them.

13          Although the Court need not reach the equities to decide this Motion against Apple, the

14  Court may consider the context in which Apple makes its Motion.  Through the pending

15  contempt proceedings, Epic has shown that Apple is intentionally violating the letter and spirit of

16  the Injunction.  After this Court ordered Apple to make a broad production of documents

17  relevant to that issue, Apple sought to delay that production for months.  Magistrate Judge

18  Hixson found that Apple engaged in "bad behavior" designed to put off Apple's day of

19  reckoning.  (Discovery Order, ECF No. 1017 at 2.)  The Second Circuit gave a name to the

20  situation in which a party, after having willfully disregarded and evaded compliance with lawful

21  orders of the court, asks a court to use its equitable powers to grant it relief from those orders:

22  "chutzpah".  *Motorola Credit Corp. v. Uzan,* 561 F.3d 123, 128-29 & n.5 (2d Cir. 2009).  That

23  court held that it would not reward a party who acts with such unclean hands.  *Id.* at 129.  This

24  Court should not either.

25          Apple's Motion should be denied.

26                              **BACKGROUND**

27  **A.      This Court's Judgment and Injunction**

28          On September 10, 2021, after a bench trial, this Court entered judgment, finding that the

anti-steering rules in Apple's contracts with app developers violate the California Unfair Competition Law under its "unfair" prong. *Epic I*, 559 F. Supp. 3d at 1051. The Court addressed both Epic's standing to bring its claims as well as the scope of the "unfair" prong and its application to Apple's anti-steering provisions.

On standing, Apple had not disputed Epic's standing to bring its UCL claim as a potential competitor, and this Court accordingly found that Epic had such standing: "Epic Games wanted to open a competing iOS game store and could not. Because Epic Games would earn revenues from a competing store, it has suffered an economic injury." *Id*. at 1052. Apple disputed only whether Epic had standing to sue as a consumer of Apple services. This Court found that "both parties' experts agree that developers like Epic Games jointly consume Apple's game transactions and distribution services together with iOS users". *Id*. The Court therefore concluded "that Epic Games has standing to bring a UCL claim as a quasi-consumer, not merely as a competitor". *Id*.

The Court rejected Apple's argument that Epic's failure to prove its claims under the Sherman Act and the Cartwright Act barred Epic's UCL claim. Rather, the Court explained, the California Supreme Court held in *Cel-Tech Communications v. Los Angeles Cellular Telephone Company*, 20 Cal. 4th 163 (1999), "that 'incipient' violations of antitrust laws and violations of the 'policy or spirit' of those laws with 'comparable' effects are prohibited". 559 F. Supp. 3d at 1053-54. The Court further reasoned that if Epic's failure to prove its other claims barred its UCL claim, then "that standard would be rendered meaningless because any conduct that fails under the Sherman Act would also fail the UCL". *Id*. at 1054. "The UCL, however, has 'broad, sweeping language[] precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of [one's] invention would contrive' . . . . Thus, it warrants separate consideration apart from antitrust laws." *Id*. (quoting *Cel-Tech*, 20 Cal. 4th at 183).

Apple also argued that, notwithstanding *Cel-Tech*, the California Court of Appeal's decision in *Chavez* barred Epic's claims. *Chavez* held that when conduct constitutes permissible unilateral conduct pursuant to the U.S. Supreme Court's decision in *Colgate*, the conduct does not violate the UCL. 93 Cal. App. 4th at 367. This Court concluded that *Chavez* "expressly

rejected the notion that 'an 'unfair' business act or practice must violate an antitrust law to be actionable under the unfair competition law,' but found that conduct cannot be unfair where it is 'deemed reasonable and condoned under the antitrust laws'", such as under the *Colgate* doctrine. 559 F. Supp. 3d at 1053 n.631 (quoting *Chavez*, 93 Cal. App. 4th at 375). But the Court explained that "there is a difference between conduct 'deemed reasonable' and conduct for which a violation has not been shown". *Id.* The Court held that although Epic had not proven its Sherman Act or Cartwright Act claims, Apple had not shown that its anti-steering provisions were "deemed reasonable and condoned" under the antitrust laws. *Id.*. Accordingly, Apple's provisions are not subject to the UCL safe harbor recognized in *Chavez*. *Id.*

The Court found that "the evidence presented showed anticompetitive effects and excessive operating margins under any normative measure. The lack of competition has resulted in decreased information which also results in decreased innovation relative to the profits being made. The costs to developers are higher because competition is not driving the commission rate." *Id.* at 1054. The Court attributed those results squarely to Apple's efforts to prevent consumers from learning about other ways of purchasing digital goods and services. *Id.* "Thus, developers cannot communicate lower prices on other platforms either within iOS or to users obtained from the iOS platform." *Id.* at 1055. "Apple has not offered any justification for the actions other than to argue entitlement. Where its actions harm competition and result in supracompetitive pricing and profits, Apple is wrong." *Id.* at 1056-57. "[A]lthough Epic Games has not proven a present antitrust violation, the anti-steering provisions 'threaten[ ] an incipient violation of an antitrust law' by preventing informed choice among users of the iOS platform." *Id.* at 1055.

With respect to remedies, this Court noted that "[f]ederal courts must apply equitable principles derived from federal common law to claims for equitable [relief] under California's Unfair Competition Law". *Id.* at 1057 (citation omitted). The Court found that Epic satisfied all the traditional elements for equitable relief under federal law, and the injury to Epic "can best be remedied by invalidating the offending provisions". *Id.* The Court therefore enjoined Apple "from prohibiting developers to include in their 'Apps and their metadata buttons, external links,

or other calls to action that direct customers to purchasing mechanisms, in addition to IAP'" and from "Communicating with customers through points of contact obtained voluntarily from customers through account registration within the app." *Id*. at 1058.

### B. Apple's Appeal

Apple appealed this Court's Judgment and Injunction to the Ninth Circuit. On appeal, Apple again argued that Epic lacked standing to bring its UCL claims. Apple's primary argument was that, because Apple removed Epic's apps from the App Store, Epic could no longer be injured by Apple's anti-steering rules. (Principal and Response Brief for Apple Inc., *Epic Games v. Apple*, 2022 WL 964121, at *103 ("Principal Brief").) In addition, Apple argued that Epic could not base standing on the actions of third parties, just as Apple argues based on *Murthy* now. (Reply Brief for Apple Inc., *Epic Games v. Apple*, 2022 WL 2836361, at *5 ("Reply Brief").)

The Court of Appeals rejected Apple's standing challenge. It concluded that "Apple's argument … overlooks two critical aspects of the record". *Epic Games v. Apple*, 67 F.4th 946, 1000 (9th Cir. 2023). *First*, Epic's subsidiaries still have apps in the App Store, notwithstanding Epic's account termination, "causing Epic to be injured through the anti-steering provision's effects on its subsidiaries' earnings". *Id*. *Second*, "Epic is a competing game distributor through the Epic Games Store and offers a 12% commission compared to Apple's 30% commission." *Id*. Thus, "if consumers can learn about lower app prices, which are made possible by developers' lower costs, and have the ability to substitute to the platform with those lower prices, they will do so—increasing the revenue that the Epic Games Store generates." *Id*. The Court of Appeals thus affirmed this Court's factual finding that "Apple's anti-steering provision injures Epic". *Id*. The court further found that the Injunction was "tied to Epic's injuries" because the anti-steering provisions "harmed Epic by (1) increasing the costs of Epic's subsidiaries' apps that are still on the App Store, and (2) preventing other apps' users from becoming would-be Epic Games Store consumers". *Id*. at 1003. The Ninth Circuit also rejected Apple's argument, repeated here now, that the Injunction should be limited to Epic or its subsidiaries: "Because Epic benefits in this second way from consumers of other developers' apps making purchases through the Epic

Games Store, an injunction limited to Epic's subsidiaries would fail to address the full harm caused by the anti-steering provision." *Id.*[2]

On the merits of the UCL claim, Apple argued on appeal, as relevant here, that "Epic's failure to prove its Sherman Act claims forecloses liability under the UCL." (Principal Brief at *105.) Notably, Apple did not squarely argue that the *Colgate* doctrine "condoned" its anti-steering rules, as it does now, but primarily contended that Epic's failure to establish Sherman Act claims also disposed of its UCL claims: Apple asserted that Ninth Circuit precedent "has uniformly applied the *Chavez* rule to reject UCL claims based on conduct that is not anticompetitive under the Sherman Act". (*Id.*) In its Reply Brief, Apple doubled down on its expansive reading of *Chavez*, arguing that "once conduct challenged as anticompetitive" is found not to violate the antitrust laws, there can be no UCL liability, whether or not a "safe harbor" such as *Colgate* affirmatively immunizes that conduct. (Reply Brief at *10-12.)

The Court of Appeals firmly rejected Apple's interpretation of California law. The court held that "[a]s the UCL's three-prong structure makes clear, a business practice may be 'unfair,' and therefore illegal under the UCL, 'even if not specifically proscribed by some other law.'" *Epic II*, 67 F.4th at 1000. The court then surveyed California law holding that the "safe harbor" doctrine "bars a UCL action where California or federal statutory law 'absolutely preclude[s] private causes of action or clearly permit[s] the defendant's conduct'". *Id.* at 1001. Citing the California Supreme Court's decision in *Cel-Tech*, the Court of Appeals held that "[t]he safe-harbor doctrine emphasizes that there is a 'difference between (1) not making an activity unlawful, and (2) making that activity lawful.'" *Id.* "Accordingly, in every instance where a court found the Sherman Act to preclude a UCL action, a *categorical* antitrust rule formed the basis of the decision." *Id.* (emphasis in original). And, citing *Chavez*, the court noted that the California Court of Appeal "held that the *Colgate* doctrine—that it is lawful for a company to

---

[2] Apple's Motion alleges that Epic committed "misrepresentations" concerning the effect of Apple's anti-steering rules on revenues Epic earns from licensing the Unreal Engine to third-party developers who have apps in the App Store. (*E.g.*, Mot. at 3.) These unfounded accusations are irrelevant because Unreal Engine revenues played no part in the Ninth Circuit's conclusion that Epic had standing to bring its UCL claim.

unilaterally announce the terms on which it will deal—precluded a UCL action". *Id.*

The Court of Appeals concluded that none of this precedent barred Epic's UCL claim because Epic's Sherman Act claims were rejected based on a failure of proof, not because Apple's conduct was condoned or permitted by a categorical antitrust rule. Indeed, "[n]either Apple nor any of its *amici* cite a single case in which a court has held that, when a federal antitrust claim suffers from a *proof deficiency*, rather than a *categorical legal bar*, the conduct underlying the antitrust claim cannot be deemed unfair pursuant to the UCL". *Id.* (emphasis in original). And, pointing to *Cel-Tech* itself, the court rejected Apple's contention that no California precedent authorized a UCL claim in the absence of an antitrust violation. *Id.* Finally, the Court of Appeals observed that Apple's argument, which would "convert any Rule of Reason shortcoming into a UCL defense", would undermine the UCL by "collapsing" together the unlawful and unfair prongs of the UCL. *Id.* That result is "foreclosed by California law". *Id.*[3]

Apple unsuccessfully petitioned for *en banc* review, and then filed a Petition for Writ of Certiorari in the U.S. Supreme Court (Byars Ex. B [hereinafter, "Petition"]). Apple's Petition argued that Article III and the Due Process Clause require that, before a federal court "enters an injunction that extends to nonparties", it must make a "specific finding that such relief is necessary—as to *all* nonparties—to redress any injury to the individual plaintiff". (Petition at i.) Apple's Reply in support of its Petition was filed after the Supreme Court granted *certiorari* in *Murthy* and argued (unsuccessfully) that, because *Murthy* "presents the identical issue" as its Petition, the Supreme Court should likewise grant *certiorari* or withhold its decision until after the judgment in *Murthy*. (Byars Ex. C at 1-2.) Apple's Petition was denied.

## C.    *Beverage v. Apple*

In *Beverage*, a group of consumers sued Apple in the Superior Court of California, challenging Apple's removal of *Fortnite* from its App Store. As analyzed by the Superior Court

---

[3] On appeal, Apple agreed that it was unnecessary for the Ninth Circuit to certify a question of California law to the California Supreme Court "[b]ecause the *Cel-Tech* standard controls". Reply Brief at *8 n.2.

in its First and Second Decisions sustaining Apple's demurrers, the plaintiffs brought three competition claims:  (1) a Cartwright Act claim, (2) a UCL claim under the "unlawful" prong that was derivative of the Cartwright Act claim and (3) a UCL claim under the "unfair" prong.

In its First Decision sustaining Apple's demurrer, the Superior Court analyzed the Cartwright Act and "unlawful" UCL claims together, and concluded that plaintiffs' claims failed because they did not plead bilateral conduct, as required for a Cartwright Act claim.  (Perry Decl. Ex. 1 ("First Decision") at 8-11.)  With respect to plaintiffs' UCL claim under the "unfair" prong, the Superior Court concluded that plaintiffs' competition theories "depend on unilateral conduct by Apple that is protected by the *Colgate* doctrine".  (First Decision at 13.)  The Superior Court thus concluded that plaintiffs' UCL claim was barred by *Chavez*.  (First Decision at 14.)  The *Beverage* plaintiffs amended their Complaint, and the Superior Court again sustained Apple's demurrer.  The Court concluded that the Complaint "fails to plead facts avoiding the *Colgate* doctrine"—that is, that the Complaint failed to plead that Apple's DPLA terms constituted bilateral conduct or were "coerced".  (Perry Decl. Ex. 2 ("Second Decision") at 8-9.)  With respect to the UCL "unfair" claim, the Superior Court noted that the plaintiffs' allegations were largely "unchanged" and rejected the plaintiffs' invitation to reconsider its holding that *Chavez* barred their claim.  (Second Decision at 10-11.)

The *Beverage* plaintiffs filed a limited appeal from the Superior Court's decisions.  As the California Court of Appeal explained, the plaintiffs challenged only the dismissal of the UCL "unfair" claim and abandoned "any claim of error in the other aspects of the trial court's ruling on Apple's demurrer".  *Beverage*, 101 Cal. App. 5th at 752.  The Court of Appeal "therefore **presume[d]** the trial court correctly found that Plaintiffs' causes of action under the Cartwright Act and the 'unlawful' prong of the UCL were legally insufficient by application of the *Colgate* doctrine and [it] conduct[ed its] analysis with that presumption in mind".  *Id.* (emphasis added).  The remaining question on appeal, then, was "whether Plaintiffs adequately alleged an 'unfair' act or practice under the UCL **considering the trial court's ruling that Apple's practices constituted permissible unilateral conduct**".  *Id.* (emphasis added).  The *Beverage* plaintiffs thus did not challenge the applicability of the *Colgate* doctrine or *Chavez* on appeal, but rather

asked that *Chavez* be overruled as inconsistent with the California Supreme Court's decision in *Cel-Tech*. *Id*. at 753. The Court of Appeal declined the invitation to overrule *Chavez*, holding that it was consistent both with *Cel-Tech* and caselaw from the California Courts of Appeal. *Id*.

The *Beverage* plaintiffs petitioned for review by the California Supreme Court. In contrast to Apple's current declarations that *Beverage* found Apple's anti-steering provisions to be lawful (Mot. at 5), Apple's Answer opposing review emphasized that the Court of Appeal's decision was "narrow" because "plaintiffs did not dispute that the conduct they challenged as 'unfair' was protected by the *Colgate* doctrine" and "plaintiffs conceded that the *Chavez* decision would bar their 'unfair' claim under the UCL". (Answer at 6, 7.) Thus, Apple argued, *Beverage* is "'limited to' situations 'where the same conduct found immune from antitrust liability by the *Colgate* doctrine is also alleged to violate the 'unfair' prong of the UCL'". (Answer at 7.) Apple explained that the Court of Appeal had not made new California law, but instead "relied on settled principles" and "firmly entrenched" law to decline the plaintiffs' request to overrule *Chavez*. (Answer at 6-7.) Apple also rejected plaintiffs' arguments that *Beverage* and *Chavez* "are inconsistent with decisions in a federal court lawsuit involving Epic Games" because those arguments "are wrong". (Answer at 11-12.) The California Supreme Court denied the Petition for Review.

### D.    *Murthy v. Missouri*

On June 26, 2024, the Supreme Court issued its decision in *Murthy v. Missouri*, 144 S. Ct. 1972 (2024). The case was brought by two States and five social media users who alleged that, at the direction of various Executive Branch officials, the social media sites they used removed, demoted or fact-checked their posts about elections or COVID. The district court entered a "sweeping" injunction prohibiting the government defendants from, among other things, encouraging social media companies to remove or suppress any social media posts. *Id*. at 1981, 1985. The injunction was not limited to the social media sites used by the plaintiffs or to the topics they wished to post about, but covered all of the government defendants' interactions with any social media company. *Id*. The Fifth Circuit affirmed.

The Supreme Court reversed, concluding that plaintiffs lacked standing. The Court

explained that, because plaintiffs' theory of harm depended on the actions of third parties not before the Court—the social media platforms' responses to the government defendants' requests—the plaintiffs were required to present evidence that there was a "substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response" to the government defendants' actions. *Id.* at 1986. The Supreme Court explained that its ruling was not a new development in the law, but resulted from "bedrock" standing principles established by the Court's prior standing precedent. *See id.* Having established the basic standing principles governing its analysis, the Supreme Court then analyzed the facts found by the district court and the Fifth Circuit—some of which it concluded "appear to be clearly erroneous", *id.* at 1988 n.4—before concluding that plaintiffs had not met their burden of showing a "substantial risk" that they would be harmed by "at least one" social media platform's actions in the future. The Court relied in particular on the lack of "proof of an ongoing pressure campaign"; without such proof, "it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants". *Id.* at 1993.

### E.    Apple Is Trying to Avoid or Delay Compliance with the Injunction.

On January 16, 2024, following the expiration of the Ninth Circuit's stay of the Injunction, Apple unilaterally filed a notice identifying the steps it had taken purportedly to comply with the Injunction. Epic filed a Motion to Enforce the Injunction because Apple is violating the Injunction in at least three ways: (1) Apple has imposed technical requirements, economic hurdles and points of friction that have prevented developers and consumers from using external links, (2) Apple has imposed a commission on the use of external links that is designed to frustrate the purpose of the Injunction, and (3) Apple's Guidelines prohibit certain apps from encouraging users to use a purchasing method other than IAP. (*Epic Games v. Apple*, Order Setting Evidentiary Hearing at 2, ECF No. 925.) This Court found that "Epic Games has made a sufficient preliminary showing that, viewed holistically, Apple's practice changes undermine the spirit of the injunction by limiting competition, impeding the free flow of information, and constraining user choice". (*Id.*) The Court therefore set an evidentiary hearing concerning whether Apple should be held in contempt for non-compliance with the Injunction.

1   (*Id.*)

2       At the evidentiary hearing, in light of testimony and documentary evidence presented to

3   the Court, the Court ordered Apple to produce "all of Apple's documents relative to its decision-

4   making process with respect to the issues in front of the Court. All of them . . . from the day that

5   my decision came out until the present". (Hearing Tr. 914:10-21, ECF No. 981.) In the months

6   following the Court's Order, Apple has repeatedly tried to delay producing the ordered

7   discovery, culminating in an Order that Apple substantially complete its production by

8   September 30, 2024. (*See* Discovery Order, at 1 ECF No. 1017.) Four days before that deadline,

9   Apple unilaterally announced that it would not be able to complete that production and sought

10  another extension. Magistrate Judge Hixson rejected Apple's eleventh-hour request, finding that

11  Apple had engaged in "bad behavior", including having kept its planned non-compliance with

12  the discovery orders a secret from Epic and the Court, despite having filed no less than seven

13  biweekly status reports supposedly apprising the Court of its progress. (*Id.* at 1-2.) Judge

14  Hixson further found that, "if Apple really wanted to", it could easily meet the deadlines

15  imposed by the court, but Apple did not want to because "this document production is all

16  downside for Apple because it relates to Apple's alleged lack of compliance with the Court's

17  injunction". (*Id.* at 2.)

18                              **LEGAL STANDARD**

19      "Reconsideration for any of the reasons set forth in Rule 60(b) is an 'extraordinary

20  remedy that works against the interest of finality and should be applied only in exceptional

21  circumstances.'" *FTC v. Apex Cap. Grp.*, 2021 WL 7707269, at *2 (C.D. Cal. Sept. 3, 2021). In

22  this case, Apple's Motion refers to Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6). The

23  difference between the two is that Rule 60(b)(5) applies solely to prospectively enforced

24  injunctions, whereas Rule 60(b)(6) permits alteration of retrospective judgments. Both kinds of

25  Rule 60(b) motion are governed by equity and "addressed to the sound discretion of the [C]ourt".

26  *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

27      Rule 60(b)(5) provides that on "just terms", the Court "may" grant relief from an

28  injunction when "applying it prospectively is no longer equitable". Rule 60(b)(5) relief based on

an intervening change of law requires a showing that the law has changed to "permit what was previously forbidden" and "dissolve [] the legal basis for the injunction". *California v. EPA*, 978 F.3d 708, 713-14 (9th Cir. 2020). Such relief requires a "*bona fide*, significant change" in law. *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *see also Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000); *United Farm Workers v. Perdue*, 2020 WL 6939021, at *3 (E.D. Cal. 2020). That change must "remove [] the basis" for the injunction. *EPA*, 978 F.3d at 708, 715.

Rule 60(b)(6) permits relief for "any other reason that justifies relief", but may be used only to prevent "manifest injustice" when "extraordinary circumstances" are present. *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006). A change in the law "can—but does not always—provide a sufficient basis for granting relief under Rule 60(b)(6)". *Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434, 444 (9th Cir. 2019). In fact, "[u]sually, a change in the law does not constitute an extraordinary circumstance justifying Rule 60(b)(6) relief." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2023 WL 2836794, at *6 (C.D. Cal. Mar. 17, 2023). If there is a showing of a change in law, the Court must also conduct a case-by-case inquiry guided by relevant equitable factors. *Lopez v. Ryan*, 678 F.3d 1131, 1135-37 (9th Cir. 2012).

Because Rule 60(b) motions are governed by equity, the "court may always consider whether the moving party has acted equitably". 12 James Wm. Moore *et al.*, *Moore's Federal Practice* § 60.22[5] (3d ed. 2008). Courts may thus consider whether the party seeking relief has acted with unclean hands. *Motorola Credit Corp.*, 561 F.3d at 127. A party that has disregarded or refused to comply with court orders acts with unclean hands when it invokes the equitable power of the Court to seek relief from those orders. *See id.* at 127-28.

## ARGUMENT

## I. *Beverage* Did Not Change Controlling Law, Does Not Conflict with the Injunction and Does Not Make the Anti-Steering Provisions Lawful.

The part of Apple's Motion based on *Beverage* rests on the faulty premise that *Beverage* changed California law. (Mot. at 1.) Apple does not just have it wrong; it has it backwards. The "central premise" of the *Beverage* appeal was whether "*Chavez* was wrongly decided" and

should be overruled.  *Beverage*, 101 Cal. App. 5th at 746.  By declining to overrule *Chavez*, the California Court of Appeal's decision in *Beverage* **declined to change** settled California law. *See id.*  In the absence of a real, significant change, Apple has no basis for its request to dissolve the Injunction.  *See Sharp*, 233 F.3d at 1170 ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."); *see also Agostini*, 521 U.S. at 238-39 (explaining that the Court's vacatur of a final injunction was "tied to" and based upon a "*bona fide*, significant change in subsequent law"); *Bynoe v. Baca*, 966 F.3d 972, 983 (9th Cir. 2000) (holding that a "'clear and authoritative' change in the law" may present a basis for Rule 60(b)(6) relief, but a "narrow change in peripheral law is 'rarely' enough").

Apple also relies on the incorrect assertion that *Beverage* establishes that the Injunction prohibiting its anti-steering provisions is contrary to law or erroneous.  The Court of Appeal did **not** conclude that the anti-steering provisions prohibited by the Injunction were permissible unilateral conduct; rather, that issue had been **conceded** for purposes of the appeal, *Beverage*, 101 Cal. App. 5th at 752, just as Apple represented to the California Supreme Court (Answer at 6-7).  There is thus no conflict between the Injunction and *Beverage*, as Apple itself previously represented (Answer at 11-12), and no basis for Apple's claim that the law has changed "to permit what was previously forbidden" (Mot. at 15).

Apple nonetheless argues that, as a result of *Beverage*, "California courts therefore 'permit what was previously forbidden' by the Injunction".  (Mot. at 16.) As a threshold matter, Apple's reference to "California courts" in this context is misleading; the relevant question here is not whether **any** California court passed judgment on Apple's anti-steering rules, but rather whether there has been an **authoritative** decision from a California court permitting "what was previously forbidden".  (Mot. at 15.)  Here, there has not been such a decision, and Apple's request to vacate the Injunction based on what the *Beverage* Superior Court held has no legal basis.  (Mot. at 10.)  Although the California Court of Appeal is an intermediate appellate court whose decisions on state law this Court is required to consider authoritative (absent indications that the California Supreme Court would differ), the Superior Court does not issue authoritative

binding precedent.  *Royal Crown Ins. Corp. v. Commonwealth of the N. Mariana Islands*, 447 F.
App'x 760, 764 n.1 (9th Cir. 2011).  Thus, for the purpose of determining whether *Beverage*
resulted in a change to controlling California law, only the Court of Appeal's decision matters.
*See Price v. City of Seattle*, 2006 WL 2128758, at *2 (W.D. Wash. July 27, 2006) (rejecting
Rule 60(b) request because "it is well-established that federal courts are not bound to follow a
state trial court's decision").  Indeed, Apple's Motion cites no case in which a federal court has
altered its decision based on a state trial court's decision on an issue of law.  And, as noted
above, the Court of Appeal did **not** decide whether Apple's anti-steering provisions were
permissible conduct under the *Colgate* doctrine, or even whether plaintiffs sufficiently pled
conduct unprotected by the *Colgate* doctrine.  Instead, because the plaintiffs had conceded, for
purposes of the appeal, that the *Colgate* doctrine and *Chavez* applied to Apple's anti-steering
provisions, the Court of Appeal only had to decide whether *Chavez* should be overruled.
*Beverage*, 101 Cal. App. 5th at 752.[4]

The appellate holding in *Beverage* merely reaffirmed the decades-old legal principle,
articulated in *Chavez*, that unilateral conduct declared permissible by *Colgate* could not violate
the UCL.  *Id*. at 753.  Neither this Court nor the Ninth Circuit disagreed with that settled
principle.  *Beverage* itself noted that the Ninth Circuit had cited and applied *Chavez* in deciding
Epic's UCL claim.  *Id*. at 754-55.  Like *Beverage*, the Ninth Circuit recognized that UCL

---

[4] Even if the Superior Court's decisions were relevant, Apple is wrong to claim that the
Superior Court, by sustaining its demurrers, found that its anti-steering provisions are legal under
California law.  (Mot. 10.)  The Superior Court concluded that the *Beverage* plaintiffs had not
pled sufficient facts to show that Apple's anti-steering provisions constituted multi-lateral
conduct outside of *Colgate*'s protection.  It is black letter law that a demurrer does not resolve
the merits of a case, but merely tests whether the allegations in a specific complaint state a cause
of action.  *Griffith v. Dep't of Public Works*, 141 Cal. App. 2d 376, 381 (1956) ("Neither trial nor
appellate courts should be distracted from the main issue, or rather, the only issue involved in a
demurrer hearing, namely, whether the complaint, as it stands, unconnected with extraneous
matters, states a cause of action.").  Further, because both of the Superior Court's decisions were
issued after this Court's Judgment and Injunction, but prior to the Ninth Circuit's decision, the
Superior Court had no occasion to contend with the Ninth Circuit's conclusion (which differed
from this Court's holding) that, for the purposes of Epic's Sherman Act Section 1 claims,
Apple's agreements with developers constituted bilateral contracts rather than unilateral conduct.
*Epic II*, 67 F.4th at 982.

liability cannot be premised on conduct for which antitrust law supplies a "categorical legal bar" or "safe harbor", such as *Colgate*. *Id*. at 754. And, like this Court and the Ninth Circuit, *Beverage* recognized that "an 'unfair' business act or practice need not violate an antitrust law to be actionable under the UCL". *Id*. at 755. That is why when the *Beverage* plaintiffs argued that the decisions in *Epic* were "inconsistent" with *Chavez* and *Beverage*, Apple told the California Supreme Court that those arguments "are wrong". (Answer at 11-12.)

The reason the ultimate outcomes of *Beverage* and this case differ is not because the federal and state courts applied different legal rules—they did not—but because the parties in those cases advanced different claims and defenses, requiring the courts to answer different questions, as Apple argued before the California Supreme Court. (Answer at 12 ("The Ninth Circuit did not disagree with *Chavez*, nor did it address the applicability of the *Colgate* doctrine … and therefore did not resolve the issue presented in this case.").) Apple nevertheless claims now that the California Court of Appeal "declined to follow" this Court and the Ninth Circuit's decisions. (Mot. 9.) But in the cited portion of the opinion, the Court of Appeal explained only that it did "not find these decisions persuasive on the precise issue presented by [the] appeal". *Beverage*, 101 Cal. App. 5th at 756 n.6. That is because neither this Court nor the Ninth Circuit addressed the "precise issue" presented by *Beverage*. *Beverage* assessed the plaintiffs' claims that *Chavez* should be overruled so as to permit UCL claims against alleged conduct that was presumed to be protected by *Colgate*. *Id*. at 752. The Ninth Circuit did not confront that "precise issue" because Apple advanced a different, more expansive argument that there can be no UCL liability for conduct that does not violate the Sherman Act, whether or not *Colgate* applies. (Reply Brief at 10-11 (asserting that because "Apple's conduct is reasonable under the Sherman Act", no UCL claim is permitted).) Both the *Beverage* Court and the Ninth Circuit explained that the broader argument made by Apple in this case was contrary to existing California caselaw, including *Cel-Tech* and *Chavez*. *Epic II*, 67 F.4th at 1001; *Beverage*, 101 Cal. App. 5th at 755.

In addition to relying on the *Beverage* trial court decisions, Apple reaches back to appellate precedent from the 1980s to invite this Court to hold that Apple's anti-steering

1  provisions constitute unilateral conduct protected by *Colgate*. (Mot. at 11.)  Apple even suggests

2  that this Court should re-weigh factual findings to conclude that its conduct was unilateral under

3  precedent now advanced by Apple, while asking the Court to ignore or distinguish the Ninth

4  Circuit's holding that Apple's DPLAs constitute bilateral contracts subject to the Section 1 of the

5  Sherman Act, not unilateral conduct.  (Mot. at 10-11.)  A Rule 60(b) Motion does not authorize

6  this Court to conduct that kind of plenary reconsideration, much less to countermand the Ninth

7  Circuit's decision.  *In re Pac. Far E. Lines*, *Inc.*, 889 F.2d 242, 250 (9th Cir. 1989) (finding

8  Rule 60(b) inappropriate when movant "seeks to have a second bite at the apple").

9        Apple's Motion seeks equitable relief based on an opportunistic misreading of *Beverage*

10  that is both wrong as a matter of law and the opposite of the interpretation Apple advanced when

11  it successfully opposed the *Beverage* plaintiffs' Petition for Review.  This Court should reject

12  Apple's attempt to "play fast and loose with the courts", which is barred by the "doctrine of

13  preclusion of inconsistent positions".  *Whaley*, 520 F.3d at 1002.

14        The *Beverage* portion of Apple's Motion should be denied.

15  **II.    *Murthy* Did Not Change the Controlling Law, and Epic Still Has Standing.**

16        Apple relies on the Supreme Court's decision in *Murthy v. Missouri* to argue that Epic

17  lacks "standing to seek nationwide injunctive relief running to third-party developers".  (Mot.

18  at 11.)  Significantly, Apple no longer asserts that Epic lacks standing to maintain an injunction

19  as to apps owned by Epic's subsidiaries, which Apple says "fall outside the scope of *Murthy*",

20  and Apple only challenges the portion of the Injunction concerning the application of Apple's

21  anti-steering provisions to third parties.  (Mot. at 13 & n.2.)  Apple's Motion also relies on non-

22  standing arguments concerning the scope of the Injunction—such as its proper scope in a non-

23  class action or whether nationwide injunctive relief is permissible (Mot. at 20-24)—rather than

24  focusing on the standing issues addressed in *Murthy*.  Apple's Motion therefore conflates two

25  distinct issues:  Epic's standing to obtain an injunction and the proper scope of that injunction.

26  The Ninth Circuit correctly separated these issues:  it addressed Epic's standing in one portion of

27  its decision, *Epic II*, 67 F.4th at 999-1000, and the scope of the Injunction in another, *id*. at 1003.

28  But *Murthy* only addressed the argument that the plaintiffs lacked standing to obtain *any*

injunction; it did not address the proper scope of an injunction in a case when a party undisputedly has standing to obtain one.  *See* 144 S.Ct. at 1985 (finding it sufficient to "begin—and end—with standing").  *Murthy* therefore does not support Apple's attack on the scope of the Injunction, and it is certainly not the type of "clear and authoritative" precedent that could justify its alteration.  *See Bynoe*, 966 F.3d at 983.[5]

Even putting aside the mismatch between *Murthy* and Apple's arguments, there is no basis for relief based on *Murthy* because *Murthy* did not change the law governing Epic's standing; to the contrary, the Ninth Circuit held that Epic has standing to obtain the full Injunction under the same settled law that *Murthy* applied.  *See Louisiana v. EEOC*, 2024 WL 4016381, at *2-3 (W.D. La. Aug. 13, 2024) (rejecting motion to alter judgment because "*Murthy* does not change the law in this respect", and the court had already rejected the same arguments under prior binding precedent).  The Supreme Court held that, because the plaintiffs' asserted injuries resulted from the actions of third-party decisionmakers, the plaintiffs' injunctive relief claims necessarily required some proof that the social media companies would in the future comply with the government actors' requests to restrict their content.  *See Murthy*, 144 S. Ct. at 1986.  As the Supreme Court explained, the plaintiffs' theory thus posed "two particular challenges".  *Id.*  Neither challenge was novel; both were drawn instead from existing standing law.  *First*, the Supreme Court held, "the plaintiffs must show that the third-party platforms 'will likely react in predictable ways' to the defendants' conduct".  *Id.* (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)).  *Second*, because the plaintiffs requested forward-looking relief, they "must face 'a real and immediate threat of repeated injury.'"  *Id.* (quoting *O'Shea* v. *Littleton*, 414 U.S. 488, 496 (1974)).  Adapting these two settled principles to the specific factual context presented in *Murthy*, the Court held that plaintiffs must show a

---

[5] Apple asserts that this Court must apply "important guidance" from the Supreme Court "even when the Ninth Circuit has previously affirmed".  (Mot. at 13.)  The case Apple cites is inapposite because it did not involve a Rule 60(b) motion for relief from a final judgment, but rather addressed only whether, in later phases of the same case, a district court could reconsider its **preliminary** injunction decision based on intervening Supreme Court caselaw (of course it could).  *S. Oregon Barter Fair v. Jackson Cnty., Oregon*, 372 F.3d 1128, 1136 (9th Cir. 2004).

"substantial risk that, in the near future, at least one" third party would take an action in response to the defendants' actions contributing to the plaintiffs' harm. *Id*. Because plaintiffs did not have such proof, the Supreme Court found that they lacked standing. *Id*. at 1993.

In its own appeal to the Ninth Circuit, Apple relied on the same standing law addressed by *Murthy*, but lost because the facts differed. (*See* Reply Brief at *5.) For example, the *Murthy* Court cited *Clapper v. Amnesty International* for its holding that courts should not "endorse standing theories that require guesswork as to how independent decision makers will exercise their judgment". *Id.* (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 413 (2013)). In its Reply Brief, Apple cited *Clapper* for this exact same proposition. (Reply Brief at *5.) As another example, *Murthy* affirmed the Court's prior holding that a plaintiff relying on the actions of third parties must prove that they "will likely react in predictable ways" to the defendants' challenged conduct, citing its 2019 decision in *Department of Commerce v. New York*, 588 U.S. 752 (2019). *Murthy*, 144 S. Ct. at 1986. Apple's Reply Brief quoted the same language from a 2021 decision, *California v. Texas*, 593 U.S. 659, 661 (2021), which in turn quotes *Department of Commerce*. (Reply Brief at *5.) Likewise, *Murthy* cited law that plaintiffs seeking injunctions must show "a real and immediate threat of repeated injury". *Murthy*, 144 S. Ct. at 1986 (citing *O'Shea*, 414 U.S. at 496). Apple's Reply Brief similarly argued that Epic had to show an "actual or imminent" injury. (Reply Brief at *2 (quoting *Spokeo v. Robins*, 578 U.S. 330, 339 (2016)).)

Apple nevertheless asserts that *Murthy* "clarifies" that plaintiffs face a "tall order" when standing depends on the decision-making of independent third parties. (Mot. at 12.) The Supreme Court did not think so. It said that *Murthy* "did not set a new and elevated standard", as even Apple's Motion acknowledges. (Mot. at 12.) And when the Court explained how it was applying the standard, it required only proof of a "substantial risk that, in the near future, at least one" third party would contribute to harming the plaintiffs as a result of the defendant's conduct. *Murthy*, 144 S. Ct. at 1986. That is not consistent with the "tall order" Apple describes. Indeed, Apple has wrenched the "tall order" quote out of context; what the Supreme Court actually said is that "**On this record**, that is a tall order." *Id*. (emphasis added). That comment is consistent with the dim view the Supreme Court took of the factual findings on record in *Murthy*. Relative

to its prior decisions upholding standing, the Supreme Court noted that "[h]ere, by contrast, the evidence is murky", and some of the lower courts' factual findings "appear to be clearly erroneous". *Id*. at 1988 n.4; *id*. at 1992 n.8.  For example, the plaintiffs in *Murthy* had failed, "by and large, to link their past social-media restrictions to the defendants' communications with the platforms", and thus they could offer no support for the proposition that future social media restrictions would result from defendants' actions.  *Id*. at 1988-89.  The social media platforms also had incentives, independent of the government, to moderate their social media platforms, and they had recently been increasing moderation activities independent of the government, meaning that any future restriction was more likely **not** to result from the defendants.  *Id*. at 1988.  Plus, there was no proof the government was still attempting to pressure the social media platforms: "without proof of an ongoing pressure campaign, it is entirely speculative that the platforms' future moderation decisions will be attributable, even in part, to the defendants".  *Id*. at 1993.

Apple lost its appeal on standing in this case because the facts are different:  the apps owned by Epic's subsidiaries are directly affected by Apple's anti-steering provisions. Moreover, Epic proved that iOS consumers are "likely reacting in predictable ways" to Apple's anti-steering rules, which prevent those consumers from learning about and switching to Epic's cheaper payment platform (12% commission versus Apple's 30%).  *See Epic Games v. Apple*, 67 F.4th at 1000.  Epic proved that, in the absence of Apple's anti-steering provisions, iOS developers and consumers would switch to Epic's cheaper payment platform, increasing Epic's revenues.  *See id*.  And Epic proved that an injunction that prevents Apple from enforcing its anti-steering provisions against third-party developers would redress that injury to Epic.  *See id*. at 1003

Apple attempts to vitiate the Ninth Circuit's holding by arguing it lacks "specific causation findings" that Apple contends *Murthy* required.  (Mot. at 12, 13.)  But *Murthy* does not establish such a requirement.  The Supreme Court noted that "the primary weakness in the record of past restrictions [on social media] is the lack of specific causation findings with respect to any discrete instance of content moderation".  *Murthy*, 144 S.Ct. at 1987.  Thus, the lower courts

could not properly have found that the government defendants would cause plaintiffs harm in the future.  *Id*.  Here, the Ninth Circuit found causation by linking Apple's anti-steering provisions to Epic's injuries.  It found that, because Epic could offer a cheaper payment platform, "[i]f consumers can learn about lower app prices, which are made possible by developers' lower costs, and have the ability to substitute to the platform with those lower prices, **they will do so**— increasing the revenue that the Epic Games Store generates."  *Epic II*, 67 F.4th at 1000 (emphasis added).  Apple's contention that "the record lacks specific findings or evidence that ending Apple's anti-steering rules would cause developers of cross-platform games to steer users *to the Epic Games Store specifically*" is therefore wrong.  (Mot. at 14.)  Apple's Motion does not explain exactly why it contends that the Ninth Circuit's findings were insufficiently specific or clear, complaining instead that the Ninth Circuit used just a couple of sentences to explain the commonsense proposition that informed consumers will switch to lower priced products—rather than the several pages that the *Murthy* Court took to sift through the complex and muddled record at issue in that case.  (Mot. at 13.)  But unlike in *Murthy*, standing was merely one of multiple issues before the Ninth Circuit, and nothing in *Murthy* dictates that courts must produce some minimum quota of prose on this issue.

The extreme specificity that Apple seeks would bring private antitrust enforcement to a standstill.  Under Apple's argument, in consumer-focused antitrust cases, plaintiffs would apparently need proof that, but for a defendant's anticompetitive conduct, specific customers would switch specific transactions to a specific competing product or service.  No precedent requires such an extreme result, including *Murthy*:  it requires only a "substantial risk" that "at least one" third party would act in a "predictable" way, thus causing the plaintiff harm.  144 S.Ct. at 1985-86.  The Ninth Circuit's conclusion that developers will prefer the lower costs charged by Epic and that consumers will prefer the resulting lower prices easily clears this standard.

Apple goes so far as to question the legitimacy of the Ninth Circuit's decision-making process, alleging that the Injunction should be vacated because *Murthy* "foreclosed" the Ninth Circuit's ability to reach conclusions about standing that are different from those advanced by

either party.  (Mot. at 14.)  That would be a notable and broadly recognized result of *Murthy* if it were accurate.  It is not.  In the portion of the opinion cited by Apple, *Murthy* merely referenced the old adage that courts do not have to develop factual theories not advanced by the parties because "[j]udges are not like pigs, hunting for truffles buried" in the record.  *Murthy*, 144 S.Ct. at 1991 n.7.

Apple further asserts that this Court should reweigh the evidence at trial and determine that it "contradict[s]" the Ninth Circuit's holdings.  (Mot. at 14.)  There is simply no basis in law for that demand.  As Circuit Judge Smith said when Apple raised a similar challenge following the Ninth Circuit's decision, Apple "challenge[s] an imagined panel opinion on an imagined record", and "the record is filled with support" for Epic's standing.  *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 786, 789 (9th Cir. 2023) (memorandum) (Smith, J., concurring).  Apple's invitation for this Court to countermand the Ninth Circuit's decisions should be rejected out of hand.  *See United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) ("When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its decree, is considered as finally settled." (citation omitted)).  And, by denying Apple's requests to grant *certiorari* or hold its decision in this case while the Supreme Court reviewed *Murthy*, that Court rejected Apple's arguments that *Murthy* controlled the outcome of this case.  (*See supra* at 9.)

Apple's request to narrow the injunction to Epic and its affiliates is thus totally baseless.  Apple asserts that narrowing the Injunction "would eliminate the *Murthy* problem".  (Mot. at 21.)  But there is no "*Murthy* problem" in need of elimination because Epic's standing is entirely consistent with *Murthy*, as shown above.  And the Ninth Circuit already concluded that "the scope [of the injunction] is tied to Epic's injuries".  *Epic II*, 67 F.4th at 1003.  Because Apple's anti-steering provisions "prevent[] other apps' users from becoming would-be Epic Games Store consumers", "an injunction limited to Epic's subsidiaries would fail to address the full harm caused by the anti-steering provision".  *Id*.  Epic proved its injuries and that the full Injunction is necessary to remedy them.  *Murthy* provides no basis to revisit that determination.

### III.    All Equitable Considerations Weigh Against Apple's Motion.

Without a change in law, none of Apple's arguments about why it is inequitable to enforce the Injunction makes sense.  Regardless, the equitable considerations advanced by Apple do not support its request.  To the contrary, given the importance of the Injunction and the burdens Epic has incurred in obtaining it, defending it on appeal and proving Apple's ongoing non-compliance with it, Epic has reliance interests that weigh strongly against Apple's Motion. *See Planned Parenthood Fed. of Am. v. Ctr. for Med. Progress*, 704 F. Supp. 3d 1027, 1037-38 (N.D. Cal. 2023).  Likewise, Apple's deliberate attempts to avoid compliance with the Injunction also preclude the relief Apple seeks under the doctrine of unclean hands.

Apple first argues that *Beverage* produces a "direct" conflict between the federal and state courts.  (Mot. at 16.)  That is neither true nor what Apple told the California Supreme Court.  As Apple noted there, the result in this case was fully consistent with *Beverage* and *Chavez*.  (Answer at 11-12.)  Apple also says principles of comity and federalism support narrowing the Injunction, but there is no conflict between the federal and state courts and thus no risk to comity and federalism.  Apple accuses the Injunction of somehow preventing Californians from addressing the scope of the UCL or Apple's practices "through the processes provided by the State's constitution".  (Mot. at 19.)  Not so.  The Injunction did not prevent the *Beverage* courts from considering that specific case on its own merits, and it will not prevent California courts in the future from reassessing Apple's conduct under new complaints—again, as Apple itself told the California Supreme Court.  (Answer at 12.)

Apple also says that "[t]he Injunction thus renders the *Beverage* decisions largely ineffective" because, under the Injunction, Apple cannot engage in conduct that "the *Beverage* decisions held was lawful under California law".  (Mot. at 16.)  But, again, *Beverage* did not address the lawfulness of Apple's anti-steering provisions under the UCL; as Apple told the California Supreme Court, the plaintiffs "conceded that the *Chavez* decision would bar their 'unfair' claim under the UCL".  (Answer at 7.)  By contrast, the decisions Apple cites granting Rule 60(b) relief were based on genuine and material conflicts between federal and state decisions, not illusory ones.  In the *Venoco, LLC v. Plains Pipeline, L.P.* case featured by Apple,

for example, maintaining a federal court judgment would have entailed "[r]ejecting the California Court of Appeal's interpretation of its own state law doctrine". 2022 WL 1090974, at *3 (9th Cir. Apr. 12, 2022). The federal courts in this case did not reject California appellate precedent, but applied it.

Apple argues that *Beverage* and *Murthy* somehow warrants narrowing the Injunction, when combined with complaints about the scope of the Injunction not related to any issue decided in *Beverage* or *Murthy*. (Mot. at 18-24.) Apple had its day in court on these arguments thrice over, and lost them all. The Court does not need to reconsider them.

Finally, Apple's unclean hands weigh against vacating or modifying the Injunction. It is inequitable and improper for a party to seek vacatur or modification of an injunction the party is brazenly failing to honor. *See Motorola Credit Corp.*, 561 F.3d 128-29. Indeed, Apple admits that the purpose of its Motion is to "obviate the ongoing Injunction enforcement proceedings" or at least to focus that inquiry solely on Apple's conduct toward Epic. (Mot. at 23-24.) The Motion is thus another step in Apple's campaign of non-compliance, and Apple's roadmap is clear. First, declare "compliance" with the Injunction, while deliberately flouting its letter and spirit. Then, after the Court orders a production of documents on that topic, engage in "bad behavior" designed to delay that production and push off the day of reckoning. (Discovery Order, ECF No. 1017, at 1.) Then, when those efforts are approaching their useful end, make a disingenuous request for equitable relief from that Injunction, contradicting Apple's own statements to the California Supreme Court in the process. *See Whaley*, 520 F.3d at 1002 (calling such inconsistent positions inequitable "'chutzpah' in the first degree"). Apple should not be rewarded for its conduct.

## **CONCLUSION**

The Motion should be denied.

Dated:  November 7, 2024

Respectfully submitted,

By:   s/ Gary A. Bornstein

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle ( SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*