# Exhibit C

No. 23-344

# In the Supreme Court of the United States

APPLE INC., PETITIONER

*v.*

EPIC GAMES, INC., RESPONDENT

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE U.S. COURT OF APPEALS FOR THE NINTH CIRCUIT*

**REPLY BRIEF FOR PETITIONER**

THEODORE J. BOUTROUS, JR.
DANIEL G. SWANSON
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071

CYNTHIA RICHMAN
ZACHARY B. COPELAND
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, DC 20036

JULIAN W. KLEINBRODT
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105

MARK A. PERRY
  *Counsel of Record*
JOSHUA M. WESNESKI
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW
Washington, DC 20036
(202) 682-7000
mark.perry@weil.com

MARK I. PINKERT
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue
Miami, FL 33131

*Counsel for Petitioner*

**TABLE OF CONTENTS**

I. The Decision Below Conflicts With This Court's Decisions And Settled Constitutional Principles .............................................................. 3

II. The Overbreadth Of The Injunction Was Fully Preserved And Is Squarely Presented Here ........ 5

    A. Apple Repeatedly Objected To The Scope Of The Injunction ............................................. 6

    B. The Question Presented Implicates Numerous Constitutional And Equitable Limitations ....................................................... 7

III. The Proliferation Of Universal Injunctions Is A Serious Issue In Need Of Clarity .................... 10

CONCLUSION............................................................. 12

**TABLE OF AUTHORITIES**

**Cases**                                                                                         **Page(s)**

*Acheson Hotels, LLC* v. *Laufer*,
  No. 22-429 (U.S. Dec. 5, 2023) .............................. 8

*Brown* v. *Trs. of Boston Univ.*,
  891 F.2d 337 (1st Cir. 1989) ............................... 10

*Califano* v. *Yamasaki*,
  442 U.S. 682 (1979) ........................... 1, 4, 5, 7, 8, 9

*Cameron* v. *Apple Inc.*,
  No. 19-CV-3074 (N.D. Cal.) .................................. 9

*City of Chicago* v. *Barr*,
  961 F.3d 882 (7th Cir. 2020) ............................... 10

*Georgia* v. *President of the U.S.*,
  46 F.4th 1283 (11th Cir. 2022) ............................ 10

*Gill* v. *Whitford*,
  138 S. Ct. 1916 (2018) ...................................... 4

*Griffin* v. *HM Fla.-ORL, LLC*,
  No. 23A366 (U.S. Nov. 16, 2023) .......................... 10

*Grupo Mexicano de Desarrollo, S.A.* v.
  *Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ......................................... 8

*Hansberry* v. *Lee*,
  311 U.S. 32 (1940) .......................................... 9

*Hollingsworth* v. *Perry*,
  570 U.S. 693 (2013) ....................................... 8, 11

*Lewis* v. *Casey*,
  518 U.S. 343 (1996) ......................................... 4

*Louisiana* v. *Becerra*,
    20 F.4th 260 (5th Cir. 2021) ................................ 10

*Madsen* v. *Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ................................................ 5

*Missouri* v. *Jenkins*,
    515 U.S. 70 (1995) .................................................. 8

*Murthy* v. *Missouri*,
    No. 23-411 (U.S.) ...................... 1, 2, 5, 8, 10, 11, 12

*Ohio* v. *Am. Express Co.*,
    138 S. Ct. 2274 (2018) ............................................ 9

*Phillips Petroleum Co.* v. *Shutts*,
    472 U.S. 797 (1985) ................................................ 8

*Rhode Island* v. *Massachusetts*,
    37 U.S. 657 (1838) .................................................. 5

*Rodgers* v. *Bryant*,
    942 F.3d 451 (8th Cir. 2019) ................................ 11

*Roe* v. *Dep't of Def.*,
    947 F.3d 207 (4th Cir. 2020) ................................ 10

*Salazar* v. *Buono*,
    559 U.S. 700 (2010) ................................................ 8

*Taylor* v. *Sturgell*,
    553 U.S. 880 (2008) ................................................ 9

*Trump* v. *Hawaii*,
    138 S. Ct. 2392 (2018) .......................................... 10

*United States* v. *Texas*,
    143 S. Ct. 1964 (2023) .......................................... 10

*Wal-Mart Stores, Inc.* v. *Dukes*,
    564 U.S. 338 (2011) ................................................ 9

*Warth* v. *Seldin*,
   422 U.S. 490 (1975) ................................................. 8

*L.W. ex rel. Williams* v. *Skrmetti*,
   73 F.4th 408 (6th Cir. 2023) ................................. 10

# In the Supreme Court of the United States

No. 23-344

APPLE INC., PETITIONER

*v.*

EPIC GAMES, INC., RESPONDENT

*ON PETITION FOR A WRIT OF CERTIORARI TO THE U.S. COURT OF APPEALS FOR THE NINTH CIRCUIT*

**REPLY BRIEF FOR PETITIONER**

In the absence of class certification, a federal court cannot enter an injunction that extends to nonparties without finding that such relief is necessary to redress any injury to the individual plaintiff. *See*, *e.g.*, *Califano* v. *Yamasaki*, 442 U.S. 682 (1979). Both courts below disregarded this constitutional limitation on the equitable powers of the Judiciary. Pet. i, 3, 8–9, 14–18.

After Apple's petition was filed, this Court granted certiorari in a case that presents the identical issue. *Murthy* v. *Missouri*, No. 23-411 (U.S.). In that case, in which "the district court declined to certify a class," the United States challenges an injunction that "sweeps far beyond what is necessary to address any cognizable harm to [the named plaintiffs]." Application, *Murthy*, No. 23-411 (U.S. Sept. 14, 2023), at 5 (citing *Califano*). As the government explains, "[b]ecause a federal court's

(1)

'constitutionally prescribed role is to vindicate the individual rights of the people appearing before it,' '[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury.'" Brief for Petitioners, *Murthy*, No. 23-411 (U.S. Dec. 19, 2023), at 46 (quoting *Gill* v. *Whitford*, 138 S. Ct. 1916, 1933-34 (2018)).

*Murthy* establishes that the question presented by this petition warrants review; accordingly, this petition should be granted or, in the alternative, held pending the Court's disposition of the same issue in *Murthy*. If this Court vacates the injunction in *Murthy* on overbreadth grounds, then the injunction here would fail. Apple should not be required to comply with a sweeping, overbroad injunction while *Murthy* remains pending.

Epic does not dispute that a hold pending *Murthy* is warranted. Indeed, Epic does not address *Murthy* at all—even though the then-pending application in *Murthy* was addressed in Apple's petition (at 24) and two *amicus* briefs (ICLE Br. 5; CJAC Br. 4), and certiorari was granted weeks before Epic's response brief was filed. The arguments that Epic does make in its opposition do not warrant denial of the petition.

## ARGUMENT

As explained in Apple's petition and five supporting *amicus* briefs, this case presents a pure legal issue regarding the constitutional constraints on injunctive relief in federal court. Apple presented and preserved the constitutional challenge at every stage of the litigation, yet the courts below entered and approved an injunction that is blatantly unconstitutional. The decisions below exacerbate deep conflicts among the lower courts on an issue the Court has already agreed to review in *Murthy*.

3

**I. The Decision Below Conflicts With This Court's Decisions And Settled Constitutional Principles**

The permanent injunction in this case is unconstitutionally overbroad because it extends to potentially millions of nonparties without a finding by any court that such universal relief is necessary to redress any alleged injury to Epic—the sole plaintiff in the litigation. The injunction prohibits Apple from enforcing its "anti-steering" rule against *all* developers of the several million iOS apps on the App Store's U.S. storefront. Epic is no longer such a developer as the result of its intentional misconduct in connection with this litigation. Nevertheless, the Ninth Circuit affirmed the scope of the injunction—on a *different* basis than that proffered by the district court—because the anti-steering rule could (1) increase costs to one Epic subsidiary that is an iOS app developer and (2) prevent other apps' users from becoming would-be customers of Epic's competing app store, the Epic Games Store. Pet. App. 82a.

The theory of harm articulated by the Ninth Circuit encompasses approximately 100 developers. Pet. 9; D.C. Trial Tr. 1220:18–20. Yet there are 30 million other registered developers, and the injunction runs to all of them who have apps on the App Store's U.S. storefront. Apple is not "reach[ing] back to a sentence in the trial record" (BIO 10)—it is highlighting the *legal* insufficiency of post-hoc attorney argument in setting the universal scope of injunctive relief. Neither the district court nor the Ninth Circuit ever made any finding that an injunction as to all those other developers is necessary to redress Epic's alleged injury. *See* Brief for Petitioners, *Murthy*, No. 23-411 (U.S. Dec. 19, 2023), at 47 ("Whether a defendant's conduct also might have harmed nonparties has no bearing on whether more

4

limited relief would adequately redress *the plaintiffs'* cognizable injuries").

Instead, Epic offers up the latest candidate in a long line of post-hoc efforts to justify the injunction. Epic first argued in post-judgment briefing that "[o]nly a market-wide injunction will lead to increased competition." D.C. Dkt. 824, at 22. On appeal, it changed tactics, contending that broad relief was needed to allow developers with apps on the Epic Games Store to "link[] to Epic's payment solution from within their apps." C.A. Dkt. 163, at 110. And now, Epic contends that a broad injunction is necessary because "Epic actively seeks to draw *new* app clients." BIO 11 (emphasis added).

What all of Epic's shifting justifications have in common is that they are based solely on attorney argument, with no reference to any *findings* (or even evidence) in the courts below. This tactic exemplifies the legal error in the injunction—a party must *prove* the need for injunctive relief that extends beyond the named plaintiff, and the trier of fact must *find* that such injunctive relief is in fact necessary before entering the injunction. *See Lewis* v. *Casey*, 518 U.S. 343, 359–60 (1996). As in *Murthy*, the issue is that "the court did not find—and on this record could not have found—that this injunction's breadth was needed to provide full relief to [the plaintiff]." Brief for Petitioners, *Murthy*, No. 23-411 (U.S. Dec. 19, 2023), at 47.

Without the requisite factual finding justifying its scope, the injunction runs headlong into the well-established rule that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702; *see also id.* at 700–01 (describing this as the "usual

5

rule"). Notwithstanding Epic's efforts to minimize *Califano* (BIO 12–13), this principle has been repeated and reaffirmed in numerous decisions of this Court, some of which go entirely unmentioned by Epic. *See*, *e.g.*, *Gill* v. *Whitford*, 138 S. Ct. 1916, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it"); *Lewis*, 518 U.S. at 360 (1996) ("[G]ranting a remedy beyond what [is] necessary to provide relief to [the plaintiff is] improper"); *see also Rhode Island* v. *Massachusetts*, 37 U.S. 657, 718 (1838) (Article III jurisdiction extends only to the power to "render a judgment or decree upon the rights of the litigant parties").

Apple is thus not relying on "three words in one sentence" from *Califano*. BIO 12. In reality, the decision below runs counter to an unbroken body of authorities from this Court. *See Madsen* v. *Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (describing *Califano* as the "general rule"). These include the same authorities on which the Solicitor General relies in *Murthy*. Brief for Petitioners, *Murthy*, No. 23-411 (U.S. Dec. 19, 2023), at 46–47.

## II. The Overbreadth Of The Injunction Was Fully Preserved And Is Squarely Presented Here

The overbreadth issue clearly warrants this Court's review, as the grant of certiorari in *Murthy* establishes. Perhaps for this reason, Epic devotes most of its energy to arguing that Apple failed to adequately preserve this issue. BIO 5–12. In the same breath, however, it admits that Apple *did* raise this issue below, attempting to dismiss the argument as a "throwaway." BIO 5, 8–9. There was nothing "throwaway" about this issue: Apple vigorously challenged the injunction at every possible

6

step of the proceedings, making precisely the arguments presented in its petition.

### A. Apple Repeatedly Objected To The Scope Of The Injunction

Although Epic never even *asked* for an injunction of the anti-steering rule—and thus never sought to prove its entitlement to this relief at trial—Apple objected from the outset to the entry of *any* form of injunctive relief extending beyond Epic as the sole plaintiff. After the district court granted such an injunction *sua sponte*, Apple reiterated at every opportunity that this relief was unconstitutional and inequitable.

In a joint statement to the district court laying out the appropriate legal framework, Apple urged that where injunctive relief "can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown," and "may be 'no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." D.C. Dkt. No. 276, at 147 (quoting *Bresgal* v. *Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987), and *Madsen*, 512 U.S. at 765). Apple pressed this issue again in pre- and post-trial briefing. D.C. Dkt. No. 410, at 286–91 (arguing that Epic's proposed injunction was overbroad, as it extended to all developers); D.C. Dkt. No. 779-1, at 340–45 (same). And it did so in its post-judgment motion for a stay of the district court's *sua sponte* injunction. D.C. Dkt. No. 821, at 17 ("[T]he injunction is overbroad in that it extends beyond Epic and affects all developers in the United States"); D.C. Dkt. No. 826, at 11–13 (same).

On appeal, and as Epic concedes (BIO 8–9), Apple raised and developed in its opening brief the identical overbreadth argument presented in the petition (C.A. Dkt. 93, at 109–12). The argument was made late in

7

Apple's brief because it was part of Apple's cross-appeal, and was thus addressed only after responding to Epic's appeal. In its reply brief (which Epic ignores), Apple argued again that there was no finding or evidence to support the injunction's breadth, invoking the principle that equitable relief must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the Court." C.A. Dkt. No. 183, at 6, 25–26 (citations omitted); *see also id.* at 24 (pointing out Epic had not put on a "shred of evidence" about injury to nonparties).

Contrary to Epic's strawman arguments, Apple's challenge is not based on *geographical* overbreadth. BIO 3, 12, 17. The issue, as Apple has consistently maintained, is that the injunction reaches nonparties (wherever they may be found), without a specific finding of the need for such relief and without a certified class. Epic's attempt to conflate the terminology ("universal" vs. "nationwide") is misdirection: Apple used the terms interchangeably to denote the wall-to-wall inclusion of nonparties.

Finally, Epic seeks solace in the fact that the Ninth Circuit gave short shrift to Apple's arguments. BIO 8. But this is precisely why the Court *should* take up this case. Despite Apple's vigorous (and well-founded) arguments, the court casually affirmed a sweeping injunction, affecting millions of unrepresented nonparties, with no findings regarding the need for such far-reaching relief. This cavalier approach to universal injunctions requires more scrutiny by this Court, not less.

### B. The Question Presented Implicates Numerous Constitutional And Equitable Limitations

Epic attempts to divide and conquer the intersecting constitutional and equitable concerns undergirding the

8

*Califano* rule, dismissing them as unrelated and inapposite. BIO 6–7, 12. But these are not separate "constitutional claims," as Epic insists. BIO 1, 12. Rather, Apple has identified the various restraints on the district court's power to issue injunctive relief, all of which inform and give rise to the *Califano* rule. Apple has pressed all of these points throughout the litigation, and all are germane to the question presented.

*First*, a federal court has Article III authority to issue injunctive relief only insofar as that authority is rooted in equitable tradition. *See Grupo Mexicano de Desarrollo, S.A.* v. *Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). The equitable power of a court to issue universal injunctive relief—or lack thereof—is thus directly related to its constitutional power to do so. *See Missouri* v. *Jenkins*, 515 U.S. 70, 124 (1995) (Thomas, J., concurring); *see also* Brief for Petitioners, *Murthy*, No. 23-411 (U.S. Dec. 19, 2023), at 46 ("Principles of equity reinforce [the] constitutional limit" on injunctive relief).

*Second*, injunctive relief can go only as far as the plaintiff's individual standing: "To have standing, a litigant must seek relief for an injury that affects him in a 'personal and individual way.'" *Hollingsworth* v. *Perry*, 570 U.S. 693, 705 (2013) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)); *see also Salazar* v. *Buono*, 559 U.S. 700, 734 (2010) (Scalia, J., concurring); *Warth* v. *Seldin*, 422 U.S. 490, 499 (1975). Where—as here—a plaintiff lacks standing to enforce an injunction as to affected nonparties, the injunction is overbroad. To hold otherwise would allow a plaintiff to act as a private attorney general, deciding whether and how to enforce the injunction on behalf of nonparties. *Acheson Hotels, LLC* v. *Laufer*, No. 22-429 (U.S. Dec. 5,

9

2023) (Thomas, J., concurring in the judgment), slip op. at 8–9.

*Third*, an overbroad injunction violates the due process rights of both Apple (*Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 805 (1985)) and those unrepresented nonparties affected by the injunction (*Taylor* v. *Sturgell*, 553 U.S. 880, 892 (2008); *Hansberry* v. *Lee*, 311 U.S. 32, 40 (1940)). *See* Pet. 12–13. Epic does not address Apple's due process rights at all, and its response as to nonparties is only that the injunction does not "bind" developers (even though Apple is bound as to all developers). BIO 15. But Epic tellingly ignores the developer class action (*Cameron* v. *Apple Inc.*, No. 19-CV-3074 (N.D. Cal.)), where a certified class of U.S. developers negotiated a settlement with Apple but did *not* negotiate for the relief Epic obtained here. Contrary to Epic's bare contention that Apple has not "identif[ied] any serious reason any developer would want Apple's anti-steering rules enforced" (BIO 15–16), an organization representing small app developers has explained that Apple's anti-steering rules are procompetitive and benefit small businesses. *See* ACT Br. 18–26. This Court came to the same conclusion about similar anti-steering rules in *Ohio* v. *Am. Express Co.*, 138 S. Ct. 2274, 2289 (2018), which Epic studiously ignores.

Rule 23 is a limited "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano*, 442 U.S. at 700–01. Certified class actions avoid the constitutional problems of binding nonparties to a judgment by imposing numerous safeguards. *See Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 363 (2011). The injunction here creates a *new*, unsupported exception to this rule, to the detriment of Apple and potentially millions of nonparties. Such an

10

exception is particularly inappropriate where, here, Epic has its own interests, divergent from those of other developers. Pet. App. 126a (Epic "rush[ed] to court with its own plan to protect its self-avowed interests"); *id.* (Epic sought a "special deal from Apple that would provide plaintiff with unique, preferable terms").

### III. The Proliferation Of Universal Injunctions Is A Serious Issue In Need Of Clarity

Epic's argument that the injunction raises no important federal question cannot be reconciled with this Court's grant of certiorari in *Murthy*. Even before *Murthy*, individual Justices had written extensively on this issue, raising concerns about courts' "assert[ing] the authority to issue decrees that purport to define the rights and duties of sometimes millions of people who are not parties before them." *United States* v. *Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring); *see also Trump* v. *Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring); *Griffin* v. *HM Fla.-ORL, LLC*, No. 23A366 (U.S. Nov. 16, 2023) (statement of Kavanaugh, J.).

Underlying the Court's grant in *Murthy* is growing confusion about the limits of injunctive relief, not only in district courts but also in the courts of appeals. *Compare Brown* v. *Trs. of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989) ("An injunction should be narrowly tailored to give only the relief to which plaintiffs are entitled"); *Louisiana* v. *Becerra*, 20 F.4th 260, 263–64 (5th Cir. 2021) (per curiam); *L.W. ex rel. Williams* v. *Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023); *Georgia* v. *President of the U.S.*, 46 F.4th 1283, 1306–07 (11th Cir. 2022), *with Roe* v. *Dep't of Def.*, 947 F.3d 207, 232 (4th Cir. 2020) (courts have equitable power to issue injunction extending to "similarly situated" nonparties); *City*

11

*of Chicago* v. *Barr*, 961 F.3d 882, 916 (7th Cir. 2020) (same); *Rodgers* v. *Bryant*, 942 F.3d 451, 459 (8th Cir. 2019) (affirming universal injunction where the challenged law "impact[ed] the entire state"). Simultaneously, there is an expanding body of literature addressing this problem. Pet. 23–25. Epic ignores all of this.

Instead, echoing Judge Smith's concurrence to the order staying the mandate (Pet. App. 427a), Epic argues that each individual developer should not be required to seek relief against Apple (BIO 15). But in the absence of class certification, that is *precisely* what the Constitution requires—Article III and due process limitations on the scope of available relief do not yield to considerations of administrative convenience. *See Hollingsworth*, 570 U.S. at 715. The ruling below contravenes that fundamental rule.

The question presented is clearly a significant issue, with far-reaching consequences. That is why numerous *amici* have appeared in support of Apple's petition, raising, among other things, the lower courts' "breathtakingly broad 'nonclass' class universal injunction" and "sweeping remedy" (CJAC Br. 3–4; ICLE Br. 3), the unchecked power the decision below gives to federal judges (WLF Br. 6), and the harm the decision threatens to small and mid-sized app developers (ACT Br. 5; NetChoice Br. 11–12). Epic does not even acknowledge these *amici* or the serious issues they raise.

Certiorari should be granted to resolve the important and recurring issue presented in this petition. In the alternative, the petition should be held pending *Murthy*—which presents the same question. The Court may also wish to invite the views of the United States.

12

**CONCLUSION**

The petition for a writ of certiorari should be granted or, in the alternative, held pending *Murthy*.

Respectfully submitted.

THEODORE J. BOUTROUS, JR.
DANIEL G. SWANSON
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90071

CYNTHIA RICHMAN
ZACHARY B. COPELAND
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, DC 20036

JULIAN W. KLEINBRODT
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105

MARK A. PERRY
  *Counsel of Record*
JOSHUA M. WESNESKI
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW
Washington, DC 20036
(202) 682-7000
mark.perry@weil.com

MARK I. PINKERT
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue
Miami, FL 33131

DECEMBER 2023