UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> *Plaintiff, Counter-defendant,* <br><br> v. <br><br> APPLE INC., <br><br> *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH <br><br><br> **JOINT STATUS REPORT** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

    Pursuant to Your Honor's Discovery Standing Order, the Parties in the above-captioned action respectfully submit this joint statement related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE <br> & MOORE LLP | WEIL, GOTSHAL & MANGES LLP |
| By: */s/ Yonatan Even* <br>     Yonatan Even <br>     *Counsel for Epic Games, Inc.* | By: */s/ Mark A. Perry* <br>     Mark A. Perry <br>     *Counsel for Apple Inc.* |

**Epic's Position:** Judge Gonzalez Rogers has tentatively set the evidentiary hearings on Epic's Motion to Enforce Injunction to resume on January 13, 2025, subject to developments at the December 16 status conference before the Court. While achievable, this schedule would have been significantly more so had Apple complied with the Court's Orders instructing it to substantially produce "all documents relative to the decision-making process leading to the link entitlement program and associated commission rates" by the September 30 deadline. (Dkt. 974; Dkt. 1008.) Apple, however, continues to delay, trying to force Epic to choose between obtaining the discovery to which it is entitled and which the Court ordered, or resuming proceedings to enforce the Court's injunction.

*Document Production*: Apple was ordered to substantially complete document production by September 30, 2024. Since that date, it has produced approximately 17,000 documents, with the latest production (of 6,763 documents) made on October 27.[1]

*Privilege*: Epic has raised serious concerns regarding Apple's claims of privilege with the Court, and that dispute has been fully submitted. (Dkt. 1039.)

*Clawbacks.* Over the past three weeks, Apple clawed back 437 documents on the basis of privilege claims. Four of these documents are versions of a document that Apple clawed back after Epic cited them in the Parties' October 27, 2024 joint statement of discovery disputes as an example of Apple's overbroad approach to privilege. (APL-EG_10699646; *see* Dkt. 1039.) 236 documents clawed back prior to today were clawed back on the basis of new privilege claims. Many of these privilege claims are facially improper. For example, Apple clawed back 20 videos apparently depicting the in-app flow for linked out purchases. The videos contain no commentary or any form of legal advice; they merely show the various steps in the flow and reflect drafts of the various warning screens Apple considered compelling developers to present to users so as to dissuade them from using linked out purchases—drafts that Apple has withheld wholesale, as Epic noted in the Discovery Letter Brief pending before the Court. (Dkt. 1039.) The 197 remaining documents (which Apple claims are "near or exact duplicates" of other clawed back documents (Nov. 14, 2024 Ltr. from J. Wesneski to Y. Even)) were clawed back earlier today.

Apple misleadingly quotes the Protective Order in this case to accuse Epic of mishandling the clawed back documents. Not so. Apple omits from its quote from the Protective Order the explicit language allowing Epic to record not only the "date, author, addresses, and topic" of clawed back documents, but also any "other information as is reasonably necessary to identify [the document] and describe its nature to the Court". Dkt. 274 § 12.4. And as for Apple's complaints that Epic has not timely destroyed the clawed back documents—making the above record for hundreds of documents takes time, but Epic has now destroyed all documents clawed back prior to today and has certified as much to Apple.

Epic will meet and confer with Apple about these clawbacks in the coming days and will promptly escalate to the Court should the Parties reach an impasse.

---

[1] Apple has stated that some unidentified portion of these new productions are reproductions of previously produced documents.

*Responsiveness*. In its portion of the September 26 Joint Status Report, Apple for the first time made the claim that it "estimates it will have reviewed at least 1.3 million documents by the time this document review and production is complete, and the overwhelming majority of those documents will not be responsive". (Dkt. 1016 at 5.) By September 30, Apple updated that it "has reviewed nearly 1.5 million documents and has produced over 89,000 documents" and claimed that "Epic's broad search terms resulted in a very low responsiveness rate for documents reviewed". (Sept. 30, 2024 Ltr. from J. Lo to G. Bornstein.) These eleventh-hour claims of low yield—relative to the 1.5 million documents Apple had identified as potentially responsive—raise serious concerns as to the propriety of Apple's responsiveness review. To assess these concerns, Epic asked Apple to provide hit counts and responsiveness rates for each search string run by Apple. Apple provided the hit count for each search string but refused to provide responsiveness rates, telling Epic to "determine for itself which search terms are present in any given produced document". (Oct. 16, 2024 Ltr. from J. Lo to Y. Even.) Epic did so, and the results only exacerbated its concerns—Apple produced 5% or fewer of the documents hit by several search strings. Epic detailed its concerns to Apple by letter on November 5, 2024, and invited Apple to meet and confer on this issue.[2] Apple responded on November 11, 2024, but its response does nothing to alleviate Epic's concerns. Specifically:

- Apple claims that it previously warned Epic that the search terms were overbroad. But Apple's prior warnings of overbreadth were limited to only two search terms that were in dispute. (Dkt. 1003 at 4) Moreover, Apple did not seek to modify these search terms (so as to better target responsive documents), but rather, Apple sought to *eliminate* those search terms on the basis of its erroneous assertion that the topics the strings targeted were irrelevant. In any event, Apple did not suggest at any point prior to September 26 that the majority of Epic's search terms were targeted almost entirely at nonresponsive documents.

- Apple argues that Epic's yield calculations—showing Apple produced a minute portion of the documents that hit on most search terms—understate the actual yield of the search strings because they do not account for documents Apple determined were responsive but privileged, and therefore withheld from

---

[2] Apple accuses *Epic* of delay, suggesting Epic's November 5 letter reflected a change in Epic's position. That is demonstrably not true. Epic raised its concerns about Apple's responsiveness on October 1—as soon as it learned that Apple was producing a miniscule portion of the documents it had identified as potentially responsive. (Oct. 1, 2024 Ltr. from Y. Even to M. Perry.) Epic *again* raised responsiveness concerns and asked for yield rates during a meet-and-confer on October 9. Epic did not (and could not) know if Apple's low production yields were due to responsiveness, privilege, or some combination thereof until October 11, when Epic finally received the bulk (though still not all) of Apple's privilege log. On October 16, Apple provided Epic with hit reports but declined to provide yield rates, telling Epic that Epic should run the search strings on the produced documents to determine yields. (Oct. 16, 2024 Ltr. from J. Lo to Y. Even.) Epic did so, noting this process would only provide a partial view into responsiveness because Epic had no ability to determine yields that account for documents Apple withheld as privileged. (Dkt. 1042 at 3.) Epic then followed up with a letter to Apple on November 5 providing the full results of its analysis, to which Apple responded on November 11, somehow accusing Epic for having yield numbers that do not account for documents withheld on the basis of privilege claims—a problem Apple itself created and that Epic had identified and warned about weeks earlier. (Nov. 11, 2024 Ltr. from J. Lo to Y. Even.) Epic reached out to Apple that very night asking to meet and confer on November 12 or 13; Apple proposed to meet on November 13, which the Parties have now done. As the Court previously found, it is Apple–not Epic–who has the incentive to delay this process and that has been actively delaying it for months.

Case 4:20-cv-05640-YGR    Document 1051    Filed 11/14/24    Page 4 of 8

production. That is a problem of Apple's own making: as Epic noted in the October 31, 2024 Status Report (Dkt. 1042) and in its letter to Apple, Epic asked Apple to provide yield calculations that would account for privileged documents, but Apple declined to do so. Epic itself cannot calculate such yields because it does not have access to the documents Apple withheld as privileged. And, of course, Apple's suggestion that core search terms yielded very few produced documents because Apple withheld as privileged large volumes of responsive documents hitting those search terms is hardly reassuring, given Epic's already-briefed concern about Apple's overbroad approach to privilege.

- Epic asked Apple to provide information about the documents that hit on core search terms but that Apple determined were not responsive. In response, Apple references types of documents or phrases that *could* be the source of false positives, but it provides no information about the prevalence of such documents. Its examples therefore do nothing to explain the *actual* low yield of produced documents. For example, in considering terms related to Apple's code names for Injunction compliance, the term "Michigan" reportedly hit on 20,318 total documents, out of which only 1,710—or 8%—were produced. Apple asserts that the term "Michigan" hit on documents "related to [Michigan's] universities and sports teams, regional businesses, resumes from individuals who attended [Michigan's] universities, and auto-generated email updates from news outlets reporting on political developments" in Michigan. (Nov. 11, 2024 Ltr. from J. Lo to Y. Even.) But Apple gives no numerical example for any of these types of documents that would explain the low yield of produced documents for this term. Nor does Apple explain why the yield for "Michigan" was so much lower than the yield for the term "Wisconsin", even though both terms related to the same project and work streams. Similarly, for the string "'analysis group' OR ag", a reported 56,457 documents were hit, of which Apple produced only 2,263—a 4% yield. Apple seeks to explain this remarkably low yield by arguing that Analysis Group did other work for Apple unrelated to the Injunction. While Analysis Group may have done a handful of other projects for Apple (*see, e.g.*, May 16, 2024 Hrg. Tr. at 505:21-506:6), the search term was used to search the files of custodians that worked on injunction compliance. Apple provides no data explaining why only 4% of the documents hitting on this search string within the files of these specific custodians pertain to the injunction-related Analysis Group project, while 96% percent of the documents hitting on this search string purportedly pertained to some other Analysis Group projects.

Apple spends much of its portion of this status report arguing that Epic is improperly seeking what Apple characterizes as "discovery on discovery", citing cases such as *Scherer v. FCA US, LLC,* 2021 WL 5494463 (S.D. Cal. Nov. 23, 2021) for the proposition that "low responsiveness rate and paltry yield" alone do not justify an inquiry into a party's responsiveness calls. But in *Scherer*, the "paltry yield" Apple references is close to 15%—a multiple of the yield on several search terms at issue here. And of course, in *Scherer*, the paltry yield did not come against the backdrop of a party withholding roughly 40% of its admittedly responsive documents on dubious privilege claims—or against the backdrop of that party having been found to engage in bad conduct. (Dkt. 1017.)

4

In any event, Apple's claims below are also premature. Epic does not currently seek Court intervention regarding this issue. The Parties met and conferred on this issue on November 13. Epic reiterated its request for per-search-string yield calculations that reflect documents withheld on claims of privilege—*i.e.,* data showing, on a per-search-string basis, the number of documents that were deemed by Apple to be responsive but privileged. Epic also requested additional information regarding Apple's claims of false positives for certain search strings. Epic is awaiting Apple's responses to Epic's requests.

*     *     *

Apple is apparently trying to force Epic to choose between obtaining the documents to which Epic is entitled and proceeding promptly with the hearing process. Delay and obfuscation have been Apple's tactic since the proceedings were referred to Your Honor, and it continues now. Epic will continue to work to obtain the discovery it is entitled to and be prepared to resume hearings on its Motion to Enforce Injunction by January 13, 2025. Epic will seek the Court's assistance promptly with suggested paths forward should the Parties reach an impasse on any of the outstanding issues.

**Apple's Position**: Apple produced all responsive, non-privileged documents, and provided privilege logs within 10 days of each production as required under the parties' ESI protocol. *See* Dkt. 242 ¶ 12. Epic should have by now raised any discovery disputes it has, and Judge Gonzalez Rogers tentatively scheduled the evidentiary hearing to resume on January 13.

Epic's continued complaints about purported delay lack any substance. Apple met the Court's substantial completion deadline, timely provided privilege logs following each production, and has responded promptly to correspondence from Epic regarding supposed issues with its productions. Apple did exactly what the Court directed it to—it produced the non-privileged documents relating to its Injunction compliance. It bears repeating that Epic itself did not seek any discovery in this proceeding and told the Court it did not need any. TT 924:1–10 (May 31, 2024). Epic's grievances about routine discovery matters—like clawbacks, reproductions, and privilege downgrades—are just an effort to litigate the litigation. Epic has identified no additional information it needs in order to resume the evidentiary hearing.

*Privilege Dispute and Clawbacks*. The parties' privilege dispute is pending before this Court. *See* Dkt. 1039. Apple is available to appear for a conference at the Court's convenience.

Since the last joint status report, Apple clawed back on privilege grounds a small number of documents, many of which will be reproduced with redactions. *See* Dkt. 274 § 12 (describing procedure for clawbacks). Apple promptly produced updated privilege logs for those documents. In the joint submission to this Court, Apple already has explained the basis for those privilege assertions, with supporting precedent (to which Epic offers no contrary authority). *See* Dkt. 1039.

Epic's response to those clawbacks has been concerning. The protective order requires that upon receipt of a clawback letter, a party "shall *immediately* return such Protected Material or Discovery Material and all copies to the Producing Party, or destroy such Discovery Material

and certify that destruction to the Producing Party." Dkt. 274 § 12.3 (emphasis added). After repeated requests, Epic has only just confirmed to Apple the destruction of clawbacks predating November 14. Additionally, Epic continues to discuss the contents of clawed-back documents in its filings with the Court, which goes well beyond the Protective Order's allowance for a party to record the "date, author, addresses, and topic" of clawed-back material. *Id.* § 12.4. Apple has followed the clawback procedure to a tee; Epic has not.

Epic's claim that Apple has produced 17,000 documents since September 30 is misleading as it acknowledges (albeit in a footnote) that thousands of those documents are reproductions, not "new" documents. And in any event, Epic does not claim (because it cannot) that Apple failed to meet the deadline for substantial completion.

As of the filing of this report, Apple does not expect to clawback any additional documents and does not expect further productions beyond the reproduction of documents already identified for clawback. Apple remains willing to meet and confer with Epic on any concerns or objections it has.

*Responsiveness*. In July, the parties exchanged correspondence and met and conferred regarding Epic's proposed search terms for documents relating to Apple's decision-making process in responding to the Court's Injunction. Apple expressed concern regarding the overbreadth of Epic's search terms and the high probability that they would yield large numbers of non-responsive documents, resulting in a burdensome and time-consuming review for Apple's attorneys. *See* Dkt. 1003, at 4 ("Apple's position is not that Epic's searches would yield some non-responsive documents; it is that the great majority of the search results would be non-responsive . . . ."). Epic refused to narrow its search terms. Dkt. 1024, at 4 (noting that when Apple raised concerns about broad search terms Epic responded that this was a non-issue because "every search string is intended to capture some documents that are non-responsive; that is precisely the purpose of a responsiveness review. The fact that a search string would capture some non-responsive documents is hardly remarkable."). Apple proceeded with Epic's search terms, expending significant time and resources to review documents it anticipated and warned were not likely to be responsive.

Epic has since changed its position on the search terms, expressing concern at the overbreadth. Epic sent a letter to Apple that day, complaining that "Apple has produced surprisingly small percentages of documents for several search strings that appear to relate almost exclusively to Apple's compliance with the Injunction." Epic's concern arrived long after Apple warned of (1) the burden of Epic's imprecise terms, (2) well over one million documents being reviewed, and (3) its expenditure of significant resources to review and produce by the deadline. The responsiveness rate would have been apparent to Epic six weeks ago once Apple achieved substantial completion of its production, but Epic has just now initiated a meet and confer—only when a tentative hearing date has been set. Epic now requests discovery-on-discovery and postures for Apple to expend more resources while Apple also prepares for the return to the hearing.

In its response to Epic on November 11, Apple noted its previously communicated concerns about the search term imprecision and provided responses to Epic's questions. Most significantly, Epic's concerns fail to take into account that (1) not every search term hits on a

responsive document (e.g., a hit for "michigan" does not necessarily mean the document will concern *Project* Michigan), and (2) there are privileged documents not included in Epic's metrics.

Epic does not identify a single document or specific source of information that it has observed as absent from Apple's production, yet further complains about its need for discovery-on-discovery—beyond the information about the non-responsive documents that Apple has already provided. In response to Epic's responsiveness concerns, Apple provided Epic with critical analysis of each challenged search string to explain why they were overbroad, including describing not responsive documents, explaining why the search string itself was drafted in a way that increased the likelihood of finding not responsive documents, and citing to the record in this matter for further elucidation on the overbreadth. Epic notes that Apple reported back the results of its analysis of documents marked as non-responsive. Apple explained that, for example, terms like "Michigan"—unrestrained by connectors to other potentially relevant topics relating to injunction compliance or external links for purchases—unsurprisingly return documents relating to the geographic region, including state politics, universities and sports teams, regional businesses, and resumes. Nov. 11, 2024 Ltr. from J. Lo to Y. Even. Apple provided explanations for the other categories of documents as well.

Yet, Epic remains unsatisfied and now requests metrics or further accounting of potential sources of non-responsive information. First, Epic "do[es] not have a right to conduct discovery into Defendant's discovery methods." *Scherer v. FCA US, LLC,* 2021 WL 5494463, at *3 (S.D. Cal. Nov. 23, 2021). Second, such a request for Apple to inventory its non-responsive documents would create significant burden and expense beyond the needs of the case. The request for non-responsive information is emblematic of disfavored discovery-on-discovery requests. "Generally, 'discovery on discovery' is disfavored and, to be both relevant and proportional to the needs of the case, a party seeking it 'must show a specific deficiency in the other party's production.'" *Uschold v. Carriage Servs., Inc*., 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019) (quoting *Brewer v. BNSF Railway Co*., 2018 WL 882812, at *2 (D. Mont. Feb. 14, 2018) (citing *The Sedona Conference Commentary on Defense of Process: Principles and Guidelines for Developing and Implementing a Sound E-Discovery Process*, at 118 (Sept. 2016)); *see also Martin v. Allstate Ins. Co*., 292 F.R.D. 361, 363–64 (N.D. Tex. 2013) (concluding "non-merits based discovery concerning Defendant's document preservation and production policies" was "overbroad and irrelevant. While Plaintiff speculates that Defendant may have additional documentation that it has not produced, there is no evidence to support that supposition at this point."). Alleging low responsiveness yield numbers is not enough—particularly when the terms and custodians were at the adversary's discretion. In *Scherer* the plaintiffs sought to compel production of "the [defendant's] search and review parameters/discovery protocol that resulted in the reduction of documents from the 4,829 identified by the search terms to the 698 that were produced" and only three emails from a priority custodian. *Scherer*, 2021 WL 5494463, at *3 (S.D. Cal. Nov. 23, 2021). But the court held that the low responsiveness rate and paltry yield for a custodian of interest was not enough. *Id.* (denying request for production). Here, Epic has only identified the allegedly low responsiveness rate as an issue. Without more, the Court should resist any potential request for discovery on discovery. The parties are meeting and conferring on these issues.

*Scheduling*.  Judge Gonzalez Rogers tentatively scheduled the evidentiary hearing to resume on January 13.  While Apple continues to believe that the hearing should not resume until its motion for relief under Rule 60(b) is decided, Apple is prepared to proceed.

Respectfully submitted,

DATED: November 14, 2024

CRAVATH, SWAINE & MOORE LLP
By: */s/ Yonatan Even*
*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: */s/ Mark. A. Perry*
*Counsel for Defendant Apple Inc.*