1  DANIEL G. SWANSON, SBN 116556
      dswanson@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
3  Los Angeles, CA 90071
   Telephone: 213.229.7000
4  Facsimile: 213.229.7520

5  CYNTHIA E. RICHMAN (D.C. Bar No.
   492089; *pro hac vice*)
6      crichman@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
7  1050 Connecticut Avenue, N.W.
   Washington, DC 20036
8  Telephone: 202.955.8500
   Facsimile: 202.467.0539
9
   JULIAN W. KLEINBRODT, SBN 302085
10     jkleinbrodt@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
11 One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
12 Telephone: 415.393.8200
   Facsimile: 415.393.8306
13

MARK A. PERRY, SBN 212532
    mark.perry@weil.com
JOSHUA M. WESNESKI (D.C. Bar No.
1500231; *pro hac vice*)
    joshua.wesneski@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000
Facsimile: 202.857.0940

Attorneys for Defendant APPLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.<br><br>       Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>       Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE JUDGMENT UNDER FEDERAL RULE 60(B)**<br><br>The Honorable Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

**Page**

Introduction ............................................................................................................................................. 1

Argument ................................................................................................................................................ 3

    I.    *Beverage* makes prospective application of the Injunction inequitable ....................................... 3

        A.    *Beverage* clarified that the Injunction rests on the wrong legal analysis ............................. 4

        B.    The *Epic* Injunction conflicts with the *Beverage* judgment applying the same state statute to the same facts and the same defendant ................................................................ 7

        C.    Apple's position here is consistent with its position in *Beverage* ....................................... 9

    II.    *Murthy* makes prospective application of the nationwide portion of the Injunction even more inequitable ................................................................................................ 11

    III.    The equities weigh heavily in favor of relief .......................................................................... 13

Conclusion ............................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AGK Sierra De Montserrat, L.P. v. Comerica Bank*,
  109 F.4th 1132 (9th Cir. 2024) ................................................................................................ 1, 3, 6

*Agostini v. Felton*,
  521 U.S. 203 (1997) ....................................................................................................................... 5, 13

*Artec Grp. Inc. v. Klimov*,
  No. 15-CV-03449, 2017 WL 5625934 (N.D. Cal. Nov. 22, 2017) ...................................................... 5

*Batts v. Tow–Motor Forklift Co.*,
  66 F.3d 743 (5th Cir. 1995) ............................................................................................................. 8

*Bellevue Manor Assocs. v. United States*,
  165 F.3d 1249 (9th Cir. 1999) ......................................................................................................... 5

*Beverage v. Apple, Inc.*,
  101 Cal. App. 5th 736 (2024) ................................................................................................... *passim*

*Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*,
  249 F.3d 519 (6th Cir. 2001) ........................................................................................................... 9

*California ex rel. Becerra v. EPA*,
  978 F.3d 708 (9th Cir. 2020) ........................................................................................................... 5

*Carman v. Alvord*,
  31 Cal. 3d 318 (1982) ....................................................................................................................... 8

*In re CCIV/Lucid Motors Sec. Litig.*,
  No. 21-CV-09323-YGR, 2023 WL 4543581 (N.D. Cal. June 29, 2023) ........................................... 5

*Celestine v. Petroleos De Venezuela SA*,
  108 F. App'x 180 (5th Cir. 2004) ..................................................................................................... 9

*Elmendorf v. Taylor*,
  23 U.S. 152 (1825) ............................................................................................................................ 8

*Eon Corp. IP Holdings LLC v. Aruba Networks Inc.*,
  62 F. Supp. 3d 942 (N.D. Cal. 2014) ............................................................................................... 9

*ePlus Inc. v. Lawson Software, Inc.*,
  789 F.3d 1349 (Fed. Cir. 2015) ....................................................................................................... 15

*Flores v. Garland*,
  No. CV 85-4544-DMG, 2024 WL 3467715 (C.D. Cal. June 28, 2024) .......................................... 14

*Forest Grove Sch. Dist. v. T.A.*,
   638 F.3d 1234 (9th Cir. 2011) ............................................................................................. 13

*Griffith v. Dep't of Pub. Works*,
   141 Cal. App. 2d 376 (1956) ................................................................................................ 8

*Guaranty Trust Co. v. York*,
   326 U.S. 99 (1945) ........................................................................................................ 2, 7, 8

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ................................................................................................. 9

*Hanna v. Plumer*,
   380 U.S. 460 (1965) .............................................................................................................. 7

*Horne v. Flores*,
   557 U.S. 433 (2009) ............................................................................................ 3, 6, 11, 14

*Ladner v. Siegel*,
   298 Pa. 487 (1930) .............................................................................................................. 14

*Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*,
   690 F.3d 382 (5th Cir. 2012) .............................................................................................. 14

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .............................................................................................................. 9

*Motorola Credit Corp. v. Uzan*,
   561 F.3d 123 (2d Cir. 2009) ................................................................................................ 15

*Murthy v. Missouri*,
   144 S. Ct. 1972 (2024) ..................................................................................................*passim*

*N.Y. State Ass'n for Retarded Child. Inc. v. Carey*,
   706 F.2d 956 (2d Cir. 1983) ........................................................................................ 2, 6, 14

*Nelson v. Collins*,
   659 F.2d 420 (4th Cir. 1981) .............................................................................................. 14

*Pennsylvania v. Wheeling & Belmont Bridge Co.*,
   59 U.S. 421 (1855) ........................................................................................................ 14, 15

*Pierce v. Cook & Co., Inc.*,
   518 F.2d 720 (10th Cir. 1975) .............................................................................................. 9

*Planned Parenthood Federation of America v. Center for Medical Progress*,
   704 F. Supp. 3d 1027 (N.D. Cal. 2023) .............................................................................. 14

*Protectoseal Co. v. Barancik*,
   23 F.3d 1184 (7th Cir. 1994) ............................................................................................ 2, 6

*R.R. Comm'n of Tex. v. Pullman Co.*,
    312 U.S. 496 (1941) ........................................................................................................... 8

*Richardson v. United States*,
    841 F.2d 993 (9th Cir. 1988) ............................................................................................. 6

*Ritter v. Smith*,
    811 F.2d 1398 (11th Cir. 1987) ......................................................................................... 9

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992) ........................................................................................................... 6

*Ryman v. Sears, Roebuck & Co.*,
    505 F.3d 993 (9th Cir. 2007) ............................................................................................. 4

*Salazar v. Buono*,
    559 U.S. 700 (2010) ..................................................................................................... 5, 14

*Sweeton v. Brown*,
    27 F.3d 1162 (6th Cir. 1994) ............................................................................................. 5

*United States v. Harris*,
    531 F.3d 507 (7th Cir. 2008) ....................................................................................... 5, 11

*United States v. Swift Co.*,
    286 U.S. 106 (1932) ......................................................................................................... 14

*In re Terrorist Attacks on Sept. 11, 2001*,
    741 F.3d 353 (2d Cir. 2013) ............................................................................................... 9

*Thai-Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*,
    864 F.3d 172 (2d Cir. 2017) ............................................................................................. 15

*United States v. United Mine Workers*,
    330 U.S. 258 (1947) ..................................................................................................... 3, 15

*Venoco, LLC v. Plains Pipeline, L.P.*,
    No. 21-55193, 2022 WL 1090947 (9th Cir. Apr. 12, 2022) .......................................... 2, 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................................... 13

*Werner v. Carbo*,
    731 F.2d 204 (4th Cir. 1984) ........................................................................................... 14

**Other Authorities**

Fed. R. Civ. P. 60(b)(5) ................................................................................................... *passim*

Sup. Ct. R. 10 ........................................................................................................................ 11

**INTRODUCTION**

The intervening decisions in *Beverage v. Apple, Inc.*, 101 Cal. App. 5th 736 (2024) and *Murthy v. Missouri*, 144 S. Ct. 1972 (2024) make "applying [the Injunction] prospectively … no longer equitable." Fed. R. Civ. P. 60(b)(5). The California courts in *Beverage* applied the same state statute to the same defendant on the same facts and not only reached the opposite result, but also specifically identified the legal error the federal courts made in this case. In *Murthy*, the Supreme Court considered a similar theory of standing and rejected it notwithstanding the more fulsome evidentiary record there. Following *Beverage* and *Murthy*, the Injunction causes serious inequities—including federalism, comity, Article III, and Rule 23 problems—that warrant prospective relief.

I.  *Beverage* significantly changed the law applicable in this proceeding by clarifying that the *Epic* courts applied an incomplete legal analysis to reach a bottom-line that conflicts with the *Beverage* judgment on the exact same facts. Rather than confront that reality, Epic devotes much of its brief to attacking arguments Apple is not making. Contrary to Epic's assertions, Apple agrees that *Chavez* is longstanding law. But *Beverage* expressly broke from the *Epic* decisions' *application* of *Chavez*, because the federal courts "mentioned *Chavez* only in passing, and neither court engaged a rigorous analysis of the *Colgate* doctrine and its effect on UCL claims." *Beverage*, 101 Cal. App. 5th at 756 n.6. It is rare that a state court so directly criticizes a federal court's erroneous application of state law to the same facts. Under *Erie*, *Beverage* is the correct explication of state law, superseding the Ninth Circuit's prior decision. *See AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136 (9th Cir. 2024). And the result of *Beverage* is a stark conflict between judgments: The Injunction prohibits conduct under the UCL that the state appellate court affirmed as consistent with the UCL. The Injunction thus conflicts with a state-court judgment involving the *exact same conduct by the exact same defendant under the exact same state statute*. *Beverage* is thus a significant change that warrants prospective relief.

Epic has no sound response. Notably, Epic fails to cite a single case in which Rule 60(b)(5) relief was denied where a subsequent development *either* (1) established that an injunction rested on the wrong legal analysis, *or* (2) created a conflict between judgments involving the same law, same defendant, and same facts. Here, Apple has both. It is well-settled that such a pointed conflict between judgments is

1    inequitable—and indeed would satisfy the far more demanding standard for relief from a retrospective
2    judgment. *E.g.*, *Venoco, LLC v. Plains Pipeline, L.P.*, No. 21-55193, 2022 WL 1090947, at *3 (9th Cir.
3    Apr. 12, 2022). One of *Erie*'s aims is to prevent the inequity that arises if "the outcome of the litigation
4    in the federal court" on state law is not "substantially the same" as in state court. *Guaranty Trust Co. v.*
5    *York*, 326 U.S. 99, 109 (1945). Here, the outcomes are polar opposites. And contrary to Epic's assertions,
6    Rule 60(b)(5) is available where an intervening development establishes that an injunction rests on an
7    incorrect legal analysis. *E.g.*, *N.Y. State Ass'n for Retarded Child. Inc. v. Carey*, 706 F.2d 956, 971 (2d
8    Cir. 1983) (Friendly, J.); *Protectoseal Co. v. Barancik*, 23 F.3d 1184 (7th Cir. 1994). Courts then apply
9    the *correct* legal standard and vacate the injunction if the plaintiff cannot satisfy it. Epic cannot.
10   Tellingly, Epic fails to respond to Apple's showing that the *Beverage* trial court correctly performed the
11   "rigorous analysis" of *Colgate* the *Beverage* appellate decision requires. 101 Cal. App. 5th at 756 n.6.

12        Epic invokes judicial estoppel, but omits Apple's statements that show its position in both courts
13   is fully consistent. In *Beverage*, Apple emphasized that the Ninth Circuit's interpretation of California
14   law does not bind state courts and that *Beverage* had broken from "the federal *Epic Games* decisions"
15   because of the lack of a "rigorous" *Colgate* analysis in the *Epic* decisions. Byars Decl., Ex. A ("*Beverage*
16   Opp."), at 12. Apple is advancing the same argument here.

17        II.   On *Murthy*, Epic asserts that the Supreme Court did not "set a new and elevated" standard
18   for Article III standing. Opp. 20. Apple agrees. *See* Mot. 12–15. Apple's actual argument is that *Murthy*
19   is a significant development because it clarifies *how to apply* existing standing doctrine where, as here,
20   a party seeks an injunction based on the conduct of independent actors. Epic cannot satisfy *Murthy*'s
21   demand for "specific causation findings" and "specific facts" to connect all the links in such a causal
22   chain. *Murthy v. Missouri*, 144 S. Ct. 1972, 1987, 1989–96 & n.7 (2024).

23        Epic asserts "the Ninth Circuit's findings" suffice. Opp. 22. But the Ninth Circuit is an appellate
24   court that cannot and did not make factual findings. *Murthy* requires findings "in the record"—that is,
25   made by the district court. 144 S. Ct. at 1987. Epic pointedly fails to cite any specific findings by this
26   Court that, absent the enjoined anti-steering rules, developers would imminently steer users away from
27   Apple's platform *and away from the developers' own websites* and instead to the Epic Games Store to
28

1  purchase in-app iOS digital content. There are no such findings. The Epic Games Store does not even
2  distribute iOS apps or directly sell in-app content. Rule 52 Order 15. Nor could the Court have made
3  such a finding. Epic called several developers to testify at trial about the anti-steering rules, but *none*
4  testified that they would steer users to the Epic Games Store if those rules were enjoined. *Murthy* thus
5  clarifies that there are fatal missing links in Epic's standing to seek a nationwide injunction.

6      III.  Epic has no meaningful answer on the equities. The inconsistent outcomes in state and
7  federal court flout *Erie* and federal courts' limited role in diversity cases. Epic cannot deny that the
8  nationwide Injunction gives every developer relief under the UCL that they would be unable to secure
9  in state courts applying the same state law, since if any developer were to file a new UCL challenge in
10 any court that developer would lose under *Beverage*. The Injunction thus bars conduct nationwide based
11 on an incorrect rule of state law and effectively deprives the *Beverage* decisions of preclusive or
12 precedential force. And Epic does not dispute that Apple has vigorously litigated and protected its rights
13 throughout this proceeding. That is more than enough to satisfy Rule 60(b)(5).

14     Epic's "unclean hands" argument is baseless. The compliance proceedings are ongoing. And
15 regardless, courts routinely grant Rule 60(b)(5) relief when there are ongoing enforcement proceedings
16 and indeed even after entry of contempt sanctions. *See, e.g*, *Horne v. Flores*, 557 U.S. 433 (2009).

17     At bottom, many of Epic's arguments amount to little more than rhetorical attacks on Apple and
18 its motives. That hyperbole has no place in the analysis. The only question before the Court is whether
19 intervening developments make "applying [the Injunction] prospectively … no longer equitable." Fed.
20 R. Civ. P. 60(b)(5). Epic's complaint about Apple's purported efforts to avoid enforcement overlooks
21 that "the right to remedial relief falls with an injunction which events prove was erroneously issued."
22 *United States v. United Mine Workers*, 330 U.S. 258, 295 (1947). Under well-settled equitable principles,
23 prospective application of the Injunction is now inequitable. The Injunction should be vacated or, at a
24 minimum, narrowed to apply only to Epic and its corporate affiliates.

**ARGUMENT**

I.  ***BEVERAGE* MAKES PROSPECTIVE APPLICATION OF THE INJUNCTION INEQUITABLE**

"Circuit precedent interpreting state law … is only binding in the absence of any subsequent

1  indication from the California courts that [the Ninth Circuit's] interpretation was incorrect." *AGK Sierra*, 109 F.4th at 1136. The California Court of Appeal has provided "subsequent indication" that it would not follow the federal courts' application of *Chavez* because it was incomplete, and the California Supreme Court denied review. This Court now must apply the correct legal analysis, under which Apple prevails—as the *Beverage* trial court persuasively explained. Further, *Beverage* affirmed a judgment that contradicts this Court's Injunction on the same facts, against the same defendant, and involving the same California statute. Epic cites no case in which prospective relief was denied when a subsequent development established that the legal analysis was incorrect, *or* when state and federal judgments conflicted so sharply. Here, both circumstances are present. Each would make applying the Injunction prospectively no longer equitable. Together, the inequity is inescapable.

**A.     *Beverage* clarified that the Injunction rests on the wrong legal analysis**

Epic asserts that *Beverage* "took no issue with the Ninth Circuit's application of California law," quoting *Beverage*'s statement that it did "'not find these decisions [in *Epic*] persuasive on the precise issue presented by [the] appeal.'" Opp. 1, 17 (quoting *Beverage*, 101 Cal. App. 5th at 756 n.6). But Epic omits the prior sentence, which explains why *Beverage* found the *Epic* decisions unpersuasive: "The Ninth Circuit and the district court mentioned *Chavez* only in passing, and neither court engaged a rigorous analysis of the *Colgate* doctrine and its effect on UCL claims." *Beverage*, 101 Cal. App. 5th at 756 n.6. *Beverage* thus plainly *did* take "issue" with the federal courts' application of the UCL: it found their analysis to be incomplete.

*Beverage* further clarified why the UCL requires that missing analysis, explaining that the California legislature in enacting the Cartwright Act affirmatively decided to protect unilateral conduct. *See id.* at 749–50. *Beverage* therefore clarifies that Apple's anti-steering rules cannot be deemed unlawful or unfair under the UCL without first determining whether they are unilateral conduct. The California Supreme Court denied a petition for review, so this Court is bound by *Beverage*, the now-established law in California. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007).

In response, Epic attacks a strawman, arguing that *Beverage* "declined to change settled California law" because it followed the longstanding *Chavez* doctrine. Opp. 14–15. Apple agrees that

1  *Chavez* was and remains settled law. But *Beverage* is still a significant development because it clarifies
2  how to apply *Chavez* to the exact facts of this case—and in particular clarifies that Apple's anti-steering
3  rules cannot be enjoined absent a "rigorous" *Colgate* analysis. That is not "illusory" or a "narrow change
4  in peripheral law." Opp. 15, 24 (citation omitted). It is a controlling change from a California appellate
5  court regarding application of the same California statute to the precise circumstances of this case.

6        Epic's description of the legal standard is also plainly wrong. Epic contends that Rule 60(b)(5)
7  "requires" the change to "'permit what was previously forbidden.'" Opp. 14 (quoting *California ex rel.*
8  *Becerra v. EPA*, 978 F.3d 708, 713–14 (9th Cir. 2020)). But the word "requires" is Epic's invention:
9  *EPA* holds that it "is an abuse of discretion" to deny relief where a change permits what was previously
10 forbidden. *EPA*, 978 F.3d at 713. It does not hold that such a change is *required*.

11       Instead, Rule 60(b)(5) requires a change that makes "applying [a judgment] prospectively
12 inequitable." That can occur even when the legal framework is "largely unchanged." *Agostini v. Felton*,
13 521 U.S. 203, 218, 222–23 (1997). The standard is "pliable," *EPA*, 978 F.3d at 713, taking "all the
14 circumstances into account," *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1256 (9th Cir.
15 1999). Apple cited a host of cases confirming that "clarifications" and "continuing trends" are
16 sufficient—none of which Epic addressed. *E.g.*, *Bellevue*, 165 F.3d at 1256; *United States v. Harris*, 531
17 F.3d 507, 513 (7th Cir. 2008) ("change in, or clarification"); *Sweeton v. Brown*, 27 F.3d 1162, 1164, 1166–
18 67 (6th Cir. 1994) ("changing or clarifying"); *Artec Grp. Inc. v. Klimov*, No. 15-CV-03449, 2017 WL
19 5625934, at *3 (N.D. Cal. Nov. 22, 2017) ("Nothing requires that there be a sea change in the law in order
20 to justify reconsideration."). Epic's failure to respond to that authority effectively concedes this point. *See*
21 *In re CCIV/Lucid Motors Sec. Litig.*, No. 21-CV-09323-YGR, 2023 WL 4543581, at *1 n.3 (N.D. Cal.
22 June 29, 2023). "The relevant question is whether an ongoing exercise of the court's equitable authority
23 is supported by the prior showing of illegality, judged against the claim that changed circumstances have
24 rendered prospective relief inappropriate." *Salazar v. Buono*, 559 U.S. 700, 718 (2010) (plurality op.).

25       Critically, courts have consistently held that it is an abuse of discretion to deny Rule 60(b)(5)
26 relief where, as here, an intervening development establishes that an injunction rests on the wrong legal
27 analysis. For example, in a leading case, the Second Circuit held that it was an abuse of discretion to
28

1  deny relief when "[w]e now know, as a result of [an intervening decision], that [the prior analysis] was
2  not the appropriate inquiry." *Carey*, 706 F.2d at 971 (Friendly, J.); *see Rufo v. Inmates of Suffolk Cnty.*
3  *Jail*, 502 U.S. 367, 381–82 (1992) (adopting Judge Friendly's rule from *Carey*). The Second Circuit
4  reversed the denial of the Rule 60(b)(5) motion and remanded for the district court to perform the correct
5  inquiry. *Carey*, 706 F.2d at 971–72; *see also Horne v. Flores*, 557 U.S. 433, 472 (2009) (remanding for
6  factfinding under the correct analysis to determine whether a statewide injunction must be narrowed);
7  *Barancik*, 23 F.3d at 1187 (Rule 60(b)(5) relief required when an intervening change altered part of the
8  legal analysis and a hearing established the defendant prevailed under the correct analysis).[1]

9  As in *Carey*, "[w]e now know, as a result of [*Beverage*], that [the prior analysis] was not the
10  appropriate inquiry." 706 F.2d at 971. Before Apple's anti-steering rules can be condemned under the
11  UCL, a court must address *Chavez* more than "in passing" and must undertake a "rigorous" *Colgate*
12  analysis to determine whether those rules are protected unilateral conduct beyond the scope of
13  California's UCL. As *Beverage* itself recognizes, there was no such analysis here.

14  In any event, even if Rule 60(b)(5) were limited to changes that establish that the enjoined
15  conduct is lawful, the combination of the *Beverage* appellate decision plus the trial court decision would
16  satisfy that standard. The *Beverage* appellate court clarified that a "rigorous" *Colgate* analysis must be
17  performed before condemning Apple's anti-steering rules. That decision displaces law of the case, *e.g.*,
18  *AGK Sierra*, 109 F.4th at 1136; *Richardson v. United States*, 841 F.2d 993, 1000 (9th Cir. 1988), so this
19  Court now must perform that analysis for the first time, *e.g.*, *Carey*, 706 F.2d at 971.[2] And Epic provides
20  no sound basis to reject the *Beverage* trial court's *Colgate* analysis. The trial court decision is not binding,
21  but was not appealed so is "presumed correct." *Beverage*, 101 Cal. App. 5th at 752. And it persuasively
22  explains, on these exact facts, that Apple's rules are protected unilateral conduct.

23  Epic asserts that the Ninth Circuit's determination that the "DPLAs constitute bilateral contracts
24  subject to the Section 1 of the Sherman Act" is a sufficient substitute. Opp. 18. But *Beverage* rejected

---

[1] *Horne*, *Carey*, and *Barancik* also show that, contrary to Epic's assertions, Opp. 18, Rule 60(b) allows for further factual development if needed to apply the correct analysis.
[2] Contrary to Epic's assertion, Opp. 15–16, Apple does not rely on the state trial court's decision standing alone. It is an intervening development, but not the only one and it is the appellate decision that overrides law of the case and requires the *Colgate* analysis.

that view when it distinguished the Ninth Circuit's opinion on that very ground. *See* 101 Cal. App. 5th at 756 n.6. As Apple has explained, the conclusion that the DPLA is a "contract" within the meaning of Section 1 sheds no light on the application of California's Cartwright Act or the UCL to Apple's Guidelines. The Ninth Circuit did not address whether the Guidelines are unilateral conduct under *Colgate* (as adopted and applied by the California courts), much less whether they are condemnable under the narrower Cartwright Act. *See* Mot. 10. Epic did not even appeal the Cartwright Act judgment.

Nowhere does Epic attempt a rigorous *Colgate* analysis. Epic entirely fails to rebut that Apple unilaterally announced, set, and enforced its anti-steering Guidelines without coercion. *See* Mot. 10–11. As the *Beverage* trial court explained, Apple's Guidelines are protected under *Colgate* as "open, unilateral conduct by Apple, essentially a 'take it or leave it' deal—not threats, boycotts or other such 'affirmative action' to coerce developers into a conspiracy with Apple against others." *Beverage* Second Trial Court Order 7. Just as *Colgate* allows, after Epic flouted Apple's Guidelines, Apple responded by unilaterally removing Fortnite from the App Store. *Beverage* First Trial Court Order 3. Those findings align with both this Court's Rule 52 Order and the Ninth Circuit opinion. *See* Mot. 10–11. Epic thus provides no sound basis to reject the trial court's *Colgate* analysis: It is presumptively correct, persuasive, and directly on point, and following that decision would avoid a stark federal-state conflict.

### B. The *Epic* Injunction conflicts with the *Beverage* judgment applying the same state statute to the same facts and the same defendant

In addition to the legal error described above, the Injunction is even more inequitable because its outcome conflicts with the *Beverage* judgment the Court of Appeal affirmed. Both cases involve the same defendant, the same facts, and the same California statute. Epic makes the incredible claim that "*Beverage* did not address the lawfulness of Apple's anti-steering provisions under the UCL." Opp. 24. That is false. *Beverage*'s conclusion is "that the trial court correctly sustained Apple's demurrer because Plaintiffs did not state a cause of action against Apple for violation of the 'unfair' prong of the UCL." 101 Cal. App. at 756. The Injunction reaches the exact opposite conclusion on the very same facts.

One of the "twin aims" of *Erie* is to avoid such "inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). "The nub of the policy that underlies *Erie* … is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a

block away should not lead to a substantially different result." *Guaranty Trust*, 326 U.S. at 109. "Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies," including when that implicates "the final authority of a state court to interpret doubtful regulatory laws of the state." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). Indeed, because this case involves a state statute (not general common law), those comity concerns are at their zenith and date back to the Founding. *E.g., Elmendorf v. Taylor*, 23 U.S. 152, 159–60 (1825) (Marshall, J.) ("We receive the construction given by the Courts of the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction, than to depart from the words of the statute."). The outcomes in *Beverage* and this Court are polar opposites. Fundamental principles of federalism and fairness therefore require vacatur.[3]

Contrary to Epic's assertion, *see* Opp. 14–15, Apple moved under Rule 60(b)(5), not 60(b)(6). Apple's point is that courts have long recognized that a conflict between state and federal judgments is so grossly inequitable to warrant relief even from a *retrospective money judgment* under Rule 60(b)(6)—which sets a far higher bar than Rule 60(b)(5)'s flexible standard for prospective injunctions. Even under Rule 60(b)(6)'s strict standard, courts have repeatedly held that relief is warranted when an intervening state court judgment applies the same "doctrine to the same defendant on the basis of virtually identical facts." *E.g.*, *Venoco, LLC v. Plains Pipeline, L.P.*, No. 21-55193, 2022 WL 1090947, at *3 (9th Cir. Apr. 12, 2022). Rule 60(b)(5)'s lower standard is *a fortiori* satisfied by similarly inconsistent outcomes.

Epic asserts that maintaining the *Venoco* judgment would have involved "[r]ejecting the California Court of Appeal's interpretation of its own state law doctrine." Opp. 25 (quoting 2022 WL 1090974, at *3). But that is also true here: The Injunction cannot be maintained without rejecting the UCL holding of *Beverage*. In any event, the *Venoco* line of cases do not ask whether the *precise legal issue* decided in two appeals is exactly the same. Grounded in *Erie*'s focus on "the outcome of the litigation," *Guaranty Trust*, 326 U.S. at 109, courts ask whether "two cases arising out of the same transaction result in conflicting judgments." *Batts v. Tow–Motor Forklift Co.*, 66 F.3d 743, 748 n. 6 (5th

---

[3] Contrary to Epic's claim, Opp. 16 n.4, a general demurrer resolves "the legal merits of the action on assumed facts." *Carman v. Alvord*, 31 Cal. 3d 318, 324 (1982). The case Epic cites holds only that courts reviewing a demurrer do not resolve factual disputes or reach beyond the pleadings. *See Griffith v. Dep't of Pub. Works*, 141 Cal. App. 2d 376, 381 (1956).

Cir. 1995); *see Venoco*, 2022 WL 1090947, at *2 ("direct relationship between the original judgment and the change in law"); *Pierce v. Cook & Co., Inc.*, 518 F.2d 720, 723 (10th Cir. 1975) (en banc) ("The outcome determination principle mandated by *Erie v. Tompkins* has been violated.").[4]

Epic has cited—and Apple has located—no case in which prospective relief under Rule 60(b)(5) has been denied where there is such a conflict between state and federal judgments involving the same defendant, facts, and state law. That conflict alone makes continued application of the Injunction inequitable. When combined with the *Beverage* Court of Appeal decision expressly finding the *Epic* decisions unpersuasive because of the incomplete *Chavez* analysis, the inequity is even sharper.

### C. Apple's position here is consistent with its position in *Beverage*

Faced with on-point, intervening authority that makes the Injunction inequitable, Epic resorts to mischaracterizing Apple's arguments to manufacture a claim for judicial estoppel. *See* Opp. 18. That contention fails. Epic has the burden to establish that Apple's later position is "clearly inconsistent" with its earlier position and that "the court relied on, or 'accepted,' the … previous inconsistent position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). Epic has come nowhere close to meeting that "high bar." *Eon Corp. IP Holdings LLC v. Aruba Networks Inc.*, 62 F. Supp. 3d 942, 956 (N.D. Cal. 2014).

First, Epic omits critical language that demonstrates that Apple's positions in both courts are fully consistent. Apple seeks Rule 60(b)(5) relief because (1) federal courts must follow state court interpretations of state law, and *Beverage* clarified that the *Epic* decisions did not fully analyze *Chavez* or *Colgate*; and (2) the judgments conflict in cases involving the same defendant, facts, and state statute. Apple took the same positions in *Beverage*: Apple told the California Supreme Court that "federal opinions are not controlling authority in interpreting state law." *Beverage* Opp. 12 (citation omitted). Apple emphasized that "neither of the federal *Epic Games* decisions engaged in a rigorous analysis of

---

[4] *See also Celestine v. Petroleos De Venezuela SA*, 108 F. App'x 180, 184 (5th Cir. 2004) ("conflicting judgments"); *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 525 (6th Cir. 2001) ("divergent judgments for litigants involved in the same transaction or injury"); *Ritter v. Smith*, 811 F.2d 1398, 1402–03 (11th Cir. 1987) (cases "arose out of the same transaction"); *cf. In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 358 (2d Cir. 2013) ("disparate treatment of two sets of litigants suing for the same underlying tort").

the *Colgate* doctrine and its effect on UCL claims." *Id.* (alteration and quotation marks omitted). And Apple never denied that the cases reach opposite outcomes on the same facts and law.

Second, Epic misconstrues statements Apple made when responding to a different argument by the *Beverage* plaintiffs, by taking them out of context. In seeking California Supreme Court review, the *Beverage* plaintiffs identified a particular legal issue on which they asserted there was a conflict between the California Court of Appeal and the Ninth Circuit: whether conduct that "is not 'unlawful' under California's [UCL] is … automatically not 'unfair.'" Perry Supp. Decl., Ex. 1 (*Beverage* Petition), at 5. Responding to that argument, Apple (correctly) pointed out that the plaintiffs "[we]re wrong" to assert that *Beverage* and the Ninth Circuit conflicted on that question. *Beverage* Opp. 12. The Ninth Circuit held that lawful conduct can potentially still be unfair, and the California Court of Appeal did not disagree. *See id.* at 5. The Court of Appeal instead "narrow[ly]" held that, so long as Apple's anti-steering provisions are protected unilateral conduct, they are not "unfair." *See id.* at 2, 5–9. And there was no conflict on that narrow point either, because the Ninth Circuit "did not disagree with *Chavez*, nor did it address the applicability of the *Colgate* doctrine to the conduct challenged in that case." *Id.* at 12.

Apple does not take a contrary position here. Apple does not contend that the Ninth Circuit disagreed with *Chavez* (or that merely following *Chavez* was a change). *Chavez* is longstanding law. *See* Mot. 9. Apple does not deny that, unlike *Beverage*, the Ninth Circuit "did not address the applicability of the *Colgate* doctrine" to Apple's anti-steering rules. Beverage Opp. 12. Indeed, that is the key missing step in the Ninth Circuit's analysis. And Apple does not deny that *Beverage* was narrow: *Beverage* narrowly established that, so long as a "rigorous" analysis establishes that *Colgate* protects Apple's anti-steering rules, then *Chavez* shields Apple from liability. *Id.* That narrow holding, however, is a significant development because it cuts to the heart of this case—and it results in a conflict between state and federal judgments in cases involving the same defendant, same facts, and same state statute.

Third, Epic does not even try to show reliance. Notably, the *Beverage* plaintiffs fully understood Apple's position and repeated it to the California Supreme Court: They correctly read Apple as "endors[ing] the [*Beverage*] Court of Appeal's criticism of the two federal opinions" and as not disputing the "indisputabl[y]" conflicting outcomes on "virtually identical facts." Perry Supp. Decl., Ex. 2

(*Beverage* Reply), at 12–13. Epic provides no basis to conclude that the California Supreme Court had a completely different understanding. Epic's invocation of estoppel thus fails for multiple reasons.

## II. *MURTHY* MAKES PROSPECTIVE APPLICATION OF THE NATIONWIDE PORTION OF THE INJUNCTION EVEN MORE INEQUITABLE

The nationwide scope makes prospective application of the Injunction even more inequitable—particularly in light of *Murthy*. The narrative the Ninth Circuit adopted to sustain Epic's standing is insufficient: *Murthy* clarifies it is a "tall order" to prove Article III standing to enjoin Apple nationwide based on the conduct of independent developers; "overly broad assertion[s]" that "gloss[] over complexities in the evidence" are insufficient; "specific causation findings" and "specific facts" instead are needed to prove each link in the causal chain. 144 S. Ct. at 1987–89 & 1996 n.7.[5]

Epic cannot satisfy that standard. Notably, Epic fails to identify a single "specific causation finding[]" by this Court or "specific fact[]" about the desire of developers to imminently steer users *to the Epic Games Store*. None exists. Epic called a few third-party developers to testify during the merits trial, and none mentioned steering users to the Epic Games Store specifically. The only discussion of steering came in the context of a developer who sought to send users to *its own website* to make purchases. Trial Tr. 359:16–360:6 (Simon). The Ninth Circuit's conclusion that, but for the anti-steering provisions, developers would steer users to the Epic Games Store—which does not even distribute iOS apps (*see* Rule 52 Order 15)—is therefore speculative and untethered from any specific findings or record evidence. Instead, it speaks at the "high level of generality" *Murthy* rejected. 144 S. Ct. at 1987. The nationwide Injunction thus cannot stand. *See, e.g.*, *Horne*, 557 U.S. at 472 (remanding with instruction to narrow an injunction to eliminate statewide relief absent an additional factual showing).

Epic again claims that Rule 60(b)(5) requires a sea change in the law. *See* Opp. 18–21. But as detailed above, *see supra* Section I, that is incorrect; "clarification" is sufficient. *Harris*, 531 F.3d at 513. *Murthy* surely clarified application of standing law—the Supreme Court does not grant review merely to correct case-specific errors. *See* Sup. Ct. R. 10. Specifically, *Murthy* clarified the evidentiary showing

---

[5] Epic accuses Apple of "wrench[ing]" the "tall order" comment from its context. Opp. 20. Not so—the context in which the Supreme Court made this point was "[t]he one-step-removed, anticipatory nature of [the plaintiffs'] alleged injuries." *Murthy*, 603 U.S. at 57. That is the same context here.

1  needed for a prospective injunction based on the conduct of independent actors. *Murthy* clearly shows
2  that the Ninth Circuit's analysis was "overly broad" and at too "high [a] level [of] generality." 144 S. Ct.
3  at 1987. The required fact-specific analysis confirms that Epic lacks nationwide standing.

4  Epic contends it proved that "iOS consumers … are likely reacting in predictable ways to Apple's
5  anti-steering rules." Opp. 21 (quotation marks omitted). But before *consumers* can react, *developers*
6  must react—Apple's anti-steering rules applied to developers, not users. Developers cannot simply
7  "switch to Epic's cheaper payment platform to process their in-app transactions," *id.*, because the Epic
8  Games Store does not even distribute iOS apps—it distributes games "on PC and Mac computers," Rule
9  52 Order 15–16. And even when the Epic Games Store distributes games on other platforms, it is not a
10 separate marketplace for directly purchasing *in-game content* (e.g., digital tokens, extra lives, etc.). There
11 is thus nothing on the Epic Games Store itself for a developer to "steer" users to. The Ninth Circuit
12 overlooked this aspect of the Epic Games Store—"gloss[ing] over complexities in the evidence," 144
13 S. Ct. at 1987, and showing why *Murthy* warned against appellate courts creating theories of standing.

14 Critically, there are no findings or record evidence that a developer would imminently steer users
15 away from *its* app and *its* website to a cross-platform game on PC or Mac, installed via the Epic Games
16 Store, to purchase in-game content. And even if a developer engaged in such steering, Epic does not
17 require developers to use its payment system (Epic Payment Solution) and pay a commission, Trial Tr.
18 800:4–14 (Ko), 1221:18–1222:1 (Allison), so Epic may still obtain no commission. Nor is there record
19 evidence that Epic Payment Solution is cheaper than a developer's own website, or that developers would
20 pass along any savings to consumers. And unless a developer offers a cross-platform game *and* steers to
21 a PC or Mac game installed via the Epic Games Store *and* the developer uses Epic Payment
22 Solution *and* reduces prices *and* those prices are lower than alternatives like the developer's own
23 website, consumers would not predictably use Epic's platform and pay Epic a commission. As in *Murthy*,
24 Epic's standing thus depends on a "speculative chain of possibilities" that depends on multiple decisions
25 by independent developers with their own motives and interests. 144 S. Ct. 1993. Epic's resort to the
26 "commonsense proposition" (Opp. 22) that consumers react to lower prices is thus far from sufficient.

27 Epic asserts that the Ninth Circuit "found causation" and "found" that users who learned about
28

1  "lower app prices" would switch to other platforms, arguing that "the Ninth Circuit's findings" were "[]sufficiently specific." Opp. 22. This nomenclature is telling. "Appellate court[s]" are "not in the business of making findings of fact." *Forest Grove Sch. Dist. v. T.A.*, 638 F.3d 1234, 1238 (9th Cir. 2011). *Murthy* requires appellate courts to identify causation findings "in the record"—that is, made in the district court—to prevent appellate judges from "hunting for truffles buried [in the record]." 144 S. Ct. at 1987, 1997 n.7 (brackets in original). The Ninth Circuit's analysis is not based on findings "in the record," as confirmed by Epic's response (which cites no such findings). In any event, the Ninth Circuit's statements are overly general and insufficiently specific because they do not bridge multiple fatal gaps in the causal chain. The Ninth Circuit's statements thus do not and could not satisfy *Murthy*.

Epic's rhetoric about the implications for consumer antitrust cases gets it exactly backward. *See* Opp. 22. No consumer can obtain nationwide injunctive relief without *certifying a nationwide class*. *See* Fed. R. Civ. P. 23. Epic does not represent a class; it comes to this Court only on its own behalf. *See* Rule 52 Order at 23–24. Rule 23 sets out stringent requirements for class certification because binding non-parties—and binding a defendant's conduct towards non-parties—raises serious due process problems. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). The nationwide Injunction improperly circumvents those protections by granting Epic nationwide relief (that is, relief running in favor of all developers with apps on the U.S. app store) that it does not have standing to seek.

### III. THE EQUITIES WEIGH HEAVILY IN FAVOR OF RELIEF

The equities overwhelmingly favor relief. *Beverage* and *Murthy* each establish that the Injunction rests on an incomplete legal analysis, and an "exercise of discretion cannot be permitted to stand if … it rests upon a legal principle that can no longer be sustained." *Agostini*, 521 U.S. at 238. If Apple were to reinstate the same Guidelines the *Beverage* courts upheld as consistent with the UCL, Apple would be in violation of the Injunction. Epic does not dispute that a new suit filed today in *any court* challenging those rules under the UCL would have to follow the *Beverage* analysis. Yet without that analysis, the Injunction provides thousands of developers the very relief *Beverage* denied. Epic does not dispute that Apple has rigorously and timely asserted its rights. Maintaining the Injunction thus offends fundamental principles of federalism, comity, and equity.

1    Epic contends that it has "reliance interests," but that contention rings hollow. Epic does not even
2    have any apps on the App Store and it plainly lacks reliance interests in how non-party developers might
3    behave. Epic emphasizes "the burdens [it] has incurred in obtaining [the Injunction], defending it on
4    appeal and proving Apple's ongoing non-compliance with it." Opp. 24. But Epic's litigation burdens do
5    not give it a reliance interest in a prospective decree. The Injunction itself reserves to this Court
6    "jurisdiction over … amendment of the injunction." Injunction ¶ 3. And under longstanding equitable
7    principles that Rule 60(b)(5) codifies, a party has no reliance interest in prospective relief that is "no
8    longer equitable": A plaintiff lacks "a perpetual or vested right either in the remedy, the law governing
9    the order, or the effect of it." *Ladner v. Siegel*, 298 Pa. 487, 500 (1930). Courts have inherent "power to
10   revoke or modify its mandate if satisfied that what it has been doing has been turned through changing
11   circumstances into an instrument of wrong." *United States v. Swift Co.*, 286 U.S. 106, 114–15 (1932).
12   Epic's litigation burdens accordingly are irrelevant. *See Lowry Dev., L.L.C. v. Groves & Assocs. Ins.,*
13   *Inc.*, 690 F.3d 382, 389 (5th Cir. 2012) ("Having a favorable judgment set aside is inherently prejudicial,
14   so some extra measure of unfair prejudice must be present to overcome an otherwise worthy Rule 60(b)
15   motion."); *see also Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984) (similar).[6]

16   Epic's "unclean hands" argument is also baseless. See Opp. 25. First, Apple has not been found
17   to violate the Injunction, much less held in contempt. Apple removed the enjoined anti-steering rules,
18   notified the Court of its new rules, and the ongoing dispute about compliance is so complex as to require
19   evidentiary hearings and the production of tens of thousands of documents. Second, even contempt
20   would provide no basis to deny relief. Notably, Epic cites no case that relies on past non-compliance to
21   deny relief from a prospective injunction. Courts routinely grant prospective relief after enforcement
22   proceedings and contempt sanctions. *E.g.*, *Salazar v. Buono*, 559 U.S. 700 (2010) (enforcement); *Horne*,
23   557 U.S. at 433 (sanctions); *Nelson v. Collins*, 659 F.2d 420 (4th Cir. 1981) (en banc) (sanctions); *Carey*,
24   706 F.2d at 971 (both); *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 436 (1855)
25   (purging sanctions); *Flores v. Garland*, No. CV 85-4544-DMG, 2024 WL 3467715, at *9 (C.D. Cal.

---

[6] Epic cites *Planned Parenthood Federation of America v. Center for Medical Progress*, 704 F. Supp. 3d 1027 (N.D. Cal. 2023), but that case denied Rule 60(b)(5) relief because the applicable law did not change at all. It did not hold that, even when a development renders a prospective Injunction inequitable, a party's past litigation burdens nonetheless justify perpetuating that inequity into the future.

June 28, 2024). That is because Epic's argument is backwards. The purpose of civil contempt is to bring a defendant into compliance with the law, but if an injunction no longer comports with the law, then it must be vacated and the basis for contempt evaporates. *See United Mine Workers*, 330 U.S. at 295 ("[T]he right to remedial relief falls with an injunction which events prove was erroneously issued."); *Wheeling Bridge*, 59 U.S. at 432 ("it is quite plain the decree … cannot be enforced"); *ePlus Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1357–58 (Fed. Cir. 2015) (similar).

Epic relies on *Motorola Credit Corp. v. Uzan*, 561 F.3d 123 (2d Cir. 2009), but that case is an "instructive contrast." *Thai-Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 188 (2d Cir. 2017). Unlike here, *Uzan* involved a retrospective judgment (for disgorgement). 561 F.3d at 131. Unlike here, contempt had been found (repeatedly): the Uzans "flat-out refus[ed]" to comply, "persistently endeavored to evade the lawful jurisdiction of the District Court," and were even subject to arrest. *Id.* And unlike here, the Uzans asked to be excused from compliance because *their own non-compliance* had prompted the plaintiffs to engage in self-help and obtain partial relief. *See id.* Apple instead is asking for prospective relief because intervening decisions establish that the Injunction rests on legal errors, the enjoined conduct is lawful, and Epic lacks nationwide standing. Providing such prospective relief is the core purpose of Rule 60(b)(5), not "chutzpah."

Finally, Epic disparages Apple as merely seeking delay. But Epic has not explained how this motion will delay anything. The evidentiary hearing is tentatively scheduled to resume January 13, 2025. This motion is fully briefed, as of November 21, 2024. That leaves ample time for the Court to decide this motion before deciding the motion to enforce. In any event, Epic's attacks on Apple's motives are baseless and irrelevant. The only thing Apple seeks here is to vacate or narrow the Injunction because applying it prospectively is no longer equitable.

## CONCLUSION

The Court should vacate the Injunction or, at a minimum, narrow it to Epic and its affiliates.

Dated: November 21, 2024

Respectfully submitted,

By: */s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP

Attorney for Apple Inc.