# EXHIBIT 2

SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **MICHELLE BEVERAGE, et al.** | Supreme Court No. S285154 |
| Petitioners, | |
| | Court of Appeal No. H050526 |
| v. | |
| **APPLE INC.** | Santa Clara County Superior Court No. 20CV370535 |
| Respondent. | |
| | Service on Attorney General required by Bus. & Prof. Code, § 16750.2 |

On Appeal from the Judgment of the
Santa Clara County Superior Court
The Honorable Sunil R. Kulkarni

**REPLY TO ANSWER
PETITION FOR REVIEW**

*Myron Moskovitz (SBN 36476)
Jason R. Marks (SBN 130961)
David A. Kaiser (SBN 215275)
MOSKOVITZ APPELLATE TEAM
90 Crocker Avenue
Piedmont, CA 94611
(510) 384-0354

William M. Audet (SBN 117456)
Ling Y. Kuang (SBN 296873)
Audet & Partners, LLP
711 Van Ness Ave., Suite 500
San Francisco, CA 94102-3275
(415) 568-2555

Counsel for Petitioners

Document received by the CA Supreme Court.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. 3

ARGUMENT ................................................................................... 4

I. APPLE MISCHARACTERIZES *COLGATE*. ..................... 4

II. APPLE MISCHARACTERIZES THE COURT OF APPEAL OPINION. ........................................................... 9

III. THE COURT OF APPEAL OPINION CREATES A CONFLICT BETWEEN CALIFORNIA COURTS AND FEDERAL COURTS. ..................................................... 11

IV. THIS COURT'S POST-*CEL-TECH* OPINIONS ALSO SHOW A NEED FOR REVIEW. ....................................... 14

CONCLUSION .............................................................................. 18

CERTIFICATE PURSUANT TO C.R.C. RULE 8.504(D)(1) . 19

Document received by the CA Supreme Court.

# TABLE OF AUTHORITIES

**Cases**

*Cel-Tech Communications v. Los Angeles Cellular Tel. Co.* (1999)
  20 Cal.4th 163 .......................................... 4, 5, 7, 12, 14, 16, 17, 18

*Epic Games, Inc. v. Apple, Inc.* (9th Cir. 2023)
  67 F.4th 946 ............................................................................. 11, 12

*Epic Games, Inc. v. Apple, Inc.* (N.D. Calif, 2021)
  559 F.Supp.3d 898 ............................................................. 8, 10, 11

*Kolling v. Dow Jones & Co.* (1982)
  137 Cal.App.3d 709 ...................................................................... 6

*Loeffler v. Target Corp.* (2014)
  58 Cal.4th 1081 ........................................................................... 15

*Olszewski v. Scripps Health* (2003)
  30 Cal.4th 798 ............................................................................. 15

*Rubin v. Green* (1993)
  4 Cal.4th 1187 ............................................................................ 4, 5

*U.S. v. Colgate* (1919)
  250 U.S. 300 ............................................................................. 4, 5, 6

*Zhang v. Superior Court* (2013)
  57 Cal.4th 364 ............................................................................. 16

**Statutes**

Bus. & Prof. Code, § 16720 ................................................................ 6

Fin. Code § 22303 ............................................................................ 14

Document received by the CA Supreme Court.

# ARGUMENT

## I.  APPLE MISCHARACTERIZES *COLGATE*.

At page 6, Apple's Answer to the Petition for Review tries to squeeze *U.S. v. Colgate* (1919) 250 U.S. 300, into *Cel-Tech's* "safe harbor" exception.

Apple does this by mischaracterizing *Colgate* as an opinion that "provides immunity" for a manufacturer's unilateral decision regarding whom it will sell to. The Court of Appeal made the same mistake. See Slip Opinion at p. 18: "Instead, our decision is limited to situations typified by this case, where the same conduct found immune from antitrust liability by the *Colgate* doctrine is also alleged to violate the 'unfair' prong of the UCL."

Apple and the Opinion below apparently draw on this Court's use of the word "immune" in *Cel-Tech Communications v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, where this Court gave an example of what it meant by "immune". The Court cited *Rubin v. Green* (1993) 4 Cal.4th 1187, where *a statute separate from the prohibitory statute* provided a litigation privilege that immunized the defendant's conduct, and therefore

Document received by the CA Supreme Court.

"We found 'the conduct of defendants alleged in the complaint' came 'within the scope of [Civil Code] section 47(b).' and thus was 'absolutely immune from civil tort liability' ". *Cel-Tech* at 182-183. Thus, in *Rubin v. Green*, the court did *not* hold merely that the prohibitory statute did not include the defendant's conduct. Instead, a *separate* statute "immunized" the defendant's conduct, thereby creating a "safe harbor". This holding supports our position, not Apple's.

Contrary to Apple's and the Opinion's characterization, the *Colgate* opinion never said that Colgate was "immune" from a claim that it had violated the Sherman Act. Indeed, the word "immunity" or "immune" appears nowhere in the *Colgate* opinion. Nor did *Colgate* cite any "safe harbor" statute that provided such "immunity".

The issue presented in *Colgate* was whether the prohibitory statute that the defendant was charged with violating (the Sherman Antitrust Act) barred the conduct at issue: "Our problem is . . . to determine whether, so construed, it [the indictment] fairly charges violation of the Sherman Act". *U.S. v. Colgate* (1919) 250 U.S. 300, 306. The Court answered this

Document received by the CA Supreme Court.

5

question by holding that the Sherman Act itself did not cover defendant's conduct:

> In the absence of any purpose to create or maintain a monopoly, *the act does not restrict* the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal; and, of course, he may announce in advance the circumstances under which he will refuse to sell."
> [*Id.* at 307; emphasis added.]

Thus, the Court held *only* that the prohibitory statute "does not restrict" Colgate's conduct. The Court cited no "safe harbor" statutory provision that immunized Colgate's unilateral conduct, because none exists.

The absence of immunity is especially clear with regard to California's Cartwright Act, the law involved here. The Cartwright Act's prohibitions apply only to a "combination of capital, skill or acts by two or more persons." Bus. & Prof. Code, § 16720. That's why unilateral refusal to deal does not violate the Cartwright Act. *Kolling v. Dow Jones & Co.* (1982) 137 Cal.App.3d 709, 720. The question of immunity does not come up — the statute simply defines its prohibited conduct in a manner

Document received by the CA Supreme Court.

6

that leaves unilateral commercial conduct outside its scope. This is exactly what *Cel-Tech* meant by "the Legislature's mere failure to prohibit an activity." *Cel-Tech*, 20 Cal.4th at p. 184.

At page 10, Apple argues that *Colgate's* ruling on unilateral conduct "does not represent a mere failure to act by the Legislature, but rather recognizes a 'right' that is 'sacrosanct' because of its procompetitive effects." In other words, according to Apple, even if Congress had *included* unilateral conduct within the prohibition of the Sherman Act, the Supreme Court would have *excluded* it — because the Court would consider such conduct "sacrosanct". Apple cites no authority of such a bizarre proposition, and we are aware of none.

Apple's claim that its conduct should be immune because it is "procompetitive" is also bizarre, as is the Court of Appeal's statement:

> Because both antitrust laws and the UCL are designed to protect and promote competition for the benefit of consumers [citations], logic dictates that there can be no harm to consumers under the UCL based on the same unilateral practices that have been historically accepted as procompetitive and categorically shielded from antitrust

Document received by the CA Supreme Court.

7

liability by the *Colgate* doctrine.
[Slip Opinion at 18.]

Apple's effort to wrap itself in the flag of free competition runs smack into the federal district court's express finding (after a full trial) that Apple's conduct in this case was far from "procompetitive". That court found that "Apple's anti-steering restrictions artificially increase Apple's market power by preventing developers from communicating about lower prices on other platforms." *Epic Games, Inc. v. Apple, Inc.* (N.D. Calif, 2021) 559 F.Supp.3d 898, 993.

At page 11, Apple again exalts the importance of unilateral conduct. But Apple ignores the importance of the "unfairness" prong of the UCL in protecting consumers from abusive actions of unscrupulous business operators. And Apple again fails to acknowledge the findings of the federal district court in *Epic Games, Inc. v. Apple, Inc.* that we summarized at pages 30-32 of our Petition. Neither Apple nor the Court of Appeal cited any case holding that California affords consumers no relief for such egregious conduct.

And neither Congress nor the California Legislature has enacted any separate "safe harbor" statutory provision that

Document received by the CA Supreme Court.

8

immunizes unilateral conduct from antitrust enforcement — or from a charge of "unfairness" under the UCL.

## II.  APPLE MISCHARACTERIZES THE COURT OF APPEAL OPINION.

At pages 8-9, Apple argues that the Court of Appeal Opinion is a "narrow" one, which did *not* hold that a defendant's conduct is "automatically" shielded from a claim of "unfairness" by the fact that the conduct is not barred by the prohibitory statute.  True, the Opinion does state:

> [O]ur decision is limited to situations typified by this case, where the same conduct found immune from antitrust liability by the *Colgate* doctrine is also alleged to violate the "unfair" prong of the UCL.
> [Slip Opinion at 18]

But Apple *did much more* than engage in conduct that did not violate the Cartwright Act.  After a full trial, the federal district found that Apple engaged in a whole range of *anti-*competitive conduct.  See our summary of those findings at pages 30-32 of our Petition.  That court concluded:

> [T]he court finds that common threads run through Apple's practices which unreasonably restrains competition

Document received by the CA Supreme Court.

9

and harms consumers, namely the lack of information and transparency about policies which effect [*sic*] consumer's ability to find cheaper prices, increased customer service, and options regarding their purchases.  Apple employs these policies so that it can extract supracompetitive commissions from this highly lucrative gaming industry. [*Epic Games, Inc. v. Apple, Inc.* (N.D. Calif, 2021) 559 F.Supp.3d 898, 1013-1014.]

In our briefs to the Court of Appeal, we told the court about the federal court's findings.  Thus, with full knowledge of those findings — but without acknowledging them — the Opinion holds, in essence, that *no matter how anticompetitive the defendant's conduct is*, if it does not violate a prohibitory statute, it cannot be deemed "unfair" under the UCL.  This, we submit, is a broad holding — not a narrow one.

Document received by the CA Supreme Court.

## III. THE COURT OF APPEAL OPINION CREATES A CONFLICT BETWEEN CALIFORNIA COURTS AND FEDERAL COURTS.

At pages 10-12, Apple asserts that several California Court of Appeal opinions have cited *Chavez* with approval. But none of those cases cited *Chavez* for the proposition that the failure of the Legislature to bar certain conduct in a prohibitory statute creates a "safe harbor" under *Cel-Tech*. Only *Chavez* and the Opinion below have done so — and both fail to read *Cel-Tech* correctly.

At page 11, Apple asserts "an absence of conflict among California appellate courts" on this issue. True, but there are two far more serious conflicts: (1) the conflict created by two published Court of Appeal opinions (*Chavez* and the Opinion below) with the Supreme Court opinion in *Cel-Tech*, and (2) the conflict between the published Opinion below and the two federal court opinions that came to the opposite conclusion: *Epic Games, Inc. v. Apple, Inc.*, (N.D. Calif. 2021) 559 F.Supp.3d 898, and *Epic Games, Inc. v. Apple, Inc.* (9th Cir. 2023) 67 F.4th 946.

At page 12, Apple argues that the Ninth Circuit cited *Chavez* and "did not disagree with *Chavez*". But Apple ignores

Document received by the CA Supreme Court.

11

what the Ninth Circuit said *immediately after* its citation to *Chavez*:

> Apple's rule would convert any Rule of Reason shortcoming into a UCL defense and undermine the UCL's three-prong structure by collapsing the "unfair" and "unlawful" prongs into each other. We reject Apple's proposed rule as foreclosed by California law. [67 F.4th at p. 1001.]

This, we submit, was the correct reading of *Cel-Tech*. The Ninth Circuit's reasoning applies equally here, where Plaintiffs' Cartwright Act claim was rejected not because of any immunity or safe harbor, but simply because the Cartwright Act's provisions does not reach Apple's unilateral conduct.

At page 12, Apple endorses the Court of Appeal's criticism of the two federal opinions: "The Ninth Circuit and the district court mentioned *Chavez* only in passing, and neither court engaged a rigorous analysis of the *Colgate* doctrine and its effect on UCL claims. We therefore do not find these decisions persuasive on the precise issue presented by this appeal." Slip Opinion at 18, fn. 6.

This is not the place to resolve who was right: the two Courts of Appeal or the two federal courts. It is indisputable that

Document received by the CA Supreme Court.

12

they are in conflict — and therefore the issue is appropriate for review by this Court.

This conflict is not merely theoretical. There are many cases filed under the UCL. Frequently, these cases might be filed in either state court or federal court. A conflict creates an invitation to forum-shop.

And eventually, the Ninth Circuit might well refer one of these cases to this Court for resolution, as they involve questions of California law, not federal law.

Also eventually, some California Court of Appeal will hold that *Chavez* and the Opinion below are inconsistent with *Cel-Tech*, and raise a conflict *with* California law that this Court will need to resolve.

Now is the best time to settle the issue, for the guidance of the bar and their clients. And this case is a very suitable vehicle for such resolution, because both the state case and the federal case involve virtually identical facts. Indeed, this case presents a unique opportunity to resolve the issue on detailed facts that were not merely alleged, but have been judicially found to be true.

Document received by the CA Supreme Court.

### IV. THIS COURT'S POST-*CEL-TECH* OPINIONS ALSO SHOW A NEED FOR REVIEW.

At page 15, Apple cites opinions from this Court that quote the troublesome sentence fragment from *Cel-Tech*. From this, Apple urges this Court to treat that fragment as supporting the position taken by Apple and the Opinion below. But other language in those opinions shows that this Court did *not* so read that fragment.

In fact, in the first case Apple relies on, *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 986, immediately after the Court's quotation from *Cel-Tech*, the Court quotes the heart of *Cel-Tech*:

> [T]he safe harbor rule does not "prohibit an action under the unfair competition law merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct." (*Id.* at pp. 182–183) And not prohibiting the challenged conduct is all that section 22303 does.
> [*Id.* at 986-987.]

This, we submit, shows that the Court did *not* intend its quotation of the sentence fragment to undermine the essence of *Cel-Tech*.

Document received by the CA Supreme Court.

14

Similarly, Apple also cites *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 828), where once again this Court quotes the sentence fragment. But the opinion then quotes another *Cel-Tech* sentence: "Nonetheless, 'the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair.' " And then the Court holds that defendant's conduct was protected by a "safe harbor" because *a separate statute* "expressly permitted the liens filed by defendant". *Id*. at 828. Thus, *Olszewski* too shows that this Court did not intend its *Cel-Tech* sentence fragment to contradict its "separate statute" requirement.

Also at page 15, Apple cites *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1125, which also quotes the sentence fragment. But surrounding that quote are two other sentences:

> [T]he reach of the UCL is broad, but it is not without limit and may not be used to invade "safe harbors" provided by other statutes. (*Cel–Tech, supra,* 20 Cal.4th at p. 182)  * * * * "To forestall an action under the unfair competition law, another provision must actually 'bar' the action or *clearly permit* the conduct." (*Id*. at p. 183, italics added.) [*Id*. at 1125.]

Document received by the CA Supreme Court.

15

Note the "by other statutes" and "another provision". Thus, far from supporting Apple's argument, *Loeffler* shows that this Court treated the sentence fragment as simply another way of stating the essence of *Cel-Tech's* holding: the "safe harbor" provision must appear in an "other statute" (or "other provision) devoted to immunizing the defendant's conduct generally. In the present case, there is no "other statute" — merely the Legislature's choice not to include unilateral conduct in the Cartwright Act.

At pages 15-16, Apple notes that *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 379, fn. 8, also cited the sentence fragment from *Cel-Tech* in a footnote. However, *Zhang* expressly reaffirmed *Cel-Tech's* central holding: "[I]n *Cel–Tech,* we explained that to bar a UCL action, another statute must absolutely preclude private causes of action or clearly permit the defendant's conduct." *Id*. at 370 and 379-380.

The question addressed in *Zhang's* footnote 8, and in the separate concurrence to which the footnote responds, was somewhat different from the issue here. It involved a private right of action, rather than a substantive defense, and the availability of an "unlawful" UCL claim rather than an "unfair"

Document received by the CA Supreme Court.

16

one.  See *Zhang*, *supra*, 57 Cal.4th at p. 388 (conc. opn. of Werdegar, J.).  But to the extent Apple is correct that *Zhang* departed from *Cel-Tech*'s central holding in the opinion's footnote 8, this is all the more reason for this Court to grant review in the current case.  Review would give the Court the opportunity to clarify any apparent conflict between that footnote and this Court's multiple rulings that "to bar a UCL action, another statute must absolutely preclude private causes of action or clearly permit the defendant's conduct."

Document received by the CA Supreme Court.

## CONCLUSION

Closely examined, Apple's Answer actually supports the need for this Court to grant review, in order to clarify its ruling in *Cel-Tech*, to prevent additional confusion in the lower courts, and to resolve conflicts between California and federal courts over the availability of UCL "unfairness" claims.

The Petition for Review should be granted.

Date: June 27, 2024

Respectfully submitted,
Moskovitz Appellate Team

/s/ Myron Moskovitz
By: Myron Moskovitz
Attorney for Petitioners

Document received by the CA Supreme Court.

## CERTIFICATE PURSUANT TO C.R.C. RULE 8.504(d)(1)

I hereby certify that the attached Reply to Answer to Petition for Review, including footnotes, contain 2,474 words, according to the word count indicator on my Microsoft Word program.

Date: June 27, 2024            /s/ Myron Moskovitz
                               Myron Moskovitz
                               Attorney for Petitioners

Document received by the CA Supreme Court.