UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　　*Plaintiff, Counter-defendant,*<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　*Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>JOINT STATUS REPORT |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

　　Pursuant to Your Honor's Discovery Standing Order, the Parties in the above-captioned action respectfully submit this joint statement related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP<br><br>　By: */s/ Yonatan Even*<br>　　　Yonatan Even<br>　　　*Counsel for Epic Games, Inc.* | WEIL, GOTSHAL & MANGES LLP<br><br>　By: */s/ Mark A. Perry*<br>　　　Mark A. Perry<br>　　　*Counsel for Apple Inc.* |

**Epic's Position:** Judge Gonzalez Rogers has tentatively set to resume the evidentiary hearings on Epic's Motion to Enforce Injunction on January 13, 2025. Epic is working diligently to ensure that Apple complies with the Court's Order instructing Apple to produce "all documents relative to the decision-making process leading to the link entitlement program and associated commission rates" (Dkt. 974) well in advance of that date. Epic has explained Apple's campaign of delay in past submissions to the Court (*see, e.g.*, Dkt. 1051; Dkt. 1040) and will not do so again here; rather, it lists below only new information that has come to light since the Parties' November 14 Joint Status Report (Dkt. 1051) and that further demonstrates that Apple did not comply with the Order to date.

*Clawbacks*: As noted in the November 14 Joint Status Report, Apple has clawed back 437 documents on the basis of privilege claims.[1] On November 20, Epic sent a letter to Apple challenging Apple's claims of privilege with respect to 305 documents Apple has clawed back. 277 of these documents fall into four categories of privilege claims the Parties have fully briefed in Dkt. 1039 that is pending before the Court: (i) Scare Screen and User Interface; (ii) Timelines; (iii) Commission-Related Decks; and (iv) Analysis Group Decks. 20 documents were videos depicting the in-app flow for linked out purchases; as Epic noted in the November 14 Joint Status Report, none of these videos contains any commentary or any form of legal advice. (Dkt. 1051.) The remaining 8 documents reflected presentations from the files of Apple public relations personnel and discussions among Apple public relations personnel, in both cases addressing Apple's press strategy.

Apple responded to Epic's objections on November 22, and the Parties met and conferred on November 25. With respect to the videos, Apple confirmed it clawed those back simply because they contain "drafts of the system disclosure sheet(s)"—Apple's term for the scare screens. (Nov. 22 Ltr. from M. Perry to Y. Even.) With respect to the clawed back press-related presentations, Apple claims those were drafts of outward-facing presentations that were prepared "in part" by lawyers; according to Apple, such documents are privileged even though they do not disclose any identifiable legal advice because lawyers were involved in putting them together. Apple argues below that its approach is more nuanced and that these documents contain legal "analysis", but these presentations were not prepared to advise Apple on any legal issue; rather, they were prepared to be used by Apple public relations in advising third parties as part of Apple's press strategy. Just because lawyers took part in putting litigation-related facts into an outward-facing press deck does not render the deck privileged, even in draft form, as it is not legal *advice*—let alone advice provided to any *client*. Finally, Apple claims that three exchanges among Apple public relations personnel were clawed back to apply redactions to portions that reference legal advice.[2] The Parties are at or close to an impasse as to all these documents; however, Epic believes the Court's resolution of the pending privilege dispute following the December 3 hearing may provide the Parties with guidance that would allow them to resolve the

---

[1] Pursuant to the Protective Order in this case, Epic recorded not only the "date, author, addresses, and topic" of clawed back documents, but also any "other information as is reasonably necessary to identify [the document] and describe its nature to the Court". Dkt. 274 § 12.4. Epic then destroyed all clawed back documents and has certified as much to Apple.

[2] Apple claims that one of the documents, APL-EG_10804686, is the subject of only minimal redactions. However, Epic has been unable to locate a redacted version of this document, and Apple's initial claw back letter claimed Apple is clawing it back in its entirety. (Oct. 24, 2024 Ltr. from J. Wesneski to Y. Even.)

dispute with respect to most or all of the clawed back documents, and Epic therefore intends to await that resolution before it proceeds to brief any dispute concerning these documents.

*Responsiveness*: As noted in prior Joint Status Reports, on September 30, Apple for the first time claimed that it "has reviewed nearly 1.5 million documents and has produced over 89,000 documents", and that "Epic's broad search terms resulted in a very low responsiveness rate for documents reviewed".[3] (Sept. 30, 2024 Ltr. from J. Lo to G. Bornstein.) These eleventh-hour claims of low yield—relative to the 1.5 million documents Apple had identified as potentially responsive—raised serious concerns as to the propriety of Apple's responsiveness and privilege review. To assess these concerns, Epic asked Apple to provide hit counts and responsiveness rates for each search string run by Apple. Apple first provided the hit count for each search string but refused to provide responsiveness rates, telling Epic to "determine for itself which search terms are present in any given produced document". (Oct. 16, 2024 Ltr. from J. Lo to Y. Even.) Epic warned that it cannot calculate yields that account for documents Apple identified as responsive but withheld for privilege (Dkt. 1042; Nov. 5, 2024 Ltr. from Y. Even to J. Lo), but to avoid further delay it went ahead and calculated yields based on produced documents only. The results only exacerbated Epic's concerns—Apple produced 5% or fewer of the documents hit by several search strings. Epic detailed its concerns to Apple by letter dated November 5, 2024, and invited Apple to meet and confer on this issue. In its response of November 11, 2024, Apple argued that Epic's yield calculations—showing Apple produced a minute portion of the documents that hit on most search terms—understate the actual yield of the search strings because they do not account for documents Apple determined were responsive but privileged, and therefore withheld from production. The Parties met and conferred on November 13, and Epic reiterated its request for per-search-string yield calculations that reflect documents withheld on claims of privilege—*i.e.*, data showing, on a per-search-string basis, the number of documents that were deemed by Apple to be responsive but privileged. This was not a "pivot[]" but another a reiteration of Epic's reasonable request for information that it had been asking for since early October. (*See*, *e.g.*, Oct. 1 Ltr. from Y. Even to M. Perry.)

Apple did not respond to Epic's request for 8 days. Then, on November 21, shortly after Epic stated it intends to brief the issue given the lack of any response from Apple, Apple finally provided the hit counts of documents withheld for privilege by search string. (Nov. 21, 2024 Ltr. from J. Lo to Y. Even.) As these numbers show, the majority of Epic's search strings in fact yielded a high rate of responsive documents—but Apple withheld an extraordinarily high proportion of these documents on claims of privilege. Specifically, Epic calculated the following overall yield and percentage of the responsive documents that Apple withheld on claims of privilege for each search string, and those are reflected below:

---

[3] Apple, in its part of this Status Report, continues to make the unsubstantiated claim that it had been warning Epic of the supposed "overbreadth" of certain search strings for months. That assertion is wrong twice over. *First*, Apple made no such warning; Apple keeps quoting statements it made with respect to only two search terms—related to Analysis Group and the Digital Markets Act—but Apple never claimed that other search terms are overbroad, it never alerted Epic to the fact that its document count ballooned into the millions until mere days before its substantial production deadline, and it never advised Epic that one of the search strings alone hit on nearly 440,000 documents, which is more than three times the number of documents hit by any other search string. (Appendix A to Oct. 16, 2024 Ltr. from J. Lo to Y. Even.) *Second*, Epic's search strings were not in fact overbroad. To the contrary, the data below show that 13 of the search strings had a responsiveness yield of 15% or more, with several having a responsiveness yield of over 50%.

| Search String | % Docs Marked Responsive | % Responsive Docs Withheld |
|---|---|---|
| commission* NEAR/5 (link* OR button* OR 27* OR 26* OR 12* OR "twenty-seven" OR "twenty-six" OR twelve OR window* OR duration* OR headline OR effective* OR blend* OR disc* OR reduc* OR alternat* OR affiliat* OR benchmark*) | 21% | 75% |
| discourag* NEAR/5 (iap OR "in-app" OR purchas*) | 81% | 73% |
| entitle* NEAR/5 (share* OR implement* OR adopt* OR eligible OR eligibility OR "3.1.1(a)") | 26% | 69% |
| injunction | 39% | 67% |
| link* NEAR/2 out | 59% | 62% |
| lookback OR look-back OR (look NEAR/2 back) OR (window* NEAR/2 (time* OR duration*)) | 7% | 58% |
| epic* OR fortnite* OR (project NEAR/2 liberty) OR sweeney | 15% | 58% |
| (pay* OR purchas* OR bill*) NEAR/5 (alternat* OR process* OR cost* OR 3p OR (third NEAR/2 party) OR third-party OR (3rd NEAR/2 party) OR outsid*) | 19% | 57% |
| (price OR pricing) NEAR/2 committee* | 11% | 55% |
| (disclos* NEAR/2 sheet*) OR (warn* NEAR/2 screen*) | 68% | 55% |
| (link* OR button*) NEAR/5 (external OR out OR purchas* OR transact* OR icon OR style OR templat* OR ux OR ui) | 26% | 54% |
| external NEAR/2 link* | 73% | 52% |
| linkout* OR steer* OR (anti BEFORE/1 steer*) | 18% | 51% |
| web NEAR/2 store* | 13% | 49% |
| "analysis group" OR ag | 7% | 45% |
| wisconsin | 48% | 37% |
| ▮ OR ▮ OR ▮ OR ▮ OR dma OR "digital markets act" OR netherlands OR nl OR korea OR kr OR (compliance NEAR/2 plan*) OR ucb OR "user choice billing" | 17% | 37% |
| michigan | 12% | 28% |

These numbers further confirm that Apple has engaged in gross overuse of privilege to conceal relevant, non-privileged documents and to frustrate the Court's Order requiring it to produce "all documents relative to the decision-making process leading to the link entitlement program and associated commission rates". (Dkt. 974.) And the fact it took Apple nearly two months to finally provide Epic with these highly relevant yield data is further proof of Apple's tactic of delay and obfuscation. Epic will continue to work to obtain the full discovery it and the Court are entitled to in order to be prepared to resume evidentiary hearings on its Motion to Enforce Injunction by January 13, 2025.

**Apple's Position**: Subject to the resolution of the privilege dispute pending before the Court, discovery is complete. There is no "campaign of delay" from Apple—Apple substantially completed its document production by the Court-ordered date of September 30 and has promptly responded to questions and requests from Epic regarding that production. The parties have submitted a single Joint Discovery Letter regarding a dispute over privilege issues. The Court has scheduled a hearing for December 3.

Epic has raised other questions and issues regarding privilege and responsiveness, to which Apple has responded and is continuing to meet and confer. Apple is not aware of anything that requires (or is likely to require) the Court's intervention.

*Clawbacks*: Epic sent Apple a letter on November 20 objecting to certain documents clawed back by Apple for privilege and demanding a meet-and-confer within the next 48 hours. Apple responded on November 22 with a detailed explanation of the bases for its privilege assertions. The parties thereafter met and conferred on November 25. The parties agree that the majority of Epic's privilege objections are covered by the privilege dispute already pending before the Court.

With respect to the other documents to which Epic has objected, Apple has repeatedly explained to Epic that it is not its position that documents "are privileged even though they do not disclose any identifiable legal advice, simply because lawyers were involved in putting them together." Apple has produced numerous documents that lawyers "were involved in putting" together, redacting privileged information as appropriate. The withheld documents at issue here, however, are slide decks and documents that contain summaries, analyses, and discussions of *this litigation*. Apple's position is that documents containing or reflecting *legal* analysis are privileged.[4] The fact that some versions of these documents were ultimately presented to members of the press does not vitiate the attorney-client privilege as to the advice rendered in connection with and reflected in drafts.[5]

In any event, the parties are continuing to meet and confer. Apple disagrees that the parties are at or close to an impasse—Epic requested follow-up information during the parties' meet-and-confer—and Apple intends to continue to work cooperatively with Epic to resolve any disputes without the need for judicial intervention.

*Responsiveness*. As early as July, Apple pointed out that Epic's search terms were too broad, and would yield large numbers of non-responsive documents and result in a burdensome and time-consuming review for Apple's attorneys. See Dkt. 1003, at 4 ("Apple's position is not that Epic's searches would yield some non-responsive documents; it is that the great majority of the search results would be non-responsive . . . ."). Epic refused to narrow its search terms. Dkt. 1024, at 4 (noting that when Apple raised concerns about broad search terms Epic responded that this was a non-issue because "every search string is intended to capture some documents that are

---

[4] Epic has argued that Apple's assertion of privilege over documents "reflecting" legal advice is vague or improper. But that is the standard the Ninth Circuit has articulated. *See Doe v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989) (vacating order that would require production of "documents which are or reflect confidential attorney-client communications").

[5] At Epic's request, Apple is looking into and will provide further information regarding three other documents withheld or redacted for privilege.

non-responsive; that is precisely the purpose of a responsiveness review. The fact that a search string would capture some non-responsive documents is hardly remarkable.").

Despite having insisted on broad search terms, Epic complained on November 5 that "Apple has produced surprisingly small percentages of documents for several search strings that appear to relate almost exclusively to Apple's compliance with the Injunction." Nov. 5, 2024 Ltr. From Y. Even to J. Lo. Epic's concern arrived long after Apple warned of (1) the burden of Epic's imprecise terms, (2) well over one million documents being reviewed, and (3) its expenditure of significant resources to review and produce by the deadline. The responsiveness rate issue was raised in a July 12, 2024 meet and confer and would have been apparent to Epic once Apple achieved substantial completion of its production, but Epic has just now initiated a meet and confer—only when a tentative hearing date has been set.

In its response to Epic on November 11, Apple provided Epic with critical analysis of each challenged search string to explain why it was overbroad. Among other things, Epic entirely ignored that (1) not every search term hits on a responsive document (e.g., a hit for "michigan" does not necessarily mean the document will concern Project Michigan), and (2) there are privileged documents not included in Epic's metrics. Apple also described some of the non-responsive documents, and further explained why Epic's search strings intentionally increased the likelihood of capturing not responsive documents.

Rather than take issue with Apple's response, Epic instead pivoted to yet another set of supposed concerns. Epic requested additional metrics as well as additional accounting of potential sources of non-responsive information. Epic also sought an explanation of the "predominant" reason why certain search strings produced false negative results. These concerns could have been raised earlier when Apple was previewing the issue months ago during meet and confer and had achieved substantial completion at the end of September.

For example, Epic asked why the term "Michigan" hit on fewer responsive documents than "Wisconsin." Apple's witnesses already answered this question: the "Project Michigan" codename was used for a relatively short amount of time compared to the "Project Wisconsin" codename. Nov. 21, 2024 Ltr. from J. Lo to Y. Even. Epic asked why there were so many non-responsive documents for the search term "Analysis Group." But Epic's search term was not "Analysis Group," it was "'analysis group' OR ag." The search string "ag" hit on a large volume of nonresponsive documents because when Germanophonic businesses are referenced in Apple documents it is common to include the term "AG."

Finally, Apple provided additional information about responsive documents that were withheld for privilege. Epic claims this is a "gross overuse of privilege to conceal documents," but ignores that the discovery here seeks documents relating to compliance with a court order that necessarily involved lawyers and legal advice throughout the process. That Apple has withheld and redacted documents is not surprising, nor is it news to Epic—Apple consistently provided Epic with privilege logs explaining its privilege claims. Moreover, Epic's complaints of "delay and obfuscation" miss the mark as well. Apple has appropriately completed, on time, a significant review and production that required massive quality control work and, as it cautioned in July, substantial review of not responsive documents. Such substantial work takes time.

Apple has gone well beyond its obligations to resolve this dispute and has been responsive to Epic's repeated requests for metrics. Significantly, after several rounds of requested information, examples, and metrics that support Apple's low responsiveness rate, Epic has yet to articulate an actual issue. Epic's sole position has been that the responsiveness rate is low, which should not have been a surprise, given the record Apple made on that subject (and tried to rectify by narrowing terms) and has been shown justifiable in subsequent meet and confer. The parties are continuing to meet and confer on these issues.

Respectfully submitted,

DATED: November 27, 2024

CRAVATH, SWAINE & MOORE LLP
By: */s/ Yonatan Even*
*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: */s/ Mark A. Perry*
*Counsel for Defendant Apple Inc.*