1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Thomas S. Hixson, Magistrate Judge

4

5    EPIC GAMES, INC.,                )
                                      )
6            Plaintiff,               )
                                      )
7    vs.                              )   Case No. C 20-05640-YGR
                                      )
8    APPLE, INC.,                     )
                                      )
9            Defendant.               )
     _____  )

10

11                                    San Francisco, California
                                      Tuesday, December 3, 2024

12

13     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 1:01 - 1:31 = 30 MINUTES

14   APPEARANCES:

15   For Plaintiff:

16                             Cravath, Swaine & Moore, LLP
                               375 Ninth Avenue
17                             New York, New York 10001
                          BY:  YONATAN EVEN, ESQ.

18   For Defendant:

19                             Gibson, Dunn & Crutcher, LLP
                               333 S. Grand Avenue
20                             Los Angeles, California 90071
                          BY:  JASON C. LO, ESQ.

21                             Weil, Gotshal & Manges, LLP
                               2001 M Street, NW
22                             Suite 600
                               Washington, D.C. 20036
23                        BY:  MARK A. PERRY, ESQ.

24

25

2

1   Transcribed by:              Echo Reporting, Inc.
                                 Contracted Court Reporter/
2                                Transcriber
                                 echoreporting@yahoo.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Tuesday, December 3, 2024</u>                                <u>1:01 p.m.</u>

2                          P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4          THE CLERK:  All right, everyone.  Good afternoon.

5  We are here in Civil Action 20-5650, Epic Games versus

6  Apple, Inc., the Honorable Thomas S. Hixson presiding.

7      Counsel, please state your appearances.  Let's start

8  with Plaintiff's counsel.

9          MR. EVEN (via Zoom):  Yonatan Even for Epic Games.

10 Good afternoon, your Honor.

11         THE COURT:  Good afternoon.

12         MR. PERRY (via Zoom):  Mark Perry for Apple, your

13 Honor.  Good afternoon.

14         THE COURT:  Good afternoon.

15         MR. LO (via Zoom):  Good afternoon.  Jason Lo,

16 also for Apple.

17         THE COURT:  Good afternoon.

18     We're here today to discuss Apple's claims of attorney-

19 client privilege.  Epic has reported in one of the status

20 reports that Apple has produced approximately 95,000

21 documents but withheld approximately 57,000 documents.  So,

22 there have been a large number of withholdings, and Epic has

23 argued that Apple has improperly withheld many of these

24 documents.

25     Yesterday I issued an order addressing 11 examples of

4

1  disputed claims of privilege, and I had largely rejected

2  Apple's claims of privilege and work product, and there's 11

3  examples.  But today I wanted to discuss with the parties

4  how we deal with the 57,000 documents.  I do not personal --

5  oh, and before we continue further, I should let counsel

6  know that there is some construction going on outside of the

7  Federal Courthouse -- outside of the Federal Building that

8  is.  So, if you hear loud noises during the hearing, that's

9  what that is.

10      In any event, turning back to the subject at hand, I do

11  not personally have the bandwidth to review 57,000 documents

12  to determine if the privilege claims are appropriate or not.

13  I know that the parties have been meeting and conferring

14  about these issues.  So, I wanted to get your thoughts about

15  what the best way to proceed is.  I would be happy to

16  continue ruling on samples or examples that the parties

17  think might raise issues that come up on many occasions if

18  -- if that would be useful for the parties.  Maybe we should

19  also talk about whether a special master might be

20  appropriate in this situation.  I can't appoint a special

21  master.  That would have to be done by Judge Gonzalez

22  Rogers, but I could make a recommendation about whether a

23  special master would be appropriate.

24      I'm also guessing that since the parties have both been

25  thinking about these issues and meeting and conferring, you

5

1  have -- might have some additional ideas about what might be

2  good ways to approach the 57,000 documents.

3      So, first, let me turn to Epic Games, and please give

4  me your thoughts.

5          MR. EVEN:  Thank you, your Honor.

6      I'd like -- I'll try to be quick.  I guess I have four

7  quick points on this.  The first is that, as we understand

8  yesterday's rulings, we challenged four documents that were

9  completely withheld, and your Honor overruled those claims

10 completely.  We challenged very specific redactions on six

11 other documents that were redacted.  I believe, unless I'm

12 missing something, that your Honor overruled all the

13 redactions that we actually challenged, and then your Honor

14 looked at other redactions and found that many of those

15 redactions that we didn't even challenge because we didn't

16 have enough information for a good faith challenge were also

17 overbroad.

18      And, so, where we are now is that we have these

19 findings by your Honor.  We have challenges that we made

20 that we thought were blatant inappropriate privilege calls.

21 We think that your Honor appropriately stated -- correctly

22 stated yesterday that the legal advice requested by counsel

23 and the advice provided are privileged, but that's it and

24 that Apple's approach in this case has not been a stretch or

25 even aggressive.  It's just been a complete departure from

6

1 that principle.

2     We have Document 646 which we briefed to your Honor

3 about this as a good example.  We challenged the specific

4 statement from Mr. Schiller that's at the top of page 653.

5 Apple objected and said that this statement explicitly

6 refers to legal advice.  We said that was blatantly false

7 because another document actually revealed that language.

8 Apple did not relent.  It doubled down.  It clawed back

9 Document 488.

10     We explained in our papers again that this is improper.

11 Apple actually gave your Honor Document 488 as it was clawed

12 back.  So, that was not even a document we challenged.  That

13 was a document we provided as an example to the Court of

14 language that we've -- that showed language in unredacted

15 format that Apple elsewhere redacted and was improper.

16     Your Honor looked at that and found that, in fact, the

17 document was itself overly redacted, even the document we

18 didn't challenge.  But that document is not, in fact, the

19 document we have now.  Apple has since clawed back and

20 reproduced that document adding 21 new redactions to that

21 document.  And your Honor I think should have that.  At

22 least Apple told us that it gave your Honor something with

23 the highlighting showing the additional 21 redactions.

24     And, so, we -- we have a real issue of dealing with it

25 because it's not like we have a partner on the other side

7

where we can meet and confer and if we show something or

they review something, then in good faith we get the

document back, nor can we really meet and confer on 57,000

documents, which brings me to the third point, which is with

the 57,000 documents, we now have data that we provided to

your Honor in the last -- the last report, status report

that shows that specific core search strings produced

documents that your Honor has now found to not be

privileged, yet Apple withheld upwards of 50 percent of

those.  For instance, Apple withheld as privileged 55

percent of responsive documents hitting the scare screen

search term.  Apple withheld 51 percent of the analysis

group search screen.  Apple held -- withheld 75 percent of

responsive documents hitting on a search string concerning

the 27 percent commission.

     All this brings me to the remedy I guess, which is your

Honor's question.  We think that as things stand right now,

this is a win win for Apple if we challenge them.  They've

offered before that we should raise it on a document-by-

document basis.  That's untenable, and it takes forever.  We

can't brief and rebrief 11 documents at a time.  And, so, if

we do that, they win.  And if we don't challenge it, we

don't get the documents, and they win.  And we think that

given the weakness of the privilege claims as reflected in

your Honor's order from last night, we think this is a clear

8

1  litigation tactic.  This is not a mistake or a one off

2  error.  This is Apple having, frankly, bogus privilege

3  claims and then standing -- standing its ground and refusing

4  to back down, even when we call them on it, and they do it

5  for thousands and thousands of documents, and we are now six

6  months since the Court's ordered for them to produce all

7  documents, and we just don't have the documents.

8       So, we, frankly, think that at this point, given that

9  this is I don't think strike one or two or three by Apple on

10 -- on trying to withhold the documents in this case.  We --

11 we got to your Honor because Judge Gonzalez Rogers, frankly,

12 gave up on -- because of the timing that it took and because

13 Apple was playing games around producing documents from a

14 single custodian.  We had the issue with the incessant

15 delay.  It took us forever to get the yield numbers.  It

16 took us a long back and forth to get last night's decision.

17 We think there's an issue here of abuse, and we think that

18 the right remedy for abuse is to somehow break the win win

19 situation for Apple.  And, frankly, if you abuse it, you

20 lose it, and we think that's probably the most correct

21 outcome here is for Apple to just provide Epic with these

22 documents and lose the protection it's entitled to.

23      Short of that, if your Honor is not inclined to do

24 that, we think it's perfectly clear that a re-review is

25 warranted, but it can't be by Apple because Apple has made

9

1   it abundantly clear that a re-review by them just can't be

2   trusted.  That means probably a special master.  It can be

3   special masters in plural that Apple finances and pays for

4   and they do a quick job and review all of this or it can do

5   a -- be a process where Apple re-reviews but it knows that

6   the document either comes to Epic or it goes to a special

7   master or special masters if the -- if they decide to stand

8   on a privilege claim.  But we are now in front of a

9   situation that's really untenable in terms of just meeting

10  and conferring and continuing the situation because it's not

11  that we're not going to get the documents we need ahead of

12  the January 13 2025 proposed hearing date.  It's that if

13  it's up to Apple, we're not going to get them for a January

14  13, 2026 hearing.

15          THE COURT:  All right.  Thank you.

16      Let me turn to Apple.  Please give me your thoughts.

17          MR. PERRY:  Thank you, your Honor.  I agree that

18  what has happened is untenable but for very different

19  reasons.  And let me start with the point that Epic has not

20  moved to compel a single document in this case, right?

21      The dispute actually before the Court is Epic's request

22  for a ruling that four categories of documents are

23  categorically not privileged.  The Court has not ruled on

24  that motion.  Epic provided 11 exemplar documents.  It's not

25  a motion to compel, and, therefore, we did not provide and

10

1 did not have the opportunity to provide declarations and the

2 normal source of evidence that the Court would need to

3 decide this privilege dispute.  And with all respect, Judge

4 Hixson, the ruling lacks context and makes a number of

5 significant errors.

6      If I could make just a couple of examples.  Document

7 2094, which is the final Price Committee deck, the Court

8 ruled that the document is not privileged.  The document is

9 not privileged.  We agree.  Epic has that document.  It, in

10 fact, was introduced as evidence in the trial.  The

11 privilege claim here is that the version of the document

12 that was withheld was collected by litigation counsel and

13 provided to Mr. Schiller, a witness, to prepare him for

14 trial, and it was in a file collected with other litigation

15 preparation materials, and the claim of privilege clearly

16 attaches to that.  That is the claim of privilege.  It was

17 not ruled on by the Court, and it is not bogus.  It is

18 absolutely ironclad.

19      Second, your Honor, the draft Press Deck, Document

20 1068518, the Court said in its ruling that a case summary

21 prepared by a lawyer and delivered to his client would be

22 privileged.  That is exactly what we redacted.  Jen Brown,

23 Jennifer Brown is a lawyer for apple.  She prepared a case

24 summary and delivered it to her client, Apple, in that

25 draft --

1          THE COURT:  It wasn't for the client.  It was a

2    draft press release -- or draft press briefing that was

3    external.  This was not a lawyer advising the client.

4          MR. PERRY:  Your Honor, I would respectfully

5    disagree for two reasons.  First, the fact that it is

6    ultimately delivered to the public doesn't mean that the

7    draft is not privileged.  My argument notes that are

8    delivered to the client are attorney-client privileged even

9    if I say the same words out loud in open court on a

10   transcript.  That's just black letter privilege log.

11       Second, it was delivered to the client -- and we would

12   establish this by a declaration if we went in the normal

13   course on a motion to compel -- it was delivered to the

14   client for review and comment as with all of these things

15   and had feedback on it.  And that is not final.  The final

16   version of the press report, again, Epic has it.  They only

17   want the previous versions to see what changes, which is,

18   again, reverse engineering the advice or the change in

19   advice that was given.

20       The Court also said in its ruling on that document that

21   it had to be received by a lawyer, but it goes both ways.

22   It was received by a client.  It was delivered by a lawyer

23   to a client as part of an ongoing provision of advice.

24       One more point.  My friend, Mr. Even, mentioned what he

25   calls the scare screens, what we call the system disclosure

12

1  sheets.  The Court said in the ruling that those -- that

2  common sense said they were driven by engineering and

3  marketing.  Well, the facts are the text was written by

4  Legal.  It was edited by Legal.  It was revised by Legal,

5  and it was extensively commented on by Legal.  It was not

6  driven by engineering and marketing.  And the reason for

7  that, as we put in our papers, is that a similar issue was

8  being litigated by Epic in the Google litigation in front of

9  Judge Donato.  And the lawyers were monitoring that

10 litigation and advising on the language to be used in the

11 system disclosure sheet, and that is why the redactions were

12 properly made, because all of those versions can and will by

13 Epic, if these documents are produced, be used to reverse

14 engineer the advice that was received.

15      And, more generally, your Honor, again, the ruling

16 seems to reflect a bit of a -- a four corners approach to

17 privilege which is taking these documents out of the context

18 from which they are prepared.  This entire exercise was the

19 response to a court order.  Judge Gonzalez Rogers ordered

20 Apple to do something, and the litigators, including myself,

21 including Mr. Lo, including a host of in-house counsel,

22 extensively advised the business on what could and couldn't

23 be done in compliance with the injunction, and it is not

24 surprising, as we've said, that so many documents are

25 privileged.  What is surprising, frankly, is that, for

1  example, the analysis group drafts where the documents

2  clearly show that analysis group was retained by the company

3  at -- with the advice of counsel to prepare a -- an analysis

4  for purposes of this injunction, that the drafts that went

5  to Legal, such as the document that was in the set, are, in

6  fact, privileged.  It says on the cover, "Prepared at the

7  request of counsel," as it was, and it was reviewed and

8  commented on by counsel.  Again, the final version, Epic has

9  it.  Everybody has it.  That's fine.  It is not, however,

10  the case, that a -- that a litigation-related drafting

11  project like with an expert, like with a consultant, is --

12  is not privileged.  And, again, I think the context seems to

13  have dropped out of this discussion.

14        THE COURT:  Well, I disagree with everything

15  you're saying.  And the fact that you are making these

16  meritless arguments causes me a lot of concern.

17        MR. PERRY:  Your Honor, with respect, they're not

18  meritless.  They are well rounded in privilege log and the

19  facts of this case and the way this case developed, you

20  know, the way the analysis group was retained, for example.

21  That is all matters that were in the trial record that is

22  clear from -- from the information.  I understand we can

23  have a disagreement, but, you know, we'd like to have our

24  side of the story heard.  You know, again, we've not had a

25  motion to compel.  We have not put any declarations in.  We

14

1  have not put any evidence in on this.

2      You asked about a -- a process.  Challenging documents

3  on a log has a process.  It's called a motion to compel.

4  Epic hasn't brought one.  It could.  It has had these logs

5  for months.  It could bring a motion to compel on any or

6  every document, and we would respond to it in the usual way

7  with declarations and evidence and -- and information to

8  contextualize the statements, the documents, the redactions,

9  and so forth.

10          THE COURT:  Your argument that you didn't have an

11  opportunity to brief this is wrong.  The parties filed a

12  joint discovery letter brief, which is the proper process

13  for raising discovery disputes.  It's not through formal

14  motion briefing.  You filed a joint discovery letter brief

15  arguing about certain categories of documents and then

16  discussing 11 specific documents over which the parties have

17  a dispute as to claims of privilege.  I ordered Apple to

18  file the documents as produced on the record, and then I

19  ordered Apple to provide for in-camera review the unredacted

20  documents, and I reviewed them and I reviewed Apple's

21  privilege log, and the privilege log is supposed to

22  substantiate the claim of privilege, and then I made my

23  privilege rulings.  You weren't deprived of an opportunity

24  to brief this.  You briefed it in the normal way that

25  discovery disputes are -- are briefed, and you simply came

15

1  up empty on the merits.

2          MR. PERRY:  Your Honor --

3          THE COURT:  I'd like to talk about the going

4  forward issue because we have the 57,000 documents, and we

5  need to have a process for how to address those.  So, if you

6  could please turn to that issue.

7          MR. PERRY:  Happily, your Honor.  I do think it is

8  a -- a project the parties need to undertake with each other

9  in good faith, and I'm -- I'm a little surprised to hear --

10 I think we do work together well.

11     The Court mentioned a special master.  I think -- I'm

12 not sure there's any other way to do it, frankly, than to

13 have a special master.  We had a special master, as I

14 recall, in the merits litigation for certain similar issues,

15 and I believe that process worked quite well.  And, you

16 know, I -- if that is the path forward, that -- that is one.

17     The -- the other, which is for Epic to decide what it

18 actually wants.  It has the logs.  It has studied the logs.

19 There are many repetitions in these documents.  They have

20 many -- and they have hundreds -- almost 100,000 documents.

21 You know, I don't think they want 57,000 documents.  I don't

22 think they need 57,000 documents.

23     What is it that they think they don't have that they

24 think is an improper claim of privilege?  I don't know what

25 that number is.  They haven't told us.  If that number is

1  manageable, if it is 50 or 100 or 1,000 even, we could all

2  deal with it and be done, and that's on them I think to say

3  what it ips they think they -- they need or want that they

4  don't think is sustained by the privilege calls already

5  made.

6          THE COURT:  Well, let me turn to Epic.  Do you

7  even know the answer to that question?

8          MR. EVEN:  No, your Honor.  I don't know what I

9  don't know.  The problem is that part of our -- our briefing

10  was about the privilege logs where I have like, for

11  instance, 22,000 documents saying privileged because it's

12  regarding legal advice about injunction.  This was the only

13  essentially request for production here.  It wasn't a

14  request.  It was an order for production, produce all the

15  documents about the injunction.  That doesn't give me

16  anything.  And as I -- as I explained in my opening remarks,

17  we now know that when your Honor looked at many privilege

18  claims that we didn't even challenge because we didn't have

19  the information, your Honor still found that those are

20  unsubstantiated.

21      And, so, I don't know what is the expectation of us at

22  this point to do more on that.  We provided the -- the

23  categories that were so blatantly obvious that it was clear

24  to us that there's no -- that the privilege claims don't in

25  our view pass the laughing test.  And then we said, and

17

everything else, of which there are tens of thousands, we just don't know what's in there. In addition to that, we now have these numbers that show us that very coerced search strings hit on thousands of documents of which 50, 60, 80 percent were withheld for privilege. We don't know which these are obviously, and there's no way for us to know that.

So, we have a real break in -- in trust here between the parties. I don't think this is working well for us on this front, and -- and everything I've heard from Mr. Perry right now doesn't cause me -- you know, doesn't give me additional confidence that going forward this is going to somehow work.

THE COURT: Let's talk about process. In terms of hiring one or more special masters, would the two sides like me to give you some time to meet and confer about how you'd like to do that or potentially identify one or more special masters and then see if you can come up with a plan? I would only have a few days because I would want the parties to figure this out, and then we could come back for a further hearing. I've raised with the parties the special master idea, but I imagine you would each want to talk with your co-counsel and your client about how exactly that would work.

Let me first turn to Epic. Do you think I should tell the parties to meet and confer about one or more special

18

1   masters and then we could set a further hearing date after

2   you've had the opportunity to talk with your client and co-

3   counsel and we can come back?

4           MR. EVEN:  I think we can do that, your Honor.

5   But I think this needs to come to a head sooner rather than

6   later.  So, we can have very limited time to -- for me to

7   confer with my client and then confer with Apple and quickly

8   come back to your Honor and -- and either come to a

9   stipulation or come to a ruling, but I do think that what we

10  need here is more than a single special master or else Apple

11  will again do its calculation and say, Well, we can load up

12  57,000 documents on a single special master because we're --

13  we are standing on all our privilege claims, and if there's

14  no sanction at the end -- at the end of that tunnel, then I

15  don't know what are we to do with that other than tell the

16  special master, Well, take your time and do it.

17          THE COURT:  Mr. Perry, let me turn to you.

18  Process wise, do you think it's appropriate to have each

19  side have a -- a couple of days to confer with co-counsel

20  and their client about special masters in terms of how you'd

21  like to proceed?

22          MR. PERRY:  I do, your Honor.  And I agree with

23  Mr. Even.  I think we can proceed quickly after we consult

24  with our clients, consult with each other.  I think we can

25  come to a path forward I suspect talking about it.  I --

19

1  yes.

2          THE COURT:  Okay.  Go ahead.

3          MR. EVEN:  May I point out one more thing, your

4  Honor?  I do think that whatever comes out from the special

5  master process, we will need some very clear guidance from

6  your Honor in light of the findings of last night's order,

7  meaning Apple cannot continue to stand on claims such as the

8  ones it stood on in those papers, which I am concerned about

9  given Mr. Perry's position as stated right now.

10          THE COURT:  Well, the goal of the order was that I

11  was ruling on 11 examples.  And, so, then other documents

12  that are similar to the ones that I've ruled on I would

13  expect Apple to apply that ruling to those other documents

14  that are similar or, alternatively, Apple could appeal me to

15  Judge Gonzalez Rogers, but it should be one of those two.

16  Either Apple appeals my discovery order or if Apple decides

17  to live with it, then it should follow it and apply the

18  order to other documents.

19      Let me turn to Apple.  Is it your understanding that

20  you should do one of those two?

21          MR. PERRY:  We agree, your Honor, and -- and, to

22  be transparent, we have not decided which -- which path --

23  which of those paths to go down.  We wanted to have this

24  discussion first, but those are the two paths that we see

25  with regard to the 11 documents in the order.

1          THE COURT:  Okay.  Good.  Then, also, one issue

2   that sometimes comes up with special masters is who should

3   pay for them.  The parties can agree to whatever you want.

4   I'll just give you the benefit of my thinking.  I think that

5   the parties should split the cost of one or more special

6   masters.  Both sides have large resources, and if one side

7   bears all of the costs and the other side bears none of the

8   costs, that gives me a structural concern about incentives

9   that might be created, and I think it's best to avoid those

10  kind of incentives.  And, so, I think having the two sides

11  split the costs best incentivizes the parties to behave in

12  an appropriate manner.

13      Now, let's get out our calendars and figure out when we

14  should come back for the next hearing.  Today is Tuesday,

15  December 3rd.  I could have a hearing on Thursday, December

16  5th if that would work for the parties.

17      Does that work for Epic?

18          MR. EVEN:  It does, your Honor.

19          THE COURT:  And does that work for apple?

20          MR. PERRY:  It does, your Honor, with one conflict

21  in the middle of the afternoon Eastern Time, but this time,

22  for example, would work perfectly on Thursday, December 5th,

23  at 1:00 o'clock Pacific.

24          THE COURT:  That would work for me as well.  Does

25  that work for Epic?

1          MR. EVEN:  It does, your Honor.

2          THE COURT:  Okay.  Then we'll set a further

3   discovery hearing for December 5th at 1:00 p.m.  And between

4   now and then, I order the parties to meet and confer about

5   one or more special masters to deal with the 57,000

6   documents, and then on December 5th, the two sides can

7   update me with where you stand.

8          MR. EVEN:  Thank you.

9          THE COURT:  And the special masters don't have to

10  be a complete substitute for asking me to rule on additional

11  examples.  If there are additional examples of documents

12  that Epic would like me to rule on, I'm happy to do that as

13  well.  It's just I would be ruling on examples, and the idea

14  behind the special master or special masters is to find a

15  path toward the 57,000 documents.

16         MR. EVEN:  Thank you.

17         THE COURT:  Is there anything else that Epic would

18  like to discuss at this hearing today?

19         MR. EVEN:  Yes, one more small point, your Honor,

20  if I may.  We have asked Apple last night for the documents

21  that your Honor has already ruled on.  They told us this

22  morning they are still conferring with their client.  I was

23  hoping to get those ahead of this hearing so I can be -- you

24  know, cross through the veil of ignorance as it were as to

25  what's under these redactions.  I don't think we're going to

22

1  discuss these documents again on Thursday, but on the off
2  chance that we would, I would ask your Honor to order Apple
3  to produce those promptly.

4          THE COURT:  Well, Apple has the right to appeal my
5  discovery order to Judge Gonzalez Rogers.  And, so, Apple --
6  I think that  they can wait until that time.  Apple should
7  make a decision about whether it's going to appeal.

8      Apple, if you decide that you're not going to appeal,
9  then I would expect you to provide those documents to Epic
10 right away, but it's up to you to make your decision.

11         MR. PERRY:  Understood, your Honor, and agreed.

12         THE COURT:  Is there anything else that -- oh, go
13 ahead.

14         MR. EVEN:  No.  I was just saying thank you, your
15 Honor.

16         THE COURT:  Okay.  Is there anything else that
17 Apple would like to raise at this hearing today?

18         MR. PERRY:  Not today, your Honor.  Thank you for
19 the time and the attention.

20         THE COURT:  Okay.  Thank you, Counsel.  We will
21 come back on December 5th at 1:00 p.m. Pacific Time for a
22 further hearing.  We're adjourned for the day.

23     (Proceedings adjourned at 1:31 p.m.)

24

25

23

CERTIFICATE OF TRANSCRIBER

1

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14                    

15

16             Echo Reporting, Inc., Transcriber

17                Friday, December 6, 2024

18

19

20

21

22

23

24

25