| | |
|---|---|
| PAUL J. RIEHLE (SBN 115199)<br>paul.riehle@faegredrinker.com<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>Four Embarcadero Center<br>San Francisco, California 94111<br>Telephone: (415) 591-7500<br>Facsimile: (415) 591-7510<br><br>GARY A. BORNSTEIN (*pro hac vice*)<br>gbornstein@cravath.com<br>YONATAN EVEN (*pro hac vice*)<br>yeven@cravath.com<br>LAUREN A. MOSKOWITZ (*pro hac vice*)<br>lmoskowitz@cravath.com<br>JUSTIN C. CLARKE (*pro hac vice*)<br>jcclarke@cravath.com<br>MICHAEL J. ZAKEN (*pro hac vice*)<br>mzaken@cravath.com<br>M. BRENT BYARS (*pro hac vice*)<br>mbyars@cravath.com<br>**CRAVATH, SWAINE & MOORE LLP**<br>375 Ninth Avenue<br>New York, New York 10001<br>Telephone: (212) 474-1000<br>Facsimile: (212) 474-3700<br><br>*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.* | RICHARD J. DOREN, SBN 124666<br>rdoren@gibsondunn.com<br>DANIEL G. SWANSON, SBN 116556<br>dswanson@gibsondunn.com<br>JASON C. LO, SBN 219030<br>jlo@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)<br>crichman@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br><br>JULIAN W. KLEINBRODT, SBN 302085<br>jkleinbrodt@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111<br>Telephone: 415.393.8200<br>Facsimile: 415.393.8306<br><br>MARK A. PERRY, SBN 212532<br>mark.perry@weil.com<br>JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice* pending)<br>joshua.wesneski@weil.com<br>**WEIL, GOTSHAL & MANGES LLP**<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Telephone: 202.682.7000<br>Facsimile: 202.857.0940<br><br>*Attorneys for Defendant and Counterclaimant Apple Inc.* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>       Plaintiff, Counter-defendant,<br><br>       v.<br><br>APPLE INC.,<br><br>       Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Courtroom: 1, 4th Floor<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

Pursuant to the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, the Court's Standing Order in Civil Cases, and the Court's Minute Entry of November 4, 2024 (Dkt. 1048), Plaintiff and Counter-defendant Epic Games, Inc. ("Epic"), and Defendant and Counterclaimant Apple Inc. ("Apple"; Apple and Epic together, the "Parties," and each individually, a "Party"), by and through their undersigned counsel, hereby submit this Joint Case Management Statement in advance of the December 16, 2024 Case Management Conference.

## I. DISCOVERY

On May 31, 2024, the Court ordered Apple to produce "all Apple's documents relative to the decision-making process leading to the link entitlement program and associated commission rates." (Dkt. 974.) On June 18, 2024, the Court ordered that all discovery matters be referred to Magistrate Judge Hixson, including the "[P]arties' ongoing dispute relative to the scope and timing of an additional production of documents concerning defendant Apple, Inc.'s decision-making process for the link entitlement program and associated commission rates." (Dkt. 985.) Magistrate Judge Hixson ordered Apple to substantially complete its document production by September 30, 2024. Apple produced approximately 89,000 documents by that date. (Dkt. 1036 at 4.) Between September 30 and October 27, 2024, Apple produced approximately 10,000 additional unique documents. Apple has withheld or redacted approximately 57,000 documents on the basis of privilege claims. (Dkt. 1039.) Apple has also clawed back 437 documents on the basis of privilege claims. (Dkt. 1055 at 2.)

On October 27, the parties briefed a privilege dispute wherein Epic challenged Apple's privilege claims. Epic argued that four categories of documents that Apple withheld or redacted (system disclosure sheets, draft Price Committee decks, communications with Analysis Group, and launch date information) were withheld on the basis of facially improper privilege claims and that the descriptions in Apple's privilege logs were insufficient as to tens of thousands of documents. Epic included references to 11 documents that, in Epic's view, were examples of the types of documents that Apple improperly withheld or to which Apple applied improper redactions. (Dkt. 1039.) On October 30, Judge Hixson requested the produced copies of

1  documents discussed in the brief, together with their privilege log entries, to "help the Court
2  understand the nature of the dispute" (Dkt. 1039); Apple provided this information on November
3  1, 2024.  Dkt. 1043 and 1044.  On November 20, Judge Hixson ordered Apple to provide
4  unredacted copies of the documents (Dkt. 1052), which Apple did.  On December 2, following *in*
5  *camera* review of those 11 documents, Judge Hixson ruled on Apple's privilege claims relating to
6  the 11 exemplar documents.  (Dkt. 1056, the "December 2 Order".)  Apple intends to file a
7  Motion for Relief from the December 2 Order pursuant to Local Rule 72-2 and Federal Rule of
8  Civil Procedure 72.

On December 3, 2024, Judge Hixson held a hearing at the end of which he directed the Parties to propose a plan to address Apple's privilege claims with the assistance of one or more special masters, subject to approval by this Court.  The Parties have met and conferred and on December 5, 2024, at a hearing before Judge Hixson, advised him that they agreed in principle to the following course of action:

- Apple will re-review all of its privilege assertions.
- Apple will organize the documents it re-reviews into the following three categories of documents:

   **Category One**: Documents that Apple continues to maintain are privileged in whole or in part.

   **Category Two**: Documents that Apple maintains are privileged in whole or in part, but that may not be privileged under the December 2 Order.  Apple reserves the right to further evaluate documents in this category following this Court's ruling on its forthcoming Motion for Relief.

   **Category Three**: Documents that Apple does not view as privileged.

- Apple will conduct this review at an expedited but reasonable pace. Epic has requested a pace of approximately 20,000 documents per week.  Apple has committed to get as close as possible to that number, noting it believes the number may have to be closer to 15,000 documents per week.  The Parties will continue to

confer on this issue.

- Apple will produce to Epic all Category Three documents on a rolling basis.
- Apple will produce all Category One documents, on a rolling basis, for re-review by a panel consisting of three special masters, jointly compensated by the parties. The special masters' privilege determinations will be binding on the Parties, subject only to the right to challenge such determinations in accordance with applicable Rules.
- If the special masters are unable to conduct the review within a reasonable time due to a large number of Category One documents, the parties will meet and confer on the possibility of expanding the panel to ensure fair and expeditious resolution of this issue.

The Parties will file a joint stipulation for the appointment of special masters and will develop a protocol governing the re-review process with the special masters.

**EPIC'S STATEMENT:**

Apple has sought at every turn to delay the document production process, thereby delaying completion of the contempt proceedings. As Judge Hixson found, the reasons for Apple's conduct are clear: "[T]his document production is all downside for Apple because it relates to Apple's alleged lack of compliance with the Court's injunction. It is not in Apple's interest to do any of this quickly. This is a classic moral hazard . . . ." (Dkt. 1017 at 2.)

In the October 28, 2024 Joint Case Management Statement, Epic explained how Apple delayed document production in the first instance by failing to finalize searches until the end of July, requesting a December production deadline, reneging on its commitment to make rolling productions, and seeking an eleventh-hour extension for substantial completion that was ultimately denied as indicative of "bad behavior" by Apple. (*See generally* Dkt. 1040 at 2-3.)[1]

In early to mid-October, Epic learned that Apple reviewed roughly 1.5 million documents

---

[1] Apple argues that it was Epic, not Apple, that is to blame for these significant delays, but it is Apple that was ordered over six months ago to produce "all [] documents relative to [its] decision-making process" and yet still has not done so to this day. In any event, Epic believes

1 hitting on relevant search terms but, as noted, has produced only approximately 99,000 and
2 withheld roughly 57,000 for privilege.  Epic spent the next month trying to obtain clarity from
3 Apple on the reasons for this very small yield.  Apple initially took the position that Epic's
4 proposed search terms were simply overly broad, leading to an exceedingly low yield.  Following
5 repeated demands, however, Apple provided data showing that most of Epic's search terms in fact
6 identified a high rate of responsive documents.  But Apple withheld for privilege a high
7 proportion of those responsive documents. Indeed, Apple withheld half or more of the responsive
8 documents identified by 13 out of 18 search strings, as reflected in the chart below.

| Search String | % Docs Responsive | % Responsive Withheld |
|---|---|---|
| commission* NEAR/5 (link* OR button* OR 27* OR 26* OR 12* OR "twenty-seven" OR "twenty-six" OR twelve OR window* OR duration* OR headline OR effective* OR blend* OR disc* OR reduc* OR alternat* OR affiliat* OR benchmark*) | 21% | 75% |
| discourag* NEAR/5 (iap OR "in-app" OR purchas*) | 81% | 73% |
| entitle* NEAR/5 (share* OR implement* OR adopt* OR eligible OR eligibility OR "3.1.1(a)") | 26% | 69% |
| injunction | 39% | 67% |
| link* NEAR/2 out | 59% | 62% |
| lookback OR look-back OR (look NEAR/2 back) OR (window* NEAR/2 (time* OR duration*)) | 7% | 58% |
| epic* OR fortnite* OR (project NEAR/2 liberty) OR sweeney | 15% | 58% |
| (pay* OR purchas* OR bill*) NEAR/5 (alternat* OR process* OR cost* OR 3p OR (third NEAR/2 party) OR third-party OR (3rd NEAR/2 party) OR outsid*) | 19% | 57% |
| (price OR pricing) NEAR/2 committee* | 11% | 55% |
| (disclos* NEAR/2 sheet*) OR (warn* NEAR/2 screen*) | 68% | 55% |
| (link* OR button*) NEAR/5 (external OR out OR purchas* OR transact* OR icon OR style OR templat* OR ux OR ui) | 26% | 54% |
| external NEAR/2 link* | 73% | 52% |
| linkout* OR steer* OR (anti BEFORE/1 steer*) | 18% | 51% |
| web NEAR/2 store* | 13% | 49% |
| "analysis group" OR ag | 7% | 45% |
| wisconsin | 48% | 37% |

---

that both the record and Judge Hixson's orders make abundantly clear which party engaged in
intentional delay.

JOINT CASE MANAGEMENT STATEMENT          4          CASE NO. 4:20-CV-05640-YGR-TSH

| | | |
|---|---|---|
| ▮ OR ▮ OR ▮ OR ▮ OR dma OR "digital markets act" OR netherlands OR nl OR korea OR kr OR (compliance NEAR/2 plan*) OR ucb OR "user choice billing" | 17% | 37% |
| michigan | 12% | 28% |

In addition, upon close review of Apple's production, the redactions Apple had applied to certain documents, and the privilege logs Apple produced to Epic in mid-October, it became clear to Epic that Apple improperly withheld thousands of documents on improper claims of privilege. Specifically, Apple withheld:

- Virtually all drafts of the scare screens it uses to deter users from using linked-out purchases and other documents reflecting the linked-out purchase flow;

- All references to the timeline by which Apple needed to comply with the Injunction;

- Multiple drafts of Project Wisconsin presentations, including many prepared for the Apple Pricing Committee that adopted the process Epic challenges; and

- Multiple drafts of presentations prepared by, and communications with or concerning, Analysis Group.[2]

Epic raised its concerns with Apple, but Apple stood on its privilege calls. Accordingly, the parties briefed the privilege dispute to Judge Hixson (Dkt. 1039), leading to the December 2 Order, which found that **virtually all of Apple's privilege claims challenged by Epic were meritless** and, moreover, that certain other redactions made by Apple (which Epic did not challenge but which Judge Hixson reviewed *in camera*) were also improper. (Dkt. 1056.)

The December 2 Order demonstrates Apple is using facially improper claims of privilege to avoid producing large numbers of relevant documents. And Apple's decision to defend those claims, even after Epic pointed out their impropriety (and Judge Hixson has rejected them as

---

[2] Apple argues below that Epic should have moved more quickly to challenge Apple's privilege calls. But Apple did not make any meaningful productions until September. Until that time, Epic could not know that Apple intended to withhold entire categories of relevant documents from Apple's production of fewer than 2,000 documents.

1  clearly improper), is proof that Apple's misapplication of privilege is not the result of a good-faith
2  error. Rather, it is a systemic attempt to withhold from production relevant, discoverable
3  information, in direct violation of this Court's May 31, 2024 Order. Moreover, Epic has serious
4  concerns that Apple intends to continue its campaign of delay going forward. Already, Apple
5  appears to be reneging on certain points that have been agreed to by the Parties, including at
6  hearings before Judge Hixson. Specifically:

- Since it first presented the plan above to Apple, Epic maintained that to avoid delay, should any of the special masters conclude that Apple's re-review was not a good-faith application of the December 2 Order, the special master(s) would notify the Parties and the Court. Apple never objected to this provision when Epic presented it to Judge Hixson (Dec. 5, 2024 Hearing Tr. 3:19-23; Dec. 5, 2024 Hearing Tr. 8:1-5), but now refused to include it in the plan detailed above.

- Also in drafting the above summary for the Court, Apple refused to use neutral language clarifying that its privilege re-review would apply the standards laid out by Judge Hixson in the December 2 Order (subject only to a modification of that standard by a subsequent order from this Court). This is a departure from Apple's clear representation to Judge Hixson that its re-review would in fact apply that standard, subject only to its right to contest the December 2 Order. (Dec. 3, 2024 Hearing Tr. 19:10-21). Yet Apple now insists that the Parties must get the input of the special masters in determining the standard for its own re-review. To be clear, contrary to what Apple is suggesting, the protocol the Parties will develop will not inform the substantive standard that Apple must apply to its re-review. The standard for that re-review is clearly laid out in the December 2 Order, and Apple can and should commence its re-review **now**, while the Parties are in the process of retaining special masters and finalizing the protocol that would govern the logistics

1      of the re-review process (as distinct from the standards that govern the re-review).

**APPLE'S STATEMENT:**

Epic's recurring complaints that Apple's conduct has caused delay in the document production process and/or the resumption of the evidentiary hearing are without basis. To the contrary, as explained in its portion of the October 28, 2024 Joint Case Management Statement, Apple has met every deadline required of it and responded promptly to every issue raised by Epic. Dkt. 1040.  If anything, Epic's own conduct has contributed to the timing of bringing resolution to these issues. For example, Epic did not articulate any specific complaint about Apple's privilege assertions or logging until its correspondence on October 1, 2024. That correspondence came nearly *three-and-a-half months* after Apple served the first privilege log that presented the issues Epic complains about—issues that Epic claims permeate all subsequent logs that Apple has served. By waiting until a day *after* Apple's September 30 substantial completion deadline to raise these specific issues, Epic restrained Apple's ability to make any meaningful changes to its privilege review and logging process, and all but ensured that Apple's extensive work and quality control process would be completed at that point. Epic cannot claim above that it suddenly "became clear" to Epic in October that it had significant issues with Apple's privilege assertions, as Apple has always maintained that this case presents a uniquely difficult set of privilege considerations given the inherently legal nature of decision-making related to compliance with an injunction.  Apple's in-house and outside counsel advised on virtually every step of the injunction compliance process and therefore it is no surprise that a significant number of documents fall within the attorney-client privilege and work product doctrines. Epic had months to bring any categorical or "broad concerns" to Apple's attention—or the Court's—but did not until it was practically impossible for Apple to cure, even if Epic's complaints had merit (which Apple maintains they do not). Regardless, Apple has stood by its privilege claims because it took a detailed, narrow approach to privilege, with an extensive quality control process. Apple made all assertions of privilege in good faith, despite Epic's claims otherwise.

Epic's complaints regarding the responsiveness to privilege ratio are also unfounded. Despite Apple's numerous attempts to explain that Epic's search terms would result in overbroad

1  and not responsive hits, including during the July 12, 2024 meet and confer and related discovery
2  briefing, Epic demanded that Apple proceed with the search terms unchanged as Epic drafted them.
3  Dkt. 1003 at 4 ("Apple's position is not that Epic's searches would yield some non-responsive
4  documents; it is that the great majority of the search results would be non-responsive . . . ."). Apple
5  made numerous attempts to waive the flag regarding the responsiveness rate that would result from
6  such overbroad search terms, but Epic refused to listen.

7  Epic's search string chart is similarly skewed. While search terms are intended to identify
8  *potentially* responsive documents, it is broadly understood in ediscovery practice that not every
9  document that hits on search terms will be responsive. *See, e.g.*, *SVB Fin. Grp. v. FDIC*, No. 24-
10 cv-01321-BLF (VKD), 2024 WL 4933347, at *2 (N.D. Cal. Dec. 2, 2024) ("[F]or some document
11 requests, it may not be appropriate for a party to rely exclusively on search terms—or at all—to
12 identify the universe of potentially relevant documents.") (internal citation omitted); *see also Simon*
13 *and Simon, PC v. Align Technology, Inc.*, No. 20-cv-03754-VC (TSH), Case No. 21-cv-03269-VC
14 (TSH) 2022 WL 2387729, at *1 (N.D. Cal. July 1, 2022) ("[J]ust because a document hits on a
15 search string does not mean it gets produced. Rather, the search string results become a corpus of
16 documents that is then screened for privilege and subject to human and Technology Assisted
17 Review for responsiveness."). By way of example only, simply because "michigan" hit on 20,318
18 documents, does not mean 20,318 documents relate to "Project Michigan" and are automatically
19 responsive. Also, a document may hit on five separate search terms, but be responsive due to just
20 one of those terms (or even none of them). If document review were as easy as Epic is claiming,
21 there would be no need for human review (or even technology-assisted review), as every litigant
22 would simply have to turn over all documents that hit on search terms. That is not a tenable process,
23 nor is it supported by the Federal Rules of Civil Procedure.

24 Apple maintains that the privilege assertions it made for the exemplar documents identified
25 during the privilege dispute briefing were correct and carefully made, but will not address the merits
26 of its claims here. Apple does acknowledge that the document production was made on an
27 expedited basis and, at Epic's request, Apple has agreed to re-review all responsive documents as
28

1  to which a claim of privilege has been asserted. Moreover, as stated above, Apple plans to submit
2  a motion for relief from the December 2 order accordingly by December 16.

3  Epic's complaints about the process for the re-review are both incorrect and misdirected. At
4  the December 5 hearing before Judge Hixson, Apple maintained (as it has consistently) that the
5  protocol should be established jointly by the parties, with the participation of the special masters
6  who will have to implement and apply the protocol. *See* Dec. 5, 2024 Hearing Tr. 7:1-8 ("And that
7  is – we are in agreement that we should, if approved by the Court, retain a special master forthwith.
8  ***But the specifics of the protocol, we agree there should be a written protocol, that should be***
9  ***discussed with the special master***, because the special master's going to actually have to implement
10  it and it should be achievable by the special master or special masters." (emphasis added)).

11  Judge Hixson agreed with this approach, as did Epic. *See id.* at 9:12-20 ("THE COURT:
12  Apple's suggestion that the details of the written protocol should likely be discussed with the special
13  master or special masters, because they would also be participants in that. That has some intuitive
14  appeal to me. What do you think? MR. EVEN: So, I don't think there is a problem with that
15  approach as long as it doesn't cause too much delay."); *see also* Tr. 10:10-18 ("THE COURT: But
16  do you agree with Apple's proposal that it be done in two stages. One is the stipulation and proposed
17  order before Judge Gonzalez Rogers that would establish certain things, but then a more detailed
18  written protocol would be worked out with the special master, or do you not think that structure is
19  workable? MR. EVEN: I think that structure should be workable for us, assuming it moves things
20  along in the most efficient way. Yes.").

21  Apple has not "reneged" on any commitments, including its agreement to apply the
22  December 2 order in its re-review. What Apple objects to is Epic's effort to insert a protocol into
23  this case management statement. Apple has repeatedly asked Epic to provide its proposed protocol
24  in writing, so that Apple may comment on it; but Epic has thus far refused to do so. *See* Tr. 7:9-14
25  ("And we have asked Epic to put forward the proposal in writing, so that we can comment on it and
26  eventually put it over to the special master."). More importantly, the parties are in active
27  discussions with special master candidates, and have another hearing scheduled before Judge
28  Hixson on December 13.

1 **II. MOTIONS**

2 The Parties have briefed several discovery disputes before Magistrate Judge Hixson that
3 have been resolved, subject to the appointment of one or more special masters that will be the
4 subject of a separate stipulation and proposed order.

5 Apple has filed two motions that are pending before this Court.

6 - On January 16, 2024, Apple filed a Motion for Entry of Judgment on its
7 Indemnification Counterclaim.  (Dkt. 876.)  Epic filed its Opposition Brief on
8 February 16, 2024.  (Dkt. 886.)  Apple filed its Reply Brief on March 1, 2024.
9 (Dkt. 894.)  The briefing on that motion is complete.

10 - On September 30, 2024, Apple filed a Motion for Relief from the Judgment under
11 Federal Rule 60(b).  (Dkt. 1018.)  Epic filed its Opposition Brief on November 7,
12 2024.  (Dkt. 1049.)  Apple filed its Reply Brief on November 21, 2024.
13 (Dkt. 1053.)  The briefing on that motion is complete.

14 **III. SCHEDULING**

15 This Court tentatively ordered the resumption of contempt hearings on January 13, 2025.
16 (Nov. 4, 2024 Case Management Conference.)

17 **EPIC'S STATEMENT:**

18 As noted above, through its overbroad and meritless claims of privilege, Apple continues
19 to delay the contempt proceedings against it.  Apple's tactics are designed to and in fact present
20 Epic with a choice—either Epic has to forego the documents it is entitled to, or it has to accept
21 additional delay of its contempt proceedings against Apple.

22 Epic believes the plan presented above could potentially allow the resumption of the
23 contempt hearing by January 13, 2025.  However, Epic recognizes that, under the plan, the special
24 masters will likely have to review thousands of privilege claims made by Apple, Epic will need to
25 review thousands of documents that it will only receive after this Court denies Apple's Motion for
26 Relief from the December 2 Order, and all of these steps would have to occur over the holiday
27 season. Epic therefore believes it would be prudent for the Court to defer the continuation of the
28 hearings by approximately two weeks, resuming the hearings at a date convenient for the Court in

1  early February.  Assuming Apple cooperates with the plan laid out above, Epic does not anticipate
2  any further delay should be necessary but will promptly advise the Court should that assessment
3  change.

**APPLE'S STATEMENT:**

Apple has met every deadline set by the Court and will continue to do so.  Apple has not put Epic to any choice—it met the substantial completion deadline of September 30, it asserted privilege over documents reflecting information and/or advice to or from lawyers consistent with the applicable privilege standards and law in the Ninth Circuit, it provided timely privilege logs, and it met and conferred with Epic on a regular basis to narrow and resolve disputes.  In his discovery order, Judge Hixson sustained some privilege assertions and overruled others, and Apple is working diligently through the proper procedures to preserve its rights while also moving forward with this litigation as expeditiously as possible.

Particularly in light of Apple's forthcoming appeal from Judge Hixson's discovery order, Apple believes it is premature to determine whether the hearing may proceed on January 13, two weeks thereafter, or some other time, but January 13 seems unlikely based on Epic's course of action.  Additionally, the parties have not yet selected the special masters, whose input regarding timing the parties will need before they can offer any proposals about a hearing date.  Apple is working quickly and collaboratively with Epic to retain the special masters for the privilege resolution process.  The timing of the evidentiary hearing should be revisited upon resolution of Apple's appeal and/or the implementation of a protocol for privilege re-review. Apple maintains that the evidentiary hearing should resume only after the resolution of Apple's Rule 60(b) motion.

| | |
|---|---|
| Dated:  December 9, 2024 | Respectfully submitted,<br><br>By:   /s/ *Mark A. Perry*<br><br>MARK A. PERRY, SBN 212532<br>mark.perry@weil.com<br>JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice* pending)<br>joshua.wesneski@weil.com<br>**WEIL, GOTSHAL & MANGES LLP**<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Telephone: 202.682.7000<br>Facsimile: 202.857.0940<br><br>RICHARD J. DOREN, SBN 124666<br>rdoren@gibsondunn.com<br>DANIEL G. SWANSON, SBN 116556<br>dswanson@gibsondunn.com<br>JASON C. LO, SBN 219030<br>jlo@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)<br>crichman@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br><br>JULIAN W. KLEINBRODT, SBN 302085<br>jkleinbrodt@gibsondunn.com<br>**GIBSON, DUNN & CRUTCHER LLP**<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111<br>Telephone: 415.393.8200<br>Facsimile: 415.393.8306<br><br>*Attorneys for Defendant and Counterclaimant Apple Inc.* |

| | |
|---|---|
| Dated:   December 9, 2024 | Respectfully submitted, |
| | By:   /s/ *Yonatan Even* |

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

**E-FILING ATTESTATION**

I, Mark A. Perry, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Mark A. Perry*
Mark A. Perry