# EXHIBIT A

*Epic Games, Inc. v. Apple Inc.*, No. 20-CV-5640 (N.D. Cal.)
**Apple Summary of Litigation & Discovery for Special Masters**

This litigation was filed in August 2020 by Epic Games, Inc. ("Epic") against Apple Inc. ("Apple") regarding certain rules that Apple has in place for apps that can be used on an iPhone or iPad. Epic challenged two of Apple's rules (called the App Store "Guidelines") under the antitrust laws: (1) Apple's requirement that any apps for the iPhone must be distributed through Apple's App Store and (2) Apple's requirement that apps for the iPhone must use Apple's "In-App Purchase" (or "IAP") mechanism and pay a 30% commission for certain purchases made by users within an app. Epic also brought a claim under the California Unfair Competition Law ("UCL"). Under the UCL, Epic challenged the same two Guidelines it challenged under the antitrust laws, and also challenged a different Guideline that prohibited developers from including information in their apps about other places users can buy the developers' goods or services besides within the app. This provision is referred to by the parties as the "anti-steering" provision.

A bench trial was held in May 2021. In September 2021, the Court ruled in favor of Apple on all of the claims brought under the antitrust laws. The Court ruled in favor of Epic on its claim under the UCL against Apple's anti-steering provision. The Court entered the following Injunction:

> Apple Inc. and its offers, agents, servants, employees, and any person in active concert or participation with them ("Apple"), are hereby permanently restrained and enjoined from prohibiting developers from (i) including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchasing and (ii) communicating with customers through points of contract obtained voluntarily from customers through account registration within the app.

(Dkt. No. 813.) The parties each appealed the Court's judgment, and the Injunction was stayed pending resolution of the appeal. All relevant rulings were upheld on appeal, and on January 16, 2024, the Injunction went into effect.

Apple complied with the Injunction by revising its Guidelines to eliminate the anti-steering provision and offer developers an "External Purchase Link Entitlement." The External Purchase Link Entitlement allows developers to include within their apps links, buttons, and other calls to action directing users to purchasing mechanisms outside of the App Store, subject to certain Guidelines and technical requirements by Apple and a 27% commission on purchases made on a developer's website within 7 days after a user taps on a link within an app. On January 16, 2024, Apple filed a Statement of Compliance with the Court describing the External Purchase Link Entitlement. (Dkt. No. 871.) Epic disputes that the External Purchase Link Entitlement complies with part (i) of the Injunction.

Apple's work to develop and implement the External Purchase Link Entitlement began in September 2021, before the Injunction was stayed pending appeal. At that time, Apple used the codename "Michigan" to describe its work on the External Purchase Link Entitlement. After the Injunction was stayed in December 2021, Apple ceased work on the External Purchase Link Entitlement but resumed in the summer of 2023. At that time, the project was renamed "Wisconsin."

Epic filed a motion to enforce the Injunction or hold Apple in contempt on March 13, 2024. (Dkt. No. 897.) Apple opposed on April 12, and Epic filed a reply on April 22. (Dkt. Nos. 915, 923.) The Court thereafter issued an order directing the parties to appear for an evidentiary hearing. (Dkt. No. 925.) The evidentiary hearing included testimony from four Apple witnesses. After all witnesses had testified (but before the Court released Apple's witnesses from cross-examination), the Court directed Apple to produce "all Apple's documents relative to the decision-making process leading to the link entitlement program and associated commission rates." (Dkt. No. 974.) Judge Gonzalez Rogers then referred all discovery-related matters to Magistrate Judge Hixson. (Dkt. No. 985.)

Apple initially forecasted a review population of approximately 600,000 documents, and the Court directed Apple to substantially complete its production of responsive documents by September 30, 2024. After negotiating the custodians and search terms with Epic, the final review population was much higher than initially predicted, approximately 1.5 million. In view of the higher review population and the complexity of the privilege issues, Apple requested a two-week extension to substantially complete its production. The Court denied that request. Through the retention of a large number of reviewers to conduct the complex review in a highly compressed timeframe, Apple met the September 30 deadline for substantial completion and provided privilege logs to Epic in accordance with the parties' existing protocol. Altogether, Apple produced about 100,000 documents and withheld or redacted approximately 50,000 as privileged or otherwise protected. Epic thereafter challenged certain categories of Apple's privilege assertions, culminating in a joint discovery letter brief before Magistrate Judge Hixson. (Dkt. No. 1039.) Judge Hixson ruled on that discovery dispute on December 2, 2024. (Dkt. No. 1056.) Apple filed a timely appeal of that order to Judge Yvonne Gonzalez Rogers on December 16, 2024, which will be fully briefed by December 30. (*See* Dkt. No. 1079.)

In the meantime—and regardless of the disposition of Apple's appeal—Apple agreed to re-review all documents over which it has asserted privilege (including those not challenged by Epic), determine over which documents it will continue to assert privilege in view of Judge Hixson's discovery order, and produce to the special masters any such documents for inspection (again, regardless of whether Epic has challenged the documents or not). Documents that are subject to Judge Hixson's discovery order and Apple's pending appeal are being segregated into a separate category, which will be either produced, redacted, or withheld depending on the disposition of Apple's appeal and the guidance offered by the Court.

Because of the breadth of the Court's order of discovery and of the search terms applied, discovery includes a large number of documents that do not directly relate to the Injunction, Project Michigan/Wisconsin, or the pending litigation. Instead, these documents relate to laws and regulatory actions in other parts of the world (largely in Europe) that affect how Apple is permitted to operate the App Store in those jurisdictions. Epic has taken the position that Apple's response to these laws and regulatory actions are relevant to the current proceeding because Apple may have considered or incorporated elements of those responses when developing the External Purchase Link Entitlement:

- Netherlands / ▬▬▬▬▬: In 2019, the Netherlands competition authority initiated an action against Apple relating to the App Store's rules for dating apps. The Netherlands competition authority eventually required Apple to make changes to the rules for dating

- apps in the Netherlands storefront similar to that required by the Injunction. █████████████████████████████

- Japan / ███: In 2022, Apple changed its App Store rules worldwide to allow certain types of apps to include links to websites where the user could create or manage an account with the developer. The changes were made in response to a regulatory investigation by the Japan Fair Trade Commission. ████████████████████████████████████.

- Korea External Purchase Program (███████): In 2022, Apple changed its App Store rules for apps in South Korea to allow apps to include a payment system other than IAP within their apps. ████████████████████████████

- Digital Markets Act ("DMA") / ███: The Digital Markets Act (frequently abbreviated to "DMA") is a law passed in the European Union ("EU") that required Apple to make a number of changes to the App Store and Apple operating system in Europe. ████████████████████████████

- ███: As part of its compliance with the DMA, Apple made changes in the EU regarding developers' ability to include links within their apps (similar to what is required under the Injunction) or alternatives to IAP in their apps. ██████████████████████████████.

- ████████: As part of its compliance with the DMA, Apple made changes in the EU regarding third parties' ability to offer alternatives to the App Store for distribution on iOS and later iPadOS. ████████████████████████████████████.

- Spotify Proceeding: From 2019 to the present, Apple has been engaged in litigation with Spotify (a music-streaming app developer) in Europe regarding issues similar to that under the Injunction. ████████████████████████████████████.

- Australia Proceeding: From 2020 to the present, Apple has been engaged in litigation with Epic in Australia over substantially the same issues litigated in this case.