UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　　　*Plaintiff, Counter-defendant,*<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　　*Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH<br><br>JOINT STATUS REPORT |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

　　Pursuant to Your Honor's Discovery Standing Order, the Parties in the above-captioned action respectfully submit this joint statement related to the ongoing evidentiary hearings concerning Plaintiff Epic Games, Inc.'s ("Epic") Motion to Enforce Injunction (Dkt. 897 (the "Motion")).

Respectfully submitted,

| | |
|---|---|
| CRAVATH, SWAINE<br>& MOORE LLP<br><br>　By: */s/ Yonatan Even*<br>　　　Yonatan Even<br>　　　*Counsel for Epic Games,*<br>　　　*Inc.* | WEIL, GOTSHAL & MANGES LLP<br><br><br>　By: */s/ Mark A. Perry*<br>　　　Mark A. Perry<br>　　　*Counsel for Apple Inc.* |

**Epic's Position:**

As noted by Epic in the prior Joint Status Report, Apple's actions prevented the Special Masters from commencing their review until December 30, 2024. Apple's failure to provide the Special Masters with sufficient information again disrupted the review—albeit only for 15 hours—this past week.[1] Apple also re-reviewed far fewer than the 15,000 documents per week that it committed to until this past week.[2] (Dkt. 1092 at ¶ 1.a.)  Notwithstanding these delays, the sheer number of Apple's privilege assertions withdrawn and reversed as part of the re-review process proves unequivocally what Epic suspected and warned against for some time:  Apple engaged in a massive campaign of abuse of privilege, designed specifically to frustrate the Court's May 31 Order requiring Apple to promptly produce "all Apple's documents relative to the decision-making process leading to the link entitlement program and associated commission rates".[3] (Dkt. 974.)  As this Court previously found, the reason for Apple's conduct is clear: "this document production is all downside for Apple because it relates to Apple's alleged lack of compliance with the Court's injunction". (Dkt. 1017 at 2.)  And as Epic accordingly observed, for Apple, its abuse of privilege results in a win-win situation: "If Epic insists on obtaining the documents that it, and the Court, are entitled to, Apple wins as its day of reckoning in the main contempt proceedings is further delayed.  And, if Epic forgoes the production of these crucial documents, Apple also wins because it will enjoy a tactical advantage in the contempt proceedings." (Dkt. 1099 at 2.)[4]

Apple's strategy of delay has paid off.  During a January 13 conference with the Special Masters, Apple estimated that it would sustain privilege assertions on roughly 17,000 documents. (Jan. 13, 2025 Special Master Conf. Tr. 79:5-17.)  Taking Apple's own estimate of roughly 55,000 documents originally subject to a privilege assertion, this would mean that Apple improperly withheld or redacted an astounding 38,000 documents—69% of the documents it withheld—before accounting for any further downgrades by the Special Masters.  Apple now tries to distance itself from its own three-days-old estimates, claiming in its portion of this Report that in fact, it now expects to downgrade 'only' 49% of its assertions, "setting aside the clarification from this Court's rulings".  That is a complete red herring; this Court did not create new law and did not modify the standard governing privilege calls in any way, and there is

---

[1] On January 9, 2025 at 5:36 p.m. PST, a Special Master notified the Parties that he was consistently seeing names on Apple's privilege log that Apple identified as attorneys but failed to include in the glossary of attorneys Apple provided to the Special Masters, and that he was therefore forced to cease the review. (Email from P. Gutierrez to Parties on Jan. 9, 2025.)  After four hours with no response from Apple, Epic sent Apple an email confirming that Epic too identified a number of supposed attorneys from Apple's privilege log who were not in the glossary, including certain individuals **who are not in fact attorneys**. (Email from Y. Even to Apple counsel on Jan. 9, 2025 at 9:39 p.m. PST.)  Apple revised its privilege logs and the glossary by 8:02 a.m. PST the next day.
[2] Based on information Apple provided, Apple reviewed approximately 6,250 documents in week 1; 11,237 documents in week 2; and 8,513 documents in week 3.
[3] Apple argues in its portion of this Report that Apple's withdrawal of tens of thousands of privilege assertions "should come as no surprise" to Epic.  Epic partially agrees; Epic suspected for quite some time that Apple has engaged in significant abuse of privilege and therefore expected that a privilege review overseen by Special Masters would result in very significant downgrades—even if Epic never expected the sheer magnitude of Apple's abuse, where the vast majority of assertions have been withdrawn.
[4] Apple misleadingly asserts that it reviewed over 1 million documents for "privilege, responsiveness, and confidentiality".  Apple's responsiveness review is entirely irrelevant to the issue of Apple over-withholding documents on the basis of privilege.  Apple only ever needed to review approximately 152,000 documents deemed responsive for privilege.  (Oct. 16, 2024 Ltr. from J. Lo to Y. Even.)

therefore no reason to "set[] aside" this Court's rulings when calculating Apple's rate of over-withholding. (*See* Dkt. 1095 at 2 (explaining the preexisting Ninth Circuit legal standard for privilege over dual-purpose communications).) Apple's actual new estimate of its over-withholding rate amounts to 64% (20,000 maintained assertions vs. 35,000 withdrawn assertions), which is not consistent with a good-faith privilege review.[5]

But even at that astounding rate of reversal, the Special Masters estimated it would take them months, rather than weeks, to complete their review. Thus, if the review process continued to its ultimate conclusion, Apple would manage to defer its compliance with the Court's May 31 Order from September 30, 2024 to some time in April of 2025—nearly seven months of delay. To Apple, seven months of continued non-compliance with the Court's Injunction is worth billions of dollars. Apple's choice to abuse privilege, massively over-withhold documents and eschew compliance with the Court's orders thus boils down to a simple business decision.

On January 14, 2025, during a case management conference with the Parties, Epic alerted Judge Gonzalez Rogers to this state of affairs, noting that the re-review process would end up rewarding Apple for its misconduct, rather than penalizing it. Epic asked the Court to sanction Apple by requiring it to produce immediately all previously withheld documents. Although Judge Gonzalez Rogers declined to impose such sanctions on Apple at this juncture, Judge Gonzalez Rogers saw Apple's bad acts for what they are: "delay . . . [and] totally a tactic". (Jan. 14, 2025 Case Mgmt. Conf. Tr. 23:21-22.) Apple, in its portion of this Report, argues that any claim it engaged in delay tactics is "unsubstantiated", but it simply ignores these findings by Judge Gonzalez Rogers, as well as her admonition to Apple that there will be "consequences" for its abuse of privilege and delay tactics. (Jan. 14, 2025 Case Mgmt. Conf. Tr. 23:20-24:1.)

To prevent further delay, Judge Gonzalez Rogers ordered Apple to complete its final production to Epic of all downgraded documents by January 21, and the Parties to provide the Court with a progress report of the Special Masters' review by January 31. Depending on how large the pool of documents yet to be reviewed by the Special Masters at the time is, Judge Gonzalez Rogers indicated that the Court may then act as a "backstop". Pursuant to that process, Apple will be required to produce all documents to the Court and the Court will conduct a "spot check" of Apple's remaining privilege assertions.[6] Judge Gonzalez Rogers instructed the Parties to tentatively plan to resume the evidentiary hearings on Epic's contempt motion on February 24, 2025. Epic will continue to make every effort to bring this matter to a timely conclusion despite Apple's persistent campaign of delay.

---

[5] It should be noted that all of Apple's recent estimates are far lower than the roughly 79% of assertions withdrawn in the first two weeks of re-review (including assertions downgraded to "Category 2" under the Protocol and ultimately withdrawn following the Court's denial of Apple's Motion for Relief from the December 2 Order). This decline in the withdrawal rates raises serious concerns that Apple may have changed its re-review standards mid-stream. In any event, any distinction between withdrawal rates of 80%, 70%, 60% or even 50% is one without a difference; any of these rates unequivocally demonstrates systemic abuse of privilege, as opposed to good-faith error. Apple's suggestion below that any of these rates is somehow reasonable and is not evidence of malfeasance is simply not credible. Indeed, as the Court is well aware, many of Apple's privilege assertions were so outlandish that Epic easily identified them as such without even having access to the documents—and when it did, Apple doubled down on those assertions for months, defending them first before this Court and then on a Motion for Relief. At best, Apple's privilege assertions were "a stretch". (Jan. 14, 2025 Case Mgmt. Conf. Tr. 10:11.)
[6] The Court indicated it will provide details regarding deadlines for production and this procedure in a written order.

**Apple's Position**:

As discussed with Your Honor at the prior conference, Apple expects to complete its re-review of the documents withheld or redacted for privilege by Friday, January 17. At the direction of Judge Gonzalez Rogers, Apple will complete its production of non-privileged documents to Epic by Tuesday, January 21.

As of the date of this status report, according to the Special Masters' weekly reports released so far, the Special Masters have reviewed 1,325 documents over which Apple has maintained its privilege assertions. The Special Masters have sustained Apple's privilege assertions in full over 1,112 of those documents (84%), and have sustained Apple's privilege assertions in part over an additional 7 documents. The Special Masters have overruled in full Apple's privilege assertions over 155 of those documents. Apple has objected to 3 of the Special Masters' rulings in the first set of reports, which are before Your Honor pursuant to the procedure set forth in the Protocol. Apple is evaluating whether any privilege determinations from the Special Masters' rulings from earlier this week warrant an objection to this Court, due Tuesday.[7]

The Special Masters have indicated they expect to be able to review approximately 1,000 documents in total per week. At that estimated pace of review, it is likely to take the Special Masters several more weeks (and potentially months) to complete review of the documents. In light of the Special Masters' current and expected pace of review, Judge Gonzalez Rogers has directed the parties to file an update by noon PT on January 31 as to the Special Masters' progress. Judge Gonzalez Rogers will determine at that time what additional steps, if any, to take. In the interim, Judge Gonzalez Rogers has tentatively set the evidentiary proceeding to resume on February 24.

Echoing its comments from the January 14 status conference before Judge Gonzalez Rogers, Epic makes the inflammatory accusation that "Apple engaged in a massive campaign of abuse of privilege, designed specifically to frustrate the Court's May 31 Order" directing discovery. There is no evidence for these allegations, and they are flatly untrue. Apple instructed the reviewers during the first phase of the document production to make good-faith assertions of privilege, applying the Ninth Circuit privilege standards. The notion that Apple "designed" its privilege review to "specifically" delay or impede the production of responsive documents—a scheme that would have required coordination among several major law firms, two outside consulting firms, and hundreds of outside attorneys—is wholly unsubstantiated and wrong. And

---

[7] Epic's continued arguments about delay in the Special Master review are unfounded. The review did not start in the first week anticipated because *Epic* offered a baseless objection to Apple's submission of additional information (expressly contemplated by the Protocol) and the Special Masters did not want to begin their review until Epic's objection was resolved. This Court later confirmed the Special Masters were in the best position to determine what information would be helpful (exactly as the Protocol provides). Epic also alleges a 15-hour delay arising out of an issue involving the privilege logs. Setting aside that most of those 15 hours were overnight, 15 hours to produce revised privilege logs in response to a question from one Special Master is feeble evidence of "delay."

contrary to Epic's suggestion, there has been no "finding" of bad faith, because there has been no presentation of evidence and no hearing from which to make any such "finding."[8]

What the *facts* show instead is that Apple invested significant resources into timely reviewing and producing relevant documents. Owing to the high volume of documents under review and the short timeframe for production, Apple enlisted several hundreds of reviewers to make privilege, responsiveness, and confidentiality calls on these and tens of thousands of other documents (ultimately more than 1 million in total), and was able to quality control check only a relatively small percentage of *all* of those good-faith review decisions (including both documents withheld for privilege and documents *not* withheld for privilege). Those documents concern difficult issues of injunction compliance, regulatory investigations and responses, and other legal proceedings related to the App Store around the globe. Attorneys appeared on thousands of the documents as a result, making the privilege determinations more complex than many other document productions concerning purely business issues.

Epic demanded at the conclusion that Apple re-review every single document over which it asserted privilege, with an additional layer of review by the Special Masters over every document as to which Apple maintained a claim of privilege, and Apple agreed to do so. It enlisted dozens of attorneys to work on that effort. The current downgrades are the result of review by a smaller (~100) group of attorneys, undertaking a document-by-document review of only the issue of privilege and applying this Court's subsequent orders and additional guidance. This is the exact process Epic insisted on. The outcome of that work should come as no surprise to Epic, who asserted at the outset of this re-review project that "Apple, we think, will itself downgrade, we hope a meaningful number of documents." Hr'g Tr. 5:11–12 (Dec. 18, 2024). Apple's course of conduct is indicative of good faith and decidedly inconsistent with Epic's unsupported theory.

Ultimately, however, these issues do not present any dispute for Your Honor to resolve at this time. For purposes of the discovery check-in scheduled for January 17 before Your Honor, the salient fact is that Apple expects to complete its re-review as planned on Friday.

---

[8] Epic's estimates of the number of documents in the various review categories do not reflect the latest information or the likely ending point. First, Apple provided an estimate of 17,000 "Category 1" documents to the Special Masters when requested in real time during a status conference on Monday evening. Apple has determined since then with the benefit of closer review and more complete information that a more realistic estimate is 20,000 "Category 1" documents. Second, Epic's claim as to the percentage of Apple's downgrades does not account for the "Category 2" documents that Apple determined to be not privileged only as a result of this Court's disputed privilege rulings in this case. Apple estimates approximately 7,000 documents in that category by the end of the review. With a remaining population of approximately 26,000 documents, that puts Apple's downgrade rate, setting aside the disputed privilege rulings and accounting for the general guidance provided in Your Honor's privilege ruling, at approximately 49%.

5

Respectfully submitted,

DATED: January 16, 2025

CRAVATH, SWAINE & MOORE LLP
By: */s/ Yonatan Even*
*Counsel for Plaintiff Epic Games, Inc.*

WEIL, GOTSHAL & MANGES LLP
By: */s/ Mark A. Perry*
*Counsel for Defendant Apple Inc.*