| | |
|---|---|
| PAUL J. RIEHLE (SBN 115199) <br> paul.riehle@faegredrinker.com <br> **FAEGRE DRINKER BIDDLE & REATH LLP** <br> Four Embarcadero Center <br> San Francisco, California 94111 <br> Telephone:  (415) 591-7500 <br> Facsimile:  (415) 591-7510 <br><br> GARY A. BORNSTEIN (*pro hac vice*) <br> gbornstein@cravath.com <br> YONATAN EVEN (*pro hac vice*) <br> yeven@cravath.com <br> LAUREN A. MOSKOWITZ (*pro hac vice*) <br> lmoskowitz@cravath.com <br> JUSTIN C. CLARKE (*pro hac vice*) <br> jcclarke@cravath.com <br> MICHAEL J. ZAKEN (*pro hac vice*) <br> mzaken@cravath.com <br> M. BRENT BYARS (*pro hac vice*) <br> mbyars@cravath.com <br> **CRAVATH, SWAINE & MOORE LLP** <br> 375 Ninth Avenue <br> New York, New York 10001 <br> Telephone:  (212) 474-1000 <br> Facsimile:  (212) 474-3700 <br><br> *Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.* | RICHARD J. DOREN, SBN 124666 <br> rdoren@gibsondunn.com <br> DANIEL G. SWANSON, SBN 116556 <br> dswanson@gibsondunn.com <br> JASON C. LO, SBN 219030 <br> jlo@gibsondunn.com <br> **GIBSON, DUNN & CRUTCHER LLP** <br> 333 South Grand Avenue <br> Los Angeles, CA 90071-3197 <br> Telephone: 213.229.7000 <br> Facsimile: 213.229.7520 <br><br> CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*) <br> crichman@gibsondunn.com <br> **GIBSON, DUNN & CRUTCHER LLP** <br> 1050 Connecticut Avenue, N.W. <br> Washington, DC 20036-5306 <br> Telephone: 202.955.8500 <br> Facsimile: 202.467.0539 <br><br> JULIAN W. KLEINBRODT, SBN 302085 <br> jkleinbrodt@gibsondunn.com <br> **GIBSON, DUNN & CRUTCHER LLP** <br> One Embarcadero Center, Suite 2600 <br> San Francisco, CA 94111 <br> Telephone: 415.393.8200 <br> Facsimile: 415.393.8306 <br><br> MARK A. PERRY, SBN 212532 <br> mark.perry@weil.com <br> JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice* pending) <br> joshua.wesneski@weil.com <br> **WEIL, GOTSHAL & MANGES LLP** <br> 2001 M Street NW, Suite 600 <br> Washington, DC 20036 <br> Telephone: 202.682.7000 <br> Facsimile: 202.857.0940 <br><br> *Attorneys for Defendant and Counterclaimant Apple Inc.* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, Counter-defendant, <br><br> v. <br><br> APPLE INC., <br><br> Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH <br><br> **JOINT STATUS REPORT RE SPECIAL MASTER REVIEW** <br><br> Courtroom:  1, 4th Floor <br><br> Judge:  Hon. Yvonne Gonzalez Rogers |

1    Pursuant to the Standing Order for All Judges of the Northern District of California, Civil
2  Local Rule 16-9, the Court's Standing Order in Civil Cases, and the Court's Minute Entry of
3  January 14, 2025 (Dkt. 1117), Plaintiff and Counter-defendant Epic Games, Inc. ("Epic"), and
4  Defendant and Counterclaimant Apple Inc. ("Apple"; Apple and Epic together, the "Parties," and
5  each individually, a "Party"), by and through their undersigned counsel, hereby submit this Joint
6  Status Report Re Special Master Review.

7    **EPIC'S STATEMENT:**

8    Despite this Court's Order on May 31, 2024, requiring Apple to produce "all of Apple's
9  documents relative to the decision-making process leading to the link entitlement and associated
10  commission rates" (Dkt. 974), Apple initially withheld around 55,000 documents for privilege
11  after producing just under 100,000 documents to Epic.  Epic raised concerns about this
12  exceedingly high privilege withholding rate, and those concerns were well founded—as a result
13  of its re-review process, Apple withdrew well over half of its privilege claims (30,104 out of
14  53,820), downgrading almost 56% of its withheld documents and conceding that those are
15  entirely *not* privileged.

16    By January 14, the last time the Parties appeared before the Court, Apple's weekly
17  privilege downgrade rates clearly showed that Apple had been abusing privilege, thereby delaying
18  the contempt proceedings against it for months.  Therefore, and to avoid further delay, Epic asked
19  this Court to stop Apple's re-review process and sanction Apple by holding that it waived its
20  privilege through its massive campaign of over-withholding.  At the time, although the Court
21  recognized that Apple's privilege review was "in large part . . . delay" and "totally a tactic", the
22  Court declined Epic's invitation.  (Jan. 14, 2025 Case Mgmt. Conf. Tr. 23:20-24.)
23    Instead, the Court ordered the Parties to report back on the progress of the Special
24  Masters' review as of the end of January, stating that, at that point, and to avoid further delay, the
25  Court may halt that process and itself re-review a selection of the documents yet to be ruled upon
26  by the Special Masters as a "backstop".  (Jan. 14, 2025 Case Mgmt. Conf. Tr. 23:12-16.)  The
27  Court further warned Apple that there would "be consequences for the choices that [Apple]
28  made".  (Jan. 14, 2025 Case Mgmt. Conf. Tr.  23:25-24:1.)

1       Epic accordingly provides the Court with an update. Specifically, as of last night, after
2  nearly six weeks of review, the Special Masters have reviewed roughly 5,500 documents. But
3  while the rate of Special Master review has increased significantly, there are still over **18,000**
4  documents left for their review as of today. This is partly because, since January 14, Apple
5  doubled down on its delay and abuse tactics: in the days immediately following the last status
6  conference, Apple funneled many more documents than before to the Special Masters, including
7  many that appear to be the most core documents in this case, knowing full well that the Special
8  Masters would be unlikely to get to review these documents and adjudicate Apple's privilege
9  assertions. Apple thus once again created for itself a win-win situation: either Epic is denied the
10 documents it is entitled to, or Apple's day of reckoning is again delayed by many months. To
11 break this logjam, Epic again asks the Court to sanction Apple and find that it has waived
12 privilege over the documents the Special Masters have yet to review.[1]
13                             *       *       *
14       On January 13, Apple told the Special Masters that it estimated they would have
15 "somewhere in the neighborhood of 16 or 17 [thousand documents] across all the privilege
16 productions from the beginning until the end". (Jan. 13, 2025 Special Master Conf. Tr. 79:12-15,
17 80:12-23.) The next day, when the parties were last before this Court, Apple represented that it
18 had already identified 17,998 documents over which it was maintaining its privilege assertions,
19 with 9,920 left to re-review for privilege. (Jan. 14, 2025 Case Mgmt. Conf. 13:20-23). This
20 Court made clear it will not defer the resumption of the hearings by months, which Apple knew it
21 could exploit, as the Special Masters will not get the chance to review superfluous documents
22 Apple sent their way. Accordingly, three days later, the number of documents over which Apple
23 maintained an assertion of privilege had climbed to 23,716 (by Apple's own count). (Email from
24 J. Wesneski to Epic counsel on Jan. 22, 2025 at 11:17 a.m. PST.)

---

[1] Apple complains of "prejudice", but Epic's position is neither new or surprising. The Parties just last night filed a Joint Status Report with Judge Hixson where Epic raised the very same concerns. And Epic's renewed request for sanctions is hardly surprising in light of those concerns.

In the final four days of re-review, then, the universe of documents over which Apple maintained a claim of privilege increased by over 40%.[2] For the sake of comparison, Apple's January 13 estimate reflected an expected downgrade rate of nearly 70%; yet in the last four days of its re-review, Apple's downgrade rate declined to roughly 42%, far below its rate in the preceding four weeks.[3]

The Special Masters expressed concern at the January 13 Status Conference that they may only be able to review 300-400 documents each per week (900-1,200 per week collectively). Apple's astounding final production over the following week made them "really concerned about the timing" of concluding their review. (Jan. 24, 2025 Special Master Conf. 8:15-16.) Although the Special Masters' rate of review has increased over the past two weeks, their current pace suggests their review would not be complete until April at the earliest.

Apple did not just drastically reduce its *rate* of downgrades in the final days of the re-review process. Although Apple represented that its re-review process was based on a "random selection" of documents (Dec. 20, 2024 Discovery Hearing at 5:12-16), the *kinds* of documents Apple produced to the Special Masters in the last week of its re-review raises serious concerns that this was not the case. Specifically, it appears that Apple waited until the final days of its re-review to produce to the Special Masters the bulk of the documents that are most likely to be relevant to the upcoming contempt proceedings. Take, for example, three of Apple's key witnesses in the contempt proceedings: Carson Oliver, Alex Roman and Phil Schiller. 72% of all assertedly privileged documents for which Mr. Oliver is a custodian were produced to the Special Masters in the final production; for Mr. Roman, 68.7%; and for Mr. Schiller, just over 60%. All

---

[2] As one Special Master noted, "[t]he fifth production alone is more than the first four combined". (Jan. 24, 2025 Special Master Conf. 8:9-11.)

[3] Apple's overall downgrade rate is roughly 56%—still remarkably high, but far lower than the 70% Apple predicted just five days before completing its re-review.

of these documents are documents Apple knew the Special Masters are unlikely to have the chance to review—and Epic would thus be unable to use in the upcoming hearings.[4]

Epic believes Apple's declining privilege downgrading rates have a singular reason: with the knowledge that its latest privilege assertions will not be reviewed by the Special Masters, Apple once again engaged in over-withholding, maintaining privilege assertions over a large number of documents that simply are not privileged. Consider just three examples:[5]

- Entry No. 1470 in Apple's final privilege log, PRIV-APL-EG_00162498, is a January 6, 2024 presentation, with the file name "Wisconsin"—Apple's codename for its Injunction compliance project. The custodians of this presentation are Mr. Oliver and Ms. Thai—both non-lawyers. Apple seeks to withhold this presentation *in its entirety*, yet its privilege log does not name a single lawyer involved in its preparation; rather, it simply asserts the presentation "reflect[s] advice from Apple legal".

- Entry No. 4706, PRIV-APL-EG_00197353, is an email from Mr. Schiller to Fred Sainz, an Apple communications person, and to Kate Adams, Apple's General Counsel, copying multiple business executives, communications personnel and attorneys. The email subject is "Re: HOT: White paper on DMA Privacy/Security Protections". Nothing in the privilege log suggests the communication is legal in nature, let alone that it is made primarily to obtain legal advice. To the contrary, this appears to be an email concerning primarily Apple's communications and public relations policy—the kind of communication this Court already had admonished Apple for trying to keep under wraps.

---

[4] Apple suggests this is the result of the fact it reviewed more documents in the final week of its re-review. But that does not explain the far lower rate of *downgrading* in the final days of the re-review.

[5] Apple now claims one of these documents is privileged in "substantial majority", and another is one that Apple would have produced had it been asked. But Apple reviewed these documents twice over and decided to seek to withhold them *in their entirety*.

JOINT STATUS REPORT RE
SPECIAL MASTER REVIEW                    4                    CASE NO. 4:20-CV-05640-YGR-TSH


- Entry No. 7796, PRIV-APL-EG_00226492, is a May 2023 presentation with the file name "Wisconsin Scenarios and Financial Impacts". Apple seeks to withhold this presentation in its entirety, but its privilege log again does not list a single lawyer involved in its preparation; its custodians are Apple business executives and employees, including Messrs. Schiller, Oliver, Federighi and others; and its name suggests it is, at least in large part, a business presentation.

These examples are just the tip of the iceberg; Apple's latest privilege log is replete with documents whose descriptions suggest they are substantive, relevant and *not* privileged. To further make this point, even without access to the underlying purportedly privileged documents, Epic encloses herewith, as **Exhibit A**, a list of 100 exemplar documents over which Apple maintained its privilege assertions but that Epic believes are substantive documents that are unlikely to be privileged. Should the Court decide to "spot check" Apple's privilege assertions, as it warned Apple it might do (Jan. 14, 2025 Case Mgmt. Conf. Tr. 23:1-4), Epic respectfully suggests that the Court include review of these documents.[6] And, as noted above, Epic again requests the Court sanction Apple for its ongoing abuse of privilege. Apple was on notice that its conduct may result in sanctions; enough is enough.

**APPLE'S STATEMENT:**

*Numbers Requested by the Court*

Apple completed its production of documents to the Special Masters and Epic last week. On January 22, Apple provided the following metrics to Epic regarding the re-review:

**Total documents re-reviewed:** 53,820

**Categories**

    **Category 1:** 22,658

    **Category 2:** 7,059

---

[6] Apple's suggestion that the way to address these documents is through the Protocol misses the point; the Protocol would result in months of further delay before Epic received documents it was entitled to obtain **by September 30, 2024**.

**Category 3:** 24,103

**Privilege assertions**

**Documents tagged "Not Privileged":** 30,104

**Documents tagged "Privileged":** 23,716

Out of the 53,820 documents reviewed, Apple downgraded approximately 55.9%. Excluding those downgrades that Apple contends were a result of Judge Hixson's December 2 discovery order (i.e., the Category 2 documents), the downgrade percentage is approximately 42.1%.[7]

The following metrics represent the Special Masters' progress as of the evening of January 30:

**Documents Ruled On:** 5,506

**Privilege Upheld in Full:** 4,906 (89.1%)

**Privilege Upheld in Part, Overruled in Part:** 46 (0.8%)

**Privileged Overruled in Full:** 554 (10.1%)

**Requests for Additional Information:** 89

The Special Masters estimated in early January that they would be able to collectively review approximately 1,000 documents in total per week. In the two weeks since then, the Special Masters have collectively exceeded that pace. Nevertheless, at a status conference on January 24, the Special Masters estimated that it will take them "at a minimum" through February or March to complete their review. *See* Hr'g Tr. 10:8–13, 12:11–14 (Jan. 24, 2025).

*Epic's Submission*

---

[7] It is not accurate, as Epic contends, that Apple has "conced[ed]" that all of the downgraded documents are not privileged—Apple reserved all rights as to the documents identified in Category 2, which Apple maintains are privileged but acknowledges are affected by Judge Hixson's and this Court's orders in this case.

The Court requested in this joint update the "numbers" for the review undertaken so far. Hr'g Tr. 24:22 (Jan. 14, 2025). It did not ask for any other update from the parties. Fewer than five hours before this joint submission was due, Epic provided its draft joint submission to Apple for the first time (after unilaterally delaying the exchange scheduled for the previous night), which includes far more than a discussion of "numbers" and instead addresses documents and issues never before raised to Apple. And Epic's initial account of the "numbers"—the only thing the Court actually requested—in its joint submission was off *by thousands of documents.* Only after Apple pointed this out did Epic correct the admitted "error."

Epic's submission also included reference to an Exhibit A of some 100 documents. Epic has never raised these particular documents to Apple before *and did not provide this list to Apple until 10:20 AM PT.* This course of conduct is not consistent with the spirit of a joint statement exchange, and is highly prejudicial to Apple. That is particularly so given that the review Protocol, which has been entered as an order by this Court, provides a mechanism for either party to object to privilege determinations regarding particular documents. *See* Dkt. 1092 ¶ 4. Nevertheless, Apple provides here its responses to Epic's arguments in the most complete form possible in this truncated timeframe while reserving the right to respond more completely as warranted.

*First*, Epic accuses Apple of engaging in a "massive campaign" of over-designation of privilege. The evidence does not support these allegations, and they are untrue. Apple instructed the reviewers during the first phase of the document production to make good-faith assertions of privilege, applying the Ninth Circuit privilege standards. Any notion that Apple calibrated its privilege review to specifically impede the production of responsive documents is unsubstantiated and wrong—indeed, that would have required coordination among several major law firms, two outside consulting firms, and hundreds of outside attorneys.

What the facts instead show is that Apple invested significant resources into timely reviewing and producing relevant documents. Owing to the high volume of documents under

review and the short timeframe for production, Apple enlisted several hundreds of reviewers to review these and tens of thousands of other documents (ultimately more than 1 million in total). Apple's outside counsel was able to quality control check only a relatively small percentage of *all* of those good-faith review decisions (including both documents withheld for privilege and documents *not* withheld for privilege). Those documents concern difficult issues of injunction compliance, regulatory investigations and responses, and other legal proceedings related to the App Store around the globe. Attorneys appeared on thousands of the documents as a result, making the privilege determinations more complex than many other document productions concerning purely business issues.

The current downgrades are the result of review by a small (~100) group of attorneys, undertaking a document-by-document review of only the issue of privilege and applying this Court's subsequent orders and additional guidance. All of this review was done pursuant to a protocol agreed to by Epic and entered as an order by the Court. Apple has adhered to that protocol and reviewed tens of thousands of documents in a matter of weeks. As the statistics above indicate, the Special Masters have overwhelmingly upheld Apple's privilege assertions.

*Second*, Epic's speculation and allegations about a deliberate change in review standards midstream are baseless. Apple did not instruct its ~100 privilege reviewers to increase (or decrease) the frequency of their privilege assertions following the status conference with the Special Masters on January 13, 2025 or at any other time. Apple always provides iterative guidance to reviewers during a review, but in this case, that iterative guidance consisted largely of advising reviewers about the kinds of documents the Special Masters were *not* upholding as privileged. Apple made no intentional effort to change the frequency of its privilege assertions.

Nor would it have made sense for Apple to do so. At Epic's insistence, every single document over which Apple is asserting privilege must be reviewed by the Special Masters. If Apple were to make an overbroad claim of privilege, that would be rooted out by the Special

Masters. Moreover, Apple has known since the beginning of this project that the review by the Special Masters would be the stopgap. *See* Hr'g Tr. 17:20–24 (Dec. 18, 2024). Epic's implicit assumption that three Special Masters could responsibly review tens of thousands of documents in a matter of weeks—essentially the same project Apple employed ~100 reviewers to complete—has no basis in reality or this Court's orders. That would be true under any of Apple's periodic estimates of the likely review population.

Epic speculates that Apple changed its review protocol because Apple "knows" its privilege assertions will not be reviewed by the Special Masters. Apple did not change its review protocol and has no such "knowledge." Rather, Apple is under a Court order to submit each and every document over which it claims privilege to the Special Masters for review. *See* Dkt. 1092. That was the protocol *Epic* proposed and to which Apple agreed. To the extent Epic is saying it now intends to abandon that protocol, this filing is the first time it has made that suggestion. Unless and until the Court relieves the Special Masters of their obligations—and to be clear, Apple has no intention of requesting that it do so, regardless of when the evidentiary hearing resumes—each and every one of Apple's privilege assertions will be reviewed by a disinterested Special Master. The statistics so far strongly indicate Apple's privilege assertions will be upheld in significant part.

Epic notes various estimates Apple made near the end of the review about the total population of privileged documents. Apple provided a rough estimate on January 13 of the number of documents it anticipated would be produced *after* its fourth production to the Special Masters. While repeatedly caveating the estimate, Apple estimated an additional 8,000 to 10,000 documents *after* the fourth production (i.e., on top of the 10,030 documents produced through the fourth production). *See* Hr'g Tr. 74:16–75:6 (Jan. 13, 2025). After Epic's counsel repeatedly pushed back, Apple's counsel estimated that it would be *at* least 17,000 documents in total. *See id.* at 79:5–17. Apple cannot be faulted for giving its best estimates in real-time based on the knowledge it had available during the conference.

*Third*, Epic now asserts (for the first time in this submission) that Apple may have strategically pushed some documents to the back of the re-review queue. Again, that is not true and there is no evidence for it. Apple did not sort documents for review based on custodian, subject matter, or any other metric. The only instruction it gave its vendor was to keep "family" member documents (e.g., emails and their attachments) together for purposes of the review. It is not even clear to Apple how it *could* have organized the review in the way Epic speculates, given the large number of custodians and the variety of documents in the production. If the suggestion is that Apple's counsel searched through all 54,000 documents, identified a few thousand that were of the greatest interest, and segregated them from the population, that did not happen and there is absolutely no evidence to substantiate that claim.

The statistics Epic presents are highly misleading. Epic notes that of the documents with Alex Roman, Phil Schiller, or Carson Oliver as a custodian over which Apple has maintained privilege, between 60–70% appear on the final log. But because Apple reviewed a substantially higher number of documents in the final week, the final privilege log represents approximately 57.8% of *all* documents over which Apple maintains privilege—regardless of custodian. Epic conspicuously omits any statistics as to Matt Fischer, the fourth witness from the hearing, whose allocation of documents in the final privilege log (~56.1%) was in line with the overall distribution of privileged documents. The percentages Epic cites for three particular custodians are therefore not evidence of any strategic ordering as to particular custodians.

*Fourth*, Epic identifies three documents in Apple's final privilege log that it claims may not be privileged. The process for objecting to documents over which Apple has asserted privilege is set forth in the Protocol, and there is no process in place for either party to short-circuit both the Special Masters *and* Judge Hixson in order to pursue immediate review from Your Honor. Based only on a quick review, though:

- Entry No. 1470 is a slide deck for internal presentation whose speaker notes indicate it was delivered in substantial majority by in-house counsel and that includes numerous comments from another in-house counsel.

- Entry No. 4706, as Epic admits, is an email sent to Apple's General Counsel, and as Apple has briefed before Judge Hixson, the fact that legal advice is sought on a business matter does not render a communication non-privileged.

- Entry No. 7796 appears to have already been produced to Epic from two other custodians (APL-EG_11391659 and APL-EG_11467957). Had Epic raised this with Apple prior to the joint submission, Apple could have produced this version as well (it not unusual for the same document to receive different treatment from different reviewers).

Epic also provides an Exhibit identifying 100 additional documents it contends may not be privileged. Epic did not provide this list of documents to Apple until 10:20 AM PT. Apple has had no opportunity to review the list at any level of detail. But in any event, as Apple has noted, the parties have an agreed-upon Protocol, developed jointly by the parties and entered by the Court as an order, for evaluating Apple's privilege claims. Even if Epic might be dissatisfied with the high rate at which the Special Masters are upholding Apple's privilege assertions, that is no basis to now jettison the process that the parties agreed to and the Court accepted.

Epic's suggestion that the Court's "spot check" include 100 documents curated by Epic is not tenable—looking only at the documents identified by an opposing party is not a "spot check" and will tell the Court nothing about Apple's overall privilege efforts. In a recent status hearing, one of the Special Masters also expressed concern whether any "spot check" would be effective because "[t]here are different kinds of groupings and I don't know how you would select randomly different things to give you a sampling to rule on." Hr'g Tr. 17:8–16 (Jan. 24, 2025). If Epic would

like to brief the newly identified documents on an expedited basis before Magistrate Judge Hixson and receive a ruling as to *those* documents, Apple is willing to do so (and that is the normal way in which privilege disputes are handled). But again, Epic never raised any of those documents before the morning of January 31, just hours before this submission is due. In any event, if Epic seeks to provide exemplars for the Court as illustrative of Apple's privilege re-review, then Apple would request the same opportunity.

*Finally*, Epic renews its request that the Court declare all of Apple's privilege assertions waived. This Court already indicated it was not inclined to issue that relief. *See* Hr'g Tr. 23:5–11. There are no new facts since then to justify such relief now. Epic's speculation about some change in Apple's review standards or a strategic ordering of documents is both unsubstantiated and wrong. In fact, at the hearing, counsel for Epic was clear: "The issue is not the rereview." *Id.* at 10:20. At the very least, the Court should receive full briefing before ordering such a drastic remedy.

| | |
|---|---|
| Dated: January 31, 2025 | Respectfully submitted, |
| | By:   /s/ *Yonatan Even* |

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

Dated: January 31, 2025

Respectfully submitted,

By:  /s/ *Mark A. Perry*

**WEIL, GOTSHAL & MANGES LLP**
Mark A. Perry
Joshua M. Wesneski

**GIBSON, DUNN & CRUTCHER LLP**
Richard J. Doren
Jason C. Lo
Daniel G. Swanson
Cynthia E. Richman
Julian W. Kleinbrodt

*Attorneys for Defendant and Counter-claimant*
APPLE INC.

**E-FILING ATTESTATION**

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Yonatan Even*
Yonatan Even

JOINT STATUS REPORT RE
SPECIAL MASTER REVIEW           15           CASE NO. 4:20-CV-05640-YGR-TSH