UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>   *Plaintiff*, *Counter-defendant*,<br><br>  v.<br><br>APPLE INC.,<br><br>   *Defendant*, *Counterclaimant*. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**OBJECTIONS TO SPECIAL MASTER DETERMINATIONS ISSUED JANUARY 30, 2025 REGARDING APPLE'S RE-REVIEWED DOCUMENTS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

  Pursuant to Section 4 of the Joint Stipulation and Order Approving Privilege Re-Review Protocol (Dkt. 1092) (the "Protocol"), Epic respectfully submits the following Objections to certain of the Special Masters' privilege determinations issued on January 30, 2025, regarding Apple's production of re-reviewed documents.

  Epic recognizes the significant burden of these objections and is sensitive to the Court's observation regarding the diminishing utility of similar or duplicative documents. Epic is therefore limiting its objections below to documents that it believes may be of importance for the forthcoming evidentiary hearings, while forgoing objections for many other documents Epic believes were improperly withheld but that appear to be of relatively limited utility. Epic, of course, does not have access to the documents and is therefore unable to fully assess the utility of the documents or the bases on which Apple claims privilege; it makes its utility judgments and predicates its objections on the limited information provided in Apple's privilege logs for the documents and their families.

  Epic respectfully requests that the Court review the following documents *in camera* and, where appropriate, reject Apple's privilege assertions pertaining to these documents, in whole or in part.

**Communications Concerning Apple's Public Reaction to Allegations of Malicious Compliance (Entry Nos. 194-195 from Apple's Third Production)**

Apple announced its plan for supposed compliance with the U.S. Injunction on January 16, 2024. Apple announced its plan for supposed compliance with the Digital Markets Act ("DMA") in Europe on January 25, 2024.[1] Both announcements were promptly met with a public outcry (including from, but not limited to, Epic), criticizing Apple for engaging in "malicious compliance" and for adopting plans that do not comply with the letter and, more importantly, the spirit of the U.S. Injunction and the DMA.[2] These allegations of malicious compliance form the core of Epic's allegations in the underlying contempt proceeding. This objection pertains to Apple's attempt to withhold documents that appear to reflect Apple's planning of its initial public response to these allegations.

Entry No. 194 (PRIV-APL-EG_00066447) is a February 1, 2024 email titled, "New Background Talking Points re Compliance Efforts". Entry No. 195 (PRIV-APL-EG_00066449) is an attachment to this email titled "DRAFT Spirit and Malicious T[alking] P[oints]". The custodian of both documents is Peter Ajemian, Corporate Communications and PR employee at Apple. The cover email is sent by Fred Sainz, a Senior Director of Corporate Communications at Apple, to Isaac Rubin, a Speech Writer in Corporate Communications at Apple and to an Apple U.S. outside counsel, copying Mr. Ajemian as well as Apple in-house counsel and U.S. and European outside counsel.

The Talking Points at issue here were presumably drafted by Apple communications personnel—some combination of Messrs. Ajemian, Sainz and Rubin—not by lawyers; Apple's privilege log does not suggest otherwise. Surely, Apple wanted its public statements to be reviewed by its attorneys (and likely hoped that would allow it to claim privilege over them). But nothing in Apple's privilege log explains why the cover email is *primarily* legal, as opposed to an exchange between communications professionals crafting public-facing talking points for Apple executives in response to a brewing crisis concerning Apple's non-compliance with the U.S. Injunction and the DMA—a clear *business* purpose. Given the subject matter, it is no surprise that Messrs. Sainz and Rubin kept Apple's regulatory lawyers (both in-house and outside) in the loop, both to keep the lawyers informed and so they can provide legal advice as needed. But simply adding lawyers to a PR effort does not render the entire effort privileged. Any legal advice actually given, or any specific request for such advice, is privileged and should be redacted, but this would not typically warrant withholding an entire exchange between communications professionals, as Apple seeks to do.

Furthermore, *even if* the cover email were privileged, that does not render *the attachment* privileged. Here, the attachment appears to reflect the work of Apple's communications professionals. In a typical case, Epic would be able to obtain that document on a standalone

---

[1] The DMA requires Apple (among other things) to allow developers to use alternative in-app payment mechanisms, raising many of the issues raised in the U.S. Injunction—and Apple's DMA compliance plan parallels its Injunction compliance plan in certain respects (most notably, the imposition of new fees on transactions that do not use IAP).

[2] Scott Bincheno, *Apple accused of 'malicious compliance' with EU DMA rules*, TELECOMS (Jan. 26, 2024), https://www.telecoms.com/digital-ecosystem/apple-accused-of-malicious-compliance-with-eu-dma-rules; Andy Yen, *Apple's DMA compliance plan is a trap and a slap in the face for the European Commission*, PROTON (Feb. 5, 2024), https://proton.me/blog/apple-dma-compliance-plan-trap. *See also* Sarah E. Needleman and Aaron Tilley, *Apple Changes Its App Store Policy: Critics Call the Moves 'Outrageous'*, WALL STREET J. (Jan. 17, 2024), https://www.wsj.com/tech/apple-changes-its-app-store-policy-critics-call-the-moves-outrageous-7c023e0c.

basis from the files of Messrs. Rubin, Sainz and Ajemian. Here, for reasons that are unclear to Epic, Entry No. 195 is the only copy of the document that Epic could locate in the production. But sending an otherwise unprivileged document to a lawyer, even to obtain legal advice, does not render the underlying document itself privileged; it is "[t]he legal advice requested of counsel, and the advice provided, [that] are privileged, but that's it". (Dkt. 1056 at 1.)

**Pre-Announcement Communications or Press-Related Documents (Entry Nos. 38, 88, 91, 123 and 124 from Apple's Third Production)**

Apple planned a PR campaign as part and parcel of its overall response to the Injunction. These plans were put together by Apple communications professionals, who put them together for a business reason—to publicly defend its supposed compliance model—separate and distinct from any legal challenge that might ensue. Epic believes several documents Apple seeks to withhold in their entirety reflect these PR efforts and, as such, are likely not privileged (let alone in their entirety).

Entry No. 38 (PRIV-APL-EG_00064782) is a draft communications document relating to Apple's U.S. Injunction compliance plan. The custodian is Mr. Ajemian, and the cover email attaching the document is from Mr. Sainz to Mr. Ajemian and several other Apple communications and PR professionals. Apple applied redactions to the cover email, which Epic is not privy to and therefore cannot assess at this time. But the attachment was clearly drafted by communications professionals for a business purpose; at most, to the extent the document visibly reflects comments identifiably proposed by lawyers, those should be redacted, but the document as a whole should be produced.

Entry No. 88 (PRIV-APL-EG_00065371) is an email from Mr. Ajemian, a communications and PR professional, to Apple senior business executives including Tim Cook, Phil Schiller, Gregory Joswiak, Eddy Cue, Luca Maestri, Lisa Jackson and Craig Federighi, as well as Kate Adams, Apple's General Counsel. The email further copies multiple additional Apple employees, including business professionals, communications and PR professionals, as well as in-house counsel. Based on the subject line, the email appears to discuss the press coverage of Apple's introduction in Korea of a plan to "allow external payment options".[3] The purpose of this email is clearly primarily business. And there is no indication in Apple's privilege log that there was any legal advice provided or requested on the email chain; instead, Apple simply asserts the document "contains discussions of legal information". In any event, to the extent the document contains any specific request for or actual legal advice, those portions should be redacted; the document as a whole, however, does not appear to be privileged and ought to be produced.

Entry No. 91 (PRIV-APL-EG_00065397) is an email between two non-counsel Apple employees; the custodian is Mr. Ajemian, and the recipient is Archelle Thelemaque, a Public Relations Specialist. The subject of the email is "checking in: Wisconsin". No lawyers are copied on the email. Thus, the primary purpose of at least the top email appears to be business—specifically, communications/PR—and not legal. The privilege log states the "[e]mail reflects information needed for the purposes of obtaining legal advice". This is not an appropriate consideration for determining attorney-client privilege. Facts do not become privileged simply

---

[3] Apple's compliance plan in South Korea parallels its Injunction compliance plan in certain respects (most notably, the imposition of new fees on transactions that do not use IAP).

because a lawyer requests them unless the actual request or consequent legal advice are revealed. This document therefore does not appear to be privileged, let alone in its entirety.

Entry Nos. 123 (PRIV-APL-EG_00065667) and 124 (PRIV-APL-EG_00065673) appear to be an email and accompanying attachment of a proposed Q&A relating to Apple's link entitlement program, to be distributed to developers and/or the press.  The custodian of the document is again Mr. Ajemian.  The parent email is from Marni Goldberg, a communications professional, to Adam Dema and Hannah Smith, both communications professionals.  The email does not copy any lawyers and the subject of the email is "Adam/Hannah -- can you review these?".  This is therefore a business communication among communications professionals about a communications document attached to the email.  Based on this information in the privilege log, these documents are not privileged and should not be withheld, let alone in their entirety.

**Other Communications with a Primary Business Purpose (Entry Nos. 523 from Apple's Third Production; Entry Nos. 2167, 2168 and 2169 from Apple's Second Production)**

Entry No. 523 (PRIV-APL-EG_00069945) is an email from Bri Cote, a Product Design Program Manager, to almost a dozen Apple employees, including technical, product and engineering professionals, as well as in-house counsel.  Based on the subject of the email, it appears the email requests urgent input from the recipients on Wisconsin-related issues, apparently for or from "exec[utives]".  This document does not appear to reflect a communication made for primarily legal purposes.  To the extent the document reflects any *legal* advice (or specific request for such advice, as opposed to a generalized request for feedback from all recipients), portions disclosing such advice should be appropriately and narrowly redacted, rather than having the document be fully withheld.

Entry No. 2167 (PRIV-APL-EG_00048697) is an email discussing "Guidelines" from Mike Tam, Senior Manager of Worldwide Developer Marketing, to June Orlowski, Legal Project Manager (whom Apple omitted from its list of counsel and does not list in the privilege log as counsel), and Cathyia Xie, non-lawyer Localization Producer, with other counsel and non-counsel copied on the email.  Its children are Entry Nos. 2168 (apparently an automated email from "Apple Developer" to a "marketing" listserv) and 2169 (apparently a screenshot of the guidelines notice mentioned in the cover email).  Based on the privilege descriptions and the emails' senders, these documents appear to be primarily business-related (or at the very least, not primarily legal).  To the extent these documents reflect *legal* advice or any specific request for such advice, they should be appropriately and narrowly redacted, rather than fully withheld.

**Meeting Notes (Entry Nos. 492, 493 from Apple's Third Production; Entry Nos. 2205, 2206 and 2207 from Apple's Second Production)**

Entry Nos. 492 (PRIV-APL-EG_00069555) and 493 (PRIV-APL-EG_00069559) are a parent email and attachment from Apple CEO Tim Cook to Apple counsel, with a long list of both counsel and non-counsel copied on the email.  The custodians for each are a handful of Apple executives, including Tim Cook, Phil Schiller and Craig Federighi.  Although the cover email is sent directly to an in-house lawyer, based on the documents' descriptions and titles, these documents appear to be a cover email and attached notes from an executive or business meeting.  The existence of notes from Apple executive meetings has been raised by Judge Gonzalez Rogers several times during the contempt hearings (*see, e.g.*, May 16, 2024 Hr'g Tr. at 458-459; May 17, 2024 Hr'g Tr. 613:14-18; May 31, 2024 Hr'g Tr. 915:4-10.)  To the extent

4

these documents in fact reflect notes from an Apple executive meeting, such notes are not generally privileged, *even if* Apple used a lawyer to transcribe or summarize them. Only to the extent such notes disclose legal advice or any specific request for such advice, should these documents be deemed privileged and appropriately redacted.

      Entry No. 2205 (PRIV-APL-EG_00049292) is an email from a non-counsel manager on Apple's web production team to non-counsel Mike Tam, Senior Manager of Worldwide Developer Marketing, and counsel Ling Lew, with a handful of other non-counsel and counsel copied. The email title indicates that it discusses meeting notes, which appears to be primarily business-related. Given the large distribution list and the fact that the meeting at issue likely was not primarily legal, this email should at most be redacted for legal advice—not withheld in its entirety. For the same reasons, the attachments to the email—Entry Nos. 2206 (PRIV-APL-EG_00049301) and 2207 (PRIV-APL-EG_00049302)—are likely not privileged, at least not in their entirety, though Apple's privilege log does not provide sufficient information for Epic to further assess Apple's privilege claims as to those two documents.

DATED: February 5, 2025                    CRAVATH, SWAINE & MOORE LLP
                                                         By: */s/ Yonatan Even*
                                                         *Counsel for Plaintiff Epic Games, Inc.*