UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> *Plaintiff, Counter-defendant,* <br><br> APPLE INC., <br><br> *Defendant, Counterclaimant.* | Case No. 4:20-cv-05640-YGR-TSH <br><br><br> **RESPONSE TO EPIC'S OBJECTIONS TO SPECIAL MASTER RULINGS ON APPLE INC.'S PRODUCTIONS OF RE-REVIEWED PRIVILEGE DOCUMENTS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

     Pursuant to section 4 of the Joint Stipulation and Order Approving Privilege Re-Review Protocol (Dkt. 1092) (the "Protocol"), Apple respectfully submits the following Response to Epic's Objections to certain of the Special Masters' privilege determinations issued on February 4, 2025, regarding Apple's production of re-reviewed documents. We are submitting these documents for *in-camera* review contemporaneously with this filing.

     Apple's responses relate only to documents Apple believes are not already covered by Your Honor's and Judge Gonzalez Rogers' existing rulings on Apple's privilege assertions in this post-judgment discovery. As previously noted, *see* Dkt. 1109, Apple reserves all rights as to documents affected by those rulings, including any post-judgment appellate rights.

**Emails with Legal Team (Entry Nos. 636, 637, 648, 662, 663, 666, 667, 2307, 2452, 2505, 2506, 2507, 2508, 2509, 2510, 2511, 2512, 2513, 2522, 2523, 2524, 2525, 2526, 2527 9203, 9307, 9314, 9327, 9329, 9346, 9400, 9596, and 9601)**

In **Entry No. 662 (PRIV-APL-EG_00071833)**, a non-lawyer working at the direction of the "Competition Legal team" requests information from several non-lawyers in support of Apple's response to a "legally compulsory Request for Information from Korea's competition authority." Two lawyers on Apple's in-house competition legal team (D. Tina Wang and Soolean Choy) are copied. This is a request at the direction of lawyers for information in support of Apple's response to a regulator inquiry and is therefore privileged. *See In re Google RTB Consumer Priv. Litig.*, 2023 WL 1787160, at *5 (N.D. Cal. Feb. 6, 2023) (extending privilege to "communications made at the direction of counsel for the purpose of obtaining legal advice"). That the request for information relates to business issues does not make the legal advice provided or work done by lawyers in connection with those requests non-privileged: A "client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). As Epic notes, **Entry Nos. 666 (PRIV-APL-EG_00071853)** and **636 (PRIV-APL-EG_00071569)** are iterations of the same email and are therefore similarly privileged. These emails additionally include attachments (**Entry Nos. 667 (PRIV-APL-EG_00071859)** and **637 (PRIV-APL-EG_00071575)**) that contain information requested by the Competition Legal team necessary to respond to the Request for Information from Korea's competition authority. Information provided by a client for the provision of legal advice is also privileged. *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008) (holding that confidential information disclosed by a client to obtain legal advice is protected by the attorney-client privilege). Epic includes in its heading **Entry No. 663 (PRIV-APL-EG_00071835)** as a document it is objecting to; however, Epic fails to explain or provide the reasoning for its objection. Nevertheless, Entry No. 663 is an attached image relating to the information requested on behalf of the Competition Legal Team and is properly withheld as privileged in line with the above.

In **Entry No. 2307 (PRIV-APL-EG_00050545)**, a non-lawyer from Apple's public communications team forwards an email from Heather Grenier (in-house counsel) in which Ms. Grenier updates executives regarding the appeal in this litigation and summarizes the parties' respective filings. There is no additional content in the forwarding email from the non-lawyer except to highlight one portion of Ms. Grenier's summary. The summary is privileged and there is no additional content in the forwarding email to produce. Likewise, in **Entry No. 2452 (PRIV-APL-EG_00053131)**, a non-lawyer circulates documents "written by Compliance Legal" and directs any questions to Legal. These emails "simply forward[] legal advice from counsel," which Epic admits is privileged. Dkt. 1191, at 3.

In **Entry 2505 (PRIV-APL-EG_00053686)**, a non-lawyer shares documents, all of which concern the Digital Markets Act ("DMA") **(Entry Nos. 2506 (PRIV-APL-EG_00053689), 2507 (PRIV-APL-EG_00053703), 2508 (PRIV-APL-EG_00053712), and 2509 (PRIV-APL-EG_00053717))**, revised by a team including several in-house attorneys (Kyle Andeer, Heather Grenier, Sean Cameron, and Ling Lew). The email indicates that the in-house attorneys implemented feedback provided by Kate Adams, General Counsel, resulting in the revised documents attached to the parent email. Apple's legal team was heavily involved in complying with the Digital Markets Act and the in-house legal team referenced in the parent email made edits

2

to these documents in response to feedback provided by Apple's General Counsel; thus, both the email and its attachments incorporating such edits are privileged. Epic's assertion that the documents are "business- or press-related documents" is inaccurate, and in any event does not invalidate privilege; again, that the legal work relates to business issues does not make the legal advice provided or work done by lawyers in connection with those requests non-privileged.

In **Entry No. 2510 (PRIV-APL-EG_00053719)**, a non-lawyer shares draft documentation **(Entry Nos. 2511 (PRIV-APL-EG_00053725), 2512 (PRIV-APL-EG_00053734) and 2513 (PRIV-APL-EG_00053739))** related to payment processing in the European Union and explicitly requests "legal feedback." In response to this request, in-house counsel Jennifer Brown provides feedback on the drafts and adds outside counsel to the email chain likewise to provide legal feedback. This is an explicit request for and provision of legal advice and the email and draft documents are therefore privileged in their entirety. "Drafting legal documents is a core activity of lawyers, and obtaining information and feedback from clients is a necessary part of the process." *Diversey U.S. Holdings, Inc. v. Sara Lee Corp.*, 1994 WL 71462, at *1 (N.D. Ill. Mar. 3, 1994); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 662 (D. Or. 2019) ("A draft prepared at the request of counsel or otherwise prepared by [a non-lawyer] and sent to counsel for review and legal advice is subject to the attorney-client privilege.").

**Entry No. 2522 (PRIV-APL-EG_00053805)** and **Entry No. 2525 (PRIV- APL-EG_00053820)** are two iterations of the same email chain between several in-house attorneys as well as non-lawyers. Both emails include attachments of drafts of developer-facing communications and an entitlement request form (**Entry Nos. 2523 (PRIV-APL-EG_00053811), 2524 (PRIV-APL-EG_00053812), 2526 (PRIV-APL-EG_00053827), and 2527 (PRIV-APL-EG_00053828))**. Apple redacted (and the Special Masters upheld) certain portions of these email chains. The first email in the chain (i.e. the bottom email) is an email from Ling Lew (in-house counsel) highlighting legal requirements included in a draft addendum for the StoreKit External Purchase Link (US) entitlement—a contract iOS developers must enter into with Apple—which was drafted and revised by attorneys. Ms. Lew later shares in the chain that her team is working on drafts of the support page and entitlement request form for the entitlement, which drafts a non-lawyer ultimately circulates. Ms. Lew's email demonstrates that she was involved in and oversaw the drafting and editing of these documents. When a non-lawyer relays legal advice at the request of counsel, that information is privileged. *See Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 618 (N.D. Cal. 2020) (recognizing attorney-client privilege attaches to communications between non-attorney employees when transmitting legal advice given by counsel). That the subject matter of the legal advice is related to developer communications is of no significance, as attorney-client privilege extends to legal advice regarding business affairs. *United States v. Chen*, 99 F.3d at 1501. Further, the attached documents are protected by the work product doctrine, as these documents "would not have been created in substantially similar form but for the prospect of litigation." *ACLU of N. Cal. v. Dep't of Justice*, 880 F.3d 473, 485–86 (9th Cir. 2018) (cleaned up). These documents were created in conjunction with counsel as part of the press efforts in connection with this litigation: They would not have been created in these "forms" had Apple not been engaged in litigation.

**Entry No. 9203 (PRIV-APL-EG_00241606)** is an email from a non-lawyer, which includes notes from a meeting attended by various in-house attorneys (Adil Karrar, Ling Lew, and

3

Jason Cody). The meeting notes include action items with specific requests for "Legal." Requests for legal advice are properly withheld as privileged.

**Entry Nos. 9307 (PRIV-APL-EG_00242296)** and **9314 (PRIV-APL-EG_00242317)** are two iterations of the same email, which involve explicit requests from a non-lawyer for legal advice from Ling Lew (in-house counsel) and Jason Cody (in-house counsel). The non-lawyer seeks guidance from Ms. Lew and Mr. Cody on handling developer requests and approval for the external purchase entitlement. Two other in-house counsel (Sean Cameron and Jennifer Brown) later join the thread and contribute thoughts on the location requirements for the entitlement. While non-lawyers participate in the discussion, the thread is primarily and principally an exchange between those non-lawyers and in-house counsel, namely Ms. Lew, regarding the requirements for the entitlement and compliance. Because the thread consists of information sent to lawyers in confidence in pursuit of legal advice and of legal advice provided in response, it is privileged. *See In re Meta Healthcare Litig.*, 2024 WL 3381029, at *2 (N.D. Cal. July 10, 2024) ("The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures.").

Epic challenges the Special Masters' ruling over two emails—**Entry Nos. 9327 (PRIV-APL-EG_00242362)** and **9346 (PRIV-APL-EG_00242865)**—from Sean Cameron (in-house counsel) regarding Apple's injunction compliance plan. Epic concedes that these emails are properly privileged to the extent Mr. Cameron is providing legal advice. *See* Dkt. 1191 at 4. Mr. Cameron is, in fact, providing legal advice concerning (1) the terms of the Injunction, (2) the "Interpretation" of the Injunction, and (3) "Next steps" for Injunction compliance. The emails are squarely within the scope of the attorney-client privilege and were properly withheld on that basis. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (privilege attaches when "legal advice of any kind is sought"); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("It is clear that communications between corporate personnel and their in-house counsel made for the purpose of securing legal advice are protected by [attorney-client] privilege.").

Epic seeks disclosure of **Entry No. 9329 (PRIV-APL-EG_00242366)** based on the assertion that counsel is "merely copied." But in fact, a non-lawyer adds and explicitly seeks advice from Ling Lew (in-house counsel) regarding the question initially asked by a non-lawyer at the start of the chain (i.e. the bottom email). A request for legal advice is a privileged communication. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076. This privilege is not undermined because counsel has yet to respond to the request—the request itself is privileged.

**Entry No. 9400 (PRIV-APL-EG_00243495)** is an email chain including a draft press statement in response to EU lawmaker agreement on the Digital Markets Act. A non-lawyer explains that this statement was prepared with Kyle Andeer's (in-house counsel) guidance and the statement was sent to Kate Adams (General Counsel) for review. As Apple explained in its response to Epic's first round of objections, *see* Dkt. 1131, at 6, courts have frequently upheld as privileged drafts of press statements sent to legal counsel for input, *see, e.g.*, *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 498 (S.D.N.Y. 2019) (upholding privilege over "several documents that specifically requested legal review of language in the press release" (cleaned up)); *Pearlstein*

4

*v. BlackBerry Ltd.*, 2019 WL 1259382, at *14 (S.D.N.Y. Mar. 19, 2019) (upholding privilege over draft press releases "that specifically request legal review").

With respect to **Entry No. 648 (PRIV-APL-EG_00071742)**, Apple agrees that the document may be produced without redactions.  **Entry Nos. 9596 (PRIV-APL-EG_00244711)** and **9601 (PRIV-APL-EG_00244743)** are recommendations and draft messaging regarding new App Store features available in Korea.  Apple agrees the documents may be produced without redaction.

**Previously Produced Documents (Entry No. 764)**

Epic objects to the Special Masters' upholding of privilege over the entirety of **Entry No. 764 (PRIV-APL-EG_00073067)** on the basis that the Court ruled a similar thread, **Entry No. 3182 (PRIV-APL-EG_00103273)**, not privileged.  First, Epic's account is inaccurate.  The Court previously rejected Apple's objection challenging the Special Masters' ruling and proposing limited redactions, on the ground that Apple could not propose narrower redactions for Entry No. 3182.  The Court arguably did not reach a determination regarding whether the document is privileged.  Apple's assertion of the attorney-client privilege over Entry No. 3182 remains subject to appeal, and Apple again contends that the entirety of the email thread, which includes Apple in-house counsel, reflects either the provision of legal advice or the provision of information for the purpose of obtaining or furthering legal advice.

**Documents Similar to Documents the Court Has Ruled on (Entry Nos. 2720, 2721, 2722, 2723)**

Epic objects to the Special Masters' upholding of privilege over the entirety of **Entry No. 2720 (PRIV-APL-EG_00057885)** on the basis that the Court ruled a similar thread, **Entry No 592 (PRIV-APL-EG_00008954)**, not privileged. Accordingly, Apple has previously produced an identical email thread, notwithstanding the addition of a cover note within Entry No. 2720, and Apple will produce this document in the next production. However, Apple's assertion of the attorney-client privilege over Entry No. 592 remains subject to appeal, and Apple again contends that the entirety of the email thread, which includes Apple in-house counsel, economic consultants, and outside counsel, reflects either the provision of legal advice or the provision of information for the purpose of obtaining or furthering legal advice.

There are three attachments to this thread over which Epic seeks to object to the Special Masters' rulings. **Entry Nos. 2721 and 2722 (PRIV-APL-EG_00057962, PRIV-APL-EG_00057988)** are memoranda prepared by third-party economic consultants and shared with Apple and outside counsel. **Entry No. 2723 (PRIV-APL-EG_00058186)** is a memorandum prepared by a separate third-party economic consultant and again shared with Apple and outside counsel. Previously, without any objection from Epic, the Special Masters upheld Apple's assertion of both attorney-client privilege and work-product protection over each of these documents. (*see* Entry Nos. 299 (PRIV-APL-EG_00009030), 300 (PRIV-APL-EG_00009056), and 304 (PRIV-APL-EG_00009254)).

Apple has again asserted both attorney-client and work-product protection over Entry Nos. 2721 and 2722, and they should again be upheld as privileged on the basis that they were prepared at the instruction of counsel. On Entry No. 2723, Apple here only asserted the attorney-client privilege, which Epic latches onto. In any event, "[t]he attorney-client privilege protects communications between attorneys and their clients even when the facts being conveyed may themselves be unprivileged." *In re Lidoderm Antitrust Litig.*, 2015 WL 7566741, at *4 (N.D. Cal. Nov. 25, 2015). This slide deck reflects information provided to outside counsel for the purpose of obtaining legal advice, and therefore it is privileged.

**Draft Contracts (Entry Nos. 9299 and 9300)**

Epic cabins **Entry Nos. 9299** and **9300 (PRIV-APL-EG_00242265, PRIV-APL-EG_00242271)** as "versions of a document that relates to Apple's link-out entitlement program." In fact, these are draft contracts prepared by attorneys. The two drafts, identical Word and PDF versions, are titled "External Link Account Entitlement Addendum for Reader Apps." As Apple's prior objection on similar draft addenda explained, *see* Dkt 1158, this is a draft addendum to the Developer Program License Agreement—the contract that all iOS developers enter into with Apple. Here, the Special Masters deemed the parent thread, which involves Apple in-house counsel swapping "updated versions" of the draft agreement, as properly redacted for privilege (Entry No. 9298 (PRIV-APL-EG_00242262)). While Apple's privilege log inadvertently indicates the attached draft addenda contain redacted text, these attachments were each appropriately withheld in full. *See Diversey U.S. Holdings, Inc. v. Sara Lee Corp.*, 1994 WL 71462, at *1 (N.D. Ill. Mar. 3, 1994); *see also Se. Pa. Transp. Auth. v. Carmarkpcs Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) ("Preliminary drafts of contracts are generally protected by attorney/client privilege, since they reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is protected by the attorney/client privilege." (cleaned up)); *Barnes-Wallace v. City of San Diego*, 2002 WL 35646619, at *4 (S.D. Cal. Dec. 5, 2002) ("As a general rule, preliminary drafts of documents are protected by the attorney-client privilege.").

**Slide Decks (Entry Nos. 762, 527, 665, 2681)**

  Epic challenges Apple's privilege assertion over a slide deck entitled "Proposed Responses to Epic Injunction" (**Entry No. 762 (PRIV-APL-EG_00072855))**. Special Master Gutierrez upheld Apple's withholding of this deck on the basis of work product protection. As Apple's privilege log explains, the presentation "reflects legal advice from counsel" regarding a response to a court-ordered injunction. Indeed, as evidenced by the ongoing nature of the instant suit, the primary purpose of this deck is to explore strategy responsive to litigation. In trying to find fault with Apple's valid privilege claim, Epic implicitly contends that a document "reflect[ing] legal advice from counsel" cannot also be a document prepared in anticipation or furtherance of litigation. Epic provides no legal support for this theory, nor could they—work product and attorney-client privilege are not mutually exclusive. *See Todd v. STAAR Surgical Co.*, 2015 WL 13388227, at *11 (C.D. Cal. Aug. 21, 2015). The slide deck was properly withheld in full.

  Epic likewise opposes the Special Master determination upholding privilege over the entirety of a draft slide deck detailing the "Wisconsin" "Commission" **(Entry No. 527 (PRIV-APL-EG_00069958))**. Epic asserts that commission rates are central to the contempt proceeding, *see* Dkt. 1191, at 2, but that does not vitiate the attorney-client privilege if it applies, *see Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("[T]he privilege cannot be overcome by a showing of need . . . ."). The draft deck includes attorney comments in the notes field and non-attorney notes reflecting legal advice and strategy. Further, the parent email indicates that the draft deck is shared with several members of Apple's in-house counsel team for review and comment, and thus plainly relates to Apple's plan for complying with the Injunction in this lawsuit. This deck is squarely protected, in its entirety, by the attorney-client privilege.

  Epic similarly contends that the Special Masters were wrong to uphold Apple's claim of privilege over the entirety of a slide deck regarding commission rates in the European Union **(Entry No. 665 (PRIV-APL-EG_00071845))**. Again, Epic is incorrect to assert that this deck merely reflects business options that are legally available. Redacted portions of the transmittal email indicate that the slide deck reflects the need for particular legal action. Accordingly, the slide deck contains legal advice and is privileged.

  Finally, Epic requests production of a transmittal email sent between two non-attorneys at Apple (**Entry No. 2681 (PRIV-APL-EG_00057174))**, attaching two slide decks presented to the European Commission. The attached slide decks were produced in full. Apple will produce the transmittal email in the next production.

**Documents Epic Previously Challenged (Entry Nos. 525, 526, 530, and 542)**

Epic challenges **Entry Nos. 525 (PRIV-APL-EG_00069950)**, **530 (PRIV-APL-EG_00070001),** and **542 (PRIV-APL-EG_00070044)** on the same grounds it previously challenged **Entry No. 523 (PRIV-APL-EG_00069945)**. Apple reiterates its previous response (Dkt. 1183 at 5). **Entry Nos. 525 (PRIV-APL-EG_00069950)**, **530 (PRIV-APL-EG_00070001),** and **542 (PRIV-APL-EG_00070044)** are all versions of the same email thread initiated by a non-lawyer addressed to Jennifer Brown (in-house counsel), Ling Lew (also in-house counsel), and other members of the "Team." The content of the email is a discussion regarding changes to certain aspects of Apple's response to the Injunction based on a discussion with executive leadership. The "Feedback" being sought therefore is from lawyers. The fact that the request was spurred by comments from executive leadership does not render the request for legal advice—or the responsive legal advice from lawyers—non-privileged. *See United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (a "client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

**Employee Chats and Messages (Entry Nos. 614, 615, 774, 781, 783, 800, 802, and 9394)**

Epic objects that for entries in this category Apple's privilege log entries are not sufficiently specific. *See* Dkt. 1191, at 6–7. Apple responded to this argument in the context of the parties' joint discovery letter, explaining that its logs comply with the parties' ESI protocol defining the categories of information required to be provided in the parties' logs, *see* Dkt. 242; that its logs are consistent with Ninth Circuit precedent defining the categories of information a party should provide in a privilege log where one is required, *see In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *see also Orthopaedic Hosp. v. DJO Global, Inc.*, 2020 WL 7625123, at *4 (S.D. Cal. Dec. 22, 2020); and that Apple's privilege logs provide *at least* as much (and often times more) detail than Epic's own privilege logs, *see Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118, 121 (E.D. Mich. 2019) (rejecting challenge to privilege sufficiency when the party's "own log is identical"). *See* Dkt. 1039, at 5. Epic now seeks to revive this dispute even though (1) Apple agreed to (and has) provided privilege logs with greater detail than what is required by the ESI protocol or under the prevailing case law, (2) Apple's privilege logs for the set of documents currently under review are no different from those served with its prior productions in the re-review, to which Epic raised no objection, and (3) none of the Special Masters has objected to the sufficiency of Apple's logs. The Special Masters reviewed the documents themselves and upheld Apple's privilege assertions in full; Epic's complaint about the sufficiency of the privilege log entry is no ground for overturning those determinations.

In any event, Epic's complaints about the privilege log entries are without any basis. Epic erroneously claims that there are no attorney communications in **Entry Nos. 614 (PRIV-APL-EG_00071306)**, **615 (PRIV-APL-EG_00071311)**, **774 (PRIV-APL-EG_00073395)**, **781 (PRIV-APL-EG_00073493)**, **783 (PRIV-APL-EG_00073516)**, **800 (PRIV-APL-EG_00073703)**, **802 (PRIV-APL-EG_00073731), and 9394 (PRIV-APL-EG_00243472)**, despite Apple's privilege log clearly indicating otherwise. Epic claims without basis that Apple's privilege assertions "merely state that the messages 'reflect[]' or 'provide[]' legal advice" and are "bereft of any information useful to evaluate the privilege assertions" when, in fact, each entry plainly asserts the attorney present and subject of legal advice provided:

**Entry Nos. 614 (PRIV-APL-EG_00071306)** and **615 (PRIV-APL-EG_00071311)** are text message threads between in-house counsel Sean Cameron and Apple employees, in which counsel directly provides legal advice regarding foreign regulatory issues in Korea and the Netherlands. The privilege log states legal advice was provided by Mr. Cameron "regarding foreign regulatory issues" and that these entries are a "[t]ext message chain with in-house counsel and the business team asking for advice and updates on proposed language in regard to ongoing interaction with Korean regulators."

**Entry No. 774 (PRIV-APL-EG_00073395)** is a text message thread between Apple employees, in which a non-attorney relays information reflecting legal advice from the Apple legal team regarding Apple's pending litigation with Epic and Apple's timeline for injunction compliance. The privilege log states that "Apple legal weighed in on this document" to provide legal advice "regarding injunction compliance launch date and timing."

**Entry No. 781 (PRIV-APL-EG_00073493)** is a text message thread between in-house counsel Heather Grenier and an Apple employee, in which counsel directly provides legal advice

11

regarding pending litigation with Epic and the timeline for injunction compliance in response to the employee's legal questions. The privilege log states legal advice was provided by Ms. Grenier "regarding injunction compliance press and communications legal strategy" and that this is a "[c]onversation between Apple PR and Apple in-house counsel."

**Entry No. 783 (PRIV-APL-EG_00073516)** is a text message thread between in-house counsel Andrew Farthing, in-house counsel Heather Grenier, and other Apple employees, in which counsel Andrew Farthing provides a legal update regarding pending litigation with Epic in Australia. The privilege log states legal advice was provided by Mr. Farthing "regarding ongoing Epic litigation."

**Entry No. 800 (PRIV-APL-EG_00073703)** is a text message thread between in-house counsel Kyle Andeer and an Apple employee, in which counsel provides draft language and legal advice regarding a draft press statement on the DMA. The privilege log states legal advice was provided by Mr. Andeer "regarding injunction compliance press and communications legal strategy."

**Entry No. 802 (PRIV-APL-EG_00073731)** is a text message thread between Apple employees, in which a non-attorney shares draft language to be shared with developers regarding link entitlement and commission and indicates she plans to seek legal review from in-house counsel Heather Grenier. The privilege log states that the document reflects legal advice from Apple legal regarding "injunction compliance press and communications legal strategy."

**Entry No. 9394 (PRIV-APL-EG_00243472)** is a text message thread between in-house counsel Kate Adams and an Apple employee, in which counsel directly provides legal advice regarding pending litigation with Epic and Apple's U.S. link entitlement compliance. The privilege log states legal advice was provided by Ms. Adams "regarding injunction compliance and U.S. Link Entitlement program eligibility."

**Documents Related to Communications or Press Materials (Entry Nos. 860, 871, 872, 883, 928, 2349, 2350, and 2351)**

  **Entry No. 871 (PRIV-APL-EG_00075215)** is a parent email from a non-attorney Apple employee sent to three in-house counsel—Jennifer Brown, Ling Lew, and Sean Cameron—and some additional Apple employees. The email is addressed to "Legal and App Store Colleagues" and notes where the attachments contain "a direct question or ask of legal." The attachment, **Entry No. 872 (PRIV-APL-EG_00075217)**, is a draft communication intended to be eventually shared with press, which concerns compliance measures taken by Apple with respect to U.S. link entitlement. The draft communication includes specific questions directed to Apple Legal, stating "Legal, please advise" in several places. As Apple has explained in response to previous objections from Epic, *see* Dkt. 1144, at 4, courts have frequently upheld as privileged drafts of press statements sent to legal counsel for input, *see, e.g.*, *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 498 (S.D.N.Y. 2019) (upholding privilege over "several documents that specifically requested legal review of language in the press release" (cleaned up)); *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *14 (S.D.N.Y. Mar. 19, 2019) (upholding privilege over draft press releases "that specifically request legal review"). **Entry Nos. 883 (PRIV-APL-EG_00075317)** and **928 (PRIV-APL-EG_00076439)** are different versions of **Entry No. 872**, containing the same legal questions, and accordingly are also properly withheld.

  Likewise, **Entry No. 2349 (PRIV-APL-EG_00051086)** is a parent email from a non-attorney Apple employee sent to five in-house counsel—Kyle Andeer, Sean Cameron, Sean Dillon, Ling Lew, and Jason Cody—and other Apple employees. The text of the parent email itself includes draft communications intended to be eventually shared with developers and press, which concern compliance measures taken by Apple in response to Netherlands regulations. The email specifically solicits "proposed edits" from the legal team and other recipients. As explained above, these documents are privileged as draft press releases requesting legal review. The attachments—**Entry Nos. 2350 (PRIV-APL-EG_00051099) and 2351 (PRIV-APL-EG_00051100)**—are images that were included in the draft communications. They were shared for legal review in conjunction with the draft communications and are accordingly properly withheld.

  Apple agrees to produce **Entry No. 860 (PRIV-APL-EG-00075116)** in the next production.

**Document Prepared at the Direction of Counsel (Entry No. 2478)**

Apple agrees to produce **Entry No. 2478 (PRIV-APL-EG_00053388)** in the next production.


DATED: February 12, 2025                              WEIL, GOTSHAL & MANGES LLP
                                                     By: */s/ Mark A. Perry*

                                                     *Counsel for Defendant Apple Inc.*