### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR-TSH |
| *Plaintiff, Counter-defendant,* | |
| v. | |
| APPLE INC., | **OBJECTIONS TO SPECIAL MASTER DETERMINATIONS ISSUED FEBRUARY 6, 2025 REGARDING APPLE'S RE-REVIEWED DOCUMENTS** |
| *Defendant, Counterclaimant.* | |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

      Pursuant to Section 4 of the Joint Stipulation and Order Approving Privilege Re-Review Protocol (Dkt. 1092) (the "Protocol"), Epic respectfully submits the following Objections to certain of the Special Masters' privilege determinations issued on February 6, 2025, regarding Apple's production of re-reviewed documents.[1]

      As it has done in recent filings, Epic is limiting its objections to documents that it believes may be of importance for the underlying contempt proceeding. (Dkt. 1178 at 1.) Epic does not have access to the documents and is therefore unable to fully assess their utility or the bases on which Apple claims privilege. Epic therefore predicates its objections on the limited information provided in Apple's privilege logs for the documents and their families.

      Epic respectfully requests that the Court review the following documents *in camera* and, where appropriate, reject Apple's privilege assertions pertaining to these documents, in whole or in part.

**Business and Communications Emails (Entry Nos. 1091, 1166, 1167, 1186, 1301, 1302, 1317, 1318, 1336 and 1337)**

      Entry No. 1091 (PRIV-APL-EG_00079343) is apparently an email that Marni Goldberg, a Director in Corporate Communications, sent to herself. The email title is "Epic Q[&]A". Apple seeks to withhold it for attorney-client privilege (*see* Column P, "Privilege Type"), but

---

[1] This set of Objections was filed on February 12, 2025. (Dkt. 1200.) It is being refiled with redactions, as Apple claims it contains confidential information.

then claims in its privilege description that the email is "Work Product". Apple further claims in its privilege log that the email is a "thread from in-house counsel re motion to stay injunction" despite at least the top email being an email Ms. Goldberg sent to herself. Apple also does not claim anywhere in its privilege log that the email discloses any legal advice or a request for legal advice. That omission alone undermines Apple's assertion of privilege. Moreover, this Court already held, in its December 2 Order, that "a draft of a case summary to be provided externally to the press" is not privileged. (Dkt. 1056 at 3.) To the extent this email similarly reflects a draft of outward-facing press briefing materials, this document should not be withheld, at least not in its entirety.

Entry No. 1166 (PRIV-APL-EG_00081510) is an email from Fred Sainz, Senior Director of Corporate Communications at Apple, to Phil Schiller and Sean Cameron, Apple counsel, copying several Apple business professionals and in-house counsel. The email title indicates that Mr. Sainz is forwarding a draft study (child attachment Entry No. 1167 (PRIV-APL-EG_00081528)) "[f]or approval". Nothing in the privilege log suggests the email is sent for a primarily legal purpose, and the study it attaches, titled "How third-party apps succeed", suggests its purpose is primarily business. These documents therefore do not appear to be privileged, at least not in their entirety.

Entry No. 1186 (PRIV-APL-EG_00081705) is an email from Brandon Reese, a Technical Product Manager, to Ms. Goldberg, copying four business and communications professionals and one in-house counsel. The email subject is "Reporting out of Korea", a topic that does not appear to be primarily, or even inherently, legal. To the extent any portion of this email chain discloses legal advice, as Apple contends, such advice could be redacted, but the document does not appear to be privileged in its entirety.

Entry No. 1301 (PRIV-APL-EG_00082600) is an email between Ms. Goldberg, Mr. Sainz and Hannah Smith, another Apple communications professional. There is no counsel on the email. The subject of the cover email does not suggest it is part of a longer email chain (*i.e.*, one that could include legal advice in earlier emails in the chain), yet the privilege description states that the email is a "chain providing legal advice from counsel". The privilege log further states that the attachment to the email, Entry No. 1302 (PRIV-APL-EG_00082606), entitled "Japan PR Plan", is privileged because it is a "[d]raft document reflecting legal advice from counsel". But a public relations plan is not primarily legal in nature, nor does it have a primarily legal purpose. Here, therefore, to the extent the cover email discloses any legal advice, Apple could have redacted such advice, rather than seek to withhold the document in its entirety. At the very least, the top email in the chain—which includes no lawyers—appears unlikely to be privileged. And as for the attachment, even if these three communications professionals obtained legal advice before authoring Apple's Japan public relations plan, that plan itself would not be privileged; it is "[t]he legal advice requested of counsel, and the advice provided, [that] are privileged, but that's it". (Dkt. 1056 at 1.)

Entry No. 1317 (PRIV-APL-EG_00082730) is another email from Ms. Goldberg, this time to Alex Waldron, non-counsel Director of Public Relations, and Nelly Assayag, non-counsel Public Relations Manager. The email title indicates the exchange is about "[f]act sheets", and its child attachment, Entry No. 1318 (PRIV-APL-EG_00082731), is a "PR Fact Sheet re[garding] Netflix and IAP". Apple's claims of privilege (and work product protection, in the case of Entry

No. 1318) appear unsubstantiated. *First*, Apple does not identify any attorneys who worked on or are implicated in this document, instead claiming only that both documents "reflect legal advice from Apple legal". That is a deficient claim of privilege for the reasons stated above in connection with Entry No. 1302; almost every Apple document likely "reflects" some legal advice, but only documents that *disclose* such advice are privileged. *Second*, public relations fact sheets are not primarily legal in nature, if at all, and an attorney's input into such a document would typically not amount to legal advice. (Dkt. 1056 at 3 (holding that facts provided by a lawyer "to be provided externally to the press" are not privileged).) *Third*, in the case of Entry No. 1318, an "injunction compliance press" document is not protected attorney work product made *in anticipation of litigation* where Apple's compliance work presumably was largely intended to address the outcome of *past* litigation, as Epic has briefed previously before this Court. (Dkt. 1191 at 3 & n.2.)

Entry No. 1336 (PRIV-APL-EG_00082871) is yet another email from Ms. Goldberg to Ms. Smith, and its child attachment is Entry No. 1337 (PRIV-APL-EG_00082880). Ms. Goldberg is the custodian for both documents. The document titles concern "Developer Outreach" and related "Q&A for Apple Executive Team". An email among communications professionals about information prepared for business executives does not appear to be for a primarily *legal* purpose. These documents should not be withheld, at least not in their entirety.

## Document Sent to Epic and Cover Email (Entry Nos. 1005 and 1006)

Entry No. 1005 (PRIV-APL-EG_00077505) is an email sent by Apple in-house counsel Ling Lew to Mr. Sainz and Ms. Goldberg, copying another Apple in-house counsel. Based on the email title, Ms. Lew is forwarding to Apple's communications professionals a letter (child attachment Entry No. 1006 (PRIV-APL-EG_00077514)) that Apple's outside counsel sent to Epic's outside counsel in the context of the underlying contempt proceeding. Apple claims both documents are covered by the attorney-client privilege (*see* Column P, "Privilege Type"), but it is unclear what legal advice Apple's in-house counsel would provide to a communications professional concerning a letter already sent to another party in litigation, and it is abundantly clear that the attachment—a letter Apple had sent to Epic—does not disclose any legal advice. The party asserting privilege has an obligation to "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection". *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment). Apple has not done so here.

## Business Presentation and Cover Email (Entry Nos. 1070 and 1071)

Entry No. 1071 (PRIV-APL-EG_00078885) is a draft presentation deck sent by Ms. Smith to Ms. Goldberg, copying Apple in-house counsel. The title of the deck is "Epic vs. Apple [] appeal". Apple claims work product protections over this deck, but that claim should fail twice over: first, this deck appears to be an outward-facing background slide deck that Apple ubiquitously used for briefing the press about the *Epic* matter, not work product made *in furtherance or anticipation of litigation*; and second, Apple's privilege log description does not claim the deck was prepared to advance any litigation, but instead claims the deck contains "legal advice", which (even if true) cannot establish the work product protection Apple is

asserting in Column P ("Privilege Type").  (*See also Burlington N.*, 408 F.3d at 1148.)
Therefore, this document should not be withheld, at least not in its entirety.  Its cover email,
Entry No. 1070 (PRIV-APL-EG_00078882), is from one Apple communications employee to
another, with counsel merely copied.  To the extent the cover email discloses any legal advice
that can be traced back to an attorney, such advice could be redacted—but the privilege log does
not support fully withholding the email.

### Lobbying- and Consulting-Related Documents Shared with Third Parties (Entry Nos. 1207, 1211, 1212, 1217, 1218, 1285 and 1286)

Entry Nos. 1207 (PRIV-APL-EG_00081920) and 1211 (PRIV-APL-EG_00081945) are
emails from █████████████, a partner at █████████ whose work appears to focus on
government relations and interfacing, to Ms. Goldberg, copying an employee and all members of
the DMA PRESS REPORT listserv at █████████████, a consulting firm, as well as six Apple
communications professionals and several █████████████ policy-focused counsel and staff.[2]
The titles of these documents appear primarily press- and business-related:  Entry No. 1207 is
about a "Social-Dev[eloper] Forum Draft" and Entry No. 1211 concerns "Writing about
Developers' reactions".  Neither appears to convey legal advice.

Apple's privilege assertions as to these documents fail for several reasons.  *First*, the
enhanced privilege description provided by Apple states that these emails (and Entry No. 1211's
child attachment, Entry No. 1212 (PRIV-APL-EG_00081959)) "discuss[] and attach[] social
media posts that appear to be exchanged with counsel for the purpose of drafting a brief of
preparing something for litigation".  That justification does not come close to establishing
Apple's privilege assertions.  Apple may not base a privilege assertion on what its own emails
"appear" to be; Apple had the burden to *ascertain* what the sender of this email actually *was*
doing but failed to do so.  *Second*, Apple's privilege log asserts that the attorney providing the
advice in this case is outside counsel from █████████.  But Apple appears to have used
█████████████ services for purposes akin to government relations, crisis management and
lobbying, not to obtain *legal* advice (and certainly not to "draft[] a brief or prepar[e] something
for litigation").  Like business advice, lobbying may well be an aspect of an attorney's job, but
the fact that lobbying and communications work is carried out by lawyers does not convert these
efforts into *legal* advice subject to privilege.  Indeed, "advice of the type given in lobbying
efforts is not privileged".  *Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2014 WL 12526316, at
*2 (D. Ariz. Jan. 31, 2014) (collecting cases); *see also Ala. Aircraft Indus., Inc. v. Boeing, Co.*,
2:11-cv-03577-RDP, 2016 WL 9781826 (N.D. Ala. March 24, 2016) ("[I]t is well established
that lobbying and public relations communications do not come within the [attorney-client]
privilege on their own accord.").  Therefore, any documents that would not otherwise sustain a
claim of privilege but for the appearance of █████████ counsel on the privilege log should
not be withheld.  *Third*, by claiming the documents "appear to be exchanged with counsel for the
purpose of . . . preparing something for litigation", Apple apparently attempts (unsuccessfully) to
establish a claim of work product protection.  But Apple only asserted attorney-client privilege
over these documents (*see* the column headed "Privilege Type").  Any work product claim
therefore fails both procedurally (*see Burlington N.*, 408 F.3d at 1148) and on substance:  an

---

[2] Entry No. 1207 copies three associates (two of whom focus on public policy issues) and one policy assistant.
Entry No. 1211 copies █████████, a partner specializing in crisis management and government controversies.

attorney's work is not "subject to protection if the work is *intended for public relations or other business purposes rather than litigation*". *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 635 (N.D. Cal. 2019) (emphasis added). And *fourth*, to the extent these documents do contain legal advice, Apple waived the privilege by sharing these documents with ███████ ████, a third-party consulting firm. The law on this point is clear: disclosure of privileged information to a public relations firm or another consultant constitutes a waiver of the privilege, subject to certain narrow exceptions that Apple does not even attempt to meet here. *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2022 WL 885368, at *2 (N.D. Cal. Mar. 25, 2022) (finding privilege waived where party did not "explain why a public relations firm is essential to providing legal advice, such that Plaintiffs' counsel would have been unable to provide competent advice absent [the public relation firm's] involvement"); *Anderson*, 329 F.R.D. at 634 ("Where communications between a client and attorney have been disclosed to a third party, the burden is on the party asserting the privilege to show that it applies despite that disclosure . . . in order for disclosure to a [public relations firm] third party to be 'reasonably necessary' for an attorney's purpose, and thus not to effect a waiver of privilege . . . the [public relation firm] must facilitate communication between the attorney and client"). These documents therefore should not be withheld.

Entry Nos. 1217 (PRIV-APL-EG_00081981) and 1218 (PRIV-APLEG_00081990) appear to be earlier versions of the Entry No. 1211 email and its attachment, Entry No. 1212, as they have the same document titles, they come from the same sender, and they are addressed to the same recipients, including ███████████. Notably, however, Apple's privilege log description for Entries Nos. 1217 and 1218 is different; rather than claiming these documents "appear" to be used to prepare "something" for litigation, Apple claims that Entry Nos. 1217 and 1218 discuss candidate developers that Apple could offer up for a New York Times interview, and "whether the information they provide could be helpful or harmful" to Apple. This description further confirms that ███████████ was not providing legal advice to Apple, and the documents therefore are not privileged. And in any event, even if the documents reflected any legal advice, privilege over these documents was waived once they were shared with ███████████, as noted above.

Entry Nos. 1285 (PRIV-APL-EG_00082512) and 1286 (PRIV-APL-EG_00082517) are an email and its attachment sent by ███████, another third-party communications and public affairs consulting firm, to Ms. Goldberg. The subject of the email is "PLEASE READ: Final Myth-Fact document". Apple's privilege log indicates that Apple counsel Jennifer Brown is somehow implicated in this correspondence, but advice from a lawyer "in furtherance of drafting public communications"—Apple's privilege description—is not *legal* advice. Moreover, Apple waived privilege over any legal advice it shared with ███████, a third party, for the reasons stated above.

DATED: February 13, 2025

CRAVATH, SWAINE & MOORE LLP

By: */s/ Yonatan Even*
*Counsel for Plaintiff Epic Games, Inc.*