PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
JUSTIN C. CLARKE (*pro hac vice*)
jcclarke@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, Counter-defendant, <br><br> v. <br><br> APPLE INC., <br><br> Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH <br><br> **EPIC GAMES, INC.'S MOTION FOR RELIEF FROM A NON-DISPOSITIVE ORDER OF A MAGISTRATE JUDGE** <br><br> Courtroom: 1, 4th Floor <br><br> Judge: Hon. Yvonne Gonzalez Rogers |

Pursuant to Federal Rule 72(a), Local Rule 72-2 and the Parties' Privilege Re-Review Protocol (Dkt. 1092), Epic Games, Inc. ("Epic") respectfully requests this Court to review the below documents *in camera* and reverse in part Magistrate Judge Hixson's Discovery Orders of February 18, 2025 (Dkts. 1242, 1251), overruling certain of Epic's Objections to privilege assertions made by Defendant Apple Inc. ("Apple") and upheld by the Special Masters.

## BACKGROUND

Apple seeks to withhold each of the documents at issue in this Motion in its entirety. They were submitted to the Special Masters, who upheld Apple's assertions. Epic filed timely Objections, which, due to the volume of Objections submitted, Judge Hixson overruled without explanation.[1]

## LEGAL STANDARD

This Court reviews a Magistrate Judge's "factual determinations . . . for clear error" and "legal conclusions . . . to determine whether they are contrary to law". *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010); *see also* Fed. R. Civ. P. 72(a).

## ARGUMENT

**A.    Documents Substantially Similar to Record Evidence Admitted During the Evidentiary Hearings (Entry Nos. 178, 527, 762, 1467, 1469, 1470 and 1471)**

Judge Hixson overruled several objections pertaining to documents that appear to be similar or identical to other documents that Apple has produced and have since been admitted into evidence, either without or over the objection of Apple, and questioned about in open court. Epic believes these documents were never privileged (at least not in their entirety). To the extent any were privileged, either Apple has now waived the privilege or Apple's privilege assertions were overruled by this Court.[2] Specifically, based on Apple's privilege log entries (**Exhibit A** to the declaration filed herewith):

---

[1] Epic files this Motion with the understanding that the Court is keeping "the evidentiary hearing open in the event Epic finds a critical document that requires testimony". (Dkt 1171 at 2.)

[2] Three of these documents (Entry Nos. 178, 527 and 762) are likely identical to corresponding admitted exhibits, and Epic appeals Judge Hixson's privilege determinations as to

- **Entry No. 178 (PRIV-APL-EG_00150526)** is an email from Tanya Washburn to Messrs. Fischer, Vij and others, dated June 22, 2023, with the subject "Re: Wisconsin Prep for 6/28 Tim [Cook] Mtg. Actions". Although Apple's privilege log claims this to be an "Email reflecting legal advice from counsel regarding injunction compliance analysis of commission rate", a later-in-time email from that same chain was admitted into evidence without objection or redaction as Exhibit CX-0384.

- **Entry No. 527 (PRIV-APL-EG_00069958)** is a presentation with the file name "2023.06.28 Wisconsin CLEAN - Team Commission - Privileged & Confidential.key". Although Apple asserts this presentation reflects "legal advice from counsel regarding injunction compliance requirements for user design and interface", based on its file name, this document is substantially similar or identical to the deck admitted into evidence without objection (except as to limited redactions) as CX-0291. (Tr. 1238:20-1239:1.)

- **Entry No. 762 (PRIV-APL-EG_00072855)** is a May 18, 2023, presentation titled "2023.05 Wisconsin Scenarios and Financial Impacts.key". Although Apple asserted this presentation reflects "legal advice prepared by counsel regarding injunction compliance and U.S. Link Entitlement program eligibility", based on its file name and date this presentation appears to be substantially similar or identical to the presentation admitted into evidence (with limited redactions) as exhibit CX-272. (Hearing Tr. 1155:23-1172:23.)[3]

---

those documents only to preempt any attempt by Apple to claw back these documents on the basis of Judge Hixson's rulings.

[3] Based on the testimony of Apple witnesses at the hearing, it is now apparent that, contrary to Judge Hixson's finding, Entry No. 762 is not protected work product. The evidence establishes that this presentation was not prepared by counsel—let alone entirely so. (Hearing Tr. 1171:14-1172:23 (Apple witness Phil Schiller identifying business and finance personnel who crafted the presentation).)

- **Entry Nos. 1467 (PRIV-APL-EG_00162374), 1469 (PRIV-APL-EG_00162454), 1470 (PRIV-APL-EG_00162498) and 1471 (PRIV-APL-EG_00162520)** are versions of a deck titled "Epic Injunction Implementation" according to Apple (notwithstanding their differing filenames). (Dkt. 1232 at 8.) Although Apple argued to Judge Hixson that these "deck[s] ha[ve] no business purpose" (Dkt. 1232 at 8), these seem to be later iterations of the decks presented to Mr. Cook at meetings in June 2023 (or their drafts), several of which have been admitted into evidence, including CX-859 (June 1), CX-223 and CX-224 (June 20) and CX-291 and CX-505 (June 28). These January 2024 decks likely update the analysis to prepare for the final Price Committee Deck already in evidence (CX-0009 and 0009A), and thus may inform Epic and the Court about Apple's thinking closer in time to the announcement of its response to the Injunction. But, as was the case with CX-859, which this Court reviewed *in camera*, it seems highly unlikely that these decks—found in the files of Mr. Oliver and Ann Thai, a business professional—are *entirely* privileged.

**B.    Lobbying- and Consulting-Related Documents Shared with Third Parties (Entry Nos. 1207, 1211, 1212, 1217, 1218, 1285 and 1286)**

Seven documents, Entry Nos. 1207 (PRIV-APL-EG_00081920), 1211 (PRIV-APL-EG_00081945), 1212 (PRIV-APL-EG_00081959), 1217 (PRIV-APL-EG_00081981), 1218 (PRIV-APLEG_00081990), 1285 (PRIV-APL-EG_00082512) and 1286 (PRIV-APL-EG_00082517), are emails and attachments that appear on the face of their privilege log entries to be non-privileged because they were shared with or sent by third-party lobbying and public relations firms, thereby vitiating any claim of privilege. Specifically, Entry Nos. 1207, 1211, 1212, 1217 and 1218 are emails and their attachments sent by ▬, a partner at ▬, to Marni Goldberg, copying all members of the DMA PRESS REPORT listserv at ▬, a third-party consulting firm.[4] Entry Nos. 1285 and 1286 were sent by a

---

[4] Based on the subject of the emails, the description of their topics in the privilege log and the inclusion of ▬ on the emails, Apple appears to have used ▬

Managing Director in the Strategic Communications Division at ▮▮▮▮▮, a third-party lobbying firm, to Ms. Goldberg.

Judge Hixson's finding of privilege for these documents was contrary to law. It is black-letter law that disclosure to a third party of otherwise-privileged material constitutes waiver. *See, e.g.*, WILLIAM A. HANCOCK, CORPORATE COUNSEL'S GUIDE TO THE ATTORNEY-CLIENT, WORK-PRODUCT & SELF-EVALUATIVE PRIVILEGES § 1:39 (2024) ("The presence of third parties will ordinarily destroy the confidentiality that is essential to a valid assertion of the privilege."); *Resolute Forest Prods., Inc. v. Greenpeace Int'l,* 2022 WL 885368, at *2 (N.D. Cal. Mar. 25, 2022) (finding privilege waived where party did not "explain why a public relations firm is essential to providing legal advice, such that Plaintiffs' counsel would have been unable to provide competent advice absent [the public relation firm's] involvement").

Apple defends its assertion of privilege, notwithstanding the inclusion of these third parties, by citing *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010), and arguing that these public relations and lobbying firms are somehow Apple's "functional employee[s]", such that privilege extends to them, too. Not so. First, that is a new argument raised for the first time in response to Epic's Objections before Judge Hixson; nothing in Apple's privilege log mentions ▮▮▮▮▮, let alone establishes their "functional employee" status. This is therefore an after-the-fact attempt to justify an unsubstantiated privilege claim.

In any event, Apple does not and cannot establish the "functional employee" status of these outside consultants. In *Graf*, the district court explicitly found that the third party was an agent of the company because he "communicated with . . . others on behalf of [the company], marketed the company's insurance plans, managed its employees, and was the company's voice in its communications with counsel"; he was "empowered to act on behalf of the corporation"; and the court even observed that "[i]t appears that the sole reason Graf was not explicitly named a director, officer, or employee of [the company] was because of the outstanding California cease-

---

services for purposes akin to government relations, crisis management and lobbying, not to obtain *legal* advice. "[I]t is well established that lobbying and public relations communications do not come within the [attorney-client] privilege on their own accord." *Ala. Aircraft Indus., Inc. v. Boeing, Co.*, 2016 WL 9781826 (N.D. Ala. Mar. 24, 2016).

and-desist orders preventing him from lawfully being employed by an insurance company in the State of California". 610 F.3d at 1157, 1159. But it is a rare occasion that an outside firm is considered a "functional employee". "[T]he dispositive question is the consultant's relationship to the company and whether by virtue of that relationship he possesses information about the company that would assist the company's attorneys in rendering legal advice". *United States ex rel. Strom v. Scios, Inc.*, 2011 WL 4831193, at *4 (N.D. Cal. Oct. 12, 2011); *Resolute Forest Prods.*, 2022 WL 885368, at *3 (finding no such relationship under federal common law where a PR firm did not "act[] as Plaintiffs' *sole* representative to the public, government, or Defendants" but "was hired to advise Plaintiffs' counsel as to legal and media strategy") (emphasis added). This standard envisions a consultant entrenched in the company's affairs, to the exclusion of any in-house department, such that a company's legal team would require the "specialized knowledge" held by the outside consultants, rather than the company's actual staff. *Id.*

Finding that a public relations firm is the "functional equivalent of an in-house public relations department" thus requires that it be, "essentially, incorporated into [the corporation's] staff to perform a corporate function". *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 216, 219 (2001). Here, there is a complete failure of proof by Apple in making that requisite showing. "[A] detailed factual showing is necessary to demonstrate that a third party is the functional equivalent to the corporation's employee." *PUMA SE v. Brooks Sports, Inc.*, 2024 WL 4476767, at *5 (W.D. Wash.) (quoting *RSA Protective Techs., LLC v. Delta Scientific Corp.*, 2020 WL 12182967, at *3 (C.D. Cal.)). A party asserting privilege fails to make that showing where, as here, it "[did] not provide sufficient evidence that there was anything particularly unique about its relationship with the third-party agencies that differed from an ordinary third-party consulting or contracting relationship". *Id.* at *6; *see also Digital Mentor, Inc. v. Ovivo USA, LLC*, 2020 WL 550746, at *2 (W.D. Wash. Feb. 4, 2020) (finding a consultant not a "functional employee" where "[t]here [is] no documentation of [the consultant's] duties vis-à-vis [Plaintiff] or its corporate counsel, nor does the record demonstrate that [the consultant] had specialized knowledge such that counsel would rely on him to facilitate legal advice for the company"); *United States ex rel. Wollman v. Mass. General Hospital, Inc.*, 475 F. Supp. 3d 45, 68 (2020) (finding waiver of

1  privilege following disclosure to a PR firm where the party claiming privilege failed to "allege[]
2  anything special about the relationship between [the party] and [the PR firm] that would take it
3  out of a consulting/contractual relationship to become the functional equivalent of an . . .
4  employee"). And any evidence that does exist on this issue suggests ▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮ were *not* "functional employees" of Apple: neither appears on many documents produced
6  by Apple in this matter, both retained their own organizational email addresses, and Apple of
7  course has extensive in-house government affairs and communications functions; it simply does
8  not need to outsource those functions to outside consultants or bring them into Apple to serve as
9  "functional employees" of the company.

      *W. Sugar Cooperative v. Archer-Daniels-Midland Co.*, which Apple relied on before Judge Hixson, is not to the contrary. There, the privilege was extended to a third party who operated as its client's "employees *would have if [the client] had an in-house public relations and marketing team*". 2015 WL 12696192 at *2 (C.D. Cal. Nov. 4, 2015) (emphasis added). Apple provided no evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ engaged in this level of involvement at Apple, or that Apple had any *need* for them to be so involved; the emails all are addressed to Ms. Goldberg, who is part of Apple's sizeable in-house public relations, communications and government affairs teams. That Apple chooses to retain outside consultants *in addition to* its extensive internal employment of communications and public relations professionals is a crucial distinction from *Sugar Cooperative* and *Graf*; it makes clear that ▮▮▮▮▮▮▮▮▮▮▮▮ and their ilk work as outside consultants to Apple, not as "functional employees" that Apple is forced to use because it lacks these functions internally.

      **C.**    **Primarily Business Emails (Entry Nos. 186, 195, 212, 242, 243, 245 and 530)**

      Entry Nos. 186 (PRIV-APL-EG_00150566), 195 (PRIV-APL-EG_00150609), 212 (PRIV-APL-EG_00150695), 242 (PRIV-APL-EG_00150836), 243 (PRIV-APL-EG_00150838), 245 (PRIV-APL-EG_00150846) and 530 (PRIV-APL-EG_00070001) are all emails from a non-lawyer to a recipient list consisting of both lawyers and non-lawyers, including senior business executives such as Messrs. Cook, Maestri, Schiller, Fischer, Oliver, Cue, Federighi and Joswiak. The subject lines ("Updated Wisconsin Deck", "Wisconsin Plans", "Wisconsin Exec Feedback",

1  etc.) suggest these emails are all primarily business-related.  Apple argues these emails include
2  "substantive legal advice" and "request[s] for and provision[s] of legal advice".  (Dkt. 1232; *see*
3  *also id.* (arguing that Entry No. 243 memorializes and reflects legal advice); Dkt. 1204 at 10
4  (arguing that Entry No. 530 is privileged because it contains "a discussion regarding changes to
5  certain aspects of Apple's response to the Injunction based on a discussion with executive
6  leadership").)  Epic does not contest that discrete requests for *legal* advice would be privileged,
7  but *business* advice, even when conveyed by lawyers, is not.
8                                              * * *
9        For these reasons, Epic respectfully requests that the Court overrule in part Judge
10 Hixson's orders holding the above documents to be privileged and require Apple to immediately
11 produce them to Epic in full.

| | | |
|---|---|---|
| 1 | Dated: March 4, 2025 | Respectfully submitted, |
| 2 | | By: /s/ *Yonatan Even* |
| 3 | | **FAEGRE DRINKER BIDDLE & REATH LLP** |

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

## **E-FILING ATTESTATION**

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Yonatan Even*
Yonatan Even