DANIEL G. SWANSON, SBN 116556
dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

JULIAN W. KLEINBRODT, SBN 302085
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200
Facsimile: 415.393.8306

MARK A. PERRY, SBN 212532
mark.perry@weil.com
JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice*)
joshua.wesneski@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000
Facsimile: 202.857.0940

MORGAN D. MACBRIDE, SBN 301248
morgan.macbride@weil.com
WEIL, GOTSHAL & MANGES LLP
Redwood Shores Pkwy, 4th Floor
Redwood Shores, CA 94065
Telephone: 650.802.3044
Facsimile: 650.802.3100

Attorneys for Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.<br><br>Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR-TSH<br><br>**PROFFER OF EVIDENCE RELATING TO CERTAIN ATTORNEY-CLIENT PRIVILEGE DESIGNATIONS**<br><br>Courtroom: 1, 4th Floor<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

Apple Inc. ("Apple") respectfully submits this proffer to address questions raised during the evidentiary hearing regarding whether certain communications were properly designated as privileged and confidential by two Apple employees, Jennifer Brown and Marni Goldberg. Although Epic Games, Inc. ("Epic") suggested through questioning that these designations were improper, there is no evidentiary basis for that suggestion. Apple respectfully submits this evidentiary proffer to substantiate Apple's good-faith approach to these particular privilege designations.[*]

**1. Jennifer Brown**. Ms. Brown, Director of Commercial Litigation, sent two emails, one dated August 15, 2023 in which she instructed Phil Schiller that certain presentations should be designated as privileged and confidential, and the other dated June 14, 2023, in which she instructed Carson Oliver that a communication should be designated as prepared at the direction of external counsel.

a. **EXHIBIT CX-0229**. Epic introduced and questioned Mr. Schiller about Exhibit CX-0229, an email exchange between Mr. Schiller and Ms. Brown (and others), in which Mr. Schiller commented on Apple's injunction compliance plan and a related presentation. In the email correspondence, Ms. Brown advised Mr. Schiller that the presentations setting out Apple's injunction compliance plan should be designated as privileged and confidential because they reflect Apple's litigation strategy and legal risk analysis. *See* H'rg Tr. 1252:14–25 (Feb. 24, 2025). While Ms. Brown's instruction to Mr. Schiller was not redacted, the presentations to which she was referring have been redacted as privileged. Those privilege designations were sustained by the Special Masters. Walsh Rulings (Jan. 21, 2025); Gutierrez Rulings (Feb. 10, 2025). Indeed, the Court itself sustained Apple's privilege designations in a different version of the presentation, which was admitted in redacted form as Exhibit CX-0859 because it reflected legal analysis and advice. *See* H'rg Tr. 1491:17–19; 1640:20 (Feb. 25, 2025). Ms. Brown's instruction to designate the presentations as privileged and confidential was proper and is consistent with Apple's privilege policies and training. *See* Dkt. 1198-1 n.2.

---

[*] Apple will separately respond to Epic's broader challenge to the privilege designations in this case, as well as the Court's suggestion that Apple's conduct warrants sanctions. *See* Dkt. 1171. Epic has pointed out that many documents in this case are marked privileged and confidential—which is hardly surprising, given that the entire exercise was conducted with the assistance of litigation counsel to comply with this Court's injunction. Dkt. 1198-1 at 10–11. Apple submits this limited proffer because Epic chose to attack two individuals without any evidentiary basis; Apple's assertions of privilege were appropriate and made in good faith, and its employees' reputations should not be impugned.

b. **EXHIBIT CX-0538**. On February 25, 2025, this Court questioned Ms. Brown about an email, dated June 14, 2023, in which she instructed an Apple employee to designate materials as "prepared at the request of external counsel." *See* H'rg Tr. 1614:14–19 (Feb. 25, 2025).  As Ms. Brown explained to the Court, the instruction was proper because, at the time, external counsel to Apple (including Mark A. Perry of Weil and Cynthia Richman of Gibson Dunn) were advising Apple on compliance with the Court's injunction.  Privileged communications between Ms. Brown and outside counsel confirm that this deck was the subject of discussion with outside counsel and that outside counsel asked on June 15 to get a copy of the deck in order to aid counsel in drafting court papers.  Two days after Ms. Brown provided her instruction, Sean Cameron, another member of Apple's legal team, sent an email to a group of Apple executives, employees, in-house counsel, and external counsel, including Mr. Perry and Ms. Richman, attaching the presentation discussed in Ms. Brown's prior email.  *See* CX-0223.

Further, the June 14, 2023 email concerned (among other subjects) Apple's compliance with the Digital Market Act ("DMA").  The involvement of external counsel has particular significance in Europe because, under the laws of the European Union, legal professional privilege—the equivalent to attorney-client privilege—is a communication between a company and an *independent* lawyer.  An independent lawyer, in turn, has been defined by the European courts as an attorney who is not bound to the client by a relationship of employment.  Case C-550/07 P, *Akzo Nobel Chemicals and Akcros Chemicals v. Commission*, 2010 E.C.R. I-8301 (confirming that in-house counsel employed by a company are in a fundamentally different position from "external lawyers" and are not sufficiently independent for their communications to benefit from legal professional privilege).  In the redacted paragraph above Ms. Brown's instruction, she specifically notes the overlap between compliance with the injunction and compliance with the DMA.  Because Ms. Brown was discussing, in part, compliance with the DMA, Ms. Brown instructed the employee to record the involvement of external counsel—involvement that is confirmed by CX-0223—in order to protect the valid claim of privilege over the materials.  *See* H'rg Tr. 1616:24–1617:12 (Feb. 25, 2025).  This designation is valuable for potential future foreign investigations as it helps flag potentially privileged materials in large scale document reviews, which are often expedited.

After questioning Ms. Brown about this document, the Court observed, "You all have ethical obligations . . . . Your client is not entitled to have you engage in unethical conduct." H'rg Tr. 1617:18–24. When considered in full context, however, Ms. Brown provided proper instruction and fulfilled her ethical obligations to her client to protect the attorney-client privilege. Any inference or argument to the contrary has no basis in fact or law.

**2. Marni Goldberg**. Ms. Goldberg, Director of Corporate Communications, sent two iMessages, one dated May 8, 2024, in which she requested that a statement be noted as prepared by outside counsel, and the other dated July 2, 2023, in which she is instructed by her superior to designate a forthcoming email as privileged and confidential. Ms. Goldberg is not a lawyer and is not responsible for making privilege determinations.

a. **EXHIBIT CX-0244**. On February 26, 2025, Epic questioned Ms. Goldberg about a text exchange between herself and Hannah Smith, where Ms. Smith asked Ms. Goldberg about the following statement:

> Apple has consistently selected Google as the pre-set default search engine in Safari because Google offers the highest-quality results, but Apple makes it very easy for users to switch their default search engine to a preferred alternative search provider with four simple taps on their iOS devices.

*See* H'rg Tr. 1826:14–1828:12.

Epic questioned the propriety of Ms. Goldberg's instruction to make clear that the statement was "prepared by outside counsel" and questioned Ms. Goldberg's credibility by asking whether Ms. Goldberg drafted the statement herself, as opposed to outside counsel. *See* H'rg Tr. 1829:21-25 (Feb. 26, 2025) ("Q. It wasn't prepared by outside counsel, correct?"). When Ms. Goldberg was attempting to add context and explain, Epic did not provide her the opportunity to fully answer, continuing to insinuate Ms. Goldberg was being untruthful. *Id.* at 1830:4-13 ("Q. Do you think that that communication statement and the broader Q and A that was being drafted that you just said was a communications-driven document was prepared by outside counsel? A. Well, now that I've read this exchange, what I believe that I was saying was -- Q. So the answer is yes, you think it was prepared by outside counsel, the whole Q and [A]? A. No, not the whole Q and A. Just the part that we looked at in Hannah's text was prepared by outside counsel.").

In fact, the statement at issue was drafted—word for word—by outside counsel, as demonstrated in the attached communication between Ms. Goldberg and outside counsel. *See* Exhibit A.[1] While this document was not produced in this litigation because it was not responsive, Epic had no basis to question Ms. Goldberg's credibility or imply that she was being untruthful. Rather, it is clear from the record that Ms. Goldberg answered the question honestly and truthfully because the statement was, in fact, prepared by outside counsel.

b. **EXHIBIT CX-0464**. Epic further questioned Ms. Goldberg about an instruction from her superior, Fred Sainz, to designate a draft email and attached Q&A as privileged and confidential. In CX-0464, Mr. Sainz instructed Ms. Goldberg to label an email and draft Q&A attachment as privileged and confidential before sending the email for review. When questioned about this designation, Ms. Goldberg testified that the email and attached Q&A were going to be sent to legal for review and feedback. *See* H'rg Tr. 1837:16-21 ("Q. You -- your position is that you were asking for legal advice? Yes or no? A. No. Sorry. Yes. We were going to ask for legal input and advice in the email that would then be reviewed and sent to Mr. Schiller."). Notwithstanding Ms. Goldberg's testimony, Epic suggested that Ms. Goldberg was misapplying the attorney-client privilege designation.

Epic's attempt to question the veracity of Ms. Goldberg's testimony was unfounded. On the same date that Ms. Goldberg received the text message instructing that the cover email and Q&A be designated as privileged and confidential, Ms. Goldberg sent a draft email to the communications team with the Q&A attached. The Q&A contained sections where legal advice and input were specifically requested by Ms. Goldberg from Apple's legal team. *See* Exhibit B. The very next day, on July 3, 2023, Ms. Goldberg sent an edited version of the same email and Q&A for review to the legal team, including Jennifer Brown, Ling Lew, and Sean Cameron, all in-house counsel at Apple. The email included the same explicit requests for legal advice. *See* Exhibit C. Because the cover email and draft Q&A specifically requested legal review and feedback, the draft cover email was provided to Epic in redacted form, while the draft Q&A was withheld on privilege grounds. Both of those privilege designations were sustained by the Special Masters. Gutierrez Rulings (Feb. 4, 2025); Gutierrez Rulings (Feb. 18,

---

[1] Apple is concurrently filing a Notice of Lodging to lodge Exhibits A, B, and C with the Court for *in camera* review in order to protect against any waiver of attorney-client privilege.

1  2025).  Epic challenged Special Master Gutierrez's ruling regarding the draft Q&A, but Judge Hixson
2  overruled the objection and upheld the document as privileged.  Dkt. 1242.  Epic had no basis to call
3  into question Ms. Goldberg's testimony regarding the instruction to label the Q&A as privileged and
4  confidential because it was being sent to legal for review.

## CONCLUSION

Any suggestion by Epic that Ms. Brown or Ms. Goldberg abused or misapplied the attorney-client privilege has no evidentiary basis.

Dated: March 6, 2025

Respectfully submitted,

By: /s/ Mark A. Perry
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP

Attorney for Apple Inc.