# EXHIBIT C

# (Redacted)

# CRAVATH

Gary A. Bornstein
gbornstein@cravath.com
T+1-212-474-1084
New York

February 28, 2025

Re:  Epic Games, Inc. v. Apple Inc., No. 4:20-cv-05640-YGR (N.D. Cal.)

Counsel:

I write in response to your February 24, 2025 letter regarding the attorney-client privilege.  I start by noting the supreme irony of Apple's accusations coming in a proceeding in which the Court has repeatedly pointed out Apple's improper use of the privilege.  Indeed, the Court noted that "sanctions are warranted" against Apple for its misconduct relating to privilege.  (Dkt. 1171 at 3.)  And at the hearing, an Apple lawyer was ordered to show cause why sanctions should not be entered against her personally and admonished that Apple is "not entitled to have you engage in unethical conduct".  (Feb. 25, 2025 Hr'g Tr. 1617:23-24.)  Apple's effort to turn the tables is utterly unfounded.  Your letter mischaracterizes Epic's conduct, the documents at issue and the discussions between the parties.

Apple's misconduct has been documented at length and discussed in open court, so we do not repeat the full history here.  We do note one new issue that came to light at the February 25 hearing, as to which we seek Apple's explanation for its conduct.

**Apple's Misuse of the Privilege**

Throughout the contempt discovery process, Apple has systematically abused the attorney-client privilege to withhold relevant evidence and delay these proceedings.  Despite the Court's order that Apple produce "all of [its] documents relative to the decision-making process leading to the link entitlement and associated commission rates" (Dkt. 974), Apple initially withheld around 55,000 of the documents Apple had deemed responsive to the Court's request.  After Epic raised concerns with these numbers, Apple withdrew well over half of its privilege claims (30,104 of 53,820), downgrading almost 56% of its withheld documents in their entirety, conceding that those are completely non-privileged.  Apple further partially withdrew privilege claims over thousands of additional documents, seeking to produce those previously-withheld documents in redacted form.  But that was not the end—Apple continued to claim privilege over thousands of documents that needed to be submitted to Special Masters for review, which resulted in further delay of the contempt hearing.  Indeed, the Court recognized that Apple's privilege review was "in large part . . . delay" and "totally a tactic".  (Jan. 14, 2025 Case Mgmt. Conf. Tr. 23:20-24.)

Events at the hearing on February 25, 2025 demonstrated that Apple has continued to over-designate documents as privileged and has improperly attempted to withhold materials that it *knows* are not privileged.  Specifically, Apple tried to withhold from Epic and the Court in full a presentation for a June 1, 2023 meeting with Tim Cook regarding Apple's response to the Court's injunction (eventually marked as CX-0859), even though Apple knew that substantial

NEW YORK
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

LONDON
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

WASHINGTON, D.C.
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

portions of the presentation are not privileged at all. Apple represented that there are three versions of this presentation in its production. Apple originally withheld all three in full. Upon the re-review occasioned by the Special Master process, Apple took inconsistent positions, providing two versions of the document to the Special Masters with proposed redactions and providing a third version to the Special Masters with the claim that the document should be withheld as privileged in its entirety. When a Special Master upheld the claim that CX-0859 was privileged in full, Apple opportunistically attempted to change its treatment of the other two versions of the document that it had previously determined should be produced to Epic with redactions and withheld them entirely. At the hearing on February 25, 2025, after receiving evidence of what transpired at the June 1, 2023 meeting, which was obviously not privileged in its entirety, the Court ordered production of the presentation, with redactions of only limited portions of the document reflecting attorney-client privileged communications.

There is no question that substantial portions of CX-0859 (and the two other versions of the presentation (PRIV_APL_EG_00120646 and PRIV_APL_EG_00135890) that Apple withheld entirely) should never have been withheld, and that Apple was well aware of that fact. Not only did Apple plan to produce two versions of the document with redactions, until changing course when the opportunity presented itself, but the document self-evidently includes extensive discussion of business issues not covered by the privilege. Thus, when the Court reviewed the deck for privilege, it found that the majority of the deck was not privileged and ordered the production to Epic of 76 out of 87 pages. (Feb. 25, 2025 Hr'g Tr. 1488:2-6 ("This slide deck should have been presented and provided to Epic, all the pages that were clearly not attorney-client privileged.").) In fact, Apple did not defend the privilege claim for many of the slides and even admitted that certain slides were facially non-privileged because their primary purpose was business-related. (*Id.* at 1482:4-13 ("THE COURT: All right. There's nothing on this document that -- that shows any legal advice whatsoever. Thirty-three is not privileged. . . THE COURT: So, again, I am now at -- it's all the same. MR. PERRY: Yes, Your Honor, from 33 to 40 is all the same. THE COURT: So 33 to 40 is not privileged.").) Epic specifically requests that Apple explain its basis for attempting to withhold CX-0859 and the two other versions of the June 1, 2023 presentation (PRIV_APL_EG_00120646 and PRIV_APL_EG_00135890) in full.

**Epic's Examination of Mr. Schiller**

Apple's claim that Epic has engaged in misconduct is without merit. Apple's assertion that any portion of CX-0223 (APL-EG_11573163) constitutes "materials that . . . on their face appear to be subject to the attorney client privilege" is belied by Apple's own conduct at the hearing on February 24, 2025. Apple sat silently for over an hour of examination relating to CX-0223, and similar language regarding ▬▬▬▬ in CX-0272, without raising any claim of privilege. (*See* Feb. 24 Hr'g Tr. 1174–1198:17.) As your letter admits, it was only *after* the examination of Mr. Schiller relating to these documents was complete that Apple belatedly decided to claim privilege over portions of one of the documents (CX-0223). Apple's letter did not reference CX-0272. In fact, Apple waited a full day after Mr. Schiller's examination regarding CX-0272 before raising an objection to similar text in that document. (*Compare* Feb. 24, 2023 Hr'g Tr. 1152:16-17 (introducing CX-0272) to Feb. 25, 2025 Hr'g Tr. 1436:4-8 (objecting to the use of CX-0272 for the first time).) In the interim, Apple again took an inconsistent position and re-produced a more legible copy of CX-0272 *without redactions*—a production made *after* your letter contending that the language in CX-0223 was privileged and mere hours before raising objections in court to Epic's use of that very same language. And of course, while you contend in your letter that Epic should have known that the ▬▬▬▬ language in CX-0223 is privileged because similar language was redacted in CX-0224, ▬▬▬▬ language was left *unredacted* on the very same "Considerations" slides in CX-0224 that Apple claims should

have made clear that this language was privileged. *See* CX-0224 (.17, .36, .44 and .89). The ▮▮▮▮▮▮▮▮▮ concept appeared in literally dozens of documents that Apple produced without redactions. *See, e.g.*, CX-0223 (.16, .32), CX-0272 (.7, .11); CX-0538; PRIV-APL-EG_00226354; PRIV-APL-EG_00226110; PRIV-APL-EG_00135861; PRIV-APL-EG_00226116. Under these circumstances, it would seem just as likely that the language in CX-224 was changed in material ways that made it privileged and warranted a redaction—or that Apple's decision to *maintain* the redaction was in error. Apple cannot fault Epic for not believing the language to be privileged when Apple itself has repeatedly behaved as though Apple did not believe the language to be privileged either.

Nor can Apple blame Epic for the inconsistent redactions Apple applied. As the Court stated, and Apple's counsel acknowledged, the issues with Apple's production are of its "own making". (Feb. 25, 2025 Hr'g Tr. 1443:2-8 ("MR. PERRY: Your Honor, this has been -- not to delve too much into the re-review, but this has been a recurring issue. The --  THE COURT: Of your own making. MR. PERRY: Your Honor, there is --  THE COURT: Of your own making.  MR. PERRY: Yes, Your Honor. I -- I said yes.").)  Thus, Apple's claim that Epic should have treated the language as privileged because Apple claimed privilege over similar language (which Epic could not see) in other documents is without merit. As explained above, Apple has massively and tactically over-designated documents as privileged and was made by the Court to withdraw those improper designations. Epic should not be expected to cross-reference all of Apple's de-designations across the rest of Apple's production to assess whether Apple has maintained consistent redactions on the same language elsewhere and assume that the de-designation was in error. Although Apple has claimed that Epic should have known that these particular redactions were intentional because Apple brought them to the Special Masters, Epic cannot be expected to track each and every privilege claim that was upheld and propagate them across the rest of Apple's production—especially because Epic cannot know with certainty what language was redacted in any given document, and therefore cannot know with certainty whether it is identical to unredacted language in similar documents or, instead, whether one document redacts the language and the other does not because of some difference in the language itself. Apple, on the other hand, could engage in that process, with the benefit of access to both redacted and unredacted portions of similar documents; but Epic, at this point in the process, must be entitled to rely on what Apple has chosen to produce.

Moreover, and contrary to Apple's position, the language at issue is not clearly privileged on its face. At sidebar, after Apple belatedly raised its objection to Epic's use of the CX-0223, the Court posed a series of questions intended to elicit facts necessary to assess the merits of Apple's privilege claim. That questioning would not have been necessary if the privilege claim were clear on the face of the document. The assessments at issue could quite reasonably have come from businesspeople rather than from lawyers.

Setting all of that aside, even if these bullets were privileged, and even if Apple did not waive that privilege by producing dozens of unredacted documents concerning Apple's consideration of ▮▮▮▮▮▮▮▮▮ Apple waived that privilege by choosing to allow an hour of testimony about the documents in open court. *See Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D. Cal. 1978) ("By failing to make a timely objection, [the defendant] waived any privilege that may have existed with respect to the statements.").

Following the receipt of your letter, the parties discussed with the Court the relevant portions of CX-0223, and other documents with similar language, and Apple's objections were resolved.

3

(Feb. 25, 2025 Hr'g Tr. 1440-1448.)  Accordingly, Epic's view is that no further action with respect to that language is necessary.  Epic reserves all rights.

Very truly yours,

/s/ Gary A. Bornstein

Gary A. Bornstein

Mark Perry
Joshua Wesneski
Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036
mark.perry@weil.com

VIA Email

4