GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
JUSTIN C. CLARKE (*pro hac vice*)
jcclarke@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>        Plaintiff, Counter-defendant,<br><br>        v.<br><br>APPLE INC.,<br><br>        Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH<br><br>**EPIC GAMES, INC.'S OPPOSITION TO APPLE INC.'S MOTION TO STRIKE TESTIMONY**<br><br>Courtroom: 1, 4th Floor<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

Page

INTRODUCTION ..............................................................................................................................1

BACKGROUND ..............................................................................................................................2

ARGUMENT....................................................................................................................................5

    I.    Apple Waived Its Objection by Failing to Raise It During the Schiller Testimony. ...................................................................................................................5

    II.    Apple Affirmatively Waived Any Objection to the Schiller Testimony and the Court Already Ruled that the Testimony Stands. ..............................................9

    III.    The Schiller Testimony Did Not Cover Obviously Privileged Material. ..............10

    IV.    Apple Cannot Justify Its Untimely Objection.........................................................11

    V.    Apple Seeks to Use Privilege as Both a Sword and a Shield.................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) .................................................................................................. 12

*Bud Antle, Inc. v. Grow-Tech Inc.*,
   131 F.R.D. 179 (N.D. Cal. 1990) ........................................................................................... 9, 10

*Estelle v. Williams*,
   425 U.S. 501 (1976) .................................................................................................................... 6

*Harmony Gold U.S.A., Inc. v. FASA Corp.*,
   169 F.R.D. 113 (N.D. Ill. 1996) .................................................................................................. 9

*Hartford Fire Ins. Co. v. Garvey*,
   109 F.R.D. 323 (N.D. Cal. Dec. 20, 1985) ................................................................................. 9

*Haynes v. Home Depot USA, Inc.*,
   2023 WL 177632 (9th Cir. Jan. 13, 2023) .................................................................................. 6

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
   2016 WL 3654285 (D. Nev. July 5, 2016) ................................................................................. 6

*In re Sause Bros. Ocean Towing*,
   144 F.R.D. 111 (D. Or. 1991) ................................................................................................... 10

*Jerden v. Amstutz*,
   430 F.3d 1231 (9th Cir. 2005) .................................................................................................... 9

*Love v. Medical College of Wisconsin*,
   2018 WL 2862823 (E.D. Wis. June 11, 2018) ........................................................................... 9

*Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*,
   2010 WL 275083 (S.D. Cal. Jan. 13, 2010) ............................................................................ 6, 8

*Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*,
   345 F. App'x 244 (9th Cir. 2009) ............................................................................................... 6

*Pickett v. Duncan*,
   80 F. App'x 548 (9th Cir. 2003) ................................................................................................. 6

*U.S. ex rel. Bagley v. TRW, Inc.*,
   204 F.R.D. 170 (C.D. Cal. 2001) ............................................................................................... 7

*United States v. Gurtner*,
   474 F.2d 297 (9th Cir. 1973) ...................................................................................................... 6

*United States v. Jamerson*,
    549 F.2d 1263 (9th Cir. 1977) ............................................................................................... 6

*United States v. Palmer*,
    3 F.3d 300 (9th Cir. 1993) ..................................................................................................... 6

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ............................................................................................. 12

**Other Authorities**
12 Fed. Proc., L. Ed. § 33:21 ........................................................................................................ 6

**INTRODUCTION**

Following a nearly nine-month hiatus, on February 24, 2025, the evidentiary hearing relating to Epic's contempt motion resumed, with Epic continuing the examination of Phil Schiller. During that examination, Epic moved to admit, without objections, three documents discussing Apple's concerns about the ▓▓▓▓▓ Apple would face if it imposed a commission or severe placement and format restrictions on linked purchases: CX-0223, CX-0224 and CX-0272. Mr. Schiller was questioned extensively and testified at length about that ▓▓▓▓▓ and his awareness thereof, again without objection. Yet now Apple seeks to strike portions of 11 pages of testimony concerning that ▓▓▓▓▓ (the "Schiller Testimony"), specifically as that testimony pertained to CX-0223 and CX-0272.

Apple's Motion to Strike Certain Hearing Testimony (Dkt. 1328, "Motion") improperly advances an argument Apple waived several times over and even represented to the Court that it would not make—and which the Court has already ruled on. At the hearing, Apple sat passively without objecting to the testimony or admission of documents about ▓▓▓▓▓ until after a break, when the questioning of Mr. Schiller on both documents had already been completed. The next day Apple acknowledged that "the cat-is-out-of-the-bag" regarding the Schiller Testimony—which by then was quoted in the press—and made clear that "the only thing [Apple was] asking" for was to prevent additional questioning, directed at future witnesses, about the topic. (Tr. 1443:22-1444:4.)[1] This Court then allowed limited redactions of CX-0272 (and consequently also of other exhibits pertaining to the same topic) but ruled that "[t]he testimony is in" and the "testimony stands". (Tr. 1446:3; 1447:5-14.) Apple did not raise any further objection during the hearing. Apple's Motion is thus foreclosed by Apple's extended failure to object contemporaneously, by its prior representations and by this Court's prior ruling.

Moreover, striking the testimony would be particularly prejudicial to Epic because Apple is improperly attempting to use privilege both as a sword and a shield. Apple has argued in its post-hearing brief that it consulted extensively with attorneys and concluded in good faith that

---

[1] All citations to "Tr." refer to the Evidentiary Hearing transcript unless otherwise indicated.

EPIC'S OPPOSITION TO APPLE'S
MOTION TO STRIKE TESTIMONY         1         CASE NO. 4:20-CV-05640-YGR-TSH

1  its response to the Injunction was compliant, yet at the same time seeks to conceal internal
2  assessments to the contrary—namely, that Apple's actions violate the Injunction and thus raise a
3  substantial ▮▮▮▮▮▮▮▮  For all these reasons, Apple's Motion should be denied.

### BACKGROUND

In Apple's telling, the relevant facts began on February 20, 2025, four days prior to the start of the February hearing. As the Court is well aware, the dispute over privilege began far earlier. All privilege issues in this case stem from Apple's campaign of concealment and delay, including Apple's withholding of tens of thousands of documents on unsubstantiated and improper privilege grounds. After Epic fought for access to those documents (*see, e.g*, Dkt. 1056, 1095), Apple downgraded and produced nearly 60% of the documents it initially withheld for privilege. As this Court found, this was "totally a tactic" by Apple from the get-go. (1/14/2024 Tr. 23:20-24; *see also* Dkt. 1171 at 3 (finding that Apple's over-designation of privilege was improper and that "sanctions are warranted").) Among the documents that Apple downgraded were multiple documents referring to the ▮▮▮▮▮▮▮▮ that Apple recognized from aspects of what became the External Purchase Link Entitlement Program (the "Entitlement Program").

On February 4, 2025, the Court ordered that the evidentiary hearing in this case resume on February 24, 2025, even as the Special Masters were (and still are to this day) continuing their review of the thousands of documents Apple continued to maintain were privileged following its re-review. (Dkt. 1171 at 2.) Although Apple now places great weight on the need to have shared exhibit lists, Apple waited over two weeks—until February 20, 2025 (four days before the hearing was set to resume)—to request that the parties exchange exhibit lists the very next day. (Dkt. 1328-6 at 8-9.) Epic promptly responded, declining an exhibit list exchange that the Court had not ordered. (*Id*. at 7-8) In addition, because Apple's productions of documents coming off of Special Master review were ongoing, Epic was still identifying exhibits for use at the hearing.[2] In response, Apple raised confidentiality and privilege concerns with not

---

[2] Relevant documents improperly withheld by Apple were produced *on the eve of and even during the hearing* and admitted into evidence. (*See, e.g.*, CX-0859 (produced at the hearing); CX-0538 (produced to Epic on February 22, 2025).)

1  having exhibits ahead of time. (*Id*. at 4-5.) In light of Apple's stated concerns, Epic relented.
2  Epic offered not only to provide Apple with an exhibit list, but also to give Apple an extra day
3  (until February 23, 2025) to reciprocate. (*Id*. at 3-4.) Even though Apple was presumably
4  prepared to provide Epic with Apple's own exhibit list on February 21, Apple declined Epic's
5  offer claiming it came too late. Thus, instead of exhibit lists, the parties agreed to exchange
6  "three witness binders prior to the examination of each witness" and to redact certain categories
7  of information that Apple deemed confidential. (*Id*. at 1.)

8  On February 24, 2025, Epic examined Mr. Schiller. In accordance with the
9  parties' agreement, Epic provided Apple with three binders containing the potential exhibits to be
10 used during Mr. Schiller's examination, including CX-0223 (the exhibit associated with the
11 testimony subject to Apple's Motion), CX-0272 (an exhibit containing similar unredacted
12 language about ▬▬▬▬) and CX-0224 (a subsequent draft of the deck in CX-0223,
13 where Apple redacted language it says concerns the ▬▬▬▬ in imposing a commission
14 but left unredacted language concerning the ▬▬▬▬ in imposing placement and format
15 restrictions on external purchase links). During Mr. Schiller's examination, Epic introduced and
16 admitted all three documents—without objection by Apple—and questioned Mr. Schiller about
17 them, including specifically on the ▬▬▬▬ language in CX-0272 and CX-0223, again
18 without objection. (Tr. 1154-1168, 1174-1198.)

19 As Apple readily admits, it did not contemporaneously object to the introduction of
20 these documents or the questioning specifically about ▬▬▬▬ Instead, Apple waited
21 until a break to raise its privilege objection to the ▬▬▬▬ language in CX-0223 (though
22 not in CX-0224 or CX-0272). (Mot. at 3.) That evening, Apple sent Epic a letter attempting to
23 claw back portions of CX-0223 discussing ▬▬▬▬ (Dkt. 1328-3.) This letter
24 discussed only potential redactions in the *document* and made no mention of Apple seeking to
25 strike the Schiller Testimony from the record. That same night, Epic responded via email, noting
26 it had received Apple's letter "with which Epic vehemently disagrees" and that "[r]ather than
27 respond in detail in writing tonight, as we prepare for further testimony, I suggest we talk in the
28 morning". (Ex. A to the Zaken Decl., Email from G. Bornstein to J. Wesneski on Feb. 24, 2025,

1  at 10:11 p.m. P.T.)[3]

2  During the hearing the next day, February 25, 2025, the parties raised the issue
3  regarding CX-0223 with the Court, and the Court resolved it. While Carson Oliver was on the
4  stand, Epic questioned him about CX-0272, "a deck that was admitted", "put on the screen" and
5  "subject to long examination" during the Schiller Testimony. (Tr. 1436:10-15.) Apple objected
6  on the ground that it contained language about ▮▮▮▮▮▮▮▮ similar to what Apple had
7  sought to claw back in CX-0223. (Tr. 1436:4-8.)[4] During the discussion with the Court regarding
8  Apple's proposed redactions to CX-0272 and CX-0223, Apple affirmatively represented that it
9  understood "the cat-is-out-of-the-bag problem" from the Schiller Testimony and that "[t]he only
10 thing [Apple was] asking here" was for the understanding that the parties "don't need to have
11 additional questions for Mr. Oliver" about the text Apple sought to redact. (Tr. 1443:8-1444:9.)
12 The Court then ruled that the language at issue regarding ▮▮▮▮▮▮▮▮ could be redacted in
13 the documents but, addressing the Schiller Testimony, the Court stated that "[y]esterday's
14 testimony stands". (Tr. 1447:5-14.)[5] Both before and after the Court's ruling, Apple raised no
15 objections regarding the Schiller Testimony.

16 On February 28, 2025, Epic further responded in writing to Apple's February 24
17 letter, noting, among other things, that no further action was needed because "the parties

---

[3] Thus, Apple's claim that Epic waited until February 28, 2025, to respond to the letter (Mot. at 3) is incorrect. In addition to the same-day email suggesting a discussion the next morning, counsel did indeed speak about the issues in the courtroom on the morning of February 25, 2025. (Tr. 1430:21-1431:12.)

[4] Despite this objection, Apple had not previously sought to claw back any portion of CX-0272 and, moreover, earlier that morning, Apple had re-produced to Epic and the Court a more legible version of CX-0272 without any redactions on portions pertaining to ▮▮▮▮▮▮▮▮ (Ex. B to the Zaken Decl., Email from J. Wesneski to M. Byars on Feb. 25, 2025, at 6:00 a.m. P.T.)

[5] Apple notes (Mot. at 3) that the Court also said it would "make a decision later when I have evidence that I can look at in light of yesterday's effective—I won't say complete waiver, but *we're not going to go backwards*. And you show me some evidence that I've got a lawyer who drafted that particular bullet point, then I'll take a look at that. For now, keep it redacted." (Tr. 1447:5-14 (emphasis added).) That statement related to Apple's request for redaction of the *documents*, not striking the previously given testimony—as the Court's express reference to redaction and its statement about not going backwards confirm.

EPIC'S OPPOSITION TO APPLE'S
MOTION TO STRIKE TESTIMONY                4                CASE NO. 4:20-CV-05640-YGR-TSH

1  discussed with the Court the relevant portions of CX-0223, and other documents with similar
2  language, and Apple's objections were resolved". (Dkt. 1328-4 at 3-4.) Epic also noted,
3  however, that the ▓▓▓▓▓▓ language appeared in multiple documents Apple had
4  produced without redactions. (*Id.* at 3.)
5         On March 7, 2025, Apple filed its post-hearing brief. (Dkt. 1324.) In that brief, it
6  argued that "Apple's business teams worked hand-in-glove with in-house and outside counsel
7  throughout the [Injunction response] exercise, because Apple directed its entire compliance
8  project toward finding and choosing a solution to a *legal* problem" (*id.* at 9), and that "Apple
9  reasonably concluded that [Apple's response to the Injunction] complied with the Injunction"
10 (*id.*). In making these claims, and affirmatively seeking to use the involvement of counsel in
11 support of its position, Apple has squarely put at issue what it claims to have been legal advice
12 about the significant ▓▓▓▓▓▓ raised by Apple's Entitlement Program. Apple cannot
13 defend itself by claiming it acted in good faith on the advice of counsel while trying to hide
14 evidence that Apple understood that foundational elements of the Entitlement Program risked
15 violating the Injunction.

16 **ARGUMENT**

17        Apple's Motion should be denied for at least five reasons. *First*, Apple waived its
18 objection by failing to raise it during the Schiller Testimony. *Second*, Apple affirmatively waived
19 any ability to seek to strike the Schiller Testimony from the record—and never objected to the
20 Court's ruling that the Schiller Testimony stands. *Third*, the testimony at issue is not obviously
21 privileged, and so the burden to object rested entirely on Apple. *Fourth*, Apple does not offer a
22 valid justification for its untimeliness in objecting to the testimony. *Fifth*, Apple's motion is
23 legally defective because Apple seeks to use the privilege as both a sword and a shield; it seeks to
24 strike testimonial evidence from the record while concurrently making arguments to this Court
25 directly contradicted by such evidence.

26 **I.    Apple Waived Its Objection by Failing to Raise It During the Schiller Testimony.**

27        Apple has waived any argument that Mr. Schiller's testimony addresses privileged
28 information. It is black-letter law that "[t]he proper time to object to the admission of

1  evidence . . . is at the time it is offered". 12 Fed. Proc., L. Ed. § 33:21 & n.1 (citing *United States*
2  *v. Jamerson*, 549 F.2d 1263, 1266-67 (9th Cir. 1977)). During witness testimony, a timely
3  objection occurs while the witness is on the stand and while the testimony is being given. *See*
4  *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (finding privilege objection to
5  testimony waived when the issue was not raised until another witness's cross-examination);
6  *Haynes v. Home Depot USA, Inc.*, 2023 WL 177632, at *2 (9th Cir. Jan. 13, 2023) ("Haynes
7  failed to preserve this issue with a contemporaneous objection"); *Milton H. Greene Archives, Inc.*
8  *v. Julien's Auction House LLC*, 345 F. App'x 244, 247 (9th Cir. 2009) ("Archives failed to make
9  a specific, contemporaneous objection to the admission of statements regarding Julien's financial
10 vulnerability, and has therefore waived this issue".); *see also Hologram USA, Inc. v. Pulse*
11 *Evolution Corp.*, 2016 WL 3654285, *1-*2 (D. Nev. July 5, 2016) (finding waiver "by failing to
12 timely object to the use of the disputed exhibits" when party claiming privilege "testified about
13 the contents of" the privileged document including "reading portions of [the documents] into the
14 record as well as interpreting the language used in them" during a deposition "without privilege or
15 work product objection"); *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL
16 275083, at *5-*6 (S.D. Cal. Jan. 13, 2010) (failure to object to a document, resulting in two
17 minutes of deposition testimony about the document, waived privilege).

18     Courts require contemporaneous objections for good reason: they "enable the trial
19 judge to take the most efficacious action". *Gurtner*, 474 F.2d at 299; *see also United States v.*
20 *Palmer*, 3 F.3d 300, 304 (9th Cir. 1993) ("The purpose of requiring a party to timely object is to
21 ensure that the district court has an opportunity to cure any potential errors in the first instance."
22 (citing *Estelle v. Williams*, 425 U.S. 501, 508 n.3, (1976))); *Pickett v. Duncan*, 80 F. App'x 548,
23 549 (9th Cir. 2003) (citing *Palmer* for this proposition).). Epic extensively questioned
24 Mr. Schiller about ▮▮▮▮▮▮▮▮▮▮ in open court, in the presence of Apple outside counsel and
25 Apple in-house counsel, without objection. Although Apple contends that the language at issue is
26 obviously privileged, Apple did not behave as if this were so; it sat silently by and did not raise
27 the issue until a break in the proceedings. (Mot. at 3.) Even then, Apple focused only on the
28 document and did not present an objection regarding Mr. Schiller's testimony to the Court.

1  (Tr. 1198:15-1199:11.)  The first time Apple has asked the Court to strike the testimony is in its
2  Motion, filed nearly two weeks after the testimony was heard.  The failure to raise the objection
3  during that testimony resulted in waiver.

4  Apple relies on *U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170 (C.D. Cal. 2001),
5  in support of its motion.  (Mot. at 4-6.)  But *Bagley* was a case about an attempt to claw back an
6  inadvertently produced *document*, not a motion to strike testimony on the ground that it was
7  privileged.  204 F.R.D. at 175.  *Bagley* looked to five factors to assess waiver of privilege through
8  the assertedly inadvertent production of documents:  (1) the "reasonableness of the precautions to
9  prevent inadvertent disclosure"; (2) the amount of "time taken to rectify the error"; (3) the
10 discovery scope; (4) the extent of the disclosure; and (5) fairness.  *Id.* at 177.  Apple does not
11 provide any citation for its claim that the test in *Bagley* "*must* hold true for testimony on the
12 contents of such a document".  (Mot. at 5 (emphasis added)).  And Epic has not located any case
13 applying *Bagley* in the context of an effort to strike testimony.  Simply put, *Bagley* does not apply
14 here.  In any event, each of the *Bagley* factors weighs in favor of finding waiver.

15  *First*, Apple made no effort to prevent the disclosure of the ▮▮▮
16 testimony in the courtroom.  Mr. Schiller was questioned on multiple documents containing this
17 language (CX-0223, CX-0224 and CX-0272) and was asked numerous questions specifically
18 addressing it (Tr. 1159:25-1164:2, 1184:1-1185:16, 1188:11-1189:20, 1192:1-18), but Apple did
19 not object a single time to the admission of the documents or to the testimony during that period.
20 Apple first raised the issue at a break in the testimony, coming nearly 40 transcript pages after
21 ▮▮▮ was first raised—and after it had been mentioned 22 times.  (*See passim*
22 Tr. 1159:25-1198:14.)  And even after the break, Apple *continued* not to object as Mr. Schiller
23 was asked additional questions and gave further testimony about ▮▮▮
24 (Tr. 1201:10-13.)  Separately, to the extent the production of documents is relevant to assessing
25 waiver with respect to the testimony, Apple did not take reasonable precautions to avoid
26 producing documents relating to ▮▮▮  As part of the privilege re-review process,
27 Apple produced multiple documents containing the ▮▮▮ language.  (Dkt. 1328-4 at
28 3 (noting CX-0223, CX-0272, CX-0538, PRIV-APL-EG_00226354, PRIV-APL-EG_00226110,

1  PRIV-APL-EG_00135861 and PRIV-APL-EG_00226116 as examples of produced documents
2  containing the language at issue).)  Apple even re-produced during the February hearing a more
3  legible copy of CX-0272—which was one of the documents referring to ▮▮▮▮▮▮▮▮ about
4  which Mr. Schiller had been questioned—and it did so without redactions.  (*Id.* at 2.)

5     *Second*, as discussed, Apple did not promptly seek to strike the testimony from the
6  record.  *See Luna Gaming-San Diego*, 2010 WL 275083, at *5-*6 (finding waiver after two
7  minutes of deposition testimony about a document).  To the contrary, Apple did not even object to
8  the testimony contemporaneously, and when it later raised a concern about documents referring to
9  ▮▮▮▮▮▮▮▮ it acknowledged that, as far as Mr. Schiller's testimony goes, "the cat-is-out-
10 of-the-bag".  (Tr. 1443:22-1444:4.)  It then waited nearly two weeks, after numerous press reports
11 about the Schiller Testimony, before asking the Court to scrub from the record testimony that is
12 now in the public domain.[6]

13    *Third*, the third *Bagley* factor (the scope of discovery) is ill-suited to address a
14 request to strike testimony; it is intended to help assess the degree of inadvertence in producing a
15 privileged document when considered in view of the overall size of a document production effort.
16 To the extent it can even be applied here, this factor too cuts in favor of waiver.  Although Apple
17 claims that its review corpus was approximately 1.3 million documents, the portion subject to
18 privilege re-review—which is the portion from which the ▮▮▮▮▮▮▮▮ documents used with
19 Mr. Schiller were produced—was only approximately 55,000 documents.  That is an eminently
20 manageable review (and re-review) population for a company with the resources of Apple.

21    *Fourth*, the "extent of disclosure" factor weighs in favor of waiver because Apple
22 seeks to strike significant portions of testimony (spread across at least 45 minutes of the hearing),
23 a far cry from its claim of "a single phrase within a lengthy slide deck".  (Mot. at 5.)  And, as
24 noted above, the ▮▮▮▮▮▮▮▮ concept at issue here appeared in dozens of documents that

---

[6] *See, e.g.*, Josh Sisco, *Apple Executive Testifies App Store Fees Risked Violating Court Order*, Bloomberg, (Feb. 24, 2025, 7:48 p.m.), https://www.bloomberg.com/news/articles/2025-02-25/apple-executive-testifies-app-store-fees-risked-violating-order ("Apple Inc. believed there was a 'significant' risk it would fail to comply with a court order to allow mobile app developers to steer customers to payment methods outside the company's App Store when it added a new commission for those purchases, a senior company executive testified.").

Apple produced without redactions over the course of months. (Dkt. 1328-4 at 3.)

*Fifth*, the "overriding issue of fairness" reinforces a finding of waiver because Epic would be prejudiced if this Motion is granted. *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D. Cal. Dec. 20, 1985). Timely objections are critical to avoiding prejudice against the non-moving party. *See Jerden v. Amstutz*, 430 F.3d 1231, 1237 (9th Cir. 2005) (finding late exclusion of testimony an abuse of a trial court's discretion "because the untimely decision unfairly prevented Plaintiffs from providing a curative response"). Apple's motion would seek to strike portions of the record after testimony has been completed and Epic has filed its findings of fact. While Mr. Schiller was on the stand, Epic engaged Mr. Schiller in numerous back-and-forth exchanges on the topic at issue, reasonably relying on Apple's lack of objection. *See Bud Antle, Inc. v. Grow-Tech Inc.*, 131 F.R.D. 179, 183-84 (N.D. Cal. 1990) (holding that "fairness dictates that the privilege must be waived" where the other party "indicated a strong reliance on [the privileged document] for purposes of their" case); *see also Love v. Medical College of Wisconsin*, 2018 WL 2862823, *6 (E.D. Wis. June 11, 2018) (finding fairness "weighs in favor of waiver" where the other party "already relied on the documents at issue during depositions" and in subsequent motion practice); *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 118 (N.D. Ill. 1996) (noting that "the overriding issue of fairness in this case singularly favors a finding of waiver because FASA has relied on the documents in support of its" case). It does not serve the ends of fairness to allow Apple to benefit from its failure to timely object.

## II. Apple Affirmatively Waived Any Objection to the Schiller Testimony and the Court Already Ruled that the Testimony Stands.

Apple waived its objection to the Schiller Testimony twice over—first, as discussed above, by failing to raise it contemporaneously, and then, by affirmatively waiving it. Specifically, the day following the Schiller Testimony, Apple affirmatively and on the record waived any request to strike the Schiller Testimony from the record. Apple acknowledged that "the cat-is-out-of-the-bag" with respect to Mr. Schiller's testimony the prior day and stated unequivocally that the "only thing" Apple was seeking was *forward-looking* relief: "we don't need to have additional questions for Mr. Oliver about it". (Tr. 1443:23-1444:4.)

1    Moreover, in the same exchange, this Court already ruled—in the midst of the
2 dispute over the at-issue language—that although the ███████ references could be
3 redacted in exhibits and further questioning on the topic would not be permitted, "[y]esterday's
4 testimony stands". (Tr. 1447:5-14.) Again, at no point during this exchange did Apple object to
5 the Court's ruling, nor did Apple indicate any disagreement with the Court over that decision—
6 which is completely consistent with Apple's representation that it would seek *only* forward-
7 looking relief regarding additional testimony.

8  **III.    The Schiller Testimony Did Not Cover Obviously Privileged Material.**

9    Apple argues that Epic should have done that which Apple failed to do—namely,
10 identify the relevant portions of CX-0223 as privileged. (Mot. at 5.) That argument lacks
11 credibility given the failure of a multitude of Apple attorneys (both in house and outside) to
12 identify the ███████ language as privileged themselves—first during document review,
13 leading to dozens of documents reflecting the issue being produced without redactions; and then
14 during extensive questioning of Mr. Schiller in their presence. Moreover, even after Apple raised
15 concerns about portions of CX-0223 being privileged, Apple waited another full day to raise
16 similar objections to CX-0272, which discusses the very same issue. In fact, as noted above, the
17 morning after the Schiller Testimony Apple reproduced without redactions a more legible copy of
18 CX-0272, which contained the same ███████ phrasing. (Dkt. 1328-4 at 3.) And
19 although Apple now complains that "Apple's privilege assertions over *identical* language in other
20 versions of the same slide deck had been sustained", including "within the very next exhibit in
21 Epic's witness binder" (Mot. at 3), the next exhibit in Epic's witness binder—CX-0224—also
22 contained **unredacted** ███████ language on a similar slide. There was simply no way
23 for Epic to know that Apple viewed discussions of ███████ to be categorically privileged,
24 as Apple now claims—especially considering that Epic could not see what specific language was
25 redacted in any document. *See, e.g.*, *In re Sause Bros. Ocean Towing*, 144 F.R.D. 111, 115
26 (D. Or. 1991) (holding that repeated failure to detect disclosure weighed against finding
27 precautionary measures reasonable (citing *Bud Antle,* 131 F.R.D. at 179)). It was Apple's burden,
28 not Epic's, to ensure the consistency of its privilege calls and the propagation of redactions to

1  similar language in different documents (if also privileged).  Any failure to do so with respect to

2  the ▮▮▮▮▮▮▮▮ language is an issue of Apple's "own making".  (Tr. 1443:2-8.)[7]

### IV.  Apple Cannot Justify Its Untimely Objection.

Apple's effort to blame Epic for Apple's own failure to object is without merit.  In Apple's telling, this problem lies at Epic's feet because Epic initially declined to provide Apple with an exhibit list.  (Mot. at 2.)  This is both wrong and irrelevant.  It is wrong because after initially declining, Epic did agree to exchange exhibits and provide them within roughly 30 hours of when Apple initially sought to receive them.  (Tr. 1446:16-1447:4; Dkt. 1328-6 at 3.)  Apple declined to exchange, instead demanding that Epic send its exhibits in witness order and making clear that Apple would not reciprocate.  (Tr. 1446:16-1447:4; Dkt. 1328-6 at 2-3.)  The Court agreed during the hearing that this proposal was "unacceptable".  (Tr. 1444:14-18.)  Regardless, the exhibit list issue is irrelevant:  Apple had the exhibits at issue sitting open on the table, while listening to the witness being questioned about the very language to which Apple now objects, and remained completely silent for the entire duration of that examination.

### V.  Apple Seeks to Use Privilege as Both a Sword and a Shield.

Apple's Motion improperly seeks to strike from the record references to ▮▮▮▮▮▮▮▮ and thus shield testimony it claims is privileged, while impliedly sharing privileged advice on this very same topic in other submissions to this Court.  This Court should deny Apple's Motion on the additional basis that it is an improper use of the privilege as both a shield and a sword.[8]

An axiomatic principle of evidence is that a party cannot "us[e] the privilege as both a shield and a sword. . . . [P]arties in litigation may not abuse the privilege by asserting

---

[7] For the avoidance of doubt, Epic maintains that Apple has not satisfied its burden to prove that the references to ▮▮▮▮▮▮▮▮ at issue are privileged.  (Tr. 1442: 15-16; Dkt. 1324-4 at 3.)  And this Court never definitively held them to be so.  (Tr. 1447:12-14 ("And you show me some evidence that I've got a lawyer who drafted that particular bullet point, then I'll take a look at it.  For now, keep it redacted and let's keep moving.").)  Epic expressly preserves the point.

[8] Indeed, Apple's attempt to use the privilege as both a sword and a shield should nullify its privilege claim over the use of the phrase ▮▮▮▮▮▮▮▮ in the underlying documents (including CX-0223, CX-0224 and CX-0272).

1   claims the opposing party cannot adequately dispute unless it has access to the privileged

2   materials". *United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) (quoting

3   *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)).

4   During the hearing, Apple repeatedly asked its witnesses about whether, in their

5   view, they complied with the Injunction and whether and to what extent they engaged with

6   lawyers. For example:

- Schiller: "Q. You played a significant role in this injunction compliance project, as we've testified for many hours already correct? A. Yes. Q. Did you keep the injunction in mind, you personally, Mr. Schiller during that process? A. Yes. Q. And again, with the Court's reminder in mind, without revealing attorney-client privileged communication, do you personally have a view as to whether the injunction compliance plan complies with the injunction? The injunction, not the ruling. I'm talking about the actual injunction. A. It's probably easier, leave that to the same previous answer as before. I -- my understanding of how we meet this involves *a tremendous amount of legal input* and so I would rather not say the wrong thing on that." (Tr. 1301:8-23 (emphasis added).)

- Oliver: "Q. When did you first review the decision? A. Immediately following the decision coming out. Q. And you reviewed it subsequent to that? A. Yes. Q. Did you consult with it when you were working on the injunction compliance process? A. Yes. At specific points in time, yes. Q. And did you review the Court's injunction order as well? A. Yes." (Tr. 541:13-21.) "Q. Did you understand that in its post trial order, the Court found that even in the absence of IAP, Apple could still charge a commission on developers? A. Yes." (Tr. 545:7-10.)

- Onak: "Q. Did you have responsibility for making sure that the system disclosure sheet was in compliance with the Court's injunction? A. No. Q. To best of your understanding, whose responsibility was that? A. I believe that was App Store leadership and legal. Q. Did -- was legal at all involved in the system disclosure sheet? A. Yes, absolutely." (Tr. 1372:13-22.)

Apple thus directly elicited testimony implying that Apple relied on legal advice to conclude that its Injunction response was compliant. Moreover, Apple made this argument explicitly in its post-hearing brief, filed hours prior to this Motion. In that brief, Apple argued that "Apple's business teams worked hand-in-glove with in-house and outside counsel throughout the exercise, because Apple directed its entire compliance project toward finding and choosing a solution to a *legal* problem." (Dkt. 1324 at 9 (emphasis added).) Apple then argued that "Apple reasonably concluded that this framework complied with the Injunction". (*Id.*) Apple therefore juxtaposed

1   the participation of lawyers with its alleged belief that its Injunction response plan was compliant.
2   And Apple then touted the fact that its witnesses believed Apple's plan complied with the
3   Injunction. (*See id.* at 15 ("Each of Apple's witnesses pushed back and testified that Apple had
4   complied with the Injunction."); *id.* ("Not a single Apple witness testified that the new framework
5   is non-compliant, and no document establishes non-compliance."); *id.* ("Mr. Schiller, Mr. Oliver,
6   and the rest of Apple's witnesses candidly explained the Injunction compliance process. Apple
7   spent months grappling with how best to comply with the Injunction from a legal-business
8   perspective."); *id.* at 20 ("The Apple witnesses with decision-making authority uniformly testified
9   that they had read the Injunction").)

10          Apple is therefore making the argument that Apple and its business executives
11  reasonably believed in the propriety of Apple's Injunction response, at least in part, on the basis
12  of the advice of counsel on the appropriate way to solve what Apple viewed as a "legal
13  problem"—yet Apple seeks to entirely conceal, and even strike testimony (elicited without
14  objection) reflecting, what it claims to be legal advice concerning the substantial ███████
15  ███ raised by Apple's decisions to impose a commission and severe restrictions on linked
16  purchases. Apple's effort to conceal under the shroud of privilege evidence that directly
17  contradicts Apple's argument that its business professionals relied on advice of counsel to
18  reasonably conclude their actions are compliant should be rejected.

19                                                 ***

20          For these reasons, Apple's Motion to Strike Certain Hearing Testimony should be
21  denied.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: March 17, 2025 | Respectfully submitted, |
| 3 | | |
| 4 | | By:  /s/ Gary A. Bornstein |
| 5 | | **FAEGRE DRINKER BIDDLE & REATH LLP** |

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*