CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

MARK A. PERRY, SBN 212532
mark.perry@weil.com
JOSHUA M. WESNESKI (D.C. Bar No.
1500231; *pro hac vice*)
joshua.wesneski@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000
Facsimile: 202.857.0940

MORGAN D. MACBRIDE, SBN 301248
morgan.macbride@weil.com
WEIL, GOTSHAL & MANGES LLP
Redwood Shores Pkwy, 4th Floor
Redwood Shores, CA 94065
Telephone: 650.802.3044
Facsimile: 650.802.3100

Attorneys for Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.<br><br>            Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>            Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR-TSH<br><br>**APPLE'S REPLY IN SUPPORT OF MOTION TO STRIKE CERTAIN HEARING TESTIMONY**<br><br>Courtroom: 1, 4th Floor<br>Date: April 15, 2025 at 2:00 p.m.<br>The Honorable Yvonne Gonzalez Rogers |

**INTRODUCTION**

In its opposition, Epic does not meaningfully grapple with the basic premise of Apple's motion: That the Court's rulings regarding privileged information should apply equally to both documentary evidence and oral testimony. Apple objected to the solicitation of the testimony at issue just minutes after it was offered, while Mr. Schiller was still on examination, and secured a ruling from this Court that the information is privileged in the context of a document with the same relevant content. Epic has no explanation for why this Court, sitting without a jury in this evidentiary hearing, should not apply the same ruling to the testimony at issue. Apple's motion to strike should be granted.

**DISCUSSION**

The substantive privilege issues undergirding Apple's motion to strike are not in dispute. Apple asserted privilege over the disputed content in the exhibits introduced by Epic, the Court sustained that assertion of privilege in relevant part, and Epic has never sought to alter that determination. All Apple seeks in this motion is uniform treatment of material already determined to be privileged. Epic nowhere seriously disputes that (1) the content sought to be stricken is in fact privileged or (2) that the content sought to be stricken is identical to material ruled privileged by the Court. Instead, Epic advances a series of procedural arguments for allowing privileged information to remain in the record. These arguments all fail.

*First*, Epic contends that Apple failed to contemporaneously lodge a privilege objection when Epic's counsel introduced privileged information into the record. But none of the cited cases support its argument that an instantaneous objection—rather than one lodged at the first break—is required. *See* Dkt. 1365, at 6. In *United States v. Jamerson*, 549 F.2d 1263 (9th Cir. 1977), the Court held that a party's failure to make a "timely" objection to alleged hearsay testimony did not preserve the issue for appeal. *See id.* at 1266–67. In addition to having nothing to do with privilege, that case actually confirms that an instantaneous objection is not required: "No objection having been made to the evidence when given *and no motion to strike having been made*, [the testimony] was properly before the jury." *Id.* at 1267 (emphasis added). Here, at a *bench* trial outside the presence of a jury, Apple *did* object and *has* filed a motion to strike. Neither of the unpublished cases Epic cites—*Haynes v. Home Depot USA, Inc.*,

1    2023 WL 177632 (9th Cir. Jan. 13, 2023), and *Milton H. Greene Archives, Inc. v. Julien's Auction House*

2    *LLC*, 345 F. App'x 244 (9th Cir. 2009)—discussed waiver of privilege, and neither opined on whether

3    an objection must be made at the precise moment of the testimony.  And in *United States v. Gurtner*,

4    474 F.2d 297 (9th Cir. 1973), the Court faulted the party for not objecting during the witness's testimony.

5    *See id.* at 299.  Here, though, Apple raised the issue while Mr. Schiller was still on the stand.  All that is

6    required is that a privilege holder make "efforts reasonably designed to protect the privilege."  *Gomez v.*

7    *Vernon*, 255 F.3d 1118, 1132 (9th Cir. 2001) (citation omitted).  Avoiding undue disruption of the

8    proceedings and seeking the Court's guidance at the first opportunity is fully reasonable.

9        The remainder of Epic's cases only underscore that Apple exercised more diligence than parties

10    who have been held to have waived their privilege assertions.  In *Luna Gaming-San Diego v. Dorsey &*

11    *Whitney, LLP*, 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010), the memo in dispute was introduced

12    into evidence at a deposition without objection and cited in two separate rounds of summary judgment

13    briefing, and the party undertook no efforts to secure the privilege until months after the fact. *Id.* at *5–

14    6.  And in *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2016 WL 3654285 (D. Nev. July 5, 2016),

15    counsel raised no objection to the use of a document during a deposition, with only the *deponent*

16    commenting that the document may be privileged.  Apple—whose counsel raised a timely objection

17    while Mr. Schiller was still on examination—was far more diligent than the parties in these extreme

18    circumstances:  The law does not require Apple to take "strenuous or Herculean efforts" to preserve the

19    sanctity of its privileged communications.  *Hynix Semiconductor Inc. v. Rambus Inc.*, No., 2008 WL

20    350641, at *2 (N.D. Cal. Feb. 2, 2008).

21        Where disclosure is "involuntary," as here, the Ninth Circuit looks to whether the privilege holder

22    has pursued "reasonable means of preserving the confidentiality of the privileged matter."  *Gomez*, 255

23    F.3d at 1132.  In assessing reasonableness, courts within the Ninth Circuit have looked to a range of

24    considerations, including: "(1) the reasonableness of the precautions to prevent inadvertent disclosure;

25    (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and

26    (5) the overriding issue of fairness."  *U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal.

27    2001) (citing *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D.Cal.1985)).  Although

28

1   Epic disputes the applicability of the *Bagley* factors in this context, *see* Dkt. 1365, at 7, it provides no

2   alternative framework for analysis.  And as Apple has already shown, Dkt. 1328 at 4–6, the *Bagley*

3   factors each weigh against a finding of waiver and make clear that Apple's efforts were reasonable.

4   Epic's contrary arguments, Dkt. 1365, at 7–9, boil down to an inflexible demand for an instantaneous

5   objection—the opposite of the reasonableness inquiry the law requires.

6          Relatedly, Epic contends that Apple did not lodge an objection to additional testimony regarding

7   this same topic.  Dkt. 1365 at 7.  But Epic overlooks that the testimony it cites did not concern the legal

8   advice in the documents ruled privileged by the Court, but rather Mr. Schiller's *own* view as to the

9   meaning and scope of the Injunction.  *See* TT 1201:10–13 (Schiller).  Apple has not sought to seal those

10  statements, recognizing that Mr. Schiller's views, to the extent they are not premised on the advice of

11  counsel, are not themselves privileged.  And there is no prejudice to Epic, because Apple made the

12  objection while Mr. Schiller remained on the stand, therefore allowing Epic to pursue any additional

13  lines of questioning that may have been appropriate in light of the objection.  Given the paramount

14  importance of the attorney-client privilege, *see Swidler & Berlin v. United States*, 524 U.S. 399, 403

15  (1998), there can be no credible claim of prejudice arising from the *consistent* application of privilege in

16  a matter.

17         *Second*, Epic argues that Apple "affirmatively waiv[ed]" its ability to strike any portion of Mr.

18  Schiller's testimony from the record.  Dkt. 1365, at 9–10.  That is wrong.  Here is what counsel for Apple

19  said, in a colloquy with the Court regarding a document Epic sought to use with a different witness—

20  Carson Oliver—containing similar privileged content:

21         The only thing we're asking here, Your Honor – and – and Mr. Bornstein and I did have
           a discussion this morning.  I do understand the cat-is-out-of-the-bag problem from
22         yesterday, but I think we don't need to have additional questions for Mr. Oliver about it
           given that it's a very limited redaction that was sustained in a materially similar version
23         of the document, which is, by the way, also in this binder, right 291.

24  TT 1443:22–1444:9.  There is nothing in those statements that even approaches an affirmative waiver of

25  attorney-client privilege, and Epic cites no case suggesting otherwise.  If this were a jury trial, a limiting

26  instruction might be the appropriate relief given that Mr. Schiller had already testified.  But this is a

27  bench proceeding, and this Court is well able to disregard testimony that revealed privileged information.

28

The cat might be out of the bag, but the Court need not—and should not—look at it when deciding Epic's motion. Apple has consistently maintained that position.

*Third*, Epic asserts that the testimony in dispute was not "obviously privileged." *See* Dkt. 1365, at 10. But at this stage of the litigation, there is no dispute that the testimony sought to be stricken *is* privileged. In a sealed session discussing redactions on a similar version of the slide deck at issue, the Court uniformly upheld Apple's privilege assertions over the operative phrase. *See* (CX-0859.26, .34, .57 (PRIV-APL-EG_00162520)), *cf.* (CX-0223.16, .32, .37, and .42). Moreover, Apple's privilege assertions over the same operative phrase were upheld as privileged by the Special Masters and Judge Hixson in the very next document in Epic's witness binder. *See* CX-0224.17, 36, .44, and .60 (PRIV-APL-EG-00149706). In a footnote, Epic half-heartedly questions the privileged nature of the operative phrase, but Epic nowhere disputes that the same phrase in the same context has been upheld as privileged at every level of review in this matter. Dkt. 1365, at 11 n.7. Epic has not challenged those rulings, and the issue has not been preserved. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (explaining that "a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review").

More troublingly, Epic's suggestion that materials reflecting legal advice are not covered by the attorney-client privilege is in keeping with Epic's false narrative that Apple's outside and in-house counsel have somehow abused the privilege in this litigation. *See* Discovery Sanctions Response, Dkt. 1330, at 19–22. This position has no factual support and is belied by the documentary record, which establishes beyond any doubt that Apple (unsurprisingly) sought and received legal advice regarding compliance with the Injunction entered in this pending litigation. It is telling that, when the shoe was on the other foot, Epic's attorneys have taken exactly the same privilege positions as Apple advances in this case. Def.'s Opp'n Br. at 3, *Oliver v. American Express Co.*, No. 19-CV-0566 (E.D.N.Y. Aug. 8, 2022), ECF No. 100 ("By explaining to Plaintiffs that Project [redacted] was a litigation- and lawyer-driven initiative assessing the possible consequences of an injunction or law barring enforcement of Amex's NDPs, Amex adequately apprised Plaintiffs of the facts supporting its privilege claim."). In arguing otherwise here, Epic's attorneys have failed to discharge their obligations to protect Apple's privilege,

1    as well as their duty of civility to Apple's counsel.  It is unfortunate that Epic and its counsel have chosen

2    to turn what should have been an objective inquiry into whether Apple complied with the Injunction into

3    *ad hominem* attacks on Apple's counsel—including Jennifer Brown, whose advice regarding the

4    applicability of attorney-client privilege in the documents singled out by Epic has been unimpeachable.[1]

5    Apple respectfully submits that the motion to enforce should be decided on its merits, not on the basis

6    of Epic's improper and baseless innuendo.

7        *Fourth*, Epic rejects any responsibility for introducing privileged information at trial, offering its

8    own account of the parties' exchange regarding exhibit lists.  Dkt. 1365, at 11.  Epic does not argue that

9    any of these facts are actually relevant to the issue of whether the material at issue is privileged, but in

10    any event, Epic's account is wrong.  After Apple proposed an exchange of exhibits and Epic rejected it,

11    Apple followed up seeking to understand how Epic intended to address confidentiality issues without an

12    exhibit list exchange.  *See* Dkt. 1328-6, at 4–5.  Epic then indicated that it would agree to provide its

13    exhibit list to Apple by 7:00 PM PT on Saturday before the hearing resumed, but only if Apple *provided*

14    *all of its confidentiality designations by 5:00 PM PT the next day*.  *Id.* at 3.  Having no indication of the

15    size of Epic's exhibit list, Apple of course could not agree to commit such resources the day before the

16    hearing resumed.  This is particularly so given that in the first phase of the evidentiary hearing, Epic

17    served an extensive exhibit list but did not use many of the documents on it, while most of the documents

18    Epic actually used in the hearing were not on its exhibit list.  Moreover, it is incorrect that any of the

19    disputes regarding redaction of the materials or Mr. Schiller's testimony is of Apple's "own making."

20    Dkt. 1365, at 11 (quotation marks omitted).  Apple has carefully applied applicable privilege law

21    throughout these proceedings, including in both the original review and the re-review.  *See* Discovery

22    Sanctions Response at 9–14, Dkt. 1330; Perry Decl., Dkt. 1330-1.  This matter has presented a uniquely

23    challenging set of circumstances involving privilege, including erroneous rulings that Apple intends to

24

25    _____

[1] It is further telling that the very email Epic cited to imply that Ms. Brown's invocation of the privilege

26    was improper contains redactions for attorney-client privilege that were upheld by a Special Master,
demonstrating that Ms. Brown's reminder to her colleagues in that email to be cognizant of the privilege

27    was, indeed, proper.  *See* Ex. A to Epic's Response to Apple's Opposition to Discovery Sanctions, Dkt.
1356.  Ms. Brown's other advice was likewise proper, as shown in the evidentiary proffer made by

28    Apple, *see* Dkt. 1316 (addressing two emails that also contained privileged designations that were upheld
by the Special Master), which the Court ordered stricken.  *See* Dkt. 1339.

1  challenge on appeal. But even setting aside those disputed issues, Apple's assertion of privilege over

2  *other* documents has nothing to do with its indisputably valid assertion of privilege over the material at

3  issue here.

4      *Finally*, Epic argues that Apple has leveraged the attorney-client privilege and work-product

5  protection as both a sword and a shield. Not so. The sword-and-shield doctrine provides that "[w]here

6  a party raises a claim which in fairness requires disclosure of the protected communication, the privilege

7  may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). The

8  general rule is that "a party must *rely* on privileged advice from his counsel to make its claim or defense"

9  in order for the doctrine to apply. *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). Apple has

10  never argued that its compliance (or alleged non-compliance) with the Injunction turns on the extent to

11  which the relevant decision makers relied on legal advice. It is an objective fact that Apple's business

12  teams worked closely with the legal department in formulating a response to the Court's Injunction. *See*

13  Dkt. 1324, at 9. But Apple's position has always been that "[c]ompliance with an injunction is primarily

14  an 'objective' inquiry." *Id.* At no point did Apple solicit testimony from its witnesses regarding the

15  *substance* of any advice from counsel. The doctrine has no application here.

16                                          **CONCLUSION**

17      For the reasons discussed above, Apple respectfully requests that this Court grant the Motion to

18  Strike Certain Hearing Testimony.

19

20  Dated: March 19, 2025                    Respectfully submitted,

21                                          By: */s/ Mark A. Perry*
22                                          Mark A. Perry
                                            WEIL, GOTSHAL & MANGES LLP
23
                                            Attorney for Apple Inc.
24

25

26

27

28