UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>　　　　*Plaintiff*, *Counter-defendant*,<br><br>　　　　　　v.<br><br>APPLE INC.,<br><br>　　　　*Defendant*, *Counterclaimant*. | Case No. 4:20-cv-05640-YGR-TSH<br><br>**OBJECTIONS TO SPECIAL MASTER DETERMINATIONS ISSUED APRIL 15, 2025 REGARDING APPLE'S WITHHELD DOCUMENTS** |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

　　Pursuant to Section 4 of the Joint Stipulation and Order Approving Privilege Re-Review Protocol (Dkt. 1092) (the "Protocol"), Epic respectfully submits the following Objections to certain of the Special Masters' privilege determinations issued on April 15, 2025 and pertaining to documents Apple seeks to withhold in their entirety.

　　Epic recognizes the significant burden of these objections and is sensitive to the Court's observation regarding the diminishing utility of similar or duplicative documents following the completion of the evidentiary hearings. Epic is therefore limiting its objections below to documents that it believes may meaningfully supplement the already extensive record established at the hearings.

　　Epic, of course, does not have access to the documents and is therefore unable to fully assess the utility of the documents or the bases on which Apple claims privilege; it makes its utility judgments and predicates its objections on the limited information provided in Apple's privilege logs for the documents and their families.

　　Epic respectfully requests that the Court review the following documents *in camera* and, where appropriate, reject Apple's privilege assertions pertaining to these documents, in whole or in part.

**Emails Relating to Developer Feedback (Entry Nos. 5699, 5715, 5735, 5739, 8035 and 8347)**

Entry No. 5699 (PRIV-APL-EG_00205905) is an email chain involving Apple's app review and app business development teams, as well as in-house counsels Sean Cameron and Jason Cody. According to Apple's privilege log, this email attaches a spreadsheet "reflecting information for the purpose of obtaining legal advice" about developer outreach with specific apps. However, the spreadsheet that Apple claims to "reflect information necessary for obtaining legal advice" is not included in the privilege log and Apple makes no claim that the email itself reflects any request for or legal advice, or is otherwise privileged. Furthermore, this email chain seems to be predominately a discussion among business people discussing how to reach out to developers for their feedback—entirely (or at least primarily) a business topic. Based on the privilege log, therefore, this email does not appear privileged.

Entry Nos. 5715 (PRIV-APL-EG_00206033) and 5735 (PRIV-APL-EG_00206177) appear to be messages in a single email chain with the subject "Match Group passing along positions/suggestions". Mr. Carson testified at the evidentiary hearing that Mr. Canter, as the head of the apps business development team, gathered and passed along feedback from large developers concerning Apple's planned response to the Injunction (and regulatory orders imposing similar requirements on Apple in other jurisdictions). (May 17, 2024 Hr'g Tr. 656:4-14; February 25, 2025 Hr'g Tr. 1409:8-25.) The subject of the document suggests that this email chain may be an instance of Mr. Canter conveying such third-party feedback from Match, a large developer of dating apps. Indeed, a similar email from Mr. Canter conveying feedback from Bumble, another large developer of dating apps, was admitted during the February 2025 Contempt Hearing, CX-0246. Mr. Canter included only lawyers on the "To" line of CX-0246, including two of the same in-house counsel that are the recipients of Entry Nos. 5715 and 5735 (Messrs. Cameron and Cody, and Ling Lew). To the extent these documents reflect feedback from the Match Group, as their subject suggests, at least that feedback is highly relevant to issues in this case and entirely non-privileged.

Entry No. 5739 (PRIV-APL-EG_00206197) involves nearly the same group of people as Entry Nos. 5715 and 5735. This email purportedly includes "additional feedback" on injunction compliance requirements from YouTube Music, another app developer. Apple also claims attorney work product protections over this document, although it fails to state which litigation it was "prepared in anticipation or furtherance of". As with the above entries, to the extent this email reflects business feedback from a third-party developer akin to the non-privileged feedback in CX-0246, at least that feedback is neither privileged nor attorney work product and should have been produced.

Entry No. 8035 (PRIV-APL-EG_00229371) is an email from Mike Tam to Matt Fischer (former head of the App Store and an Apple witness) and Ms. Lew discussing ADP, an app developer. Several other business people, including Mr. Oliver, as well as additional in-house counsel are copied on the email. Apple's privilege log asserts that attorneys note that they have edited "draft developer outreach" in this email chain. However, attorneys noting that they made edits to a document does not make all

iterations of the document privileged, unless a reader of the document can discern where the attorneys made edits and what those edits were. The Court has already ruled that such documents are not privileged unless there are "before and after" versions of this document that can cause legal advice to be revealed. (Dkt. 1056 at 3 (noting that "you have to know *who* is reviewing the draft" such that "a comparison of the 'before' draft with the 'after' final version causes legal advice to be revealed".)

Entry No. 8347 (PRIV-APL-EG_00231624) is an email with the subject line "Frequent Developer Questions for DMA Workshop" and also involves Mr. Canter, Mr. Oliver and other Apple businesspeople. Like the other entries, this email appears to discuss feedback and questions from developers about Apple's response to the EU's regulatory requirements. The only in-house counsel involved in this email is Ms. Lew. Unless this email chain has the primary purpose of rendering legal advice, it should not be withheld in its entirety; at most, specific portions reflecting legal advice (if any) ought to be redacted.

## Email Concerning Naming of DMA and Injunction Documents (Entry No. 7717)

Entry No. 7717 (PRIV-APL-EG_00225069) seems to be an email discussing how documents related to Apple's response efforts should be "named". This email chain includes members of Apple's product management team, as well as in-house counsel Jennifer Brown and Ms. Lew. Apple's privilege log claims that this document reflects information "for the purpose of obtaining legal advice" from counsel but offers nothing more to show that these messages actually disclose or ask for legal advice, or that the entire communication is made primarily for a legal purpose. And although Apple also claims attorney work product protections over these emails, it is unclear how "naming" these regulation-related documents is the kind of work product "prepared in anticipation or furtherance of litigation" that is intended to be protected by the work product doctrine. To the extent portions of the email contain legal advice or a request for such advice or implicate attorney work product, Apple could redact these portions, rather than seek to withhold the entire document.

## Emails Relating to Compliance with Korean Regulations (Entry Nos. 7868 and 7877)

Entry No. 7868 (PRIV-APL-EG_00228278) is an email from Mr. Oliver to a group of businesspeople, including Phil Schiller (Apple executive and witness) and Mr. Fischer, as well as Apple in-house counsel. The email's subject line, "Korea Options", suggests that Apple executives are deliberating Apple's business strategy in response to new regulations in Korea. While Apple's privilege log asserts that the email attaches legal advice, there is no attachment to the email in the privilege log, and Apple makes no assertions that there is privileged information in the email itself. Unless the *email* is primarily about legal advice, which seems unlikely, the document should not be withheld.

Entry No. 7877 (PRIV-APL-EG_00228328) is an email from Ann Thai, a business person, to Mr. Oliver and Mr. Cameron. The email seems to be about a

presentation deck regarding Apple's strategy in Korea. Although Mr. Cameron is included in this email chain, Mr. Cameron was integral to multiple business discussions surrounding Project Wisconsin and similar response efforts, and he is accordingly the sender and recipient of numerous emails on these topics that are decidedly *not* privileged—including several that were admitted into evidence without any objection on the basis of Mr. Cameron's participation. (*See, e.g.*, CX-0223 (sent by Mr. Cameron); CX-0224 (same); CX-0246 (sent to Mr. Cameron)). Indeed, Judge Gonzalez Rogers noted during the evidentiary hearing that Mr. Cameron is "a business lawyer", "not litigation counsel". (February 25, 2025 Hr'g Tr. 1481:9-1482:6). Based on this record, it seems unlikely that an email about a business presentation is entirely privileged.

### Emails Concerning U.S. Injunction Compliance (Entry Nos. 7968 and 8180)

Entry No. 7968 (PRIV-APL-EG_00229040) is also an email involving Mr. Cameron and Mr. Oliver, along with the business director, Tanya Washburn. Based on the subject line, "Wisconsin—Team Commission meeting", and the date, June 8, 2023, it is likely that the purpose of this email was to discuss a meeting of Apple business people who were "Team Commission" and were tasked with presenting the business case for charging a commission on linked out transactions in the United States. (Dkt. 1326 (Pl.'s Findings of Fact, ¶ 18–22.) This was primarily a business strategy decision and discussions about setting up a meeting or about business strategy to be discussed at that meeting are not privileged—as made clear by the extensive evidence already adduced about the work of "Team Commission". (*See, e.g.*, February 25, 2025 Hr'g Tr. 1200:20-1201:4; February 25, 2025 Hr'g Tr. 1235:1-1236:5; CX-0224; CX-0291.) This email should thus not be withheld, let alone in its entirety.

Entry 8180 (PRIV-APL-EG_00230063) is another email from Mr. Cameron to Mr. Oliver, also dated June 8, 2023. Apple's privilege log suggests that this is an email "providing information for the purpose of rendering legal advice". However, the subject of this email, "Wisconsin pitch", suggests that this email relates to business strategy surrounding Apple's response to the U.S. Injunction; it appears unlikely this "pitch" was legal in nature. And as noted above, Mr. Cameron was integral to the business aspects of Project Wisconsin, such that his involvement was never confined to the provision of legal advice; to the contrary; he routinely was engaged in non-legal discussions. It seems highly likely that was the case here. This email should be produced.

|  |  |
|---|---|
| DATED: April 21, 2025 | CRAVATH, SWAINE & MOORE LLP<br>By: */s/ Yonatan Even*<br>*Counsel for Plaintiff Epic Games, Inc.* |