|           |                                                |
|----------:|:-----------------------------------------------|
| **From:** | Zach Silver                                    |
| **To:**   | Hannah Smith                  ,Marni Goldberg  |
| **Cc:**   | AppleAppsPR                                    |
| **Subject:** | Apple-Epic Hearing Coverage 5.9.24          |
| **Received(Date):** | Thu, 9 May 2024 13:34:13 +0000       |
| **Attachment:** | Apple-Epic Hearing Coverage 5.9.24.pages |
| **Date:** | Thu, 09 May 2024 13:34:13 +0000                |

Hi both – fresh coverage report on the Epic hearing is below and attached. We're still working on getting the full text of the Daily Journal article, but it might be a short bit before it's obtainable through our monitoring tools. Will make sure to pass along if/when it's available.

Otherwise, please let us know of any questions.

Thanks,

Zach + team

--

Coverage of Wednesday's hearing on the anti-steering injunction cycles through to legal trades and Apple press overnight and into Thursday morning. Stories from Law360, MLex, the Daily Journal and AppleInsider all echo the tone and focus of the small number of initial articles led by the AP and The Verge. As in those earlier Wednesday stories, the new pieces highlight Judge Yvonne Gonzalez Rodgers' criticism and apparent skepticism of how Apple's new steering policies comply with her order.

**A skeptical judge**

Law360 runs a lengthy piece recapping sharp questions lobbed at Matthew Fischer by both Gonzalez Rogers and Epic attorney Lauren Moskowitz of Cravath Swain Moore. The judge,



U.S. District Court - NDCAL
**4:20-cv-05640-YGR-TSH**
*Epic Games, Inc. v Apple Inc.*
Ex. No._____ **CX-1506**
Date Entered _____
By_____

Law360 writes, "reacted skeptically" to Fischer's "claim that [Apple] has fully complied with her order aimed at allowing app developers to send users to outside payment platforms, saying some of Apple's new rules appear to 'stifle competition.'" MLex similarly writes that Judge Gonzalez Rogers "appeared critical" of how Apple has handled compliance with her injunction, and AppleInsider says she "frequently expressed frustration and skepticism" while questioning Fischer throughout the four-hour hearing.

**Friction**

Much of the new coverage focuses on Gonzalez Rogers needling Fischer on what she, per MLex, called "increased friction so that" app users "don't actually want to move away from IAP." This notion came up repeatedly throughout the day, coverage notes, with Epic attorney Moskowitz contrasting the notice that cautions users who follow an entitlement link that Apple is not responsible for the privacy or security of web payment options with messages on Apple apps "that are a fraction of this size," Law360 notes. "She called the external website message a 'full-size takeover' with 'scare-tactic language.'" Per Law360, Gonzalez Rogers later told Fischer that the message "impl[ies]" that In-App Payments are "better than" those enabled by PayPal, Stripe and other "well-known payment provider[s]."

Law360 writes that Moskowitz later suggested that the required "learn more" button that appears during the entitlement link flow amounted to "friction" designed to deter users from following through on outside payments. Gonzalez Rogers said it's "a basic understanding in the industry" that friction will discourage users. "Apple knows that."

Reports MLex, "One of the arguments that Epic made in its motion to enforce the injunction is that Apple has designed external links to be 'riddled with additional economic disincentives, technical requirements and user frictions" that negate "any incentives developers could have to use such Links.'"

MLex, Law360, AppleInsider and Daily Journal all pull out the same quote that appeared in earlier coverage, when Gonzalez Rogers asked about the rationale behind a certain design, stating that she saw "no other answer" for it "other than to stifle competition." She also questioned Fischer about where in the injunction she said "you could create all sorts of requirements," MLex notes.

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271175

**Apple's perspective**

Fischer did have an opportunity to "push back," Law360 notes: "'Respectfully, I disagree,' he said" of the idea that Apple's rules including required disclosures are meant to discourage users from using third-party payments. "'We're just simply saying that Apple doesn't have the responsibility for privacy or security of purchases made on the web.'" Fischer also said the rule that entitlement links can't bring users straight to payment pages where they're already logged in "is an attempt to create a consistent experience for users and also protect their privacy." Law360 does note, "The judge said she didn't see what it had to do with privacy."

Law360 - Apple Judge Skeptical Tech Giant Complying With Epic Order (full text)

MLex - App Store manager grilled by US judge over company's compliance with competition injunction

AppleInsider - Judge questions Apple's commitment to App Store payment alternatives

Daily Journal - Judge reprimands Apple for violating injunction on external payment links

\*\*\*

**Law360 – Apple Judge Skeptical Tech Giant Complying With Epic Order**

The California federal judge overseeing Epic's antitrust suit against Apple reacted skeptically Wednesday to an Apple executive's claim that it has fully complied with her order aimed at allowing app developers to send users to outside payment platforms, saying some of Apple's new rules appear to "stifle competition."

U.S. District Judge Yvonne Gonzalez Rogers ruled in September 2021 that Apple rules preventing developers from sending users to outside payment methods violate California's unfair competition statute. The decision followed a high-profile trial in a case brought by Epic Games, and the judge subsequently put an injunction in place prohibiting Apple from imposing anti-steering rules against any developer.

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271176

In March, Epic told the court that Apple is "blatantly" violating the order by imposing new fees and restrictions that make linking to outside payment methods effectively impossible.

During a hearing Wednesday in Oakland, the judge heard testimony from Apple Vice President Matt Fischer, head of Worldwide App Store.

A lawyer for Epic, Lauren Moskowitz of Cravath Swaine Moore LLP, showed the court and the Apple executive a printout of recently released Apple guidelines for developers and confirmed they were in response to the court's injunction.

The guidelines included a process by which developers who sell games can apply for an "entitlement" before their app can link to a third-party payment solution.

Epic's lawyer pointed out that one of Apple's requirements included having the app post a notice to iPhone users when they tried to link to the outside payment system.

"You're about to go to an external website. Apple is not responsible for the privacy or security of purchases made on the web," it states.

Moskowitz noted that the disclosure uses large print and takes up much of the iPhone screen.

"Apple regularly presents users with consent screens that are a fraction of this size correct?" she asked.

She showed the court an image of the message Apple posts when asking a user if an app can track a user's activity. It took up less of the screen.

She called the external website message a "full-size takeover" with "scare-tactic language."

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271177

The Apple executive disagreed, saying it was merely informing iPhone users of the risks of making an external purchase on the internet instead of in the App Store.

Later, Moskowitz had the Apple vice president confirm Apple's approval process for the entitlements. It includes reviewing the app, including the URL that is going to be at the other end of this external link and having the developer certify that the third-party payment service provider meets a certain payment card industry compliance standard.

Moskowitz asked if Fisher was aware of any studies indicating that payment providers like PayPal or Stripe are risky.

"You haven't done anything to confirm whether third-party payment solutions on the web are any less safe, secure, and private for users than Apple's," she said.

Fischer agreed, but said that's not the message of the disclosure.

The judge asked who at Apple decided what would go up on that screen, and he said it was a group of company executives. When she pressed for names, he said Apple CEO Tim Cook and Phil Schiller, who holds the title of Apple Fellow.

When Fischer later tried to call the disclosure screen's message "objective," the judge pushed back.

"How was it objective if you've not done any studies to suggest that your process is any better than PayPal or Stripe or any other well-known payment provider?"

The Apple executive said those claims aren't made by the company.

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271178

"Well, that's what you imply," the judge said.

Then it was Fisher's time to push back.

"Respectfully, I disagree," he said. "We're just simply saying that Apple doesn't have the responsibility for privacy or security of purchases made on the web."

Moskowitz also asked Fischer about required language telling users that if they wanted to change their mind, they could contact the developer and request support for Apple App Store payments. "The 'Learn More' button on the screen that's going to be popping up to users, ultimately, is steering users right back to [Apple]," the Epic lawyer said.

Apple is trying to deter users from following through with a transaction outside of the app, Moskowitz later argued. She called it "friction," the phenomenon that increasing the number of steps in a process increases the likelihood that users will become frustrated and give up. Fischer said that was not Apple's intent.

"It's a basic understanding in the industry," Judge Gonzalez said. "Apple knows that."

Later in the day, Moskowitz pointed out that Apple is requiring developers to use plain URL links instead of more-visually prominent buttons to take users to another page.

"I can't imagine a logical reason why Apple would demand that of competitor apps," Judge Gonzalex remarked, "other than to stifle competition"

Fischer said Apple is still working on how to present these new capabilities to its users, who have become accustomed to the App Store. He later added that he couldn't remember the discussion around the button styles.

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271179

Epic's lawyer also asked the Apple executive about a requirement that the links developers use to send users outside the app land on a generic page, instead of "static" links that would be able to take a user to a website where they are already logged in.

Judge Gonzalez Rodgers said she didn't understand the rationale for that either. "Again, other than to stifle competition," the judge said.

Fischer said the rule is an attempt to create a consistent experience for users and also protect their privacy. The judge said she didn't see what it had to do with privacy.

Toward the end of Fischer's testimony, Moskowitz highlighted that the new rules block app users from making a digital purchase while using the app.

"Nowhere in that whole shop, that screen, can an external purchase link appear," the lawyer noted. "The purchase link has to be somewhere completely outside of that environment within the app."

The Apple executive said the purchase links could be on the app's home page.

Judge Gonzalez jumped in again and asked for the business justification for that. "Other than my assumption, which is to decrease competition, she said.

The Apple vice president said once a user gets into the app "flow," they've made the choice not to use the external payment link. Fischer also said the rule addresses a concern that Apple had about the possibility of the user being confused with having multiple purchase options in one place.

The evidentiary hearing continues Friday.

APL-EG_11099368
CONFIDENTIAL                                                                APL-EG_11271180

Epic moved the court to enforce an order barring the anti-steering rules in January after the U.S. Supreme Court rejected appeals in the case from both Epic and Apple. The case initially targeted Apple's broader policies requiring developers to distribute apps through the App Store and rules requiring the use of Apple's payment system, where it collects commissions of up to 30%.

In its motion to enforce, Epic Games argued that Apple has imposed "an elaborate new scheme" to continue extracting excessive commissions from developers, including a new set of rules and a 27% fee on any purchases made outside an app.

Apple told the court in an April written response that it is complying with the court's order by allowing developers to communicate with users about alternative purchase options inside and outside their apps. The order said nothing about whether Apple can charge a commission on those outside purchases and Apple said the court has "expressly recognized" that it can charge a commission.

Epic is faring better in its case targeting restrictions in Google's Play Store, with a federal jury in California deliberating for less than four hours last December before issuing a verdict finding that Google's policies violate antitrust law. Google has vowed to challenge the verdict as the court mulls what an injunction should include.

Epic Games is represented by Paul J. Riehle of Faegre Drinker Biddle & Reath LLP, Lauren Ann Moskowitz, Christine A. Varney, Gary A. Bornstein, Antony L. Ryan and Yonatan Even of Cravath Swaine & Moore LLP and Thomas C. Goldstein.

Apple is represented by Mark A. Perry, Joshua M. Wesneski, Morgan D. MacBride, Mark I. Pinkert and Katherine G. Black of Weil Gotshal & Manges LLP and Theodore J. Boutrous Jr., Richard J. Doren, Daniel G. Swanson, Jay P. Srinivasan, Cynthia E. Richman, Rachel S. Brass and Julian W. Kleinbrodt of Gibson Dunn & Crutcher LLP.

The case is Epic Games Inc. v. Apple Inc., case number 4:20-cv-05640, in the U.S. District Court for the Northern District of California.

CONFIDENTIAL

**MLex – App Store manager grilled by US judge over company's compliance with competition injunction**

Apple's global App Store manager today faced tough questions from US District Judge Yvonne Gonzalez Rogers, who appeared critical of how the smartphone maker has handled compliance with her injunction over the company's anti-steering provisions.

Apple's global App Store manager today faced tough questions from US District Judge Yvonne Gonzalez Rogers, who appeared critical of how the smartphone maker has handled compliance with her injunction over the company's anti-steering provisions.

During the first day of a multi-part evidentiary hearing in Oakland, California, Gonzalez Rogers pushed back against comments from Matthew Fischer, head of Apple's Worldwide App Store, about how the company has sought to maintain a "consistent user experience" for in-app purchases while adding new capabilities — as required by the court's order — for developers hoping to provide links to facilitate purchases outside Apple's payment system.

Following a three-week trial in 2021 over Epic Games' antitrust dispute with Apple, Gonzalez Rogers found that Apple violated California's Unfair Competition Law by preventing app developers from communicating about lower prices on other platforms (see here).

She issued an injunction, which was later upheld by the US Court of Appeals for the Ninth Circuit, requiring Apple to allow developers to include, in their apps and metadata buttons, external links or other calls to action that direct customers to purchasing methods outside of In-App Purchasing, or IAP.

Epic in March initiated the dispute about whether Apple is complying with that injunction, arguing that the smartphone maker has implemented a new scheme that "so pervasively taxes, regulates, restricts and burdens in-app links directing users to alternative purchasing mechanisms on a developer's website ('External Links' or 'Links') as to make them entirely useless."

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271182

In its effort to comply with the court's order, Apple on Jan. 16 — the same day the Supreme Court declined to review the Epic Games v Apple case — updated its App Store Review Guidelines to introduce "the StoreKit Purchase Link Entitlement (US)" (see here). Apple said this allows apps that offer in-app purchases on the iPhone or iPad operating systems the ability to include a link to the developer's website that informs users of other ways to purchase digital goods or services.

— Worldwide App Store leader takes the stand —

Fischer today testified that developers apply to be able to receive the link entitlement, defining "entitlement" as a right or privilege granted to developers to activate certain features or capabilities in their apps that would otherwise not be available.

Fischer also said that following the introduction of link entitlements, Apple wanted to maintain the same consistent user experience for purchasing digital goods and services with IAP since the company introduced the in-house payment system in 2009.

But Gonzalez Rogers pushed back against Fischer's assertion.

"That's not exactly true right?" she said. "Consistent…as long as there's increased friction so that" app users "don't actually want to move away from IAP."

Fischer replied that he disagreed.

But "plenty of alternatives" would have less friction, correct? Gonzalez Rogers asked.

"I think that's right," Fischer said.

One of the arguments that Epic made in its motion to enforce the injunction (see here) is that

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271183

Apple has designed external links to be "riddled with additional economic disincentives, technical requirements and user frictions" that negate "any incentives developers could have to use such Links."

Gonzalez Rogers asked about the rationale behind a certain design, stating that she saw "no other answer" for it "other than to stifle competition."

She also questioned Fischer about where in the injunction she said "you could create all sorts of requirements."

Several lines of questions from Epic attorney Lauren Moskowitz focused on these alleged restrictions and the warning that Apple provides to users when they are exiting the platform.

When a user begins to leave an app to go to an external website to make a purchase through a non-Apple source, they receive a message in a large pop up screen which states: "You're about to go to an external website. Apple is not responsible for the privacy or security of purchases made on the web."

Moskowitz asked Fischer if it was not his expectation that users would "fall out of this process" and decide to proceed with a transaction through IAP.

The Apple executive replied that it was possible — once users understood the risks they were taking on and the benefits they were losing by not using IAP - that "they may or may not move forward" with the external payment process.

— Satisfaction of developers? —

Fischer testified that as of last week, there have been 38 applications from developers to begin using link entitlements. No applications have been rejected, he said.

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271184

While Apple offers nearly two million apps on the App Store, the link entitlement program wouldn't apply to many of these, he said, specifying that link entitlements are only only for apps with in-app purchasing.

"What's the ballpark of the pool?" Gonzalez Rogers asked, referring to the number of apps that do offer IAP.

When Fischer was unable to provide the number, the judge ordered Apple to "get me that figure." She also requested a list of the 38 developers approved to use link entitlements

— End of the beginning —

The hearing will continue Friday with the testimony of Alex Roman, a vice president of finance at Apple.

Gonzalez Rogers originally scheduled the hearing to take place today, on Friday and on May 17. But at the end of today's proceedings, she indicated the hearing could go on longer. "Given what's at stake, I need to have a comprehensive record," she said.

The judge added that her schedule is "quite jam-packed this May."

###

CONFIDENTIAL

APL-EG_11099368
APL-EG_11271185