|  |  |
|---|---|
| **From:** | Megan Royer |
| **To:** | Marni Goldberg, Hannah Smith |
| **Cc:** | AppleAppsPR |
| **Subject:** | Apple-Epic Injunction Hearing Coverage Report 5.10.24 |
| **Received(Date):** | Sat, 11 May 2024 00:39:12 +0000 |
| **Attachment:** | image001.jpg |
| **Attachment:** | Apple-Epic Hearing 5.10.24.pages |
| **Date:** | Sat, 11 May 2024 00:39:12 +0000 |

There is very little coverage of Friday's proceedings in the anti-steering injunction hearing. As of 8:30pm ET on Friday, only Bloomberg runs a story, focusing on Alex Roman's testimony that no major app developers have signed up to use outside payment options because, Bloomberg writes, "the fees they pay would be at least as high as they were before." As with coverage of day one, the story highlights Judge Yvonne Gonzalez Rogers' sharp questions and the incredulity she has expressed at the approach to compliance.

**Gonzalez Rogers vexed**

The lack of developer interest in applying for the entitlement link, Bloomberg writes, "drew harsh criticism" from the judge, who told Roman, "It sounds to me as if the goal was to then maintain the business model and revenue you had in the past." Apple "has received just 38 applications for outside links out of an estimated 65,000 app developers that offer in-app purchases, company executives testified," notes Bloomberg, adding later that Roman said none of those 38 came from major developers.

Bloomberg says the 27% commission on payments made after a user follows an entitlement link, "when combined with payment processing fees … is even more than the 30% the App Store has taken for itself for years, the judge was told." Per testimony Friday, Tim Cook and other "top executives" approved the 27% figure, Bloomberg adds, again drawing a raised eyebrow from Gonzalez Rogers: "'You're telling me a thousand people were involved and not one of them said maybe we should consider the cost' to the developers? the judge said. 'Not a single person raised that issue of the thousand that were involved?'"

Bloomberg goes further, diverging from straight reportage to suggest that Rogers in her

U.S. District Court - NDCAL
**4:20-cv-05640-YGR-TSH**
*Epic Games, Inc. v Apple Inc.*
Ex. No. **CX-1507**
Date Entered _____
By_____

CONFIDENTIAL                                                              APL-EG_10977121

questioning "indicated that Apple hasn't convinced her it has done enough," and, later, that she "seemed to agree" with Epic's attorney that Apple failed to conduct analysis to support its assertion that App Store changes pursuant to the injunction could lower user costs. "'I'm looking for data and it sounds like you all made lots of decisions without data,' she said."

**Social commentary**

Social media coverage is also relatively muted, with a few antitrust commentators weighing in on X. FOSS Patents' Florian Mueller notes that Gonzalez Rogers and Epic attorneys "put a lot of pressure" on Roman, though Mueller said he's "not sure it's productive" given Apple will "have a strong basis for an appeal if the district court doubts that some purchases will be made outside the 7-day window." He notes the savings that consumers may see via a lower effective commission rate for third-party payments after accounting for belated transactions "would not be the same as if Apple did not impose any commission, but the court can't just tell Apple not to charge -- after its own ruling recognized Apple's right to charge."

The anonymous Substack author BalanceCrafting posted regular updates on the hearing on X, calling the hearing the "Epic v Apple sanctions roast." They note that Roman "had been reprimanded that he is under oath," and wondered whether he could "recover in the 2nd half." The account captures an exchange in which Roman said decisions were "discussed with the business team and the legal team," to which Gonzalez Rogers "snaps" that "I'll hear from them later. You tell me what you discussed with them."

Megan Gray of GrayMatters writes that the second day is "just as grueling (to Apple) as reported during first hearing." She says in another post on the same thread that "This should be mandatory listening for all government enforcers in BigTech cases/investigations. This is how you hold people to account, taking nothing for granted, scrutinize everything, being sceptical but respectful, giving no quarter." Still, Gray adds that "The Apple witness (Roman) isn't getting rattled at all, ditto the Apple lawyer. Color me impressed."

.

\*\*\*

Bloomberg - Apple Says No Major App Developers Accept New Outside Payments

\*\*\*

**Bloomberg - Apple Says No Major App Developers Accept New Outside Payments**

- Judge rips company for 'lots of decisions' made 'without data'

- iPhone maker says it provided antitrust remedy ordered in 2021

No major app developers have signed up to use outside payment options that Apple Inc. introduced earlier this year for its App Store because the fees they pay would be at least as high as they were before, according to testimony presented to a federal judge.

The apparent lack of interest in the changes Apple offered as a remedy for anti-competitive practices drew harsh criticism Friday from US District Judge Yvonne Gonzalez Rogers, who has been overseeing the technology giant's court fight with Fortnite maker Epic Games Inc. for almost four years.

"It sounds to me as if the goal was to then maintain the business model and revenue you had in the past," Rogers said to an Apple executive during a multi-day hearing to address Epic's complaint that the iPhone maker isn't abiding by the terms of a corrective order the judge issued in 2021.

Apple said in January that it would would let all third-party apps sold in the US include an outside link to a developer website to process payments for in-app purchases. Since then, Apple has received just 38 applications for outside links out of an estimated 65,000 app developers that offer in-app purchases, company executives testified.

The reason: Apple will charge a 27% fee to developers who want to use the link entitlement

program — and when combined with payment processing fees, the total is even more than the 30% the App Store has taken for itself for years, the judge was told at the hearing in Oakland, California.

Years of complaints from app developers and scrutiny from governments globally have already forced Apple to rewrite some of the rules protecting its dominance in the app distribution marketplace that generates revenue of more than $200 billion a year.

Epic has argued that Apple's January revisions to the App Store's rules don't amount to meaningful changes, while Apple contends it has delivered the remedy Rogers ordered three years ago following a trial between the two companies.

Rogers indicated that Apple hasn't convinced her it has done enough. Testimony revealed that the 27% fee was approved by a committee that included Chief Executive Officer Tim Cook and other top executives.

"You're telling me a thousand people were involved and not one of them said maybe we should consider the cost" to the developers? the judge said. "Not a single person raised that issue of the thousand that were involved?"

None of the 38 applications for the new outside payments program came from developers of major apps, said Apple's vice president of finance, Alex Roman.

At one point, an attorney for Epic, Yonatan Even, questioned Roman about whether there is evidence supporting Apple's claim that the changes it made to the App Store would lower prices for app users.

Even said in addition to Apple's fees, app developers face costs related to alternative payment solutions. But Apple did no analysis into the latter bucket of costs and still said that its App Store changes would translate to lower prices for users, the lawyer argued.

CONFIDENTIAL
APL-EG_10977124

The judge seemed to agree.

"I'm looking for data and it sounds like you all made lots of decisions without data," she said.

The hearing will continue next week.

The case is Epic Games Inc. v. Apple Inc., 20-cv-05640, US District Court, Northern District of California (Oakland).

\*\*\*

CONFIDENTIAL                                                                                                                          APL-EG_10977125