GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant*
*Epic Games, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br>　　　　Plaintiff, Counter-defendant, <br><br>　　v. <br><br>APPLE INC., <br><br>　　　　Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH <br><br>**PLAINTIFF EPIC GAMES, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE INJUNCTION** <br><br>Date: May 27, 2025 (noticed date) <br><br>Courtroom: 1, 4th Floor <br><br>Judge: Hon. Yvonne Gonzalez Rogers |

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 27, 2025, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, before the Honorable Yvonne Gonzalez Rogers, Plaintiff and Counter-Defendant Epic Games, Inc. will move this Court for an Order Granting Epic's Motion to Enforce Injunction.

This Motion is made on the grounds that Defendant and Counterclaimant Apple Inc. is in violation of this Court's Injunction permanently restraining and enjoining Apple from "prohibiting developers from . . . including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchasing", as well as this Court's subsequent order permanently restraining and enjoining it from "[p]rohibiting or limiting the use of buttons or other calls to action . . . for purchases outside an app" and "[i]nterfering with consumers' choice to proceed in or out of an app by using anything other than a neutral message apprising users that they are going to a third-party site". (Dkt. 813; Dkt. 1508 at 75.) This Motion is based upon the pleadings in this action, this Notice of Motion, the Memorandum of Points and Authorities filed herewith, and the Declaration of Gary A. Bornstein ("Bornstein Decl.") and accompanying exhibits, all matters with respect to which this Court may take judicial notice and such oral and documentary evidence as may be presented to the Court.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 3

ARGUMENT ............................................................................................................................... 8

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*ADT Security Servs., Inc. v. Security One Int'l, Inc.*,
  Case No. 11-cv-05149-YGR (N.D. Cal.), ECF No. 185 .......................................................... 11

*Advantacare Health Parts. v. Access IV*,
  2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ...................................................................... 12

*Buono v. Norton*,
  364 F. Supp. 2d 1175 (C.D. Cal. 2005) ................................................................................ 11

*Epic Games, Inc. v. Apple Inc.*,
  67 F.4th 946 (9th Cir. 2023) ............................................................................................ 4, 10

*HSBC Bank USA v. Dara Petroleum, Inc.*,
  2016 WL 2853584 (E.D. Cal. May 16, 2016) .................................................................. 8, 10

*In re Bennett*,
  298 F.3d 1059 (9th Cir. 2002) .............................................................................................. 11

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693, 695 (9th Cir. 1993) .......................................................................................... 11

*Melendres v. Maricopa Cnty.*,
  897 F.3d 1217 (9th Cir. 2018) .............................................................................................. 12

*Methven & Assocs. Pro. Corp. v. Kelley*,
  669 F. App'x 923 (9th Cir. 2016) ......................................................................................... 11

*Perez v. Fatima/Zahra, Inc.*,
  2014 WL 3866882 (N.D. Cal. Aug. 5, 2014) ........................................................................ 12

*Reno Air Racing Ass'n., Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) .............................................................................................. 11

*SEC v. Hickey*,
  322 F.3d 1123 (9th Cir. 2003) .............................................................................................. 13

*Sharp v. Weston*,
  233 F.3d 1166 (9th Cir. 2000) .............................................................................................. 12

*Shuffler v. Heritage Bank*,
  720 F.2d 1141 (9th Cir. 1983) ........................................................................................ 11, 12

*Taggart v. Lorenzen*,
  587 U.S. 554 (2019) .............................................................................................................. 11

*Whittaker Corp. v. Execuair Corp.*,
  953 F.2d 510 (9th Cir. 1992) ................................................................................................ 12

*Wolfard Glassblowing Co. v. Vanbragt*,
  118 F.3d 1320 (9th Cir. 1997) .............................................................................................. 12

**PRELIMINARY STATEMENT**

On April 30, 2025, this Court found Apple had "willful[ly] violat[ed]" the Court's September 10, 2021 Injunction (Dkt. 813, the "Injunction") and held Apple in civil contempt (Dkt. 1508 at 1, the "Contempt Order"). The Contempt Order identifies six "actions Apple took to violate" the Injunction and prohibits Apple from continuing to violate the Injunction in those ways. (*Id.* at 75-76.) Apple announced that it would comply with the Contempt Order[1] and revised its Guidelines to make clear that "entitlements are not required for developers to include buttons, external links, or other calls to action in their United States storefront apps".[2]

On May 1, 2025, Epic notified Apple of its intent to avail itself of the Injunction and the new Guidelines. Specifically, Epic notified Apple that Epic would use the same developer account that it uses to distribute the Epic Games Store and *Fortnite* in the European Union to submit *Fortnite* for App Review in the U.S. Epic invited Apple to provide it with further direction if Apple preferred that Epic submit *Fortnite* for review another way (*e.g.*, through a different developer account). On May 2, 2025, Apple—through its outside counsel—stated that if Epic wanted to submit using the process Epic had outlined, it should do so. (Bornstein Decl. ¶ 5.)

On May 9, 2025, Epic submitted for review a build of the *Fortnite* app that fully complies with all applicable App Review Guidelines, through a developer account in good standing. The May 9 build offered Apple's IAP as the exclusive mechanism for in-app purchases. The app also offered, alongside Apple's IAP, the option for users to leave the app and make purchases directly on Epic's website. In other words, the app included both IAP and the type of steering contemplated by the Injunction and Apple's revised Guidelines.

Apple did not act on Epic's submission for five full days, despite representations

---

[1] *See Apple Violated Injunction in Antitrust Case, Judge Finds*, CBS NEWS (Apr. 30, 2025, 7:36 PM PDT), https://www.cbsnews.com/news/apple-violated-injunction-antitrust-case-judge-finds/.

[2] *App Review Guidelines*, APPLE (Apr. 30, 2025), https://developer.apple.com/app-store/review/guidelines/.

that it generally reviews 90% of app submissions within 24 hours.³  Then on May 15, 2025, Apple informed Epic via a letter that it "has determined not to take action on the Fortnite app submission **until after the Ninth Circuit rules on [Apple's] pending request for a partial stay of the [Contempt Order]**".  (Bornstein Decl., Ex. D (emphasis added).)  In the letter, Apple did not suggest that any version of *Fortnite* submitted for review was in any way non-compliant with any of Apple's policies, rules or Guidelines.

Apple's decision to block *Fortnite* is a clear violation of the Injunction.  Apple pretends its denial is simply an exercise of its contractual right, recognized in this Court's post-trial Rule 52 Order and a stipulation between the parties "to terminate its DPLA with any or all of Epic Games' . . . entities . . . at any time and at Apple's sole discretion".  (Dkt. 812 at 179; Dkt. 474 ¶ 3.)  But the Rule 52 Order and stipulation did not put Epic in a lesser position as compared to other developers; they merely recognized Apple's contractual right under the DPLA, which applies to all developers.  Importantly, Apple's *contractual* right to refuse to carry *Fortnite* (or any app from any developer) is subject to the terms of the Court's Injunction and Contempt Order.  Although Apple's contracts may permit it to reject an app for lawful reasons, the Injunction provides that Apple may no longer reject an app—including *Fortnite*—because its developer chooses to include an external purchase link.  Likewise, if the Injunction is to have any teeth, Apple cannot reject an app on the ground that its developer has sought to enforce the Injunction's prohibitions.

Here, that is exactly what Apple is choosing to do; its denial is blatant retaliation against Epic for challenging Apple's anticompetitive behavior and exposing its lies to the Court, culminating in the Injunction and the Contempt Order.  That is clear because although Apple terminated one Epic developer account back in 2020, Apple did *not* terminate other accounts or

---

³ *App Review*, APPLE, https://developer.apple.com/distribute/app-review/. Notably, several other apps were approved promptly following the Contempt Order including, for example, Spotify and Kindle. *See Following Landmark Court Ruling, Spotify Submits New App Update to Apple to Benefit U.S. Consumers*, SPOTIFY (May 2, 2025), https://newsroom.spotify.com/2025-05-01/following-landmark-court-ruling-spotify-submits-new-app-update-to-apple-to-benefit-u-s-consumers/; *see also App Store Rule Change Takes the Headache Out of Buying Books on iOS Kindle App*, YAHOO!TECH (May 6, 2025), https://tech.yahoo.com/apps/articles/app-store-rule-change-takes-183000204.html.

remove other Epic apps from the App Store. It is also indisputable that the account Epic used to submit *Fortnite* for review this month is a valid developer account in good standing. Apple also expressly and repeatedly told both this Court and Epic that it would welcome *Fortnite* back to the App Store *if Epic complied with all of Apple's Guidelines*. (*See, e.g.*, Tr. 3918:4-3919:6, 3919:15-19.) That is exactly what Epic did. The only thing that has changed since Apple made those representations is that Apple has been required to change the Guidelines. Epic is now seeking to avail itself of the changes to Apple's Guidelines that the Injunction and Contempt Order brought about—*i.e.*, distribute on iOS a version of *Fortnite* that includes steering language and links that Apple objects to but was ordered to permit. To allow Apple to reject Epic's app because Epic availed itself of this Court's Injunction or initiated proceedings to enforce it would completely negate the Injunction. Indeed, a prohibition on steering at the threat of exclusion from the App Store was the very policy this Court held to be an anticompetitive violation of the UCL.

Apple's refusal to consider Epic's *Fortnite* submission is Apple's latest attempt to circumvent this Court's Injunction and this Court's authority. Epic therefore seeks an order enforcing the Injunction, finding Apple in civil contempt yet again, and requiring Apple to promptly accept any compliant Epic app, including *Fortnite*, for distribution on the U.S. storefront of the App Store.

## FACTUAL BACKGROUND

### I.     Procedural History

On August 13, 2020, Epic filed suit against Apple under both federal and state competition statutes. (Dkt. 1.) Epic alleged violations of Sections 1 and 2 of the Sherman Act, of the California Cartwright Act and of California's Unfair Competition Law ("UCL"). In relevant part, Epic challenged Apple's anti-steering provisions, which prohibited developers from including in their apps any links, buttons or other calls to action informing users of the possibility to make purchases of digital goods on the developer's website, rather than in the app using Apple's IAP (and subject to Apple's 30% fee). (*See* Dkt. 1 ¶¶ 130, 131.)

Epic's lawsuit was filed hours after Epic made available in *Fortnite* an alternative payment mechanism in violation of Apple's then-existing Guidelines, leading Apple to remove

1  *Fortnite* from the App Store and terminate the Epic Developer Program License Agreement
2  ("DPLA") with Apple then associated with that app.  After Apple counter-sued for breach of the
3  DPLA, the Parties stipulated that, should the Court find Epic to be liable for breach of contract,
4  Apple would be entitled to a declaration providing, in relevant part, that "Apple has the
5  contractual right to terminate its DPLA with any or all of Epic's wholly owned subsidiaries,
6  affiliates, and/or other entities under Epic's control at any time and at Apple's sole discretion".
7  (Dkt. 474 ¶ 3.)
8  　　　　　On September 10, 2021, following trial, this Court found that Epic failed to prove
9  Apple violated the Sherman Antitrust Act or Cartwright Act.  However, it found that "Apple's
10 anti-steering provisions hide critical information from consumers and illegally stifle consumer
11 choice" because such provisions "enforced silence to control information and actively impede
12 users from obtaining the knowledge to obtain digital goods on other platforms" in violation of the
13 UCL.  (Dkt. 812 at 2, 165.)  As a result, this Court issued an Injunction enjoining Apple, in
14 relevant part, from "prohibiting developers from . . . including in their apps and their metadata
15 buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in
16 addition to In-App Purchasing".  (Dkt. 813 ¶ 1.)  As for Apple's counterclaims, the Court found
17 that Epic had breached the DPLA and that Apple was entitled to the stipulated relief, including
18 Apple's contractual right to terminate its DPLA with any or all Epic entities.  (Dkt. 812
19 at 178-79.)
20 　　　　　Apple appealed and sought a stay of the Injunction, which the Ninth Circuit
21 granted.  (C.A.9. No. 21-16695, App. Dkt. 14 at 2.)  On April 24, 2023, the Ninth Circuit affirmed
22 the Injunction in full.  *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1002-03 (9th Cir. 2023).  On
23 January 16, 2024, the Supreme Court denied Apple's petition for writ of certiorari.  (Dkt. 871-4,
24 Ex. 20.)  That same day, Apple filed a purported "Notice of Compliance" setting forth Apple's
25 updated policies regarding external purchase links and its link entitlement program.  (Dkt. 871.)
26 Specifically, Apple had removed the unlawful anti-steering language from its Guidelines but
27 replaced it with a new set of fees and design-related obstacles that made the adoption of external
28 purchase links entirely untenable for developers.  The Court later found this change to the

Guidelines to be in "willful violation" of the Injunction. (Dkt. 1508 at 1.) Accordingly, on April 30, 2025, this Court held Apple in civil contempt, and, effective immediately, permanently enjoined Apple from engaging in six "specific actions Apple took to violate" the Injunction, including imposing any commission or fee on external purchases, restricting or conditioning certain features of external purchase links and limiting the use of buttons or other calls to action. (*Id.* at 75-76.) The Court also noted that, although Epic "[did] not, at this juncture, seek sanctions", "a more significant response may be warranted" and that "[s]hould Apple again attempt to interfere with competition and violate the Court's injunctive relief, civil monetary sanctions to compel compliance may be appropriate". (*Id.* at 76-77.)

## II.  History of *Fortnite* on the App Store

In 2018, Epic released its flagship app, *Fortnite*, on the iOS platform. The iOS version of *Fortnite* garnered more than 115 million registered players. (Dkt. 812 at 14.) On August 13, 2020, as detailed above, Apple removed *Fortnite* from the App Store for violating the DPLA and, the next day, threatened to revoke all of Epic's developer tools if Epic's DPLA breach was not cured within two weeks. (*Id.* at 25-26.) Epic declined, and Apple terminated the Epic developer program account that had submitted *Fortnite* to the App Store. To this day, *Fortnite* is not available on the App Store in the U.S.

Apple repeatedly stated that it would "gladly welcome *Fortnite* back onto iOS" if Epic complied with Apple's Guidelines.[4] During trial, Apple represented the same to the Court in its opening statement—that "even though Epic had breached . . . *Fortnite* was welcome back into the App Store, as long as Epic would comply with [Apple's] guidelines". (Trial Tr. 58:6-8.) Apple's CEO Tim Cook reiterated this representation when he testified that "Apple offered Epic the ability to come back to the App Store with *Fortnite*" should Epic cure its breach and that this had been his, and Apple's, position "the whole time". (Trial Tr. 3918:18-3919:6 (T. Cook).)

Despite these offers, Apple has previously used *Fortnite*'s absence from the App

---

[4] Todd Haselton, *Judge Says Apple Can Block Fortnite But Not Epic's Unreal Engine or Developer Tools*, CNBC (Aug. 25, 2020, 9:48 AM PDT), https://www.cnbc.com/2020/08/25/apple-can-block-fortnite-but-not-epics-unreal-engine-judge-says.html.

Store for tactical litigation purposes. In its appeal to the Ninth Circuit, Apple argued that Epic lacked standing to bring its claims because *Fortnite* was not on the App Store and Apple had terminated Epic's developer program account. (*See* C.A.9. No. 21-16695, App. Dkt. 80 at 102-04, App. Dkt. 168 at 27.) On March 21, 2022, while the appeal was pending, Epic CEO Tim Sweeney asked Apple to reinstate Epic's account in the U.S. Two days later, in an evident effort to preserve its lack-of-standing argument (which the Ninth Circuit ultimately rejected), Apple notified Epic that it would not consider any requests for reinstatement during the pendency of the litigation and "until the district court's judgment becomes final and nonappealable". (Bornstein Decl. Ex. F.) That date arrived on January 16, 2024—when Apple submitted its Notice of Compliance, making clear that it intended to foil any attempt by developers to enjoy the opportunities created by the Injunction. Rather than revisit reinstatement of its account at that time, Epic moved to enforce the Injunction.

In Europe, meanwhile, *Fortnite*'s fate was different. Nearly concurrently with its Notice of Compliance in the U.S., Apple announced how it planned to comply with the European Digital Markets Act ("DMA"). Under that plan, Apple allowed developers to steer to web purchases, adopt alternative in-app payment mechanisms and allow third-party stores on iOS that compete directly with the App Store (subject to fees that the European Commission ("EC") has since found violative). Accordingly, in early 2024, Epic applied for a developer program account through a European-domiciled subsidiary, Epic Games Sweden AB. Apple approved that account but then revoked it within days, citing in part Mr. Sweeney's public criticism of Apple's response to the DMA. After the EC opened an inquiry into the matter, Apple reversed course and reinstated the Epic Games Sweden AB developer account. *UPDATE: Apple Reinstates Epic Developer Account After Public Backlash for Retaliation*, EPIC GAMES (Mar. 6, 2024), https://www.epicgames.com/site/en-US/news/apple-terminated-epic-s-developer-account. Epic launched *Fortnite* on iOS in the European Union on August 16, 2024, and the app has been available—and fully compliant—on that platform, through Epic's own iOS app store, for the past nine months.

Hours after the Court's Contempt Order was issued, Epic publicly announced that

it would be submitting a version of *Fortnite* to Apple for distribution in the United States.[5]  The next day, on May 1, 2025, Epic privately notified Apple that it intended to use the Epic Games Sweden AB developer account to submit a compliant *Fortnite* build that would be distributed also on the U.S. App Store, subject to any guidance from Apple on an alternate submission method. (*See* Bornstein Decl. Ex. A.)  On May 2, 2025, Apple notified Epic, through counsel, that if Epic wanted to submit a build of *Fortnite* for the U.S. App Store through the Swedish account, Epic should do so.  (Bornstein Decl. ¶¶ 4, 5.)  On May 9, 2025, Epic submitted a compliant version of *Fortnite* to App Review, for distribution on the U.S. App Store.  The submitted version included, side-by-side, Apple's IAP and a link to the Epic Games Store, where Epic offered 20% back on all purchases.[6]

        Although Apple claims that it reviews 90% of submissions within 24 hours, the May 9 *Fortnite* submission sat in limbo for five days.[7]  (Bornstein Decl. Ex. B.)  Because Epic intended to launch on May 16 an updated version of Fortnite across all platforms, with significant new content developed jointly with a third party, the version of *Fortnite* that Epic submitted on May 9 became stale.  (Bornstein Decl. Ex. C.)  Thus, on May 14, 2025, Epic withdrew its submission and resubmitted an updated version.  *Id.*  The May 14 submission again included, side-by-side, Apple's IAP and a link to cheaper purchases on the Epic Games Store.  *Id.*  Epic also notified Apple that the May 14 version needed to be approved by May 16 to meet the global launch timeline for the new version.  *Id.*

        On May 15, 2025, Apple sent a letter to Epic stating that Apple would not make any determination on Epic's *Fortnite* submission "until after the Ninth Circuit rules on [Apple's] pending request for a partial stay of the" Contempt Order.  (Bornstein Decl. Ex. D.)  Apple did not find *Fortnite* to be non-compliant with any Apple rule or Guideline.  *Id.*

---

[5] Jay Peters, *Epic Says Fortnite is Coming Back to iOS in the US*, THE VERGE (Apr. 30, 2025), https://www.theverge.com/news/659271/fortnite-ios-apple-app-store-us-return.

[6] Epic Games, *Better Deals in Fortnite and More: Players Get 20% Back in Epic Rewards Starting Today* (May 9, 2025), https://store.epicgames.com/en-US/news/better-deals-in-fortnite-and-more-players-get-20-back-in-epic-rewards-starting-today.

[7] *App Review*, APPLE, https://developer.apple.com/distribute/app-review/.

# ARGUMENT

Apple's refusal to consider Epic's submission of *Fortnite* to the App Store is a direct violation of this Court's Injunction. For the Injunction to have teeth, Apple cannot refuse to review an app because the app avails itself of the benefits of the Injunction or because to do so, its developer sought to enforce the Injunction. Epic is not differently situated from other developers in this regard. Apple may reject any app for lawful reasons, but Apple may not reject any app (including *Fortnite*) because it includes steering expressly permitted by the Injunction. Apple likewise cannot reject any developer (including Epic) because they went to court to enforce the Injunction. The Court should again issue an order enforcing its Injunction and order Apple to review the *Fortnite* submission and, as long as *Fortnite* is fully compliant with all Apple Guidelines (which it has been in the EU for months, and to Epic's knowledge is the case with Epic's May 14 submission as well), to accept the *Fortnite* submission for the U.S. App Store.

## I. Apple Violated the Injunction by Refusing to Consider Epic's *Fortnite* Submission.

The only explanation for Apple's decision to refuse to review Epic's *Fortnite* submission is that Apple does not want Epic to take advantage of the rights it worked so hard to obtain and instead wishes to retaliate for these efforts. Apple conceded as much in its May 15 Letter to Epic. Apple expressly tied its refusal to approve *Fortnite* with this litigation, stating that "Apple has determined not to take action on the Fortnite app submission until after the Ninth Circuit rules on [its] pending request for a partial stay of the" Contempt Order. (Bornstein Decl. Ex. D at 2.) But this "wait and see" approach is in direct violation of the Injunction and this Court's Order that Apple comply with the Injunction "immediately". (Dkt. 813; Dkt. 1508 at 3.) This violation constitutes contempt. *HSBC Bank USA v. Dara Petroleum, Inc.*, 2016 WL 2853584, at *3 (E.D. Cal. May 16, 2016) (stating that "actions that were deliberately calculated to impede" a court's order are not only "gamesmanship" and in "bad faith" but are "clear and convincing evidence that [a party] is in contempt of" that order).

Apple's current position is a stark departure from the positions Apple took prior to the issuance of this Court's Contempt Order. Then, Apple repeatedly represented that it *would* allow Epic back onto the App Store if Epic agreed to abide by Apple's Guidelines. For example,

Apple CEO Tim Cook testified at trial that Apple repeatedly offered Epic the option to return to the App Store with a compliant version of *Fortnite*. (Tr. 3918:18-3919:6.) Mr. Cook recognized that "it would be to the benefit of the users to have [*Fortnite*] back on the [App S]tore". (*Id.* at 3919:15–19.) Apple has changed its position because the Guidelines are no longer to Apple's liking. In short, Apple wanted *Fortnite* back on the App Store if it complied with the illegal, pre-Injunction Guidelines. And Apple is now keeping *Fortnite* out due to Epic's efforts to change Apple's illegal Guidelines, bring competition to the App Store and avail itself of that competition. Any other justification for keeping *Fortnite* off the App Store is pretextual.

Specifically, Apple does not claim that Epic's recent submission is not compliant with any of the current Guidelines. (*See* Bornstein Decl. Ex. D.) Apple also cannot credibly argue it is concerned that Epic will not comply with the Guidelines going forward. Several Epic apps have been available on the App Store since 2020, and *Fortnite* specifically has been available on Epic's iOS storefront in Europe since August 16, 2024; all have invariably and consistently complied with Apple's Guidelines.

Apple suggests in its May 15 Letter that Epic's stipulation with Apple—that "Apple has the contractual right to terminate its DPLA . . . at any time and at Apple's sole discretion" (Bornstein Decl. Ex. D at 2 (citing Dkt. 474 at 2))—provides Apple with *carte blanche* to reject Epic's *Fortnite* submission, for whatever reason or no reason at all. Not so. The stipulation between Epic and Apple merely affirms that Epic is subject to the same contractual terms as all other developers; indeed, the DPLA specifically provides that Apple may terminate *any* developer at any time and for any reason (or no reason). (*See* Bornstein Decl. Ex. E § 11.2 ("Either party may terminate this Agreement for its convenience, for any reason or no reason.").) Nothing about Epic's stipulation with Apple provides Apple with any greater discretion to reject a submission from Epic or to treat Epic's submissions any differently than Apple may treat submissions from any other developer. And importantly, Apple's *contractual* rights under the DPLA do not trump the Injunction; to the contrary, the whole point of the Injunction is to curb those rights. Thus, notwithstanding its broad contractual rights, Apple is not entitled to terminate or reject an app from *any* developer, *including Epic*, *because* the developer intends to include in

its apps links, buttons or other calls to action or, by extension, because in order to do so, the developer was forced to move the Court to *enforce* its rights under the Injunction.[8]

In sum, nothing about the 2021 stipulation provides Apple with the ability to exercise its discretion in a way that undermines or circumvents this Court's Injunction.[9] If Apple can refuse to consider apps on the ground that their developers had attempted to avail themselves of their rights under the Injunction, it would render the Injunction toothless, as Apple could effectively prevent steering by simply rejecting any apps that do the very thing the Injunction is intended to allow. *See HSBC Bank USA*, 2016 WL 2853584, at *3.

This Court's Injunction and Contempt Order are clear. Apple may not reject apps because their developers wish to steer consumers to alternative payment options through links, buttons and other calls to action. Nor can Apple reject apps because their developers have attempted to enforce that right. In its Contempt Order, this Court emphasized that the purpose of the Injunction is to "terminate" Apple's attempts to "interfere with competition and maintain an anticompetitive revenue stream". (Dkt. 1508 at 76.) Apple's functional rejection of *Fortnite*—which has a purchase link side by side with IAP, consistent with the current Guidelines—is simply more interference with competition.

---

[8] The following analogy is imperfect but analytically illustrative. Many employees are terminable at will, but there are still important protected bases on which even at-will employees may not be terminated, which include protections against retaliation for the exercise of such rights.

[9] Apple argued previously that the Injunction should be narrowed to apply *only* to Epic and its affiliates. (*See* Dkt. 1018 (Apple's Rule 60(b) Motion for Relief from Judgment) at 18.) This Court rejected that argument, stating that the Injunction prohibits "Apple's [anti-]steering provision as to all iOS developers because doing so was necessary to fully remedy the harm *that Epic suffers* in its role as a competing games distributor." (Dkt. 1508 at 53-54 (emphasis in original) (quoting *Epic Games, Inc.*, 73 F.4th at 787 (Smith, J., concurring)).) Now, Apple seems to have completely reversed course, and is arguing the Injunction applies to all developers *except* Epic—a position that is inconsistent with its prior arguments and defies common sense.

## II. The Court Should Order Apple to Timely Review and (if Compliant) Approve the *Fortnite* Submission.

Apple's willful decision not to review Epic's *Fortnite* submission (or to delay it) violates this Court's Injunction; Apple cannot refuse to deal with a developer because it avails itself of the benefits of the Injunction, or punish developers for seeking to enforce the Injunction. Epic therefore seeks a second Order enforcing the Injunction and ending Apple's non-compliance.

"[C]ourts have wide latitude to find individuals in contempt for violation of court orders." *Methven & Assocs. Pro. Corp. v. Kelley*, 669 F. App'x 923, 925 (9th Cir. 2016). A party is in civil contempt if it "disobe[ys] a specific and definite court order by failure to take all reasonable steps within the party's power to comply". *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006); *see also Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983) ("A court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act."). Contempt is an objective standard. *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). It is met when the court determines "(1) that [a party has] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence". *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). When there is clear and convincing evidence of a violation, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply". *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (internal quotation omitted). In addition, a court may find that a defendant is in violation of an injunction—without a finding of civil contempt—when the plaintiff brings the defendant's conduct to the court's attention through a motion to enforce, and the court may then enter appropriate relief. *See ADT Security Servs., Inc. v. Security One Int'l, Inc.*, Case No. 11-cv-05149-YGR (N.D. Cal.), ECF No. 185 (order denying motion for civil contempt but modifying preliminary injunction); *Buono v. Norton*, 364 F. Supp. 2d 1175 (C.D. Cal. 2005) (granting "motion to enforce" after finding defendant's conduct violated injunction, without finding defendant in civil contempt).

Here, Apple had a clear path to comply with the Injunction. It chose not to. Apple's refusal to consider Epic's new *Fortnite* submission is "willful[] disobe[dience]" of the

Court's order. *Shuffler*, 720 F.2d at 1146. Apple does not, and cannot, provide any legitimate reason for its refusal even to consider a vastly popular, fully compliant app that Apple's own CEO recognized ought to be reinstated "for the benefit of the users". (Trial Tr. 3919:12-19 (Cook).)

A Court faced with a violation of injunctive relief "has broad discretion to fashion injunctive relief" to ameliorate non-compliance. *Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018). That discretion includes the authority to specify the conduct that violated the Injunction and to restrain the non-compliant party from continuing to engage in that conduct. *See Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320 (9th Cir. 1997). It also includes the power to fashion additional injunctions as sanctions for contempt. *Perez v. Fatima/Zahra, Inc.*, 2014 WL 3866882, at *4 (N.D. Cal. Aug. 5, 2014). The Court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired". *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (quotations omitted). A court can demand performance of specific acts in compliance with an order as an equitable sanction for a violation of that order. *See Advantacare Health Parts. v. Access IV*, 2004 WL 1837997, at *9 (N.D. Cal. Aug. 17, 2004) (ordering the defendants to turn over hard drives to demonstrate that they had deleted plaintiffs' data in compliance with court order). Here, where Apple has specifically and repeatedly violated this Court's orders, "the [C]ourt has discretion to fashion additional injunctive relief as a sanction". *Perez*, 2014 WL 3866882, at *4; *see also Sharp v. Weston*, 233 F.3d 1166, 1173 (9th Cir. 2000) ("A history of noncompliance with prior orders can justify greater court involvement than is ordinarily permitted.").

Ordering the review and acceptance of a compliant version of *Fortnite* is appropriate to enforce the Injunction. Such an Order would not unduly impinge on Apple's contractual rights or on its right to deal or not deal with whomever it sees fit. Rather, it would simply recognize the fact that Apple cannot refuse to deal with Epic as retaliation for Epic's decision to avail itself of this Court's Injunction, including through a multi-month legal proceeding exposing Apple's contempt and lies. An order requiring Apple to distribute any compliant version of *Fortnite* also would be appropriate as a sanction for Apple's violation,

consistent with the Court's prior finding that "civil contempt sanctions" may be necessary should Apple continue its pattern of non-compliance. (Dkt. 1508 at 76-77.)

Epic has now invested nearly five years in combating Apple's unlawful anticompetitive conduct and its defiance of this Court's Injunction. By denying Epic the ability to take advantage of the pro-competitive rules it helped usher in, Apple is punishing Epic by shutting it out of the very market it has fought so hard to open—while sending a clear message to other developers not to challenge Apple's practices. Ordering Apple to permit a compliant version of *Fortnite* to return to an App Store that is now more competitive *because of* Epic's hard-fought victories is an appropriate use of this Court's "broad equitable powers". *S.E.C. v. Hinckey*, 322 F.3d 1123, 1128 (9th Cir. 2003).

### **CONCLUSION**

For the foregoing reasons, Epic requests that the Court enter an Order (1) finding that Apple violated the Injunction by refusing to consider Epic's *Fortnite* submission; and (2) requiring Apple to accept any compliant version of *Fortnite* onto the U.S. storefront of the App Store.

| | |
|---|---|
| Dated: May 16, 2025 | Respectfully submitted, |
| | By:  /s/ Gary A. Bornstein |

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*