# EXHIBIT D

Subject: Re: Epic injunction (Project Wisconsin) -- rules for entitlement agreement
From: "Ling Lew"
Received(Date): Mon, 29 May 2023 19:13:38 +0000
To: "Trystan Kosmynka" ,"Sean Cameron"
Cc: "Jen Brown" , "Ann Thai" ,"Carson Oliver"
Date: Mon, 29 May 2023 19:13:38 +0000

Privileged and Confidential

Attorney Client Privilege

CONFIDENTIAL

PRIV-APL-EG_00228889
PRIV-APL-EG_00228889

Attorney Client Privilege

CONFIDENTIAL
PRIV-APL-EG_00228889
PRIV-APL-EG_00228890



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On May 29, 2023, at 11:13 AM, Trystan Kosmynka ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

Privileged and Confidential

We can verify the link provided is the link that opens. What occurs on that link out destination cannot be verified. Nor can we verify that the promises made in app about the link (discounts, prices, etc) accurately represent anything offered at the link out destination. This is why we have the interstitial to inform the user prior to the link opening.

Limitless text before the interstitial will make the interstitial largely useless at protecting customers. It will also erode the effectiveness of our rules and enforcement around IAP/ARS today. We've spent years battling ARS dark patterns, the escape hatch for the bad actor will simply be to degrade their IAP experience combined with ludicrous offers with the end goal of of duping the user "Don't want to pay, no problem, click here get 1 year free and save 70% thereafter".

Anything short of prescribed style, placement, and language is going to yield terrible outcomes.

> On May 29, 2023, at 10:30 AM, Sean Cameron ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:
>
> Privileged and Confidential
>
> Thanks Jen, we crossed emails, but you saw where I was going.
>
> Here's my take on next steps:
>
> 1. I think we are removing the section on what developers can say based on this email.
>
> 2. He makes two new suggestions. The first is that we should "focus our efforts on how the information must be provided by developers so that Apple can verify and test the information in order to protect users from scams and security and privacy violations (and even that is likely to be challenged)."
>
> **Ann and Trystan**, I think this is in your respective courts. I don't know how link out offers can

be verified and tested, we've said for nearly two years that this cannot be done. Does he mean "how the information must be provided by developers" to App Review? Or does he mean an in-app template that is uniform across developers? Maybe both? Perhaps we just need to cut to the chase and ask him these questions.

> Attorney Client Privilege

Thanks — Sean

On May 29, 2023, at 10:19 AM, Jennifer Brown ███████ wrote:

Privileged & Confidential

- Phil

> Attorney Client Privilege

**Jennifer Brown**

Director, Commercial Litigation

Apple Inc.

One Apple Park Way,

MS 60-1NYJ, Cupertino, CA 95014

███████

This email message is for the sole use of the intended recipient(s) and may contain confidential

CONFIDENTIAL
PRIV-APL-EG_00228889
PRIV-APL-EG_00228892

> information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
>
> On May 29, 2023, at 9:43 AM, Phil Schiller ▮▮▮▮▮▮▮▮▮▮ wrote:
>
> Privileged and Confidential
> Attorney Work Product
>
> As follow up to my previous email this morning, I would like to suggest that the more interesting and helpful areas for us to spend time considering, rather than price communication, are 1) our basis for restricting communications and links for external purchase options from interfering with and discouraging the use of IAP and 2) the debate whether we can charge a commission on purchases made with external purchasing options.
>
> To the later, the below section of the order would be extremely supportive of Apple charging a commission on purchases not made with IAP, if it were not written in a section specifically about "The iOS In-App Payment Solutions Market Analysis."  I do to see any reference to whether this thinking could be applied to purchases outside of an app.
>
> **Epic Order, Page 150**
>
> ...
>
> *First, and most significant, as discussed in the findings of facts, IAP is the method by which Apple collects its licensing fee from developers for the use of Apple's intellectual property. Even in the absence of IAP, Apple could still charge a commission on developers. It would simply be more difficult for Apple to collect that commission.617*
>
> *Indeed, while the Court finds no basis for the specific rate chosen by Apple (i.e., the 30% rate) based on the record, the Court still concludes that Apple is entitled to some compensation for use of its intellectual property. As established in the prior sections, see supra Facts §§ II.C., V.A.2.b., V.B.2.c., Apple is entitled to license its intellectual property for a fee, and to further guard against the uncompensated use of its intellectual property. The requirement of usage of IAP accomplishes this goal in the easiest and most direct manner, whereas Epic Games' only proposed alternative would severely undermine it. Indeed, to the extent Epic Games suggests that Apple receive nothing from in-app purchases made on its platform,618 such a remedy is inconsistent with prevailing intellectual property law.*
>
> *Second, if Apple could no longer require developers to use IAP for digital transactions, Apple's competitive advantage on security issues, in the broad sense, see supra Facts § V.B.2.a., would be undermined and ultimately could decrease consumer choice in terms of smartphone devices and hardware.*
>
> *Third, but to a lesser extent, the use of different payment solutions for each app may reduce the quality of the experience for some consumers by denying users the centralized option of managing a single account through IAP. This would harm both consumers and developers by*

*weakening the quality of the App Store to those that value this centralized system.*

*Thus, the Court concludes that Apple's restrictions as to its IAP and separate payment processors do not violate Section 1 of the Sherman Act.*

*617 In such a hypothetical world, developers could potentially avoid the commission while benefitting from Apple's innovation and intellectual property free of charge. The Court presumes that in such circumstances that Apple may rely on imposing and utilizing a contractual right to audit developers annual accounting to ensure compliance with its commissions, among other methods. Of course, any alternatives to IAP (including the foregoing) would seemingly impose both increased monetary and time costs to both Apple and the developers.*

Also on the footnote on page 155 again would have been very helpful except that it written specifically about in-app payments:

*621 The Court also notes that in the but-for world where developers could use an alternative processor, Apple would still be contractually entitled to its commission on any purchase made within apps distributed on the App Store. Thus, so long as the alternative processor charged a non-zero commission or fee for its services, no economically rational developer would choose to use the alternative processor, because on each transaction, they would still have to pay Apple its commission, and they would have to pay the alternative processor a commission for its services. For the same reason, the fact that some developers like Facebook and Spotify have tried to avoid Apple's commission by bypassing IAP is not evidence that there is separate demand for IAP, only that developers would prefer not to pay Apple a commission. Epic Games' reliance on this evidence thus "conflates competition on the merits with Epic Games' goal of avoiding Apple's 30%." Epic Games, Inc., 493 F. Supp. 3d at 843.*

On May 29, 2023, at 8:40 AM, Phil Schiller <​> wrote:

Privileged and Confidential
I did not say this issue is not important to the business, it is clearly extremely important and will have a very large business impact to Apple, as we have shared on our calls.

Attorney Client Privilege



Attorney Client Privilege

On May 28, 2023, at 6:40 PM, Jennifer Brown <​███████████​> wrote:

Privileged & Confidential

Attorney Client Privilege

**Jennifer Brown**

CONFIDENTIAL

PRIV-APL-EG_00228889
PRIV-APL-EG_00228895

Director, Commercial Litigation

Apple Inc.

One Apple Park Way,

MS 60-1NYJ, Cupertino, CA 95014

This email message is for the sole use of the intended recipient(s) and may contain confidential information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

On May 28, 2023, at 5:37 PM, Phil Schiller ▬ wrote:

Privileged and Confidential
Attorney Work Product

> Attorney Client Privilege

If something costs $4.99 in the app and is $4.49 on a website, I think we have been directed to no longer prohibit the developer from sharing that information with users in their apps.

Sent from my iPhone
> On May 28, 2023, at 4:10 PM, Sean Cameron <▬ wrote:
>
>
> Privileged and Confidential
>
> > Attorney Client Privilege
>
> OK to proceed on this basis? Or should we set up time to discuss?
>
> On May 27, 2023, at 2:23 PM, Phil Schiller ▬ wrote:

CONFIDENTIAL

PRIV-APL-EG_00228889
PRIV-APL-EG_00228896

Privileged and Confidential
Attorney Work Product

> Attorney Client Privilege

On May 27, 2023, at 2:01 PM, Sean Cameron ███████ wrote:

Privileged and Confidential

> Attorney Client Privilege

CONFIDENTIAL

PRIV-APL-EG_00228889
PRIV-APL-EG_00228897

Attorney Client Privilege

CONFIDENTIAL

PRIV-APL-EG_00228889
PRIV-APL-EG_00228898