PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

EPIC GAMES, INC.,

Plaintiff, Counter-defendant,

v.

APPLE INC.,

Defendant, Counterclaimant.

Case No. 4:20-CV-05640-YGR-TSH

**EPIC GAMES, INC.'S MOTION FOR RELIEF FROM A NON-DISPOSITIVE ORDER OF A MAGISTRATE JUDGE**

Courtroom: 1, 4th Floor

Judge: Hon. Yvonne Gonzalez Rogers

Pursuant to Federal Rule 72(a), Local Rule 72-2 and the Parties' Privilege Re-Review Protocol (Dkt. 1092), Epic Games, Inc. ("Epic") respectfully requests this Court to review the below documents *in camera* and reverse Magistrate Judge Hixson's Discovery Orders of May 15, 2025 (Dkt. 1562) and May 16, 2025 (Dkt. 1567) to the extent they overruled certain of Epic's Objections to privilege assertions made by Defendant Apple Inc. ("Apple").

**BACKGROUND**

On September 10, 2021, the Court determined that Apple's anti-steering rules violated California's Unfair Competition Law (UCL). The Court issued an Injunction enjoining Apple from prohibiting developers from including in their Apps "buttons, external links and other calls to action that direct customers to purchasing mechanisms" other than Apple's own IAP. (Dkt. 1508 ("Contempt Order") at 7; Dkt. 812 (Rule 52 Order) at 159-165; Dkt. 813 ¶ 1 (Injunction).)

Apple promptly began internal deliberations over how to respond to the Court's Injunction, first under a project titled "Michigan" and subsequently under a project titled "Wisconsin". (Contempt Order at 15.) In both, Apple's deliberations were driven primarily by business, not legal, considerations. Specifically, "at every turn [Apple] chose the most *anti*competitive option", which Apple did "solely to maintain its revenue stream". (Contempt Order at 2.) Accordingly, meeting notes and presentation decks reflecting Apple's decision-making process disclose primarily contemplation of the *business* effects of proposed responses. For example, a May 18, 2023, slide deck titled "Wisconsin Business Update" contains Injunction-response proposals (*e.g.*, the imposition of a commission or various frictions) and modeling of how each proposal might affect Apple's bottom line. (CX-0272; Contempt Order at 15-17.) Similar modeling was performed regularly and presented for feedback to Apple's most senior executives. (*See, e.g.*, CX-0223, CX-0224, CX-0272, CX-0399, CX-0505, CX-0859).

Several Apple in-house lawyers were integrated into Projects Michigan and Wisconsin. They attended Injunction-response meetings. (CX-0488.) They sent and were copied on Injunction-response correspondence. (*See, e.g.*, CX-0223, CX-0224.) And when this Court

ultimately ordered Apple to produce "all" of the documents related to its response to the Court's Injunction (Dkt. 974; Contempt Order at 12), Apple relied on these lawyers' involvement to claim privilege over one-third of responsive documents. (Dkt. 1095 at 1, 2.) Apple argued that: (1) its Injunction-response efforts were inherently legal because they concerned a response to a court order; and (2) nearly any involvement by attorneys makes business documents privileged. (*See, e.g.*, Dkt. 1039 at 5 (Apple arguing that documents "provided to, commented on, and revised by counsel" are all privileged).) Both Judge Hixson and the Court rejected Apple's arguments. (Dkt. 1095.) And the Court ultimately found that Apple's Injunction response constituted a "business decision", not a legal one. (Contempt Order at 61.)

Epic brings this Motion for Relief to challenge Apple's attempt to claim privilege and withhold in full seven documents that, based on the information available to Epic, appear to reflect communications that were made for predominantly *business* purposes. Epic previously filed timely Objections to Apple's assertions of privilege over these documents before Judge Hixson, which Judge Hixson overruled (without explanation, due to the volume of Objections submitted for Judge Hixson's review by both Parties).

## LEGAL STANDARD

In the Ninth Circuit, "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications". *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021). When communications with counsel "involve both legal and non-legal analyses", courts therefore "consider whether the primary purpose of the communication is to give or receive legal advice, as opposed to business advice". (Dkt. 1095 at 2 (citing *In re Grand Jury*, 23 F.4th at 1091) (quotations omitted).) The work product doctrine protects such "dual purpose documents from disclosure where those documents were created 'because of' the prospect of litigation". (Dkt. 1095 at 2 (citing *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004) (cleaned up).) The burden is on the withholding party to make a "clear showing" that the communications were made for the primary purpose of obtaining or providing legal advice. *United States v. ChevronTexaco Corp*, 241 F. Supp. 2d 1065, 1076 (N.D.

Cal. 2002).

Documents involving in-house counsel "might well pertain to business rather than legal matters", and even business decisions made by in-house counsel in the context of legal consequences are not necessarily "legal". *Id.* ("[W]e cannot simply assume that every communication involving in-house counsel that related to this transaction [regarding tax liability] was made primarily for the purpose of securing legal advice."). As the Court has noted, "[l]awyers frequently revise documents. That does not create a privilege." (Dkt. 1095 at 3.)

This Court reviews a Magistrate Judge's "factual determinations . . . for clear error" and "legal conclusions . . . to determine whether they are contrary to law". *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010); *see also* Fed. R. Civ. P. 72(a). Whether documents are "protected by the attorney-client privilege is a mixed question of law and fact". *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

**ARGUMENT**

The majority of the purportedly privileged documents that Epic challenges here appear to have a predominantly business purpose. This is true even for those documents involving Apple's in-house counsel.

As this Court has previously found, "Apple's business decisions cannot be shielded because they were prompted by a Court order". (Dkt. 1095 at 3.) Indeed, finding otherwise would circumvent the entire purpose of the Court's directive that Apple produce documents evidencing its response to the Court's Injunction. Therefore, Apple's *business* decisions surrounding how to respond to this Court's Injunction are not privileged.

Additionally, as this Court previously found, Apple "integrated the presence of legal personnel into documentation of [its] business decisionmaking" but that could not change what Apple's Injunction-response efforts were: business, not legal, in nature. (Contempt Order at 65.) Merely "[a]dding a lawyer's name to a document does not create a privilege". (*Id.*) This is especially true where in-house counsel routinely served in non-legal capacities. (*See, e.g.*, CX-0225.1 (non-legal discussion of business responses to the Injunction between in-house counsel

Sean Cameron and Apple CEO Tim Cook); CX-0538.4 (non-legal correspondence from in-house counsel Jennifer Brown).)

**A. Primarily Business Emails (Entry Nos. 224, 8173, 8180 and 9799)**

**1. Entry No. 224**

Entry No. 224 is an email chain with the subject line "Wisconsin PC Deck". The top email in the chain was sent by Alex Roman, a non-lawyer, to Apple finance employee Nate Barton and Apple in-house counsel Jennifer Brown. Mr. Oliver is the custodian. This email apparently concerns one of the multitude of primarily business presentations made to Apple's Price Committee ("PC")—itself a business entity headed by Messrs. Cook, Schiller and Maestri. (Dkt. 1508 at 23.) Apple has done nothing to show that the "primary purpose" of this email regarding a business presentation is a legal purpose, rather than a business purpose. And Apple certainly did not provide any explanation why, if the purpose of the email chain is legal, it is addressed to Mr. Barton, and not only to Ms. Brown.

In its response to Epic's Objection before Judge Hixson, Apple stated that the email chain discloses a communication where a "non-lawyer responds confirming he made [] changes" to the underlying PC presentation following input from counsel. (Dkt. 1313.) But unless *legal* advice requesting such changes is discernible from the non-attorney's comments, the email is not privileged. Other emails discussing changes made to Wisconsin decks, including several sent by in-house counsel, were determined not to be privileged, produced and admitted into evidence at the evidentiary hearing. (*See, e.g.*, CX-0223, CX-0224, CX-0279, CX-0384, CX-0484, CX-0538.) Therefore, it appears to be contrary to law to find this document privileged in its entirety.

**2. Entry No. 8173**

Entry No. 8173 is an email chain with the subject "Wisconsin Entitlement & VPP/NPP"—apparently a reference to Apple's consideration of whether developers in Apple's VPP and NPP programs would be allowed to use links for steering without losing the benefits of the VPP and NPP programs. (*See* Contempt Order at 42-44.) Mr. Barton sent this email to Timo Kim, a non-attorney businessperson, copying several other Apple business employees and in-house counsel.

Apple's discussion of the treatment of the VPP and NPP programs under the Injunction was driven entirely by business considerations. (*See generally* Contempt Order at 43-44 & n.49 (noting that Apple's treatment of VPP and NPP developers "highlights Apple's clear design to forbid competitive alternatives to IAP"). Further, the top email in the chain is between two non-lawyer business employees, and therefore likely does not contain privileged legal advice. And an email about a business program would not have a primarily legal purpose. Therefore, Judge Hixson's finding that this document is privileged in its entirety appears to be contrary to law.

**3. Entry No. 9799**

Entry No. 9799 is an email chain about a "link out proposal". It was sent by non-lawyer Phil Schiller to software engineering executive Jeff Robbin and in-house counsel Sean Cameron. Apple claims in its privilege log that the email "includes content that Apple legal weighed in on". But in-house attorneys regularly "weigh in" on business documents and other non-privileged documents, and unless the email discloses actual legal advice provided by counsel (or a request for such advice), the fact that counsel commented on some of its content at some point does not render that content privileged.

Moreover, Mr. Cameron's involvement in this email is not indicative of a *legal* purpose—let alone the predominance of such purpose. The evidence at the February evidentiary hearing demonstrated that Mr. Cameron was integral to *business* discussions around Project Wisconsin and was tasked with sending and receiving many non-privileged business emails regarding Apple's Injunction response. (*See, e.g.*, CX-0223 (email and slide deck sent by Mr. Cameron); CX-0224 (same); CX-0246 (same); CX-0499 (Mr. Cameron tasked by Mr. Oliver with distributing a Wisconsin deck).) The Court accordingly noted during the evidentiary hearing that Mr. Cameron is a "business lawyer", "not litigation counsel". (February 25, 2025, Hr'g Tr. 1481:9-1482:6.) In short, the document does not appear to disclose legal advice or to reflect communications that were made primarily for a legal purpose, and thus it appears to have been contrary to law to find this document privileged in its entirety.

**4. Entry No. 8180**

Entry No. 8180 is an email with the subject line "Wisconsin pitch" and is a communication from Mr. Cameron to Mr. Oliver. Although Apple claimed in its Response to Epic's Objection before Judge Hixson that Mr. Cameron was "offering [an Injunction response] option from a legal perspective" (Dkt. 1482 at 5), the document's title regarding a "pitch", as well as the fact it was sent to Mr. Oliver, suggest Mr. Cameron was not providing legal advice but rather "pitching" an idea to Mr. Carson and soliciting Mr. Carson's *business* input. That is not a privileged communication, and it was thus legal error for Judge Hixson to overrule Epic's objection to Apple's assertion of privilege over this entire document.

**B. Primarily Business Message (Entry No. 7825)**

Entry No. 7825 (PRIV-APL-EG_00227845) is a direct message string involving Mr. Oliver. Based on the information disclosed by Apple in its privilege log, the document apparently discusses "[f]inancial impact modeling at [the] direction of" Mr. Cameron and Ling Lew, another Apple in-house counsel. But financial modeling of the impact of various Injunction responses is inherently a business task—even if the Court were to accept at face value Apple's claim that this analysis was done, for some undisclosed reason, at the direction of in-house counsel. Indeed, many of the slide decks admitted at the evidentiary hearing contained financial modeling of Apple's Injunction response options and many were labeled "prepared at the direction of counsel". (*See, e.g.*, CX-0223, CX-0224, CX-0859.) None were privileged.

Apple's claim of work product protections over this direct message string cannot stand, either. Attorney work product protections cover documents prepared in anticipation or furtherance of litigation. Here, Apple's work product claim is simply another flavor of its already rejected claim that virtually *all* Injunction-response work was privileged, because by the same token, all of it was also "in anticipation of litigation". Apple cannot withhold documents reflecting business analyses related to its Injunction response on the basis that it was performed in anticipation of future contempt proceedings. None of these analyses were performed "because of" such future proceedings. (Dkt. 1095 at 2 (citing *In re Grand Jury Subpoena*, 357 F.3d at

908).) To the contrary—as the Court found, Apple tried to conceal these analyses during the contempt proceedings. (*See, e.g.*, Contempt Order at 2 (finding Apple tried to hide its true decision-making process).)

**C. Minutes from a Business Meeting (Entry No. 2622)**

Entry No. 2622 (PRIV-APL-EG_00174839) is a document titled "Epic meeting injunction". Marni Goldberg is the custodian. The document seems to reflect notes taken by Ms. Goldberg or another participant at an Injunction-response meeting. As noted above, these meetings were primarily business-driven—certainly when attended by Ms. Goldberg, who is not a lawyer. In fact, meeting notes that Ms. Goldberg took at another Injunction-response meeting were admitted into evidence with minor redactions. (CX-0399.) Apple does not identify any counsel implicated by this document, only claiming in its privilege log entry that the "[d]ocument reflect[s] legal advice from Apple legal". Such a generic description is insufficient to substantiate a claim of privilege over an entire document. And while Apple's Response to Epic's Objection before Judge Hixson notes that Apple's General Counsel organized and its senior in-house counsel attended the meeting (Dkt. 1421 at 2), their mere presence cannot render *all* of the notes taken at the meeting privileged. Based on the information available to Epic, this document appears predominantly business-related. Finding that this document is privileged in its entirety was thus contrary to law.

**D. An Email Chain Previously Produced with Redactions (Entry No. 10952)**

Entry No. 10952 (PRIV-APL-EG_00257413) is an email chain among Apple witnesses Phil Schiller and Carson Oliver, other business personnel and in-house counsel. The email chain is entitled "Epic injunction (Project Wisconsin)—rules for entitlement agreement". Apple seeks to withhold this document in its entirety; however, Apple *already produced to Epic* in redacted form a document from this very email chain, which Epic provided with its Objection. (*See* Dkt. 1362-5.) At minimum, then, the document should have been redacted, not withheld in full.

Further, Apple's redactions must be narrow. Only specific instances of an explicit request or the express provision of *legal* advice are protected by the attorney-client privilege and should

therefore be redacted. Email chains containing a wide-ranging discussion with one, or even several, requests for legal advice should not be redacted wholesale.

Apple argued in its Response to Epic's Objection that any "comments from non-lawyers are in response to advice from lawyers" and so envelop the entire exchange in privilege. (Dkt. 1372 at 2.) That is wrong. A comment made "in response to" legal advice is not itself legal advice or a request for legal advice, and therefore is not itself privileged. And the case Apple cited to support this argument in its Response is inapplicable: in *Labbe v. Dometic Corp.*, the acts of the privilege claimant's agent were "designed to discover facts that would inform [claimant's counsel] on what legal advice to give to their client". 2023 WL 5672950, at *4 (E.D. Cal. Sept. 1, 2023). Entry No. 10952, however, does not involve an agent of Apple or the discovery of facts meant to inform counsel's legal advice. Finding that this document is privileged in its entirety was thus contrary to law.

* * *

For these reasons, Epic respectfully requests that the Court overrule in part Judge Hixson's orders holding the above documents to be privileged and require Apple to immediately produce them to Epic in full.

Dated: May 29, 2025

Respectfully submitted,

By: /s/ *Yonatan Even*

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

**E-FILING ATTESTATION**

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                    */s/  Yonatan Even*
                                    Yonatan Even