Keith Mathews
*Pro Hac Vice*
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105
keith@awplegal.com
(603) 923-9855

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC., <br>                Plaintiffs, <br><br> *vs*. <br><br> APPLE, INC. <br>                Defendant. <br><br><br> THIS DOCUMENT RELATES TO: <br> *Coronavirus Reporter et al. v. Apple*, No 3:24-cv-8660-EMC <br> *Proton AG v. Apple*, No. 3:25-cv-5450-SK | Case No. 4:20-cv-5640-YGR <br><br><br> **ADMINISTRATIVE MOTION TO RELATE CASES AND FOR EXPEDITED STAY PENDING RESOLUTION** <br><br> Place: 1-4th Floor <br><br> The Honorable Yvonne Gonzalez Rogers |

**TO: THE COURT AND ALL OTHER PARTIES OF RECORD**

PLEASE TAKE NOTICE that Plaintiffs Coronavirus Reporter Corporation and Greenflight Venture Corporation, and the putative class in the action ("Plaintiffs") hereby move this Court to consider whether the following actions filed in the USDC Northern District of California should be related:

| Case Name | Case No. | Filing Date |
|---|---|---|
| *Epic Games, Inc. v. Apple Inc.* | 4:20-cv-5640 | 08/13/2020 |
| *Coronavirus Reporter Corp., et al., v. Apple Inc.* | 3:24-cv-8660 | 03/05/2024 |
| *Proton AG. v. Apple, Inc.* | 3:25-cv-5450 | 06/20/2025 |

The above actions involve the same transactions and events and the same legal issues. It is therefore likely that there would be "unduly burdensome duplication of labor and expense" or conflicting results if the cases are conducted before different Judges. See Civil L.R. 3-12(a)(1) & (2). Relating the two cases and placing them under the supervision of one judge is likely to save the Court and the parties significant costs and may facilitate and expedite the resolution of the cases. In order to preserve this Court's authority, Plaintiffs also respectfully request this Honorable Court issue an expedited litigation stay, pending resolution of this motion.

## MEMORANTUM OF POINTS AND AUTHORITIES

Pursuant to Civil Local Rule 3-12, Plaintiff Coronavirus Reporter Corp. moves to relate *Coronavirus Reporter Corp. v. Apple Inc.*, No. 3:24-cv-08660-EMC, and *Proton AG v. Apple Inc.,* No. 4:25-cv-05450, to the earlier case *Epic Games, Inc. v. Apple Inc.,* No. 4:20-cv-05640-YGR ("*Epic*"). All three cases center on Apple's alleged monopoly and anticompetitive conduct in iPhone app distribution, i.e. Apple's App Store restrictions, tying arrangements, and developer policies. The overlapping factual allegations and legal issues are substantial, and relating these cases will promote judicial economy and avoid the risk of inconsistent judgments. In short, developers from the United States (*Epic* and *Coronavirus Reporter*), Switzerland (*Proton*), and even South Korea have all raised strikingly similar antitrust concerns against Apple, seeking App Store freedom (including sideloading), an end to developer retaliation, and relief under the Sherman Act and California's Unfair Competition Law (UCL). Relation is a logical result, given the convergence of these (and other) Apple developer lawsuits. This Honorable Court recently related *Korean Publishers Association v. Apple (*25-cv-04438-YGR), and Proton's press release last week indicates that their own lawsuit, which centers on CR I and CR II's *per se* tying theory and notarization-based censorship, intends to "join the [Korean] lawsuit." Given the common nucleus of facts and issues, assigning these matters to the same judge is warranted.

**Common Factual and Legal Overlap**

All three cases challenge Apple's "illegal stranglehold on iPhone app distribution" and its exclusionary App Store practices. Each case has overlapping parties of Apple and developers, and converging or identical Sherman & UCL competition theories that allege the same course of conduct by Apple:

**Tying the App Store to the iPhone**: CRC and Proton complaints directly allege that Apple ties App Store distribution to the iPhone device itself. Apple's "censorship mechanism" for iOS works by requiring that all apps on an iPhone be distributed through Apple's App Store and cryptographically "notarized" by Apple – effectively tying app distribution to the iPhone hardware. This *per se* tying arrangement was first articulated in the *Coronavirus Reporter I* case, which argued that Apple unlawfully bundles the iPhone (the tying product) with Apple's exclusive App Store (the tied product) and/or notarization fees. *Epic's* case, while not pleading that specific tie, ultimately sought the same relief: opening iOS to competing app sources.

**Exclusive App Distribution & Sideloading Ban**: All plaintiffs attack Apple's policy that iOS apps can only be obtained via Apple's App Store (with no sideloading or alternative app stores allowed). In *Epic*, this was framed as Apple's anti-competitive monopoly over the iOS app distribution market. In CRC (the current class action filed in 2024), the complaint seeks an injunction prohibiting Apple from executing any code that blocks installation of apps from outside the App Store. Similarly, Proton AG's lawsuit explicitly aims to "force Apple to allow competing app stores" on iOS. All of these cases ally in demanding App Store freedom.

**Mandatory In-App Payments and 30% Commission**: A closely related restraint in all cases is Apple's requirement that developers use Apple's payment processing for in-app sales – the rule that locks developers into Apple's in-app purchase (IAP) system with a 30% fee. *Epic* famously challenged this "App Store tax." The *Proton* and the *Korean publishers'* class actions likewise allege Apple forces developers to use its payment system and pay an "excessive" 30% commission. Greenflight, a party to CRC, is a Cameron opt-out that also challenges the IAP fees, and the harms from *Epic* UCL contempt and other developer retaliation.

**Developer Harm, Censorship, and Retaliation**: Each case highlights how Apple's conduct harms developers and stifles competition. In *Coronavirus Reporter*, Apple is accused of censoring apps and even retaliating against developers who could compete with Apple's own offerings. The complaint describes Apple's DPLA and "notary stamp" requirements as tools by which Apple excludes or blocks apps it disapproves of, not only for quality or security reasons but also to suppress competition. *Proton* alleges Apple

1  has removed or hidden apps at the behest of authoritarian governments and that it even threatened to remove
2  Proton's own privacy app (VPN) for including a feature about bypassing censorship. More broadly,
3  developers have long feared that speaking out or violating Apple's stringent rules could mean App Store
4  expulsion, which for many is an existential threat. As Proton's policy counsel observed, "small developers
5  were not even able to speak about these issues because they were so scared — if you disappear from the App
6  Store, in one week, you can go bankrupt." And this is exactly what happened to the CRC Plaintiffs, currently
7  the subject of a vicious motion meant to financially ruin them and their small-town attorney. *Epic's* saga
8  itself is an example this Court knows well – Apple terminated Epic's developer account in retaliation for the
9  Fortnite payment workaround, sending a chilling message to others. This Court determined that *Epic* was in
10 breach of the DPLA. Therefore, this Court is best positioned to adjudicate the cross-sanctions motions
11 pending in CRC, as it has demonstrated an ability to understand both sides' of the conflict.

**Developer Retaliation, Witness Intimidation, and Contradictory Litigation Positions in CR II**

13 A similarly antagonistic developer dispute is now unfolding in the *Coronavirus Reporter II* case.
14 Plaintiffs in *CR II* include Dr. Robert Roberts, whose pioneering medical research and invention of the
15 MBCK cardiac enzyme test (later foundational to the Troponin test) has contributed to an approximately
16 90% reduction in heart attack fatalities over recent decades, meaning people are literally alive today who
17 otherwise would not be. Dr. Roberts, along with his co-developer Dr. Jeffrey Isaacs, initially sought simply
18 to publish an app to help track COVID-19 symptoms during the pandemic. Yet Apple now seeks a nationwide
19 injunction declaring that their continued pursuit of this antitrust action constitutes vexatiousness, attempting
20 to stigmatize them for simply questioning Apple's App Store monopoly.

21 Plaintiffs strongly oppose Apple's sanctions motion, asserting in their cross-motion that Apple's shifting
22 narratives throughout this litigation amount to fraud on the court. Initially, Apple argued emphatically that
23 Dr. Roberts had no involvement in Coronavirus Reporter, yet it now conveniently reverses course, claiming
24 Roberts was integrally involved all along. Similarly troubling, Apple and its counsel previously barred Dr.
25 Isaacs from meaningful participation in *CR I*, restricting even routine communications such as serving court
26 papers, under threat of alleged unauthorized contact. Now, Apple takes the contradictory position that Dr.
27 Isaacs was always a valid *pro se* plaintiff in CR I, and thus attempts to bind Greenflight Venture Corporation
28 (a standard opt-out from the Cameron settlement) to CR I's non-merits dismissal.

Most disturbingly, Apple continues to enforce a five year directive that prohibits Dr. Isaacs from direct communication, preventing him from even conveying a petition (Exhibit B) to Apple leadership. Such threatening tactics by Apple and its counsel have been characterized as witness intimidation and have been reported as "bitter" in a recent California litigation journal (*See* https://www.dailyjournal.com/article/386379-sanctions-sought-against-apple-attorneys-in-antitrust-suit).

This Court, uniquely familiar with the complex and intense nature of disputes between Apple and developers (having ruled both in favor of and against Apple in Epic) is by any objective measure best positioned to manage and adjudicate these closely related claims of developer retaliation, censorship, and antitrust violations. All parties deserve a fair and consistent forum, and this Court's deep experience renders it the appropriate venue to oversee this challenging task.

**Identical Statutory Authority under Sherman Act and California Unfair Competition Law**

Legally, these actions all bring antitrust claims under the Sherman Act (both §1 and §2). Each challenges Apple's conduct as an unlawful restraint of trade and/or monopolization of an iOS app distribution market. The *Proton* and *Coronavirus Reporter* complaints explicitly plead *per se* tying violations, invoking precedent like *Northern Pacific Ry. Co. v. United States* and arguing that Apple's tying of the App Store to iPhone (and of IAP to the App Store) should be condemned. *Epic's* case involved a rule-of-reason analysis of similar markets and platform ties. Additionally, California's Unfair Competition Law (UCL) is a common thread: *Epic* succeeded on a UCL claim (leading to an injunction against Apple's anti-steering provisions), and the developer class actions likewise assert UCL "unfair competition" based on the same conduct. Indeed, well over a year ago, *Coronavirus Reporter's* complaint alleged Apple's "malicious compliance" with the *Epic* UCL injunction and the resultant harm on developers.

**Avoiding Conflicting Outcomes**

Relating the cases is not only efficient but necessary to prevent the very real risk of inconsistent judgments. For instance, Apple's tying arrangements could be found unlawful by one court and lawful by another if heard separately – an outcome that would create confusion for the parties and potentially incompatible obligations. Likewise, one judge might order injunctive relief requiring Apple to permit third-party app stores, while another judge (unaware of that order) might not, or might impose a different remedy. The Northern District of California's related case rule exists for exactly this type of scenario: *Epic*,

*Coronavirus Reporter*, and *Proton* involve "substantially the same transaction or event": Apple's operation of the iOS App Store and related developer policies. A prior developer case, *Cameron v. Apple Inc*. No. 4:19-cv-03074-YGR was related and presided over by this Court, including a settlement covering many U.S. small developer claims. But the present class actions, all opt-outs of *Cameron*, go beyond the scope of *Cameron*. These new cases should now be related to *Epic*, which appears to be (as best as Undersigned is aware) the anchor case for App Store antitrust issues in this District.

### Alternative Request to Relate to Cameron

Alternatively, Plaintiffs respectfully request relation to *Cameron v. Apple Inc*., In 2021, Apple itself moved to relate the original CR I action to *Cameron*, and Judge Chen subsequently referred CR I for consideration of relation. At the time, Plaintiffs opposed relating the cases because CR I was focused narrowly on censorship of a free COVID-19 app, whereas *Cameron* concerned paid apps and Apple's in-app payment (IAP) fees. Today, however, the issues have clearly converged. It has become clear that App Store dominance simultaneously enables censorship and the imposition of the IAP "internet tax." Moreover, the CR II case includes Greenflight Venture Corporation, a developer of paid apps, which was not a party in CR I, and which is an explicit opt-out from the Cameron class settlement.

### Request for Immediate Administrative Stay

Plaintiffs also respectfully request an immediate administrative stay of all proceedings in *Coronavirus Reporter II* pending this Court's determination of relation. Time is of the essence, as there is currently a sanctions motion pending in *CR II* alleging Apple's retaliation against developers and intimidation of witnesses, raising serious claims that overlap significantly with *Epic's* ongoing compliance proceedings (see Exhibit A). Additionally, a motion for reconsideration of Judge Chen's dismissal order is due within two weeks, based significantly upon the recent decision in *United States v. Apple Inc*. (NJD), which survived a Rule 12(b)(6) dismissal. *CR II* expressly incorporates verbatim allegations from the DOJ complaint and further details Apple's developer retaliation and malicious compliance with this Court's Epic UCL injunction—key allegations Judge Chen never addressed in his prior ruling.

### Conclusion

For the foregoing reasons, the Court should deem the cases are related to *Epic Games v. Apple*.

Executed on this 6th day of July, 2025.

Respectfully Submitted,

/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation et al
*Pro Hac Vice*
NH Bar No. 20997
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105

## CERTIFICATE OF SERVICE

I, Keith A. Mathews, hereby certify that I am a citizen of the United States, over the age of eighteen, and not a party to the action. I hereby certify that on July 6, 2025, I served the following document(s):

ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL L.R. 3-12; REQUEST FOR STAY

[PROPOSED] ORDER GRANTING ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL L.R. 3-12

via the CM/ECF System to the parties who are registered participants of the CM/ECF System in this case, and via Electronic Mail to counsel of record for all parties in *Proton AG v. Apple* and this lawsuit, *Coronavirus Reporter v. Apple.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 6, 2025 at Manchester, New Hampshire.

/s/ Keith Mathews
Keith Mathews
Attorney for Coronavirus Reporter Corporation et al
*Pro Hac Vice*
NH Bar No. 20997
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03105