UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., <br><br> Plaintiff, Counter-defendant, <br><br> v. <br><br> APPLE INC., <br><br> Defendant, Counterclaimant. | Case No. 4:20-cv-05640-YGR-TSH <br><br> **DECLARATION OF NED S. BARNES, CPA** <br><br><br><br> The Honorable Yvonne Gonzalez Rogers |

I, Ned S. Barnes, hereby declare as follows:

1. I am a Certified Public Accountant and a Certified Fraud Examiner. I have over thirty years of experience as a forensic accountant and an economic consultant analyzing accounting, finance, damages, and valuation issues. I previously submitted an expert report and written direct testimony as a forensic accounting expert in connection with the trial in this matter.[1] I was qualified by this Court as an expert in forensic accounting and provided in person testimony related to my expert opinions on May 14, 2021.[2]

2. I have reviewed the declaration of Alex Roman in support of Apple, Inc.'s ("Apple") opposition to Epic Games, Inc.'s ("Epic") motion to enforce injunction ("Roman Declaration"). Based on my expert analyses previously conducted in this matter, and consistent with my expert testimony, the Roman Declaration contains several errors, misstatements, and inaccuracies concerning Apple's accounting policies and practices, and the profitability of the Apple App Store. In addition, the Roman Declaration presents inaccurate and unreliable calculations of the operating profit margins earned by the Apple App Store that are inconsistent with Apple's historical accounting practices and which do not comply with generally accepted accounting principles ("GAAP"). In particular, because the Roman Declaration effectively treats the amounts paid to developers as revenues to Apple, contrary to fundamental accounting principles and Apple's historical accounting practices, the Roman Declaration materially and disingenuously understates the App Store's actual operating profit margin percentages.

---

[1] Expert Report of Ned S. Barnes, CPA on Behalf of Epic Games, Inc., February 16, 2021 ("Barnes Opening Report"); Written Direct Testimony of Ned S. Barnes, CPA ("Barnes Written Direct Testimony"), *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640-YGR-TSH (N.D. Cal. Apr. 30, 2021), ECF No. 566-1.

[2] Trial Transcript ("Barnes Trial Testimony"), *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640-YGR-TSH (N.D. Cal. May 14, 2021), ECF No. 687, at 2455:17-20; *see generally* 2455:5-2501:15.

3. The Roman Declaration states that "Apple maintains its P&L at the enterprise level, and that enterprise-wide P&L is 'fully burdened,' meaning that it includes all direct costs and indirect costs for the entire company, but *is not fully burdened for individual products or services (meaning that it does not fully and accurately allocate all direct and indirect costs attributable to that product or service)*."[3]  Based on my previous work in this matter, the emphasized portion of this statement is false.  As discussed in my testimony previously provided in this matter, I determined that Apple does in fact maintain, in the regular and ordinary course of business, a fully burdened P&L (and that Apple calculates a fully burdened operating margin) for the Apple App Store.[4]  In its Order from September 10, 2021, the Court credited my conclusions and found that "Apple has calculated a fully burdened operating margin for the App Store as part of their normal business operations."[5]

4. The Roman Declaration states that "Apple is not able to attribute joint operating expenses to specific products or services" and "[a]s a result, Apple cannot create an accurate, fully burdened P&L for the App Store."[6]  Again, this statement is false and is directly contradicted by Apple's own internal business documents, my prior expert testimony and the Court's prior Order in this matter.  My prior expert testimony noted that Apple's internal business documents maintained in the ordinary course of business by its Corporate Finance, Planning, and Analysis ("Corporate FP&A") group performed specific allocations of all of Apple's joint, shared, and indirect costs to each of Apple's individual businesses, products, and

---

[3] Roman Declaration, at ¶22 (emphasis added).

[4] Barnes Written Direct Testimony, at ¶ 7; Barnes Trial Testimony, at 2474:8-11.

[5] Rule 52 Order After Trial on the Merits ("Rule 52 Order"), *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640-YGR-TSH (N.D. Cal. Sept. 10, 2021), ECF No. 812, at p. 42.

[6] Roman Declaration, at ¶ 23.

services, including the App Store.[7]  My expert analysis and testimony further demonstrated that Apple's allocation of these costs could be reconciled to Apple's company-wide financial statements filed with the SEC, ensuring that all cost allocations were complete, and these calculations further would have been subject to review by Apple's external auditors.[8]

     5.    The Roman Declaration states that Apple generated "operating margins of between ▬▬▬▬ for the worldwide App Store and operating margins of between ▬▬▬▬ for the U.S. App Store."[9]  It is not clear what period of time the Roman Declaration is referencing in this statement.  However, based on my previous expert analysis and testimony, the Roman Declaration grossly and materially understates the actual fully burdened operating margins generated by the Apple App Store.  As demonstrated in my prior testimony, Apple's own internal business documents – which I reconciled to Apple's enterprise-wide and publicly reported financial statements – indicate that the Apple App Store generated fully burdened operating margins of approximately ▬▬ in 2019.[10]  This operating margin was consistent with my independent assessment that the Apple App Store generated an operating margin of approximately ▬▬ in 2019.[11]  In referencing my expert analysis and testimony, the Court noted that "the record supports a finding that Apple's operating margins tied to the App Store are

---

[7] Barnes Written Direct Testimony, at ¶14; Rule 52 Order, at 42.

[8] Barnes Written Direct Testimony, at ¶ 18.

[9] Roman Declaration, at ¶ 25.

[10] Barnes Written Direct Testimony, at ¶ 16.

[11] *Id.*; Barnes Opening Report, at ¶ 18, Table 4.

extraordinarily high" and "Apple did nothing to suggest operating margins over 70% would not be viewed as such."[12]

6.   A slide that was included as Exhibit 1 to the Roman Declaration ("Roman Declaration Exhibit 1") appears to provide certain calculations purporting to demonstrate Apple App Store operating margins ranging between ▇▇▇▇▇▇ for an unspecified period.[13]  The calculations presented are disingenuous, inaccurate, and inconsistent with standard principles of accounting under U.S. GAAP, as well as the accounting principles and practices that Apple has historically adopted and applied in its ordinary and regular course of business and financial reporting.

7.   As set forth in my previous expert analysis and testimony, Apple accounts for and records revenue generated from the Apple App Store on a "net" basis of revenue recognition, consistent with both U.S. GAAP and international accounting guidance.[14]  Under net basis revenue recognition accounting, Apple only records revenue from Apple App Store transactions related to the commissions that Apple actually receives on digital sales to consumers; for example, for a $1.00 in-app sale that is subject to Apple's 30% commission, Apple would correctly recognize as revenue the $0.30 it receives as a commission, but not the $0.70 that goes to the developer.[15]  Accordingly, a proper calculation of Apple's App Store operating margin

---

[12] Rule 52 Order, at p. 43.

[13] Roman Declaration Exhibit 1, at slide 10.

[14] Barnes Trial Testimony, at 2465:5-2466:7; *see also* Barnes Opening Report, at ¶ 23.

[15] Apple discloses its revenue recognition policy concerning the App Store in its annual Form 10-K filing with SEC, noting that "[f]or third-party applications sold through the App Store, the Company does not obtain control of the product before transferring it to the customer. Therefore, the Company accounts for all third-party application–related sales on a net basis by recognizing in Services net sales only the commission it retains." Apple 2023 10-K, Note 4—Revenue.

percentage would be to divide Apple's App Store operating margin dollars by the amount of Apple App Store revenue that Apple actually recognizes – which does not include the portion of Apple App Store billings that are remitted to developers.

8. The calculations presented in Roman Declaration Exhibit 1, in a departure from both Apple's past historical practices and from U.S. GAAP, purport to demonstrate what Apple's App Store operating margins would be under an inapplicable and incorrect "gross" basis of revenue recognition. Specifically, these flawed, inaccurate, and misleading calculations purport to calculate the operating margin percentage that the Apple App Store would have earned, when Apple's operating margin dollars are divided by *total* Apple App Store billing to consumers – including the portion that is earned by and remitted to developers. The operating margins for the Apple App Store presented in Roman Declaration Exhibit 1 do not reflect an accurate or reliable estimate of the actual operating margins that Apple earns from the Apple App Store.

9. The effect of calculating Apple's App Store operating margins by dividing operating margin dollars by total Apple App Store billings, rather than Apple's actual App Store revenue, is significant. Consider the example in the table below, which assumes total App Store billings of $1,000, an Apple commission rate of 30%, and direct and indirect costs related to the Apple App Store of ▇.[16]

---

[16] Based on my prior expert analyses and testimony, total direct and indirect costs related to the Apple App Store were approximately ▇ of Apple's App Store revenues. *See* Barnes Opening Report, at ¶ 18, Table 4; Barnes Written Direct Testimony, at ¶ 2, 4-5; Rule 52 Order, at pp. 41-42.

| | |
|---|---:|
| App Store Billings | $ 1,000 |
| Apple commission % | 30% |
| Apple App Store revenue | $ 300 |
| Direct and indirect costs | $ ▮ |
| Operating margin dollars | $ ▮ |
| Operating margin percentage (Operating margin dollars divided by Apple App Store revenue) | ▮ |
| Incorrect operating margin percentage (Operating margin dollars divided by total App Store billings) | ▮ |

10. As shown above, by dividing the same operating margins dollars by a much larger base, e.g., total App Store Billings, the calculated (albeit incorrect) operating margin percentage is reduced from ▮▮▮▮▮▮

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2024

By: _____
Ned S. Barnes

I, Gary A. Bornstein, am the ECF User whose ID and password are being used to file this Declaration of Ned S. Barnes, CPA. In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence in the filing of this document has been obtained from the signatory.

                                                  */s/ Gary A. Bornstein*
                                                  Gary A. Bornstein