| | |
|---|---|
| THEODORE J. BOUTROUS JR., SBN 132099<br>  tboutrous@gibsondunn.com<br>RICHARD J. DOREN, SBN 124666<br>  rdoren@gibsondunn.com<br>DANIEL G. SWANSON, SBN 116556<br>  dswanson@gibsondunn.com<br>JAY P. SRINIVASAN, SBN 181471<br>  jsrinivasan@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>CYNTHIA E. RICHMAN (D.C. Bar No. 492089; *pro hac vice*)<br>  crichman@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036<br>Telephone: 202.955.8500<br>Facsimile: 202.467.0539<br><br>RACHEL S. BRASS, SBN 219301<br>  rbrass@gibsondunn.com<br>JULIAN W. KLEINBRODT, SBN 302085<br>  jkleinbrodt@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111<br>Telephone: 415.393.8200<br>Facsimile: 415.393.8306 | MARK A. PERRY, SBN 212532<br>  mark.perry@weil.com<br>JOSHUA M. WESNESKI (D.C. Bar No. 1500231; *pro hac vice*)<br>  joshua.wesneski@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Telephone: 202.682.7000<br>Facsimile: 202.857.0940<br><br>MORGAN D. MACBRIDE, SBN 301248<br>  morgan.macbride@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>Redwood Shores Pkwy, 4th Floor<br>Redwood Shores, CA 94065<br>Telephone: 650.802.3044<br>Facsimile: 650.802.3100<br><br>MARK I. PINKERT (Fla. Bar No. 1003102; *pro hac vice*)<br>  mark.pinkert@weil.com<br>KATHERINE G. BLACK (Fla. Bar No. 1031465; *pro hac vice*)<br>  katie.black@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>1395 Brickell Avenue, Suite 1200<br>Miami, FL 33131<br>Telephone: 305.577.3100<br>Facsimile: 305.374.7159 |

Attorneys for Defendant APPLE INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.<br><br>      Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>      Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR<br><br>**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF JUDGMENT ON ITS INDEMNIFICATION COUNTERCLAIM**<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>**FILED UNDER SEAL** |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    Epic's Indemnification Obligation Includes Its Unsuccessful Illegality Defense ..............................................................................................................................2

        A.    Epic's Antitrust Claims "Arise From" And "Relate To" Epic's Breach Of Contract................................................................................................................2

        B.    *Carver* Is Inapplicable Because Apple Is The Prevailing Claimant On The Contract.........................................................................................................6

    II.    The Court Should Enter Judgment In the Full Amount That Apple Seeks ...................8

        A.    Epic Cannot Unilaterally "Bifurcate" Apple's Indemnification Counterclaim..........................................................................................................8

        B.    Epic's Quibbles With The Amount Sought Are Meritless ...............................9

CONCLUSION .............................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Alki Partners, LP v. DB Fund Servs.,*
   LLC, 4 Cal. App. 5th 574 (2016) ................................................................................10, 11

*Bock v. Washington,*
   33 F.4th 1139 (9th Cir. 2022) .................................................................................................3

*Brandt v. Superior Ct.,*
   37 Cal. 3d 813 (1985) ..........................................................................................................12

*Carver v. Chevron U.S.A., Inc.,*
   119 Cal. App. 4th 498 (2004) ...................................................................................1, 5, 6, 7

*Carver v. Chevron U.S.A., Inc.,*
   97 Cal. App. 4th 132 (2002) ..................................................................................................6

*Dominick v. Collectors Universe, Inc.,*
   2013 WL 990825 (C.D. Cal. Mar. 13, 2013) ........................................................................7

*Ernst v. W. States Chiropractic Coll.,*
   40 F. App'x 577 (9th Cir. 2002) ..........................................................................................11

*Folsom v. Butte Cnty. Ass'n of Governments,*
   32 Cal. 3d 668 (1982) ..........................................................................................................12

*Hall v. City of Los Angeles,*
   697 F.3d 1059 (9th Cir. 2012) .............................................................................................11

*Ingle v. Cir. City,*
   408 F.3d 592 (9th Cir. 2005) .................................................................................................3

*Minor v. Christie's, Inc.,*
   2011 WL 902235 (N.D. Cal. Jan. 29, 2011) .......................................................................12

*Morales v. Trans World Airlines, Inc.,*
   504 U.S. 374 (1992) ..............................................................................................................4

*New Hampshire v. Maine,*
   532 U.S. 742 (2001) ..............................................................................................................3

*Port of Stockton v. W. Bulk Carrier KS,*
   371 F.3d 1119 (9th Cir. 2004) .............................................................................................12

*Reudy v. CBS Corp.,*
   430 F. App'x 568 (9th Cir. 2011) ..........................................................................................7

*Ryan v. Editions Ltd. W., Inc.,*
   786 F.3d 754 (9th Cir. 2015) .................................................................................................7

*Santisas v. Goodin*,
    17 Cal. 4th 599 (1998) ................................................................................................................4

*Turner v. Schultz*,
    175 Cal. App. 4th 974 (2009) ......................................................................................................6

*United States v. Kellington*,
    217 F.3d 1084 (9th Cir. 2000) ...................................................................................................11

*Walker v. Countrywide Home Loans, Inc.*,
    98 Cal. App. 4th 1158 (2002) .....................................................................................................7

*Windsor Pac. LLC v. Samwood Co.*,
    213 Cal. App. 4th 263 (2013) .....................................................................................................4

*Winns v. Exela Enter. Sols., Inc.*,
    2021 WL 5632587 (N.D. Cal. Dec. 1, 2021) ..............................................................................8

*Zhu v. Li*,
    2023 WL 4770431 (N.D. Cal. July 26, 2023) ...........................................................................12

**Other Authorities**

N.D. Cal. Local Rule 54-5 ...............................................................................................................12

**INTRODUCTION**

Epic agreed to indemnify Apple for all fees, costs, and other expenses arising out of or relating to a breach of the DPLA. PX-2619.40 (DPLA § 10). Epic then intentionally breached the DPLA, and defended against Apple's ensuing breach of contract action by arguing that the DPLA is unlawful under the antitrust laws. Epic lost its antitrust arguments and thus the contract claim, and is now trying to escape the consequences of its own actions and representations to both this Court and the Ninth Circuit.

Epic asserts that its antitrust claims were "completely independent" of Apple's breach of contract counterclaim. Opp. 13. That is demonstrably false. Epic chose to intentionally breach the DPLA as a "key" part of its "Project Liberty" campaign to challenge the design of iOS. *See* Rule 52 Order at 23. When Apple sued Epic for breach of contract, Epic asserted the defense of illegality under the antitrust laws (*see* Dkt. No. 474 ¶ 2)—conceding at trial that "if we're wrong about the antitrust claim, there's been a breach of contract." Dkt. No. 111, at 95:19–21. As the Ninth Circuit put it, "Epic's illegality defense ***rises and falls with its Sherman Act claims***." C.A.9 Dkt. No. 222, at 77 (emphasis added). Epic's speculation that it "could have" brought the antitrust claims without breaching the DPLA (Opp. 2, 4, 13) ignores what Epic chose to do in the real world.

Epic also cites *Carver v. Chevron U.S.A., Inc.*, 119 Cal. App. 4th 498 (2004), for the proposition that the prevailing defendant in a Cartwright Act case may not recover its fees. Opp. 9–12. But Apple is the prevailing *plaintiff* on an indemnification counterclaim under a contract that authorizes recovery of all "Losses" related to or arising out of a breach. *Carver* does not speak to that contractual right.

Epic does not challenge Apple's calculations or the reasonableness of the amount sought. Although it purports to "reserve its right" to mount such a challenge at some future date, Apple rejected that inefficient and unwarranted proposal and Epic did not seek this Court's permission to depart from ordinary motion practice. Apple substantiated its request with more than sufficient evidence to establish the amount of the claimed Losses, and Epic has not rebutted that evidence. At most, Epic raises a few quibbles—all of which are meritless.

Accordingly, this Court should enter judgment in the full amount sought (and proven) by Apple—*i.e.*, $73,404,326 in Losses through October 31, 2023, plus the cost of these proceedings.

# ARGUMENT

## I. Epic's Indemnification Obligation Includes Its Unsuccessful Illegality Defense

After expressly tying the antitrust issues and the breach of contract claim together throughout this litigation, Epic now seeks to avoid its indemnification obligation by cleaving an artificial distinction between the two. This effort is both factually unsupported and legally unsound.

### A. Epic's Antitrust Claims "Arise From" And "Relate To" Epic's Breach Of Contract

As the Ninth Circuit has already ruled, Epic is contractually obligated to indemnify Apple for all Losses that "arise from" or "relate to" Epic's breach of contract. C.A.9 Dkt. No. 222, at 87 & n.24. Epic argues that the attorneys' fees, costs, and expenses associated with the antitrust claims do not fall within this indemnification obligation. Opp. 12–15. Each of the four variants of this argument is wrong.

**1.** Epic first argues that its "antitrust claims cannot be said to arise out of or relate to a breach of the DPLA because they are *completely independent* of Epic's violation of the terms of the DPLA." Opp. 13 (emphasis added). This statement is contravened by the record, including Epic's own statements to and rulings by this Court and the Ninth Circuit.

In this Court, Epic stipulated that it had breached its contract with Apple, but it expressly reserved the right to litigate its affirmative defense of illegality based on the antitrust laws. Epic's stipulation (which Epic only excerpts in part (Opp. 5)) provided that Epic "stipulates and agrees that Apple has proven all elements of its cause of action for breach of Epic's Apple Developer Program License Agreement with Apple (the 'DPLA'), the incorporated App Store Review Guidelines, and Schedule 2 to the DPLA." Dkt. No. 474 ¶ 1. Epic also insisted on including the following language: "This stipulation *does not resolve* the First and Second (illegal under the antitrust laws) . . . affirmative defenses asserted by Epic." *Id.* ¶ 2 (emphasis added). Epic further stipulated that, "[i]f Epic is found liable for breach of contract following resolution by the Court of the affirmative defenses specified in paragraph 2," Apple would be entitled to contract remedies including the right to terminate Epic and any of its affiliates at any time and in Apple's sole discretion. *Id.* ¶ 3.

Based on the stipulation that Epic requested and entered into, this Court expressly addressed the intersection between the breach and the antitrust claims. *See* Rule 52 Order at 173 ("[Epic Games] has admitted that it breached the DPLA as Apple alleges and has conceded that, if the Court finds that the

1  breached provisions of the DPLA are enforceable against Epic Games, then Apple would be entitled to
2  relief as a result of the breach").  After rejecting all of Epic's antitrust claims, state and federal, the Court
3  ruled that "[b]ecause Apple's breach of contract claim is also premised on violations of DPLA provisions
4  independent of the anti-steering provisions, the Court finds and concludes, in light of plaintiff's
5  admissions and concessions, that Epic Games has breached these provisions of the DPLA and that Apple
6  is entitled to relief for these violation." *Id.*

7  In the Ninth Circuit, Epic admitted that the antitrust claims and breach of contract claims "rise
8  and fall together." C.A.9 Dkt. No. 163, at 84.  Epic is judicially estopped from taking a different position
9  now.  The Ninth Circuit accepted Epic's representation and ruled accordingly:  "Because we affirm the
10 district court's holding that Epic failed to prove Apple's liability pursuant to the Sherman Act, we also
11 affirm its rejection of Epic's illegality defenses." C.A.9 Dkt. No. 222, at 77.  When "a party assumes a
12 certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter,
13 simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532
14 U.S. 742, 749 (2001) (citation omitted); *accord Bock v. Washington*, 33 F.4th 1139, 1145 (9th Cir. 2022).

15 The Ninth Circuit's ruling that "Epic's illegality defense rises and falls with its Sherman Act
16 claims" (C.A.9 Dkt. No. 222, at 77) is also the law of the case—it is binding on Epic (and this Court),
17 and entirely disposes of any suggestion that the antitrust claims are "completely independent" of the
18 breach of contract claims.  *See Ingle v. Cir. City*, 408 F.3d 592, 594 (9th Cir. 2005) ("[A] court is
19 generally precluded from reconsidering an issue previously decided by the same court, or a higher court
20 in the identical case." (internal citation omitted)).

21 Epic cannot have it both ways.  It asserted the antitrust laws as its defense to contract liability.
22 Had that defense succeeded, Epic would not have been liable for breach of contract (or indemnification).
23 When that defense failed, it became liable on the contract—including the contractual indemnification
24 clause.  Therefore, every penny that Apple spent overcoming the illegality defense, based on the antitrust
25 laws, is within Epic's indemnification obligation.

26 **2.**  Epic next argues that its "antitrust claims could have been brought against Apple even if Epic
27 had not violated the terms of the DPLA." Opp. 13.  But the Court is not evaluating some hypothetical
28 lawsuit in which Epic made different litigation decisions; rather, the indemnification obligation must be

enforced based on the manner in which Epic actually chose to litigate this case.

In the real world, Epic elected to make the breach of the DPLA the centerpiece of its "Project Liberty," refused to cure that breach, and declined to stipulate the contract counterclaim entirely out of the case (even though Apple offered to do so). Because Epic breached the contract and then insisted on maintaining and litigating its defense of illegality, the antitrust claims both "arise from" and "relate to" Epic's breach of contract. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Epic does not respond to Apple's arguments about the breadth of the DPLA's indemnification provision or the many authorities holding that sophisticated parties may agree to broadly worded contracts that "provide for a fee award in any litigation between the parties." *Windsor Pac. LLC v. Samwood Co.*, 213 Cal. App. 4th 263, 273 (2013) (citing *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998)); *see also* Mot. 11–18.

This Court also made several findings that conclusively establish that the antitrust claims and breach of contract claims are intertwined. *See* Mot. 4–8. In the Preliminary Injunction Order, for example, the Court recognized that Epic could not "simply exclaim 'monopoly' to rewrite agreements giving itself a unilateral benefit." Dkt. No. 118, at 29–30. Rather, Epic could have joined the putative class action "of *all* developers on these *exact same issues*," yet Epic never explained its breach and rush to the courthouse, "other than its disdain for the situation." *Id.* The Court even pointed out that "[t]he sensible way to proceed is for [Epic Games to comply with the agreements and guidelines] and continue to operate while it builds a record." *Id.* (alteration in original). Epic declined to take that course, and accordingly—now as then—"[t]he current predicament is of [Epic's] own making." *Id.*

After trial, this Court found that Epic's breach of the DPLA was "[k]ey to Project Liberty's deployment." Rule 52 Order at 21. Epic even recognized that, in addition to removing *Fortnite* from the App Store, Apple "may also sue" for breach. *Id.* at 23. Even so, Apple gave Epic multiple opportunities to cure but Epic refused. *See id.* at 26; *see also* Dkt. No. 779-1 ¶¶ 302, 310–12, 316, 318. Epic was "willing to wage war against Apple" despite the risks under its contract. Rule 52 Order at 23.

As this Court found, "Epic Games never showed why it had to breach its agreements to challenge

the conduct litigated. Two parallel antitrust actions prove the contrary. Apple had contractual rights to act as it did." Rule 52 Order at 178. Epic *chose* to breach the contract—for its own public relations and litigation reasons—as Mr. Sweeney admitted under oath at trial. *See* Dkt. No. 616, at 170:12–15 ("[Q.] In August 2020, you, as a shot caller at Epic, chose to intentionally breach your contract with Apple; correct? A. Yes."). It could have decided not to breach; it could have promptly cured when given the chance; or it could have agreed to entry of judgment on the contract claim and entry of contract remedies. It chose none of those options and instead maintained its illegality defense against the breach of contract counterclaim, insisting (unsuccessfully) that the DPLA violates the antitrust laws. As a result of Epic's strategic decisions, Apple had to litigate the antitrust claims to obtain judgment on its breach of contract counterclaim, and Epic is liable for indemnification under the plain terms of the DPLA.

**3.** Third, Epic argues that enforcing the indemnification obligation "would interfere with the public policy of encouraging private enforcement of the antitrust laws." Opp. 14. To the extent this undeveloped assertion is not simply a restatement of the *Carver* argument (addressed below), it has no basis in law or policy.

Enforcing Epic's contractual indemnification obligation here would have no effect on private enforcement of the antitrust laws for the simple reason that no antitrust plaintiff—*including Epic*—has to intentionally breach a contract to enforce the antitrust laws. This Court recognized as much before trial (Dkt. No. 118, at 30), yet Epic chose to breach the DPLA and then insisted on maintaining its illegality defense. *See also* Rule 52 Order at 171 ("Epic Games never adequately explained its rush to the courthouse or the actual need for clandestine tactics. The marketing campaign appears to have resulted in indirect benefits but it does not provide a legal defense."). Indeed, as Epic acknowledges, the class of developers bringing a parallel lawsuit for the same claims did not breach the DPLA. Opp. 13.

Epic was a party to the DPLA for over a decade and earned hundreds of millions of dollars through apps on the App Store. *See* Rule 52 Order at 14, 18. But Epic made the decision to breach the DPLA to send a message to the world. *See* Dkt. No. 616, at 155:13–25; Rule 52 Order at 23–24. That was its choice, and one consequence of that choice is that the indemnification obligation arose. There is no "asymmetrical" power dynamic between the parties that could warrant nullification of their contractual agreement (even if such an argument could be maintained now that liability has been

1  determined). Opp. 10. Epic is a massive company, valued at $2.37 billion around the time it launched
2  Project Liberty and filed this lawsuit. *See* Rule 52 Order at 4. Epic brought this lawsuit seeking
3  "tremendous monetary gain and wealth" and to make way for Mr. Sweeney's "vision" and "personal
4  ambitions." *Id.* at 19, 21. It knew the consequences and made its choice in order to seek even more
5  wealth and power. No public policy supports departing from the plain terms of the indemnification
6  provision in these circumstances.

7  **4.** Finally, Epic complains that "Apple has made no effort to segregate its fees and costs incurred
8  in defending against Epic's antitrust and UCL claims from those incurred in pursuing its claim for Epic's
9  breach of the DPLA." Opp. 14. As to the UCL, this is just wrong: Apple voluntarily deducted 10%
10 from its actual expenditures to account for the UCL claim (*see* Mot. 20), and Epic does not dispute that
11 this amount is sufficient. *See* Irwin Decl., Dkt. No. 876-2 ¶¶ 20, 39. As to the antitrust claims, no
12 apportionment is required: As explained above, Epic chose to tie its antitrust claims to the breach
13 counterclaim together through its illegality defense, and therefore Apple is entitled to recover the fees,
14 costs, and expenses associated with the antitrust claims. *See* Mot. 18–20. Indeed, Epic does not dispute
15 that Apple is the "prevailing party" in this action to declare key provisions of the DPLA illegal.
16 Accordingly, Apple's Losses for this entire action are recoverable by contract. *See Turner v. Schultz*,
17 175 Cal. App. 4th 974, 980 (2009) ("Where an attorney fee clause provides for an award of fees incurred
18 in enforcing the contract, the prevailing party is entitled to fees for any 'action on the contract,' whether
19 incurred offensively or defensively.").

20  **B.  *Carver* Is Inapplicable Because Apple Is The Prevailing Claimant On The Contract**

21  Epic argues that "a prevailing defendant cannot recover fees or costs associated with defending
22 against antitrust claims." Opp. 1 (citing *Carver v. Chevron U.S.A., Inc.*, 119 Cal. App. 4th 498 (2004)
23 (*Carver II*)). But the *Carver* cases involved fee-shifting in favor of a prevailing *defendant* under the
24 Cartwright Act. *See Carver v. Chevron U.S.A., Inc.*, 97 Cal. App. 4th 132, 136 (2002) (*Carver I*). This
25 case, by contrast, involves Apple's contractual right to indemnification as the prevailing *plaintiff* in a
26 counterclaim for breach of contract against Epic—a counterclaim as to which Epic chose to assert the
27 defense of illegality under the antitrust laws. This is not a fee-shifting case. The result would be the
28 same if Apple had sued first, and Epic, rather than cure or settle, defended its breach as authorized under

1 the antitrust laws. Apple prevailed on its breach of contract claim by defeating Epic's antitrust claims and now has a contractual right to indemnification under the DPLA as a result of Epic's breach. *Carver* is inapposite; for the same reason, the other two cases Epic relies on are also irrelevant. *See Dominick v. Collectors Universe, Inc.*, 2013 WL 990825, at *1 (C.D. Cal. Mar. 13, 2013) (involving fee-shifting for prevailing defendant, with no affirmative counterclaim for breach of contract); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1179 (2002) (same).

Indeed, Epic overstates the import of the *Carver* cases. In *Carver II*, the parties "agreed" that the defendant was not entitled to fees for its Cartwright Act claims because the court in *Carver I* had already construed the parties' contract to exclude them. *Carver II*, 119 Cal. App. 4th at 501, 503. Accordingly, the only "issue before [the court]" in *Carver II* was whether the Cartwright Act—by its own force—permits a prevailing defendant to recover fees and costs for Cartwright Act and non-Cartwright Act claims that "inextricabl[y] overlap." *Id.* at 503. Even assuming *Carver II* answered that question correctly, it addresses only the Cartwright Act, not the Sherman Act. In contrast, Epic's Sherman Act claims and defenses were the crux of this case—Epic did not even appeal its loss of the Cartwright Act claims. *See* C.A.9 Dkt. No. 41; *see also* C.A.9 Dkt. No. 222, at 77 ("Epic's illegality defense [to its breach of contract] rises and falls with its *Sherman Act claims*." (emphasis added)).

Most importantly, Epic has identified no authority (including *Carver*) holding that the one-way fee-shifting provision in the antitrust laws precludes a contractual indemnification claim where the breaching party unsuccessfully asserts an illegality defense. To the contrary, the Ninth Circuit has rejected such an argument under the Sherman Act: "There is no support for appellants' contention that the fee-shifting rule applicable to antitrust claims displaces the different rule set forth in the agreement." *Reudy v. CBS Corp.*, 430 F. App'x 568, 569 (9th Cir. 2011); *cf. Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 761 (9th Cir. 2015) ("[T]he Copyright Act does not preempt California law permitting the enforcement of the Agreement's fee-shifting provision"). Nothing in the antitrust laws, or applicable precedent, precludes giving full effect to the contractual indemnification clause in the DPLA.

\*\*\*

Epic cannot escape the consequences of its own conduct. It chose to breach the DPLA, refused to cure that breach, and then insisted on litigating its defense of illegality under the antitrust laws. All

of the fees, costs, and expenses Apple incurred in this litigation therefore arose from and relate to Epic's breach of contract. They are Losses within the plain terms of the DPLA indemnification provision, and they are recoverable in this Court at this time.

## II. The Court Should Enter Judgment In the Full Amount That Apple Seeks

Apple substantiated the total amount of its fees, costs, and expenses—and the reasonableness of that amount—with ample and compelling evidence. It supported its Motion with (1) a declaration from Apple attesting to the actual spend and showing the accuracy of Apple's billing processes; (2) a declaration from Cornerstone Research making various downward adjustments to ensure that the total request included only fees, costs, and expenses incurred in connection with the domestic *Epic* litigation; (3) a declaration from Apple's lead counsel summarizing the roles of Apple's outside law firms and vendors; and (4) a declaration from California's leading fee expert that the total amount sought is reasonable under California law. *See* Dkt. No. 876. That evidence more than suffices to enter judgment for Apple in the full amount sought—$73,404,326 through October 31, 2023, plus the cost of these proceedings. *See* Supp. Rollins Decl. ¶ 7 (approximately $423,935 in additional Losses to date).

### A. Epic Cannot Unilaterally "Bifurcate" Apple's Indemnification Counterclaim

Epic does not challenge Apple's calculation of its fees, costs, or expenses; nor does it dispute the reasonableness of the amount. Opp. 3–4. It has therefore forfeited any such challenge. *See Winns v. Exela Enter. Sols., Inc.*, 2021 WL 5632587, at *4 (N.D. Cal. Dec. 1, 2021) ("Defendants do not address this argument in opposition and effectively conceded the point."). Contrary to its submission, Epic cannot "reserve its right" to raise those challenges later, after the Court determines the scope of Losses to which Apple is entitled. Opp. 3–4. Epic has no "right" to unilaterally "bifurcate" Apple's indemnification counterclaim in this fashion, which would waste the time and resources of the parties and this Court.

After Apple moved for entry of judgment on its indemnification counterclaim, Epic asked if Apple would agree to divide resolution into "scope" and "amount" phases. *See* Even Decl., Ex. A, at 8 (Jan. 22, 2024 Email from B. Wylly to M. Perry). Apple rejected that proposal because it would unnecessarily prolong resolution of the litigation to the prejudice of Apple. *Id.* at 6–7 (Jan. 23, 2024 Email from M. Perry to B. Wylly). Although Epic initially indicated that it would ask this Court to

1  approve its "bifurcation" proposal, it elected not to do so. Instead, Epic proposed and then stipulated to
2  the current schedule in which its sole opposition brief would be due on February 16, 2024. *Id.* at 5–6
3  (Jan. 25, 2024 Email from B. Wylly to M. Perry) ("Epic can file its opposition by February 16."); *see*
4  *also* Dkt. Nos. 882, 884. This Court accepted the scheduling stipulation and set Apple's Motion for
5  hearing on March 19, 2024. The Court did not authorize any post-hearing proceedings and Epic, having
6  stipulated to the extant schedule, cannot now ask for a different procedure.

7        Epic half-heartedly suggests that "Apple denied Epic reasonable access to the evidentiary support
8  for its claimed fees and costs." Opp. 3. Not so. The four declarations submitted to the Court (and served
9  on Epic) with Apple's Motion were more than sufficient to establish the amount of Losses within the
10 meaning of the indemnification provision. When Epic requested additional information (specifically,
11 some but not all of the materials on which the expert declarants had relied), Apple provided it, with
12 limited redactions for attorney-client privilege and competitively sensitive information, and with one
13 exception for Apple's proprietary billing policies that are not relevant to any issue Epic has raised. *See*
14 Even Decl., Ex. B, at 2–3 (Feb. 12, 2024 Letter from M. Perry to G. Bornstein). Despite Epic's effort to
15 create (and slow-walk) a non-existent dispute about confidentiality, Apple provided the requested
16 information on Monday, February 11—giving Epic plenty of time to finish and file its response on
17 Friday, February 16. *Id.* Tellingly, Epic does not contend that its army of lawyers was incapable of
18 reviewing the limited set of additional information in that time. Nor does Epic contend (much less
19 provide evidence) that it was prejudiced in any way by the timing or content of Apple's voluntary
20 provision of additional information in response to Epic's request. This is confirmed by the fact that Epic
21 did not ask Apple (or this Court) for an extension of time to file its opposition brief, or for leave to
22 conduct formal discovery. The only conclusion to be drawn from this sequence of events is that Epic
23 has reviewed all the evidence and found no grounds to challenge it. The Court should therefore proceed
24 to decide the Motion on that basis.

25       **B. Epic's Quibbles With The Amount Sought Are Meritless**

26       Although Epic does not take issue with Apple's calculations or the reasonableness of the amount
27 sought, it does raise three objections to particular categories of expense that are included in the claimed
28 Losses. Each of these objections is without merit and should be rejected.

1. **1.** Epic first argues that it "appears" that Apple is seeking fees, costs, and expenses "relating to *Cameron* and *Pepper*." Opp. 16. But Apple's Motion and supporting declarations conclusively establish that Apple is seeking only Losses invoiced and paid in connection with the domestic *Epic* litigation, and not for amounts billed to *Cameron* or *Pepper*. Apple maintained separate billing files for the *Epic* matter and is seeking by this Motion only amounts billed to *Epic*. *See* Rollins Decl., Dkt. No. 876-1 ¶¶ 28–29 ▮▮▮ *id.* ¶¶ 33–36; *see also* Supp. Rollins Decl. ¶ 6 ▮▮▮

Contrary to Epic's suggestion, the fact that *Cameron* and *Pepper* lawyers attended depositions noticed in *Epic* does not take the fees associated with those depositions outside of the indemnification clause. Opp. 6, 16. The DPLA requires Epic to indemnify Apple for "any and all" fees, costs, and expenses "arising from" and "related to" its breach of contract; and by noticing and taking depositions, Epic caused Apple to incur fees, costs, and expenses that would not otherwise have been incurred (as, for example, the *Cameron* action resulted in a settlement). They are thus recoverable from Epic under the plain terms of the DPLA. This does not require Epic to "subsidize" Apple's defense in *Cameron* and *Pepper*. Opp. 16. It is exactly the other way around. Epic opted to bring this lawsuit and asked that it proceed on an expedited schedule before the class actions, and thus imposed on the parties and the Court substantial additional costs. As this Court found, Epic had "no interest in the parallel litigation which was pursuing similar ends. Nor did it intend to wait for the resolution of the ongoing *Pepper* and *Cameron* cases." Rule 52 Order at 23–24. Instead, "Epic Games decided it would rush to court with its own plan to protect its self-avowed interests in the 'metaverse.'" *Id.* at 24. That was Epic's choice to make, but it cannot avoid the consequences.

**2.** Epic next argues that the Ninth Circuit's mandate somehow limits Apple to recovering attorneys' fees but not other categories of costs and expenses. Opp. 16–19. That is plainly wrong. The sole indemnification issue on appeal was whether the DPLA's indemnification clause applies to intra-party (as distinguished from third-party) disputes. C.A. 9 Dkt. No. 222, at 87. Epic argued that, under *Alki Partners, LP v. DB Fund Servs.*, LLC, 4 Cal. App. 5th 574, 600–01 (2016), the DPLA

1  indemnification provision cannot be interpreted as applying to "an action *between the parties*" and
2  applied only to Losses "from *third-party* claims." C.A. 9 Dkt. No. 163, at 113–15. The Ninth Circuit
3  rejected this argument, holding that the DPLA applies to intra-party disputes and that Apple is thus
4  entitled to indemnification from Epic. C.A. 9 Dkt No. 222, at 85–87. The Ninth Circuit did not address
5  the amount of indemnification and remanded to this Court for that determination. *Id.*; *see also id.* at 87
6  n.24 ("express[ing] no opinion" about what fees "fall within the scope" of the indemnification provision).

To be sure, Apple and the Ninth Circuit used "attorneys' fees" as shorthand for the "Losses" recoverable under the DPLA. That is because Epic's principal authority phrased the dispute thusly: "Generally, an indemnification provision allows one party to recover costs incurred defending actions by third parties, not *attorney fees* incurred in an action between the parties to the contract." *Alki Partners*, 4 Cal. App. 5th at 600 (emphasis added). But the DPLA is not limited to attorneys' fees; by its plain terms, it requires Epic to indemnify Apple for "any and all . . . *expenses and costs*, *including without limitation, attorneys' fees and court costs* (*collectively*, 'Losses')." PX-2619.40 (DPLA § 10) (emphasis added). The only issue on appeal was Epic's *liability* under the indemnification clause, not the *scope* of that clause (or the amount of Losses recoverable under it) and therefore nothing in the appellate mandate precludes Apple from recovering all of its Losses. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (the "mandate requires respect for what the higher court decided, not for what it did *not* decide." (cleaned up) (quoting *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000))); *see also Ernst v. W. States Chiropractic Coll.*, 40 F. App'x 577, 580 (9th Cir. 2002).

**3.** Finally, Epic argues that Apple is not entitled to the fees, costs, and expenses it incurred in preparing its Motion for Entry of Judgment on the Indemnification Counterclaim. *See* Opp. 19–21. The Ninth Circuit's decision holding Epic liable for indemnification was issued on April 24, 2023. In the following nine months, Epic never offered to pay the judgment (or asked Apple the amount of its Losses). Accordingly, Apple was required to file this Motion, asking this Court to enter judgment—as directed by the Ninth Circuit. *See* Dkt. No. 876-1.

As the moving party, Apple had the burden of substantiating the amount of its Losses. It commissioned experts to verify the amount Apple spent on this matter, to reconcile minor billing discrepancies, and to provide the Court with proof of the exact amount of Losses it incurred and is

1  seeking. *See* Mot. 20–27. Apple discharged this burden so completely that Epic has no response to the showing, saving both this Court and the parties time and resources. And, as Epic does not dispute, parties that are entitled to indemnification are also entitled to "fees on fees." *See, e.g.*, *Minor v. Christie's, Inc.*, 2011 WL 902235, at *6 (N.D. Cal. Jan. 29, 2011) ("[W]hen attorney's fees are authorized by contract, courts allow parties to recover the reasonable expenses of preparing the fee application"), *report and recommendation adopted*, 2011 WL 902033 (N.D. Cal. Mar. 14, 2011). There is no reason that this principle does not apply here, when Apple did all the necessary work upfront, minimizing the total amount of fee litigation.

Epic's lukewarm suggestion that Apple was required to comply with this Court's Local Rule 54-5 (*see* Opp. 20) is wrong. This is not a post-judgment motion for fees and costs; it is a counterclaim for contractual indemnification. Epic's authorities are inapposite because neither involved an indemnification counterclaim asserted in the original action. *See Port of Stockton v. W. Bulk Carrier KS*, 371 F.3d 1119 (9th Cir. 2004); *Zhu v. Li*, 2023 WL 4770431 (N.D. Cal. July 26, 2023). Here, Apple litigated its entitlement to indemnification at trial (and on appeal) in the original action, deferring only the calculation of the amount until after trial. Dkt. No. 779 ¶¶ 842–43; *see also Folsom v. Butte Cnty. Ass'n of Governments*, 32 Cal. 3d 668, 678 n.16 (1982) ("[W]here attorney fees are . . . sought in a proceeding as damages . . . then the claim for attorney fees is part of the damage sought in the principal action."). The California Supreme Court has endorsed this procedure. *See Brandt v. Superior Ct.*, 37 Cal. 3d 813, 819 (1985) ("Since the attorney's fees are recoverable as damages, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise. A stipulation for a postjudgment allocation and award by the trial court would normally be preferable since the determination then would be made after completion of the legal services." (internal citation omitted)). Epic's suggestion that Apple is not entitled to its fees in connection with this Motion is baseless.

***

Epic has no substantive response to Apple's evidence establishing the amount of Losses under the DPLA indemnification provision. Epic should not be given a second whack at the piñata at some undefined time in the future. And the three minor issues it does raise are meritless. Accordingly, Apple should be awarded the full amount it sought and substantiated.

## CONCLUSION

For the reasons above and set forth in Apple's Motion, the Court should enter judgment on Apple's Indemnification Counterclaim, awarding $73,404,326 through October 31, 2023 plus $423,935 since then, as Losses under the DPLA.

Dated: March 1, 2024

Respectfully submitted,

By: */s/ Mark A. Perry*
WEIL, GOTSHAL & MANGES LLP

Mark A. Perry

Attorney for Apple Inc.