GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant*
*Epic Games, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>Plaintiff, Counter-defendant,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH<br><br>**EPIC GAMES, INC.'S OPPOSITION<br>TO STAY OF REMAND PROCEEDINGS**<br><br>Date:  August 11, 2026<br>Time:  9:00 a.m.<br>Courtroom:  1, 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................3

I.    BECAUSE THIS COURT WILL NEED TO DETERMINE AN APPROPRIATE FEE REGARDLESS OF THE SUPREME COURT'S DECISION, IT IS MOST EFFICIENT TO BEGIN THAT PROCESS NOW. ............................................................3

II.   ALL OF THE FACTORS GOVERNING STAYS WEIGH DECISIVELY AGAINST A STAY HERE. ....................................................................................7

    A.    A Stay Will Harm Epic, Other Developers, App Distributors, Other Payment Solution Providers, and the Public By Continuing to Frustrate Steering. ....................................................................................................7

    B.    Apple Will Not Be Harmed in the Absence of a Stay. ............................8

    C.    A Stay Will Not Conserve Judicial or Party Resources.........................10

CONCLUSION......................................................................................................................11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brown v. Plata*, 563 U.S. 493 (2011)................................................................................4

*Chinaryan v. City of L.A.*, 122 F.4th 823 (9th Cir. 2024) ...................................................2

*Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162 (9th Cir. 2025)..................................1, 4, 5

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982).............................................4

*In re A.F. Moore & Assocs., Inc.*, 974 F.3d 836 (7th Cir. 2020) ........................................2

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ........................................................................3

*McElrath v. Uber Techs., Inc.*, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017)...................8

*Robinson v. Dignity Health*, 2016 WL 7102832 (N.D. Cal. Dec. 6, 2016) ...............3, 7, 10

**INTRODUCTION**

This is Apple's ***third*** attempt to delay the inevitable:  a hearing to evaluate Apple's proposed fee on steered transactions.  This latest attempt should be denied for the same reason Apple's prior attempts at delay failed:  the Ninth Circuit's unequivocal finding (nowhere mentioned in Apple's Motion) that "[e]ven if the Supreme Court agrees with Apple's arguments [regarding contempt], there would still be further proceedings on remand, particularly on the question of commission, ***and those proceedings are likely to look similar, if not the same, regardless of certiorari***."  Order Granting Motion to Reconsider Stay and Denying Stay, App. Dkt. 192.1, at 3 (emphasis added) ("Order Denying Stay").  Those proceedings can and should move forward now.  All that is before the Supreme Court is a narrow question regarding the standard for finding contempt.  The Supreme Court denied certiorari on Apple's proposed question about the scope of this Court's Injunction, and the Ninth Circuit expressly authorized this Court to consider on remand whether and how that Injunction should be modified—a question entirely unrelated to contempt.  This Court should therefore carry out the Ninth Circuit's mandate, deny Apple's latest stay request, and proceed with the remand proceedings.

\*       \*       \*

In December 2025, the Ninth Circuit held that Apple may collect a fee on the steered transactions that this Court's Injunction requires Apple to allow.  But the Ninth Circuit prohibited Apple from charging such a fee "until such time as the district court has approved an appropriate fee." *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1188 (9th Cir. 2025).  The Court of Appeals instructed that the parties should "seek the court's approval of [Apple's] proposed fee ***expeditiously***." *Id*. (emphasis added).

Despite this clear directive, Apple has twice tried—and failed—to stall the remand proceedings.  The Ninth Circuit denied Apple's motion to stay its mandate, finding—as noted above—that these remand proceedings would proceed in much the same way "regardless of certiorari," and that Apple therefore had not shown "good cause" or "irreparable harm" to justify a stay. Order Denying Stay at 3.  Thus, the Ninth Circuit already rejected the argument—at the heart of Apple's current Motion—that Supreme Court review would negate the need for remand

proceedings or materially change their scope.  Apple's emergency stay application to the Supreme Court was thereafter denied by Justice Kagan (as Circuit Justice for the Ninth Circuit).  Supreme Court Denial of Stay Application, No. 25A1213 (U.S. May 6, 2026) (Kagan, J., in chambers).

The Ninth Circuit's finding fatally undermines all of Apple's purported justifications for its current Motion—its third bite at the proverbial apple.  Apple cites **no precedent** where a district court granted a stay notwithstanding an appellate court's prior decision that a stay is unwarranted—much less where the appellate court addressed and rejected the exact basis on which the stay is sought.  This case should not be the first.  To the contrary, this Court ought to "faithfully carry out both the letter and the spirit of [the Ninth Circuit's] mandates," as the mandate rule requires. *Chinaryan v. City of L.A.*, 122 F.4th 823, 824 (9th Cir. 2024) (internal quotation marks omitted) (concluding that district courts retain discretion to stay cases only when the appellate court has *not* foreclosed a stay or indicated when the district court should proceed); *In re A.F. Moore & Assocs., Inc.*, 974 F.3d 836, 842 (7th Cir. 2020) (per curiam) (vacating stay because "a district court can exercise its inherent authority only consistent with our mandate and our mandate foreclosed a stay pending certiorari").  That is especially so given the Ninth Circuit's decisions requiring that the remand proceedings happen "expeditiously" and "regardless of certiorari." *Epic Games, Inc. v. Apple Inc.*, 161 F.4th at 1188; Order Denying Stay at 3.

Even aside from the fact that the Ninth Circuit and Justice Kagan have already rejected the precise stay Apple is seeking here, Apple's Motion fails on the substance.  A stay would not simplify the issues presented in the remand proceedings because this Court will need to conduct "similar, if not the same" proceedings regardless of how the Supreme Court decides the case.  Order Denying Stay at 3.  Moreover, a stay would cause serious harm to Epic and the other participants in the markets affected by Apple's misconduct, whereas denial of the stay will cause Apple no cognizable harm at all.

Apple seeks delay (even though it is not currently charging a fee) because it knows that most developers will not adopt the steering authorized by this Court's Injunction until developers know what fee Apple will be allowed to impose.  That is because developers must expend resources adjusting their apps and business models, developing or contracting for payment

services, and educating their users about alternative payment options—which are costs and risks that most developers are unwilling to incur until they know what Apple will charge them on steered transactions.[1]  Every day that Apple delays the remand proceedings is another day that Apple's in-app purchasing (IAP) faces no competition, allowing Apple to extract supracompetitive profits at the expense of Epic and other market participants.  This is the ***only*** real reason why Apple is requesting a delay of up to another year (until the Supreme Court issues its final opinions for the term in June 2027).

As this Court noted in *Robinson v. Dignity Health*, featured in Apple's Motion (at 2), "if there is even a fair possibility that the stay for which he prays will work damage to someone else, the party moving for a stay must make out a clear case of hardship or inequity in being required to go forward."  2016 WL 7102832, at \*2 (N.D. Cal. Dec. 6, 2016) (Gonzalez Rogers, J.) (cleaned up) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).  There is indeed a "fair possibility" of damage to Epic here, but Apple comes nowhere close to establishing such a clear case of hardship or inequity.  The Court should therefore deny Apple's Motion, triggering Apple's obligation to file its evidentiary proffer within 24 hours, as the parties stipulated.  Joint Stipulation and Order Regarding Continuance of Remand Deadlines and Motion to Stay Briefing Schedule, Dkt. 1696, at 2 ("Joint Stipulation").  The parties will then meet and confer to propose a revised schedule for the expedited resolution of the remand proceedings.

## ARGUMENT

**I.    BECAUSE THIS COURT WILL NEED TO DETERMINE AN APPROPRIATE FEE REGARDLESS OF THE SUPREME COURT'S DECISION, IT IS MOST EFFICIENT TO BEGIN THAT PROCESS NOW.**

The central premise of Apple's Motion is that the Supreme Court's decision could eliminate the need for, or significantly alter the scope of, the remand proceedings required by the

---

[1] For example, *Apple Magazine* has predicted that "[d]evelopers will likely await the next phase of proceedings where that [steering] fee structure is hammered out, alongside any design or interface rules governing how links appear relative to Apple's in-app purchase buttons" and consequently that "[c]onsumers are unlikely to see immediate change."  *Apple Magazine*, "Apple Can Charge Commission on External Payment Links After Appeals Court Modifies Epic Ruling" (December 18, 2025), *available at* http://applemagazine.com/apple-app-store-external-payment-fees/.

Ninth Circuit's mandate. But Apple's central premise is flatly contradicted by the Ninth Circuit's decision not to stay its mandate "regardless of certiorari." Order Denying Stay at 3. Apple's Motion therefore urges this Court to disregard the Ninth Circuit's instructions about the character of the remand proceedings and the continued need for them to happen, regardless of how the Supreme Court rules on the narrow legal question it accepted for review. The Court should reject that invitation.

The Ninth Circuit instructed this Court to consider "two avenues" on remand: (1) the Court can modify the contempt sanction to be a "conditional civil contempt sanction" that is purgeable when Apple proves an appropriate fee, or (2) the Court can modify the Injunction to clarify what fee Apple may (and may not) charge. *Epic Games*, 161 F.4th at 1187. Only the first of these avenues is potentially implicated by the Supreme Court's review. Specifically, the Supreme Court granted review to decide a single narrow question: whether the Ninth Circuit erred in supposedly relying on the "spirit" of the Injunction when it affirmed some of this Court's contempt findings. Order Granting Certiorari, No. 25-1311 (U.S. June 30, 2026) (granting petition limited to Question Presented 1); Petition for Certiorari by Apple Inc., No. 25-1311, at i (May 21, 2026) (hereinafter, "Petition").

This Court's authority to modify the Injunction prospectively—the second avenue identified by the Ninth Circuit—does not hinge on the contempt findings. It rests instead on this Court's plenary equitable authority, which is at least as broad as the Court's civil contempt authority. *See Brown v. Plata*, 563 U.S. 493, 542 (2011) ("The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible.") (citation omitted). Thus, even if Apple convinces the Supreme Court to vacate some of the contempt findings as erroneous, and regardless of what the Supreme Court may say about the law governing contempt, this Court would still need to modify the Injunction to prevent Apple from charging commissions

that frustrate or circumvent the Injunction's goals.  The Court can and should proceed to do that now.[2]

Apple's assertion that this Court's modification power depends on the survival of the contempt findings, Mot. at 5 n.1, 8, is both wrong and flatly inconsistent with Apple's own position throughout the appellate proceedings.  In its appeal brief in the Ninth Circuit, Apple argued that, ***even in the event of a complete reversal of the contempt order***, "[o]n remand, the district court can hold a proceeding to consider whether the injunction should be modified to prohibit Apple's existing commission."  Opening Br. of Apple Inc., App. Dkt. 59.1, at 37.  And in the Supreme Court, Apple likewise conceded:  "[o]f course, nothing prohibits a district court from modifying and enlarging an injunction if new circumstances arise or it becomes clear that an existing order is insufficient to remedy a violation."  Petition at 22.  Apple also relied on an amicus brief submitted by federal courts professors, who explained that even in the absence of contempt, "[m]odification is always possible for injunctions."  Apple's Reply in Support of Petition for Certiorari, No. 25-1311, at 11; Amicus Br. of Prof. Bray et al. in Support of Neither Party, App. Dkt. 80.1, at 14.  Apple never argued that vacatur of the contempt findings would preclude modification; rather, it affirmatively argued the opposite when it was strategic to do so.[3]

Apple also asserts that a Supreme Court decision could have "a significant impact" on the evidence the parties will need to present or on the manner in which this Court decides the remand issues.  Mot. at 1, 5.  That again ignores the Ninth Circuit's directive.  The Ninth Circuit's

---

[2] Because the Injunction is separate from the contempt findings that the Court is reviewing, the Injunction-modification avenue will not require this Court to address any "aspects of the case involved in the appeal" in the Supreme Court.  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  Further, to be clear, even if the Supreme Court ***accepts*** Apple's position on the law of contempt, that should not affect the finding that Apple's commission violated the Injunction.  Although the Ninth Circuit invoked the "spirit of the Injunction" when addressing ***certain*** of this Court's contempt findings, it did not invoke the spirit when addressing the commission finding.  *Epic Games*, 161 F.4th at 1180-81.  That is another reason why the remand proceedings regarding the commission should proceed now.

[3] Apple cherry-picks quotes from Epic's appeal brief to suggest that Epic agreed that the power to modify the Injunction rises or falls with the contempt findings.  *See, e.g.*, Mot. at 4, 7-8.  That is not so.  Epic's brief noted that it was "undisputed" that "the district court could modify the Injunction to ensure its effectiveness in the face of factual developments" regardless of contempt, which supported affirmance of this Court's no-commission rule "on the alternative ground that modification was proper."  Epic Response Br., App. Dkt. 124.1, at 51-52.

decision mapped out the "possible courses of action" this Court could follow to determine an appropriate fee—and they do not depend on the finding of contempt. *Epic Games*, 161 F.4th at 1187. For example, the Ninth Circuit explained that "Apple should be able to charge a commission on linked-out purchases based on the costs that are genuinely and reasonably necessary for its coordination of external links for linked-out purchases, but no more." *Id.* That directive will govern the remand proceedings ***regardless of*** whether this Court decides to set the appropriate fee as part of a civil contempt sanction or as a modification to the Injunction. That is why the remand proceedings will "look similar, if not the same" regardless of the Supreme Court's decision.

Finally, Apple also asserts that "the Supreme Court's decision may provide guidance concerning the scope of this Court's initial injunction." Mot. at 2. But the Supreme Court ***denied*** Apple's express request to review the scope of the merits Injunction and instead chose to limit its review to a narrow issue of contempt law that at most implicates a subset of the contempt findings, not the underlying Injunction itself. *See* Petition at i (asking the Court to review, under Question Presented 2, whether the scope of the Injunction is consistent with "longstanding equitable principles"); Order Granting Certiorari, No. 25-1311 (declining to grant Question 2).

Accordingly, the most efficient path forward is for Apple to propose an appropriate fee and for Epic to respond in short order. Indeed, Apple was just days away from filing its evidentiary proffer when certiorari was granted—and Apple agreed to file its proffer 24 hours after this Court denies a stay, *see* Joint Stipulation at 2—so Apple has obviously already selected a proposed fee and has marshaled its evidence to try to justify it. Apple has never claimed that its evidentiary proffer will depend on whether the Court is considering the contempt avenue, modification avenue, or both, nor could it credibly do so, because both of those avenues will involve the same evidence and the same issues to be decided.

In sum, because the Court must consider modifying the Injunction regardless of what the Supreme Court decides, the remand proceedings ought to go forward now, so that this Court can rule on the modification without a year's delay. The Court can also determine whether

EPIC GAMES, INC.'S OPPOSITION
TO STAY OF REMAND PROCEEDINGS                6                CASE NO. 4:20-CV-05640-YGR-TSH

to rule on the contempt sanctions too, or instead to reserve decision on those sanctions until after the Supreme Court's decision. But there is no reason to stay remand proceedings that are inevitable, thereby further delaying the effectiveness of an Injunction that is already nearly five years old and that Apple has been actively frustrating since it became effective in January 2024.

**II.      ALL OF THE FACTORS GOVERNING STAYS WEIGH DECISIVELY AGAINST A STAY HERE.**

All of the factors on which Apple relies weigh decisively against a stay.

**A.      A Stay Will Harm Epic, Other Developers, App Distributors, Other Payment Solution Providers, and the Public By Continuing to Frustrate Steering.**

Apple is wrong to claim that, because Apple is currently not charging a commission on steered transactions, a stay "would not result in damage to anyone" and "Epic cannot credibly claim any prejudice." Mot. at 4. Epic already established, in opposition to each of Apple's prior stay requests, the harm that would result from a stay: harm to itself, harm to competition, and harm to the other participants in the markets affected by Apple's anticompetitive conduct. *See* Epic's Response to Application for Stay Pending Disposition of Petition for a Writ of Certiorari, No. 25A1213, at 20-22; Opposition to Motion to Stay Injunction, Dkt. 824, at 23-25; Opposition to Motion to Stay Mandate, App. Dkt. 189.2, at 12. Since the Ninth Circuit's decision to remand this case, it has become clear that many developers will not adopt steering until they know with finality what commission Apple will be allowed to impose on steering. The implementation of steering requires developers to invest resources to modify their apps, develop or procure a reliable payment solution, and expend resources on educating users, who have been conditioned over years to complete all purchases using IAP. Developers are understandably reluctant to undertake these investments and make the required adjustments to their apps and business models while there is uncertainty as to what they may have to pay Apple on steered transactions.

As a result, the increased competition that the Injunction sought to facilitate has not yet been realized, Apple has not faced the pricing pressure the Injunction sought to introduce, and Apple therefore has not reduced its supracompetitive IAP fees. Epic is being harmed by this

delay thrice over:  it must pay these supracompetitive fees when consumers using Epic's apps transact through IAP, and developers are reluctant to steer users to Epic's store or adopt Epic's payment solution.  That harm is fatal to Apple's Motion.  *See Robinson*, 2016 WL 7102832, at \*2 (a "fair possibility" of harm will preclude a stay absent "a clear case of hardship or inequity") (quotation marks and citation omitted).

It is telling that when this Court first issued its Contempt Order enforcing the Injunction, Apple raced to the Ninth Circuit to file an unsuccessful emergency motion for a stay of the "no commission" sanction, complaining that that sanction would cost Apple "hundreds of millions to billions" annually and threaten the very integrity of its ecosystem.  Apple Emergency Motion for Stay, App. Dkt. 7.1, at 5, 22.  Yet now, Apple is desperately trying to *delay* the proceedings that would allow it to resume imposing a steering commission, thereby maintaining the very situation Apple previously said constituted an existential threat.  The reason for this stark change in Apple's position is that Apple has found that, by perpetuating uncertainty, it can deter the uptake of steering.  This is the same calculation that Apple made during the contempt hearing: every day of delay means another day of supracompetitive profits.  That is the sole reason for the instant Motion.[4]

**B.    Apple Will Not Be Harmed in the Absence of a Stay.**

Apple is wrong to claim that it faces "obvious, material and potentially irreparable harms" in the absence of a stay.  Mot. at 5.  The Ninth Circuit rejected this, concluding that Apple established no "irreparable harm" or even "good cause" for a stay—in part because the remand proceedings will need to occur in a similar fashion regardless of the Supreme Court's decision.  Order Denying Stay at 3.  While Apple complains about needing to "litigate its commission rate"

---

[4] Apple argues that by agreeing to an expedited briefing schedule before the Supreme Court, Epic "effectively acknowledged" that the Supreme Court decision should precede the remand proceedings.  Mot. at 4.  Apple has it backwards.  Epic affirmatively proposed the expedited briefing schedule *because* Epic wanted to remove the cloud of uncertainty deterring developers from steering as quickly as possible—the same cloud Apple is trying to sustain with its current Motion.  For that very reason, Epic consistently opposed Apple's requested stays, insisting remand proceedings take place in parallel with expedited Supreme Court proceedings.  *See* Epic's Response to Application for Stay Pending Disposition of Petition for a Writ of Certiorari, No. 25A1213, at 2, 12-20; App. Dkt. 189.2, at 4, 6-11.

and "proceed with sensitive remand litigation," Mot. at 5, Apple will need to do those things no matter how the Supreme Court rules on the narrow question under review.

Even if Apple did have to incur additional expenditures on litigating the remand proceedings, Apple cannot seriously argue that such expenditures constitute irreparable harm to Apple. Indeed, Apple concedes that the "ordinary course of litigation" cannot itself justify a stay. Mot. at 7. Instead, each of the cases on which Apple relies granted a stay because the pending appellate court's decision would have some "significant impact" on the need for or the scope of the proceedings and thus potentially save *significant* party and Court resources. *See, e.g.*, *McElrath v. Uber Techs., Inc.*, 2017 WL 1175591, at *6 (N.D. Cal. Mar. 30, 2017) ("significant impact"). Apple here cannot make such a showing, which is outright negated by the findings of the Ninth Circuit.[5]

Apple's complaint that this Court's decision "could produce spill-on effects in app marketplaces across the globe that would be difficult—and perhaps impossible—to undo"—an argument Apple tried unsuccessfully before the Supreme Court, *see* Apple Application for Stay Pending Disposition of Petition for a Writ of Certiorari, No. 25A1213, at 36 & n.3—piles speculation on top of speculation. Mot. at 5-6. Judicial proceedings in the United States should not be delayed by a guess about how those proceedings might or might not influence foreign regulators, courts, or markets. Other sovereign governments are entitled to make their own regulatory decisions under their own laws and should be presumed capable of doing so. And, again, because the remand proceedings are still necessary regardless of certiorari, Apple cannot avoid such risk.

Apple also complains that, during the remand proceedings, it will have to bear the label of "contemnor." Mot. at 6. But both this Court and the Ninth Circuit found that Apple

---

[5] Apple's related attempt to portray these proceedings as at an "early stage" is pure gaslighting. Mot. at 5. This Court determined that Apple violated the UCL and enjoined its anti-steering rules in 2021, and that decision was affirmed in 2023. As the Court well knows, the only reason that the case still continues is Apple's decision to spend years evading compliance with the Injunction, misleading the Court about its conduct and delaying or concealing the necessary discovery that this Court ended up ordering Apple to produce. Nothing about the Supreme Court's decision will change those facts, regardless of whether they are styled as contempt or not.

violated the text of the Injunction in numerous ways; the Supreme Court's decision about the "spirit of the Injunction" will not disturb these findings or relieve Apple of the contemnor label. Order Granting Epic Games, Inc.'s Motion to Enforce Injunction, Doc. 1508, at 1-3, 55-59; *Epic Games*, 161 F.4th at 1181. And the Ninth Circuit already rejected as meritless Apple's argument that this Court cannot fairly and impartially handle the remand proceedings because of its finding that Apple willfully violated the Injunction. *Epic Games*, 161 F.4th. at 1193.

**C.      A Stay Will Not Conserve Judicial or Party Resources.**

A stay will not conserve the Court's or the parties' resources, because the remand proceedings will need to happen in materially the same form irrespective of the Supreme Court's decision. That decision therefore will not "obviate the need for these proceedings" or "change the governing legal framework," as Apple contends. Mot. at 6. As noted above, the Court would need to consider whether to modify the Injunction, using equitable authority that is independent of any contempt findings. And even if the Supreme Court's decision might affect how this Court resolves the other potential avenue—civil contempt sanctions—the parties will need to submit the same (or at least very similar) evidence no matter which avenue this Court is considering. Indeed, Apple's evidentiary proffer is already prepared, ready to be filed on 24 hours' notice; there can be no prejudice in requiring Apple to make that filing so that Epic can begin preparing its response. Following the submission of evidence, the Court can consider modifying the Injunction as instructed by the Ninth Circuit's remand, and then determine when and how to address the contempt sanctions in light of its decision on modifying the Injunction and the status of the Supreme Court case at that time.

Apple cites numerous cases in which district courts entered stays pending appeal, but (as noted above) none of that precedent granted a stay notwithstanding an appellate court's determination that a stay would be improper—much less through the *two* levels of appeal that rejected a stay here. Nor did any of that precedent conclude that a stay would be proper when (as here) the district court has been instructed to undertake remand proceedings independent of the specific legal issue under review on appeal. Rather, each case cited by Apple concluded that a stay was justified because a forthcoming appellate decision was potentially "controlling" or

"central to" the district court proceedings, or would even "dispose of" the case altogether. Mot. at 6-7. But here, the Court's power to modify the Injunction does not depend on the contempt proceedings, which (as noted above) Apple itself already told the Ninth Circuit and the Supreme Court.

**CONCLUSION**

Apple offers no basis for staying the remand proceedings that will need to occur whatever the Supreme Court decides, much less the "clear case" that is required to stay these proceedings in the face of the serious harm to Epic and to others that would result from a stay. *Robinson*, 2016 WL 7102832, at *2. Apple's Motion should be denied, and Apple should file its evidentiary proffer within 24 hours, as Apple stipulated it would do. *See* Joint Stipulation at 2.

Dated:  June 10, 2026

Respectfully submitted,

/s/  Gary A. Bornstein

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*