No. 26A___ (25-1311)

# In the
# Supreme Court of the United States

APPLE INC.,

*Applicant,*

v.

EPIC GAMES, INC.,

*Respondent.*

**APPLICATION DIRECTED TO THE HONORABLE
ELENA KAGAN TO STAY LOWER-COURT PROCEEDINGS PENDING THIS
COURT'S DECISION ON THE CONTEMPT ISSUE**

SARAH M. RAY
LATHAM & WATKINS LLP
505 Montgomery Street Suite 2000
San Francisco, CA 94111

BEN HARRIS
LATHAM & WATKINS LLP
1271 Avenue of the
  Americas
New York, NY 10020

GREGORY G. GARRE
  *Counsel of Record*
ROMAN MARTINEZ
SOREN J. SCHMIDT
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207
gregory.garre@lw.com

*Counsel for Petitioner-Applicant Apple Inc.*

August 12, 2026

## PARTIES TO THE PROCEEDING

Petitioner-Applicant Apple Inc. (AAPL) was Defendant-Counter-Claimant – Appellant below.

Respondent Epic Games, Inc. was Plaintiff-Counter-Defendant – Appellee below.

## RULE 29.6 STATEMENT

Pursuant to Rule 29.6 of the Rules of this Court, Applicant Apple Inc. (AAPL) states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

## RELATED PROCEEDINGS

The following cases are related to this proceeding under Rule 14.1(b)(iii):

- *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. Sept. 10, 2021) (No. 4:20-cv-05640-YGR)

- *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. Apr. 24, 2023) (Nos. 21-16506, 21-16695)

- *Epic Games, Inc. v. Apple Inc.*, 144 S. Ct. 682 (*cert. denied* Jan. 16, 2024) (No. 23-337)

- *Apple Inc. v. Epic Games, Inc.*, 144 S. Ct. 681 (*cert. denied* Jan. 16, 2024) (No. 23-344)

i

**TABLE OF CONTENTS**

**Page**

PARTIES TO THE PROCEEDING ................................................................................... i

RULE 29.6 STATEMENT ............................................................................................... i

RELATED PROCEEDINGS............................................................................................ i

TABLE OF AUTHORITIES .........................................................................................iii

BACKGROUND ........................................................................................................... 6

ARGUMENT ............................................................................................................... 13

I.    THIS COURT SHOULD STAY THE DISTRICT COURT
      PROCEEDINGS PENDING A DECISION BY THIS COURT ON THE
      CONTEMPT ISSUE............................................................................................ 14

      A.    This Court's Decision Could Obviate The Need For Further
            Proceedings Or Fundamentally Change Their Nature ....................... 14

      B.    Apple Faces Immediate And Irreparable Harm From Further
            Proceedings And The Balance Of Harms Favors A Stay..................... 21

II.   AN ADMINISTRATIVE STAY IS WARRANTED........................................... 27

CONCLUSION............................................................................................................ 28

APPENDICES

Appendix 1:   Order Denying Apple's Motion to Stay Proceedings, *Epic Games, Inc.
              v. Apple Inc.*, No. 4:20-cv-05640 (N.D. Cal. Aug. 11, 2026), Dkt. No.
              1706

Appendix 2:   Transcript of Proceedings, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-
              05640 (N.D. Cal. Aug. 11, 2026)

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Airbnb Inc. v. City of New York,*
373 F. Supp. 3d 467 (S.D.N.Y. 2019) .................................................................... 24

*Alaska Department of Fish & Game v. Federal Subsistence Board,*
139 F.4th 773 (9th Cir. 2025).................................................................................. 16

*Apple Inc. v. Epic Games, Inc.,*
144 S. Ct. 681 (2024) ................................................................................................ 7

*Apple Inc. v. Epic Games, Inc.,*
2026 WL 1871316 (U.S. June 30, 2026) ................................................................ 11

*Apple Inc. v. Samsung Electronics Co.,*
2016 WL 9021536 (N.D. Cal. Mar. 22, 2016) ................................................. 19, 20

*City of Coral Springs Police Officers Pension Plan v. Apple Inc.,*
2026 WL 2076157 (N.D. Cal. July 17, 2026) ........................................................ 20

*Baltimore & Ohio Railroad Co. v. United States,*
386 U.S. 372 (1967) ................................................................................................ 23

*Epic Games, Inc. v. Apple Inc.,*
144 S. Ct. 682 (2024) ................................................................................................ 7

*Epic Games, Inc. v. Apple Inc.,*
161 F.4th 1162 (9th Cir. 2025)......................................................................... 16, 17

*Epic Games, Inc. v. Apple Inc.,*
2026 WL 1215632 (9th Cir. Apr. 28, 2026)....................................................... 6, 10

*Epic Games, Inc. v. Apple Inc.,*
559 F. Supp. 3d 898 (N.D. Cal. 2021) ..................................................................... 7

*Epic Games, Inc. v. Apple, Inc.,*
67 F.4th 946 (9th Cir. 2023).................................................................................... 7

*FTC v. Qualcomm Inc.,*
935 F.3d 752 (9th Cir. 2019) .................................................................................. 23

*Heckler v. Turner,*
468 U.S. 1305 (1984) ................................................................................................ 6

**Page(s)**

*Hollingsworth v. Perry,*
 558 U.S. 183 (2010) ................................................................................. 13

*Institute of Cetacean Research v. Sea Shepherd Conservation Society,*
 774 F.3d 935 (9th Cir. 2014), *cert. denied,* 576 U.S. 1005 (2015) .......................... 8

*International Longshoremen's Association v. Philadelphia Marine*
 *Trade Association,*
 389 U.S. 64 (1967) ................................................................................... 22

*International Union, United Mine Workers of America v. Bagwell,*
 512 U.S. 821 (1994) ................................................................................. 22

*Landis v. North American Co.,*
 299 U.S. 248 (1936) ........................................................................... 13, 20

*Life Spine, Inc. v. Aegis Spine, Inc.,*
 8 F.4th 531 (7th Cir. 2021) ...................................................................... 21

*Mayberry v. Pennsylvania,*
 400 U.S. 455 (1971) ................................................................................. 22

*Medicine Shoppe International, Inc. v. S.B.S. Pill Dr., Inc.,*
 336 F.3d 801 (8th Cir. 2003) .................................................................... 21

*NCAA v. Board of Regents of the University of Oklahoma,*
 463 U.S. 1311 (1983) ............................................................................... 23

*Ohio v. EPA,*
 603 U.S. 279 (2024) ................................................................................. 25

*Reich v. Sea Sprite Boat Co.,*
 64 F.3d 332 (7th Cir. 1995) ................................................................. 21, 22

*Robert Half International Inc. v. Billingham,*
 315 F. Supp. 3d 419 (D.D.C. 2018) ..................................................... 24, 25

*In re Terry,*
 128 U.S. 289 (1888) ................................................................................. 22

*United States v. Wendy,*
 575 F.2d 1025 (2d Cir. 1978) .................................................................... 21

*Western Airlines, Inc. v. International Brotherhood of Teamsters,*
 480 U.S. 1301 (1987) ................................................................................. 6

**Page(s)**

## OTHER AUTHORITIES

Apple, *App Store in the U.S. facilitated over $400 billion in developer billings and sales in 2024* (May 29, 2025, update), https://www.apple.com/newsroom/2025/05/appstore-in-the-us-facilitated-406-billion-usd-in-developer-billings-and-sales-in-2024/ .................... 23

Sharon Driscoll, Stanford Institute for Economic Policy Research, *Q&A: What's at stake in the Epic Games v. Apple case* (May 11, 2021), https://siepr.stanford.edu/news/qa-whats-stake-epic-games-vs-apple-case ................................................................................................... 24

Simon Thomsen, *The competition watchdog just got a seat at the table in the Epic Games compensation battle with Apple*, startupdaily (Apr. 21, 2026), https://www.startupdaily.net/topic/global-tech/the-competition-watchdog-just-got-a-seat-at-the-table-in-the-legal-battle-between-epic-games-and-apple/ ................................................................ 24

11A Wright & Miller's *Federal Practice & Procedure* § 2948.1 (3d ed. 2026, online) ................................................................................................. 21

v

TO THE HONORABLE ELENA KAGAN, ASSOCIATE JUSTICE OF THE SUPREME COURT OF THE UNITED STATES AND CIRCUIT JUSTICE FOR THE NINTH CIRCUIT:

Apple respectfully asks this Court to stay the district court proceedings in this case to prevent the district court from requiring Apple to participate in an evidentiary proceeding under the incorrect and highly prejudicial label of a contemnor, and under an erroneous decision with remand instructions that cannot stand if Apple prevails on the threshold issue that this Court has agreed to review. After this Court granted certiorari in this case, Apple promptly asked the district court to stay the remand ordered by the Ninth Circuit until this Court resolved the threshold contempt question. Yesterday, following a brief hearing, the district court rejected Apple's stay request and ordered Apple to submit an evidentiary proffer by 6:20 p.m. ET tonight, August 12, justifying a commission on link-out purchases under the very Ninth Circuit decision this Court granted certiorari to review. Apple therefore has been left with no practical choice but to file this emergency application directly with this Court to ensure that this Court can complete its review of the threshold question presented before any remand proceedings under the Ninth Circuit's decision commence.

On June 30, 2026, this Court granted certiorari to address whether the Ninth Circuit applied the proper civil contempt standard in holding that Apple acted in civil contempt by charging a certain commission on link-out purchases. As Apple explained in its certiorari petition, that contempt question is "outcome determinative." Pet. 3. Indeed, in the Ninth Circuit, Epic itself argued that the remedial issue cannot be "untethered" from the contempt finding. ECF No. 124.1 at 31. Yet, despite this Court's decision to review the civil contempt finding at the heart

1

of this dispute, the district court has ordered Apple to immediately submit to an evidentiary proceeding premised on that finding and the Ninth Circuit decision under review. The ostensible purpose of that proceeding is to amend the civil contempt order to set Apple's commission rate on link-out purchases according to the legal framework articulated in the Ninth Circuit's decision currently before this Court.

These extraordinary circumstances warrant immediate intervention from this Court. If this Court reverses the Ninth Circuit's decision affirming the district court's contempt finding, there will be no justification for any remand proceeding to set Apple's commission rate. As Apple made clear in its petition for certiorari, whether the district court lawfully held Apple in civil contempt is a "threshold question," and "[i]f the answer is no . . . , then there is no need, or basis, for any remand on the commission issue." Pet. 32. In the meantime, Apple faces irreparable harm by being forced to undergo this critical remedy proceeding under the incorrect and prejudicial label of a contemnor, and by being forced to disclose highly sensitive business information with global business ramifications. And Epic faces no concrete harm, while it enjoys a windfall in that Apple remains barred from charging a commission.

The district court's hearing and order yesterday underscore that these risks are real and imminent. At the hearing, the district court reiterated its view that Apple violated the "spirit of the injunction," Stay Tr. 7:5-7 (*see* Appendix 2). The court made clear it felt bound by the Ninth Circuit decision now before this Court, reasoning that "[t]he current charge from the Ninth Circuit is to oversee proceedings reflecting the appropriate commission" Apple should be allowed to charge, Dkt. 1706

at 2 (*see* Appendix 1), and it explained that the legal framework articulated in the Ninth Circuit's opinion will govern these imminent remand proceedings, *see* Stay Tr. 6:6-11. And the court made clear Apple is already being prejudiced by the court's prior contempt findings, stating: "I don't know if this is going to be an easy process or not. I'm certainly not betting money on it given Apple's prior conduct, but we'll see." Stay Tr. 8:20-22. Yet all of this will change if this Court agrees with Apple that the courts below erred in holding that Apple acted in civil contempt by charging the commission. That not only will wipe out the contempt finding as to the commission that is the subject of the remand proceeding, but it will also obviate the basis for any remand to amend the civil contempt order—and the Ninth Circuit's "charge" for that proceeding.

Calling the remand proceeding a "modification" changes nothing. The Ninth Circuit's decision is clear: it repeatedly states that the remand was to amend or modify the district court's *April 30, 2025 civil contempt order*, nothing else. Pet. App. 10a, 29a, 34a. And the legal framework the district court is purporting to rely on for modifying the injunction is governed by the very Ninth Circuit opinion that is now the subject of further review in this Court. Epic advanced the same argument in its brief opposing certiorari, stating that "even if this Court reversed the contempt finding, the district court would remain free to make exactly the same modifications to the decree based on exactly the same proceedings and findings." BIO 26. That is wrong because contempt and modification are distinct, and because contempt prejudices the adjudicated contemnor in subsequent proceedings. *See* Apple

3

Certiorari Reply 11-12.  In short, labeling the remand proceeding a "modification" does not change the fact that the district court's contempt finding controls everything at this stage, and that any remand proceeding that occurs now must be conducted pursuant to a Ninth Circuit decision that is erroneously premised on the contempt finding.

No harm will flow from a stay.  Apple is charging no commission on link-out purchases while litigation proceeds in this Court, and a stay will not change that. Epic, along with other developers, thus benefits from an interim windfall.  As Apple showed below, developers are taking advantage of that opportunity by implementing link-out purchases.  Dkt. 1699 at 7-8 (Apple Stay Reply).  The district court stated that Apple has sought "delay and delay and delay," Stay Tr. 7:23, but Apple, like any litigant, has the right to appeal the extraordinarily prejudicial contempt finding. And, in fact, Apple has moved swiftly, securing expedition of its appeal and filing its certiorari petition on a highly expedited basis so that this Court could decide whether to grant certiorari before its summer recess.  In denying a stay, the district court likewise reasoned that a stay would allow "Apple to continue to frustrate the injunction." Dkt. 1706 at 2.  But whether the Ninth Circuit properly concluded that Apple acted in contempt is the issue this Court granted certiorari to decide.  And, at any rate, Apple remains in compliance with the district court's contempt order— again, Apple is charging no commission on link-out purchases—even though the Ninth Circuit found that order impermissibly punitive.  The district court should not

be permitted to leapfrog this Court's merits review to undertake a complex—and potentially unnecessary—remand proceeding.

A stay is urgently warranted. Under Rule 23 of the Rules of this Court and the All Writs Act, 28 U.S.C. § 1651, Apple respectfully requests that the Court stay any further proceedings in the district court pending this Court's decision on the merits. Apple also requests that the Court enter an immediate administrative stay. The district court has ordered that the remand proceedings commence tonight by requiring Apple to submit an evidentiary proffer no later than 6:20 p.m. ET. Apple asked the district court for an administrative stay to pursue appellate options, but the district court denied that request, forcing Apple to ask this Court for immediate relief. *See* Stay Tr. 8:24-9:5. Because this Court has already granted certiorari to address a fundamental threshold question, there is every reason to pause any further proceedings so that this Court can conclude its review process first.[1]

---

[1]    Apple is seeking relief from the district court's order immediately in this Court because of a combination of extraordinary circumstances that make seeking relief in the Ninth Circuit impractical if not impossible. *Cf.* S. Ct. R. 23.3. *First*, because the Ninth Circuit issued the mandate (over Apple's stay request) and this Court granted certiorari, only this Court and the district court have jurisdiction over this case. Apple first filed its stay request with the district court—the appropriate court to entertain this request—but the district court denied that request. *Second*, the exigencies make it extremely impractical, if not impossible, for Apple to attempt to secure relief from the Ninth Circuit. That is because the district court not only denied Apple's stay request, but it also denied Apple's request for an administrative stay so that Apple could consider seeking further review from this Court or the Ninth Circuit, s*ee* Dkt. 1699 at 10, *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640 (July 13, 2026) (Apple's request for an administrative stay), and required Apple to submit an evidentiary proffer within 24 hours of its order denying a stay, *see* Dkt. 1706 at 2. Unlike the typical situation where a stay is requested pending appeal, because the Ninth Circuit has issued its mandate and no appeal is available, Apple would be required to file a petition for mandamus, which would require its own proceedings.

## BACKGROUND

The relevant facts and procedural history are set forth in Apple's petition for certiorari, but Apple recounts the essential details here.

**1.**       Apple "developed the iPhone and iPad; the operating system, iOS; and the App Store." Pet. App. 2a. Developers like Epic Games can develop mobile applications for distribution on Apple's App Store, and can "earn money off their apps using the In-App Purchase (IAP) system" Apple has developed. *Id.* Apple charges a 30% commission rate on IAP purchases to compensate Apple for the intellectual-property protected tools, technologies, and services it has developed to make the iOS platform work. *See id.* at 2a-3a.

Epic Games sued Apple in 2021, contending that the rules and restrictions Apple imposes on developers using the App Store violated federal antitrust laws and California law, including the California Unfair Competition Law (UCL). *See id.* at 3a. The district court found for Apple on all claims, save for a single claim under the UCL concerning certain design restrictions Apple implements to prevent developers

---

And, *third*, any attempt to secure relief from the Ninth Circuit would be futile. *See Western Airlines, Inc. v. International Bhd. of Teamsters*, 480 U.S. 1301, 1304-05 (1987) (O'Connor, J.) (excusing typical requirement to file "a motion for a stay" first "with the court below" when doing so would be "both virtually impossible and legally futile"); *Heckler v. Turner*, 468 U.S. 1305, 1309 (1984) (Rehnquist, J.) (excusing requirement to file first in the lower court because "[i]t would be an empty and costly formality"). In denying Apple's request for a stay of the mandate, the Ninth Circuit observed that, "[e]ven if the Supreme Court agrees with Apple's arguments, there would still be further proceedings on remand, particularly on the question of commission, and those proceedings are likely to look similar, if not the same, regardless of certiorari." *Epic Games, Inc. v. Apple Inc.*, 2026 WL 1215632, at *1 (9th Cir. Apr. 28, 2026). As explained below, that statement is clearly incorrect. But it nevertheless strongly indicates that the Ninth Circuit would deny this request.

from "[]steering" users to alternative purchasing methods other than Apple's in-app payment system. *Id.*; *see Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1054-56 (N.D. Cal. 2021) (concluding that Apple's anti-steering policy prevents developers from "communicat[ing] lower prices on other platforms" and "from informing users of" Apple's IAP commission). The district court issued a "narrow" remedy to address Apple's UCL violation. *See* 559 F. Supp. 3d at 1054. Specifically, the district court issued an injunction providing that "Apple Inc. . . . [is] hereby permanently restrained and enjoined from prohibiting developers from (i) including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchasing." Pet. App. 166a.

The Ninth Circuit affirmed in relevant part, both parties sought certiorari, and this Court denied both petitions. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023); *Epic Games, Inc. v. Apple Inc.*, 144 S. Ct. 682 (2024) (mem.); *Apple Inc. v. Epic Games, Inc.*, 144 S. Ct. 681 (2024) (mem.). Following this Court's denial, Apple filed a notice of compliance in the district court, explaining that it had excised the relevant anti-steering rules. *See* Dkt. 871 at 2-4. As a result, developers can now implement link-out purchases directing users to alternative purchasing methods, as the district court's original injunction required. *See id.* But to ensure that Apple could continue to receive compensation for use of its IP-protected tools, technologies, and services—the very things that attract developers to the iOS platform, foster the

7

enormous user base developers enjoy, and enable app creation—Apple implemented a commission rate between 12% and 27% for link-out purchases. *Id.* at 10-12.

2.    The district court held Apple in civil contempt for violating its injunction. *See* Pet. App. 141a. The district court squarely rejected Apple's argument that the Court could not "look outside the four corners of the injunction to hold [Apple] in civil contempt." *Id.* at 131a. Instead, citing Ninth Circuit caselaw, the district court concluded that Apple could be held in contempt for violating "the spirit of the injunction." *Id.* at 130a-32a (quoting *Institute of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014), *cert. denied*, 576 U.S. 1005 (2015)). As a sanction for Apple's contempt, the district court imposed—among other things—a permanent zero-percent commission on link-out purchases, providing that Apple was enjoined from "[i]mposing any commission or any fee on purchases that consumers make outside an app." *Id.* at 159a-60a.

The Ninth Circuit affirmed in part, reversed in part, and remanded. Most relevant for present purposes, the court reaffirmed its rule that "parties may be held in contempt for violating the spirit of an injunction." *Id.* at 12a. Although "the text of the [district court's] Injunction does not address commissions at all," the Ninth Circuit concluded that "the spirit of the Injunction contemplates the *prohibitive* commissions." *Id.* at 34a n.9. The court therefore affirmed the district court's civil contempt finding. *Id.* at 22a (concluding that "[t]he district court did not abuse its discretion for finding Apple in contempt for imposing" "a prohibitive commission");

8

*see also id.* at 23a-25a (affirming the district court's contempt finding as to certain other design restrictions Apple implemented concerning link-out purchases).

Although the Ninth Circuit affirmed the district court's contempt finding, it reversed as to the appropriate sanction. As it explained, "some parts of the April 30 Order's restrictions are overbroad, and the commission prohibition does not qualify as a civil contempt sanction in its present form." *Id.* at 26a. As a result, the Ninth Circuit "modi[fied] part of the April 30 order and remand[ed] to the district court for further modification" of that order. *Id.* Specifically, it articulated "two avenues that the district court could, in theory, take on remand to resolve its error." *Id.* at 33a-34a. First, the district court "could modify the commission prohibition to be a conditional civil contempt sanction." *Id.* at 34a. Or, second, "rather than imposing a contempt sanction, the district court could restrict Apple from imposing a *prohibitive* commission by modifying the Injunction." *Id.* (emphasis added). So, "[o]n remand," the Ninth Circuit provided a clear instruction: "[T]he district court should amend the April 30 Order's commission prohibition as either a purgeable civil contempt sanction or properly tailored clarification or modification of the Injunction." *Id.* The Court further provided that Apple's commission rate would remain at zero until the district court sets a new rate. *Id.* at 36a.

The Ninth Circuit also provided guidance and instructions on how to conduct this remand. For example, the Ninth Circuit stated that, "[i]f the district court chooses to modify the Injunction to enjoin commissions for linked-out purchases, the district court must tailor the Injunction modification to the underlying UCL

9

violation." *Id.* at 34a n.9.   In setting forth those instructions with respect to modification of the injunction, the Ninth Circuit made clear that the contempt violation was based on the "spirit" as opposed to the text of the injunction.   *Id.* Separately, the Ninth Circuit "recommend[ed] some possible courses of action to the district court regarding an appropriate commission or fee limitation on remand."   *Id.* at 35a.   This included, among other things, a statement—which the Ninth Circuit made without briefing or argument on the issue—that "Apple should be able to charge a commission on linked-out purchases based on the costs that are genuinely and reasonably necessary for its coordination of external links for linked-out purchases, but no more," and other possible limitations.   Pet. App. 35a.

Apple sought a stay of the Ninth Circuit's mandate, which the court initially granted.   ECF No. 188, *Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir. Apr. 6, 2026).   Epic moved for reconsideration, claiming that "[t]he only conceivable purpose a stay could serve would be to avoid potentially unnecessary remand proceedings if Apple persuades the Supreme Court to intervene[,] [b]ut there is no genuine prospect of that happening." *Id.*, ECF No. 189.2 at 4.   The Ninth Circuit then took the unusual step of reconsidering its decision granting a stay of the mandate and, instead, ordered that the mandate issue.   *Epic Games, Inc. v. Apple Inc.*, 2026 WL 1215632, at *1 (9th Cir. Apr. 28, 2026).   Apple sought a stay of the issuance of the mandate in an

application addressed to Justice Kagan, who denied the stay.  *See Apple Inc. v. Epic Games, Inc.*, No. 25A1213 (U.S. May 6, 2026).[2]

3.      Apple then petitioned this Court for a writ of certiorari on an expedited basis so the Court could consider the petition before its summer recess.  On June 30, the Court granted certiorari to address whether the district court lawfully held Apple in civil contempt.  *See Apple Inc. v. Epic Games, Inc.*, No. 25-1311, 2026 WL 1871316 (U.S. June 30, 2026).  As Apple explained in its petition, although the Ninth Circuit remanded for further proceedings, "[t]he threshold question is whether Apple can be held in contempt based on its commission," and if it cannot, "then there is no need, or basis, for any remand on the commission issue."  Pet. 32.  Epic vigorously disputed that point, contending that no matter what this Court does, "the district court would remain free to make exactly the same modifications to the decree based on exactly the same proceedings and findings."  BIO 26.  Apple explained that view "glosses over the   fundamental   difference   between   forward-looking   modifications   and backward-looking contempt sanctions," and exposes Apple to the stigma of being forced to litigate as an adjudicated contemnor, "which Epic has repeatedly tried to leverage in this case."  Apple Certiorari Reply 11.  Apple further explained that, absent any contempt finding, "there is no justification for the district court to take

---

    [2]   Justice Kagan's previous denial is of course not controlling here.  That order was issued before the full Court had an opportunity to fully consider—and grant— Apple's petition for certiorari.  Moreover, this request pertains to an exigency that did not exist before—the district court's decision to move forward with an evidentiary proceeding under the rubric of the Ninth Circuit decision now before this Court. Because Apple's prior request concerned a stay of issuance of the mandate, it also was governed by a different standard of review.  *See infra* at 13-14.

11

*any* action on remand as to Apple's commission rate." *Id.* This Court granted certiorari.

Less than a week after this Court granted certiorari, Apple sought a stay of any remand proceedings in the district court in light of this Court's order granting certiorari. The district court denied that motion after a brief hearing yesterday. *See* Dkt. 1706. During the hearing, the district court again invoked "[t]he spirit of the injunction." Stay Tr. 7:5-7. The court further indicated that it was bound by the "charge" in the Ninth Circuit's decision that is currently on review in this Court, and it observed that "the Ninth Circuit explicitly said that the Court is to determine an appropriate commission, quote, 'on linked-out purchases based on the costs that are genuinely and reasonably necessary for [Apple's] coordination' . . . 'of external links for linked-out purchases but no more.'" *Id.* at 6:6-11. The district court also specifically referenced Apple's "prior conduct" in this case, remarking that the remand proceeding would not be "a short process" because "[n]othing that you all have ever done is short" and "I don't know if this is going to be an easy process or not"—"I'm certainly not betting money on it given Apple's prior conduct, but we'll see." *Id.* at 7:24, 8:20-22. The district court issued a 2-page order last night at 6:20 p.m. ET, formally denying Apple's motion for a stay and ordering Apple to submit an evidentiary proffer on the commission within 24 hours. Dkt. 1706.[3]

---

[3]   In a stipulation between the parties, Apple agreed to file its proffer within 24 hours of the district court's stay order. *See* Dkt. 1694 at 2. But as Apple made clear in its stay briefing, Apple also requested an administrative stay so it could consider and pursue review of any stay denial before that 24-hour clock started. *See* Dkt. 1699

## ARGUMENT

This Court typically applies a multi-factor test in assessing an application for a stay: "To obtain a stay pending the filing and disposition of a petition for a writ of certiorari, an applicant must show (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). That typical test does not map neatly onto the situation here: This Court has *already* granted certiorari, and it is far from clear that irreparable harm is required to secure a stay of *proceedings*, rather than a stay of a judgment or of the issuance of a mandate. As this Court has explained, the power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Whatever the precise legal test, the circumstances presented here easily warrant a stay of any further proceedings pending this Court's review. Apple is faced with litigating its commission rate in an imminent remand proceeding, any need for which would be obviated by a decision of this Court reversing the Ninth Circuit's affirmance of the district court's civil contempt order. Absent any finding of contempt, there will be no basis for any "remand" to address Apple's commission rate. Calling the remand a "modification" changes nothing. The Ninth Circuit's mandate

---

at 10. Yesterday, the district court denied that request and ordered Apple to file its evidentiary proffer by 6:20 p.m. ET tonight, August 12. *See* Dkt. 1706.

13

only authorizes the district court to modify the "April 30 Order"—i.e., the contempt order. Pet. App. 10a, 29a, 34a. What is more, the district court's order denying a stay makes clear it plans to proceed under a legal framework articulated by the Ninth Circuit decision that is before this Court. The court invoked Apple's prior conduct as a basis for denying Apple's stay request, underscoring that Apple's contemnor-status will affect any remand proceedings in this case—and prejudice Apple—even though this Court may reverse or vacate the contempt finding in its decision on the merits. And, unless this Court issues a stay, Apple may be required to disclose sensitive business information that could have global ramifications—a bell that could not be unrung.

A stay of any further proceedings before the district court is warranted until this Court issues its decision on the merits and the case returns to the district court.

## I.    THIS COURT SHOULD STAY THE DISTRICT COURT PROCEEDINGS PENDING A DECISION BY THIS COURT ON THE CONTEMPT ISSUE

### A.    This Court's Decision Could Obviate The Need For Further Proceedings Or Fundamentally Change Their Nature

1.    This Court granted certiorari to decide whether the Ninth Circuit applied the proper standard for civil contempt in holding that Apple was in contempt—a question that, as Apple explained in its petition, is "outcome determinative" as to the civil contempt finding in this case. Pet. 3; *see* Pet. i (articulating question presented concerning the Ninth Circuit's "spirit" standard for civil contempt). Importantly, the Ninth Circuit's civil contempt finding is the only basis for any "remand" proceeding to begin with. The Ninth Circuit's decision is clear on that point. The court affirmed the district court's contempt finding, reversed in

14

substantial part the remedies the district court ordered, and "remand[ed]" to the district court to, among other things, "amend the April 30 Order's"—that is, the civil contempt order's—"commission prohibition as a purgeable civil contempt sanction or a properly tailored clarification or modification of the Injunction." Pet. App. 34a.

Put differently, the Ninth Circuit's decision makes explicit that the only order that is the subject of any remand proceedings authorized by the Ninth Circuit is the district court's April 30 *civil contempt order*. Pet. App. 34a-35a. If this Court reverses the Ninth Circuit and concludes that Apple did not violate the injunction by charging a commission on link-out purchases—or if the Ninth Circuit reaches that conclusion on remand in the event this Court vacates its decision—there will be no basis for the district court to alter or amend the remedies set forth in its civil contempt order. Indeed, if this Court holds that the civil contempt order was improper as to the commission (or that conclusion results from a ruling on the civil contempt standard), then there will be no basis for *any* remand on the commission issue.

2.    The district court did not wrestle with the Ninth Circuit's instruction that the district court alter or modify its civil contempt order specifically. Instead, the district court concluded that "[n]otwithstanding the issue of contempt, the Ninth Circuit has confirmed, and as Apple has repeatedly conceded, the [district] Court has the authority to *modify* the injunction." Dkt. 1706 at 1 (emphasis added). But in the quoted statement, Apple simply stated—as a general matter, in describing the difference between a contempt proceeding and a modification proceeding—that "nothing prohibits a district court from modifying and enlarging an injunction if new

15

circumstances arise or it becomes clear that an existing order is insufficient to remedy a violation." Pet. 22. That general statement of law is not a concession that the district court was free to modify the injunction before this Court has an opportunity to review whether the contempt finding was proper in the first place.[4]

Furthermore, the Ninth Circuit's mandate is clear: it directs the district court "to amend *the April 30 Order's* commission prohibition as either a purgeable civil contempt sanction or properly tailored clarification or modification of the Injunction." Pet. App. 35a (emphasis added). Under the Ninth Circuit's mandate rule, this instruction is not only binding on the district court, but also jurisdictional. *See Alaska Dep't of Fish & Game v. Federal Subsistence Bd.*, 139 F.4th 773, 787-88 (9th Cir. 2025) (discussing the limits imposed by the "rule of mandate"). In other words, under the decision below, any modification must be tailored to the contempt order itself. That mandate inextricably ties the remand proceeding to the contempt finding before this Court.

As the district court's brief stay order recognizes, any remand proceeding also would be governed by the Ninth Circuit's "charge" on how to proceed on remand. Dkt. 1706 at 2. As noted, the Ninth Circuit "recommend[ed] some possible courses of

---

[4]   The district court quoted Apple's statement in its opening brief below that, "[o]n remand, the district court can hold a proceeding to consider whether the injunction should be modified to prohibit Apple's existing commission." Dkt. 1706 at 1. But that statement was describing a potential modification proceeding of the original injunction *in place of any contempt finding and order*. It has no bearing on the remand proceedings that the district court now envisions, carrying the Ninth Circuit's "charge" (Dkt. 1706 at 2) to amend the civil contempt order by modifying it pursuant to a decision premised on the conclusion that Apple *did* act in contempt by violating the "spirit" of the district court's original injunction.

action to the district court regarding an appropriate commission or fee limitation on remand." *See* Pet. App. 35a. One of those instructions—critical here—provides that "Apple should be able to charge a commission on linked-out purchases based on the costs that are genuinely and reasonably necessary for its coordination of external links for linked-out purchases, but no more." Pet. App. 35a. In other words, the Ninth Circuit's recommendation would allow Apple to charge a commission reflecting only its "costs" for coordinating link-out purchases. Yet, if Apple prevails before this Court, the Ninth Circuit's remand instructions for correcting the contempt remedy would fall with the contempt finding itself.

In focusing on the "necessary costs" language, the district court skipped over other instructions in the Ninth Circuit's decision specifically stating that the district court "must tailor" any modification "to the underlying UCL violation," which is based on an "informational harm" and a finding that Apple's commission was "prohibitive." Pet. App. 34a-35a & n.9. Apple disagrees that the "necessary costs" framework—which the Ninth Circuit supplied on its own, without briefing or argument—would be appropriate. Moreover, the only conceivable way to understand this language is as a penalty tied to the civil contempt finding. But the fundamental point here is that this language cannot survive if this Court holds that the Ninth Circuit improperly held Apple in contempt (or simply applied the wrong contempt standard) and thus vacates the Ninth Circuit's contempt ruling and attendant remand instructions.

Nevertheless, the district court has already indicated that it intends to proceed under the "necessary costs" framework, characterizing it as the "current charge from

17

the Ninth Circuit." Dkt. 1706 at 2. As the district court explained in the stay hearing, "the Ninth Circuit explicitly said that the Court is to determine an appropriate commission, quote, 'on linked-out purchases based on the costs that are genuinely and reasonably necessary for [Apple's] coordination . . . of external links for linked-out purchases but no more.'" Stay Tr. 6:6-11 (quoting Pet. App. 35a); *see also id.* at 8:6-8 ("I have to understand better what these costs are that are genuinely and reasonably necessary for Apple's efforts."). That necessary costs legal framework, however, relies entirely on the district court's contempt finding and the Ninth Circuit's decision affirming that finding—exactly what is before this Court.

Nor can the district court insulate its necessary costs inquiry by framing it as a "factual issue." Dkt. 1706 at 2; *see also* Stay Tr. at 6:12-15 (referring to the necessary costs question as "a factual issue [that] requires factual evidence and evidentiary issues to be addressed, none of which will be addressed by the Supreme Court of the United States"). That gets it backward: the entire legal framework—requiring the district court to assess Apple's "necessary costs"—turns on the contempt finding. Framing the question as "factual" in nature does not obviate the need for the district court to apply the correct legal standard to any further proceedings in this case, and if this Court reverses the contempt finding, nothing about Apple's "necessary costs" will prove relevant. Moreover, there is no basis to delve into the factual record, or engage in intrusive discovery, until the governing legal standard is settled. And, again, that issue will flow from this Court's decision. The Ninth

18

Circuit's current remand instructions as to the commission could not stand if this Court sets aside the Ninth Circuit's holding that Apple acted in contempt.

At the same time, if this Court concludes that the Ninth Circuit erred in upholding the district court's contempt finding, this Court could issue its own guidance on whether or how this case should proceed. Either way, going forward with remand proceedings now would unnecessarily jump the gun, undercutting this Court's typical review process for merits cases, and would be guided by language in an opinion from the Ninth Circuit that this Court is actively reviewing.

3.      Courts regularly stay proceedings in circumstances like this one. For instance, this Court granted certiorari in 2016 in *Samsung Electronics Co. v. Apple Inc.*, No. 15-777 (U.S. Mar. 21, 2016), to address the award of profits in design patent cases. Just six days before retrial was set to proceed in the district court, the district court granted a stay, explaining that "any further proceedings—including trial, post-trial motions, supplemental damages, and possible further appeals—would be inefficient in light of the U.S. Supreme Court's review of a damages question that is central to the instant proceedings." *Apple Inc. v. Samsung Elecs. Co.*, 2016 WL 9021536, at *4 (N.D. Cal. Mar. 22, 2016) (Koh, J.).

In that case, Judge Koh recognized the "burden" of proceeding in simultaneous litigation before this Court and the district court. *Id.* at *5. And, although the district court recognized that "merely proceeding in the ordinary course of litigation" does not, "standing alone, . . . warrant a stay," that principle did not justify proceeding

19

with a retrial where "the U.S. Supreme Court has granted a petition for certiorari *in this case* on a question that is indisputably central to the . . . retrial." *Id.*

*Apple v. Samsung* is just one example of many in which district courts grant stays where this Court is likely to address a question that is relevant to subsequent proceedings yet to unfold. Yet the district court here ignored that case and the others, moving forward under a legal framework that may well be obviated—or at least substantially altered—by this Court's eventual decision. The circumstances here readily justify a stay to promote "economy of time and effort for [the district court], for counsel, and for litigants." *Landis*, 299 U.S. at 254.

Moreover, after this Court granted certiorari, other district courts sua sponte stayed litigation that intersected with this case, observing: "The Supreme Court could do any number of things in *Epic,* including issuing a narrow ruling that focuses on resolving the circuit split referenced in the question excerpted above. But what matters here is that at this juncture it is unknown whether the Court's decision will amend or clarify aspects of the April 2025 Order in a manner that could impact this case." *City of Coral Springs Police Officers Pension Plan v. Apple Inc.*, 2026 WL 2076157, at *2 n.2 (N.D. Cal. July 17, 2026) (Wise, J.); *see also* Dkt. 1700 (citing *Coral Springs* as supplemental authority). That observation is all the more powerful here, where the remand proceeding would be explicitly tied to the very contempt order and finding that this Court has agreed to review on the merits.

**B.    Apple Faces Immediate And Irreparable Harm From Further Proceedings And The Balance Of Harms Favors A Stay**

Absent a stay, Apple will suffer immediate and irreparable harm that goes well beyond the ordinary burdens of litigation and that would be wholly unnecessary if this Court reverses or vacates the Ninth Circuit's decision.

1.    Remand proceedings will force Apple to litigate its right to collect a commission while branded as a contemnor on that very issue, effecting a harm that cannot later be undone.  Contempt is a grave charge that stamps its targets "with a 'stigma of antisocial conduct.'"  *United States v. Wendy*, 575 F.2d 1025, 1030 (2d Cir. 1978) (citation omitted); *see Reich v. Sea Sprite Boat Co.*, 64 F.3d 332, 334 (7th Cir. 1995) (Easterbrook, J.) (similar).  The Ninth Circuit's remand instructions rest on the premise that Apple is actively in civil contempt—expressly directing the district court to consider in its proceedings whether to impose "a purgeable civil contempt sanction."  Pet. App. 34a-35a, 49a.  And, as noted, the district court already invoked "Apple's prior conduct" in denying a stay, underscoring that the stain of contempt will stay with and prejudice Apple during any remand proceedings.  Stay Tr. at 8:21-22.  Forced participation in those proceedings will thus erroneously mar Apple with the opprobrium of contumacy.  It is well-established that such reputational damage alone is a form of irreparable harm.  *See, e.g., Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) ("[I]t is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm"); *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (similar); 11A Wright & Miller's *Federal Practice & Procedure* § 2948.1 (3d ed. 2026, online) (similar).

21

More importantly, the stigma of contumacy will irretrievably prejudice Apple's position in the high-stakes remand proceedings regarding its commission. Contempt is a "deadly" weapon, *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967), that is uniquely "liable to abuse," *In re Terry*, 128 U.S. 289, 313 (1888). This Court has observed that "[c]ontumacy 'often strikes at the most vulnerable and human qualities of a judge's temperament,' and [contempt's] fusion of legislative, executive, and judicial powers 'summons forth . . . the prospect of the "most tyrannical licentiousness."'" *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (alteration in original) (citations omitted); *see also Mayberry v. Pennsylvania*, 400 U.S. 455, 464 (1971) (warning that the exercise of the contempt power "is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions" (citation omitted)). It is fundamentally unjust to require Apple to litigate a core facet of its business model in that posture. The harm is not merely the risk of an adverse decision; it is that Apple would be compelled to defend the permissible structure of a commission and justify its costs related to a commission while deemed a contemnor for charging one. That harm cannot be undone later if this Court concludes Apple did not act contumaciously in the first place. A stay is therefore needed so that when the time comes, Apple can address the commission issue "free from the stigma the label 'contemnor' carries." *Sea Sprite*, 64 F.3d at 334.

The district court has already referenced Apple's conduct throughout this litigation, warning that the court does not "know if this is going to be an easy process or not," and is "certainly not betting money on it given Apple's prior conduct, but we'll

22

see." Stay Tr. 8:20-22. Apple should not be forced to undergo litigation on its commission rate—an issue critical to its business on a global scale—while under the stigma of having been labeled a contemnor, all while this Court considers simultaneously whether the district court lawfully held Apple in contempt in the first place.

The contempt proceedings also threaten to cause irreversible business model changes, disclosure of sensitive business information, and market consequences. Those, too, are well-recognized irreparable harms. *See NCAA v. Bd. of Regents of the Univ. of Okla.*, 463 U.S. 1311, 1313-14 (1983) (White, J., in chambers) (granting a stay where failing to do so could produce structural business changes); *FTC v. Qualcomm Inc.*, 935 F.3d 752, 756 (9th Cir. 2019) (finding "fundamental business changes" irreparable), *rev'd & vacated*, 969 F.3d 974 (9th Cir. 2020). When businesses and markets transform, "the 'scrambling' goes fast but the unscrambling is interminable and seldom effectively accomplished." *Baltimore & Ohio R.R. Co. v. United States*, 386 U.S. 372, 392 (1967). The centrality of the commission to Apple's revenue model means that any changes to it can require structural changes to the business that cannot easily be unwound.

What is more, the potential "scrambling" will play out on a global scale. Commissions are a crucial element of the worldwide app market, and Apple alone processes hundreds of billions of dollars in mobile app transactions each year.[5]

---

[5] *See* Apple, *App Store in the U.S. facilitated over $400 billion in developer billings and sales in 2024* (May 29, 2025, update),

23

Regulators from around the world are accordingly monitoring this case carefully as they make decisions about the commission rate that Apple (and its competitors) are permitted to charge in other jurisdictions.[6]  If a commission is set here that has cascading consequences elsewhere, it is far from clear how—if at all—those changes could be undone.  Before the district court embarks on a rate-setting inquiry that could reshape entire global markets, Apple should have an opportunity to challenge (and this Court should have an opportunity to evaluate) the contempt holding that forms the basis for that inquiry.  Loss of that opportunity is irreparable.

Remand proceedings could also require Apple to irrevocably divulge confidential and highly sensitive business information, including the "necessary costs" of facilitating links for out-of-app purchases.  *See* Pet. App. 35a; Dkt. 1706; Stay Tr. at 8:6-19 (explaining that the district court will "have to understand better what these costs are" and suggesting that Apple will be required to provide "genuine business records" concerning the issues on remand).  The disclosure of private information is a "quintessential type of irreparable harm," *Airbnb Inc. v. City of New York*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019) (Engelmayer, J.) (citation omitted), because "such information, once disclosed, loses its confidential nature," *Robert Half*

---

https://www.apple.com/newsroom/2025/05/appstore-in-the-us-facilitated-406-billion-usd-in-developer-billings-and-sales-in-2024/.

[6]  *See* Sharon Driscoll, Stanford Institute for Economic Policy Research, *Q&A: What's at stake in the Epic Games v. Apple case* (May 11, 2021), https://siepr.stanford.edu/news/qa-whats-stake-epic-games-vs-apple-case;    Simon Thomsen, *The competition watchdog just got a seat at the table in the Epic Games compensation battle with Apple*, startupdaily (Apr. 21, 2026), https://www.startupdaily.net/topic/global-tech/the-competition-watchdog-just-got-a-seat-at-the-table-in-the-legal-battle-between-epic-games-and-apple/.

*Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 433 (D.D.C. 2018) (Mehta, J.) (citation omitted). And here, disclosing financial information like internal costs would injure Apple's "competitive advantage," *id.* at 433-34—another kind of harm that this Court has emphasized with respect to stay applicants, *Ohio v. EPA*, 603 U.S. 279, 291 (2024). Staying the remand proceedings until this Court has the opportunity to review the erroneous contempt finding on the merits would eliminate the risk of irreparable harm stemming from the compelled disclosure of confidential, high-level business secrets that could have market-wide implications.

These harms are directly implicated by the evidentiary proffer that the district court has ordered Apple to submit today by 6:20 p.m. ET. The proffer is designed to provide the framework for Apple's defense of a commission on link-out purchases under the legal framework established by the Ninth Circuit's decision. Apple is placed in a Catch-22 where it must preserve its arguments in the event it prevails in this Court, but also could be forced to disclose sensitive business information that it would not be required to disclose if Apple prevails in this Court and the Ninth Circuit's remand order is vacated.

**2.** No countervailing harms weigh against a stay. The district court stated that "[a] stay prejudices plaintiff and others, while allowing Apple to continue to frustrate the injunction." Dkt. 1706 at 2. But that is doubly wrong. To start, the district court did not identify any concrete harm to Epic or anyone else, and there is none. To the contrary, Apple is enjoined from charging any commission on link-out purchases under the Ninth Circuit's decision, granting Epic and other developers an

25

enormous windfall. *See* Pet. App. 36a. That will not change under a stay. Nor will a stay create uncertainty deterring developers from adopting external links, as Epic has claimed. *See* Dkt. 1698 at 2-3, 7. In fact, many developers—including Patreon, Spotify, and Epic itself—have already done so. *See* Dkt. 1699 at 8-9 (collecting examples). And to the extent this Court's review of the contempt finding creates uncertainty, that is inherent in the certiorari process. Moreover, rushing forward with the remand proceedings while this Court considers the case will not eliminate that uncertainty. Indeed, any uncertainty will only be exacerbated by simultaneous (and potentially inconsistent) proceedings before this Court and the district court. A stay will avoid those competing tracks and provide more certainty for everyone.

Ultimately, the district court's analysis only illustrates how interrelated its proceedings are with this merits appeal. Whether Apple "continue[s] to frustrate the injunction," Dkt. 1706 at 2, is not a discretionary stay factor—it is the very issue before this Court. The district court's accusation that "Apple has acted in a manner to delay and delay and delay" is similarly distorted. All Apple has done is exercise its right to appellate review of a serious sanction that jeopardized an important part of its business. And Apple willingly agreed to *expedite* both its appeal to the Ninth Circuit and its certiorari briefing before this Court. *See* CA9 ECF No. 8; Pet. 5 n.2. Apple now asks only for an orderly resolution of the issues pending in this case—first the question whether Apple acted in contempt, and then any necessary follow-on proceedings.

In short, the balance of harms decidedly favors granting a stay.

26

## II.    AN ADMINISTRATIVE STAY IS WARRANTED

While the Court considers this application, Apple requests an administrative stay of any further proceedings in the district court. Apple filed this application within 24 hours of the district court's order denying its motion for a stay, which the district court issued yesterday, August 11, at 6:20 p.m. ET. An administrative stay would allow this Court to evaluate Apple's application and solicit a response, if needed. And Apple would be irreparably harmed absent a stay: The district court ordered Apple to file a proffer by tonight, August 12, at 6:20 p.m. ET. Among other things, that proffer would require Apple to disclose the commission it would charge on link-out purchases that could have global market reverberations. Absent an administrative stay, the remand proceedings and resulting harms to Apple will commence this evening. Apple regrets seeking relief on such an expedited timeline, which is why it first requested that the district court issue an administrative stay to allow Apple to seek appellate review of its stay order, and objected to the district court's decision to deny a brief administrative stay to allow Apple to seek further review. But because the district court declined to afford any interim relief, Apple has no other choice but to ask this Court to act expeditiously.

## CONCLUSION

For the foregoing reasons, Apple respectfully asks this Court to grant a stay of further district court proceedings until this Court has issued a decision on the merits and the case has returned to the district court.  Alternatively, this Court should grant an immediate, administrative stay to allow for consideration of this Application.

Respectfully submitted,

SARAH M. RAY
LATHAM & WATKINS LLP
505 Montgomery Street Suite 2000
San Francisco, CA 94111

BEN HARRIS
LATHAM & WATKINS LLP
1271 Avenue of the
    Americas
New York, NY 10020

GREGORY G. GARRE
    *Counsel of Record*
ROMAN MARTINEZ
SOREN J. SCHMIDT
LATHAM & WATKINS LLP
555 11th Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207
gregory.garre@lw.com

*Counsel for Applicant*

August 12, 2026

28

**TABLE OF CONTENTS**

Appendix 1:   Order Denying Apple's Motion to Stay Proceedings, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640 (N.D. Cal. Aug. 11, 2026), Dkt. No. 1706

Appendix 2:   Transcript of Proceedings, *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640 (N.D. Cal. Aug. 11, 2026)

# APPENDIX 1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

EPIC GAMES, INC.,

       Plaintiff,

    v.

APPLE INC.,

       Defendant.

Case No.: 4:20-CV-05640-YGR

**ORDER DENYING APPLE'S MOTION TO STAY PROCEEDINGS**

**RE: DKT. NO. 1697**

Pending before this Court is Apple's Motion to Stay Proceedings Pending Supreme Court Review.  (Dkt. No. 1697.)  Having considered the parties' filings, the record in this case, oral argument, and as confirmed on the record, the motion is **DENIED** in its entirety.  The Supreme Court's grant of a narrow review of the contempt proceedings does not substantially impact the factual issues that must be resolved to ensure compliance with the injunction.

To expedite issuance of this order, the Court assumes the parties' familiarity with the proceedings and agrees with the analysis outlined in Epic Games's opposition to the motion.  (Dkt. No. 1698.)

Notwithstanding the issue of contempt, as the Ninth Circuit has confirmed, and as Apple has repeatedly conceded, the Court has the authority to modify the injunction.  *See* Apple's Opening Brief in *Epic Games v. Apple, Inc.*, U.S. Court of Appeals for the Ninth Circuit Case No. 25-2935,[1] Dkt. No. 59.1, at 37 ("On remand, the district court can hold a proceeding to consider whether the injunction should be modified to prohibit Apple's existing commission."); Apple's Petition in *Apple,*

---

[1] All filings for this case before the Ninth Circuit can be accessed at https://ca9-showdoc.azurewebsites.us/full-docket/1d02a68e-bb7c-4021-af16-ed352facf157.

United States District Court
Northern District of California

*Inc., Petitioner v. Epic Games, Inc.*, U.S. Supreme Court Case No. 25-1311,[2] at 22 ("Of course, nothing prohibits a district court from modifying and enlarging an injunction if new circumstances arise or it becomes clear that an existing order is insufficient to remedy a violation."). The current charge from the Ninth Circuit is to oversee proceedings reflecting the appropriate commission to be allowed "on linked-out purchases based on the costs that are genuinely and reasonably necessary for its coordination of external links for linked-out purchases, but no more." *Epic Games v. Apple, Inc.*, 161 F.4th at 1162, 1187 (9th Cir. 2025).[3] The Supreme Court did not agree to revisit this issue, nor is the limited review a bar to the Court addressing this factual issue.

A stay prejudices plaintiff and others, while allowing Apple to continue to frustrate the injunction. There is relatively little harm to Apple. That Apple agreed to file its evidentiary proffer within 24 hours of this Court's decision reveals Apple is prepared to proceed. The factfinding mandated by the Ninth Circuit will need to be done irrespective of the Supreme Court's ruling. Thus, a stay will not result in significant conservation of judicial resources. Given Apple's propensity to delay, this phase will likely take time. We are approaching the five-year anniversary of this Court's decision. Further delay is unwarranted.

The motion is **DENIED** in full. Apple shall file its proffer within 24 hours of the filing of this order.

**IT IS SO ORDERED**.

Date:   August 11, 2026

_____
**YVONNE GONZALEZ ROGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[2] All filings for this case before the Supreme Court can be accessed at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/25-1311.html. Apple's petition can be accessed at https://www.supremecourt.gov/DocketPDF/25/25-1311/409561/20260526163506450_2026-05-26%20Apple-Epic%20--%20Cert%20Petition%20and%20Appendix.pdf.

[3] This Ninth Circuit order is accessible at https://cdn.ca9.uscourts.gov/datastore/opinions/2025/12/11/25-2935.pdf.

# APPENDIX 2

**Pages 1 - 10**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge Presiding

EPIC GAMES, INC.,                    )
                                     )
 Plaintiff/Counter-defendant,   )
                                     )
  VS.                                )        **NO. 4:20-cv-05640**-YGR
                                     )
APPLE INC.,                          )
                                     )
  Defendant/Counterclaimaint.   )
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯)

                          Oakland, California
                          Tuesday, August 11, 2026

                  **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff/Counter-defendant:
                     CRAVATH, SWAINE & MOORE LLP
                     825 Eighth Avenue
                     New York, New York  10019
               **BY:  LAUREN MOSKOWITZ**
                     **TINA SEIDEMAN**
                     **ATTORNEYS AT LAW**

For Defendant/Counterclaimaint:
                     DAVIS POLK & WARDWELL LLP
                     450 Lexington Avenue
                     New York, New York 10017
               **BY:  JAMES ROUHANDEH**
                     **ATTORNEY AT LAW**


          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Stenographically Reported BY:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Reporter

**APPEARANCES**:   (CONTINUED)

For Defendant/Counterclaimant:

                    DAVIS, POLK & WARDWELL LLP
                    900 Middlefield Road
                    Redwood City, California  94063
        BY:  **MICAH G. BLOCK**
                **SERGE A. VORONOV**
                **ATTORNEYS AT LAW**

                    LATHAM & WATKINS LLP
                    505 Montgomery Street - Suite 2000
                    San Francisco, California  94111
        BY:  **SARAH M. RAY**
                **BRETT M. SANFORD**
                **ATTORNEYS AT LAW**

**Tuesday - August 11, 2026**                                    **9:02 a.m.**

                         **P R O C E E D I N G S**

                              ---oOo---

        **THE COURTROOM DEPUTY:**  Calling the Civil Matter 20-cv-5640-YGR, Epic Games, Incorporated versus Apple Incorporated.

     Parties, please step forward and state your appearances for the record, starting with the plaintiff.

     Lecterns, please.

        **MS. MOSKOWITZ:**  Good morning, Your Honor.  Lauren Moskowitz for Epic Games.  And with me is Tina Seideman also for Epic.

        **THE COURT:**  Good morning.  You can remain at the mic.

        **MS. MOSKOWITZ:**  Okay.

        **THE COURT:**  Mr. Rouhandeh.

        **MR. ROUHANDEH:**  Good morning, Your Honor.  James Rouhandeh, Davis Polk, for Apple, along with my colleagues Michael Block and Serge Voronov, Davis Polk.

     And if I could allow my co-counsel to introduce herself, Sarah Ray and her colleagues.

        **THE COURT:**  Okay.

        **MS. RAY:**  Good morning, Your Honor.  Sarah Ray with Lathom & Watkins for Apple.  Also with me today is Bret Sanford.

        **MS. SANFORD:**  Good morning, Your Honor.

**THE COURT:**  Okay.  Good morning.

Well, someone at the mic.  Each side.

I've read your papers.  What else do you want to add?

**MR. ROUHANDEH:**  Your Honor, I would add that I think the threshold question here is whether Apple should have been held in contempt.  And that -- the answer to that question is going to be impacted by a circuit split, we believe.

And so the question before the Supreme Court on appeal is whether the Ninth Circuit correctly affirmed this Court's civil contempt filing -- finding.  And the question on the remand, if the Court goes forward with it, the question before this Court on remand, would be the remedy or consequences of a contempt violation.

And we would submit that it makes the most sense for the question of whether Apple was in contempt to be heard before addressing the remedy for the contempt violation; and then if the Supreme Court reverses the Ninth Circuit on that issue, then the Ninth Circuit's discussion of the remand proceedings would really no longer be law of the case and --

**THE COURT:**  I'm not sure I agree with you.

Ms. Moskowitz?

**MS. MOSKOWITZ:**  Your Honor, I also do not agree with that.  The Ninth Circuit gave two paths for Your Honor on remand.  One to alter your ruling into a purgeable contempt finding, or path two was -- and I wrote this down because I

think it's important.  It says, rather than imposing a contempt sanction-- that's a quote-- modify the injunction, and gave Your Honor instructions.

So, Your Honor, what's going on at the Supreme Court does not impact remand.  That's exactly what the Ninth Circuit already held when it refused to stay the mandate.

And so we think Your Honor has absolute discretion to continue with remand, not continue to let this injunction languish while this appeal takes place.  And it lets us move forward with certainty in the whole thing so that competition can break out.

**THE COURT:**  Response?

**MR. ROUHANDEH:**  I think that is inconsistent, flatly inconsistent with the language of the Ninth Circuit decision. Because the Ninth Circuit decision talks about two avenues with respect to the amendment of the April 30 order, which is the order that's on appeal.

And it lays out those two avenues, and one is conditional civil contempt.  And the other avenue it lays out, as Ms. Moskowitz says, imposing a nonprohibitive commission by modifying the injunction.

The Court then drops a footnote.  That footnote spells out that avenue.  That avenue says that if the District Court chooses to modify the injunction to enjoin commissions for linked-out purchases, the District Court must tailor the

injunction modification to the underlying UCL violation.

Then goes on and says the UCL violation, which resulted in informational harm, does not require that all commissions and all fees be prohibited.  The spirit of the injunction contemplates the prohibitive commissions.

**THE COURT:**  Right.  It talked about the fact that, and the Ninth Circuit explicitly said that the Court is to determine an appropriate commission, quote, "on linked-out purchases based on the costs that are genuinely and reasonably necessary for its coordination" -- "its" being Apple-- "of external links for linked-out purchases but no more."

That's what it said.  That is a factual issue.  And that factual issue requires factual evidence and evidentiary issues to be addressed, none of which will be addressed by the Supreme Court of the United States.

And clearly Apple is prepared to move forward with that evidentiary showing because it has agreed that it will file it within 24 hours of my decision.

So clearly it has a view of what those factual issues are, none of which will be before the Supreme Court of the United States.

**MR. ROUHANDEH:**  But what will be, respectfully, Your Honor, before the Supreme Court is this pathway, this avenue.  Because what it says in choosing that avenue is the Ninth Circuit said the spirit of the injunction doesn't

prohibit all commissions, only those that would be prohibitive. And that's based on the spirit of the injunction.

So that what I'm saying -- what Apple is saying here is that that issue is squarely --

**THE COURT:** The spirit of the injunction, i.e., the 185-page decision outlining the factual basis for the injunction in the first place. That spirit? In that 185-page decision, which the Supreme Court reviewed to address on the merits, that one?

**MR. ROUHANDEH:** Yeah. Well, it's a circuit split issue, Your Honor, and it really is a narrow question.

**THE COURT:** Right. It's a very narrow question about the various paths upon which the Court needs to address injunctive relief, and your failure, or my finding, that you did not comply with it.

So, no, I am not persuaded by your arguments that you have filed. And your motion is denied.

I will issue a very short order in the event that you want to appeal it. You have 24 hours from the filing of that order to file your submission, which I suspect is already prepared, otherwise you wouldn't have agreed to it, and we're going to move on. We're coming up to five years from my original order.

Apple has acted in a manner to delay and delay and delay. And what we need to do -- and it's, again, not a short process. Nothing that you all have ever done is short. Judge Donato is

going through the same exact issues in the Epic Games vs. Google analysis. He's four years in. I'm five years in. There are more factual issues to be determined, and we will get started on that process.

There is no conservation of judicial resources because at some point I have to resolve the factual issues. And I have to understand better what these costs are that are genuinely and reasonably necessary for Apple's efforts.

The evidence in front of me at the time that I issued the order suggested by Apple's own executives that nothing should be charged, which is why I used what was in front of me, which was nothing. That was recommended to Mr. Cook. He refused to accept that approach. That's fine. But it was recommended. So it's not as if it was without basis.

But in any event, that's water under the bridge. Now we have to figure out what it actually is genuinely, based upon, I would hope, genuine business records, which was again an initial problem because those were not initially provided to the Court.

So I don't know if this is going to be an easy process or not. I'm certainly not betting money on it given Apple's prior conduct, but we'll see. Perhaps it will be. I don't know.

The motion is denied.

**MR. ROUHANDEH:** Your Honor, could I make two brief requests?

**THE COURT:**  I'm not -- you asked for alternative relief, and my answer is it's denied.  You have these -- you have these papers.  You want to go file them at the Ninth Circuit, go file them at the Ninth Circuit.  It's already done.

It's not as if the justice -- the judges up there or I don't have an understanding of this case and all of the background and all of the conduct and all of the work that still needs to be done.

Go ahead.

**MR. ROUHANDEH:**  Yeah, the request was just allow us time if we were going to appeal to the Ninth Circuit.

**THE COURT:**  You've got less than 24 hours.  Actually you have more than 24 hours because I haven't issued the order yet.  So I'm giving you a head start.

**MR. ROUHANDEH:**  And the second question is could we extend the 24 hours?

**THE COURT:**  No.  You agreed to it before.  I'm confirming your agreement.

What else?

**MR. ROUHANDEH:**  It's just, Your Honor, that was in connection with the remand proceeding related to the commission which is now on appeal, and that's why we agreed to it.  But if Your Honor could see for another 24 hours, we would appreciate it.

**THE COURT:**  I don't think you need to do much.  You

have it all in front of you.  The request is denied.  And as you know, I've got a few other things on my plate.  I start picking my jury in the MDL case tomorrow.  I don't think I'm going to see you here tomorrow.

But like I said, a short order will issue.  You've got a head start.  You've got 24 hours from the time it's issued.

We're adjourned.

**MS. MOSKOWITZ:**  Thank you, Your Honor.

**MR. ROUHANDEH:**  Thank you, Your Honor.

**THE COURTROOM DEPUTY:**  Court is adjourned.

(Proceedings adjourned at 9:13 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, August 11, 2026

Kelly Shainline, CSR No. 13476, RPR, CRR
U.S. Court Reporter