GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

MATTHEW J. ADLER (SBN 273147)
matthew.adler@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant*
*Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>Plaintiff, Counter-defendant,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR-TSH<br><br>**EPIC GAMES, INC.'S OPPOSITION TO APPLE INC.'S ADMINISTRATIVE MOTION TO SEAL REMAND PROFFER**<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

In keeping with its conduct throughout this litigation, Apple again seeks to conceal information from the public and unnecessarily hamper proceedings. After unsuccessfully moving this Court, the Ninth Circuit, and the Supreme Court (twice) to stay these remand proceedings and the filing of its proffer, Apple now seeks to seal, without proper justification, critical portions of that proffer and the supporting expert reports of Paul Meyer and Michael Lasinski and of Dr. Dennis Carlton.[1] Many of Apple's proposed redactions lack the compelling basis required to overcome the strong presumption favoring public access—a high bar, especially in a case of such public import. Most notably, Apple proposes to seal central portions of the analysis it puts forward as the crux of its proposed commissions, even though that information is not competitively sensitive. In **Exhibit A** filed herewith, which tracks the Declaration of Sarah M. Ray that accompanied Apple's Motion (*see* Dkt. 1709-1 ("Ray Declaration")), Epic identifies the specific sealing requests to which it objects.

## LEGAL STANDARD

Because "judicial records are public documents almost by definition, and the public is entitled to access by default," there is a "strong presumption of access" to documents filed in litigation. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). A party seeking to overcome this "strong presumption" must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178–79 (cleaned up). Under this "stringent standard," a court must balance "the public interest in understanding the judicial process" against "whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (quoting *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995)). A movant must "identify specific harms that would result from the disclosure" of the information sought to be sealed—the "mere invocation of vague concerns about competitive harm are insufficient."

[1] *See* Dkt. 1708, Apple's Remand Proffer ("Remand Proffer"); Dkt. 1708-2, Expert Report of Paul K. Meyer and Michael J. Lasinski ("Meyer Report"), and Dkt. 1708-3, Expert Report of Dr. Dennis Carlton ("Carlton Report") (together with the Meyer Report, "Expert Reports").

*Flextronics AP, LLC v. Ricci*, 2026 WL 2227360, at *13–14 (N.D. Cal. Aug. 3, 2026); *see also In re Google Play Store Antitrust Litig.*, 556 F. Supp. 3d 1106, 1109 (N.D. Cal. 2021) (declining to seal information where movant could not demonstrate a specific showing of plausible risk to its business). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992), or "tepid and general justifications" are insufficient "to demonstrate any specific prejudice or harm," *Kamakana*, 447 F.3d at 1186.

## ARGUMENT

### A. Apple Must Show "Compelling Reasons" for Sealing.

Apple asserts that it need only show "good cause" for sealing because the Remand Proffer and Expert Reports "do not aim to resolve the merits of any underlying claims." (Mot. 2.) Not so. The "good cause" standard applies only where a party is seeking to seal materials related to non-dispositive motions that are tangential to the litigation, such as "materials attached to a discovery motion unrelated to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

Here, the Remand Proffer and Expert Reports are central to the remand, not adjacent to it. In fact, the submissions here go to the very heart of the present dispute—*i.e.*, determining what commission Apple may charge on linked-out purchases. *See Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1187–88 (9th Cir. 2025). Accordingly, any sealing request Apple makes must be justified by a showing of "compelling reasons"—a far more exacting standard than the "good cause" standard Apple argues for. *Foltz*, 331 F.3d at 1135; *see also Flextronics*, 2026 WL 2227360, at *13 (rejecting application of the "good cause" standard where the sealing requests were for documents that "control what the merits of the case are").

### B. Apple Does Not Show a "Compelling Reason" or "Good Cause" for Sealing.

Apple does not specify the harms that it would suffer if the information subject to its sealing requests were made public. Conclusory statements articulating mere speculative harm do not satisfy the applicable "compelling reason" standard—or even the more lenient "good cause"

standard. Rather, a "particularized showing" of harm is required to justify sealing under either standard, *Foltz*, 331 F.3d at 1138, and Apple has failed to make that showing.

*First*, Apple has failed to put forward "specific factual findings" to overcome the strong presumption in favor of public access. *Kamakana*, 447 F.3d at 1178. The mere assertion by Apple that information is sensitive and confidential, without doing more to demonstrate a plausible risk of specific harm, is not enough. *In re Google Play Store,* 556 F. Supp. 3d at 1109 (declining to seal certain of Google's profits and revenues); *Flextronics*, 2026 WL 2227360, at *14 (denying to seal for failure to "identify specific harms that would result" from disclosure); *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, 2011 WL 4947343, at *4 (D. Ariz. Oct. 18, 2011) ("The mere assertion that [the movant] considers profit information sensitive and highly confidential does not amount to a compelling reason.").

Apple broadly states that its "specific margin data and cost structure" could be used "to calibrate pricing strategies designed to undercut Apple." (Mot. 4.) Aside from the Motion's conclusory statements, however, Apple's only support for this claim is a declaration of its outside counsel, which says that such disclosure "would reveal the inner workings of the App Store's financial and business operations" and "could be used by competitors to gain an unfair competitive advantage over Apple." (Ray Declaration ¶¶ 5-6.) Those generalized assertions are insufficient. Apple has not explained *how* the information could be used to harm Apple or identified the specific harms that could occur. *See In re Google Play Store*, 556 F. Supp. 3d at 1107 (denying sealing because "[c]onclusory statements . . . about potential harm from public disclosure, or mere hypothesis or conjecture, will not do"); *see also Qualcomm Inc. v. Apple Inc.*, 2021 WL 879817, at *4 (N.D. Cal. Mar. 9, 2021) (finding that Apple could not maintain as confidential certain documents where declaration of in-house lawyer "fail[ed] to establish that he has personal knowledge to testify to the harm" from disclosure and "relie[d] on the same three reasons to explain how and why Apple would suffer prejudice in the event of" disclosure).

*Second*, Apple's sealing requests are facially overbroad because they seek to seal data and analyses that do not disclose commercially sensitive information. Epic highlights particularly egregious examples below, with all specific objections identified in Exhibit A.

Aggregated Data and Analyses. Apple seeks to redact aggregated or summary-level data that goes to the very heart of the issue before the Court. For example, Apple seeks to redact its assessment of the percentage of App Store revenue attributable to developers that Apple contends could viably use link-outs at Apple's proposed rates. (*See, e.g.*, Carlton Report ¶¶ 22, 80; *see also, e.g.*, Remand Proffer 21, Lines 7, 8, 10, 11, 13 (distribution of apps that Apple contends could profitably link out); Carlton Report ¶ 28 (distribution of samples and outcomes of modeling); *id.* 41 n.68 (same); *id.* 42, Table 8 (projected link-out rates under different scenarios); *id.* 42 n.69 (percentage of revenue of apps that Apple contends could profitably link out at a given rate); *id.* ¶ 94 (projected rate at which large developers will link out); *id.* ¶ 102 (proportion of apps supposedly able to profitably link out).) These high-level aggregations derived from an expert's opinion reveal nothing about individual apps or developers—and nothing competitively sensitive about Apple's business—and therefore do not warrant sealing. Certainly, Apple has not explained what harm could befall it if these percentages were made known. And these analyses are a critical part of Apple's argument to the Court on an appropriate commission, so they should not be kept from the public.

Link-Out Adoption. Apple repeatedly seeks to seal its assessment of developers' rates of link-out adoption. For example, Apple seeks to redact the percentage of apps, based on size, that it says have adopted link-outs since the Court's Contempt Order. (*See, e.g.*, Remand Proffer 11, Line 8 (percentage of apps based on size that adopted link-outs); *id.* 28, Line 4 (same); Carlton Report ¶¶ 22, 51 (same); *see also, e.g.*, *id.* 19, Table 2 (columns listing "Number of Apps Reviewed" and "% Any Link-Out").) That information is important to these proceedings and, in any event, is not competitively sensitive, so it should not be sealed.

Outdated Information. Apple seeks to seal information, like revenue, expenditures, and other financial data, that is historical—some from as early as 2015. For example, Apple seeks to redact its operating expenses from 2015 through 2021. (*See* Meyer Report, Attachment 11.1 at 1-3.) Such information can no longer be commercially sensitive and so should not be sealed. (*See also, e.g.*, Meyer Report ¶ 356 & nn.832-38 (FY19, FY20, FY21); *id.* ¶ 357 (FY21); *id.* ¶ 359 & nn.849-50 (FY20, FY21); *id.* ¶ 360 (FY20); *id.* ¶ 361 (FY21); *id.* ¶ 370 & Fig.3

(FY15); *id.*, Attachment 4 at 1 (covering 2019–2020 revenue); *id.*, Attachment 11 at 1 (marketing expense data from 2015 through 2020); *id.*, Attachment 11.2 at 1–3 (same).)

General Developer Surveys. Apple seeks to redact generalized developer survey results that do not quote or identify respondents. For example, Apple seeks to seal anonymized developer feedback. (*See, e.g.*, Meyer Report ¶¶ 285, 297, 304.) Such generalized survey results do not reveal sensitive or confidential information.

Publicly Available Information. Apple seeks to seal information that is publicly available or can be readily derived from public sources. For example, Apple seeks to seal the number of Reader apps on the App Store, which can be derived from the public status of apps. (*See* Carlton Report ¶ 67; *see also, e.g.*, *id.* ¶ 89 & Table 7 (Stripe's publicly stated payment processing rate); Remand Proffer 11, Line 8 (data likely derived from manual review of public information).)

Overbroad Swaths of Text. Apple sweeps into its sealing requests general descriptions, narrative text, or contextual information that is not itself commercially sensitive and sometimes includes obvious Apple business practices. For example, Apple redacts entire sentences where it can (and should) narrowly tailor its sealing request with surgical redactions of dollar amounts, percentages, or figures. (*See* Carlton Report ¶ 44; *see also, e.g.*, Meyer Report ¶ 356 (redacting narrative portions of purported investments in In-App Events); *id.* ¶ 310 (general Apple advertising practices); *id.* ¶ 366 (the fact that management planned for hires); *id.* ¶ 369 (the general kinds of costs in App Store marketing).)

For the sealing requests identified in Exhibit A, any speculative harm Apple points to is outweighed by the public's clear interest in access to and understanding of these remand proceedings. The long-awaited relief that this Court's Injunction promises has garnered widespread public attention. The public therefore has a strong interest in keeping a watchful eye on the workings of these proceedings. *See Kamakana*, 447 F.3d at 1178. Apple should not be allowed to frustrate that interest.

**CONCLUSION**

For the foregoing reasons, Epic requests that this Court deny certain of Apple's requests to seal portions of the Remand Proffer and Expert Reports, as reflected in Exhibit A.

Dated: August 21, 2026

Respectfully submitted,

By: /s/ *Yonatan Even*

**FAEGRE DRINKER BIDDLE & REATH LLP**

Matthew J. Adler (SBN 273147)
matthew.adler@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant*
EPIC GAMES, INC.