GARY A. BORNSTEIN (*pro hac vice*)
gbornstein@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
LAUREN A. MOSKOWITZ (*pro hac vice*)
lmoskowitz@cravath.com
MICHAEL J. ZAKEN (*pro hac vice*)
mzaken@cravath.com
M. BRENT BYARS (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

MATTHEW J. ADLER (SBN 273147)
matthew.adler@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>Plaintiff, Counter-defendant,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant, Counterclaimant. | Case No. 4:20-CV-05640-YGR<br><br>**PLAINTIFF EPIC GAMES, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE ORDER RE PRODUCTION**<br><br>Date: November 24, 2026<br><br>Courtroom: 1, 4th Floor<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 2
FACTUAL BACKGROUND ........ 3
I. Procedural History ........ 3
II. Apple's Deficient Productions ........ 5
ARGUMENT ........ 8
I. Apple's Failure to Produce All Relevant Documents Violates the Court's Order. ........ 9
II. The Court Should Order Apple to Promptly Cure Its Deficient Production by Producing All Non-Privileged Documents, Regardless of Apple's Relevance Determinations. ........ 12
CONCLUSION ........ 15

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Apple Inc. v. Epic Games, Inc.*, No. 25-1311 (U.S. Aug. 13, 2026) ... 14

*D.M. v. County of Merced*, 2022 WL 4792420 (E.D. Cal. Oct. 3, 2022) ... 10

*Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162 (9th Cir. 2025) ... 4, 13, 14

*Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946 (9th Cir. 2023) ... 3

*Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943 (N.D. Cal. 2025) ... 4, 15

*Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012) ... 9

*Parsons v. Ryan*, 949 F.3d 443 (9th Cir. 2020) ... 14

*Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623 (9th Cir. 2016) ... 14

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 24, 2026, or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, before the Honorable Yvonne Gonzalez Rogers, Epic Games, Inc. ("Epic") will move this Court for an Order Granting Epic's Motion to Enforce Order.

This Motion is made on the grounds that Apple Inc. ("Apple") is in violation of this Court's Order requiring Apple to "produce to Epic all non-privileged documents relating to the decision-making process leading to the proposal in its proffer, including any fee proposal reflected in its proffer, as well as a privilege log as described in the ESI Protocol governing this matter." (Dkt. 1687 ("Order") ¶ 2.)

This Motion is based upon the pleadings in this action, this Notice of Motion, the Memorandum of Points and Authorities filed herewith, and the Declaration of Yonatan Even ("Even Decl."), all matters with respect to which this Court may take judicial notice and such oral and documentary evidence as may be presented to the Court.

## PRELIMINARY STATEMENT

Apple is back at it. Pursuant to this Court's Order, Apple was obligated to produce to Epic "all" documents related to the decision-making process leading to the fee proposal in its proffer by August 24, 2026. It did not. Instead, it produced only 34 unique documents by that deadline, and 680 as of today—notwithstanding weeks of conferrals, negotiations of custodians and search terms, and repeated assurances from Apple that *this time* it would produce *all* responsive documents sought by Epic.

Apple does introduce one tactical change from its prior campaign of delay. Whereas during the contempt proceeding Apple used bogus claims of privilege to evade its discovery obligations, this time Apple withholds thousands of documents on bogus claims of irrelevance. For example, Apple is withholding well over 99% of the documents returned by running the agreed-to search terms on the files of the four custodians Apple says decided on the proposed fee (Tim Cook, Eddy Cue, Carson Oliver, and Kevan Parekh (Apple's new CFO)) and three other key individuals (Nate Barton, Alex Roman, and Phil Schiller). Apple claims these withheld documents are ***not relevant*** to this proceeding—even though they hit on case-specific terms such as "proffer," "contempt," "injunction," and "link-out." To put this into context, while Apple produced 632 custodial documents returned by these search terms (including families), Apple is withholding over 122,000 based on a claim of non-responsiveness. Moreover, Apple claims that it completed its production from the files of these custodians, yet its production does not include a single substantive email discussing the rates Apple ultimately proposed; any notes or communications reflecting what occurred at any meeting where these rates were discussed or decided; any internal analysis of the financial or business impact of the proposed commissions; any App Store profit and loss statements; or any support for Apple's assertion that its incremental link-out costs are "essentially zero."

Apple's position strains credulity, but it is, unfortunately, not surprising. Past is prologue; time and time again, Apple has abused the trust the discovery rules place in litigants to review their own documents. First, during the contempt proceeding, Apple abused the attorney-client privilege, forcing the Court to spend months having three Special Masters check Apple's

work. Then, in this proceeding, Apple failed to produce to Epic "all" documents related to its fee proposal by the Order's deadline, limiting its production to a handful of documents from the files of only four individuals. And now, Apple is withholding as irrelevant ***nearly all*** of the documents that are returned by tailored search terms, attempting to, once again, force Epic to choose between reasonable discovery or a reasonable schedule.

Apple's gamesmanship should be cut short. But Apple cannot be trusted to fix this problem on its own, through a simple re-review: to the contrary, Apple maintains that its relevance review is compliant and reasonable, and it has insisted (in meet and confers) that its paltry production is due to the search terms returning thousands of press releases, analyst reports, and similarly irrelevant and unimportant documents. Given Apple's position, Epic respectfully submits that **the Court should order Apple to produce to Epic *all* non-privileged documents that hit on the Parties' agreed-upon search terms**, so that Epic itself can sift the wheat from the chaff. Doing so will avoid further delays and place no burden on Apple. Moreover, doing so would not raise any of the concerns that required Special Master involvement in the prior proceeding, namely concerns around the production of privileged Apple information to Epic. Under Epic's proposed remedy, Apple would be allowed to continue its review for privilege. For these reasons, Epic asks this Court to order Apple to produce all non-privileged documents that hit on any of the Parties' agreed-upon search terms by December 2, 2026 (one week after Apple's deadline to substantially complete production), irrespective of any relevance or responsiveness assessment. Epic further asks that the Court impose on Apple a daily monetary sanction for each day Apple fails to comply after December 2, 2026.

## FACTUAL BACKGROUND

### I. Procedural History

On September 10, 2021, following trial, this Court found that Apple's anti-steering provisions violated California's Unfair Competition Law and enjoined Apple from "prohibiting developers from . . . including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms." (Dkt. 813 ("Injunction") ¶ 1.) The Ninth Circuit affirmed, and the Supreme Court denied certiorari. *Epic Games, Inc. v. Apple*

*Inc.*, 67 F.4th 946, 1002-03 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024) (mem.). On January 16, 2024, Apple filed with the Court a purported "Notice of Compliance" (Dkt. 871) setting forth new policies that continued to prevent steering. Epic promptly moved to enforce the Injunction (*see* Dkt. 897 at 1).

Following evidentiary hearings on Epic's motion to enforce, in May 2024, the Court ordered Apple to produce "all" documents "relative to the decision-making process leading to the link entitlement program and associated commission rates." (Dkt. 974.) Apple responded by identifying 50 custodians and producing tens of thousands of documents from their files—but Apple also improperly withheld tens of thousands of additional documents, more than a third of all responsive documents, based on specious claims of privilege. Magistrate Judge Hixson rejected Apple's privilege claims, and this Court upheld those findings. (Dkt. 1508 at 12 & n.7.) The Court then ordered Apple to re-review all documents it withheld as privileged, and appointed three Special Masters to check Apple's work by reviewing every document for which Apple maintained its claim of privilege. With this oversight in place, Apple withdrew approximately 42.1% of its privilege claims upon re-review. (*Id.* at 12.) The Court ultimately found that Apple's over-designation was intentional and reflected "a desire to conceal Apple's real decisionmaking process, particularly where those decisions involved senior Apple executives," and sanctioned Apple for its abuse of attorney-client privilege "to delay proceedings and obscure its decision-making process." (*Id.* at 66, 76.)

After additional evidentiary hearings, in February 2025, the Court held Apple in civil contempt for its "willful violation" of the Injunction and permanently enjoined Apple from imposing any commission on linked-out purchases. *Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 951, 1003 (N.D. Cal. 2025). The Ninth Circuit affirmed the contempt findings but remanded for this Court to determine what commission, if any, Apple may charge on linked transactions going forward. *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1176-83, 1187-88 (9th Cir. 2025).

On May 20, 2026, the Parties jointly stipulated to, and the Court ordered, a "structure for proceedings consistent with the Ninth Circuit remand." (Order at 2.) Within

45 days of the Order's issuance, Apple was required to file a proffer "propos[ing] commissions for linked-out purchases, and present to the Court the evidence upon which Apple relies for its proposal." (*Id.* ¶ 1.) Then, within 10 days, Apple would "produce to Epic all non-privileged documents relating to the decision-making process leading to the proposal in its proffer." (*Id.* ¶ 2.)

**II. Apple's Deficient Productions**

On August 13, 2026, Apple filed its proffer (Dkt. 1708 ("Proffer")) and three expert reports, simultaneously producing the documents its experts had relied on—1,811 documents in all, most of which come from public sources. (Dkt. 1719 at 2 n.2.) On August 24, 2026—Apple's deadline to produce "*all* non-privileged documents relating to [its] decision-making process" (Order ¶ 2 (emphasis added))—Apple produced just 34 documents, mostly calendar invitations, court filings, and heavily redacted materials. Apple reported that it withheld from this production 15 documents that Apple claimed were privileged. (Dkt. 1719 at 2; Dkt. 1720 at 3 n.2.) The documents Apple produced came from the files of only four custodians—Cook, Cue, Oliver, and Parekh—whom Apple insisted were the sole non-lawyers who participated in deciding the proposed link-out fee. Missing entirely from that production were any notes or minutes of meetings discussing Apple's proposal; any substantive emails, texts, or messages among business or financial personnel; and any data or analyses supporting Apple's representation in the Proffer that its necessary costs were *de minimis*. (See Dkt. 1720 at 3 n.2; Proffer at 2, 24-26.)

Epic promptly objected to Apple's deficient production. On August 27, 2026, Epic requested the materials underlying Apple's proposed commissions, as well as information about the process Apple used to search potentially responsive repositories. On an August 28, 2026 meet and confer, Apple insisted that it had produced all relevant documents and that all discussions of the proposed fee occurred in person among this small group of Apple executives and counsel. (Dkt. 1719 at 2, 5; Even Decl. ¶ 4.) Apple admitted that it conducted only an undefined "manual" review of the custodial files of the four executives, and had run no systemic searches of any individual's files. (Dkt. 1719 at 2; Dkt. 1720 at 5.)

Apple sought to justify its deficient production by putting forward an artificial and hyper-narrow conception of the decision-making process that led to its link-out fee proposal. According to Apple, its proposal was the work of a "four-person decision-making body" comprising only Messrs. Cook, Cue, Oliver, and Parekh (Dkt. 1719 at 4; *see* Dkt. 1724 at 4 n.4); these four individuals alone "determined the proposed rates during a finite set of meetings over a matter of months based on a finite set of documents that they reviewed" (Dkt. 1720 at 4 (quoting Oct. 5, 2026 Letter from J. Rouhandeh to G. Bornstein at 10)); Apple's "business did not produce any analysis that was presented to the decision-makers at their meetings" (Dkt. 1719 at 4); and Apple "did not make a decision pursuant to ordinary business processes," proceeding instead "in reliance on outside experts" (Dkt. 1720 at 16). Remarkably, Apple insisted that *no one else* took part in the process, even though its own production showed that others, including Nate Barton and Phil Schiller, were invited to the meetings at which Apple says the decision was made. (Dkt. 1720 at 5-6, 14; Dkt. 1724 at 4 n.4.)

Having declared its production complete with just 34 responsive documents, Apple shifted the burden to *Epic* to identify what was missing and develop a reasonable search protocol. Rather than propose custodians, search terms, or document categories to be searched, Apple asked *Epic* to list the documents Epic expected to see. (Dkt. 1720 at 5.) Epic did so on September 11, 2026, identifying 16 categories of documents for which Apple must search and produce. (*Id.*; Dkt. 1719 at 3, 5; Exhibit A.) These included, for example, "documents reflecting Apple's internal analysis of the impact on Apple's finances or business of the commissions proposed in Apple's proffer or any alternative commissions" and "App Store profit-and-loss statements prepared in the ordinary course for fiscal years 2023 through 2026." (Exhibit A at 1, 2.) On a September 16, 2026 meet and confer, Epic asked Apple to add Nate Barton, Alex Roman, and Phil Schiller as custodians and proposed that the custodians from the contempt proceeding (or their successors) serve as a starting point for identifying a universe of relevant custodians—recognizing that some, such as those involved in user-interface design, would no longer be relevant. (Dkt. 1720 at 5-6 & n.6; Dkt. 1719 at 3 n.3.) On September 21, Apple agreed to add Messrs. Barton, Roman, and Schiller as custodians, but declined to add any other custodians.

(Dkt. 1719 at 3.) Apple also proposed to search the seven custodians' files using terms that were plainly deficient, omitting core terms such as "P&L," "injunction," and "contempt." (Dkt. 1720 at 6.) The next day, in an effort to compromise, Epic proposed a list of 20 custodians as well as revised search terms. (Dkt. 1720 at 6 & n.6.) After nearly two weeks of silence, Apple agreed to search the files of all 27 of Epic's proposed custodians using Epic's search terms. (Dkt. 1720 at 6-7, 9.)[1]

On October 9, 2026, Apple said that it "anticipate[d] being in a position to substantially complete" production for Messrs. Barton, Cook, Cue, Oliver, Parekh, Roman, and Schiller (the seven "Initial Custodians") by November 1, 2026. (*Id.* at 9-11.) Apple also represented that it would substantially complete its production for the remaining 20 custodians by November 25, 2026. (*Id.* at 9-12.) Apple then made productions on October 24 and November 1, 2026, bringing its total number of produced documents to 680, many of which are exact or near duplicates of one another. Apple declared that with this production, it has substantially completed its production from the files of the seven Initial Custodians. (*See* Dkt. 1724 at 3-4.) Yet Apple's production still does not contain notes or minutes from the meetings in which the commission was apparently decided, internal analyses of the business impact of its proposed commission, or core financial records, like P&L statements or billings data. The production is also disproportionately small when compared to Apple's production from the same custodians (or, in the case of Mr. Parekh, from his predecessor, Mr. Maestri) in the contempt proceeding, where Apple produced nearly 27,000 documents from their files, including substantive emails, iMessage chats, presentations, meeting notes and agendas, and other business records. (*Id.* at 3 & n.3.) Moreover, although Apple has insisted that the only relevant custodians for its decision-making process were Messrs. Cook, Cue, Oliver, and Parekh, Apple ended up producing only 157 documents from the files of those custodians. The bulk of the documents it produced—over 75% of its (meager)

[1] On September 24, 2026—a full month after its court-ordered deadline—Apple produced 21 additional documents, consisting of what Apple described as "*certain* drafts of the proffer and expert materials that Apple's decision makers received." (Exhibit B (emphasis added); *see* Dkt. 1720 at 4 n.3.) The earliest of these is dated just over two weeks before the proffer was initially due to be filed.

production—came from the files of the three custodians Apple insisted were ***not*** decision-makers—Messrs. Barton, Roman, and Schiller. (*Id.* at 3 & n.2.)

In light of the exceedingly small size of Apple's production, Epic requested and Apple provided a hit report detailing the number of documents returned by the agreed-to search terms. (Exhibit C.) That information confirms that Apple is withholding over 122,000 documents (including families) from the Initial Custodians' files that are returned by the agreed-upon search terms. Even for documents returned by search terms that are tightly tied to this remand proceeding (*e.g.*, those targeting words like "proffer," "injunction," "link-out," or "breakage"), Apple is withholding over 95% of the documents on claims of irrelevance. (*Id.*)

The Parties met and conferred on November 6 and 11 regarding Apple's deficient production and dubious relevance review. During the November 6 meet and confer, Epic reminded Apple that it had agreed to search for and produce non-privileged documents responsive to *all* of Epic's document requests—not merely to its own narrow view of the decision-making process—and that Apple's current approach contradicted that agreement. (Even Decl. ¶ 8.) During the November 11 meet and confer, Apple maintained that it had applied the correct relevance standard; that it will not even *consider* whether to re-review its relevance calls until after Thanksgiving (citing concerns with its impending November 25 substantial completion deadline); and that even if it ultimately agreed to such a re-review, it would apply the same relevance standard that it applied in the first instance. (Even Decl. ¶ 9.)

## ARGUMENT

This Court's Order required Apple to produce "all non-privileged documents relating to the decision-making process leading to the proposal in its proffer" by August 24, 2026. (*See* Order ¶ 2; *see also* Proffer (filed on August 13, 2026).) It does not permit Apple to withhold tens of thousands of documents pursuant to a hyper-narrow definition of what is relevant to this proceeding. Epic does not ask the Court to expand Apple's obligations or to break new ground. Rather, Epic asks only that the Court enforce its Order in a way that provides Epic with the documents it is entitled to on a reasonable timeline.

**I. Apple's Failure to Produce All Relevant Documents Violates the Court's Order.**

The Court's Order to produce "all" non-privileged documents is clear and unambiguous; Apple's failure to produce responsive documents violates that Order.

Apple must produce "all non-privileged documents relating to the decision-making process leading to the proposal in its proffer." (Order ¶ 2.) This language tracks this Court's June 2024 Order, which similarly required Apple to produce "all" of its "documents relative to the decision-making process leading to the link entitlement program." (Dkt. 974.) That broad mandate resulted in the designation of 52 custodians and the production of over 150,000 documents. (Dkt. 1330 at 5, 7.) Based on prior practice, then, Apple knows what this Court means by "all documents relative to" a decision-making process under review. (*See* June 5, 2024 Status Conf. Tr. 14:2-6 ("When I . . . said 'all,' . . . [I]t would seem to me that the production should be pretty large because it should all be there, one would think."); *see also Lambright v. Ryan*, 698 F.3d 808, 817 (9th Cir. 2012) ("The common meaning of the word 'all' is 'the whole amount, quantity, or extent of; as much as possible[.]'" (citation omitted)). And as applicable here, that broad mandate plainly encompasses the analyses, deliberations, communications, and business records that led to Apple's proposed commissions—again, resulting in a production that "should be" sizeable.

A review of Apple's production makes clear Apple has not met the Court's broad mandate. *First*, Apple's production is missing documents that are clearly the subject of the Order and should be in the files of the seven Initial Custodians. For example, the Court made clear it expected "genuine business records" supporting Apple's proposal. (Aug. 11, 2026 Hr'g Tr. 8:15-17.) Yet Apple has not produced any notes, minutes, or other records or communications reflecting what was discussed at the meetings at which it says the commission rate was decided, whether in connection with the proffer or in connection with a similar process (elsewhere in the world) that informed Apple's decision in the present instance. Nor has Apple produced any internal analyses of the business impact of its proposed commission (again, whether conducted in this process or in a parallel one). (Dkt. 1719 at 2-3; Dkt. 1720 at 3 n.2.) Apple has provided no plausible explanation for why its key decision-makers would not have these materials in their

files. Even if Apple did instruct that no such analyses be performed specifically with respect to the proposed commission rate in this remand proceeding (*see* Dkt. 1719 at 2-3), there can be no dispute that Apple has repeatedly analyzed proposed link-out commission rates and that those prior analyses played a role in its executives' decision-making. Apple likewise has not produced core financial records: no App Store profit-and-loss statements prepared in the ordinary course; no evidence of how Apple actually allocates R&D to the App Store in the ordinary course; no App Store gross billings broken out between in-app and linked-out purchases; and no data supporting Apple's representation to this Court that its incremental link-out costs are "essentially zero" or in "the low single-digit millions of dollars." (Proffer at 2, 26.) Again—it is not clear how the supposed decision-makers could have made the decision documented in the Proffer without conducting any of these analyses in some context and in some fashion.

*Second*, the size of Apple's production is facially deficient. *See, e.g.*, *D.M. v. County of Merced*, 2022 WL 4792420, at *7 (E.D. Cal. Oct. 3, 2022) (finding "extreme sparseness" of production "indicated a lack of diligence and that the responses were incomplete"). Apple has produced only 632 documents from the seven Initial Custodians—and only 157 from the four people it identifies as the decision-makers—compared with nearly 27,000 documents from the same custodians (or their predecessors) in the contempt proceeding. (Dkt. 1724 at 2-3 & n.3.) And Apple has confirmed that it is withholding over 122,000 documents from the files of the seven Initial Custodians returned by the agreed-to search terms, including roughly 99.14% of the documents that were directly hit by those terms (i.e., even disregarding families). Apple's claim that a mere 632 documents—less than 1% of documents that were returned by these terms directly—are responsive to Epic's requests and/or relevant to the remand proceeding beggars belief, especially given Apple's history of gross abuse of the discovery process.

Apple's suggestion that its production is minuscule because the search terms it applied are overbroad likewise falls flat. As a threshold matter, it asks the Court and Epic to believe that the files of seven core custodians contain only 632 documents relevant to this proceeding; as noted above, experience suggests otherwise. Moreover, contrary to Apple's claims, the agreed-upon searches targeted specific terms most likely to return documents relevant

to this remand proceeding. Take the first search string as an example.[2] Terms like "proffer," "remand," or "YGR" are not common in everyday business interactions. (Exhibit C.) According to Apple, this search string hit on [redacted] documents from the seven Initial Custodians. (*Id.*) Yet Apple produced only 162 documents from this universe, maintaining that the other [redacted] documents ([redacted]) are non-responsive. (*Id.*) Another example is the search string targeted at financial analyses of a commission or link-outs.[3] This targeted string hits on [redacted] documents, of which Apple produced 375, claiming the other [redacted] documents ([redacted]) are irrelevant. This occurs over and over again—for every search string, Apple withheld anywhere from [redacted] to [redacted] of all documents returned by the agreed-upon search. Of course, *some* non-responsive documents will be returned by any search query. But it is utterly implausible that the rate of non-responsiveness is approximately 99% over the totality of the agreed-upon search terms, which were crafted with this remand proceeding in mind. In other words, it is simply not credible for Apple to claim that roughly 99% of Apple's documents containing at least some words specifically related to this proceeding, including legal terms of art such as "remand" and "injunction," were not at all relevant to the topics at issue in this proceeding.

Ultimately, the only plausible explanation for the size and scope of Apple's production is that Apple continues to take the extremely restrictive—and unreasonable—view of responsiveness it took when it initially claimed that the 34 documents it produced on August 24 complied with the Court's Order directing it to produce "all non-privileged documents relating to the decision making process." That approach was clearly unreasonable then, and it remains unreasonable now.

---

[2] The first search string targets documents related to this litigation: "proffer OR remand OR contem* OR injunction OR Epic OR YGR OR ((judge OR Gonzalez) NEAR/10 "Rogers") OR steering OR (("9th Cir*" OR "ninth cir*" OR (appeal*) OR "supreme court" OR "SCOTUS") AND (commission* OR fee* OR ((link* BEFORE/1 out) OR linkout OR link-out OR "link entitle*"))."

[3] Search string 4: "(financ* OR revenue* OR forecast* OR projection* OR model* OR scenario* OR analy*) AND (commission* OR rate* OR ((link* BEFORE/1 out) OR linkout OR link-out OR "link entitle*"))."

## II. The Court Should Order Apple to Promptly Cure Its Deficient Production by Producing All Non-Privileged Documents, Regardless of Apple's Relevance Determinations.

This is not Apple's first violation of the Court's Order. Apple has had at least four opportunities to comply and squandered each. *First*, at the Order's August 24 deadline to produce "all" responsive documents, Apple produced 34 manually collected documents, ran no search terms, and declared its production complete. (Order ¶ 2; Dkt. 1719 at 2; Dkt. 1720 at 5.) *Second*, after Epic pointed out the clear deficiencies in Apple's production, Apple spent two months objecting to Epic's requests, pushing back its production timeline, and producing nothing for a month. (Dkt. 1720 at 5-8 & n.10; Dkt. 1721 at 2-3.) *Third*, after finally agreeing to Epic's search terms and a new production deadline for the seven Initial Custodians, Apple again failed to produce the required documents and withheld most hits as irrelevant. (Dkt. 1724 at 2-4.) *Fourth*, after Epic raised Apple's clearly deficient relevance standard in several meet and confers, Apple declined even to *consider* a re-review before Thanksgiving, and insisted that it would apply the same myopic relevance standard to any future re-review it agreed to conduct.

Apple should not get a *fifth* opportunity; enough is enough. Because Apple has failed at conducting its own self-directed responsiveness review, the Court should take that review out of Apple's hands and order Apple to promptly produce all non-privileged documents that hit on any of the Parties' agreed-upon search terms, regardless of Apple's own assessment of responsiveness or relevance. Moreover, given Apple's penchant for delay, the Court should require Apple to complete such production by December 2—or be subject to meaningful monetary fines until Apple complies.

Given Apple's history of non-compliance and its repeated refusal to abide by this Court's orders, an order that Apple itself do any re-review would be futile. Indeed, Epic has already asked Apple to reassess its approach and re-review the documents. In response, Apple not only declined to commit to conduct a re-review, but took the position that its review to date was entirely reasonable, making any re-review *by Apple* useless. Moreover, because Apple need not produce a log of purportedly irrelevant documents, the *only* way to ensure a faithful

assessment of documents' relevance would be to entrust that assessment to someone other than Apple.

As the Special Master-supervised review in the prior proceeding demonstrated, the prospect of having its decisions reviewed by a neutral party greatly disciplined Apple's review. But the Special Master process was immensely costly and slow, delaying the contempt proceeding by months. And here, where privilege concerns are not at issue, there is no reason to conduct a similarly burdensome process. The production of non-privileged yet potentially irrelevant Apple documents to Epic—subject to the strict protections of the Protective Order ("PO") in this case—would cause little harm to Apple, and would not give Epic any unfair litigation advantage. If the documents are indeed irrelevant, Epic could not use them in the litigation, and the PO ensures Epic could never use them for any other purpose. Thus, the appropriate remedy is an order directing Apple to promptly produce to Epic all documents hitting on the agreed-upon search terms, so that Epic itself may determine their relevance. This would allow the remand to proceed without further delay and remove any doubt as to the completeness of Apple's production.[4]

Any other result will prejudice Epic. The missing discovery goes to the heart of Apple's decision-making process, and its absence prejudices Epic's ability to respond to Apple's Proffer. Epic specifically requested documents sufficient to identify the costs "genuinely and reasonably necessary" for coordinating external links, the value of intellectual property "directly used" to permit linked-out purchases, and all non-privileged documents regarding those costs or value that relate to the decision-making process. (Exhibit A.) Those requests track the Ninth Circuit's remand framework and the subjects Apple placed at issue in its Proffer. *See Epic Games*, 161 F.4th at 1188-89. Without those documents, Epic cannot properly evaluate or respond to Apple's Proffer.

Apple, by contrast, faces no undue prejudice from this remedy. As noted above, Apple could not raise any legitimate confidentiality concerns, as the Protective Order would cover

---

[4] Subject to Apple's faithful application of privilege law, an issue on which Epic reserves all rights.

any documents Apple produces. Nor could Apple raise any legitimate privilege concerns, as the proposed remedy does not call for the production of privileged documents. Moreover, even if Apple could identify any meaningful prejudice (it cannot), such prejudice would not be undue because the remedy Epic proposes is necessary to resolve a problem that is entirely of Apple's own making. Apple's conduct—in the prior proceeding and in this one—makes clear that Apple is intent on abusing the self-review process that stands at the foundation of document discovery. Apple should therefore lose the right to conduct such self-review.

Apple's non-compliance achieves what Apple could not obtain any other way. Until Apple completes its production, Epic's deadline to respond to the Proffer does not run—as the Parties now agree. (Order ¶ 4; Dkt. 1724 at 2.) Apple has stated that it would not even consider any potential relevance re-review until after its November 25 deadline to substantially complete production for the 20 additional custodians. (Even Decl. ¶ 9.) That means additional months-long delay. Apple asked multiple courts to stay these remand proceedings, and was denied. (Dkt. 1706; *Apple Inc. v. Epic Games, Inc.*, No. 25-1311 (U.S. Aug. 13, 2026).) Its refusal to comply with the Order now effectively gives it such a stay, forcing Epic once again to "choose between the Court-ordered schedule and the Court-ordered discovery." (Dkt. 1720 at 2.) Every week of delay frustrates the Ninth Circuit's directive that these proceedings move "expeditiously." *Epic Games*, 161 F.4th at 1188. Apple should not be permitted, yet again, to drag out these proceedings by withholding the information this Court ordered it to produce.

Finally and relatedly, Epic understands that Apple may need some time to complete its privilege review. Epic thus requests that Apple be ordered to complete its production of all relevant, non-privileged documents by December 2—one week after Apple has committed to substantially complete its productions. But given Apple's demonstrated pattern of delay, Epic submits that an order to produce by a date certain is not enough. The Court should also impose coercive sanctions for continued non-compliance should Apple fail to produce by the December 2 deadline, including a daily monetary sanction for every day of delay beyond that date. *See Parsons v. Ryan*, 949 F.3d 443, 455 (9th Cir. 2020) (describing "prospective, conditional fines" as "the paradigmatic coercive contempt sanction"); *see also Shell Offshore Inc. v. Greenpeace, Inc.*,

815 F.3d 623, 629 (9th Cir. 2016) ("[C]oercive civil sanctions, intended to deter, generally take the form of conditional fines."). Considering "the character and magnitude of the harm threatened by continued contumacy," *Epic Games*, 781 F. Supp. 3d at 989 (quotation marks omitted), nothing short of a coercive sanction will ensure that Apple does not again stall these proceedings by withholding documents this Court ordered it to produce months ago.

**CONCLUSION**

For the foregoing reasons, Epic requests that the Court enter an Order requiring Apple to (i) produce all non-privileged documents that hit on any of the Parties' agreed-upon search terms by December 2, 2026 (one week after Apple's deadline to substantially complete production), without any review for responsiveness or relevance; and (ii) pay a daily monetary sanction for each day after December 2, 2026 that it fails to comply.

Dated: November 13, 2026

Respectfully submitted,

By: /s/ *Yonatan Even*

**FAEGRE DRINKER BIDDLE & REATH LLP**

Matthew J. Adler (SBN 273147)
matthew.adler@faegredrinker.com
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff and Counter-defendant Epic Games, Inc.*