United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EPIC GAMES, INC.,<br>Plaintiff,<br>v.<br>APPLE INC.,<br>Defendant. | Case No. 20-cv-05640-YGR (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 1727 |

We are here on Epic's motion to enforce the Court's order that "Apple will produce to Epic all non-privileged documents relating to the decision-making process leading to the proposal in its proffer, including any fee proposal reflected in its proffer, as well as a privilege log as described in the ESI Protocol governing this matter." ECF No. 1687 ¶ 2. The basic issue in dispute is that Epic doesn't trust Apple's responsiveness determinations, and the Court has to decide what to do about that.

The numbers are grim. For the first seven custodians, Apple indicated that the agreed search terms hit on 122,884 documents (when families are included, 73,210 when not), and Apple has withheld more than 122,000 of those on responsiveness grounds. In other words, Apple is withholding more than 99% of the documents that hit on the search terms. These particular statistics relate to the first seven custodians (as to whom Apple has substantially completed document production), not the remaining 20 (for whom the substantial completion of document production is not due until November 25). But if there is some massive failure to code responsive documents as responsive, presumably this problem will persist in the other custodians' documents.

Epic maintains there is such a massive failure. It says Apple has not produced notes, minutes, communications, financial records or analysis that it expects to exist. Epic simply cannot

believe these documents don't exist and can't be found in the custodians' documents. Epic asks the Court to order Apple to produce all non-privileged documents that hit on the search terms without regard for responsiveness by December 2, 2026.

Apple thinks the problem is the search terms, which it says are overbroad. In addition, Apple criticizes the relief Epic seeks. Once Apple determined that documents were nonresponsive, it did no further review, for example, for privilege, confidentiality, trade secrets, and so on. Apple says that Epic's requested relief would result in the production of employee medical information, employee passwords, performance reviews, and other information that should not properly be disclosed. Apple has some statistics about how much time and effort it would take to properly review its documents for issues like that, but it appears that Apple's estimates concern *all* documents that hit on search terms for *all* 27 custodians. If the Court is inclined to grant some relief, Apple proposes that it produce a randomized, statistically significant sample of nonresponsive documents to a Special Master for review.

Let's take this in steps. The first thing we need to do is figure out if there is a legitimate problem to be solved. The answer is yes. Apple's responsiveness rate is so dramatically low that it raises red flags. With Apple screening out more than 99% of the documents that hit on the agreed search terms, it is unreasonable to ask Epic to believe that Apple is making these responsiveness calls in good faith. That is particularly true in this case, in which Judge Gonzalez Rogers has sanctioned Apple for its large-scale abuse of the attorney-client privilege for the purpose of obscuring the evidence. ECF No. 1508 at 65-67, 76.

Now let's decide what to do about that. Epic's proposal to entirely dispense with responsiveness review might be a good idea if Apple *is* systematically coding documents as nonresponsive when they are responsive. If Apple's responsiveness review lacks any integrity, maybe Apple should not be allowed to do that review anymore. However, we don't yet know whether that is true. Right now all we have is the suspicion that there might be a systematic problem. If there really is a systematic failure to properly code documents as responsive, that problem should come to light pretty quickly in a review of a randomized sample of unproduced documents. Further, there is no need for the randomized sample to be drawn from all 27

custodians because Epic came to the conclusion that a problem existed when it saw the responsiveness rates for the first seven custodians. So, if the problem is what Epic thinks it is, it should be evident in a random sample drawn from the first seven custodians, meaning the 122,000 or so documents (about 73,000 without families) from their files.

The Court issued a tentative ruling yesterday that addressed certain points and directed the parties to be prepared to discuss certain issues at the hearing this morning. Specifically, the Court wanted the parties to discuss what size the sample should be and other logistical issues.

In the tentative, the Court also determined that Apple made a good point that it has not yet reviewed the documents for privilege, medical information, passwords, and so on, and Apple likely should do that review and make necessary redactions or withholdings. The Court confirms that view in this order.

The Court also tentatively found, and now confirms its finding, that Apple's proposal that the random sample should go to a Special Master is not persuasive. The Court previously used Special Masters to review Apple's claims of privilege. You don't need to know much about a case or about the parties' contentions on the merits to review a document for privilege. You read the document, you see who the lawyers were, you decide if its predominant purpose is legal or business, and so on, and that's what privilege review is about. Responsiveness review here is totally different and is deeply enmeshed in the merits. The Court order that Epic is moving to enforce requires Apple to produce all non-privileged documents relating to the decision-making process leading to the proposal in its proffer, including any fee proposal reflected in its proffer. It is unreasonable to think that a Special Master could have a firm enough command of the details of this case to be able to decide which documents fall within that scope. Realistically, the only person who has the practical ability to determine if Apple has been systematically mis-coding documents as nonresponsive is its opponent, Epic.

The Court conducted a hearing this morning, and with the benefit of the Court's tentative ruling, the parties made their respective proposals concerning sampling. Epic proposes that Apple produce a random sample of 3,200 nonresponsive documents that hit on search terms, plus their family members. The sample will be drawn from the first seven custodians. Epic says 2,000 of

them should be documents that hit on any search term, and there should be 300 that hit on each of the search terms 6-9. Epic singled out search terms 6-9 because there were many fewer hits on those search terms (*see* ECF No. 1733-2), and statistically speaking, you need a larger sample size to find things that are unusually small. Epic thinks Apple should provide a declaration at the time of the document production explaining how it performed the random sample. Epic contemplates that Apple would review the documents for privilege and produce a privilege log at the time of document production. Epic specifically proposes that Apple not be permitted to change its responsiveness determinations as part of this process because the whole idea is to test Apple's prior determinations for systematic error, and Epic does not want Apple to be able to clean things up during the test. In response to the Court's questions, Epic agrees Apple can also review for sensitive information (e.g., medical records, trade secrets, passwords, and so on) and redact that information and log those redactions. For documents that Apple entirely withholds based on privilege, Epic does not contemplate that Apple will replenish the sample with additional documents to get to a total of 3,200 documents (plus families) produced. Epic proposes that Apple complete this production by November 30, 2026, that Epic have a December 7, 2026 deadline to file any objections, and that Apple respond to those objections by December 11, 2026. The Court refers to the proposal described in this paragraph as "Epic's proposal."

Apple proposes that it produce 383 nonresponsive documents, again from the same document set that Epic proposes to sample. Apple says that 383 documents are a statistically significant sample size to test with a 95% confidence level whether Apple has mis-coded documents as nonresponsive. Apple proposes to review the 383 documents for privilege and sensitivity and complete the production by December 2, 2026. Apple observes that its substantial completion deadline for the remaining 20 custodians is tomorrow, so Apple has a lot of work on its hands. Apple also thinks that any documents it produces as part of this sampling exercise should be AEO because they could be competitively sensitive.

Apple's proposed sample size of 383 documents is not persuasive. Apple's proposal would be a good idea if the goal of this exercise were to test for error, i.e., whether Apple coded any documents as nonresponsive that are in fact responsive. In other words, Apple's statistically

United States District Court
Northern District of California

significant sample size is designed to give a 95% confidence level in the accuracy of Apple's responsiveness coding. But error is not what Epic's motion is about, and indeed the occasional error in document coding is ordinarily not interesting or unusual. To err is human. Epic's motion is about massive error, and we're going to need a lot more than a statistically significant sample size to determine if there was not just error, but lots of it. Apple has determined that fewer than 1% of the documents that hit on a search term are responsive. A massive amount of error could include, for example, that there are five times as many responsive documents as Apple says there are, meaning that 80% of the time Apple codes a responsive document as nonresponsive. But that will still be fewer than 5% of the documents. Epic's proposed sample of 3,200 documents is a better way to determine whether or not Apple has committed systematic error.

Accordingly, the Court **ADOPTS** Epic's proposal and **ORDERS** Apple to do it, except as to timing. Epic proposes that Apple complete its document production six days from now, but three of those days are Thanksgiving, Saturday and Sunday. Instead, the Court **ORDERS** Apple to complete this document production no later than December 8, 2026. Excluding weekends, holidays, and the day after Thanksgiving, that gives Apple eight work days to conduct this document review and production, which is sufficient. Epic shall file its objections no later than December 15, 2026, and Apple shall file its response no later than December 22, 2026. Apple may designate all of the documents it produces as part of this exercise as AEO.

**IT IS SO ORDERED.**

Dated: November 24, 2026

THOMAS S. HIXSON
United States Magistrate Judge